State Of Rhode Island                                    Superior Court
Providence S.C.


Rhode Island Public Transit Authority
Plaintiff

V.                                                       P.C. 2020-06065

Mickeda Barnes
Defendant


## Motion Court R.I.G.L§42-35-15. Judicial review of contested cases.

## Complaint

Ms. Barnes and her dependants ( Defendant), by and through undersigned pro-se brings this motion against Ripta or (plaintiff), for counterclaim for Breach of contract, declaratory judgement and equitable relief.


Ms. Barnes has several open claims with Ripta her employer and all the claims have to be closed out either by agreed settlement in Workers Compensation Court or Ms. Barnes gets put on Accidental Disability Benefits along with Health Benefits amended by the Federal affordable Health Care Act 42 U.S.C. 300 gg-15. Ms. Barnes has gone to trial in Workers Compensation Court. Ms. Barnes has a Bench decision that was not in her favor for weekly continued benefits nor the benefits she was entitled to based off of Rhode Island Workers Compensation Laws in

SUPERIOR COURT
FILED
HENRY S. KINCH, JR

21 MAR -1 AM 10: 59

regards to benefits. Ms. Barnes had an agreed Global Settlement that was on record with Ripta and was Stipulated on Record with four Attorneys on December 1, 2017.

Ms. Barnes was also told by the Chief Judge based on that very same global settlement that the April 25, 2018 was going to be issued to Ms. Barnes while separated the discrimination portion of the Global Settlement while pending CMS report to be processed and reviewed for a lower rate. Ms Barnes Has that Court Transcript from March of 2018.

Ms Barnes Told the Judge and the Attorneys Steven Dennis and Nick Mancini if the Global Settlement falls threw that her Federal Case must be retired back to Federal Court and Ms. Barnes feels like there has been some kind of fraud between the Judge and the two to three Attorneys involved with aiding and abetting to commit fraud in Ms. Barnes case for Civil Rights Violations.

Ms Barnes has been pulled into court by Ripta for allegations of breach of contract when of course Ripta themselves Breach the Contract.

Ripta Breached the Contract."

1. Fraudulent tactics acting like they were gonna pull it out of Federal Court to do a Global Settlement in Workers Compensation Court have the workers compensation Judge speak to the Federal Judge about the stipulations of the settlement in workers compensation court have my Discrimination Attorney Sonya Deyoe withdraw the case on a 41(a) and then back out of the settlement all together then take the Discrimination agreement call it a all claims release that was not signed by all Attorneys on records.

2. The settlement was not approved in Workers Compensation Court on record based on Stipulation agreed between parties and cannot be settled out of the original Jurisdiction of the Court because it is a Title 7 complaint.

3. Steven Dennis was still paid a portion of $10,000 in May 2018 out of the $ 150,000 R.I.G.L. §28-35-32 cost-counsel and witness fees that law no employees Attorney shall accept any other or additional fees for his services for the particular petition for which fees are awarded in each tribunal.Came up with some loophole Idea fraudulent claims to defraud the injured worker and the Federal Government for Federal Money under Title 6 requirements for compliances for ADA State and Federal Laws with Injured workers and Disabilities and whistle Blowers.  Ms. Barnes entered into an agreement with Ripta and that is why Steven Dennis was paid. Ripta that was placed on record even though the Global Settlement ended up falling threw after another year and half in mediation with Ripta they still did not settle anything with Ms. Barnes but just used April 25. 2018 all claims are released as a contract not to pay Ms. Barnes anything.

4. Steven Dennis, Nick Mancini, Jillian Hartwell and The Chief Judge Ferreira all knew Steven should have not received any of this money and hoped that I would not find out but once I complained to the disciplinary  board  David Curtain about this Steven Dennis called me a snitch and that I violated Attorney client privileges.

5. Ms. Barnes filed a complaint with the Supreme Court Disciplinary Board against Chief Judge Ferrerira and nothing happened except that the Chief Judge gave Ms. Barnes a fucked up trial and nothing to show for it that was in October 22, 2019 it is now February 21, 2021 and has been in Appeals Court with no Rehearing and no Attorney

representing Ms. Barnes because of all the Fraud done and the Legal Malpractice done in Ms. Barnes Case.

## PARTIES

1. **Ripta is a quasi-government state agency with its principal place of business in Providence Rhode Island.**

2. **Ms Barnes is a illegally terminated disable/ whistle blower  Ripta employee and upon information and belief, she is a resident of Rumford Rhode Island.**

Ripta has brought an action against Ms. Barnes for Breach of Contract, declaratortory and equitable relief..

## JURISDICTION AND VENUE

1. **This Court has jurisdiction over Plaintiff because the entity is a business of the State of Rhode Island. Ms. Barnes was employed by Ripta in the State of Rhode Island, and was entered into a Union contract with ATU 618 and Ripta. Ripta is in Violation of Fair labor Standard Act 29 C.F.R.§16 25, 22,(b),(f).**

2. **Pursuant to R.I. Gen Laws § 9-1-30 the monetary amount in this action is sufficient to invoke the jurisdiction of this court.**

3. Ripta did violate the Rhode Island Fair Employment Practices Act, Title 28, Chapters, and The Civil Rights of people with disabilities act, title 32, Chapter87 of the General Laws of Rhode Island.

4. Ripta and Ms.Barnes Union has been charged with aiding and abetting by the Commission of Human Rights to deny Ms. Barnes was issued a right to sue Ripta for failure to reasonable accommodation after a work injury back as a city bus driver.

5. 2(e) of Ripta's April, 25, 2018 all claims release can only be applied to any matter covered by the release as set forth in paragraph 2 against the releases.

6. Riptas All claims release is null and voided because all the Attorneys involved did not sign the settlement agreement to make it legal. Ms Barnes alleges Ripta Breached the contract not settling title 7 claims in Federal Court.

## Conclusion

For the foregoing reasons Ms Barnes request a Trial of her peers for this Breach of Contract since Ripta file a claim against Ms. Barnes for Breach of Contract dispute with Plaintiff Ripta claims Defendant Ms Barnes cannot file a first to file claim Ms. Barnes Claim to Right for compensation for breach of contracts and no payment for claims that was due to Ms.Barnes for old and new injuries that have been now lost due to expiration of time requirements held up because of this Breach of Contracts.

**Respectfully submitted,**

**Mickeda S Barnes Pro-Se**

**34 Dunbar Ave Rumford R.I. 02916**

**401-419-2250**

**EMAIL:**

**March 1, 2021**

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of March , 2021, the foregoing Judicial review of contested cases was e-filed and served through the electronic filing system and by the email of the following party. The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

Jillian S. Folger-Hartwell

LITTLER MENDELSON, P.C.

One Financial Plaza, suite 2205

Providence R.I. 02903

401-824-2500

401-633-6853(fax)

State Of Rhode Island                                   Superior Court
Providence S.C.


Rhode Island Public Transit Authority
Plaintiff

V.                                                     P.C. 2020-06065

Mickeda Barnes
Defendant


## **Motion Court R.I.G.L§42-35-15. Judicial review of contested cases.**

### **Complaint**

Ms. Barnes and her dependants ( Defendant), by and through undersigned pro-se brings this motion against Ripta or (plaintiff), for counterclaim for Breach of contract, declaratory judgement and equitable relief.


Ms. Barnes has several open claims with Ripta her employer and all the claims have to be closed out either by agreed settlement in Workers Compensation Court or Ms. Barnes gets put on Accidental Disability Benefits along with Health Benefits amended by the Federal affordable Health Care Act 42 U.S.C. 300 gg-15. Ms. Barnes has gone to trial in Workers Compensation Court. Ms. Barnes has a Bench decision that was not in her favor for weekly continued benefits nor the benefits she was entitled to based off of Rhode Island Workers Compensation Laws in

regards to benefits. Ms. Barnes had an agreed Global Settlement that was on record with Ripta and was Stipulated on Record with four Attorneys on December 1, 2017.

Ms. Barnes was also told by the Chief Judge based on that very same global settlement that the April 25, 2018 was going to be issued to Ms. Barnes while separated the discrimination portion of the Global Settlement while  pending CMS report to be processed and reviewed for a lower rate. Ms Barnes Has that Court Transcript from March of 2018.

Ms Barnes Told the Judge and the Attorneys Steven Dennis and Nick Mancini if the Global Settlement falls threw that her Federal Case must be retired back to Federal Court and Ms. Barnes feels like there has been some kind of fraud between the Judge and the two to three Attorneys involved with aiding and abetting to commit fraud in Ms. Barnes case for Civil Rights Violations.

Ms Barnes has been pulled into court by Ripta for allegations of breach of contract when of course Ripta themselves Breach the Contract.

Ripta Breached the Contract."

1. Fraudulent tactics acting like they were gonna pull it out of Federal Court to do a Global Settlement in Workers Compensation Court have the workers compensation Judge speak to the Federal Judge  about the stipulations of the settlement in workers compensation court have my Discrimination Attorney Sonya Deyoe withdraw the case on a 41(a) and then back out of the settlement all together then take the Discrimination agreement call it a all claims release that was not signed by all Attorneys on records.

2.  The settlement was not approved in Workers Compensation Court on record based on Stipulation agreed between parties and cannot be settled out of the original Jurisdiction of the Court because it is a Title 7 complaint.

3.  Steven Dennis was still paid a portion of $10,000 in May 2018 out of the $ 150,000 R.I.G.L. §28-35-32 cost-counsel and witness fees that law no employees Attorney shall accept any other or additional fees for his services for the particular petition for which fees are awarded in each tribunal.Came up with some loophole Idea fraudulent claims to defraud the injured worker and the Federal Government for Federal Money under Title 6 requirements for compliances for ADA State and Federal Laws with Injured workers and Disabilities and whistle Blowers.  Ms. Barnes entered into an agreement with Ripta and that is why Steven Dennis was paid. Ripta that was placed on record even though the Global Settlement ended up falling threw after another year and half in mediation with Ripta they still did not settle anything with Ms. Barnes but just used April 25. 2018 all claims are released as a contract not to pay Ms. Barnes anything.

4.  Steven Dennis, Nick Mancini, Jillian Hartwell and The Chief Judge Ferreira all knew Steven should have not received any of this money and hoped that I would not find out but once I complained to the disciplinary  board  David Curtain about this Steven Dennis called me a snitch and that I violated Attorney client privileges.

5.  Ms. Barnes filed a complaint with the Supreme Court Disciplinary Board against Chief Judge Ferrerira and nothing happened except that the Chief Judge gave Ms. Barnes a fucked up trial and nothing to show for it that was in October 22, 2019 it is now February 21, 2021 and has been in Appeals Court with no Rehearing and no Attorney

representing Ms. Barnes because of all the Fraud done and the Legal Malpractice done in Ms. Barnes Case.

## PARTIES

1. **Ripta is a quasi-government state agency with its principal place of business in Providence Rhode Island.**

2. **Ms Barnes is a illegally terminated disable/ whistle blower  Ripta employee and upon information and belief, she is a resident of Rumford Rhode Island.**

Ripta has brought an action against Ms. Barnes for Breach of Contract, declaratortory and equitable relief..

## JURISDICTION AND VENUE

1. **This Court has jurisdiction over Plaintiff because the entity is a business of the State of Rhode Island. Ms. Barnes was employed by Ripta in the State of Rhode Island, and was entered into a Union contract with ATU 618 and Ripta. Ripta is in Violation of Fair labor Standard Act 29 C.F.R.§16 25, 22,(b),(f).**

2. **Pursuant to R.I. Gen Laws § 9-1-30 the monetary amount in this action is sufficient to invoke the jurisdiction of this court.**

3. **Ripta did violate the Rhode Island Fair Employment Practices Act, Title 28, Chapters, and The Civil Rights of people with disabilities act, title 32, Chapter87 of the General Laws of Rhode Island.**

4. **Ripta and Ms.Barnes Union has been charged with aiding and abetting by the Commission of Human Rights to deny Ms. Barnes was issued a right to sue Ripta for failure to reasonable accommodation after a work injury back as a city bus driver.**

5. **2(e) of Ripta's April, 25, 2018 all claims release can only be applied to any matter covered by the release as set forth in paragraph 2 against the releases.**

6. **Riptas All claims release is null and voided because all the Attorneys involved did not sign the settlement agreement to make it legal. Ms Barnes alleges Ripta Breached the contract not settling title 7 claims in Federal Court.**

## Conclusion

**For the foregoing reasons Ms Barnes request a Trial of her peers for this Breach of Contract since Ripta file a claim against Ms. Barnes for Breach of Contract dispute with Plaintiff Ripta claims Defendant Ms Barnes cannot file a first to file claim Ms. Barnes Claim to Right for compensation for breach of contracts and no payment for claims that was due to Ms.Barnes for old and new injuries that have been now lost due to expiration of time requirements held up because of this Breach of Contracts.**

**Respectfully submitted,**

**Mickeda S Barnes Pro-Se**

**34 Dunbar Ave Rumford R.I. 02916**

**401-419-2250**

**EMAIL:**

**March 1, 2021**

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of March , 2021, the foregoing Judicial review of contested cases was e-filed and served through the electronic filing system and by the email of the following party. The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

Jillian S. Folger-Hartwell

LITTLER MENDELSON, P.C.

One Financial Plaza, suite 2205

Providence R.I. 02903

401-824-2500

401-633-6853(fax)

STATE OF RHODE ISLAND
PROVIDENCE, SC                                          SUPERIOR COURT

| | |
|---|---|
| RHODE ISLAND PUBLIC TRANSIT AUTORITY | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICKEDA BARNES, | ) |
| | ) |
| Defendant. | ) |

Civil Action No. PC-2020-06065

## ORDER

This matter came for hearing before the Honorable Joseph A. Montalbano on January 7, 2021, on the Defendant Mickeda Barnes' ("Defendant") Motion to Compel Union Contract Agreement to Arbitration ("Motion").  After hearing thereon, it is hereby:

### ORDERED, ADJUDGED, AND DECREED

1.    Defendant's Motion, is DENIED.

**ENTERED** as an Order of this Court this _____ day of January 2021.

**ENTER:**                                    **PER ORDER:**

_____          _____
Hon. Joseph A. Montalbano, Associate Justice

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 1/21/2021 9:09 AM
Envelope: 2925755
Reviewer: Jaiden H.

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 14 of 689 PageID #: 369

Presented by,

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY,

By its attorneys,

/s/Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell (#6970)
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI  02903
401.824.2500
401.633.6853 (fax)
jfolgerhartwell@littler.com

January 21, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of January, 2021, the foregoing Order was e-filed and served through the electronic filing system (if applicable to Plaintiff) and by regular mail on the following party.  The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916

/s/ Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell

4825-7554-2488.1 088768.1017

2

STATE OF RHODE ISLAND
PROVIDENCE, SC                                         SUPERIOR COURT

| | |
|---|---|
| RHODE ISLAND PUBLIC TRANSIT AUTORITY ) ) ) | |
| Plaintiff, ) | |
| ) | Civil Action No. PC-2020-06065 |
| v. ) | |
| ) | |
| MICKEDA BARNES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY'S OBJECTION TO MOTION TO
COMPEL UNION CONTRACT AGREEMENT TO ARBITRATION**

Plaintiff Rhode Island Public Transit Authority ("RIPTA" or "Plaintiff"), hereby objects

to Defendant Mickeda Barnes' ("Defendant") Motion to Compel Union Contract Agreement to

Arbitration ("Motion to Compel") as there is no basis in law to compel RIPTA to arbitrate the

instant dispute – or any dispute – with Defendant.

I.       **BACKGROUND FACTS**

Barnes commenced employment with RIPTA in November 2002 and RIPTA terminated

her employment on February 15, 2016. Barnes' personnel record is littered with disciplinary

infractions, workers' compensation claims, union grievances, and unfounded accusations brought

by Barnes against co-workers, supervisors, attorneys, and even the Rhode Island judiciary. During

her 14-year employment with RIPTA, Barnes had an extensive history of work-related injury

claims and lengthy absences from work. As early as 2003, Defendant began filing a multitude of

workers' compensation claims against Plaintiff. Defendant averaged two workers' compensation

claims per year, each year thereafter, until her termination in 2016. Barnes continues to file

workers' compensation petitions against RIPTA, despite the fact that RIPTA terminated her

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 12/14/2020 3:57 PM
Envelope: 2877831
Reviewer: Victoria H

1:21-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 16 of 689 PageID #: 371

employment in 2016. As noted in the Rhode Island Supreme Court's December 10, 2020 opinion, as of this month there were at least three workers' compensation petitions still pending in the Workers' Compensation Court and four petitions pending in the Appellate Division of the Workers' Compensation Court. Barnes v Rhode Island Public Transit Auth., No. 2019-132-Appeal (PC 18-6082), December 10, 2020, at 9, attached as Ex. 1. "The plaintiff has filed at least twenty-five work-related claims against RIPTA since 2008." Id.

On or about October 11, 2017, when Defendant's workers' compensation claims were not yielding the results she desired, Defendant commenced a civil action against Plaintiff in the United States District Court for the District of Rhode Island, C.A. No. 1:17-cv-00505-JJM-PAS, alleging that RIPTA discriminated against her. In April 2018, during active settlement discussions – and unbeknownst to Barnes' attorney Sonya Deyoe – Barnes filed yet another lawsuit against RIPTA in Superior Court, attempting to adjudicate her dissatisfaction with her workers' compensation claims.[1] On April 25, 2018, Barnes signed the settlement agreement that is the subject of the instant suit ("Settlement Agreement") and received one hundred and fifty thousand dollars ($150,000) in consideration for her release of claims and other promises contained therein.

As outlined in the Complaint, however, this did not stop Barnes from her seemingly unending campaign against RIPTA. Just four short months later, on August 23, 2018, Barnes filed yet another lawsuit in Superior Court, in breach of the Settlement Agreement. That lawsuit was dismissed by Hon. Assoc. Justice Melissa A. Long on January 23, 2019, and this dismissal was affirmed just days ago, on December 10, 2020, by the Rhode Island Supreme Court. See Barnes, No. 2019-132-Appeal, at 10, attached as Ex. 1.

---

[1] Barnes also filed a charge against her former union in 2016, and on October 29, 2018 sued it in the United States District Court for the District of Rhode Island, alleging that it aided and abetted RIPTA in discriminating against her. The lawsuit against her former union remains pending.

2

Defendant filed yet another charge against RIPTA, before Rhode Island Commission for Human Rights, on November 20, 2019 seeking individual monetary relief and other damages, in breach of the Settlement Agreement. Finally, in her Motion to Compel, Barnes again states that she is seeking damages from RIPTA, in breach of the Settlement Agreement. See Mot. to Compel at 5 (Barnes "would like the Court to either grant her motion to Compel Arbitration between employee and the employer or to decide on a proper monetary figure along with a medicare set aside" and "is seeking Reinstatement as contemplated by statute with full back pay, benefits and without loss of seniority. Ms [sic] Barnes is also willing to accept a settlement equal to or greater than the time lost out of work and lost time waiting for an arbitration").

## II.    ARGUMENT

RIPTA is not obligated by statute, or by agreement, to arbitrate its claims with Barnes. The sole agreement between RIPTA and Barnes is the Settlement Agreement, which does not include an arbitration provision.

Barnes cites to R.I. Gen. Laws § 39-18-17 to support her contention that RIPTA must arbitrate its breach of contract and declaratory judgment claims. See Mot. to Compel at 1. Barnes wholly misinterprets this law. Section 39-18-6 of the Rhode Island General Laws permits RIPTA to take transit property by eminent domain. Section 39-18-17 requires RIPTA to negotiate with existing unions, and compels it to interest arbitration should it fail to reach an agreement with the union representing employees of a transit property acquired by eminent domain. Nothing in this section obligates RIPTA to arbitrate claims with a former employee who has repeatedly breached a Settlement Agreement.

Defendant also cites to R.I. Gen. Laws § 28-10-2 in support of her Motion to Compel. See Mot. to Compel at 5. Again, Barnes misinterprets this law. Section 28-10-2 prohibits injunctions

3

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 12/14/2020 3:57 PM
Envelope: 2877831
Reviewer: Victoria H

CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 18 of 689 PageID #: 373

in "labor dispute[s]," save for specific circumstances and section 28-10-1 permits the Director of the Rhode Island Department of Labor and Training to promote the voluntary mediation of labor disputes. Labor disputes involve matters concerning collective bargaining and collective representation See Almac's, Inc. v. Boycott, 110 R.I. 36, 43-44, 290 A.2d 52, 56 (1972). The instant dispute is a breach of contract matter. No "labor dispute" exists here warranting mediation, voluntary or otherwise.

Barnes also cites to 9 U.S.C. §§1 et seq., the Federal Arbitration Act ("FAA"), to justify her demand to compel arbitration, yet this statute does not provide the relief she seeks. See Mot. to Compel at 2. The FAA provides merely that agreements to arbitrate are enforceable. See 9 U.S.C. § 2 (arbitration agreements "shall be valid, irrevocable, and enforceable"). There is no such agreement to arbitrate here. Thus, the FAA provides no basis for compelling arbitration.

Multiple times throughout her Motion to Compel, Barnes cites to the collective bargaining agreement between RIPTA and her former union as the basis for her claim to arbitration. See Mot. to Compel at 2-4. That collective bargaining agreement, however, existed between RIPTA and the Amalgamated Transit Union, Div. 618 ("ATU" or the "Union"). Barnes is not a party to that agreement and cannot enforce its terms or unilaterally advance matters to arbitration thereunder, without the Union's consent and participation. Mello v. United Steelworkers, 82 R.I. 60, 65-66, 105 A.2d 806, 809 (1954) ("concerning a collective bargaining agreement made by a union which was the exclusive representative for all the company's employees [and] . . . [t]he right of the claimant to deal with the company with respect to these matters was surrendered to the union"). Barnes has no right to individual relief under any terms of the CBA, and thus no right to arbitrate with RIPTA pursuant to the CBA arbitration provisions.[2]

---

[2] In fact, Barnes is currently suing the ATU in the United States District Court for the District of Rhode Island, claiming it had a duty to bring her termination to arbitration under the terms of the collective bargaining agreement. Barns has

4

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 12/14/2020 3:57 PM
Envelope: 2877831
Reviewer: Victoria H

1:23-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 19 of 689 PageID #: 374

Barnes sets forth that her "defenses" are "duress, fraud, intimidation, retaliation, discriminatory terms and conditions of employment." Mot. to Compel at 2. These defenses do not compel RIPTA to arbitrate its claims. Barnes asserts that her union "aided and abett[ed]" RIPTA to deny her "reasonable accommodations and termination based on disability." Id. Barnes alleges RIPTA "violated the Rhode Island Fair Employment Practices Act, Title 28, Chapters, and the Civil Rights of people with Disabilities Act, Title 32, Chapter 87 of the General Laws of Rhode Island." Id. Not only do these assertions provide no basis to compel arbitration, Barnes waived any and all such claims in the Settlement Agreement, which contains no arbitration clause. Indeed, the Rhode Island Supreme Court noted the Settlement Agreement's effect in its recent decision, when it unequivocally stated "to the extent that [Barnes'] claims are unrelated to workers' compensation, the settlement agreement flatly precludes [her] from bringing them." Barnes, No. 2019-132-Appeal, at 9, Ex. 1.

Barnes' reference to the Fourteenth Amendment likewise does not entitle her to compel arbitration. See Mot. to Compel at 3 (Barnes "invokes her Forthteeth [sic] Amendment which addresses many aspects of citizenship and the rights of equal protection of the laws"). The Fourteenth Amendment's guarantees regarding due process of law and equal protection under the law provide no basis to compel RIPTA to arbitrate a breach of contract dispute.

Barnes' remaining allegations appear to be merely a rehashing of her workers' compensation claim for benefits and/or reinstatement. Mot. to Compel at 3 (Defendant "would be entitled to payments . . . and those payments would be made in accordance with the worker's compensation act, and . . . Ms [sic] Barnes would have been able to return back to her original

---

selected her forum for such a claim – the United States District Court – and pursuant to the "first-to-file" rule, cannot pursue the same claims in this action. In re: CVS Health Corp. Sec. Litig., C.A. Nos. PC-2019-5658, PC-2019-6685, 2020 R.I. Super. LEXIS 79, at *17 (R.I. Super. Ct. Sep. 1, 2020).

4816-2677-5764.2 088768.1017

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 12/14/2020 3:57 PM
Envelope: 2877831
Reviewer: Victoria H

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 20 of 689 PageID #: 375

position without loss of rating or seniority loss"), at 5 (Defendant "is seeking Reinstatement as contemplated by statute with full back pay, benefits and without loss of seniority"), at 6 ("RIPTA has refused to voluntarily pay . . . weekly indemnity benefits or to settle . . . open claims . . . and it is pending in Workers Compensation appeals Court. RIPTA has not given Ms. Barnes any money towards her medicare set aside since refusing to reinstate or to reclassified Ms. Barnes . . . . Ms Barnes has had medicals back dating from 2017 . . . but RIPTA failed to either take responsibility or to have the problem properly diagnosed"). The Rhode Island Supreme Court held that Barnes cannot bring these claims in Superior Court, for lack of jurisdiction. <u>Barnes</u>, No. 2019-132-Appeal, at 10, <u>Ex. 1</u>.

## III.    CONCLUSION

There is no basis in law to compel RIPTA to arbitrate its contract dispute with Defendant. For the foregoing reasons, Plaintiff requests that the Court deny Defendant's Motion to Compel, in full.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>RHODE ISLAND PUBLIC TRANSIT AUTHORITY,</td></tr>
<tr><td></td><td>By its attorneys,</td></tr>
<tr><td></td><td>/s/Jillian S. Folger-Hartwell<br>Jillian S. Folger-Hartwell (#6970)<br>Matthew D. Strauss (#10072)<br>LITTLER MENDELSON, P.C.<br>One Financial Plaza, Suite 2205<br>Providence, RI  02903<br>401.824.2500<br>401.633.6853 (fax)</td></tr>
<tr><td>December 14, 2020</td><td>jfolgerhartwell@littler.com<br>mstrauss@littler.com</td></tr>
</table>

6

4816-2677-5764.2 088768.1017

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of December, 2020, the foregoing Objection to Motion to Compel was e-filed and served through the electronic filing system and by email on the following party.  The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916
mickeda5@gmail.com

/s/ Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell

Firmwide:157027180.1 088768.1003

4816-2677-5764.2 088768.1017

7

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 12/14/2020 3:57 PM
Envelope: 2877831
Reviewer: Victoria H

Case 1:21-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 22 of 689 PageID #: 377

# EXHIBIT 1

8

4816-2677-5764.2 088768.1017

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 12/14/2020 3:57 PM
Envelope: 2877831
Reviewer: Victoria H.

CBSE-1-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 23 of 689 PageID #: 378

December 10, 2020

**Supreme Court**

No. 2019-132-Appeal.
(PC 18-6082)

Mickeda Barnes et al.                    :

v.                    :

Rhode Island Public Transit
Authority.                    :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email:  opinionanalyst@courts.ri.gov,  of  any typographical  or  other  formal  errors  in  order  that corrections may be made before the opinion is published.

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 12/14/2020 3:57 PM
Envelope: 2877831
Reviewer: Victoria H

1:22-cv-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 24 of 689 PageID #: 379

**Supreme Court**

No. 2019-132-Appeal.
(PC 18-6082)

Mickeda Barnes et al.          :

v.                             :

Rhode Island Public Transit    :
Authority.

Present:  Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

# O P I N I O N

**Justice Goldberg, for the Court.**  This appeal came before the Supreme Court in conference on October 8, 2020, in accordance with an order directing that the case be decided on the basis of the filings by the parties.[1]  The plaintiff, Mickeda Barnes (plaintiff), appeals *pro se* from the dismissal of her complaint in the Superior Court pursuant to Rules 12(b)(1), (b)(3), and (b)(6) of the Superior Court Rules of Civil Procedure.  After careful review of the parties' memoranda, we are of the opinion that cause has not been shown and that this appeal may be

---

[1] This matter was scheduled for oral argument on the show cause calendar before this Court on October 7, 2020.  The plaintiff moved for a continuance on September 25, 2020, which this Court granted, in part.  On October 1, 2020, the Court ordered the case to be decided on the papers.

- 1 -

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 12/14/2020 3:57 PM
Envelope: 2877831
Reviewer: Victoria H

CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 25 of 689 PageID #: 380

summarily decided.  For the reasons set forth in this opinion, we affirm the order of the Superior Court.

## Facts and Travel

This case concerns the sufficiency of a 245-page pleading[2] that plaintiff filed in Superior Court against the defendant, Rhode Island Public Transit Authority (defendant or RIPTA), in 2018.[3]  The plaintiff was employed by RIPTA as a bus driver from 2002 to 2016; she has an extensive history of work-related injury claims against RIPTA and lengthy absences from work.  During the pendency of this appeal, there were at least three workers' compensation petitions pending in the Workers' Compensation Court and four petitions pending in the Appellate Division of the Workers' Compensation Court.  The plaintiff has filed at least twenty-five work-related claims against RIPTA since 2008.

In November 2017, plaintiff filed an action in the United States District Court for the District of Rhode Island, alleging that defendant discriminated against her, in violation of state and federal law.  Five months later, she filed an action in Superior Court, alleging that defendant had violated her constitutional and civil rights, failed to compensate her for workplace injuries, and failed to

---

[2] While the complaint itself was thirteen pages, it included over 200 pages of exhibits.

[3] We glean the facts largely from plaintiff's complaint, documents attached thereto, proceedings referenced therein, and court records.

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 12/14/2020 3:57 PM
Envelope: 2877831
Reviewer: Victoria H

CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 26 of 689 PageID #: 381

reclassify her position.   Thereafter, on April 25, 2018, plaintiff and defendant executed a settlement agreement and general release of all claims (settlement agreement) in both actions and "each and every claim or demand of every kind arising up to the date [plaintiff] sign[ed] [the settlement] agreement[.]"  In exchange for this settlement and release, plaintiff was paid $150,000.  The plaintiff was not satisfied.

Four months later, despite the settlement agreement, plaintiff filed yet another complaint—the instant action—in Superior Court.[4]  The plaintiff now seeks $2.5 million for RIPTA's purported failure to compensate her for past workplace injuries.[5]  According to plaintiff, RIPTA should have offered her more money in the settlement agreement; she seeks "a full and complete settlement of all claims and injuries that are work related to be paid up front * * *."  The complaint also contains several other vague assertions against defendant, such as alleged misrepresentations by defendant in order to reduce its medical payments under the Workers' Compensation Act.  Although the complaint refers to 42 U.S.C. § 1983, plaintiff failed to assert any specific violations under that statute.  The complaint

---

[4] The other named plaintiffs in the Superior Court action, Sidney Robertson and Doreen Robertson, are the dependent daughters of plaintiff. They have not joined in plaintiff's appeal to this Court, nor have they filed separate notices of appeal.

[5] The plaintiff also sought a lien on RIPTA's property, which request is not at issue in this appeal.

- 3 -

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 12/14/2020 3:57 PM
Envelope: 2877831
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 27 of 689 PageID #: 382

also references the Americans with Disabilities Act (ADA), but does not expressly assert a claim under the ADA.

The defendant promptly moved to dismiss plaintiff's complaint in accordance with Rules 12(b)(1), (b)(3), and (b)(6) of the Superior Court Rules of Civil Procedure. RIPTA argued in support of its motion that the Superior Court lacked subject-matter jurisdiction over the claims set forth in plaintiff's complaint because they are essentially workers' compensation claims. The defendant also argued that the April 2018 settlement agreement precluded plaintiff from bringing the remaining claims. In response, plaintiff filed a motion for summary judgment, and defendant filed an objection, incorporating by reference its memorandum in support of its motion to dismiss.[6]

A hearing on defendant's motion to dismiss was held on January 9, 2019. The trial justice, having read plaintiff's 245-page filing, indicated that she was having difficulty understanding the nature of the claims. The trial justice asked plaintiff to articulate, in her own words, the background of the case and what she was claiming. The trial justice devoted most of the hearing to a discussion with plaintiff for purposes of discerning exactly what she alleged against RIPTA,

---

[6] The plaintiff also filed an objection to defendant's motion to dismiss. On October 30, 2018, the trial justice entered an order denying, without prejudice, plaintiff's motion for summary judgment.

- 4 -

whether those allegations were properly pled in the complaint, and whether the matter belonged in the Superior Court.

After a lengthy and patient colloquy, the trial justice determined that plaintiff intended to file a claim for breach of contract under the settlement agreement, a discrimination claim under Title VI of the Civil Rights Act of 1964, workers' compensation claims for a traumatic brain injury and a knee injury, and a "reclassification" claim. The plaintiff stated that she believed she could pursue the claims in the Superior Court based on advice she received from someone in the Department of Labor and Training.

The trial justice granted defendant's motion to dismiss, stating that plaintiff's complaint did not articulate the claims that plaintiff was asserting and that the complaint failed to adequately inform defendant of the nature of her claims. The trial justice found that the Superior Court did not have jurisdiction over the traumatic brain injury and knee injury claims because they were committed to the Workers' Compensation Court. She also found that the complaint did not properly articulate a breach-of-contract claim and that plaintiff failed to show that Title VI entitled her to a private right of action. Turning to plaintiff's purported reclassification claim, the trial justice was uncertain of the nature of the alleged injury or whether it was cognizable as part of plaintiff's discrimination claim.

- 5 -

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 12/14/2020 3:57 PM
Envelope: 2877831
Reviewer: Victoria H

CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 29 of 689 PageID #: 384

The trial justice graciously granted plaintiff leave to file an amended complaint within fourteen days of the hearing to more clearly set forth the breach of contract, Title VI, and reclassification claims. She informed plaintiff that her right to amend did not include the right to restate any workers' compensation claims. The trial justice warned plaintiff that, if she failed to file an amended complaint within fourteen days of the hearing, the entire case would be dismissed. The plaintiff failed to do so.

On January 18, 2019, the trial justice entered an order memorializing her decision from the hearing. The order granted plaintiff until January 23, 2019, to file an amended complaint; otherwise "all her claims are dismissed, with prejudice." The plaintiff filed a timely notice of appeal to this Court.

## Standard of Review

"The sole function of a motion to dismiss is to test the sufficiency of the complaint." *Narragansett Electric Company v. Minardi*, 21 A.3d 274, 277 (R.I. 2011) (brackets omitted) (quoting *Laurence v. Sollitto*, 788 A.2d 455, 456 (R.I. 2002)). "In passing on a Rule 12(b) dismissal, this Court applies the same standard as the trial justice." *Id.* at 278. "We thus are confined to the four corners of the complaint and must assume all allegations are true, resolving any doubts in plaintiff's favor." *Id.* "A motion to dismiss may be granted only 'if it appears beyond a reasonable doubt that a plaintiff would not be entitled to relief under any

- 6 -

conceivable set of facts.'" *Id.* (brackets omitted) (quoting *Estate of Sherman v. Almeida*, 747 A.2d 470, 473 (R.I. 2000)).

Furthermore, "[a] motion under Rule 12(b)(1) questions a court's authority to adjudicate a particular controversy before it." *Boyer v. Bedrosian*, 57 A.3d 259, 270 (R.I. 2012). "This Court reviews *de novo* whether a court has subject-matter jurisdiction over a particular controversy." *Long v. Dell, Inc.*, 984 A.2d 1074, 1078 (R.I. 2009). "In ruling on a Rule 12(b)(1) motion, a court is not limited to the face of the pleadings. A court may consider any evidence it deems necessary to settle the jurisdictional question." *Boyer*, 57 A.3d at 270 (brackets omitted) (quoting *Morey v. State of Rhode Island*, 359 F. Supp. 2d 71, 74 (D.R.I. 2005)).

## Analysis

On appeal, plaintiff argues that she is entitled to recovery under G.L. 1956 §§ 9-32-1 and 9-32-4 of the Uniform Enforcement of Foreign Judgments Act. The plaintiff also argues that defendant failed to accommodate her disability under the ADA. She asserts that defendant owes her workers' compensation benefits for the dates that she was unable to work due to injury. The plaintiff also contends that the settlement agreement did not pertain to work-related injuries or unemployment issues. She also asserts that the settlement agreement should have been reviewed by the Attorney General. These claims are without merit.

We begin by noting that plaintiff has not provided this Court with any

- 7 -

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 12/14/2020 3:57 PM
Envelope: 2877831
Reviewer: Victoria H

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 31 of 689 PageID #: 386

meaningful discussion of the issues raised on appeal. This Court has consistently held that "[s]imply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue." *Fisher v. Applebaum*, 947 A.2d 248, 252 (R.I. 2008) (quoting *Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1131 n.1 (R.I. 2002)). Here, plaintiff's arguments on appeal merely mirror the assertions that she made before the trial justice at the January 9, 2019 hearing. The plaintiff has failed to address the basis upon which she takes issue with the trial justice's dismissal of her complaint, and she has failed to provide any authority in support of her contentions. Because "a mere passing reference to an argument is insufficient to merit appellate review[,]" plaintiff's purported arguments on appeal are waived under this Court's raise-or-waive rule. *Tondreault v. Tondreault*, 966 A.2d 654, 664 (R.I. 2009) (quoting *DeAngelis v. DeAngelis*, 923 A.2d 1274, 1282 n.11 (R.I. 2007)); *see Broccoli v. Manning*, 208 A.3d 1146, 1149 (R.I. 2019) (finding the plaintiff's arguments waived under the "raise-or-waive rule for failure to meaningfully develop or discuss what error was committed on the part of the hearing justice").

Notwithstanding these extraordinary deficiencies, our careful review of the record in this case demonstrates that the trial justice did not err in granting

- 8 -

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 12/14/2020 3:57 PM
Envelope: 2877831
Reviewer: Victoria H

CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 32 of 689 PageID #: 387

defendant's motion to dismiss. Rule 8(a) of the Superior Court Rules of Civil Procedure states, in relevant part, that "[a] pleading which sets forth a claim for relief * * * shall contain * * * [a] short and plain statement of the claim showing that the pleader is entitled to relief * * *." In most instances, a plaintiff who files a complaint in a civil action "is not required to draft the pleading with a high degree of factual specificity." *Hyatt v. Village House Convalescent Home, Inc.*, 880 A.2d 821, 824 (R.I. 2005). However, "the drafter of a complaint has * * * responsibilities with respect to providing some degree of clarity as to what is alleged; due process considerations are implicated, and we require that 'the complaint give the opposing party *fair and adequate notice* of the type of claim being asserted.'" *Id.* (quoting *Butera v. Boucher*, 798 A.2d 340, 353 (R.I. 2002)).

Our review of plaintiff's 245-page pleading convinces us that plaintiff's claims were not properly set forth and failed to provide defendant with adequate notice of the basis of her assertions. The complaint does not articulate with any clarity a claim under Title VI, or breach of contract, or for "reclassification," which plaintiff alluded to at the January 9, 2019 hearing. Furthermore, to the extent that these claims are unrelated to workers' compensation, the settlement agreement flatly precludes plaintiff from bringing them. Consequently, the trial justice properly dismissed the complaint.

Lastly, the complaint outlines a multitude of work-related injuries and

- 9 -

alleges that the defendant is responsible for paying the plaintiff's medical expenses and compensating her for missed work. However, the plaintiff is barred from asserting all work-related injury claims in Superior Court. Subject-matter jurisdiction is vested in the Workers' Compensation Court, in accordance with G.L. 1956 § 28-35-11.[7] Indeed, that provision applies "to any and all employees * * * who are injured or hired in the state of Rhode Island." Section 28-29-1.3. Accordingly, those claims were properly dismissed.

## Conclusion

For the foregoing reasons, we affirm the order of the Superior Court. The record may be remanded to the Superior Court.

---

[7] General Laws 1956 § 28-35-11 provides that "[a]ll questions arising under chapters 29 – 38" of title 28 of the general laws "shall * * * be determined by the workers' compensation court * * *."

- 10 -

**State Of Rhode Island**                    **Superior Court**
**Providence S,C.**

_Hearing_
_Date Thursday_
_Dec 17, 2020_

**Mickeda S. Barnes**

**V.**                                       **P.C. 2020-06065**

**Rhode Island Public**
**Transit Authority**


### Motion to Compel Union Contract Agreement to Arbitration.


Ms. Barnes has several open claims with her employer and has to close the claims they are personal injury complaints and she has sought medical treatment and continues to deal with the medical issues and is on medications due from these injuries of the open claims.

1. **Ms. Barnes is seeking to compel arbitration under the terms of the Company's Benefit Injury Plan.**

2. **Ms.Barnes also has another option to seek arbitration under it's grievance and arbitration procedure as noted in her Union 618 contract between employer and employee.**

3. **Ms. Barnes Employer RIPTA was created by the Rhode Island General Assembly in 1964 and has a 2012 Title 39 Public Utilities Carriers Statute Chapter 39-18-17 Labor relations with employees of acquired transit facilities.**

**(b) In Chapter §39-18-17 Ripta law  states'** No officer or employee so transferred and becoming an officer or employee of the authority in accordance with this section shall,by reason of the transfer, without his or her consent be removed, lowered in rank or compensation, or suspended except for just caused and for reasons specifically given to him or her in writing twenty-four hours after removal, suspension, or transfer or lowering in rank or compensation; nor shall any officer or employee by reason of transfer,without his or her consent, **be in any worst position in respect to worker's compensation, pension,superannuation,sickness,or other benefits or other allowances granted by his or her previous employer to him or her,**

SUPERIOR COURT
FILED
HENRY S. KINCH. JR.

20 DEC -1 AM 11: 29

1

the widowed person,family,or personal representatives than he or she enjoyed under any person,firm,or corporation under whom he or she held his or her employment immediately prior to his or her transfer to the authority.

**(c) In case of any labor dispute where collective bargaining does not result in agreement the Authority shall offer to submit the dispute to Arbitration** by a board composed of three persons, one appointed by the Authority, one appointed by the labor organization representing the employee, and the third member agreed upon by the labor organization and the Authority.

Disputes between the parties have been mediated and agreement entered into by both parties on record and the employer breached the agreement and then not following thru with another settlement to satisfy the claims Ms.Barnes has with her employer or that have been argued in Workers Compensation Court over four years between the parties and in Superior Court cases argued over two and half years. Ms. Barnes and RIPTA falls within ambit and an Arbitration agreement that does exist and should be used to settle the disputes resolution, the costly litigation, the personal injury liability and the outstanding worker's compensation claims that are left open with Medicare and Ms.Barnes family.

Congress adopted the Arbitration Act in 1925. Congress judgements on arbitration had more to offer the promise of a quicker more informal cheaper resolution for everyone involved. Congress directed the courts to treat arbitrations agreements as 'Valid irrevocable and enforceable'. 9 U.S.C.§2. Moses H. Cone Memorial Hospital V. Mercury Constru. Corp.460 U.S. 1 24(1983) citing Prima Paint Corp V. Flood&Conklin MFG Co. 388 US.395 (1967) .The meaning of the Statue is to have a speedy and not to DELAY AND OBSTRUCTION IN THE COURTS.

Ms Barnes indicates her intention to use individualized rather than class or collective action procedures. The Arbitration Act protects this individualized collective action procedure( see AT&T Mobility LLc V Concepcion, 563 U.S.333(2011).

Ms Barnes' defenses are duress, fraud, intimidation ,retaliation, discriminatory terms and conditions of employment, Union aided and abetting with her employer Ripta to Ms. Barnes with denial of reasonable accommodations and termination based on disability. The employer Ripta violated the Rhode Island Fair Employment Practices Act, Title 28, Chapter5, and the Civil Rights of people with Disabilities Act, Title 42, Chapter 87 of the General Laws of Rhode Island. With respect to the allegations on which the Commissioner has found probable cause, RIGL section 28-5-24.1(c). **(EXHIBIT A)**

Ms. Barnes presented her grievances to her union and employer when she was terminated and the union and employer decided to skip grievance steps and deny Ms. Barnes her right to reinstatement. Ripta and her union both told Ms.Barnes if she wanted arbitration she would half

2

to give up her right to sue Ripta collecting weekly worker's compensation benefits for a work related injury is not suing Ripta.

Ms Barnes also has a State Law defense which is the Law the General Assembly required that Ripta follow these Laws RIGL 39-18-17 Labor Relations Protections. Ripta has interfered with Ms. Barnes Civil Rights and Constitutional Rights her 14 Amendment Rights of due process by not allowing Ms.Barnes her Arbitration. There are no waivers agreements between Union 618 and the Employer RIPTA not to give Ms. Barnes a Arbitration for her benefits and any other issues Ms Barnes is arguing in her Union Contract that concern her and offered her many different disability covered provisions of the worker's compensation act. If Ms Barnes has any kind of changes in departments at Ripta she would be entitled to payments changes for the purposes of rehabilitation and those payments would be made in accordance with the worker's compensation act, and upon recovery from the injury Ms Barnes would have been able to return back to her original position without loss of rating or seniority loss.( **EXHIBIT B).**

Ripta terminated Ms Barnes on February 15, 2016 using  section 1.25 Sick Leave paragraph (h) page33 of her union contract. Ripta never used a section from the worker's compensation law to terminate Ms.Barnes from her position which leaves Ms.Barnes to Have the Worker's Compensation Court to Compel to Arbitration Ms.Barnes is full dispute in court.Ms  Barnes dispute is anything used from the contract agreement between Ripta and the Union 618 and the employee is to be Arbitrated by law.**(EXHIBIT C).**

The worker's compensation court is responsible for reinstatements and if Ripta felt like Ms. Barnes did not meet the reinstatement period requirement Ripta should have put in a petition that Ms. Barnes could not return to work due to her ongoing disability instead Ripta had me go to a Court and filed a petition for me to end my benefits and sent Ms. Barnes to see multiple court appointed IME doctors all whom all said Ms. Barnes could return back to work and had Ms Barnes taking off worker's compensation benefits. (EXHIBIT D).

 In Ms. Barnes Union Agreement on section 1.25 Sick Leave page 34 paragraph (j). Any difference of opinion between the employee's physician and the physician of the authority will be determined by an impartial third party physician. The decision of the impartial physician is binding and final so Ms. Barnes should have been reinstated back to work instead she was denied and Ms Barnes filed a grievance with her Union, The Grievance steps were skipped by Riptas Management and Ms. Barnes was not given her Arbitration.

Ms Barnes invokes her Forthteeth  Amendment which addresses many aspects of citizenship and the rights of equal protection of the laws.

In Ms. Barnes Union contract Section 1.10 grievances (page 11)
(b) Should difference or disputes arose between the authority and employee, group of employees or the association as to the meaning or application of this agreement rules policies or practices

3

the parties shall make effort to settle differences promptly by the grievance and arbitration procedure set forth below;.**(EXHIBIT E)**

There is a big difference in Ms. Barnes case than any other case similar to Ms. Barnes worker's compensation case. Ms Barnes' employer has been created by RI General Assembly Ripta also certified to the FTA for employee protections in regards to Federal Government money Ripta also is Title 6. When it comes to disability with the ADA and the rehabilitation Act.Ripta has a Law RIGL 39-18-17 Labor Relations which also states no employee from Ripta can be transferred, removed,suspended,or terminated without his or her consent, or be in any worst position in respect to worker's compensation .pension, superannuation, sickness or other benefits or allowances granted by his or her previous employer to him or her. Or she enjoyed under any other person, firm, or corporation under whom she had employment with the authority.

Ms Barnes had to file for unemployment when she was terminated Ms Barnes was also taken off of worker's compensation. Ms Barnes went to a Board of Review with the Department of Labor in regards to her back dating in order to receive unemployment benefits because she was on worker's compensation. The board found in Ms.Barnes Favor and made note to her account that Ripta also denied Ms.Barnes her right to reinstatement back to her job. In Ms. Barnes claim decision with the Department of Labor and Training the conclusion was the right to reinstatement shall be subject to the provisions for seniority rights and other employment restrictions contained in a valid collective bargaining agreement between the employer's and a representative of the employee's and nothing shall exempt any employer from or excuse full compliance with any applicable provisions of the americans with disabilities act, 42 U.S.C. §12101 et seq., and chapter 87 of title 42.**(EXHIBIT F).**

The worker's compensation act provides to preserve contractual rights and leaves intact contractual claims to enforce these rights of the Collective Bargaining agreement. The Worker's compensation act grants a one year reinstatement and an eighteen month reinstatement back to work if you were in approved therapy by the Judge. Ripta has violated section §28-33-47(d) this section deems it unlawful employment practices. If the employee applies for reinstatement under this section and the employer refuses to reinstate the employee the worker's compensation court is authorized to order reinstatement and award back pay and cost if fringe benefits are lost during the period as appropriate. Ripta has not given Ms.Barnes her Grievance as Ms.Barnes has asked for her Grievance on multiple times and has been silenced on her right and what was to be acted upon noted in her Union Contract for disputes in regards to labor disputes and workers' compensation issues that affected Ms. Barnes to receive her weekly benefits and her reinstatement.

Ms Barnes was Approved by Judge Salam in March, 2016 a court order to physical therapy per Dr Peter Pizzerello. **(EXHIBIT G).**

4

Ms Barnes has never ceased to be regarded as an employee and is seeking Reinstatement as contemplated by statute with full back pay, benefits and without loss of seniority.  Ms Barnes is also willing to accept a settlement equal to or greater than the time lost out of work and lost time waiting for an arbitration I was unconscionable waiting for and was either denied or delayed in the court system .

In Regards to Ms Barnes Federal case against Ripta during the Global settlement entered into on December 1. 2017 in front of Chief Ferreira  Ms Barnes discrimination Attorney Sonya Deyoe was ask to withdraw the case out of court to save Ripta money once it was done Ripta backed out of the global settlement. Ripta had Ms Barnes on false pretense believe that the two parties entered into a global settlement that was agreed to and placed on record on December 1, 2017 and was going to settle but Ripta never settled it. Ripta delayed Ms Barnes another two years before she received any money for weekly worker's compensation benefits. Ms Barnes has not had any weekly payments nor any kind of workers compensation settlements for any of her work related accepted claims and she no longer works for Ripta. Ms Barnes has not had any Arbitration hearing between her and Ripta as per her Union Contract.

  Ms. Barnes was injured on 02-12-2015 and has not been back to any job Ms. Barnes had applied to many jobs and did many interviews on her own in the last five years. Ms. Barnes was offered two jobs, one at First Student in 2017 and did not meet the standards and the second job offered to her in 2020 but Ms Barnes now needs another surgery from the work injury she suffered on 02-12-2015.

  The ongoing injuries that were left untreated due to the denial of reinstatement back to work was very important. If she was to have returned back to work Ripta would have no choice but to find out what was injured and to fix her injuries. Ripta had the help of her Union to aid and abet to commit this illegal act and the reports are in the exhibits from the Commission of Human Rights findings.

  Ms Barnes would like the Court to either grant her motion to Compel Arbitration between employee and the employer or to decide on a proper monetary figure along with a medicare set aside, And no court of this state shall have jurisdiction to issue a temporary or permanent injunction in any case involving a labor dispute except after hearing the testimony of witnesses in open court, with opportunity for cross-examination, in support of the allegations of a complaint made under oath, and testimony in opposition, if offered, and except after findings of facts by the court to the effect under RIGL.§28-10-2 Prerequisites and proof required for injunctions. Ms Barnes has already been through a two and half year  mediation with her employer from September 26, 2017 until February 15, 2019 trying to exempt themselves from full compliance with the Americans with Disability Act, 42 U.S.C. §12101 et seq., and chapters

5

87 of title 42. Contingent on the Rhode Island Workers Compensation Law which stated in part the right to reinstatement and other benefits Ms Barnes is entitled to per her Union Contract with Ripta, her employer.. Ms Barnes would like to know what her future holds for her and to end this litigation and to move on. Ms.Barnes per RIGL§ 28-10-1 ask for mediation and conciliation by the Director of Labor and training in regards to Arbitration or for State compliance with Title 6 requirements for FTA money required mediation for being self-insured and to finalize and close out open work related injury claims with Ms. Barnes employment in commerce transportation with Ripta if Ripta does not want to reinstate or reclassify Ms Barnes back to her position as a city bus driver per RIGL. § 28-10-3"labor dispute "defined.

Ms Barnes was denied on October 16, 2020 by Ripta and Beacon Mutual TPA for weekly indemnity benefits due to Ms. Barne for a covered work injury that happened on February 12.2015 which was a fall on snow and ice causing Traumatic left hand carpal tunnel with ulnar nerve damage.  Due to a recurrence of her left hand injury left untreated for two years after being approved by worker's compensation court in 2015 an ex-parte for major surgery was approved so Ms. Barnes could have surgery for the second time on  February 9, 2017.

 Ms Barnes now has to have surgery for a third time on her cubital tunnel on her left elbow on December 3, 2020. Ripta has refused to voluntarily pay Ms. Barnes weekly indemnity benefits or to settle Ms. Barnes open claims even though Ms Barnes does not hold her position as a driver at Ripta and it is pending in Workers Compensation appeals Court. Ripta has not given Ms. Barnes any money towards her medicare set aside since refusing to reinstate or to reclassified  Ms. Barnes to returned to her position as a commerce transportation driver. Ms Barnes has had medicals back dating from 2017 with notes from her treating doctors of possible cubital tunnel symptoms and she may need to have surgery for in the future for cubital tunnel but Ripta failed to either take responsibility or to have the problem properly diagnosed and this is where Ms. Barnes Union contract comes in to protect her from violations of her Union contract with her employer Ripta.

Ms. Barnes cannot have her Union to represent her because of pending litigation against her Union in Federal Court for Failure to represent Ms Barnes per Commision of Human Rights probable cause findings in 2017 for aiding and abetting with Ripta to denied reclassification and disability discrimination against Ms Barnes in which is a violation of Ms Barnes Union Contract before Judge Hyatt at the Commision. Therefore her Union cannot handle the Arbitration and Ms. Barnes Grievance needed for the Court to step in and get Ms Barnes her due process by law.

Ms Barnes argues in her Union contract between her and Ripta states on page 35 of this agreement that an employee who suffers a job related injury the compensability of which is not disputed will become eligible to receive worker's compensation weekly indemnity benefits compensation on the 4th day disability as mandated by the Rhode Island worker's compensation act of May 1992. Any changes Rhode Island workers' compensation law will be incorporated into this contract."page 35 section(o) and (p)". of defendants union contract.

6

Defendant was also denied her grievance to have her dispute regarding employee's fitness to return to duty shall be resolved in accordance with section of defendants union contract page 33(h),(i),(j), and (o) in which defendant believes she is in contract with Ripta for in union contract.

The General assembly created these laws for Ripta and RI Courts system to enforce to make sure employees received due process. Defendant asked the Superior Court to enforce Arbitration in regards to the Ripta's law created by the General Assembly created title 39 Public Utilities and Carriers and Chapter §39-18-17 Labor Relations with employees of acquired transit facilities under law for disputes regarding Labor Relations.

**Ms Barnes requests trial by jury if arbitration, mediation or settlement of open claims cannot be properly settled.**

## CERTIFICATION

I hereby certify that, on the 1st day of December, 2020, I filed and served this document through the electronic filing system on the following parties: Nickolas R. Mancini, Esq Manicin Law, LLC  222 Jefferson Blvd, suite 4A Warwick R.I. 02888. This document electronically filled and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

Jillian S.F.Hartwell Littler Mendelson, PC one Financial plaza, suite 2205
Providence R.I. 02903 (401) 824-2500

I certify I will send a copy to Ripta's attorneys Nickolas Mancini and Jillian Hartwell by first class mail.

Respectfully submitted,
Mickeda S Barnes PRO-SE
34 Dunbar Ave
Rumford R.I. 02916
Mickeda5@gmail.com

7

7







STATE OF RHODE ISLAND

# COMMISSION FOR HUMAN RIGHTS

June 29, 2017

*Chair*
Dr. John B. Susa

*Commissioners*
Iraida Williams
Camille Vella-Wilkinson
Alberto Aponte Cardona, Esq.
Rochelle Bates Lee
Angelyne E. Cooper, Esq.
Tolulope Kevin Olasanoye, Esq.

*Executive Director*
Michael D. Évora, Esq.

Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916

RE:   RICHR 16 EPD 019      EEOC NO. 16J-2015-00323
        Mickeda Barnes v. Rhode Island Public Transit Authority

Dear Mrs. Barnes:

On **June 29, 2017**, a Preliminary Investigating Commissioner carefully reviewed and considered the information gathered during the course of the investigation by members of the Commission staff. The Commissioner has determined that there is **no probable cause** with respect to the allegations of: **discriminatory terms and conditions of employment based on race and color; denial of promotion based on race, color and disability; and retaliation.** This concludes the Commission processing of those portions of the charge.

The Commissioner has determined that there is **probable cause** to believe that that the **respondent has violated the Rhode Island Fair Employment Practices Act, Title 28, Chapter 5, and the Civil Rights of People with Disabilities Act, Title 42, Chapter 87 of the General Laws of Rhode Island,** with respect to allegations of **discriminatory terms and conditions of employment, denial of reasonable accommodation, and termination based on disability.**

With respect to the allegations on which the Commissioner has found probable cause, R.I.G.L. Section 28-5-24.1(c) provides as follows:

> (c) As to cases commenced in the commission after the effective date of this act, the complainant or the respondent may elect within twenty (20) days after receipt of a finding of probable cause, to terminate by written notice to the commission all proceedings before the commission and have the case heard in the superior court.  In the event of an election to terminate the proceedings, the commission shall issue a right to sue letter to the complainant with a copy of the letter sent to all parties.  The complainant shall have the right to commence suit in the superior court within any county as provided in § 28-5-28 within ninety (90) days of the date of the right to sue letter.  Either party may claim a trial by jury in the superior court.  Notwithstanding the termination of proceedings before the commission upon the



STATE OF RHODE ISLAND

# COMMISSION FOR HUMAN RIGHTS

granting of the right to sue notice, the parties may agree to have the commission seek to conciliate or mediate settlement of the case within the ninety (90) day period in which the complainant has the right to commence suit in superior court.

**Chair**
Dr. John B. Susa

**Commissioners**
Iraida Williams
Camille Vella-Wilkinson
Alberto Aponte Cardona, Esq.
Rochelle Bates Lee
Angelyne E. Cooper, Esq.
Tolulope Kevin Olasanoye, Esq.

**Executive Director**
Michael D. Évora, Esq.

If the complainant or respondent wants the above-entitled matters on which the Commissioner found probable cause heard and decided in Superior Court, that party must notify the Commission in writing within twenty (20) days of his/her receipt of this letter. The notice of election should be addressed to me at the above address and a copy sent to all of the parties. If such an election is made, the Commission will issue a right to sue notice to the complainant who will then have ninety (90) days to commence suit in Superior Court. Any party may claim a trial by jury in the Superior Court.

If no party makes the election discussed above, the Commission will continue to process the case.

Should you wish the Commission to assist in the possible resolution/conciliation of this matter, please contact the conciliator listed below.

Sincerely,

Michael D. Évora, Esq.
Executive Director

NOTE:  Conciliator:  Michael D. Évora, 222-7561

CC:

MDE/bar

---



# STATE OF RHODE ISLAND
# COMMISSION FOR HUMAN RIGHTS



180 Westminster Street, Providence, RI 02903  Tel. 401-222-2661  Fax: 401-222-2616  Voice Relay: 711

Michael D. Évora, Esquire
Executive Director

*Important.*
*2nd page has*
*Notes Aided and*
*Abetted with*
*RIPTA.*

April 4, 2018

**Sent via email**

Mrs. Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916

RE:  RICHR NO.  16 EPD 105    EEOC NO.16J-2016-00051
     Mickeda S. Barnes vs. Amalgamated Transit Union Division 618 AFL-CIO et al

Dear Mrs. Barnes:

I am writing in reference to the above-cited charge. I have completed the investigation of this matter and I will recommend that a Preliminary Investigating Commissioner issue a split ruling.

Regarding the charge of denial of promotional opportunity based on disability, race, and color, and the charge of discriminatory terms and conditions of employment based on race, color and sex, I will recommend a ruling of **no probable cause**. I am also recommending that there is **no probable** cause to believe that your grievances regarding discipline were mishandled based on disability.  Furthermore, I am recommending that there is **no probable** cause that Nick DeCristofaro discriminated against you based on disability.  My rationale is as follows:

The evidence does not support the allegations that the respondents did not properly represent you based on your race, sex and color.  The evidence and testimony did not demonstrate that there was any pattern by the respondents of failing to represent against members based on race, color and sex.  Furthermore, no specific examples were given as to how you were treated differently by the respondents based on your race, color and sex.  Additionally, there was no evidence on the recordings provided by you which would lead to the conclusion that race, color and sex were factors in the union's failure to represent you.

Regarding the allegation of that the union failed to properly represent you based om your disability, the evidence shows that the respondents did follow their grievance procedure when you were disciplined.  The evidence is clear that they filed a grievance on your




# STATE OF RHODE ISLAND
# COMMISSION FOR HUMAN RIGHTS

180 Westminster Street, Providence, RI 02903   Tel. 401-222-2661   Fax: 401-222-2616   Voice Relay: 711

**Michael D. Évora, Esquire**
**Executive Director**

behalf when you were disciplined for the alleged bottle throwing incident and the incident regarding the Cranston Fire Department.

Page Two
16 EPD 105
Barles vs Amalgamated ATU 618 AFL-CIO et al

Finally, regarding the allegation regarding Nick DeCristofaro, the testimony given at the Predetermination Conference, it became clear that he was not involved in the any of the decisions regarding the filing or non-filing of your grievances. According to the testimony, which was credible, Mr. DeCristofaro was thrown into the situation at the last minute by the other respondents with no preparation and therefore was unequipped to properly represent you, but at no fault of his own.

However, I will recommend a ruling of **probable cause** with respect to the allegations that the respondents, except Mr. DeCristofaro, aided and abetted RIPTA in their failure to provide you reasonable accommodations.

You have ten (10) days from the date of this letter to submit any/all additional evidence, documentation, and/or witness statements on your behalf. If you have any questions or concerns, feel free to contact me at (401) 222-7569 or via email at Jason.flanders@richr.ri.gov.

Thank you for your courtesy and cooperation in this matter.

Sincerely,

*Aided and Abetted with RIPTA*

Jason Flanders
Investigator

STATE OF RHODE ISLAND
COMMISSION FOR HUMAN RIGHTS

RICHR NO.   16 EPD 019              EEOC NO. 16J-2015-00323

In the matter of

Mickeda Barnes
        Complainant

v.                                          **NOTICE OF RIGHT TO SUE**


Rhode Island Public Transit Authority
        Respondent

This NOTICE OF RIGHT TO SUE is issued to the above cited complainant pursuant to Section 28-5-24.1(a) of the General Laws of Rhode Island because more than one hundred and twenty (120) days and less than two (2) years have elapsed since the charge was filed, the Commission is unable to secure a settlement or conciliation agreement, the Commission has not commenced hearings on a complaint and the complainant has requested a Right to Sue.  It is also issued pursuant to Section 28-5-24.1(c) of the General Laws of Rhode Island because the respondent has elected to have the case heard and decided in superior court.  With the issuance of the NOTICE OF RIGHT TO SUE, the Commission is terminating any further processing of this charge.  If the parties agree, the Commission can seek to conciliate or mediate the settlement of this case within the next ninety (90) days.  Such conciliation or mediation efforts will NOT extend the time period within which the complainant must bring suit.

In the event that the above-cited matter includes allegations against individually-named employees of a respondent employer under the Rhode Island Fair Employment Practices Act, please note that recent Rhode Island Supreme Court decision in Mancini v. City of Providence, 155 A.3d 159 (RI 2017), held that employees of a respondent employer are not individually liable under the Act.  Please consult the decision and/or an attorney to determine how the decision affects this case.  The decision also may be found at: https://www.courts.ri.gov/Courts/SupremeCourt/SupremeOpinions/14-88 pdf


If the complainant intends to sue, s/he MUST DO SO WITHIN NINETY (90) DAYS FROM THE DATE OF THIS NOTICE: OTHERWISE THE RIGHT TO SUE IS LOST.

                                        On Behalf of the Commission

_____7/14/17_____            _____
Date                                      Michael D. Évora
                                          Executive Director







**JUSTIA**

View the 2017 Rhode Island General Laws | View Previous Versions of the Rhode Island General Laws

# 2012 Rhode Island General Laws
# Title 39 - Public Utilities and Carriers
# Chapter 39-18 - Rhode Island Public Transit Authority
# Chapter 39-18-17 - Labor relations with employees of acquired transit facilities.

**Universal Citation: RI Gen L § 39-18-17 (2012)**

§ 39-18-17 **Labor relations with employees of acquired transit facilities.** – (a) Whenever the authority acquires transit property facilities under the provisions of this chapter, the authority shall continue the payment of all pensions and retirement allowances under and in accordance with the pension plan in effect at the time of the acquisition.

(b) As of the date of the acquisition of the transit property under the provisions of this chapter, such officers and employees as may be determined by the authority to be qualified and necessary for the carrying on of the transit operations shall be transferred to and become officers and employees of the authority, it being the intention hereof that transit property facilities acquired by the authority shall at all times be operated under personnel qualified to supervise mass transit facilities. No officer or employee so transferred and becoming an officer or employee of the authority in accordance with this section shall, by reason of the transfer, without his or her consent be removed, lowered in rank or compensation, or suspended except for just cause and for reasons specifically given to him or her in writing within twenty-four (24) hours after the removal, suspension, or transfer or lowering in rank or compensation; nor shall any officer or employee by reason of transfer, without his or her consent, be in any worse position in respect to workers' compensation, pension, superannuation, sickness, or other benefits or other allowances granted by his or

her previous employer to him or her, the widowed person, family, or personal representatives than he or she enjoyed under any person, firm, or corporation under whom he or she held his or her employment immediately prior to his or her transfer to the employment of the authority; provided, however, that the authority may abolish any office or post of any existing executive officer if in the opinion of the authority the office or post is an unreasonable addition to the staff of the authority. The authority shall have the authority to bargain collectively with labor organizations representing employees of the authority and to enter into agreements with the organizations relative to wages, salaries, hours, working conditions, health benefits, pensions, and retirement allowances of the employees.

(c) In case of any labor dispute where collective bargaining does not result in agreement, the authority shall offer to submit the dispute to arbitration by a board composed of three (3) persons, one appointed by the authority, one appointed by the labor organization representing the employees, and a third member to be agreed upon by the labor organization and the authority. The member selected by the labor organization and the authority shall act as chairperson of the board. The determination of the majority of the board of arbitration thus established shall be final and binding on all matters in dispute. If after a period of ten (10) days from the date of the appointment of the two (2) arbitrators representing the authority and the labor organization, the third arbitrator has not been selected then either arbitrator may request the American arbitration association to furnish a list of five (5) persons from which the third arbitrator shall be selected. The arbitrators appointed by the authority and the labor organization promptly after the receipt of the list, shall determine by lot the order of elimination, and, thereafter, each shall in that order alternately eliminate one name until only one name remains. The remaining person on the list shall be the third arbitrator. The term "labor dispute" shall be broadly construed and shall include any controversy concerning wages, salaries, hours, working conditions, or benefits including health and welfare, sick leave, insurance or pension or retirement provisions, but not limited thereto and including any controversy concerning any differences or questions that may arise between the parties including but not limited to the making or maintaining of collective bargaining agreements, the terms to be included in the agreements and the interpretation or application of the collective bargaining agreements and any grievances that may arise. Each party shall pay one half (1/2) of the expenses of the arbitration.


History of Section.
(P.L. 1964, ch. 210, § 1.)

**Disclaimer:** These codes may not be the most recent version. Rhode Island may have more current or accurate information. We make no warranties or guarantees about the accuracy, completeness, or adequacy of the information contained on this site or the information linked to on the state site. Please check official sources.









**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**

February 15, 2016

Ms. Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916

Dear Ms. Barnes:

Our records indicate that you have been out of work since February 13, 2015. According to the labor agreement between the Rhode Island Public Transit Authority and the Amalgamated Transit Union, Division 618, section 1.25, paragraph (h):

*"An employee who is absent as a result of illness, injury or work related injury, which occurs while he or she is employed by the Authority, shall be deemed to continue in active service under the terms of this Agreement provided the employee demonstrates that there is a reasonable degree of medical certainty that he or she will be able to return to his or her position within one year from the date his or her absence began."*

Since your absence has exceeded one (1) year, please be advised that effective immediately we are removing you from the RIPTA employment roster. Please return all RIPTA issued clothing and/or equipment to James Dean in the Transportation Department.

A letter outlining your benefit rights under COBRA will follow. If you have any questions, please feel free to contact me at (401) 784-9500, ext. 109.

Regards,

Maureen C. Ruzzano
Human Resources Compliance Officer

cc:    J. Dean
       K. Nadeau
       Local 618
       File

705 Elmwood Avenue, Providence, RI 02907 • 401-784-9500
For Schedule Information, 401-781-9400, 1-800-224-0444, or www.RIPTA.com

Page 53





Case Number: 2050-2322
Filed in Workers' Compensation Court
Submitted: 7/28/2015 10:37:02 AM
Envelope: 276644
Reviewer: Paula Roberti

*from Mancuso*    *July 28-2013*

W.C.C. Pending Petitions:
2013-07683

# State of Rhode Island and Providence Plantations

**Providence, Sc.**                    **Workers' Compensation Court**

Rhode Island Public Transit Authority
_____
Name of Employer-Petitioner

Mickeda Barnes
_____
Name of Employee-Respondent

**XXX-XX-** 8332
_____
Social Security Number (last 4 digits only)

34 Dunbar Avenue
Rumford, RI 02916

_____
Address of Employee

Rhode Island Individual Self-Insured
_____
Insurance Carrier

W.C.C. # __201504243__

### <u>Employer's Petition to Review and/or Amend Agreement or Decree Concerning Compensation</u>

The undersigned EMPLOYER hereby petitions for a determination of its rights under a compensation agreement or decree of the Workers' Compensation Court. **A copy of said agreement or decree establishing the liability of the employer to pay workers' compensation benefits is filed herewith.** In support of this petition, the employer or its counsel affirms that the employer has fully complied with all outstanding agreements and orders to date and alleges as follows:

|   |   |   |
|---|---|---|
| ☐ | 1. | The employee has returned to work at an average weekly wage equal to or in excess of that which he/she was earning at the time of his/her injury. A wage transcript in support of this allegation is attached. |
| ☑ | 2. | The employee's incapacity for work has ended. |
| ☐ | 3. | The employee is able to return to light select work. |
| ☐ | 4. | The employee has reached maximum medical improvement. |
| ☐ | 5. | The employer seeks a reduction in the employee's weekly benefits pursuant to R.I.G.L. § 28-33-18(b). |
| ☐ | 6. | The employee obstructed or refused to submit to a medical examination as provided for in R.I.G.L. Chapters 29 to 38 inclusive. |
| ☐ | 7. | The employee's weekly compensation payments have been based upon an erroneous average weekly wage. The average weekly wage at the time of the employee's injury was   $_____ . |

Rev 02/15

Page 1 of 2

Case Number: 201504243
Filed in Workers' Compensation Court
Submitted: 7/28/2015 10:37:02 AM
Envelope: 276644
Reviewer: Paula Roberti

W.C.C. No.  201504243

☐ 8.   The employee is subject to a reduction in benefits pursuant to R.I.G.L. § 28-33-18(c).

☐ 9.   The employer requests an Anniversary Review pursuant to R.I.G.L. § 28-33-46.

☐ 10.  The employer requests that the employee be referred to the Dr. John E. Donley Rehabilitation Center for

_____.

☐ 11.  The employee has refused an offer of suitable alternative employment.

☐ 12.  Other reason for review (please specify).

_____.

**Name, Address, Phone Number and Bar Registration Number of Attorney for Petitioner**

/s/ Nicholas R. Mancini, Esq.    #7100
_____

One Turks Head Place, Suite 550
Providence, RI 02903
_____

                                    Rhode Island Public Transit Authority
                                    _____
                                    Petitioner

401-421-2154                        July 28, 2015
_____   _____
                                    Date

Rev 02/15                                    Page 2 of 2





Arnold-Peter C. Weiss, M.D.
Perez R. Scot Sellers Scholar of Hand Surgery
Professor of Orthopaedics
Brown University
Warren Alpert Medical School

Medical Office Center, Suite 200
2 Dudley Street
Providence, RI 02905
Administration Office (401) 457-1522
Patient Office     (401) 457-1520
Fax               (401) 831-5874
e-mail: apcweiss@brown.edu

UNIVERSITY ORTHOPEDICS, INC.
Michael G. Ehrlich, M.D.
Roy K. Aaron, M.D.
Edward Akelman, M.D.
Brad Blankenhorn, M.D.
Christopher T. Born, M.D.
Manuel F. DaSilva, M.D.
Craig P. Eberson, M.D.
Paul D. Fadale, M.D.
John A. Froehlich, M.D.
Christopher J. Got, M.D.
Andrew Green, M.D.
Roman A. Hayda, M.D.
Michael J. Hulstyn, M.D.
Julia A. Katarincic, M.D.
Richard S. Limbird, M.D.
Up R. Lucas, M.D.
James O. Maher, III, M.D.
Mark A. Palumbo, M.D.
E. Scott Paxton, M.D.
Alexander J. Robertson, M.D.
Lee E. Rubin, M.D.
Jonathan R. Schiller, M.D.
Robert M. Shalvoy, M.D.
Patricia M. Solga, M.D.
Michael P. Staehler, M.D.
Richard M. Terek, M.D.
Arnold-Peter C. Weiss, M.D.

Thomas F. Bliss, M.D.
Rasib Khanud, M.D.
Peter K. Kriz, M.D.
Peter G. Trafton, M.D.
Randall L. Updegrove, M.D.

Chief Operating Officer
Weber H. Shill, MBA

ORTHOPEDIC RESEARCH
Zohar Bilgen, Ph.D.
Qian Chen, Ph.D.
Deborah Ciombor, Ph.D.
J.J. Trey Crisco, Ph.D.
Braden Fleming, Ph.D.
Yingjie Guan, Ph.D.
Damian Medici, Ph.D.
Douglas C. Moore, M.S.
David Paller, M.S.
Xiao-juan Sun, M.D.
Lei Wei, M.D., Ph.D.
Wentian Yang, M.D., Ph.D.
Xu Yang, M.D., Ph.D.
Jingping Zhou, Ph.D.

## INDEPENDENT MEDICAL EVALUATION

### July 16, 2015

RE:   Mickeda Barnes
      DOB: 01-31-1975

**HISTORY AND REVIEW:** Extensive medical records were reviewed at this particular evaluation.

Ms. Barnes is a 40-year-old right hand dominant female who has worked for thirteen years as a bus driver for RIPTA. She is currently out of work. She had a fall on 02-12-2015 when she landed onto her left wrist. She was treated initially for a contusion but then developed fairly quickly some numbness and tingling in her left hand, mainly in the median nerve distribution with a very slight bit in the ulnar nerve distribution. She had electrodiagnostic studies which were consistent with left carpal tunnel syndrome of a fairly longstanding nature so she obviously had some underlying disease prior to the fall itself. She states she never had any symptoms, however, prior to the fall. She was seen by Dr. Peter Pizzarello, Jr. who diagnosed left carpal tunnel syndrome and recommended a left carpal tunnel release which was performed on 05-06-2015. She has done well since that time with good resolution of her numbness and tingling. She gets some very mild occasional numbness and tingling still in the small finger but it's very sporadic. She has not yet returned to work at this juncture.

**PHYSICAL EXAMINATION:** Physical examination includes evaluation of MRI which shows only a mild contusion based on the injury itself. She has full range of motion of the left hand and elbow. She has a negative Tinel's sign at the left cubital tunnel, no medial or lateral epicondylar tenderness. Her wrist range of motion is full with a negative carpal instability exam. Tinel's sign at both the Guyon's canal and carpal tunnel are negative. She has excellent intrinsic strength at 5/5 in the left hand. Her scar is well healed and measures 3.0 cm in composite length. She has good two-point and light touch sensation in all digits. The remaining portion of her exam is within normal limits.

**DIAGNOSIS:**      Left carpal tunnel syndrome status post release.

CORPORATE CORRESPONDENCE: UNIVERSITY ORTHOPEDICS, INC. • P.O. BOX 1119 • PROVIDENCE, RI 02901 • (401) 457-1500 • WWW.UNIVERSITYORTHOPEDICS.COM

Page 57

ARNOLD-PETER C. WEISS, M.D.

R. Scot Sellers Scholar of Hand Surgery
Professor of Orthopaedics
Brown University
Warren Alpert Medical School

Medical Office Center/Suite 200
2 Dudley Street
Providence, RI 02905
Administration Office   (401) 457-1522
Patient Office          (401) 457-1520
Fax                     (401) 831-5874
e-mail: apcweiss@brown.edu

UNIVERSITY ORTHOPEDICS, INC.
Michael G. Ehrlich, M.D.
Roy K. Aaron, M.D.
Edward Akelman, M.D.
Brad Blankenhorn, M.D.
Christopher T. Born, M.D.
Manuel F. DaSilva, M.D.
Craig P. Eberson, M.D.
Paul D. Fadale, M.D.
John A. Froehlich, M.D.
Christopher J. Got, M.D.
Andrew Green, M.D.
Roman A. Hayda, M.D.
Michael J. Hulstyn, M.D.
Julia A. Katarincic, M.D.
Richard S. Limbird, M.D.
Philip R. Lucas, M.D.
James O. Maher, III, M.D.
Mark A. Palumbo, M.D.
F. Scott Paxton, M.D.
Alexander R. Robertson, M.D.
Lee E. Rubin, M.D.
Jonathan R. Schiller, M.D.
Robert M. Shalvoy, M.D.
Patricia M. Solga, M.D.
Michael P. Staebler, M.D.
Richard M. Terek, M.D.
Arnold-Peter C. Weiss, M.D.

Thomas F. Bliss, M.D.
Razib Khaund, M.D.
Peter K. Kriz, M.D.
Peter G. Trafton, M.D.
Randall T. Updegrove, M.D.

Chief Operating Officer
Weber H. Shill, MHA

ORTHOPEDIC RESEARCH
Rohan Bilgen, Ph.D.
Qian Chen, Ph.D.
Deborah Cismtbar, Ph.D.
J.J. Trey Crisco, Ph.D.
Braden Fleming, Ph.D.
Yongue Guan, Ph.D
Carolian Medici, Ph.D.
Douglas C. Moore, M.S.
David Paller, M.S.
Xiao-jnan Sun, M.D.
Lei Wei, M.D., Ph.D.
Wentian Yang, M.D., Ph.D.
Xu Yang, M.D., Ph.D.
Jingming Zhou, Ph.D





Affiliated entity of

**BROWN**
Alpert Medical School

INDEPENDENT MEDICAL EVALUATION
RE:   Mickeda Barnes
Page 2

**CAUSALITY:**      In my opinion this patient's left carpal tunnel syndrome is likely from her underlying work activities but with a symptomatic aggravation secondary to her fall in February 2015.

**RETURN TO WORK STATUS:**   In my opinion this patient can undertake full and unrestricted work activities at the present time.

**PROGNOSIS:**  Good.

**DISCUSSION AND RECOMMENDATIONS:**   This patient does not require any further treatment. She has had an excellent outcome from her left carpal tunnel release. She still has some very sporadic occasional tip numbness. I do believe she's at a point of maximum medical improvement. Given her sporadic tip numbness I would provide an impairment rating of 1 percent of the left upper extremity. I don't anticipate this to change with time.

Sincerely,

Arnold-Peter C. Weiss, M.D.
APCW/jls

CORPORATE CORRESPONDENCE: UNIVERSITY ORTHOPEDICS, INC. • P.O. BOX 1119 • PROVIDENCE, RI 02901 • (401) 457-1500 • WWW.UNIVERSITYORTHOPEDICS.COM

Page 58

From:center for ortho          4013516201          06/29/2018 11:54     #479 P.002/004

*Note Very Important*

THE CENTER FOR
**orthopaedics**
INC.          Orthopaedic Surgery

· A. Robert Buonanno, M.D., FAAOS, FACS
Michael J. Belanger, M.D., FAAOS
David A. Moss, M.D., FAAOS
Michel Arcand, M.D., FAAOS
John K. Czerwein Jr., M.D., FAAOS
Blanki Cherubini, M.D.

*If Dr Moss Saids I Can Return To work as a Bus Driver Reinstate me as a bus Driver*

**June 22, 2018**

*Dr Moss Saids that Dr Weiss Opined 190 percent left upper extremity impairment Not Dr Moss !!! 2nd page*

The Honorable Robert M. Ferrieri
Workers Compensation Court
*Medical Advisory Board*
Garrahy Judicial Complex
One Dorrance Plaza
Providence, RI 02904

RE:              BARNES, MICKEDA S.
EMP:             RHODE ISLAND PUBLIC TRANSIT AUTHORITY
W.C.C.#:         2017-05115
DATE OF INJURY:  02/12/2015

Dear Chief Judge Ferrieri:

I had the pleasure of performing an Independent Medical Evaluation on Mickeda S. Barnes in my office on June 22, 2018.

**HISTORY OF PRESENT ILLNESS:** The patient is a 43-year-old female, a RIPTA bus driver, who sustained an injury in a slip-and-fall accident on some ice on 02/12/2015. She states that she needed to use the ladies' room; she got off her bus, was walking across the street, which was snowy and icy, and sustained a slip and fall backward, injuring her left wrist, right knee, and low back. She was seen at the Kent County Hospital Emergency Room, where x-rays of the back and left wrist were obtained and were negative for fracture. She subsequently saw her primary care physician, Dr. Michael Souza, on multiple occasions over the next several weeks. There is no mention of any knee pain or right shoulder pain throughout that entire time period when seeing Dr. Souza and subsequently Dr. Peter Pizzarello. She continued to complain of left wrist pain and low back pain, and she subsequently underwent a carpal tunnel release procedure with Dr. Pizzarello on 05/16/2015. She was doing very well postoperatively until August of 2015, and she then began to experience increased pain and numbness in the operative left upper extremity. She did undergo a repeat carpal tunnel release surgery, which was performed by Dr. Schmidt on 02/09/2015. She said she no longer has any pain or numbness in the left hand or wrist at the present time.

1524 Atwood Avenue    Suite 140    Johnston    Rhode Island 02919    phone (401) 351 6200  fax (401) 351-6201  web centerfororthopaedics.com

· Diplomat American Board Orthopedic Surgery · Fellow American Academy of Orthopaedic Surgery · Fellow American College of Surgeons

RE:             BARNES, MICKEDA S.
EMP:            RHODE ISLAND PUBLIC TRANSIT AUTHORITY
W.C.C.#:        2017-05115
DATE OF INJURY: 02/12/2015
June 22, 2018
Page 2

She also states that she recently underwent right shoulder surgery at Massachusetts General Hospital back in February of 2018 and is progressing very well postoperatively from that right shoulder surgery. With regard to her back, she states that she gets intermittent discomfort in the low back, but overall this has also markedly improved. She has not returned to work in any capacity since the slip and fall on 02/12/2015.

**PHYSICAL EXAMINATION:** On examination, the left wrist reveals a well-healed incision over the volar aspect of the left wrist. There is no pain to active or passive flexion or extension of the wrist. She is moving the fingers freely. There is no swelling. On examination of the right shoulder, there are four well-healed arthroscopy incisions. There is some slight weakness around the shoulder musculature, but there is no pain to active or passive range of motion in the right shoulder region. On examination of the lumbar spine, there is some mild tenderness to palpation over the left lumbar paraspinal musculature. There is no pain to flexion and extension. Negative straight leg raise bilaterally.

**DATA REVIEW:** I have had the opportunity to review multiple medical records, including Kent County Memorial Hospital records from 02/12/2015 through 11/28/2016, reports from Advanced Radiology in East Providence dated 02/19/2015, and notes from Dr. Michael Souza, her primary care physician, from 02/28/2015 through 10/25/2017, as well as notes from Dr. Peter Pizzarello, Jr. from 03/23/2015 through 11/08/2016. I also reviewed notes from Dr. William Golini dated 04/02/2015 through 06/21/2016, reports from Open MRI of Warwick dated 05/01/2015 and 11/16/2016, and notes from Performance Physical Therapy dated 06/25/2015 through 03/24/2016. Also reviewed were notes from Dr. Arnold Peter Weiss dated 07/16/2015 through 06/30/2016; Dr. Richard Anderson dated 10/06/2015; Dr. Gregory Austin from 01/19/2016; Lifespan Physician Group dated 03/10/2016 through 04/04/2017; NeuroHealth dated 03/24/2016; Dr. Scott T. Schmidt dated 04/16/2016 through 07/21/2017; Dr. A. Louis Mariorenzi dated 10/19/2016; and Dr. Franklin Mirrer dated 02/06/2017. I also reviewed notes from the Dr. John E. Donley Rehabilitation Center dated 12/14/2016 through 08/30/2017, notes from Dr. Thomas McGunigal dated 02/06/2017, as well as notes from Massachusetts General Hospital dated 03/20/2017 through 05/17/2018, Dr. Eric Bonness dated 02/13/2018, and notes from Rhode Island Hospital Physical Therapy dated 05/14/2018, as well as a job description from RIPTA.

**SUMMARY**
**IMPRESSION:** Ms. Mickeda Barnes presented to my office today for her Impartial Medical Examination at 11:45 a.m. She was seen with her husband present during the entire examination procedure.

From:center for ortho                4013516201           06/29/2018 11:54       #479 P.004/004

RE:              BARNES, MICKEDA S.
EMP:             RHODE ISLAND PUBLIC TRANSIT AUTHORITY
W.C.C.#:         2017-05115
DATE OF INJURY: 02/12/2015
June 22, 2018
Page 3

**CAUSAL RELATIONSHIP:**  After reviewing these medical records and performing an examination on Ms. Barnes, I believe with a reasonable degree of medical certainty that her left carpal tunnel syndrome was causally related to the episode that occurred while at work at the time of her slip-and-fall incident on 02/12/2015.  Specifically, I believe that her repetitive work activities for the prior 14 years as a bus driver were exacerbated in the fall of 02/12/2015 and that her two subsequent carpal tunnel release surgical procedures were causally related to that episode at work on 02/12/2015.  I also believe she sustained an injury to her low back in the fall of 02/12/2015; this injury consisted of a lumbar strain.  With regard to her right shoulder injury, I do not believe that the slip-and-fall accident that occurred at work on 02/12/2015 is the cause of her right shoulder injury.  She did not mention anything regarding her right shoulder during the immediate evaluation at Kent County Hospital nor at time of any subsequent evaluations by Dr. Michael Souza or with Dr. Peter Pizzarello, Jr.

**DISABILITY:**  I believe Ms. Barnes has no disability as a result of her lumbar strain.

**MAXIMUM MEDICAL IMPROVEMENT (MMI):**  I also believe with a reasonable degree of medical certainty that Ms. Barnes has reached Maximal Medical Improvement as a result of the injuries.

**PPI RATING:**  As Dr. Weiss has opined, Ms. Barnes has a 1% left upper extremity impairment.

**WORK STATUS:**  I believe with a reasonable degree of medical certainty that Ms. Barnes is able to return to her regular, full-duty job as a bus driver.

There is no patient-physician relationship.

The above statements are noted to be within a reasonable degree of medical certainty.

The above opinions are expressed to the best of my medical certainty.  I certify that I am a Board-Certified Orthopedic Surgeon licensed to practice in the States of Rhode Island and Massachusetts.

Sincerely,

David A. Moss, M.D.
DAM:TOI/lmc

A. LOUIS MARIORENZI, M.D.

LOUIS J. MARIORENZI, M.D.

GREGORY J. AUSTIN, M.D.

MICHAEL P. MARIORENZI, M.D.

KENNETH R. CATALLOZZI, M.D.

**ORTHOPAEDIC ASSOCIATES, INC.**

JOINT REPLACEMENT SURGERY · HAND SURGERY · SPORTS
MEDICINE · FOOT AND ANKLE RECONSTRUCTION · FRACTURES ·
SOFT TISSUE INJURIES · OSTEOPOROSIS MANAGEMENT ·
*ADULT RHEUMATOLOGY · PODIATRY*

IRA J. SINGER, M.D.

LISA K. HARRINGTON, M.D.

NATHAN A. DOBAY, M.D.

CARL G. BIROBBICONTI

RECEIVED

WCC / MEDICAL
ADVISORY BOARD

October 19, 2016

State of Rhode Island
WCC/MAB
One Dorrance Plaza
Providence, RI 02903
Attn: Judge Robert Hardman

Re:    Mickeda Barnes                     Date of Injury:  2/12/15
          34 Dunbar Avenue                  Date of Evaluation: 10/13/16
          Rumford, RI 02916                 Date of Dictation: 10/13/16
DOB: 1/31/1975                              Assured:  RIPTA
WCC #: 2016-03927

Occupation:  Bus driver

CHIEF COMPLAINT:   Injury left wrist and low back.

HISTORY:   In the preparation of this report, extensive medical records have been
reviewed, a list of which is contained with this report.

This evaluation is restricted to her left wrist and her lower back.

The patient states that on 2/12/15 while working she slipped and she fell, landing on her
back and tried to break her fall with her left arm at which time she noted pain in her
lower back and left arm.  She was taken by rescue squad to Kent County Hospital where
she was examined, x-rays were taken and medication was prescribed.  The medical
records indicate that when seen at Kent County Hospital on 2/12/15 she had x-rays of the
lumbar spine showing mild degenerative disc disease and of the left wrist which were
reported as normal.  Following this injury she treated for a period of time with her family
physician.  She continued having difficulty and was subsequently seen by Dr. Peter
Pizzarello Jr. who at that time suspected the patient of having a carpal tunnel syndrome
and at the time of that evaluation felt that her back problem was resolving itself.  She had
further appropriate conservative treatment.  She continued having difficulty and
eventually underwent EMG studies by Dr. Golini on 4/12/15 showing positive studies for
carpal tunnel syndrome and the patient underwent a carpal tunnel release at the left wrist
on 5/6/15.  Following surgery she did have appropriate PT; she is receiving none at the
present time.  She was last evaluation by Dr. Pizzarello about one month ago and states
that no further appointments are scheduled.



RECEIVED

16 OCT 24  PM 2: 21

WCC/MEDICAL
ADVISORY BOARD

Re: Mickeda Barnes (DOB: 1/31/1975)
Date of Evaluation:  10/13/16
Page II

At the time of this evaluation she is wearing a wrist support on her right wrist which she states was ordered by her family physician and states that the EMGS of the right wrist are being planned.

With reference to her left wrist, she states that the wrist is weak.  She complains of pain in the wrist.  She complains of constant tingling as well as sensations of hot/cold and for these complaints she states that she wears a wrist support all of the time.  Her medication consists of gabapentin 100 mg. 2 x a day and she takes Celebrex 200 mg. at bedtime.  She takes Adderall 10 mg. 2 x a day and Tylenol #3 on a p.r.n. basis.

With reference to her lower back she states that she has pain in the back.  She limps all of the time.  She states that the back pain is occasional.  She also complains of occasional pain in her left knee.  She finds standing to be better than sitting.  She states that she has occasional radiation of pain down her left leg.  She states that she can relieve this by change in position.  She denies any bladder/bowel dysfunction.

She presently has not returned to gainful employment.  Her daily activities consist of house work.  She drives and does some yard work.  She tries to do everything.

PAST MEDICAL HISTORY:  Past medical history is as contained in the medical records which I have reviewed.

PHYSICAL EXAMINATION:  Examination reveals an alert and cooperative female in no acute distress.  She rose from the sitting and recumbent position without difficulty.  She was able to stand erect.  She had a level pelvis.  She had a normal lumbar lordotic curvature and there was no tenderness or spasm of the paravertebral muscles in the lumbar area.  Forward flexion with the arms fully extended was possible to 12" from the floor.  She rose from the flexed position without difficulty.  Extension, lateral bends and rotatory motion were not restricted.  There was no gluteal atrophy.  There was no sciatic notch tenderness.  Her knee jerks and ankle jerks were normal.  Straight leg raising in both the sitting and recumbent position was associated with complaints consisting with mild hamstring tightness.  No radicular symptoms were elicited.  Her sensory examination was normal.  Her leg lengths were equal.  She had a full painless range of



RECEIVED
16 OCT 24 PM 2: 21
WCC/MEDICAL
ADVISORY BOARD

Re: Mickeda Barnes (DOB: 1/31/1975)
Date of Evaluation:   10/13/16
Page III

motion to the hips, knees and ankles.  She had equal leg lengths.  No measurable atrophy in the thighs or calves.  Toe extensors and flexors manifested no weakness.  Heel and toe stance and gait were noted to be satisfactory.

Examination of her left upper extremity revealed a full range of motion to the shoulder, the elbow as well as the wrist.  There was no deltoid atrophy.  There was no measurable atrophy in the arm or forearm.  Her Tinel's and Phalen's were negative.  Sensory examination to light sensation was noted to be entirely normal.  She had full flexion and full extension, normal abduction and adduction of the fingers and there was no evidence of atrophy involving the intrinsic muscles of her hand.  Her grip was satisfactory.

X-RAYS:  No x-rays were taken at the time of this evaluation.  I did review an MRI report of her left wrist dated 5/1/15 showing a small volume of carpus effusion.  No other abnormalities were noted to be present.

IMPRESSION:   Carpal tunnel syndrome, left, surgically treated with full recovery.
                        Lumbosacral strain, conservative treated, with full recovery.

DISCUSSION:   This patient's history and a review of medical records made available to me at the time of this dictation would indicate that as a result of her occupational slip and fall she injured her left wrist as well as her lower back.  With reference to her lower back, at the present time it is my opinion that she has made a full and complete recovery.  Her physical findings are noted to be entirely within normal limits.

From her back injury she is at MMI.  For this injury no further treatment is necessary to cure, relieve or rehabilitate her and no impairment has resulted.

With reference to her left wrist, she continued having difficulty following this initial injury and was suspected by Dr. Pizzarello of having carpal tunnel syndrome.  This diagnosis was substantiated by EMG studies of Dr. Golini performed on 4/12/15 and the patient did subsequently undergo carpal tunnel release of her left wrist on 5/6/15.  At the time of this evaluation her physical examination is entirely within normal limits.  She does have, without a doubt, multiple and sundry subjective complaints which are



RECEIVED

16 OCT 24  PM 2: 21

WCC / MEDICAL
ADVISORY BOARD

Re:  Mickeda Barnes (DOB: 1/31/1975)
Date of Evaluation:  10/13/16
Page IV

inconsistent with her physical examination.  It is also to be noted that in addition to the normal examination following her left carpal tunnel surgery, she did have repeat EMGs performed by Dr. L'Europa on 6/9/16 and the nerve conduction studies and EMG studies were also at that time noted to be entirely within normal limits.

It is my opinion that from the injury she suffered to her left wrist, at the present time she also had made a full and complete recovery.  She is at MMI and no impairment has resulted.

PROGNOSIS:  The patient's prognosis with reference to her occupational injuries is good.  She is at MMI and no impairment has resulted from either of these injuries.

ABILITY TO WORK:  The patient presently is capable of returning to her usual employment as a bus driver on a full time basis with no restrictions and no limitations and returning to that level of employment would not be injurious to her health.

CAUSAL RELATIONSHIP:  The above stated injuries are a result of her employment as indicated by the history given to me by the patient.

The above stated statements are made to a reasonable degree of medical certainty.

Sincerely,

A. Louis Mariorenzi, M.D.

ALM/dmc



RECEIVED
16 OCT 24 PM 2
WCC / MEDICAL
ADVISORY BOAR

Re:  Mickeda Barnes (DOB: 1/31/1975)
Date of Evaluation:   10/13/16
Page V

## RECORDS REVIEWED

Records from Kent Hospital.
Records from Michael Souza, D.O.
Records from Keith Monchik, M.D.
Records from Peter Pizzarello, Jr., M.D.
Records from William Golini, M.D.
IME report from Arnold-Peter Weiss, M.D.
Report from Richard Anderson, M.D.
IME report from Gregory Austin, M.D.
Records from Scott Schmidt, M.D.
Records from Gary L'Europa, M.D.
Records from Concentra.
Records from Saint Anne's Hospital.
Records from Michael Feldman, M.D.
Records from Performance PT.
Records from Landmark Medical Center.
Records from Our Lady of Fatima Hospital.

A. Louis Mariorenzi, M.D.



A. LOUIS MARIORENZI, M.D.

LOUIS J. MARIORENZI, M.D.

GREGORY J. AUSTIN, M.D.

MICHAEL P. MARIORENZI, M.D.

CHRISTOPHER N. CHIHLAS, M.D.

KENNETH R. CATALLOZZI, M.D.

# ORTHOPAEDIC ASSOCIATES, INC.

JOINT REPLACEMENT SURGERY • HAND SURGERY • SPORTS
MEDICINE • FOOT AND ANKLE RECONSTRUCTION • FRACTURES •
SOFT TISSUE INJURIES • OSTEOPOROSIS MANAGEMENT •
ADULT RHEUMATOLOGY

IRA J. SINGER, M.D.

SIDNEY P. MIGLIORI, M.D.

JOSEPH T. LIFRAK, M.D.

LISA K. HARRINGTON, M.D.

ROBERT J. FORTUNA, M.D.

NATHALIA DOOBAY, D.P.M

Name: _Mickeda Barnes_
Social Security Number: _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_ Date of Birth: _01-31-75_
Address: _34 Dunbar Ave_
City/Town: _Rumford_      State: _RI_ Zip Code: _02916_
Telephone: (_401_) _419-2230_ Date of Injury/Accident: _Feb 12, 2015_

## *PLEASE CHECK THE FOLLOWING*

Type Injury/Accident: ☑At Work ☐Car ☐Bus ☐Taxi ☐Truck ☐Van ☐Motorcycle

☑Slip/Fall ☐Tripped ☐Hit by Object ☐Other: _____

Did You:
- Injure your back or neck? ☑Yes ☐No
- Hit your head? ☐Yes ☑No
- Get cut or bruised? ☑Yes ☐No
- Lose consciousness? ☐Yes ☑No
- Go to the hospital? ☑Yes ☐No
- Have x-rays, CT Scan, MRI, Myelogram, EMG? ☑Yes ☐No

Where and When were these taken? _Kent (ER) MRI and X-Rays_

Have you seen a doctor? ☑Yes ☐No
Name of the doctor? _Dr Souza (Primary) And Dr Peter Pizarello_

Are you taking medication? ☑Yes ☐No
What kind are you taking? _Gabapentin / Tynel 3 / Celebrex / Vitamins / Motrin / Citopram / Adderall_
_And A Compound Cream For RSD of Right Knee_
Were you employed when the accident/injury occurred? ☑Yes ☐No
If yes, who did you work for? _RIPTA_
If yes, what type of work did you do? _City Bus Driver_
How long have you been employed with this company? _13 years 3 months_
Did you miss time from work? ☑Yes ☐No
If yes, on what date did you stop working? _Feb 13, 2015_
Have you returned to work? ☐Yes ☑No
If yes, on what date did you return? _I tried to go back 8 wks after First_
Did you return to your regular job? ☐Yes ☑No _Surgery and the secretary denied me_
If no, what type of work are you doing now? _No Work I Applied to a_
_Dog Shelter but No Interview_

**Page 2**
Patient Information Sheet (continued)

Have you ever been injured at work before? ☑Yes ☐No
Have you ever been injured in an accident before? ☑Yes ☐No
If yes, dates: _____
Please describe the injuries: _____

Have you ever had surgery? ☑Yes ☐No
If yes, dates: 1-29-14 Rt Knee and 5-6-2015 left
What kind? Hand Carpal

Are you disabled from working? ☑Yes ☐No
Are you now working? (including part-time and/or self-employed work) ☐Yes ☑No

What are your daily activities? Cleaning IN PAIN Cooking in Pain Walking doing
Errans and Doctor appointments in pain sleep in pain Bed Rest
What is your daily activity level? (walking, jogging, running, driving automatic or
standard transmission, swimming, hobbies, etc.) Please be as specific as possible.
I try to do Everything but I have to stop Rest or go back
to it later but I have Constant Pain before I do it but more pain
After and I Also get bruises & swollen and very Moody and I
I understand that: get really No sleep I am tired in pain,

1. I am not a patient of the physician who is to examine me.
2. This examination is being performed for a third party.
3. No doctor/patient relationship arises from this examination.
4. The physician owes no duty to look for or disclose any medical condition I may have.
5. This examination is for the purpose of evaluating my present medical condition. It is not intended to be or understood to be for the purpose of providing me with any information regarding my medical treatment or diagnosis.

For these reasons, the results of the examination will not be made available to me at the time of the examination.

The results of this examination will be forwarded to the person who has requested it. I may contact them regarding the results.

Signature: _____    Date: 10-13-16

7-29-10 Injured toe
500lb woman wheelchair
Caught on my Right toe

8-3-12 Slammed Hand in Steering

9-5-12 Slipped and Fall down stairs

6-24-13 Wheel Chair Moved back on My toe

10-3-13 Injured Rt Knee Control Panel - Door

*[Right margin handwritten notes:]*

Bus Accident
First Student
Rear End.

Couple of other Accident
in Cars but dont have
dates

W/C 7-14-03 Eye Injury

2-18-04 Injured
ankle/w Fell in Hol

10-24-04 I injured Arm
Broken Steer
Column

6-20-06 Injured
Knee on Stee
Column
IN PAIN

11-9-06 Injured
Arm banged in
Fare box

2-5-7- Injured
Neck Shoulders
arm faulte
steering Column
broke

1-2-08 Passage
Shoting
Heroir-Drug
with Naed
Spit Blood
in my Eye.

4-18-08 Three
# Teeth take
out by Micro
Phone on Bus
held By two
Rubber Elestics

7-26-08
Injured Neck &
Shoulder Arm From
Steering

10-5-08 Injured Chin
Cheek & Lip
two passagers Jump
Me in he
Me fighting
& Face

11-21-14 Contact
Injured Neck Back shape da
Vomit

Page 68





## PREAMBLE

Articles of Agreement made and entered into by and between the Rhode Island Public Transit Authority, its successors and assigns, hereinafter called the "Authority", and Providence Division No. 618 of the Amalgamated Transit Union (ATU), hereinafter called the "Association", and the employees of the Authority who are now or may hereafter become members of said Providence Division No. 618, hereinafter called the "employees" or the "members", WITNESSETH: That in the operation of the Authority, both parties agree hereto as follows:

-1-

13642825.1

---

## ARTICLE I
## GENERAL TERMS

### Section 1.0    Purpose of Agreement

(a)    That the purpose of this Agreement is to provide a working understanding between the Authority and the Association, each through its duly accredited representative to provide the best possible service to the public and to provide as good working conditions for the members of the Association as practicable with due regard for the operation and interests of the Authority.

(b)    This Agreement sets forth the wages of employees of the Authority working in the Transportation Department (Bus Operators, Transportation Clerks, Telephone Operators, Money Room Clerk), the Bus Maintenance Department (Mechanics, Body Shop, Building & Grounds, Utility, Stockroom Clerks), the Flexible Services Division and any other employees of the Authority included in the bargaining unit by certification of the State Labor Relations Board or by mutual agreement of the parties.

(c)    The parties will not discriminate against any employee of the Authority because of race, sex, sexual orientation, age, color, religion, national origin or handicap in any manner including upgrading, demotion, transfer, layoff, termination, rate of pay or other forms of compensation or benefits.    The parties agree that they will not tolerate sexual harassment.

*Parties violated this*

### Section 1.1    Recognition of Union

(a)    The Authority agrees to recognize the Association as the sole bargaining representative for all employees in any of the classifications for which rates of pay, hours of work, and other conditions of employment as provided for herein.    The Authority agrees that it shall require as a condition of employment that all employees now members of the Association shall be required to retain such membership in the Association and that all new employees hereafter employed by the Authority in any of the classifications for which rates of pay, hours of

-2-

13642825.1

work and other conditions of employment provided for herein, shall become members of the Association after the thirtieth (30th) day following the beginning of their employment and shall continue as members thereafter while this agreement is in effect.

The Authority will allow all eligible personnel to join the Association, and will not hinder or discourage such efforts or retaliate against interested parties regardless of class or department.

(b) The Authority shall weekly deduct from the pay of such of its employees as may be members of the Association, their regular Association dues and promptly remit same to the proper officials of the Association as designated by the latter in writing.

## Section 1.2    Management Rights

(a) The Association acknowledges that all matters pertaining to the management of operations, including the type, kind and extent of service to be rendered to the public, the equipment used, the maintenance of standards for selection and qualification of employees, establishment of standards for selection and qualification of employees, with due regard for seniority as a factor such that when qualifications are equal seniority will prevail in all selection and promotion decisions, standards for the promotion of employees and their discipline and discharge for proper cause, are reserved exclusively to the Authority, except to the extent that the same are expressly restricted by specific provisions of this agreement.

(b) The Authority is committed to assuring that the dignity of each employee is respected at all times. Management shall treat employees fairly and reasonably, shall assure that employees are not disciplined without just cause, and that they are notified as expeditiously as reasonable with respect to any alleged violations charged by management.

*[handwritten in left margin: Discipline must based as Notified as Expeditiously as reasonable]*

## Section 1.3    Performance of Bargaining Unit Work

Supervisors of administrative and clerical employees shall not perform work which normally is performed by bargaining unit employees, except in emergency or for purposes of instruction. Supervisors or Foremen shall not perform work which is normally performed by bargaining unit employees, except in emergency or for purposes of instruction.

## Section 1.4    No Strike or Lockout

During the period covered by this Agreement, the service upon and operation of the lines of this Authority shall not be interrupted or interfered with by either party; provided, however, that this restriction shall not be applicable to the Association in the event of a refusal by the Authority to arbitrate any dispute which is arbitrable under this Agreement, or in the event of the refusal by the Authority to comply with a duly issued arbitration award resulting from the submission to arbitration by the Authority and the Association pursuant to this Agreement; provided, however, that the Association shall not interrupt or interfere with service during the pendency of any appeal taken by the Authority from such an award.

## Section 1.5    Probationary Period

The Authority may, at its own discretion, discipline or discharge any new full-time employee during a ninety (90) calendar day probationary period following his/her satisfactory completion of training and any part-time employee during a one hundred eighty (180) calendar day probationary period following his/her satisfactory completion of training. New employees may be terminated by the Authority at its discretion during the training and probationary periods. Under extenuating circumstances, the Authority has the right to extend the probationary period for (30) calendar days only with the knowledge of the employee and after consultation with the Union.

-3-

-4-

*Job Filling*

*This is where Job Changes are Made.*

pay required dues and assessments to the Union. If said employee should no longer qualify for such position or if such position be abolished, the employee shall be transferred back to the employee's former classification with accumulated seniority, unless the employer is dismissed from the service of the Authority for a cause which would have justified the employee's dismissal from the employee's former classification as a bargaining unit employee. Disputes arising out of the application of this section shall be resolved through the grievance process and shall be limited to the question of such employee's rights in classification in this Agreement with respect to the employee's former classification, it being understood that such an employee's claim or rights to that supervisory position as such is not covered by the grievance process.

(b) All employees, who are now or may hereafter become members of the Association, shall observe all operating rules and regulations of the Authority, and all special orders of the Authority, and of its officials. The Authority will issue rules and regulations.

(c) This Agreement shall apply only to the classes of employees for whom rates of pay, hours of work and working conditions of employment are provided for herein. All job openings will be posted in all areas and divisions for a period of one (1) week. All postings will list the number of openings to be filled. Each applicant must meet the minimum criteria as identified in the job description. Except under extraordinary circumstances, the job opening will be filled and the selected employee will take his work within a reasonable amount of time after the closing date of posting. In the event of such extraordinary circumstances causing the Authority not to fill the job opening, the Authority shall consult with the Association.

(d) Shifting Departments - Bargaining unit employees may shift from department of present employment to another department covered by this agreement only under provisions of this section. First consideration will be made for health reasons which have been medically certified and acceptable to the Authority and the Association.

- 7 -

The shift from one department to another will only be permitted if a vacancy or need exists.

(e) "Flexible Service Operators who are not retired Authority employees and have worked for over two years, shall be given preference for fixed route service Operator position vacancies. When more than one such operator seeks a vacant position, it will be awarded in order of seniority." Fixed route service operator positions that are not filled by Flexible Operators with two years of service will be offered to Flexible Operators with one year of service.

(f) In such cases the employee changing departments shall sacrifice seniority and go to the bottom of the rating list of the department to which assigned, although he will keep his system rating for the purposes of vacations, pensions, etc. Any employee so assigned may return to his original department after he has been examined by the Authority's physician to determine if the medically certified reason for his shifting has been eliminated or corrected, without loss of seniority.

(g) If the medically certified condition that necessitated the shift is permanent, the employee so transferred will establish rating in that department as of the date of his original transfer to that department.

(h) Employees who can no longer perform the essential functions of their position due to a work-related injury are eligible for a position reclassification. Such position reclassification will be based upon the employee's ability to perform the duties of such position, the employee's qualifications, and the availability of positions. In the event that a position is available which the employee can be reclassified into, employees who have completed at least ten (10) years of service retain the rate of pay associated with their original title; employees with less than ten (10) years of service will be eligible for the rate of pay associated with the reclassified position.

(i) In cases of disability covered under the provisions of the Workers Compensation Act, an injured employee may be offered a change of departments or jobs for the purpose of rehabilitation, and payment will be made in accordance with the provisions of the Worker's

*Reclassification*

- 8 -

Compensation Act. Upon recovery from injury, the employee shall return to his department and job without loss of rating.

(j) The job opening will be filled in the following manner: First, full-time from within the department that the opening exists second, ATU bargaining group employees from the Flexible Services Division; and third, from qualified applicants from outside the Authority.

Applicants must be in a lower classification based on top hourly rate of the position presently held. Example: A Utility employee would be eligible to transfer to Bus Operator. However, he would not be eligible to transfer to Telephone Operator.

(k) The senior man/woman in line for a promotion when a vacancy exist in any department within the bargaining group shall be promoted to fill the vacancy if, he/she is qualified by his/her skill, ability and previous experience to do the work. The employee considered for promotion shall be given an opportunity to demonstrate his ability in an actual trial on the job. If at any time during a period of ninety (90) calendar days such employee demonstrates his inability to do the job satisfactorily, or requests return to his/her previous job, he/she shall be returned to his/her previous position. The Authority will meet and discuss with the Association the process to be used in determining the minimum qualifications for the job opening that is to be offered to Association bargaining unit employees.

(l) In final selection of equally qualified applicants, seniority will be the governing factor in deciding the successful transfer.

(m) An employee transferring to a new position will serve the standard ninety (90) day probationary period and if performance is deemed unsatisfactory said employee will return to his original department without loss of seniority.

(n) An employee whose current job requires special skills must train his replacement before moving to any other position. Lateral moves will be allowed in the Mechanical Department.

- 9 -



*[handwritten annotation: Union Did Not Follow Rules!]*

(b) Should differences or disputes arise between the Authority and an employee, group of employees, or the Association as to the meaning or application of this agreement, rules, policies or practices, the parties shall make effort to settle such differences promptly by the Grievance and Arbitration Procedure set forth below.

(c) However, the establishment of the steps in the grievance procedure for the formal handling of grievances shall not prohibit nor discourage the amicable solution of such matters without recourse to the grievance and arbitration procedure.

(d) All steps of the grievance procedure set forth below shall be based on the weekday time frame. The definition of "Weekday" is as follows: Monday through Friday, excluding Holidays, Vacations, sick or injured days, or days of unusual circumstances.

Section 1.11    Grievance Procedure (Step 1)

(a) The grievance shall be presented in writing, signed by the grievant with the desired remedy stated. The Association Representative (steward or vice president) shall present the grievance within ten (10) working weekdays of the action or of first knowledge of the action from which the dispute arises.

(b) The dispute shall be presented to the immediate supervisor of the department where the question exists; said supervisor may delegate first step authority.

(c) A meeting between the parties shall be held within five (5) days of notification. A written decision shall be rendered at this level within five (5) days of meeting.

Section 1.12    Grievance Procedure (Step 2)

(a) If the dispute is not resolved at Step 1, the Association representative shall notify the office of the Authority Department Head (Maintenance, Transportation or Manager of Paratransit Services) within ten (10) days of the Step 1 decision and a meeting shall be scheduled

- 11 -

within five (5) days for the Step 2 hearing at the appropriate garage. A written decision shall be rendered within five (5) days of the hearing.

Section 1.13    Grievance Procedure (Step 3)

If the dispute is not resolved at Step 2, the Office of the General Manager will be notified within ten (10) days of the decision. A meeting will be held within five (5) days between the General Manager and the Business Agent (or the delegate that either may name) in the office of the General Manager or other meeting place as designated. A written decision will be rendered within five (5) days of the hearing.

Section 1.14    Grievance Procedure (Step 4)

If the dispute is not resolved at Step 3, the Association shall have the right to arbitration. The Association shall demand arbitration within ninety (90) calendar days of its receipt of the Step 3 decision by sending to the General Manager and the American Arbitration Association a demand for arbitration. The arbitration, including the selection of an arbitrator, shall proceed according to the Labor Arbitration Rules of the American Arbitration Association. The Expedited Arbitration Rules of the American Arbitration Association may be used by agreement of both parties. The decision of the arbitrator shall be final and binding upon the parties. The parties shall jointly bear the expense of the arbitrator. (Interest arbitration for new or successor collective bargaining agreements shall be in accordance with § 38-19-17 of the Rhode Island General Laws.)

Section 1.15    Grievance – Additional Provisions

(a) Steps may be extended or excluded by mutual consent.

(b) The aggrieved employee must be present at every stage. In the case of a group, designated representatives are acceptable with the mutual consent of the Authority and the Association.

(c) Nothing in this procedure will prevent the examination of facts in the absence of an aggrieved in an effort to obtain amicable solution to the grievance.

- 12 -

(d) It will be the responsibility of both parties to assign designated representatives when it is apparent that the time periods identified in the grievance steps cannot be reached. Both parties will follow established grievance time frames as expressed herein.

(e) Employees are entitled to Association representation at any point in this grievance procedure: Provided, that any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective bargaining contract or agreement then in effect: Provided further, that the bargaining representative has been given opportunity to be present at such adjustment.

(f) The purpose of the grievance and arbitration procedure is the settlement of disputes in a timely fashion. The transition from informal to formal procedure may present some difficulties. Time limits at each step may be evaluated and adjusted by mutual consent.

(g) However, it is agreed and understood that failure to observe time limits will result in a favorable conclusion for the party that has last made a timely solution.

Section 1.16    Disciplinary Procedures and Standard Operating Procedures

(a) Nothing in this agreement shall affect the Authority's right to terminate the employment of an employee for just cause.

(b) When an employee is summoned to meet with an official of the Authority, they must do so as quickly as possible. Such summons shall be made as soon as possible after the alleged offense has been committed. Any employee has the right to have an Association representative present when called into the office for disciplinary reasons. If after hearing the charge or charges the employee wishes to have the Association representation before answering same, he will,

*[handwritten margin note: Note: I tried to grievance this when they Garvene my discipline? Months later]*

-13-

upon request, be furnished a copy, in writing, of the charge or charges to which he is to make answer and an adjournment of two (2) days shall be granted him before he is required to answer such charge or charges.

(c) In any case of discharge, final warning, or suspension, the Authority agrees to notify the Association in advance.

(d) In the case of relieving operators from duty for disciplinary reasons, the Authority agrees to notify the Association in advance.

(e) It is agreed that when manpower is available, suspensions will be served within two (2) weeks after final disposition of the case. Any extension of the two-week period will be after consultation with the Association.

(f) Employees will be notified of any caution being issued against them within their next scheduled work-day.

(g) Except as to major offenses, when determining whether or not an employee shall be suspended or discharged because of faulty conduct or violations of operating rules, the Authority shall only consider the employee's record for the period of three (3) years preceding such faulty conduct or violation.

(h) The Authority shall be entitled to take disciplinary action against an employee to the extent permitted by this agreement notwithstanding the status of any related, external administrative or judicial proceedings.

(i) The Authority and the Association shall create a Joint Labor/Management Standard Operating Procedures Committee to conduct and complete a comprehensive review, update and revision, to the extent necessary, of the standard operating work procedures applicable to positions covered by this agreement within ninety (90) calendar days of the ratification date of this agreement. To the extent that the Committee cannot agree upon the standard operating procedures within said ninety (90) day period, unless extended by mutual agreement, the areas of disagreement shall be resolved by interest

*[handwritten note: Note I Filed EEOC)]*

*[handwritten margin note: Who? Is the Joint Standard Labor / Management Operating procedures]*

-14-

10643061

Section 1.24    Reduced Schedules

(a)    Employees who have worked one-hundred and twenty (120) days of their allotted work days in the twelve (12) months prior to December 1 of the year preceding the vacation period and who have resumed normal employment will be entitled to the following:

| Number of Weeks | Qualifications |
| --- | --- |
| Two (2) | Four (4) years of continuous service |
| Three (3) | Ten (10) years of continuous service |
| Four (4) | Fifteen (15) years of continuous service |
| Five (5) | Twenty-five (25) years of continuous service and, only in the case of employees hired prior to January 1, 1977. |
| Six (6) | Thirty (30) years of continuous service |

(b)    Employees who have been continuously employed for a period of four (4) years or more and have worked at least eighty (80) days in the twelve (12) months period prior to December 1 of the year preceding the vacation period and have resumed normal employment, will be entitled to one (1) week vacation.

Section 1.25    Sick Leave .

(a)    Full-time employees (except Flexible Services employees) will receive pay for up to twelve (12) days of absence due to proven illness, injury or work-related injury for each year of this agreement, subject to the following conditions:

(b)    Payment for sick leave will begin as specified herein, provided the employee has reported the illness to the Authority no later than one (1) hour before employee is scheduled to report for work. Any

-31-

claim for each and every sick leave must be certified on an Authority disability form signed by the attending physician. The attending physician must be a licensed M. D., or in dental cases, a D.D.S. The certificate must be free from changes or erasures. A certificate signed by anyone other than the attending physician will not be accepted. Employees who expect to be absent from work for an extended period (thirty calendar days or longer) of time due to illness or injury, whether paid or unpaid, must notify their Department Supervisor of this situation immediately. The employee will be expected to contact their Department Supervisor every seven (7) days consecutive calendar days after the initial report (by telephone or in person) to update their medical status, and provide a telephone number and address where the employee can be reached during the period of illness.

(c)    Compensation for sickness or injury disability shall be eight (8) hours per day at the straight time rate. Whenever an employee is entitled to Temporary Disability Benefits ("TDI"), sick leave shall be paid in hourly increments (each day of accrued benefit equals eight hours) as a supplement for TDI benefits, so that the total payment for one day of absence shall not exceed eight hours of pay.

(d)    Effective January 1st 2014, upon retirement, an employee may cash-out 100% of his or her accrued unused sick leave if (1) the employee has 1,170 hours remaining of unused sick leave at the time of his or her retirement, or (2) the employee, at the time of his or her retirement, has an attendance rate of at least 75% over the course of his or her employment. Alternatively, in lieu of cashing out such sick leave, the employee may elect to have such sick leave count toward pension credit in accordance with the Rhode Island Public Transit Authority Employee's Pension Plan, and or apply such sick leave towards the payment of Retiree Health Benefits monthly premium. Employees may combine pension credit and retiree health benefits monthly premium. Employees may not use sick leave toward pension vesting.

(e)    For those employees who have unused sick leave accrued prior to January 1, 1997, all sick time taken subsequent to January 1, 1997 will first reduce the sick leave accrued prior to January 1, 1997.

-32-

*IN Actiiue IS Seprate*

After an employee who has sick leave accrued prior to January 1, 1997 exhausts such leave, he or she shall utilize thereafter sick leave accrued after January 1, 1997.

(f)    Effective January 1st 2014 Sick Leave accrual:

An employee may accrue up to 1,560 hours of sick leave. When an employee reaches 1,560 hours of sick leave, he or she shall not accrue any additional sick leave unless he or she uses sick leave in which case he or she shall accrue at the time of the annual grant of sick leave up to twelve days for a maximum of 1,560 hours. An employee who has greater than 1,560 hours as of January 1st 2014 shall receive no additional sick leave unless his or her accrued bank is reduced to less than 1,560 hours prior to retirement. Such an employee will accrue at the time of the annual grant of sick leave up to twelve days for a maximum of 1,560 hours.

All employees' sick banks will be "Grandfathered" upon ratification.

(g)    In the event of an employee's death during the period of this agreement, one hundred percent (100%) of the accumulated sick leave shall be paid to the employee's beneficiary.

(h)    An employee who is absent as a result of illness, injury or work-related injury, which occurs while he or she is employed by the Authority shall be deemed to continue in active service under the terms of this Agreement provided the employee demonstrates that there is a reasonable degree of medical certainty that he or she will be able to return to his or her position within one year from the date his or her absence began.

(i)    If a paid holiday occurs during the period an employee is on paid sick leave, he shall be entitled to sick pay only.

- 33 -

1064880.1

*Medical Exam This just Dose make Sense for Workers Comp* →

(j)    Neutral Physician – At the request of the Authority, the employee shall submit to a medical examination by a physician selected by the Authority. If the physician selected by the Authority finds that the employee is fit for duty, the employee is expected to return to duty as specified by the physician on the Disability Certificate. If the employee does not report for duty as specified by the Disability Certificate completed by the physician selected by the Authority, the absence will be considered absent without leave.

(k)    Any difference of opinion between the employee's personal physician, and the physician chosen by the Authority, will be determined by an impartial third party physician. The physician selected by the Authority and the employee's treating physician shall select the impartial physician. The impartial physician shall be a specialist in the field of medicine applicable to the employee's condition. If they cannot agree, they shall select a hospital which shall select an appropriate board certified physician from its staff to conduct the examination. The impartial physician should be chosen, contacted and seen by the employee within three (3) days of the preceding employee's appointment with the physician chosen by the Authority. The cost of the impartial physician's appointments will be split by the Authority and the employee if not paid by insurance coverage. The decision of the impartial physician is binding and final.

(k)    Newly-hired employees will be eligible for sick pay as follows:

First 30 days                    Ineligible
31 days to 90 days               One (1) day
91 days to 180 days              Four (4) days
181 days to 270 days             Seven (7) days
271 days to 365 days             Ten (10) days

(i)    After one (1) year of continuous employment under this agreement, a full time employee will be eligible for the full twelve (12) days of sick leave.

- 34 -

1064880.1

*Difference of opinion between physician of opinion between Person chosen Employee Physician*

*This is Workers' Comp.*

*W/a Job Transferees*

(m) The Authority will have the right, in order to curb any abuse of this sick leave plan, to check from time to time on employees who are absent because of illness or other disability. An employee, upon proven abuse of sick leave and/or provision of fraudulent medical certification to the Authority, may be subject to discharge and all benefits under this plan shall be terminated.

(n) An employee who books off sick while on duty shall be provided with a ride by the Authority if at all possible if requested.

(o) An employee who suffers a job related injury, the compensation of which is not disputed, will become eligible to receive Workers Compensation weekly indemnity benefits compensation on the fourth day of disability; as mandated by the Rhode Island Workers Compensation Act of May 1992. Any changes in Rhode Island workman's compensation law will be incorporated into this contract.

(p) Anyone who has a disputed Workers' Compensation claim and collects sick leave pay while incapacitated and later is awarded Workers' Compensation benefits must reimburse the Authority for the sick leave pay paid in the interim upon returning to work.

(q) A member may be allowed to donate one (1) sick day per year to another member who has exhausted their sick leave.

(r) Full-time Flexible Services Division shall accrue 1 sick day per month for a total of twelve (12) sick days per year. Effective January 1st 2014, full-time employees, who have achieved the top of the wage progression and who have accrued seventy-five (75%) of their accrued sick leave, as of November 30th of each year, will be eligible for the full twelve days of sick leave commencing January 1st of each year of the agreement. Employees shall receive pay for up to twelve days of absence due to proven illness, injury or work-related injury for each year of this agreement, subject to the following conditions

(1) Employees who are in the wage progression will not be eligible to receive their annual accrual of sick leave at the beginning of the year, such employees who are in the wage progression will accrue

- 35 -

one (1) sick day per-month for a total of twelve (12). This will apply to employees who transfer from Flexible Services Division to Fixed Route.

(2) Compensation for sickness or injury disability for Flexible Services Division employees shall be a maximum of eight (8) hours per day at the straight time rate.

(3) Employees in the Flexible Services Division whose regular work-week is four (4), ten hour days will receive leave at his/her straight time rate for ten (10) hours under this provision.

(4) In the event of a Flexible Services Division employee's death during the period of this agreement, fifty percent (50%) of the accumulated sick leave shall be paid to the employee's estate.

(5) An employee in the Flexible Services Division who is absent as a result of illness or injury, shall be deemed to continue in active service under the terms of this agreement so long as any continuous period during which he does not perform work is less than six (6) months.

(6) If a paid holiday occurs during the period a Flexible Services Division employee is on paid sick leave, he shall be entitled to sick pay only.

(s) Long term disability insurance will be available for purchase by any employee.

(1) Employees in the Flexible Services Division will be offered the opportunity to purchase the same Long Term Disability plans as presently being offered to other Authority employees at their own expense.

(2) In the event the Union establishes a voluntary, employee-paid, life insurance and/or long term disability insurance program the Authority shall withhold (payroll deduction) and transmit any employee-authorized voluntary contributions. Such supplemental plan(s) shall be provided by an underwriter and administrator selected

- 36 -

## Section 1.36    ADA

The Authority and the Association agree to comply with the legal requirements of the Americans with Disabilities Act, including but not limited to making all appropriate announcements to passengers.

- 46 -

19d4986.1

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY
### Appendix 3 – Wages – Effective July 4, 2015

| Department | Position Title | Top Hourly Rate |
|---|---|---|
| **Transportation** | | |
| | Bus Operator | $27.77 |
| | Transportation Department Clerk | $28.44 |
| | Money Room Clerk | $28.44 |
| | Telephone Information Operator | $22.22 |
| **Flexible Services** | | |
| | Flexible Services Operator | $18.07 |
| | Flexible Services Coordinator | $20.35 |
| | Flexible Services Lead Coordinator | $23.51 |
| **Bus Maintenance** | | |
| | Mechanic - First Class | $29.43 |
| | Stock Room Clerk | $28.44 |
| | Body Man - First Class | $29.43 |
| | Body Man - Second Class | $25.43 |
| | Building Maintenance - First Class | $29.43 |
| | Building Maintenance - Lead Class | $30.96 |
| | Utility - Hired prior to 8/1/04 | $28.46 |
| | Utility - Hired after 8/1/04 | $22.73 |

### Wage Progression
#### TRANSPORTATION DEPARTMENT
#### BUS OPERATORS

| | Bus Operator |
|---|---|
| 0 - 12 Months | 60% of Top Rate | $16.66 |
| 12 - 24 Months | 70% of Top Rate | $19.44 |
| 24 - 36 Months | 80% of Top Rate | $22.22 |
| 36 - 48 Months | 90% of Top Rate | $24.99 |
| 48 - 60 Months | 95% of Top Rate | $26.38 |
| Over 60 Months | 100% of Top Rate | $27.77 |

#### FLEXIBLE SERVICES DIVISION

| | Operator | Coordinator | Lead Coordinator |
|---|---|---|---|
| 0 - 12 Months | $13.05 per hour | $15.51 per hour | $17.95 per hour |
| 12 - 24 Months | $14.66 per hour | $16.87 per hour | $19.51 per hour |
| 24 - 36 Months | $15.56 per hour | $18.14 per hour | $21.16 per hour |
| 36 - 48 Months | $17.21 per hour | $19.93 per hour | $22.55 per hour |
| Over 48 Months | $18.07 per hour | $20.87 per hour | $23.51 per hour |

#### BUS MAINTENANCE DEPARTMENT
(Mechanic, Body Shop & Building & Grounds)
Progression for All Titles

| | |
|---|---|
| 0 - 6 Months - 75% of Top Rate | 75% | $22.07 |
| 7 - 12 Months - 85% of Top Rate | 85% | $25.02 |
| 13 - 18 Months - 95% of Top Rate | 95% | $27.96 |
| Over 18 Months - 100% of Top Rate | 100% | $29.43 |

#### STOCKROOM CLERKS

| | | |
|---|---|---|
| 0 - 12 Months | 75% | $21.33 |
| 12 - 24 Months | 80% | $24.17 |
| 24 - 36 Months | 95% | $27.02 |
| Over 36 Months | 100% | $28.44 |

#### UTILITY WORKERS

| | Utility Workers Hired prior to 8/1/04 | Utility Workers Hired after 8/1/04 |
|---|---|---|
| 0 - 12 Months - 75% of Top Rate | $21.40 | $17.05 |
| 12 - 24 Months - 75% of Top Rate | $21.88 | $19.32 |
| 24 - 36 Months - 95% of Top Rate | $26.57 | $21.59 |
| Over 36 Months - 100% of Top Rate | $27.01 | $22.73 |
| Bus Police | $27.01 | $21.83 |
| Parts Washer | $23.99 | $22.86 |

Utility Parts Washer position pays $13 per hour more than the Utility position rate.

19468805.1

- 93 -

## TERM OF AGREEMENT

This Agreement shall be effective as of July 1, 2013 and shall continue in full force and effect and be binding upon the respective parties hereto until and including June 30, 2016.

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**

by _____
Chairman

and

by _____
General Manager

**PROVIDENCE DIVISION NO. 618 OF THE AMALGAMATED TRANSIT UNION (ATU)**

by _____
President and Business Agent

and

by _____
Secretary and Treasurer

Signed as of the 4th day of April, 2014.

Publication date: August 19, 2013.

- 94 -





DET-BR-3ES (Rev. 05/99)                                                          EO-02

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# Board of Review

**For**
The Department of Labor and Training

74 West Road, Hazard Bldg., 1ˢᵗ Floor
Cranston, RI  02920
Telephone: (401) 462-9400 Fax: (401) 462-9401
website: http://www.dlt.ri.gov/bor
Email: DLT.BORINFO@DLT.RI.GOV



Chris Fierro
Chairman
Nathaniel J. Rendine
Edward A. Lombardo, Sr.

MICKEDA S BARNES                    MAILING DATE:    February 10, 2017
34 DUNBAR AVENUE                    SSN:             8332
RUMFORD, RI 02916-3111             APPEAL NUMBER:   20170081 UC
                                    DATE OF APPEAL:  December 30, 2016
                                    HEARING DATE:    February 8, 2017
                                    CAU NUMBER:      1640353

## DECISION OF REFEREE

1. **TRAVEL OF THE CASE:**

The claimant's last day of work was February 12, 2015. December 6, 2016, the claimant filed for employment security benefits. December 16, 2016, in a Department of Labor and Training Director decision, the claimant was denied back dating of claim according to the provisions of Section 28-42-3 (3) of the Rhode Island Employment Security Act in coordination with the provisions of Section 28-33-47 of the Rhode Island Workers' Compensation Law. December 30, 2016, the claimant filed a timely appeal on the decision notice of hearing was mailed to all interested parties. February 8, 2017, an appeal hearing was held at which time the claimant appeared and testified. The claimant was represented by her attorney during the hearing. The claimant's attorney was accompanied by one intern. The employer, with proper notice, failed to appear for the hearing.

2. **FINDINGS OF FACT:**

I find by preponderance of credible testimony and evidence the following findings of fact:

The claimant suffered a work related injury February 12, 2015. May 6, 2015 the claimant had surgery. The claimant received Workers' Compensation benefits until the Workers' Compensation Court discontinued benefits effective November 10, 2016.  Claimant's medical practitioner released her to return to work without restriction effective June 1, 2015. June 16, 2015 claimant's attorney, Joseph M Beagan, wrote the employer a letter requesting reinstatement. July 16, 2015 an independent medical practitioner confirmed the claimant's return to work without restriction.  January 27, 2016 claimant's attorney, Stephen J Dennis, wrote the employer a letter requesting reinstatement. The employer did not reinstate the claimant. The claimant filed for Employment Security benefits December 6, 2016 and requested back dating of the base period calculation to the date of injury.

Negotiations for an unrelated 2014 Workers' Compensation injury were continuing. Claimant had been released and returned to work after the 2014 Workers' Compensation claim July 2014 and worked until the February 12, 2015 injury. Workers' Compensation Court ordered Workers' Compensation benefits to continue during negotiations on the unrelated claim.

Page 1
MICKEDA S BARNES

(vii) Except where otherwise provided under a collective bargaining agreement, the approval by the court of a settlement pursuant to chapters 29 - 38 of this title.

In the instant case, the claimant was released to return to work without restriction 3 ½ months after the injury. The first written request for reinstatement was posted two weeks later. The credible testimony and evidence support back dating of the claimant's base period.

4.   <u>DECISION:</u>

The decision of the Director is **reversed** based upon the above conclusions.

<u>*APPEAL RIGHTS*</u>

*This decision will become final unless, within <u>fifteen (15)</u> <u>calendar</u> days of the mailing date hereof, you file an appeal <u>in writing</u> to the Board of Review for the Department of Labor & Training. The appeal can be delivered, mailed, faxed or e-mailed to the Board at 74 West Road, Hazard Bldg., 1st Flr, Cranston, RI, 02920. Fax number: (401) 462-9401.*
*E-mail: DLT.BORINFO@DLT.RI.GOV  WEBSITE: <u>WWW.DLT.RI.GOV/BOR</u>.*

**You must continue to use Tele-Serve on a weekly basis while pending your appeal hearing including further court proceedings, if you are still totally or partially unemployed.**

- Equal Opportunity Employer/Program
- Auxiliary aids and services are available upon request to individuals with disabilities.
- TDD: (401) 462-8006

<u>DERECHOS DE APELAR</u>

Esta decisión sera finalisada a menos que, dentro de quince (15) días del calendario de la fecha que se le envió la decisión, usted apele en escrito al Board of Review para el Departamento de Labor y Entrenamiento.  Puede entregar la apelación por correo, telefax o e-enviar a el Board a la dirección *74 West Road, Hazard Bldg., 1st Flr., Cranston, RI, 02920.* Numero de Fax: (401) 462-9401.  E-enviar: DLT.BORINFO@dlt.RI.GOV.
WEBSITE: www.dlt.ri.gov/bor

*Usted debe continuar utilizando Tele-Servicios semanal mientras espera su audiencia de su súplica incluyendo futuro procedimiento de corte, si usted todavía está totalmente o parcialmente sin trabajo.*

BOARD OF REVIEW

BY _____
GUNTER A. VUKIC, REFEREE

cc:   DIRECTOR
      SONJA L. DEYOE, ESQ.

      HUMAN RESOURCES
      RI PUBLIC TRANSIT AUTHORITY
      705 ELMWOOD AVENUE
      PROVIDENCE, RI 02907                    Dictation/Dragon NaturallySpeaking

      Page 3
      MICKEDA S BARNES

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
**DEPARTMENT OF LABOR AND TRAINING**
TTY via RI Relay 711

Central Adjudication Unit, PO Box 20067, Cranston, RI  02920-094120-0944
Tel: (401)462-8300  FAX: (401)462-8318  TTY via RI Relay: 711
Internet address: www.dlt.ri.gov/ui

CLAIMANT DECISION

Mailing Date: 02/21/17
Employer: RI PUBLIC TRANSIT AUTHORITY
SSN:        8332
No:         1640336-00

MICKEDA S BARNES
34 DUNBAR AVE
RUMFORD  RI 02916-3111

You sustained a work related injury on 2/12/15 and were in receipt of
worker's compensation benefits.

You state that although you requested reinstatement to your position, your
employer did not accommodate your request.

For unemployment purposes this would be considered a discharge.

The issue is whether you were discharged for disqualifying reasons under
Section 28-44-18 of the Rhode Island Employment Security Act.

Your discharge is for non-disqualifying reasons as there is no evidence of
misconduct in connection with your work. Benefits are allowed if you are
otherwise eligible.

A Notice of Claim form was mailed to your employer on 12/06/16. Section
28-44-38 (c) of the Rhode Island Employment Security Act states, in part,
that if an employer, without good cause, fails to return the notice of claim
filing within ten (10) working days of its mailing date, the employer shall
have no standing to contest any determination made by the director with
respect to the claim and benefit charges.  Your employer has failed to return
the notice as required by law.

Authorized Representative of the Director

RIGHT TO APPEAL

If you disagree with this decision, you must file a written appeal within 15
calendar days, including weekends and holidays, of the mailing date indicated
on this decision or IT WILL BECOME FINAL.  You may file an appeal either by
mail, fax or Internet to the address/fax number/website above.  In your
letter, please provide your name, social security number, address, case
number you are appealing, and reason for appeal. Once your appeal is
received, you will receive further instructions by mail. IMPORTANT: You must
continue using Tele-Serve on a weekly basis while pending any appeal hearing
or further court proceedings, if you are still totally or partially
unemployed.

IMPORTANT: You may have this document interpreted at no cost to you by
contacting the department at 401-243-9100 and selecting one of the following
language options: Portuguese, Laotian, Cambodian, or Hmong. If you need

**DEPARTMENT OF LABOR AND TRAINING**
TTY via RI Relay 711

Central Adjudication Unit, PO Box 20067, Cranston, RI   02920-094120-0944
Tel: (401)462-8300   FAX: (401)462-8318   TTY via RI Relay: 711
Internet address: www.dlt.ri.gov/ui

CLAIMANT DECISION

Mailing Date: 02/21/17
Employer: RI PUBLIC TRANSIT AUTHORITY
SSN:        8332
No:         1640336-00

MICKEDA S BARNES
Page:   2

assistance in a language that is not listed, please contact the Call Center
at 401-243-9100.

Esto es un documento importante. Si usted no está de acuerdo con ésta
decision, usted debe de apelar por correo, fax, o via la Internet dentro de
los próximos 15 dias del calendario a la dirección/fax antedichos o ésta SERA
LA DECISION FINAL. Si necesita más información, favor de referirse a su
folleto de Derechos de Beneficios. IMPORTANTE: Usted tiene que continuar
usando el Tele-Servicio semanalmente mientras esté pendiente su audiencia de
apelación, si aún continúa total o parcialmente desempleado.

IMPORTANTE: Usted puede tener estos documentos traducidos o interpretados,
sin costo alguno para usted, comunicándose con el Centro de Servicio de
Seguro de Desempleo en el 401-243-9100 y seleccionando una de las siguientes
opciones de idioma: Español, Portugués, Laos, Camboya o Hmong. Si necesita
ayuda en un idioma que no está en la lista, por favor póngase en contacto
401-243-9100 y un representante le ayudará.

An Equal Opportunity Employer/Program. Auxiliary aids and services are available upon request for individuals with disabilities.

3.   CONCLUSION:

Section 28-42-3(3) of the Rhode Island Employment Security Act states, in part, that whenever an individual who has received workers' compensation benefits is entitled to reinstatement under 28-33-47, but the position to which reinstatement is sought does not exist or is no longer available, shall have the base period of his/her claim be determined as if the individual filed for benefits on the date of injury. The based period of a claim shall not include any calendar quarter previously used to establish a valid claim for benefits.

The above section of the act is contingent on the Rhode Island Worker's Compensation Law, which states, in part;

(b) The right of reinstatement shall be subject to the provisions for seniority rights and other employment restrictions contained in a valid collective bargaining agreement between the employer and a representative of the employer's employees, and nothing shall exempt any employer from or excuse full compliance with any applicable provisions of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and chapter 87 of title 42.

(1) The right to reinstatement to the worker's former position under this section terminates upon any of the following:

(i) A medical determination by the treating physician, impartial medical examiner, or comprehensive independent health care review team that the worker cannot, at maximum medical improvement, return to the former position of employment or any other existing position with the same employer that is vacant and suitable;

(ii) The approval by the workers' compensation court of a vocational rehabilitation program for the worker to train the worker for alternative employment with another employer;

(iii) The worker's acceptance of suitable employment with another employer after reaching maximum medical improvement;

(iv) The worker's refusal of a bona fide offer from the employer of light duty employment or suitable alternative employment, prior to reaching maximum medical improvement;

(v) The expiration of ten (10) days from the date that the worker is notified by the insurer or self-insured employer by mail at the address to which the weekly compensation benefits are mailed that the worker's treating physician has released the worker for employment unless the worker requests reinstatement within that time period;

(vi) The expiration of thirty (30) days after the employee reaches maximum medical improvement or concludes or ceases to participate in an approved program of rehabilitation, or one year from the date of injury, whichever is sooner, provided, in the event a petition to establish liability for an injury is filed, but not decided within one year of the date of injury, within twenty-one (21) days from the first finding of liability. Notwithstanding the foregoing, where the employee is participating in an approved program of rehabilitation specifically designed to provide the employee with the ability to perform a job for which he or she would be eligible under subsection (a) of this section, the right of reinstatement shall terminate when the employee concludes or ceases to participate in the program or eighteen (18) months from the date of injury, whichever is sooner;

Page 2
MICKEDA S BARNES

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 87 of 689 PageID #:
442

Central Adjudication Unit, PO Box 20067, Cranston, RI  02920-094120-0944
Tel: (401)462-8300  FAX: (401)462-8318  TTY via RI Relay: 711
Internet address: www.dlt.ri.gov/ui

CLAIMANT DECISION

Mailing Date: 12/16/16
Employer: RI PUBLIC TRANSIT AUTHORITY
SSN:       8332
No:        1640353-00

MICKEDA S BARNES
34 DUNBAR AVE
RUMFORD  RI 02916-3111

You filed for benefits effective 12/4/16. You last worked on 2/12/15. You are
requesting the backdating of your base period due to a work related injury.

Investigation shows that you had not reached maximum medical improvement
within one year of your injury. Section 28-33-47 (c)(1)(vi) of the RI
Workers' Compensation Law states, in part, that the right to reinstatement
terminates one year from the date of injury, or 18 months if you participated
in an approved physical therapy program.

Documentation provided to the Department states you met MMI on 10/19/16.

Section 28-42-3 (3) of the Rhode Island Employment Security Act states, in
part, that whenever an individual who has received workers' compensation
benefits is entitled to reinstatement under 28-33-47, but the position to
which reinstatement is sought does not exist or is no longer available, shall
have the base period of his/her claim be determined as if the individual
filed for benefits on the date of injury.  The base period of a claim shall
not include any calendar quarter previously used to establish a valid claim
for benefits.

As you were not eligible for reinstatement under the provisions of Section
28-33-47 of the RI Workers' Compensation Law, which is a prerequisite for
backdating the base period of an unemployment claim under 28-42-3 (3), you do
not meet the requirements of the law and your request for modification of
your base period is denied. Your claim will be established using the base
period in effect at the time of the claim filing.

DLT484-C

DEPARTMENT OF LABOR AND TRAINING
TTY via RI Relay 711

Central Adjudication Unit, PO Box 20067, Cranston, RI   02920-094120-0944
Tel: (401)462-8300   FAX: (401)462-8318   TTY via RI Relay: 711
Internet address: www.dlt.ri.gov/ui

CLAIMANT DECISION

Mailing Date: 12/16/16
Employer: RI PUBLIC TRANSIT AUTHORITY
SSN:        8332
No:         1640353-00

MICKEDA S BARNES
Page:   2

Authorized Representative of the Director

RIGHT TO APPEAL

If you disagree with this decision, you must file a written appeal within 15
calendar days, including weekends and holidays, of the mailing date indicated
on this decision or IT WILL BECOME FINAL.  You may file an appeal either by
mail, fax or Internet to the address/fax number/website above.  In your
letter, please provide your name, social security number, address, case
number you are appealing, and reason for appeal. Once your appeal is
received, you will receive further instructions by mail. IMPORTANT: You must
continue using Tele-Serve on a weekly basis while pending any appeal hearing
or further court proceedings, if you are still totally or partially
unemployed.

IMPORTANT: You may have this document interpreted at no cost to you by
contacting the department at 401-243-9100 and selecting one of the following
language options: Portuguese, Laotian, Cambodian, or Hmong. If you need
assistance in a language that is not listed, please contact the Call Center
at 401-243-9100.

Esto es un documento importante. Si usted no está de acuerdo con ésta
decision, usted debe de apelar por correo, fax, o via la Internet dentro de
los próximos 15 dias del calendario a la dirección/fax antedichos o ésta SERA
LA DECISION FINAL. Si necesita más información, favor de referirse a su
folleto de Derechos de Beneficios. IMPORTANTE: Usted tiene que continuar
usando el Tele-Servicio semanalmente mientras esté pendiente su audiencia de
apelación, si aún continúa total o parcialmente desempleado.

IMPORTANTE: Usted puede tener estos documentos traducidos o interpretados,
sin costo alguno para usted, comunicándose con el Centro de Servicio de
Seguro de Desempleo en el 401-243-9100 y seleccionando una de las siguientes
opciones de idioma: Español, Portugués, Laos, Camboya o Hmong. Si necesita
ayuda en un idioma que no está en la lista, por favor póngase en contacto
401-243-9100 y un representante le ayudará.

An Equal Opportunity Employer/Program. Auxiliary aids and services are available upon request for individuals with disabilities.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
# DEPARTMENT OF LABOR AND TRAINING

PO BOX 20389    CRANSTON, RI 02920-0944
401-243-9100
**TTY Via RI Relay 711**

### BENEFIT RATE DECISION

MICKEDA    S BARNES                          SSN: XXX-XX-8332
34    DUNBAR AVE
RUMFORD          RI 02916-3111

BYE Code: 17

Our records show you have earned enough to qualify for unemployment benefits.

If you meet all other requirements, you will receive a weekly benefit of
$ 555.00, plus a dependency allowance of $ 55.00, for a weekly total of
$ 610.00.  If you are working part-time, or have other deductible income
under the law, your benefit rate and dependency allowance will be reduced.

You may collect a maximum (excluding the dependency allowance) of $11882.00
on this claim.

| DATE OF CLAIM | EFFECTIVE DATE | BENEFIT YEAR ENDS | LAST DAY OF WORK |
|---|---|---|---|
| 02/17/17 | 12/04/16 | 12/02/17 | 02/12/15 |

| EMPLOYER NAME | QUARTER 4TH-13 | QUARTER 1ST-14 | QUARTER 2ND-14 | QUARTER 3RD-14 | TOTAL |
|---|---|---|---|---|---|
| RHODE ISLAN | 17053.29 | 6927.31 | 210.40 | 11815.22 | 36006.22 |
| TOTALS: | 17053.29 | 6927.31 | 210.40 | 11815.22 | 36006.22 |

Computed on: 02/17/17

If you believe that any of the information shown above is incorrect or that
employment and wage information is missing, please contact us at 401-243-9100.

The above are taxable wages as defined by 28-42-3 (28) (ii) of the Rhode
Island Employment Security Act.
If you receive benefits to which you are not entitled, Rhode Island General
Laws allow for the recovery of overpayments and interest from an individual's
state personal income tax and from lottery winnings.

You have the right to appeal this decision within 15 days of this date:
02/17/17.  You may do this by writing to the office listed at the top of
this form.  If you write to us, please include your Social Security Number
in your letter.

Please visit www.dlt.ri.gov for further information.

IMPORTANT: You may have this document interpreted at no cost to you by
contacting the Unemployment Insurance Service Center at 401-243-9100 and

Ove

An Equal Opportunity Employer/Program. Auxiliary aids and services are available upon request for individuals with disabilities.





3/2/2016 11:34 AM Workers' Compensation Court



# State of Rhode Island and Providence Plantations

**Providence, Sc.**                    **Workers' Compensation Court**

W.C.C. NO.   201600299

Respondent   RHODE ISLAND PUBLIC TRANSIT
AUTHORITY

Petitioner   Mickeda S. Barnes

Insurer   Rhode Island Individual Self Insureds

Judge   Judge George T. Salem

This matter came to be heard on an **EMPLOYEE'S PETITION for COMPENSATION BENEFITS/EMPLOYEE**
**PETITION to REVIEW/PETITION to ENFORCE** and after considering all of the evidence presented the Judge
finds:

Ee is authorized to have physical therapy
as per Dr. Pizzarello J.
Ee is also authorized emg and nerve conduction
of the left upper extremity.



201600299
OPTR
Pretrial Order Entered
222398

Case Number: 201600299
Filed in Workers' Compensation Court
Submitted: 1/16/2016 12:31:57 PM
Envelope: 470867
Reviewer: Gabriella Caraballo



W.C.C. # of pending petitions:

_____
_____
_____

## State of Rhode Island and Providence Plantations

**Providence, SC.**　　　　　　　　　**Workers' Compensation Court**

**MICKEDA S. BARNES** _____　　　201600299
Name of Employee-Petitioner

**XXX-XX-8332** _____
Social Security Number (last 4 digits only)

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY** _____
Name of Employer-Respondent

**705 ELMWOOD AVENUE**
**PROVIDENCE, RI 02907**　　　　　　　**MR. GIOVANNI P. STANZIALE**
Address of Employer-Respondent　　　　　　Name of Agent for Service of Process

　　　　　　　　　　　　　　　　　**705 ELMWOOD AVENUE**
**RHODE ISLAND INDIVIDUAL SELF INSUREDS**　**PROVIDENCE, RI 02907**
Insurance Carrier　　　　　　　　　　　Address of Agent for Service of Process

### Employee's Petition to Review and/or Amend Agreement or Decree Concerning Compensation

　　　The undersigned EMPLOYEE hereby petitions for a determination of my right to benefits under a compensation agreement, or under a decree of the Workers' Compensation Court. **A copy of said agreement or decree establishing the liability of the employer to pay workers' compensation benefits is filed herewith.** The undersigned affirms that the following facts are true:

☐　1.　My incapacity for work has increased or returned by reason of the effects of the injury set forth in said agreement or decree attached hereto.

　　　　　Total incapacity from _____ to _____.
　　　　　Partial incapacity from _____ to _____.

☒　2.　My employer refuses to provide or pay for necessary medical services as provided by R.I.G.L. §§ 28-33-5 and 28-33-8, specifically **EMG/Nerve Conduction Study of Left, Upper Extremity and Right Upper Extremity per the Report of Dr. Richard Anderson. Physical Therapy per the Report of Peter Pizzarello, Jr., M.D.** _____

☐　3.　My employer and/or its insurance carrier refuse to give written permission for major surgery, specifically:

　　　　_____

　　　　(Attach a copy of doctor's request for surgery)

☐　4.　Weekly payments of compensation have been based on an erroneous average weekly wage. My average weekly wage at the time of my injury was $ _____.

☐　5.　The compensation agreement or decree was procured by fraud, coercion or mutual mistake of fact.

~~~~

Page 1 of 2

Case Number: 201600299
Filed in Workers' Compensation Court
Submitted: 1/16/2016 12:31:57 PM
Envelope: 470867
Reviewer: Gabriella Caraballo

W.C.C. No. 201600299

☐ 6. The compensation agreement or decree does not accurately and completely set forth and describe the nature and location of all injuries sustained by me. Said agreement or decree should be amended so that the nature and location of my injuries shall read as follows:

☐ 7. Per R.I.G.L. § 28-33-18.3, I have received a notice of intention to terminate partial incapacity benefits pursuant
to R.I.G.L. § 28-33-18(d), and I hereby petition the court for continuation of benefits.

☐ 8. Per R.I.G.L. § 28-33-41 and the W.C.C. Rules of Practice, I hereby petition the court for a rehabilitation
program approval.

☐ 9. Per R.I.G.L. § 28-33-47 and the W.C.C. Rules of Practice, I hereby petition the court for my right of reinstatement.

☐ 10. Per R.I.G.L. § 28-33-18.2, I hereby petition the court for a finding of suitable alternative employment.

☐ 11. Per R.I.G.L. § 28-33-20, I hereby petition the court for an order compelling the employer to provide a wage transcript.

☒ 12. Other: **I ALSO REQUEST ATTORNEY FEES, COSTS, AND INTEREST**

**STEPHEN J. DENNIS, ESQ.**
Attorney Name

**/S/ STEPHEN J. DENNIS**
Attorney Signature

Signature of Employee

127 Dorrance Street, Ste. 7A 3rd Fl.
Attorney Address

January 13, 2016
Date

34 Dunbar Avenue
Employee's Address

Providence, RI 02903
City, State, Zip Code

#4336  (DCL)
Attorney Bar Registration No.

Rumford, RI 02916
City, State, Zip Code

## **Agreement in the Mickeda Barnes Matter**

I understand that this case was referred to the Law Offices of Sonja L. Deyoe from Attorney Stephen J. Dennis.

I further understand that the Law Offices of Sonja L. Deyoe will be assuming responsibility, along with Attorney Stephen J. Dennis for the legal representation in this matter, and that Attorney Stephen J. Dennis will receive $10,000.00 of any attorney fees realized by the Law Offices of Sonja L. Deyoe.

This Agreement is acceptable to me.

DATED: _July 19, 2018_

_____
Mickeda Barnes

_____
Stephen J. Dennis, Esq.

_____
Sonja L. Deyoe, Esq.

# LAW OFFICE OF  STEPHEN J. DENNIS

Stephen J. Dennis *

Howard L. Feldman †
Catherine E. Bednarz †
Carolyn A. Mannis

Jeanne M. Scott
of counsel

William J. Gately, Jr. †
of counsel

May 8, 2018

\*   Also admitted in DC
†   Also admitted in MA

Sonja L. Deyoe
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908

**RE:**   **Mickeda S. Barnes**
**DOI:**   **2/12/2015**

Dear Ms. Deyoe:

As you are aware, this office represents the legal interest of Ms. Mickeda S. Barnes as it relates to a Workers' Compensation Claim.

Please advise our office to status of settlement as it relates to the discrimination portion of the global settlement.

If you have any questions or concerns don't hesitate to contact the office. Thank you for your anticipated cooperation.

Very Truly Yours,

**LAW OFFICE OF STEPHEN J. DENNIS**



Stephen J. Dennis, Esq.

SJD/alh
Cc: Mickeda Barnes

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 • 1-888-634-1543 • Fax: 401-453-6670



## State of Rhode Island

### Providence, Sc.

## Workers' Compensation Court

W.C.C. NO.  202005914

Petitioner    Mickeda S. Barnes

Judge    Judge George T. Salem

Respondent    Rhode Island Public Transit Authority

Insurer    Rhode Island Individual Self Insureds

Date of Injury    2/12/15

This matter came to be heard on an **EMPLOYEE'S PETITION for COMPENSATION BENEFITS/EMPLOYEE'S PETITION to REVIEW/PETITION to ENFORCE** and after considering all of the evidence presented the Judge finds:

Ee has obtained an ex parte order granting her request for surgery w/ Dr Schmidt rendering this petition moot.

ORDERED:

- the petition is dismissed without prejudice.

- the hearing scheduled for December 2, 2020 at 12:00 is cancelled.

W.C.C. NO.    202005914

## PRETRIAL ORDER

_____ Petition Granted

__X__ Petition ~~Denied~~ *dismissed without prejudice .*

_____ Attorney fee awarded to _____ in the amount of  $ _____
in addition to the reimbursement of the filing fee.

| | |
|---|---|
| __11/19/2020__ | __/s/ Salem, J__ |
| **DATE OF ENTRY** | **JUDGE** |

Any party aggrieved by the entry of this order may claim a trial by filing with the Administrator of the Workers' Compensation Court, One Dorran Plaza, Providence, RI, 02903-3973, within five (5) days of the date of entry of the order, exclusive of Saturdays, Sundays, and holidays, a Claim fo Trial on forms prescribed by the Administrator of the Workers' Compensation Court. W.C.C. 3 (07/17)

*ISO ○ (handwritten)*
*On Record (handwritten)*

**Rendine, Laura A.**

| | |
|---|---|
| From: | Mickeda Barnes <mickeda5@gmail.com> |
| Sent: | Thursday, July 28, 2016 10:10 AM |
| To: | Rendine, Laura A. |
| Subject: | Fwd: Judge being very bias and racist |

Sent from my iPhone

Begin forwarded message:

> **From:** Mickeda Barnes <mickeda5@gmail.com>
> **Date:** July 28, 2016 at 9:01:02 AM EDT
> **To:** maveno@courts.ri.gov
> **Subject: Fwd: Judge being very bias and racist**

Sent from my iPhone

Begin forwarded message:

> **From:** Mickeda Barnes <mickeda5@gmail.com>
> **Date:** July 28, 2016 at 8:53:38 AM EDT
> **To:** <maveno@courts.ri.gov>
> **Subject: Judge being very bias and racist**

Dear Mrs Maveno

Hi my name is Mickeda Barnes and I have a workers compensation claim against Ripta the first Judge handling my case was Judge Salam and then Judge Salam's father passed away and Ripta refused to pay for my Knee cream that Judge Salam told them to pay for during my court appearance On March 2,2016. We had petitioned the court with server all of them in which my low back got added to the memorandum so I can start receiving treatment which my primary care doctor ordered a MRI so I can finally find out what's causing all this pain and it was denied. My lawyer Steven Dennis put in a petition to have it heard July 27, 2016 and it was given to Judge Hardman to hear which I asked why and was told his father Had Passed so the court gave me Judge Hardman. I've been in a lot of pain and have been to your office serveral times before. My injuries I suffer from are getting permanently worst and this case is dragging out due to Judge change because he is not familiar with this case I'AM having more set backs this needs to be handle ASAP because Iam ready to COMMIT SUICIDE due to all this pain Iam experiencing. I got hurt February 12, 2016 and only recieved a left hand carpal tunnel release May 6, 2015 which had a good result but then started to regress 8 to 9 weeks later and pain starting in the right hand that was similar to how the left hand felt after the fall I had at work Febuary 12,2016. Judge Hardman showed aggressive behavior towards my Attoney Steven Dennis which

1

was obvious to me that they have some issues between them. Judge Hardman body language was very argumentative and no to almost every petition I had filed so I can recieve treatment. I have spent a lot of my own money to see doctors who can properly diagnose me so I can recieve treatment and return to work not be depressed ,scared off , in great pain, watching my body parts decimate to nothing Because the State of RI claims they don't have any money. That's not my problem my problem is I have legitimate injuries and Iam not receiving any treatments that Iam entitled to because of Doctors who get paid by the company and say whatever is told to them to get me off benefits and out of their face. One way or another I will have this system exposed so no one else go threw what Iam going threw. I have a recording of Dr Weiss the company Doctor for Ripta My IME Appointment Dr Weiss telling me things he had no business telling me and I had to beg him to go over all my doctors notes and to give me a exam which he did not until I argued with him that Ripta sent me a letter that you are to get a better understanding of my injuries and my disability. I don't understand why I have to get in between a Bitter Judge who clearly doesn't like my lawyer and it showed with his body language and his words and he act like he wasn't paying attention to Steven Dennis. I was looking at other attorney's facial expressions while Judge Hardman was speaking and they gave me the shoulder like I don't know what's going on with this Judge. If nothing is done about this by Friday July 29, 2016 I will take all my pain pills and send my Recording to Tim White or Susan Hogan if it's worth me dying to have this crooked system exposed I will because I have simple injuries that can be fixed so I can move on in my life to watch my kids grow finish college and be a grandmother one day but if I have to deal with permanent nerve damage and body disfigurement because of a budget that the state of Rhode Island don't have ill rather have it exposed to the whole wide world media to see how workers compensation is destroying hard working families.
Sent from my iPhone

2

# LAW OFFICE OF  STEPHEN J. DENNIS

Stephen J. Dennis *

Howard L. Feldman †
Catherine E. Bednarz †
Carolyn A. Mannis

Jeanne M. Scott
of counsel
William J. Gately, Jr. †
of counsel

\* Also admitted in DC
† Also admitted in MA

October 16, 2017

Ms. Mickeda S. Barnes
34 Dunbar Avenue
Rumford, RI 02916

Dear Ms. Barnes:

As you are aware, this office represents your legal interest in regards to a workers' compensation claim.

I am writing you at this time to inform you of your Mediation, which is scheduled for October 20, 2017 at 9:00 a.m. This will be held on the 3rd Floor of the court house with Judge Michael J. Feeney.  Please contact our office upon receipt of this correspondence to verify your attendance.

Thank you for your attention to this correspondence.

Very truly yours,

**LAW OFFICE OF STEPHEN J. DENNIS**

Stephen J. Dennis, Esq.

SJD/alh
Enclosure

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 ◦ 1-888-634-1543 ◦ Fax: 401-453-6670

8



STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS ✓

## WORKERS' COMPENSATION COURT
J. Joseph Garrahy Judicial Complex
One Dorrance Plaza
Providence, RI  02903-3973
*(401) 458-5000 voice
(401) 222-3121 facsimile

OCT 25 2017

**Mickeda S. Barnes,** Petitioner                                        10/24/2017
v.
**RHODE ISLAND PUBLIC TRANSIT**          Case Number:          **201706073**
**AUTHORITY,** Respondent

### NOTICE OF PRETRIAL CONFERENCE

In accordance with the provision of G.L. 1956 § 28-35-20 and Rule 2.3 of the Rules of Practice of the Workers' Compensation Court, a pretrial conference will be held at this court on **11/03/2017** before **Chief Judge Robert M. Ferrieri** at **9:30 AM**. Please go to the 4th floor for your courtroom assignment.

You are hereby notified to attend this conference.  Failure to appear for said pretrial conference, unless excused by the judge presiding at the conference, shall result in the entry of an order of default adverse to the absent party.  Please, bring with you any medical reports, statements, or other documents concerning the claim.

Please be advised that the employer will be represented by an attorney at the pretrial conference.  IF YOU HAVE AN ATTORNEY REPRESENTING YOU, PLEASE NOTIFY HIM OR HER IMMEDIATELY REGARDING NOTICE OF THIS COURT DATE.

WORKERS' COMPENSATION COURT

Nicholas DiFilippo
Court Administrator

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Workers' Compensation Court at (401) 458-5000.  TTY users can contact the Workers' Compensation Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.

*Right to Reinstatement with Intrest !*

e Number: 201706073
d in Workers' Compensation Court
mitted: 10/24/2017 10:59:22 AM
elope: 1257282
iewer: Jennifer Furtado



W.C.C. # of pending petitions:
17-5115, 17-4571,
17-4145, 17-4046

## State of Rhode Island and Providence Plantations

**Providence, SC.**                                    **Workers' Compensation Court**

**MICKEDA S. BARNES**
Name of Employee-Petitioner                                    201706073

**1/31/1975**                                          **2/12/2015**
Date of Birth (mm/dd/yyyy)                             Date of Injury (mm/dd/yyyy)

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**
Name of Employer-Respondent

**705 ELMWOOD AVENUE**
**PROVIDENCE, RI 02907**
Address of Employer-Respondent                        **MR. GIOVANNI P. STANZIALE**
                                                       Name of Agent for Service of Process

**RHODE ISLAND INDIVIDUAL SELF INSUREDS**             **705 ELMWOOD AVENUE**
Insurance Carrier                                      **PROVIDENCE, RI 02907**
                                                       Address of Agent for Service of Process

### Employee's Petition to Review and/or Amend Agreement or Decree Concerning Compensation

The undersigned EMPLOYEE hereby petitions for a determination of my right to benefits under a compensation agreement, or under a decree of the Workers' Compensation Court. **A copy of said agreement or decree establishing the liability of the employer to pay workers' compensation benefits is filed herewith.** The undersigned affirms that the following facts are true:

☐   1.   My incapacity for work has increased or returned by reason of the effects of the injury set forth in said agreement or decree attached hereto.

Total incapacity from _____ to _____.
Partial incapacity from _____ to _____.

☐   2.   My employer refuses to provide or pay for necessary medical services as provided by R.I.G.L. §§ 28-33-5 and 28-33-8, specifically

_____.

☐   3.   My employer and/or its insurance carrier refuse to give written permission for major surgery, specifically:

_____.

(Attach a copy of doctor's request for surgery)

☐   4.   Weekly payments of compensation have been based on an erroneous average weekly wage. My average weekly wage at the time of my injury was $ _____.

☐   5.   The compensation agreement or decree was procured by fraud, coercion or mutual mistake of fact.

Rev 09/2017                                            Page 1 of 2

e Number: 201706073
d in Workers' Compensation Court
mitted: 10/24/2017 10:59:22 AM
elope: 1257282
iewer: Jennifer Furtado

W.C.C. No. 201706073 _____

☐ 6. The compensation agreement or decree does not accurately and completely set forth and describe the nature and location of all injuries sustained by me. Said agreement or decree should be amended so that the nature and location of my injuries shall read as follows:

☐ 7. Per R.I.G.L. § 28-33-18.3, I have received a notice of intention to terminate partial incapacity benefits pursuant
to R.I.G.L. § 28-33-18(d), and I hereby petition the court for continuation of benefits.

☐ 8. Per R.I.G.L. § 28-33-41 and the W.C.C. Rules of Practice, I hereby petition the court for a rehabilitation
program approval.

☒ 9. Per R.I.G.L. § 28-33-47 and the W.C.C. Rules of Practice, I hereby petition the court for my right of reinstatement.

☐ 10. Per R.I.G.L. § 28-33-18.2, I hereby petition the court for a finding of suitable alternative employment.

☐ 11. Per R.I.G.L. § 28-33-20, I hereby petition the court for an order compelling the employer to provide a wage transcript.

☒ 12. Other: **I ALSO REQUEST ATTORNEY FEES, COSTS, AND INTEREST** _____.

| STEPHEN J. DENNIS, ESQ. | /S/ STEPHEN J. DENNIS | Michaela E Barnes |
|---|---|---|
| Attorney Name | Attorney Signature | Signature of Employee |
| 127 Dorrance Street, Ste. 7A 3rd Fl. | 10/23/17 alb | 34 Dunbar Avenue |
| Attorney Address | Date | Employee's Address |
| Providence, RI 02903 | # 4336 | Rumford, RI 02916 |
| City, State, Zip Code | Attorney Bar Registration No. | City, State, Zip Code |

Rev 09/2017

ase Number: 201601236
led in Workers' Compensation Court
ubmitted: 2/26/2016 4:36:47 PM
nvelope: 520769
eviewer: Paula Rogal)

# LAW OFFICE OF STEPHEN J. DENNIS

A Professional Legal Corporation

Stephen J. Dennis *

Howard L. Feldman †
Michael F. Campopiano †
of counsel

William J. Gately, Jr. †
of counsel

\* Also admitted in DC
† Also admitted in MA

*[handwritten: Reinstatement To work light duty but was denied / Fired]*

January 27, 2016

Ms. Diane Salsbury
Rhode Island Public Transit Authority
705 Elmwood Avenue
Providence, RI 02907

Re:  Mickeda S. Barnes
DOI:  2/12/2015

Dear Ms. Salsbury:

Please be advised this office represents the legal interest of Ms. Mickeda S. Barnes with regards to a Workers' Compensation Claim. At the present time we are demanding that Ms. Barnes be reinstated to her former position in accordance with RIGL 28-33-47, per the release to work with restrictions from Michael Souza, M.D. I have enclosed a copy of this release for your review. Please advise whether or not you will voluntarily resolve this matter by complying with the above twenty-one days of receipt of this correspondence. If this matter is not resolved as requested, I will have no alternative but to file a petition with the Workers' Compensation Court. Please respond to my office in writing. If you feel that this letter has been sent in error, please contact my paralegal Souzi. Thank you for your anticipated cooperation regarding this important matter.

Very truly yours,

LAW OFFICE OF STEPHEN J. DENNIS
COPY

Stephen J. Dennis, Esq.

SJD/dcl
Enclosure
cc: Mickeda S. Barnes
     Paul Ricciardi – Claim Strategies
     Nicholas Mancini, Esq.
Sent via Facsimile Regular &
Certified Mail 70142120000235229107

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 • 1-888-634-1543 • Fax: 401-453-6670
*"Working Lawyers for Working People"*

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

**PROVIDENCE, SC.**            **WORKERS' COMPENSATION COURT**

### WORKERS' COMPENSATION COURT
J. Joseph Garrahy Judicial Complex
One Dorrance Plaza
Providence, RI 02903-3973
*(401) 458-5000 voice
(401) 222-3121 facsimile

Mickeda S. Barnes, Petitioner                                           10/13/2017
    v.
**RHODE ISLAND PUBLIC**            Case #    **201704046,201704145, 201704751, 201705115**
**TRANSIT AUTHORITY,**
Respondent

## NOTICE OF MEDIATION CONFERENCE

In accordance with the provision of Administrative Order number 2016-06 of the Workers' Compensation Court, a mediation conference will be held at this court on October 20, 2017 before Judge Michael J. Feeney at 9:00 a.m. Please go to the 3$^{rd}$ floor for your room assignment.

You are hereby notified to attend this conference. All parties, their counsel, and persons with the full authority to settle the case must personally attend the mediation conference, or be available by phone or email, unless excused by the Mediator for good cause. Failure to appear for said mediation conference, unless excused by the Mediator, may result in court imposed sanctions.

WORKERS' COMPENSATION COURT

Nicholas DiFilippo
Court Administrator

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your mediation conference.

* If an accommodation for a disability is necessary, please contact the Workers' Compensation Court at (401) 458-5000.  TTY users can contact the Workers' Compensation Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



# LAW OFFICE OF STEPHEN J. DENNIS

Stephen J. Dennis *

Howard L. Feldman †
Catherine E. Bednarz †
Carolyn A. Mannis

December 5, 2017

Jeanne M. Scott
of counsel
William J. Gately, Jr. †
of counsel

* Also admitted in DC
† Also admitted in MA

Ms. Mickeda S. Barnes
34 Dunbar Avenue
Rumford, RI 02916

**RE: Mickeda Barnes vs. Rhode Island Public Transit Authority**

Dear Ms. Barnes:

On Friday, 12/01/2017, you agreed to settle your Workers' Compensation and Discrimination claims. As we now enter the process to finalize the settlement of these claims, we wish to inquire as to whether or not you paid out of pocket for any services and/or prescription medications needed in order to treat your established injuries.

In the event that you did pay out of pocket for any services and/or prescription medications, my office will try to get you reimbursed for those charges. However, in order to proceed, we would need copies of all receipts as well as any corresponding notes in your possession. My office strongly urges you to gather the aforementioned items and deliver them as quickly as possible. We appreciate your prompt attention to this matter. Please do not hesitate to contact us with any questions or concerns. Thank you.

Very Truly Yours,

**LAW OFFICE OF STEPHEN J. DENNIS**

Stephen J. Dennis, Esq.

SJD/jdc

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 ○ 1-888-634-1543 ○ Fax: 401-453-6670



# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## PROVIDENCE, SC.          WORKERS' COMPENSATION COURT

### WORKERS' COMPENSATION COURT
J. Joseph Garrahy Judicial Complex
One Dorrance Plaza
Providence, RI  02903-3973
*(401) 458-5000 voice
(401) 222-3121 facsimile

Mickeda S. Barnes, Petitioner                                              11/27/2018

v.

**RHODE ISLAND PUBLIC TRANSIT**          Case Number:  **201706824**
**AUTHORITY,** Respondent

## NOTICE OF MEDIATION CONFERENCE

In accordance with the provision of Administrative Order number 2016-06 of the Workers' Compensation Court, a mediation conference will be held at this court on Wednesday, December 19, 2018 before Judge Michael J. Feeney at 2:00 p.m. Please go to the 3rd floor for your room assignment.

You are hereby notified to attend this conference. All parties, their counsel, and persons with the full authority to settle the case must personally attend the mediation conference, or be available by phone or email, unless excused by the Mediator for good cause. Failure to appear for said mediation conference, unless excused by the Mediator, may result in court imposed sanctions.

WORKERS' COMPENSATION COURT

Nicholas DiFilippo
Court Administrator

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your mediation conference.

* If an accommodation for a disability is necessary, please contact the Workers' Compensation Court at (401) 458-5000.  TTY users can contact the Workers' Compensation Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

**PROVIDENCE, SC.**         **WORKERS' COMPENSATION COURT**

## WORKERS' COMPENSATION COURT
J. Joseph Garrahy Judicial Complex
One Dorrance Plaza
Providence, RI 02903-3973
*(401) 458-5000 voice
(401) 222-3121 facsimile

Mickeda S. Barnes, Petitioner                                           11/27/2018

v.

**RHODE ISLAND PUBLIC TRANSIT**          Case Number:   **201704145**
**AUTHORITY**, Respondent

### NOTICE OF MEDIATION CONFERENCE

In accordance with the provision of Administrative Order number 2016-06 of the Workers' Compensation Court, a mediation conference will be held at this court on December 19, 2018 before Judge Michael J. Feeney at 2:00 p.m. Please go to the 3rd floor for your room assignment.

You are hereby notified to attend this conference. All parties, their counsel, and persons with the full authority to settle the case must personally attend the mediation conference, or be available by phone or email, unless excused by the Mediator for good cause. Failure to appear for said mediation conference, unless excused by the Mediator, may result in court imposed sanctions.

WORKERS' COMPENSATION COURT

Nicholas DiFilippo
Court Administrator

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your mediation conference.

* If an accommodation for a disability is necessary, please contact the Workers' Compensation Court at (401) 458-5000. TTY users can contact the Workers' Compensation Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## PROVIDENCE, SC.          WORKERS' COMPENSATION COURT

**WORKERS' COMPENSATION COURT**
J. Joseph Garrahy Judicial Complex
One Dorrance Plaza
Providence, RI  02903-3973
*(401) 458-5000 voice
(401) 222-3121 facsimile

Mickeda S. Barnes, Petitioner                                      11/27/2018

   v.

**RHODE ISLAND PUBLIC TRANSIT**          Case Number:  **201706646**
**AUTHORITY,** Respondent

### NOTICE OF MEDIATION CONFERENCE

In accordance with the provision of Administrative Order number 2016-06 of the Workers' Compensation Court, a mediation conference will be held at this court on Wednesday, December 19, 2018 before Judge Michael J. Feeney at 2:00 PM. Please go to the 3rd floor for your room assignment.

You are hereby notified to attend this conference. All parties, their counsel, and persons with the full authority to settle the case must personally attend the mediation conference, or be available by phone or email, unless excused by the Mediator for good cause. Failure to appear for said mediation conference, unless excused by the Mediator, may result in court imposed sanctions.

WORKERS' COMPENSATION COURT

Nicholas DiFilippo
Court Administrator

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your mediation conference.

* If an accommodation for a disability is necessary, please contact the Workers' Compensation Court at (401) 458-5000.  TTY users can contact the Workers' Compensation Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.

# LAW OFFICE OF  STEPHEN J. DENNIS

Stephen J. Dennis *

Howard L. Feldman †
Carolyn A. Mannis

William J. Gately, Jr. †
of counsel

\* Also admitted in DC
† Also admitted in MA

December 3, 2018

Ms. Mickeda S. Barnes
34 Dunbar Avenue
Rumford, RI 02916

Dear Ms. Barnes:

As you are aware, this office represents your legal interest in regards to a workers' compensation claim.

I am writing you at this time to inform you of your next court date, which is scheduled for **December 19, 2018** at **2:00 p.m.** for *mediation conference* before Judge Michael J. Feeney.

Thank you for your attention to this correspondence.

Very truly yours,

**LAW OFFICE OF STEPHEN J. DENNIS**

Stephen J. Dennis, Esq.

SJD/gey

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 ◦ 1-888-634-1543 ◦ Fax: 401-453-6670

# LAW OFFICE OF STEPHEN J. DENNIS

*A Professional Legal Corporation*

Stephen J. Dennis *

Howard L. Feldman †
Michael F. Campopiano †
of counsel
William J. Gately, Jr. †
of counsel

\*   Also admitted in DC
†   Also admitted in MA

September 21, 2015

Mr. John Travers
Claim Strategies
P.O. Box 549
Providence, RI 02901

**RE:**   **Mickeda S. Barnes**
**DOI:**   **2/12/2015**
**Claim#: RP-1502-0004L**

Dear Mr. Travers:

    Please be advised that this office represents the legal interests of Ms. Mickeda S. Barnes with regards to a Workers' Compensation Claim. At this time we are requesting that the Memorandum of Agreement be amended to include <u>left wrist, right wrist, right shoulder, low back, right knee</u>. Kindly advise whether or not you will voluntarily resolve this matter by complying with the above within twenty-one days of receipt of this correspondence. If this matter is not resolved as requested, I will have no alternative but to file a petition with the Worker's Compensation Court. Please respond to my office in writing. If you feel that this letter has been sent in error, please contact my Paralegal, Souzi, immediately. Thank you for your anticipated cooperation in this matter.

Very Truly Yours,

NOTICE
If you do not wish to have this
petition filed, contact me immediately!
Stephen J. Dennis

**LAW OFFICE OF STEPHEN J. DENNIS**



Stephen J. Dennis, Esq.

SJD/dcl
Enclosure
cc: Ms. Mickeda S. Barnes

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 • 1-888-634-1543 • Fax: 401-453-6670
*"Working Lawyers for Working People"*



W.C.C. Pending Cases

*2020-5914; 2020-1937*
*2020-4635*

## State of Rhode Island

**Providence, Sc.**                                    **Workers' Compensation Court**

Micekda S. Barnes
_____
Name of Employee

01/31/1975
_____
Date of Birth (mm/dd/yyyy)
- vs.-

Rhode Island Public Transit Authority
_____

_____
Name of Employer

_____
W.C.C. #

Beacon Mutual Insurance Company
_____
Insurance Carrier

One Beacon Centre
Warwick, RI 02886
_____
Insurance Carrier Address

### Request for Permission for Major Surgery

The undersigned alleges as follows:

The employer (●) has ( ) has not been found liable under the terms of the Workers' Compensation Act for an injury sustained by the employee on 02/12/2015_____. (If applicable, attach a copy of any agreement or decree establishing liability)

Dr. Scott T. Schmidt_____ has stated that major surgery described as follows is necessary to cure, relieve or rehabilitate the employee from the effects of the injury. The proposed surgery is Left Wrist Surgery

The employee has consented to the procedure and will undergo the surgery within 90_____ days.

Permission for surgery has been requested from the employer or its insurance carrier and has not been received. (Attach copy of such request).

Wherefore the employee requests an ex-parte order granting permission for such surgery.

This order does not authorize payment of medical bills by the employer or their insurance carrier,

/s/Stephen J. Dennis, Esq.
_____
Attorney for Employee
127 Dorrance Street, 3rd Floor, Suite 7A
Providence, RI 02903
_____
Address of Attorney

#4336
_____
Attorney phone number and bar registration number

Mickeda S. Barnes
_____
Employee
34 Dunbar Avenue
_____
Address
Rumford, RI 02916
_____
Address

*[handwritten notes in right margin: ORDER - EX Parte denied, EX Parte order request not left, left wrist does not relate to injury... Dr Schmidt does not relate surgery to... work related injury. Sd/ 11/4/2021]*

W.C.C. No._____

# EX-PARTE ORDER

Permission for surgery is granted to:

Scott T. Schmidt, M.D.          235 Plain Street, Unit 203
<span></span>Name of Surgeon                              Surgeon Address

<span></span>Providence, RI 02905
<span></span>Surgeon Address

Such surgery shall be performed within _____ days from the date of this order.

No liability of any kind is imposed upon the employer or its insurance carrier by this order.
A copy of this order shall be forwarded to the employer and its insurance carrier.

Dated this _____day of _____, 20_____.

ENTER:                                    PER ORDER:

_____          _____
<span></span>Judge                                          Administrator

revised 06/2020

Case Number: 201706824
Filed in Workers' Compensation Court
Submitted: 11/29/2017 10:42:36 AM
Envelope: 1306908
Reviewer: Joseph Lancellotti



W.C.C. # of pending petitions:

_____

_____

## State of Rhode Island and Providence Plantations

**Providence, SC.**                    **Workers' Compensation Court**

201706824

**MICKEDA S. BARNES**
Name of Employee-Petitioner

**1/31/1975**                                              **2/12/2015**
Date of Birth (mm/dd/yyyy)                        Date of Injury (mm/dd/yyyy)

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**
Name of Employer-Respondent

**705 ELMWOOD AVENUE**
**PROVIDENCE, RI 02907**
Address of Employer-Respondent                    **MR. GIOVANNI P. STANZIALE**
                                                  Name of Agent for Service of Process

**RHODE ISLAND INDIVIDUAL SELF INSUREDS**        **705 ELMWOOD AVENUE**
Insurance Carrier                                 **PROVIDENCE, RI 02907**
                                                  Address of Agent for Service of Process

### Employee's Petition to Review and/or Amend Agreement or Decree Concerning Compensation

    The undersigned EMPLOYEE hereby petitions for a determination of my right to benefits under a compensation agreement, or under a decree of the Workers' Compensation Court. **A copy of said agreement or decree establishing the liability of the employer to pay workers' compensation benefits is filed herewith.** The undersigned affirms that the following facts are true:

☐   1.  My incapacity for work has increased or returned by reason of the effects of the injury set forth in said agreement or decree attached hereto.

         Total incapacity from _____ to _____.

         Partial incapacity from _____ to _____.

☐   2.  My employer refuses to provide or pay for necessary medical services as provided by R.I.G.L. §§ 28-33-5 and 28-33-8, specifically

    _____.

☐   3.  My employer and/or its insurance carrier refuse to give written permission for major surgery, specifically:

    _____.

    (Attach a copy of doctor's request for surgery)

☐   4.  Weekly payments of compensation have been based on an erroneous average weekly wage. My average weekly wage at the time of my injury was $ _____.

☐   5.  The compensation agreement or decree was procured by fraud, coercion or mutual mistake of fact.

Rev 09/2017                                                          Page 1 of 2

Case Number: 201706824
Filed in Workers' Compensation Court
Submitted: 11/29/2017 10:42:36 AM
Envelope: 1306908
Reviewer: Joseph Lancellotti

W.C.C. No. 201706824

☒  6.  The compensation agreement or decree does not accurately and completely set forth and describe the nature and location of all injuries sustained by me.  Said agreement or decree should be amended so that the nature and location of my injuries shall read as follows:  **Left wrist bruise/contusion; left wrist, low back strain and right shoulder.**

☐  7.  Per R.I.G.L. § 28-33-18.3, I have received a notice of intention to terminate partial incapacity benefits pursuant — to R.I.G.L. § 28-33-18(d), and I hereby petition the court for continuation of benefits.

☐  8.  Per R.I.G.L. § 28-33-41 and the W.C.C. Rules of Practice, I hereby petition the court for a rehabilitation program approval.

☐  9.  Per R.I.G.L. § 28-33-47 and the W.C.C. Rules of Practice, I hereby petition the court for my right of reinstatement.

☐  10. Per R.I.G.L. § 28-33-18.2, I hereby petition the court for a finding of suitable alternative employment.

☐  11. Per R.I.G.L. § 28-33-20, I hereby petition the court for an order compelling the employer to provide a wage transcript.

☒  12. Other:  **I ALSO REQUEST ATTORNEY FEES, COSTS, AND INTEREST**

**STEPHEN J. DENNIS, ESQ.**
Attorney Name

**/S/ STEPHEN J. DENNIS**
Attorney Signature

Signature of Employee

127 Dorrance Street, Ste. 7A 3rd Fl.
Attorney Address

11/28/17 alh
Date

34 Dunbar Avenue
Employee's Address

Providence, RI 02903
City, State, Zip Code

# 4336
Attorney Bar Registration No.

Rumford, RI 02916
City, State, Zip Code

Rev 09/2017

Page 2 of 2

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

Workers' Compensation Court
*Medical Advisory Board*
Garrahy Judicial Complex

One Dorrance Plaza
Providence, Rhode Island 02903
(401) 458-3460
Fax (401) 458-3469

May 24, 2018

WCC # 201705115

**Petitioner:**
Mickeda S. Barnes
34 DUNBAR AVENUE
RUMFORD, RI 02916

**Respondent:**
RHODE ISLAND PUBLIC TRANSIT
AUTHORITY
705 ELMWOOD AVENUE
PROVIDENCE, RI 02907

**Insurer:**
Rhode Island Individual Self Insureds

**Doctor:**
David A. Moss, M.D.
1524 Atwood Avenue, Suite 140
Johnston, RI 02919

## Notice of Impartial Medical Examination
## Appointment Date: June 22, 2018
## Appointment Time: 11:30 AM

EMPLOYEE:
   **Chief Judge Robert M. Ferrieri** has ordered an Impartial Medical Examination appointment be made for you. That appointment has been scheduled for **time, date and physician indicated above**. The following is a list of guidelines for an Impartial Medical Examination pursuant to the Rhode Island Workers' Compensation Act.

   1. Kindly present yourself to the doctor's office on the specified date and time for your impartial medical examination. If you necessitate the services of an interpreter, please confirm with your attorney that those services have been arranged.

   2. Only medical reports forwarded by the court will be reviewed by the physician. The employee may, with the Court's permission, bring their diagnostic studies. This should be the only material which the employee would personally present for the physician's review.

   3. You must bring your photo ID to the exam.

   4. If for any reason you are unable to keep this appointment, please call the Medical Advisory Board offices, at least 72 hours before the appointment, at (401) 458-3460. **Failure to attend this appointment will result in the assessment of fees against you and/or may result in the termination of your workers' compensation benefits.**

Sheila Mitchell, RN, BSN
Administrator
Medical Advisory Board

cc: HOWARD L. FELDMAN; CAROLYN A. MANNIS; STEPHEN J. DENNIS;
CATHERINE BEDNARZ; NICHOLAS MANCINI



**ROBERT M. FERRIERI**
CHIEF JUDGE

# Workers' Compensation Court of Rhode Island
## Garrahy Judicial Complex
## One Dorrance Plaza
## Providence, RI 02903

May 23, 2018

David A. Moss, M.D.
1524 Atwood Avenue, Suite 140
Johnston, RI 02919

Re: Mickeda S. Barnes vs. Rhode Island Public Transit Authority
W.C.C. Nos. 2017-05115, 2017-06073, 2017-04571, 2017-04046, 2017-04145,
2018-06646, 2017-06824

Dear Dr. Moss:

I am referring Mickeda S. Barnes to you for a Court appointed impartial medical examination. Ms. Barnes sustained an injury to her left wrist and low back on February 12, 2015. There are several petitions pending before the Court, including, but not limited to, the employee's petition for loss of use to the left upper extremity, and the employee's petition for scarring to the left hand, and an employee's petition to amend the nature and location of injury to include right shoulder. The employer is contesting said petitions.

I have enclosed all available medical reports for your review. Once you have had an opportunity to review these reports and to examine the employee, kindly advise the Court of your opinion regarding a diagnosis, causal relationship and disability status. More particularly, for each injury you opine that the employee suffers, kindly indicate whether or not the employee is disabled from said injuries and if so, whether said injury and disability is causally related to the work incident of February 12, 2015.

I have instructed the employee to bring diagnostic film to the examination.

A check in the amount of eight hundred and fifty dollars will be forwarded to you upon receipt of your report.

*Dr. Moss*
*May 23, 2018*
*Page two*

I note that there are many medical records attached to this exam.  Kindly advise as to whether or not an additional charge will be requested.

Thank you for your cooperation in this matter.

Very truly yours,

Robert M. Ferrieri
*Chief Judge*

amg

enclosure

C:    Stephen J. Dennis, Esq.
      Nicholas Mancini, Esq.

## Agreement in the Mickeda Barnes Matter

I understand that this case was referred to the Law Offices of Sonja L. Deyoe from Attorney Stephen J. Dennis.

I further understand that the Law Offices of Sonja L. Deyoe will be assuming responsibility, along with Attorney Stephen J. Dennis for the legal representation in this matter, and that Attorney Stephen J. Dennis will receive $10,000.00 of any attorney fees realized by the Law Offices of Sonja L. Deyoe.

This Agreement is acceptable to me.

DATED: _July 19, 2018_

_Mickeda Barnes_
Mickeda Barnes

_Stephen J. Dennis_
Stephen J. Dennis, Esq.

_Sonja L. Deyoe_
Sonja L. Deyoe, Esq.

1-800-633-4227
Medicare

# Medicare Began Workei's Comp

## Open Claims

1st Open 1-1-2009      Workei's Comp
                       Beacon Mutual
Oct   2008  Assault  Still open
            2 passgers

2nd Open 1-1-2009      Liability Beacon
        Automobile     Still open Mutual

3rd OPEN 10-3-2014     Beacon Mutual
                       10-3-2013 Rt Knee
        Automobile     10-5-2014  Injury

4th Open 8-12-2015     Workeis Comp
                       Beacon Mutual
                       open

Recovery Benefits Center
BCRC # 855-798-2627



# Office of the Attorney General
## Washington, D. C. 20530

MEMORANDUM FOR:    HEADS OF CIVIL LITIGATING COMPONENTS
                   UNITED STATES ATTORNEYS

FROM:              THE ATTORNEY GENERAL 11/7/18

SUBJECT:           Principles and Procedures for Civil Consent Decrees and Settlement
                   Agreements with State and Local Governmental Entities

## I.    INTRODUCTION

In enforcing federal law, the Department of Justice ("Department") sometimes brings lawsuits against state and local governmental entities.[1]  State governments are sovereigns with special and protected roles under our constitutional order.  Accordingly, the Department must ensure that its practices in such cases are in the interests of justice, transparent, and consistent with the impartial rule of law and fundamental constitutional principles, including federalism and democratic control and accountability.

This memorandum's purpose is to provide direction to all civil litigating components and United States Attorneys' Offices ("USAO") concerning several important issues arising when a civil action against a state or local governmental entity is resolved by consent decree or settlement agreement.[2]  In particular, it requires that the Department provide state and local governmental entities an adequate opportunity to respond to any allegations of legal violations; requires special caution before using a consent decree to resolve disputes with state or local governmental entities; provides guidance on the limited circumstances in which such a consent decree may be appropriate; limits the terms for consent decrees and settlement agreements with state and local governmental entities, including terms requiring the use of monitors; and amends the process for the approval of these mechanisms in cases in which they are permissible.

---

[1] As used in this memorandum, the term "state and local governmental entities" also includes territorial and tribal entities, as federal consent decrees and settlements with such entities raise many of the same concerns regarding democratic autonomy and accountability.

[2] As used in this memorandum, the term "consent decree" means a negotiated agreement that is entered as a court order and is enforceable through a motion for contempt.  The term "settlement agreement" means an out-of-court resolution that requires performance by the defendant, including a memorandum of agreement ("MOA") or memorandum of understanding ("MOU"), enforcement of which requires filing a lawsuit for breach of contract.

This memorandum provides a general statement of principles. The Office of the Associate Attorney General is available for consultation on its application in specific cases.[3]

## II.    INVESTIGATIONS AND REPORTS OF ALLEGATIONS

Pursuant to federal statutes and regulations, the Department may investigate allegations of legal violations by state and local governmental entities in anticipation of potential litigation. In conducting these investigations, Department personnel must afford the subject governmental entity the respect and comity deserving of a separate sovereign, and shall afford the entity an opportunity to respond to the material allegations against it. To the extent such an investigation results in a notice, letter, report, or similar document, that document must make clear that the Department's conclusions are allegations only and have not been proven in a court of law. For consent decrees and settlement agreements subject to the notice and approval requirements set forth in Part III of this policy, the required justification memorandum must explain how the defendant state or local governmental entity was afforded an opportunity to respond.

## III.    CONSENT DECREES AND SETTLEMENTS IN CIVIL LITIGATION AGAINST STATE AND LOCAL GOVERNMENTAL ENTITIES

### A.    Constitutional and Policy Considerations

While consent decrees are sometimes necessary and appropriate to secure compliance with federal law, federal court decrees that impose wide-ranging and long-term obligations on, or require ongoing judicial supervision of, state or local governments are extraordinary remedies that "raise sensitive federalism concerns." *Horne v. Flores*, 557 U.S. 433, 448 (2009). Such concerns are most acute when a federal judge, directly or through a court-appointed monitor, effectively superintends the ongoing operations of the governmental entity subject to the decree. This supervision can deprive the elected representatives of the people of the affected jurisdiction of control of their government. Consent decrees can also have significant ramifications for state or local budget priorities, effectively taking these decisions, and accountability for them, away from the people's elected representatives. *See id.* ("When a federal court orders that money be appropriated for one program, the effect is often to take funds away from other important programs."). In addition, consent decrees that are "not limited to reasonable and necessary implementations of federal law" may "improperly deprive future officials of their designated legislative and executive powers." *Frew v. Hawkins*, 540 U.S. 431, 441 (2004).

---

[3] This memorandum provides only internal Department of Justice policy directed at Department components and employees. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. All prior Department memoranda or policies are superseded to the extent they are inconsistent with this memorandum. To the extent portions of this memorandum require amendments to Department regulations governing settlement authority, those portions do not apply until such time as the Attorney General amends the regulations.

-2-

In addition to these constitutional concerns, consent decrees involving state and local governmental entities can raise policy concerns. First, a consent decree can reduce long-term flexibility in how the defendant remedies the legal violation, especially if the passage of time has resulted in changed circumstances. Second, if terms are not carefully and appropriately crafted, a consent decree can subject defendants to ongoing judicial supervision long after it is no longer necessary to ensure compliance with the decree's terms—in some cases even after the Department believes the purposes of the decree have been achieved. Third, in some circumstances, a consent decree can significantly increase litigation costs for all parties, including the taxpayers who fund the Department, the federal courts, and state and local governments.

## B.    Notice and Approval Requirements for Consent Decrees with State and Local Governmental Entities

In light of the foregoing concerns, the Department should exercise special caution before entering into a consent decree with a state or local governmental entity. While such consent decrees can be appropriate settlement vehicles in limited circumstances as discussed further below, they should be employed carefully and only after review and approval of senior leadership of the Department, as described below.[4]

Absent an applicable exception,[5] the Deputy Attorney General or the Associate Attorney General, in accordance with standard reporting structure of the Department, must be notified of any decision by a litigating component or USAO to initiate negotiations with a state or local governmental entity for a consent decree that would (1) place a court in a long-term position of monitoring compliance by a state or local governmental entity; (2) create long-term structural or programmatic obligations, or long-term, indeterminate financial obligations, for a state or local governmental entity; or (3) otherwise raise novel questions of law or policy that merit review by senior Department leadership. As used herein, "long-term" means that the obligations, on their face or in practice, are reasonably likely to take twenty-four months or longer to satisfy. The

---

[4] By way of comparison, the Department's regulations have long required that monetary settlements exceeding certain thresholds be approved at the highest leadership levels of the Department. *See* 28 C.F.R. §§ 0.160, 0.161. For the constitutional and policy reasons discussed above, a consent decree with a state or local governmental entity can be as significant as, if not more significant than, a high-dollar settlement. Such decrees should likewise receive approval by senior Department leadership.

[5] The notification and approval requirements set forth herein do not apply where (1) use of a consent decree is required by statute or regulation or (2) the consent decree is limited to the payment of a sum certain of money or performance of a specific environmental removal action (as is often the case, for example, when the defendant is liable as a potentially responsible party under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, or is liable as a responsible party for reimbursement of government removal costs or natural resource damages under the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701 *et seq.*). As noted above, Department regulations already address approval requirements for monetary settlements exceeding certain dollar thresholds.

-3-

notification should include a description of the alleged violations and an explanation of why the litigating component or USAO believes that resolution of the claims in the case through negotiation of a consent decree is necessary and appropriate based on the factors listed below and any other relevant factors.

Before the final consent decree is agreed to by the Department or submitted to the court for entry, it must be approved by the U.S. Attorney or the Assistant Attorney General for the litigating component responsible for the subject matter of the consent decree and by the Deputy Attorney General or the Associate Attorney General, in accordance with standard reporting structure of the Department. In seeking the required approvals, the case team must draft a justification memorandum attaching the draft consent decree and explaining the reasons for the request and why a consent decree is necessary and consistent with the principles set forth herein. The justification memorandum should set forth the factual and legal basis for concluding that the defendant has violated federal law, a summary of the defendant's anticipated defenses, and an explanation of how the defendant was afforded an opportunity to respond to the material allegations against it. It should also evaluate the estimated costs of compliance with the consent decree and explain why the consent decree's benefits justify those costs. Any significant modifications to the material terms of a consent decree covered by this policy must be approved in the same manner.

Entering a consent decree with a state or local governmental entity may be appropriate if one or more of the following factors is present:

1. The defendant has an established history of recalcitrance or is known to be unlikely to perform because, for example, the defendant has violated other related administrative orders, judicial orders, settlement agreements, or consent decrees.

2. The defendant has unlawfully attempted to obstruct the investigation by, for example, engaging in spoliation.

3. The defendant has engaged in a pattern or practice of deprivations of rights or other violations of federal law, and other remedies have proven ineffective, such that ensuring compliance without the ongoing supervision of a court is unrealistic.

4. A consent decree is necessary to secure statutory protection or relief for the defendant, such as statutory protection against challenges and claims by third parties or statutory relief that preempts state law.

Neither the presence nor absence of any one of these factors, nor any particular combination thereof, will guarantee approval of a consent decree. The determination will be made based on analysis of the law and facts applicable in each case.

-4-

### C.    Substantive Requirements for Consent Decrees with State and Local Governmental Entities

For cases in which a consent decree is appropriate, the consent decree must adhere to the following requirements. Any exceptions to these requirements must be approved along with the proposed consent decree as set forth in the preceding section, and an explanation providing the justification for such an exception must be provided in the justification memorandum.

1. The duration of the consent decree must be specified in the decree and must be no longer than necessary to achieve an effective and durable remedy. Absent a compelling justification, such as where state or local governments have sought extended compliance schedules for significant capital investments, the obligations imposed by the decree should, if feasible, generally last for no more than three years.

2. The consent decree must include specific and measurable actions that trigger the decree's termination. In addition, the consent decree must include a "sunset" provision providing that, regardless of the decree's specific requirements, the decree terminates upon a showing by the defendant that it has come into durable compliance with the federal law that gave rise to the decree. The consent decree must also provide for partial termination when the state or local government can demonstrate durable compliance with particular provisions of the consent decree.

3. The consent decree must require the parties to return to court at appropriate intervals to report on compliance or noncompliance.

4. The provisions of the consent decree must be narrowly tailored to remedy the injury caused by the alleged legal violation.

5. The consent decree must not be used to achieve general policy goals or to extract greater or different relief from the defendant than could be obtained through agency enforcement authority or by litigating the matter to judgment.

6. A consent decree involving federal control of a state or local governmental institution should be limited in scope and must be structured to ensure that responsibility for discharging the duties of the institution is returned to the relevant officials as soon as the injuries caused by the legal violations alleged have been remedied.

### C.    Requirements for Settlement Agreements with State and Local Governmental Entities

Many of the concerns discussed above apply not only to court-enforceable consent decrees, but also to settlement agreements that create long-term obligations for state and local governmental entities. When entering into such settlements, the Department should be sensitive to these concerns and seek to avoid or minimize interference with democratic control.

-5-

The approval of the U.S. Attorney or the Assistant Attorney General for the litigating component responsible for the subject matter is required for any settlement agreement that would (1) place the Department or another federal agency in a long-term position of monitoring compliance by a state or local governmental entity; (2) create long-term structural or programmatic obligations, or long-term, indeterminate financial obligations, for a state or local governmental entity; or (3) otherwise raise novel questions of law or policy that merit review by senior Department leadership. The Office of the Deputy Attorney General or the Associate Attorney General, in accordance with standard reporting structure of the Department, must be notified and consulted before any such agreement is finalized. For significant modifications to the material terms of any such agreement, the same process must be followed.

The terms of such settlement agreements must adhere to the same substantive requirements set forth above for consent decrees, except that the required periodic assessment of compliance or noncompliance may be handled by consultation of the parties without involving a court.

## IV.    USE OF MONITORS FOR STATE AND LOCAL GOVERNMENTAL ENTITIES

### A.    Constitutional and Policy Considerations

In resolving civil suits against state and local governmental entities—whether through a settlement agreement or by consent decree—the federal government has often required the use of a monitor. Unconstrained use of a monitor may, in some cases, effectively turn over partial control of the state or local governmental entity to the monitor, and therefore may raise or exacerbate many of the same constitutional and policy concerns raised by the use of a consent decree.

Monitors should operate with sufficient accountability and oversight, and should adhere to a code of ethics so that conflicts of interest—including a financial interest in prolonging the duration or expanding the scope of the monitorship—are avoided.

Just as it would be extraordinary for a federal agency to consent to the use of a monitor to oversee its operations or policies, in most cases there is little reason to expect or require a state or local government, equally a democratically accountable entity, to do so.

### B.    Limits on Use of Monitors for State and Local Governmental Entities

In most cases, the Department should take direct responsibility for ensuring a defendant's compliance with the terms of a settlement agreement rather than delegating that responsibility to a monitor. If, in light of the circumstances of a given case, it is prohibitively difficult for the Department or its client agency to directly oversee compliance, a monitor may be considered.[6]

---

[6] Inadequate Department resources, standing alone, will usually not constitute a circumstance that justifies the use of a monitor. If a settlement agreement or consent decree is so complicated or long-term that Department officials cannot effectively monitor compliance, that may be an

-6-

In light of the monitor's role in overseeing compliance with a settlement that the Department believes is necessary to remedy a legal violation and is otherwise in the interests of justice, good government principles require that the Department structure agreements to ensure that monitors have appropriate incentives to work efficiently and effectively to bring the defendant into compliance with the terms of the settlement agreement or consent decree and to ensure that monitors act in the interests of justice and not in their own interest.

Before provision is made for a monitor as part of a civil settlement or consent decree with a state or local governmental entity, the relevant component head or U.S. Attorney must secure permission from the Deputy Attorney General or the Associate Attorney General, in accordance with standard reporting structure of the Department. For cases in which a monitor is appointed, the following guidelines must be followed, unless an exception is approved by the Deputy Attorney General or the Associate Attorney General:

1. The settlement agreement or consent decree must create incentives for the monitor to encourage early compliance with and conclusion of the settlement agreement or consent decree.

2. In most cases, the monitor must be replaced at an appropriate interval, usually of no more than two to three years.

3. Payment of costs and fees for the monitor's services must be specified in the settlement agreement or consent decree and capped at a reasonable amount (requiring the monitor to complete remaining tasks even if the cap is met).

4. The monitor must be selected in accordance with the guidance set forth in the Memorandum from Acting Associate Attorney General Stuart F. Delery dated April 13, 2016, entitled, *Statement of Principles for Selection of Corporate Monitors in Civil Settlements and Resolutions*, to avoid conflicts of interest and ensure that monitors are independent and highly qualified.

Where a monitor is proposed in the context of a consent decree, the decree proposed to the court must include the limits stated above, unless an exception is approved by the Deputy Attorney General or the Associate Attorney General.

---

indication that the settlement agreement or consent decree is not appropriately cabined or respectful of the state or local governmental entity's interest in local control and accountability.

-7-



**STATE OF RHODE ISLAND**
**SUPERIOR COURT**
**COVID – 19 HEARING/CONFERENCE REQUEST**

## PROVIDENCE COUNTY SUPERIOR COURT CIVIL MOTION CALENDAR

| Plaintiff Rhode Island Public Transit Authority | Case Number PC. 2020 - 06065 |
|---|---|
| Defendant Mickeda S Barnes | |

1. <u>Requesting Attorney's Contact Information</u>

Name:
Email Address:

2. <u>Pending Motions</u> – Indicate whether the motion is dispositive or non-dispositive:

☐ Dispositive

☒ Non-dispositive

3. <u>Please provide title of motion:</u> Motion the Court for Order of Arbitration § 28-9-5. (A)

4. <u>Hearing Request (pick one):</u>

☐ Motion may be decided on filings

☐ Remote Hearing requested (WebEx)

☒ In-Person Hearing requested

5. <u>Conferences (please state reason for conference):</u> I Want to put in my 5 day Grievance to my Employer and I want my Arbitration for my Labor Relations Disputes

6. <u>Name and email addresses of other hearing/conference attendees:</u> Ripta Lawyers / Compliance officers / FTA / Beacon / Peter Alviti (dot) Attorney General Mickeda Barnes ATU-618 Union president Nick Decristofaro Steven Denvis

Superior – (revised September 2020)

State Of Rhode Island Providence Plantations
Superior Court


Plaintiff
Rhode Island Public Transit Authority

VS.                                    P.C.-2020-06065

Mickeda S. Barnes
§§Defendant


### **Motion the Superior Court To Court order Arbitration § 28-9-5. (a)**

A Judge of the Superior Court shall hear the parties and upon being satisfied that there is no substantial issue as to the making of the contract entered into between employer and employee union contract with her Union ATU-618 year 2013 to 2016.

Agency means department, board, commission ,division ,or Quasi Public Corporation created by the General Assembly or the Governor and authorized by statute to make and enforce rules 2012 Rhode Island General laws Title 39 Public Utilities and Carriers Chapters §39-18 Rhode Island Public Transit Authority chapter § 39-18-17 Labor Relations with employees of acquired transit facilities in case of any labor dispute where collective bargaining does not result in agreement the authority shall offer to submit the dispute to arbitration by a board composed of three persons.

The determination of the majority of the board of arbitration thus established shall be final and binding on all matters in dispute.

The term" Labor Dispute" shall be broadly construed and shall include any controversy concerning wages ,salaries ,hours ,working conditions ,or benefits including health and welfare, sick leave ,insurance or pension or retirement provisions. But not limited there to and including any controversy concerning any differences or questions that may arise between the parties including but not limited to the making or maintaining of collective bargaining agreement, the terms to be included in the agreements and the interpretations or applications of the collective bargaining agreements in any grievance that may arise.

Defendant was denied on October 16, 2020 by Ripta to accept to pay Mickeda Barnes her weekly indemnity benefits due to a recurrence of her left hand and wrist injury she suffered on the job at Ripta on 02-12-2015. This recurrence will make the third surgery on her left hand in which is established in defendants contract agreement between the employer Ripta Plaintiff and the Defendants Union 618 on page 35 of this agreement clearly states that an employee who

SUPERIOR COURT
FILED
HENRY S. KINCH. JR.

20 OCT 23 PH 1: 52

suffers a job related injury the compensability of which is not disputed will become eligible to receive workers compensation weekly indemnity benefits compensation on the 4th day of disability as mandated by the Rhode Island workers compensation act of May 1992. Any changes in Rhode Island worker's compensation law will be incorporated into this contract."page 35 section (o) and (p)".of defendant's Union contract.

Defendant was also denied her grievance to have any dispute regarding employee,s fitness to return to duty shall also be resolved in accordance with section of defendants union contract page 33 (H),(I),(J),and (o) in which defendant also believes she is in contract of with Ripta.

The General Assembly created these laws to be enforced to make sure of due process.

Defendant Mickeda Barnes pleaded with the Superior Court to review her 5 day claim for a grievance in regards to a labor dispute in Court with Judge Salam on October 16 ,2020. In regards to payment and medical payments for Injury for recurrence,  and work related injuries and other labor disputes not being paid per defendants Union Contract entered into during the year of July 2013-2016 in the year when defendant was injured on 02-12-2015 and when she was illegally terminated on 02-16-2016 while still under Union contract between Ripta and Atu-618 her union.

Defendants ask the Court for review of RIGL§ 28-7-14 exclusive representation of employee RIGL §23-7-15 and § 28-7-19 shall have the right to present grievances to their employer at any time.

Defendant asked the Superior Court to order Arbitration in regards to the Ripta's laws the General Assembly Created Title 39 Public Utilities and Carriers and Chapter § 39-18-17 Labor Relations with employees of acquired transit facilities under law for disputes regarding Labor relations.

SUPERIOR COURT
FILED
HENRY S. KINCH, JR.

20 OCT 23  PM 1: 52

## **Certificate of service**

I hereby certify that on the 23rd of October, 2020 the foregoing order was e-filed and served through the electronic filing system and by regular first class mail on the following party. The document electronically filed and served.

Filed Motion in Superior Court 23rd of October, 2020.

Mickeda S Barnes Pro-se
Defendant

*Mickeda S Barnes*

Jillian S.F.Hartwell
Littler Mendelson, PC
One Financial Plaza, Suite 2205
Providence R.I. 02903
401-824-2500
Fax 401-633-6853

SUPERIOR COURT
FILED
HENRY S. KINCH, JR.
20 OCT 23 PM 1: 52

# Exhibit A

SUPERIOR COURT
FILED
HENRY S. KINCH, JR.

20 OCT 23  PM 1: 52





View the 2017 Rhode Island General Laws | View Previous Versions of the Rhode Island General Laws

# 2012 Rhode Island General Laws
# Title 39 - Public Utilities and Carriers
# Chapter 39-18 - Rhode Island Public Transit Authority
# Chapter 39-18-17 - Labor relations with employees of acquired transit facilities.

**Universal Citation:** RI Gen L § 39-18-17 (2012)

**§ 39-18-17 Labor relations with employees of acquired transit facilities.** - (a) Whenever the authority acquires transit property facilities under the provisions of this chapter, the authority shall continue the payment of all pensions and retirement allowances under and in accordance with the pension plan in effect at the time of the acquisition.

(b) As of the date of the acquisition of the transit property under the provisions of this chapter, such officers and employees as may be determined by the authority to be qualified and necessary for the carrying on of the transit operations shall be transferred to and become officers and employees of the authority, it being the intention hereof that transit property facilities acquired by the authority shall at all times be operated under personnel qualified to supervise mass transit facilities. No officer or employee so transferred and becoming an officer or employee of the authority in accordance with this section shall, by reason of the transfer, without his or her consent be removed, lowered in rank or compensation, or suspended except for just cause and for reasons specifically given to him or her in writing within twenty-four (24) hours after the removal, suspension, or transfer or lowering in rank or compensation; nor shall any officer or employee by reason of transfer, without his or her consent, be in any worse position in respect to workers' compensation, pension, superannuation, sickness, or other benefits or other allowances granted by his or

SUPERIOR COURT
FILED
HENRY S. KINCH, JR.
20 OCT 23  PH 1: 52

Page 133

her previous employer to him or her, the widowed person, family, or personal representatives than he or she enjoyed under any person, firm, or corporation under whom he or she held his or her employment immediately prior to his or her transfer to the employment of the authority; provided, however, that the authority may abolish any office or post of any existing executive officer if in the opinion of the authority the office or post is an unreasonable addition to the staff of the authority. The authority shall have the authority to bargain collectively with labor organizations representing employees of the authority and to enter into agreements with the organizations relative to wages, salaries, hours, working conditions, health benefits, pensions, and retirement allowances of the employees.

(c) In case of any labor dispute where collective bargaining does not result in agreement, the authority shall offer to submit the dispute to arbitration by a board composed of three (3) persons, one appointed by the authority, one appointed by the labor organization representing the employees, and a third member to be agreed upon by the labor organization and the authority. The member selected by the labor organization and the authority shall act as chairperson of the board. The determination of the majority of the board of arbitration thus established shall be final and binding on all matters in dispute. If after a period of ten (10) days from the date of the appointment of the two (2) arbitrators representing the authority and the labor organization, the third arbitrator has not been selected then either arbitrator may request the American arbitration association to furnish a list of five (5) persons from which the third arbitrator shall be selected. The arbitrators appointed by the authority and the labor organization promptly after the receipt of the list, shall determine by lot the order of elimination, and, thereafter, each shall in that order alternately eliminate one name until only one name remains. The remaining person on the list shall be the third arbitrator. The term "labor dispute" shall be broadly construed and shall include any controversy concerning wages, salaries, hours, working conditions, or benefits including health and welfare, sick leave, insurance or pension or retirement provisions, but not limited thereto and including any controversy concerning any differences or questions that may arise between the parties including but not limited to the making or maintaining of collective bargaining agreements, the terms to be included in the agreements and the interpretation or application of the collective bargaining agreements and any grievances that may arise. Each party shall pay one half (1/2) of the expenses of the arbitration.

History of Section.
(P.L. 1964, ch. 210, § 1.)

SUPERIOR COURT
FILED
HENRY S. KINCH, JR.

Page 134

20 OCT 23 PM 1:52

**Disclaimer:** These codes may not be the most recent version. Rhode Island may have more current or accurate information. We make no warranties or guarantees about the accuracy, completeness, or adequacy of the information contained on this site or the information linked to on the state site. Please check official sources.

SUPERIOR COURT
FILED
HENRY S. KINCH, JR.
20 OCT 23  PM 1:52

10/22/18, 5:50 PM
Page 3 of 3

State of Rhode Island                                    Superior Court
Providence, SC


Rhode Island Public Transit Authority
Plaintiff

                                                        PC-2020-06065

V

Mickeda Barnes
Defendant


**Answer**

1.  The defendant is without knowledge or information sufficient to form a belief as to the truth of
    the allegations contained in this paragraph of the plaintiff's complaint and, therefore, leaves
    plaintiff to his proof.

2.  Denied.
3.  Denied.
4.  Denied.
5.  Denied.
6.  Denied.
7.  Denied.
8.  Admitted.
9.  Denied.
10. Denied.
11. Denied.
12. Denied.
13. Denied.
14. Admitted.
15. Denied.
16. Denied.
17. Denied.
18. Denied.
19. Denied.
20. Denied.
21. Denied.
22. Denied.
23. Denied.
24. Denied.

SUPERIOR COURT
FILED
HENRY S. KINCH JR.
20 SEP 21  PM 3: 29

1

# Exhibit A

# Global Settlement

# 12-01-2017

```
 1        STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

 2    PROVIDENCE, SC.                    WORKERS' COMPENSATION
                                                COURT
 3

 4

 5    MICKEDA BARNES                )

 6       VS.                        )     W.C.C. 2017-06824
                                                  2017-06646
 7    RHODE ISLAND PUBLIC TRANSIT )              2017-06073
      AUTHORITY                                  2017-05115
 8                                                2017-04571
                                                  2017-04145
 9                                                2017-04046

10

11

12           HEARD BEFORE CHIEF JUDGE ROBERT M. FERRIERI ON:
                    Friday, December 1, 2017
13

14               _____

15

16

17

18    APPEARANCES:

19    STEPHEN DENNIS, ESQ........COUNSEL FOR THE PETITIONER
      SONJA DEYOE, ESQ.
20
      NICHOLAS MANCINI, ESQ......COUNSEL FOR THE RESPONDENT
21    JILLIAN FOLGER-HARTWELL, ESQ.

22

23    Also Present:

24    Judge Michael Feeney

25
```

# Exhibit B

Steven Dennis Reciept
Payment and Responsibility
To Global-Settlement/
Discrimination Payment
Of $10,000.00 from

Global Settlement Court
ordered and agreed

12-1-2017

Page 4 of agreement
Reference How
Steven Dennis and Sonja Dejoe
gets paid

### Agreement in the Mickeda Barnes Matter

I understand that this case was referred to the Law Offices of Sonja L. Deyoe from Attorney Stephen J. Dennis.

I further understand that the Law Offices of Sonja L. Deyoe will be assuming responsibility, along with Attorney Stephen J. Dennis for the legal representation in this matter, and that Attorney Stephen J. Dennis will receive $10,000.00 of any attorney fees realized by the Law Offices of Sonja L. Deyoe.

This Agreement is acceptable to me.

DATED: July 19, 2019

Mickeda Barnes

Stephen J. Dennis, Esq.

Sonja L. Deyoe, Esq.

Exhibit C

Global Settlement

12-01-2017

Page 7 for Reinstatement

Petition / Five day

Claim for trial.

Waive third party lien
for the Right Knee Injury

Page 7

```
 1    discrimination case that is pending in Federal Court will
 2    have the usual provisions in it.  That will include full
 3    release of all claims, no reapplication, no rehire, all
 4    of the RIPTA confidentiality and nondisparagement
 5    provisions.
 6            THE COURT:  So in lieu of that, I take it
 7    that as part of this settlement, the reinstatement
 8    petition will be withdrawn with prejudice?
 9            MR. MANCINI:  It could be withdrawn with
10    prejudice or alternatively a pretrial order can enter
11    denying it.  I think the same result is achieved.
12            THE COURT:  My only issue with the pretrial
13    order entered denying it is with the five-day claim for
14    trial.  So if we're going to try to do this in one day,
15    we will be better served withdrawing it with prejudice.
16            MR. DENNIS:  My client just mentioned one
17    thing to me, Judge.  May we approach the bench, go off
18    the record?
19            THE COURT:  Sure.
20         (OFF-THE-RECORD BENCH DISCUSSION)
21            THE COURT:  So the knee claim will be settled
22    for a dollar, and there will be a waiver of the lien as a
23    result thereof.
24            MR. DENNIS:  Yes, Your Honor.  So there would
25    be a waiver of the third-party lien with regard to the
```



# Exhibit D

Confidentiality Requirement
Negotiation Authorization

Employee Mickeda S Barnes
Confidential Mediation
Statement

RHODE ISLAND WORKERS' COMPENSATION COURT

**CONFIDENTIAL MEDIATION STATEMENT**

ADMINISTRATOR                    JUDGE

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## PROVIDENCE, SC.           WORKERS' COMPENSATION COURT

Mickeda S. Barnes

RHODE ISLAND PUBLIC TRANSIT AUTHORITY

} W.C.C. No.   201706824, 201704145, 201706646, 201705115, 201706073

### CONFIDENTIALITY REQUIREMENT / NEGOTIATION AUTHORIZATION

I hereby agree that any and all documents submitted and statements made in furtherance of mediation, including, but not limited to, the content of the mediation statement and any attachments thereto, and any relevant memoranda or supporting documentation relied upon during the course of the mediation session by counsel, any party or the mediator shall remain confidential. My client(s) further agree(s) not to subpoena or otherwise subject the mediator, staff members, or records of the Workers' Compensation Court Mediation Program to any court proceedings, lawsuits or other legal actions related to the mediation process or its outcome.

My client(s) agree to participate in mediation, and I am authorized to participate and negotiate on behalf of my client(s) with full authority to make and/or accept offers. If I am not so authorized at the time of mediation, I will make arrangements to have my client(s) or authorized representative(s) available in person or by telephone at the time of the mediation session.

I understand, and my client(s) have been informed, that even if this case proceeds to mediation, it is subject to all applicable time limitations and requirements as set forth by the trial judge presiding over this case. If an agreement is reached, the appropriate documentation will be promptly filed with the Court. I understand and my client(s) have been informed that failure to abide by the above requirements may result in sanctions.

COUNSEL FOR EMPLOYEE (PRINT NAME)

SIGNATURE

Nicholas Mancini #7100
COUNSEL FOR EMPLOYER (PRINT NAME)

11/8/18
DATE

STATE OF RHODE ISLAND
PROVIDENCE, SC.

WORKERS' COMPENSATION
COURT

MICKEDA S. BARNES            :

         VS.                 :

RHODE ISLAND PUBLIC TRANSIT  :
AUTHORITY                    :

:    WCC NO. 2017-4046; 2017-4145;
              2017-4571; 2017-5115

## EMPOLYEE MICKEDA S. BARNES'S
## CONFIDENTIAL MEDIATION STATEMENT

Now comes the Employee, Mickeda S. Barnes, by and through her counsel

Stephen J. Dennis, Esq. in the above-captioned matter and hereby, pursuant to

Administrative Order No. 2016-06 IIIc and Order dated September 27, 2017, submits the

following Confidential Mediation Statement.

I        POSITION OF THE EMPLOYEE

The Employee has four petitions pending before Chief Ferrieri.  The first petition

is a Petition to Review seeking payment of Dr. Michael Souza's bill in the amount of

$2,873.00. (WCC 2017-4046).  The Employee took a pro forma denial at the pre-trial

stage and filed a claim for trial on that matter.  The second petition which the Employee

also took a pro forma denial on is a petition to review seeking permission to treat with a

psychologist. (WCC 2017-4145).  Employee timely filed a claim for trial on the denial.

An initial hearing has not been held on these two petitions.  On the date these two

petitions came before the Court for initial hearing, September 6, 2017, Employee's third

petition for disfigurement was heard and argued.  Chief Ferrieri granted the petition.

From this award at pre-trial the Employer filed a timely claim for trial.  At that time the

*[handwritten note in right margin: That's I whey my Want for Intrest for the year and my 4% Loss of Use]*

1

Court recognized that the Employee would be filing a claim for recurrence and recommended that she file the Petition prior to the next Court date for initial hearing (September 27, 2017) and recommended that the parties strongly consider mediation. The Court was also aware that there were other matters pending between the parties in other venues and urged that all matters be mediated working toward a global resolution. Finally, the Chief indicated that he would appoint an impartial on the recurrence petition in the event the parties were unwilling to mediate. Employee indicated her willingness to mediate at that time.

Employee filed the fourth pending petition in this Court (WCC 17-5115) alleging a recurrence and a return of her incapacity from February 9, 2017 and continuing. On September 27, 2017 when the matter came before the Chief all pending matters referred to mediation.

At the time of the injury Employee's average weekly wage (AWW) was $1,322.77. Employee's spendable base is $1094.60; and her compensation rate is $820.95. Her injury occurred on February 12, 2015 following a slip and fall on the ice while at work. She was initially paid weekly benefits pursuant to a Memorandum of Agreement. The Memorandum of Agreement was amended to include the left wrist on March 2, 2016 pursuant to a pre-trial order entered by Judge Salem in WCC 2015-6647. Judge Hardman discontinued Employee's weekly benefits on November 10, 2016 (WCC 2016-3927). On February 3, 2017 the Court entered an ex parte order granting Employee permission for left hand carpal tunnel release pursuant to Dr. Scott Schmidt's report.

Employee asserts that he will prevail on his petition after a trial on the merits.

*[handwritten margin notes:]* My case got switched in a middle of a pre-trial order entered by Judge Salem and then DeCenti by Judge Hardman months late. The Court granted permission for the Left Hand Surgery so the Court should go by Dr. Schmidt Loss of use percentage from that 2nd Hand Surgery.

2

II.    MEDICAL OPINIONS

Employee will rely on the medical opinions of her doctors including Dr. Schimdt.

III.    LAY WITNESSES

The Employee will testify in this case.

Petitioner/Employee
By her attorney:

_/s/ STEPHEN J. DENNIS_____
Stephen J. Dennis, Esq. #4336
127 Dorrance Street, 3rd Fl, Suite 7A
Providence, RI  02903
(401) 453-1355

3



# Exhibit E

Statement of the
Mediator
12-01-2017

(A) In Full Agreement
Lump Sum Payment

(B) ORDER
Continued to 12/7 @ 9:30
Entered in Court Nov 8

12/4/2017 11:41 AM Workers' Compensation Court

**STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS**

**PROVIDENCE, SC.**     **WORKERS' COMPENSATION COURT**

Mickeda S. Barnes

_____

vs.                           }     W.C.C. No.  201704046, 201704145, 201704571,201705115

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY

_____

### Statement of the Mediator

In regard to the above matter, the undersigned was assigned as Mediator, by an Order

issued by Chief Judge Ferrieri  on September 27, 2017.

The Mediation was:

    ☐ scheduled but not heard

    ☐ was held on the following date(s)     *12/1/17*

The Mediation ended:

    ☑ in full agreement as follows:     *temp sum settlement*
    *to be filed*
    *to resolve compensation*

    ☐ in non-agreement     *matter  12/4/17*

Signature: _____          Date: _____

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

**PROVIDENCE, SC.**          **WORKERS' COMPENSATION COURT**

|                          |   |                    |                                                              |
|--------------------------|---|--------------------|--------------------------------------------------------------|
| Mickeda S. Barnes        | ) |                    |                                                              |
|                          | ) | W.C.C. No.         | 201706824, 201704145, 201706646, 201705115, 201706073        |
| VS.                      | ) |                    |                                                              |
| RHODE ISLAND PUBLIC TRANSIT AUTHORITY | ) |      |                                                              |

### ORDER

Upon good cause, the above entitled matter is hereby referred for Mediation.

Judge _Feeney_ is assigned to mediate this matter. This matter is

continued to _12/7 @ 930_ , before this court, for further

proceedings. All mediation documents shall be provided to the Mediation

Coordinator by _11/21/18_

Entered as an Order of this Court this _8th_ day of _Nov._

PER ORDER:                          ENTER:

/s/ Nicholas DiFilippo               /s/ Chief Judge Robert M. Ferrieri

Exhibit F

Discrimination
Agreement Contract
From 4-25-18

Section (d) IN Regards
To Worker's
Compensation
Benefits.

*Discrimination agreement Contract From 4-25-18*

all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of her waiver of age claims under the ADEA and OWBPA.

(c)  This release covers claims that Employee knows about, and those that she may not know about, up through the date of this Agreement.

(d)  Despite any language herein to the contrary, Employee does not release claims that may arise after Employees signs this Agreement or that by law cannot be released by private agreement.  For example, this Agreement does not release claims for unemployment insurance or workers' compensation benefits.

*Does Not Release Claims to Workers Compensation Benefits*

(e)  After the parties had reached agreement in principal, Employee filed the above-reference suit in Rhode Island Superior Court, Case No. PC-2018-2287.  As a result, the Parties hereby agree that, except to enforce the provisions of this Agreement, should Employee bring any claim, action, or suit on any matter covered by the releases set forth in this Paragraph 2, against the Releasees, this Agreement may be asserted as a complete defense, and if the Releasees, collectively or individually, prevail, Employee shall be responsible for liquidated damages in the amount of $10,000 per violation or paying the attorneys' fees and costs that the prevailing Releasee(s) incurs in opposing such claim, whichever is less, in addition to any other relief to which the Releasee(s) may be entitled.  Although Employee is releasing all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of her release of age claims under the ADEA and OWBPA.

3.  **Age Discrimination in Employment Act ("ADEA").**

(a)  **Twenty-One (21) Day Consideration Period.**  Employee shall have twenty-one (21) days to consider and accept the terms of this Agreement by fully executing it below, and returning it to counsel for the Authority, Jillian Folger-Hartwell, One Financial Plaza, Ste. 2205,

Firmwide:151655351.8 088768.1003

# Exhibit G

# Medicare Set a Side Intrest Report (Partial)

04/03/2018 10:27AM FAX   4017349334          CONNOR LAW OFFICES                    ☒0006/0012

Page 1 of 3

WORKERS' COMPENSATION MEDICARE SET-ASIDE ARRANGEMENT (WCMSA) REVIEW

Case Control #: WC1806801376397    Medicare ID/SSN: *****8332A

Claimant's Name: MICKEDA BARNES

Date of Injury: 02/18/2004

Diagnosis Code:

| Dx Code | Dx Ind. | Dx Description |
|---------|---------|----------------|
| G5602 | ICD-10 | Carpal tunnel syndrome, left upper limb |
| M25539 | ICD-10 | Pain in unspecified wrist |
| M25561 | ICD-10 | Pain in right knee |
| M545 | ICD-10 | Low back pain |

*(Needs Added) Rt Shoulder Injury.* [handwritten]

Proposed Settlement Date (PSD): 07/07/2018     Date of Birth: 01/31/1975
Age at PSD: 43     Rated Age at PSD: 43     Life Expectancy: 33 yrs.

Submitter:
(205) 822-2006
CARR ALLISON
100 Vestavia Parkway
Birmingham, AL 35216

Claimant:
MICKEDA BARNES
34 DUNBAR AVE
RUMFORD, RI 02916-3111

WCMSA Administrator:
MICKEDA BARNES
34 DUNBAR AVE
RUMFORD, RI 02916-3111

[] SSA's record shows Representative Payee:

Proposed Future Medical WCMSA Amount: $11,355.00
Proposed Future Rx WCMSA Amount: $0.00
Total Proposed WCMSA: $11,355.00
Proposed Initial Deposit: $0.00
Total Settlement Amount: $61,355.00

Recommended WCMSA: $127,268.00   Pricing Method: Fee    WC State: RHODE ISLAND
Recommended WCMSA Lump Sum [X] or
Recommended WCMSA Structured Payments: []
Recommended Initial Deposit: $0.00
Annual Amount: $0.00 x 37 yrs.
Anniversary Date: 07/07/2019
Type of Recommendation: Counter-Higher
If not eligible for WCMSA, reason:

*Needs Added →* [handwritten]

Current Treatment Status for WC Injury or Disease (including past medical treatment):

*TBInjury 2008 (Trigger point injections and Floricets Medicines)* [handwritten]

https://www.cob.cms.hhs.gov/WCMSA/alertLookup!displayAttachment?attachmentType=...   3/27/2018

04/03/2018 10:27AM FAX 4017349334          CONNOR LAW OFFICES          @0007/0012

Page 2 of 3

CLAIMANT SUSTAINED MULTIPLE WORK RELATED INJURIES FROM 2/18/2004 TO 2/12/2015 INVOLVING MULTIPLE BODY PARTS INCLUDING THE NECK, RIGHT ARM, RIGHT SHOULDER, RIGHT WRIST, RIGHT HAND, RIGHT KNEE, LOWER BACK, LEFT WRIST AND LEFT ARM. THE MOST RECENT WORKRELATED INJURY OCCURRED ON 2/12/2015. AT THAT TIME, CLAIMANT REPORTED LOW BACK AND LEFT WRIST PAIN FOLLOWING A SLIP AND FALL. CLAIMANT UNDERWENT LEFT CARPAL TUNNEL RELEASE (5/6/2015) AND LEFT CARPAL TUNNEL RELEASE REVISION AND GUYON'S CANAL RELEASE (2/9/2017). CLAIMAINT CONTINUES TO COMPLAIN OF PAIN IN LEFT WRIST, LEFT ARM, RIGHT KNEE AND CHRONIC LOWER BACK PAIN. PREVIOUS TREATMENT INCLUDED DIAGNOSTIC IMAGING, MEDICATIONS, STEROID INJECTIONS, PHYSICAL THERAPY, DURABLE MEDICAL EQUIPMENT, AND FOLLOWUP EVALUATIONS. CLAIMANT ACTIVE WORK RELATED DIAGNOSES INCLUDE CHRONIC BILATERAL LOW BACK PAIN WITHOUT SCIATICA, CHRONIC PAIN OF THE RIGHT KNEE, CARPAL TUNNEL SYNDROME, LEFT UPPER LIMB, AND LEFT WRIST PAIN.

**Past Medical Treatment Unrelated to WC Injury or Its Co-Morbid Conditions:**

CLAIMANT'S PAST MEDICAL HISTORY INCLUDES ANXIETY, CARDIAC MURMUR, DEPRESSION, HYPERTENSION, REFLEX SYMPATHETIC DYSTROPHY OF THE LOWER EXTREMITY, GASTRIC BYPASS IN 2004, AND INJURIES FROM 7/26/2008 OF THE NECK, RIGHT ARM AND RIGHT SHOULDER.

*[handwritten: RSD is from the Oct 2013 injury to Rt knee]*

*[handwritten: Rt shoulder is from 2-12-2015 Slip & Fall injury]*

**Future Treatment (for Medicare-covered items and reimbursable services for the WC injury only):**

FUTURE TREATMENT INCLUDES ROUTINE PHYSICIAN EVALUATION, INJECTIONS, DIAGNOSTIC STUDIES, LABS, PHYSICAL THERAPY, AND PERIODIC REPLACEMENT OF DURABLE MEDICAL EQUIPMENT.

The following chart summarizes the future medical treatment costs (exclusive of pharmacy items) that adequately protect Medicare's interests:

| Service | Freq | Every X Yrs | # of Years | Price Per Service | Total |
|---|---|---|---|---|---|
| ELECTROMYOGRAPHY OF | 1.00 | 38.00 | 38.0 | $235.66 | $235.66 |
| NERVE CONDUCTION STU | 1.00 | 38.00 | 38.0 | $300.50 | $300.50 |
| X-RAY OF LEFT WRIST | 12.00 | 38.00 | 38.0 | $83.50 | $1,002.00 |
| LEFT WRIST BRACE | 7.00 | 38.00 | 38.0 | $70.17 | $491.19 |
| PHYSICIAN EVALUATION | 6.00 | 1.00 | 38.0 | $143.76 | $32,777.28 |
| PHYSICAL THERAPY VIS | 24.00 | 38.00 | 38.0 | $97.44 | $2,338.56 |
| PHYSICAL THERAPY VIS | 24.00 | 38.00 | 38.0 | $97.44 | $2,338.56 |
| X-RAY OF LUMBAR SPIN | 12.00 | 38.00 | 38.0 | $79.21 | $950.52 |
| MRI OF LUMBAR WITH A | 6.00 | 38.00 | 38.0 | $1,194.22 | $7,165.32 |
| COMPREHENSIVE METABO | 1.00 | 1.00 | 38.0 | $15.24 | $579.12 |
| COMPLETE BLOOD COUNT | 1.00 | 1.00 | 38.0 | $11.21 | $425.98 |
| VENIPUNCTURE | 1.00 | 1.00 | 38.0 | $3.15 | $119.70 |
| URINE DRUG TEST | 1.00 | 1.00 | 38.0 | $117.65 | $4,470.70 |
| X-RAY OF RIGHT KNEE | 7.00 | 38.00 | 38.0 | $83.66 | $585.62 |
| MRI OF THE RIGHT KNE | 3.00 | 38.00 | 38.0 | $1,102.93 | $3,308.79 |
| Total: | | | | | $57,089.50 |

**Prescription Drugs (for Medicare-covered and reimbursable drugs for the WC injury only):**

ACCORDING TO THE AVAILABLE MEDICAL RECORDS, CLAIMANT IS CURRENTLY RECEIVING PRESCRIPTIONS FOR CELEBREX, GABAPENTIN, AND APAP/CODEINE.

https://www.cob.cms.hhs.gov/WCMSA/alertLookup!displayAttachment?attachmentType=...  3/27/2018

According to available documentation, this claimant is currently receiving the following drugs: CELECOXIB, ACETAMINOPHEN-CODEINE PHOSPHATE, GABAPENTIN.

The following chart summarizes the future prescription drug costs that adequately protect Medicare's interests:

| Drug | National Drug Code | Amount Per Unit (Dosage) | Per Day | Per Week | Per Month | # of Years | Price Per Unit | Total |
|---|---|---|---|---|---|---|---|---|
| ACETAMINOPHEN | 00093-0150-10 | 300 MG-30 MG | 0.00 | 0.00 | 30.00 | 36 | $0.28 | $3,830.40 |
| GABAPENTIN | 69097-0813-12 | 100 MG | 0.00 | 0.00 | 90.00 | 36 | $0.53 | $1,751.20 |
| CELECOXIB | 42291-0194-50 | 200 MG | 0.00 | 0.00 | 60.00 | 36 | $1.63 | $44,596.80 |
| | | | | | | | Total: | $70,178.40 |

*(handwritten marginal notes: "6 up" with arrows pointing to the ACETAMINOPHEN and CELECOXIB rows)*

**Rationale for Decision:**

INSTEAD OF THE SUBMITTER'S PROPOSED SET-ASIDE, CMS HAS DETERMINED THAT A DIFFERENT SET-ASIDE AMOUNT IS NECESSARY TO PROTECT MEDICARE'S INTEREST FOR THE FOLLOWING REASONS: PRESCRIPTION PRICING AND TREATMENT FOR LOW BACK PAIN AND RIGHT KNEE WERE NOT INCLUDED IN THE WCMSA PROPOSAL.

The following chart summarizes the services and costs that adequately protect Medicare's interests:

Subtotal Future Treatment: $57,090.00
Subtotal Prescription Drugs: $70,178.00
Grand Total: $127,265.00

FUTURE TREATMENT INCLUDES ROUTINE PHYSICIAN EVALUATION, INJECTIONS, DIAGNOSTIC STUDIES, LABS, PHYSICAL THERAPY, AND PERIODIC REPLACEMENT OF DURABLE MEDICAL EQUIPMENT.

The following chart summarizes the future medical treatment costs (exclusive of pharmacy items) that adequately protect Medicare's interests:

| SERVICE | FREQ | EVERY X YRS | # OF YEARS | PRICE PER SERVICE | TOTAL |
|---|---|---|---|---|---|
| ELECTROMYOGRAPHY OF LEFT UPPER EXTREMITY | 1 | 38 | 38 | $235.66 | $235.66 |
| NERVE CONDUCTION STUDIES OF LEFT UPPER EXTREMITY | 1 | 38 | 38 | $300.50 | $300.50 |
| X-RAY OF LEFT WRIST | 12 | 38 | 38 | $83.50 | $1,002.00 |
| LEFT WRIST BRACE | 7 | 38 | 38 | $70.17 | $491.19 |
| PHYSICIAN EVALUATIONS | 6 | 1 | 38 | $143.76 | $32,777.28 |
| PHYSICAL THERAPY VISITS FOR LEFT UPPER EXTREMITY | 24 | 38 | 38 | $97.44 | $2,338.56 |
| PHYSICAL THERAPY VISITS FOR LUMBAR | 24 | 38 | 38 | $97.44 | $2,338.56 |
| X-RAY OF LUMBAR SPINE 2/3 VIEWS | 12 | 38 | 38 | $79.21 | $950.52 |
| MRI OF LUMBAR WITH AND WITHOUT CONTRAST | 6 | 38 | 38 | $1,194.22 | $7,165.32 |
| COMPREHENSIVE METABOLIC PANEL | 1 | 1 | 38 | $15.24 | $579.12 |
| COMPLETE BLOOD COUNT | 1 | 1 | 38 | $11.21 | $425.98 |
| VENIPUNCTURE | 1 | 1 | 38 | $3.15 | $119.70 |
| URINE DRUG TEST | 1 | 1 | 38 | $117.65 | $4,470.70 |
| X-RAY OF RIGHT KNEE | 7 | 38 | 38 | $83.66 | $585.62 |
| MRI OF THE RIGHT KNEE WITH AND WITHOUT CONTRAST | 3 | 38 | 38 | $1,102.93 | $3,308.79 |
| | | | | TOTAL | $57,089.50 |

**Prescription Drugs (for Medicare-covered and reimbursable drugs for the WC Injury only):**

ACCORDING TO THE AVAILABLE MEDICAL RECORDS, CLAIMANT IS CURRENTLY RECEIVING PRESCRIPTIONS FOR CELEBREX, GABAPENTIN, AND APAP/CODEINE.

According to available documentation, this claimant is currently receiving the following drugs: ACETAMINOPHEN-CODEINE PHOSPHATE, GABAPENTIN, CELECOXIB



**Proposed Future Medical WCMSA Amount:** $11,355.00
**Proposed Future Rx WCMSA Amount:** $0.00
**Total Proposed WCMSA:** $11,355.00
**Proposed Initial Deposit:** $0.00
**Total Settlement Amount:** $61,355.00

**Recommended WCMSA:** $127,268.00 **Pricing Method:** Fee **WC State:** RI
**Recommended WCMSA Lump Sum [ X ] or**
**Recommended WCMSA Structured Payments: []**
**Recommended Initial Deposit:** $0.00
Annual Amount: $0.00 x 37 yrs.
Anniversary Date: 7/1/2019
**Type of Recommendation:** Counter-Higher
If not eligible for WCMSA, reason:

**Current Treatment Status for WC Injury or Disease (including past medical treatment):**
CLAIMANT SUSTAINED MULTIPLE WORK RELATED INJURIES FROM 2/18/2004 TO 2/12/2015 INVOLVING MULTIPLE BODY PARTS INCLUDING THE NECK, RIGHT ARM, RIGHT SHOULDER, RIGHT WRIST, RIGHT HAND, RIGHT KNEE, LOWER BACK, LEFT WRIST AND LEFT ARM. THE MOST RECENT WORK RELATED INJURY OCCURRED ON 2/12/2015. AT THAT TIME, CLAIMANT REPORTED LOW BACK AND LEFT WRIST PAIN FOLLOWING A SLIP AND FALL. CLAIMANT UNDERWENT LEFT CARPAL TUNNEL RELEASE (5/6/2015) AND LEFT CARPAL TUNNEL RELEASE REVISION AND GUYON'S CANAL RELEASE (2/9/2017). CLAIMANT CONTINUES TO COMPLAIN OF PAIN IN LEFT WRIST, LEFT ARM, RIGHT KNEE AND CHRONIC LOWER BACK PAIN. PREVIOUS TREATMENT INCLUDED DIAGNOSTIC IMAGING, MEDICATIONS, STEROID INJECTIONS, PHYSICAL THERAPY, DURABLE MEDICAL EQUIPMENT, AND FOLLOWUP EVALUATIONS. CLAIMANT ACTIVE WORK RELATED DIAGNOSES INCLUDE CHRONIC BILATERAL LOW BACK PAIN WITHOUT SCIATICA, CHRONIC PAIN OF THE RIGHT KNEE, CARPAL TUNNEL SYNDROME, LEFT UPPER LIMB, AND LEFT WRIST PAIN.

**Past Medical Treatment Unrelated to WC Injury or Its Co-Morbid Conditions:**
CLAIMANT'S PAST MEDICAL HISTORY INCLUDES ANXIETY, CARDIAC MURMUR, DEPRESSION, HYPERTENSION, REFLEX SYMPATHETIC DYSTROPHY OF THE LOWER EXTREMITY, GASTRIC BYPASS IN 2004, AND INJURIES FROM 7/26/2008 OF THE NECK, RIGHT ARM AND RIGHT SHOULDER.

**Future Treatment (for Medicare-covered items and reimbursable services for the WC injury only):**

# Exhibit H

Jodi Connor's
CMS Fax to
Steven Dennis
That Nick Mancini
Never Sent IN Report

As per Global Settlement

Page 11 First Paragrapt
2 Weeks to Submit it
To CMS your Honor.

Fax Server                    3/6/2018 9:41:03 AM    PAGE    1/002    Fax Server

# FAX



**To:** **Stephen Dennis Law Office**
Company:
    Fax:  401-453-6670
Phone:

**From:** **Jodi Connor**
    Fax:  443-380-5584
Phone:  617-565-1293
E-mail:  jodi.connor@cms.hhs.gov

*Case Control #*
*W-C180\<80\>13\<\>397*

### NOTES:

Per the request of the claimant Mickeda Barnes, attached is a screen shot of CMS's system showing no information is available on her case as of today's date.

Sincerely,
Jodi Connor

*→ 50,000*
*→ 11*

**Date and time of transmission:** Tuesday, March 6, 2018 9:40:24 AM
**Number of pages including this cover sheet:** 02



1  for this actually being resolved.  So I can't thank him

2  enough for his efforts.  So we do have a matter -- the

3  matter is scheduled for December 4th.  There is no need

4  for us to meet since we went on the record today.  Let me

5  ask this, how much time do you think you need to at least

6  submit this to Carr Allison, and I take it any of the

7  accepted claims will be submitted?  You tell me.

8          MR. MANCINI:  Two weeks to get it submitted,

9  Judge, the maximum.

10          THE COURT:  So why don't we do this?  I'm

11  going to kick this for a date just before the Christmas

12  holiday for the attorneys.  Ms. Barnes, you know you're

13  always welcome in my courtroom, but there's no need for

14  you to pay for parking and come here.  I'm doing this for

15  twofold.  Number one, I want to make sure that the MSA

16  proposal has been submitted.  Number 2, I want to make

17  sure that the mutual agreement relative to the $3,000

18  that you're going to be paid before the Christmas holiday

19  has been executed.  Once I'm satisfied that that has been

20  done, I will then put it down for a date sometime in

21  January for further status on the MSA.  Okay.

22          MS. BARNES:  Could I get the $3,000 ASAP?  I

23  need to pay some bills.

24          THE COURT:  Your attorney will be speaking

25  with RIPTA and Mr. Mancini, and I'm sure that will be

# Exhibit I

3rd Party Lawyer for
Rt Knee Case (Miekeda Barnes)

Letter from Leone Law
about GenFares / Contract



## LEONE LAW, LLC

RHODE ISLAND • MASSACHUSETTS

1345 Jefferson Boulevard • Warwick, Rhode Island 02886

May 2, 2018

Mickeda Barnes
34 Dunbar Ave
Rumford, RI 02916

Dear Mickeda:

We have had the opportunity to review the draft settlement release that Sonja Deyoe forwarded to us stemming from your discrimination lawsuit against RIPTA (RIPTA settlement release). In section 2(b) entitled "Release of Claims," the RIPTA settlement release speaks of a potential right of action against you if a contribution, indemnification, or other claim is brought against RIPTA. This letter is to advise you of the potential risk that the release language has in your case against Genfare.

As you know, under worker's compensation law, you do not have the right to file a liability lawsuit against your employer, RIPTA. Nonetheless, the Genfare defendants do have the legal right to assert third party claims for contribution or indemnification against RIPTA in the Genfare case. In short, to the extent Genfare believes or has contractually agreed with RIPTA that RIPTA is legally responsible for Genfare's negligence, Genfare may be able to seek contribution or indemnification against RIPTA. If that happens, one reading of paragraph 2(b) is that RIPTA can sue you for breach of the RIPTA settlement release. Please note that, to date, Genfare has not asserted any claims against RIPTA.

While I cannot speak to the likelihood, probability, or potential of this happening, you need to be aware of this risk and make a choice on whether the release is signed in the current form.

I have suggested that RIPTA's settlement release contain language specifically exempting the Genfare case. Sonja advises that RIPTA has refused to agree to that language.

Please sign where indicated on the bottom and mail the original back to us, confirming that you have read and understand the risks posed in the RIPTA settlement release.

Feel free to call with any language.

Very truly yours,

Anthony R. Leone

I, Mickeda Barnes, have read and understand this letter and am aware of risks posed in the RIPTA settlement release.

_____

Mickeda Barnes

Date: _____



# Exhibit J

# Ripta / Genfare

## Partial Contract

## for Liability

# Pages 3,4,5,6,7 and 8 for

Indemnification and HoldHarmless
Compensation          Liquidated damages
Insurance Bond        Title VII Civil Rights Req.

this contract, such waiver by RIPTA shall not limit RIPTA's legal remedies for any succeeding breach of that or of any other term, covenant, or condition of this contract.

**1.7    TIME OF PERFORMANCE**

The Contractor shall commence work under this contract effective upon execution and shall continue in good faith and effort in accordance with the timeline herein incorporated as "Attachment 3" entitled "Progress Schedule Milestones

**1.8    DELIVERY EXTENSION AND DELAYS**

RIPTA reserves the right, in its sole discretion, to extend the time for performance of the services contemplated by this Agreement. No delay shall be granted in connection with the acts, omissions, negligence, or mistakes of the Contractor, the Contractor's suppliers, or their agents.

**1.9    RESOLUTION OF DISPUTES OR BREACHES**

Disputes arising in the performance of this Contract which are not resolved by agreement of the parties shall be decided in writing by the Contracts Manager. This decision shall be final and conclusive unless within ten (10) calendar days from the date of receipt of its copy, the Contractor mails or otherwise furnishes a written appeal to the General Manager. In connection with said appeal, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its position. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of this Contract while matters in dispute are being resolved. The final decision of the General Manager shall be binding upon the Contractor and the Contractor shall abide by the decision.

**1.10    STATUS, INDEMNIFICATION AND HOLD HARMLESS**

In performing work and services hereunder, the Contractor, its employees, agents, and representatives, shall be acting as independent contractors, and shall not be deemed or construed to be employees or agents of RIPTA in any manner whatsoever. The Contractor shall not hold itself out as, nor claim to be, an officer or employee of RIPTA by reason hereof, and will not make any claim, demand, or application to or for any right or privilege applicable to an officer or employee of RIPTA. The Contractor shall be solely responsible for any claims for wages or compensation by the Contractor's employees, agents, and representatives, and shall indemnify and hold RIPTA harmless therefrom.

To the maximum extent permitted by law, the Contractor shall indemnify and hold harmless RIPTA and all of RIPTA's officers, employees, and agents from and against all claims, demands, suits, penalties and liability of any kind, including injuries to persons or damages to property, which arise out of or are due to any acts, errors, or omissions of the Contractor, or the Contractor's employees, agents, and representatives in performing work and services under this Agreement. In the event that any claims, investigations, demands, suits, actions, and lawsuits arise out of any of the aforesaid acts, errors, or omissions, the Contractor shall assume all costs of defending such claims, suits, actions, or lawsuits, including legal fees incurred by RIPTA, any penalties imposed on RIPTA or the Contractor, and all judgments that may be obtained against RIPTA, or any of its officers, agents, or employees in such suits. Further, the Contractor waives immunity under the Industrial Insurance Act and assumes all liability for actions brought by him or his employees against RIPTA for injuries in the performance of this Agreement. The Contractor represents this provision has been negotiated with RIPTA.

3

To the maximum extent permitted by law, RIPTA shall indemnify and hold harmless the Contractor and all of Contractor's officers, employees, and agents from and against all claims, demands, suits, penalties and liability of any kind, including injuries to persons or damages to property, which arise out of or are due to any acts, errors, or omissions of RIPTA, or RIPTA's employees, agents, and representatives while engaged in the business of public transportation and with respect to its duties and obligations under this Agreement. In the event that any claims, investigations, demands, suits, actions, and lawsuits arise out of any of the aforesaid acts, errors, or omissions, RIPTA shall assume all costs of defending such claims, suits, actions, or lawsuits, including legal fees incurred by Contractor, any penalties imposed on Contractor or RIPTA, and all judgments that may be obtained against Contractor, or any of its officers, agents, or employees in such suits. RIPTA represents this provision has been negotiated with Contractor.

## 1.11   COMPENSATION

RIPTA will pay in accordance with prices listed in the price schedule, incorporated herein as "Attachment 5" entitled Proposal Price Submittal Worksheet including delivery charges, plus sales tax, if applicable as full compensation for all work performed and accepted under this Contract, subject to allowable additions and deductions as provided. Deliverables, as described in "Attachment 5", shall be received by RIPTA prior to final payment. Payment will be made in accordance with the provision for payment.

## 1.12   PAYMENT

The Contractor shall be paid, upon the submission of proper invoices or vouchers, the price(s) stipulated herein for services rendered and accepted, less deductions, if any, as herein provided. The Contractor will send their application for payment to: **Mr. Michael McGrane, Contracts Manager**, Rhode Island Public Transit Authority, 265 Melrose Street, Providence, Rhode Island, 02907.

Payment will be made within sixty (60) calendar days after approval of the Contractor's application, unless other terms are agreed upon as a part of this Agreement. .

### A.   Covenant Against Contingent Fees

The Contractor warrants that no person or selling agency has been employed or retained to solicit or secure this contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the Contractor for the purpose of securing business. For breach or violation of this warranty, RIPTA shall have the right to rescind this contract without liability or at its discretion, to deduct from the contract price or consideration, or otherwise recover, the full amount of such commission, percentage, brokerage, or contingent fee, plus all other damages and and attorney fees associated with such a breach

### B.   Payment Does Not Imply Acceptance of Work

The granting of any progress payment or payments by RIPTA, or the receipt thereof by the Contractor, shall not constitute in any sense acceptance of the work or of any portion thereof, and shall in no way lessen the liability of the Contractor to replace work or material which does not conform to the Contract Documents, though the character of such work or material may not have been apparent or detected at the time such payment was made.

Materials, components, or workmanship which do not conform to the instructions or their contract requirements and specifications, or are not equal to the samples

4

submitted to and approved by RIPTA, will be rejected and shall be replaced by the Contractor without delay.

C.    Prompt Payment of Subcontractors

"The Contractor is required to make payment to subcontractors within thirty days from the receipt of each payment the Contractor receives from RIPTA for satisfactorily completed subcontractor work from RIPTA, whether such payment is a progress or final payment. The Contractor agrees further to return retainage payments to each subcontractor within thirty days after the subcontractor's work is satisfactorily completed. If payment disputes arise between the Contractor and subcontractors, such disputes shall be resolved promptly through mediation or arbitration in order to prevent injury to small business subcontractors. The Contractor shall specify in its subcontract agreement what dispute resolution method will be used. In addition, The Contractors will not be paid for subcontractors' work unless the Contractor can show that a prompt payment method for subcontractors is in place. The Contractors shall be required to provide copies of the subcontracts to RIPTA showing inclusion of these provisions. RIPTA may withhold the applicable sum due a subcontractor for non-compliance with this section."

1.13    INSURANCE AND/OR BOND

A.    The Vendor shall purchase from and maintain in a company or companies lawfully authorized and admitted to do business in the state of Rhode Island possessing a Best's policyholder's rating of A- or better and a financial rating of no less than VII, and reasonably acceptable to RIPTA, an occurrence-based Commercial General Liability Insurance Policy which shall provide bodily injury and property damage liability on its own operations and vehicles on Work the Vendor may subcontract or sublet to others, in no less than the amounts specified below. This insurance will name RIPTA, the Vendor, its consultants and employees, and any required governmental agencies as additional insureds for Work performed under this Contract; the Vendor's policy shall be designated primary coverage for both defense and indemnity, and any RIPTA policies or self insurance funds shall be excess.

(1)    Commercial General Liability, Bodily Injury and Property Damage Liability, including Premise and Operations, Independent Contractors, Protective Liability, Completed Operations and Products, Contractual, Combined Single Limit of at least $1,000,000.00 per occurrence, with a per project aggregate limit of at least $5,000,000.00.

(2)    Comprehensive Automobile Liability, Bodily Injury and Property Damage Combined Single Limit of at least $1,000,000.00, with a per project aggregate limit of at least $5,000,000.00.

(3)    In addition, the Vendor shall maintain a true umbrella policy which provides excess limits over the primary layer, in an amount not less than $2,000,000.00.

(4)    If services covered under this contract include any professional services, i.e. consultants, computer technical services, etc., professional liability (errors and omissions) coverage of at least $1,000,000.00 shall be maintained.

5

B.  The insurance required by Subparagraph 1.13 A shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, written on an occurrence basis, shall be maintained without interruption from date of commencement of the Work until date of final payment and termination of any coverage required to be maintained after final payment. Completed operations coverage shall remain in force for three years after Final Acceptance.

C.  In addition, the Vendor shall purchase and maintain insurance for claims under workers' compensation (industrial insurance), disability benefit and other similar employee benefit acts in the state statutory amount and Stop Gap Liability Insurance (Employer's Contingent Liability Insurance) with coverage of at least $500,000.00 each occurrence/each accident.

D.  Before commencing Work or exposure to loss can occur, and, in any event, as a condition of RIPTA executing the contract, the Vendor shall furnish RIPTA with a copy of the applicable certificates of insurance required by the Contract Documents. If the Agreement is executed, no Progress Payment will be due until all such Certificates are furnished. All policies and certificates must be signed copies and shall contain a provision that coverages afforded under the policies cannot be materially altered (i.e., the coverages reduced, the limits decreased, or the additional insureds removed), allowed to expire, or canceled without first giving at least thirty (30) days' prior written notice by certified mail to RIPTA. The Vendor shall furnish to RIPTA copies of any subsequently issued endorsements amending, modifying, altering, or restricting coverage of limits. Furthermore, such policies or certificates shall contain a clause verifying that the policy contains coverage for blanket contractual liability including both oral and written contracts and that the indemnification provisions of Paragraph 1.10 are acknowledged.

E.  RIPTA's specification or approval of the insurance in this Contract or of its amount shall not relieve or decrease the liability of the Vendor. Coverages are the minimum to be provided and are not limitations of liability under the Contract, indemnification, or applicable law provisions. The Vendor may, at its expense, purchase larger coverage amounts.

F.  The Vendor shall ensure and require that Subcontractors of any tier have insurance coverage to cover bodily injury and property damage on all operations and all vehicles owned or operated by Subcontractors of any tier.

G.  If RIPTA is damaged by the failure of the Vendor to maintain any of the above insurance or to so notify RIPTA, then the Vendor shall bear all costs attributable thereto, including attorney's fees.. RIPTA may withhold payment pending receipt of all certificates of insurance. Failure to withhold payment shall not constitute a waiver.

## 1.14  LIQUIDATED DAMAGES

Pursuant to General Terms and Conditions, liquidated damages shall be applicable to this contract. In the event that the Contractor fails to provide delivery of the required equipment and systems as required by the technical specifications by the specified dates, the Proposer/Contractor shall be liable for liquidated damages as identified in the following table. The table following identifies the equipment and processes included in the computation of liquidated damages.

Farebox (including DCU) $100/day/farebox
Revenue Collection Vault System: $1,000/day/RCVS

**6**

Central Data Collection and Reporting System: $10,000/day

RIPTA may deduct the sum of liquidated damages from any monies due the Contractor, or if such monies due are insufficient, the Contractor or its Surety(ies) shall pay to RIPTA all deficiencies in monies within 30 days of demand therefore by RIPTA.

Potential for accrual of liquidated damages shall not end until the delivery of the system, its equipment and its components are complete.

## 1.15    TAXES

If applicable, sales tax on this contract, as determined by the Rhode Island Department of Revenue, will be added to the amounts due and the Contractor will be responsible for making payment of the tax to the State of Rhode Island.  All other taxes are the sole responsibility of the Contractor.

## 1.16    TITLE VI CIVIL RIGHTS REQUIREMENTS

A.    Nondiscrimination.  In accordance with Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. #2000d, Section 303 of the Age Discrimination Act of 1975, as amended, 42 U.S.C. #6102, Section 202 of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. #12132, and Federal transit law at 49 U.S.C. #5332, the Contractor agrees that it will not discriminate against any employee or applicant for employment because of race, color, creed, national origin, sex, marital status, age, or disability.  Contractor agrees to comply fully with all corresponding antidiscrimination statues and regulations under Rhode Island law.  In addition, the Contractor agrees to comply with applicable Federal implementing regulations and other implementing requirements FTA may issue.

B.    Equal Employment Opportunity.  The following equal employment opportunity requirements apply to this contract:

(1)    Race, Color, Creed, National Origin, Sex.  In accordance with Title VII of the Civil Rights Act, as amended, 42 U.S.C. #2000e, and Federal transit laws at 49 U.S.C. #5332, the Contractor agrees to comply with all applicable equal employment opportunity requirements of U.S. Dept. of Labor regulations, "Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor, 41 CFR, Parts 60 et seq., and with any applicable Federal Statutes, executive orders, regulations, and Federal policies that may in the future affect construction activities undertaken in the course of this project.  The Contractor agrees to take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, creed, national origin, sex, marital status, or age.  Such action shall include, but not be limited to, the following:  employment, upgrading, demotion or transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation; and selection for training, including apprenticeship.

(2)    Age.  In accordance with Section 4 of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. #623 and Federal transit law at 49 U.S.C. #5332, the Contractor agrees to refrain from discrimination against present and prospective employees for reason of age.

(3)    Disabilities.  In accordance with Section 102 of the Americans with Disabilities Act, as amended, 42 U.S.C. #12112, the Contractor agrees

7

that it will comply with the requirements of U.S. Equal Employment Opportunity Commission, "Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act," 29 CFR, Part 1630, pertaining to employment of persons with disabilities.

C.  The Contractor also agrees to include these requirements in each subcontract financed in whole or in part with Federal assistance provided by FTA, modified only if necessary to identify the affected parties.

## 1.17    LABOR PROVISIONS - NONCONSTRUCTION CONTRACTS

A.    Overtime Requirements.  No Contractor or subcontractor contracting for any part of the contract work which may require or involve the employment of laborers or mechanics shall require or permit any such laborer or mechanic in any work week in which they are employed on such work to work in excess of forty hours in such work week unless such laborer or mechanic receives compensation at a rate not less than one and one-half times the basic rate of pay for all hours worked in excess of eight hours in any calendar day or in excess of forty hours in such work week, whichever is greater.

B.    Liability for Unpaid Wages and Liquidated Damages.  In the event of any violation of the clause set forth in subparagraph (b)(1) of 29 CFR Section 5.5, the Contractor and any subcontractor responsible therefor shall be liable for the unpaid wages and applicable liquidated damages.  Such liquidated damages shall be computed with respect to each individual laborer or mechanic, including watchmen and guards, employed in violation of the clause set forth in subparagraph (b)(1) of 29 CFR Section 5.5 in the sum of $10 each for each calendar day on which such individual was required or permitted to work in excess of eight hours or in excess of the standard work week of forty hours without payment of the overtime wages required by the clause set forth in subparagraph (b)(1) of 29 CFR Section 5.5.

C.    Withholding for Unpaid Wages and Liquidated Damages.  The United States Department of Transportation or any other federal regulatory body with jurisdiction, or RIPTA shall, upon its own action or upon written request of an authorized representative of the Rhode Island Department of Labor, withhold or cause to be withheld, from any monies payable on account of work performed by the Contractor or subcontractor under this contract or any other federally-assisted contract subject to the Contract Work Hours and Safety Standards Act, which is held by the same Contractor, such sums as may be determined to be necessary to satisfy any liabilities of such Contractor or subcontractor for unpaid wages and liquidated damages as provided in the clause set forth in subparagraph (b)(2) of 29 CFR Section 5.5.

D.    Nonconstruction Grants.  The Contractor or subcontractor shall maintain payrolls and basic payroll records during the course of the work and shall preserve them for a period of at least three years from the completion of the contract for all laborers and mechanics, including guards and watchmen, working on the contract.  Such records shall contain the name and address of each such employee, social security number, correct classifications, hourly rates of wages paid, daily and weekly number of hours worked, deductions made, and actual wages paid.

E.    Subcontracts.  The Contractor or subcontractor shall insert in any subcontract the clauses set forth in subparagraphs A through E of this section, and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts.  The Contractor shall be responsible for compliance by any

8

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 9/8/2020 10:34 AM
Envelope: 2736519
Reviewer: Zoila C.

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

# SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>PC-2020-06065 |
| **Plaintiff**<br>Rhode Island Public Transit Authority<br><br>v.<br><br>Mickeda Barnes<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Jillian Folger-hartwell<br>**Address of the Plaintiff's Attorney or the Plaintiff**<br>LITTLER MENDELSON PC<br>ONE FINANCIAL PLAZA STE 2205<br>PROVIDENCE RI  02903 |
| Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence RI  02903<br>(401) 222-3250 | **Address of the Defendant**<br>34 Dunbar Avenue<br>Rumford RI  02916 |

**TO THE DEFENDANT, Mickeda Barnes:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 8/27/2020. | /s/ Henry Kinch<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised July 2014)

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 9/8/2020 10:54 AM
Envelope: 2736519
Reviewer: Zoila C.

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 174 of 689 PageID #:



STATE OF RHODE ISLAND AND   PROVIDENCE PLANTATIONS

## SUPERIOR COURT

| **Plaintiff**<br>Rhode Island Public Transit Authority<br>  v.<br>Mickeda Barnes<br>**Defendant** | **Civil Action File Number**<br>PC-2020-06065 |
| --- | --- |

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Mickeda Barnes, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☒ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _Kenyon Robertson_
Address of dwelling house or usual place of abode _34 Dunbar Ave_
_Rumford RI 02916_

Age _40 +/-_
Relationship to the Defendant _Co-Occupant_

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ With a guardian or conservator of the Defendant.
Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised July 2014)

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 9/8/2020 10:34 AM
Envelope: 2736519
Reviewer: Zoila C.



STATE OF RHODE ISLAND AND    PROVIDENCE PLANTATIONS

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
  Name  of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
  Name  of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
  Name of authorized agent _____
  If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
  _____

☐ I was unable to make service after the following reasonable attempts:
  _____
  _____

SERVICE DATE: Sept / 3 / 2020 @1115HM    SERVICE FEE $45.00
    Month    Day    Year

Ashley Waddington
Constable #151
P.O. Box 284
East Greenwich, RI 02818

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____
  Signature

State of _____

County of _____

On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____
My commission expires: _____
Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised July 2014)

 

STATE OF RHODE ISLAND AND    PROVIDENCE PLANTATIONS

# SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>PC-2020-06065 |
| **Plaintiff**<br>Rhode Island Public Transit Authority<br> v.<br>Mickeda Barnes<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Jillian Folger-hartwell |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>LITTLER MENDELSON PC<br>ONE FINANCIAL PLAZA STE 2205<br>PROVIDENCE RI  02903 |
| Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence RI  02903<br>(401) 222-3250 | **Address of the Defendant**<br>34 Dunbar Avenue<br>Rumford RI  02916 |

**TO THE DEFENDANT, Mickeda Barnes:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 8/27/2020. | /s/ Henry Kinch<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised July 2014)

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPERIOR COURT

| Plaintiff | Civil Action File Number |
|---|---|
| Rhode Island Public Transit Authority | PC-2020-06065 |
| v. | |
| Mickeda Barnes | |
| **Defendant** | |

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Mickeda Barnes, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____
Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ With a guardian or conservator of the Defendant.
Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised July 2014)

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.

Name  of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.

Name  of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.

Name of authorized agent _____

If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ I was unable to make service after the following reasonable attempts: _____

_____

SERVICE DATE: _____/_____/_____        SERVICE FEE $_____
                 Month    Day    Year

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____

 Signature

State of _____

County of _____

     On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or  ☐  proved  to  the  notary  through  satisfactory  evidence  of  identification,  which  was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____

My commission expires: _____

Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised July 2014)

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

# EXHIBIT 6

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H



## STATE OF RHODE ISLAND
## COMMISSION FOR HUMAN RIGHTS



180 Westminster Street, Providence, RI 02903   Tel. 401-222-2661   Fax: 401-222-2616   Voice Relay: 711

**Michael D. Évora, Esquire**
**Executive Director**

December 2, 2019

President
Rhode Island Public Transit Authority
705 Elmwood Avenue
Providence, RI  02907

RE:  RICHR No. 20 EPD 102-03/06    EEOC No. 16J-2019-00223
      Mickeda S. Barnes vs. RHODE ISLAND PUBLIC TRANSIT AUTHORITY

Dear Sir/Madam:

On **November 20, 2019** Mickeda S. Barnes  filed a charge of discrimination against RHODE ISLAND PUBLIC TRANSIT AUTHORITY  alleging a violation Rhode Island General Laws, Title 28, Chapter 5 and Title 42, Chapter 87.   A copy of the charge is enclosed for your information. It is the duty of the Commission to investigate all discrimination charges filed. The Commission, however, also welcomes discussion of mutually agreed upon settlements at any time.

Please submit a detailed position paper to the Commission with a copy to complainant and complainant's attorney (if listed below) outlining your response to the charge within thirty (30) calendar days from the date of this letter.  The Commission encourages you to include attachments such as relevant documents and witness statements.  Please note that a general denial of the allegations is insufficient, the Commission is requesting a full and complete response to the charge. In addition, please provide the appropriate mailing address for each respondent (those against whom the charge is filed) named above.

If you have any questions regarding the above, please feel free to contact me.

Sincerely,

Mariene Colon Toribio
EEOC Project Director
Enclosures
MCT/lc
CC:  Helen Davis, agent for service
**COMPLAINANT'S ATTORNEYS:**

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 181 of 689 PageID
#: 536
EEOC FORM 131-A (11/09)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| | **Mickeda S. Barnes** |

President
**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**
**705 Elmwood Avenue**
**Providence, RI 02907**

**THIS PERSON** *(check one or both)*

| X | Claims To Be Aggrieved |
|---|---|
| | Is Filing on Behalf of Other(s) |

EEOC CHARGE NO.
**16J-2019-00223**

FEPA CHARGE NO.
**20EPD102-03/06**

### NOTICE OF CHARGE OF DISCRIMINATION IN JURISDICTION WHERE A FEP AGENCY WILL INITIALLY PROCESS
*(See the enclosed for additional information)*

THIS IS NOTICE THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

| X | Title VII of the Civil Rights Act (Title VII) | | The Equal Pay Act (EPA) | X | The Americans with Disabilities Act (ADA) |
|---|---|---|---|---|---|
| | The Age Discrimination in Employment Act (ADEA) | | The Genetic Information Nondiscrimination Act (GINA) | | |

HAS BEEN RECEIVED BY

| | The EEOC and sent for initial processing to |
|---|---|

*(FEP Agency)*

| X | The **Rhode Island Commission For Human Rights** | and sent to EEOC for dual filing purposes. |
|---|---|---|

*(FEP Agency)*

While EEOC has jurisdiction (upon expiration of any deferral requirement if this is a Title VII, ADA or GINA charge) to investigate this charge, EEOC may suspend its investigation and await the issuance of the Agency's final findings and orders. These findings and orders will be given weight by EEOC in making its own determination as to whether reasonable cause exists to believe that discrimination has occurred.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency will be considered by EEOC when it reviews the Agency's final findings and orders. In many cases EEOC will take no further action, thereby avoiding the necessity of an investigation by both the Agency and EEOC. This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final findings and orders of the above-named Agency. For such a request to be honored, you must notify EEOC in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by EEOC. Regardless of whether the Agency or EEOC processes the charge, the Recordkeeping and Non-Retaliation provisions of the statutes as explained in the enclosed information sheet apply.

For further correspondence on this matter, please use the charge number(s) shown above.

Enclosure(s): Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

| X | Race | X | Color | X | Sex | | Religion | | National Origin | | Age | X | Disability | X | Retaliation | | Genetic Information | | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| | **Kevin J. Berry,**<br>**District Director** | |

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 182 of 689 PageID
#: 537

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | 20EPD 102-03/06 |
| [X] EEOC | 16J-2019-00223 |

### Rhode Island Commission For Human Rights
*State or local Agency, if any*                                                  and EEOC

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mickeda S. Barnes** | **(401) 419-2250** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **34 Dunbar Avenue, Rumford, RI 02916** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **RHODE ISLAND PUBLIC TRANSIT AUTHORITY** | **101 - 200** | **(401) 784-9500** |

| Street Address | City, State and ZIP Code |
|---|---|
| **705 Elmwood Avenue, Providence, RI 02907** | NOV 2 0 2019  RI COMMISSION FOR HUMAN RIGHTS |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| bStreet Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[X] RACE  [X] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [X] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest
**10-24-2019**

[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

1. I am being subjected to discriminatory terms and conditions of employment, retaliation, denial of reasonable accommodation, harassment, and denial of reinstatement by my employer Rhode Island Public Transit Authority. I am employed as a Bus Driver. I have been out of work due to work-related injuries/disabilities. I am continually being denied reinstatement.

2. Respondent offers no reason for the discriminatory treatment I have been forced to endure.

3. I believe I am being discriminated against on the basis of my race and color (black), sex (female), disability, perceived disability and/or record of a disability and retaliation for opposing unlawful employment practices in that I am subjected to derogatory and disparate treatment due to my protected class. During all relevant times, I maintained a satisfactory employment record. Respondent has subjected me to years of unlawful employment discrimination. In or around 2015, I suffered injuries at work as had to go out on Workers' Compensation. I subsequently filed

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| X 11-20-19   X *Mickeda Barnes* | X *Mickeda Barnes* |
| Date      Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*  11-20-2019 |

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H.

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 183 of 689 PageID
#: 538

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| X FEPA | 20 EPD 102-03/06 |
| X EEOC | 16J-2019-00223 |

### Rhode Island Commission For Human Rights

*State or local Agency, if any*                                    and EEOC

discrimination charges against respondent with the Commission for Human Rights which resulted in filing suit in State/Federal court. As a result of my complaints with the Commission and other entities, respondent has retaliated against me. On or about February 13, 2018, I had to undergo a surgical procedure for one of my work-related injuries. I remained out on workers' compensation as I recovered from surgery. On or about September 24, 2018, I was given the release to return to work with the restriction of no lifting over thirty (30) pounds. Despite my medical professional releasing me to return to work with restrictions, I was told by Maureen from Human Resources that I needed to turn in my return to work note to Diane Salsbory, who is in charge of Workers' Compensation claims. When I attempted to turn in my note, Ms. Salsbory sent me a message that she was advised not to take the note from me. I then proceeded to try and hand in my note to different managers from other departments. I informed every respondent department that I need to hand this letter in for my reinstatement and I let them know that it is discriminatory for them not to take my medical note and that the judge will ask me if I handed in the letter. I began to record my attempts of handing in my letter. Subsequently, while I was at the respondent's office, I was being harassed. At this point, my case was still being handled by the Workers' Compensation department and my reinstatement was still pending. On one of the occasions that I was attempting to submit my medical note, I was told that my employment was being terminated and to leave the building without taking my doctors note. I made a claim about this issue with the Superior Court against respondent for wrong doing. I believe I am being discriminated against and denied my rights as an injured/disabled employee. I was threatened by respondent for filing bogus Workers' Compensation claims. I have also received harassing and ominous calls from a respondent from office employee. On or about December 6, 2018, I signed a settlement in regard to respondent compensating for unpaid travel time during mid-day split shifts. Respondent negotiated a proposed settlement in this matter because of my illegal termination and my reinstatement still pending. In or around December 2018, I wrote to Maureen to add me on the respondent's insurance plan that handles dismemberment policies. However, I am continually being told that I am not entitled to respondent's insurance. I have been trying to return to work with a reasonable accommodation since in or around September 2018. Despite all of my attempts to be reinstated, respondent has refused to do so. My most recent denial for reinstatement occurred on or about October 24, 2019. I believe respondent is subjecting me to this derogatory and disparate treatment due to my race, color, sex, disability and retaliation for having filed previous discrimination charges. Upon information and belief, similarly situated employees not in my protected class are not treated in this manner. I continue to be the victim of unlawful employment practices. These actions are in violation of Title VII of the Civil Rights Act of 1964, as amended, Americans with Disabilities Act, as amended and applicable State law.

WHEREFORE, I ask that the Commission grant me such relief as shall be just and proper.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| X 11-20-19   X *Mukeda S Barnes*<br>Date            Charging Party Signature | *Mukeda S Barnes*<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)*   11-20-2019 |

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2768447
Reviewer: Nicole M.

Enclosed with EEOC
Form 131-A (11/09)

# INFORMATION ON CHARGES OF DISCRIMINATION

## EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA.  These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge.  (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below).  Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14   Preservation of records made or kept**.  . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action.  The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected.  The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 207(f) of GINA, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes.  The Equal Pay Act contains similar provisions.  Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made.  Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

## NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you.  If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

# EXHIBIT 5

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 186 of 689 PageID
#: 541



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPERIOR COURT

### NOTICE OF APPEAL

| Plaintiff/Petitioner | Civil Action File Number |
|---|---|
| Mickeda S Barnes | PC 2018-6082 |
| Defendant/Respondent | Cross-appeal |
| Ripta Self Insured Entity | ☐ Yes ☐ No |

**Name of Each Party and Attorney Filing Appeal**

Mickeda S Barnes — Pro-Se

| Date Case First Filed in the Superior Court | Date of Judgment or Order Appealed From |
|---|---|
| August 23, 2018 | January 18, 2019 |

**Party Filing Appeal**
☑ Plaintiff(s)  ☐ Petitioner(s)  ☐ Defendant(s)
☐ Respondent(s)  ☐ Other: ____

**Trial Court Judge**
Judge Long

### TRIAL COURT ACTION APPEALED

| | | | | | |
|---|---|---|---|---|---|
| ☐ IPR | Preliminary Injunction | ☑ CJJ | Judgment/Judge | ☐ DPC | Denial Post Conviction |
| ☐ CON | Conviction | ☐ CDV | Directed Verdict | ☐ MTR | Denial Sentence Reduction |
| ☐ IPT | Permanent Injunction | ☐ CJU | Judgment/Jury | ☐ DCF | Dependency/Termination |
| ☐ CJD | Default Judgment | ☐ DAL | Alimony | ☐ DSJ | Summary Judgment |
| ☐ CDS | Dismissal/Jurisdiction | ☐ PRO | Probation Violation | ☐ ASF | Agreed Statement of Facts |
| ☐ CDM | Dismissal Merits | ☐ PTM | Pretrial Motion | ☐ DRP | Original Divorce Petition |
| ☐ CTD | New Trial Motion Denied | ☐ FCJ | Juvenile | ☐ CUS | Custody |
| ☐ CTG | New Trial Motion Granted | ☐ PCR | Grant Post Conviction | | |

**JUDGMENT FOR:**                **SENTENCES:**
☐ Plaintiff(s)                   ☐ Confinement        ☐ Suspended
☐ Defendant(s)                   ☐ Special Program    ☐ Probation
☐ Other                          ☐ Fine/Restitution   ☐ Deferred

**BAIL/RELEASE STATUS**
☐ Personal Recognizance          ☐ Surety Bond        ☐ Held In Lieu Of Bail
☐ Held Without Bail              ☐ Cash Bond          ☐ Other

**TRANSCRIPT STATUS**

☐ Transcript Will Not Be Ordered    Filing Fee Required: ☐ Yes ☐ No    Trial Court Receipt Number ____

☑ Transcript Will Be Ordered    Appeal Filing Fee for Each Appellant or Petitioner: $150.00

Estimated Cost $____    Court Reporter: ____

| /s/ _____ Pro-Se _____ | Rhode Island Bar Number: |
|---|---|
| Attorney for the ☑ Plaintiff/Petitioner ☐ Defendant/Respondent or ☐ Plaintiff/Petitioner ☐ Defendant/Respondent | Date: JAN 23, 2019 |
| Telephone Number: 401-419-2250 | |

Superior-30 (revised November 2016)

Handwritten left margin: NOTICE sent to RI Supreme Ct. MM

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Supreme Court

State of Rhode Island
Providence, S.C.

Mickeda Barnes                                    Case No. PC 2018-6082
   Plaintiff

      V.

Ripta Self-Insured Entity
Worker's Compensation Claim
02-12-15, 11-05-14, 10-03-13, and 10-05-08

<u>**Filing the Notice of Appeal**</u>
<u>**RI Supreme Court to grant an Order of Appeal**</u>

SUPERIOR COURT
FILED
HENRY S. PITCH. JR.

12 JAN 23  PH 3: 39

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 188 of 689 PageID #: 543

### Plaintiff asks RI Supreme Court Grant an Order of Appeal

### Consolidate cases for trial under either Superior Court Rules Civil Procedure Rule 42 or District Court Rule Civil Procedure Rule 42(A).

Plaintiff under Rule 6 Certification of questions of law certified to aby it by the Supreme Court of the United States of America. A court of appeals of the United States District Court when requested by the certifying court if they are involved in any proceedings before it questions of law of the State which may be determinative of the cause then pending in the certifying Court as to which it appears to the Certifying court there is no controlling precedent in the decisions of this Court(B) orders and motions upon the motion of any part to the cause. (C) Contents of Certification order, a certification order shall set forth 1.) the question of law to be answered. 2.) a statement of all facts relevant to the question certified and showing fully the nature of the controversy in which the question arose. (D) Preparations of certification order (E) Cost of certifications (F) Briefs and Argument proceedings in this court shall be those provided in Rules governing 12A statements, briefs and arguments as the court may order (G) opinion the written opinion of this court stating the laws governing the questions certified shall be sent by the clerk under the seal of this court to the certifying Court to the parties.

Rule 7 trial court orders for protection of parties pending appeal or petitions for review the Justice of Superior, family or District Court who enters judgements, orders, decrees, or other determinations which review is being sought in case of her absence or disability may make orders for injunction, giving bond, and the appointment of receivers, and such orders as are needed for the protection of the rights of the parties until the appeal or petition for review shall be heard and determined by the Supreme Court subject to modification or annulment by order of the Supreme Court upon Plaintiff motion.

Plaintiffs Rule 8 stay or injunction pending appeal motion for stay in Supreme Court and in plaintiffs case regarding her workers compensation court final decree is governed by Rule 13 application for stay of enforcement is pending appeal for an order to suspend, modifying, restoring or granting an injunction during the pendency of an appeal. Notice is being filed an motion for such relief is being made to the Supreme Court. The action of relief in trial court shall make herself entitled. The motion shall also show the reasons for the relief requested and the facts relied upon. The facts are subject to dispute the motion shall be supported by affidavits and other sworn statements or copies thereof. Stay may be conditioned upon giving of bond as defendants are Self-Insured entities of State of RI and now part of Ripta/Ridot as they transitioned together. Relief is available in the Supreme Court under this rule and may be conditioned upon the filing of a bond or other appropriate security. Ripta the defendants are in a 4.5 million dollar deficit and are in money trouble and cannot keep up with being Self-Insured and underinsured and now are going months and even years without paying injured workers weekly benefits, medications, medical bills, and surgeries, Illegally terminating Union Employees and making them retire early. And going as far as denials for MOA on the job injuries reclassifications and reasonable accomodations to return to work under Title 6 of the Civil Rights Acts as a political subdivision who accepts FTA money and their sub receipt Ridot who

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

2-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 189 of 689 PageID
#: 544

also accepts FTA money agrees to employee protections under 13(c) fORMALLY KNOWN AS
5333(b) Federal protections along with Ripta RIGL Statute Chapters 39-18-17 labor relations
with employees of acquired transit facilities which already took place in or around 2015.

 Defendants never sought or were granted a stay of injunction pending appeal
Defendants failure to comply with the terms of the FTA and the self insurance certifications that
both Ripta and Ridot signed to as self insurers to the Workers Compensation Act violated
plaintiffs rights to due process and entitlement to weekly benefits her job, pensions,surgeries,
insurance policies, medical and loss of use money paid and owed to plaintiff and children. In
plaintiffs 2008 traumatic brain injury on the job work injury her assailants in a criminal case
should have a conviction made in the first instance in their trial in court but plaintiffs rights were
violated and plaintiff was never given a chance to face her assailants so Ripta, her employer
could deny her workers compensation claim and injury to keep cost related to being Self-Insured
down. Plaintiff under Rule 9 shall motion be made and determined plaintiff can show paperwork,
affidavits, police reports, medical records as the parties both had reasonable notice and plaintiff
had given notice to the state about this criminal case.

 Plaintiff ask Supreme court under rule 10 on appeal to accept composition of the Record
on appeal all records, original papers and exhibits filed in the trial court and other courts related
to issues under review for the protection of the parties sound recording thereof if any and a
certified copy of the docket entries prepared by the clerk of the trial court shall constitute the
record on appeal in all cases plaintiff has or had filed in Superior Court, District Court and
Supreme Court. Filing of transcripts upon completion of a transcript who prepares the transcripts
forth to the office designated by the rules of the trial court for ordering transcripts.

 Rule 13 extraordinary writs for plaintiffs 2013 on the job injury where plaintiff was injured
by a fare box panel and had to sue the third party and then later found out that the third party
had a contract with Ripta that their negligence was the responsibility of Ripta and that they had
worked under Ripta and Self-Insured policy even though they were a company from out of state
of RI. Rule 12(A) to comply with requirements of these rules for the preparation and
transmission of the record on appeal if the writ in question calls for review of the record of A
Court or other allegations of fact contained in the petition which are not contained in the record
under review shall not be considered to be established. Plaintiff claim to action is that it was
established under 12 (A) and was not address and relief was not sought and the record under
review was never considered to be established and was not adjudicated on the merits and was
dismissed with prejudice which violated plaintiffs rights under the 14 amendments of the
Constitution. Plaintiff Rule 14 show cause of action to justify her detention of the applicant
employees request for production of documents filed on January 7, 2019 went unanswered by
defendants. Even though plaintiff argued title 6 and defendants was arguing title 7 plaintiff's
original complaint on or about August 20, 2018 argued title 6 and FTA compliances and
certifications that the defendants were not in compliance with. Plaintiff asserts her contractual
obligations that were signed between her union and employer under Rule 32 involving
constitutionality of federal or state statutes a party who draws in question the constitutionality of
any act of congress in any proceedings in Supreme Court which the United States or agency
thereof or any officer or employee thereof or employee thereof of such officer or employee is not
a party upon the filing of the record or as soon thereafter as the question is raised in the

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-cv-00215-JJM-PAS    Document 4    Filed 06/03/22    Page 190 of 689 PageID #: 545

existence of said question. The clerk of the Court shall thereupon certify such facts to the United States Attorney for the District of Rhode Island. As soon thereafter as the question is raised in the Supreme Court shall give immediate notice in writing to the Supreme Court of the existence of said question. The Clerk of the Court shall thereupon certify such fact to the Attorney General of Rhode Island. (As amended by the Court on November 25, 2003).

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:20-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 191 of 689 PageID #: 546

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of January, 2019 the foregoing order was e-filed and served through the electronic filing system and by regular mail on the following party. The document electronically filed and served.

Filed Motion of Appeal Supreme Court 23 day of January 2019

Mickeda S Barnes
Plaintiff

Mickeda S Barnes
Jan 23, 2019

Jillian S Folger-Hartwell
Jillian S Folger-Hartwell (#6970)
Littler Mendelson, PC
One Financial Plaza, Suite 2205
Providence, RI 02903
401-824-2500
401-633-6853 (Fax)

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

# EXHIBIT 4

Case Number: PC-2018-6082
Filed in Providence/Bristol County Superior Court
Submitted: 3/9/2020 3:57 PM
Envelope: 2888232
Reviewer: Alexa H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 193 of 689 PageID #: 548

STATE OF RHODE ISLAND                          SUPERIOR COURT
PROVIDENCE, S.C.

MICKEDA BARNES,                        :
SIDNEY ROBERTSON                       :
DOREEN ROBERTSON                       :
                                       :
    Plaintiffs,                        :
                                       :
    v.                                 :       Case No. PC 2018-6082
                                       :
RIPTA SELF-INSURED ENTITY,             :
WORKER'S COMPENSATION CLAIM            :
02-12-15, WORKER'S COMPENSATION        :
CLAIM 10-03-13, 11-05-14, WORKER'S     :
COMPENSATION CLAIM 10-05-08            :
                                       :
    Defendant.                         :

<div align="center">

**ORDER**

</div>

    This matter came for hearing before the Honorable Melissa A. Long on January 9, 2019,

on the Defendant the Rhode Island Public Transit Authority's ("Defendant") Motion to Dismiss

("Motion").  After hearing thereon, it is hereby:

<div align="center">

**ORDERED, ADJUDGED, AND DECREED**

</div>

1.    Defendant's Motion, is GRANTED, with respect to any and all claims based on

    Plaintiff Mickeda Barnes' ("Plaintiff") allegations of workers' compensation

    injuries, including without limitation any claims arising from "traumatic brain

    injury" or "right knee" injury, with prejudice.

2.    Defendant's Motion is GRANTED, with respect to any and all other claims

    Plaintiff brings, without prejudice, as set forth in Paragraph 3 of this Order.

3.    Plaintiff may file, within 14 days of the date of the above hearing, no later than

<div align="center">1</div>

Case Number: PC-2020-06685
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 3:27 AM
Envelope: 2883232
Reviewer: Alexis H

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 194 of 689 PageID
#: 549

January 23, 2019, a revised document containing claims Plaintiff orally noted during the hearing of this matter; specifically, "breach of contract," "Title 6" claims, and/or "reclassification" claims.

4.     If Plaintiff fails to file a revised document, as described above, by January 23, 2019, all her claims are dismissed, with prejudice.

**ENTERED** as an Order of this Court this _____ day of January 2019.

**ENTER:**                                          **PER ORDER:**


/s/ Melissa A. Long
Associate Justice
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Hon. Melissa A. Long, Associate Justice

/s/ Lori Symonds-Bidon
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Deputy Clerk I

January 18, 2019

Presented by,

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY,

By its attorneys,

/s/Jillian S. Folger-Hartwell
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Jillian S. Folger-Hartwell (#6970)
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI  02903
401.824.2500
401.633.6853 (fax)
jfolgerhartwell@littler.com

January 9, 2019

2

Case Number: PC-2018-06685
Filed in Providence/Bristol County Superior Court
Submitted: 3/9/2020 3:57 AM
Envelope: 2888232
Reviewer: Alexis GH

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 195 of 689 PageID
#: 550

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of January, 2019, the foregoing Order was e-filed and

served through the electronic filing system (if applicable to Plaintiff) and by regular mail on the

following party.  The document electronically filed and served is available for viewing and/or

downloading from the Rhode Island Judiciary's Electronic Filing System.

Sidney Robertson
Doreen Robertson
Mickeda Barnes

c/o Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916

/s/ Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell

FIRMWIDE:161742864.1 088768.1010

3

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 196 of 689 PageID #: 551

# EXHIBIT 3

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

# SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>PC-2018-6082 |
| **Plaintiff**<br>Mickeda Barnes<br><br>v.<br><br>**Defendant**<br>Ripta | **Attorney for the Plaintiff or the Plaintiff**<br>Mickeda Barnes |
| | **Address of the Plaintiff's Attorney or the Plaintiff** |
| Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence RI  02903<br>(401) 222-3250 | **Address of the Defendant**<br>705 ELMWOOD AVENUE<br>PROVIDENCE RI  02907 |

### TO THE DEFENDANT, RIPTA                    :

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 8/23/2018. | /s/ Henry Kinch<br>Clerk |

Witness the seal/watermark of the Superior Court

Served :
8.25.18.

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

SC-CMS-1 (revised July 2014)

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 198 of 689 PageID #: 553



STATE OF RHODE ISLAND AND    PROVIDENCE PLANTATIONS

## SUPERIOR COURT

**Plaintiff**
Mickeda Barnes
   v.
**Defendant**
Ripta

**Civil Action File Number**
PC-2018-6082

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, RIPTA                , by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
   Name of person of suitable age and discretion _____
   Address of dwelling house or usual place of abode _____
   _____
   Age _____
   Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
   Name of authorized agent _____
   If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
   _____

☐ With a guardian or conservator of the Defendant.
   Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
   Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised July 2014)

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 199 of 689 PageID #: 554



STATE OF RHODE ISLAND AND    PROVIDENCE PLANTATIONS

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.

   Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.

   Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.

Name of authorized agent _____

If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

☐ I was unable to make service after the following reasonable attempts: _____

_____

| SERVICE DATE: ___/___/___ | SERVICE FEE $ _____ |
|---|---|
| Month  Day  Year | |

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

 Signature

State of _____

County of _____

   On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

      Notary Public: _____

      My commission expires: _____

      Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised July 2014)

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

SC-CMS-1 (revised July 2014)

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:20-CV-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 201 of 689 PageID #: 556

Mickeda Barnes                                    August 20, 2018
Sidney Robertson
Doreen Robertson

        VS

Ripta        Worker's Compensation Claim 02-12-15
Self-        Worker's Compensation Claim 10-03-13
Insured                                    11-05-14
Entity       Worker's Compensation Claim 10-05-08

I Mickeda S Barnes pots Ripta a Subdivision
of the State of Rhode Island on Notice of a
Lien of any and every property that Ripta
owns to pay me for my out of pocket cost
that is owed to me and my family.

Its the law! Insurance Companys are required
to willingly to pay claims properly with Intrest
and promptly in "Good Faith", it is Illegal to
"willingly" Not pay, discount-lowball, delay, deny
payment of legitimate claims in "BAD FAITH".

Mr Scott Averdiasian, Now that you are in charge
of Ripta I wanted you to know that I've have
been denied my Reinstatement back to work
after a Covered Injury in Worker's Compensation.
I have been threaten by my Union with the
Management from Ripta telling the Union what
to Say and I was also threaten
to give up my on the Job Injury from 10-03-13
So I can keep my job on June 23, 2015

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H.

1:22-CV-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 202 of 689 PageID
#: 557

(2)

In Workers Compensation Court hearing in the back Room away from the Judge, and when I said no that was another Reason why I was Never Reinstated back to work, I just Recently did my Research into why after I Recieved a letter from my third party lawyer Anthony Leone that Ripta had a Contract with Genefare who the Worker's Compensation Attorney told the Judge that Genefare third party was Responsible for the injury to the Right knee RSD is a Joint Contender on the Case because Ripta allowed Genefare who is a out of State Contractor work under Ripta's Self Insured policy. I Recieved this information in May 2018 I signed my Release with Ripta on April 25, 2018 with-out this knowledge or notice and Attorney Nick Mancini Completly being a dishonest Attorney In which the RI lawyers Bar Association Sets forth Rules and Regulations for Attorneys in the State of RI.

I have been out of work Since the Slip and Fall accident on 2-12-2015 I have been terminated from Ripta Since 02-15-2016 and I have been without a Steady income Since taken off of Worker's Compensation on November 10, 2016 and Having another left hand Carpal tunnel Surgery three months later and then almost a Complete Shoulder Surgery a year later on 2-13-18

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria B.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 203 of 689 PageID
#: 558

In which I am still treating for therapy
and have no weekly compensation
benefits and I am paying for my
medicines and medical co pays and
even some doctor appointments out of
pocket which does not accept my
medicare coverage. I also have three
other unsettled worker's compensation
claims that Ripta and Beacon mutual
are not paying the medicals and
medicines for even though they are
covered claims and I have not
settled those claims because I have
no job. I have put into debt and I
have no way to pay these medicals
and medicines it leaves me no choice
but to put a lien on Ripta's property
and any interest assets you have until
we can come to agreement on a settle-
ment also in a decision which was
essentially dicta but constitutes the
current law in Rhode Island the Supreme
Court dealt a body blow to big insurance
across the United States with their insured
is involved in a accident or claim in
Rhode Island the decision was a benefit
to a seriously injured in a car, truck,
motor vehicle, motorcycle and slip and
fall victims across the ocean state.
This gave leverage to force the insurance
companies to settle accidents and
negligences causes of actions fairly

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721771
Reviewer: Victoria H

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 204 of 689 PageID
#: 559

and Expeditiously. Asennely vs Allstate
Insurance Company.

This decision was groundbreaking and
Controversial for 4 Reasons

1. Insurance Companies are Exposed to Extra Contractual damages in Rhode Island.

2. Bad faith on the part of the Indemnity and Surety Company. If Company acted in Bad Faith in denying the policy limits demand is irrelevant.

3. A Company acted in good faith could be liable if a judge or jury disagrees with their assessment of the value of the accident.

4. The RI Supreme Court Sitting in the Capital City of Providence instituted a "Rule" which was essentially Statutory law. The Supreme Court acts as a legislature body by passing the Rhode Island legislature.

It is Ripta's Duty because Ripta Certified to the State of RI to be SELF Insured to the policy and provisions and the Workers Comp Act Among other Employees protections. I am entitled to Under the Workers Comp Benefits Reinstatement is Covered under the Act. Because Ripta illegally terminated me I CAN and will pull you into Superior Court to Enforce the provisions of

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 205 of 689 PageID
#: 560

(5)

Bonds and/or Securities of your RI Self Insured Contract.
My position is that in December 2017
I signed for a global settlement
in which threw the global settlement
it would have closed everything out
but Ripta and the board did not want
to pay the amount over $25,000 for the
Medicare set a side. I gave attorney
Nick Mancini the advanced notice that
my Medicare set a side would be around
$89,000 and Nick Mancini would not
listen to me when I went into Medi-
ation I did my research so I would
not be disappointed. If your corrupt
attorneys you have working for you
porposely de-valued my claim re named
my Injuries to make them cheaper thats
on your back now to deal with it.

Medicare set a side which was done by
Carr Allison has already been appealed
for the first set a side amount of
$127,000 down to $89,900 and thats
not including what Medicare has payd
on my behalf for the last two years
since I've been taken off of benefits
and the doctor visits, surgies and med-
cines they have also paid for that
their coverage pays for, I had to
pay for medicines like my compound
crétim for my RSD that Medicare
Does not pay for every month for
two years and Ripta should be

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-CV-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 206 of 689 PageID #: 561

6

Paying for Under Workers Compensation Court Section 27-34-111 Effect of Paid Claims Shall be deemed to have Assigned any Rights under His Policy. According to Medicare Set aside Rules of 2012 Self Insured Companies have to Pay the Future medicals up front Once the Injured Worker is on Disability Payments and is not Returned to Work So by Ripta and their Attorneys and Risk Management Not ReInstating me to work and threaten me to give up my Claims Cost Ripta even more money do to their fraud and deciet. The Aiding and Abbating between the Union 618 and Ripta officials were illegal and against insurance Policies and FTA Compliances and the State and Federal laws.

Because Ripta already Signed for the Medicare Set a Side I do not have the money when Medicare asks for the Repayment of the work related Injuries Bills and the future medicals When they ask for payment and they can put a lien on my house. This Medicare Set a Side is a outstanding debt that Ripta owes because Ripta Never Settled the workers Comp Claim Nor ReInstated me back to work I am asking for $ 2.5 million dollars to cover the cost of

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H
CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 207 of 689 PageID #: 562

⑦

Medicare Set a side, outstanding bills
medicines, My Coundpaund cream
that Ripta or medicare Pays for,
2.5 Million will Cover all Permanet
injuries the RSD of the Right knee,
the tramaetic Brain Injury, Post
tramactic Stress Disorder, Nervogical
disorders and low back injury.
This also includes the Future
medical help I am going to need as
a elder to hire help to get me arand
because of the brain Injury.

I am giving you Notice of the written
Demand for Asserting statutory Enforce-
ment Scheme for my private Cause of
action.

Ripta is a Recipient of Federal Assistance
of Federal Grant Money and is iN NON-
Compriance of their Contractally obligated
Contract with the FTA.

The Discrimination Agreement has no legal
authority or the Jurisdiction to the
medicare Set a Side being Indemified by
the Injured worker who is denied her Job
even thank the Global Settlement was
withdrawn to Proceed with the Discrim-
iNation case what should have happen
that it Stayed global and More money
Should have been offered but Now

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 208 of 689 PageID
#: 563

(8)

That this New Scheme has been detected and I might not be Covered for the Injuries I Suffered at Ripta from my Employment Dates of November 26, 2002 to February 15, 2016 I am asking for a full and Complete Settlement of all Claims and Injuries that are Work Related to be paid up Front and this is a pre-notification of a Property Lien on Ripta's property and assets in the Amount of 2.5 million dollars is paid as a Contractual debt of being a Self Insured Company where the Claim for Reimbursement for outstanding debt and this is Subject of a Collection Action.

Ripta Certified to the Workers Compensation Act Which Includes Sections 28-29-6.1 Secondary provision of Workers Compensation Insurance Injured by a third party and Ripta is Obligated to pay Worker Compensation benefits to the Employee of the Uninsured Sub Contractor (Genefare).
Ripta Violated Sections 28-42-62.1 Employment Security Fraud and abuse made Knowingly false or fraudulent material Statements or material Representation for the purpose of obtaining or denying any benefits.

Ripta and Attorneys willfully misrepresented

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:21-CV-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 209 of 689 PageID
#: 564

⑨

and failed to disclosed any Material
facts In order to avoid or Reduce any
Medical Contribution or other payments
of an Employing unit under Chapters
42-44 of this title.

Surety bond for RISI 56 As of
March 1 2012 Each Cancelled Surety
bond Remains Responsible to pay the unpaid
Worker's Compensation liabilities of the
Certified employer for Claims with dates
of injury that occured during the period
of Coverage of the Surety bond up
to the Cancellation date.
Cancellation eliminate leability occurrs
after the date of Cancellation but the
bond remains in full force and effect
to Cover leability accrued from and including
the date of issuance of the bond up to
the date of Cancellation.

Any bond may be released of its liability
only if it is Replaced by another Acceptable
Security in the full amount that may
be required by the director at that
time and the director excutes a signed
written released document for the
Surety bond Which will accompany the
Original bond that will be Returned
to the Surety Company.

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 210 of 689 PageID #: 565

⑩

I Mickeda S Barnes, Sidney Robertson Daughter Dependant, Doreen Robertson Daughter Dependant minors here by gives notice of a lien for Reimbursement, Payment in full of Bonds and/or Security Self-Insured policies for Bills, Medicals, Medications, therapy and Services Needed. This is a outstanding debt and needs to be paid. you have been Served Notice of Claim for Enforcement action on your Self Insurance policy and on your property and personal assets for a lien that a Superior Court action will follow after this notice to Enforce this action.

This lien will be a Court order placed on Ripta's Ripta to Satisfy debt owed to me and my dependants minors under Self Insured policy/ policies. And any other policies Known or Unknown that Ripta or attorneys didn't tell me I was covered under for my Injuries.

Section 42-35-7 Declaratory Judgment or Applicability of Rules. Where the Medicare set a side is owed and Ripta applied to and left because they did not want to pay it is obligated to pay it Back Section 42-35-8 Declaratory order for the abuse of discretion the agency failure to act within the applicable time under Subsection 42-35-15. Will ask for a Review 42-35-16. Recovery 27-35-10.5 a Receiver appointed under the order.

IN addition to Apply private Rights of action

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721121
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 211 of 689 PageID
#: 566

Certain Federal Rights Can be addressed for
Redressed through the action under 42 USC
§ 1983 for violations of Federal Statutes
under Color of State law.

This is the Position of the Plaintiff's Wish to ask
the Court to Enforce New rights enforcable
under an Implied Private right of action"
That is because Specialized agencies are
Subject to Outside Political Pressures and
may be in the best position to Pursue
Enforcement efforts. For Example in Alden vs
Maine. The Court dismissed an action under the
Fair labor Standards act of 1938 on the grounds
that States were Immune from Suits in their own
State Courts. The Court allowed the EEOC to Pursue
Victim to Judicial Relief in an Enforcement
action under title I of the ADA and despite the
Agreement between the Employer and Employee
had to arbitrate any dispute and/or the Claim.
though the laws generally Refers arbitration
over Litigation Especially when the Employee
had a Union Contract.

Rights is Required by law As a Self Insured Company
As of 2012 when Medicare Set forth New laws
Regarding Self Insured Employers who Initiated
and Admitted to the Work Related Injuries
When You Used Carr Allison to Put in the Paper
Work for the Proposed Settlement and then
Put in the Appeal The purpose of Medicare
Set a Side is to Protects Medicare's

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 212 of 689 PageID
#: 567

⑫

future intrests by preventing the Responsible
Primary payer from Shifting the burden
of future medical care to the federal
goverment. Under the MSP medicares
intrest must be adequately protected
in workers compensation Settlements
only Ripta Attorneys tried to put My
medicare set aside on my discrimination
agreement I signed on April 25, 2015
Knowing that I Signed to Nothing that
has to do with workers compensation can
contractually be agreed on but your lawyers
still tried to make me. I daimed to my
injuries that I received on the Job which
is fraud and is not legal.

I will ask and will have the proof ready to show
the court to satisfy to Receive my lien on
your property until the medicare set aside
medical expenses unpad medical prouideres
that provided me Necessary and medical
treatment to cure and illeuiate pain and
injury. and you either denied to pay them
or just did Not pay the bills. You have me
paying for my own Knee cream every month
which Ripta Nor medicare is paying for and
I am owed that money for two years I have
the proof and written complaints against
Ripta, claims stratiqies and becon mutual
for those denials, delay, and non payments

You are Acting in bad faith per RIGen

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 213 of 689 PageID #: 568

(13)

laws 9-1-33 Insures Bad Faith Refusal to pay Claims made under any Insurance policy. The provisions of this Section Shall apply to all actions against Insurers which have been Commenced and are pending in any state or Federal Court on or after May 20, 1981

This is my final Notice

I request a full payment of Claims and Debts owe to plaintiffs of $2,500,000.⁰⁰ two point Five Million dollars.⁰⁰ Cents!

Mukeda S. Barnes
34 Dunbar Ave
Rumford RI 02916
401-419-2250

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-cv-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 214 of 689 PageID
#: 569

# EXHIBIT 2

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:17-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 215 of 689 PageID #: 570

## SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS

This Settlement Agreement and General Release of Claims ("Agreement") is entered into by and between the Rhode Island Public Transit Authority (the "Authority"), on behalf of itself, its present or former officers, directors, subsidiaries, parents, affiliates, partners, employees agents, insurers, attorneys, accountants, executors, administrators, successors and assigns and all affiliated entities and Mickeda Barnes on behalf of herself, her representatives, agents, estates, heirs, successors and assigns ("Employee") (collectively referred to as the "Parties") for good and valuable consideration.

Employee and the Authority desire to settle fully and finally all differences between them including, without implication or limitation, the claims and allegations set forth in the complaints filed in the Rhode Island Superior Court, and removed, or subject to removal, to the United States District Court for the District of Rhode Island, captioned <u>Mickeda Barnes v. Rhode Island Public Transit Authority</u>, 1:17-cv-00505-JJM-PAS and <u>Mickeda Barnes v. Rhode Island Public Transit Authority, et al</u>, PC-2018-2287 (the "Lawsuits").

In consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to the following terms and conditions:

1.    **Payment.**

(a)    In consideration of the release and all of the promises and representations made by Employee in this Agreement, the Authority will pay to Employee the total gross amount of ONE HUNDRED AND FIFTY THOUSAND DOLLARS AND ZERO CENTS ($150,000.00) which amount shall be paid as follows: (1) a check payable to "Mickeda Barnes" in the amount of Fifty-Five Thousand Dollars and Zero Cents ($55,000.00), less applicable withholdings in

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 216 of 689 PageID
#: 571

settlement of Employee's claims for economic loss issued on a W-2; (2) a check payable to "Mickeda Barnes" in the amount of Fifty-Five Thousand Dollars and Zero Cents ($55,000.00), without withholdings, in settlement of Employee's claims for non-economic damages, issued on a Form 1099; and (3) one check payable to "Sonja Deyoe as attorney for Mickeda Barnes" in the amount of Forty Thousand Dollars and Zero Cents ($40,000.00) without withholdings, in settlement of Employee's claims for attorneys' fees, issued on a Form 1099.

(b)     The Authority will deliver all payments to Employee's attorney, Sonja Deyoe, Esq., 395 Smith Street, Providence, RI 02908, by overnight express mail or other secure means, within fourteen (14) calendar days from the expiration of the seven (7) day revocation period set forth in Paragraph 3(b), and only if the Authority's counsel has received two (2) originals of this Agreement executed by Employee, fully executed Forms W-4 and W-9 from Employee, and a Form W-9 from Employee's attorney.

(c)     Employee acknowledges and agrees that the above-referenced payments represent valuable consideration that the Authority is not otherwise obligated to provide her.

(d)     Employee acknowledges and agrees that the Authority makes no representation of any kind as to the income or other tax consequences of the payment and further acknowledges and agrees that she is solely responsible for all of her tax obligations, if any, including but not limited to all reporting and payment obligations, which may arise as a consequence of this settlement.  Employee hereby agrees to indemnify and hold the Authority harmless from and against any and all loss, cost, expense (including attorneys' fees), interest, payments or penalties incurred by the Authority on account of Employee's failure to pay tax properly payable by her. Employee understands and agrees that the Authority has no duty to defend any claim or assertion

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 217 of 689 PageID #: 572

in connection with Employee's tax treatment of the proceeds of this payment, and Employee agrees to assume full responsibility for defending against any such claim or assertion.

2.    Release of Claims.

(a)    In exchange for and in consideration of the payment received pursuant to this Agreement, Employee agrees to release the Authority, its present and former direct and indirect parent entities, direct and indirect subsidiaries, partners, insurers, successors and assigns, and their present and former employees, officers, directors, shareholders, agents, attorneys and representatives (the "Releasees") from each and every claim or demand of every kind arising up to the date Employee signs this Agreement, including but not limited to those claims made by Employee in the Lawsuits. This includes a release of any rights or claims for any and all types of relief, including but not limited to back pay, front pay, compensatory and punitive damages, attorneys' fees and costs, and equitable orders, which Employee may have in any tort or contract action, any equitable action, any declaratory judgment action, or any action under Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment based on race, religion, color, national origin or sex; the Rhode Island Fair Employment Practices Act which, in addition to the classes protected in the law referenced above, additionally prohibits discrimination based on disability, country of ancestral origin, sexual orientation and gender identity and expression; the Americans with Disabilities Act of 1990, which prohibits discrimination against disabled persons; the Age Discrimination in Employment Act of 1967, ("ADEA"); the Older Worker Benefit Protection Act of 1990 ("OWBPA"); the National Labor Relations Act ("NLRA"); the Family Medical Leave Act; the Rhode Island Parental and Family Medical Leave Act; the Rhode Island Civil Rights Act; the Civil Rights of Individuals with Disabilities Act; the Rhode Island Personnel Files Act, the Employee Retirement Income Security Act, the Labor Management

*MB*

Relations Act; any amendments to the foregoing, and/or any other federal, state or local laws or regulations, whether or not included in the above non-exhaustive list. Employee also releases the Releasees from any claim for defamation, libel, slander, constructive or wrongful discharge, any claim that the Releasees dealt with her unfairly, breached any agreement or contract, including any breach of any collective bargaining agreement or any suit brought under Section 301 of the Labor Management Relations Act and/or any other claims whether arising under statutory or common law. No claim has been made by Barnes that she suffered sexual harassment or sexual abuse nor payment made to Barnes to resolve claims of sexual harassment or sexual abuse in the instant litigation such as those are defined by Internal Revenue Code Section 162 (q).

(b)     Employee agrees to indemnify and hold the Releasees harmless from and against any and all damages for back pay, lost wages, front pay, the value of lost benefits, emotional distress, or pain and suffering incurred by the Releasees as a result of any claims against Releasees by way of action for contribution, joint and/or several liability, indemnification or that are in any way derivative of claims Employee has brought, or may bring, against any third parties, including but not limited to claims against labor unions, union representatives, or any claims set forth in the Lawsuits. Employee agrees to release and discharge the Releasees not only from any and all claims which Employee could make on her own behalf, but she also specifically waives any right to become, and promises not to become, a member of any class in any proceeding or case in which a claim or claims against the Releasees may arise, in whole or in part, from any event which occurred as of the date of this Agreement. The Parties agree that if Employee, by no action of her own, becomes a mandatory member of any class from which Employee cannot, by operation of law or order of court, opt out, she will not be required to pay for any legal fees or costs incurred by the Releasees as a result. Although Employee is releasing

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 219 of 689 PageID
#: 574

all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of her waiver of age claims under the ADEA and OWBPA.

(c)     This release covers claims that Employee knows about, and those that she may not know about, up through the date of this Agreement.

(d)     Despite any language herein to the contrary, Employee does not release claims that may arise after Employees signs this Agreement or that by law cannot be released by private agreement. For example, this Agreement does not release claims for unemployment insurance or workers' compensation benefits.

(e)     After the parties had reached agreement in principal, Employee filed the above-reference suit in Rhode Island Superior Court, Case No. PC-2018-2287. As a result, the Parties hereby agree that, except to enforce the provisions of this Agreement, should Employee bring any claim, action, or suit on any matter covered by the releases set forth in this Paragraph 2, against the Releasees, this Agreement may be asserted as a complete defense, and if the Releasees, collectively or individually, prevail, Employee shall be responsible for liquidated damages in the amount of $10,000 per violation or paying the attorneys' fees and costs that the prevailing Releasee(s) incurs in opposing such claim, whichever is less, in addition to any other relief to which the Releasee(s) may be entitled. Although Employee is releasing all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of her release of age claims under the ADEA and OWBPA.

3.     **Age Discrimination in Employment Act ("ADEA").**

(a)     <u>Twenty-One (21) Day Consideration Period.</u> Employee shall have twenty-one (21) days to consider and accept the terms of this Agreement by fully executing it below, and returning it to counsel for the Authority, Jillian Folger-Hartwell, One Financial Plaza, Ste. 2205,

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 220 of 689 PageID
#: 575

Providence, RI 02903.  Employee hereby acknowledges and agrees that she has been and is by this Agreement advised in writing, during this twenty-one (21) day period, to consult with an attorney of her choosing regarding the terms and provisions of this Agreement.  Employee may sign the Agreement of her own volition prior to the conclusion of the twenty-one (21) day period.  Any changes to this Agreement, whether material or immaterial, do not restart the running of this twenty-one (21) calendar day review period.

(b)    Revocation Period.  Employee understands that she has a period of seven (7) calendar days after the date that she signs this Agreement ("Revocation Period") to revoke her acceptance of the terms of this Agreement by delivering a written notification to counsel for the Authority, Jillian Folger-Hartwell, One Financial Plaza, Ste. 2205, Providence, RI 02903.  If Employee revokes this Agreement, it shall not be effective or enforceable and the Authority will not tender the payments set forth in Paragraph 1 of this Agreement.  If Employee does not revoke this Agreement prior to the expiration of this seven (7) day period, this Agreement shall take effect at that time as a legally binding agreement between the Parties on the basis set forth herein.

4.    **Dismissal of Lawsuits**.  Employee agrees to sign and return with the signed copy of this Agreement the stipulations attached as Exhibit A and Exhibit B.  The Company will file the signed stipulations with the United States District Court for the District of Rhode Island and the Rhode Island Superior Court, respectively.  Employee agrees to take any and all measures reasonably required to comply with or effectuate the dismissal, with prejudice, of the Lawsuits.

5.    **No Admission of Liability.**  This Agreement shall not in any way be construed as an admission by the Authority that it acted wrongfully or failed to act lawfully with respect to Employee, or any other person, or that Employee has any rights whatsoever against the

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

2-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 221 of 689 PageID
#: 576

Authority.  The Authority specifically disclaims any liability for any wrongful acts or omissions against Employee or any other person, on the part of itself, its employees, officers, directors and agents, past and present.  Neither this Agreement nor anything in it shall be admissible in any proceeding as evidence of any unlawful or wrongful conduct by the Authority.

6.      **No Assignment**.  The Parties represent and warrant that no person other than the Parties had or have any interest in the matters referred to in this Agreement, that the Parties have the sole right and exclusive authority to execute this Agreement, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this Agreement.

7.      **No Additional Payments.**

(a)      Employee agrees and avers that she has been paid and/or has received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled, that she has suffered no known workplace injuries prior to the date of her execution of this Agreement other than those that she has already revealed to the Authority, and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to her, except as provided in Paragraph 1 or as she may obtain in the litigation of her existing workers' compensation claims.

(b)      In entering into this Agreement, the Parties have fully considered Medicare's interests, pursuant to the Medicare Secondary Payer rules, and in doing so, Employee has declared that her claim does not involve any illness, injury, incident, or accident in which medical expenses were incurred or are expected to be incurred in which Medicare has or may have an interest.  Further, Employee affirms no conditional payments have been made to her by Medicare.  If Medicare (or an agency representing Medicare's interests) later determines that it

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 222 of 689 PageID #: 577

does have an interest in the payments made pursuant to the Agreement, Employee will indemnify the Releasees for any payments and/or penalties they submit to Medicare (or the agency collecting on behalf of Medicare) as a result of the payments under this Agreement.

8.  **Confidentiality.**

(a)    Employee agrees to maintain the confidentiality of this Agreement and will not disclose in any fashion this Agreement, the amount of this settlement, and/or the substance or content of discussions involved in reaching this Agreement, to any person other than the Employee's attorneys, accountants, spouse, and tax advisors as required by appropriate taxing authorities, or as required by law.  If inquiries are made of Employee regarding this Agreement, or the substance of this Agreement, by any other person, Employee will state that the case is resolved and shall not further characterize this settlement.

(b)    Employee understands that the confidentiality restrictions of this Paragraph 8 extend to social media, including, but not limited to, blogs, virtual worlds, social or professional networking websites, and/or video sharing websites ("Social Media").

9.  **Non-disparagement.**  Employee agrees to make no negative, derogatory or disparaging comments, oral or written, publicly or in private, via Social Media or otherwise, about the Releasees or their products, services, business practices and philosophies, including any comments that reasonably could be considered (a) damaging or injurious to the Releasees' goodwill; (b) harmful to the Releasees' business interests; or (c) to impact negatively on the Releasees' business reputation or reputation in the community.

10.  **No Future Employment.**  Employee agrees not to reapply for employment with the Authority, any subsidiary, related, affiliated or parent entity or any entity which is now or in the future owned, controlled, acquired by the Authority.  Employee further agrees that if she reapplies or applies for employment with the Authority, or any entity described above, her

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 223 of 689 PageID #: 578

application may be denied on the basis of this Agreement. Employee agrees to waive any right to reinstatement to which she may be entitled under R.I. Gen. Laws §28-33-47, and if reinstated thereunder, she agrees to immediately and voluntarily resign from employment. This provision shall not be construed so widely as to bar the Employee from applying for work or working for the State of Rhode Island or the Rhode Island Department of Transportation.

11.   **Amendment.**  This Agreement may not be modified, altered or changed except upon express written consent of both Parties.

12.   **Governing Law.**  This Agreement will be governed by and performed in accordance with the laws of the State of Rhode Island without regard to its conflict of laws provision.

13.   **Suits to Enforce.**  In any lawsuit brought to enforce the terms of this Agreement, the prevailing party shall also be entitled to recover from the other party court costs and reasonable attorneys' fees. Although Employee is releasing all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of this Agreement under the ADEA and OWBPA.

14.   **Severability.**  Should any provision of this Agreement be declared or determined by any court or other tribunal of appropriate jurisdiction to be invalid or unenforceable, any such invalid or unenforceable provision shall be deemed stricken and severed from this Agreement and any and all of the other terms of the Agreement shall remain in full force and effect to the fullest extent permitted by law.

15.   **Entire Agreement.**  This Agreement is the sole agreement between Employee and the Authority. Any other prior agreements between the Parties are hereby terminated and shall have no further force or effect. This Agreement may be amended in writing, only by a

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 224 of 689 PageID
#: 579

document executed by both Parties. The Authority has made no promises to Employee other than those set forth in this Agreement.

16.   <u>Captions.</u> The paragraph captions in this Agreement are for convenience only and shall neither affect the meaning of the provisions of this Agreement, nor be used in construing this Agreement.

17.   <u>Acknowledgement of Voluntariness and Understanding.</u> Employee represents and agrees that she has been advised to and has had the opportunity to thoroughly discuss all aspects of this Agreement with an attorney, that she has carefully read and fully understands all of the provisions of this Agreement, that she is voluntarily entering into this Agreement, and that she does not and has not relied in any way on any representations or statements of the Authority or its attorneys not contained in this Agreement.

18.   <u>No Interference with Rights.</u> **Nothing in this Agreement including but not limited to the release of claims, class and collective action waiver, promise not to sue, confidentiality, cooperation, non-disparagement, withdrawal of charge, no future employment, and attorneys' fees shifting provisions, (a) limit or affects Employee's right to challenge the validity of this Agreement under the ADEA or the OWBPA, (b) prevents Employee from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the Equal Employment Opportunity Commission, National Labor Relations Board, the Securities and Exchange Commission, Rhode Island Commission for Human Rights, or any other any federal, state or local agency charged with the enforcement of any laws, including providing documents or any other information, or (c) limits Employee from exercising rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees, although by signing this**

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 225 of 689 PageID #: 580

Agreement Employee is waiving rights to individual relief (including backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint, lawsuit or other proceeding brought by Employee or on Employee's behalf by any third party, except for any right Employee may have to receive a payment from a government agency (and not the Authority) for information provided to the government agency or otherwise where prohibited.

**PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

Mickeda Barnes

Date: 4-25-18

Rhode Island Public Transit Authority

By: _____

Title: _____

Date: _____

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

CASE 1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 226 of 689 PageID #: 581

# EXHIBIT A

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICKEDA BARNES, ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | Civil Action No. 1:17-cv-00505-JJM-PAS |
| ) | |
| RHODE ISLAND PUBLIC TRANSIT ) | |
| AUTHORITY, ) | |
| ) | |
| DEFENDANT. ) | |

## STIPULATION OF DISMISSAL

Pursuant to Fed. R. Civ. P. 41(a), Plaintiff Mickeda Barnes and Defendant Rhode Island Public Transit Authority, by their respective undersigned counsel, stipulate that this action is hereby dismissed, with prejudice. Each party shall bear its own costs and attorneys' fees.

MICKEDA BARNES,

By her attorneys,


/s/ Sonja L. Deyoe
Sonja L. Deyoe (#6301)
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
(401) 864-5877
(401) 354-7464 (fax)
sld@the-straight-shooter.com

RHODE ISLAND PUBLIC TRANSIT AUTHORITY,

By its attorneys,


/s/Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell (#6970)
Littler Mendelson, P.C.
One Financial Plaza, Suite 2205
Providence, RI 02903
(401) 824-2500
(401) 272-4520 (fax)
jfolgerhartwell@littler.com

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 228 of 689 PageID #: 583

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the within Stipulation was filed and

served electronically by operation of the Court's CM/ECF System upon the following counsel of

record on this _____ day of _____, 2018:

Sonja L. Deyoe, Esq.
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
sld@the-straight-shooter.com

/s/Jillian S. Folger-Hartwell

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 229 of 689 PageID #: 584

# EXHIBIT B

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 230 of 689 PageID #: 585

STATE OF RHODE ISLAND                          SUPERIOR COURT
PROVIDENCE, SC.

MICKEDA BARNES, et al,                )
                                      )
        PLAINTIFF,                    )
                                      )
    v.                                )
                                      )        Civil Action No.  PC-2018-2287
RHODE ISLAND PUBLIC TRANSIT           )
AUTHORITY, et al,                     )
                                      )
        DEFENDANTS.                   )
                                      )
                                      )
                                      )

## STIPULATION OF DISMISSAL WITH PREJUDICE

Pursuant to Super. Ct. R. Civ. P. 41(a), Plaintiff Mickeda Barnes and Defendant Rhode Island Public Transit Authority, ("Defendant"), by their respective undersigned counsel, stipulate that this action is hereby dismissed, with prejudice.  Each party shall bear its own costs and attorneys' fees.

MICKEDA BARNES,                       RHODE ISLAND PUBLIC TRANSIT
                                      AUTHORITY,


By her attorneys,                     By its attorneys,


/s/ Sonja L. Deyoe                    /s/Jillian S. Folger-Hartwell
Sonja L. Deyoe (#6301)                Jillian S. Folger-Hartwell (#6970)
Law Offices of Sonja L. Deyoe         Littler Mendelson, P.C.
395 Smith Street                      One Financial Plaza, Suite 2205
Providence, RI 02908                  Providence, RI  02903
(401) 864-5877                        (401) 824-2500
(401) 354-7464 (fax)                  (401) 272-4520 (fax)
sld@the-straight-shooter.com          jfolgerhartwell@littler.com


Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 231 of 689 PageID #: 586

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the within Stipulation was filed and served by operation of the Court's electronic filing system, upon the following counsel on this ___ day of _____, 2018:

Sonja L. Deyoe, Esq.
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
sld@the-straight-shooter.com

/s/Jillian S. Folger-Hartwell

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 232 of 689 PageID #: 587

# EXHIBIT 1

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

## SUPERIOR COURT

### SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>PC-2018-2287 |
| **Plaintiff**<br>Mickeda Barnes | **Attorney for the Plaintiff or the Plaintiff**<br>Mickeda Barnes |
| v. | **Address of the Plaintiff's Attorney or the Plaintiff** |
| **Defendant**<br>Ripta | |
| Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence RI  02903<br>(401) 222-3250 | **Address of the Defendant**<br>705 ELMWOOD AVENUE<br>PROVIDENCE RI  02907 |

**TO THE DEFENDANT, RIPTA**                              :

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 4/4/2018. | /s/ Henry Kinch<br>Clerk |

A TRUE COPY ATTEST

DEPUTY SHERIFF

Witness the seal/watermark of the Superior Court

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

SC-CMS-1 (revised July 2014)

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPERIOR COURT

| Plaintiff<br>Mickeda Barnes<br>v.<br>**Defendant**<br>Ripta | Civil Action File Number<br>PC-2018-2287 |
| --- | --- |

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, RIPTA                    , by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____
Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ With a guardian or conservator of the Defendant.
Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☑ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation _____

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

Page 1 of 2

SC-CMS-1 (revised July 2014)

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 235 of 689 PageID
#: 590



STATE OF RHODE ISLAND AND    PROVIDENCE PLANTATIONS

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____

If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ I was unable to make service after the following reasonable attempts: _____

_____

_____

| SERVICE DATE: 4 / 6 / 18 | SERVICE FEE $ _____ |
| Month   Day   Year | |

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

*#20*

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____
Signature

State of _____

County of _____

On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____

My commission expires: _____

Notary identification number: _____

Page 2 of 2

Office of Clerk Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

SC-CMS-1 (revised July 2014)

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H



True Copy Attest

Office of ... ..f Superior Court
Counties of ... vidence & Bristol
Provid... .. Rhode Island

SC-CMS-1 (revised July 2014)

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

STATE OF RHODE ISLAND                                  SUPERIOR COURT
PROVIDENCE, SC

PC-18-2287

MICKEDA S BARNES
KENYON ROBERTSON
BRIANA ROBERTSON
SIDNEY ROBERTSON
DOREEN BARNES ROBERTSON, et al.
                              Petitioners


Vs.


Rhode Island Public Transit Authority (RIPTA)
State Of Rhode Island and Providence Plantations
Department Of Labor and Training Worker's Compensation Self Insurance Unit
Claims Strategies (old TPA)
Beacon Mutual Insurance (present TPA)
Federal Transit Authority (Funding from Federal Government)


                    Motion to File a Civil Action
                    Motion to Enforce a Civil Action
                    Order to Show Cause an Affidavit in Support of the (OSC).


I ask the Superior Court to hear my Civil Action under Rule 23 of the Federal Rules of Civil Procedure 28 US Code: 1357. Superior Court shall have original jurisdiction of any civil action authorized by law to be commenced by any person to recover damages for injuries to her person or property an because of the deprivation of any right or privilege of a Citizen Of The United States by any act done in furtherance of any conspiracy mentioned in section 1985 of title 42; which he had knowledge were about to occur and power to prevent it.

Ripta, The State Of R.I., Claims Strategies and Beacon Mutual, the TPA's regular employed IME Doctors and conspired together to deny me treatments needed to cure, treat and necessary treatments and surgeries to alleviate my nerve pain associated with the injuries I sustained on the job at Ripta on February 12, 2015. The emotional distress it has caused me and my family for three years nearly destroyed me and my family, no treatments, denials for objection findings, no reclassification back to work no reinstatement back to work and then my job terminated on February 15, 2016 and then the ultimate taken off of worker's compensation on or about November 10, 2016. The disability discrimination I had to endure from my Employer Ripta and my Union 618 violated my Civil Rights, Bill Of Rights, 14 Amendment of the Constitution, federal and State Laws that are to protect me.

Page 237

34 US. Code 12361 Civil Rights and section 1332 28 Us code: 1608 with the jurisdiction Requirements my previous on the job injury from on or about October 5, 2008 where I suffered a traumatic brain injury, concussion and migraines headaches in which I still have Doctors' visits for at least 6 times a year since the assault on the City Bus I missed about 9 months of work and lasting effects from the assault. Pursuant to the affirmative power of Congress to enact this part under Section 5 of the Fourteenth Amendment to the Constitution as well as under Section 8 of Article I Of The Constitution. Plaintiffs establishes their claim and right to relief it is the purpose of this part to protect The Civil Rights of victims of gender motivated violence and to promote public safety, health and activities affecting interstate commerce by establishing a Federal Civil Rights Cause Of Action for victims of crimes of violence motivated by gender. The Cause Of Action of a person acts under color of any statue, ordinance regulation, custom or usage of any state who commits a crime of violence motivated by gender and deprives another of the right declared in subsection (B) shall be liable to the party injured in the action of recovery of compensation and punitive damages, injunctive and declaratory relief and such other relief and such other relief as the Court may deem appropriate. On that note My Ex Employer had posted on the City Bus that I drove that day If any Passengers assaulted a City Bus Driver will be punished by a felony charged and fine and Ripta my employer did nothing not even charged the two women who caused all this damage to me.

An act that would constitute a felony against the person or persons that would constitute a felony against the property if the conduct presents a serious risk of physical injury to another, That comes within the meaning of State Of R.I. or and Federal offences described in section 16 Of The Title 18. No prior criminal action, a prior criminal complaint, prosecution or conviction to establish the elements of a Cause of Action under Subsection Section 16 of the Title 18. 28 US code: 1603 of this Title includes a political subdivision of an agency or instrumentality of a foreign state which means any (ENTITY).

28 US, Code: 1603 service time to answer default there is no special arrangement that exists, but I will deliver a copy of the summons and complaint in accordance with an applicable service of Judicial documents to Defendants as used in this subsection a "notice of suit" shall mean a notice addressed to a foreign State and in the form prescribed by the Secretary Of State by regulation. Services of Judicial Documents.

I am giving actual notice by delivery of a copy of the summons and complaint together, In any action brought into Court Of The United States or of a Foreign State, a political subdivision there of or any agency or instrumentally of a foreign State "ENTITY'. Shall serve an answer or other responsive pleading to the complaint within 14 days after service has been made under this section.

No Judgement by default shall be entered by a Court of the United States or of a State against a foreign State a political subdivision there of: or an agency or instrumentality of a foreign State "ENTITY" unless the claimant establishes her claim or right to relief by evidence satisfactory to the Court. A copy of any such default Judgement shall be sent to the Foreign State ""ENITY' or political subdivision in the manner prescribe for service in this section.

I suffer from emotional and psychological symptoms signs and symptoms of stress overload where I black out. I went to the 9th floor of the Superior Court and asked for accommodations for my disability's to help me make the proper decisions for a proposed settlement for workers compensation for the Injury of slip and fall on snow and ice on February 12, 2015 where I suffered damage to my left hand severe carpal tunnel, low back which I still have not been examined by an orthopedic, Right Knee (Prior Injury 2013 and confirmed RSD nerve disorder) in which there is a MOA agreement for that also. And

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 239 of 689 PageID
#: 594

Right shoulder injury that Ripta and third party IME doctors kept telling the Judge I had bilateral carpal tunnel in but I just had surgery on it on February 13, 2018 in which was operated on and the injuries were (1) right arthroscopic biceps tendons, (2). suprascapular nerve release, (3). Distal clavicle excision. All which can cause signs of both right and left hand carpal tunnel but If the Employer and the TPA would have done the objective findings that Dr. Austin asked for it would have been diagnosed correctly but to cut cost and save money they decided not to reinstate me or reclassified me because of my pain complaints didn't add up to bilateral carpal tunnel. I was told by Ripta's Attorney to stop "faking" my injuries. I put in a discipline complaint with the Attorneys Board.

I had two surgery's on my left hand the first one was on or about May 6, 2015 and then I tried to return to work 8 weeks after the surgery and was told no I had to be 100 percent or nothing at all by my Union and that was what Ripta was asking the Union to do for the Company and I told the Union they were violating my Civil Rights and met with Jim Vincent who is Ripta's EEOC officer and is the State Of R.I. President of the NAACP Providence Chapter in which Jim Vincent told Tom cute the Union President that was discrimination and also told me that was discrimination I preceded to tell Jim Vincent I had already put in a complaint at the Commission of Human Rights Providence Office.

I then had a second left hand surgery February 9, 2017 after I was taken off of worker's compensation benefits on or about November 10, 2016 by Mariorenzi Sr. IME report in which he put me on MMI. Dr. Scott Schmidt wrote a note that it could be a reoccurrence or a unresolved portion of the first surgery that was done because he make notes that he noticed I had ulnar nerve issues on that very first nerve conduction test done by Dr. Golini.

The third surgery was on February 13, 2018 to the right shoulder that Ripta's IME Dr. Weiss told them I had bilateral carpal tunnel to down play the injury Dr. Weiss made comments like if you have it on the left side you're a right hander you must have it on the right but he did not have an objection findings to that opinion that severely disable me from any work. Finally after seeing Dr. Scott Schmidt he recommended me to see a shoulder specialist and ordered a Right hand nerve conduction test in which it came back no carpal tunnel but something that trigger them to repeat what I have been complaining about Since on or about June 23, 2015 my Right Shoulder. Now two years in with all injuries having nerve pain I am out of my mind I've been on opioids and alcohol to try and get at least an hour or two of sleep and constant nerve pain in which worker's compensation is proud to say you "don't get paid worker's compensation for PAIN".

42 USC: 1983 provides Civil Action for deprivation of rights every person who under color of any statue, ordinance regulation custom or usage of any State or territory subjects or causes to be subjected any citizen of the United States or other persons within the jurisdiction there of to the deprivation of any rights privileges or immunities secured by the Constitution and laws shall be liable to the person injured in an action of law suit in equity or other proper proceedings for redress. This is an act to enforce the provisions of the Fourteenth Amendment to the Constitution and among other Laws and Statutes in regards to redress.

Under RI law employees do not have a property interest in a worker's compensation claim until he or she shows that the claims are reasonable and necessary. But we also give up our right to sue our employers so we can receive worker's compensation payments regardless of fault. Ripta was clearly in violation of my due process and continued to denied and delay necessary treatments and broke me and my family down to no money no job no career no treatment nonexistent bad credit no food household splitting up and even at one point I consider giving my children to DCYF because I have been put in debt

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

2-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 240 of 689 PageID #: 595

of more than 68,000 due to no income for the 70 weeks Ripta owes me for> I was supposed to get my money owed to me when Chief Judge award me my ex parte for the second hand surgery February 9, 2017 and then he awarded me my scarring Chief Judge was about to award me my back pay until Ripta's attorney whispered to the Judge that I was no longer on their policy.?????? From there I was forced to go into mediation that I really didn't agree to but at the end of the day Ripta never submitted the paperwork to CMS for an approved set a side and I truly believe Ripta nor the State Of RI has any money to pay my Medicare set aside for my past and present nerve injuries and just the last two years of medical payments that Medicare paid on my behalf because of all the denials Ripta and the TPA and the State Of RI also had their hands in the self-insured payment part of it. Ripta and the State Of RI agreed to certify to the FTA for federal money to the requirements of 5333 AKA. 13 (c) both Ripta and the State of RI are not in complying with the statutory obligations of the section company changed its obligations with regards to my wages, working conditions health and pension for me their employee.

I also was to be able to put in a grievance and steps to an arbitrations and then to the FTA so all legal requirements have been met to settle or resolve issues with employment and benefits.

The Federal Transit Act is to provide employee labor protection as a condition to receiving assistance from the FTA. I ask for this Court and the FTA to suspend all grants, funding and to develop protective conditions seeking benefits filed by an employee or a union members and force the ATU and employer to comply to section 13© or 5333. My reemployment my worker's compensation benefits owed to me because of insolvency of both entity's working together and me putting in a complaint with the Commission of Human Rights to fight for myself to stand up for the very reasons why the Bill of rights were put in place.

I know there might not be an option for me to return to Ripta so I ask the court for displacement allowance due to the protection for 6 years because I was there for 13 years and 10 months. General worsening protection under correct section 13© agreement which my benefits are adversely affected. Now that mostly all my injuries have been address I can attend some kind of paid retraining. Ripta and the State Management plan must comply with and ensure compliance with standard Federal Civil Rights requirements including Tittle VI civil rights of 1964, and the equal employment opportunity requirement of 11375, and section 504 of the rehabilitation act of 1973.

The issues before the Court exercises our Constitutional rights of Due Process the question presented with clarity and completeness for us to resolve the matter with further charges to the defendants, Plaintiffs expected entitlement to benefits under worker's compensation Act under the Laws of Rhode Island. Statues are passed by the general assembly cases are decided by worker's compensation Court and the Supreme Court and Regulations issued by State agencies. The plaintiffs assert that Ripta and the TPA ignored other medical evidence that supported the plaintiffs' claims. The claims or each plaintiff has not been resolved by settlement. I have a proposed settlement entered on December 1, 2017 but has not been signed by me nor has been approved by CMS for a Medicare set a side but has been delayed for over twelve weeks and nothing entered to CMS on my behalf for an approval to settle the case so I come to the Civil Court to get what I am entitle to without further violations of me and my family Civil Rights under the United States of America.

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 241 of 689 PageID
#: 596

The Complaint further Alleges:

The defendants are sponsoring, financing and encouraging Ripta, State Of Rhode Island RIDOT, claims Strategies (old TPA), Beacon Mutual (present TPA), my Union 618 ATU and the FTA (funding from the Federal Government) to provoke breaches of certified contracts signed for federal money under 13(c) 5,4,3,2,1 and are encouraging others to conspire with them to violate the laws of the State Of R.I. and the United States laws depriving plaintiffs as individual citizens of the State Of R.I. and the United States Of America of their Civil Rights.

The defendants hinder plaintiffs in their political official capacities as constituted authorities of the State Of R.I. and the City Of Providence from giving or securing to all persons within said State Of R.I. and the City the equal protection of the laws, including the equal right of all citizens. Title 42, section 1985(3), 28 USCA 1332, 28 USCA 1343, 28 USCA 1331, 42 USCA, 1983, 42 USCA 1981, and 28 USCA 2281. We the plaintiffs allege the jurisdiction amount exceeds $10,000. Ripta/RIDOT owes me over 70 weeks of worker's compensation benefits totaling over $58,000.00 plus two years of medical payments due to Doctors for visits, and doctor visits paid by Medicare for the denials for reasonable treatments , physical therapy visits and objection findings to cure and alleviate injuries suffered on the job. Ripta/RIDOT and TPA's were obligated to pay for under R.I. Worker's Compensation Act.

The plaintiffs live at 34 Dunbar Ave Rumford R.I. 02916 and has worked for Ripta for 13 years and 10 months November 26, 2002 to February 15, 2016 in which Mickeda Barnes was illegally terminated, and in which she filed with the Commission Of Human Rights earlier in 2015 and then later the Commission found probably cause based on disability discrimination. The Statue is one of the Civil Rights Acts to provide a Federal forum for protection of federally granted rights under the 13, 14, and 15 amendments. Subparagraphs (1) and (2) vest jurisdiction in District Courts of Civil Actions to recover damages resulting from the conspiracies to interfere with Civil Rights referred to in section 1985 Of Title 42, subparagraphs (3) and (4) allow actions in the District Courts.

Petitioners seek recovery squarely on the ground that respondents violated the fourth and fifth Amendments. Plaintiffs seek damages from the individuals solely on the basics of our Constitutional Rights Plaintiffs alleges that the respondents conspired to do acts prohibited by these Amendments and alleges that respondents conduct pursuant to conspiracy resulted in damages in excess of $3000.00. The conspired acts between Ripta/RIDOT transitioning over to RIDOT in 2017 without prior notice to the Worker's Compensation Court or my Attorney Steven Dennis impeded the due course of justice in an attempt to deny and delay and cut cost and lower claims cost associated with the transitioning of Ripta to RIDOT that delayed denied any citizen (plaintiffs) the equal protection of the law.

Plaintiff's cause of action is Mickeda Barnes co-worker Richard Avedisian Crashed his city bus on post Rd in Warwick on or about January 21, 2016 and totaled out the bus that was stuck inside the building for days until the accident team cleared the seen. Plaintiff Mickeda Barnes was inside Ripta on January 25, 2016 to see Maureen from Human Service to get either reinstated back to work or reclassified to another position while receiving care for my injuries at the time. Richards wife walks in said hi to everyone and ask for Richards retirement papers Maureen proceeds to say to her tell Richard we have a job for him when he is ready to return to work and his wife said he is partly paralyzed Maureen told his wife it doesn't matter he has a job so plaintiff said to Maureen what about me that's why I am to meet with you and once again plaintiff was told she's different. Maureen then proceeded to take in Richards's wife to her office instead Plaintiff.

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:20-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 242 of 689 PageID
#: 597

Mickeda Barnes was never reclassified or reinstated to her job and instead giving termination papers on February 15, 2016. There is an allegation into Mickeda Barnes complaint that Richards's wife was offered a job for her husband when he was ready to return to work while Plaintiff (Mickeda) was ready to return to work and was not offered a job for her to return to work. Plaintiff alleges she is Black and is a female who put in a compliant with the Commission of Human Rights and against the employer and her Union 618. There is evidence of a recorded termination hearing giving to the plaintiff on March 14, 2016 that you will hear the plaintiff bring up the visit of Richards wife and the conversation between Maureen and Mickeda Barnes and once again you here Maureen said that Mickeda Barnes is different and then ends the grievance hearing on very short and unexpected terms. Plaintiff has a cause of action the absence of a purpose on the part of the defendants to deprive anyone of rights to equal protection of the laws distinguishes this case from Brewer Vs Hoxie School District, 8 cir 1956. Unlike Brewer Vs Hoxie School District there was no allegation in the complaint and no evidence to suggest that the defendants purposefully deprived others of their right to equal protection of the laws.

The plaintiff Mickeda Barnes has the evidence and that the defendants purposefully deprived the plaintiffs of their right to equal protection of the laws and her employer certified agreements with the FTA 13 (c) or 53333 and to plaintiffs bargaining agreement with her Union 618 ATU. Who also certifies to the worker's compensation act and the American with disabilities act. The defendants impaired any rights of the plaintiff even the one that deprived the plaintiff's wages and medical treatments under the RI Workers Compensation Act and Mickeda's rights for arbitration for her termination on February 15, 2016. The defendants later terminated plaintiff's worker's compensation weekly benefits even though their IME Doctors said Mickeda needed a Steroid injection and more objection findings.

It is a State action of a particular character that is prohibited. State action of every kind which impairs the privileges and immunities of citizens of the United States which injures them in life, liberty or property without due process of law or which denies to any of them equal protection of the laws.

STATE OF RHODE ISLAND
PROVIDENCE, SC                                                  SUPERIOR COURT

| | |
|---|---|
| RHODE ISLAND PUBLIC TRANSIT AUTORITY           ., | 0 ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. PC2020- ) |
| MICKEDA BARNES, | ) ) |
| Defendant. | ) ) |

## **COMPLAINT**

The Rhode Island Public Transit Authority ("RIPTA" or "Plaintiff"), by and through undersigned counsel, brings this action against Mickeda Barnes ("Barnes" or "Defendant") for breach of contract, declaratory judgment and equitable relief.

## **PARTIES**

1.     RIPTA is a quasi-government state agency with its principal place of business in Providence, Rhode Island.

2.     Barnes is a former RIPTA employee and, upon information and belief, she is a resident of Providence, Rhode Island.

## **JURISDICTION AND VENUE**

3.     This Court has jurisdiction over Defendant because she is (1) a resident of the State of Rhode Island, (2) was employed by RIPTA in the State of Rhode Island, and (3) entered into a settlement agreement in the State of Rhode Island.

4.     Pursuant to R.I. Gen. Laws § 9-1-30 the monetary amount in this action is sufficient to invoke the jurisdiction of this court.

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H
Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 244 of 689 PageID #: 599

5.      This Court has subject matter jurisdiction over this dispute pursuant to R.I. Gen. Laws § 9-30-1 of the Uniform Declaratory Judgments Act, which states the Superior Court "shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

6.      Venue is proper in this Court, pursuant to R.I. Gen. Laws § 9-4-3, because RIPTA has locations in Providence, Rhode Island, at which Barnes worked.

## FACTUAL BACKGROUND

7.      RIPTA employed Plaintiff as a Bus Operator from November 2002 through her last day of employment on February 15, 2016.

8.      Defendant drove various bus routes for passengers during her employment with RIPTA.

9.      Plaintiff's employment was littered with disciplinary infractions, workers' compensation claims, union grievances, and unfounded accusations of discrimination against co-workers, supervisors, attorneys, and even the Rhode Island judiciary.

10.     As early as 2003, Plaintiff began filing a multitude of workers' compensation claims against Defendant.  Plaintiff averaged 2 workers' compensation claims per year, each year thereafter, before her termination.

11.     In total, Plaintiff initiated eighteen (18) such claims against RIPTA for alleged workplace injuries between 2004 and 2015.

12.     Plaintiff was out of work sick and on leaves for close to 3 years of her 13 years of employment with RIPTA.

13.     On October 11, 2017, when Plaintiff's workers' compensations claims were not yielding the results she desired, she commenced a civil action against RIPTA, C.A. No. 1:17-cv-

2

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 245 of 689 PageID #: 600

00505-JJM-PAS in the United States District Court for the District of Rhode Island (the "District Court Action").

14.     Plaintiff was represented by counsel in the District Court Action.

15.     On April 4, 2018, after Plaintiff's counsel in the District Court Action and RIPTA's counsel had reached agreement on settlement in principal, Plaintiff (unbeknownst to her attorney) filed a lawsuit in the Rhode Island Superior Court (the "First Superior Court Action") in which she attempted to adjudicate her dissatisfaction with her workers' compensation claims. A copy of the First Superior Court Action is attached as Exhibit 1.

16.     On April 25, 2018, Plaintiff and RIPTA entered into the Settlement Agreement and General Release of Claims (the "Settlement Agreement"), a copy of which is attached as Exhibit 2, releasing all claims against RIPTA that arose prior to the execution of the agreement.

17.     The Settlement Agreement did not waive Plaintiff's workers' compensation claims.

18.     The Settlement Agreement contained a no reapplication, no reinstatement provision which provided,

> Employee agrees not to reapply for employment with the Authority, any subsidiary, related, affiliated or parent entity or any entity which is now or in the future owned, controlled, acquired by the Authority. Employee further agrees that if she reapplies or applies for employment with the Authority, or any entity described above, her application may be denied on the basis of this Agreement. Employee agrees to waive any right to reinstatement to which she may be entitled under R.I. Gen. Laws §28-33-47, and if reinstated thereunder, she agrees to immediately and voluntarily resign from employment. This provision shall not be construed so widely as to bar the Employee from applying for work or working for the State of Rhode Island or the Rhode Island Department of Transportation.

Settlement Agreement, ¶ 10, Ex. 2. Thus, Plaintiff waived any right to reinstatement and agreed not to reapply for any employment with RIPTA.

19.     The Settlement Agreement provided, in part, for liquidated damages in the event that Defendant violates the Settlement Agreement, as follows:

> After the parties had reached agreement in principal, Employee filed the above-reference suit in Rhode Island Superior Court, Case No. PC-2018-2287.  As a result, the Parties hereby agree that, except to enforce the provisions of this Agreement, should Employee bring any claim, action, or suit on any matter covered by the releases set forth in this Paragraph 2, against the Releasees, this Agreement may be asserted as a complete defense, and if the Releasees, collectively or individually, prevail, Employee shall be responsible for liquidated damages in the amount of $10,000 per violation or paying the attorneys' fees and costs that the prevailing Releasee(s) incurs in opposing such claim, whichever is less, in addition to any other relief to which the Releasee(s) may be entitled.

Settlement Agreement, ¶ 2(e), Ex. 2.

20.     The Settlement Agreement provided that Plaintiff waived any right to individual relief as a result of filing a charge of discrimination with the Rhode Island Commission for Human Rights, as follows:

> [B]y signing this Agreement Employee is waiving rights to individual relief (including backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint, lawsuit or other proceeding brought by Employee . . . .

Settlement Agreement, ¶ 18, Ex. 2.

21.     Plaintiff was given twenty-one (21) days to consider whether or not to execute the Settlement Agreement and seven (7) days to revoke the Settlement Agreement after she executed it.  Settlement Agreement, ¶¶ 3(a) & (b), Ex. 2.

22.     Plaintiff acknowledged – in a bolded provision entitled "Acknowledgement of Voluntariness and Understanding" – that (i) she was given a full opportunity to review the terms of the Settlement Agreement, (ii) she carefully read and fully understood all the provisions of the Settlement Agreement, and (iii) she was knowingly and voluntarily entering into the Settlement Agreement.  Settlement Agreement, ¶ 17, Ex. 2.

4

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 247 of 689 PageID
#: 602

23.     By signing the Settlement Agreement, Plaintiff acknowledged that she understood the Settlement Agreement constituted a final and complete release of all known and unknown claims against Defendant.  <u>See</u> Settlement Agreement, ¶ 2, <u>Ex. 2</u>.

24.     In exchange for signing the Settlement Agreement, Plaintiff received one hundred and fifty thousand dollars ($150,000.00).  <u>See</u> Settlement Agreement, ¶ 1, <u>Ex. 2</u>.

25.     On or about August 23, 2018, just four months after signing the Settlement Agreement, despite the Settlement Agreement and in violation thereof, Plaintiff filed a lawsuit in the Rhode Island Superior Court ("Second Superior Court Action"), a copy of which is attached as <u>Exhibit 3</u>, in which she again attempted to adjudicate her dissatisfaction with her workers' compensation claims and other pre-existing employment-related claims.

26.     On January 9, 2019, this Court, Hon. Justice Melissa A. Long, dismissed Defendant's workers' compensation claims, but permitted Defendant 14 days to file an amended complaint with regard to her claims that presumably pre-dated the Settlement Agreement, for breach of contract, "Title VI" and reinstatement.  <u>See</u> Jan. 18, 2019 Order, a copy of which is attached as <u>Exhibit 4</u>.

27.     Defendant failed to file an amended complaint, and instead appealed Justice Long's order of dismissal to the Rhode Island Supreme Court.  A copy of the Notice of Appeal is attached as <u>Exhibit 5</u>.

28.     On November 20, 2019, despite the Settlement Agreement and in violation thereof, Plaintiff filed a charge of discrimination with the Rhode Island Commission for Human Rights ("Charge"), seeking individual relief, for claims that are subject to the Settlement Agreement.  A copy of the Charge is attached as <u>Exhibit 6</u>.

5

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 248 of 689 PageID
#: 603

29.    On August 25, 2020, RIPTA requested that the Commission stay the Charge to permit it to pursue the instant complaint.

30.    In the Charge, Defendant alleges she was discriminated against on the basis of her race, color, gender, disability, perceived disability and retaliated against.  See Charge at 3, Ex. 6.

31.    In the Charge, Defendant alleges that she was "subjected" to "years of unlawful employment discrimination."  Id.

32.    In the Charge, Defendant alleges that RIPTA retaliated against her by failing to reinstate her after she signed the Settlement Agreement.  Id. at 4.

33.    It is undisputed that RIPTA terminated Defendant's employment on February 15, 2016.  Thus, any allegations of employment discrimination in the terms and conditions of employment that Defendant brings in the Charge, can only originate prior to the effective date of the Settlement Agreement, and are thereby waived.

34.    In the Charge, Defendant references a variety of incidents, but fails to identify the dates of these allegations.  For example, Defendant states that she was "subjected" to "years of unlawful employment discrimination" and that "[o]n one of the occasions I was attempting to submit my medical note, I was told that my employment was being terminated."  This incident, if true, could only have taken place before her termination in February 2016.

35.    In the Charge, Defendant alleges she signed the Settlement Agreement in December 2018, when, in fact, she signed on April 25, 2018.  See Charge, at 4, Ex. 6.

36.    In the Charge, Defendant alleges she was discriminated against and cites events related to her workers' compensation injuries that began in 2015.  Id.

## COUNT I
### DECLARATORY RELIEF – SETTLEMENT AGREEMENT

37.    Plaintiff incorporates Paragraphs 1 through 36, as if set forth full herein.

6

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 249 of 689 PageID
#: 604

38.     A real, present, actual and justiciable controversy exists between RIPTA and Defendant concerning whether the Settlement Agreement precluded Defendant from filing, and/or recovering damages based on, the claims set forth in the Second Superior Court Complaint.

39.     A real, present, actual and justiciable controversy exists between RIPTA and Defendant concerning whether the Settlement Agreement precludes Defendant from recovering for the allegations in the Charge.

40.     Plaintiff seeks a declaration that RIPTA and Defendant entered into a valid and enforceable settlement agreement that, by its terms, released Plaintiff from all employment discrimination claims that predate the Settlement Agreement.

41.     Plaintiff seeks a declaration that RIPTA and Defendant entered into a valid and enforceable settlement agreement that, by its terms, released Plaintiff from all claims made by Defendant to reinstatement or rehire.

42.     Plaintiff seeks a declaration that RIPTA and Defendant entered into a valid and enforceable settlement agreement that, by its terms, prevents Plaintiff from seeking individual relief in connection with the Charge.

## COUNT II
## BREACH OF CONTRACT – SETTLEMENT AGREEMENT

43.     Plaintiff incorporates Paragraphs 1 through 42, as if set forth in full herein.

44.     Defendant entered into the Settlement Agreement with RIPTA.

45.     The Settlement Agreement was the result of offer and acceptance, is supported by adequate consideration, and is fully enforceable.

46.     Defendant has materially breached the Settlement Agreement by

a.   Filing the Second Superior Court Action;

7

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 250 of 689 PageID #: 605

    b.   Seeking damages in the Second Superior Court Action;

    c.   Pursuing individual relief in the Charge;

    d.   Seeking reinstatement or reapplying for employment.

47.    RIPTA has been damaged, and continues to be damaged, by Defendant's breach of the Settlement Agreement.

48.    RIPTA has suffered, and will continue to suffer, irreparable harm because of Barnes' breach of the Settlement Agreement.

49.    No adequate remedy is available at law to remedy Barnes' breach of the Settlement Agreement.

50.    Justice and equity require specific enforcement of the Settlement Agreement as to RIPTA.

51.    RIPTA is entitled to damages, in the form of liquidated damages as set forth in the Settlement Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to:

1.    Determine and declare the Settlement Agreement to be a complete and enforceable instrument;

2.    Determine and declare Defendant to be in breach of the Settlement Agreement;

3.    Enforce the Settlement Agreement according to its terms and order dismissal of all claims that arose prior to April 25, 2018, and all claims for reinstatement or rehire, brought in the Charge;

4.    Enforce the Settlement Agreement according to its terms and order Defendant to pay liquidated damages pursuant to Paragraph 2(e) of the Settlement Agreement;

5.    Stay any and all proceedings related to the claims set forth in subparagraph 3

8

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 251 of 689 PageID #: 606

above, pending in the Charge;

6.      Enter judgment in favor of Plaintiff and against Defendant;

7.      Award Plaintiff monetary/liquidated damages;

8.      Award Plaintiff costs and attorneys' fees recoverable by contract and applicable law; and

9.      Award Plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE RHODE ISLAND PUBLIC TRANSIT AUTHORITY,

By its attorneys,

/s/ Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell (#6970)
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI  02903
(401) 824-2500
(401) 454-2969 (facsimile)
jfolgerhartwell@littler.com

August 27, 2020

4832-6914-3479.1 088768.1016

9

PROVIDENCE/BRISTOL COUNTY SUPERIOR COURT

# SC DOCKET SHEET
## CASE NO. PC-2020-06065

| | | |
|---|---|---|
| Rhode Island Public Transit Authority<br>v.<br>Mickeda Barnes | §<br>§<br>§<br>§<br>§ | Location: **Providence/Bristol County Superior Court**<br>Filed on: **08/27/2020**<br>US District Court Case Number: **1:22-cv-00213-JJM-PAS** |

---

### CASE INFORMATION

**Statistical Closures**
06/02/2022    Closed-Non-Trial-Unassigned-Remanded to District Court

Case Type: **Declaratory Judgment**

Case Status: **06/02/2022   Closed**

---

| DATE | CASE ASSIGNMENT |
|---|---|
| | **Current Case Assignment**<br>Case Number      PC-2020-06065<br>Court      Providence/Bristol County Superior Court<br>Date Assigned      08/27/2020 |

---

### PARTY INFORMATION

| | | |
|---|---|---|
| **Plaintiff** | **Rhode Island Public Transit Authority** | *Lead Attorneys*<br>**FOLGER-HARTWELL, JILLIAN**<br>*Retained*<br>4018242107(W) |
| **Defendant** | **Barnes, Mickeda** | |

| DATE | EVENTS & ORDERS OF THE COURT |
|---|---|
| | **EVENTS** |
| 06/02/2022 | Closed-Non-Trial-Unassigned-Remanded to District Court |
| 06/02/2022 | Case Removed to US District Court |
| 06/01/2022 | Notice of Removal<br>*Federal court stamped Version* |
| 06/01/2022 | Transcript Requested<br>*Request for Hearing Transcripts: Motion to Compel and Motion for Summary Judgment* |
| 05/31/2022 | Notice of Removal<br>Party: Defendant Barnes, Mickeda |
| 05/16/2022 | Memorandum in Support of Summary Judgment<br>*Rhode Island Public Transit Authority's Reply to Mickeda Barnes' Objection to Motion for Partial Summary Judgment* |
| 05/13/2022 | Memorandum Filed<br>*Amended w/ Exhibits* |
| 03/18/2022 | Memorandum Filed<br>*in support of objection*<br><br>*with exhibits* |
| 03/07/2022 | Omnibus Form<br>*Omnibus Calendar Assignment Form* |
| 03/07/2022 | |

*Printed on 06/02/2022 at 9:28 AM*

# SC DOCKET SHEET
## CASE NO. PC-2020-06065

|  |  |
|---|---|
|  | Memorandum in Support of Summary Judgment<br>*Rhode Island Public Transit Authority's Memorandum of Law In Support of Its Partial Motion For Summary Judgment* |
| 03/07/2022 | Motion for Partial Summary Judgment<br>*Rhode Island Public Transit Authority's Motion For Partial Summary Judgment* |
| 03/01/2021 | Motion<br>*court rigl judicial review of contested* |
| 03/01/2021 | Motion<br>*court RIGL Judicial review contested* |
| 12/14/2020 | Objection to Motion<br>*Plaintiff's Objection to Motion to Compel Union Contract Agreement to Arbitration* |
| 12/01/2020 | Motion to Compel<br>*UNION AGREEMENT TO ARBITRATION*<br>Party: Defendant Barnes, Mickeda |
| 11/06/2020 | Motion Not Scheduled<br>*No hearing date requested on the motion filed on 10/23/20* |
| 10/23/2020 | Motion<br>*THE SUPERIOR COURT TO COURT ORDER ARBITRATION*<br>Party: Defendant Barnes, Mickeda |
| 09/21/2020 | Answer Filed<br>Party: Defendant Barnes, Mickeda |
| 09/08/2020 | Summons Returned Served<br>*Return of Service of Summons and Complaint* |
| 08/27/2020 | Summons<br>Party: Defendant Barnes, Mickeda |
| 08/27/2020 | Complaint Filed<br>*Complaint* |

## HEARINGS

| | |
|---|---|
| 05/24/2022 | **Hearing on Motion for Summary Judgment** (2:00 PM) (Judicial Officer: Cruise, Associate Justice David) ;Location: Licht Courtroom 16)<br>*Granted* |
| 01/07/2021 | **Hearing on Motion to Compel** (2:00 PM) (Judicial Officer: Montalbano, Associate Justice Joseph A.) ;Location: Licht Courtroom 2)<br>*12/17/2020    Reset by Court to 01/07/2021*<br>*Denied* |



# STATE OF RHODE ISLAND
# AND PROVIDENCE PLANTATIONS

## CLERK'S CERTIFICATE AND TRANSMITTAL OF THE RECORD

### Case Information

Case Caption: Rhode Island Public Transit Authority vs. Mickeda Barnes

Federal Court Case No. 1:22-cv-00213-JJM-PAS    State Court Case No. PC-2022-06065

### Record Information

Confidential:    Yes ☐    No ☑    Description: _____

Sealed documents:    Yes ☐    No ☑    Description: _____

### Certification

I, Stephen Burke _____, Clerk of the Rhode Island Superior Court for the County of Providence _____ do certify that the attached documents are all the documents included in the record in the above referenced case.

Date: Jun/2/2022

Clerk:
/s/ Stephen Burke _____

Prepared by:
/s/ Victoria Reakes-Higgins _____

# State of Rhode Island Appeals Cover Sheet

**Volume: 1 of 1**

**Trial Court Case Number: PC-2020-06065**

**Appeal Index**

| Date: | Document Description | Page Number | Volume |
|---|---|---|---|
| 03/01/2021 | Motion | 1 - 6 | 1 |
| 03/01/2021 | Motion | 7 - 12 | 1 |
| 01/21/2021 | Proposed Order (Judge Montalbano) | 13 - 14 | 1 |
| 12/14/2020 | Objection to Motion | 15 - 33 | 1 |
| 12/01/2020 | Motion to Compel | 34 - 127 | 1 |
| 10/30/2020 | Covid 19 Hearing/Conference Request | 128 - 128 | 1 |
| 10/23/2020 | Motion | 129 - 135 | 1 |
| 09/21/2020 | Answer Filed | 136 - 172 | 1 |
| 09/08/2020 | Summons Returned Served | 173 - 175 | 1 |
| 08/27/2020 | Summons | 176 - 178 | 1 |
| 08/27/2020 | Complaint Filed | 243 - 251 | 1 |
| 08/27/2020 | Complaint Filed | 232 - 242 | 1 |
| 08/27/2020 | Complaint Filed | 214 - 231 | 1 |
| 08/27/2020 | Complaint Filed | 196 - 213 | 1 |
| 08/27/2020 | Complaint Filed | 192 - 195 | 1 |
| 08/27/2020 | Complaint Filed | 185 - 191 | 1 |
| 08/27/2020 | Complaint Filed | 179 - 184 | 1 |

**Total Number of pages**           251

STATE OF RHODE ISLAND                           SUPERIOR COURT

PROVIDENCE, S.C.


RHODE ISLAND PUBLIC TRANSPORTATION             CIVIL ACTION: PC-2020-06065

AUTHORITY,

PLAINTIFF,

Vs.


MICKEDA S. BARNES

DEFENDANT,

*U.S. DISTRICT COURT DISTRICT OF RHODE ISLAND   2022 MAY 31  A 11: 50   FILED*

### NOTICE OF FILING OF NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §1332 (b)(3), 1369, 1441, 1446(3), Defendant Mickeda S. Barnes ("Defendant") gives notice to Superior Court of Providence County, Rhode Island, and to the Attorney for Plaintiff Rhode Island Public Transportation Authority, that on Tuesday May 31, 2022, Defendant Mickeda S. Barnes Pro-Se filed a Notice of Removal, thereby removing this action to the United States District Court for the District of Rhode Island. A certified copy of the Notice of Removal is attached to this Notice.

Mickeda S. Barnes Pro-Se

34 Dunbar Ave Rumford R.I. 02916

401-419-2250 Mickeda5@gmail.com

*Mickeda S Barnes*

*May 31, 2022*

Date: May 31, 2022


SUPERIOR COURT
FILED
CLERK'S OFFICE

22 JUN -1  PM 3: 49

2

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 258 of 689 PageID
#: 613

Providence/Bristol County Superior Court
mitted: 8/27/2020 10:27 AM
elope: 2721171
iewer: Victoria H

Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 1 of 346    PageID 2

STATE OF RHODE ISLAND
PROVIDENCE, SC                                         SUPERIOR COURT

| | |
|---|---|
| RHODE ISLAND PUBLIC TRANSIT AUTORITY | 0 ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. PC2020- ) |
| MICKEDA BARNES, | ) ?  ) |
| Defendant. | ) ) ) |

## COMPLAINT

The Rhode Island Public Transit Authority ("RIPTA" or "Plaintiff"), by and through

undersigned counsel, brings this action against Mickeda Barnes ("Barnes" or "Defendant") for

breach of contract, declaratory judgment and equitable relief.

## PARTIES

1.       RIPTA is a quasi-government state agency with its principal place of business in

Providence, Rhode Island.

2.       Barnes is a former RIPTA employee and, upon information and belief, she is a

resident of Providence, Rhode Island.

## JURISDICTION AND VENUE

3.       This Court has jurisdiction over Defendant because she is (1) a resident of the

State of Rhode Island, (2) was employed by RIPTA in the State of Rhode Island, and (3) entered

into a settlement agreement in the State of Rhode Island.

4.       Pursuant to R.I. Gen. Laws § 9-1-30 the monetary amount in this action is

sufficient to invoke the jurisdiction of this court.

nd in Providence/Bristol County Superior Court
omitted: 8/27/2019 9:24 AM
/elope: 2721171
/iewer: Victoria H

5.      This Court has subject matter jurisdiction over this dispute pursuant to R.I. Gen.

Laws § 9-30-1 of the Uniform Declaratory Judgments Act, which states the Superior Court "shall

have power to declare rights, status, and other legal relations whether or not further relief is or

could be claimed."

6.      Venue is proper in this Court, pursuant to R.I. Gen. Laws § 9-4-3, because RIPTA

has locations in Providence, Rhode Island, at which Barnes worked.

## FACTUAL BACKGROUND

7.      RIPTA employed Plaintiff as a Bus Operator from November 2002 through her

last day of employment on February 15, 2016.

8.      Defendant drove various bus routes for passengers during her employment with

RIPTA.

9.      Plaintiff's employment was littered with disciplinary infractions, workers'

compensation claims, union grievances, and unfounded accusations of discrimination against co-

workers, supervisors, attorneys, and even the Rhode Island judiciary.

10.     As early as 2003, Plaintiff began filing a multitude of workers' compensation

claims against Defendant.  Plaintiff averaged 2 workers' compensation claims per year, each year

thereafter, before her termination.

11.     In total, Plaintiff initiated eighteen (18) such claims against RIPTA for alleged

workplace injuries between 2004 and 2015.

12.     Plaintiff was out of work sick and on leaves for close to 3 years of her 13 years of

employment with RIPTA.

13.     On October 11, 2017, when Plaintiff's workers' compensations claims were not

yielding the results she desired, she commenced a civil action against RIPTA, C.A. No. 1:17-cv-

2

d in Providence/Bristol County Superior Court
omitted: 8/27/2020 5:24 AM
velope: 2721171
viewer: Victoria H

00505-JJM-PAS in the United States District Court for the District of Rhode Island (the "District Court Action").

14.     Plaintiff was represented by counsel in the District Court Action.

15.     On April 4, 2018, after Plaintiff's counsel in the District Court Action and RIPTA's counsel had reached agreement on settlement in principal, Plaintiff (unbeknownst to her attorney) filed a lawsuit in the Rhode Island Superior Court (the "First Superior Court Action") in which she attempted to adjudicate her dissatisfaction with her workers' compensation claims. A copy of the First Superior Court Action is attached as Exhibit 1.

16.     On April 25, 2018, Plaintiff and RIPTA entered into the Settlement Agreement and General Release of Claims (the "Settlement Agreement"), a copy of which is attached as Exhibit 2, releasing all claims against RIPTA that arose prior to the execution of the agreement.

17.     The Settlement Agreement (did not waive) Plaintiff's workers' compensation claims.

18.     The Settlement Agreement contained a no reapplication, no reinstatement provision which provided,

> Employee agrees not to reapply for employment with the Authority, any subsidiary, related, affiliated or parent entity or any entity which is now or in the future owned, controlled, acquired by the Authority. Employee further agrees that if she reapplies or applies for employment with the Authority, or any entity described above, her application may be denied on the basis of this Agreement. Employee agrees to waive any right to reinstatement to which she may be entitled under R.I. Gen. Laws §28-33-47, and if reinstated thereunder, she agrees to immediately and voluntarily resign from employment. This provision shall not be construed so widely as to bar the Employee from applying for work or working for the State of Rhode Island or the Rhode Island Department of Transportation.

Settlement Agreement, ¶ 10, Ex. 2. Thus, Plaintiff waived any right to reinstatement and agreed not to reapply for any employment with RIPTA.

in Providence/Bristol County Superior Court,
ımitted: 8/27/2023 56:24 AM
/elope: 2721171
/iewer: Victoria H

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 261 of 689 PageID
#: 616

2:22-CV-00213-JJM-PAS   Document 1-16   Filed 05/31/22   Page 4 of 346   PageID 5

19.    The Settlement Agreement provided, in part, for liquidated damages in the event

that Defendant violates the Settlement Agreement, as follows:

> After the parties had reached agreement in principal, Employee filed the above-
> reference suit in Rhode Island Superior Court, Case No. PC-2018-2287. As a
> result, the Parties hereby agree that, except to enforce the provisions of this
> Agreement, should Employee bring any claim, action, or suit on any matter
> covered by the releases set forth in this Paragraph 2, against the Releasees, this
> Agreement may be asserted as a complete defense, and if the Releasees,
> collectively or individually, prevail, Employee shall be responsible for liquidated
> damages in the amount of $10,000 per violation or paying the attorneys' fees and
> costs that the prevailing Releasee(s) incurs in opposing such claim, whichever is
> less, in addition to any other relief to which the Releasee(s) may be entitled.

Settlement Agreement, ¶ 2(e), Ex. 2.

20.    The Settlement Agreement provided that Plaintiff waived any right to individual

relief as a result of filing a charge of discrimination with the Rhode Island Commission for Human

Rights, as follows:

> [B]y signing this Agreement Employee is waiving rights to individual relief
> (including backpay, frontpay, reinstatement or other legal or equitable relief) in
> any charge, complaint, lawsuit or other proceeding brought by Employee . . . .

Settlement Agreement, ¶ 18, Ex. 2.

21.    Plaintiff was given twenty-one (21) days to consider whether or not to execute the

Settlement Agreement and seven (7) days to revoke the Settlement Agreement after she executed

it.  Settlement Agreement, ¶¶ 3(a) & (b), Ex. 2.

22.    Plaintiff acknowledged – in a bolded provision entitled "Acknowledgement of

Voluntariness and Understanding" – that (i) she was given a full opportunity to review the terms of

the Settlement Agreement, (ii) she carefully read and fully understood all the provisions of the

Settlement Agreement, and (iii) she was knowingly and voluntarily entering into the Settlement

Agreement.  Settlement Agreement, ¶ 17, Ex. 2.

4

id in Providence/Bristol County Superior Court
omitted: 8/27/2020 16:27 AM
elope: 2721171
iewer: Victoria H

23.    By signing the Settlement Agreement, Plaintiff acknowledged that she understood the Settlement Agreement constituted a final and complete release of all known and unknown claims against Defendant. See Settlement Agreement, ¶ 2, Ex. 2.

24.    In exchange for signing the Settlement Agreement, Plaintiff received one hundred and fifty thousand dollars ($150,000.00). See Settlement Agreement, ¶ 1, Ex. 2.

25.    On or about August 23, 2018, just four months after signing the Settlement Agreement, despite the Settlement Agreement and in violation thereof, Plaintiff filed a lawsuit in the Rhode Island Superior Court ("Second Superior Court Action"), a copy of which is attached as Exhibit 3, in which she again attempted to adjudicate her dissatisfaction with her workers' compensation claims and other pre-existing employment-related claims.

*[handwritten: Tried to Indemnified me to my own medicare set aside]*

26.    On January 9, 2019, this Court, Hon. Justice Melissa A. Long, dismissed Defendant's workers' compensation claims, but permitted Defendant 14 days to file an amended complaint with regard to her claims that presumably pre-dated the Settlement Agreement, for breach of contract, "Title VI" and reinstatement. See Jan. 18, 2019 Order, a copy of which is attached as Exhibit 4.

27.    Defendant failed to file an amended complaint, and instead appealed Justice Long's order of dismissal to the Rhode Island Supreme Court. A copy of the Notice of Appeal is attached as Exhibit 5.

28.    On November 20, 2019, despite the Settlement Agreement and in violation thereof, Plaintiff filed a charge of discrimination with the Rhode Island Commission for Human Rights ("Charge"), seeking individual relief, for claims that are subject to the Settlement Agreement. A copy of the Charge is attached as Exhibit 6.

5

d in Providence/Bristol County Superior Court
omitted: 8/27/2020 16:24 AM
/elope: 2721171
/iewer: Victoria H

29.     On August 25, 2020, RIPTA requested that the Commission stay the Charge to permit it to pursue the instant complaint.

30.     In the Charge, Defendant alleges she was discriminated against on the basis of her race, color, gender, disability, perceived disability and retaliated against.  See Charge at 3, Ex. 6.

31.     In the Charge, Defendant alleges that she was "subjected" to "years of unlawful employment discrimination."  Id.

32.     In the Charge, Defendant alleges that RIPTA retaliated against her by failing to reinstate her after she signed the Settlement Agreement.  Id. at 4.

33.     It is undisputed that RIPTA terminated Defendant's employment on February 15, 2016.  Thus, any allegations of employment discrimination in the terms and conditions of employment that Defendant brings in the Charge, can only originate prior to the effective date of the Settlement Agreement, and are thereby waived.

34.     In the Charge, Defendant references a variety of incidents, but fails to identify the dates of these allegations.  For example, Defendant states that she was "subjected" to "years of unlawful employment discrimination" and that "[o]n one of the occasions I was attempting to submit my medical note, I was told that my employment was being terminated."  This incident, if true, could only have taken place before her termination in February 2016.

35.     In the Charge, Defendant alleges she signed the Settlement Agreement in December 2018, when, in fact, she signed on April 25, 2018.  See Charge, at 4, Ex. 6.

36.     In the Charge, Defendant alleges she was discriminated against and cites events related to her workers' compensation injuries that began in 2015.  Id.

## COUNT I
## DECLARATORY RELIEF – SETTLEMENT AGREEMENT

37.     Plaintiff incorporates Paragraphs 1 through 36, as if set forth full herein.

6

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 264 of 689 PageID #1619

Filed In Providence/Bristol County Superior Court
Submitted: 8/27/2020 6:24 AM 2-CV-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 7 of 346    PageID 8
Envelope: 2721171
Reviewer: Victoria H

9

38.     A real, present, actual and justiciable controversy exists between RIPTA and Defendant concerning whether the Settlement Agreement precluded Defendant from filing, and/or recovering damages based on, the claims set forth in the Second Superior Court Complaint.

39.     A real, present, actual and justiciable controversy exists between RIPTA and Defendant concerning whether the Settlement Agreement precludes Defendant from recovering for the allegations in the Charge.

40.     Plaintiff seeks a declaration that RIPTA and Defendant entered into a valid and enforceable settlement agreement that, by its terms, released Plaintiff from all employment discrimination claims that predate the Settlement Agreement.

41.     Plaintiff seeks a declaration that RIPTA and Defendant entered into a valid and enforceable settlement agreement that, by its terms, released Plaintiff from all claims made by Defendant to reinstatement or rehire.

42.     Plaintiff seeks a declaration that RIPTA and Defendant entered into a valid and enforceable settlement agreement that, by its terms, prevents Plaintiff from seeking individual relief in connection with the Charge.

**COUNT II**
**BREACH OF CONTRACT – SETTLEMENT AGREEMENT**

43.     Plaintiff incorporates Paragraphs 1 through 42, as if set forth in full herein.

44.     Defendant entered into the Settlement Agreement with RIPTA.

45.     The Settlement Agreement was the result of offer and acceptance, is supported by adequate consideration, and is fully enforceable.

46.     Defendant has materially breached the Settlement Agreement by

a.  Filing the Second Superior Court Action;

7

d in Providence/Bristol County Superior Court
omitted: 8/27/2020 9:2T AM
relope: 2721171
Viewer: Victoria H

10

     b.   Seeking damages in the Second Superior Court Action;

     c.   Pursuing individual relief in the Charge;

     d.   Seeking reinstatement or reapplying for employment.

    47.   RIPTA has been damaged, and continues to be damaged, by Defendant's breach of the Settlement Agreement.

    48.   RIPTA has suffered, and will continue to suffer, irreparable harm because of Barnes' breach of the Settlement Agreement.

    49.   No adequate remedy is available at law to remedy Barnes' breach of the Settlement Agreement.

    50.   Justice and equity require specific enforcement of the Settlement Agreement as to RIPTA.

    51.   RIPTA is entitled to damages, in the form of liquidated damages as set forth in the Settlement Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to:

    1.   Determine and declare the Settlement Agreement to be a complete and enforceable instrument;

    2.   Determine and declare Defendant to be in breach of the Settlement Agreement;

    3.   Enforce the Settlement Agreement according to its terms and order dismissal of all claims that arose prior to April 25, 2018, and all claims for reinstatement or rehire, brought in the Charge;

    4.   Enforce the Settlement Agreement according to its terms and order Defendant to pay liquidated damages pursuant to Paragraph 2(e) of the Settlement Agreement;

    5.   Stay any and all proceedings related to the claims set forth in subparagraph 3

8

ıd in Providence/Bristol County Superior Court
omitted: 8/27/2020 6:37 AM
/elope: 2721171
/iewer: Victoria H

above, pending in the Charge;

6.      Enter judgment in favor of Plaintiff and against Defendant;

7.      Award Plaintiff monetary/liquidated damages;

8.      Award Plaintiff costs and attorneys' fees recoverable by contract and applicable

law; and

9.      Award Plaintiff such other and further relief as the Court deems just and proper.


                          Respectfully submitted,

                          THE RHODE ISLAND PUBLIC TRANSIT
                          AUTHORITY,

                          By its attorneys,


                          /s/ Jillian S. Folger-Hartwell
                          Jillian S. Folger-Hartwell (#6970)
                          LITTLER MENDELSON, P.C.
                          One Financial Plaza, Suite 2205
                          Providence, RI  02903
                          (401) 824-2500
                          (401) 454-2969 (facsimile)
                          jfolgerhartwell@littler.com


August 27, 2020

4832-6914-3479.1 088768.1016


                              9

d in Providence/Bristol County Superior Court
mitted: 8/27/2020 10:27 AM
elope: 2721171
iewer: Victoria H

# EXHIBIT 1

STATE OF RHODE ISLAND
PROVIDENCE, SC                                                    SUPERIOR COURT

| | |
|---|---|
| RHODE ISLAND PUBLIC TRANSIT AUTORITY      ) ) ) | |
| Plaintiff,      ) ) | Civil Action No. PC-2020-06065 |
| v.      ) ) | |
| MICKEDA BARNES,      ) ) | |
| Defendant.      ) ) | |

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION FOR SUMMARY JUDGMENT

Pursuant to R.I. R. Civ. P. 56(a), Plaintiff Rhode Island Public Transit Authority ("RIPTA" or "Authority"), moves for partial summary judgment against Defendant Mickeda Barnes ("Barnes" or "Defendant") (collectively, the "Parties") as to Counts I and II for declaratory judgment and breach of contract, respectively.[1]  Barnes has, three times, violated her 2018 settlement agreement ("Settlement Agreement") by commencing three actions against RIPTA – one in the Rhode Island Superior Court and two others with the Rhode Island Commission for Human Rights – seeking damages and reinstatement relating to her former employment with the Authority.  After having defended itself against an onslaught of claims by Barnes for almost two decades, RIPTA contracted with her in 2018 to reach a final resolution by paying her <u>one hundred fifty thousand dollars ($150,000)</u> in consideration for her assent to a comprehensive release (the "Settlement Agreement").  Within a matter of months after signing the Settlement Agreement, Barnes hailed RIPTA back into litigation in Superior Court, and subsequently filed a charge with

---

[1] At this time, RIPTA seeks summary judgment with regard to liability and a declaratory order.  RIPTA expressly reserves its right to seek damages in a subsequent proceeding should the court grant the motion as to liability.

4820-5011-0160.10 / 088768-1017

13

the Rhode Island Commission for Human Rights, seeking damages. Most recently, on December

6, 2021, Barnes filed yet another charge seeking reinstatement. As a result of Barnes' breaches,

RIPTA moves this Court for a declaratory judgment and a court order, that will hopefully bring

Barnes' campaign of litigation against RIPTA to an end.

## I.    BACKGROUND FACTS

### A.    Barnes' History of Litigation Against RIPTA.

RIPTA hired Barnes as a bus driver in November 2002 and terminated her employment

more than five (5) years ago, on February 15, 2016. See Affidavit of S. Colantuono ("Colanuono

Aff."), ¶ 4, Ex. A. Barnes' personnel record is littered with disciplinary infractions, workers'

compensation claims, union grievances, and unfounded accusations of discrimination against co-

workers, supervisors, attorneys, and even the Rhode Island judiciary.[2]

Between 2002 and 2016, Barnes instituted the following legal actions against RIPTA:

---

[2] Without cataloguing each detail of Barnes' unacceptable conduct during her employment, a few of the "highlights" of Barnes' workplace conduct include:

- On December 1, 2006, Barnes delivered a handwritten complaint to RIPTA's management, describing, in detail, her menstruation cycle and anatomy. Barnes taped a tampon to the note, presumably for emphasis.

- On March 27, 2007, Elizabeth Grady, a Beacon Insurance Company representative, reported to RIPTA that, during her conversation with Barnes about a workplace injury, Barnes became agitated when she learned she needed to return to work and threatened that "[i]f I go back to work, I am going to run the bus off the road."

- On February 12, 2015, Barnes claimed she was injured while on duty in Cranston. Cranston firefighters responded to the scene. Barnes engaged in an unwelcome, sexually explicit conversation with the firefighters. The firefighters complained that they were offended by this conduct. Barnes received a 30-day suspension.

S. Colantuono Aff. ¶ 7, Ex. A. The above is not a complete summary of all Barnes' workplace infractions and altercations with coworkers and supervisors, but provides only some examples.

2

4820-5011-0160.10 / 088768-1017

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 270 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-925 Filed 05/31/22   Page 13 of 346   PageID 14
#1-925

- Beginning in 2004, Barnes filed the first of 19 workers' compensation claims against RIPTA, including 14 workers' compensation petitions filed between 2008 and her termination from employment in 2016. [3] Id., ¶ 6, Ex. A.

- In 2015, Barnes filed a charge against RIPTA with the Rhode Island Commission for Human Rights, alleging color, race, and disability discrimination, along with retaliation ("First Charge"). See 07.21.2015 Charge & 7.28.16 Amended Charge, Ex. B.[4]

- On or about August 15, 2016, Barnes wrote a letter to the White House and then-President Barack Obama, attempting to litigate discrimination claims against RIPTA pursuant to the National Transit Security Act, 6 U.S.C. §§ 1142 et seq. ("NSTA Claim"). See 8.15.16 Letter to White House ("DOL Ltr."), attached as Ex. C. The White House formally referred this matter to the United States Department of Labor and an administrative hearing process commenced. [5]

---

[3] Since 2015, Barnes has filed a total of twenty-five (25) additional petitions in the Rhode Island Workers' Compensation Court. Four of those petitions proceeded through trial before Chief Judge Robert M. Ferrieri, culminating in a Bench Decision rendered on October 24, 2019. Barnes filed appeals, and those matters remain pending before the Appellate Division of the Workers' Compensation Court. Of note, Barnes was represented by counsel at trial but filed her appeals as a pro se litigant. In addition, Barnes has more recently commenced a new round of pro se filings in the Workers' Compensation Court. The three most recent petitions, filed on August 31, 2021 and October 22, 2021, have totaled thousands of pages, inclusive of a series of motions requesting numerous forms of relief under a variety of irrelevant federal, state and regulatory schemes over which the Workers' Compensation Court has no jurisdiction. In the context of the recent pro se filings, Judge Steven A. Minicucci graciously allowed Barnes hours to argue on her own behalf at the pretrial conference stage under R.I. Gen. Laws § 28-35-20. These arguments have consisted of little more than an aggressive repetition of grievances, accusations, and threats against RIPTA, the Court, the physicians involved in her claims, among many others. Of the three recent pro se petitions, one remains pending before the Workers' Compensation and is scheduled for Initial Hearing before Judge Minicucci on January 11, 2022. The Initial Hearing is a trial scheduling conference in which the parties typically, among other things, advise the Court of the status of the claim and their respective plans for trial.

[4] In Rhode Island, a court may take judicial notice of court and agency records. See Goodrow v. Bank of Am., N.A., 184 A.3d 1121, 1126 (R.I. 2018).

[5] On the eve of a conference with an administrative law judge at the Department of Labor, Barnes voluntarily dismissed the claim. She also sued her Union in 2016, filing a Charge of discrimination against it with the Rhode Island Commission for Human Rights. That matter proceeded to federal court. The case is still pending.

3

4820-5011-0160.10 / 088768-1017

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 271 of 689 PageID
#: 626
Case 1:22-cv-00213-JJM-PAS    Document 1-9    Filed 05/31/22    Page 14 of 346    PageID 15

Barnes commenced the following litigation against RIPTA <u>after</u> her termination from employment, but <u>before</u> she signed the Settlement Agreement:

- On October 11, 2017, Barnes commenced a lawsuit against RIPTA in the Rhode Island Superior Court, C.A. No. PC-2017-4847, raising the claims she pursued in the First Charge. RIPTA removed the matter to the United States District Court for the District of Rhode Island on November 2, 2017. <u>See</u> C.A. No. 1:17-cv-00505-JJM-PAS ("Federal Court Action"), Ex. D.

- In April 2018, <u>during active settlement discussions between RIPTA's counsel and Barnes' attorney Sonya Deyoe to finalize language of the Settlement Agreement</u>—and unbeknownst to Deyoe—Barnes filed yet another lawsuit against RIPTA in Superior Court, attempting to adjudicate her dissatisfaction with her workers' compensation claims ("Second Superior Court Action"). <u>See</u> C.A. No. PC-2018-2287, Ex. E.

- On April 25, 2018, Defendant signed the Settlement Agreement, purportedly, to resolve the Federal Court Action, the Second Superior Court Action, and all other claims that Defendant had as of the Settlement Agreement's effective date of April 25, 2018. Defendant received <u>$150,000</u> as consideration. <u>See</u> S. Colantuono Aff., ¶¶ 8-9, Ex. A, Settlement Agreement, attached thereto as <u>Exhibit 1</u> (hereinafter "Settlement Agreement").

Barnes brought the following claims <u>after</u> she signed the Settlement Agreement:

- In August 2018, <u>just four months after signing the Settlement Agreement</u>, Barnes filed a new 245-page pleading in the Superior Court against RIPTA ("Third Superior Court Action"). <u>See</u> Third Sup. Ct. Action Compl., C.A. No. PC 2018-

4

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 272 of 689 PageID
#1627
Case 1:22-cv-00213-JJM-PAS   Document 1-9   Filed 05/31/22   Page 15 of 346   PageID 16

6082 (bulk of documents omitted due to volume), Ex. F. In this new action, Barnes sought to adjudicate, not only her workers' compensation claims, but also claims for "breach of contract," "reclassification," and "Title VI." Tr. of 1/9/19 Hearing ("Tr."), at 43:1-4, relevant portions attached as Ex. G. Barnes sought $2.5 million in damages for past workplace injuries, alleged that RIPTA should have offered her more money in the Settlement Agreement, and demanded "a full and complete settlement of all claims and injuries that are work related to be paid up front. . . ." Third Sup. Ct. Action Compl., at page 8, Ex. F. RIPTA successfully moved to dismiss the workers' compensation claims in the Third Superior Court Action. See J. Long Order dated 1/18/19 ("Order"), Ex. H. Judge Long permitted Defendant two weeks to amend her complaint to add her purported claims for "breach of contract," "reclassification," and "Title VI." See id.

- Barnes did not amend her complaint; rather, on January 23, 2019, Barnes appealed the Order to the Rhode Island Supreme Court. See 1.23.19 Notice of Appeal, Ex. I. On December 10, 2020, the Rhode Island Supreme Court affirmed Judge Long's decision below, and dismissed the appeal. The Rhode Island Supreme Court reasoned that the Superior Court lacked jurisdiction over Barnes' workers' compensation claims and that <u>Barnes' other claims were barred by the valid Settlement Agreement</u>. <u>Barnes v Rhode Island Public Transit Auth.</u>, No. 2019-132-Appeal (PC 18-6082), December 10, 2020, at 9-10, attached as <u>Ex. J</u> (emphasis added).

- On November 20, 2019—while her Rhode Island Supreme Court appeal was still pending—Barnes filed another charge of discrimination with the RICHR ("Second

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 273 of 689 PageID
#: 628
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 16 of 346    PageID 17

Charge"), despite the fact that she had not worked at RIPTA for more than three years. See 11.20.19 Second Charge, Ex. K. In the Second Charge, Barnes again complained that RIPTA was denying her reinstatement, and had "subjected [her] to years of unlawful employment discrimination." Id. at ¶3, Ex. K. Barnes sought individual relief in the form of reinstatement, benefits, and monetary damages. The Commission investigator indicated that Barnes was seeking relief for claims that predated the Settlement Agreement. See Email from A. Cote, dated 8/19/20, attached as Ex. L. Barnes then asked for, and received, a Right to Sue so that she could proceed to court on these claims. See 9.3.2020 Right to Sue, attached as Ex. M.

- On December 6, 2021, Barnes filed her most recent charge ("Third Charge") seeking reinstatement and potentially other damages. See 12.6.21 Barnes Charge, attached as Ex. N. Again, these claims, at least in part, allegedly arise out of the "terms and conditions" of her employment with RIPTA (now more than 5 years ago), and the alleged "years" of discriminatory treatment at RIPTA's hands, in addition to her workers' compensation claims.[6] See id. at 1-2.

**B.    Relevant Provisions of the Settlement Agreement.**

As noted above, on April 25, 2018, Barnes signed the Settlement Agreement and received one hundred fifty thousand dollars ($150,000) in consideration for her release of claims and other promises contained therein. Prominent plaintiff's side attorney Sonya Deyoe represented Barnes

---

[6] Barnes continues her constant deluge of against RIPTA in the Workers' Compensation Court, as set forth in footnote 3, supra.

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 274 of 689 PageID
Case 1:22-cv-00213-JJM-PAS    Document 1-29  Filed 05/31/22   Page 17 of 346  PageID 18
# 629

throughout the negotiation and through the execution of the Settlement Agreement.[7] See Benjamin

Salzillo Affidavit ("Salzillo Aff."), at ¶ 3, Ex. O. Prior to entering into the Settlement Agreement,

the parties participated in a mediation presided over by Judge Feeney of the Workers'

Compensation Court. This mediation was voluntary. During mediation, Barnes was represented

by both Sonja Deyoe and Stephen Dennis. Id. at ¶¶ 3 & 5. After the mediation concluded, Barnes'

attorney, Stephen Dennis, wrote to RIPTA's workers' compensation counsel Nicholas Mancini

and requested "to get the Workers' Compensation and the discrimination settlements separated,"

so that the "discrimination settlement could go forward" without resolution on the workers'

compensation matters. See Ltr. from S. Dennis to N. Mancini, dated 12/20/17, attached to M.

Barnes Supreme Court Appeal Brief, Ex. P.[8]

Some months later, Ms. Deyoe finalized the Settlement Agreement on behalf of Barnes.

Colantuono Aff, at ¶ 8, Ex. A. Barnes signed on April 25, 2018. See Settlement Agreement at

page 11, Ex. 1 to Colantuono Aff. In entering into the Settlement Agreement, the Authority was

hopeful the substantial sum and the comprehensive release would finally end Barnes' campaign of

litigation. Salzillo Aff., ¶ 4, Ex. O. Barnes had twenty-one (21) days to consider whether to

execute the Settlement Agreement and seven (7) days to revoke the Agreement after she executed

it. See Settlement Agreement, ¶ 3, Ex. 1 to Colantuono Aff. She also acknowledged—in a bolded

provision entitled "Acknowledgment of Voluntariness and Understanding"—that she: (i) received

a full opportunity to review the terms of the Settlement Agreement; (ii) carefully read and

---

[7] Stephen Dennis represented Barnes in her workers' compensation matters, although he ultimately withdrew. Attorney Leone represents Barnes in a product liability suit she has against Genfare, the manufacturer of a fair box used on RIPTA busses.

[8] As Barnes included this letter as part of her pleadings to the Rhode Island Supreme Court, the Court may take judicial notice of its contents. See Goodrow, 184 A.3d at 1126. Indeed, courts may take judicial notice of matters that are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned; see Fed. R. Evid. 201(b) and (c); such as court orders, dockets, opinions, or proceedings in other courts. See White v. Gittens, 121 F.3d 803, 805, n.1 (1st Cir. 1997); D'Amario v. Butler Hospital, 921 F.2d 8, n.1 (1st Cir. 1990).

7

understood all of its provisions; and (iii) was knowingly entering the Agreement. Id., ¶ 17, Ex. 1

to Colantuono Aff. The Settlement Agreement explicitly carved out from the General Release,

Barnes' workers' compensation claims. Id., ¶ 2(d), Ex. 1 to Colantuono Aff. The Settlement

Agreement became effective on May 2, 2018. Id., ¶ 3, Ex. 1 to Colantuono Aff.

Pursuant to the Settlement Agreement, Barnes: (1) agreed to a release of any claim or

demand against RIPTA pre-dating the effective date of the Agreement ("General Release"); (2)

waived the right to seek individual relief against RIPTA, including in any charge asserted before

a government agency; and (3) waived the right to seek future employment with RIPTA, whether

by reinstatement or rehire. Id., ¶¶ 2, 10, Ex. 1 to Colantuono Aff. The Settlement Agreement

provided, in part:

Release of Claims

In exchange for and in consideration of the payment received pursuant to this
Agreement, Employee agrees to release the Authority, its present and former direct
and indirect parent entities, direct and indirect subsidiaries, partners, insurers,
successors and assigns, and their present and former employees, officers, directors,
shareholders, agents, attorneys and representatives (the "Releasees") from each and
every claim or demand of every kind arising up to the date Employee signs this
Agreement, including but not limited to those claims made by Employee in the
Lawsuits.[9] This includes a release of any rights or claims for any and all types of
relief, including but not limited to back pay, front pay, compensatory and punitive
damages, attorneys' fees and costs, and equitable orders.

Id.; ¶ 2(a), Ex. 1 to Colantuono Aff.

A waiver of right to individual relief, as follows:

[B]y signing this Agreement Employee is waiving rights to individual relief
(including backpay, frontpay, reinstatement or other legal or equitable relief) in any
charge, complaint lawsuit, or other proceeding brought by the Employee.

Id., ¶ 18, Ex. 1 to Colantuono Aff.

A No Future Employment provision, as follows:

_____

[9] "Lawsuits" is defined on page 1 of the Settlement Agreement to refer both to the Federal Court Action and the
Second Superior Court Action.

8

> Employee agrees not to reapply for employment with the Authority, any subsidiary, related, affiliated or parent entity or any entity which is now or in the future owned, controlled, [or] acquired by the Authority. Employee further agrees that if she reapplies or applies for employment with the Authority, or any entity described above, her application may be denied on the basis of this Agreement.

Id., ¶ 10, Ex. 1 to Colantuono Aff.

### C.    The Rhode Island Supreme Court Opinion.

As noted above, RIPTA moved to dismiss the Second Superior Court Action on two grounds: (1) the Superior Court lacked jurisdiction over Barnes' workers' compensation claims; and (2) the Settlement Agreement barred her other claims. On January 9, 2019, this Court, Hon. Justice Melissa A. Long, heard RIPTA's motion. See Tr. at 1, Ex. G. After a lengthy colloquy with Barnes, Judge Long dismissed Barnes' workers' compensation claims for lack of jurisdiction and permitted Barnes additional time within which to amend her complaint and add her claims for breach of contract, Title VI claims, and claims for so-called "reclassification," that she referenced during the hearing on RIPTA's motion to dismiss. Id. at 40-44, Ex. G. Instead of filing an amended complaint, Barnes appealed Judge Long's order of dismissal to the Rhode Island Supreme Court. See 1.23.19 Notice of Appeal, Ex. I. On December 10, 2020, the Supreme Court affirmed the dismissal, reasoning that the Superior Court lacked jurisdiction over Barnes' workers' compensation claims. See Barnes, No. 2019-132-Appeal, at 9-10, Ex. J (emphasis added). Significantly, the Rhode Island Supreme Court also reasoned that, as to Barnes' other claims, "the settlement agreement flatly precludes [her] from bringing them." Id., at 9, Ex. J (emphasis added).

### III.    STANDARD OF REVIEW

Under R.I. R. Civ. P. 56, the Court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." R.I. Super. R. Civ.

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 277 of 689 PageID
#: 632
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 20 of 346    PageID 21

P. 56(c).  "Once the moving party establishes 'the absence of a material factual issue, the party

opposing the motion has an affirmative duty to establish either by affidavit or by other means the

material issue of fact to be decided.'"  Hexagon Holdings, Inc. v. Carlisle Syntec, Inc., 199 A.3d

1034, 1038 (R.I. 2019) (quoting Grissom v. Pawtucket Trust Co., 559 A.2d 1065, 1066 (R.I.

1989)).  If no genuine issue of material fact exists, the court must then determine whether the

moving party is entitled to judgment as a matter of law.  Accent Store Design, Inc. v. Marathon

House, Inc., 674 A.2d 1223, 1225 (R.I. 1996).

### IV.    ARGUMENT

### A.    The Declaratory Judgment

For the reasons stated herein, RIPTA asks this Court to issue an order declaring that: (1)

the Settlement Agreement is a valid and enforceable contract; (2) the Settlement Agreement

precludes Barnes from obtaining reemployment at RIPTA; (3) the Settlement Agreement precludes

Barnes from bringing any claims that pre-date the Settlement Agreement (including, but not

limited to, employment discrimination, harassment or retaliation claims); and (4) the Settlement

Agreement prevents Barnes from seeking or obtaining any individual relief (monetary or

otherwise) from the Commission, or any other tribunal, arising out of her employment at RIPTA.

RIPTA is entitled to a declaratory judgment regarding the validity and meaning of the

Settlement Agreement terms.  Rhode Island's Uniform Declaratory Judgments Act ("UDJA"),

G.L. 1956 § 9-30-1 et seq., "vests in the Superior Court the 'power to declare rights, status, and

other legal relations.'"  Bradford Assocs. v. R.I. Div. of Purchases, 772 A.2d 485, 489 (R.I. 2001)

(quoting § 9-30-1).  The purpose of the UDJA is to protect parties, resolve controversies, and

"afford relief from uncertainty and insecurity with respect to rights, status, and other legal

relations."  Haviland v. Simmons, 45 A.3d 1246, 1257 (R.I. 2012) (quoting R.I. Gen. Laws § 9-

10

30-12).  Indeed, the UDJA provides, in relevant part, "[a]ny person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the instrument [or] contract . . . and obtain a declaration of rights, status, or other legal relations thereunder."  R.I. Gen. Laws § 9-30-2.  The Settlement Agreement is just such a "contract."

Our Supreme Court has stated that the Superior Court's power, pursuant to the UDJA, should be "broadly construed, to allow the trial justice to 'facilitate the termination of controversies.'"  See Bradford, 772 A.2d at 489 (quoting Capital Properties, Inc. v. State, 749 A.2d 1069, 1080 (R.I.1999)).  Although "[a] necessary predicate to a court's exercise of its jurisdiction under the [UDJA] is an actual justiciable controversy"; Sullivan v. Chafee, 703 A.2d 748, 751 (R.I.1997); such a controversy exists "'so long as plaintiff(s) present sufficient facts giving rise to some conceivable legal hypothesis which will entitle plaintiff to some relief against defendant(s).'"  FleetBoston Fin. Corp. v. Advanta Corp., No. PB 03-0220, 2003 R.I. Super. LEXIS 112, at *15 (Super. Ct. Aug. 13, 2003) (quoting Millett v. Hoisting Engineers' Licensing Division, 119 R.I. 285, 293, 377 A.2d 229, 234 (R.I. 1977)).

Indeed, the UDJA is the best mechanism for resolving issues regarding validity, effectiveness, and scope of a release document such as the Settlement Agreement.  Family Dollar Stores of R.I. v. Araujo, 204 A.3d 1089, 1099 (R.I. 2019) ("[T]he [UDJA] clearly allows the holder of a release document . . . to seek from the Superior Court a declaration as to the validity and enforceability of the release.");  W.P. Assoc. v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994);  Travelers Ins. Co. v. Nastari, 94 R.I. 55, 177 A.2d 778 (1962).  Where, as here, the Settlement Agreement is clear on its face, "judicial construction is at an end and the terms of the contract must be applied as written."  Merrimack Mut. Fire Ins. Co. v. Dufault, 958 A.2d 620, 625 (R.I. 2008) (citation omitted).  "In deciding whether or not to issue a declaratory judgment with respect to [a]

11

4820-5011-0160.10 / 088768-1017

. . . release . . . the Superior Court [is] . . . presented with the very limited task of interpreting a contract between the parties." Family Dollar, 204 A.3d at 1098-99. This Court has such a limited role here because "[p]rompt and definitive resolution of release-related issues is one of the many salutary efficiencies made possible by the Uniform Declaratory Judgments Acts." Id. at 1099.

### 1. The Settlement Agreement is a Valid and Enforceable Contract.

The Rhode Island Supreme Court recognized the validity of the Settlement Agreement in its December 10, 2020 opinion when it concluded that the Settlement Agreement "flatly precludes" Barnes from asserting non-workers' compensation claims relating to her employment with RIPTA. See Barnes, No. 2019-132-Appeal, at 9, Ex. J. This is not surprising, as Rhode Island courts have a policy to encourage the amicable settlement of disputes. Ryan v. Roman Catholic Bishop, 941 A.2d 174, 186 (R.I. 2008); Homar, Inc. v. N. Farm Assocs., 445 A.2d 288, 290 (R.I. 1982) ("Our policy is always to encourage settlement. Voluntary settlement of disputes has long been favored by the courts."). To that end, courts must "give significant deference to the terms of a general release until [it] ha[s] been furnished with an adequate reason to do otherwise." Pardey v. Blvd. Billiard Club, 518 A.2d 1349, 1355 (R.I. 1986) (emphasis added). If the converse were true and "releases were taken lightly and rescinded, the incentive to settle would dissipate and parties opting for such a course could never be secure from litigation." Griffin v. Bendick, 463 A.2d 1340, 1345 (R.I. 1983). Excessive judicial scrutiny of settlement agreements undercuts the public policy in favor of voluntary settlements. See Ryan, 941 A.2d at 186.

Indeed, a "'release is a contractual agreement, and the various principles of the law of contracts govern the judicial approach to a controversy concerning the meaning of a particular release.'" Family Dollar, 204 A.3d at 1098 (quoting Young v. Warwick Rollermagic Skating Ctr., 973 A.2d 553, 558 (R.I. 2009)). "A valid contract requires only 'competent parties, subject matter,

<center>12</center>

a legal consideration, mutuality of agreement, and mutuality of obligation.'" DeAngelis v.
DeAngelis, 923 A.2d 1274, 1279 (R.I. 2007) (quoting R.I. Five v. Med. Assocs. of Bristol County,
Inc., 668 A.2d 1250, 1253 (R.I. 1996)); Lamoureux v. Burrillville Racing Ass'n, 91 R.I. 94, 98,
161 A.2d 213, 215 (1960). Rhode Island law provides a general presumption in favor of Barnes,
that she possesses the capacity to contract. See State of Rhode Island v. Vieira, Ca. No. K1-2009-
451A, 2012 WL 1948337, at *6 (citing Landmark Med. Ctr. v. Gauthier, 635 A.2d 1145, 1148
(R.I. 1994)).

Mutuality of agreement and/or mutual assent merely means an intention to promise or be
bound through offer and acceptance. Filippi v. Filippi, 818 A.2d 608, 623-24 (R.I. 2003); Smith
v. Boyd, 553 A.2d 131, 133 (R.I. 1989). The parties' signatures on the document are sufficient
evidence of mutual assent. Homonoff v. Forte, Nos. PC-2008-1467, PC-2008-6628, 2013 R.I.
Super. LEXIS 15, at *22-23 (Super. Ct. Jan. 16, 2013) (citing Davis Sewing-Mach. Co. v.
Richards, 115 U.S. 524, 525, 6 S. Ct. 173, 29 L. Ed. 480 (1885)).[10]

Mutuality of obligation is achieved when both parties are bound by the making of
reciprocal promises. Davis v. Ford Motor Credit Co., 882 A.2d 557, 560 (R.I. 2005). Such
mutuality is sufficient to fulfill the consideration requirement. Id. A settlement agreement that
provides for monetary payment, in exchange for a release of claims, meets the consideration
requirements to form a valid and binding contract. Id. (an agreed-upon $100k payment, in
exchange for a release of claims presents circumstances in which "[i]t is absolutely clear that a
valid and enforceable contract was formed"); Homonoff, 2013 R.I. Super. LEXIS 15, at *26-28

---

[10] "A party who signs a written contract is presumed to have read and understood its terms." Proulx v. Brookdale
Living Cmntys, Inc., 88 F. Supp. 3d 27, 32 (D.R.I. 2015) (citing Ricci Drain-Laying Co., Inc. v. Baskin, 744 A.2d
406 (R.I. 1999)). This holds true whether the person actually "reads and understands [the terms] or not." Rivera v.
Gagnon, 847 A.2d 280, 285 (R.I. 2004). "[I]t has long been a settled principle that 'a party who signs an instrument
manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand
its contents.'" Manchester v. Pereira, 926 A.2d 1005, 1012 (R.I. 2007) (quoting F.D. McKendall Lumber Co. v.
Kalian, 425 A.2d 515, 518 (R.I. 1981)); Rivera, 847 A.2d at 285.

13

Case 1:22-cv-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 281 of 689 PageID
#: 636
Case 1:22-cv-00213-JJM-PAS     Document 1-3     Filed 05/31/22     Page 24 of 346     PageID 25

(release of claims and/or promise to forebear from bringing suit constitutes legally adequate consideration).

In addition to the above, the Rhode Island Supreme Court has held that the validity of a general release should be assessed in light of "the experience of the person executing the release, and . . . the question of whether the person executing it was represented by counsel." Miller v. Metro. Prop. & Cas. Ins. Co., 111 A.3d 332, 340 (R.I. 2015) (quoting Guglielmi v. Rhode Island Hosp. Trust Fin. Corp., 573 A.2d 687, 689 (R.I. 1990)). Indeed, the advice of an attorney is a "strong indicator that a release was entered into voluntarily and in the best interests of the party executing the document." Miller, 111 A.3d at 341-42.

Here, Barnes does not dispute that she signed the contract. Barnes never exercised her right of revocation, and accepted the payment of one hundred fifty thousand dollars ($150,000) from RIPTA. See Salzillo Aff., ¶ 6, Ex. O. The Settlement Agreement contains a multitude of reciprocal promises, the most obvious of which is payment by RIPTA of $150,000 in exchange for a broad general release of claims. See Settlement Agreement, ¶¶ 1 & 2, Ex. 1 to Colantuono Aff. In addition, there is no question that Barnes not only has significant personal experience in various types of litigation, but also engaged competent attorneys throughout the course of her claims. Barnes had the assistance of prominent plaintiff-side employment attorney Sonja Deyoe to represent her in the NSTA Claim, the First Charge, the First Superior Court Action, the Second Superior Court Action, the Federal Court Action, and the settlement negotiations, up through execution and release of payment.[11] See Salzillo Aff, ¶ 3, Ex. O; 2.13.17 Dept. of Labor Entry of Appearance for S. Deyoe, Ex. Q; 7.14.17 RICHR Right to Sue, Ex. T; 10.11.17 USDC Complaint

---

[11] Ms. Deyoe also represents Defendant in her lawsuit against her union, which is currently pending in the U.S. District Court, for the district of Rhode Island. See USDC Docket regarding Barnes v. Amalgamated Transit Union Local 618, Ex. U.

4820-5011-0160.10 / 088768-1017

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 282 of 689 PageID
Case 1:22-cv-00213-JJM-PAS    Document 1-2    Filed 05/31/22    Page 25 of 346    PageID 26
#: 637

signed by S. Deyoe, at 4, Ex. D; 4.26.18 Superior Court Limited Scope Entry of Appearance for

S. Deyoe, Ex. R[12].   Furthermore, Stephen Dennis represented Barnes throughout her workers'

compensation petitions and the discussions concerning settling her workers' compensation claims

as evidenced by his December 20, 2017 letter to Mr. Mancini requesting that the discrimination

claim be "separated" from Barnes' workers' compensation settlement discussion.  See Ltr. from

S. Dennis to WC Court, Ex. P; Salzillo Aff., ¶ 5, Ex. O.  Thus, it is unassailable that the Settlement

Agreement is a valid and enforceable instrument with which Barnes became and remains obliged

to comply.

> **2.    The Settlement Agreement Precludes Barnes from Obtaining Reemployment at RIPTA.**

Where, as here, the Release is clear on its face, "judicial construction is at an end and the

terms of the contract must be applied as written." Merrimack, 958 A.2d at 625 (citation omitted).

"Indeed, summary judgment founded on a contract such as the Release only requires the Court to

analyze the contract and enforce its terms[.]" Olamuyiwa v. Zebra Atlantek, Inc., No. WC-2005-

0692, 2009 R.I. Super. LEXIS 112, at *9-10 (R.I. Super. Ct. Aug. 28, 2009), aff'd, 45 A.3d 527

(R.I. 2012).  In Family Dollar, 204 A.3d at 1098-99, the Rhode Island Supreme Court clarified this

principle:

> In deciding whether or not to issue a declaratory judgment with respect to whether
> the release at issue serves as a bar to [plaintiff's] . . . recovery . . . the Superior Court
> was originally and will be hereafter presented with the very limited task of
> interpreting a contract between the parties.  To reiterate, the only issue in the case
> before the Superior Court with respect to the declaratory judgment count was the
> validity and effectiveness of the release contained in the settlement agreement.

(emphasis added).  This is so because "[p]rompt and definitive resolution of release-related issues

is one of the many salutary efficiencies made possible by the Uniform Declaratory Judgments

---

[12] In Rhode Island, a court may take judicial notice of court records.  Goodrow, 184 A.3d at 1126 .

4820-5011-0160.10 / 088768-1017

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 283 of 689 PageID
Case 1:22-cv-00213-JJM-PAS    Document 1-38 Filed 05/31/22    Page 26 of 346   PageID 27
#: 638

Acts." Id. at 1099. Courts routinely approve private settlement agreements that contain a no-rehire provision. See Robinson v. Kist Alf Inc., No. 6:12-cv-1341-Orl-36KRS, 2013 U.S. Dist. LEXIS 143868, at *5 & *10 (M.D. Fla. Sep. 3, 2013).

The Settlement Agreement provides, in pertinent part:

No Future Employment

Employee agrees not to reapply for employment with the Authority, any subsidiary, related, affiliated or parent entity or any entity which is now or in the future owned, controlled, [or] acquired by the Authority. Employee further agrees that if she reapplies or applies for employment with the Authority, or any entity described above, her application may be denied on the basis of this Agreement.

Settlement Agreement, ¶ 10, Ex. 1 to Colantuono Aff. The unambiguous terms of the agreement provide that Barnes is not entitled to reemployment, and any employment application may be denied on the basis of the Agreement. Thus, RIPTA is entitled to a declaratory judgment providing that the Settlement Agreement precludes Barnes from obtaining reemployment at RIPTA, as she sought to do in the Second Charge and seeks to do in the Third Charge.

3.    **The Settlement Agreement precludes Barnes from Bringing Any Claims that Pre-date the Agreement, Including Any Claims Arising Out of Her Employment at RIPTA.**

Barnes is precluded from pursuing any claims that predate the effective date of the Settlement Agreement (May 2018), including claims arising out of her employment at RIPTA. The Rhode Island Supreme Court has held an employee who executes a general release is forbidden from later asserting a claim to the Rhode Island Commission for Human Rights, alleging discrimination. In Young v. Warwick Rollermagic Skating Ctr., Inc., 973 A.2d 553, 556, 559 (R.I. 2009), the release provided, in pertinent part, that the employee was releasing "all claims and demands, actions and causes of action . . . on account of, or in any way growing out of any personal injuries . . . . resulting or to result from any and all incidents or injuries occurring during my

16

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 284 of 689 PageID
#: 639
Case 1:22-cv-00213-JJM-PAS    Document 1-3    Filed 05/31/22    Page 27 of 346    PageID 28

employment." (emphasis in original). Concluding that the release barred the employee's disability claim, the Court reasoned that it was "unable to read the document other than as an all-encompassing release" given the presence of words like "any" and "all" signaling a waiver that was of a "sweeping and comprehensive nature." Id. That same year, in Olamuyiwa, 2009 R.I. Super. LEXIS 112, at *11-12, this Court reaffirmed the principle. The severance agreement in Olamuyiwa, 2009 R.I. Super. LEXIS 112, at *2-3, contained a release provision markedly similar to the language in the Paragraph 2 of the Settlement Agreement. Specifically, it released the employer from all claims arising out of the plaintiff's employment, including any claims asserted under the Rhode Island Fair Employment Practices Act. See id. The Court concluded that the plaintiff had waived his right to recover for his alleged discrimination when he executed the release. Id. at *11. Furthermore, here, the Rhode Island Supreme Court had occasion to view Barnes' Settlement Agreement and concluded that Barnes' non-workers' compensation claims were barred by the valid Settlement Agreement. Barnes, No. 2019-132-Appeal (PC 18-6082), at 9-10, Ex. J.

The release in Paragraph 2 of the Settlement Agreement is clear and unambiguous. The Release of Claims contains language that is equally as broad as the release language in Young and Olamuyiwa; specifically: "[Barnes] agrees to release [RIPTA] . . . from each and every claim or demand of every kind arising up to the date Employee signs this Agreement, including but not limited to those claims made by Employee in the Lawsuits." Barnes signed the Settlement Agreement in April, 2018. See Settlement Agreement at page 11, Ex. 1 to Colantuono Aff. At that point RIPTA had not employed her for approximately two (2) years. See Colantuono Aff., ¶ 8, Ex. A. Based on the Rhode Island Supreme Court's assessment of the Settlement Agreement itself, coupled with its reasoning in Young and Olamuyiwa, this Court's only task is to apply the

17

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 285 of 689 PageID
#: 640
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 28 of 346    PageID 29

all-encompassing, Release of Claims in paragraph 2 of the Settlement Agreement, at face value.

RIPTA is entitled to a declaratory judgment that Barnes may not bring any claims against it –

including any claims arising out of her employment – that predate April 25, 2018.

Similarly, RIPTA is entitled to a declaratory judgment that Barnes may not seek any

individual relief from the Commission. The Settlement Agreement is clear in that it provides:

> [B]y signing this Agreement Employee is waiving rights to individual relief
> (including backpay, frontpay, reinstatement or other legal or equitable relief) in any
> charge, complaint lawsuit, or other proceeding brought by the Employee.

Id., ¶ 18, Ex. 1 to Colantuono Aff. Thus, for the same reasons stated above, RIPTA is

entitled to a declaratory judgment that Barnes may not pursue any individual remedy

(monetary or otherwise), in any forum (including, but not limited to, the Commission),

arising out of her employment with RIPTA.

**B.    The Breach of Contract**

        **1.    Barnes Breached the Settlement Agreement When She Pursued the
Third Superior Court Action, the Second Charge and the Third
Charge.**

As noted above, the Settlement Agreement is a valid and enforceable contract.

Furthermore, the claims Barnes brought in the Third Superior Court Action, the Second Charge

and the Third Charge clearly fell within those she waived in the Settlement Agreement and she

therefore breached the agreement when she initiated those claims.

With regard to the Third Superior Court Action, the context of its Motion to Dismiss,

RIPTA argued to Judge Long that this Court lacked jurisdiction over Barnes' claims because they

were merely a rehashing of her workers' compensation claims. See Tr., at 3:7-11, Ex. G. On

January 9, 2019, during oral argument on RIPTA's motion to dismiss, Barnes was adamant that

she was not merely asserting workers' compensation claims; rather, Barnes insisted she was

18

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 286 of 689 PageID
#1,641
Case 1:22-cv-00213-JJM-PAS    Document 1-9  Filed 05/31/22  Page 29 of 346  PageID 30

bringing claims that belonged in Rhode Island Superior Court. Id. at 18:4-16, 20-21:17-9, Ex G.

After a lengthy colloquy with Barnes, Judge Long deduced that Barnes was trying to bring claims

against RIPTA pursuant to "Title VI," for "breach of contract," so-called "reclassification" claims,

and sought $2.5 million dollars in damages because of these claims. Id. at 42-43:23-4, Ex G. The

Rhode Island Supreme Court confirmed the same, when it affirmed Judge Long's decision, noting

that, regarding her non-workers' compensation claims, "the settlement agreement flatly precludes

[her] from bringing them." Barnes, No. 2019-132-Appeal (PC 18-6082), at 9, Ex. J.

There can be no doubt these claims fall within the phrase "each and every claim or demand"

contained in paragraph 2 of the Settlement Agreement. Cf. Young, 973 A.2d at 559 (disability

claim fell within grips of release waiving employee's right to pursue "all claims and demands . . .

in any way growing out of any personal injuries" executed in connection with settlement of

employee's workers' compensation claim). The Rhode Island Supreme Court confirmed this.

Thus, Barnes breached the Settlement Agreement by asserting claims in the Third Superior Court

Action.

Barnes' again breached the Settlement Agreement when she pursued individual relief –

including reinstatement – from the Commission, as outlined in the Second Charge and the Third

Charge. In both the Second and Third Charges, Barnes asserted that RIPTA subjected her to "years

of unlawful employment discrimination." Second and Third Charges at 1, Exs. K & N. Because

Barnes was terminated from employment in 2016, this allegation relates to conduct that predated

the Settlement Agreement and was clearly waived by the release language therein. Furthermore,

Cote – the Commission investigator – confirmed in an email Barnes was pursuing claims that

predated her signature on the Settlement Agreement. See Email from A. Cote, attached as Ex. L.

Barnes also alleged in the Second and Third Charges that she was "continually being denied

19

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 287 of 689 PageID
#: 642
Case 1:22-cv-00213-JJM-PAS    Document 1-9    Filed 05/31/22    Page 30 of 346    PageID 31

reinstatement," and asked the Commission for relief in the form of reinstatement to her job. Second and Third Charges at 1, Exs. K & N.

To the extent Barnes is seeking from the Commission any benefits or monetary relief relative to her employment with RIPTA, her Second Charge was, and her Third Charge is, barred by the plain language of the paragraph 2 of the Settlement Agreement. See Settlement Agreement, ¶ 2, Ex. 1 to Colantuono Aff (providing that Barnes agreed to waive "any and all types of relief, including but not limited to back pay, front pay, compensatory and punitive damages, attorneys' fees and costs, and equitable orders. . . ."). Furthermore, Barnes explicitly agreed to waive any rehire. See id., ¶ 10, Ex. 1 to Colantuono Aff.[13] By asking the Commission to grant her reinstatement and other individual relief relating to her so-called "years of unlawful employment discrimination" purportedly caused by RIPTA, Barnes breached the Settlement Agreement for a second and third time. RIPTA is entitled to a declaratory judgment that Barnes breached the Settlement Agreement when she brough the Third Superior Court Action, the Second Charge, and the Third Charge.[14]

## V.    CONCLUSION

Barnes thrice violated the Settlement Agreement. The Rhode Island Supreme Court noted as much in its December 10, 2020 opinion. Although RIPTA would have far preferred Barnes' willing compliance with the Settlement Agreement terms, as evidenced by its payment of generous consideration, Barnes has left the Authority with no choice but to pursue its rights under the Settlement Agreement in hopes that the actions of this Court will bring Barnes' seemingly unending campaign of litigation against RIPTA to an end. RIPTA respectfully requests this Court

---

[13] Indeed, the Workers' Compensation court has also denied Barnes' request for reinstatement. See 10.31.2019 Decree, attached as Ex. S.
[14] As noted above, RIPTA reserves its right to seek damages should it prevail on liability.

20

enter judgment on Counts I and II of the Complaint in RIPTA's favor and issue an order with the

requested declaratory judgment(s) as provided for in the Settlement Agreement.

> Respectfully submitted,
>
> RHODE ISLAND PUBLIC TRANSIT
> AUTHORITY,
>
> By its attorneys,
>
>
> /s/Jillian S. Folger-Hartwell
> Jillian S. Folger-Hartwell (#6970)
> LITTLER MENDELSON, P.C.
> One Financial Plaza, Suite 2205
> Providence, RI  02903
> 401.824.2500
> 401.633.6853 (fax)
> jfolgerhartwell@littler.com

March 7, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of March, 2022, the foregoing Memorandum in Support

of Motion for Partial Summary Judgment was e-filed and served through email and regular mail

on the party below.   The document electronically filed is available for viewing and/or

downloading from the Rhode Island Judiciary's Electronic Filing System.

> Mickeda Barnes
> 34 Dunbar Avenue
> Rumford, RI 02916
> mickeda5@gmail.com

> /s/ Jillian S. Folger-Hartwell
> Jillian S. Folger-Hartwell

4820-5011-0160.10 / 088768-1017

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 289 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 32 of 346   PageID 33
#: 644

**HEARING DATE: May 24, 2022**

STATE OF RHODE ISLAND                                  SUPERIOR COURT
PROVIDENCE, SC

| | | |
|---|---|---|
| RHODE ISLAND PUBLIC TRANSIT AUTORITY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. PC-2020-06065 |
| v. | ) | |
| | ) | |
| MICKEDA BARNES, | ) | |
| | ) | |
| Defendant. | ) | |

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY'S REPLY TO MICKEDA BARNES' OBJECTION TO ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Rhode Island Public Transit Authority ("RIPTA"), hereby files this reply to Defendant Mickeda Barnes' ("Barnes") Objection to its Motion for Partial Summary Judgment to inform the Court of Barnes' continued breach of the Settlement Agreement.  Specifically, Barnes has further breached the Settlement Agreement when:

1. On April 4, 2022, Barnes served yet another new complaint against RIPTA in Superior Court, PC-2022-01801 ("Fourth Superior Court Action"), alleging numerous allegations arising from conduct precluded by the Settlement Agreement. Attached as Exhibit A is a copy of the complaint.

2. On April 12, 2022, Barnes requested and received a Notice of Right to Sue from the Rhode Island Commission for Human Rights regarding her Third Charge. Attached as Exhibit B is a copy of the Notice of Right to Sue Letter.  This indicates Barnes' intent to advance to suit.

4895-8368-3871.1 / 088768-1017

34

Including these two breaches, Barnes has now breached the Settlement Agreement four times: the Third Superior Court Action and associated appeal, the Second Charge, the Third Charge, and the Fourth Superior Court Action. Barnes' request of a Right to Sue on the Third Charge evinces her intention to proceed to suit on that matter. Barnes must be stopped. For these reasons, and the reasons set forth in RIPTA's Memorandum, RIPTA requests this Court enter judgment on Counts I and II of the Complaint in RIPTA's favor and issue an order as requested.

Respectfully submitted,

RHODE ISLAND PUBLIC TRANSIT AUTHORITY,

By its attorneys,

/s/Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell (#6970)
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI  02903
401.824.2500
401.633.6853 (fax)
jfolgerhartwell@littler.com

May 16, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of May, 2022, the foregoing was e-filed and served through email and regular mail on the party below. The document electronically filed is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916
mickeda5@gmail.com

/s/ Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell

2

4895-8368-3871.1 / 088768-1017

Case 1:22-cv-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 291 of 689 PageID
#: 646
Case 1:22-cv-00213-JJM-PAS   Document 1-9   Filed 05/31/22   Page 34 of 346   PageID 35

# EXHIBIT A

36

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

STATE OF RHODE ISLAND
PROVIDENCE, SC

SUPERIOR COURT

| | |
|---|---|
| RHODE ISLAND PUBLIC TRANSIT AUTORITY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICKEDA BARNES, | ) |
| | ) |
| Defendant. | ) |

Civil Action No. PC-2020-06065

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to R.I. Sup. Ct. R. Civ. P. 56(a), Plaintiff Rhode Island Public Transit Authority ("RIPTA" or "Authority"), moves for partial summary judgment against Defendant Mickeda Barnes ("Barnes" or "Defendant") as to Counts I and II for declaratory judgment and breach of contract, respectively.[1]   In support of this Motion, Plaintiff relies upon the accompanying Memorandum of Law, affidavits, and other evidentiary materials filed herewith.

---

[1] At this time, RIPTA seeks summary judgment with regard to liability and a declaratory order.  RIPTA expressly reserves its right to seek damages in a subsequent proceeding should the court grant the motion as to liability.

4867-5600-8974.1 / 088768-1017

37

Case Number: PC-2020-08986
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

Respectfully submitted,

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY,

By its attorneys,


/s/Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell (#6970)
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI  02903
401.824.2500
401.633.6853 (fax)
jfolgerhartwell@littler.com

March 7, 2022


## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of March, 2022, the foregoing Motion for Partial

Summary Judgment was e-filed and served through email and regular mail on the party below.

The document electronically filed is available for viewing and/or downloading from the Rhode

Island Judiciary's Electronic Filing System.

Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916
mickeda5@gmail.com


/s/ Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell


4867-5600-8974.1 / 088768-1017

2

38

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 294 of 689 PageID
#649
Case 1:22-cv-00213-JJM-PAS    Document 1-5    Filed 05/31/22    Page 37 of 346   PageID 38

STATE OF RHODE ISLAND
PROVIDENCE, SC                                              SUPERIOR COURT

| | |
|---|---|
| RHODE ISLAND PUBLIC TRANSIT AUTORITY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICKEDA BARNES, | ) |
| | ) |
| Defendant. | ) |

Civil Action No. PC-2020-06065

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION FOR SUMMARY JUDGMENT

Pursuant to R.I. R. Civ. P. 56(a), Plaintiff Rhode Island Public Transit Authority ("RIPTA" or "Authority"), moves for partial summary judgment against Defendant Mickeda Barnes ("Barnes" or "Defendant") (collectively, the "Parties") as to Counts I and II for declaratory judgment and breach of contract, respectively.[1]  Barnes has, three times, violated her 2018 settlement agreement ("Settlement Agreement") by commencing three actions against RIPTA – one in the Rhode Island Superior Court and two others with the Rhode Island Commission for Human Rights – seeking damages and reinstatement relating to her former employment with the Authority.  After having defended itself against an onslaught of claims by Barnes for almost two decades, RIPTA contracted with her in 2018 to reach a final resolution by paying her one hundred fifty thousand dollars ($150,000) in consideration for her assent to a comprehensive release (the "Settlement Agreement").  Within a matter of months after signing the Settlement Agreement, Barnes hailed RIPTA back into litigation in Superior Court, and subsequently filed a charge with

---

[1] At this time, RIPTA seeks summary judgment with regard to liability and a declaratory order.  RIPTA expressly reserves its right to seek damages in a subsequent proceeding should the court grant the motion as to liability.

4820-5011-0160.10 / 088768-1017

39

Case Number: PC-2020-06986
Filed In Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

the Rhode Island Commission for Human Rights, seeking damages. Most recently, on December 6, 2021, Barnes filed yet another charge seeking reinstatement. As a result of Barnes' breaches, RIPTA moves this Court for a declaratory judgment and a court order, that will hopefully bring Barnes' campaign of litigation against RIPTA to an end.

## I.    BACKGROUND FACTS

### A.    Barnes' History of Litigation Against RIPTA.

RIPTA hired Barnes as a bus driver in November 2002 and terminated her employment more than five (5) years ago, on February 15, 2016. See Affidavit of S. Colantuono ("Colanuono Aff."), ¶ 4, Ex. A. Barnes' personnel record is littered with disciplinary infractions, workers' compensation claims, union grievances, and unfounded accusations of discrimination against co-workers, supervisors, attorneys, and even the Rhode Island judiciary.[2]

Between 2002 and 2016, Barnes instituted the following legal actions against RIPTA:

---

[2] Without cataloguing each detail of Barnes' unacceptable conduct during her employment, a few of the "highlights" of Barnes' workplace conduct include:

- On December 1, 2006, Barnes delivered a handwritten complaint to RIPTA's management, describing, in detail, her menstruation cycle and anatomy. Barnes taped a tampon to the note, presumably for emphasis.

- On March 27, 2007, Elizabeth Grady, a Beacon Insurance Company representative, reported to RIPTA that, during her conversation with Barnes about a workplace injury, Barnes became agitated when she learned she needed to return to work and threatened that "[i]f I go back to work, I am going to run the bus off the road."

- On February 12, 2015, Barnes claimed she was injured while on duty in Cranston. Cranston firefighters responded to the scene. Barnes engaged in an unwelcome, sexually explicit conversation with the firefighters. The firefighters complained that they were offended by this conduct. Barnes received a 30-day suspension.

S. Colantuono Aff. ¶ 7, Ex. A. The above is not a complete summary of all Barnes' workplace infractions and altercations with coworkers and supervisors, but provides only some examples.

2

4820-5011-0160.10 / 088768-1017

Case Number: PC-2020-00095
Filed In Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

- Beginning in 2004, Barnes filed the first of 19 workers' compensation claims against RIPTA, including 14 workers' compensation petitions filed between 2008 and her termination from employment in 2016. [3] Id., ¶ 6, Ex. A.

- In 2015, Barnes filed a charge against RIPTA with the Rhode Island Commission for Human Rights, alleging color, race, and disability discrimination, along with retaliation ("First Charge"). See 07.21.2015 Charge & 7.28.16 Amended Charge, Ex. B.[4]

- On or about August 15, 2016, Barnes wrote a letter to the White House and then-President Barack Obama, attempting to litigate discrimination claims against RIPTA pursuant to the National Transit Security Act, 6 U.S.C. §§ 1142 et seq. ("NSTA Claim"). See 8.15.16 Letter to White House ("DOL Ltr."), attached as Ex. C. The White House formally referred this matter to the United States Department of Labor and an administrative hearing process commenced. [5]

---

[3] Since 2015, Barnes has filed a total of twenty-five (25) additional petitions in the Rhode Island Workers' Compensation Court. Four of those petitions proceeded through trial before Chief Judge Robert M. Ferrieri, culminating in a Bench Decision rendered on October 24, 2019. Barnes filed appeals, and those matters remain pending, before the Appellate Division of the Workers' Compensation Court. Of note, Barnes was represented by counsel at trial but filed her appeals as a pro se litigant. In addition, Barnes has more recently commenced a new round of pro se filings in the Workers' Compensation Court. The three most recent petitions, filed on August 31, 2021 and October 22, 2021, have totaled thousands of pages, inclusive of a series of motions requesting numerous forms of relief under a variety of irrelevant federal, state and regulatory schemes over which the Workers' Compensation Court has no jurisdiction. In the context of the recent pro se filings, Judge Steven A. Minicucci graciously allowed Barnes hours to argue on her own behalf at the pretrial conference stage under R.I. Gen. Laws § 28-35-20. These arguments have consisted of little more than an aggressive repetition of grievances, accusations, and threats against RIPTA, the Court, the physicians involved in her claims, among many others. Of the three recent pro se petitions, one remains pending before the Workers' Compensation and is scheduled for Initial Hearing before Judge Minicucci on January 11, 2022. The Initial Hearing is a trial scheduling conference in which the parties typically, among other things, advise the Court of the status of the claim and their respective plans for trial.

[4] In Rhode Island, a court may take judicial notice of court and agency records. See Goodrow v. Bank of Am., N.A., 184 A.3d 1121, 1126 (R.I. 2018).

[5] On the eve of a conference with an administrative law judge at the Department of Labor, Barnes voluntarily dismissed the claim. She also sued her Union in 2016, filing a Charge of discrimination against it with the Rhode Island Commission for Human Rights. That matter proceeded to federal court. The case is still pending.

3

4820-5011-0160.10 / 088768-1017

Case Number: PC-2020-06095
Filed In Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

Barnes commenced the following litigation against RIPTA after her termination from employment, but before she signed the Settlement Agreement:

- On October 11, 2017, Barnes commenced a lawsuit against RIPTA in the Rhode Island Superior Court, C.A. No. PC-2017-4847, raising the claims she pursued in the First Charge. RIPTA removed the matter to the United States District Court for the District of Rhode Island on November 2, 2017. See C.A. No. 1:17-cv-00505-JJM-PAS ("Federal Court Action"), Ex. D.

- In April 2018, during active settlement discussions between RIPTA's counsel and Barnes' attorney Sonya Deyoe to finalize language of the Settlement Agreement —and unbeknownst to Deyoe—Barnes filed yet another lawsuit against RIPTA in Superior Court, attempting to adjudicate her dissatisfaction with her workers' compensation claims ("Second Superior Court Action"). See C.A. No. PC-2018-2287, Ex. E.

- On April 25, 2018, Defendant signed the Settlement Agreement, purportedly, to resolve the Federal Court Action, the Second Superior Court Action, and all other claims that Defendant had as of the Settlement Agreement's effective date of April 25, 2018. Defendant received $150,000 as consideration. See S. Colantuono Aff., ¶¶ 8-9, Ex. A, Settlement Agreement, attached thereto as Exhibit 1 (hereinafter "Settlement Agreement").

Barnes brought the following claims after she signed the Settlement Agreement:

- In August 2018, just four months after signing the Settlement Agreement, Barnes filed a new 245-page pleading in the Superior Court against RIPTA ("Third Superior Court Action"). See Third Sup. Ct. Action Compl., C.A. No. PC 2018-

4

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 298 of 689 PageID
#1653
Case 1:22-cv-00213-JJM-PAS    Document 1-9    Filed 05/31/22    Page 41 of 346    PageID 42

Case Number: PC-2020-06965
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

6082 (bulk of documents omitted due to volume), Ex. F. In this new action, Barnes

sought to adjudicate, not only her workers' compensation claims, but also claims

for "breach of contract," "reclassification," and "Title VI." Tr. of 1/9/19 Hearing

("Tr."), at 43:1-4, relevant portions attached as Ex. G. Barnes sought $2.5 million

in damages for past workplace injuries, alleged that RIPTA should have offered her

more money in the Settlement Agreement, and demanded "a full and complete

settlement of all claims and injuries that are work related to be paid up front. . . ."

Third Sup. Ct. Action Compl., at page 8, Ex. F. RIPTA successfully moved to

dismiss the workers' compensation claims in the Third Superior Court Action. See

J. Long Order dated 1/18/19 ("Order"), Ex. H. Judge Long permitted Defendant

two weeks to amend her complaint to add her purported claims for "breach of

contract," "reclassification," and "Title VI." See id.

- Barnes did not amend her complaint; rather, on January 23, 2019, Barnes appealed

  the Order to the Rhode Island Supreme Court. See 1.23.19 Notice of Appeal, Ex.

  I. On December 10, 2020, the Rhode Island Supreme Court affirmed Judge Long's

  decision below, and dismissed the appeal. The Rhode Island Supreme Court

  reasoned that the Superior Court lacked jurisdiction over Barnes' workers'

  compensation claims and that Barnes' other claims were barred by the valid

  Settlement Agreement. Barnes v Rhode Island Public Transit Auth., No. 2019-132-

  Appeal (PC 18-6082), December 10, 2020, at 9-10, attached as Ex. J (emphasis

  added).

- On November 20, 2019—while her Rhode Island Supreme Court appeal was still

  pending—Barnes filed another charge of discrimination with the RICHR ("Second

4820-5011-0160.10 / 088768-1017

Case Number: RC-2020-05065
Filed In Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

Charge"), despite the fact that she had not worked at RIPTA for more than three years.  See 11.20.19 Second Charge, Ex. K.  In the Second Charge, Barnes again complained that RIPTA was denying her reinstatement, and had "subjected [her] to years of unlawful employment discrimination."  Id. at ¶3, Ex. K.  Barnes sought individual relief in the form of reinstatement, benefits, and monetary damages.  The Commission investigator indicated that Barnes was seeking relief for claims that predated the Settlement Agreement.  See Email from A. Cote, dated 8/19/20, attached as Ex. L.  Barnes then asked for, and received, a Right to Sue so that she could proceed to court on these claims.  See 9.3.2020 Right to Sue, attached as Ex. M.

- On December 6, 2021, Barnes filed her most recent charge ("Third Charge") seeking reinstatement and potentially other damages.  See 12.6.21 Barnes Charge, attached as Ex. N.  Again, these claims, at least in part, allegedly arise out of the "terms and conditions" of her employment with RIPTA (now more than 5 years ago), and the alleged "years" of discriminatory treatment at RIPTA's hands, in addition to her workers' compensation claims.[6]  See id. at 1-2.

**B.    Relevant Provisions of the Settlement Agreement.**

As noted above, on April 25, 2018, Barnes signed the Settlement Agreement and received one hundred fifty thousand dollars ($150,000) in consideration for her release of claims and other promises contained therein.  Prominent plaintiff's side attorney Sonya Deyoe represented Barnes

---

[6] Barnes continues her constant deluge of against RIPTA in the Workers' Compensation Court, as set forth in footnote 3, supra.

4820-5011-0160.10 / 088768-1017

6

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 300 of 689 PageID
Case 1:22-cv-00213-JJM-PAS    Document 1-655 Filed 05/31/22    Page 43 of 346    PageID 44
#1-655

Case Number: PC-2020-06966
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

throughout the negotiation and through the execution of the Settlement Agreement.[7] See Benjamin Salzillo Affidavit ("Salzillo Aff."), at ¶ 3, Ex. O. Prior to entering into the Settlement Agreement, the parties participated in a mediation presided over by Judge Feeney of the Workers' Compensation Court. This mediation was voluntary. During mediation, Barnes was represented by both Sonja Deyoe and Stephen Dennis. Id. at ¶¶ 3 & 5. After the mediation concluded, Barnes' attorney, Stephen Dennis, wrote to RIPTA's workers' compensation counsel Nicholas Mancini and requested "to get the Workers' Compensation and the discrimination settlements separated," so that the "discrimination settlement could go forward" without resolution on the workers' compensation matters. See Ltr. from S. Dennis to N. Mancini, dated 12/20/17, attached to M. Barnes Supreme Court Appeal Brief, Ex. P.[8]

Some months later, Ms. Deyoe finalized the Settlement Agreement on behalf of Barnes. Colantuono Aff, at ¶ 8, Ex. A. Barnes signed on April 25, 2018. See Settlement Agreement at page 11, Ex. 1 to Colantuono Aff. In entering into the Settlement Agreement, the Authority was hopeful the substantial sum and the comprehensive release would finally end Barnes' campaign of litigation. Salzillo Aff., ¶ 4, Ex. O. Barnes had twenty-one (21) days to consider whether to execute the Settlement Agreement and seven (7) days to revoke the Agreement after she executed it. See Settlement Agreement, ¶ 3, Ex. 1 to Colantuono Aff. She also acknowledged—in a bolded provision entitled "Acknowledgment of Voluntariness and Understanding"—that she: (i) received a full opportunity to review the terms of the Settlement Agreement; (ii) carefully read and

---

[7] Stephen Dennis represented Barnes in her workers' compensation matters, although he ultimately withdrew. Attorney Leone represents Barnes in a product liability suit she has against Genfare, the manufacturer of a fair box used on RIPTA busses.

[8] As Barnes included this letter as part of her pleadings to the Rhode Island Supreme Court, the Court may take judicial notice of its contents. See Goodrow, 184 A.3d at 1126. Indeed, courts may take judicial notice of matters that are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned; see Fed. R. Evid. 201(b) and (c); such as court orders, dockets, opinions, or proceedings in other courts. See White v. Gittens, 121 F.3d 803, 805, n.1 (1st Cir. 1997); D'Amario v. Butler Hospital, 921 F.2d 8, n.1 (1st Cir. 1990).

7

4820-5011-0160.10 / 088768-1017

Case Number: PC-2020-06985
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

understood all of its provisions; and (iii) was knowingly entering the Agreement.  Id., ¶ 17, Ex. 1

to Colantuono Aff.  The Settlement Agreement explicitly carved out from the General Release,

Barnes' workers' compensation claims.  Id., ¶ 2(d), Ex. 1 to Colantuono Aff.  The Settlement

Agreement became effective on May 2, 2018.  Id., ¶ 3, Ex. 1 to Colantuono Aff.

Pursuant to the Settlement Agreement, Barnes: (1) agreed to a release of any claim or

demand against RIPTA pre-dating the effective date of the Agreement ("General Release"); (2)

waived the right to seek individual relief against RIPTA, including in any charge asserted before

a government agency; and (3) waived the right to seek future employment with RIPTA, whether

by reinstatement or rehire.  Id., ¶¶ 2, 10, Ex. 1 to Colantuono Aff.  The Settlement Agreement

provided, in part:

> Release of Claims
>
> In exchange for and in consideration of the payment received pursuant to this
> Agreement, Employee agrees to release the Authority, its present and former direct
> and indirect parent entities, direct and indirect subsidiaries, partners, insurers,
> successors and assigns, and their present and former employees, officers, directors,
> shareholders, agents, attorneys and representatives (the "Releasees") from each and
> every claim or demand of every kind arising up to the date Employee signs this
> Agreement, including but not limited to those claims made by Employee in the
> Lawsuits.[9]  This includes a release of any rights or claims for any and all types of
> relief, including but not limited to back pay, front pay, compensatory and punitive
> damages, attorneys' fees and costs, and equitable orders.

Id., ¶ 2(a), Ex. 1 to Colantuono Aff.

A waiver of right to individual relief, as follows:

> [B]y signing this Agreement Employee is waiving rights to individual relief
> (including backpay, frontpay, reinstatement or other legal or equitable relief) in any
> charge, complaint lawsuit, or other proceeding brought by the Employee.

Id., ¶ 18, Ex. 1 to Colantuono Aff.

A No Future Employment provision, as follows:

---

[9] "Lawsuits" is defined on page 1 of the Settlement Agreement to refer both to the Federal Court Action and the
Second Superior Court Action.

4820-5011-0160.10 / 088768-1017

Case Number: PC-2020-06966
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

> Employee agrees not to reapply for employment with the Authority, any subsidiary, related, affiliated or parent entity or any entity which is now or in the future owned, controlled, [or] acquired by the Authority. Employee further agrees that if she reapplies or applies for employment with the Authority, or any entity described above, her application may be denied on the basis of this Agreement.

Id., ¶ 10, Ex. 1 to Colantuono Aff.

### C.    The Rhode Island Supreme Court Opinion.

As noted above, RIPTA moved to dismiss the Second Superior Court Action on two grounds: (1) the Superior Court lacked jurisdiction over Barnes' workers' compensation claims; and (2) the Settlement Agreement barred her other claims. On January 9, 2019, this Court, Hon. Justice Melissa A. Long, heard RIPTA's motion. See Tr. at 1, Ex. G. After a lengthy colloquy with Barnes, Judge Long dismissed Barnes' workers' compensation claims for lack of jurisdiction and permitted Barnes additional time within which to amend her complaint and add her claims for breach of contract, Title VI claims, and claims for so-called "reclassification," that she referenced during the hearing on RIPTA's motion to dismiss. Id. at 40-44, Ex. G. Instead of filing an amended complaint, Barnes appealed Judge Long's order of dismissal to the Rhode Island Supreme Court. See 1.23.19 Notice of Appeal, Ex. I. On December 10, 2020, the Supreme Court affirmed the dismissal, reasoning that the Superior Court lacked jurisdiction over Barnes' workers' compensation claims. See Barnes, No. 2019-132-Appeal, at 9-10, Ex. J (emphasis added). Significantly, the Rhode Island Supreme Court also reasoned that, as to Barnes' other claims, "the settlement agreement flatly precludes [her] from bringing them." Id., at 9, Ex. J (emphasis added).

### III.    STANDARD OF REVIEW

Under R.I. R. Civ. P. 56, the Court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." R.I. Super. R. Civ.

9

4820-5011-0160.10 / 088768-1017

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 303 of 689 PageID

Case Number: PC-2020-06986
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

#: 658 cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 46 of 346    PageID 47

P. 56(c). "Once the moving party establishes 'the absence of a material factual issue, the party opposing the motion has an affirmative duty to establish either by affidavit or by other means the material issue of fact to be decided.'" Hexagon Holdings, Inc. v. Carlisle Syntec, Inc., 199 A.3d 1034, 1038 (R.I. 2019) (quoting Grissom v. Pawtucket Trust Co., 559 A.2d 1065, 1066 (R.I. 1989)). If no genuine issue of material fact exists, the court must then determine whether the moving party is entitled to judgment as a matter of law. Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1225 (R.I. 1996).

## IV.    ARGUMENT

### A.    The Declaratory Judgment

For the reasons stated herein, RIPTA asks this Court to issue an order declaring that: (1) the Settlement Agreement is a valid and enforceable contract; (2) the Settlement Agreement precludes Barnes from obtaining reemployment at RIPTA; (3) the Settlement Agreement precludes Barnes from bringing any claims that pre-date the Settlement Agreement (including, but not limited to, employment discrimination, harassment or retaliation claims); and (4) the Settlement Agreement prevents Barnes from seeking or obtaining any individual relief (monetary or otherwise) from the Commission, or any other tribunal, arising out of her employment at RIPTA.

RIPTA is entitled to a declaratory judgment regarding the validity and meaning of the Settlement Agreement terms. Rhode Island's Uniform Declaratory Judgments Act ("UDJA"), G.L. 1956 § 9-30-1 et seq., "vests in the Superior Court the 'power to declare rights, status, and other legal relations.'" Bradford Assocs. v. R.I. Div. of Purchases, 772 A.2d 485, 489 (R.I. 2001) (quoting § 9-30-1). The purpose of the UDJA is to protect parties, resolve controversies, and "afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Haviland v. Simmons, 45 A.3d 1246, 1257 (R.I. 2012) (quoting R.I. Gen. Laws § 9-

10

4820-5011-0160.10 / 088768-1017

30-12). Indeed, the UDJA provides, in relevant part, "[a]ny person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the instrument [or] contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." R.I. Gen. Laws § 9-30-2. The Settlement Agreement is just such a "contract."

Our Supreme Court has stated that the Superior Court's power, pursuant to the UDJA, should be "broadly construed, to allow the trial justice to 'facilitate the termination of controversies.'" See Bradford, 772 A.2d at 489 (quoting Capital Properties, Inc. v. State, 749 A.2d 1069, 1080 (R.I.1999)). Although "[a] necessary predicate to a court's exercise of its jurisdiction under the [UDJA] is an actual justiciable controversy"; Sullivan v. Chafee, 703 A.2d 748, 751 (R.I.1997); such a controversy exists "'so long as plaintiff(s) present sufficient facts giving rise to some conceivable legal hypothesis which will entitle plaintiff to some relief against defendant(s).'" FleetBoston Fin. Corp. v. Advanta Corp., No. PB 03-0220, 2003 R.I. Super. LEXIS 112, at *15 (Super. Ct. Aug. 13, 2003) (quoting Millett v. Hoisting Engineers' Licensing Division, 119 R.I. 285, 293, 377 A.2d 229, 234 (R.I. 1977)).

Indeed, the UDJA is the best mechanism for resolving issues regarding validity, effectiveness, and scope of a release document such as the Settlement Agreement. Family Dollar Stores of R.I. v. Araujo, 204 A.3d 1089, 1099 (R.I. 2019) ("[T]he [UDJA] clearly allows the holder of a release document . . . to seek from the Superior Court a declaration as to the validity and enforceability of the release."); W.P. Assoc. v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994); Travelers Ins. Co. v. Nastari, 94 R.I. 55, 177 A.2d 778 (1962). Where, as here, the Settlement Agreement is clear on its face, "judicial construction is at an end and the terms of the contract must be applied as written." Merrimack Mut. Fire Ins. Co. v. Dufault, 958 A.2d 620, 625 (R.I. 2008) (citation omitted). "In deciding whether or not to issue a declaratory judgment with respect to [a]

11

Case Number: PC-2020-08985
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

. . . release . . . the Superior Court [is] . . . presented with the very limited task of interpreting a contract between the parties." Family Dollar, 204 A.3d at 1098-99. This Court has such a limited role here because "[p]rompt and definitive resolution of release-related issues is one of the many salutary efficiencies made possible by the Uniform Declaratory Judgments Acts." Id. at 1099.

1.    **The Settlement Agreement is a Valid and Enforceable Contract.**

The Rhode Island Supreme Court recognized the validity of the Settlement Agreement in its December 10, 2020 opinion when it concluded that the Settlement Agreement "flatly precludes" Barnes from asserting non-workers' compensation claims relating to her employment with RIPTA. See Barnes, No. 2019-132-Appeal, at 9, Ex. J. This is not surprising, as Rhode Island courts have a policy to encourage the amicable settlement of disputes. Ryan v. Roman Catholic Bishop, 941 A.2d 174, 186 (R.I. 2008); Homar, Inc. v. N. Farm Assocs., 445 A.2d 288, 290 (R.I. 1982) ("Our policy is always to encourage settlement. Voluntary settlement of disputes has long been favored by the courts."). To that end, courts must "give significant deference to the terms of a general release until [it] ha[s] been furnished with an adequate reason to do otherwise." Pardey v. Blvd. Billiard Club, 518 A.2d 1349, 1355 (R.I. 1986) (emphasis added). If the converse were true and "releases were taken lightly and rescinded, the incentive to settle would dissipate and parties opting for such a course could never be secure from litigation." Griffin v. Bendick, 463 A.2d 1340, 1345 (R.I. 1983). Excessive judicial scrutiny of settlement agreements undercuts the public policy in favor of voluntary settlements. See Ryan, 941 A.2d at 186.

Indeed, a "'release is a contractual agreement, and the various principles of the law of contracts govern the judicial approach to a controversy concerning the meaning of a particular release.'" Family Dollar, 204 A.3d at 1098 (quoting Young v. Warwick Rollermagic Skating Ctr., 973 A.2d 553, 558 (R.I. 2009)). "A valid contract requires only 'competent parties, subject matter,

12

4820-5011-0160.10 / 088768-1017

a legal consideration, mutuality of agreement, and mutuality of obligation.'" DeAngelis v. DeAngelis, 923 A.2d 1274, 1279 (R.I. 2007) (quoting R.I. Five v. Med. Assocs. of Bristol County, Inc., 668 A.2d 1250, 1253 (R.I. 1996)); Lamoureux v. Burrillville Racing Ass'n, 91 R.I. 94, 98, 161 A.2d 213, 215 (1960). Rhode Island law provides a general presumption in favor of Barnes, that she possesses the capacity to contract. See State of Rhode Island v. Vieira, Ca. No. K1-2009-451A, 2012 WL 1948337, at *6 (citing Landmark Med. Ctr. v. Gauthier, 635 A.2d 1145, 1148 (R.I. 1994)).

Mutuality of agreement and/or mutual assent merely means an intention to promise or be bound through offer and acceptance. Filippi v. Filippi, 818 A.2d 608, 623-24 (R.I. 2003); Smith v. Boyd, 553 A.2d 131, 133 (R.I. 1989). The parties' signatures on the document are sufficient evidence of mutual assent. Homonoff v. Forte, Nos. PC-2008-1467, PC-2008-6628, 2013 R.I. Super. LEXIS 15, at *22-23 (Super. Ct. Jan. 16, 2013) (citing Davis Sewing-Mach. Co. v. Richards, 115 U.S. 524, 525, 6 S. Ct. 173, 29 L. Ed. 480 (1885)).[10]

Mutuality of obligation is achieved when both parties are bound by the making of reciprocal promises. Davis v. Ford Motor Credit Co., 882 A.2d 557, 560 (R.I. 2005). Such mutuality is sufficient to fulfill the consideration requirement. Id. A settlement agreement that provides for monetary payment, in exchange for a release of claims, meets the consideration requirements to form a valid and binding contract. Id. (an agreed-upon $100k payment, in exchange for a release of claims presents circumstances in which "[i]t is absolutely clear that a valid and enforceable contract was formed"); Homonoff, 2013 R.I. Super. LEXIS 15, at *26-28

---

[10] "A party who signs a written contract is presumed to have read and understood its terms." Proulx v. Brookdale Living Cmntys. Inc., 88 F. Supp. 3d 27, 32 (D.R.I. 2015) (citing Ricci Drain-Laying Co., Inc. v. Baskin, 744 A.2d 406 (R.I. 1999)). This holds true whether the person actually "reads and understands [the terms] or not." Rivera v. Gagnon, 847 A.2d 280, 285 (R.I. 2004). "[I]t has long been a settled principle that 'a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents.'" Manchester v. Pereira, 926 A.2d 1005, 1012 (R.I. 2007) (quoting F.D. McKendall Lumber Co. v. Kalian, 425 A.2d 515, 518 (R.I. 1981)); Rivera, 847 A.2d at 285.

4820-5011-0160.10 / 088768-1017

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 307 of 689 PageID
#: 662
Case Number: PC-2020-06965
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 50 of 346    PageID 51

(release of claims and/or promise to forebear from bringing suit constitutes legally adequate consideration).

In addition to the above, the Rhode Island Supreme Court has held that the validity of a general release should be assessed in light of "the experience of the person executing the release, and . . . the question of whether the person executing it was represented by counsel." Miller v. Metro. Prop. & Cas. Ins. Co., 111 A.3d 332, 340 (R.I. 2015) (quoting Guglielmi v. Rhode Island Hosp. Trust Fin. Corp., 573 A.2d 687, 689 (R.I. 1990)). Indeed, the advice of an attorney is a "strong indicator that a release was entered into voluntarily and in the best interests of the party executing the document." Miller, 111 A.3d at 341-42.

Here, Barnes does not dispute that she signed the contract. Barnes never exercised her right of revocation, and accepted the payment of one hundred fifty thousand dollars ($150,000) from RIPTA. See Salzillo Aff., ¶ 6, Ex. O. The Settlement Agreement contains a multitude of reciprocal promises, the most obvious of which is payment by RIPTA of $150,000 in exchange for a broad general release of claims. See Settlement Agreement, ¶¶ 1 & 2, Ex. 1 to Colantuono Aff. In addition, there is no question that Barnes not only has significant personal experience in various types of litigation, but also engaged competent attorneys throughout the course of her claims. Barnes had the assistance of prominent plaintiff-side employment attorney Sonja Deyoe to represent her in the NSTA Claim, the First Charge, the First Superior Court Action, the Second Superior Court Action, the Federal Court Action, and the settlement negotiations, up through execution and release of payment.[11] See Salzillo Aff, ¶ 3, Ex. O; 2.13.17 Dept. of Labor Entry of Appearance for S. Deyoe, Ex. Q; 7.14.17 RICHR Right to Sue, Ex. T; 10.11.17 USDC Complaint

---

[11] Ms. Deyoe also represents Defendant in her lawsuit against her union, which is currently pending in the U.S. District Court, for the district of Rhode Island. See USDC Docket regarding Barnes v. Amalgamated Transit Union Local 618, Ex. U.

14

4820-5011-0160.10 / 088768-1017

Case Number: PC-2020-06085
Filed In Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

signed by S. Deyoe, at 4, Ex. D; 4.26.18 Superior Court Limited Scope Entry of Appearance for

S. Deyoe, Ex. R[12].   Furthermore, Stephen Dennis represented Barnes throughout her workers'

compensation petitions and the discussions concerning settling her workers' compensation claims

as evidenced by his December 20, 2017 letter to Mr. Mancini requesting that the discrimination

claim be "separated" from Barnes' workers' compensation settlement discussion.  See Ltr. from

S. Dennis to WC Court, Ex. P; Salzillo Aff,, ¶ 5, Ex. O.  Thus, it is unassailable that the Settlement

Agreement is a valid and enforceable instrument with which Barnes became and remains obliged

to comply.

### 2.    The Settlement Agreement Precludes Barnes from Obtaining Reemployment at RIPTA.

Where, as here, the Release is clear on its face, "judicial construction is at an end and the

terms of the contract must be applied as written." Merrimack, 958 A.2d at 625 (citation omitted).

"Indeed, summary judgment founded on a contract such as the Release only requires the Court to

analyze the contract and enforce its terms[.]"  Olamuyiwa v. Zebra Atlantek, Inc., No. WC-2005-

0692, 2009 R.I. Super. LEXIS 112, at *9-10 (R.I. Super. Ct. Aug. 28, 2009), aff'd, 45 A.3d 527

(R.I. 2012).  In Family Dollar, 204 A.3d at 1098-99, the Rhode Island Supreme Court clarified this

principle:

> In deciding whether or not to issue a declaratory judgment with respect to whether
> the release at issue serves as a bar to [plaintiff's] . . . recovery . . . the Superior Court
> was originally and will be hereafter presented with the very limited task of
> interpreting a contract between the parties.  To reiterate, the only issue in the case
> before the Superior Court with respect to the declaratory judgment count was the
> validity and effectiveness of the release contained in the settlement agreement.

(emphasis added).  This is so because "[p]rompt and definitive resolution of release-related issues

is one of the many salutary efficiencies made possible by the Uniform Declaratory Judgments

---

[12] In Rhode Island, a court may take judicial notice of court records. Goodrow, 184 A.3d at 1126 .

4820-5011-0160.10 / 088768-1017

Case Number: PC-2020-06986
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 52 of 346    PageID 53

Acts." Id. at 1099. Courts routinely approve private settlement agreements that contain a no-rehire provision. See Robinson v. Kist Alf Inc., No. 6:12-cv-1341-Orl-36KRS, 2013 U.S. Dist. LEXIS 143868, at *5 & *10 (M.D. Fla. Sep. 3, 2013).

The Settlement Agreement provides, in pertinent part:

No Future Employment

Employee agrees not to reapply for employment with the Authority, any subsidiary, related, affiliated or parent entity or any entity which is now or in the future owned, controlled, [or] acquired by the Authority. Employee further agrees that if she reapplies or applies for employment with the Authority, or any entity described above, her application may be denied on the basis of this Agreement.

Settlement Agreement, ¶ 10, Ex. 1 to Colantuono Aff. The unambiguous terms of the agreement provide that Barnes is not entitled to reemployment, and any employment application may be denied on the basis of the Agreement. Thus, RIPTA is entitled to a declaratory judgment providing that the Settlement Agreement precludes Barnes from obtaining reemployment at RIPTA, as she sought to do in the Second Charge and seeks to do in the Third Charge.

   3.    **The Settlement Agreement precludes Barnes from Bringing Any Claims that Pre-date the Agreement, Including Any Claims Arising Out of Her Employment at RIPTA.**

Barnes is precluded from pursuing any claims that predate the effective date of the Settlement Agreement (May 2018), including claims arising out of her employment at RIPTA. The Rhode Island Supreme Court has held an employee who executes a general release is forbidden from later asserting a claim to the Rhode Island Commission for Human Rights, alleging discrimination. In Young v. Warwick Rollermagic Skating Ctr., Inc., 973 A.2d 553, 556, 559 (R.I. 2009), the release provided, in pertinent part, that the employee was releasing "all claims and demands, actions and causes of action . . . on account of, or in any way growing out of any personal injuries . . . . resulting or to result from any and all incidents or injuries occurring during my

16

4820-5011-0160.10 / 088768-1017

54

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 310 of 689 PageID
#: 665
Case Number: PC-2020-05966
Filed In Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 53 of 346    PageID 54

employment." (emphasis in original). Concluding that the release barred the employee's disability claim, the Court reasoned that it was "unable to read the document other than as an all-encompassing release" given the presence of words like "any" and "all" signaling a waiver that was of a "sweeping and comprehensive nature." Id. That same year, in Olamuyiwa, 2009 R.I. Super. LEXIS 112, at *11-12, this Court reaffirmed the principle. The severance agreement in Olamuyiwa, 2009 R.I. Super. LEXIS 112, at *2-3, contained a release provision markedly similar to the language in the Paragraph 2 of the Settlement Agreement. Specifically, it released the employer from all claims arising out of the plaintiff's employment, including any claims asserted under the Rhode Island Fair Employment Practices Act. See id. The Court concluded that the plaintiff had waived his right to recover for his alleged discrimination when he executed the release. Id. at *11. Furthermore, here, the Rhode Island Supreme Court had occasion to view Barnes' Settlement Agreement and concluded that Barnes' non-workers' compensation claims were barred by the valid Settlement Agreement. Barnes, No. 2019-132-Appeal (PC 18-6082), at 9-10, Ex. J.

The release in Paragraph 2 of the Settlement Agreement is clear and unambiguous. The Release of Claims contains language that is equally as broad as the release language in Young and Olamuyiwa; specifically: "[Barnes] agrees to release [RIPTA] . . . from each and every claim or demand of every kind arising up to the date Employee signs this Agreement, including but not limited to those claims made by Employee in the Lawsuits." Barnes signed the Settlement Agreement in April, 2018. See Settlement Agreement at page 11, Ex. 1 to Colantuono Aff. At that point RIPTA had not employed her for approximately two (2) years. See Colantuono Aff., ¶ 8, Ex. A. Based on the Rhode Island Supreme Court's assessment of the Settlement Agreement itself, coupled with its reasoning in Young and Olamuyiwa, this Court's only task is to apply the

17

4820-5011-0160.10 / 088768-1017

Case Number: PC-2020-06986
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

all-encompassing, Release of Claims in paragraph 2 of the Settlement Agreement, at face value. RIPTA is entitled to a declaratory judgment that Barnes may not bring any claims against it – including any claims arising out of her employment – that predate April 25, 2018.

Similarly, RIPTA is entitled to a declaratory judgment that Barnes may not seek any individual relief from the Commission. The Settlement Agreement is clear in that it provides:

> [B]y signing this Agreement Employee is waiving rights to individual relief (including backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint lawsuit, or other proceeding brought by the Employee.

Id., ¶ 18, Ex. 1 to Colantuono Aff. Thus, for the same reasons stated above, RIPTA is entitled to a declaratory judgment that Barnes may not pursue any individual remedy (monetary or otherwise), in any forum (including, but not limited to, the Commission), arising out of her employment with RIPTA.

**B.    The Breach of Contract**

**1.    Barnes Breached the Settlement Agreement When She Pursued the Third Superior Court Action, the Second Charge and the Third Charge.**

As noted above, the Settlement Agreement is a valid and enforceable contract. Furthermore, the claims Barnes brought in the Third Superior Court Action, the Second Charge and the Third Charge clearly fell within those she waived in the Settlement Agreement and she therefore breached the agreement when she initiated those claims.

With regard to the Third Superior Court Action, the context of its Motion to Dismiss, RIPTA argued to Judge Long that this Court lacked jurisdiction over Barnes' claims because they were merely a rehashing of her workers' compensation claims. See Tr., at 3:7-11, Ex. G. On January 9, 2019, during oral argument on RIPTA's motion to dismiss, Barnes was adamant that she was not merely asserting workers' compensation claims; rather, Barnes insisted she was

18

4820-5011-0160.10 / 088768-1017

Case Number: PC-2020-06966
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

bringing claims that belonged in Rhode Island Superior Court. Id. at 18:4-16, 20-21:17-9, Ex G.

After a lengthy colloquy with Barnes, Judge Long deduced that Barnes was trying to bring claims

against RIPTA pursuant to "Title VI," for "breach of contract," so-called "reclassification" claims,

and sought $2.5 million dollars in damages because of these claims. Id. at 42-43:23-4, Ex G. The

Rhode Island Supreme Court confirmed the same, when it affirmed Judge Long's decision, noting

that, regarding her non-workers' compensation claims, "the settlement agreement flatly precludes

[her] from bringing them." Barnes, No. 2019-132-Appeal (PC 18-6082), at 9, Ex. J.

    There can be no doubt these claims fall within the phrase "each and every claim or demand"

contained in paragraph 2 of the Settlement Agreement. Cf. Young, 973 A.2d at 559 (disability

claim fell within grips of release waiving employee's right to pursue "all claims and demands . . .

in any way growing out of any personal injuries" executed in connection with settlement of

employee's workers' compensation claim). The Rhode Island Supreme Court confirmed this.

Thus, Barnes breached the Settlement Agreement by asserting claims in the Third Superior Court

Action.

    Barnes' again breached the Settlement Agreement when she pursued individual relief –

including reinstatement – from the Commission, as outlined in the Second Charge and the Third

Charge. In both the Second and Third Charges, Barnes asserted that RIPTA subjected her to "years

of unlawful employment discrimination." Second and Third Charges at 1, Exs. K & N. Because

Barnes was terminated from employment in 2016, this allegation relates to conduct that predated

the Settlement Agreement and was clearly waived by the release language therein. Furthermore,

Cote – the Commission investigator – confirmed in an email Barnes was pursuing claims that

predated her signature on the Settlement Agreement. See Email from A. Cote, attached as Ex. L.

Barnes also alleged in the Second and Third Charges that she was "continually being denied

4820-5011-0160.10 / 088768-1017

Case Number: PC-2020-06985
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

reinstatement," and asked the Commission for relief in the form of reinstatement to her job. Second and Third Charges at 1, Exs. K & N.

To the extent Barnes is seeking from the Commission any benefits or monetary relief relative to her employment with RIPTA, her Second Charge was, and her Third Charge is, barred by the plain language of the paragraph 2 of the Settlement Agreement. See Settlement Agreement, ¶ 2, Ex. 1 to Colantuono Aff (providing that Barnes agreed to waive "any and all types of relief, including but not limited to back pay, front pay, compensatory and punitive damages, attorneys' fees and costs, and equitable orders. . . ."). Furthermore, Barnes explicitly agreed to waive any rehire. See id., ¶ 10, Ex. 1 to Colantuono Aff.[13]  By asking the Commission to grant her reinstatement and other individual relief relating to her so-called "years of unlawful employment discrimination" purportedly caused by RIPTA, Barnes breached the Settlement Agreement for a second and third time.  RIPTA is entitled to a declaratory judgment that Barnes breached the Settlement Agreement when she brough the Third Superior Court Action, the Second Charge, and the Third Charge.[14]

## V.    CONCLUSION

Barnes thrice violated the Settlement Agreement.  The Rhode Island Supreme Court noted as much in its December 10, 2020 opinion.  Although RIPTA would have far preferred Barnes' willing compliance with the Settlement Agreement terms, as evidenced by its payment of generous consideration, Barnes has left the Authority with no choice but to pursue its rights under the Settlement Agreement in hopes that the actions of this Court will bring Barnes' seemingly unending campaign of litigation against RIPTA to an end.  RIPTA respectfully requests this Court

---

[13] Indeed, the Workers' Compensation court has also denied Barnes' request for reinstatement.  See 10.31.2019 Decree, attached as Ex. S.
[14] As noted above, RIPTA reserves its right to seek damages should it prevail on liability.

20

4820-5011-0160.10 / 088768-1017

Case Number: PC-2020-06985
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

enter judgment on Counts I and II of the Complaint in RIPTA's favor and issue an order with the

requested declaratory judgment(s) as provided for in the Settlement Agreement.

Respectfully submitted,

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY,

By its attorneys,

/s/Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell (#6970)
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI 02903
401.824.2500
401.633.6853 (fax)
jfolgerhartwell@littler.com

March 7, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of March, 2022, the foregoing Memorandum in Support

of Motion for Partial Summary Judgment was e-filed and served through email and regular mail

on the party below. The document electronically filed is available for viewing and/or

downloading from the Rhode Island Judiciary's Electronic Filing System.

Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916
mickeda5@gmail.com

/s/ Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell

21

4820-5011-0160.10 / 088768-1017

*Amended Copy Court*
*May 13, 2022*

1

STATE OF RHODE ISLAND

PROVIDENCE, SC

SUPERIOR COURT

*for*
*May 24, 2022*

RHODE ISLAND PUBLIC TRANSIT

AUTHORITY

                    Plaintiff,

            v.

MICKEDA S. BARNES,

                    Defendant

Civil Action No. PC-2020-06065

**MICKEDA BARNES MEMORANUM OF LAW IN SUPPORT OF IT OBJECTION TO RHODE ISLAND PUBLIC TRANSIT AUTHORITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT MICKEDA BARNES AS TO ALL COUNTS FOR DECLARTORTY JUDGEMENT, LIABILITY, AND BREACH OF CONTRACT RESPECTIVELY. DEFENDANT MOTIONS SUPERIOR COURT THAT IT HAS BEEN ESTABLISHED LAW THAT THE EXCLUSION OF JURISDICTION OF THE SUPERIOR CIVIL COURT IS NOT TO BE READILY INFERRED BUT PROHIBIT IS EITHER IMPLIEDLY BARRED OR EXPLICITLY EXPRESSED BY PLAINTIFF, RHODE ISLAND PUBLIC TRANSIT AUTHORITY WHEN PLAINTIFF GIVES NOTICE TO SUPERIOR COURT OF PROVIDENCE COUNTY, RHODE ISLAND AND TO THE ATTORNEY OF THE DEFENDANT ON NOVEMBER 2, 2017 THAT PLAINTIFF RIPTA FILED A NOTICE OF REMOVAL, THEREBY REMOVING THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND A CERTIFIED COPY OF THE NOTICE OF REMOVAL IS ATTACHED TO THE NOTICE. RHODE ISLAND PUBLIC TRANSIT AUTHORITY REMOVAL PURSUANT TO U.S.C. 1331, 1367, 1441 AND 1446(d). BY ITS' ATTORNEY JILLIAN FOLGER HARTWELL.**

In support of this Motion, Defendant relies upon the accompanying Memorandum of law, Affidavits, court orders, medical report, petitions, work schedules, Union Contracts agreement, Board Meeting Minutes. Third party Contracts. Police reports, injury report and all related evidentiary materials filed herewith.

I argue by law Ripta removed Civil Action PC2017-4847 Mickeda Barnes vs Ripta Superior Court action on November 2, 2017, when Ripta secured a Confidentiality requirement mediation in Workers Compensation Court signed by Steven Dennis and Nicholas Mancini and Plaintiffs signature is not there signed by the other two Attorneys on 09/27/2017. Plaintiff knew nothing

1

60

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 316 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 161   Filed 05/31/22   Page 59 of 346   PageID 60

2

about this confidentiality mediation statement until Steven Dennis turned over her files when he withdrew from her workers compensation case. **(EXHIBIT 1).**

In Worker's Compensation Court there was an order and referred Judge Feeney to be assigned to mediate the matter. **(EXHIBIT 2).**

Sonja Deyoe office receives a message from a unknow source that there is a upcoming mediation on 10/13/2017 at 10am.

Steven Dennis sent a letter to Plaintiff's Attorney Sonja Deyoe for her Discrimination Case on October 3, 2017. It is about an upcoming mediation in relation to try and settle all open claims in the above-mentioned client Ms. Barnes and it is scheduled for 10/13/17 at 10 am. **(Exhibit 3).**

Ripta took the Right to sue that Commission of Human Rights gave to me and filed it in Superior Court then removed it from Superior Court once Ripta and it Attorneys secured a mediation in Worker's Compensation Court with a Judge who work with Nicholas Mancini and was from the same Law firm which was a conflict of interest Fraudulent Misrepresentation Inducement" that would the party(plaintiff would have entered into the contract on the terms of the contract if she knew the what she now knows because the defendants held out on information important to her case and misrepresented to save and discriminate against Ms. Barnes. Case Law BV Nederlandse Indelstrie Van Elprodukten Vs Rembrandt Enterprises, INC 2018. New test for Fraudulent Misrepresentation cases like mine.

Ripta removal to Pursuant to 28 U.S.C. 1331, 1367, 1441 and 1446(d) removing the action to the United States District Court for the District of Rhode Island. Jillian Hartwell sent a certificate of Service to Ms. Barnes Attorney Sonja Deyoe on November 2, 2017. On the Removal states the Plaintiffs claims were American with Disabilities Employment under civil rights. The basics of jurisdiction is Federal question U.S. Government not a party. Cause of action 42 U.S.C. 12101, title VII of the Civil rights Act of 1964, 42 U.S.C. 2000e. Defendant also claims Plaintiff claims disability, race, and sex discrimination in connection with her termination from employment. Plaintiff is also request Jury demand. This form was dated and signed by Attorney Jillian Hartwell representing Ripta. **(EXHIBIT 4)**

Defendant's Attorney in the notice of removal gives a background to the acceptance of service of plaintiff Mickeda Barnes commenced Civil Action against Defendant in Providence Superior Court PC-2017-4847 which defense counsel accepts on October 12, 2017.

On October 13, 2017, Ripta had already secured a mediation order wit worker's Compensation Court with Judge Feeney who already has a relationship with the Attorneys representing Ripta which violates Mickeda Barnes Civil rights and the State of R.I. code of ethics.

This also violates the laws that were put in place for Ripta and the Bylaws for Ripta's Board members. Ms. Barnes was entitled to an arbitration due to her Union Contract that she was denied and Ms. Barnes was denied her Jury Trial in Court as the Defendant put in their removal to Federal Court and agreeing that the Court has original jurisdiction over this action pursuant

2

to 28 U.S.C. 1331, because the complaint states two federal causes of action against the defendants" one under the American with Disabilities Act " 42 U.S.C. 12101 et seq for disability discrimination and the other" Title VII,"42 U.S.C. 2000e, et seq for race, and sex related discrimination( Federal Claims"). The Defendants acknowledge that this case is a civil action over which this court has original "Federal Question" jurisdiction under 28 U.S.C. 1331, in that the action arises under the Constitution, Laws, or treaties of the United States.

The Court has supplemental jurisdiction over Plaintiff's State Law Claims for Discrimination in violation of R.I. Gen, Laws 42-112-1 et seq and R.I. gen Laws 28-5-1 et seq. 28 U.S.C. 1367(a). Plaintiff's Federal claims and state arise from the same case or controversy because they emanate from plaintiff's allegations that her employer failed to accommodate her disability, discriminated against her, and terminated her employment because of her disability, race and sex. Therefore, this court has supplemental jurisdiction over plaintiff's state law claims. U.S.C. 1367(a).

Ripta removal to the district is proper where the action from Superior Court is pending, U.S.C. 1441(a) and 1446(a). Ripta request that the Action be removed to the United States District Court for The District of Rhode Island. This document is signed and dated by Jillian Hartwell Representing Ripta on November 2, 2017, by Certificate of Service sent to Mickeda Barnes Attorney Sonja Deyoe. **(EXHIBIT 5).**

**(EXHIBIT 6)** Ripta filed a complaint on August 27, 2020, in Superior Court and made claims that Plaintiff Ms. Barnes Breached an all-claims Settlement released she signed on April 25, 2018, and Stated on Page 2 line 13 on October 11, 2017, Plaintiff's workers compensation claims were not yielding the results she desired she commenced a civil action against Ripta Case number 1:17-CV-00505-JJM-Pas in the United States District Court for the Rhode Island.

In Plaintiff's **Exhibit 4** Plaintiff evidence shows that Ripta's Attorney Jillian Hartwell accepted Service of Mickeda Barnes Attorney Right to Sue complaint Civil action in Superior Court on October 12, 2017 and Ripta's Attorney Jillian Hartwell within 30 days after securing a mediation with the workers compensation court and Judge Feeney on October 13, 2017 summons Plaintiffs Attorney to Workers compensation court for mediation and then withdrew Plaintiffs Civil Claims to Federal Court removing them pursuant to 28 U.S.C. 1331, 1367, 1441 and 1446(d) to the US District Court.

In worker's compensation court pursuant to 28 U.S.C. 1331, 1367, 1441 and 1446(d) does not apply to worker's compensation claims and any agreements agreed to, or any decrees decided in worker compensation claims. To Date Ripta the defendants owe Ms. Barnes all her money for the open claims that have been left open after her illegal termination and Ms. Barnes not properly having her claims heard in U.S. District Court or Superior Court.

Ms. Barnes claims in worker's compensation court cannot be settled with a all claim released Ripta claims Ms. Barnes signed on April 25, 2018, in regard to her right to reinstatement as the laws for RI Employment Act and the Union Contract and workers compensation laws together

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 318 of 689 PageID
#: 673
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 61 of 346   PageID 62

4

require injured workers return back to work after a work injury and a reasonable accommodation offer by the employer.

Board of review Dated February 10, 2017, Decision of Referee **(EXHIBIT 7).** Finding of facts claimants medical released Plaintiff back to work without restrictions June 1, 2015, and her Attorney Requested Reinstatement and the employer IME exam on July 16, 2015, confirmed the claimants returned to work without restrictions.

**(EXHIBIT 8)** Plaintiff has a Affidavit of Physician per section 28-33-8 ( c ) of the Rhode Island Worker's Compensation Act Dated March 4, 2014 from the WCC medical Advisory Board from Plaintiff treating Physical DR. Michael Souza for the Right knee injury that happen on 10-03-2013 and 11-05-2014 that has caused Ms. Barnes RSD in her Right Knee which is a permanent knee injury. The Doctor States that Plaintiff is not at MMI and needs medication and PT and that she can return to her former position as a city bus driver.

Ripta Had already set up Confidential mediation for October 13, 2017, in Worker's Compensation Court while denying Plaintiff her Civil rights of due process in the US District Court. Having the mediation in workers compensation court does not satisfy Plaintiffs claims that were being heard in Superior Court and then removed to U.S. District Court

RIPTA and their Attorney Practices of discrimination has continued to violate Ms. Barnes Civil Rights up to date and that is cause for the Court to grant Ms. Barnes proper relief for the Fraudulent Misrepresentation Inducement by the defendant party and causing unnecessary time spent in and out of court money spent on the cases and preparing for the case and the defamation of Ms. Barnes name. Ms. Barnes deserves to claim further relief and if this is not the proper venue because Ripta removed the claims to Federal Court Plaintiff ask the Court to remove the Case back to Federal Court or give proper relief to Plaintiff for the damages she suffered since 2017.

**(EXHIBIT 9)** Plaintiff submitted to the Court April 25, 2018, agreement with just my signature on the paperwork agreement time stamped by the court on 08/20/2020 and Ben Salzillo signature is not signed on it.  Plaintiff Ripta files yet another complaint on Defendant that she breached the contract and files a new April 25, 2018, contract agreement with Ben Salzillo signature and an affidavit now time stamped 3/7/2022 by Superior Court. Plaintiff had previously argued in court that the contract was invalid because there was no signature on it but the Defendant Ms. Barnes.

**(EXHIBIT 10)** Plaintiff Ripta on 3/7/2022 filed with the court a stipulation of dismissal with prejudice 41(a) it only has Sonja Deyoe and Jillian Hartwell names on it for PC-2018-2287 as her evidence. Defendant also found paperwork that Plaintiff's Ripta Attorney Filed with Superior Court on 8/27/2020 the same stipulation of dismissal 41(a) with only Sonja Deyoe and Jillian Hartwell names on it.

4

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 319 of 689 PageID #1974
Case 1:22-cv-00213-JJM-PAS   Document 191   Filed 05/31/22   Page 62 of 346   PageID 63

5

**(EXHIBIT 11)** <u>Plaintiff Ripta page 1. sends Tom Cute Mickeda Barnes Agent 618- Union President a letter Dated September 17, 2015,</u> in regard to her Grievance no G63513 and G63514 and sections about Ms. Barnes Union contract about the Parties will not discriminate and that the requested remedy is to make whole for all lost wages including overtime seniority and all benefits... section 1.2(b) The Authority is committed to assuring that the dignity of each employee is respected at all times. Management shall treat employees fairly and reasonably, shall assure that employees are not discipline without just cause.

Ripta and her Union 618 allowed Defendant Ms. Barnes to choose a Job in 2015 and in 2016 with her seniority with reasonable accommodations after her work-related injury but did not allow Defendant to return back to work disqualifying Ms. Barnes to use FMLA. In 2016 after Ripta and the Union had Ms. Barnes choose her Job they had Ms. Barnes take her vacation and then illegally terminated the Defendant Ms. Barnes after her vacation. On February 15, 2016, sends out a letter that they terminated the Defendant Ms. Barnes and denied her an arbitration and any of her benefits of weekly payments of reasonable accommodations payments from Ripta allowing her to choose a job but not allowing her to return despite the Union contract, workers compensation laws and the Fair employment act of RI.

In section 1.0 (C) page 1 states that Ms. Barnes the Defendant was not allowed to choose an assignment while she was out on leave. This is consistent with Transportation's Policy.

**(EXHIBIT 12)** Plaintiff's Attorney Jillian Hartwell filed a 41(a)stipulation of dismissal with the United States District of Rhode Island Court House Pursuant to Fed. Rules Civ. P. 41(a) stipulation that the action is hereby dismissed with prejudice and signed by her Attorneys Sonja Deyoe with civil action 1:17-cv-00505-jjm-pas Jillian Hartwell sends out a certificate of service on May 17, 2018 to Sonja Deyoe esq. Defendant goes to the Courthouse and pulls the docket sheet and finds out that Jillian Hartwell on May 17, 2018 files by the Rhode Island public transit Authority a Stipulation and Jillian Folgers Hartwell Entered 05/17/2018. And then on 05/18/2018 the Judge enters an order on 05/18/2018.

Defendant Ms. Barnes argues for this to be legal Her Attorney on her behalf to go to U.S. District Court with Ms. Barnes before Judge McConnel and ask for the 41(a) and that was not done on Defendants behalf and this was done without Defendants knowledge and that the US district Court never gave permission for this case to settle and the Workers Compensation Court had no jurisdiction over the case once the case did not settle as a global settlement as agreed upon on record on December 1, 2017. (EXHIBIT 13) This is the foundation that Plaintiffs Ripta's All claims release was developed and if you read the December 1, 2017, agreed global settlement it has similar terms that is in the April 25, 2018, all claims release and that is why Defendant Ms. Barnes was Fraudulently Misrepresented by Inducement and Defendant would not have entered into these terms if Plaintiff did not withhold back contract terms and contract terms Defendant Ms. Barnes was entitled to by law. (EXHIBIT 14) is a Mutual Agreement that Ms. Barnes entered into with the Plaintiffs once again for the $150,000 or lump sum in the Workers Compensation Case because Defendant has an Appellate Division decision WCC 2017-

6

05115 on February 25, 2022, based on the foregoing discussions and decrees of the trial judge are affirm the employee was denied and dismissed and it has been affirmed.

In this Mutual Ageement on February 5, 2018, speaks about a lump sum in principle on December1, 2017 Ripta should only take a dollar-for-dollar credit of $2000.00 against any indemnity benefits payments payable to Barnes. This agreement does not state Ms. Barnes does not receive any of her insurance policies and any money due to her and owed to her from her contracts and her open claims.

This Mutual Agreement form R.I.G.L. 28-35-6(b) clearly states that it is a workers compensation claim not an all-claims release and this form cannot be used to start or end benefits.

Pursuant to R.I. R.Civ. P. 56(d), (e), (f), and (g), Defendant Mickeda Barnes moves for objection to Plaintiff's memorandum of its partial motion for summary judgement, Count I and II declaratory judgement and breach of contract respectively.

Rhode Island Public Transit Authority's Attorney Jillian Folger Hartwell removed Defendant's action to the United States District State Court for the District of Rhode Island. If Plaintiff's believed Defendant breached the contract Plaintiff had time to pull the agreement and both my Attorneys who was responsible for the agreement to the US District Courthouse where she removed the action to in the first place.

I believed Ripta breached the contract and filed in Superior Court on 04/06/2018 A Motion for Cause of Show and an Enforcement of the Contract and Ripta lied to me and supposedly Steven Dennis about the Global Settlement and that the case would be separated while CMS came back. Ripta was never going to settle this and Ripta and their Attorneys did everything to keep my case out of Federal Court denying me relief for my damages.

*In Rhode Island Settlement Agreements are governed by "general contract law principles" Freidrich Vs. City, Hosp. Health Care systems., CA.*

The formation of a contract requires an offer an acceptance. "Ardente Vs Horan".

A final written version with clear, complete and explicit terms that was voluntarily signed by all parties" Must be enforced. "Jefferson Vs Piccirillo.

However, "where there has been no meeting of the minds sufficient to form a complete and explicit terms that was voluntarily signed by all parties" [must be] restored to the docket for trial "United States Vs. 434 Main St Tewksbury, Mass civil Action.

When parties are represented by counsel who had actually authority to act on their behalf, they are bound to a settlement agreed to by counsel." Witt Vs. Am. Airlines, Inc. "must have actually

6

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 321 of 689 PageID
#: 676
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 64 of 346    PageID 65

7

authority to bind the client to a settlement Agreement. "Malave 170 F. 3dat 221(A settlement agreement entered into by an Attorney is ineffective if the Attorney did not possess actual authority to bind the client") Perry Vs. Alexander, 2;15cv 00310-jcn,2018.


Ripta in house counsel Ben Salsillo intentional Breached the contract between Defendant Ms. Barnes and Plaintiff Ripta on December 1, 2017 and did not follow the R.I. State General laws in regard to Settling Contract approvals with Ripta Board Members when there is no CEO available. Ben also conspired with her Union to aid and abet with not allowing the Defendant to have her grievances she wrote out heard and then allow her to have them arbitrated.

Ripta and Ben Salsillo then having outside Counsel enter defendant into an illegal all general contract release releasing all claims against Ripta, Defendants Union and third party that cannot be in any contract. When Parties are represented by counsel who had actual authority to act on their behalf, they are bound to a settlement agreed to by counsel if Ripta is adding this into their contract then Ripta is responsible for all whom Ripta is illegally trying to have me Indemnify me to. That is not what I agreed to, and that contract is illegal and Ripta and my Union officials Tom Cute and Kevin Cole were part of the board and who held meeting with Ripta board members and was voted in by Ripta board members not the ATU-618 Driver membership when old Union President Paul Harrington Stepped down to go to Washington D.C. that is an ethics Violations.


## CERTIFICATE OF SERVICE

I Mickeda S Barnes Pro-Se, hereby certify that a true and accurate copy of the foregoing document was filed and served electronically by operation of the court's electronic filing system upon the following counsel of record on this 13-day May 2022.

Jillian Folgers Hartwell


Mickeda S Barnes Pro-se

34 Dunbar Ave

Rumford R.I. 02916

401-419-2250

7

66

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 322 of 689 PageID
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 65 of 346    PageID 66
#: 677



Littler Mendelson, P.C.
One Financial Plaza
Suite 2205
Providence, RI 02903

Jillian S. Folger-Hartwell
401.824.2107 direct
401.824.2500 main
jfolgerhartwell@littler.com

January 3, 2022

VIA E-MAIL marlene.toribio@richr.ri.gov

Ms. Marlene Colon Toribio
EEOC Project Director
State of Rhode Island
Commission For Human Rights
180 Westminster Street,
Providence, RI 02903

Re:    Mickeda S. Barnes vs. Rhode Island Public Transit Authority, RICHR No. 22 EPD 069-03/06,
       EEOC No. N/A

Dear Ms. Toribio:

Please let this letter serve as my Entry of Appearance on behalf of Respondent, Rhode Island Public Transit
Authority ("Respondent" or "RIPTA"), in the above-referenced matter, as well as a Motion to Stay/Motion
to Dismiss.

Complainant Mickeda Barnes ("Complainant"), was terminated from her employment at RIPTA on
February 15, 2016. See Termination Ltr. to M. Barnes, attached as Exhibit 1. RIPTA never again employed
Ms. Barnes. Ms. Barnes filed a previous charge with the Commission, which proceeded to suit and was
settled. Complainant signed a settlement agreement, releasing all her claims against Respondent and any
right to reinstatement, on April 25, 2018 ("Settlement Agreement"). See Settlement Agreement, attached
as Exhibit 2.

Although Complainant's narrative in her Charge is less than clear, there appear to be only three possible
types of claims: 1) Claims over which the Commission has jurisdiction, but which predate the Settlement
Agreement or are addressed in the no-rehire language of the Settlement Agreement; 2) Claims for
discriminatory "terms and conditions" of employment that post-date her termination from employment
and the Settlement Agreement; or 3) workers' compensation claims over which the Commission lacks
jurisdiction.

With regard to No. 1 above, to the extent Complainant is pursuing any claims over which the Commission
may have jurisdiction, that predate the Settlement Agreement or that implicate in any way the terms and
conditions of the Settlement Agreement – including but not limited to the "years of unlawful employment

littler.com

67

Ms. Marlene Colon·Toribio
January 3, 2022
Page 2

discrimination" or any allegations that she is entitled to reinstatement — Respondent requests an immediate stay in this matter. There is already an open case in for a Declaratory Judgment in Rhode Island Superior Court relating to the Settlement Agreement, Case No. PC 2020-06065, in which Respondent is pursing a Declaratory Judgment and Breach of Contract action to enforce the Settlement Agreement. With regard to enforcing or interpreting the Settlement Agreement, Respondent does not consent to the jurisdiction of the Commission and specifically invokes its rights and/or defenses, to proceed in court.

With regard to No. 2 above, to the extent Complainant is bringing any claims that post-date her termination, and suggests that Respondent has imposed upon her discriminatory terms and conditions of employment after she was terminated on February 15, 2016, those claims must be dismissed as she was not RIPTA's employee and it could have done nothing to affect any terms or conditions of her employment after February 15, 2016.

Lastly, with regard to No. 3 above, to the extent Complainant is trying to pursue her workers' compensation claims before the Commission, including any alleged right to reinstatement, under the Workers' Compensation Act, R.I.G.L. §§ 28-29-1 et seq., the Commission lacks jurisdiction over those claims.  The Commission's investigatory powers are limited to adopting, promulgating, amending and rescinding rules and regulations to effectuate the provisions of Chapter 28-5, to formulate policies to effectuate Chapter 28-5, to receive, investigate, and pass on charges of unlawful employment practices, and to hold and manage hearings relating to such charges. See R.I. Gen. Laws §28-5-13 (4) – (7).  The Rhode Island Workers' Compensation Act, R.I.G.L. §§ 28-29-1 et seq. (the "Act"), vests sole authority to determine workers' compensation claims in the Workers' Compensation Court. See R.I. Gen. Laws § 28-35-11 ("[a]ll questions arising under chapters 29 – 38 of this title and Rhode Island general law § 45-21.2-9 shall, except as otherwise provided, be determined by the workers' compensation court[.]"); § 28-29-26; § 28-30-1.  The Rhode Island Supreme Court has recognized the broad and exclusive authority of the Workers' Compensation Court to adjudicate matters that bare on questions of workers' compensation benefits. See Callaghan v. R.I. Occupational Info. Coordinating Comm., 704 A.2d 740, 745 (R.I. 1997). Thus, to the extent Complainant seeks redress at the Commission for her workers' compensation claims, those claims must be dismissed.

Sincerely,

Jillian S. Folger-Hartwell

JSF/mag

cc:    Mickeda Barnes

4885-7213-2360.1 / 088768-1000

littler.com

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 324 of 689 PageID
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 67 of 346    PageID 68
#: 679

# EXHIBIT 1



RHODE ISLAND PUBLIC TRANSIT AUTHORITY

February 15, 2016

Ms. Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916

Dear Ms. Barnes:

Our records indicate that you have been out of work since February 13, 2015. According to the labor agreement between the Rhode Island Public Transit Authority and the Amalgamated Transit Union, Division 618, section 1.25, paragraph (h):

*"An employee who is absent as a result of illness, injury or work related injury, which occurs while he or she is employed by the Authority, shall be deemed to continue in active service under the terms of this Agreement provided the employee demonstrates that there is a reasonable degree of medical certainty that he or she will be able to return to his or her position within one year from the date his or her absence began."*

Since your absence has exceeded one (1) year, please be advised that effective immediately we are removing you from the RIPTA employment roster. Please return all RIPTA issued clothing and/or equipment to James Dean in the Transportation Department.

A letter outlining your benefit rights under COBRA will follow. If you have any questions, please feel free to contact me at (401) 784-9500, ext. 109.

Regards,

Maureen C. Ruzzano
Human Resources Compliance Officer

cc:   J. Dean
      K. Nadeau
      Local 618
      File

705 Elmwood Avenue, Providence, RI 02907 • 401-784-9500
For Schedule Information, 401-781-9400, 1-800-244-0444, or www.RIPTA.com

70

Page 325

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 326 of 689 PageID
#: 681
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 69 of 346    PageID 70

# EXHIBIT 2

71

## SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS

This Settlement Agreement and General Release of Claims ("Agreement") is entered into by and between the Rhode Island Public Transit Authority (the "Authority"), on behalf of itself, its present or former officers, directors, subsidiaries, parents, affiliates, partners, employees agents, insurers, attorneys, accountants, executors, administrators, successors and assigns and all affiliated entities and Mickeda Barnes on behalf of herself, her representatives, agents, estates, heirs, successors and assigns ("Employee") (collectively referred to as the "Parties") for good and valuable consideration.

Employee and the Authority desire to settle fully and finally all differences between them including, without implication or limitation, the claims and allegations set forth in the complaints filed in the Rhode Island Superior Court, and removed, or subject to removal, to the United States District Court for the District of Rhode Island, captioned <u>Mickeda Barnes v. Rhode Island Public Transit Authority</u>, 1:17-cv-00505-JJM-PAS and <u>Mickeda Barnes v. Rhode Island Public Transit Authority, et al</u>, PC-2018-2287 (the "Lawsuits").

In consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to the following terms and conditions:

1.     **Payment.**

(a)     In consideration of the release and all of the promises and representations made by Employee in this Agreement, the Authority will pay to Employee the total gross amount of ONE HUNDRED AND FIFTY THOUSAND DOLLARS AND ZERO CENTS ($150,000.00) which amount shall be paid as follows: (1) a check payable to "Mickeda Barnes" in the amount of Fifty-Five Thousand Dollars and Zero Cents ($55,000.00), less applicable withholdings in

settlement of Employee's claims for economic loss issued on a W-2; (2) a check payable to "Mickeda Barnes" in the amount of Fifty-Five Thousand Dollars and Zero Cents ($55,000.00), without withholdings, in settlement of Employee's claims for non-economic damages, issued on a Form 1099; and (3) one check payable to "Sonja Deyoe as attorney for Mickeda Barnes" in the amount of Forty Thousand Dollars and Zero Cents ($40,000.00) without withholdings, in settlement of Employee's claims for attorneys' fees, issued on a Form 1099.

(b)    The Authority will deliver all payments to Employee's attorney, Sonja Deyoe, Esq., 395 Smith Street, Providence, RI 02908, by overnight express mail or other secure means, within fourteen (14) calendar days from the expiration of the seven (7) day revocation period set forth in Paragraph 3(b), and only if the Authority's counsel has received two (2) originals of this Agreement executed by Employee, fully executed Forms W-4 and W-9 from Employee, and a Form W-9 from Employee's attorney.

(c)    Employee acknowledges and agrees that the above-referenced payments represent valuable consideration that the Authority is not otherwise obligated to provide her.

(d)    Employee acknowledges and agrees that the Authority makes no representation of any kind as to the income or other tax consequences of the payment and further acknowledges and agrees that she is solely responsible for all of her tax obligations, if any, including but not limited to all reporting and payment obligations, which may arise as a consequence of this settlement. Employee hereby agrees to indemnify and hold the Authority harmless from and against any and all loss, cost, expense (including attorneys' fees), interest, payments or penalties incurred by the Authority on account of Employee's failure to pay tax properly payable by her. Employee understands and agrees that the Authority has no duty to defend any claim or assertion

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 329 of 689 PageID
#1-684
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22   Page 72 of 346   PageID 73

in connection with Employee's tax treatment of the proceeds of this payment, and Employee agrees to assume full responsibility for defending against any such claim or assertion.

2.     **Release of Claims.**

(a)     In exchange for and in consideration of the payment received pursuant to this Agreement, Employee agrees to release the Authority, its present and former direct and indirect parent entities, direct and indirect subsidiaries, partners, insurers, successors and assigns, and their present and former employees, officers, directors, shareholders, agents, attorneys and representatives (the "Releasees") from each and every claim or demand of every kind arising up to the date Employee signs this Agreement, including but not limited to those claims made by Employee in the Lawsuits.  This includes a release of any rights or claims for any and all types of relief, including but not limited to back pay, front pay, compensatory and punitive damages, attorneys' fees and costs, and equitable orders, which Employee may have in any tort or contract action, any equitable action, any declaratory judgment action, or any action under Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment based on race, religion, color, national origin or sex; the Rhode Island Fair Employment Practices Act which, in addition to the classes protected in the law referenced above, additionally prohibits discrimination based on disability, country of ancestral origin, sexual orientation and gender identity and expression; the Americans with Disabilities Act of 1990, which prohibits discrimination against disabled persons; the Age Discrimination in Employment Act of 1967, ("ADEA"); the Older Worker Benefit Protection Act of 1990 ("OWBPA"); the National Labor Relations Act ("NLRA"); the Family Medical Leave Act; the Rhode Island Parental and Family Medical Leave Act; the Rhode Island Civil Rights Act; the Civil Rights of Individuals with Disabilities Act; the Rhode Island Personnel Files Act, the Employee Retirement Income Security Act, the Labor Management

*MB*

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 330 of 689 PageID
#: 685
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 73 of 346   PageID 74

Relations Act; any amendments to the foregoing, and/or any other federal, state or local laws or regulations, whether or not included in the above non-exhaustive list. Employee also releases the Releasees from any claim for defamation, libel, slander, constructive or wrongful discharge, any claim that the Releasees dealt with her unfairly, breached any agreement or contract, including any breach of any collective bargaining agreement or any suit brought under Section 301 of the Labor Management Relations Act and/or any other claims whether arising under statutory or common law. No claim has been made by Barnes that she suffered sexual harassment or sexual abuse nor payment made to Barnes to resolve claims of sexual harassment or sexual abuse in the instant litigation such as those are defined by Internal Revenue Code Section 162 (q).

(b)     Employee agrees to indemnify and hold the Releasees harmless from and against any and all damages for back pay, lost wages, front pay, the value of lost benefits, emotional distress, or pain and suffering incurred by the Releasees as a result of any claims against Releasees by way of action for contribution, joint and/or several liability, indemnification or that are in any way derivative of claims Employee has brought, or may bring, against any third parties, including but not limited to claims against labor unions, union representatives, or any claims set forth in the Lawsuits. Employee agrees to release and discharge the Releasees not only from any and all claims which Employee could make on her own behalf, but she also specifically waives any right to become, and promises not to become, a member of any class in any proceeding or case in which a claim or claims against the Releasees may arise, in whole or in part, from any event which occurred as of the date of this Agreement. The Parties agree that if Employee, by no action of her own, becomes a mandatory member of any class from which Employee cannot, by operation of law or order of court, opt out, she will not be required to pay for any legal fees or costs incurred by the Releasees as a result. Although Employee is releasing

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 331 of 689 PageID
Case 1:22-cv-00213-JJM-PAS    Document 1-1  Filed 05/31/22  Page 74 of 346  PageID 75
#: 686

all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of her waiver of age claims under the ADEA and OWBPA.

(c)      This release covers claims that Employee knows about, and those that she may not know about, up through the date of this Agreement.

(d)      Despite any language herein to the contrary, Employee does not release claims that may arise after Employees signs this Agreement or that by law cannot be released by private agreement. For example, this Agreement does not release claims for unemployment insurance or workers' compensation benefits.

(e)      After the parties had reached agreement in principal, Employee filed the above-reference suit in Rhode Island Superior Court, Case No. PC-2018-2287. As a result, the Parties hereby agree that, except to enforce the provisions of this Agreement, should Employee bring any claim, action, or suit on any matter covered by the releases set forth in this Paragraph 2, against the Releasees, this Agreement may be asserted as a complete defense, and if the Releasees, collectively or individually, prevail, Employee shall be responsible for liquidated damages in the amount of $10,000 per violation or paying the attorneys' fees and costs that the prevailing Releasee(s) incurs in opposing such claim, whichever is less, in addition to any other relief to which the Releasee(s) may be entitled. Although Employee is releasing all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of her release of age claims under the ADEA and OWBPA.

3.      Age Discrimination in Employment Act ("ADEA").

(a)      Twenty-One (21) Day Consideration Period. Employee shall have twenty-one (21) days to consider and accept the terms of this Agreement by fully executing it below, and returning it to counsel for the Authority, Jillian Folger-Hartwell, One Financial Plaza, Ste. 2205,

Firmwide:151655351.8 088768.1003

76

Providence, RI 02903. Employee hereby acknowledges and agrees that she has been and is by this Agreement advised in writing, during this twenty-one (21) day period, to consult with an attorney of her choosing regarding the terms and provisions of this Agreement. Employee may sign the Agreement of her own volition prior to the conclusion of the twenty-one (21) day period. Any changes to this Agreement, whether material or immaterial, do not restart the running of this twenty-one (21) calendar day review period.

(b)   Revocation Period. Employee understands that she has a period of seven (7) calendar days after the date that she signs this Agreement ("Revocation Period") to revoke her acceptance of the terms of this Agreement by delivering a written notification to counsel for the Authority, Jillian Folger-Hartwell, One Financial Plaza, Ste. 2205, Providence, RI 02903. If Employee revokes this Agreement, it shall not be effective or enforceable and the Authority will not tender the payments set forth in Paragraph 1 of this Agreement. If Employee does not revoke this Agreement prior to the expiration of this seven (7) day period, this Agreement shall take effect at that time as a legally binding agreement between the Parties on the basis set forth herein.

4.   **Dismissal of Lawsuits.** Employee agrees to sign and return with the signed copy of this Agreement the stipulations attached as Exhibit A and Exhibit B. The Company will file the signed stipulations with the United States District Court for the District of Rhode Island and the Rhode Island Superior Court, respectively. Employee agrees to take any and all measures reasonably required to comply with or effectuate the dismissal, with prejudice, of the Lawsuits.

5.   **No Admission of Liability.** This Agreement shall not in any way be construed as an admission by the Authority that it acted wrongfully or failed to act lawfully with respect to Employee, or any other person, or that Employee has any rights whatsoever against the

Firmwide:151655351.8 088768.1003

77

Authority. The Authority specifically disclaims any liability for any wrongful acts or omissions against Employee or any other person, on the part of itself, its employees, officers, directors and agents, past and present. Neither this Agreement nor anything in it shall be admissible in any proceeding as evidence of any unlawful or wrongful conduct by the Authority.

6.    **No Assignment.** The Parties represent and warrant that no person other than the Parties had or have any interest in the matters referred to in this Agreement, that the Parties have the sole right and exclusive authority to execute this Agreement, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this Agreement.

7.    **No Additional Payments.**

(a)    Employee agrees and avers that she has been paid and/or has received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled, that she has suffered no known workplace injuries prior to the date of her execution of this Agreement other than those that she has already revealed to the Authority, and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to her, except as provided in Paragraph 1 or as she may obtain in the litigation of her existing workers' compensation claims.

(b)    In entering into this Agreement, the Parties have fully considered Medicare's interests, pursuant to the Medicare Secondary Payer rules, and in doing so, Employee has declared that her claim does not involve any illness, injury, incident, or accident in which medical expenses were incurred or are expected to be incurred in which Medicare has or may have an interest. Further, Employee affirms no conditional payments have been made to her by Medicare. If Medicare (or an agency representing Medicare's interests) later determines that it

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 334 of 689 PageID
Case 1:22-cv-00213-JJM-PAS    Document 1-189    Filed 05/31/22    Page 77 of 346    PageID 78
#689

does have an interest in the payments made pursuant to the Agreement, Employee will indemnify the Releasees for any payments and/or penalties they submit to Medicare (or the agency collecting on behalf of Medicare) as a result of the payments under this Agreement.

8.    **Confidentiality.**

(a)    Employee agrees to maintain the confidentiality of this Agreement and will not disclose in any fashion this Agreement, the amount of this settlement, and/or the substance or content of discussions involved in reaching this Agreement, to any person other than the Employee's attorneys, accountants, spouse, and tax advisors as required by appropriate taxing authorities, or as required by law. If inquiries are made of Employee regarding this Agreement, or the substance of this Agreement, by any other person, Employee will state that the case is resolved and shall not further characterize this settlement.

(b)    Employee understands that the confidentiality restrictions of this Paragraph 8 extend to social media, including, but not limited to, blogs, virtual worlds, social or professional networking websites, and/or video sharing websites ("Social Media").

9.    **Non-disparagement.** Employee agrees to make no negative, derogatory or disparaging comments, oral or written, publicly or in private, via Social Media or otherwise, about the Releasees or their products, services, business practices and philosophies, including any comments that reasonably could be considered (a) damaging or injurious to the Releasees' goodwill; (b) harmful to the Releasees' business interests; or (c) to impact negatively on the Releasees' business reputation or reputation in the community.

10.    **No Future Employment.** Employee agrees not to reapply for employment with the Authority, any subsidiary, related, affiliated or parent entity or any entity which is now or in the future owned, controlled, acquired by the Authority. Employee further agrees that if she reapplies or applies for employment with the Authority, or any entity described above, her

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 335 of 689 PageID
#: 690
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 78 of 346   PageID 79

application may be denied on the basis of this Agreement. Employee agrees to waive any right to reinstatement to which she may be entitled under R.I. Gen. Laws §28-33-47, and if reinstated thereunder, she agrees to immediately and voluntarily resign from employment. This provision shall not be construed so widely as to bar the Employee from applying for work or working for the State of Rhode Island or the Rhode Island Department of Transportation.

11.   **Amendment.** This Agreement may not be modified, altered or changed except upon express written consent of both Parties.

12.   **Governing Law.** This Agreement will be governed by and performed in accordance with the laws of the State of Rhode Island without regard to its conflict of laws provision.

13.   **Suits to Enforce.** In any lawsuit brought to enforce the terms of this Agreement, *the prevailing party shall also be entitled to recover from the other party court costs and reasonable attorneys' fees.* Although Employee is releasing all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of this Agreement under the ADEA and OWBPA.

14.   **Severability.** Should any provision of this Agreement be declared or determined by any court or other tribunal of appropriate jurisdiction to be invalid or unenforceable, any such invalid or unenforceable provision shall be deemed stricken and severed from this Agreement and any and all of the other terms of the Agreement shall remain in full force and effect to the fullest extent permitted by law.

15.   **Entire Agreement.** This Agreement is the sole agreement between Employee and the Authority. Any other prior agreements between the Parties are hereby terminated and shall have no further force or effect. This Agreement may be amended in writing, only by a

Firmwide:151655351.8 088768.1003

80

document executed by both Parties. The Authority has made no promises to Employee other than those set forth in this Agreement.

16. **Captions.** The paragraph captions in this Agreement are for convenience only and shall neither affect the meaning of the provisions of this Agreement, nor be used in construing this Agreement.

17. **Acknowledgement of Voluntariness and Understanding.** Employee represents and agrees that she has been advised to and has had the opportunity to thoroughly discuss all aspects of this Agreement with an attorney, that she has carefully read and fully understands all of the provisions of this Agreement, that she is voluntarily entering into this Agreement, and that she does not and has not relied in any way on any representations or statements of the Authority or its attorneys not contained in this Agreement.

18. **No Interference with Rights.** Nothing in this Agreement including but not limited to the release of claims, class and collective action waiver, promise not to sue, confidentiality, cooperation, non-disparagement, withdrawal of charge, no future employment, and attorneys' fees shifting provisions, (a) limit or affects Employee's right to challenge the validity of this Agreement under the ADEA or the OWBPA, (b) prevents Employee from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the Equal Employment Opportunity Commission, National Labor Relations Board, the Securities and Exchange Commission, Rhode Island Commission for Human Rights, or any other any federal, state or local agency charged with the enforcement of any laws, including providing documents or any other information, or (c) limits Employee from exercising rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees, although by signing this

Agreement Employee is waiving rights to individual relief (including backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint, lawsuit or other proceeding brought by Employee or on Employee's behalf by any third party, except for any right Employee may have to receive a payment from a government agency (and not the Authority) for information provided to the government agency or otherwise where prohibited.

**PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

Mickeda Barnes

Date: 4-25-18

Rhode Island Public Transit Authority

By: _____

Title: _____

Date: _____

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 338 of 689 PageID
#: 693
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 81 of 346    PageID 82

# EXHIBIT A

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 339 of 689 PageID
#: 694
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 82 of 346   PageID 83

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICKEDA BARNES,<br><br>      PLAINTIFF,<br><br>v.<br><br>RHODE ISLAND PUBLIC TRANSIT<br>AUTHORITY,<br><br>      DEFENDANT. | Civil Action No. 1:17-cv-00505-JJM-PAS |

## STIPULATION OF DISMISSAL

Pursuant to Fed. R. Civ. P. 41(a), Plaintiff Mickeda Barnes and Defendant Rhode Island

Public Transit Authority, by their respective undersigned counsel, stipulate that this action is

hereby dismissed, with prejudice. Each party shall bear its own costs and attorneys' fees.

MICKEDA BARNES,

By her attorneys,

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY,

By its attorneys,

/s/ Sonja L. Deyoe
Sonja L. Deyoe (#6301)
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
(401) 864-5877
(401) 354-7464 (fax)
sld@the-straight-shooter.com

/s/Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell (#6970)
Littler Mendelson, P.C.
One Financial Plaza, Suite 2205
Providence, RI 02903
(401) 824-2500
(401) 272-4520 (fax)
jfolgerhartwell@littler.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the within Stipulation was filed and served electronically by operation of the Court's CM/ECF System upon the following counsel of record on this _____ day of _____, 2018:

Sonja L. Deyoe, Esq.
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
sld@the-straight-shooter.com

/s/Jillian S. Folger-Hartwell

Firmwide:151655351.8 088768.1003

85

# EXHIBIT B

Firmwide:151655351.8 088768.1003

STATE OF RHODE ISLAND                                SUPERIOR COURT
PROVIDENCE, SC.

| | |
|---|---|
| MICKEDA BARNES, et al, | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No.  PC-2018-2287 |
| RHODE ISLAND PUBLIC TRANSIT | ) |
| AUTHORITY, et al, | ) |
| DEFENDANTS. | ) |
| | ) |
| | ) |
| | ) |

## STIPULATION OF DISMISSAL WITH PREJUDICE

Pursuant to Super. Ct. R. Civ. P. 41(a), Plaintiff Mickeda Barnes and Defendant Rhode

Island Public Transit Authority, ("Defendant"), by their respective undersigned counsel, stipulate

that this action is hereby dismissed, with prejudice.   Each party shall bear its own costs and

attorneys' fees.


MICKEDA BARNES,                        RHODE ISLAND PUBLIC TRANSIT
                                       AUTHORITY,


By her attorneys,                      By its attorneys,


/s/ Sonja L. Deyoe_____        /s/Jillian S. Folger-Hartwell_____
Sonja L. Deyoe (#6301)                 Jillian S. Folger-Hartwell (#6970)
Law Offices of Sonja L. Deyoe          Littler Mendelson, P.C.
395 Smith Street                       One Financial Plaza, Suite 2205
Providence, RI 02908                   Providence, RI  02903
(401) 864-5877                         (401) 824-2500
(401) 354-7464 (fax)                   (401) 272-4520 (fax)
sld@the-straight-shooter.com           jfolgerhartwell@littler.com

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 343 of 689 PageID
#: 698
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 86 of 346    PageID 87

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the within Stipulation was filed and served by operation of the Court's electronic filing system, upon the following counsel on this ____ day of _____, 2018:

Sonja L. Deyoe, Esq.
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
sld@the-straight-shooter.com

/s/Jillian S. Folger-Hartwell

Firmwide:151655351.8 088768.1003

88

Case Number: PC-2018-2287
Filed in Providence/Bristol County Superior Court
Submitted: 5/4/2018 2:29:46 PM
Envelope: 1528996
Reviewer: Alexa G.

STATE OF RHODE ISLAND                                    SUPERIOR COURT
PROVIDENCE, SC.

MICKEDA S. BARNES, KENYON          )
ROBERTSON, BRIANA ROBERTSON,       )
SIDNEY ROBERTSON, AND DOREEN       )
BARNES ROBERTSON, ET AL.,          )
                                   )
              PLAINTIFFS,          )          Civil Action No.  PC-2018-2287
                                   )
       v.                          )
                                   )
RHODE ISLAND PUBLIC TRANSIT        )
AUTHORITY, et al,                  )
                                   )
              DEFENDANTS.          )

## STIPULATION OF DISMISSAL WITH PREJUDICE

Pursuant to Super. Ct. R. Civ. P. 41(a), Plaintiffs Mickeda Barnes, Kenyon Robertson,

Briana Robertson, Sidney Robertson and Doreen Barnes Robertson and Defendants Rhode Island

Public Transit Authority, State of Rhode Island, Beacon Mutual Insurance, and Claims

Strategies, by their respective undersigned counsel, stipulate that this action is hereby dismissed

against all named defendants, with prejudice.  Each party shall bear its own costs and attorneys'

fees.

MICKEDA BARNES, KENYON             THE RHODE ISLAND PUBLIC TRANSIT
ROBERTSON, BRIANA ROBERTSON,       AUTHORITY,
SIDNEY ROBERTSON and DOREEN
BARNES ROBERTSON,

By their attorneys,                By its attorneys,


/s/ Sonja L. Deyoe                 /s/Jillian S. Folger-Hartwell
Sonja L. Deyoe (#6301)             Jillian S. Folger-Hartwell (#6970)
Law Offices of Sonja L. Deyoe      Littler Mendelson, P.C.
395 Smith Street                   One Financial Plaza, Suite 2205
Providence, RI 02908               Providence, RI  02903
(401) 864-5877                     (401) 824-2500
(401) 354-7464 (fax)               (401) 272-4520 (fax)
sld@the-straight-shooter.com       jfolgerhartwell@littler.com

Firmwide:154431738.1 088768.1003

89

Case Number: PC-2018-2287
Filed in Providence/Bristol County Superior Court
Submitted: 5/4/2018 2:29:46 PM
Envelope: 1528996
Reviewer: Alexa G.

CLAIMS STRATEGIES,

By its attorneys,

/s/John A. Caletri
John A. Caletri (#6204)
Melick & Porter, LLP
One Richmond Sq., Suite 230E
Providence, RI 02906
(401) 941-0909
(401) 941-6269 (fax)
jcaletri@melicklaw.com

BEACON MUTUAL INSURANCE,

By its attorneys,

/s/ Melissa E. Darigan
Melissa E. Darigan (#4792)
Partridge Snow & Hahn LLP
40 Westminster St., Suite 1100
Providence, RI 02903
(401) 861-8200
(401) 861-8210 (fax)
med@psh.com

STATE OF RHODE ISLAND,

By its attorneys,

/s/Adam D. Roach
Adam D. Roach (#9605)
Susan E. Urso (#4688)
RI Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 222-4400
(401) 222-2995
aroach@riag.ri.gov
surso@riag.ri.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the within Stipulation was filed and served by operation of the Court's electronic filing system, upon the following counsel on this 4th day of May, 2018:

Sonja L. Deyoe (#6301)
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
(401) 864-5877
(401) 354-7464 (fax)
sld@the-straight-shooter.com

John A. Caletri (#6204)
Melick & Porter, LLP
One Richmond Sq., Suite 230E
Providence, RI 02906
(401) 941-0909
((401) 941-6269 (fax)
jcaletri@melicklaw.com

2

Firmwide:154431738.1 088768.1003

90

Case Number: PC-2018-2287
Filed In Providence/Bristol County Superior Court
Submitted: 5/4/2018 2:29:46 PM
Envelope: 1528996
Reviewer: Alexa G.

Adam D. Roach (#9605)
Susan E. Urso (#4688)
RI Department of Attorney General
150 South Main Street
Providence, RI 02903
401) 222-4400
(401) 222-2995
aroach@riag.ri.gov
surso@riag.ri.gov

Melissa E. Darigan (#4792)
Partridge Snow & Hahn LLP
40 Westminster St., Suite 1100
Providence, RI 02903
(401) 861-8200
(401) 861-8210 (fax)
med@psh.com


/s/Jillian S. Folger-Hartwell

3

Firmwide:154431738.1 088768.1003

91

Case Number: PC-2018-2287
Filed In Providence/Bristol County Superior Court
Submitted: 5/4/2018 2:29:46 PM
Envelope: 1528996
Reviewer: Alexa G.

Adam D. Roach (#9605)
Susan E. Urso (#4688)
RI Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 222-4400
(401) 222-2995
aroach@riag.ri.gov
surso@riag.ri.gov

Melissa E. Darigan (#4792)
Partridge Snow & Hahn LLP
40 Westminster St., Suite 1100
Providence, RI 02903
(401) 861-8200
(401) 861-8210 (fax)
med@psh.com


/s/Jillian S. Folger-Hartwell

3

Firmwide:154431738.1 088768.1003

92

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 348 of 689 PageID
#: 703
Case 1:17-cv-00505-JJM-PAS   Document 1-1   Filed 05/31/22   Page 91 of 346   PageID 92
Case 1:17-cv-00505-JJM-PAS   Document 7   Filed 05/17/18   Page 1 of 2 PageID #: 65

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

MICKEDA BARNES,                    )
                                  )
      PLAINTIFF,                 )
                                  )
   v.                          )
                                  )
RHODE ISLAND PUBLIC TRANSIT       )    Civil Action No.  1:17-cv-00505-JJM-PAS
AUTHORITY,                        )
                                  )
      DEFENDANT.                 )
                                  )

## STIPULATION OF DISMISSAL

Pursuant to Fed. R. Civ. P. 41(a), Plaintiff Mickeda Barnes and Defendant Rhode Island

Public Transit Authority, by their respective undersigned counsel, stipulate that this action is

hereby dismissed, with prejudice.  Each party shall bear its own costs and attorneys' fees.

MICKEDA BARNES,                          RHODE ISLAND PUBLIC TRANSIT
                                         AUTHORITY,

By her attorneys,                        By its attorneys,

/s/ Sonja L. Deyoe                       /s/ Jillian S. Folger-Hartwell
Sonja L. Deyoe (#6301)                   Jillian S. Folger-Hartwell (#6970)
Law Offices of Sonja L. Deyoe            Littler Mendelson, P.C.
395 Smith Street                         One Financial Plaza, Suite 2205
Providence, RI 02908                     Providence, RI  02903
(401) 864-5877                           (401) 824-2500
(401) 354-7464 (fax)                     (401) 272-4520 (fax)
sld@the-straight-shooter.com             jfolgerhartwell@littler.com

93

| | | |
|---|---|---|
| | | Clerk with contact information if it differs from the docket sheet. (Barletta, Barbara) (Entered: 11/27/2017) |
| 12/04/2017 | | HEARING CANCELLED: The telephonic Rule 16 conference scheduled for Wednesday, 9:15 a.m. before Judge John J. McConnell, Jr. is cancelled (Barletta, Barbara) (Entered: 12/04/2017) |
| 04/04/2018 | 6 | NOTICE of Hearing: Telephonic Rule 16 Conference set for Friday, 4/20/2018 at 09:00 AM before District Judge John J. McConnell, Jr. The Court will initiate the call. Counsel shall provide the Clerk with contact information if it differs from the docket sheet. (Barletta, Barbara) (Entered: 04/04/2018) |
| 04/17/2018 | | HEARING CANCELLED: The telephonic rule 16 conference scheduled for Friday, 4/20/18 at 9:00 a.m. before Judge John J. McConnell, Jr. is cancelled and will be rescheduled (Barletta, Barbara) (Entered: 04/17/2018) |
| 05/17/2018 | 7 | STIPULATION *of Dismissal with Prejudice* filed by Rhode Island Public Transit Authority. (Folger-Hartwell, Jillian) (Entered: 05/17/2018) |
| 05/18/2018 | | TEXT ORDER entering 7 Stipulation of Dismissal with prejudice filed by all parties – So Ordered by District Judge John J. McConnell, Jr. on 5/18/2018. (Barletta, Barbara) (Entered: 05/18/2018) |

94

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

STATE OF RHODE ISLAND
PROVIDENCE, SC                                                    SUPERIOR COURT

RHODE ISLAND PUBLIC TRANSIT                    )
AUTORITY                                        )
                                                )
              Plaintiff,                        )
                                                )          Civil Action No. PC-2020-06065
       v.                                       )
                                                )
MICKEDA BARNES,                                 )
                                                )
              Defendant.                        )
_____ )

## AFFIDAVIT OF STEVE COLANTUONO

I, Steve Colantuono, do hereby depose and state as follows:

1.     I make the statements contained in this Affidavit based on my personal knowledge and on my review of Rhode Island Public Transit Authority (the "Authority") business records, and I am competent to testify as to all facts stated herein.

2.     I serve as Chief Legal Counsel for the Authority, 705 Elmwood Avenue, Providence, RI 02907. I have served continuously in this position since September 2018.

4.     The Authority hired Defendant Mickeda Barnes ("Defendant") as a bus driver in November 2002 and terminated her employment in February 2016.

5.     Defendant's work record is littered with disciplinary infractions, workers' compensation claims, union grievances, and unfounded accusations of discrimination against co-workers, supervisors, and third parties.

6.     Beginning in 2004, Barnes filed the first of 19 workers' compensation claims against RIPTA, including 14 workers' compensation petitions filed between 2008 and her termination from employment in 2016.

4875-1653-8377.3 / 088768-1017

95

Case Number: PB-2020-06089
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

7.      Barnes' personnel file includes documents memorializing the following:

(a)      On December 1, 2006, Barnes delivered a handwritten complaint to RIPTA's management, describing, in detail, her menstruation cycle and anatomy. Barnes taped a tampon to the note.

(b)      On March 27, 2007, Elizabeth Grady, a Beacon Insurance Company representative, reported to RIPTA that during her conversation with Barnes about a workplace injury, Barnes became agitated when she learned she needed to return to work and threatened that "[i]f I go back to work, I am going to run the bus off the road."

(c)      On February 12, 2015, Barnes claimed she was injured while on duty in Cranston. Cranston firefighters responded to the scene. Barnes engaged in an unwelcome and sexually explicit discussion with the firefighters. The firefighters complained that they were offended by this conduct. Barnes received a 30-day suspension.

8.      On April 25, 2018, Barnes signed a settlement agreement to resolve her then-lawsuits against RIPTA in Federal Court, Superior Court, and all other claims against RIPTA that she had as of the agreement's effective date of April 25, 2018. See Settlement Agreement, attached as Exhibit 1.

9.      Barnes received $150,000 as consideration for signing the agreement. See Settlement Check, attached as Exhibit 2.

2

4875-1653-8377.3 / 088768-1017

96

Case Number: PC-2022-XXXXX
Filed In Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

SIGNED UNDER PENALTIES OF PERJURY THIS 14ᵗʰ DAY OF FEBRUARY 2022.

_____
Steve Colantuono

STATE OF RHODE ISLAND
COUNTY OF _Providence_

Subscribed and sworn to before me this 14ᵗʰ day of February 2022.

_____
Notary Public
My commission expires: 12/21/25
My commission number: 57207

ROY V. RIVERS JR.
NOTARY
PUBLIC
Commission # 57207
STATE OF RHODE ISLAND

4875-1653-8377.3 / 088768-1017

3



Attorney's Name

Steven Colantuano

Chief legal Counsel

He is In charge of

Claims/Risk Management

Workers Compensation

legal Compliance

From: **Mickeda Barnes** mickeda5@gmail.com
Subject: **Please print out**
Date: **Aug 25, 2019 at 10:38:11 PM**
To: kenyon1977@icloud.com

---

.ıll AT&T  LTE                    9:47 AM                    ✳ 91% ▭

 🔒 ripta.com 

1 of 2

### RHODE ISLAND PUBLIC TRANSIT AUTHORITY
### JOB DESCRIPTION

| | | |
|---|---|---|
| **Job Title:** | Legal Compliance Counsel | **Date:** September 2018 |
| **Department:** | Legal/Chief Executive Office | |
| **Reports to:** | Chief Executive Officer | |

**Summary of Position:**
The Legal Compliance Officer is responsible for assuring compliance with the requirements of all federal and state laws and regulations including but not limited to Affirmative Action, Americans with Disabilities Act, Equal Opportunity, Disadvantaged Business Enterprise and Title VI; to perform legal advice and services in a quasi-state department or agency on issues posing complex legal interpretations and extensive research of law, rules and regulations; and to do related work as required

**Essential Duties and Responsibilities:**
- To assist *Chief Legal Counsel* to prepare legal documents, as well as draft rules, regulations, laws, legislation and amendments thereto;
- To assist Chief Legal Counsel to analyze pertinent information and evidence in order to provide legal opinions to departmental or agency staff personnel for the proper execution of their responsibilities;
- To serve as a hearing officer for cases of a complex and difficult nature requiring the interpretation and enforcement of applicable laws, rules and regulations included but not limited to Affirmative Action, Americans with Disabilities Act, Labor Arbitrations, Human Rights Commission, Equal Opportunity, Disadvantaged Business Enterprise and Title VI;
- To prepare in-depth reports, briefs, papers and recommendations on legal matters on all federal and/or state programs including but not limited to Affirmative Action, Americans with Disabilities Act, Labor Arbitrations, Human Rights Commission; Equal Opportunity, Disadvantaged Business Enterprise (DBEs), Minority Business Enterprises (MBEs), and Women Business Enterprises (WBEs) and Title VI;
- To do related work as required.

**Examples of Work Required:**
- *Manages and coordinates the Authority's programs including but not limited to Affirmative Action, Americans with Disabilities Act, Labor Arbitrations, Human Rights Commission; Equal Opportunity, Disadvantaged Business Enterprise and Title VI;*
- Reviews all contract bid proposals to ensure prospective contractors and consultants are compliant with EEO *regulations;*
- Monitors the Authority's Complaint Hotline for any claims of discrimination relating to but not limited to Affirmative Action, Americans with Disabilities Act, Equal Opportunity, Disadvantaged Business

99

### RHODE ISLAND PUBLIC TRANSIT AUTHORITY
### JOB DESCRIPTION

- To participate in show cause hearings and prepare reports and supply documentation for these hearings; to be responsible for using and maintaining photographic equipment in field service; to assist in the preparation of quarterly and annual compliance reports; to assist in the preparation of reports submitted to federal and related state entities;
- To assist in preparation of an annual external Affirmative Action Plan for their respective Department, detailing the steps to be taken to assure equal opportunity compliance;
- To provide counseling for trainees or applicants who believe they have been discriminated against because of race, color, religion, sex, age, national origin or physical or mental handicap and to investigate those complaints;
- To be responsible for following federal and state legislation and interpreting their provisions concerning equal opportunity programs and enforcement;
- To assist in the coordination of agency's efforts with those of other state departments, with the federal government, and with concerned citizens groups;
- To do related work as required.

**Qualification Requirements:**
To perform this job successfully, an individual must be able to perform each essential duty satisfactorily. The requirements listed below are representative of the knowledge, skill, and/or ability required.  Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

**Special Requirement:**
Applicant must be a member of the Rhode Island Bar and must maintain such membership as a condition of employment.  Failure to maintain good standing licensure requirements determined by the RI Bar Association may be grounds for immediate termination. It is the responsibility of the individual employee to maintain good standing licensure during the term of employment.

**Basic Knowledge and Experience:**
Such as may have been gained through: graduation from an accredited Law School; and five to seven years employment experience in a responsible capacity within a legal services program involving the interpretation of law and the application of pertinent laws, rules regulations, polices and decisions; preferred experience in quasi-public corporate sector, OR:  any combination of education and experience that shall be equivalent to the above education and experience.

**Independent Action:**
Works under the general supervision of a superior with latitude for the exercise of independent judgement; work is subject to review of conformance to established policies, rules, regulations and provisions of law.

**Supervisory Responsibility:**  None

100

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 356 of 689 PageID
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 99 of 346    PageID 100
#: 711

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

STATE OF RHODE ISLAND
PROVIDENCE, SC                                        SUPERIOR COURT

RHODE ISLAND PUBLIC TRANSIT          )
AUTORITY                             )
                                     )
              Plaintiff,             )
                                     )        Civil Action No. PC-2020-06065
    v.                               )
                                     )
MICKEDA BARNES,                      )
                                     )
              Defendant.             )
                                     )

## AFFIDAVIT OF BENJAMIN SALZILLO

I, Benjamin Salzillo, do hereby depose and state as follows:

1.      I make the statements contained in this Affidavit based on my personal knowledge and am competent to testify as to all facts stated herein.

2.      I previously served as Chief Legal Counsel at Rhode Island Public Transit Authority ("RIPTA"), 705 Elmwood Avenue, Providence, RI 02907.  I left that position in September 2018.

3.      During negotiation of, through execution of, the Settlement Agreement, attached as Exhibit 1, Attorney Sonya Deyoe represented to RIPTA that she was engaged as counsel for Mickeda Barnes ("Barnes").

4.      In entering the settlement agreement, RIPTA hoped the substantial sum and the comprehensive release would finally end Barnes' multiple charges and lawsuits.

5.      During my tenure as Chief Legal Counsel, Attorney Stephen Dennis represented Barnes throughout her workers' compensation petitions and the discussions concerning settling her workers' compensation claims.

4862-5542-9129.1 /088768-1017

101

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

6.      To my knowledge, Barnes never exercised her right to revoke the Settlement

Agreement, and she accepted the payment of one hundred fifty thousand dollars ($150,000) from

RIPTA.

SIGNED UNDER PENALTIES OF PERJURY THIS 12ᵗ DAY OF FEBRUARY 2022.

_____
Benjamin Salzillo

STATE OF RHODE ISLAND
COUNTY OF _Providence_

Subscribed and sworn to before me this 12ᵗʰ day of February, 2022.

_____
Notary Public
My commission expires: __10/18/25__
My commission number: __767733__

REUBEN FORTES
Notary Public-State of Rhode Island
ID# 767733
My Commission Expires
October 18, 2025

4862-5542-9129.1 / 088768-1017

2

102

Case Number: PC-2020-06066
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

Agreement Employee is waiving rights to individual relief (including backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint, lawsuit or other proceeding brought by Employee or on Employee's behalf by any third party, except for any right Employee may have to receive a payment from a government agency (and not the Authority) for information provided to the government agency or otherwise where prohibited.

**PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

Mickeda Barnes

Date: 4-25-18

Rhode Island Public Transit Authority

By:

Title: Chief Legal Counsel

Date: 5/21/18

ubmitted: 8/27/2020 10:27 AM
velope: 2721171
viewer: Victoria H

Agreement Employee is waiving rights to individual relief (including backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint, lawsuit or other proceeding brought by Employee or on Employee's behalf by any third party, except for any right Employee may have to receive a payment from a government agency (and not the Authority) for information provided to the government agency or otherwise where prohibited.

**PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

Mickeda Barnes

Date: 4-25-18

Rhode Island Public Transit Authority

By: _____

Title: _____

Date: _____

But No Body From Ripta Signed it Jillian Submitted this to the Court No Signatory

Firmwide:151655351.8 098760.1003

104

Case 1:22-cv-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 360 of 689 PageID
#: 1715
Case 1:22-cv-00213-JJM-PAS     Document 1-1   Filed 05/31/22   Page 103 of 346   PageID 104

Agreement Employee is waiving rights to individual relief (including backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint, lawsuit or other proceeding brought by Employee or on Employee's behalf by any third party, except for any right Employee may have to receive a payment from a government agency (and not the Authority) for information provided to the government agency or otherwise where prohibited.

### PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.

Mickeda Barnes

Date: 4-25-18

Rhode Island Public Transit Authority

By: _____

Title: Chief Legal Counsel

Date: 5/21/18

# RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## POSITION DESCRIPTION

**Job Title:** Chief Legal Counsel

**Date:** January 2019

**Department:** Legal

**Supersedes:** July 2013

**Reports to:** Chief Executive Officer

## Summary of Position:

This position has broad latitude for the exercise of independent judgment. The Legal Counsel works with the Chief Executive Officer, the Board of Directors, and other members of the Senior Leadership Team leading corporate strategic and tactical legal initiatives. The incumbent is responsible for all legal and regulatory matters, including but not limited to: procurement, general contracts/third party agreements, environmental, vendor/supplier relationships, management/oversight of external counsel and general litigation; employment/labor law contracts, negotiations, claims, and policies. The Legal Counsel will provide the Chief Executive Officer, the Board of Directors and senior staff with effective advice on company strategies and their implementation; structure and manage the Authority's internal legal function and staff, and will be directly involved in Authority complex business transactions.

## Essential Duties and Responsibilities:

- Must possess an extensive knowledge of all applicable federal, state, and local laws, regulations, executive orders and policies, and be an expert at bringing and pursuing lawsuits, including: drafting/arguing pre-trial motions, handling depositions; participating in trial with and without jury, and appealing cases;
- Must be able to handle long-term and/or complex legal projects with significant financial or other business impact;
- Must possess excellent leadership skills as well as the ability to manage professional consultants, and interdisciplinary professional staff in a dynamic and intense work setting, have excellent decision-making skills and the ability to effectively communicate both orally and in writing as evidenced by the ability to write business legal reports and correspondence as well as the ability to respond to inquiries from regulatory agencies, customers, the business community and others;
- Assumes ultimate responsibility for ensuring that the Rhode Island Public Transit Authority conducts its business in compliance with applicable laws and regulations;
- Serves as the senior level advisor on legal issues to the Chief Executive Officer, Board of Directors and members of senior staff;
- Coordinates all aspects of legal defense evaluating new litigation files, preparing appropriate pleadings, directing written discovery and responses, taking and defending depositions;
- Conducts all legal research, preparation of briefs, witness preparation and case arguments;
- Monitors legal developments affecting transit providers and public entities;
- Advises the Chief Executive Officer and Board of Directors on matters relating to liability exposure and potential value of litigated cases;
- Reviews environmental reports for compliance with all federal, state and local laws and regulations;

106

# RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## POSITION DESCRIPTION

- May negotiate and draft terms of easements, leases, and licenses in the use of Authority property;
- Leads the Authority collective bargaining process, negotiating contracts with all unions, drafting contract language, interpreting agreements and advising all members of senior staff on union-related issues;
- Plans and recommends legal departmental budget; managing expenditures and reporting on budget variances;
- Serves as a representative of the Authority in the external community as assigned by the Chief Executive Officer.

**<u>Qualification Requirements:</u>**
To perform this job successfully, an individual must be able to perform each essential duty satisfactorily. The requirements listed below are representative of the knowledge, skill, and/or ability required. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

**<u>Basic Knowledge:</u>**
Such as may have been gained through: graduation from an accredited Law School; and

**<u>Experience:</u>**
Five to seven years employment experience in a responsible capacity within a legal services program involving the interpretation of law and the application of pertinent laws, rules regulations, polices and decisions; preferred experience in quasi-public corporate sector.

**<u>SPECIAL REQUIREMENT</u>:** Applicant must be a member of the Rhode Island Bar and must maintain such membership as a condition of employment. Failure to maintain good standing licensure requirements determined by the RI Bar Association may be grounds for immediate termination. It is the responsibility of the individual employee to maintain good standing licensure during the term of employment.

**<u>Supervisory Responsibility:</u>**
Legal Compliance Counsel
Paralegal Aide
Claims Assistant/Paralegal
Claims Support/Secretary
Claims Representative-Liability

107

9:43

 **Michael Evora**                     4/7/22
To: Mickeda Barnes >

Ms. Barnes – Right now, the investigation of
your claims is halted as the Commission
must make a decision on RIPTA's motion to
dismiss the case. You have presented your
objection to that motion and now the matter
is with our legal. All parties will be advised of
the decision once it is made. If RIPTYA's
motion is denied, the case will go back into
investigation with Ms. Vargas.

Regards,

Michael D. Évora, Esq.
Executive Director
401.222.7561 – michael.evora@richr.ri.gov
Pronouns: he/him/his

Rhode Island Commission for Human Rights
180 Westminster Street, 3rd fl.
Providence, RI 02903
Fax: 401.222.2616
Voice Relay: 7-1-1
"Service is the rent we pay for the privilege

            

108

9:43 



‹ Inbox      **Mickeda Barnes**      ∧  ∨

15 Messages



**Mickeda Barnes**                                4/7/22
To: Michael & 1 more... ›

Good morning Michael Evora, I need you to
call me in regards to my complaints to the
Commission of Human Rights and what is
happening to my case and to what decisions
are being made on my behalf to the laws in
regards to my Job as a City bus driver being
discriminated against by Ripta.
My telephone number is 401-419-2250
thanks

Sent from my iPhone

See More                                    

 Michael Evora                        4/7/22
Ms. Barnes - Right now, the investigation...

 **Mickeda Barnes**                  4/12/22
To: Michael & 1 more... ›

Good morning Michael Evora, I need you to
call me in regards to my complaints to the

         

From: Vargas, Adriana (RICHR) Adriana.Vargas@richr.ri.gov
Subject: RE: [EXTERNAL] : Mickeda Barnes
Date: Mar 29, 2022 at 12:02:46 PM
To: Mickeda Barnes Mickeda5@gmail.com

Mickeda,

I have informed Ms. Allison Cote of your request to send your case to EEOC to be
investigated. I will follow up with you upon her response.

Adriana Vargas
Senior Compliance Officer
401-222-7563 | adriana.vargas@richr.ri.gov

Rhode Island Commission for Human Rights
180 Westminster St., 3/F, Providence, RI 02903
FRONT DESK: 401-222-2661
FAX: 401-222-2616
VOICE RELAY: 7-1-1
http://www.richr.ri.gov

Please note: This email message, and any attachment(s), contains confidential
information intended only for the use of the named recipient(s) or the agent
responsible for delivery to said individual(s). Any unauthorized use, disclosure,
distribution or reproduction of this information is strictly prohibited. If you have
received this email in error, please notify the sender and promptly delete from
your system. Thank you.

-----Original Message-----
From: Mickeda Barnes <mickeda5@gmail.com>
Sent: Tuesday, March 29, 2022 11:46 AM
To: Evora, Michael (RICHR) <Michael.Evora@richr.ri.gov>
Cc: Vargas, Adriana (RICHR) <Adriana.Vargas@richr.ri.gov>; Jillian Folger-Hartwell
<JFolgerHartwell@littler.com>
Subject: [EXTERNAL] : Mickeda Barnes

Send my case against Ripta to EEOC to be investigated.

Sent from my iPhone

110

From: **Mickeda Barnes** Mickeda5@gmail.com
Subject: **Re: [EXTERNAL] : Mickeda Barnes**
Date: **Mar 28, 2022 at 2:56:25 PM**
To: **Vargas, Adriana (RICHR)** Adriana.Vargas@richr.ri.gov
Bcc: **mickeda5@gmail.com**

Did you see the paperwork I just sent to you with my grievance they said I had a
hearing and Ripta addressed?
And are you guys giving the Commissioner all my paperwork?
And will I have a chance to go over this paperwork with an investigator?
If not send my case to Newyork or Conn. so I can have a proper investigation.

Sent from my iPhone

On Mar 28, 2022, at 2:00 PM, Vargas, Adriana (RICHR)
<Adriana.Vargas@richr.ri.gov> wrote:


Mickeda,

Again, a commissioner will review the motion to dismiss along with your
response that you have submitted, and issue a decision.

**Adriana Vargas**
Senior Compliance Officer
401-222-7563 ı adriana.vargas@richr.ri.gov
*<Outlook-ring logo .png>*

***Rhode Island Commission for Human Rights***
180 Westminster St., 3/F, Providence, RI 02903
FRONT DESK: 401-222-2661
FAX: 401-222-2616
VOICE RELAY: 7-1-1
http://www.richr.ri.gov

----------------
Please note: This email message, and any attachment(s), contains confidential
information intended only for the use of the named recipient(s) or the agent
responsible for delivery to said individual(s). Any unauthorized use, disclosure,

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 367 of 689 PageID
#: 1722
Case 1:22-cv-00213-JJM-PAS    Document 1-1 Filed 05/31/22   Page 110 of 346   PageID 111

distribution or reproduction of this information is strictly prohibited. If you have
received this email in error, please notify the sender and promptly delete from
your system. Thank you.

_____

**From:** Mickeda Barnes <mickeda5@gmail.com>
**Sent:** Monday, March 28, 2022 1:52 PM
**To:** Vargas, Adriana (RICHR) <Adriana.Vargas@richr.ri.gov>
**Subject:** [EXTERNAL] : Mickeda Barnes

Was the motion for the Commissioner to Dismiss my case? Was that the update you gave
to me without an investigation?

Sent from my iPhone

From: **Mickeda Barnes** Mickeda5@gmail.com
Subject: **Re: Respondents Motion to Dismiss**
Date: **Mar 24, 2022 at 3:30:52 PM**
To: **Vargas, Adriana (RICHR)** Adriana.Vargas@richr.ri.gov

On Thu, Mar 24, 2022 at 3:09 PM Vargas, Adriana (RICHR)
<Adriana.Vargas@richr.ri.gov> wrote:
Ms. Barnes,

Upon review of the above-cited charge of discrimination. The Respondents
submitted a Motion to Dismiss. For your reference, I have attached a copy of a
Motion to Dismiss submitted by the Respondents. Please provide a written
response no later than **April 8, 2022**, unless you would like to use the rebuttal
you submitted on February 25, 2022 as your response, please advise.

Thank you for your anticipated cooperation in this matter.

Me. Vargas I already responded to Jillian's motion for Dismissal on February 25,
2022 and I gave you supporting evidence to why the agreement was illegal and
void and also to the reason that my claims was mishandled by the Commission
when I told Jason I submitted four grievances for them to be heated and instead
the Union and Ripta put in a displainary instead. Then I had chosen two jobs with
my seniority at Ripta on and around August 7, 2015 with a unrestricted note from
Dr Souza and was not allowed to return because I was not 100% and then I was
allowed to choose a second job with my seniority on / or around January 1, 2016
with another Drs note from Doctor Souza and this time allowed to choose my 4
weeks of vacation that I take every year in January but it was three weeks the last
couple of years until I had reached 15 years at Ripta. I was considered on vacation
when Ripta terminated me and during this time Ripta never offered me additional
sick leave or FMLA leave if I was entitled  to it or if Ripta once again had an issue
with me not being 100% to return back to work.

The April 25, 2018 all claims release was not signed in Federal Court and it was
part of a global settlement that I gave you paperwork on and it was not signed by
anyone on Ripta's board membership for contract approval based on the Ripta's
bylaws and Article 1 by the General Assembly and the Global settlement never
settled in worker's compensation court and all four attorneys on my case who

entered on the global settlement never signed the all claims release when Ripta told the worker's compensation judge that they were separated the discrimination portion while awaiting the CMS Medicare set a side to come back . I did not agree to that 150,000 by itself it had to be a global settlement and that is what I entered into with Ripta and I have the agreement order on December 1, 2017 with all the stipulations in that Global Settlement that I have given to you.

I need your office to open this case up to a full investigation because this is totally unacceptable and illegal.

**Adriana Vargas**

Senior Compliance Officer

401-222-7563 ͺ adriana.vargas@richr.ri.gov



***Rhode Island Commission for Human Rights***

180 Westminster St., 3/F, Providence, RI 02903

FRONT DESK: 401-222-2661

FAX: 401-222-2616

VOICE RELAY: 7-1-1

http://www.richr.ri.gov

Please note: This email message, and any attachment(s), contains confidential

information intended only for the use of the named recipient(s) or the agent

responsible for delivery to said individual(s). Any unauthorized use, disclosure,

distribution or reproduction of this information is strictly prohibited. If you have

received this email in error, please notify the sender and promptly delete from

your system. Thank you.

115

9:27

    

5 Messages

< Inbox    Barnes v. RIPTA - RIC...  ∧  ∨



From: Mickeda Barnes
To: Mickeda Barnes
Bcc: mickeda5@gmail.com
March 29, 2022 at 1:08 PM

Jillian Steven Dennis had to return my $10,000 dollars he had taken as his portion of the Global settlement from December 1, 2017 when he did not keep his portion of the agreement for settlement from that date and his payment from that global settlement was based off of that record all four attorneys Nick Mancini, sonja Deyoe, Steven Dennis, and yourself Jillian Hatewell went on Record in Worker's compensation court for agreement on proposed settlement and gave me an advancement of money on. Then on 2/5/2018 I then for a second time amended that very same agreement with additional money given to me also regarding to that lump sum settlement agreement in Worker's compensation court on December 1, 2017.

Nothing Changed Jillian Hartwell. It is what it is. That is null and void.

Then I went into Mediation another 2 years with Ripta who still did not satisfied the

      

116

**9:27**

5 Messages

‹ Inbox    **Barnes v. RIPTA - RIC...**    ∧    ∨

Nothing Changed Jillian Hartwell. It is what it is. That is null and void.

Then I went into Mediation another 2 years with Ripta who still did not satisfied the agreement that Ripta's Attoney Nick and yourself along with Steven Dennis Brought Title VII claims into Worker's compensation court without doing a global settlement still keeps all my claims open until all my worker's compensation claims are settled because Ripta is self insured.

Have a good Day.  Mickeda Barnes
I am open to settlement negotiations but only through the Commission of Human Rights Rights Until my case goes to EEOC.

Sent from my iPhone

On Mar 29, 2022, at 12:42 PM, Mickeda Barnes <mickeda5@gmail.com> wrote:

See More                                    

  Michael Evora                        3/30/22
      All parties will be advised if the statu...

                              

9:26

⟨ Inbox          **5 Messages**          ∧   ∨

 **Jillian S. Folger-Hartwell**          3/29/22
To: michael.evora@richr.... & 2 more ⟩

# Barnes v. RIPTA - RICHR No. 20 EPD 102-03/0

Mr. Evora and Ms. Vargas,
Please let Respondent know if this matter is
referred to another agency. Respondent will
naturally consider any such action as a potential
additional violation of Ms. Barnes' settlement
agreement. As a motion for summary judgment is
pending in Superior Court on the Declaratory
Judgment case, I would want to advise the Court
should Ms. Barnes engage in a fresh violation, prior
to oral argument.
Please also note that Ms. Barnes already has an
existing lawsuit against her union pending in the
U.S. District Court for the District of Rhode Island,
Barnes v. ATU, 1:18-cv-00594-JJM-LDA. With
regard to that matter, she has selected her forum
there.
Regards,
Jillian

**Jillian Folger-Hartwell**
Shareholder
401.824.2107 direct, 401.338.0329 mobile,
401.633.6853 fax
JFolgerHartwell@littler.com



🗑    📁         ↩         ✎

118

9:24

⟨ Inbox          2 Messages          ∧    ∨

📁

**Siri Found a Contact**
Jillian S. Folger-Hartwell          Add
JFolgerHartwell@littler.com

From: Jillian S. Folger-Hartwell ⟩
To: Marlene Toribio ⟩
Cc: mickeda5@gmail.com ⟩
Melissa A. Ganczarski ⟩
January 3, 2022 at 9:28 AM

# Mickeda S. Barnes vs. Rhode Island Public Transit Authority, RICHR No. 22 EPD 069-03/06

Ms. Toribio,
Please see attached entry of appearance, motion for a stay and/or for dismissal.
Regards,
Jillian Folger-Hartwell

**Jillian Folger-Hartwell**
Shareholder
401.824.2107 direct, 401.338.0329 mobile,
401.633.6853 fax
JFolgerHartwell@littler.com



Fueled by ingenuity. Inspired by you.

                    

119

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 375 of 689 PageID
#: 1738
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 118 of 346    PageID 119

From: Mickeda Barnes Mickeda5@gmail.com
Subject: Re: Barnes v. RIPTA - RICHR No. 20 EPD 102-03/0
Date: Mar 29, 2022 at 12:42:05 PM
To: Folger-Hartwell, Jillian S. JFolgerHartwell@littler.com
Bcc: mickeda5@gmail.com

Jillian I have no settlement agreement the Global settlement never was settled.
The Federal Court never approved a settlement agreement between me and Ripta.
Jillian the only agreement we had was the one from December 1, 2017.


Sent from my iPhone


On Mar 29, 2022, at 12:29 PM, Folger-Hartwell, Jillian S.
<JFolgerHartwell@littler.com> wrote:


Mr. Evora and Ms. Vargas,
Please let Respondent know if this matter is referred to another agency. Respondent will
naturally consider any such action as a potential additional violation of Ms. Barnes' settlement
agreement. As a motion for summary judgment is pending in Superior Court on the
Declaratory Judgment case, I would want to advise the Court should Ms. Barnes engage in a
fresh violation, prior to oral argument.
Please also note that Ms. Barnes already has an existing lawsuit against her union pending in
the U.S. District Court for the District of Rhode Island, Barnes v. ATU, 1:18-cv-00594-JJM-
LDA. With regard to that matter, she has selected her forum there.
Regards,
Jillian

**Jillian Folger-Hartwell**
Shareholder
401.824.2107 direct, 401.338.0329 mobile, 401.633.6853 fax
JFolgerHartwell@littler.com

<image001.png>

<image002.png>


Labor & Employment Law Solutions | Local Everywhere
One Financial Plaza, Suite 2205, Providence, RI 02903

120

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 376 of 689 PageID
#: 1731
Case 1:22-cv-00213-JJM-PAS    Document 1-1 Filed 05/31/22   Page 119 of 346   PageID 120

---------------------------

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.

<mime-attachment>
<mime-attachment>

121

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 377 of 689 PageID
#: 1732
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 120 of 346    PageID 121

From: Folger-Hartwell, Jillian S. JFolgerHartwell@littler.com
Subject: Automatic reply: Mickeda Barnes Civil Rights EEOC Complaint
Date: Mar 31, 2022 at 2:52:41 PM
To: Mickeda Barnes Mickeda5@gmail.com

Thank you for your email. I will be out of the office in client meetings this afternoon.  If you
need immediate assistance during regular business hours, please contact my assistant
Melissa Ganczarski at mganczarski@littler.com or 401-824-2113.

--------------------------

This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is
strictly prohibited. If you are not the intended recipient (or authorized to receive for
the recipient), please contact the sender by reply email and delete all copies of
this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global,
which operates worldwide through a number of separate legal entities. Please visit
www.littler.com for more information.

122

9:42

 **Adriana Vargas**                    3/29/22
To: Mickeda Barnes >

# RE: [EXTERNAL] : Mickeda Barnes

That if you wanted, we could ask that EEOC investigate the case instead of us.

Adriana Vargas
Senior Compliance Officer
401-222-7563 | adriana.vargas@richr.ri.gov

Rhode Island Commission for Human Rights
180 Westminster St., 3/F, Providence, RI 02903
FRONT DESK: 401-222-2661
FAX: 401-222-2616
VOICE RELAY: 7-1-1
http://www.richr.ri.gov

Please note: This email message, and any attachment(s), contains confidential information intended only for the use of the named recipient(s) or the agent responsible for delivery to said individual(s). Any unauthorized use, disclosure,

         

123

9:42

15 Messages
**Mickeda Barnes**

‹ Inbox            ⋀   ⋁

See More                          ↩

*Group or label*              ▢

⬤ **Mickeda Barnes**         3/29/22
   To: Adriana & 1 more... ›

Yes, I thought you were EEOC??????

Sent from my iPhone

See More                          ↩

⬤ Mickeda Barnes          3/30/22
   Good Morning Mr. Evora, I would like for...

↩ ⬤ Michael Evora          3/30/22
   Ms. Barnes - We are awaiting word from...

↩ ⬤ Mickeda Barnes          3/30/22
   Micheal I have said it to many times I hav...

⬤ Mickeda Barnes          4/5/22
   Hi Michael could you call me this mornin...

🗄        📁        ↩        ✎

124

9:42

15 Messages

‹ Inbox    **Mickeda Barnes**    ∧   ∨

 **Mickeda Barnes**                          3/30/22
To: Michael & 1 more... ›

Good Morning Mr. Evora,

I would like for you to contact me in regards
to my complaint I filed against Ripta for the
Continuing Discrimination and Harassment I
am enduring during my time waiting for a
proper resolution of my claims with the
Commission of Human Rights with the EEOC
and with the Courts.
Ripta has used their political power and
unethical practices to prevail and prevent me
from having any laws that are in my favor to
rule with me in regards to unfair employment
practices in regards to the interstate
commerce agreement with the Employer and
the Government in exchange for federal
funding.
Also I was in a Union that failed to properly
represent me and was aided and abetting
with Ripta to deny me those benefits I was
entitled to which is discrimination by itself
among other issues I am claiming that are
related to my complaints against Ripta.
To have Jillian Hartwell Theaten me again
yesterday about adding additional money

      

9:42    

⟨ Inbox    **Mickeda Barnes**    ∧    ∨

15 Messages

commerce agreement with the Employer and
the Government in exchange for federal
funding.

Also I was in a Union that failed to properly
represent me and was aided and abetting
with Ripta to deny me those benefits I was
entitled to which is discrimination by itself
among other issues I am claiming that are
related to my complaints against Ripta.

To have Jillian Hartwell Theaten me again
yesterday about adding additional money
fines for a breach of contract for a
settlement agreement that I never agreed to
outside of a global settlement agreement
that was on record on December 1, 2017. If
you read that Record Micheal it states the
very same terms as the agreement Jillian
had me sign on April 25, 2018 that I was told
was the discrimination portion of the Global
settlement agreement and that we were wait
for CMS to come back to settle the case and
when that happened Ripta backed out of the
deal and that was not a mutual agreement as
stated in the December 1, 2017 on the record
and then the amended agreement on
February 5, 2018 statement signed by me to
Becon Mutual for additional money advance
to me from the lump sum of the Global

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 382 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 125 of 346   PageID 126
#1 737

9:42

‹ Inbox

15 Messages
**Mickeda Barnes**    ∧    ∨

settlement agreement and that we were wait for CMS to come back to settle the case and when that happened Ripta backed out of the deal and that was not a mutual agreement as stated in the December 1, 2017 on the record and then the amended agreement on February 5, 2018 statement signed by me to Becon Mutual for additional money advance to me from the lump sum of the Global Settlement from Worker's compensation. The paperwork never said the lump sum came from a discrimination case from Federal Court or from a Title VII claim.

Mickeda Barnes

Sent from my iPhone

 **Michael Evora**    3/30/22
Ms. Barnes – We are awaiting word from...

 **Mickeda Barnes**    3/30/22
Micheal I have said it to many times I hav...

 **Mickeda Barnes**    4/5/22

9:42

 **Michael Evora**                    3/30/22
To: Mickeda Barnes ›

Ms. Barnes –

We are awaiting word from EEOC as to
whether they will honor your request to have
the investigation conducted by them instead
of us. I will advise as soon as that decision is
made by EEOC.

I am not in a position to comment at all upon
the cases which went to court following the
Commission's rulings of probable cause, or
on what Attorney Folger-Hartwell may intend
to argue regarding any alleged settlements.

Regards,


Michael D. Evora, Esq.
Executive Director
401.222.7561 – michael.evora@richr.ri.gov
Pronouns: he/him/his

Rhode Island Commission for Human Rights
180 Westminster Street, 3rd fl.

            

9:42

‹ Inbox          **Mickeda Barnes**          ∧   ∨

Michael D. Évora, Esq.
Executive Director
401.222.7561 – michael.evora@richr.ri.gov
Pronouns: he/him/his

Rhode Island Commission for Human Rights
180 Westminster Street, 3rd fl.
Providence, RI 02903
Fax: 401.222.2616
Voice Relay: 7-1-1
"Service is the rent we pay for the privilege
of living on this earth." -Shirley Chisholm

This e-mail message contains confidential
and/or legally privileged
information belonging to the sender and
intended only for the review
and use of the intended recipient.  If you are
not the intended recipient,
any disclosure, dissemination, distribution,
copying, review or use
of the information contained in this e-mail
message or any attachment
is strictly prohibited.  If you think that you
have received this e-mail
message in error, please call me and purge
this e-mail message from

9:43

15 Messages

‹ Inbox    **Mickeda Barnes**    ∧  ∨

-----Original Message-----
From: Mickeda Barnes
<mickeda5@gmail.com>
Sent: Wednesday, March 30, 2022 9:26 AM
To: Evora, Michael (RICHR)
<Michael.Evora@richr.ri.gov>
Subject: [EXTERNAL] : Mickeda Barnes

Good Morning Mr. Evora,

I would like for you to contact me in regards
to my complaint I filed against Ripta for the
Continuing Discrimination and Harassment I
am enduring during my time waiting for a
proper resolution of my claims with the
Commission of Human Rights with the EEOC
and with the Courts.
Ripta has used their political power and
unethical practices to prevail and prevent me
from having any laws that are in my favor to
rule with me in regards to unfair employment
practices in regards to the interstate
commerce agreement with the Employer and
the Government in exchange for federal
funding.
Also I was in a Union that failed to properly
represent me and was aided and abetting
with Ripta to deny me those benefits I was

   

130

9:43    

15 Messages
‹ Inbox        **Mickeda Barnes**        ∧    ∨

I would like for you to contact me in regards
to my complaint I filed against Ripta for the
Continuing Discrimination and Harassment I
am enduring during my time waiting for a
proper resolution of my claims with the
Commission of Human Rights with the EEOC
and with the Courts.
Ripta has used their political power and
unethical practices to prevail and prevent me
from having any laws that are in my favor to
rule with me in regards to unfair employment
practices in regards to the interstate
commerce agreement with the Employer and
the Government in exchange for federal
funding.
Also I was in a Union that failed to properly
represent me and was aided and abetting
with Ripta to deny me those benefits I was
entitled to which is discrimination by itself
among other issues I am claiming that are
related to my complaints against Ripta.
To have Jillian Hartwell Theaten me again
yesterday about adding additional money
fines for a breach of contract for a
settlement agreement that I never agreed to
outside of a global settlement agreement
that was on record on December 1, 2017. If
you read that Record Micheal it states the

9:43

15 Messages

‹ Inbox          **Mickeda Barnes**          ∧   ∨

Also I was in a Union that failed to properly represent me and was aided and abetting with Ripta to deny me those benefits I was entitled to which is discrimination by itself among other issues I am claiming that are related to my complaints against Ripta.

To have Jillian Hartwell Theaten me again yesterday about adding additional money fines for a breach of contract for a settlement agreement that I never agreed to outside of a global settlement agreement that was on record on December 1, 2017. If you read that Record Micheal it states the very same terms as the agreement Jillian had me sign on April 25, 2018 that I was told was the discrimination portion of the Global settlement agreement and that we were wait for CMS to come back to settle the case and when that happened Ripta backed out of the deal and that was not a mutual agreement as stated in the December 1, 2017 on the record and then the amended agreement on February 5, 2018 statement signed by me to Becon Mutual for additional money advance to me from the lump sum of the Global Settlement from Worker's compensation. The paperwork never said the lump sum came from a discrimination case from



9:43

15 Messages

‹ Inbox    **Mickeda Barnes**    ∧    ∨

and then the amended agreement on February 5, 2018 statement signed by me to Becon Mutual for additional money advance to me from the lump sum of the Global Settlement from Worker's compensation. The paperwork never said the lump sum came from a discrimination case from Federal Court or from a Title VII claim.

Mickeda Barnes

Sent from my iPhone

---

**Mickeda Barnes**                    3/30/22
Micheal I have said it to many times I hav...

**Mickeda Barnes**                    4/5/22
Hi Michael could you call me this mornin...

**Michael Evora**                    4/5/22
I am in the midst of meetings (virtual con...

**Mickeda Barnes**                    4/7/22
Good morning Michael Evora, I need you...

133

9:43

15 Messages

< Inbox    **Mickeda Barnes**    ∧ ∨



**Mickeda Barnes**                3/30/22
To: Michael & 1 more... >

Micheal I have said it to many times I have
waited 7 years to have my day in Court
against Ripta and I've never been heard or
had a proper investigation into what
happened to me with my job nor have I had
an arbitration that I was entitled too. I've
been to the review board at the Department
labor and training who also besides the
Commission of Human Rights said Ripta was
in violation of the RI fair employment act
both State and Federal laws.
I don't and no one has made me understand
why it has taken me this long to either be
reinstated back to my job or a proper
settlement for me to go away.
If my case was handled the way I agreed too
on December 1, 2017 I would not be fighting
with Ripta I would be in a whole other state.
I've been force to stay here and continue to
fight my case until I either get my job back or
have a proper settlement to pay for my injury
and medical bills and to guarantee my
pension benefits so when I retire I can have
my money I earned and not have Ripta take
my money I paid into as a penalty for

   

9:43

15 Messages

< Inbox    **Mickeda Barnes**    ∧    ∨

reinstated back to my job or a proper
settlement for me to go away.

If my case was handled the way I agreed too
on December 1, 2017 I would not be fighting
with Ripta I would be in a whole other state.
I've been force to stay here and continue to
fight my case until I either get my job back or
have a proper settlement to pay for my injury
and medical bills and to guarantee my
pension benefits so when I retire I can have
my money I earned and not have Ripta take
my money I paid into as a penalty for
retaliation for my complaints to the
Commission of Human Rights.


Sent from my iPhone


See More                                      ↩

        Mickeda Barnes              4/5/22
        Hi Michael could you call me this mornin...


        Michael Evora               4/5/22
        I am in the midst of meetings (virtual con...

🗃    📁    ↩    ✎

135

9:43

15 Messages
**Mickeda Barnes**    ∧    ∨

‹ Inbox

See More

**Mickeda Barnes**                    4/5/22
To: Michael & 1 more... ›

Hi Michael could you call me this morning
please. Thank you Mickeda Barnes

Sent from my iPhone

See More

**Michael Evora**                    4/5/22
I am in the midst of meetings (virtual con...

**Mickeda Barnes**                    4/7/22
Good morning Michael Evora, I need you...

**Michael Evora**                    4/7/22
Ms. Barnes - Right now, the investigation...

**Mickeda Barnes**                    4/12/22
Good morning Michael Evora, I need you...

136

9:43

15 Messages
 Inbox    **Mickeda Barnes**    

 **Michael Evora**    4/5/22
To: Mickeda Barnes ›

I am in the midst of meetings (virtual conference) for the majority of the day. Can you let me know what you need?

Peace, Michael

-----Original Message-----
From: Mickeda Barnes
<mickeda5@gmail.com>
Sent: Tuesday, April 5, 2022 11:08 AM
To: Evora, Michael (RICHR)
<Michael.Evora@richr.ri.gov>
Subject: Re: [EXTERNAL] : Mickeda Barnes

Hi Michael could you call me this morning please. Thank you Mickeda Barnes

Sent from my iPhone

See More    

 **Mickeda Barnes**    4/7/22
Good morning Michael Evora, I need you...

            

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 393 of 689 PageID
#: 1748
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 136 of 346   PageID 137

From: Folger-Hartwell, Jillian S. JFolgerHartwell@littler.com
Subject: Motion for Partial Summary Judgment
Date: Mar 7, 2022 at 6:35:53 PM
To: Mickeda Barnes Mickeda5@gmail.com

Ms. Barnes,
Please see the attached motion for partial summary judgment and supporting memorandum of
law. The hearing is set for May 24, 2022. You will receive the full document, with all exhibits,
via a Biscom link and via regular mail.
Regards,
Jillian Folger-Hartwell

**Jillian Folger-Hartwell**
Shareholder
401.824.2107 direct, 401.338.0329 mobile, 401.633.6853 fax
JFolgerHartwell@littler.com

# Littler

**Fueled by ingenuity. Inspired by you.**

Labor & Employment Law Solutions | Local Everywhere
One Financial Plaza, Suite 2205, Providence, RI 02903

--------------------------

This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is
strictly prohibited. If you are not the intended recipient (or authorized to receive for
the recipient), please contact the sender by reply email and delete all copies of
this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global,
which operates worldwide through a number of separate legal entities. Please visit
www.littler.com for more information.

pdf

Rhode Isla...gme~1.pdf
178 KB

138



## STATE OF RHODE ISLAND

### SUPERIOR COURT
### OMNIBUS CALENDAR ASSIGNMENT FORM

| ☒ Providence/Bristol County   ☐ Kent County   ☐ Washington County   ☐ Newport County | |
|---|---|
| RHODE ISLAND PUBLIC TRANSIT AUTHORITY | CASE NUMBER PC2020-08065 |
| VS. | |
| MICKEDA BARNES | |

**CALENDAR TYPE MUST BE SELECTED FOR SCHEDULING PURPOSES**
☐ FORMAL SPECIAL CAUSE CALENDAR   ☐ BUSINESS CALENDAR   ☒ DISPOSITIVE MOTION CALENDAR

### FORMAL SPECIAL CAUSE AND BUSINESS CALENDAR

| | |
|---|---|
| ☐ AGENCY APPEAL | ☐ MOTION FOR PROTECTIVE ORDER |
| ☐ ASSESSMENT OF DAMAGES | ☐ MOTION TO RECONSIDER |
| ☐ APPOINTMENT OF A SPECIAL MASTER | ☐ ORAL PROOF OF CLAIM |
| ☐ CONFIRM ARBITRATION | ☐ PETITION TO ALLOW SECURED CLAIM |
| ☐ DECLARATORY JUDGMENT | ☐ PETITION TO APPOINT TEMPORARY RECEIVER |
| ☐ ENTRY OF JUDGMENT | ☐ PROOF OF CLAIM |
| ☐ EVIDENTIARY HEARING | ☐ PETITION TO ENFORCE |
| ☐ FIRST AND FINAL REPORT | ☐ PETITION FOR INSTRUCTIONS |
| ☐ FORECLOSURE OF RIGHT OF REDEMPTION | ☐ PRELIMINARY INJUNCTION |
| ☐ FRIENDLY SUIT | ☐ APPOINTMENT OF PERMANENT SPECIAL MASTER |
| ☐ APPOINTMENT OF PERMANENT RECEIVER | ☐ PETITION TO RECLAIM |
| ☐ MOTION TO ATTACH | ☐ PARTITION PROCEEDINGS |
| ☐ MOTION FOR ATTORNEYS FEES | ☐ PETITION TO SELL |
| ☐ MOTION TO COMPEL RECEIVER | ☐ RECEIVERSHIP PROCEEDINGS |
| ☐ MOTION TO DEFAULT | ☐ SHOW CAUSE HEARING |
| ☐ MOTION FOR ENTRY OF FINAL JUDGMENT | ☐ SUPPLEMENTARY PROCEEDINGS |
| ☐ MECHANIC'S LIEN | ☐ TITLE PROCEEDINGS |
| ☐ MOTION FOR APPROVAL | ☐ TEMPORARY RESTRAINING ORDER |
| ☐ MANDATORY INJUNCTION | ☐ TRUSTEE PROCEEDINGS |
| ☐ MOTION TO ADJUDGE IN CONTEMPT | ☐ VACATE ARBITRATION |
| ☐ OTHER FORMAL MATTER (EXPLAIN) | ☐ WRIT OF MANDAMUS |
| | ☐ WRIT OF REPLEVIN |
| ☐ OTHER BUSINESS MATTER (EXPLAIN) | |

If you require witnesses, state the estimated time frame of said hearing and attach a witness list and expected testimony to this form.

### DISPOSITIVE MOTION CALENDAR

| | |
|---|---|
| ☐ MOTION TO DISMISS, UNDER RULE 12 | ☐ MOTION FOR PARTIAL SUMMARY JUDGMENT |
| ☐ MOTION FOR ENTRY OF JUDGMENT ON PLEADINGS | ☒ MOTION FOR SUMMARY JUDGMENT |
| ☐ OTHER DISPOSITIVE MOTION: (EXPLAIN) _____ | |

| HEARING DATE: May 24, 2022 | APPROVED BY: |
|---|---|

**Failure to fill out this form properly may result in your hearing date not being approved.**

| Signature of Attorney or Self-represented Litigant | Address: |
|---|---|
| /s/ Jillian S. Folger-Hartwell, Littler Mendelson, P.C. | One Financial Plaza, Suite 2205, Providence, RI 02903 |
| Rhode Island Bar Number: 8970 | Office Telephone Number: 4018242500 | Date: March 7, 2022 |

Superior-37 (revised June 2020)

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 395 of 689 PageID
#: 750
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 138 of 346   PageID 139

pdf

Rhode Isla...974 v.1.pdf
74 KB

140

STATE OF RHODE ISLAND                    WORKERS' COMPENSATION
PROVIDENCE, SC.                           COURT

MICKEDA S. BARNES                    :
                                     :
    VS.                              :
                                     :   WCC NO. 2017-4046; 2017-4145;
                                     :        2017-4571; 2017-5115
RHODE ISLAND PUBLIC TRANSIT          :
    AUTHORITY

### EMPOLYEE MICKEDA S. BARNES'S
### CONFIDENTIAL MEDIATION STATEMENT

Now comes the Employee, Mickeda S. Barnes, by and through her counsel

Stephen J. Dennis, Esq. in the above-captioned matter and hereby, pursuant to

Administrative Order No. 2016-06 IIIc and Order dated September 27, 2017, submits the

following Confidential Mediation Statement.

I        POSITION OF THE EMPLOYER

The Employee has four petitions pending before Chief Ferrieri. The first petition

is a Petition to Review seeking payment of Dr. Michael Souza's bill in the amount of

$2,873.00. (WCC 2017-4046). The Employee took a pro forma denial at the pre-trial

stage and filed a claim for trial on that matter. The second petition which the Employee

also took a pro forma denial on is a petition to review seeking permission to treat with a

psychologist. (WCC 2017-4145). Employee timely filed a claim for trial on the denial.

An initial hearing has not been held on these two petitions. On the date these two

petitions came before the Court for initial hearing, September 6, 2017, Employee's third

petition for disfigurement was heard and argued. Chief Ferrieri granted the petition.

From this award at pre-trial the Employer filed a timely claim for trial. At that time the

*[handwritten note in right margin: That's I whey my want for Intrest for the year and my 4% loss of use]*

*[handwritten note at bottom: Ripta Had to Pay me my Weekly Benifits when I won my report]*

1

Court recognized that the Employee would be filing a claim for recurrence and recommended that she file the Petition prior to the next Court date for initial hearing (September 27, 2017) and recommended that the parties strongly consider mediation. The Court was also aware that there were other matters pending between the parties in other venues and urged that all matters be mediated working toward a global resolution. Finally, the Chief indicated that he would appoint an impartial on the recurrence petition in the event the parties were unwilling to mediate. Employee indicated her willingness to mediate at that time.

Employee filed the fourth pending petition in this Court (WCC 17-5115) alleging a recurrence and a return of her incapacity from February 9, 2017 and continuing. On September 27, 2017 when the matter came before the Chief all pending matters referred to mediation.

At the time of the injury Employee's average weekly wage (AWW) was $1,322.77. Employee's spendable base is $1094.60; and her compensation rate is $820.95. Her injury occurred on February 12, 2015 following a slip and fall on the ice while at work. She was initially paid weekly benefits pursuant to a Memorandum of Agreement. The Memorandum of Agreement was amended to include the left wrist on March 2, 2016 pursuant to a pre-trial order entered by Judge Salem in WCC 2015-6647. Judge Hardman discontinued Employee's weekly benefits on November 10, 2016 (WCC 2016-3927). On February 3, 2017 the Court entered an ex parte order granting Employee permission for left hand carpal tunnel release pursuant to Dr. Scott Schmidt's report.

Employee asserts that he will prevail on his petition after a trial on the merits.

2

## II.    MEDICAL OPINIONS

Employee will rely on the medical opinions of her doctors including Dr. Schimdt.

## III.    LAY WITNESSES

The Employee will testify in this case.

Petitioner/Employee
By her attorney:

_/s/ STEPHEN J. DENNIS_____
Stephen J. Dennis, Esq. #4336
127 Dorrance Street, 3rd Fl, Suite 7A
Providence, RI 02903
(401) 453-1355

3

143

**RHODE ISLAND WORKERS' COMPENSATION COURT**
**CONFIDENTIAL MEDIATION STATEMENT**

## SUBMIT TO MEDIATION COORDINATOR ONLY – <u>DO NOT SEND COPIES TO COUNSEL</u>

| CASE NAME:<br>Mickeda S. Barnes | W.C.C. CASE NUMBER:<br>2017-4046; 2017-4145; 2017-4571; 2017-5115 |
|---|---|
| NAME OF COUNSEL FILING THIS STATEMENT<br>Stephen J. Dennis, #4336 | COUNSEL FOR (NAME OF PARTY)<br>Employee/Mickeda S. Barnes |

**PLEASE DESCRIBE WHY PAST EFFORTS TO RESOLVE THIS DISPUTE HAVE BEEN UNSUCCESSFUL**

There have been very few past efforts to settle the matter.  In 2015 Employee demanded $250,000 to settle her case.  Employer has only offered $20,000 (in 2016).   We are hopeful that the mediator will be able to determine the realistic global value of the case and will be able to convince all parties of the case's true value.

**PLEASE LIST IMPORTANT FACTORS AFFECTING YOUR CLIENT'S CHANCES FOR SUCCESS AT TRIAL**

The client's chances for trial are heightened by the fact that Chief Ferrieri awarded the Employee specific compensation pursuant to RIGL Section 28-33-19 on September 6, 2017.

**WHAT ARE YOUR CLIENT'S TOP PRIORITIES AND INTERESTS (OTHER THAN SUCCEEDING AT TRIAL)?**

To receive a satisfactory settlement in this case.

***OTHER THAN WINNING*** AT TRIAL, WHAT WOULD BE SOME POSSIBLE CREATIVE SOLUTIONS TO THIS CASE?

A monetary settlement that includes all matters between Employee and Employer.

**PLEASE PROVIDE A LIST OF POTENTIAL OR ACCEPTABLE OUTCOMES TO THE MEDIATION SESSION**

See above.

**ARE THERE ANY OTHER RELATED ISSUES OR RELEVANT INFORMATION THAT WOULD ASSIST THE MEDIATOR  IN HELPING TO RESOLVE THIS CASE?**

There are pending claims by the Employee in other venues.  Employee is interested in resolving all matters with her Employer.

Attach no more than a five page statement outlining your client's position in this case. Specifically set forth the medical opinions that your client is relying on as well as a summary of the lay witness testimony to be heard or that was heard at trial.

144

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 400 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 143 of 346   PageID 144
#1 755

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## PROVIDENCE, SC.          WORKERS' COMPENSATION COURT

**WORKERS' COMPENSATION COURT**
J. Joseph Garrahy Judicial Complex
One Dorrance Plaza
Providence, RI  02903-3973
*(401) 458-5000 voice
(401) 222-3121 facsimile

Mickeda S. Barnes, Petitioner                                          10/13/2017
v.
**RHODE ISLAND PUBLIC**          Case #  201704046, 201704145, 201704751, 201705115
**TRANSIT AUTHORITY,**
Respondent

### NOTICE OF MEDIATION CONFERENCE

In accordance with the provision of Administrative Order number 2016-06 of the Workers' Compensation Court, a mediation conference will be held at this court on October 20, 2017 before Judge Michael J. Feeney at 9:00 a.m. Please go to the 3$^{rd}$ floor for your room assignment.

You are hereby notified to attend this conference. All parties, their counsel, and persons with the full authority to settle the case must personally attend the mediation conference, or be available by phone or email, unless excused by the Mediator for good cause. Failure to appear for said mediation conference, unless excused by the Mediator, may result in court imposed sanctions.

WORKERS' COMPENSATION COURT

Nicholas DiFilippo
Court Administrator

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your mediation conference.

* If an accommodation for a disability is necessary, please contact the Workers' Compensation Court at (401) 458-5000.  TTY users can contact the Workers' Compensation Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.

145

**RHODE ISLAND WORKERS' COMPENSATION COURT**

**CONFIDENTIAL MEDIATION STATEMENT**

## SUBMIT TO MEDIATION COORDINATOR ONLY – <u>DO NOT SEND COPIES TO COUNSEL</u>

| CASE NAME: _Mackeda S. Barnes_ | W.C.C. CASE NUMBER: 17 – 4046 17 – 4145 |
|---|---|
| NAME OF COUNSEL FILING THIS STATEMENT: _Stephen J. Dennis_ | COUNSEL FOR (NAME OF PARTY) |

PLEASE DESCRIBE WHY PAST EFFORTS TO RESOLVE THIS DISPUTE HAVE BEEN UNSUCCESSFUL

PLEASE LIST IMPORTANT FACTORS AFFECTING YOUR CLIENT'S CHANCES FOR SUCCESS AT TRIAL

WHAT ARE YOUR CLIENT'S TOP PRIORITIES AND INTERESTS (OTHER THAN SUCCEEDING AT TRIAL)?

*OTHER THAN WINNING* AT TRIAL, WHAT WOULD BE SOME POSSIBLE CREATIVE SOLUTIONS TO THIS CASE?

PLEASE PROVIDE A LIST OF POTENTIAL OR ACCEPTABLE OUTCOMES TO THE MEDIATION SESSION

ARE THERE ANY OTHER RELATED ISSUES OR RELEVANT INFORMATION THAT WOULD ASSIST THE MEDIATOR IN HELPING TO RESOLVE THIS CASE?

Attach no more than a five page statement outlining your client's position in this case. Specifically set forth the medical opinions that your client is relying on as well as a summary of the lay witness testimony to be heard or that was heard at trial.

146

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## PROVIDENCE, SC.            WORKERS' COMPENSATION COURT

|  |  |  |  |
|---|---|---|---|
| Mickeda S. Barnes | ) | | |
| | ) | W.C.C. No. | 201704145, 201704046, 201704571, 201705115 |
| VS. | ) | | |
| RHODE ISLAND PUBLIC TRANSIT AUTHORITY | ) | | |

## ORDER

Upon good cause, the above entitled matter is hereby referred for Mediation.

Judge ___Feeney___ is assigned to mediate this matter. This matter is

continued to _____10/23 @ 10:00_____, before this court, for further

proceedings. All mediation documents shall be provided to the Mediation

Coordinator by _____10/13 @ 10:00_____

Entered as an Order of this Court this __27th__ day of __Sept__ __2017__

PER ORDER:                              ENTER:

/s/ Nicholas DiFilippo                   /s/ Chief Judge Robert M. Ferrieri

ADMINISTRATOR                           JUDGE

147

# LAW OFFICE OF $\mathcal{SJD}$ STEPHEN J. DENNIS

Stephen J. Dennis *

Howard L. Feldman †
Catherine E. Bednarz †
Carolyn A. Mannis

Jeanne M. Scott
of counsel
William J. Gately, Jr. †
of counsel

\* Also admitted in DC
† Also admitted in MA

October 16, 2017

Ms. Mickeda S. Barnes
34 Dunbar Avenue
Rumford, RI 02916

Dear Ms. Barnes:

As you are aware, this office represents your legal interest in regards to a workers' compensation claim.

I am writing you at this time to inform you of your Mediation, which is scheduled for October 20, 2017 at 9:00 a.m. This will be held on the 3rd Floor of the court house with Judge Michael J. Feeney.  Please contact our office upon receipt of this correspondence to verify your attendance.

Thank you for your attention to this correspondence.

Very truly yours,

**LAW OFFICE OF STEPHEN J. DENNIS**

Stephen J. Dennis, Esq.

SJD/alh
Enclosure

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 ▫ 1-888-634-1543 ▪ Fax: 401-453-6670



148

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 404 of 689 PageID
#:1759
Case 1:22-cv-00213-JJM-PAS   Document 1-1  Filed 05/31/22   Page 147 of 346   PageID 148

RHODE ISLAND WORKERS' COMPENSATION COURT

CONFIDENTIAL MEDIATION STATEMENT

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

### PROVIDENCE, SC.          WORKERS' COMPENSATION COURT

Mickeda S. Barnes

}

W.C.C. No.    201704145,
201704571,201705115,201704046

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY

### CONFIDENTIALITY REQUIREMENT / NEGOTIATION AUTHORIZATION

    I hereby agree that any and all documents submitted and statements made in furtherance of mediation, including, but not limited to, the content of the mediation statement and any attachments thereto, and any relevant memoranda or supporting documentation relied upon during the course of the mediation session by counsel, any party or the mediator shall remain confidential. My client(s) further agree(s) not to subpoena or otherwise subject the mediator, staff members, or records of the Workers' Compensation Court Mediation Program to any court proceedings, lawsuits or other legal actions related to the mediation process or its outcome.

    My client(s) agree to participate in mediation, and I am authorized to participate and negotiate on behalf of my client(s) with full authority to make and/or accept offers. If I am not so authorized at the time of mediation, I will make arrangements to have my client(s) or authorized representative(s) available in person or by telephone at the time of the mediation session.

    I understand, and my client(s) have been informed, that even if this case proceeds to mediation, it is subject to all applicable time limitations and requirements as set forth by the trial judge presiding over this case. If an agreement is reached, the appropriate documentation will be promptly filed with the Court. I understand and my client(s) have been informed that failure to abide by the above requirements may result in sanctions.

Stephen J. Dennis

COUNSEL FOR EMPLOYEE (PRINT NAME)

SIGNATURE                                          9/27/17
                                                   DATE

Nicholas Mancini

COUNSEL FOR EMPLOYER  (PRINT NAME)

                                                   9/27/17

SIGNATURE                                          DATE

149

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 405 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-760   Filed 05/31/22   Page 148 of 346   PageID 149
#1,760
2017-10-02 19:14:55 (GMT)   14013547464 From: Sonja Deyoe



October 2, 2017

VIA FAX 401-453-6670

Law Office of Stephen J. Dennis
125 Dorrance Street
Providence, RI 02903

Re: Mickeda Barnes, 1/31/75

Dear Attorney Dennis:

Our office just received notice of an upcoming mediation in relation to the above-mentioned client. Per Ms. Barnes, this mediation is scheduled for 10/13/17 at 10:00 a.m.

After speaking with our client, it is unclear whether or not this is a joint mediation session. Will you need Attorney Deyoe for an appearance?

Please advise, so that I can plan her schedule accordingly.

Thank you in advance,

Jennifer List
Paralegal to Attorney Deyoe
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
401-369-6901
jl@the-straight-shooter.com

Law Offices of Sonja L. Deyoe
395 Smith Street, Providence, RI 02908
371 South Main Street, Fall River, MA 02721
www.the-straight-shooter.com

(401) 864-5877
Fax (401) 354-7464
sld@the-straight-shooter.com

150

# LAW OFFICE OF  STEPHEN J. DENNIS

Stephen J. Dennis *

Howard L. Feldman †

~~Catherine E. Bednarz †~~

Carolyn A. Mannis

Michael F. Campopiano †
of counsel

William J. Gately, Jr. †
of counsel

October 3, 2017

\* Also admitted in DC
† Also admitted in MA

Ms. Sonja L. Deyoe
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908

RE:  Mickeda S. Barnes
DOI:  2/12/2015

Dear Ms. Deyoe:

In response to your letter dated October 2, 2017 with regard to the mediation of Ms. Mickeda Barnes, we would like your attendance on 10/13/17 at 10:00 am. Also, please notify your adversary.

This mediation will be an attempt to settle all open claims with regard to Ms. Mickeda Barnes.

If you need any additional information please don't hesitate to contact our office. Thank you for your anticipated cooperation.

Very Truly Yours,

**LAW OFFICE OF STEPHEN J. DENNIS**

Stephen J. Dennis, Esq.

SJD/alh

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 • 1-888-634-1543 • Fax: 401-453-6670

151

# LAW OFFICE OF STEPHEN J. DENNI

Stephen J. Dennis *

Howard L. Feldman †
Catherine E. Bednarz †
Carolyn A. Mannis

Jeanne M. Sco
of couns

William J. Gately, Jr.
of counse

November 21, 2017

* Also admitted in Di
† Also admitted in M

Ms. Sonja L. Deyoe
Law Offices of Sonja L. Deyoe
Attorney at Law
395 Smith Street
Providence, RI 02908

RE:    **Mickeda S. Barnes**
DOI:    **2/12/2015**

Dear Ms. Deyoe:

In speaking with the client she has advised her demands for a global settlement as follows, $250,000.00 for her Workers' Compensation, $45, 802.20 for an MSA and $300,000.00 for her Discrimination Claim.

Please advise our office if you're agreeable to allow us to submit these demands to the opposing counsel for a global settlement per the judge's request.

Please contact our office at your earliest convenience to discuss this correspondence. Thank you for your anticipated cooperation.

Very Truly Yours,

**LAW OFFICE OF STEPHEN J. DENNIS**

COPY

Stephen J. Dennis, Esq.

SJD/alh
Cc: Mickeda S. Barnes



Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 408 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 151 of 346   PageID 152
# 763

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

**PROVIDENCE, SC.**    **WORKERS' COMPENSATION COURT**

Mickeda S. Barnes

vs.

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**

W.C.C. No. 201704046, 201704145, 201704571, 201705115

### Statement of the Mediator

In regard to the above matter, the undersigned was assigned as Mediator, by an Order issued by Chief Judge Ferrieri on September 27, 2017.

The Mediation was:

☐ scheduled but not heard

☐ was held on the following date(s)    12/1/17

The Mediation ended:

☐ in full agreement as follows:

☐ in non-agreement

Signature:    Date:    12/4/17

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 409 of 689 PageID
#: 764
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 152 of 346   PageID 153

3

```
 1                    (DECEMBER 1, 2017)

 2             THE COURT:  These are the matters of Mickeda

 3    Barnes v. Rhode Island Public Transit Authority,

 4    2017-4571, 2017-4046, 2017-4145, 2017-6073, 2017-5115,

 5    2017-6646 and 2017-6824.  The matters were assigned for

 6    mediation under our new mediation program, and Judge

 7    Feeney has undergone a lengthy mediation process -- I

 8    know because the mediation process takes place right

 9    outside of my office -- that Ms. Barnes, her

10    representatives, and Rhode Island Public Transit

11    representatives were here this morning and have worked

12    diligently to reach a resolution.  So I have been asked

13    by the parties to take the bench and essentially go on

14    the record to set forth the terms of what I believe has

15    been a resolution of not only the Workers' Compensation

16    claim but the various other claims that are pending

17    against Rhode Island Public Transit Authority filed by

18    Ms. Barnes.

19             With that being said, I'm going to ask who is

20    going to be the spokesperson who's going to set forth the

21    terms of the settlement on the record.

22             MR. DENNIS:  I think Sonja.

23             THE COURT:  If you can just identify yourself

24    for the record.

25             MS. DEYOE:  Sure.  Attorney Sonja Deyoe.
```

154

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 410 of 689 PageID
#: 765
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 153 of 346   PageID 154

4

1  Your Honor, as I understand it, we have a global

2  settlement for $200,000 with a $25,000 MSA or up to

3  $25,000 MSA.  I understand that has to be subjected to

4  board approval from RIPTA.  $50,000 of that settlement if

5  approved would be through Comp., the other $150,000 would

6  be through the discrimination claim.  There is a

7  discrimination claim that is pending over with the United

8  States District Court.  Any fee that is paid on this

9  matter will be through that discrimination claim.  The

10 fee that's been agreed on that will be split between

11 Attorney Dennis and myself is $40,000.  That gives the

12 remainder of $110,000 that will be paid out to Ms. Barnes

13 in addition to the $50,000 from the Comp. funds.  That

14 $110,000 will have to be paid out both in wage format and

15 1099 format.  That percentage has not been agreed to yet,

16 but we will be contacting counsel with respect to that.

17            THE COURT:  Okay.  The 25,000 MSA, is that

18 coming out of the 200 or is that an additional 25?

19            MS. DEYOE:  It's an additional.  It is up to

20 that amount, could be less.

21            THE COURT:  Based on the analysis of a third

22 party --

23            MR. MANCINI:  I can speak a little bit more

24 to that, Your Honor.  Essentially, the Workers'

25 Compensation lump sum that will be proposed will be a

155

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 411 of 689 PageID
#: 766
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 154 of 346   PageID 155

5

1    $50,000 settlement on the February 12, 2015 injury.  In

2    addition to the $50,000, we will fund an MSA, but our

3    settlement is conditioned upon that MSA being less than

4    $25,000.  We will get the MSA through Carr Allison

5    immediately.  It's also conditioned from board approval

6    by RIPTA.  In the event that the MSA is returned and is

7    above $25,000, we may need to revisit the terms of the

8    global settlement.  So in a sense, we have a settlement

9    agreement in principle subject to those conditions.

10   There are a number of other prior unrelated Workers'

11   Compensation claims that Ms. Barnes has from her time at

12   RIPTA.  We'll also look to resolve those through one

13   dollar nominal lump sums or D and Ds as the case may be.

14             THE COURT:  Gotcha.

15             MS. DEYOE:  There's also an agreement that in

16   good faith there will be a $3,000 advancement to Ms.

17   Barnes.

18             THE COURT:  How much?

19             MS. DEYOE:  $3,000, which mechanically I

20   understand would be attributed to the loss of use

21   petition that's pending before this Court, and I don't

22   have any idea what that number is.

23             MR. MANCINI:  I'll just speak a little bit

24   further to that, Your Honor.  The amount was keyed to the

25   loss of use petition.  The mechanism will be a mutual

1   agreement.   $3,000 will be paid to Ms. Barnes as an

2   advance against the settlement and considered as such in

3   the event that the settlement ultimately comes to

4   fruition as approved by the Court.   In the event that it

5   falls apart per the mutual agreement, as a credit against

6   future indemnity benefits.

7               THE COURT:   Okay.

8               MS. DEYOE:   The only thing I was going to add

9   is that with the federal matter, we do have a hearing

10  that's upcoming with the court.   I have agreed to contact

11  the court to continue that with an attempt to avoid

12  further cost for RIPTA.

13              THE COURT:   Who's hearing the federal matter?

14              MS. DEYOE:   Judge McConnell, I believe.

15              THE COURT:   If Judge McConnell needs to

16  contact me regarding the settlement or certainly where

17  the case is at in the Workers' Comp. Court, please feel

18  free to have him do so.

19              MS. DEYOE:   I will.

20              THE COURT:   Is that it?

21              MS. FOLGER-HARTWELL:   May I address the Court

22  briefly?

23              THE COURT:   You may.

24              MS. FOLGER-HARTWELL:   Jillian Folger-Hartwell

25  for RIPTA.   The settlement agreement in relation to the

157

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 413 of 689 PageID
# 768
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 156 of 346    PageID 157

7

1    discrimination case that is pending in Federal Court will

2    have the usual provisions in it.  That will include full

3    release of all claims, no reapplication, no rehire, all

4    of the RIPTA confidentiality and nondisparagement

5    provisions.

6              THE COURT:  So in lieu of that, I take it

7    that as part of this settlement, the reinstatement

8    petition will be withdrawn with prejudice?

9              MR. MANCINI:  It could be withdrawn with

10   prejudice or alternatively a pretrial order can enter

11   denying it.  I think the same result is achieved.

12             THE COURT:  My only issue with the pretrial

13   order entered denying it is with the five-day claim for

14   trial.  So if we're going to try to do this in one day,

15   we will be better served withdrawing it with prejudice.

16             MR. DENNIS:  My client just mentioned one

17   thing to me, Judge.  May we approach the bench, go off

18   the record?

19             THE COURT:  Sure.

20             (OFF-THE-RECORD BENCH DISCUSSION)

21             THE COURT:  So the knee claim will be settled

22   for a dollar, and there will be a waiver of the lien as a

23   result thereof.

24             MR. DENNIS:  Yes, Your Honor.  So there would

25   be a waiver of the third-party lien with regard to the

158

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 414 of 689 PageID #768
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 157 of 346   PageID 158

8

1    injury of her left knee or --

2                MS. BARNES:  Right knee.

3                MR. DENNIS:  Right knee.

4                MS. DEYOE:  I just want to be clear on one

5    thing just to make sure it's on the transcript for, you

6    know, 20 years from now if this comes back up.  My

7    understanding is my client is entitled to a retirement

8    benefit and that I have been provided with documentation

9    that establishes the amount of that benefit which is in

10   the neighborhood of $600 a month that she be entitled to

11   when she turns 62 years of age.  I just want to confirm

12   that on the record.  Is that correct, Ms.

13   Folger-Hartwell?

14               MS. FOLGER-HARTWELL:  Your Honor, can I have

15   moment to speak with my client?

16               THE COURT:  Before you speak with your

17   client, I'm not sure what the retirement benefit is, and

18   if it's a sticking point, we're not sure of the amount,

19   then perhaps a stipulation can be made that any claim she

20   may have to retirement benefits is not affected by any of

21   these settlements.  That may -- in general, I'm not sure

22   if it satisfies both sides, but without getting into the

23   nitty-gritty of what the exact amount is for retirement

24   benefits.  I'm not sure if that satisfies your concerns.

25               MS. FOLGER-HARTWELL:  I think that's a good

1    suggestion.   If I can speak with my client.

2             THE COURT:   Would that work for you, Sonja?

3             MS. DEYOE:   I'm not certain it would.   We've

4    had a representation basically of what that calculation

5    is.

6             THE COURT:   Okay.

7             MS. DEYOE:   I just want to make certain of

8    two things.   One is that she is entitled to retirement at

9    the age of 62, and that she can rely on that calculation.

10            THE COURT:   So why don't we have both parties

11   speak?

12                 (BRIEF RECESS)

13            THE COURT:   So let's go back on the record to

14   make sure we have an understanding.   I think it's

15   stipulated by all sides that any pension rights that Ms.

16   Barnes has are not affected by any of the settlements or

17   agreements that have been reached here today as a result

18   of the mediation and settlements of the parties.   Am I

19   correct?

20            MS. FOLGER-HARTWELL:   Yes, Your Honor.

21            MS. DEYOE:   Yes, Your Honor.

22            THE COURT:   Any other things that need to be

23   placed on the record?

24            MR. MANCINI:   I'd just like to thank Judge

25   Feeney for his efforts.

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 416 of 689 PageID #: 771
Case 1:22-cv-00213-JJM-PAS    Document 11    Filed 05/31/22    Page 159 of 346    PageID 160

10

1          THE COURT:  I'm going to do that.  I was

2    going to try to recap everything on the record, but I

3    think if I do that, I may put my foot in my mouth, so I'm

4    dare not going to do that.  I'm assuming that the parties

5    will be requesting a copy of this record from you, but I

6    will leave that to the attorneys.

7          First of all, I want to thank the parties, both

8    Ms. Barnes and Rhode Island Public Transit Authority, for

9    agreeing to the mediation.  This is something that's been

10   in effect for a little over a year, and that has been

11   very successful, but success is predicated on a number of

12   things.  Number one, it's predicated on the parties

13   agreeing to actually mediate the claim.  Secondly, it's

14   predicated on the attorneys that are involved in the

15   mediation, and I can see that we have many skilled

16   attorneys here, and I thank them for their efforts

17   because this is a very complicated case, as you know.

18   You've been living through it yourself.

19         And lastly, I can't thank enough my associate

20   judge, Judge Feeney, for bringing this to a resolution.

21   I think through his efforts this case was able to be

22   settled, and only through his efforts, and I commend him.

23   He certainly grasped the issues, and I can tell you that

24   he spent a lot of time learning the case, learning the

25   issues and preparing, and that is I think one of the keys

161

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 417 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 160 of 346   PageID 161

11

1  for this actually being resolved.  So I can't thank him

2  enough for his efforts.  So we do have a matter -- the

3  matter is scheduled for December 4th.  There is no need

4  for us to meet since we went on the record today.  Let me

5  ask this, how much time do you think you need to at least

6  submit this to Carr Allison, and I take it any of the

7  accepted claims will be submitted?  You tell me.

8           MR. MANCINI:  Two weeks to get it submitted,

9  Judge, the maximum.

10          THE COURT:  So why don't we do this?  I'm

11  going to kick this for a date just before the Christmas

12  holiday for the attorneys.  Ms. Barnes, you know you're

13  always welcome in my courtroom, but there's no need for

14  you to pay for parking and come here.  I'm doing this for

15  twofold.  Number one, I want to make sure that the MSA

16  proposal has been submitted.  Number 2, I want to make

17  sure that the mutual agreement relative to the $3,000

18  that you're going to be paid before the Christmas holiday

19  has been executed.  Once I'm satisfied that that has been

20  done, I will then put it down for a date sometime in

21  January for further status on the MSA.  Okay.

22          MS. BARNES:  Could I get the $3,000 ASAP?  I

23  need to pay some bills.

24          THE COURT:  Your attorney will be speaking

25  with RIPTA and Mr. Mancini, and I'm sure that will be

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 418 of 689 PageID
#: 773
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 161 of 346   PageID 162

12

1   done sometime next week.

2                    (OFF THE RECORD)

3          THE COURT:  Any other things that need to be

4   placed on the record?

5          MR. DENNIS:  No, thank you very much, Your

6   Honor.

7          THE COURT:  We'll see everyone on the date of

8   December -- my writing week is the 11th.  So let's do a

9   chamber conference the 12th, 12/12.  I'd love to see the

10  attorneys representing or involved in the federal suit,

11  but you need not be here if everything seems to be going

12  as scheduled.  All I need to do is see Mr. Dennis and Mr.

13  Mancini for them to report that said mutual agreement is

14  executed, the claims have been submitted to Carr Allison,

15  and things are going along smoothly.  If there's an

16  issue, I welcome everyone to please come and see me on

17  the 12th.

18                    (HEARING ADJOURNED)

19

20

21

22

23

24

25

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 419 of 689 PageID
Case 1:22-cv-00213-JJM-PAS    Document #1 774 Filed 05/31/22    Page 162 of 346   PageID 163

1

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.                           WORKERS' COMPENSATION
                                                  COURT

MICKEDA S. BARNES
                                     )
                                     )       W.C.C. 2017-6824
                                                     2017-6646
            VS.                      )               2017-6073
                                                     2017-5115
                                     )

RHODE ISLAND PUBLIC TRANSIT AUTHORITY


HEARD BEFORE CHIEF JUDGE ROBERT M. FERRIERI ON:


December 1, 2017
March 19, 2018
September 5, 2018
October 11, 2018    →Employee testimony for trial
March 22, 2019
April 16, 2019
August 7, 2019
October 23, 2019

_____


APPEARANCES:

STEPHEN J. DENNIS, ESQ........COUNSEL FOR THE PETITIONER
NICHOLAS MANCINI, ESQ.........COUNSEL FOR THE RESPONDENT


ALSO PRESENT:

SONJA DEYOE, Esq.  (Present on 12/1/17 date)
JILLIAN FOLGER-HARTWELL, Esq.(Present on 12/1/17 date)
JUDGE MICHAEL FEENEY (Present on 12/1/17 date)

164

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 420 of 689 PageID
#: 775
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 163 of 346   PageID 164
14

1    ready to hear it, and I will hear it forthwith because I
2    understand Ms. Barnes's situation, and this is the only
3    thing I can do to try and accommodate her.   So we're
4    going to continue it to 4/16 at 10, but if CMS comes
5    back, both the attorneys are to see me, and I will put
6    it on my first available afternoon.
7                MR. DENNIS:   Thank you, Your Honor.
8                MR. MANCINI:   Thank you, Judge.
9                THE COURT:   Thank you.
10                (MATTER ADJOURNED)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

165

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 421 of 689 PageID
12/4/2017 11:43 AM Workers Compensation Court
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 164 of 346   PageID 165

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

**PROVIDENCE, SC.**          **WORKERS' COMPENSATION COURT**

Mickeda S. Barnes

vs.

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY

W.C.C. No.  201704046, 201704145, 201704571,201705115

### Statement of the Mediator

In regard to the above matter, the undersigned was assigned as Mediator, by an Order

Issued by Chief Judge Ferrieri  on September 27, 2017.

The Mediation was:

☐ scheduled but not heard

☐ was held on the following date(s)        *12/1/17*

The Mediation ended:

☒ In full agreement as follows:

☒ In non-agreement

*Comp counsel Remit
to be filed
to resolve compensation
matter 12/4/17*

Signature: _____          Date: *12/4/17*

# LAW OFFICE OF 🅢🅙🅓 STEPHEN J. DENNIS

Stephen J. Dennis *

Howard L. Feldman †
Catherine E. Bednarz †
Carolyn A. Mannis

Jeanne M. Scot
of counse

William J. Gately, Jr.
of counse

\* Also admitted in DC
† Also admitted in MA

December 5, 2017

Ms. Mickeda S. Barnes
34 Dunbar Avenue
Rumford, RI 02916

**RE: Mickeda Barnes vs. Rhode Island Public Transit Authority**

Dear Ms. Barnes:

On Friday, 12/01/2017, you agreed to settle your Workers' Compensation and Discrimination claims. As we now enter the process to finalize the settlement of these claims, we wish to inquire as to whether or not you paid out of pocket for any services and/or prescription medications needed in order to treat your established injuries.

In the event that you did pay out of pocket for any services and/or prescription medications, my office will try to get you reimbursed for those charges. However, in order to proceed, we would need copies of all receipts as well as any corresponding notes in your possession. My office strongly urges you to gather the aforementioned items and deliver them as quickly as possible. We appreciate your prompt attention to this matter. Please do not hesitate to contact us with any questions or concerns. Thank you.

Very Truly Yours,

**LAW OFFICE OF STEPHEN J. DENNIS**

Stephen J. Dennis, Esq.

SJD/jdc

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 • 1-888-634-1543 • Fax: 401-453-6670

167

# LAW OFFICE OF  STEPHEN J. DENNIS

Stephen J. Dennis *

Howard L. Feldman †
Catherine E. Bednarz †
Carolyn A. Mannis

Jeanne M. Scott
of counsel
William J. Gately, Jr. †
of counsel

December 20, 2017

\* Also admitted in DC
† Also admitted in MA

Nicholas Mancini, Esq.
222 Jefferson Boulevard, 2nd Floor
Warwick, RI 02888

**RE:    Mickeda S. Barnes**
**DOI:    2/12/2015**

Dear Mr. Mancini:

As you are aware, this office represents the legal interests with regard to Ms. Mickeda S. Barnes.

Ms. Barnes was hoping to get the Workers' Compensation and the discrimination settlements separated. In which the discrimination settlement could go forward while awaiting the CMS amount for the Workers' Compensation portion.

Please contact my office at your earliest convenience. Thank you for your anticipated cooperation.

Very Truly Yours,

**LAW OFFICE OF STEPHEN J. DENNIS**

COPY

Stephen J. Dennis, Esq.

SJD/alh
Cc: M. Barnes
Cc: N. Mancini
Cc: S. Deyoe
Cc: J. Folger-Hartwell ⟶

*Jillian Knew her all Claim Release was Not that*

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 • 1-888-634-1543 • Fax: 401-453-6670

168

# LAW OFFICE OF  STEPHEN J. DENNI

Stephen J. Dennis *

Howard L. Feldman †
Catherine E. Bednarz †
Carolyn A. Mannis

Jeanne M. Sco
of couns
William J. Gately, Jr.
of couns

\* Also admitted in D
† Also admitted in M

January 9, 2018

Nicholas Mancini, Esq.
222 Jefferson Boulevard, 2nd Floor
Warwick, RI 02888

RE:   **Mickeda S. Barnes**
DOI:   2/12/2015

Dear Mr. Mancini:

This is to follow up with the previous letter sent on December 20, 2017 with regard to Ms. Barnes settlement.

Ms. Barnes was hoping to get the Workers' Compensation and the discrimination settlements separated. In which the discrimination settlement could go forward while awaiting the CMS amount for the Workers' Compensation portion.

Please contact my office with an update at your earliest convenience. Thank you for your anticipated cooperation.

Very Truly Yours,

**LAW OFFICE OF STEPHEN J. DENNIS**

COPY

Stephen J. Dennis, Esq.

SJD/alh
Enclosure
Cc: M. Barnes

(Note) We Ask the Court Said
NO But later On
When CMS Came Back
from Jodi Connor March 1, 2018
that Rip the Nor Carr Allison
Requested the CMS Then I Starte
working on
The F.T.A
Superior Court Case





## RHODE ISLAND · MASSACHUSETTS

1345 Jefferson Boulevard · Warwick, Rhode Island 02886

January 23, 2018

***VIA FASCIMILE ONLY 401-453-6670***

Stephen J. Dennis
127 Dorrance Street
Providence, RI 02903

Re:    Mickeda Barnes

Dear Stephen:

We understand that you have secured a settlement of various Worker's
Compensation Claims of Mickeda Barnes.  Our understanding is that in exchange for
$1.00 any Worker's Compensation Claim relating to Mickeda's right knee are settled
in exchange for RIPTA waiving any right to assert a lien for reimbursement in her
third party claim against Genfare f/k/a GFI Genfare, alias SPX Corporation.

Please make a clear representation to the Worker's Compensation Court that no
settlement of this or any other claims against RIPTA limits, waives, or in any
precludes any claims that Mickeda Barnes has against Genfare f/k/a GFI Genfare,
alias SPX Corporation that is pending in Providence Superior Court, PC 2016-4491.

Thank you for your attention to this matter.

Very truly yours,

Anthony R. Leone

CC:  Mickeda Barnes

Case 1:22-cv-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 426 of 689 PageID
Case 1:22-cv-00213-JJM-PAS     Document 1-1   Filed 05/31/22   Page 169 of 346   PageID 170     p.2
#730
401-825-2980

## Mutual Agreement

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI  02920-0942    www.dlt.ri.gov/wc
Phone (401) 462-8100   TDD (401) 462-8105

| Claim Administrator Claim Number |
| --- |
| 360335 |

| Employee Information | | | Employer, Insurer, Claim Administrator | |
| --- | --- | --- | --- | --- |
| SSN or ID  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 | Date of Birth  01/31/1975 | | Employer Business Name  Rhode Island Public Transit Authority | |
| Last Name  Barnes | First Name  Mickeda | Initial  S | Insurer Business Name  The Beacon Mutual Insurance Company | |
| Date of Injury  02/12/2015 | Date of Death | | Claim Administrator Business Name | |

This form may be used under RIGL § 28-35-6(b) to amend a Memorandum of Agreement, Order or Decree on a workers' compensation claim. This form cannot be used to start or end weekly benefits.

### Amendment to Memorandum of Agreement. Indicate the change.

| | | | |
| --- | --- | --- | --- |
| ☐ Change employees marital status to | ☐ Single | ☐ Married | effective date: |
| ☐ Change the total average weekly wage to | | $ | effective date: |
| ☐ Change the weekly spendable base wage to | | $ | effective date: |
| ☐ Change the weekly compensation rate to | | $ | effective date: |
| ☐ Change maximum number of eligible exemptions | | to | effective date: |
| ☐ Change number of dependents | | to | effective date: |
| ☐ Modify from total to partial incapacity | | effective date: | |
| ☐ Modify from partial to total incapacity | | effective date: | |
| ☐ Suitable Alternative Employment (offer attached) | | effective date: | |
| ☐ Change nature of injury and/or affected body part to | | | |

☑ Other (Specify)
Ripta hereby advances $2000.00 to Barnes from the lump sum settlement agreed upon in principle on December 1, 2017. Should the claim not settle as anticipated Ripta shall take a dollar for dollar credit of $2000.00 against any indemnity benefits payable to Barnes.

### Specific Injury Agreement

The injured worker and the Claims Administrator representing the Insurer and Employer agree on the specific injury or injuries stated here.

| Disfigurement Body Part | | Weeks | Weekly Rate | Amount Paid | Date Paid |
| --- | --- | --- | --- | --- | --- |
| | | | | | |
| | | | | | |

| Loss of Use: Body Part | Percent | Weeks | Weekly Rate | Amount Paid | Date Paid |
| --- | --- | --- | --- | --- | --- |
| | 0.00 | | | | |
| | 0.00 | | | | |

| Body Part | Type of Hearing Loss | | | Percent | Weeks | Weekly Rate | Amount Paid | Date Paid |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| ☐ Left | ☐ Occupational | ☐ Traumatic | | 0.00 | | | | |
| ☐ Right | ☐ Occupational | ☐ Traumatic | | 0.00 | | | | |
| ☐ Both | ☐ Occupational | ☐ Traumatic | | 0.00 | | | | |

### Signatures of Parties to this Agreement

| Employee Signature | Date | Claim Adjuster Signature | Date |
| --- | --- | --- | --- |
| Mickeda Barnes | 2/5/18 | Terri Mu | 2/5/18 |

DWC-24 1/2014

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 427 of 689 PageID
#: 782
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 170 of 346   PageID 171



*Tear Along Dotted Line*   *Tear Along Dotted Line*   *Tear Along Dotted Line*   *Tear Along Dotted Line*   *Tear Along Dotted Line*   *Tear Along Dotted Line*   *Tear Along Dott*

**DETACH STATEMENT BEFORE DEPOSITING CHECK**

**Beacon**
Mutual Insurance Co.

One Beacon Centre
Warwick, RI 02886

Phone: 401.825.2667
Fax:   401.825.2607
www.beaconmutual.com

**CLAIMS ACCOUNT**

Check Number:   0001167081
Payee Name:     MICKEDA S BARNES

| Claim No. | Claimant Name | | Date Of Injury | Child Support Order Reference No. |
|---|---|---|---|---|
| 380335 | Mickeda S Barnes | | 02/12/2015 | |

| Benefit Type | From Date | To Date | Amount | Total Amt Paid to All Payees |
|---|---|---|---|---|
| Lump Sum Settlement | 12/06/2017 | 12/08/2017 | $3,000.00 | |

*This Was Returned When Global Settlement Never Happened per 12-01-2017 Agreement w/c/c*

Check Total:    $3,000.00

172

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 428 of 689 PageID
#: 1783
Case 1:22-cv-00213-JJM-PAS    Document 1-1783    Filed 05/31/22    Page 171 of 346    PageID 172

**Subsequent Report**

RI Department of Labor and Training, "Subsequent Report"

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942 www.dlt.ri.gov/wc
Phone (401) 462-8100 Fax (401) 462-8105

| Claim Administrator Claim Number |
|---|
| 360335 |

## Employee Information

| | | | Parties to Claim | |
|---|---|---|---|---|
| SSN or ID | Date of Birth  01/31/1975 | | Employer or Business Name | **RIPTA** |
| Last Name  **Barnes** | First Name  **Mickeda** | Initial | Insurer Business Name  **RIPTA** | |
| Date of Injury  02/12/2015 | Date of Death | | Claims Administrator Business Name | **The Beacon Mutual Insurance Company** |

## Claim Information

| Claim Type | Claim Status | Maintenance Type |
|---|---|---|
| ☐ Medical Only | ☑ Open | PY-Payment Report |
| ☑ Indemnity | ☐ Closed | |
| ☐ Notification Only | ☐ Reopened | |
| ☐ Became Medical Only | ☐ Re-Opened/Closed | |
| ☐ Became Lost Time payment | | |

## Payment Information

| Date Disability Began  02/13/2015 | Date Disability Ended  11/10/2016 | Date of First Payment |
|---|---|---|

## Indemnity and Lump Sums Paid to Date for Entire Claim

| Total Incapacity (TT, PT) | Loss of Use (PP) | Death Benefits (DB) | Commutation  $5,000.00 |
|---|---|---|---|
| Partial Incapacity (TP)  $11,744.31 | Scarring (Disfigurement)  $900.00 | Employer Paid | Denied & Dismissed |

## Expenses Paid to Date for Entire Claim

| Funeral | Hospital | Unallocated Prior Indemnity | Durable Medical |
|---|---|---|---|
| Penalties | Other Medical  $434.90 | Unallocated Prior Medical | Medical Travel  $8.36 |
| Interest | Vocational Rehabilitation | Pharmeceutical  $2,177.10 | Total Medical-Legal  $650.00 |
| Employer's Legal | Expert Witness | Dental | Other |
| Claimant's Legal  $1,342.07 | Court Reporter | Physical Therapy  $1,444.48 | Death Benefit to WC Adm. Fund |
| Physicians  $2,162.75 | Private Investigator  $362.50 | Chiropractic | |

## Claims Adjuster Information & Date

| Claim Representative Name  **Messier, Keri** | Phone or E-Mail  **(401) 825-2874** | DateReceived  **2/13/2018** |
|---|---|---|

RI Department of Labor and Training, "Subsequent Report"

## Subsequent Report

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942 www.dlt.ri.gov/wc
Phone (401) 462-8100 Fax (401) 462-8105

| Claim Administrator Claim Number |
|---|
| 360335 |

### Employee Information

| | | | Parties to Claim | |
|---|---|---|---|---|
| SSN or ID | Date of Birth | 01/31/1975 | Employer or Business Name | **RIPTA** |
| Last Name    **Barnes** | First Name    **Mickeda** | Initial | Insurer Business Name | **RIPTA** |
| Date of Injury  02/12/2015 | Date of Death | | Claims Administrator Business Name | **The Beacon Mutual Insurance Company** |

### Claim Information

| Claim Type | Claim Status | Maintenance Type |
|---|---|---|
| ☐ Medical Only | ☑ Open | PY-Payment Report |
| ☑ Indemnity | ☐ Closed | |
| ☐ Notification Only | ☐ Reopened | |
| ☐ Became Medical Only | ☐ Re-Opened/Closed | |
| ☐ Became Lost Time payment | | |

### Payment Information

| Date Disability Began | Date Disability Ended | Date of First Payment |
|---|---|---|
| 02/13/2015 | 11/10/2016 | |

### Indemnity and Lump Sums Paid to Date for Entire Claim

| Total Incapacity (TT, PT) | Loss of Use (PP) | Death Benefits (DB) | Commutation |
|---|---|---|---|
| | | | $3,000.00 |
| **Partial Incapacity (TP)** | **Scarring (Disfigurement)** | **Employer Paid** | **Denied & Dismissed** |
| $11,744.31 | $900.00 | | |

### Expenses Paid to Date for Entire Claim

| Funeral | Hospital | | Unallocated Prior Indemnity | Durable Medical | |
|---|---|---|---|---|---|
| Penalties | Other Medical | $425.74 | Unallocated Prior Medical | Medical Travel | $8.36 |
| Interest | Vocational Rehabilitation | | Pharmeceutical | $2,177.10 | Total Medical-Legal | $850.00 |
| Employer's Legal | Expert Witness | | Dental | Other | |
| Claimant's Legal  $1,342.07 | Court Reporter | | Physical Therapy  $1,444.48 | Death Benefit to WC Adm. Fund | |
| Physicians  $2,074.50 | Private Investigator | $362.50 | Chriopractic | | |

### Claims Adjuster Information & Date

| Claim Representative Name    **Messier, Keri** | Phone or E-Mail    **(401) 825-2874** | DateReceived  **12/8/2017** |
|---|---|---|



# FAX

**To:** **Stephen Dennis Law Office**
Company:
Fax:  401-453-6670
Phone:

**From:** **Jodi Connor**
Fax:  443-380-5584
Phone:  617-565-1293
E-mail:  jodi.connor@cms.hhs.gov

*Case Control #*
*W-C180/380/37657*

### NOTES:

Per the request of the claimant Mickeda Barnes, attached is a screen
shot of CMS's system showing no information is available on her case
as of today's date.

Sincerely,
Jodi Connor

Date and time of transmission: Tuesday, March 6, 2018 9:40:24 AM
Number of pages including this cover sheet: 02

175

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 431 of 689 PageID
#: 786
Case 1:22-cv-00213-JJM-PAS    Document 1    Filed 05/31/22    Page 174 of 346    PageID 175

Fax Server    3/8/2018 9:41:03 AM    PAGE    2/002    Fax Server



13

(MARCH 19, 2018)

THE COURT:  These are the matters of <u>Mickeda</u>
<u>Barnes vs. Rhode Island Public Transit Authority</u>.  There
are several matters before the Court:  2017-5115,
2017-4571, 2017-4046, 2017-4145, 2017-6063, 2017-6646
and 2017-6824.  We've been conferencing this matter off
the record because we're waiting for CMS to approve a
submission by Carl Allison, which has been sent,
unfortunately there was a snag, they were waiting for
some paperwork from the insurance carrier which was
delayed.  There was a little bit of a delay getting that
to CMS, but the parties are before the Court, there's
been a request by Mr. Dennis on behalf of Ms. Barnes for
an interlocutory order.  The Court has indicated at the
last meeting and at this meeting that he will not enter
any interlocutory orders on this matter.  Several other
discussions were had with Ms. Barnes.  The Court is
aware of Ms. Barnes' situation.  She's been waiting as
patiently as she can for this settlement to be heard
before the Court.  I am continuing it to April 16th at
10, hopeful that CMS will come back with a figure, but I
am instructing both Mr. Dennis and Mr. Mancini when and
if CMS comes back with a figure sooner than that, they
have to see me right away, and I will put it down on my
calendar in an afternoon as soon as the paperwork is

177

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 433 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 176 of 346   PageID 177
# 792

**14**

ready to hear it, and I will hear it forthwith because I understand Ms. Barnes' situation, and this is the only thing I can do to try and accommodate her.  So we're going to continue it to 4/16 at 10, but if CMS comes back, both the attorneys are to see me, and I will put it on my first available afternoon.

            MR. DENNIS:  Thank you, Your Honor.

            MR. MANCINI: Thank you, Judge.

            THE COURT:  Thank you.

            (MATTER ADJOURNED)

At this time I had been Without weekly Benefits for over 78 week's



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:
- ☐ By delivering said papers to an officer or a managing or general agent.
   Name of person and designation _____
- ☐ By leaving said papers at the office of the corporation with a person employed therein.
   Name of person and designation _____
- ☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
   Name of authorized agent _____
   If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
   _____
   _____

☐ I was unable to make service after the following reasonable attempts: _____
_____

| SERVICE DATE: 4 / 6 / 18 | SERVICE FEE $_____ |
|---|---|
| Month   Day   Year | |

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE
_____ # 20

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____
Signature

State of _____

County of _____

On this _____ day of _____, 20___, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____
My commission expires: _____
Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised July 2014)

179

Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 178 of 346    PageID 179

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

## SUPERIOR COURT

| Plaintiff<br>Mickeda Barnes<br><div align="center">v.</div><br>**Defendant**<br>Ripta | Civil Action File Number<br>PC-2018-2287 |
|---|---|

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, RIPTA                          , by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____
Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ With a guardian or conservator of the Defendant.
Name  of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☑ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name  of person and designation _____

<div align="center">Page 1 of 2</div>

SC-CMS-1 (revised July 2014)

180

STATE OF RHODE ISLAND                                    SUPERIOR COURT
PROVIDENCE, SC


MICKEDA S BARNES
KENYON ROBERTSON
BRIANA ROBERTSON
SIDNEY ROBERTSON
DOREEN BARNES ROBERTSON, et al.
                                    Petitioners



Vs.



Rhode Island Public Transit Authority (RIPTA)
State Of Rhode Island and Providence Plantations
Department Of Labor and Training Worker's Compensation Self Insurance Unit
Claims Strategies (old TPA)
Beacon Mutual Insurance (present TPA)
Federal Transit Authority (Funding from Federal Government)


                        Motion to File a Civil Action
                        Motion to Enforce a Civil Action
                        Order to Show Cause an Affidavit in Support of the (OSC).



I ask the Superior Court to hear my Civil Action under Rule 23 of the Federal Rules of Civil Procedure 28 US Code: 1357. Superior Court shall have original jurisdiction of any civil action authorized by law to be commenced by any person to recover damages for injuries to her person or property an because of the deprivation of any right or privilege of a Citizen Of The United States by any act done in furtherance of any conspiracy mentioned in section 1985 of title 42; which he had knowledge were about to occur and power to prevent it.

Ripta, The State Of R.I., Claims Strategies and Beacon Mutual, the TPA's regular employed IME Doctors and conspired together to deny me treatments needed to cure, treat and necessary treatments and surgeries to alleviate my nerve pain associated with the injuries I sustained on the job at Ripta on February 12, 2015. The emotional distress it has caused me and my family for three years nearly destroyed me and my family, no treatments, denials for objection findings, no reclassification back to work no reinstatement back to work and then my job terminated on February 15, 2016 and then the ultimate taken off of worker's compensation on or about November 10, 2016. The disability discrimination I had to endure from my Employer Ripta and my Union 618 violated my Civil Rights, Bill Of Rights, 14 Amendment of the Constitution, federal and State Laws that are to protect me

34 US. Code 12361 Civil Rights and section 1332 28 Us code: 1608 with the Jurisdiction Requirements my previous on the job injury from on or about October 5, 2008 where I suffered a traumatic brain injury, concussion and migraines headaches in which I still have Doctors' visits for at least 6 times a year since the assault on the City Bus I missed about 9 months of work and lasting effects from the assault. Pursuant to the affirmative power of Congress to enact this part under Section 5 of the Fourteenth Amendment to the Constitution as well as under Section 8 of Article I Of The Constitution. Plaintiffs establishes their claim and right to relief it is the purpose of this part to protect The Civil Rights of victims of gender motivated violence and to promote public safety, health and activities affecting interstate commerce by establishing a Federal Civil Rights Cause Of Action for victims of crimes of violence motivated by gender. The Cause Of Action of a person acts under color of any statue, ordinance regulation, custom or usage of any state who commits a crime of violence motivated by gender and deprives another of the right declared in subsection (B) shall be liable to the party injured in the action of recovery of compensation and punitive damages, injunctive and declaratory relief and such other relief and such other relief as the Court may deem appropriate. On that note My Ex Employer had posted on the City Bus that I drove that day If any Passengers assaulted a City Bus Driver will be punished by a felony charged and fine and Ripta my employer did nothing not even charged the two women who caused all this damage to me.

An act that would constitute a felony against the person or persons that would constitute a felony against the property if the conduct presents a serious risk of physical injury to another, That comes within the meaning of State Of R.I. or and Federal offences described in section 16 Of The Title 18. No prior criminal action, a prior criminal complaint, prosecution or conviction to establish the elements of a Cause of Action under Subsection Section 16 of the Title 18. 28 US code: 1603 of this Title includes a political subdivision of an agency or instrumentality of a foreign state which means any (ENTITY).

28 US, Code: 1603 service time to answer default there is no special arrangement that exists, but I will deliver a copy of the summons and complaint in accordance with an applicable service of Judicial documents to Defendants as used in this subsection a "notice of suit" shall mean a notice addressed to a foreign State and in the form prescribed by the Secretary Of State by regulation. Services of Judicial Documents.

I am giving actual notice by delivery of a copy of the summons and complaint together, in any action brought into Court Of The United States or of a Foreign State, a political subdivision there of or any agency or instrumentally of a foreign State "ENTITY'. Shall serve an answer or other responsive pleading to the complaint within 14 days after service has been made under this section.

No Judgement by default shall be entered by a Court of the United States or of a State against a foreign State a political subdivision there of: or an agency or instrumentality of a foreign State "ENTITY" unless the claimant establishes her claim or right to relief by evidence satisfactory to the Court. A copy of any such default Judgement shall be sent to the Foreign State ""ENITY' or political subdivision in the manner prescribe for service in this section.

I suffer from emotional and psychological symptoms signs and symptoms of stress overload where I black out. I went to the 9th floor of the Superior Court and asked for accommodations for my disability's to help me make the proper decisions for a proposed settlement for workers compensation for the injury of slip and fall on snow and ice on February 12, 2015 where I suffered damage to my left hand severe carpal tunnel, low back which I still have not been examined by an orthopedic, Right Knee (Prior injury 2013 and confirmed RSD nerve disorder) in which there is a MOA agreement for that also. And

Right shoulder injury that Ripta and third party IME doctors kept telling the Judge I had bilateral carpal tunnel in but I just had surgery on it on February 13, 2018 in which was operated on ant the injuries were (1) right arthroscopic biceps tendons, (2). suprascapular nerve release, (3). Distal clavicle excision. All which can cause signs of both right and left hand carpal tunnel but if the Employer and the TPA would have done the objective findings that Dr. Austin asked for it would have been diagnosed correctly but to cut cost and save money they decided not to reinstate me or reclassified me because of my pain complaints didn't add up to bilateral carpal tunnel. I was told by Ripta's Attorney to stop "faking" my injuries. I put in a discipline complaint with the Attorneys Board.

I had two surgery's on my left hand the first one was on or about May 6, 2015 and then I tried to return to work 8 weeks after the surgery and was told no I had to be 100 percent or nothing at all by my Union and that was what Ripta was asking the Union to do for the Company and I told the Union they were violating my Civil Rights and met with Jim Vincent who is Ripta's EEOC officer and is the State Of R.I. President of the NAACP Providence Chapter in which Jim Vincent told Tom cute the Union President that was discrimination and also told me that was discrimination I preceded to tell Jim Vincent I had already put in a complaint at the Commission of Human Rights Providence Office.

I then had a second left hand surgery February 9, 2017 after I was taken off of worker's compensation benefits on or about November 10, 2016 by Mariorenzi Sr. IME report in which he put me on MMI. Dr. Scott Schmidt wrote a note that it could be a reoccurrence or a unresolved portion of the first surgery that was done because he make notes that he noticed I had ulnar nerve issues on that very first nerve conduction test done by Dr. Golini.

The third surgery was on February 13, 2018 to the right shoulder that Ripta's IME Dr. Weiss told them I had bilateral carpal tunnel to down play the injury Dr. Weiss made comments like if you have it on the left side you're a right hander you must have it on the right but he did not have an objection findings to that opinion that severely disable me from any work. Finally after seeing Dr. Scott Schmidt he recommended me to see a shoulder specialist and ordered a Right hand nerve conduction test in which it came back no carpal tunnel but something that trigger them to repeat what I have been complaining about Since on or about June 23, 2015 my Right Shoulder. Now two years in with all injuries having nerve pain I am out of my mind I've been on opioids and alcohol to try and get at least an hour or two of sleep and constant nerve pain in which worker's compensation is proud to say you "don't get paid worker's compensation for PAIN".

42 USC: 1983 provides Civil Action for deprivation of rights every person who under color of any statue, ordinance regulation custom or usage of any State or territory subjects or causes to be subjected any citizen of the United States or other persons within the jurisdiction there of to the deprivation of any rights privileges or immunities secured by the Constitution and laws shall be liable to the person injured in an action of law suit in equity or other proper proceedings for redress. This is an act to enforce the provisions of the Fourteenth Amendment to the Constitution and among other Laws and Statutes in regards to redress.

Under RI law employees do not have a property interest in a worker's compensation claim until he or she shows that the claims are reasonable and necessary. But we also give up our right to sue our employers so we can receive worker's compensation payments regardless of fault. Ripta was clearly in violation of my due process and continued to denied and delay necessary treatments and broke me and my family down to no money no job no career no treatment nonexistent bad credit no food household splitting up and even at one point I consider giving my children to DCYF because I have been put in debt

of more than 68,000 due to no income for the 70 weeks Ripta owes me for> I was supposed to get my money owed to me when Chief Judge award me my ex parte for the second hand surgery February 9, 2017 and then he awarded me my scarring Chief Judge was about to award me my back pay until Ripta's attorney whispered to the Judge that I was no longer on my policy.?????? From there I was forced to go into mediation that I really didn't agree to but at the end of the day Ripta never submitted the paperwork to CMS for an approved set a side and I truly believe Ripta nor the State Of RI has any money to pay my Medicare set aside for my past and present nerve injuries and just the last two years of medical payments that Medicare paid on my behalf because of all the denials Ripta and the TPA and the State Of RI also had their hands in the self-insured payment part of it. Ripta and the State Of RI agreed to certify to the FTA for federal money to the requirements of 5333 AKA. 13 (c) both Ripta and the State of RI are not in complying with the statutory obligations of the section company changed its obligations with regards to my wages, working conditions health and pension for me their employee.

I also was to be able to put in a grievance and steps to an arbitrations and then to the FTA so all legal requirements have been met to settle or resolve issues with employment and benefits.

The Federal Transit Act is to provide employee labor protection as a condition to receiving assistance from the FTA. I ask for this Court and the FTA to suspend all grants, funding and to develop protective conditions seeking benefits filed by an employee or a union members and force the ATU and employer to comply to section 13©or 5333. My reemployment my worker's compensation benefits owed to me because of insolvency of both entity's working together and me putting in a complaint with the Commission of Human Rights to fight for myself to stand up for the very reasons why the Bill of rights were put in place.

I know there might not be an option for me to return to Ripta so I ask the court for displacement allowance due to the protection for 6 years because I was there for 13 years and 10 months. General worsening protection under correct section 13© agreement which my benefits are adversely affected. Now that mostly all my injuries have been address I can attend some kind of paid retraining. Ripta and the State Management plan must comply with and ensure compliance with standard Federal Civil Rights requirements including Tittle VI civil rights of 1964, and the equal employment opportunity requirement of 11375, and section 504 of the rehabilitation act of 1973.

The issues before the Court exercises our Constitutional rights of Due Process the question presented with clarity and completeness for us to resolve the matter with further charges to the defendants, Plaintiffs expected entitlement to benefits under worker's compensation Act under the Laws of Rhode Island. Statues are passed by the general assembly cases are decided by worker's compensation Court and the Supreme Court and Regulations issued by State agencies. The plaintiffs assert that Ripta and the TPA ignored other medical evidence that supported the plaintiffs' claims. The claims or each plaintiff has not been resolved by settlement. I have a proposed settlement entered on December 1, 2017 but has not been signed by me nor has been approved by CMS for a Medicare set a side but has been delayed for over twelve weeks and nothing entered to CMS on my behalf for an approval to settle the case so I come to the Civil Court to get what I am entitle to without further violations of me and my family Civil Rights under the United States of America.

184

The Complaint further Alleges:

The defendants are sponsoring, financing and encouraging Ripta, State Of Rhode Island RIDOT, claims Strategies (old TPA), Beacon Mutual (present TPA), my Union 618 ATU and the FTA (funding from the Federal Government) to provoke breaches of certified contracts signed for federal money under 13(c) 5,4,3,2,1 and are encouraging others to conspire with them to violate the laws of the State Of R.I. and the United States laws depriving plaintiffs as individual citizens of the State Of R.I. and the United States Of America of their Civil Rights.

The defendants hinder plaintiffs in their political official capacities as constituted authorities of the State Of R.I. and the City Of Providence from giving or securing to all persons within said State Of R.I. and the City the equal protection of the laws, including the equal right of all citizens. Title 42, section 1985(3), 28 USCA 1332, 28 USCA 1343, 28 USCA 1331, 42 USCA, 1983, 42 USCA 1981, and 28 USCA 2281. We the plaintiffs allege the jurisdiction amount exceeds $10,000. Ripta/RIDOT owes me over 70 weeks of worker's compensation benefits totaling over $58,000.00 plus two years of medical payments due to Doctors for visits, and doctor visits paid by Medicare for the denials for reasonable treatments , physical therapy visits and objection findings to cure and alleviate injuries suffered on the job. Ripta/RIDOT and TPA's were obligated to pay for under R.I. Worker's Compensation Act.

The plaintiffs live at 34 Dunbar Ave Rumford R.I. 02916 and has worked for Ripta for 13 years and 10 months November 26, 2002 to February 15, 2016 in which Mickeda Barnes was illegally terminated, and in which she filed with the Commission Of Human Rights earlier in 2015 and then later the Commission found probably cause based on disability discrimination. The Statue is one of the Civil Rights Acts to provide a Federal forum for protection of federally granted rights under the 13, 14, and 15 amendments. Subparagraphs (1) and (2) vest jurisdiction in District Courts of Civil Actions to recover damages resulting from the conspiracies to interfere with Civil Rights referred to in section 1985 Of Title 42, subparagraphs (3) and (4) allow actions in the District Courts.

Petitioners seek recovery squarely on the ground that respondents violated the fourth and fifth Amendments. Plaintiffs seek damages from the individuals solely on the basics of our Constitutional Rights Plaintiffs alleges that the respondents conspired to do acts prohibited by these Amendments and alleges that respondents conduct pursuant to conspiracy resulted in damages in excess of $3000.00. The conspired acts between Ripta/RIDOT transitioning over to RIDOT in 2017 without prior notice to the Worker's Compensation Court or my Attorney Steven Dennis impeded the due course of justice in an attempt to deny and delay and cut cost and lower claims cost associated with the transitioning of Ripta to RIDOT that delayed denied any citizen (plaintiffs) the equal protection of the law.

Plaintiff's cause of action is Mickeda Barnes co-worker Richard Avedisian Crashed his city bus on post Rd in Warwick on or about January 21, 2016 and totaled out the bus that was stuck inside the building for days until the accident team cleared the seen. Plaintiff Mickeda Barnes was inside Ripta on January 25, 2016 to see Maureen from Human Service to get either reinstated back to work or reclassified to another position while receiving care for my injuries at the time. Richards wife walks in said hi to everyone and ask for Richards retirement papers Maureen proceeds to say to her tell Richard we have a job for him when he is ready to return to work and his wife said he is partly paralyzed Maureen told his wife it doesn't matter he has a job so plaintiff said to Maureen what about me that's why I am to meet with you and once again plaintiff was told she's different. Maureen then proceeded to take in Richards's wife to her office instead Plaintiff.

Mickeda Barnes was never reclassified or reinstated to her job and instead giving termination papers on February 15, 2016. There is an allegation into Mickeda Barnes complaint that Richards's wife was offered a job for her husband when he was ready to return to work while Plaintiff (Mickeda) was ready to return to work and was not offered a job for her to return to work. Plaintiff alleges she is Black and is a female who put in a compliant with the Commission of Human Rights and against the employer and her Union 618. There is evidence of a recorded termination hearing giving to the plaintiff on March 14, 2016 that you will hear the plaintiff bring up the visit of Richards wife and the conversation between Maureen and Mickeda Barnes and once again you here Maureen said that Mickeda Barnes is different and then ends the grievance hearing on very short and unexpected terms. Plaintiff has a cause of action the absence of a purpose on the part of the defendants to deprive anyone of rights to equal protection of the laws distinguishes this case from Brewer Vs Hoxie School District, 8 cir 1956. Unlike Brewer Vs Hoxie School District there was no allegation in the complaint and no evidence to suggest that the defendants purposefully deprived others of their right to equal protection of the laws.

The plaintiff Mickeda Barnes has the evidence and that the defendants purposefully deprived the plaintiffs of their right to equal protection of the laws and her employer certified agreements with the FTA 13 (c) or 53333 and to plaintiffs bargaining agreement with her Union 618 ATU. Who also certifies to the worker's compensation act and the American with disabilities act. The defendants impaired any rights of the plaintiff even the one that deprived the plaintiff's wages and medical treatments under the RI Workers Compensation Act and Mickeda's rights for arbitration for her termination on February 15, 2016. The defendants later terminated plaintiff's worker's compensation weekly benefits even though their IME Doctors said Mickeda needed a Steroid injection and more objection findings.

It is a State action of a particular character that is prohibited. State action of every kind which impairs the privileges and immunities of citizens of the United States which injures them in life, liberty or property without due process of law or which denies to any of them equal protection of the laws.

186

STATE OF RHODE ISLAND                          SUPERIOR COURT
PROVIDENCE, SC

                                               PC-18-22-87

MICKEDA S BARNES
KENYON ROBERTSON
BRIANA ROBERTSON
SIDNEY ROBERTSON
DOREEN BARNES ROBERTSON, et al.
                    Petitioners


Vs.


Rhode Island Public Transit Authority (RIPTA)
State Of Rhode Island and Providence Plantations
Department Of Labor and Training Worker's Compensation Self Insurance Unit
Claims Strategies (old TPA)
Beacon Mutual Insurance (present TPA)
Federal Transit Authority (Funding from Federal Government)


                    Motion to File a Civil Action
                    Motion to Enforce a Civil Action
                    Order to Show Cause an Affidavit in Support of the (OSC).


I ask the Superior Court to hear my Civil Action under Rule 23 of the Federal Rules of Civil Procedure 28 US Code: 1357. Superior Court shall have original jurisdiction of any civil action authorized by law to be commenced by any person to recover damages for injuries to her person or property an because of the deprivation of any right or privilege of a Citizen Of The United States by any act done in furtherance of any conspiracy mentioned in section 1985 of title 42; which he had knowledge were about to occur and power to prevent it.

Ripta, The State Of R.I., Claims Strategies and Beacon Mutual, the TPA's regular employed IME Doctors and conspired together to deny me treatments needed to cure, treat and necessary treatments and surgeries to alleviate my nerve pain associated with the injuries I sustained on the job at Ripta on February 12, 2015. The emotional distress it has caused me and my family for three years nearly destroyed me and my family, no treatments, denials for objection findings, no reclassification back to work no reinstatement back to work and then my job terminated on February 15, 2016 and then the ultimate taken off of worker's compensation on or about November 10, 2016. The disability discrimination I had to endure from my Employer Ripta and my Union 618 violated my Civil Rights, Bill Of Rights, 14 Amendment of the Constitution, federal and State Laws that are to protect me.

187

34 US. Code 12361 Civil Rights and section 1332 28 Us code: 1608 with the jurisdiction Requirements my previous on the job injury from on or about October 5, 2008 where I suffered a traumatic brain injury, concussion and migraines headaches in which I still have Doctors' visits for at least 6 times a year since the assault on the City Bus I missed about 9 months of work and lasting effects from the assault. Pursuant to the affirmative power of Congress to enact this part under Section 5 of the Fourteenth Amendment to the Constitution as well as under Section 8 of Article I Of The Constitution. Plaintiffs establishes their claim and right to relief It is the purpose of this part to protect The Civil Rights of victims of gender motivated violence and to promote public safety, health and activities affecting interstate commerce by establishing a Federal Civil Rights Cause Of Action for victims of crimes of violence motivated by gender. The Cause Of Action of a person acts under color of any statue, ordinance regulation, custom or usage of any state who commits a crime of violence motivated by gender and deprives another of the right declared in subsection (B) shall be liable to the party injured in the action of recovery of compensation and punitive damages, injunctive and declaratory relief and such other relief and such other relief as the Court may deem appropriate. On that note My Ex Employer had posted on the City Bus that I drove that day If any Passengers assaulted a City Bus Driver will be punished by a felony charged and fine and Ripta my employer did nothing not even charged the two women who caused all this damage to me.

An act that would constitute a felony against the person or persons that would constitute a felony against the property if the conduct presents a serious risk of physical injury to another, That comes within the meaning of State Of R.I. or and Federal offences described in section 16 Of The Title 18. No prior criminal action, a prior criminal complaint, prosecution or conviction to establish the elements of a Cause of Action under Subsection Section 16 of the Title 18. 28 US code: 1603 of this Title includes a political subdivision of an agency or Instrumentality of a foreign state which means any (ENTITY).

28 US, Code: 1603 service time to answer default there is no special arrangement that exists, but I will deliver a copy of the summons and complaint in accordance with an applicable service of Judicial documents to Defendants as used in this subsection a "notice of suit" shall mean a notice addressed to a foreign State and in the form prescribed by the Secretary Of State by regulation. Services of Judicial Documents.

I am giving actual notice by delivery of a copy of the summons and complaint together, in any action brought into Court Of The United States or of a Foreign State, a political subdivision there of or any agency or Instrumentally of a foreign State "ENTITY". Shall serve an answer or other responsive pleading to the complaint within 14 days after service has been made under this section.

No Judgement by default shall be entered by a Court of the United States or of a State against a foreign State a political subdivision there of: or an agency or Instrumentality of a foreign State "ENTITY" unless the claimant establishes her claim or right to relief by evidence satisfactory to the Court. A copy of any such default Judgement shall be sent to the Foreign State ""ENITY' or political subdivision in the manner prescribe for service in this section.

I suffer from emotional and psychological symptoms signs and symptoms of stress overload where I black out. I went to the 9th floor of the Superior Court and asked for accommodations for my disability's to help me make the proper decisions for a proposed settlement for workers compensation for the Injury of slip and fall on snow and ice on February 12, 2015 where I suffered damage to my left hand severe carpal tunnel, low back which I still have not been examined by an orthopedic, Right Knee (Prior Injury 2013 and confirmed RSD nerve disorder) in which there is a MOA agreement for that also. And

188

Right shoulder injury that Ripta and third party IME doctors kept telling the Judge I had bilateral carpal tunnel in but I just had surgery on it on February 13, 2018 in which was operated on ant the injuries were (1) right arthroscopic biceps tendons, (2). suprascapular nerve release, (3). Distal clavicle excision. All which can cause signs of both right and left hand carpal tunnel but if the Employer and the TPA would have done the objective findings that Dr. Austin asked for it would have been diagnosed correctly but to cut cost and save money they decided not to reinstate me or reclassified me because of my pain complaints didn't add up to bilateral carpal tunnel. I was told by Ripta's Attorney to stop "faking" my injuries. I put in a discipline complaint with the Attorneys Board.

I had two surgery's on my left hand the first one was on or about May 6, 2015 and then I tried to return to work 8 weeks after the surgery and was told no I had to be 100 percent or nothing at all by my Union and that was what Ripta was asking the Union to do for the Company and I told the Union they were violating my Civil Rights and met with Jim Vincent who is Ripta's EEOC officer and is the State Of R.I. President of the NAACP Providence Chapter in which Jim Vincent told Tom cute the Union President that was discrimination and also told me that was discrimination I preceded to tell Jim Vincent I had already put in a complaint at the Commission of Human Rights Providence Office.

I then had a second left hand surgery February 9, 2017 after I was taken off of worker's compensation benefits on or about November 10, 2016 by Mariorenzi Sr. IME report in which he put me on MMI. Dr. Scott Schmidt wrote a note that it could be a reoccurrence or a unresolved portion of the first surgery that was done because he make notes that he noticed I had ulnar nerve issues on that very first nerve conduction test done by Dr. Golini.

The third surgery was on February 13, 2018 to the right shoulder that Ripta's IME Dr. Weiss told them I had bilateral carpal tunnel to down play the injury Dr. Weiss made comments like if you have it on the left side you're a right hander you must have it on the right but he did not have an objection findings to that opinion that severely disable me from any work. Finally after seeing Dr. Scott Schmidt he recommended me to see a shoulder specialist and ordered a Right hand nerve conduction test in which it came back no carpal tunnel but something that trigger them to repeat what I have been complaining about Since on or about June 23, 2015 my Right Shoulder. Now two years in with all injuries having nerve pain I am out of my mind I've been on opioids and alcohol to try and get at least an hour or two of sleep and constant nerve pain in which worker's compensation is proud to say you "don't get paid worker's compensation for PAIN!".

42 USC: 1983 provides Civil Action for deprivation of rights every person who under color of any statue, ordinance regulation custom or usage of any State or territory subjects or causes to be subjected any citizen of the United States or other persons within the jurisdiction there of to the deprivation of any rights privileges or immunities secured by the Constitution and laws shall be liable to the person injured in an action of law suit in equity or other proper proceedings for redress. This is an act to enforce the provisions of the Fourteenth Amendment to the Constitution and among other Laws and Statutes in regards to redress.

Under RI law employees do not have a property interest in a worker's compensation claim until he or she shows that the claims are reasonable and necessary. But we also give up our right to sue our employers so we can receive worker's compensation payments regardless of fault. Ripta was clearly in violation of my due process and continued to denied and delay necessary treatments and broke me and my family down to no money no job no career no treatment nonexistent bad credit no food household splitting up and even at one point I consider giving my children to DCYF because I have been put in debt

189

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 445 of 689 PageID
#: 800
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 188 of 346    PageID 189

of more than 68,000 due to no income for the 70 weeks Ripta owes me for> I was supposed to get my money owed to me when Chief Judge award me my ex parte for the second hand surgery February 9, 2017 and then he awarded me my scarring Chief Judge was about to award me my back pay until Ripta's attorney whispered to the Judge that I was no longer on their policy.?????? From there I was forced to go into mediation that I really didn't agree to but at the end of the day Ripta never submitted the paperwork to CMS for an approved set a side and I truly believe Ripta nor the State Of RI has any money to pay my Medicare set aside for my past and present nerve Injuries and just the last two years of medical payments that Medicare paid on my behalf because of all the denials Ripta and the TPA and the State Of RI also had their hands in the self-insured payment part of it. Ripta and the State Of RI agreed to certify to the FTA for federal money to the requirements of 5333 AKA. 13 (c) both Ripta and the State of RI are not in complying with the statutory obligations of the section company changed Its obligations with regards to my wages, working conditions health and pension for me their employee.

I also was to be able to put in a grievance and steps to an arbitrations and then to the FTA so all legal requirements have been met to settle or resolve issues with employment and benefits.

The Federal Transit Act is to provide employee labor protection as a condition to receiving assistance from the FTA. I ask for this Court and the FTA to suspend all grants, funding and to develop protective conditions seeking benefits filed by an employee or a union members and force the ATU and employer to comply to section 13© or 5333. My reemployment my worker's compensation benefits owed to me because of Insolvency of both entity's working together and me putting in a complaint with the Commission of Human Rights to fight for myself to stand up for the very reasons why the Bill of rights were put in place.

I know there might not be an option for me to return to Ripta so I ask the court for displacement allowance due to the protection for 6 years because I was there for 13 years and 10 months. General worsening protection under correct section 13© agreement which my benefits are adversely affected. Now that mostly all my injuries have been address I can attend some kind of paid retraining. Ripta and the State Management plan must comply with and ensure compliance with standard Federal Civil Rights requirements including Tittle VI civil rights of 1964, and the equal employment opportunity requirement of 11375, and section 504 of the rehabilitation act of 1973.

The issues before the Court exercises our Constitutional rights of Due Process the question presented with clarity and completeness for us to resolve the matter with further charges to the defendants, Plaintiffs expected entitlement to benefits under worker's compensation Act under the Laws of Rhode Island. Statues are passed by the general assembly cases are decided by worker's compensation Court and the Supreme Court and Regulations issued by State agencies. The plaintiffs assert that Ripta and the TPA ignored other medical evidence that supported the plaintiffs' claims. The claims or each plaintiff has not been resolved by settlement. I have a proposed settlement entered on December 1, 2017 but has not been signed by me nor has been approved by CMS for a Medicare set a side but has been delayed for over twelve weeks and nothing entered to CMS on my behalf for an approval to settle the case so I come to the Civil Court to get what I am entitle to without further violations of me and my family Civil Rights under the United States of America.

190

The Complaint further Alleges:

The defendants are sponsoring, financing and encouraging Ripta, State Of Rhode Island RIDOT, claims Strategies (old TPA), Beacon Mutual (present TPA), my Union 618 ATU and the FTA (funding from the Federal Government) to provoke breaches of certified contracts signed for federal money under 13(c) 5,4,3,2,1 and are encouraging others to conspire with them to violate the laws of the State Of R.I. and the United States laws depriving plaintiffs as individual citizens of the State Of R.I. and the United States Of America of their Civil Rights.

The defendants hinder plaintiffs in their political official capacities as constituted authorities of the State Of R.I. and the City Of Providence from giving or securing to all persons within said State Of R.I. and the City the equal protection of the laws, including the equal right of all citizens. Title 42, section 1985(3), 28 USCA 1332, 28 USCA 1343, 28 USCA 1331, 42 USCA, 1983, 42 USCA 1981, and 28 USCA 2281. We the plaintiffs allege the jurisdiction amount exceeds $10,000. Ripta/RIDOT owes me over 70 weeks of worker's compensation benefits totaling over $58,000.00 plus two years of medical payments due to Doctors for visits, and doctor visits paid by Medicare for the denials for reasonable treatments , physical therapy visits and objection findings to cure and alleviate injuries suffered on the job. Ripta/RIDOT and TPA's were obligated to pay for under R.I. Worker's Compensation Act.

The plaintiffs live at 34 Dunbar Ave Rumford R.I. 02916 and has worked for Ripta for 13 years and 10 months November 26, 2002 to February 15, 2016 in which Mickeda Barnes was illegally terminated, and in which she filed with the Commission Of Human Rights earlier in 2015 and then later the Commission found probably cause based on disability discrimination. The Statue is one of the Civil Rights Acts to provide a Federal forum for protection of federally granted rights under the 13, 14, and 15 amendments. Subparagraphs (1) and (2) vest jurisdiction in District Courts of Civil Actions to recover damages resulting from the conspiracies to interfere with Civil Rights referred to in section 1985 Of Title 42, subparagraphs (3) and (4) allow actions in the District Courts.

Petitioners seek recovery squarely on the ground that respondents violated the fourth and fifth Amendments. Plaintiffs seek damages from the individuals solely on the basics of our Constitutional Rights Plaintiffs alleges that the respondents conspired to do acts prohibited by these Amendments and alleges that respondents conduct pursuant to conspiracy resulted in damages in excess of $3000.00. The conspired acts between Ripta/RIDOT transitioning over to RIDOT in 2017 without prior notice to the Worker's Compensation Court or my Attorney Steven Dennis impeded the due course of justice in an attempt to deny and delay and cut cost and lower claims cost associated with the transitioning of Ripta to RIDOT that delayed denied any citizen (plaintiffs) the equal protection of the law.

Plaintiff's cause of action is Mickeda Barnes co-worker Richard Avedisian Crashed his city bus on post Rd in Warwick on or about January 21, 2016 and totaled out the bus that was stuck inside the building for days until the accident team cleared the seen. Plaintiff Mickeda Barnes was inside Ripta on January 25, 2016 to see Maureen from Human Service to get either reinstated back to work or reclassified to another position while receiving care for my injuries at the time, Richards wife walks in said hi to everyone and ask for Richards retirement papers Maureen proceeds to say to her tell Richard we have a job for him when he is ready to return to work and his wife said he is partly paralyzed Maureen told his wife it doesn't matter he has a job so plaintiff said to Maureen what about me that's why I am to meet with you and once again plaintiff was told she's different. Maureen then proceeded to take in Richards's wife to her office instead Plaintiff.

Mickeda Barnes was never reclassified or reinstated to her job and instead giving termination papers on February 15, 2016. There is an allegation into Mickeda Barnes complaint that Richards's wife was offered a job for her husband when he was ready to return to work while Plaintiff (Mickeda) was ready to return to work and was not offered a job for her to return to work. Plaintiff alleges she is Black and is a female who put in a compliant with the Commission of Human Rights and against the employer and her Union 618. There is evidence of a recorded termination hearing giving to the plaintiff on March 14, 2016 that you will hear the plaintiff bring up the visit of Richards wife and the conversation between Maureen and Mickeda Barnes and once again you here Maureen said that Mickeda Barnes is different and then ends the grievance hearing on very short and unexpected terms. Plaintiff has a cause of action the absence of a purpose on the part of the defendants to deprive anyone of rights to equal protection of the laws distinguishes this case from Brewer Vs Hoxle School District, 8 cir 1956. Unlike Brewer Vs Hoxle School District there was no allegation in the complaint and no evidence to suggest that the defendants purposefully deprived others of their right to equal protection of the laws.

The plaintiff Mickeda Barnes has the evidence and that the defendants purposefully deprived the plaintiffs of their right to equal protection of the laws and her employer certified agreements with the FTA 13 (c) or 53333 and to plaintiffs bargaining agreement with her Union 618 ATU. Who also certifies to the worker's compensation act and the American with disabilities act. The defendants impaired any rights of the plaintiff even the one that deprived the plaintiff's wages and medical treatments under the RI Workers Compensation Act and Mickeda's rights for arbitration for her termination on February 15, 2016. The defendants later terminated plaintiff's worker's compensation weekly benefits even though their IME Doctors said Mickeda needed a Steroid injection and more objection findings.

It is a State action of a particular character that is prohibited. State action of every kind which impairs the privileges and immunities of citizens of the United States which injures them in life, liberty or property without due process of law or which denies to any of them equal protection of the laws.

I Mickeda S Barnes Hereby Swear and attest that I will Certified by mail to all defendants a Copy of this Complaint along with a Hearing Date April 4, 2018

① Ripta 705 Elmwood Ave Prov RI 02908 Att. Ben Satzillo In house Legal

② State of Rhode Island and Providence Plantations C Att. Peter Alviti Providence RI Department of Transportation Two Capital Hill 02903 office of Management and Budget

③ Department of labor and training workers Compensation Self Insurance Unit, Center General Complex 1511 Pontiac Avenue Cranston RI 02920 → PO Box 20190 Cranston RI 02920-0942 Att. Matthew P. Carey, III Assistant Director or Sharon J Pend Fiscal management officer

④ Claims Strategies LLD Catamore Blvd # 2 East Prov 02914

⑤ Beacon Mutual / 1 Beacon Centre Warwick RI 02886 (Att Kerri Messier Claims adjuster

⑥ FTA ( MS Peggy Griffin, Regional Civil Rights officer Region I office Kendall Square 55 Broadway Suite 920 Cambridge Mass 02142-1093                    192

Case Number: PC-2020-05065
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPERIOR COURT

### SUMMONS

| Plaintiff | **Civil Action File Number** |
| | PC-2018-2287 |
| Mickeda Barnes | **Attorney for the Plaintiff or the Plaintiff** |
| v. | Mickeda Barnes |
| **Defendant** | **Address of the Plaintiff's Attorney or the Plaintiff** |
| Ripta | |
| Licht Judicial Complex | **Address of the Defendant** |
| Providence/Bristol County | 705 ELMWOOD AVENUE |
| 250 Benefit Street | PROVIDENCE RI 02907 |
| Providence RI 02903 | |
| (401) 222-3250 | |

**TO THE DEFENDANT, RIPTA**                        ;

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| This Summons was generated on 4/4/2018. | /s/ Henry Kinch |
| | Clerk |

*A TRUE COPY ATTEST*

*DEPUTY SHERIFF*

Witness the seal/watermark of the Superior Court

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

SC-CMS-1 (revised July 2014)

193

Case Number: PC-2018-2287
Filed In Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.



## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPERIOR COURT

| | |
|---|---|
| **Plaintiff**<br>Mickeda Barnes<br>v.<br>**Defendant**<br>Ripta | **Civil Action File Number**<br>PC-2018-2287 |

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, RIPTA                  , by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person of suitable age and discretion _____

    Address of dwelling house or usual place of abode _____

    Age _____

    Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.

    Name of authorized agent _____

    If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

    _____

☐ With a guardian or conservator of the Defendant.

    Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☑ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.

    Name of person and designation _____

True Copy Attest

_signature_

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

Page 1 of 2

SC-CMS-1 (revised July 2014)

194

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 450 of 689 PageID #: 1805

Case Number: PC-2021-02260   1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 193 of 346   PageID 194
Filed In Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

☐ I was unable to make service after the following reasonable attempts:
_____
_____

SERVICE DATE: _____          SERVICE FEE $ _____
Month     Day     Year

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE
_____

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

Signature _____

State of _____

County of _____

On this _____ day of _____ 20____ before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____
My commission expires: _____
Notary identification number: _____

Page 2 of 2

Office of ... _____ er Court
Counties of Providence & Bristol
Providence, Rhode Island

SC-CMS-1 (revised July 2014)

195

Page 450

Case Number: PC-2020-05965
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.



True Copy Attest

Office of ___ ___ of Superior Court
Counties of ___ ___idence & Bristol
Provid___ Rhode Island

SC-CMS-1 (revised July 2014)

196

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 452 of 689 PageID
#1807
Case Number: PC-2018-2287 Case 1:22-cv-00213-JJM-PAS   Document 1-18   Filed 05/31/22   Page 195 of 346   PageID 196

Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

STATE OF RHODE ISLAND                                 SUPERIOR COURT
PROVIDENCE, SC

PC-18-2287

MICKEDA S BARNES
KENYON ROBERTSON
BRIANA ROBERTSON
SIDNEY ROBERTSON
DOREEN BARNES ROBERTSON, et al.
                          Petitioners


Vs.


Rhode Island Public Transit Authority (RIPTA)
State Of Rhode Island and Providence Plantations
Department Of Labor and Training Worker's Compensation Self Insurance Unit
Claims Strategies (old TPA)
Beacon Mutual Insurance (present TPA)
Federal Transit Authority (Funding from Federal Government)


                    Motion to File a Civil Action
                    Motion to Enforce a Civil Action
                    Order to Show Cause an Affidavit in Support of the (OSC).


I ask the Superior Court to hear my Civil Action under Rule 23 of the Federal Rules of Civil Procedure 28
US Code: 1357. Superior Court shall have original jurisdiction of any civil action authorized by law to be
commenced by any person to recover damages for injuries to her person or property an because of the
deprivation of any right or privilege of a Citizen Of The United States by any act done in furtherance of
any conspiracy mentioned in section 1985 of title 42; which he had knowledge were about to occur and
power to prevent it.

Ripta, The State Of R.I., Claims Strategies and Beacon Mutual, the TPA's regular employed IME Doctors
and conspired together to deny me treatments needed to cure, treat and necessary treatments and
surgeries to alleviate my nerve pain associated with the injuries I sustained on the job at Ripta on
February 12, 2015. The emotional distress it has caused me and my family for three years nearly
destroyed me and my family, no treatments, denials for objection findings, no reclassification back to
work no reinstatement back to work and then my job terminated on February 15, 2016 and then the
ultimate taken off of worker's compensation on or about November 18, 2016. The disability
discrimination I had to endure from my Employer Ripta and my Union 618 violated my Civil Rights, Bill Of
Rights, 14 Amendment of the Constitution, federal and State Laws that are a of direct evidence.

Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

34 US. Code 12361 Civil Rights and section 1332 28 Us code: 1608 with the jurisdiction Requirements my previous on the job injury from on or about October 5, 2008 where I suffered a traumatic brain injury, concussion and migraines headaches in which I still have Doctors' visits for at least 6 times a year since the assault on the City Bus I missed about 9 months of work and lasting effects from the assault. Pursuant to the affirmative power of Congress to enact this part under Section 5 of the Fourteenth Amendment to the Constitution as well as under Section 8 of Article I Of The Constitution. Plaintiffs establishes their claim and right to relief it is the purpose of this part to protect The Civil Rights of victims of gender motivated violence and to promote public safety, health and activities affecting interstate commerce by establishing a Federal Civil Rights Cause Of Action for victims of crimes of violence motivated by gender. The Cause Of Action of a person acts under color of any statue, ordinance regulation, custom or usage of any state who commits a crime of violence motivated by gender and deprives another of the right declared in subsection (B) shall be liable to the party injured in the action of recovery of compensation and punitive damages, injunctive and declaratory relief and such other relief and such other relief as the Court may deem appropriate. On that note My Ex Employer had posted on the City Bus that I drove that day If any Passengers assaulted a City Bus Driver will be punished by a felony charged and fine and Ripta my employer did nothing not even charged the two women who caused all this damage to me.

An act that would constitute a felony against the person or persons that would constitute a felony against the property if the conduct presents a serious risk of physical injury to another, That comes within the meaning of State Of R.I. or and Federal offences described in section 16 Of The Title 18. No prior criminal action, a prior criminal complaint, prosecution or conviction to establish the elements of a Cause of Action under Subsection Section 16 of the Title 18. 28 US code: 1603 of this Title includes a political subdivision of an agency or instrumentality of a foreign state which means any (ENTITY).

28 US, Code: 1603 service time to answer default there is no special arrangement that exists, but I will deliver a copy of the summons and complaint in accordance with an applicable service of Judicial documents to Defendants as used in this subsection a "notice of suit" shall mean a notice addressed to a foreign State and in the form prescribed by the Secretary Of State by regulation. Services of Judicial Documents.

I am giving actual notice by delivery of a copy of the summons and complaint together, In any action brought into Court Of The United States or of a Foreign State, a political subdivision there of or any agency or instrumentally of a foreign State "ENTITY'. Shall serve an answer or other responsive pleading to the complaint within 14 days after service has been made under this section.

No Judgement by default shall be entered by a Court of the United States or of a State against a foreign State a political subdivision there of: or an agency or instrumentality of a foreign State "ENTITY" unless the claimant establishes her claim or right to relief by evidence satisfactory to the Court. A copy of any such default Judgement shall be sent to the Foreign State ""ENITY' or political subdivision in the manner prescribe for service in this section.

I suffer from emotional and psychological symptoms signs and symptoms of stress overload where I black out. I went to the 9th floor of the Superior Court and asked for accommodations for my disability's to help me make the proper decisions for a proposed settlement for workers compensation for the injury of slip and fall on snow and ice on February 12, 2015 where I suffered damage to my left hand severe carpal tunnel, low back which I still have not been examined by an orthopedic, Right Knee (Prior Injury 2013 and confirmed RSD nerve disorder) In which there is a MOA agreement for that also. And

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 454 of 689 PageID
#: 809
Case Number: PC-2020-09066
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

Right shoulder injury that Ripta and third party IME doctors kept telling the Judge I had bilateral carpal tunnel in but I just had surgery on it on February 13, 2018 in which was operated on ant the injuries were (1) right arthroscopic biceps tendons, (2). suprascapular nerve release, (3). Distal clavicle excision. All which can cause signs of both right and left hand carpal tunnel but if the Employer and the TPA would have done the objective findings that Dr. Austin asked for it would have been diagnosed correctly but to cut cost and save money they decided not to reinstate me or reclassified me because of my pain complaints didn't add up to bilateral carpal tunnel. I was told by Ripta's Attorney to stop "faking" my injuries. I put in a discipline complaint with the Attorneys Board.

I had two surgery's on my left hand the first one was on or about May 6, 2015 and then I tried to return to work 8 weeks after the surgery and was told no I had to be 100 percent or nothing at all by my Union and that was what Ripta was asking the Union to do for the Company and I told the Union they were violating my Civil Rights and met with Jim Vincent who is Ripta's EEOC officer and is the State Of R.I. President of the NAACP Providence Chapter in which Jim Vincent told Tom cute the Union President that was discrimination and also told me that was discrimination I preceded to tell Jim Vincent I had already put in a complaint at the Commission of Human Rights Providence Office.

I then had a second left hand surgery February 9, 2017 after I was taken off of worker's compensation benefits on or about November 10, 2016 by Mariorenzi Sr. IME report in which he put me on MMI. Dr. Scott Schmidt wrote a note that it could be a reoccurrence or a unresolved portion of the first surgery that was done because he make notes that he noticed I had ulnar nerve issues on that very first nerve conduction test done by Dr. Golini.

The third surgery was on February 13, 2018 to the right shoulder that Ripta's IME Dr. Weiss told them I had bilateral carpal tunnel to down play the injury Dr. Weiss made comments like if you have it on the left side you're a right hander you must have it on the right but he did not have an objection findings to that opinion that severely disable me from any work. Finally after seeing Dr. Scott Schmidt he recommended me to see a shoulder specialist and ordered a Right hand nerve conduction test in which it came back no carpal tunnel but something that trigger them to repeat what I have been complaining about Since on or about June 23, 2015 my Right Shoulder. Now two years in with all injuries having nerve pain I am out of my mind I've been on opioids and alcohol to try and get at least an hour or two of sleep and constant nerve pain in which worker's compensation is proud to say you "don't get paid worker's compensation for PAIN".

42 USC: 1983 provides Civil Action for deprivation of rights every person who under color of any statue, ordinance regulation custom or usage of any State or territory subjects or causes to be subjected any citizen of the United States or other persons within the jurisdiction there of to the deprivation of any rights privileges or immunities secured by the Constitution and laws shall be liable to the person injured in an action of law suit in equity or other proper proceedings for redress. This is an act to enforce the provisions of the Fourteenth Amendment to the Constitution and among other Laws and Statutes in regards to redress.

Under RI law employees do not have a property interest in a worker's compensation claim until he or she shows that the claims are reasonable and necessary. But we also give up our right to sue our employers so we can receive worker's compensation payments regardless of fault. Ripta was clearly in violation of my due process and continued to denied and delay necessary treatments and broke me and my family down to no money no job no career no treatment nonexistent bad credit no food household splitting up and even at one point I consider giving my children to DCYF because I have been put in debt

199

of more than 68,000 due to no income for the 70 weeks Ripta owes me for> I was supposed to get my money owed to me when Chief Judge award me my ex parte for the second hand surgery February 9, 2017 and then he awarded me my scarring Chief Judge was about to award me my back pay until Ripta's attorney whispered to the Judge that I was no longer on their policy.?????? From there I was forced to go into mediation that I really didn't agree to but at the end of the day Ripta never submitted the paperwork to CMS for an approved set a side and I truly believe Ripta nor the State Of RI has any money to pay my Medicare set aside for my past and present nerve injuries and just the last two years of medical payments that Medicare paid on my behalf because of all the denials Ripta and the TPA and the State Of RI also had their hands in the self-insured payment part of it. Ripta and the State Of RI agreed to certify to the FTA for federal money to the requirements of 5333 AKA. 13 (c) both Ripta and State of RI are not in complying with the statutory obligations of the section company changed its obligations with regards to my wages, working conditions health and pension for me their employee.

I also was to be able to put in a grievance and steps to an arbitrations and then to the FTA so all legal requirements have been met to settle or resolve issues with employment and benefits.

The Federal Transit Act is to provide employee labor protection as a condition to receiving assistance from the FTA. I ask for this Court and the FTA to suspend all grants, funding and to develop protective conditions seeking benefits filed by an employee or a union members and force the ATU and employer to comply to section 13© or 5333. My reemployment my worker's compensation benefits owed to me because of insolvency of both entity's working together and me putting in a complaint with the Commission of Human Rights to fight for myself to stand up for the very reasons why the Bill of rights were put in place.

I know there might not be an option for me to return to Ripta so I ask the court for displacement allowance due to the protection for 6 years because I was there for 13 years and 10 months. General worsening protection under correct section 13© agreement which my benefits are adversely affected. Now that mostly all my injuries have been address I can attend some kind of paid retraining. Ripta and the State Management plan must comply with and ensure compliance with standard Federal Civil Rights requirements including Tittle VI civil rights of 1964, and the equal employment opportunity requirement of 11375, and section 504 of the rehabilitation act of 1973.

The issues before the Court exercises our Constitutional rights of Due Process the question presented with clarity and completeness for us to resolve the matter with further charges to the defendants, Plaintiffs expected entitlement to benefits under worker's compensation Act under the Laws of Rhode Island. Statues are passed by the general assembly cases are decided by worker's compensation Court and the Supreme Court and Regulations issued by State agencies. The plaintiffs assert that Ripta and the TPA ignored other medical evidence that supported the plaintiffs' claims. The claims or each plaintiff has not been resolved by settlement. I have a proposed settlement entered on December 1, 2017 but has not been signed by me nor has been approved by CMS for a Medicare set a side but has been delayed for over twelve weeks and nothing entered to CMS on my behalf for an approval to settle the case so I come to the Civil Court to get what I am entitle to without further violations of me and my family Civil Rights under the United States of America.

200

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 456 of 689 PageID
#1 811

Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 199 of 346   PageID 200
4/16/2018 11:35 AM Workers' Compensation Court



## State of Rhode Island and Providence Plantations

**Providence, Sc.**                    **Workers' Compensation Court**

Mickeda S. Barnes

vs.                    } W.C.C. No.    201705115, 201706073, 201704571,
201704046, 201704145, 201806646, 201706824

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY

### ORDER

This matter was heard before the Court on 4/16/2018 and it is hereby **ORDERED**:

1. ___Dr. David Moss___ is appointed as an impartial examiner in connection with this matter.

2. The Employer shall issue a check in the amount of Eight Hundred and Fifty Dollars ($850.00) to compensate the examiner for services.

3. This matter is continued to ___5/14 @ 9:000___ for the submission of the examiner's fee and any medical records or other documents designated by the Court together with a Waiver of Non-Public Designation of Medical Records. In the event that the parties do not agree to the waiver of non-public designation, the matter will be heard on this date in connection with a motion to access non-public medical records in accordance with Rhode Island Supreme Court Provisional Rules of Practice Governing Public Access to Electronic Information, Rule 5.

**ENTERED** as an Order of this Court on this the 16th day of April, 2018.

/s/ FerrieriJ
Judge

WCC – 3/17

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 457 of 689 PageID
#: 812
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 200 of 346    PageID 201
4/10/2618 11:55 AM Workers Compensation Court

W.C.C. No. _201705115, 201706073, 201704571, 201704046, 201704145, 201806646, 201706824

Mickeda S. Barnes  VS.  RHODE ISLAND PUBLIC TRANSIT AUTHORITY

JUDGE:  Chief Judge Robert M. Ferrieri

EXAMINER: _____

DATE OF EXAM: _____

To be completed by Attorney(s):

Date of Injury: _2/12/15_    Injury: _Left wrist, low back, Right shoulder_
_(liability disputed)_

Employee Date of Birth: _1/31/75_

Is there a need for an interpreter? _No_    If so, what language? _____

Email addresses:  Employee attorney: _sdennis @ sjdlaw.net_
Employer attorney: _nmancini@ tconnorlaw.com_

To be completed by Judge/Clerk:

Judge's Letter    ___✓___ Yes    _____ No

Medical Records    ___✓___ Yes    _____ No

Employee to Bring Diagnostic Films    ___✓___ Yes    _____ No

To be completed by Clerk:

Signed Waiver Received    _____

Medical Records Received    _____

Check Received    _____    Packet Delivered to MAB On: _____

WCC – 3/17

202

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

## STIPULATION

☐ SUPREME COURT    ☐ SUPERIOR COURT    ☐ FAMILY COURT    ☐ DISTRICT COURT

☑ WORKERS' COMPENSATION COURT    ☐ RHODE ISLAND TRAFFIC TRIBUNAL

☐ Providence/Bristol County or Sixth Division    ☐ Washington County or Fourth Division
☐ Kent County or Third Division  ☐ Newport County or Second Division

| Plaintiff MICKELA BARNES | Civil Action File Number<br>17-04046; 17-04145; 17-04571;<br>17-05115; 17-06615; 17-06646;<br>17-06824 |
|---|---|
| Defendant RHODE ISLAND PUBLIC TRANSIT AUTHORITY | |

In the above-entitled cause it is agreed that the following entry be made:

IT IS HEREBY AGREED BY THE UNDERSIGNED THAT THE FOLLOWING MEDICAL REPORTS BE SENT TO THE COURT'S IMPARTIAL MEDICAL EXAMINER, DR. DAVID MOSS, M.D.:

1. NEUROHEALTH (3/24/16);
2. KENT COUNTY HOSPITAL (2/12/15 - 11/28/16);
3. MICHAEL SOUZA, D.O. (2/28/15 - 10/25/17);
4. ADVANCED RADIOLOGY EAST PROVIDENCE (2/19/15);
5. PETER A. PIZZARELLO, JR., M.D. (3/23/15 - 11/8/16)
6. RHODE ISLAND HOSPITAL (5/31/17);
7. WILLIAM J. GODLINI, M.D. (4/2/15 - 6/21/16);
8. OPEN MRI OF NE WARWICK (5/1/15 AND 11/16/16);
9. PERFORMANCE PHYSICAL THERAPY (6/25/15 - 3/24/16);
10. ARNOLD-PETER C. WEISS, M.D. (7/16/15 - 6/30/16);
11. RICHARD C. ANDERSON, M.D. (10/6/15);

| Attorney for the Plaintiff or the Plaintiff<br>/s/ Stephen J. Dennis, Esq. | Attorney for the Defendant  or the Defendant<br>/s/ Nicholas R. Mancini, Esq. |
|---|---|
| Rhode Island Bar Number: 4336 | Rhode Island Bar Number: 7100 |
| Address: 127 Dorrance Street, Suite 7A<br>Providence, RI 02903 | Address: 222 Jefferson Boulevard, 2nd Floor<br>Warwick, RI  02888 |
| Office Telephone Number: (401) 453-1355 | Office Telephone Number:  (401) 732-0300 |
| Date: | Date: |

/s/ _____        _____
Judicial Officer                                        Date

CC-3 (revised October 2014)



STATE OF RHODE ISLAND AND          PROVIDENCE PLANTATIONS

## STIPULATION

| Plaintiff | Civil Action File Number |
|---|---|
| MICKEDA BARNES | 17-04046; 17-04145; 17-04571; 17-05115; 17-06013; 17-06646; 17-06824 |
| Defendant | |
| RHODE ISLAND PUBLIC TRANSIT AUTHORITY | |

Continuation page if needed.

| | |
|---|---|
| 12. | GREGORY J. AUSTIN, M.D. (1/19/16); |
| 13. | ERIC K. BONNESS, M.D. (2/13/18); — Paper work should be with MASS General Hospital |
| 14. | SCOTT T. SCHMIDT, M.D. (4/16/16 - 7/21/17); |
| 15. | A. LOUIS MARIORENZI, M.D. (10/19/16); |
| 16. | FRANKLIN E. MIRRER, M.D. (12/9/16); |
| 17. | DR. JOHN E. DONLEY REHABILITATION CENTER (12/14/16 - 8/30/17); |
| 18. | THOMAS E. MCGUNIGAL, M.D. (2/6/17); |
| 19. | MASSACHUSETTS GENERAL HOSPITAL (3/20/17 - 9/21/17) |
| 20. | LIFESPAN PHYSICIAN GROUP (3/10/16 - 4/4/17) AND |
| 21. | JOB DESCRIPTION |

CC-3 (revised October 2014)

204

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 460 of 689 PageID
#1815
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 203 of 346   PageID 204



**Workers' Compensation Court of Rhode Island**
**Garrahy Judicial Complex**
**One Dorrance Plaza**
**Providence, RI 02903**

ROBERT M. FERRIERI
CHIEF JUDGE

May 23, 2018

David A. Moss, M.D.
1524 Atwood Avenue, Suite 140
Johnston, RI 02919

Re:  Mickeda S. Barnes vs. Rhode Island Public Transit Authority
W.C.C. Nos. 2017-05115, 2017-06073, 2017-04571, 2017-04046, 2017-04145,
2018-06646, 2017-06824

Dear Dr. Moss:

I am referring Mickeda S. Barnes to you for a Court appointed impartial medical examination. Ms. Barnes sustained an injury to her left wrist and low back on February 12, 2015. There are several petitions pending before the Court, including, but not limited to, the employee's petition for loss of use to the left upper extremity, and the employee's petition for scarring to the left hand, and an employee's petition to amend the nature and location of injury to include right shoulder. The employer is contesting said petitions.

I have enclosed all available medical reports for your review. Once you have had an opportunity to review these reports and to examine the employee, kindly advise the Court of your opinion regarding a diagnosis, causal relationship and disability status. More particularly, for each injury you opine that the employee suffers, kindly indicate whether or not the employee is disabled from said injuries and if so, whether said injury and disability is causally related to the work incident of February 12, 2015.

I have instructed the employee to bring diagnostic film to the examination.

A check in the amount of eight hundred and fifty dollars will be forwarded to you upon receipt of your report.

205

*Dr. Moss*
*May 23, 2018*
*Page two*

I note that there are many medical records attached to this exam.  Kindly advise as to whether or not an additional charge will be requested.

Thank you for your cooperation in this matter.

Very truly yours,

Robert M. Ferrieri
*Chief Judge*

amg

enclosure

C:      Stephen J. Dennis, Esq.
        Nicholas Mancini, Esq.

206



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

Workers' Compensation Court
*Medical Advisory Board*
Garrahy Judicial Complex

One Dorrance Plaza
Providence, Rhode Island 02903
(401) 458-3460
Fax (401) 458-3469

May 24, 2018

WCC # 201705115

**Petitioner:**
Mickeda S. Barnes
34 DUNBAR AVENUE
RUMFORD, RI  02916

**Respondent:**
RHODE ISLAND PUBLIC TRANSIT
AUTHORITY
705 ELMWOOD AVENUE
PROVIDENCE, RI  02907

**Insurer:**
Rhode Island Individual Self Insureds

**Doctor:**
David A. Moss, M.D.
1524 Atwood Avenue, Suite 140
Johnston, RI  02919

### Notice of Impartial Medical Examination
### Appointment Date: June 22, 2018
### Appointment Time: 11:30 AM

EMPLOYEE:

**Chief Judge Robert M. Ferrieri** has ordered an Impartial Medical Examination appointment be made for you. That appointment has been scheduled for **time, date and physician indicated above**. The following is a list of guidelines for an Impartial Medical Examination pursuant to the Rhode Island Workers' Compensation Act.

1. Kindly present yourself to the doctor's office on the specified date and time for your impartial medical examination. If you necessitate the services of an interpreter, please confirm with your attorney that those services have been arranged.

2. Only medical reports forwarded by the court will be reviewed by the physician. The employee may, with the Court's permission, bring their diagnostic studies. This should be the only material which the employee would personally present for the physician's review.

3. You must bring your photo ID to the exam.

4. If for any reason you are unable to keep this appointment, please call the Medical Advisory Board offices, at least 72 hours before the appointment, at (401) 458-3460. **Failure to attend this appointment will result in the assessment of fees against you and/or may result in the termination of your workers' compensation benefits.**

Sheila Mitchell, RN, BSN
Administrator
Medical Advisory Board

cc: HOWARD L. FELDMAN; CAROLYN A. MANNIS; STEPHEN J. DENNIS;
CATHERINE BEDNARZ; NICHOLAS MANCINI

207

Submitted Electronically
In Workers' Compensation Court
Submitted: 7/2/2018 10:46 AM
Envelope: 1610871
Reviewer: Paula Robert

From: center for ortho          4013516201          06/29/2018 11:54     #479 P.002/004

THE CENTER FOR

## orthopaedics INC.

Orthopaedic Surgery

• A. Robert Buonanno, M.D., FAAOS, FACS
Michael J. Belanger, M.D., FAAOS
David A. Moss, M.D., FAAOS
Michel Arcand, M.D., FAAOS
John K. Czerwein Jr., M.D., FAAOS
Blanki Cherubini, M.D.

June 22, 2018

The Honorable Robert M. Ferrieri
Workers Compensation Court
*Medical Advisory Board*
Garrahy Judicial Complex
One Dorrance Plaza
Providence, RI  02904

RE:          **BARNES, MICKEDA S.**
EMP:        **RHODE ISLAND PUBLIC TRANSIT AUTHORITY**
W.C.C.#:   **2017-05115**
DATE OF INJURY: **02/12/2015**

Dear Chief Judge Ferrieri:

I had the pleasure of performing an Independent Medical Evaluation on Mickeda S. Barnes in my office on June 22, 2018.

**HISTORY OF PRESENT ILLNESS:** The patient is a 43-year-old female, a RIPTA bus driver, who sustained an injury in a slip-and-fall accident on some ice on 02/12/2015. She states that she needed to use the ladies' room; she got off her bus, was walking across the street, which was snowy and icy, and sustained a slip and fall backward, injuring her left wrist, right knee, and low back. She was seen at the Kent County Hospital Emergency Room, where x-rays of the back and left wrist were obtained and were negative for fracture. She subsequently saw her primary care physician, Dr. Michael Souza, on multiple occasions over the next several weeks. There is no mention of any knee pain or right shoulder pain throughout that entire time period when seeing Dr. Souza and subsequently Dr. Peter Pizzarello. She continued to complain of left wrist pain and low back pain, and she subsequently underwent a carpal tunnel release procedure with Dr. Pizzarello on 05/16/2015. She was doing very well postoperatively until August of 2015, and she then began to experience increased pain and numbness in the operative left upper extremity. She did undergo a repeat carpal tunnel release surgery, which was performed by Dr. Schmidt on 02/09/2015. She said she no longer has any pain or numbness in the left hand or wrist at the present time.

1524 Atwood Avenue     Suite 140    Johnston    Rhode Island  02919    phone (401) 351 6200    fax (401) 351-6201    web centerfororthopaedics.com
• Diplomat American Board Orthopaedic Surgery • Fellow American Academy of Orthopaedic Surgery • Fellow American College of Surgeons

208

umber: 2017-05115
in Workers' Compensation Court
mitted: 7/2/2018 10:46 AM
nvelope: 1610571bm:center for ortho                    4013515201             06/29/2018 11:54      #479 P.003/004
Reviewer: Paula Robert

RE:            **BARNES, MICKEDA S.**
EMP:           **RHODE ISLAND PUBLIC TRANSIT AUTHORITY**
W.C.C.#:       **2017-05115**
DATE OF INJURY: **02/12/2015**
June 22, 2018
Page 2

She also states that she recently underwent right shoulder surgery at Massachusetts General Hospital back in February of 2018 and is progressing very well postoperatively from that right shoulder surgery. With regard to her back, she states that she gets intermittent discomfort in the low back, but overall this has also markedly improved. She has not returned to work in any capacity since the slip and fall on 02/12/2015.

**PHYSICAL EXAMINATION:** On examination, the left wrist reveals a well-healed incision over the volar aspect of the left wrist. There is no pain to active or passive flexion or extension of the wrist. She is moving the fingers freely. There is no swelling. On examination of the right shoulder, there are four well-healed arthroscopy incisions. There is some slight weakness around the shoulder musculature, but there is no pain to active or passive range of motion in the right shoulder region. On examination of the lumbar spine, there is some mild tenderness to palpation over the left lumbar paraspinal musculature. There is no pain to flexion and extension. Negative straight leg raise bilaterally.

**DATA REVIEW:** I have had the opportunity to review multiple medical records, including Kent County Memorial Hospital records from 02/12/2015 through 11/28/2016, reports from Advanced Radiology in East Providence dated 02/19/2015, and notes from Dr. Michael Souza, her primary care physician, from 02/28/2015 through 10/25/2017, as well as notes from Dr. Peter Pizzarello, Jr. from 03/23/2015 through 11/08/2016. I also reviewed notes from Dr. William Golini dated 04/02/2015 through 06/21/2016, reports from Open MRI of Warwick dated 05/01/2015 and 11/16/2016, and notes from Performance Physical Therapy dated 06/25/2015 through 03/24/2016. Also reviewed were notes from Dr. Arnold Peter Weiss dated 07/16/2015 through 06/30/2016; Dr. Richard Anderson dated 10/06/2015; Dr. Gregory Austin from 01/19/2016; Lifespan Physician Group dated 03/10/2016 through 04/04/2017; NeuroHealth dated 03/24/2016; Dr. Scott T. Schmidt dated 04/16/2016 through 07/21/2017; Dr. A. Louis Mariorenzi dated 10/19/2016; and Dr. Franklin Mirrer dated 02/06/2017. I also reviewed notes from the Dr. John E. Donley Rehabilitation Center dated 12/14/2016 through 08/30/2017, notes from Dr. Thomas McGunigal dated 02/06/2017, as well as notes from Massachusetts General Hospital dated 03/20/2017 through 05/17/2018, Dr. Eric Bonness dated 02/13/2018, and notes from Rhode Island Hospital Physical Therapy dated 05/14/2018, as well as a job description from RIPTA.

**SUMMARY**
**IMPRESSION:** Ms. Mickeda Barnes presented to my office today for her Impartial Medical Examination at 11:45 a.m. She was seen with her husband present during the entire examination procedure.

Case Number 201709115
Filed In Workers' Compensation Court
Submitted: 7/2/2018 10:48 AM
Envelope: 1610871
Reviewer: Paula Roberti

STATE OF RE ISLAND                          WORKERS' COMPENSATION
PROVIDENCE, SC.                                      COURT

MICKEDA S. BARNES                              :
                                                             :
        VS.                                              :         WCC NO. 17-5115
                                                             :
RHODE ISLAND PUBLIC                        :
        TRANSIT AUTHORITY                 :


### NOTICE OF CONTEST

Notice is hereby given that the employee contests David A. Moss, M.D., The Center for

Orthopedics, Inc.'s report dated June 22, 2018, rendered in this matter as mandated by R.I.G.L.

§28-33-35.

                                        Mickeda S. Barnes
                                        By her Attorney,

                                        /s/Stephen J. Dennis
                                        Stephen J. Dennis, #4336
                                        LAW OFFICE OF STEPHEN J. DENNIS
                                        127 Dorrance Street, 3rd Fl, Suite 7A
                                        Providence, RI  02903
                                        (401) 453-1355


### CERTIFICATION

I, the undersigned do hereby certify that I mailed a true copy of the within to **Nicholas
Mancini, Esq., 222 Jefferson Boulevard, 2nd Floor, Warwick, RI 02888** on this 2nd day of
June, 2018.

210

Copyleved: 2772(5)-00745)-100
Filed In Workers' Compensation Court
Submitted: 7/2/2018 10:40 AM
Envelope: 1610871
Reviewer: Paula Roberti

STATE OF RE ISLAND                          WORKERS' COMPENSATION
PROVIDENCE, SC.                                     COURT

MICKEDA S. BARNES                                :
                                                 :
          VS.                                    :      WCC NO. 17-5115
                                                 :
RHODE ISLAND PUBLIC                              :
     TRANSIT AUTHORITY

### NOTICE OF CONTEST

   Notice is hereby given that the employee contests David A. Moss, M.D., The Center for

Orthopedics, Inc.'s report dated June 22, 2018, rendered in this matter as mandated by R.I.G.L.

§28-33-35.

                                        Mickeda S. Barnes
                                        By her Attorney,

                                        /s/Stephen J. Dennis
                                        Stephen J. Dennis, #4336
                                        LAW OFFICE OF STEPHEN J. DENNIS
                                        127 Dorrance Street, 3rd Fl, Suite 7A
                                        Providence, RI  02903
                                        (401) 453-1355

### CERTIFICATION

   I, the undersigned do hereby certify that I mailed a true copy of the within to **Nicholas
Mancini, Esq., 222 Jefferson Boulevard, 2nd Floor, Warwick, RI 02888** on this 2nd day of
June, 2018.

211

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 467 of 689 PageID #: 822

...County Superior Court
omitted: 8/27/2020 10:22 AM
/elope: 2721171
/iewer: Victoria H

1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 210 of 346    PageID 211

## SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS

This Settlement Agreement and General Release of Claims ("Agreement") is entered into by and between the Rhode Island Public Transit Authority (the "Authority"), on behalf of itself, its present or former officers, directors, subsidiaries, parents, affiliates, partners, employees agents, insurers, attorneys, accountants, executors, administrators, successors and assigns and all affiliated entities and Mickeda Barnes on behalf of herself, her representatives, agents, estates, heirs, successors and assigns ("Employee") (collectively referred to as the "Parties") for good and valuable consideration.

Employee and the Authority desire to settle fully and finally all differences between them including, without implication or limitation, the claims and allegations set forth in the complaints filed in the Rhode Island Superior Court, and removed, or subject to removal, to the United States District Court for the District of Rhode Island, captioned <u>Mickeda Barnes v. Rhode Island Public Transit Authority</u>, 1:17-cv-00505-JJM-PAS and <u>Mickeda Barnes v. Rhode Island Public Transit Authority, et al</u>, PC-2018-2287 (the "Lawsuits").

In consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to the following terms and conditions:

1.    <u>Payment.</u>

    (a)    In consideration of the release and all of the promises and representations made by Employee in this Agreement, the Authority will pay to Employee the total gross amount of ONE HUNDRED AND FIFTY THOUSAND DOLLARS AND ZERO CENTS ($150,000.00) which amount shall be paid as follows: (1) a check payable to "Mickeda Barnes" in the amount of Fifty-Five Thousand Dollars and Zero Cents ($55,000.00), less applicable withholdings in

Firmwide:151655351.8 088768.1003

212

Submitted: 8/27/2020 10:22 AM
Envelope: 2721171
Reviewer: Victoria H

settlement of Employee's claims for economic loss issued on a W-2; (2) a check payable to "Mickeda Barnes" in the amount of Fifty-Five Thousand Dollars and Zero Cents ($55,000.00), without withholdings, in settlement of Employee's claims for non-economic damages, issued on a Form 1099; and (3) one check payable to "Sonja Deyoe as attorney for Mickeda Barnes" in the amount of Forty Thousand Dollars and Zero Cents ($40,000.00) without withholdings, in settlement of Employee's claims for attorneys' fees, issued on a Form 1099.

(b)     The Authority will deliver all payments to Employee's attorney, Sonja Deyoe, Esq., 395 Smith Street, Providence, RI 02908, by overnight express mail or other secure means, within fourteen (14) calendar days from the expiration of the seven (7) day revocation period set forth in Paragraph 3(b), and only if the Authority's counsel has received two (2) originals of this Agreement executed by Employee, fully executed Forms W-4 and W-9 from Employee, and a Form W-9 from Employee's attorney.

(c)     Employee acknowledges and agrees that the above-referenced payments represent valuable consideration that the Authority is not otherwise obligated to provide her.

(d)     Employee acknowledges and agrees that the Authority makes no representation of any kind as to the income or other tax consequences of the payment and further acknowledges and agrees that she is solely responsible for all of her tax obligations, if any, including but not limited to all reporting and payment obligations, which may arise as a consequence of this settlement.  Employee hereby agrees to indemnify and hold the Authority harmless from and against any and all loss, cost, expense (including attorneys' fees), interest, payments or penalties incurred by the Authority on account of Employee's failure to pay tax properly payable by her. Employee understands and agrees that the Authority has no duty to defend any claim or assertion

Firmwide:151635351.8 088768.1003

213

in connection with Employee's tax treatment of the proceeds of this payment, and Employee agrees to assume full responsibility for defending against any such claim or assertion.

2.    <u>Release of Claims.</u>

(a)    In exchange for and in consideration of the payment received pursuant to this Agreement, Employee agrees to release the Authority, its present and former direct and indirect parent entities, direct and indirect subsidiaries, partners, insurers, successors and assigns, and their present and former employees, officers, directors, shareholders, agents, attorneys and representatives (the "Releasees") from each and every claim or demand of every kind arising up to the date Employee signs this Agreement, including but not limited to those claims made by Employee in the Lawsuits. This includes a release of any rights or claims for any and all types of relief, including but not limited to back pay, front pay, compensatory and punitive damages, attorneys' fees and costs, and equitable orders, which Employee may have in any tort or contract action, any equitable action, any declaratory judgment action, or any action under Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment based on race, religion, color, national origin or sex; the Rhode Island Fair Employment Practices Act which, in addition to the classes protected in the law referenced above, additionally prohibits discrimination based on disability, country of ancestral origin, sexual orientation and gender identity and expression; the Americans with Disabilities Act of 1990, which prohibits discrimination against disabled persons; the Age Discrimination in Employment Act of 1967, ("ADEA"); the Older Worker Benefit Protection Act of 1990 ("OWBPA"); the National Labor Relations Act ("NLRA"); the Family Medical Leave Act; the Rhode Island Parental and Family Medical Leave Act; the Rhode Island Civil Rights Act; the Civil Rights of Individuals with Disabilities Act; the Rhode Island Personnel Files Act, the Employee Retirement Income Security Act, the Labor Management

Relations Act; any amendments to the foregoing, and/or any other federal, state or local laws or regulations, whether or not included in the above non-exhaustive list. Employee also releases the Releasees from any claim for defamation, libel, slander, constructive or wrongful discharge, any claim that the Releasees dealt with her unfairly, breached any agreement or contract, including any breach of any collective bargaining agreement or any suit brought under Section 301 of the Labor Management Relations Act and/or any other claims whether arising under statutory or common law. No claim has been made by Barnes that she suffered sexual harassment or sexual abuse nor payment made to Barnes to resolve claims of sexual harassment or sexual abuse in the instant litigation such as those are defined by Internal Revenue Code Section 162 (q).

(b)    Employee agrees to indemnify and hold the Releasees harmless from and against any and all damages for back pay, lost wages, front pay, the value of lost benefits, emotional distress, or pain and suffering incurred by the Releasees as a result of any claims against Releasees by way of action for contribution, joint and/or several liability, indemnification or that are in any way derivative of claims Employee has brought, or may bring, against any third parties, including but not limited to claims against labor unions, union representatives, or any claims set forth in the Lawsuits. Employee agrees to release and discharge the Releasees not only from any and all claims which Employee could make on her own behalf, but she also specifically waives any right to become, and promises not to become, a member of any class in any proceeding or case in which a claim or claims against the Releasees may arise, in whole or in part, from any event which occurred as of the date of this Agreement. The Parties agree that if Employee, by no action of her own, becomes a mandatory member of any class from which Employee cannot, by operation of law or order of court, opt out, she will not be required to pay for any legal fees or costs incurred by the Releasees as a result. Although Employee is releasing

all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of her waiver of age claims under the ADEA and OWBPA.

(c)    This release covers claims that Employee knows about, and those that she may not know about, up through the date of this Agreement.

(d)    Despite any language herein to the contrary, Employee does not release claims that may arise after Employees signs this Agreement or that by law cannot be released by private agreement. For example, this Agreement does not release claims for unemployment insurance or workers' compensation benefits.

(e)    After the parties had reached agreement in principal, Employee filed the above-reference suit in Rhode Island Superior Court, Case No. PC-2018-2287.  As a result, the Parties hereby agree that, except to enforce the provisions of this Agreement, should Employee bring any claim, action, or suit on any matter covered by the releases set forth in this Paragraph 2, against the Releasees, this Agreement may be asserted as a complete defense, and if the Releasees, collectively or individually, prevail, Employee shall be responsible for liquidated damages in the amount of $10,000 per violation or paying the attorneys' fees and costs that the prevailing Releasee(s) incurs in opposing such claim, whichever is less, in addition to any other relief to which the Releasee(s) may be entitled.  Although Employee is releasing all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of her release of age claims under the ADEA and OWBPA.

3.    Age Discrimination in Employment Act ("ADEA").

(a)    Twenty-One (21) Day Consideration Period.  Employee shall have twenty-one (21) days to consider and accept the terms of this Agreement by fully executing it below, and returning it to counsel for the Authority, Jillian Folger-Hartwell, One Financial Plaza, Ste. 2205,

Firmwide:131655351.8 088768.1003

Providence, RI 02903. Employee hereby acknowledges and agrees that she has been and is by this Agreement advised in writing, during this twenty-one (21) day period, to consult with an attorney of her choosing regarding the terms and provisions of this Agreement. Employee may sign the Agreement of her own volition prior to the conclusion of the twenty-one (21) day period. Any changes to this Agreement, whether material or immaterial, do not restart the running of this twenty-one (21) calendar day review period.

(b)    Revocation Period. Employee understands that she has a period of seven (7) calendar days after the date that she signs this Agreement ("Revocation Period") to revoke her acceptance of the terms of this Agreement by delivering a written notification to counsel for the Authority, Jillian Folger-Hartwell, One Financial Plaza, Ste. 2205, Providence, RI 02903. If Employee revokes this Agreement, it shall not be effective or enforceable and the Authority will not tender the payments set forth in Paragraph 1 of this Agreement. If Employee does not revoke this Agreement prior to the expiration of this seven (7) day period, this Agreement shall take effect at that time as a legally binding agreement between the Parties on the basis set forth herein.

4.    Dismissal of Lawsuits. Employee agrees to sign and return with the signed copy of this Agreement the stipulations attached as Exhibit A and Exhibit B. The Company will file the signed stipulations with the United States District Court for the District of Rhode Island and the Rhode Island Superior Court, respectively. Employee agrees to take any and all measures reasonably required to comply with or effectuate the dismissal, with prejudice, of the Lawsuits.

5.    No Admission of Liability. This Agreement shall not in any way be construed as an admission by the Authority that it acted wrongfully or failed to act lawfully with respect to Employee, or any other person, or that Employee has any rights whatsoever against the

Firmwide:151655351.5 088768.1003

217

ed in Providence/Bristol County Superior Court
omitted: 8/27/2020 10:27 AM
/elope: 2721171
/iewer: Victoria H.

...00213-JJM-PAS   Document 1-14 Filed 05/31/22   Page 216 of 346   PageID 217

Authority.  The Authority specifically disclaims any liability for any wrongful acts or omissions against Employee or any other person, on the part of itself, its employees, officers, directors and agents, past and present.  Neither this Agreement nor anything in it shall be admissible in any proceeding as evidence of any unlawful or wrongful conduct by the Authority.

6.    **No Assignment.**  The Parties represent and warrant that no person other than the Parties had or have any interest in the matters referred to in this Agreement, that the Parties have the sole right and exclusive authority to execute this Agreement, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this Agreement.

7.    **No Additional Payments.**

(a)    Employee agrees and avers that she has been paid and/or has received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled, that she has suffered no known workplace injuries prior to the date of her execution of this Agreement other than those that she has already revealed to the Authority, and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to her, except as provided in Paragraph 1 or as she may obtain in the litigation of her existing workers' compensation claims.

(b)    In entering into this Agreement, the Parties have fully considered Medicare's interests, pursuant to the Medicare Secondary Payer rules, and in doing so, Employee has declared that her claim does not involve any illness, injury, incident, or accident in which medical expenses were incurred or are expected to be incurred in which Medicare has or may have an interest.  Further, Employee affirms no conditional payments have been made to her by Medicare.  If Medicare (or an agency representing Medicare's interests) later determines that it

*[handwritten annotations:]*

*My Right to Reinstate nemt was still Exisit In w/ a cour even Now? and I was paid only Some weeks in Oct 22, 2019*

*How can I Consider my own Medicare et a Side when we was on medcation or two years*

*or my medicare Set a Side when this was signed?*

*I Still Have Injuries I Have court on Sept 9, 2020*

218

ed in Providence/Bristol County Superior Court
omitted: 6/30/21 12:27 PM
elope: 2721171
/iewer: Victoria H.

*No ∇*
*Will*
*Not*

does have an interest in the payments made pursuant to the Agreement, Employee will indemnify the Releasees for any payments and/or penalties they submit to Medicare (or the agency collecting on behalf of Medicare) as a result of the payments under this Agreement.

8.   **Confidentiality.**

(a)   Employee agrees to maintain the confidentiality of this Agreement and will not disclose in any fashion this Agreement, the amount of this settlement, and/or the substance or content of discussions involved in reaching this Agreement, to any person other than the Employee's attorneys, accountants, spouse, and tax advisors as required by appropriate taxing authorities, or as required by law. If inquiries are made of Employee regarding this Agreement, or the substance of this Agreement, by any other person, Employee will state that the case is resolved and shall not further characterize this settlement.

(b)   Employee understands that the confidentiality restrictions of this Paragraph 8 extend to social media, including, but not limited to, blogs, virtual worlds, social or professional networking websites, and/or video sharing websites ("Social Media").

9.   **Non-disparagement.** Employee agrees to make no negative, derogatory or disparaging comments, oral or written, publicly or in private, via Social Media or otherwise, about the Releasees or their products, services, business practices and philosophies, including any comments that reasonably could be considered (a) damaging or injurious to the Releasees' goodwill; (b) harmful to the Releasees' business interests; or (c) to impact negatively on the Releasees' business reputation or reputation in the community.

10.   **No Future Employment.** Employee agrees not to reapply for employment with the Authority, any subsidiary, related, affiliated or parent entity or any entity which is now or in the future owned, controlled, acquired by the Authority. Employee further agrees that if she reapplies or applies for employment with the Authority, or any entity described above, her

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 475 of 689 PageID #: 890

...d in Providence/Bristol County Superior Court
...mitted: 6/23/2020 10:27 AM 00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 218 of 346    PageID 219
...elope: 2721171
...iewer: Victoria H

application may be denied on the basis of this Agreement. Employee agrees to waive any right
to reinstatement to which she may be entitled under R.I. Gen. Laws §28-33-47, and if reinstated
thereunder, she agrees to immediately and voluntarily resign from employment. This provision
shall not be construed so widely as to bar the Employee from applying for work or working for
the State of Rhode Island or the Rhode Island Department of Transportation.

11.    **Amendment.**  This Agreement may not be modified, altered or changed except
upon express written consent of both Parties.

12.    **Governing Law.**  This Agreement will be governed by and performed in
accordance with the laws of the State of Rhode Island without regard to its conflict of laws
provision.

13.    **Suits to Enforce.**  In any lawsuit brought to enforce the terms of this Agreement,
the prevailing party shall also be entitled to recover from the other party court costs and
reasonable attorneys' fees. Although Employee is releasing all claims she has against Releasees,
this provision does not prohibit and does not apply to a challenge to the knowing and voluntary
nature of this Agreement under the ADEA and OWBPA.

14.    **Severability.**  Should any provision of this Agreement be declared or determined
by any court or other tribunal of appropriate jurisdiction to be invalid or unenforceable, any such
invalid or unenforceable provision shall be deemed stricken and severed from this Agreement
and any and all of the other terms of the Agreement shall remain in full force and effect to the
fullest extent permitted by law.

15.    **Entire Agreement.**  This Agreement is the sole agreement between Employee
and the Authority. Any other prior agreements between the Parties are hereby terminated and
shall have no further force or effect. This Agreement may be amended in writing, only by a

*[Handwritten annotations in margins: "I was Fired and if I get my Job bac I have To Resig I dont Think So", "go by governing Laws", "So I to enforce this no good agree ment.", "This paragraph has been in this contract Three Time already", "I am not an employa", "Chief Judge Never withdrew that Court order on 12-01-2017", "I have a court order for the agreement on 12-1-2020"]*

Firmwide:131635351.8 088768.1003

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 476 of 689 PageID
#1 821

Filed In Providence/Bristol County Superior Court
omitted: 8/20/2020 10:27 AM-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 219 of 346    PageID 220
velope: 2721171
viewer: Victoria H

document executed by both Parties. The Authority has made no promises to Employee other than those set forth in this Agreement.

16.    <u>Captions.</u>  The paragraph captions in this Agreement are for convenience only and shall neither affect the meaning of the provisions of this Agreement, nor be used in construing this Agreement.

17.    <u>Acknowledgement of Voluntariness and Understanding.</u>  Employee represents and agrees that she has been advised to and has had the opportunity to thoroughly discuss all aspects of this Agreement with an attorney, that she has carefully read and fully understands all of the provisions of this Agreement, that she is voluntarily entering into this Agreement, and that she does not and has not relied in any way on any representations or statements of the Authority or its attorneys not contained in this Agreement.

18.    <u>No Interference with Rights.</u>  Nothing in this Agreement including but not limited to the release of claims, class and collective action waiver, promise not to sue, confidentiality, cooperation, non-disparagement, withdrawal of charge, no future employment, and attorneys' fees shifting provisions, (a) limit or affects Employee's right to challenge the validity of this Agreement under the ADEA or the OWBPA, (b) prevents Employee from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the Equal Employment Opportunity Commission, National Labor Relations Board, the Securities and Exchange Commission, Rhode Island Commission for Human Rights, or any other any federal, state or local agency charged with the enforcement of any laws, including providing documents or any other information, or (c) limits Employee from exercising rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees, although by signing this

Firmwide:151655351.8 088768.1003

221

u in Providence/Bristol County Superior Court
omitted: 8/27/2020 2:22 PM
velope: 2721171
Jiewer: Victoria H

Agreement Employee is waiving rights to individual relief (including backpay, frontpay,

reinstatement or other legal or equitable relief) in any charge, complaint, lawsuit or other

proceeding brought by Employee or on Employee's behalf by any third party, except for

any right Employee may have to receive a payment from a government agency (and not the

Authority) for information provided to the government agency or otherwise where

prohibited.

### PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE
### OF ALL KNOWN AND UNKNOWN CLAIMS.

_____
Mickeda Barnes

Date: _____4-25-18_____

Rhode Island Public Transit Authority

By: _____

Title: _____

Date: _____

But No Body From Ripta Signed it

Jillian Submitted this to the Court No signature

# LAW OFFICE OF    STEPHEN J. DENNIS

Stephen J. Dennis *

Howard L. Feldman †
Catherine E. Bednarz †
Carolyn A. Mannis

Jeanne M. Scott
of counsel
William J. Gately, Jr. †
of counsel

\* Also admitted in DC
† Also admitted in MA

May 8, 2018

Sonja L. Deyoe
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908

RE:  **Mickeda S. Barnes**
DOI:  **2/12/2015**

Dear Ms. Deyoe:

As you are aware, this office represents the legal interest of Ms. Mickeda S. Barnes as it relates to a Workers' Compensation Claim.

Please advise our office to status of settlement as it relates to the discrimination portion of the global settlement.

If you have any questions or concerns don't hesitate to contact the office. Thank you for your anticipated cooperation.

Very Truly Yours,

**LAW OFFICE OF STEPHEN J. DENNIS**



Stephen J. Dennis, Esq.

SJD/alh
Cc: Mickeda Barnes

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 • 1-888-634-1543 • Fax: 401-453-6670

223

## Agreement in the Mickeda Barnes Matter

I understand that this case was referred to the Law Offices of Sonja L. Deyoe from Attorney Stephen J. Dennis.

I further understand that the Law Offices of Sonja L. Deyoe will be assuming responsibility, along with Attorney Stephen J. Dennis for the legal representation in this matter, and that Attorney Stephen J. Dennis will receive $10,000.00 of any attorney fees realized by the Law Offices of Sonja L. Deyoe.

This Agreement is acceptable to me.

DATED: _July 19, 2018_

_Mickeda Barnes_
Mickeda Barnes

_Stephen J. Dennis_
Stephen J. Dennis, Esq.

_Sonja L. Deyoe_
Sonja L. Deyoe, Esq.

224

ad in Providence/Bristol County Superior Court
bmitted: 3/7/2022 4:54 PM
velope: 3521136
viewer: Carol M.

Rhode Island Public Transit Authority, 705 Elmwood Avenue, Providence, RI 02907

| DEPT: 40 42 501 | EMPN: 5282 | Date: 5/17/18 | Net: 34793.00 | No. 553996 |

| EARNINGS | QUANTITY | CURRENT | DEDUCTIONS | CURRENT | YEAR TO DATE |
|----------|----------|---------|------------|---------|--------------|
| SETTLEMENT PAYMENT | | 55000.00 | FEDERAL INCOME TX | 12100.00 | 12100.00 |
| | | | RI STATE INCOME TX | 3294.50 | 3294.50 |
| | | | SS FICA-MEDICARE | 797.50 | 797.50 |
| | | | SS FICA-OASDI | 3410.00 | 3410.00 |
| | | | RI TDI TEMP DIS. | 605.00 | 605.00 |

| Gross | | 55000.00 |

| ACCRUAL | EARNED | USED | BALANCE |
|---------|--------|------|---------|
| PAT | | | 15.000 |
| SCK | | | 160.000 |
| VAC | | | |

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|-----------|---------------|--------------|---------|
| 55000.00 | 55000.00 | 55000.00 | 55000.00 |

▼ REMOVE DOCUMENT ALONG THIS PERFORATION ▼

**RIPTA**
RHODE ISLAND PUBLIC TRANSIT AUTHORITY
705 Elmwood Avenue, Providence, RI 02907

DATE   5/17/18    No. 553996

57-1
115

AMOUNT

PAY THE SUM OF   Thirty Four Thousand Seven Hundred Ninety Three and 00/100 Dollars *34,793.00

BANK OF AMERICA
PROVIDENCE, RHODE ISLAND

| TO THE ORDER OF | 40 42 501    5282 |
| | MICKEDA BARNES |
| | 34 DUNBAR AVENUE |
| | RUMFORD, RI  02916 |

Amy Pettine
AUTHORIZED SIGNATURE

DOCUMENT CONTAINS BLUE PANTOGRAPH & MICROPRINTING  BACK HAS THERMOCHROMIC INK & A WATERMARK. HOLD AT AN ANGLE TO VIEW. VOID IF NOT PRESENT.

⑈553996⑈ ⑆011500010⑆ 15 8000366⑈

225



**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**
705 Elmwood Avenue, Providence, RI 02907

40 42 501                              5282
MICKEDA BARNES
34 DUNBAR AVENUE
RUMFORD,   RI   02916

Rhode Island Public Transit Authority, 705 Elmwood Avenue, Providence, RI 02907

P    DEPT:    40 42 501    EMPN:    5282    Date:  5/17/18    Net:   34793.00    No.   553996

| EARNINGS | QUANTITY | CURRENT | DEDUCTIONS | CURRENT | YEAR TO DATE |
|---|---|---|---|---|---|
| SETTLEMENT PAYMENT | | 55000.00 | FEDERAL   INCOME TX | 12100.00 | 12100.00 |
| | | | RI STATE INCOME TX | 3294.50 | 3294.50 |
| | | | SS FICA-MEDICARE | 797.50 | 797.50 |
| | | | SS FICA-OASDI | 3410.00 | 3410.00 |
| | | | RI TDI TEMP DIS. | 605.00 | 605.00 |

| Gross | | 55000.00 |
|---|---|---|

| ACCRUAL | EARNED | USED | BALANCE |
|---|---|---|---|
| PAT | | | 16.000 |
| SCK | | | 160.000 |
| VAC | | | |

| MD GROSS | TAXABLE GROSS | MD SS WAGES | MD MED |
|---|---|---|---|
| 55000.00 | 55000.00 | 55000.00 | 55000.00 |

226

Case Number: BC-2020-08065
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

FILE IDENTIFICATION:  JY15J0429198

PROCESSING AIM:  450

CLAIM OFFICE:  Professional Risk

Barnes;Mickeda
34 Dunbar Avenue

Rumford, RI  02916

# CHUBB

FROM:

TO:

DN501006770

QUAL DATE: 05/10/2018

| SUFFIX LETTER | CLAIM CODE | AMOUNT | PAYMENT CODE | PAYMENT TYPE | WEEKS | DAYS | WEEK/LENGTH |
|---|---|---|---|---|---|---|---|
| A | PLE | 55000.00 | 65 | P | 00 | 0 | 0 |
| | TOTAL | *****$55,000.00 | | | | | |

227

Case Number: PC-2020-06866
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

# CHUBB

ACE American Insurance Company
ACE Property and Casualty Insurance Company
Westchester Fire Insurance Company

Bank of America

**DN50100677**

51-44/119

| POLICY SYMBOL NO. | | FILE IDENTIFICATION: | **DATE** | **AMOUNT** |
|---|---|---|---|---|
| XOXX00617878 | CLM GRP J | YY1BX0429198 | 05/10/2018 | *****$55,000.00 |
| DATE OF EVENT 08/07/2015 | | CLAIMANT Barnes;Mickeda | | |
| REASON FOR PAYMENT 101-Settlement | | POLICY HOLDER Rhode Island Public Tra | | |

Void Over 55,000.00
Please deposit or cash within 90 days

PAY
ONLY 55000.00

■FIFTY-FIVE THOUSAND DOLLARS AND ZERO CENTS **********

TO THE ORDER OF    Mickeda Barnes

# CHUBB

⑈345010067 7⑈ ⑆0119004 45⑈ 000047758⑈

228

# CHUBB™

ACE American Insurance Company
ACE Property and Casualty Insurance Company
Westchester Fire Insurance Company

Bank of America

**DN50100680**

51-44
119

| POLICY SYMBOL NO. | CLM OFF | FILE IDENTIFICATION | DATE | AMOUNT |
|---|---|---|---|---|
| RDMX00617878 | J | JY1530429198 | 05/10/2018 | *****$40,000.00 |
| DATE OF EVENT | | CLAIMANT | | |
| 08/07/2015 | | Barnes,Mickeda | | |
| REASON FOR PAYMENT | | POLICY HOLDER | | |
| 102-Settlement | | Rhode Island Public Tra | | |

Void Over 40,000.00
Please deposit or cash within 90 days

**FORTY THOUSAND DOLLARS AND ZERO CENTS** **********

TO THE ORDER OF

Sonja Deyoe as attorney for Mickeda Barnes

PAY *40,000.00*

# CHUBB®

⑈3450100680⑈ ⑉011900445⑉ 000047758⑆

**LEONE LAW LLC**

RHODE ISLAND • MASSACHUSETTS

1345 Jefferson Boulevard • Warwick, Rhode Island 02886

May 2, 2018

Mickeda Barnes
34 Dunbar Ave
Rumford, RI 02916

Dear Mickeda:

We have had the opportunity to review the draft settlement release that Sonja Deyoe forwarded to us stemming from your discrimination lawsuit against RIPTA (RIPTA settlement release). In section 2(b) entitled "Release of Claims," the RIPTA settlement release speaks of a potential right of action against you if a contribution, indemnification, or other claim is brought against RIPTA. This letter is to advise you of the potential risk that the release language has in your case against Genfare.

As you know, under worker's compensation law, you do not have the right to file a liability lawsuit against your employer, RIPTA. Nonetheless, the Genfare defendants do have the legal right to assert third party claims for contribution or indemnification against RIPTA in the Genfare case. In short, to the extent Genfare believes or has contractually agreed with RIPTA that RIPTA is legally responsible for Genfare's negligence, Genfare may be able to seek contribution or indemnification against RIPTA. If that happens, one reading of paragraph 2(b) is that RIPTA can sue you for breach of the RIPTA settlement release. Please note that, to date, Genfare has not asserted any claims against RIPTA.

While I cannot speak to the likelihood, probability, or potential of this happening, you need to be aware of this risk and make a choice on whether the release is signed in the current form.

I have suggested that RIPTA's settlement release contain language specifically exempting the Genfare case. Sonja advises that RIPTA has refused to agree to that language.

Please sign where indicated on the bottom and mail the original back to us, confirming that you have read and understand the risks posed in the RIPTA settlement release.

Feel free to call with any language.

Very truly yours,

Anthony R. Leone

TELEPHONE: 401-921-6684   FACSIMILE: 401-921-6686   E-MAIL: info@leonelawllc.com   www.leonelawllc.com

230

I, Mickeda Barnes, have read and understand this letter and am aware of risks posed in the RIPTA settlement release.

_____

Mickeda Barnes

Date: _____

Submitted... Case 1:22-cv...
In Providence/Bristol County Superior Court
Envelope: 3521136
Reviewer: Carol M.
Submitted: 3/7/2022 4:54 PM

## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| MICKEDA BARNES, | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-00505-JJM-PAS |
| | ) | |
| RHODE ISLAND PUBLIC TRANSIT | ) | |
| AUTHORITY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

### STIPULATION OF DISMISSAL

Pursuant to Fed. R. Civ. P. 41(a), Plaintiff Mickeda Barnes and Defendant Rhode Island

Public Transit Authority, by their respective undersigned counsel, stipulate that this action is

hereby dismissed, with prejudice. Each party shall bear its own costs and attorneys' fees.

| MICKEDA BARNES, | RHODE ISLAND PUBLIC TRANSIT AUTHORITY, |
|---|---|
| By her attorneys, | By its attorneys, |
| /s/ Sonja L. Deyoe | /s/Jillian S. Folger-Hartwell |
| Sonja L. Deyoe (#6301) | Jillian S. Folger-Hartwell (#6970) |
| Law Offices of Sonja L. Deyoe | Littler Mendelson, P.C. |
| 395 Smith Street | One Financial Plaza, Suite 2205 |
| Providence, RI 02908 | Providence, RI 02903 |
| (401) 864-5877 | (401) 824-2500 |
| (401) 354-7464 (fax) | (401) 272-4520 (fax) |
| sld@the-straight-shooter.com | jfolgerhartwell@littler.com |

Firmwide:151655351.8 088768.1003

232

Case Number: PC-2018-8065
Filed In Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the within Stipulation was filed and

served electronically by operation of the Court's CM/ECF System upon the following counsel of

record on this _____ day of _____, 2018:

Sonja L. Deyoe, Esq.
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
sld@the-straight-shooter.com

/s/Jillian S. Folger-Hartwell

Firmwide:151655351.8 088768.1003

233

STATE OF RHODE ISLAND                                      SUPERIOR COURT
PROVIDENCE, SC.

MICKEDA S. BARNES, KENYON          :
ROBERTSON, BRIANA ROBERTSON,       :
SIDNEY ROBERTSON, and DOREEN       :
BARNES ROBERTSON, et al.           :
                                   :
          Plaintiffs,              :
                                   :
     v.                            :          C.A. No.: PC-2018-2287
                                   :
RHODE ISLAND PUBLIC TRANSIT        :
AUTHORITY, STATE OF RHODE          :
ISLAND AND PROVIDENCE              :
PLANTATIONS, DEPARTMENT OF         :
LABOR AND TRAINING WORKERS'        :
COMPENSATION SELF-INSURANCE        :
UNIT, CLAIMS STRATEGIES (OLD       :
TPA), BEACON MUTUAL INSURANCE      :
(PRESENT TPA), and FEDERAL         :
TRANSIT AUTHORITY                  :
                                   :
          Defendants.              :

## LIMITED ENTRY OF APPEARANCE FOR ALL PLAINTIFFS

I, Sonja L. Deyoe, hereby enter my appearance on behalf of all proper Plaintiffs an

potential proper Plaintiffs namely, Mickeda S. Barnes, Kenyon Robertson, Briana Robertson,

Sidney Robertson, and Doreen Barnes Robertson, (collectively, "Plaintiffs") in a limited fashion

so that I may take action to enter into stipulations and facilitate resolution of the claim.

234

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 490 of 689 PageID

Case Number: PC-2018-2886    Case 1:22-cv-00213-JJM-PAS  Document 1-1845 Filed 05/31/22  Page 233 of 346  PageID 234
Filed in Providence/Bristol County Superior Court
Submitted: 4/26/2018 9:42:12 AM
Envelope: 3523428
Reviewer: Alexa K.

MICKEDA S. BARNES, KENYON
ROBERTSON, BRIANA ROBERTSON,
SIDNEY ROBERTSON, AND DOREEN
BARNES ROBERTSON,

By their attorneys,


/s/ Sonja L. Deyoe
Sonja L. Deyoe (#6301)
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
(401) 864-5877
sld@the-straight-shooter.com


## CERTIFICATE OF SERVICE

I, Sonja L. Deyoe, hereby certify that on this 26th day of April, 2018 the foregoing Joint

Stipulation for Extension of Time was filed and served electronically by operation of the Court's

Tyler Management System upon the following counsel of record:

Jillian S. Folger-Hartwell
Melissa Darigan

                              /s/ Sonja L Deyoe
                              Sonja L. Deyoe

DET-BR-3ES (Rev. 05/99)

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS                    EO-02

# Board of Review

For
The Department of Labor and Training

74 West Road, Hazard Bldg., 1st Floor
Cranston, RI 02920
Telephone: (401) 462-9400 Fax: (401) 462-9401
website: http://www.dlt.ri.gov/bor
Email: DLT.BORINFO@DLT.RI.GOV

Chris Fierro
Chairman
Nathaniel J. Rendine
Edward A. Lombardo, Sr.

MICKEDA S BARNES                    MAILING DATE:    February 10, 2017
34 DUNBAR AVENUE                    SSN:             8332
RUMFORD, RI 02916-3111             APPEAL NUMBER:   20170081 UC
                                    DATE OF APPEAL:  December 30, 2016
                                    HEARING DATE:    February 8, 2017
                                    CAU NUMBER:      1640353

## DECISION OF REFEREE

### 1.    TRAVEL OF THE CASE:

The claimant's last day of work was February 12, 2015. December 6, 2016,
the claimant filed for employment security benefits. December 16, 2016, in
a Department of Labor and Training Director decision, the claimant was
denied back dating of claim according to the provisions of Section 28-42-3
(3) of the Rhode Island Employment Security Act in coordination with the
provisions of Section 28-33-47 of the Rhode Island Workers' Compensation
Law. December 30, 2016, the claimant filed a timely appeal on the decision
notice of hearing was mailed to all interested parties. February 8, 2017,
an appeal hearing was held at which time the claimant appeared and
testified. The claimant was represented by her attorney during the hearing.
The claimant's attorney was accompanied by one intern. The employer, with
proper notice, failed to appear for the hearing.

### 2.    FINDINGS OF FACT:

I find by preponderance of credible testimony and evidence the following
findings of fact:

The claimant suffered a work related injury February 12, 2015. May 6, 2015
the claimant had surgery. The claimant received Workers' Compensation
benefits until the Workers' Compensation Court discontinued benefits
effective November 10, 2016. Claimant's medical practitioner released her
to return to work without restriction effective June 1, 2015. June 16, 2015
claimant's attorney, Joseph M Beagan, wrote the employer a letter
requesting reinstatement. July 16, 2015 an independent medical practitioner
confirmed the claimant's return to work without restriction. January 27,
2016 claimant's attorney, Stephen J Dennis, wrote the employer a letter
requesting reinstatement. The employer did not reinstate the claimant. The
claimant filed for Employment Security benefits December 6, 2016 and
requested back dating of the base period calculation to the date of injury.

Negotiations for an unrelated 2014 Workers' Compensation injury were
continuing. Claimant had been released and returned to work after the 2014
Workers' Compensation claim July 2014 and worked until the February 12,
2015 injury. Workers' Compensation Court ordered Workers' Compensation
benefits to continue during negotiations on the unrelated claim.

Page 1
MICKEDA S BARNES                                                        236

3.   <u>CONCLUSION:</u>

Section 28-42-3(3) of the Rhode Island Employment Security Act states, in part, that whenever an individual who has received workers' compensation benefits is entitled to reinstatement under 28-33-47, but the position to which reinstatement is sought does not exist or is no longer available, shall have the base period of his/her claim be determined as if the individual filed for benefits on the date of injury. The based period of a claim shall not include any calendar quarter previously used to establish a valid claim for benefits.

The above section of the act is contingent on the Rhode Island Worker's Compensation Law, which states, in part;

(b) The right of reinstatement shall be subject to the provisions for seniority rights and other employment restrictions contained in a valid collective bargaining agreement between the employer and a representative of the employer's employees, and nothing shall exempt any employer from or excuse full compliance with any applicable provisions of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and chapter 87 of title 42.

(1) The right to reinstatement to the worker's former position under this section terminates upon any of the following:

(i) A medical determination by the treating physician, impartial medical examiner, or comprehensive independent health care review team that the worker cannot, at maximum medical improvement, return to the former position of employment or any other existing position with the same employer that is vacant and suitable;

(ii) The approval by the workers' compensation court of a vocational rehabilitation program for the worker to train the worker for alternative employment with another employer;

(iii) The worker's acceptance of suitable employment with another employer after reaching maximum medical improvement;

(iv) The worker's refusal of a bona fide offer from the employer of light duty employment or suitable alternative employment, prior to reaching maximum medical improvement;

(v) The expiration of ten (10) days from the date that the worker is notified by the insurer or self-insured employer by mail at the address to which the weekly compensation benefits are mailed that the worker's treating physician has released the worker for employment unless the worker requests reinstatement within that time period;

(vi) The expiration of thirty (30) days after the employee reaches maximum medical improvement or concludes or ceases to participate in an approved program of rehabilitation, or one year from the date of injury, whichever is sooner, provided, in the event a petition to establish liability for an injury is filed, but not decided within one year of the date of injury, within twenty-one (21) days from the first finding of liability. Notwithstanding the foregoing, where the employee is participating in an approved program of rehabilitation specifically designed to provide the employee with the ability to perform a job for which he or she would be eligible under subsection (a) of this section, the right of reinstatement shall terminate when the employee concludes or ceases to participate in the program or eighteen (18) months from the date of injury, whichever is sooner;

Page 2
MICKEDA S BARNES

237

Case Number: 201601230
Filed in Workers' Compensation Court
Submitted: 2/26/2016 4:36:47 PM
Envelope: 520769
Reviewer: Paula Roberts

# LAW OFFICE OF STEPHEN J. DENNIS

*A Professional Legal Corporation*

Stephen J. Dennis *

Howard L. Feldman †
Michael F. Campopiano †
of counsel
William J. Gately, Jr. †
of counsel

* Also admitted in DC
† Also admitted in MA

*[handwritten: Reinstatement To work light duty but was denied / Fired]*

January 27, 2016

Ms. Diane Salsbury
Rhode Island Public Transit Authority
705 Elmwood Avenue
Providence, RI 02907

Re:   Mickeda S. Barnes
DOI:  2/12/2015

Dear Ms. Salsbury:

Please be advised this office represents the legal interest of Ms. Mickeda S. Barnes with regards to a Workers' Compensation Claim. At the present time we are demanding that Ms. Barnes be reinstated to her former position in accordance with RIGL 28-33-47, per the release to work with restrictions from Michael Souza, M.D. I have enclosed a copy of this release for your review. Please advise whether or not you will voluntarily resolve this matter by complying with the above twenty-one days of receipt of this correspondence. If this matter is not resolved as requested, I will have no alternative but to file a petition with the Workers' Compensation Court. Please respond to my office in writing. If you feel that this letter has been sent in error, please contact my paralegal Souzi. Thank you for your anticipated cooperation regarding this important matter.

Very truly yours,

LAW OFFICE OF STEPHEN J. DENNIS

COPY

Stephen J. Dennis, Esq.

SJD/dcl
Enclosure
cc: Mickeda S. Barnes
     Paul Ricciardi – Claim Strategies
     Nicholas Mancini, Esq.
Sent via Facsimile Regular &
Certified Mail 70142120000235229107

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 • 1-888-634-1543 • Fax: 401-453-6670
*"Working Lawyers for Working People"*

238

Case Number: 201704145
Filed In Workers' Compensation Court
Submitted: 8/8/2017 12:32:47 PM
Envelope: 1151008
Reviewer: Anthony Del Toro



## State of Rhode Island and Providence Plantations

**Providence, Sc.**                              **Workers' Compensation Court**

Mickeda S. Barnes

---

vs.                              }    W.C.C. No. __2017-4145__

Rhode Island Public Transit Authority

---

### CLAIM FOR TRIAL

The __Petitioner__ being aggrieved by the entry of an order resulting from a

Pretrial Conference heard before Judge __Robert M. Ferreiri__ on __8/8/17__

hereby files a Claim for Trial to the Workers' Compensation Court pursuant to

R.I.G.L. § 28-35-20(d). This Claim for Trial is being taken within five (5) days of the entry

of the Pretrial Order, exclusive of Saturdays, Sundays, and holidays.


__/s/Stephen J. Dennis Esq. # 4336__
Appellant  Attorney Name and Registration No.

__127 Dorrance Street, 3rd Floor, Suite 7A__
Address

__Providence, RI 02903__


__(401) 453-1355__
Telephone Number


Rev. 02/15

239

FEDERAL DRUG TESTING CUSTODY AND CONTROL FORM

Quest
Diagnostics
855-748-784[ ]

RECEIVED
OCT 04 2021
NORTHERN HEIGHTS

SPECIMEN ID NO.

LAB ACCESSION NO.

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone No. and Fax No.

C. Donor SSN or Employee I.D. No.

D. Specify Testing Authority: ☐ HHS ☐ NRC ☑ DOT – Specify DOT Agency: ☑ FMCSA ☐ FAA ☐ FRA ☐ FTA ☐ PHMSA ☐ USCG

E. Reason for Test: ☑ Pre-employment ☐ Random ☐ Reasonable Suspicion/Cause ☐ Post Accident ☐ Return to Duty ☐ Follow-up ☐ Other (specify) _____

F. Drug Tests to be Performed: ☐ THC, COC, PCP, OPI, AMP ☐ THC & COC Only ☐ Other (specify) _____

G. Collection Site Name:
   Address:
   City, State and Zip:

Collection Site Code:
Collector Phone No.:
Collector Fax No.:

**STEP 2: COMPLETED BY COLLECTOR (make remarks when appropriate) Collector reads specimen temperature within 4 minutes.**

Temperature between 90° and 100° F. ☑ Yes ☐ No, Enter Remark Collection: ☑ Split ☐ Single ☐ None Provided, Enter Remark ☐ Observed, (Enter Remark)

REMARKS:

**STEP 3:** Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 5 on Copy 2 (MRO Copy)

**STEP 4: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY TEST FACILITY**

I certify that the specimen given to me by the donor identified in the certification section on Copy 2 of this form was collected, labeled, sealed, and released to the Delivery Service noted in accordance with applicable Federal requirements.

SPECIMEN BOTTLE(S) RELEASED TO:
☐ Quest Diagnostics Courier
☐ FedEx
☐ Other

X _____
Signature of Collector

_____ AM / PM

(Print Collector's Name (First, MI, Last))     Date (Mo./Day/Yr.)     Time of Collection     Name of Delivery Service

**STEP 5: COMPLETED BY DONOR**

I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct.

X _____
Signature of Donor

(PRINT) Donor's Name (First, MI, Last)

Date (Mo./Day/Yr.)

Daytime Phone No. _____     Evening Phone No. _____     Date of Birth: Mo. Day Yr.

After the Medical Review Officer receives the test results for the specimen identified by this form, he/she may contact you to ask about prescriptions and over-the-counter medications you may have taken. Therefore, you may want to make a list of those medications for your own records. THIS LIST IS NOT NECESSARY. If you choose to make a list, do so either on a separate piece of paper or on the back of your copy (Copy 5). – DO NOT PROVIDE THIS INFORMATION ON THE BACK OF ANY OTHER COPY OF THE FORM. TAKE COPY 5 WITH YOU.

**STEP 6: COMPLETED BY MEDICAL REVIEW OFFICER – PRIMARY SPECIMEN**

In accordance with applicable Federal requirements, my verification is:

☐ NEGATIVE   ☐ POSITIVE for:
☐ DILUTE
☐ REFUSAL TO TEST because – check reason(s) below:                      ☐ TEST CANCELLED
   ☐ ADULTERATED (adulterant/reason):
   ☐ SUBSTITUTED
   ☐ OTHER

REMARKS:

X _____
Signature of Medical Review Officer

(PRINT) Medical Review Officer's Name (First, MI, Last)

Date (Mo./Day/Yr.)

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER – SPLIT SPECIMEN**

In accordance with applicable Federal requirements, my verification for split specimen (if tested) is:

☐ RECONFIRMED for: _____
☐ FAILED TO RECONFIRM for: _____                                        ☐ TEST CANCELLED
REMARKS: _____

X _____
Signature of Medical Review Officer

(PRINT) Medical Review Officer's Name (First, MI, Last)

Date (Mo./Day/Yr.)

Form MCSA-5875                                                                OMB No. 2126-0006   Expiration Date: 8/31/2018

| Last Name: | Barnes | First Name: | Mickeda | DOB: | 01/31/1975 | Exam Date: | 8/11/2017 |

## DRIVER HEALTH HISTORY (continued)

**Do you have or have you ever had:**

| | Yes | No | Not Sure | | Yes | No | Not Sure |
|---|---|---|---|---|---|---|---|
| 1. Head/brain injuries or illnesses (eg., concussion) | ✓ | O | O | 16. Dizziness, headaches, numbness, tingling, or memory loss | O | ✓ | O |
| 2. Seizures, epilepsy | O | ✓ | O | 17. Unexplained weight loss | O | ✓ | O |
| 3. Eye problems (except glasses or contacts) | O | ✓ | O | 18. Stroke, mini-stroke (TIA), paralysis, or weakness | O | ✓ | O |
| 4. Ear and/or hearing problems | O | ✓ | O | 19. Missing or limited use of arm, hand, finger, leg, foot, toe | ✓ | O | O |
| 5. Heart disease, heart attack, bypass, or other heart problems | O | ✓ | O | 20. Neck or back problems | ✓ | O | O |
| 6. Pacemaker, stents, implantable devices, or other heart procedures | O | ✓ | O | 21. Bone, muscle, joint, or nerve problems | ✓ | O | O |
| | | | | 22. Blood clots or bleeding problems | O | ✓ | O |
| 7. High blood pressure | ✓ | O | O | 23. Cancer | O | ✓ | O |
| 8. High cholesterol | O | ✓ | O | 24. Chronic (long-term) infection or other chronic diseases | O | ✓ | O |
| 9. Chronic (long-term) cough, shortness of breath, or other breathing problems | O | ✓ | O | 25. Sleep disorders, pauses in breathing while asleep, daytime sleepiness, loud snoring | O | ✓ | O |
| 10. Lung disease (eg. asthma) | O | ✓ | O | 26. Have you ever had a sleep test (eg., sleep apnea)? | O | ✓ | O |
| 11. Kidney problems, kidney stones, or pain/problems with urination | O | ✓ | O | 27. Have you ever spent a night in the hospital? | ✓ | O | O |
| 12. Stomach, liver, or digestive problems | O | ✓ | O | 28. Have you ever had a broken bone? | ✓ | O | O |
| 13. Diabetes or blood sugar problems | O | ✓ | O | 29. Have you ever used or do you now use tobacco? | O | ✓ | O |
| Insulin used | O | ✓ | O | 30. Do you currently drink alcohol? | O | ✓ | O |
| 14. Anxiety, depression, nervousness, other mental health problems | ✓ | O | O | 31. Have you used an illegal substance within the past two years? | O | ✓ | O |
| 15. Fainting or passing out | O | ✓ | O | 32. Have you ever failed a drug test or been dependent on an illegal substance? | O | ✓ | O |

Other health condition(s) not described above:                                    ✓ Yes O No O Not Sure

I have RSD in the Right Knee in which I use a Compound cream along with Gabapentin to Centroll Nerve Pain /

Did you answer "yes" to any of questions 1-32? If so, please comment further on those health conditions below.   ✓ Yes O No O Not Sure

I was bead up on the City Bus in 2008 and I suffered a brain injury. I have high blood pressure but its Under Control I have anxiety and depression due to the injuries I had suffered at Biota and going threw workers Comp. I had left hand carpal tunnel lowback injury and shoulder injury (which additional sheets if necessary)

### CMV DRIVER'S SIGNATURE

I certify that the above information is accurate and complete. I understand that inaccurate, false or missing information may invalidate the examination and my Medical Examiner's Certificate. I understand that submission of fraudulent or intentionally false information is a violation of 49 CFR 390.35, and that submission of fraudulent or intentionally false information may subject me to civil or criminal penalties under 49 CFR 390.37 and 49 CFR 386 Appendices A and B.

Driver's Signature: Mickeda S Barnes      Date: 8 | 11 | 17

### SECTION 2. Examination Report (to be filled out by the medical examiner)

### DRIVER HEALTH HISTORY REVIEW

Review and discuss pertinent driver answers and any available medical records. Comment on the driver's responses to the "health history" questions that may affect the driver's safe operation of a commercial motor vehicle (CMV).

#1. ① #2 TBI no after injury 2008 - Internist BTA
# 7 ① HTN on Metroprolol - no adverse effect
# 14 ① Depression - currently on Citalopram - still symptomatic considers
# 19 ① ④ ① 5% disability Rating post surgery ① injury due to fall
① ① RSD chronic ① knee pain to ① Gabapentin cream, Vicodin
① no adderess - to ①
① on ② Steroids (attach additional sheets if necessary)

Page 2

Form MCSA-5875                                                          OMB No. 2126-0006  Expiration Date: 8/31/2018

Public Burden Statement...

U.S. Department of Transportation
Federal Motor Carrier
Safety Administration

**Medical Examination Report Form**
(for Commercial Driver Medical Certification)

**MEDICAL RECORD #**

(or sticker)

**SECTION 1. Driver Information** (to be filled out by the driver)

**PERSONAL INFORMATION**

Last Name: Barnes    First Name: Mickeda    Middle Initial: S    Date of Birth: 01/31/1975    Age: 42

Street Address: 34 Dunbar Ave    City: RUMFORD    State/Province: RI    Zip Code: 02916

Driver's License Number: 9111788    Issuing State/Province: RI    Phone: (401) 419-2250    Gender: M ☑ F

E-mail (optional): _____

CLP/CDL Applicant/Holder*: ☑ Yes  ○ No

Driver ID Verified By**: DL

Has your USDOT/FMCSA medical certificate ever been denied or issued for less than 2 years?  ○ Yes ☑ No ○ Not Sure

**DRIVER HEALTH HISTORY**

Have you ever had surgery? If "yes," please list and explain below.   ☑ Yes ○ No ○ Not Sure

Two left hand Surgery's from a slip & fall at work
a rt Knee Surgery from a Pare Box that fell at work
a gastric Bypass Surgery

Are you currently taking medications (prescription, over-the-counter, herbal remedies, diet supplements)? If "yes," please describe below.   ☑ Yes ○ No ○ Not Sure

Vitamin D    Vicodin 325 once Night
Vitamin B    Addrall 30mg morning 10mg Noon
Compound Cream for RSD-CRSP
Aleve 200mg   Gabapentin 100mg - Night
Iboprofen 600mg  Citronane 10mg Daily
Metroprol 100mg Daily  Fluricet - Migranes Headache as Needed
Multi Vitamin Daily

**This document contains sensitive information...**

Page 1
242

Form MCSA-5875                                                                                          OMB No. 2126-0006    Expiration Date: 8/31/2018

| Last Name: Barnes | First Name: Mickeda | DOB: 01/31/1976 | Exam Date: 8/11/2017 |

## TESTING

| Pulse rate: 58 | Pulse rhythm regular: ⊗ Yes ○ No | Height 5 feet 5 inches  Weight 11? pounds |

| Blood Pressure | Systolic | Diastolic | Urinalysis | Sp. Gr. | Protein | Blood | Sugar |
|---|---|---|---|---|---|---|---|
| Sitting | 128 | 90 | Urinalysis is required. Numerical readings must be recorded. | 1.030 | Ø | Ø | Ø |
| Second reading (optional) | | | | | | | |

Other testing if indicated

Neck- 13½"          BMI- 36.6

*Protein, blood, or sugar in the urine may be an indication for further testing to rule out any underlying medical problem.*

**Vision**
Standard is at least 20/40 acuity (Snellen) in each eye with or without correction. At least 70° field of vision in horizontal meridian measured in each eye. The use of corrective lenses should be noted on the Medical Examiner's Certificate.

| Acuity | Uncorrected | Corrected | Horizontal Field of Vision |
|---|---|---|---|
| Right Eye: | 20/20 | 20/ | Right Eye: 90 degrees |
| Left Eye: | 20/90 | 20/ | Left Eye: 90 degrees |
| Both Eyes: | 20/20 | 20/ | |

|  | Yes | No |
|---|---|---|
| Applicant can recognize and distinguish among traffic control signals and devices showing red, green, and amber colors | ⊗ | ○ |
| Monocular vision | ○ | ⊗ |
| Referred to ophthalmologist or optometrist? | ○ | ○ |
| Received documentation from ophthalmologist or optometrist? | ○ | ○ |

**Hearing**
Standard: Must first perceive whispered voice at not less than 5 feet OR average hearing loss of less than or equal to 40 dB, in better ear (with or without hearing aid).

Check if hearing aid used for test: ☐ Right Ear ☐ Left Ear ⊠ Neither

Whisper Test Results
Record distance (in feet) from driver at which a forced whispered voice can first be heard

| | Right Ear | Left Ear |
|---|---|---|
| | 5 | 5 |

OR

Audiometric Test Results

| | Right Ear | | | Left Ear | | |
|---|---|---|---|---|---|---|
| | 500 Hz | 1000 Hz | 2000 Hz | 500 Hz | 1000 Hz | 2000 Hz |
| | | | | | | |

Average (right): _____     Average (left): _____

## PHYSICAL EXAMINATION

The presence of a certain condition may not necessarily disqualify a driver, particularly if the condition is controlled adequately, is not likely to worsen, or is readily amenable to treatment. Even if a condition does not disqualify a driver, the Medical Examiner may consider deferring the driver temporarily. Also, the driver should be advised to take the necessary steps to correct the condition as soon as possible, particularly if neglecting the condition could result in a more serious illness that might affect driving.

Check the body systems for abnormalities.

| Body System | Normal | Abnormal | Body System | Normal | Abnormal |
|---|---|---|---|---|---|
| 1. General | ○ | ⊘ | 8. Abdomen | ⊘ | ○ |
| 2. Skin | ○ | ○ | 9. Genito-urinary system including hernias | ⊘ | ○ |
| 3. Eyes | ⊘ | ○ | 10. Back/Spine | ⊘ | ○ |
| 4. Ears | ⊘ | ○ | 11. Extremities/joints | ○ | ⊘ |
| 5. Mouth/throat | ⊘ | ○ | 12. Neurological system including reflexes | ⊘ | ○ |
| 6. Cardiovascular | ⊘ | ○ | 13. Gait | ⊘ | ○ |
| 7. Lungs/chest | ⊘ | ○ | 14. Vascular system | ⊘ | ○ |

Discuss any abnormal answers in detail in the space below and indicate whether it would affect the driver's ability to operate a CMV. Enter applicable item number before each comment.

Obese
L Hand - grip weak 3#/5
R muscle - dec. ROM

*(Attach additional sheets if necessary)*

Form MCSA-5875                                                                OMB No. 2126-0006   Expiration Date: 8/31/2018

| Last Name: Barnes | First Name: Mickeda | DOB: 01/31/1975 | Exam Date: 8/11/2017 |

*Please complete only one of the following (Federal or State) Medical Examiner Determination sections:*

## MEDICAL EXAMINER DETERMINATION (Federal)

Use this section for examinations performed in accordance with the Federal Motor Carrier Safety Regulations 49 CFR 391.41-391.49:

- ☑ Does not meet standards *(specify reason)*: _PCD N Chunic narcotic analgesic. use of bidinex_ _@ 8 mg migraine HA, @ shulder labrm torn_
- ○ Meets standards in 49 CFR 391.41; qualifies for 2-year certificate
- ○ Meets standards, but periodic monitoring required *(specify reason)*: _____
- Driver qualified for: ○ 3 months  ○ 6 months  ○ 1 year  ○ other *(specify)*: _____
- ☐ Wearing corrective lenses  ☐ Wearing hearing aid  ☐ Accompanied by a waiver/exemption *(specify type)*:
- ☐ Accompanied by a Skill Performance Evaluation (SPE) Certificate  ☐ Qualified by operation of 49 CFR 391.64 *(Federal)*
- ☐ Driving within an exempt intracity zone (see 49 CFR 391.62) *(Federal)*
- ☐ Determination pending *(specify reason)*: _____
  - ☐ Return to medical exam office for follow-up on *(must be 45 days or less)*: _____
  - ☐ Medical Examination Report amended *(specify reason)*: _____
    - *(If amended)* Medical Examiner's Signature: _____  Date: _____
- ☐ Incomplete examination *(specify reason)*: _____

| If the driver meets the standards outlined in 49 CFR 391.41, then complete a Medical Examiner's Certificate as stated in 49 CFR 391.43(h), as appropriate. |

I have performed this evaluation for certification. I have personally reviewed all available records and recorded information pertaining to this evaluation, and attest that to the best of my knowledge, I believe it to be true and correct.

Medical Examiner's Signature: _____

Medical Examiner's Name *(please print or type)*: _____

Medical Examiner's Address: 400 Bald Hill Rd Ste 511        City: Warwick        State: RI        Zip Code: 02888

Medical Examiner's Telephone Number: (401)738-8100        Date Certificate Signed: _____

Medical Examiner's State License, Certificate, or Registration Number: 14181        Issuing State: RI

☑ MD  ☐ DO  ☐ Physician Assistant  ☐ Chiropractor  ☐ Advanced Practice Nurse
☐ Other Practitioner *(specify)*: _____

National Registry Number: 9789105740        | Medical Examiner's Certificate Expiration Date: _____ |

**Claim Number:**

## Concentra Medical Centers (RI)
400 Bald Hill Rd Ste 511  Warwick, RI 02886
Phone: (401) 738-8100    Fax: (401) 732-2788

**Service Date:** 08/11/20

## Non-Injury Work Status Report

**Patient:** Barnes, Mickeda S.
**SSN:** XXX-XX-8332
**Address:** 34 Dunbar Ave

RUMFORD, RI 02916

**Home:** (401) 419-2250

**Work:**          **Ext.:**

**Employer Location:** First Transit-55336-Brown

**Address:**          1 Peter Pan Way
                      Providence, RI 029041833

**Auth. by:**

**Contact:** Travis  Mills

**Role:**    Local Contact

**Phone:** (401) 521-0730    **Ext.:**

**Fax:**

### This Visit:

**Time In:** 05:20 pm      **Time Out:** 07:06 pm      **Visit Type:** New

*DOT Phys PrePl w/HireRight-Reg UDS Coll & BA*
DOT Physical PrePlacement
Regulated UDS Collect PrePlacement

### Result Status:

Able to perform essential functions
No medical restrictions

**Remarks:** DO NOT MEETS STANDARDS

**Status - Non-Injury**

© 1998 -2017 Concentra Operating Corporation All Rights Reserved

245

*Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.*

### A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases the disclosure will be free. You are entitled to a free file disclosure if:
  - a person has taken adverse action against you because of information in your credit report;
  - you are the victim of identity theft and place a fraud alert in your file;
  - your file contains inaccurate information as a result of fraud;
  - you are on public assistance;
  - you are unemployed but expect to apply for employment within 60 days.

  In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

- **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

- **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

- **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

- **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

- **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need – usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

- **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

- **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688.

- **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

- **Identify theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

HRF -062 FCRA Summary of Rights
Rev: December 2012

246



1 Peter Pan Way
Providence, RI. 02904
401-309-5094

To begin the required training for the position, please report at the below stated, date, time and location:

DATE:             Monday August 14, 2017

TIME:             9:00 AM

LOCATION:         Main Office: 1 Peter Pan Way Providence, RI. 02904

FOR QUESTIONS, CALL:   (401) 309-5094

We look forward to working with you.

Sincerely,

Travis Mills
General Manager

This offer is contingent upon the satisfactory completion of a background investigation as noted above. This letter is not intended as a contract of employment. Your employment with FirstGroup America, Inc. is "at will" and is subject to the terms and conditions of corporate policy as modified or terminated from time to time.

I acknowledge the Terms and Conditions listed above. I further acknowledge that I have received a copy of my rights under the Fair Credit Reporting Act (FCRA). My start date is expected to be 8/14/17. This offer will remain in effect through the anticipated training start date.

Signature of Applicant                              Date: Aug 11, 2017

Form MCSA-5876

**Medical Examiner's Certificate**
(For Commercial Driver Medical Certification)

I certify that I have examined Last Name **BARNES** First Name **Mickeda** in accordance with (place check or print):

☐ The Federal Motor Carrier Safety Regulations (49 CFR 391.41-391.49) and, with knowledge of the driving duties, I find this person is qualified, and, if applicable, only when (check all that apply) ☐

Steven Occhiuti, PA

Medical Examiner's Telephone Number
**(401) 438-3170**

Date Certificate Issued
**11/6/2020**

☐ MD  ☑ Physician Assistant  ☐ Advanced Practice Nurse
☐ DO  ☐ Chiropractor  ☐ Other Practitioner (specify)

Medical Examiner's State License, Certificate, or Registration Number
**PA 00152**

Issuing State
**Rhode Island**

National Registry Number
**3555198210**

Medical Examiner's Certificate Expiration Date
**11/6/2022**

Driver's Signature *Mickeda Barnes*   Driver's License Number **2111788**   Issuing State/Province **RI**

Driver's Address **34 Dunbar Ave**   City **Rumford**   State/Province **RI**   Zip Code   CLP/CDL Applicant/Holder ☐ Yes ☐ No



Copy of my
Dot Card when
I got hired At
Fed Ex IN
Nov 2020

248

Right to Reinstatement

1st 201601236 Feb 26, 2016
Judge Salame heard 03/02/2016

2nd 2017-05115   9/7/2017
          Chief Ferrieri 9/27/2017
     Before Mediation / that was
                        agreed on
                        global settlement
                        12-1-2017

3rd 2017-6073   10/24/2017

Judge Hardman Kicked me off of
Comp on 11-10-26
I received Hardman on Case 2017-017
                              (5-24-2017)

249

Case Number: 201601236
Filed in Workers' Compensation Court
Submitted: 2/26/2016 4:36:47 PM
Envelope: 520729
Reviewer: Paula Roberti

W.C.C. # of pending petitions:

_____

_____

_____

### State of Rhode Island and Providence Plantations

**Providence, SC.**                                    **Workers' Compensation Court**

**MICKEDA S. BARNES**
Name of Employee-Petitioner                                    201601236

**XXX-XX-8332**
Social Security Number (last 4 digits only)

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**
Name of Employer-Respondent

**705 ELMWOOD AVENUE**
**PROVIDENCE, RI 02907**          **MR. GIOVANNI P. STANZIALE**
Address of Employer-Respondent              Name of Agent for Service of Process

**RHODE ISLAND INDIVIDUAL SELF INSUREDS**     **705 ELMWOOD AVENUE**
Insurance Carrier                              **PROVIDENCE, RI 02907**
                                               Address of Agent for Service of Process

### Employee's Petition to Review and/or Amend Agreement or Decree Concerning Compensation

The undersigned EMPLOYEE hereby petitions for a determination of my right to benefits under a compensation agreement, or under a decree of the Workers' Compensation Court. A copy of said agreement or decree establishing the liability of the employer to pay workers' compensation benefits is filed herewith. The undersigned affirms that the following facts are true:

☐   1.   My incapacity for work has increased or returned by reason of the effects of the injury set forth in said agreement or decree attached hereto.
           Total incapacity from _____ to _____.
           Partial incapacity from _____ to _____.

☐   2.   My employer refuses to provide or pay for necessary medical services as provided by R.I.G.L. §§ 28-33-5 and 28-33-8, specifically

           _____

☐   3.   My employer and/or its insurance carrier refuse to give written permission for major surgery, specifically:

           _____
           (Attach a copy of doctor's request for surgery)

☐   4.   Weekly payments of compensation have been based on an erroneous average weekly wage. My average weekly wage at the time of my injury was $ _____.

☐   5.   The compensation agreement or decree was procured by fraud, coercion or mutual mistake of fact.

_SM_

Page 1 of 2

Case Number: 201601236
Filed in Workers' Compensation Court
Submitted: 2/26/2016 4:36:47 PM
Envelope: 520769
Reviewer: Paula Roberti

W.C.C. No. 201601236 _____

☐  6.  The compensation agreement or decree does not accurately and completely set forth and describe the nature and location of all injuries sustained by me.  Said agreement or decree should be amended so that the nature and location of my injuries shall read as follows:

☐  7.  Per R.I.G.L. § 28-33-18.3, I have received a notice of intention to terminate partial incapacity benefits pursuant
to R.I.G.L. § 28-33-18(d), and I hereby petition the court for continuation of benefits.

☐  8.  Per R.I.G.L. § 28-33-41 and the W.C.C. Rules of Practice, I hereby petition the court for a rehabilitation
program approval.

☒  9.  Per R.I.G.L. § 28-33-47 and the W.C.C. Rules of Practice, I hereby petition the court for my right of reinstatement.

☐  10.  Per R.I.G.L. § 28-33-18.2, I hereby petition the court for a finding of suitable alternative employment.

☐  11.  Per R.I.G.L. § 28-33-20, I hereby petition the court for an order compelling the employer to provide a wage transcript.

☒  12.  Other: **I ALSO REQUEST ATTORNEY FEES, COSTS, AND INTEREST**

**STEPHEN J. DENNIS, ESQ.**
Attorney Name

**/S/ STEPHEN J. DENNIS**
Attorney Signature

Signature of Employee

127 Dorrance Street, Ste. 7A 3rd Fl.
Attorney Address

February 26, 2016
Date

34 Dunbar Avenue
Employee's Address

Providence, RI 02903
City, State, Zip Code

#4336    (DCL)
Attorney Bar Registration No.

Rumford, RI 02916
City, State, Zip Code

Page 2 of 2

251

# LAW OFFICE OF  STEPHEN J. DENNIS

Stephen J. Dennis *

Howard L. Feldman †
Catherine E. Bednarz †
Carolyn A. Mannis

Jeanne M. Scott
of counsel
William J. Gately, Jr. †
of counsel

\*   Also admitted in DC
†   Also admitted in MA

October 25, 2017

*Reinstatement with Intrest 10/28/2017*

Ms. Mickeda S. Barnes
34 Dunbar Avenue
Rumford, RI 02916

**RE: Mickeda S. Barnes vs. Rhode Island Public Transit Authority**
**W.C.C# 2017-6073**

Dear Ms. Barnes:

Enclosed please find a copy of a petition, which I received your approval to file. This petition was explained to you in detail by my office. If you have any questions or comments please contact me.

Also, enclosed is a notice to appear in court from the Workers' Compensation Court. A member of my staff or I shall appear on your behalf, but you also must appear or the matter may be dismissed.

Thank you for your anticipated cooperation in this matter.

Very truly yours,

LAW OFFICE OF STEPHEN J. DENNIS

Stephen J. Dennis, Esq.

SJD/alh
Enclosure

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 • 1-888-634-1543 • Fax: 401-453-6670



252

Case Number: 201706073
Filed in Workers' Compensation Court
Submitted: 10/24/2017 10:59:22 AM
Envelope: 1257282
Reviewer: Jennifer Furtado

W.C.C. No. 201706073 _____

6. The compensation agreement or decree does not accurately and completely set forth and describe the nature and location of all injuries sustained by me. Said agreement or decree should be amended so that the nature and location of my injuries shall read as follows:

7. Per R.I.G.L. § 28-33-18.3, I have received a notice of intention to terminate partial incapacity benefits pursuant
to R.I.G.L. § 28-33-18(d), and I hereby petition the court for continuation of benefits.

8. Per R.I.G.L. § 28-33-41 and the W.C.C. Rules of Practice, I hereby petition the court for a rehabilitation
program approval.

☒ 9. Per R.I.G.L. § 28-33-47 and the W.C.C. Rules of Practice, I hereby petition the court for my right of reinstatement.

10. Per R.I.G.L. § 28-33-18.2, I hereby petition the court for a finding of suitable alternative employment.

11. Per R.I.G.L. § 28-33-20, I hereby petition the court for an order compelling the employer to provide a wage transcript.

☒ 12. Other: **I ALSO REQUEST ATTORNEY FEES, COSTS, AND INTEREST** .

| | | |
|---|---|---|
| **STEPHEN J. DENNIS, ESQ.** | **/S/ STEPHEN J. DENNIS** | *Michele E. Barnes* |
| Attorney Name | Attorney Signature | Signature of Employee |
| 127 Dorrance Street, Ste. 7A 3rd Fl. | 10/23/17 alh | 34 Dunbar Avenue |
| Attorney Address | Date | Employee's Address |
| Providence, RI 02903 | # 4336 | Rumford, RI 02916 |
| City, State, Zip Code | Attorney Bar Registration No. | City, State, Zip Code |

Rev 09/2017

Page 2 of 2

253

**STATE OF RHODE ISLAND AND PROVIDENCE PLANTATION**

**WORKERS' COMPENSATION COURT**

08/07/2019

COURTROOM:    Chief Judge Ferrieri Continued Calendar

---

| | |
|---|---|
| **Case Number:** 201904619 | **Azulay, Tiffani V. TVI, INC** |
| **10:00 AM** | **Petitioner's Attorney:** DENNIS, STEPHEN J. |
| **Case Type: Lump Sum** | **Respondent's Attorney:** EDWARDS, MICHAEL |
| **Hearing Type:** Commutation/Entry of Final Decree | **Hearing Comments:** |
| **Related Cases:** | |

| | |
|---|---|
| **Case Number:** 201706073 | **Barnes, Mickeda S. V. RHODE ISLAND PUBLIC TRANSIT AUTHORITY** |
| **10:00 AM** | **Petitioner's Attorney:** DENNIS, STEPHEN J. |
| **Case Type: Employee's Petition to Review** | **Respondent's Attorney:** MANCINI, NICHOLAS |
| **Hearing Type:** Trial | **Hearing Comments:** For Entry Of Depo's And Any Objections |
| **Related Cases:** 201705115; 201706646; 201706824 | Mickeda S. Barnes<br>v.<br>RHODE ISLAND PUBLIC TRANSIT AUTHORITY; Mickeda S. Barnes<br>v.<br>RHODE ISLAND PUBLIC TRANSIT AUTHORITY; Mickeda S. Barnes<br>v.<br>RHODE ISLAND PUBLIC TRANSIT AUTHORITY |

| | |
|---|---|
| **Case Number:** 201705115 | **Barnes, Mickeda S. V. RHODE ISLAND PUBLIC TRANSIT AUTHORITY** |
| **10:00 AM** | **Petitioner's Attorney:** DENNIS, STEPHEN J. |
| **Case Type: Employee's Petition to Review** | **Respondent's Attorney:** MANCINI, NICHOLAS |
| **Hearing Type:** Trial | **Hearing Comments:** For Entry Of Depo's And Any Objections |

254

Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.                                   WORKERS' COMPENSATION COURT

MICKEDA S. BARNES                    )

                                     )

            VS                       )        W.C.C.  2017-6073

                                     )

RHODE ISLAND PUBLIC TRANSIT AUTHORITY

### D E C R E E

This matter came on for trial, and after trial thereon and in consideration thereof, the following findings of fact are made:

1. The petitioner has failed to prove that she is entitled to reinstatement pursuant to R.I.G.L. Section 28-33-47.

    Wherefore, it is hereby ordered, adjudged and decreed as follows:

1. The petition for reinstatement of employment is denied.

Entered as the decree of this Court this 31st day of October, 2019.

ENTER:                                   PER ORDER:

Ferrieri, C. J.                          Nicholas DiFilippo, Administrator

255

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 511 of 689 PageID
#: 1866
Case 1:22-cv-00213-JJM-PAS    Document 1-1   Filed 05/31/22   Page 254 of 346   PageID 255

Pending Petitions:

**201706824**: amend MOA to include left wrist bruise/ contusion; left wrist, low back strain and to ADD right shoulder. ~~pa~~ DOI 2/12/15

**201706073**: right for reinstatement

**201706646**: 5% loss of use to the upper extremity totaling $2,808.00

**201705115**: total incapacity ad partial incapacity from 2/9/17 to continuing

based on DOI 2/12/15 left wrist, knee contusion

and right knee 10/3/13

This is my
Pending Petitions
In W/C/Court
for Permanant
Partial Disability
on left wrist
Knee Contusion and
Right Knee 10/3/13
to Rt Shoulder

256

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 512 of 689 PageID
Case 1:22-cv-00213-JJM-PAS    Document 1-1   Filed 05/31/22   Page 255 of 346   PageID 256
#: 867

45

1   my family.   I feel as though I shouldn't had lost my job

2   because I didn't want to do something illegal like take

3   my workers comp injury and put it on TDI.   I feel like I

4   was being punished for not doing what management wanted

5   me to do; and lastly, I can't control if RIPTA doesn't

6   have the money to pay out claims if they're

7   underinsured.   That's not in my control.   I just think

8   they need to find a better way to figure out their

9   finances and stop picking on the small people like me as

10  workers to figure out how they're going to make ends

11  meet.

12      Q.   Do you have any scarring?

13              MR. MANCINI:   Move to strike.

14              THE COURT:   The portion of the answer after

15  she needs a job to support her family shall be stricken.

16  Next question.

17      Q.   So do we have any scarring from these surgeries?

18      A.   Yes.

19      Q.   You have one on the left hand; is that correct?

20      A.   I have two on the left hand.

21      Q.   Can you show the judge the scar?

22              THE COURT:   Has that been paid?

23              MR. DENNIS:   I'm sorry?

24              THE COURT:   Did I review the scar at a

25  pretrial and pay it?

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 513 of 689 PageID #: 868
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 256 of 346    PageID 257

44

1    go back to RIPTA?

2    A.    I believe I can go back but I've lost a lot of

3    muscle.   See, you have to have that muscle there to

4    steer the bus, to pull the bus.   I've been out of work

5    almost four years, so I lost a lot of muscle mass.   I

6    don't have the muscle mass I used to have almost four

7    years ago between having two surgeries on the left hand

8    and then having almost a complete shoulder surgery on

9    the right shoulder from being left like this for almost

10    four years.   So I would have to at least try to build

11    this back up into some kind of muscle.

12    Q.    So what effect did the knee play, the right knee,

13    play in this injury?

14            MR. MANCINI:  Objection, Judge.   There's no

15    claim before the Court or a petition before the Court

16    concerning a right knee.

17            THE COURT:   Hold on.   Petition to amend

18    looks to add left wrist, bruise contusion, left wrist,

19    low back strain and right shoulder.   So the objection is

20    sustained.

21            MR. DENNIS:   Okay.

22    Q.    Do you want to be reinstated with RIPTA?

23    A.    Yes, I do.

24    Q.    Why?

25    A.    Because I need to have a job in order to support

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 514 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document #169 Filed 05/31/22   Page 257 of 346   PageID 258

1

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.                         WORKERS' COMPENSATION
                                               COURT

MICKEDA S. BARNES

                              )

                              )          W.C.C.  2017-6824
                                                 2017-6646
        VS.                   )                  2017-6073
                                                 2017-5115

                              )

RHODE ISLAND PUBLIC TRANSIT AUTHORITY

HEARD BEFORE CHIEF JUDGE ROBERT M. FERRIERI ON:

        December 1, 2017
        March 19, 2018
        September 5, 2018      → Employee testimony for trial
        October 11, 2018
        March 22, 2019
        April 16, 2019
        August 7, 2019
        October 23, 2019

        _____

APPEARANCES:

STEPHEN J. DENNIS, ESQ........COUNSEL FOR THE PETITIONER
NICHOLAS MANCINI, ESQ.........COUNSEL FOR THE RESPONDENT

ALSO PRESENT:

SONJA DEYOE, Esq.  (Present on 12/1/17 date)
JILLIAN FOLGER-HARTWELL, Esq.(Present on 12/1/17 date)
JUDGE MICHAEL FEENEY (Present on 12/1/17 date)

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 515 of 689 PageID
Case 1:22-cv-00213-JJM-PAS    Document 1-870 Filed 05/31/22    Page 258 of 346    PageID 259

14

1  ready to hear it, and I will hear it forthwith because I

2  understand Ms. Barnes's situation, and this is the only

3  thing I can do to try and accommodate her.  So we're

4  going to continue it to 4/16 at 10, but if CMS comes

5  back, both the attorneys are to see me, and I will put

6  it on my first available afternoon.

7           MR. DENNIS:  Thank you, Your Honor.

8           MR. MANCINI:  Thank you, Judge.

9           THE COURT:  Thank you.

10              (MATTER ADJOURNED)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

260

(SEPTEMBER 5, 2018)

THE COURT:    There are several matters before the Court.    First is 2017-4145, an employee's petition to review, <u>Mickeda S. Barnes vs. Rhode Island Public Transit Authority</u> seeking payment of Dr. Sousa's bill. A pretrial order was entered on August 8, 2017, a claim for trial made on the same date, and that matter is before the Court for initial hearing.

The second matter before the Court is 2017-6824, an employee's petition to review, same title, and that is a petition to amend the nature and location of injury to read left wrist bruise contusion, left wrist, low-back strain and right shoulder.    A pretrial conference was conducted, a pretrial order was entered on July 9, 2018, a claim for trial duly made on the same date.    The matter is before the Court for initial hearing.

The next petition is 2017-6646, the same title.    It's an employee's petition for compensation benefits seeking loss of use to the upper extremity.    A pretrial conference was conducted, a pretrial order was entered on July 9, 2018, and a claim for trial was made by the employee.    Mr. Dennis, I granted the petition. Can you tell me why the claim for trial was made?

MR. DENNIS:    Which one was that, Judge?

THE COURT:  2017-6646.

MR. DENNIS:  One second, Judge.  I'm sorry, what was the order granted?

THE COURT:  I have one percent loss of use to the left upper extremity.

MR. DENNIS:  I thought that we had a rating of five percent.

THE COURT:  Okay.  I am looking at that. All right.

MR. DENNIS:  Ms. Barnes wanted to when I deposed Dr. Schmidt to proceed on the five percent.

THE COURT:  Not a problem.  Next is 2017-5115, an employee's petition to review, again with the same title seeking a recurrence of benefits from February 9, 2017 and continuing.  A pretrial conference was conducted and a pretrial order was entered on July 9, 2018.  Again, that is also before the Court for initial hearing.  Lastly, we have an employee's petition to review in 2017-6073, an employee's petition for reinstatement.  A pretrial conference was conducted and a pretrial order was entered on July 9.  A claim for trial was duly made by the employee, and again that matter is before the Court for initial hearing.  So we have all employee petitions.  Mr. Dennis.

MR. DENNIS:  Yes, Your Honor.  I thought we

1    were going to be able to withdraw some of the petitions

2    My client and I spoke about it, but she's changed her

3    mind today, but I am still going to work on eliminating

4    a few of the petitions that I don't think are really

5    relative.   However, I think what is germane and what I

6    really need to prosecute would be Dr. Schmidt, who we d

7    have a deposition scheduled of 10/17/18 at 1 PM.

8    Depending on my brother, I'm not sure if that was a goo

9    day for him, or we were trying to get these dates for

10   you, Judge.  Dr. Warner, we sent the check out to his

11   office on August the 30th, this is Mass. General.  For

12   some reason they still don't have the check.  We sent i

13   certified mail.  It's a big facility.  Anyway, we expec

14   to get a date fairly quickly from them, and then I just

15   need a date for Mrs. Barnes, and I'm sure Mrs. Barnes

16   will attend all the depositions with me.  So that was

17   pretty much it.  I mean --

18              THE COURT:  Do we have the documents under

19   review that I can mark?

20              MR. DENNIS:  I have to run and get her file

21   Judge.  I'm sorry.

22              THE COURT:  Hold on.  All right.  So we wil

23   mark them at the next hearing.

24              MR. DENNIS:  Thank you, Judge.

25              THE COURT:  Okay.  So you're going to take

263

the deposition of Dr. Schmidt and Dr. Warner, and the

employee is going to testify.

MR. DENNIS:  That's right, Judge.

THE COURT:  Mr. Mancini.

MR. MANCINI:  Judge, in addition to

cross-examination of Dr. Schmidt, Dr. Warner and the

employee, I will move to schedule the depositions of

Dr. Moss, Dr. Austin, and Dr. Mariorenzi, although I

believe he may be unavailable, but we'll try.

THE COURT:  Are any lay witnesses

testifying?

MR. MANCINI:  It depends on what's presented

by my brother frankly, Your Honor.  So I reserve the

right to call lay witnesses, officers and employees at

RIPTA as may be necessary.

THE COURT:  Not a problem.  So let me give

you a date for Mrs. Barnes' testimony.  The Court is

going to mark the court-appointed impartial medical

report of Dr. David Moss as Court Exhibit 1.

(COURT'S EXHIBIT 1 MARKED)

I would ask the attorneys, is there a motion

to consolidate these cases for trial?

MR. DENNIS:  I make so motion, Your Honor.

THE COURT:  Any objection?

MR. MANCINI:  No, Your Honor.

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 520 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 263 of 346   PageID 264
#: 875
19

```
 1              THE COURT:   The matters are consolidated for
 2    trial.   October 10?
 3                 (OFF-THE-RECORD DISCUSSION)
 4              THE COURT:   The matter is continued for the
 5    testimony of Ms. Barnes October 11 at 10.
 6              MR. DENNIS:   Judge, I previously introduced
 7    a notice of contest on a court impartial.   You will take
 8    judicial notice of that?
 9              THE COURT:   Yes, it's e-filed.
10              MR. DENNIS:   Thank you, Your Honor.
11              THE COURT:   You're welcome.
12                 (MATTER ADJOURNED)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

(APRIL 16, 2019)

THE COURT:  There are several matters before the Court, all in the nature of Employee's Petitions to Review and one original petition.  The first <u>Mickeda Barnes v. Rhode Island Public Transit Authority</u>, 2017-6073, an Employee's Petition to Review.  The second, same title, 2017-5115, Employee's Petition to Review. Third, same title, 2017-6824, an Employee's Petition to Review, and the fourth, 2017-6646, <u>Mickeda Barnes v. Rhode Island Public Transit Authority</u>, an original petition.  All matters are consolidated for trial, and they are before the Court relative to objections that have been made in the depositions that have been entered so far.  The Court has, I believe, three depositions that have been entered, and I think it would probably be in everyone's best interest if we take them one at a time. Actually, four depositions, I apologize.

So let's take the first, that would be the deposition of Dr. Schmidt.  That depo was taken October 17th, 2018, and it was an employee's depo, so we'll start with objections raised by the employer.  Any objections you wish to press?

MR. MANCINI:  Judge, the only objection I wish to press is an objection that was made to Exhibit 5 and Exhibit 6 of the deposition.

266

1      THE COURT:  Okay.  Hold on.  Exhibit 5 would

2  be the records from Kent Hospital -- actually, Cranston

3  Fire Department.

4      MR. MANCINI:  Yes, Judge, and my objection --

5  and it's the same as to Exhibit 6, which is actually the

6  same document -- you can see that there's highlighting

7  and handwriting that's not a part of the original

8  document.  So I've objected to the inclusion of that

9  document in evidence.  It's not an original record.

10      THE COURT:  So if I understand you correctly,

11  you're objecting to Exhibit 5, which is a duplicate of

12  Exhibit 6, or are you objecting to both of them?

13      MR. MANCINI:  I'm objecting to each of them.

14  They both contain the same underlying document, but each

15  have different handwriting on them.

16      THE COURT:  And the handwriting you're

17  referring to on Exhibit 5 is "Expressed knee and wrist

18  pain Cranston Fire Department"?

19      MR. MANCINI:  Yes, Your Honor.

20      THE COURT:  And then the second is that

21  language as well as "Cranston Fire Department notes I

22  fell in roadway knee and wrist pain"; am I correct?

23      MR. MANCINI:  That's right.

24      THE COURT:  Mr. Dennis.

25      MR. DENNIS:  Yes, Your Honor.  We were in the

**State of Rhode Island**

☐ PLEASE CHECK IF CORRECTION OF PRIOR REPORT

**FULL-TIME WAGE STATEMENT** (Hired for 20 hours or more per week)

Department of Labor and Training, Division of Workers' Compensation

PO Box 20190, Cranston, RI 02920-0942   Phone (401) 462-8100   TDD (401) 462-8006

DWC No. _____

Insurer File No. _____ 360335

**EMPLOYEE INFORMATION:**

| | |
|---|---|
| SSN | 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 |
| Name | Mickeda Barnes |
| Hired for ___ hours each week | ☐ Approximate |
| Are these supplemental wages? | ☐ Yes   ☐ No |
| If yes, supplemental employer name: | |
| Maximum no. of exemptions ___ | ☐ Single   ☐ Married |

**CLAIM INFORMATION:**

| | |
|---|---|
| Employer | Rhode Island Public Transit Authority |
| Insurance Co. | The Beacon Mutual Insurance Company |
| Claim Administrator | |
| Injury date | 2/12/2015 |
| Incapacity date | 2/13/2015 |
| Hire date | 11/28/2002 |

## EMPLOYED LESS THAN 2 WEEKS:

| If Yes: | OR: |
|---|---|
| 1. List agreed upon hourly wage | Give average weekly for same or similar employment: |
| 2. Number of hrs. per week for full-time employees | |
| 3. Multiply #1 by #2 for average weekly wage    $0.00 | |

## EMPLOYED MORE THAN 2 WEEKS:

On the left side of the form, list gross wages prior to employee's first full day out of work. DO NOT include their week of hire or week of injury unless a full week was worked. DO NOT SKIP WEEKS. Please calculate any overtime and/or bonus paid SEPARATELY on the right side of the form below.

| LIST 13 CONSECUTIVE WEEKS: | | | | BONUS AND OVERTIME CALCULATION: | | |
|---|---|---|---|---|---|---|
| Week Number | Week Ending Date | No. of standard hrs. worked | Gross Wages (No Overtime) | | | |
| 1 | 2/6/2015 | 40 | $1,255.93 | Number of weeks employed (up to 52) | Block 1 | 52 |
| 2 | 1/30/2015 | 40 | $1,255.93 | Total BONUS amount paid in past 52 weeks | Block 2 | $0.00 |
| 3 | 1/23/2015 | 40 | $1,078.40 | Divide Block 2 by Block 1 for average bonus | Block 3 | $0.00 |
| 4 | 1/16/2015 | 40 | $1,150.79 | Total OVERTIME amount paid in past 52 weeks | Block 4 | $12,070.46 |
| 5 | 1/9/2015 | 40 | $1,078.40 | Divide Block 4 by Block 1 for average overtime | Block 5 | $232.12 |
| 6 | 1/2/2015 | 40 | $1,129.22 | | | |
| 7 | 12/26/2015 | 40 | $1,164.88 | CALCULATION OF AVERAGE WEEKLY WAGE (AWW): | | |
| 8 | 12/19/2015 | 40 | $1,128.82 | 1. Total earnings from 13 weeks | | $14,620.16 |
| 9 | 12/12/2015 | 40 | $1,128.82 | 2. Total number usable weeks | | 13 |
| 10 | 12/5/2015 | 32 | $887.93 | 3. Divide total earnings by number of usable weeks | | $1,124.63 |
| 11 | 11/28/2015 | 40 | $1,128.82 | 4. Average bonus (Block 3 in BONUS AND OT) | | $0.00 |
| 12 | 11/21/2015 | 40 | $1,128.81 | 5. Add 3 and 4 for AWW excluding Overtime | | $1,124.63 |
| 13 | 11/14/2015 | 40 | $1,103.61 | 6. Average overtime (Block 6 in BONUS AND OT) | | $232.12 |
| Total number usable weeks: 13 | | Total earnings: $14,620.16 | | 7. Add 5 and 6 for Total Average Weekly Wage | | $1,356.75 |

| Print Preparer Name: | Date: | Print Adjuster Name: | Date: |
|---|---|---|---|
| Diane Salisbury | 7/26/2016 | Paul Ricciardi | 7/26/16 |

DWC-03F (01/03)    For instructions visit our web site:    www.dlt.ri.gov/wc

*(handwritten in right margin)* Term Claims Chapters Signed 7/26/16    Company Name ON TOP

*(handwritten at bottom)* THIS IS illegal to

Date: 03/27/2015 - Claim Number: 00838725

**State of Rhode Island**
**FULL-TIME WAGE STATEMENT** (Hired for 20 hours or more per week)

☐ PLEASE CHECK IF CORRECTION OF PRIOR REPORT

Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI  02920-0942    Phone (401) 462-8100  TDD (401) 462-8005

OWC No.

Insurer File No.   RP-1502-0004L

**EMPLOYEE INFORMATION:**

| | |
|---|---|
| SSN | 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 |
| Name | Mickada Barnes |
| Hired for ____ hours each week | ☐ Approximate) |
| Are these supplemental wages? | ☐ Yes  ☐ No |
| If yes, supplemental employer name: | |
| Maximum no. of exemptions ____ | ☐ Single  ☐ Married |

**CLAIM INFORMATION:**

| | |
|---|---|
| Employer | Rhode Island Public Transit Authority |
| Insurance Co. | Claim Strategies _____ pany |
| Claim Administrator | |
| Injury date | 2/12/2015 |
| Incapacity date | 2/13/2015 |
| Hire date | 11/26/2002 |

SBW = $1094.60
CR = $ 820.95

## EMPLOYED LESS THAN 2 WEEKS:

| If Yes: | OR: |
|---|---|
| 1. List agreed upon hourly wage | |
| 2. Number of hrs. per week for full-time employees | Give average weekly for same or similar employment: |
| 3. Multiply #1 by #2 for average weekly wage          $0.00 | |

## EMPLOYED MORE THAN 2 WEEKS:

On the left side of the form, list gross wages prior to employee's first full day of work. DO NOT include their week of hire or week of injury unless a full week was worked. DO NOT SKIP WEEKS. Please calculate any overtime and/or bonus paid SEPARATELY on the right side of the form below.

| LIST 13 CONSECUTIVE WEEKS: | | | | BONUS AND OVERTIME CALCULATION: | |
|---|---|---|---|---|---|
| Week Number | Week Ending Date | No. of standard hrs. worked | Gross Wages (No Overtime) | | |
| 1 | 2/6/2015 | 40 | $1,078.40 | Number of weeks employed (up to 52) | Block 1    52 |
| 2 | 1/30/2015 | 40 | $1,078.40 | Total BONUS amount paid in past 52 weeks | Block 2    $0.00 |
| 3 | 1/23/2015 | 40 | $1,078.40 | Divide Block 2 by Block 1 for average bonus | Block 3    $0.00 |
| 4 | 1/16/2015 | 40 | $1,150.79 | Total OVERTIME amount paid in past 52 weeks | Block 4    $12,070.46 |
| 5 | 1/9/2015 | 40 | $1,078.40 | Divide Block 4 by Block 1 for average overtime | Block 5    $232.12 |
| 6 | 1/2/2015 | 40 | $1,078.40 | | |
| 7 | 12/26/2015 | 40 | $1,128.82 | CALCULATION OF AVERAGE WEEKLY WAGE (AWW): | |
| 8 | 12/19/2015 | 40 | $1,128.82 | 1. Total earnings from 13 weeks | $14,178.43 |
| 9 | 12/12/2015 | 40 | $1,128.82 | 2. Total number usable weeks | 13 |
| 10 | 12/5/2015 | 32 | $887.93 | 3. Divide total earnings by number of usable weeks | $1,090.65 |
| 11 | 11/28/2015 | 40 | $1,128.82 | 4. Average bonus (Block 3 in BONUS AND OT) | $0.00 |
| 12 | 11/21/2015 | 40 | $1,128.82 | 5. Add 3 and 4 for AWW excluding Overtime | $1,090.65 |
| 13 | 11/14/2015 | 40 | $1,103.61 | 6. Average overtime (Block 5 in BONUS AND OT) | $232.12 |
| Total number usable weeks: 13 | | Total earnings: $14,178.43 | | 7. Add 5 and 6 for Total Average Weekly Wage | $1,322.77 |

| Print Preparer Name: | Date: | Print Adjuster Name: | Date: |
|---|---|---|---|
| Diane Salisbury | 2/13/2015 | Keri Messier | 2/13/2015 |

DWC-03F (01/03)    For instructions visit our web site:    www.dlt.ri.gov/wc

RE + atty 3/20

*New Revised Page (2) Wages*

## State of Rhode Island
**FULL-TIME WAGE STATEMENT** (Hired for 20 hours or more per week)

☐ PLEASE CHECK IF CORRECTION OF PRIOR REPORT

Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942   Phone (401) 462-8100  TDD (401) 462-8006

DWC No.

Insurer File No. **RP-1502-0004L**

**EMPLOYEE INFORMATION:**

| | |
|---|---|
| SSN | 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 |
| Name | Mickeda Barnes |
| Hired for ___ hours each week? | ☐ Approximate) |
| Are these supplemental wages? | ☐ Yes   ☐ No |
| If yes, supplemental employer name: | |
| Maximum no. of exemptions ___ | ☐ Single   ☐ Married |

**CLAIM INFORMATION:**

| | |
|---|---|
| Employer | Rhode Island Public Transit Authority |
| Insurance Co. | Claim Strategies Company |
| Claim Administrator | |
| Injury date | 2/12/2015 |
| Incapacity date | 2/13/2015 |
| Hire date | 11/26/2002 |

**SBW = $1094.60**
**CR = $ 820.95**

### EMPLOYED LESS THAN 2 WEEKS:

| If Yes: | OR: |
|---|---|
| 1. List agreed upon hourly wage | |
| 2. Number of hrs. per week for full-time employees | Give average weekly for same or similar employment: |
| 3. Multiply #1 by #2 for average weekly wage   $0.00 | |

### EMPLOYED MORE THAN 2 WEEKS:

On the left side of the form, list gross wages prior to employee's first full day out of work.  DO NOT include their week of hire or week of injury *unless* a full week was worked.  **DO NOT SKIP WEEKS.** Please calculate any overtime and/or bonus paid SEPARATELY on the right side of the form below.

**LIST 13 CONSECUTIVE WEEKS:**

| Week Number | Week Ending Date | No. of standard hrs. worked | Gross Wages (No Overtime) |
|---|---|---|---|
| 1 | 2/6/2015 | 40 | $1,078.40 |
| 2 | 1/30/2015 | 40 | $1,078.40 |
| 3 | 1/23/2015 | 40 | $1,078.40 |
| 4 | 1/16/2015 | 40 | $1,150.79 |
| 5 | 1/9/2015 | 40 | $1,078.40 |
| 6 | 1/2/2015 | 40 | $1,078.40 |
| 7 | 12/26/2015 | 40 | $1,128.82 |
| 8 | 12/19/2015 | 40 | $1,128.82 |
| 9 | 12/12/2015 | 40 | $1,128.82 |
| 10 | 12/5/2015 | 32 | $887.93 |
| 11 | 11/28/2015 | 40 | $1,128.82 |
| 12 | 11/21/2015 | 40 | $1,128.82 |
| 13 | 11/14/2015 | 40 | $1,103.61 |
| Total number usable weeks: 13 | Total earnings: | | $14,178.43 |

**BONUS AND OVERTIME CALCULATION:**

| | | |
|---|---|---|
| Number of weeks employed (up to 52) | Block 1 | 52 |
| Total BONUS amount paid in past 52 weeks | Block 2 | $0.00 |
| Divide Block 2 by Block 1 for average bonus | Block 3 | $0.00 |
| Total OVERTIME amount paid in past 52 weeks | Block 4 | $12,070.46 |
| Divide Block 4 by Block 1 for average overtime | Block 5 | $232.12 |

**CALCULATION OF AVERAGE WEEKLY WAGE (AWW):**

| | |
|---|---|
| 1. Total earnings from 13 weeks | $14,178.43 |
| 2. Total number usable weeks | 13 |
| 3. Divide total earnings by number of usable weeks | $1,090.65 |
| 4. Average bonus (Block 3 in BONUS AND OT) | $0.00 |
| 5. Add 3 and 4 for AWW excluding Overtime | $1,090.65 |
| 6. Average overtime (Block 5 in BONUS AND OT) | $232.12 |
| 7. Add 5 and 6 for Total Average Weekly Wage | $1,322.77 |

| Print Preparer Name: | Date: | Print Adjuster Name: | Date: |
|---|---|---|---|
| Diane Salisbury | 2/13/2015 | Keri Messler | 2/13/2015 |

DWC-03F (01/03)  *For instructions visit our web site:*   *www.dlt.ri.gov/wo*

*RR + atty 3/20*

270

Page (1)

Jim Vincent

June 17, 2015

formal Complaint

This Complaint is for the Company I work for Ripta and the Workers Compensation Dept including Ben their Lawyer.

① RIGl Section 28-5-1 (Fair Employment Practices act
② RIGl Section 42-87-1 (Civil Rights of People with Disabil
③ RIGl Section 28-33-47 (Reinstatement to Employment.

My Employe has Repeatedly violated my Rights from above RIG laws 1-3, when I last Spook to Diana Salsbury she told me she was not Accepting my Return to Work note because she had Carpal tunnel Surgery and did not Return to work in 8 week I told her I am not you and your not me and that your Not a Doctor or a Surgeon to not accept a legal Document. I gave them Enough time When I was Returning Which I do Every Single time I am out on a Workers Camp Claim. Enough time to Choose a Job go to their Doctor and then do a Road test to Start back at June 24, 2015 Diana and her Boss Ben are being very personal with me and are doing Every thing to make it a Challeng for me to Return back to Work with this Company. My other Complaint

271

Jim Vincent    Journal Complaint    Page ②

is Diana then Agreed to Accept my Doctors not Then told me I'll be on the list with no weekend Off unless I choose Somebodys Else Job who has Weekends Off which makes no Sense because I Could have Choosed my own Job off with Weekends and it would have Accamadate my Reaslatment and Disability I Substean aoNe Job Injury. RICL Section (28-33.47) if Diana and her Boss Ben Didnt Accept my Return to Work letter from Dr Sousa I would not have Recieved my Workers Comp Checks Ending June 5, 2015. June 12, 2015 and June 19, 2015. I had to Speak with Diane today June 17, 2015 appox. 10:15 am asking her when am I getting a Docters appointment with Riptas Doctor and a Rede test Diana then told me the Doctors note I gave her June 1, 2015. She was not accepting and I need to get Another Doctors note if I am Returning June 24, 2015. I am being Discrimanating Against Lied to harassed and Belittle and humiliating and I Feel Embasses aShamed Depressed I went Through Enough Pain or Suffering before the Surgey Going Back to Work Should be Smoth and Reluming When was Diane Going to Call me and let me Know She once Again was not Going to Accept my Dr's note to Return after I had

Jim Vincent   formal Complaint   Page 3

24 2015. Now I have to ask De Sousa for this Detailed Return to work letter Which has to be IN by Feeday June 19, 2015 So I Can get a Ripta Doctors appointment and a Roae test Schedule before June 24 2015 When I Should be at work and monday I already have a appointment and tuesday I have to be IN Workers Comp Court to me that is being Plain out Nasty. Diana Could have Called me Monday June 15 With this Information. I feel like they are Setting me up So they Can have or find a Reason to fire me also I think they are trying to make me Lose my Cool to Say I am Crazy. I am Working with them trying to give them the things and Paper work to be Reinstated back to Work but they are purposely Giving me Road blocks. And Head Aches. I don't Know what to believe Coming out of Diana Mouth she is very back and forth With What she Says to me. I don't believe anything She tells me. I Truely believe Ditana And her boss Ben are Upset because I am Really Determine to work on June 24, 2015 And back, C I went Black this would have

273

Jim Vincent     formal Complaint     Page ④

Went very smooth I think No I
Know the both of them are racist I
Never hear any workers that are white
Gang Thoughts. Its my third time Going
threw this. Even When their Surgeon
Said I Needed A Surgery it was on
their desk for four Weeks Until I went
down there trippin about the Pain and
My arm losing all feeling before they
would approve Surgery I was in
Great Pain for 14 Weeks and 4
Weeks the Surgery order was on
Someone's Desk as a Coffee Cup
Coaster. And I had to Argue with
Diana over My Average Weekly Pay Check
She had to Change because She was
Giving me a hard time
When I told her it wasn't    Meekeda Baynes
Right then She apoyigize    34 Dunbar Ave
and Paid me 6 Weeks    Rumford RI. 02916
later but if I didn't    1-401-419-2250
bother Payroll I could
have Recieved 45 dollars
less a week





Exhibit #J

RECEIVED
JUN 11 2015
RI COMMISSION
FOR HUMAN RIGHTS

## STATE OF RHODE ISLAND
## COMMISSION FOR HUMAN RIGHTS
180 Westminster Street, Third Floor
Providence, RI 02903-1918
401-222-2661  TDD: 401-222-2664  Fax: 401-222-2616

### EMPLOYMENT DISCRIMINATION QUESTIONNAIRE

Please type or print your answers as completely as possible on this form and return it to the Commission at the above address. You will be contacted regarding the filing of a formal charge if your allegations come under Commission jurisdiction. This is not a formal charge of discrimination. IF QUESTION # 8 IS NOT ANSWERED COMPLETELY, THE COMMISSION CANNOT PROCESS YOUR CHARGE.

Indicate Mr./Mrs./Ms          Date _June 11, 2015_

1. Name _Mukeda_ (First) _S_ (Middle) _Baines_ (Last)

Address _34 Dunbar Ave_

City _Rumford_          State _RI_  Zip Code _02916_

Telephone (with area code) Home: _401-419-2250_    Work: _401-784-9500_

Cell: _419-2250_  Email: _Kenyon5@Cox.net_ Date of Birth _Jan. 31, 1975_

2. How did you learn about the Commission?          Commission Brochure ___ Commission Commercial ___
Commission Website ___ Other _been here before for Same Company_

3. Who are you filing against? ☒Company  ☐Union  ☐ Employment Agency  ☐Government
☐ Other    Name _RIPTA_

Address _705 Elmwood Ave Prov RI 02908_

Company President _Ray Studley_          Phone _401-784-9500_

Do you wish to file a charge against a specific person who discriminated against you? ☐Yes  ☒No

If "yes", you must provide the following: Name _____

Address_____ City_____ State_____

Zip Code_____ Telephone (with area code)_____

4. Approximate number of employees at the above named company _400+ Employees_

5. If you are now employed by the company above, specify your position _City Bus Driver_

If not, specify the position you held or sought _____

6. Cause of Alleged Discrimination:  _Black_  ☒Race  ☐Color  ☐Religion  ☐Ancestral Origin
☒Sex  ☒Disability  ☐Age (40 or above)  ☐ Sexual Orientation  ☐Gender Identity or Expression
☐ Unlawful Questioning (Arrest Record, Criminal Conviction or Other)  ☐Retaliation

Explain cause _____ Example: if you circled race, indicate your race

7. Please check the alleged discriminatory action/condition:

☐Refusal to Hire  ☐Termination/Discharge  ☒Denial of Promotion  ☐Layoff  ☒Unequal Pay _Workers Comp pay_
☒Discriminatory Work Environment  ☒Discriminatory Treatment  ☒Maternity  ☐Demotion
☐Harassment (sexual or other)  ☐Reasonable Accommodation  ☒Other (Indicate) _Workers Comp_

Revised 01/14

③Seniority        _Reinstatement to W_
④ _Defamation?_        ② _Refusal Ne Return to Work_



Commision of Human Rights



June 10, 2015

This is my formal Complaint against my Employer Rhode Island Public Transportation Authority also Known as (Ripta) for Violating State and Federal laws in place for the Workplace.

1st RIGL Section 28.5-1 (Fair Employment Practiss Act)
2nd RIGL Section 42.87-1 (Civil Rights of people with Disabilit
3rd RIGL Section 28-33-47 (Reinstatement to Employment)

My Employer has Repeatedly Violated my Rights for years While I work for this Company. I have been blamed for things I haven't Done. I have been passed up for a Superviser position I have been Skipped for Seniority positions. Ive also have been Denied to Return to work from a work Related injury. Ive been to my local Union 618 Ive met with Jamie from Sewerety Ive met with Jim Dean. my boss Ive met with Ben from Workers Compensation Ive talked with Maureen Razonow from human Resources Ive left messages with Ray Studley our Ceo and His Director of Human Resources Kathy Nateau Which they have not Returned my Call. I truly believe because I am black and have a disability I am being treated like Shit and In their Eyes Iam lucky to have a Job So Short



Nickeda Barnes    Ripta Complaint                  page 2

My Complaint is I have a Doctors Note to Return to Work June 24, 2015 asking for Reinstatement to my Position from a Workers Compensation Claim by which they had me wait 14 weeks before they approved my Surgery even though they had two notes from the Dr Deter Pizzorello for Surgery that Sat on their Desk for 4 weeks. I went out February 12, 2015 and my Surgery was May 6, 2015. My Lawyer had Ripta Sign a memorandom for my injures which they took full Responsibilty for. My Post opt to Surgery Went well and I was told I Can Return to work June 24, 2015 7 weeks from Surgery. I was told by my boss Eddie King if I had my note in by Friday two to three weeks before Choose up to let them know a date I'll be Returning to work after My Injury I will be Set to Choose I Sent it in No one called me from upper management to ask me about the letter. I went to Speak with my boss Eddie again he gave me a date of June 1, 2015 to Choose a Job and pick up my Summer Uniform I ordered. I then Came again which made my Second time to See Eddie on a Friday before I was to Choose a Job on that follow ing Mond

277



Nickeda Baines          Riptee Complaint     Page 4
Was given a Closed Period of time for the
Injury and fighting Riptee In Court for the
time I had the Surgery til I Returned to
work which is still not Settle So you Still have
to treat it as workers Compensation. I then
gave her the Workers Comp laws 28-33-47
About Reinstatement and She hung up on me
I then went to the Union then to Jeimey Dean
and left Several Upper Management Messages
to Return my Call or to give me a meeting
Which has not happen at all. I did Speak
With Diana's Salsbury Boss Ben which I gave
him those Same RI Workers Compensation laws
28-33-47 Which he Replied I have to look
them Up So I looked them Up on my Smart
Phone and Read them to him he gave me
a Card and Number and I Exchanged my
Number to Which he Said he would Call me
back which he had not. I Called my lawyer
for Workers Comp and let him Know What
happen So he told Me he was going to file
a petition to Court and a Reinstatement to
Return to Work having my Similar Pay
hours Jobs which were Split With Weekends



Nickeda Barnes    Ripta Complaent    Page ⑥

About 9 months ago I appled for A Supervist poseteon and I was told by Kim Duggin I didnt Qualified for the position becaus one year was workers Comp and its pendin IN court and the previous year I was out of work to have my Daughter but I Return to work after the birth of my Daughter IN 6 weeks but Kim told me I didnt file for fmla I told Kim child birth is auto-Matically fmla and I dont need to fill out paper work for that and this is My second daughter I had here at Ripta and I didnt fill out paper work for that Child. Ripta upper Managment Co and say things when its Conveniate for them they promote Drivers they like or who will snitch on other Drivers but I have Notice Since Ive been at Ripta 13 years there has been No blacks promoted to Supervisers and we have at least 12 to 15 New Supervisers. I've had my Rights, senorety and piece of Mind working for Ripta Company Destroyed by their RACSIST

RECEIVED
JUN 1 1 2015
RI COMMISSION
FOR HUMAN RIGHTS

Mickeda Barnes Rjpta Complaint          Paige 7,

I was so Excited about Returning to work on
June 24, 2015 Even after all I been thoght
but after all the insolts from Diana Salsbr
and Smart Remarks from her boss Ben the
Rjpta Lawyer I feel targeted, talked about,
Be little, Marked for termination because of
workers comp claims that are not my fault.
I sometimes feel like they will go out their
way to set me up so they can fired me. I
heard Rumors and been blamed for things I
didnt do the last years Comp Claim I also
wrote a Complaint about that. I also feel like
the Company will Kill me off and act like its a
Accident. I have Really bad Anxety about my
job it makes me Very Nervous and they have
Made it known threw my Union. its their Rules or
No Rules Commission of Human Rights you guys
are my last Chance this might just be my
last letter to anyone thats how bad it is.
401-419-2250
     a mother                    Mickeda Barnes
     a wife                      34 Dunbar Ave
     a hard worker               Remford RI 02916

280

Knee Court / with Ripta, Diane                    June 23, 2015

Today I went to Court to Settle Knee Worker's Comp
tse to Realize that Diane Set me up to Not be at work
o I Could Either Settle for nothing Settle for 1300-1500
ollars and lose my Job or tell the Judge I dont have
the money for trial because I have Not Returned to
ork. Ripta and Diane told the Judge I would be back
to Work June 24, 2015 and Diane Refused my Return
o work letter twice after telling me She would accep
r. Diane tried to defame me in front of the Judge as Some
u who takes advantage of Worker's Comp and got hurt at
rome and came to work and Said it happen there. This
, Harrassment Defamation and Discrimation. Ripta and
Diane has Violated Labor agreement Section 1.8
Paragraph (I) and paragraph (H.) if I No longer Can drive
a City Bus Due to my work Related Injury. Section
1.2 paragraph (b) Diane also violated Section 1. 25
Section (H) Ripta and its Management and Workers Comp
Division IS Also Violating State and Federal laws
1St RIGl Section 28-5-1 (Fair Employment Practics Act)
2nd RIGl Section 42-87-1 (Civil Rights Of People with Distibilites)
3rd RIGl Section 28-33-47 (Re Instatement to Employment )

281

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 537 of 689 PageID
#1893
Case 1:22-cv-00213-JJM-PAS   Document 1-1  Filed 05/31/22   Page 280 of 346   PageID 281

1

State Of Rhode Island Providence Plantations
Superior Court


Plaintiff
Rhode Island Public Transit Authority

VS.                                          P.C.-2020-06065

Mickeda S. Barnes
§§Defendant


### Motion the Superior Court To Court order Arbitration § 28-9-5, (a)

A Judge of the Superior Court shall hear the parties and upon being satisfied that there is no substantial issue as to the making of the contract entered into between employer and employee union contract with her Union ATU-618 year 2013 to 2016.

Agency means department, board, commission ,division ,or Quasi Public Corporation created by the General Assembly or the Governor and authorized by statute to make and enforce rules 2012 Rhode Island General laws Title 39 Public Utilities and Carriers Chapters §39-18 Rhode Island Public Transit Authority chapter § 39-18-17 Labor Relations with employees of acquired transit facilities in case of any labor dispute where collective bargaining does not result in agreement the authority shall offer to submit the dispute to arbitration by a board composed of three persons.

The determination of the majority of the board of arbitration thus established shall be final and binding on all matters in dispute.

The term" Labor Dispute" shall be broadly construed and shall include any controversy concerning wages ,salaries ,hours ,working conditions ,or benefits including health and welfare, sick leave ,insurance or pension or retirement provisions. But not limited there to and including any controversy concerning any differences or questions that may arise between the parties including but not limited to the making or maintaining of collective bargaining agreement, the terms to be included in the agreements and the interpretations or applications of the collective bargaining agreements in any grievance that may arise.

Defendant was denied on October 16, 2020 by Ripta to accept to pay Mickeda Barnes her weekly indemnity benefits due to a recurrence of her left hand and wrist injury she suffered on the job at Ripta on 02-12-2015. This recurrence will make the third surgery on her left hand in which is established in defendants contract agreement between the employer Ripta Plaintiff and the Defendants Union 618 on page 35 of this agreement clearly states that an employee who

SUPERIOR COURT
FILED
HENRY S. KINCH. JR.

20 OCT 23  PM 1: 52

282

suffers a job related injury the compensability of which is not disputed will become eligible to receive workers compensation weekly indemnity benefits compensation on the 4th day of disability as mandated by the Rhode Island workers compensation act of May 1992. Any changes in Rhode Island worker's compensation law will be incorporated into this contract."page 35 section (o) and (p)".of defendant's Union contract.

Defendant was also denied her grievance to have any dispute regarding employee,s fitness to return to duty shall also be resolved in accordance with section of defendants union contract page 33 (H),(I),(J),and (o) in which defendant also believes she is in contract of with Ripta.

The General Assembly created these laws to be enforced to make sure of due process.

Defendant Mickeda Barnes pleaded with the Superior Court to review her 5 day claim for a grievance in regards to a labor dispute in Court with Judge Salam on October 16 ,2020. In regards to payment and medical payments for Injury for recurrence,  and work related injuries and other labor disputes not being paid per defendants Union Contract entered into during the year of July 2013-2016 in the year when defendant was injured on 02-12-2015 and when she was illegally terminated on 02-16-2016 while still under Union contract between Ripta and Atu-618 her union.

Defendants ask the Court for review of RIGL§ 28-7-14 exclusive representation of employee RIGL §23-7-15 and § 28-7-19 shall have the right to present grievances to their employer at any time.

Defendant asked the Superior Court to order Arbitration in regards to the Ripta's laws the General Assembly Created Title 39 Public Utilities and Carriers and Chapter § 39-18-17 Labor Relations with employees of acquired transit facilities under law for disputes regarding Labor relations.

283

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 539 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-18  Filed 05/31/22   Page 282 of 346   PageID 283
#1894
3

## Certificate of service

I hereby certify that on the 23rd of October, 2020 the foregoing order was e-filed and served through the electronic filing system and by regular first class mail on the following party. The document electronically filed and served.

Filed Motion in Superior Court 23rd of October, 2020.

Mickeda S Barnes Pro-se
Defendant

Jillian S.F.Hartwell
Littler Mendelson, PC
One Financial Plaza, Suite 2205
Providence R.I. 02903
401-824-2500
Fax 401-633-6853

284

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 540 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-1 8 Filed 05/31/22   Page 283 of 346   PageID 284
#1 895

Exhibit A

**State Of Rhode Island**                    **Superior Court**
**Providence S,C.**

**Mickeda S. Barnes**

**V.**                                        **P.C. 2020-06065**

**Rhode Island Public**
**Transit Authority**

## Motion to Compel Union Contract Agreement to Arbitration.

Ms. Barnes has several open claims with her employer and has to close the claims they are personal injury complaints and she has sought medical treatment and continues to deal with the medical issues and is on medications due from these injuries of the open claims.

1. **Ms. Barnes is seeking to compel arbitration under the terms of the Company's Benefit Injury Plan.**

2. **Ms.Barnes also has another option to seek arbitration under it's grievance and arbitration procedure as noted in her Union 618 contract between employer and employee.**

3. **Ms. Barnes Employer RIPTA was created by the Rhode Island General Assembly in 1964 and has a 2012 Title 39 Public Utilities Carriers Statute Chapter 39-18-17 Labor relations with employees of acquired transit facilities.**

(b) In Chapter §39-18-17 Ripta law  states' No officer or employee so transferred and becoming an officer or employee of the authority in accordance with this section shall,by reason of the transfer, without his or her consent be removed, lowered in rank or compensation, or suspended except for just caused and for reasons specifically given to him or her in writing twenty-four hours after removal, suspension, or transfer or lowering in rank or compensation; nor shall any officer or employee by reason of transfer,without his or her consent, **be in any worst position in respect to worker's compensation,pension,superannuation,sickness,or other benefits or other allowances granted by his or her previous employer to him or her,**

*Alex R*
*12·1·20*

1

the widowed person,family,or personal representatives than he or she enjoyed under any person,firm,or corporation under whom he or she held his or her employment immediately prior to his or her transfer to the authority.

**(c) In case of any labor dispute where collective bargaining does not result in agreement the Authority shall offer to submit the dispute to Arbitration** by a board composed of three persons, one appointed by the Authority, one appointed by the labor organization representing the employee, and the third member agreed upon by the labor organization and the Authority.

Disputes between the parties have been mediated and agreement entered into by both parties on record and the employer breached the agreement and then not following thru with another settlement to satisfy the claims Ms.Barnes has with her employer or that have been argued in Workers Compensation Court over four years between the parties and in Superior Court cases argued over two and half years. Ms. Barnes and RIPTA falls within ambit and an Arbitration agreement that does exist and should be used to settle the disputes resolution, the costly litigation, the personal injury liability and the outstanding worker's compensation claims that are left open with Medicare and Ms.Barnes family.

Congress adopted the Arbitration Act in 1925. Congress judgements on arbitration had more to offer the promise of a quicker more informal cheaper resolution for everyone involved. Congress directed the courts to treat arbitrations agreements as 'Valid irrevocable and enforceable'. 9 U.S.C.§2. Moses H. Cone Memorial Hospital V. Mercury Constru. Corp.460 U.S. 1 24(1983) citing Prima Paint Corp V. Flood&Conklin MFG Co. 388 US.395 (1967) .The meaning of the Statue is to have a speedy and not to DELAY AND OBSTRUCTION IN THE COURTS.

Ms Barnes indicates her intention to use individualized rather than class or collective action procedures. The Arbitration Act protects this individualized collective action procedure( see AT&T Mobility LLc V Concepcion, 563 U.S.333(2011).

Ms Barnes' defenses are duress, fraud, intimidation ,retaliation, discriminatory terms and conditions of employment, Union aided and abetting with her employer Ripta to Ms. Barnes with denial of reasonable accommodations and termination based on disability. The employer Ripta violated the Rhode Island Fair Employment Practices Act, Title 28, Chapter5, and the Civil Rights of people with Disabilities Act, Title 42, Chapter 87 of the General Laws of Rhode Island. With respect to the allegations on which the Commissioner has found probable cause, RIGL section 28-5-24.1(c). **(EXHIBIT A)**

Ms. Barnes presented her grievances to her union and employer when she was terminated and the union and employer decided to skip grievance steps and deny Ms. Barnes her right to reinstatement. Ripta and her union both told Ms.Barnes if she wanted arbitration she would half

2

to give up her right to sue Ripta collecting weekly worker's compensation benefits for a work related injury is not suing Ripta.

Ms Barnes also has a State Law defense which is the Law the General Assembly required that Ripta follow these Laws RIGL 39-18-17 Labor Relations Protections. Ripta has interfered with Ms. Barnes Civil Rights and Constitutional Rights her 14 Amendment Rights of due process by not allowing Ms.Barnes her Arbitration. There are no waivers agreements between Union 618 and the Employer RIPTA not to give Ms. Barnes a Arbitration for her benefits and any other issues Ms Barnes is arguing in her Union Contract that concern her and offered her many different disability covered provisions of the worker's compensation act. If Ms Barnes has any kind of changes in departments at Ripta she would be entitled to payments changes for the purposes of rehabilitation and those payments would be made in accordance with the worker's compensation act, and upon recovery from the injury Ms Barnes would have been able to return back to her original position without loss of rating or seniority loss.( **EXHIBIT B).**

Ripta terminated Ms Barnes on February 15, 2016 using  section 1.25 Sick Leave paragraph (h) page33 of her union contract. Ripta never used a section from the worker's compensation law to terminate Ms.Barnes from her position which leaves Ms.Barnes to Have the Worker's Compensation Court to Compel to Arbitration Ms.Barnes is full dispute in court.Ms  Barnes dispute is anything used from the contract agreement between Ripta and the Union 618 and the employee is to be Arbitrated by law.**(EXHIBIT C).**

The worker's compensation court is responsible for reinstatements and if Ripta felt like Ms. Barnes did not meet the reinstatement period requirement Ripta should have put in a petition that Ms. Barnes could not return to work due to her ongoing disability instead Ripta had me go to a Court and filed a petition for me to end my benefits and sent Ms. Barnes to see multiple court appointed IME doctors all whom all said Ms. Barnes could return back to work and had Ms Barnes taking off worker's compensation benefits. (EXHIBIT D).

 In Ms. Barnes Union Agreement on section 1.25 Sick Leave page 34 paragraph (j). Any difference of opinion between the employee's physician and the physician of the authority will be determined by an impartial third party physician. The decision of the impartial physician is binding and final so Ms. Barnes should have been reinstated back to work instead she was denied and Ms Barnes filed a grievance with her Union, The Grievance steps were skipped by Riptas Management and Ms. Barnes was not given her Arbitration.

Ms Barnes invokes her Forthteeth  Amendment which addresses many aspects of citizenship and the rights of equal protection of the laws.

In Ms. Barnes Union contract Section 1.10 grievances (page 11)
(b) Should difference or disputes arose between the authority and employee, group of employees or the association as to the meaning or application of this agreement rules policies or practices

3

the parties shall make effort to settle differences promptly by the grievance and arbitration procedure set forth below;.(**EXHIBIT E**)

There is a big difference in Ms. Barnes case than any other case similar to Ms. Barnes worker's compensation case. Ms Barnes' employer has been created by RI General Assembly Ripta also certified to the FTA for employee protections in regards to Federal Government money Ripta also is Title 6. When it comes to disability with the ADA and the rehabilitation Act.Ripta has a Law RIGL 39-18-17 Labor Relations which also states no employee from Ripta can be transferred, removed,suspended,or terminated without his or her consent, or be in any worst position in respect to worker's compensation .pension, superannuation, sickness or other benefits or allowances granted by his or her previous employer to him or her. Or she enjoyed under any other person, firm, or corporation under whom she had employment with the authority.

Ms Barnes had to file for unemployment when she was terminated Ms Barnes was also taken off of worker's compensation. Ms Barnes went to a Board of Review with the Department of Labor in regards to her back dating in order to receive unemployment benefits because she was on worker's compensation. The board found in Ms.Barnes Favor and made note to her account that Ripta also denied Ms.Barnes her right to reinstatement back to her job. In Ms. Barnes claim decision with the Department of Labor and Training the conclusion was the right to reinstatement shall be subject to the provisions for seniority rights and other employment restrictions contained in a valid collective bargaining agreement between the employer's and a representative of the employee's and nothing shall exempt any employer from or excuse full compliance with any applicable provisions of the americans with disabilities act, 42 U.S.C. §12101 et seq., and chapter 87 of title 42.(**EXHIBIT F**).

The worker's compensation act provides to preserve contractual rights and leaves intact contractual claims to enforce these rights of the Collective Bargaining agreement. The Worker's compensation act grants a one year reinstatement and an eighteen month reinstatement back to work if you were in approved therapy by the Judge. Ripta has violated section §28-33-47(d) this section deems it unlawful employment practices. If the employee applies for reinstatement under this section and the employer refuses to reinstate the employee the worker's compensation court is authorized to order reinstatement and award back pay and cost if fringe benefits are lost during the period as appropriate. Ripta has not given Ms.Barnes her Grievance as Ms.Barnes has asked for her Grievance on multiple times and has been silenced on her right and what was to be acted upon noted in her Union Contract for disputes in regards to labor disputes and workers' compensation issues that affected Ms. Barnes to receive her weekly benefits and her reinstatement.

Ms Barnes was Approved by Judge Salam in March, 2016 a court order to physical therapy per Dr Peter Pizzerello. (**EXHIBIT G**).

4

289

Ms Barnes has never ceased to be regarded as an employee and is seeking Reinstatement as contemplated by statute with full back pay, benefits and without loss of seniority. Ms Barnes is also willing to accept a settlement equal to or greater than the time lost out of work and lost time waiting for an arbitration I was unconscionable waiting for and was either denied or delayed in the court system .

In Regards to Ms Barnes Federal case against Ripta during the Global settlement entered into on December 1. 2017 in front of Chief Ferreira Ms Barnes discrimination Attorney Sonya Deyoe was ask to withdraw the case out of court to save Ripta money once it was done Ripta backed out of the global settlement. Ripta had Ms Barnes on false pretense believe that the two parties entered into a global settlement that was agreed to and placed on record on December 1, 2017 and was going to settle but Ripta never settled it. Ripta delayed Ms Barnes another two years before she received any money for weekly worker's compensation benefits. Ms Barnes has not had any weekly payments nor any kind of workers compensation settlements for any of her work related accepted claims and she no longer works for Ripta. Ms Barnes has not had any Arbitration hearing between her and Ripta as per her Union Contract.

Ms. Barnes was injured on 02-12-2015 and has not been back to any job Ms. Barnes had applied to many jobs and did many interviews on her own in the last five years. Ms. Barnes was offered two jobs, one at First Student in 2017 and did not meet the standards and the second job offered to her in 2020 but Ms Barnes now needs another surgery from the work injury she suffered on 02-12-2015.

The ongoing injuries that were left untreated due to the denial of reinstatement back to work was very important. If she was to have returned back to work Ripta would have no choice but to find out what was injured and to fix her injuries. Ripta had the help of her Union to aid and abet to commit this illegal act and the reports are in the exhibits from the Commission of Human Rights findings.

Ms Barnes would like the Court to either grant her motion to Compel Arbitration between employee and the employer or to decide on a proper monetary figure along with a medicare set aside, And no court of this state shall have jurisdiction to issue a temporary or permanent injunction in any case involving a labor dispute except after hearing the testimony of witnesses in open court, with opportunity for cross-examination, in support of the allegations of a complaint made under oath, and testimony in opposition, if offered, and except after findings of facts by the court to the effect under RIGL.§28-10-2 Prerequisites and proof required for injunctions. Ms Barnes has already been through a two and half year mediation with her employer from September 26, 2017 until February 15, 2019 trying to exempt themselves from full compliance with the Americans with Disability Act, 42 U.S.C. §12101 et seq., and chapters

5

290

87 of title 42. Contingent on the Rhode Island Workers Compensation Law which stated in part the right to reinstatement and other benefits Ms Barnes is entitled to per her Union Contract with Ripta, her employer.. Ms Barnes would like to know what her future holds for her and to end this litigation and to move on. Ms.Barnes per RIGL§ 28-10-1 ask for mediation and conciliation by the Director of Labor and training in regards to Arbitration or for State compliance with Title 6 requirements for FTA money required mediation for being self-insured and to finalize and close out open work related injury claims with Ms. Barnes employment in commerce transportation with Ripta if Ripta does not want to reinstate or reclassify Ms Barnes back to her position as a city bus driver per RIGL. § 28-10-3"labor dispute "defined.

Ms Barnes was denied on October 16, 2020 by Ripta and Beacon Mutual TPA for weekly indemnity benefits due to Ms. Barne for a covered work injury that happened on February 12.2015 which was a fall on snow and ice causing Traumatic left hand carpal tunnel with ulnar nerve damage.  Due to a recurrence of her left hand injury left untreated for two years after being approved by worker's compensation court in 2015 an ex-parte for major surgery was approved so Ms. Barnes could have surgery for the second time on February 9, 2017.

 Ms Barnes now has to have surgery for a third time on her cubital tunnel on her left elbow on December 3, 2020. Ripta has refused to voluntarily pay Ms. Barnes weekly indemnity benefits or to settle Ms. Barnes open claims even though Ms Barnes does not hold her position as a driver at Ripta and it is pending in Workers Compensation appeals Court. Ripta has not given Ms. Barnes any money towards her medicare set aside since refusing to reinstate or to reclassified  Ms. Barnes to returned to her position as a commerce transportation driver. Ms Barnes has had medicals back dating from 2017 with notes from her treating doctors of possible cubital tunnel symptoms and she may need to have surgery for in the future for cubital tunnel but Ripta failed to either take responsibility or to have the problem properly diagnosed and this is where Ms. Barnes Union contract comes in to protect her from violations of her Union contract with her employer Ripta.

Ms. Barnes cannot have her Union to represent her because of pending litigation against her Union in Federal Court for Failure to represent Ms Barnes per Commision of Human Rights probable cause findings in 2017 for aiding and abetting with Ripta to denied reclassification and disability discrimination against Ms Barnes in which is a violation of Ms Barnes Union Contract before Judge Hyatt at the Commision. Therefore her Union cannot handle the Arbitration and Ms. Barnes Grievance needed for the Court to step in and get Ms Barnes her due process by law.

Ms Barnes argues in her Union contract between her and Ripta states on page 35 of this agreement that an employee who suffers a job related injury the compensability of which is not disputed will become eligible to receive worker's compensation weekly indemnity benefits compensation on the 4th day disability as mandated by the Rhode Island worker's compensation act of May 1992. Any changes Rhode Island workers' compensation law will be incorporated into this contract."page 35 section(o) and (p)". of defendants union contract.

6

Defendant was also denied her grievance to have her dispute regarding employee's fitness to return to duty shall be resolved in accordance with section of defendants union contract page 33(h),(i),(j), and (o) in which defendant believes she is in contract with Ripta for in union contract.

The General assembly created these laws for Ripta and RI Courts system to enforce to make sure employees received due process. Defendant asked the Superior Court to enforce Arbitration in regards to the Ripta's law created by the General Assembly created title 39 Public Utilities and Carriers and Chapter §39-18-17 Labor Relations with employees of acquired transit facilities under law for disputes regarding Labor Relations.

**Ms Barnes requests trial by jury if arbitration, mediation or settlement of open claims cannot be properly settled.**

## CERTIFICATION

I hereby certify that, on the 1st day of December, 2020, I filed and served this document through the electronic filing system on the following parties: Nickolas R. Mancini, Esq Manicin Law, LLC   222 Jefferson Blvd, suite 4A Warwick R.I. 02888. This document electronically filled and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

Jillian S.F.Hartwell Littler Mendelson, PC one Financial plaza, suite 2205
Providence R.I. 02903 (401) 824-2500

I certify I will send a copy to Ripta's attorneys Nickolas Mancini and Jillian Hartwell by first class mail.

Respectfully submitted,
Mickeda S Barnes PRO-SE
34 Dunbar Ave
Rumford R.I. 02916
Mickeda5@gmail.com

7

292

Case Number: PC-2020-06065
Filed In Providence/Bristol County Superior Court
Submitted: 1/21/2021 9:09 AM
Envelope: 2025755
Reviewer: Jalden H.

STATE OF RHODE ISLAND
PROVIDENCE, SC                                                          SUPERIOR COURT

RHODE ISLAND PUBLIC TRANSIT                )
AUTORITY                                                    )
                                                                    )
                Plaintiff,                                   )
                                                                    )
        v.                                                          )        Civil Action No. PC-2020-06065
                                                                    )
MICKEDA BARNES,                                      )
                                                                    )
                Defendant.                                  )
_____ )

## ORDER

This matter came for hearing before the Honorable Joseph A. Montalbano on January 7,

2021, on the Defendant Mickeda Barnes' ("Defendant") Motion to Compel Union Contract

Agreement to Arbitration ("Motion"). After hearing thereon, it is hereby:

## ORDERED, ADJUDGED, AND DECREED

1.        Defendant's Motion, is DENIED.


**ENTERED** as an Order of this Court this _____ day of January 2021.

**ENTER:**                                                        **PER ORDER:**


_____                    _____
Hon. Joseph A. Montalbano, Associate Justice

293

Case Number: PC-2020-06066
Filed in Providence/Bristol County Superior Court
Submitted: 1/21/2021 9:09 AM
Envelope: 2925755
Reviewer: Jalden H.

Presented by,

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY,

By its attorneys,

/s/Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell (#6970)
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI 02903
401.824.2500
401.633.6853 (fax)
jfolgerhartwell@littler.com

January 21, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of January, 2021, the foregoing Order was e-filed and served through the electronic filing system (if applicable to Plaintiff) and by regular mail on the following party.  The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916

/s/ Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell

4825-7554-2488.1 088768.1017

2

294

State of Rhode Island                                    Superior Court
Providence, SC


Rhode Island Public Transit Authority
Plaintiff

                                                    PC-2020-06065

V

Mickeda Barnes
Defendant


**Answer**

1.  The defendant is without knowledge or information sufficient to form a belief as to the truth of
    the allegations contained in this paragraph of the plaintiff's complaint and, therefore, leaves
    plaintiff to his proof.

2.  Denied.
3.  Denied.
4.  Denied.
5.  Denied.
6.  Denied.
7.  Denied.
8.  Admitted.
9.  Denied.
10. Denied.
11. Denied.
12. Denied.
13. Denied.
14. Admitted.
15. Denied.
16. Denied.
17. Denied.
18. Denied.
19. Denied.
20. Denied.
21. Denied.
22. Denied.
23. Denied.
24. Denied.

1

295

25. Admitted.
26. Denied.
27. Denied.
28. Denied.
29. Denied.
30. Admitted.
31. Admitted.
32. Denied.
33. Denied.
34. Denied.
35. Denied.
36. Denied.
37. Denied.
38. Denied.
39. Denied.
40. Denied.
41. Denied.
42. Denied.
43. Denied.
44. Denied.
45. Denied.
46. A) Denied, B)Denied. C) Denied. D) Denied.
47. Denied
48. Denied.
49. Denied.
50. Denied,
51. Denied,

2

296

### Affirmative Defenses

The Defendant having denied each and every allegation of the plaintiff's complaint not specifically admitted to above, for her affirmative defenses, states and alleges as follows:

### First Affirmative Defense

Plaintiffs' counterclaims fail to state a claim for which relief can be granted.

### Second Affirmative Defense

Plaintiffs claims are barred by the doctrine of estopped.

### Third Affirmative Defense

Plaintiffs damages if any are caused by their own negligence and/or by the acts of third parties over whom the plaintiff has no authority or control.

### Fourth Affirmative Defense

Plaintiffs' claims are barred because they failed to settle a global settlement court order in workers compensation court on 12-01-2017. Minimize, or avoid it's alleged damages by not providing compensation or mandatory medicare set aside as"**RIGL§ 28-30-13"**. **Controversies submitted to court.**

(a) Any controversy over which the worker's compensation court has jurisdiction in accordance with chapters 29-38 and chapter 53 of this title, including compensation, reasonableness of medical and hospital bills, degree of functional impairment and/or disability, a dispute between an insurance carrier and an employer under a worker's compensation insurance contract, except disputes under the jurisdiction of the workers' compensation appeals board established pursuant to RIGL§ 27-9-29, failure of an employer to secure the payment of compensation under chapters 29-38 and chapters 53 of this title and any controversy in which the State or any of it's political subdivisions is party, and appeals from an order of the retirement board pursuant to Rhode Island general Law §45-21.2-9 shall be submitted to the court in the manner provided in chapters 33 and 35 of this title.

3

297

(b) Disputes between an insurance carrier and an employer under a worker's compensation insurance contract shall not be subject to a pretrial conference in accordance with RIGL § 28-35-20, but shall be assigned consistent with the rules of practice of the court.

### Fifth Affirmative Defense

Plaintiffs claims as set forth in the counterclaim are void as against public policy.

### Sixth Affirmative Defense

Plaintiffs claims are barred by the doctrine of unclean hands.

### Seventh Affirmative Defense

Plaintiffs' claims are barred, it failed to satisfy conditions precedent.

### Eighth Affirmative Defense

Defended reserves the right to assert additional defenses as may be discovered.

### Ninth Affirmative Defense

Defendant Discrimination Attorney, is on court leave post-surgery Sonja Dejoy. Defendant Workers Compensation Attorney Steven Dennis has been Fired on September 16, 2020. Defendant Attorneys' were responsible for this case to be settled and were paid based on the Court's order of agreement on record in Workers Compensation Court on December 1,2017 and not based off the" allege" plaintiffs' all claims settlement agreement signed on April 25, 2018. The discrimination agreement settlement payment was release pending CMS medicare being paid and that Defendant could not petition theWorker's Compenstion Court for issue of a weekly benefits payments while entered into global settlement agreement. Defendant had already went 78 weeks without entitled weekly benefits because the court order global settlement never settled as a global settlement due to Insurance (liability), and Employer RIPTA and RIPTA'S BOARD for the CMS nonpayment to the global settlement contract that is mandatory by MMSEA Section 11 Medicare Insurer Reporting in respect to Medicare beneficiaries who have coverage under group health plan arrangements as well as for Medicare beneficiaries who receive settlements, judgements, awards or other payments from liability insurance (including Self-Insurance), no fault insurance or workers' compensation.

Commercial insurers and self insurers entities must report it to CMS and the information to be reported by the worker's compensation, liability or no fault insurer is information about the insurance plan, payment information identify the Medicare beneficiary and their injuries, identify the beneficiary's legal representation or if they are deceased, they must identify any claimants and their representatives that are pursuing a settlement on behalf of the estate, and if it is a group health plan must report entitlements information about employees and dependants with an option to exchange prescription drug coverage

4

## Demand For Jury Trial

Defendant hereby demands a trial by Jury.

Pro- Se Defendant
Mickeda S. Barnes
34 Dunbar Ave
Rumford RI 02916
401-419-2250

### Certificate Of Service

I hereby certify, that on the 21st day of September 2020

I served this document through the electronic filing system on the Rhode Island Judiciary system in first class mail to Jillian Hartwell Littlergrammarly mendelson, P.C.

One Financial Plaza,
Suite 2205
Providence RI, 02903
401-824-2500
401-454-2969 FAX

5

299

# Exhibit A

# Global Settlement
# 12-01-2017

1       STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

2    PROVIDENCE, SC.                WORKERS' COMPENSATION
                                                    COURT

3

4

5    MICKEDA BARNES             )

6      VS.                 )   W.C.C. 2017-06824
                                        2017-06646

7    RHODE ISLAND PUBLIC TRANSIT )       2017-06073
    AUTHORITY                      2017-05115

8                                      2017-04571
                                      2017-04145

9                                      2017-04046

10

11

12        HEARD BEFORE CHIEF JUDGE ROBERT M. FERRIERI ON:
                  Friday, December 1, 2017

13

14               ————————————————————

15

16

17

18    APPEARANCES:

19    STEPHEN DENNIS, ESQ........COUNSEL FOR THE PETITIONER
    SONJA DEYOE, ESQ.

20    NICHOLAS MANCINI, ESQ......COUNSEL FOR THE RESPONDENT

21    JILLIAN FOLGER-HARTWELL, ESQ.

22

23    Also Present:

24    Judge Michael Feeney

25

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 557 of 689 PageID #: 912
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 300 of 346   PageID 301

2

1                    I N D E X

2

3    WITNESS                                    PAGE

4

5              No witnesses called.

6

7

8

9

10                  E X H I B I T S

11

12            No Exhibits offered.

13

14

15

16

17

18

19

20

21

22

23

24

25

302

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 558 of 689 PageID
#: 913
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 301 of 346   PageID 302

3

```
 1            (FRIDAY, DECEMBER 1, 2017)

 2            THE COURT:   These are the matters of Mickeda

 3   Barnes v. Rhode Island Public Transit Authority,

 4   2017-4571, 2017-4046, 2017-4145, 2017-6073, 2017-5115,

 5   2017-6646 and 2017-6824.   The matters were assigned for

 6   mediation under our new mediation program, and Judge

 7   Feeney has undergone a lengthy mediation process -- I

 8   know because the mediation process takes place right

 9   outside of my office -- that Ms. Barnes, her

10   representatives, and Rhode Island Public Transit

11   representatives were here this morning and have worked

12   diligently to reach a resolution.   So I have been asked

13   by the parties to take the bench and essentially go on

14   the record to set forth the terms of what I believe has

15   been a resolution of not only the Workers' Compensation

16   claim but the various other claims that are pending

17   against Rhode Island Public Transit Authority filed by

18   Ms. Barnes.

19            With that being said, I'm going to ask who is

20   going to be the spokesperson who's going to set forth the

21   terms of the settlement on the record.

22            MR. DENNIS:   I think Sonja.

23            THE COURT:   If you can just identify yourself

24   for the record.

25            MS. DEYOE:   Sure.   Attorney Sonja Deyoe.
```

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 559 of 689 PageID #: 914
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 302 of 346   PageID 303

4

1    Your Honor, as I understand it, we have a global

2    settlement for $200,000 with a $25,000 MSA or up to

3    $25,000 MSA.  I understand that has to be subjected to

4    board approval from RIPTA.  $50,000 of that settlement if

5    approved would be through Comp., the other $150,000 would

6    be through the discrimination claim.  There is a

7    discrimination claim that is pending over with the United

8    States District Court.  Any fee that is paid on this

9    matter will be through that discrimination claim.  The

10   fee that's been agreed on that will be split between

11   Attorney Dennis and myself is $40,000.  That gives the

12   remainder of $110,000 that will be paid out to Ms. Barnes

13   in addition to the $50,000 from the Comp. funds.  That

14   $110,000 will have to be paid out both in wage format and

15   1099 format.  That percentage has not been agreed to yet,

16   but we will be contacting counsel with respect to that.

17             THE COURT:  Okay.  The 25,000 MSA, is that

18   coming out of the 200 or is that an additional 25?

19             MS. DEYOE:  It's an additional.  It is up to

20   that amount, could be less.

21             THE COURT:  Based on the analysis of a third

22   party --

23             MR. MANCINI:  I can speak a little bit more

24   to that, Your Honor.  Essentially, the Workers'

25   Compensation lump sum that will be proposed will be a

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 560 of 689 PageID #: 915
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 303 of 346   PageID 304

5

1    $50,000 settlement on the February 12, 2015 injury.   In

2    addition to the $50,000, we will fund an MSA, but our

3    settlement is conditioned upon that MSA being less than

4    $25,000.  We will get the MSA through Carr Allison

5    immediately.  It's also conditioned from board approval

6    by RIPTA.  In the event that the MSA is returned and is

7    above $25,000, we may need to revisit the terms of the

8    global settlement.  So in a sense, we have a settlement

9    agreement in principle subject to those conditions.

10   There are a number of other prior unrelated Workers'

11   Compensation claims that Ms. Barnes has from her time at

12   RIPTA.  We'll also look to resolve those through one

13   dollar nominal lump sums or D and Ds as the case may be.

14              THE COURT:   Gotcha.

15              MS. DEYOE:   There's also an agreement that in

16   good faith there will be a $3,000 advancement to Ms.

17   Barnes.

18              THE COURT:   How much?

19              MS. DEYOE:   $3,000, which mechanically I

20   understand would be attributed to the loss of use

21   petition that's pending before this Court, and I don't

22   have any idea what that number is.

23              MR. MANCINI:   I'll just speak a little bit

24   further to that, Your Honor.  The amount was keyed to the

25   loss of use petition.  The mechanism will be a mutual

1   agreement.  $3,000 will be paid to Ms. Barnes as an

2   advance against the settlement and considered as such in

3   the event that the settlement ultimately comes to

4   fruition as approved by the Court.  In the event that it

5   falls apart per the mutual agreement, as a credit against

6   future indemnity benefits.

7              THE COURT:  Okay.

8              MS. DEYOE:  The only thing I was going to add

9   is that with the federal matter, we do have a hearing

10  that's upcoming with the court.  I have agreed to contact

11  the court to continue that with an attempt to avoid

12  further cost for RIPTA.

13             THE COURT:  Who's hearing the federal matter?

14             MS. DEYOE:  Judge McConnell, I believe.

15             THE COURT:  If Judge McConnell needs to

16  contact me regarding the settlement or certainly where

17  the case is at in the Workers' Comp. Court, please feel

18  free to have him do so.

19             MS. DEYOE:  I will.

20             THE COURT:  Is that it?

21             MS. FOLGER-HARTWELL:  May I address the Court

22  briefly?

23             THE COURT:  You may.

24             MS. FOLGER-HARTWELL:  Jillian Folger-Hartwell

25  for RIPTA.  The settlement agreement in relation to the

306

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 562 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 305 of 346   PageID 306
#: 917

7

1    discrimination case that is pending in Federal Court will

2    have the usual provisions in it.  That will include full

3    release of all claims, no reapplication, no rehire, all

4    of the RIPTA confidentiality and nondisparagement

5    provisions.

6                THE COURT:  So in lieu of that, I take it

7    that as part of this settlement, the reinstatement

8    petition will be withdrawn with prejudice?

9                MR. MANCINI:  It could be withdrawn with

10   prejudice or alternatively a pretrial order can enter

11   denying it.  I think the same result is achieved.

12               THE COURT:  My only issue with the pretrial

13   order entered denying it is with the five-day claim for

14   trial.  So if we're going to try to do this in one day,

15   we will be better served withdrawing it with prejudice.

16               MR. DENNIS:  My client just mentioned one

17   thing to me, Judge.  May we approach the bench, go off

18   the record?

19               THE COURT:  Sure.

20          (OFF-THE-RECORD BENCH DISCUSSION)

21               THE COURT:  So the knee claim will be settled

22   for a dollar, and there will be a waiver of the lien as a

23   result thereof.

24               MR. DENNIS:  Yes, Your Honor.  So there would

25   be a waiver of the third-party lien with regard to the

8

1    injury of her left knee or --

2                   MS. BARNES:  Right knee.

3                   MR. DENNIS:  Right knee.

4                   MS. DEYOE:  I just want to be clear on one

5    thing just to make sure it's on the transcript for, you

6    know, 20 years from now if this comes back up.  My

7    understanding is my client is entitled to a retirement

8    benefit and that I have been provided with documentation

9    that establishes the amount of that benefit which is in

10   the neighborhood of $600 a month that she be entitled to

11   when she turns 62 years of age.  I just want to confirm

12   that on the record.  Is that correct, Ms.

13   Folger-Hartwell?

14                  MS. FOLGER-HARTWELL:  Your Honor, can I have

15   moment to speak with my client?

16                  THE COURT:  Before you speak with your

17   client, I'm not sure what the retirement benefit is, and

18   if it's a sticking point, we're not sure of the amount,

19   then perhaps a stipulation can be made that any claim she

20   may have to retirement benefits is not affected by any of

21   these settlements.  That may -- in general, I'm not sure

22   if it satisfies both sides, but without getting into the

23   nitty-gritty of what the exact amount is for retirement

24   benefits.  I'm not sure if that satisfies your concerns.

25                  MS. FOLGER-HARTWELL:  I think that's a good

308

1   suggestion.  If I can speak with my client.

2                THE COURT:  Would that work for you, Sonja?

3                MS. DEYOE:  I'm not certain it would.  We've

4   had a representation basically of what that calculation

5   is.

6                THE COURT:  Okay.

7                MS. DEYOE:  I just want to make certain of

8   two things.  One is that she is entitled to retirement at

9   the age of 62, and that she can rely on that calculation.

10               THE COURT:  So why don't we have both parties

11  speak?

12                       (BRIEF RECESS)

13               THE COURT:  So let's go back on the record to

14  make sure we have an understanding.  I think it's

15  stipulated by all sides that any pension rights that Ms.

16  Barnes has are not affected by any of the settlements or

17  agreements that have been reached here today as a result

18  of the mediation and settlements of the parties.  Am I

19  correct?

20               MS. FOLGER-HARTWELL:  Yes, Your Honor.

21               MS. DEYOE:  Yes, Your Honor.

22               THE COURT:  Any other things that need to be

23  placed on the record?

24               MR. MANCINI:  I'd just like to thank Judge

25  Feeney for his efforts.

309

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 565 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 308 of 346   PageID 309
#: 220

10

```
 1          THE COURT:  I'm going to do that.  I was

 2   going to try to recap everything on the record, but I

 3   think if I do that, I may put my foot in my mouth, so I'm

 4   dare not going to do that.  I'm assuming that the parties

 5   will be requesting a copy of this record from you, but I

 6   will leave that to the attorneys.

 7          First of all, I want to thank the parties, both

 8   Ms. Barnes and Rhode Island Public Transit Authority, for

 9   agreeing to the mediation.  This is something that's been

10   in effect for a little over a year, and that has been

11   very successful, but success is predicated on a number of

12   things.  Number one, it's predicated on the parties

13   agreeing to actually mediate the claim.  Secondly, it's

14   predicated on the attorneys that are involved in the

15   mediation, and I can see that we have many skilled

16   attorneys here, and I thank them for their efforts

17   because this is a very complicated case, as you know.

18   You've been living through it yourself.

19          And lastly, I can't thank enough my associate

20   judge, Judge Feeney, for bringing this to a resolution.

21   I think through his efforts this case was able to be

22   settled, and only through his efforts, and I commend him.

23   He certainly grasped the issues, and I can tell you that

24   he spent a lot of time learning the case, learning the

25   issues and preparing, and that is I think one of the keys
```

310

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 566 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 309 of 346   PageID 310
#: 921

11

1    for this actually being resolved.  So I can't thank him

2    enough for his efforts.  So we do have a matter -- the

3    matter is scheduled for December 4th.  There is no need

4    for us to meet since we went on the record today.  Let me

5    ask this, how much time do you think you need to at least

6    submit this to Carr Allison, and I take it any of the

7    accepted claims will be submitted?  You tell me.

8              MR. MANCINI:  Two weeks to get it submitted,

9    Judge, the maximum.

10             THE COURT:  So why don't we do this?  I'm

11   going to kick this for a date just before the Christmas

12   holiday for the attorneys.  Ms. Barnes, you know you're

13   always welcome in my courtroom, but there's no need for

14   you to pay for parking and come here.  I'm doing this for

15   twofold.  Number one, I want to make sure that the MSA

16   proposal has been submitted.  Number 2, I want to make

17   sure that the mutual agreement relative to the $3,000

18   that you're going to be paid before the Christmas holiday

19   has been executed.  Once I'm satisfied that that has been

20   done, I will then put it down for a date sometime in

21   January for further status on the MSA.  Okay.

22             MS. BARNES:  Could I get the $3,000 ASAP?  I

23   need to pay some bills.

24             THE COURT:  Your attorney will be speaking

25   with RIPTA and Mr. Mancini, and I'm sure that will be

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 567 of 689 PageID
#: 922
Case 1:22-cv-00213-JJM-PAS    Document 1-1    Filed 05/31/22    Page 310 of 346    PageID 311

12

 1   done sometime next week.

 2                    (OFF THE RECORD)

 3             THE COURT:   Any other things that need to be

 4   placed on the record?

 5             MR. DENNIS:   No, thank you very much, Your

 6   Honor.

 7             THE COURT:   We'll see everyone on the date of

 8   December -- my writing week is the 11th.  So let's do a

 9   chamber conference the 12th, 12/12.  I'd love to see the

10   attorneys representing or involved in the federal suit,

11   but you need not be here if everything seems to be going

12   as scheduled.  All I need to do is see Mr. Dennis and Mr.

13   Mancini for them to report that said mutual agreement is

14   executed, the claims have been submitted to Carr Allison,

15   and things are going along smoothly.  If there's an

16   issue, I welcome everyone to please come and see me on

17   the 12th.

18                    (HEARING ADJOURNED)

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3          I, Jeannette A. Sidelinger, a Certified Court Reporter

4   for the Workers' Compensation Court for the State of

5   Rhode Island, hereby certify that the foregoing pages, to

6   wit, 3 through 12, were recorded by me in stenotype and

7   later reduced to print via computer-aided transcription;

8   and that the foregoing transcript of the testimony is a

9   true and accurate record according to my stenographic

10  notes.

11

12

13         _____

14              JEANNETTE A. SIDELINGER
                Certified Court Reporter
15              Workers' Compensation Court

16

17

18  DATE: _____12/7/17_____

19

20

21

22

23

24

25

# Exhibit B

Steven Dennis Reciept
Payment and Responsibility
To Global-Settlement /
Discrimination Payment
Of $10,000.⁰⁰ from

Global Settlement Coort
ordered and Agreed
12-1-2017

Page 4 of agreement
Reference How
Steven Dennis and Sonja Dejoie
gets paid

314

## Agreement in the Mickeda Barnes Matter

I understand that this case was referred to the Law Offices of Sonja L. Deyoe from Attorney Stephen J. Dennis.

I further understand that the Law Offices of Sonja L. Deyoe will be assuming responsibility, along with Attorney Stephen J. Dennis for the legal representation in this matter, and that Attorney Stephen J. Dennis will receive $10,000.00 of any attorney fees realized by the Law Offices of Sonja L. Deyoe.

This Agreement is acceptable to me.

DATED: July 19, 2018

Mickeda Barnes

Stephen J. Dennis, Esq.

Sonja L. Deyoe, Esq.

315

Exhibit C

Global Settlement
12-01-2017
Page 7 for Reinstatement
Petition / Fine day
Claim for trial.

Waive third Party Lien
for the Right Knee Injury
Page 7

316

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 572 of 689 PageID #: 927
Case 1:22-cv-00213-JJM-PAS   Document 11   Filed 05/31/22   Page 315 of 346   PageID 316

7

1    discrimination case that is pending in Federal Court will

2    have the usual provisions in it.  That will include full

3    release of all claims, no reapplication, no rehire, all

4    of the RIPTA confidentiality and nondisparagement

5    provisions.

6               THE COURT:  So in lieu of that, I take it

7    that as part of this settlement, the reinstatement

8    petition will be withdrawn with prejudice?

9               MR. MANCINI:  It could be withdrawn with

10   prejudice or alternatively a pretrial order can enter

11   denying it.  I think the same result is achieved.

12              THE COURT:  My only issue with the pretrial

13   order entered denying it is with the five-day claim for

14   trial.  So if we're going to try to do this in one day,

15   we will be better served withdrawing it with prejudice.

16              MR. DENNIS:  My client just mentioned one

17   thing to me, Judge.  May we approach the bench, go off

18   the record?

19              THE COURT:  Sure.

20         (OFF-THE-RECORD BENCH DISCUSSION)

21              THE COURT:  So the knee claim will be settled

22   for a dollar, and there will be a waiver of the lien as a

23   result thereof.

24              MR. DENNIS:  Yes, Your Honor.  So there would

25   be a waiver of the third-party lien with regard to the

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 573 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 316 of 346   PageID 317
#1 928

# Exhibit D

Confidentiality Requirement
Negotiation Authorization

Employee Mickeda S Barnes
Confidential Mediation
Statement

318

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 574 of 689 PageID
Case 1:22-cv-00213-JJM-PAS    Document 2-1    Filed 05/26/22    Page 317 of 346    PageID 318
#: 235

CONFIDENTIAL MEDIATION STATEMENT

ADMINISTRATOR                               JUDGE

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## PROVIDENCE, SC.        WORKERS' COMPENSATION COURT

Mickeda S. Barnes

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY

}    W.C.C. No.    201706824, 201704145, 201706646,
                  201705115, 201706073

## CONFIDENTIALITY REQUIREMENT / NEGOTIATION AUTHORIZATION

I hereby agree that any and all documents submitted and statements made in furtherance of mediation, including, but not limited to, the content of the mediation statement and any attachments thereto, and any relevant memoranda or supporting documentation relied upon during the course of the mediation session by counsel, any party or the mediator shall remain confidential. My client(s) further agree(s) not to subpoena or otherwise subject the mediator, staff members, or records of the Workers' Compensation Court Mediation Program to any court proceedings, lawsuits or other legal actions related to the mediation process or its outcome.

My client(s) agree to participate in mediation, and I am authorized to participate and negotiate on behalf of my client(s) with full authority to make and/or accept offers. If I am not so authorized at the time of mediation, I will make arrangements to have my client(s) or authorized representative(s) available in person or by telephone at the time of the mediation session.

I understand, and my client(s) have been informed, that even if this case proceeds to mediation, it is subject to all applicable time limitations and requirements as set forth by the trial judge presiding over this case. If an agreement is reached, the appropriate documentation will be promptly filed with the Court. I understand and my client(s) have been informed that failure to abide by the above requirements may result in sanctions.

COUNSEL FOR EMPLOYEE (PRINT NAME)

SIGNATURE

Nicholas Mancini    #7100

11/8/18
DATE

COUNSEL FOR EMPLOYER (PRINT NAME)

319

STATE OF RHODE ISLAND
PROVIDENCE, SC.

MICKEDA S. BARNES

VS.

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY

WORKERS' COMPENSATION
COURT

:
:
:
:
:

WCC NO. 2017-4046; 2017-4145;
2017-4571; 2017-5115

### EMPOLYEE MICKEDA S. BARNES'S
### CONFIDENTIAL MEDIATION STATEMENT

Now comes the Employee, Mickeda S. Barnes, by and through her counsel

Stephen J. Dennis, Esq. in the above-captioned matter and hereby, pursuant to

Administrative Order No. 2016-06 IIIc and Order dated September 27, 2017, submits the

following Confidential Mediation Statement.

I        POSITION OF THE EMPLOYEE

The Employee has four petitions pending before Chief Ferrieri. The first petition

is a Petition to Review seeking payment of Dr. Michael Souza's bill in the amount of

$2,873.00. (WCC 2017-4046). The Employee took a pro forma denial at the pre-trial

stage and filed a claim for trial on that matter. The second petition which the Employee

also took a pro forma denial on is a petition to review seeking permission to treat with a

psychologist. (WCC 2017-4145). Employee timely filed a claim for trial on the denial.

An initial hearing has not been held on these two petitions. On the date these two

petitions came before the Court for initial hearing, September 6, 2017, Employee's third

petition for disfigurement was heard and argued. Chief Ferrieri granted the petition.

From this award at pre-trial the Employer filed a timely claim for trial. At that time the

1

*[handwritten in right margin: That's I why I want my Interest for the year and my 4% loss of use]*

Court recognized that the Employee would be filing a claim for recurrence and recommended that she file the Petition prior to the next Court date for initial hearing (September 27, 2017) and recommended that the parties strongly consider mediation. The Court was also aware that there were other matters pending between the parties in other venues and urged that all matters be mediated working toward a global resolution. Finally, the Chief indicated that he would appoint an impartial on the recurrence petition in the event the parties were unwilling to mediate. Employee indicated her willingness to mediate at that time.

Employee filed the fourth pending petition in this Court (WCC 17-5115) alleging a recurrence and a return of her incapacity from February 9, 2017 and continuing. On September 27, 2017 when the matter came before the Chief all pending matters referred to mediation.

At the time of the injury Employee's average weekly wage (AWW) was $1,322.77. Employee's spendable base is $1094.60; and her compensation rate is $820.95. Her injury occurred on February 12, 2015 following a slip and fall on the ice while at work. She was initially paid weekly benefits pursuant to a Memorandum of Agreement. The Memorandum of Agreement was amended to include the left wrist on March 2, 2016 pursuant to a pre-trial order entered by Judge Salem in WCC 2015-6647. Judge Hardman discontinued Employee's weekly benefits on November 10, 2016 (WCC 2016-3927). On February 3, 2017 the Court entered an ex parte order granting Employee permission for left hand carpal tunnel release pursuant to Dr. Scott Schmidt's report.

Employee asserts that he will prevail on his petition after a trial on the merits:

*[Handwritten margin notes:]* My Case got switched in a middle of a pre-trial order entered by Judge Salem and then Dr. Schmidt by Judge Hardman 8 months later. The Court granted permission for the Left Hand Surgery so The Court Should go by Dr Schmidt Loss of use Percentage from that 2nd Hand Surgery.

II.    MEDICAL OPINIONS

Employee will rely on the medical opinions of her doctors including Dr. Schimdt.

III.    LAY WITNESSES

The Employee will testify in this case.

Petitioner/Employee
By her attorney:

_/s/ STEPHEN J. DENNIS_____
Stephen J. Dennis, Esq. #4336
127 Dorrance Street, 3rd Fl, Suite 7A
Providence, RI  02903
(401) 453-1355

3

322



# Exhibit E

## Statement of the Mediator
## 12-01-2017

(A) In Full Agreement
Lump Sum Payment

(B) ORDER
Continued to 12/7 @ 9:30
Entered in Court Nov 8

323

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

**PROVIDENCE, SC.**          **WORKERS' COMPENSATION COURT**

Mickeda S. Barnes

vs.                    }          W.C.C. No.  201704046, 201704145, 201704571,201705115

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY

### Statement of the Mediator

In regard to the above matter, the undersigned was assigned as Mediator, by an Order

issued by Chief Judge Ferrieri  on September 27, 2017.

The Mediation was:

☐ scheduled but not heard

☐ was held on the following date(s)          12/1/17

The Mediation ended:

☑ in full agreement as follows:          *Wns[?] settlement*
*to be filed*
*to resolve compensation*
*matter*
*12/1/17*

☐ in non-agreement

Signature: _____          Date: _____

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.           WORKERS' COMPENSATION COURT

|  |  |  |
|---|---|---|
| Mickeda S. Barnes | ) | |
| | ) | W.C.C. No.   201706824, 201704145, 201706646, 201705115, 201706073 |
| VS. | ) | |
| RHODE ISLAND PUBLIC TRANSIT AUTHORITY | ) | |

## ORDER

Upon good cause, the above entitled matter is hereby referred for Mediation.

Judge _Feeney_ is assigned to mediate this matter. This matter is

continued to ___12/7 @ 930___, before this court, for further

proceedings. All mediation documents shall be provided to the Mediation

Coordinator by ___11/21/18___

Entered as an Order of this Court this ___8th___ day of ___Nov.___

PER ORDER:                    ENTER:

/s/ Nicholas DiFilippo          /s/ Chief Judge Robert M. Ferrieri

325

# Exhibit F

Discrimination
Agreement Contract
From 4-25-18

Section (d) In Regards
To Workers
Compensation
Benefits

*Discrimination*
*agreement Contract from*
*4-25-18*

all claims she has against Releasees, this provision does not prohibit and does not apply to a

challenge to the knowing and voluntary nature of her waiver of age claims under the ADEA and

OWBPA.

(c)    This release covers claims that Employee knows about, and those that she may

not know about, up through the date of this Agreement.

(d)    Despite any language herein to the contrary, Employee does not release claims

that may arise after Employees signs this Agreement or that by law cannot be released by private

agreement. For example, this Agreement does not release claims for unemployment insurance or

workers' compensation benefits. *Claims to Workers Compensation*

*Does Not Release*

*Benefits*

(e)    After the parties had reached agreement in principal, Employee filed the above-

reference suit in Rhode Island Superior Court, Case No. PC-2018-2287. As a result, the Parties

hereby agree that, except to enforce the provisions of this Agreement, should Employee bring

any claim, action, or suit on any matter covered by the releases set forth in this Paragraph 2,

against the Releasees, this Agreement may be asserted as a complete defense, and if the

Releasees, collectively or individually, prevail, Employee shall be responsible for liquidated

damages in the amount of $10,000 per violation or paying the attorneys' fees and costs that the

prevailing Releasee(s) incurs in opposing such claim, whichever is less, in addition to any other

relief to which the Releasee(s) may be entitled. Although Employee is releasing all claims she

has against Releasees, this provision does not prohibit and does not apply to a challenge to the

knowing and voluntary nature of her release of age claims under the ADEA and OWBPA.

3.    **Age Discrimination in Employment Act ("ADEA").**

(a)    **Twenty-One (21) Day Consideration Period.** Employee shall have twenty-one

(21) days to consider and accept the terms of this Agreement by fully executing it below, and

returning it to counsel for the Authority, Jillian Folger-Hartwell, One Financial Plaza, Ste. 2205,

Firmwide:151655351.8 088768.1003

327

# Exhibit G

# Medicare Set a Side
# Intrest Report (Partical)

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 584 of 689 PageID #: 939
Case 1:22-cv-00213-JJM-PAS    Document 1-93    Filed 05/31/22    Page 327 of 346    PageID 328
04/03/2018 10:27AM FAX  4017349334    CONNOR LAW OFFICES

WORKERS' COMPENSATION MEDICARE SET-ASIDE ARRANGEMENT (WCMSA) REVIEW

Case Control #: WC1806801376397    Medicare ID/SSN: *****8332A

Claimant's Name: MICKEDA BARNES

Date of Injury: 02/18/2004

Diagnosis Code:

| Dx Code | Dx Ind. | Dx Description |
|---------|---------|----------------|
| G5602 | ICD-10 | Carpal tunnel syndrome, left upper limb |
| M25539 | ICD-10 | Pain in unspecified wrist |
| M25561 | ICD-10 | Pain in right knee |
| M545 | ICD-10 | Low back pain |

*(Needs Added) Rt Shoulder Injury*

Proposed Settlement Date (PSD): 07/07/2018    Date of Birth: 01/31/1975
Age at PSD: 43    Rated Age at PSD: 43    Life Expectancy: 33 yrs.

Submitter:
(205) 822-2006
CARR ALLISON
100 Vestavia Parkway
Birmingham, AL 35216

Claimant:
MICKEDA BARNES
34 DUNBAR AVE
RUMFORD, RI 02916-3111

WCMSA Administrator:
MICKEDA BARNES
34 DUNBAR AVE
RUMFORD, RI 02916-3111

[] SSA's record shows Representative Payee

Proposed Future Medical WCMSA Amount: $11,355.00
Proposed Future Rx WCMSA Amount: $0.00
Total Proposed WCMSA: $11,355.00
Proposed Initial Deposit: $0.00
Total Settlement Amount: $61,355.00

Recommended WCMSA: $127,268.00    Pricing Method: Fee    WC State: RHODE_ISLAND
Recommended WCMSA Lump Sum [X] or
Recommended WCMSA Structured Payments: []
Recommended Initial Deposit: $0.00
Annual Amount: $0.00 x 37 yrs.
Anniversary Date: 07/07/2019
Type of Recommendation: Counter-Higher
If not eligible for WCMSA, reason:

*Needs Added*

Current Treatment Status for WC Injury or Disease (including past medical treatment):

*TB Injury 2008 ( Trigger point injections and Fioricets medicines )*

04/03/2018 10:27AM FAX  4017349334          CONNOR LAW OFFICES                          ☎0007/0012

Page 2 of 3

CLAIMANT SUSTAINED MULTIPLE WORK RELATED INJURIES FROM 2/18/2004 TO 2/12/2015 INVOLVING MULTIPLE BODY PARTS INCLUDING THE NECK, RIGHT ARM, RIGHT SHOULDER, RIGHT WRIST, RIGHT HAND, RIGHT KNEE, LOWER BACK, LEFT WRIST AND LEFT ARM. THE MOST RECENT WORKRELATED INJURY OCCURRED ON 2/12/2015. AT THAT TIME, CLAIMANT REPORTED LOW BACK AND LEFT WRIST PAIN FOLLOWING A SLIP AND FALL. CLAIMANT UNDERWENT LEFT CARPAL TUNNEL RELEASE (5/6/2015) AND LEFT CARPAL TUNNEL RELEASE REVISION AND GUYON'S CANAL RELEASE (2/9/2017). CLAIMANT CONTINUES TO COMPLAIN OF PAIN IN LEFT WRIST, LEFT ARM, RIGHT KNEE AND CHRONIC LOWER BACK PAIN. PREVIOUS TREATMENT INCLUDED DIAGNOSTIC IMAGING, MEDICATIONS, STEROID INJECTIONS, PHYSICAL THERAPY, DURABLE MEDICAL EQUIPMENT, AND FOLLOWUP EVALUATIONS. CLAIMANT ACTIVE WORK RELATED DIAGNOSES INCLUDE CHRONIC BILATERAL LOW BACK PAIN WITHOUT SCIATICA, CHRONIC PAIN OF THE RIGHT KNEE, CARPAL TUNNEL SYNDROME, LEFT UPPER LIMB, AND LEFT WRIST PAIN.

**Past Medical Treatment Unrelated to WC Injury or Its Co-Morbid Conditions:**

CLAIMANT'S PAST MEDICAL HISTORY INCLUDES ANXIETY, CARDIAC MURMUR, DEPRESSION, HYPERTENSION, REFLEX SYMPATHETIC DYSTROPHY OF THE LOWER EXTREMITY, GASTRIC BYPASS IN 2004, AND INJURIES FROM 7/26/2008 OF THE NECK, RIGHT ARM AND RIGHT SHOULDER.

*[Handwritten note in right margin: RSD IS from the Oct 2013 Injury to Rt Knee. Rt Shoulder is from 2-12-2015 Slip & Fall Injury]*

**Future Treatment (for Medicare-covered items and reimbursable services for the WC injury only):**

FUTURE TREATMENT INCLUDES ROUTINE PHYSICIAN EVALUATION, INJECTIONS, DIAGNOSTIC STUDIES, LABS, PHYSICAL THERAPY, AND PERIODIC REPLACEMENT OF DURABLE MEDICAL EQUIPMENT.

The following chart summarizes the future medical treatment costs (exclusive of pharmacy items) that adequately protect Medicare's interests:

| Service | Freq | Every X Yrs | # of Years | Price Per Service | Total |
|---|---|---|---|---|---|
| ELECTROMYOGRAPHY OF | 1.00 | 38.00 | 38.0 | $235.66 | $235.66 |
| NERVE CONDUCTION STU | 1.00 | 38.00 | 38.0 | $300.50 | $300.50 |
| X-RAY OF LEFT WRIST | 12.00 | 38.00 | 38.0 | $83.50 | $1,002.00 |
| LEFT WRIST BRACE | 7.00 | 38.00 | 38.0 | $70.17 | $491.19 |
| PHYSICIAN EVALUATION | 6.00 | 1.00 | 38.0 | $143.76 | $32,777.28 |
| PHYSICAL THERAPY VIS | 24.00 | 38.00 | 38.0 | $97.44 | $2,338.56 |
| PHYSICAL THERAPY VIS | 24.00 | 38.00 | 38.0 | $97.44 | $2,338.56 |
| X-RAY OF LUMBAR SPIN | 12.00 | 38.00 | 38.0 | $79.21 | $950.52 |
| MRI OF LUMBAR WITH A | 6.00 | 38.00 | 38.0 | $1,194.22 | $7,165.32 |
| COMPREHENSIVE METABO | 1.00 | 1.00 | 38.0 | $15.24 | $579.12 |
| COMPLETE BLOOD COUNT | 1.00 | 1.00 | 38.0 | $11.21 | $425.98 |
| VENIPUNCTURE | 1.00 | 1.00 | 38.0 | $3.15 | $119.70 |
| URINE DRUG TEST | 1.00 | 1.00 | 38.0 | $117.65 | $4,470.70 |
| X-RAY OF RIGHT KNEE | 7.00 | 38.00 | 38.0 | $83.66 | $585.62 |
| MRI OF THE RIGHT KNE | 3.00 | 38.00 | 38.0 | $1,102.93 | $3,308.79 |
| Total: | | | | | $57,089.50 |

**Prescription Drugs (for Medicare-covered and reimbursable drugs for the WC injury only):**

ACCORDING TO THE AVAILABLE MEDICAL RECORDS, CLAIMANT IS CURRENTLY RECEIVING PRESCRIPTIONS FOR CELEBREX, GABAPENTIN, AND APAP/CODEINE.

https://www.cob.cms.hhs.gov/WCMSA/alertLookup!displayAttachment?attachmentType=...  3/27/2018

330

According to available documentation, this claimant is currently receiving the following drugs: CELECOXIB, ACETAMINOPHEN-CODEINE PHOSPHATE, GABAPENTIN.

The following chart summarizes the future prescription drug costs that adequately protect Medicare's interests:

| Drug | National Drug Code | Amount Per Unit (Dosage) | Per Day | Per Week | Per Month | # of Years | Price Per Units | Total |
|------|------|------|------|------|------|------|------|------|
| ACETAMINOPH | 00093-0150-10 | 300 MG-30 MG | 0.00 | 0.00 | 30.00 | 38 | $0.28 | $3,830.40 |
| GABAPENTIN | 69097-0813-12 | 100 MG | 0.00 | 0.00 | 90.00 | 38 | $0.53 | $21,751.20 |
| CELECOXIB | 42291-0194-50 | 200 MG | 0.00 | 0.00 | 60.00 | 38 | $1.63 | $44,596.80 |
| | | | | | | | Total: | $70,178.40 |

*Give Up →*
*Give Up →*

**Rationale for Decision:**

INSTEAD OF THE SUBMITTER'S PROPOSED SET-ASIDE, CMS HAS DETERMINED THAT A DIFFERENT SET-ASIDE AMOUNT IS NECESSARY TO PROTECT MEDICARE'S INTEREST FOR THE FOLLOWING REASONS: PRESCRIPTION PRICING AND TREATMENT FOR LOW BACK PAIN AND RIGHT KNEE WERE NOT INCLUDED IN THE WCMSA PROPOSAL.

The following chart summarizes the services and costs that adequately protect Medicare's interests:

Subtotal Future Treatment: $57,090.00
Subtotal Prescription Drugs: $70,178.00
Grand Total: $127,268.00



FUTURE TREATMENT INCLUDES ROUTINE PHYSICIAN EVALUATION, INJECTIONS, DIAGNOSTIC STUDIES, LABS, PHYSICAL THERAPY, AND PERIODIC REPLACEMENT OF DURABLE MEDICAL EQUIPMENT.

The following chart summarizes the future medical treatment costs (exclusive of pharmacy items) that adequately protect Medicare's interests:

| SERVICE | FREQ | EVERY X YRS | # OF YEARS | PRICE PER SERVICE | TOTAL |
|---|---|---|---|---|---|
| ELECTROMYOGRAPHY OF LEFT UPPER EXTREMITY | 1 | 38 | 38 | $235.66 | $235.66 |
| NERVE CONDUCTION STUDIES OF LEFT UPPER EXTREMITY | 1 | 38 | 38 | $300.50 | $300.50 |
| X-RAY OF LEFT WRIST | 12 | 38 | 38 | $83.50 | $1,002.00 |
| LEFT WRIST BRACE | 7 | 38 | 38 | $70.17 | $491.19 |
| PHYSICIAN EVALUATIONS | 6 | 1 | 38 | $143.76 | $32,777.28 |
| PHYSICAL THERAPY VISITS FOR LEFT UPPER EXTREMITY | 24 | 38 | 38 | $97.44 | $2,338.56 |
| PHYSICAL THERAPY VISITS FOR LUMBAR | 24 | 38 | 38 | $97.44 | $2,338.56 |
| X-RAY OF LUMBAR SPINE 2/3 VIEWS | 12 | 38 | 38 | $79.21 | $950.52 |
| MRI OF LUMBAR WITH AND WITHOUT CONTRAST | 6 | 38 | 38 | $1,194.22 | $7,165.32 |
| COMPREHENSIVE METABOLIC PANEL | 1 | 1 | 38 | $15.24 | $579.12 |
| COMPLETE BLOOD COUNT | 1 | 1 | 38 | $11.21 | $425.98 |
| VENIPUNCTURE | 1 | 1 | 38 | $3.15 | $119.70 |
| URINE DRUG TEST | 1 | 1 | 38 | $117.65 | $4,470.70 |
| X-RAY OF RIGHT KNEE | 7 | 38 | 38 | $83.66 | $585.62 |
| MRI OF THE RIGHT KNEE WITH AND WITHOUT CONTRAST | 3 | 38 | 38 | $1,102.93 | $3,308.79 |
| | | | | TOTAL | $57,089.50 |

Prescription Drugs (for Medicare-covered and reimbursable drugs for the WC injury only):

ACCORDING TO THE AVAILABLE MEDICAL RECORDS, CLAIMANT IS CURRENTLY RECEIVING PRESCRIPTIONS FOR CELEBREX, GABAPENTIN, AND APAP/CODEINE.

According to available documentation, this claimant is currently receiving the following drugs: ACETAMINOPHEN-CODEINE PHOSPHATE, GABAPENTIN, CELECOXIB

Proposed Future Medical WCMSA Amount: $11,355.00
Proposed Future Rx WCMSA Amount: $0.00
Total Proposed WCMSA: $11,355.00
Proposed Initial Deposit: $0.00
Total Settlement Amount: $61,355.00

Recommended WCMSA: $127,268.00  Pricing Method: Fee WC State: RI
Recommended WCMSA Lump Sum [ X ] or
Recommended WCMSA Structured Payments: [ ]
Recommended Initial Deposit: $0.00
Annual Amount: $0.00 x 37 yrs.
Anniversary Date: 7/7/2019
Type of Recommendation: Counter-Higher
If not eligible for WCMSA, reason:

Current Treatment Status for WC Injury or Disease (including past medical treatment):
CLAIMANT SUSTAINED MULTIPLE WORK RELATED INJURIES FROM 2/18/2004 TO 2/12/2015 INVOLVING MULTIPLE
BODY PARTS INCLUDING THE NECK, RIGHT ARM, RIGHT SHOULDER, RIGHT WRIST, RIGHT HAND, RIGHT KNEE,
LOWER BACK, LEFT WRIST AND LEFT ARM. THE MOST RECENT WORK RELATED INJURY OCCURRED ON 2/12/2015. AT
THAT TIME, CLAIMANT REPORTED LOW BACK AND LEFT WRIST PAIN FOLLOWING A SLIP AND FALL. CLAIMANT
UNDERWENT LEFT CARPAL TUNNEL RELEASE (3/6/2015) AND LEFT CARPAL TUNNEL RELEASE REVISION AND
GUYON'S CANAL RELEASE (2/9/2017). CLAIMANT CONTINUES TO COMPLAIN OF PAIN IN LEFT WRIST, LEFT ARM,
RIGHT KNEE AND CHRONIC LOWER BACK PAIN. PREVIOUS TREATMENT INCLUDED DIAGNOSTIC IMAGING,
MEDICATIONS, STEROID INJECTIONS, PHYSICAL THERAPY, DURABLE MEDICAL EQUIPMENT, AND FOLLOWUP
EVALUATIONS. CLAIMANT ACTIVE WORK RELATED DIAGNOSES INCLUDE CHRONIC BILATERAL LOW BACK PAIN
WITHOUT SCIATICA, CHRONIC PAIN OF THE RIGHT KNEE, CARPAL TUNNEL SYNDROME, LEFT UPPER LIMB, AND
LEFT WRIST PAIN.

Past Medical Treatment Unrelated to WC Injury or Its Co-Morbid Conditions:
CLAIMANT'S PAST MEDICAL HISTORY INCLUDES ANXIETY, CARDIAC MURMUR, DEPRESSION, HYPERTENSION,
REFLEX SYMPATHETIC DYSTROPHY OF THE LOWER EXTREMITY, GASTRIC BYPASS IN 2004, AND INJURIES FROM
7/26/2008 OF THE NECK, RIGHT ARM AND RIGHT SHOULDER.

Future Treatment (for Medicare-covered items and reimbursable services for the WC injury only):

Exhibit H

Jodi Connor's
CmS Fax to
Steven Dennis
That Nick manicini
Never Sent IN Report

As per Global Settlement

Page 11 First Paragraph
2 weeks to Submit it
To CmS your Honor.

334

# FAX

**To:** **Stephen Dennis Law Office**
Company:
Fax: 401-453-6670
Phone:

**From:** **Jodi Connor**
Fax: 443-380-5584
Phone: 617-565-1293
E-mail: jodi.connor@cms.hhs.gov

*Case Control #*
W-C1805801376397

## NOTES:

Per the request of the claimant Mickeda Barnes, attached is a screen shot of CMS's system showing no information is available on her case as of today's date.

Sincerely,
Jodi Connor

*[handwritten notes]*

Date and time of transmission: Tuesday, March 6, 2018 9:40:24 AM
Number of pages including this cover sheet: 02

335

Fax Server                  3/6/2018 9:41:03 AM   PAGE   2/002   Fax Server



Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 592 of 689 PageID
#: 947
Case 1:22-cv-00213-JJM-PAS   Document 1-1   Filed 05/31/22   Page 335 of 346   PageID 336

11

1    for this actually being resolved.  So I can't thank him

2    enough for his efforts.  So we do have a matter -- the

3    matter is scheduled for December 4th.  There is no need

4    for us to meet since we went on the record today.  Let me

5    ask this, how much time do you think you need to at least

6    submit this to Carr Allison, and I take it any of the

7    accepted claims will be submitted?  You tell me.

8              MR. MANCINI:  Two weeks to get it submitted,

9    Judge, the maximum.

10             THE COURT:  So why don't we do this?  I'm

11   going to kick this for a date just before the Christmas

12   holiday for the attorneys.  Ms. Barnes, you know you're

13   always welcome in my courtroom, but there's no need for

14   you to pay for parking and come here.  I'm doing this for

15   twofold.  Number one, I want to make sure that the MSA

16   proposal has been submitted.  Number 2, I want to make

17   sure that the mutual agreement relative to the $3,000

18   that you're going to be paid before the Christmas holiday

19   has been executed.  Once I'm satisfied that that has been

20   done, I will then put it down for a date sometime in

21   January for further status on the MSA.  Okay.

22             MS. BARNES:  Could I get the $3,000 ASAP?  I

23   need to pay some bills.

24             THE COURT:  Your attorney will be speaking

25   with RIPTA and Mr. Mancini, and I'm sure that will be

337

Exhibit I

3rd Party Lawyer for
Rt Knee Case (Mukeda Barnes)

Letter from Leone law
about Genfares/Contract

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 594 of 689 PageID
Case 1:22-cv-00213-JJM-PAS    Document 1-12 Filed 05/31/22   Page 337 of 346   PageID 338
#: 949



LEONE LAW LLC

RHODE ISLAND • MASSACHUSETTS

1345 Jefferson Boulevard • Warwick, Rhode Island 02886

May 2, 2018

Mickeda Barnes
34 Dunbar Ave
Rumford, RI 02916

Dear Mickeda:

We have had the opportunity to review the draft settlement release that Sonja Deyoe forwarded to us stemming from your discrimination lawsuit against RIPTA (RIPTA settlement release). In section 2(b) entitled "Release of Claims," the RIPTA settlement release speaks of a potential right of action against you if a contribution, indemnification, or other claim is brought against RIPTA. This letter is to advise you of the potential risk that the release language has in your case against Genfare.

As you know, under worker's compensation law, you do not have the right to file a liability lawsuit against your employer, RIPTA. Nonetheless, the Genfare defendants do have the legal right to assert third party claims for contribution or indemnification against RIPTA in the Genfare case. In short, to the extent Genfare believes or has contractually agreed with RIPTA that RIPTA is legally responsible for Genfare's negligence, Genfare may be able to seek contribution or indemnification against RIPTA. If that happens, one reading of paragraph 2(b) is that RIPTA can sue you for breach of the RIPTA settlement release. Please note that, to date, Genfare has not asserted any claims against RIPTA.

While I cannot speak to the likelihood, probability, or potential of this happening, you need to be aware of this risk and make a choice on whether the release is signed in the current form.

I have suggested that RIPTA's settlement release contain language specifically exempting the Genfare case. Sonja advises that RIPTA has refused to agree to that language.

Please sign where indicated on the bottom and mail the original back to us, confirming that you have read and understand the risks posed in the RIPTA settlement release.

Feel free to call with any language.

Very truly yours,

Anthony R. Leone

TELEPHONE: 401-921-6684   FACSIMILE: 401-921-6686   E-MAIL: info@leonelawllc.com   www.leonelawllc.com

339

I, Mickeda Barnes, have read and understand this letter and am aware of risks posed in the RIPTA settlement release.

_____
Mickeda Barnes

Date: _____

340

# Exhibit J

# Ripta / Genfare
# Partial Contract

# for Liability

# Pages 3, 4, 5, 6, 7
# and 8 for

Indemnification and Hold Harmless
Compensation          Liquidated damages
Insurance Bond        Title II Civil Rights Page

this contract, such waiver by RIPTA shall not limit RIPTA's legal remedies for any succeeding breach of that or of any other term, covenant, or condition of this contract.

**1.7    TIME OF PERFORMANCE**

The Contractor shall commence work under this contract effective upon execution and shall continue in good faith and effort in accordance with the timeline herein incorporated as "Attachment 3" entitled "Progress Schedule Milestones

**1.8    DELIVERY EXTENSION AND DELAYS**

RIPTA reserves the right, in its sole discretion, to extend the time for performance of the services contemplated by this Agreement.  No delay shall be granted in connection with the acts, omissions, negligence, or mistakes of the Contractor, the Contractor's suppliers, or their agents.

**1.9    RESOLUTION OF DISPUTES OR BREACHES**

Disputes arising in the performance of this Contract which are not resolved by agreement of the parties shall be decided in writing by the Contracts Manager. This decision shall be final and conclusive unless within ten (10) calendar days from the date of receipt of its copy, the Contractor mails or otherwise furnishes a written appeal to the General Manager.  In connection with said appeal, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its position. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of this Contract while matters in dispute are being resolved.  The final decision of the General Manager shall be binding upon the Contractor and the Contractor shall abide by the decision.

**1.10    STATUS, INDEMNIFICATION AND HOLD HARMLESS**

In performing work and services hereunder, the Contractor, its employees, agents, and representatives, shall be acting as independent contractors, and shall not be deemed or construed to be employees or agents of RIPTA in any manner whatsoever.  The Contractor shall not hold itself out as, nor claim to be, an officer or employee of RIPTA by reason hereof, and will not make any claim, demand, or application to or for any right or privilege applicable to an officer or employee of RIPTA.  The Contractor shall be solely responsible for any claims for wages or compensation by the Contractor's employees, agents, and representatives, and shall indemnify and hold RIPTA harmless therefrom.

To the maximum extent permitted by law, the Contractor shall indemnify and hold harmless RIPTA and all of RIPTA's officers, employees, and agents from and against all claims, demands, suits, penalties and liability of any kind, including injuries to persons or damages to property, which arise out of or are due to any acts, errors, or omissions of the Contractor, or the Contractor's employees, agents, and representatives in performing work and services under this Agreement. In the event that any claims, investigations, demands, suits, actions, and lawsuits arise out of any of the aforesaid acts, errors, or omissions, the Contractor shall assume all costs of defending such claims, suits, actions, or lawsuits, including legal fees incurred by RIPTA, any penalties imposed on RIPTA or the Contractor, and all judgments that may be obtained against RIPTA, or any of its officers, agents, or employees in such suits. Further, the Contractor waives immunity under the Industrial Insurance Act and assumes all liability for actions brought by him or his employees against RIPTA for injuries in the performance of this Agreement.  The Contractor represents this provision has been negotiated with RIPTA.

3

342

To the maximum extent permitted by law, RIPTA shall indemnify and hold harmless the Contractor and all of Contractor's officers, employees, and agents from and against all claims, demands, suits, penalties and liability of any kind, including injuries to persons or damages to property, which arise out of or are due to any acts, errors, or omissions of RIPTA, or RIPTA's employees, agents, and representatives while engaged in the business of public transportation and with respect to its duties and obligations under this Agreement. In the event that any claims, investigations, demands, suits, actions, and lawsuits arise out of any of the aforesaid acts, errors, or omissions, RIPTA shall assume all costs of defending such claims, suits, actions, or lawsuits, including legal fees incurred by Contractor, any penalties imposed on Contractor or RIPTA, and all judgments that may be obtained against Contractor, or any of its officers, agents, or employees in such suits. RIPTA represents this provision has been negotiated with Contractor.

## 1.11   COMPENSATION

RIPTA will pay in accordance with prices listed in the price schedule, incorporated herein as "Attachment 5"entitled Proposal Price Submittal Worksheet including delivery charges, plus sales tax, if applicable as full compensation for all work performed and accepted under this Contract, subject to allowable additions and deductions as provided. Deliverables, as described in "Attachment 6", shall be received by RIPTA prior to final payment. Payment will be made in accordance with the provision for payment.

## 1.12   PAYMENT

The Contractor shall be paid, upon the submission of proper invoices or vouchers, the price(s) stipulated herein for services rendered and accepted, less deductions, if any, as herein provided. The Contractor will send their application for payment to: **Mr. Michael McGrane, Contracts Manager,** Rhode Island Public Transit Authority, 265 Melrose Street, Providence, Rhode Island, 02907.

Payment will be made within sixty (60) calendar days after approval of the Contractor's application, unless other terms are agreed upon as a part of this Agreement. .

### A.   Covenant Against Contingent Fees

The Contractor warrants that no person or selling agency has been employed or retained to solicit or secure this contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the Contractor for the purpose of securing business. For breach or violation of this warranty, RIPTA shall have the right to rescind this contract without liability or at its discretion, to deduct from the contract price or consideration, or otherwise recover, the full amount of such commission, percentage, brokerage, or contingent fee, plus all other damages and and attorney fees associated with such a breach

### B.   Payment Does Not Imply Acceptance of Work

The granting of any progress payment or payments by RIPTA, or the receipt thereof by the Contractor, shall not constitute in any sense acceptance of the work or of any portion thereof, and shall in no way lessen the liability of the Contractor to replace work or material which does not conform to the Contract Documents, though the character of such work or material may not have been apparent or detected at the time such payment was made.

Materials, components, or workmanship which do not conform to the instructions or their contract requirements and specifications, or are not equal to the samples

4

submitted to and approved by RIPTA, will be rejected and shall be replaced by the Contractor without delay.

**C.**   <u>Prompt Payment of Subcontractors</u>

"The Contractor is required to make payment to subcontractors within thirty days from the receipt of each payment the Contractor receives from RIPTA for satisfactorily completed subcontractor work from RIPTA, whether such payment is a progress or final payment. The Contractor agrees further to return retainage payments to each subcontractor within thirty days after the subcontractor's work is satisfactorily completed. If payment disputes arise between the Contractor and subcontractors, such disputes shall be resolved promptly through mediation or arbitration in order to prevent injury to small business subcontractors. The Contractor shall specify in its subcontract agreement what dispute resolution method will be used. In addition, The Contractors will not be paid for subcontractors' work unless the Contractor can show that a prompt payment method for subcontractors is in place. The Contractors shall be required to provide copies of the subcontracts to RIPTA showing inclusion of these provisions. RIPTA may withhold the applicable sum due a subcontractor for non-compliance with this section."

**1.13**   **INSURANCE AND/OR BOND**

**A.**   The Vendor shall purchase from and maintain in a company or companies lawfully authorized and admitted to do business in the state of Rhode Island possessing a Best's policyholder's rating of A- or better and a financial rating of no less than VII, and reasonably acceptable to RIPTA, an occurrence-based Commercial General Liability Insurance Policy which shall provide bodily injury and property damage liability on its own operations and vehicles on Work the Vendor may subcontract or sublet to others, in no less than the amounts specified below. This insurance will name RIPTA, the Vendor, its consultants and employees, and any required governmental agencies as additional insureds for Work performed under this Contract; the Vendor's policy shall be designated primary coverage for both defense and indemnity, and any RIPTA policies or self insurance funds shall be excess.

(1)   Commercial General Liability, Bodily Injury and Property Damage Liability, including Premise and Operations, Independent Contractors, Protective Liability, Completed Operations and Products, Contractual, Combined Single Limit of at least $1,000,000.00 per occurrence, with a per project aggregate limit of at least $5,000,000.00.

(2)   Comprehensive Automobile Liability, Bodily Injury and Property Damage Combined Single Limit of at least $1,000,000.00, with a per project aggregate limit of at least $5,000,000.00.

(3)   In addition, the Vendor shall maintain a true umbrella policy which provides excess limits over the primary layer, in an amount not less than $2,000,000.00.

(4)   If services covered under this contract include any professional services, i.e. consultants, computer technical services, etc., professional liability (errors and omissions) coverage of at least $1,000,000.00 shall be maintained.

5

344

Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 600 of 689 PageID
Case 1:22-cv-00213-JJM-PAS   Document 1-1  Filed 05/31/22   Page 343 of 346   PageID 344
#: 956

B.   The Insurance required by Subparagraph 1.13 A shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, written on an occurrence basis, shall be maintained without interruption from date of commencement of the Work until date of final payment and termination of any coverage required to be maintained after final payment. Completed operations coverage shall remain in force for three years after Final Acceptance.

C.   In addition, the Vendor shall purchase and maintain insurance for claims under workers' compensation (industrial insurance), disability benefit and other similar employee benefit acts in the state statutory amount and Stop Gap Liability Insurance (Employer's' Contingent Liability Insurance) with coverage of at least $500,000.00 each occurrence/each accident.

D.   Before commencing Work or exposure to loss can occur, and, in any event, as a condition of RIPTA executing the contract, the Vendor shall furnish RIPTA with a copy of the applicable certificates of insurance required by the Contract Documents. If the Agreement is executed, no Progress Payment will be due until all such Certificates are furnished. All policies and certificates must be signed copies and shall contain a provision that coverages afforded under the policies cannot be materially altered (i.e., the coverages reduced, the limits decreased, or the additional insureds removed), allowed to expire, or canceled without first giving at least thirty (30) days' prior written notice by certified mail to RIPTA. The Vendor shall furnish to RIPTA copies of any subsequently issued endorsements amending, modifying, altering, or restricting coverage of limits. Furthermore, such policies or certificates shall contain a clause verifying that the policy contains coverage for blanket contractual liability including both oral and written contracts and that the indemnification provisions of Paragraph 1.10 are acknowledged.

E.   RIPTA's specification or approval of the insurance in this Contract or of its amount shall not relieve or decrease the liability of the Vendor. Coverages are the minimum to be provided and are not limitations of liability under the Contract, indemnification, or applicable law provisions. The Vendor may, at its expense, purchase larger coverage amounts.

F.   The Vendor shall ensure and require that Subcontractors of any tier have insurance coverage to cover bodily injury and property damage on all operations and all vehicles owned or operated by Subcontractors of any tier.

G.   If RIPTA is damaged by the failure of the Vendor to maintain any of the above insurance or to so notify RIPTA, then the Vendor shall bear all costs attributable thereto, including attorney's fees.. RIPTA may withhold payment pending receipt of all certificates of insurance. Failure to withhold payment shall not constitute a waiver.

1.14   **LIQUIDATED DAMAGES**

Pursuant to General Terms and Conditions, liquidated damages shall be applicable to this contract. In the event that the Contractor fails to provide delivery of the required equipment and systems as required by the technical specifications by the specified dates, the Proposer/Contractor shall be liable for liquidated damages as identified in the following table. The table following identifies the equipment and processes included in the computation of liquidated damages.

Farebox (Including DCU) $100/day/farebox
Revenue Collection Vault System: $1,000/day/RCVS

6

Central Data Collection and Reporting System:  $10,000/day

RIPTA may deduct the sum of liquidated damages from any monies due the Contractor, or if such monies due are insufficient, the Contractor or its Surety(ies) shall pay to RIPTA all deficiencies in monies within 30 days of demand therefore by RIPTA.

Potential for accrual of liquidated damages shall not end until the delivery of the system, its equipment and its components are complete.

### 1.15    TAXES

If applicable, sales tax on this contract, as determined by the Rhode Island Department of Revenue, will be added to the amounts due and the Contractor will be responsible for making payment of the tax to the State of Rhode Island.  All other taxes are the sole responsibility of the Contractor.

### 1.16    TITLE VI CIVIL RIGHTS REQUIREMENTS

A.    **Nondiscrimination.**  In accordance with Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. #2000d, Section 303 of the Age Discrimination Act of 1975, as amended, 42 U.S.C. #6102, Section 202 of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. #12132, and Federal transit law at 49 U.S.C. #5332, the Contractor agrees that it will not discriminate against any employee or applicant for employment because of race, color, creed, national origin, sex, marital status, age, or disability.  Contractor agrees to comply fully with all corresponding antidiscrimination statues and regulations under Rhode Island law.  In addition, the Contractor agrees to comply with applicable Federal implementing regulations and other implementing requirements FTA may issue.

B.    **Equal Employment Opportunity.**  The following equal employment opportunity requirements apply to this contract:

    (1)    **Race, Color, Creed, National Origin, Sex.**  In accordance with Title VII of the Civil Rights Act, as amended, 42 U.S.C. #2000e, and Federal transit laws at 49 U.S.C. #5332, the Contractor agrees to comply with all applicable equal employment opportunity requirements of U.S. Dept. of Labor regulations, "Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor, 41 CFR, Parts 60 et seq., and with any applicable Federal Statutes, executive orders, regulations, and Federal policies that may in the future affect construction activities undertaken in the course of this project.  The Contractor agrees to take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, creed, national origin, sex, marital status, or age.  Such action shall include, but not be limited to, the following:  employment, upgrading, demotion or transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation; and selection for training, including apprenticeship.

    (2)    **Age.**  In accordance with Section 4 of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. #623 and Federal transit law at 49 U.S.C. #5332, the Contractor agrees to refrain from discrimination against present and prospective employees for reason of age.

    (3)    **Disabilities.**  In accordance with Section 102 of the Americans with Disabilities Act, as amended, 42 U.S.C. #12112, the Contractor agrees

<div align="center">7</div>

346

that it will comply with the requirements of U.S. Equal Employment Opportunity Commission, "Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act," 29 CFR, Part 1630, pertaining to employment of persons with disabilities.

C.  The Contractor also agrees to include these requirements in each subcontract financed in whole or in part with Federal assistance provided by FTA, modified only if necessary to identify the affected parties.

## 1.17  LABOR PROVISIONS - NONCONSTRUCTION CONTRACTS

A.  Overtime Requirements.  No Contractor or subcontractor contracting for any part of the contract work which may require or involve the employment of laborers or mechanics shall require or permit any such laborer or mechanic in any work week in which they are employed on such work to work in excess of forty hours in such work week unless such laborer or mechanic receives compensation at a rate not less than one and one-half times the basic rate of pay for all hours worked in excess of eight hours in any calendar day or in excess of forty hours in such work week, whichever is greater.

B.  Liability for Unpaid Wages and Liquidated Damages.  In the event of any violation of the clause set forth in subparagraph (b)(1) of 29 CFR Section 5.5, the Contractor and any subcontractor responsible therefor shall be liable for the unpaid wages and applicable liquidated damages.  Such liquidated damages shall be computed with respect to each individual laborer or mechanic, including watchmen and guards, employed in violation of the clause set forth in subparagraph (b)(1) of 29 CFR Section 5.5 in the sum of $10 each for each calendar day on which such individual was required or permitted to work in excess of eight hours or in excess of the standard work week of forty hours without payment of the overtime wages required by the clause set forth in subparagraph (b)(1) of 29 CFR Section 5.5.

C.  Withholding for Unpaid Wages and Liquidated Damages.  The United States Department of Transportation or any other federal regulatory body with jurisdiction, or RIPTA shall, upon its own action or upon written request of an authorized representative of the Rhode Island Department of Labor, withhold or cause to be withheld, from any monies payable on account of work performed by the Contractor or subcontractor under this contract or any other federally-assisted contract subject to the Contract Work Hours and Safety Standards Act, which is held by the same Contractor, such sums as may be determined to be necessary to satisfy any liabilities of such Contractor or subcontractor for unpaid wages and liquidated damages as provided in the clause set forth in subparagraph (b)(2) of 29 CFR Section 5.5.

D.  Nonconstruction Grants.  The Contractor or subcontractor shall maintain payrolls and basic payroll records during the course of the work and shall preserve them for a period of at least three years from the completion of the contract for all laborers and mechanics, including guards and watchmen, working on the contract.  Such records shall contain the name and address of each such employee, social security number, correct classifications, hourly rates of wages paid, daily and weekly number of hours worked, deductions made, and actual wages paid.

E.  Subcontracts.  The Contractor or subcontractor shall insert in any subcontract the clauses set forth in subparagraphs A through E of this section, and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts.  The Contractor shall be responsible for compliance by any

8



**UNITED STATES**
**POSTAL SERVICE**

RUMFORD
10 NEWMAN AVE
RUMFORD, RI 02916-9998
(800)275-8777

| 09/25/2020 | | | 02:09 PM |
|---|---|---|---|

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| Priority | 1 | $7.75 | $7.75 |
| Priority Mail® 2-Day 1 | | | $8.70 |

Burlington, VT 05405
Weight: 1 lb 2.50 oz
Expected Delivery Date
Mon 09/28/2020
Tracking #:
9505 5103 3957 0269 3967 19

| Insurance | | | $0.00 |
|---|---|---|---|

Up to $50.00 included

| Total | | | $ .70 |
|---|---|---|---|

| Grand Total: | | | $16.45 |
|---|---|---|---|

| Cash | | | $20.00 |
|---|---|---|---|
| Change | | | ($3.55) |

*******************************************
Due to limited transportation
availability as a result of
nationwide COVID-19 impacts
package delivery times may be
extended. Priority Mail Express®
service will not change.
*******************************************

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
1-800-222-1811.

Save this receipt as evidence of
insurance. For information on filing an
insurance claim go to
https://www.usps.com/help/claims.htm

Preview your Mail
Track your Packages
Sign up for FREE @
www.informeddelivery.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
840-5028-0270-002-00043-59446-01
or scan this code with your mobile device.



or call 1-800-410-7420.

UFN: 437173-0116
Receipt #: 840-50280270-2-4359446-1
Clerk: 21

348

JS 44 (Rev. 08/18)   Case 1:22-cv-00213-JJM-PAS   Document 4   Filed 05/31/22   Page 1 of 1   PageID 348

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS
Rhode Island Public Transportation Authority

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

### DEFENDANTS
Mickeda S Barnes

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☑ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☑ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☑ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☑ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☒ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☒ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☑ 896 Arbitration
- ☑ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☑ 950 Constitutionality of State Statutes

### V. ORIGIN *(Place an "X" in One Box Only)*
- ☐ 1 Original Proceeding
- ☑ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
American with Disabilities 42 USC 1983 Claim   Civil Rights Act 1964
Brief description of cause:
Constitutional Rights were violated and it was caused by color of law.

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☑ Yes   ☐ No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE   Cruise Superior Court
DOCKET NUMBER   2022-01801

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

349

```
MIME-Version:1.0
From:cmecf@rid.uscourts.gov
To:cmecfnef@rid.uscourts.gov
Bcc:
--Case Participants: Jillian S. Folger-Hartwell (jfolgerhartwell@littler.com,
mganczarski@littler.com), Chief Judge John J. McConnell, Jr.
(aileen_sprague@rid.uscourts.gov, jjmnef@rid.uscourts.gov,
judge_mcconnell@rid.uscourts.gov), Magistrate Judge Patricia A. Sullivan
(mag_judge_sullivan@rid.uscourts.gov, pasnef@rid.uscourts.gov,
patrick_cunningham@rid.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:1751274@rid.uscourts.gov
Subject:Activity in Case 1:22-cv-00213-JJM-PAS Rhode Island Public Transportation
Authority v. Barnes Case Conditionally Assigned
Content-Type: text/html
```

### U.S. District Court

### District of Rhode Island

## Notice of Electronic Filing

The following transaction was entered on 5/31/2022 at 2:44 PM EDT and filed on 5/31/2022

| | |
|---|---|
| **Case Name:** | Rhode Island Public Transportation Authority v. Barnes |
| **Case Number:** | 1:22-cv-00213-JJM-PAS |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **CASE CONDITIONALLY ASSIGNED Related Case Number 17-cv-505 based upon the indication that a related case previously was assigned to Chief Judge John J. McConnell, Jr and Magistrate Judge Patricia A. Sullivan. The assignment is subject to the presiding judge's determination that the cases, in fact, are related. (DaCruz, Kayla)**


**1:22-cv-00213-JJM-PAS Notice has been electronically mailed to:**

Jillian S. Folger-Hartwell &nbsp &nbsp jfolgerhartwell@littler.com, mganczarski@littler.com

**1:22-cv-00213-JJM-PAS Notice has been delivered by other means to:**

Mickeda Barnes
34 Dunbar Ave
Rumford, RI 02916

350

Rev. 10/13

**United States District Court**
**District of Rhode Island**

FILED
2022 MAY 31 A II:06
U.S. DISTRICT COURT
DISTRICT OF RHODE

*Rhode Island*
*Rypta Transportation Authority*
Plaintiff

**APPLICATION TO PROCEED**
**WITHOUT PREPAYMENT OF**
**FEES AND AFFIDAVIT**

v.

CASE NUMBER: *PC 2020-06065*

*Muckeda Barnes*
Defendant

I, *Muckeda S Barnes*, declare that I am the (check appropriate box)

☐ Petitioner/Plaintiff/Movant     ☒ other *Defendant*

In the above-entitled proceeding; that in support of my request to proceed without prepayment of fees or costs under 28 U.S.C. § 1915, I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief sought in the complaint/petition/motion.

In support of this application, I answer the following questions under penalty of perjury:

1. Are you currently incarcerated?     ☐ Yes     ☒ No   (If "No," go to part 2)

   If "Yes," state the place of your incarceration:

   Are you employed at the institution?     ☐ Yes     ☒ No

   Do you receive any payment from the institution?     ☐ Yes     ☒ No

   If the answer is "Yes," attach a certified ledger sheet from the institution(s) of your incarceration showing at least the past (6) six months' transactions.

2. Are you currently employed?     ☒ Yes     ☐ No

   a) If the answer is "Yes," state the amount of your take-home salary or wages and pay period and give the name and address of your employer: *United Express* $*114.00* *TF Green Airport $13.50 hr 23.00 hrs a week I take Home after taxes*

   b) If the answer is "No," state the date of your last employment, the amount of your take-home salary or wages and pay period, and the name and address of your last employer. Also, explain how you have been supporting yourself:

351

3.  Have you received in the past (12) twelve months, or do you anticipate receiving in the future, any money from any of the following sources?

    a)  Business, profession or other self-employment    ☐ Yes    ☑ No

    b)  Rent payments, interest or dividends    ☐ Yes    ☑ No

    c)  Pensions, annuities or life insurance payments    ☐ Yes    ☑ No

    d)  Disability or workers compensation payments    ☑ Yes    ☐ No

    e)  Gifts or inheritances    ☐ Yes    ☑ No

    f)  Any other persons or sources    ☐ Yes    ☑ No

    If the answer to any of the above is "Yes," describe each source of money and state the amount received and what you expect you will continue to receive:

    I Recieve $2073.00 a month From SSDI But I Have to pay for medicines and RSD Compound Cream that Ripta Does not pay For and is suppose to pay for Because they are self Insured.

4.  List anyone who helps support you or shares support in any way and describe the type and amount of such support for the last twelve months. If no one, write "NO ONE."

5.  Do you have any cash or checking or savings accounts?    ☐ Yes    ☑ No

    If "Yes," state the total amount:

    No One my Husband Is Disable

6.  Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or any other thing of value?    ☑ Yes    ☐ No

    If "Yes," describe the property and state its value:

    I Have A 2004 Honda Oddessy Van

7.  Do you have any housing, transportation, utilities, or loan payments, or other regular monthly expenses?    ☑ Yes    ☐ No

    If "Yes," describe and provide the amount of the monthly expense:

    I Have a Mortage $1,060 a month
    Electric $300
    Gas $60
    Car Ins $243.00
    Water Bill $250.00
    food $400.00
    medications $ → 500.00

352

8. Do you have any debts or financial obligations?    ☑ Yes        ☐ No

If "Yes," describe the amounts owed and to whom they are payable:

I am in debt to two Companies and Have two liens on my House due to all of this Fraud and denial of my Job at Repta Not Including student

9. Have you transferred any assets within the last 12 months prior to filing this application? loans From

☐ Yes    ☑ No

UConn and Johnson & Wales

If "Yes," describe the asset and state its value:

Husband the Best Person to Have but He Should Have left me a long time ago due to this Case.

10. List the persons who are dependent on you for support, state your relationship to each person and indicate how much you actually contribute to their support. Please list minor children by initials only.

DFB (MB) 10 years old love Child, (lead poisoning) when she was a child
Briana Robertson 24 years old will have a disability all Her life
Sidney Robertson 20 years old (Just Selfish) she is a Daddys Kid I hope she leaves Soon ♦♦♦

I declare under penalty of perjury that the above information is true and correct.

May 31, 2022                    Mishkeda S Barnes
Date                           Signature of Applicant

**NOTICE TO PRISONER:** A prisoner seeking to proceed without prepayment of fees shall submit an affidavit stating all assets. In addition, a prisoner must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.

---

FOR COURT PURPOSES ONLY:

☐ APPROVED        ☐ DENIED

U.S. MAGISTRATE JUDGE                    DATE

353

Case 1:22-cv-00213-JJM-PAS Document 2-1 Filed 05/31/22 Page 1 of 2 PageID 377

**Earnings Statement**

**ADP**

SEQ 000072

*UNITED GROUND EXPRESS INC*
*11555 W.TOUHY AVENUE*
*CHICAGO,IL 60666*
*855-547-8508*

| | |
|---|---|
| Period Beginning: | 05/01/2022 |
| Period Ending: | 05/07/2022 |
| Pay Date: | 05/13/2022 |

**MICKEDA BARNES**
**34 DUNBAR AVE.**
**RUMFORD RI 02916**

Filing Status: Married filing jointly
Exemptions/Allowances:
 Federal: Standard Withholding Table,$20 Extra
  Withholding

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 1.2500 | 23.90 | 29.88 | 3,403.56 |
| Overtime | | | | 593.51 |
| Domestic Part | | | | 10.08 |
| Premium OT | | | | 80.04 |
| Premium Pay | | | | 481.02 |
| Training | | | | 490.00 |
| **Gross Pay** | | | **$29.88** | 5,058.21 |

| Net Pay | $5.45 |
|---|---|

| Net Check | $5.45 |
|---|---|

\* Excluded from federal taxable wages
 Your federal taxable wages this period are $28.39

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -20.00 | 266.11 |
| | Social Security Tax | -1.85 | 296.81 |
| | Medicare Tax | -0.44 | 69.42 |
| | RI State Income Tax | -0.34 | 170.55 |
| | RI SDI Tax | -0.31 | 52.36 |
| | **Other** | | |
| | 401K | -1.49* | 27.46 |
| | DENTAL | | 84.00 |
| | Group Legal | | 30.08 |
| | I/O DOMESTIC PR | | 10.08 |
| | LIFE 125 | | 9.76 |
| | LIFE-CHILD | | 1.76 |
| | LIFE-SPOUSE | | 4.40 |
| | LTD | | 3.76 |
| | PERS ACCIDENT | | 11.36 |
| | PRETAX DENTAL | | 210.00 |
| | PRETAX VISION | | 51.12 |
| | VISION | | 17.28 |

**Other Benefits and Information**

| | this period | total to date |
|---|---|---|
| Totl Hrs Worked | 23.90 | |

**Important Notes**
COMPANY PH #:855-547-8508

BASIS OF PAY: HOURLY

**Additional Tax Withholding Information**
Taxable Marital Status:
 RI:        Single
Exemptions/Allowances:
 RI:        1

© 1998, 2006, ADP, INC. All Rights Reserved.

▲ TEAR HERE ▼

© 2006 ADP, LLC

354

**Earnings Statement** **ADP®**

62M   863011  800100      0003032685   1      SEQ 000024

UNITED GROUND EXPRESS INC
11555 W.TOUHY AVENUE
CHICAGO,IL 60666
855-547-8508

| | | |
|---|---|---|
| Period Beginning: | 05/01/2022 |
| Period Ending: | 05/07/2022 |
| Pay Date: | 05/13/2022 |

MICKEDA BARNES
34 DUNBAR AVE.
RUMFORD RI 02916

Filing Status: Married filing jointly
Exemptions/Allowances:
   Federal: Standard Withholding Table,$20 Extra
   Withholding

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 12.2500 | 23.90 | 292.78 | 3,373.68 |
| Domestic Part | | | 1.26 | 10.08 |
| Overtime | | | | 593.51 |
| Premium OT | | | | 80.04 |
| Premium Pay | | | | 481.02 |
| Training | | | | 490.00 |
| **Gross Pay** | | | **$294.04** | 5,028.33 |

| | | |
|---|---|---|
| Net Pay | | $174.11 |
| Net Check | | $174.11 |

* Excluded from federal taxable wages
  Your federal taxable wages this period are $245.54

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -20.00 | 246.11 |
| | Social Security Tax | -16.13 | 294.96 |
| | Medicare Tax | -3.77 | 68.98 |
| | RI State Income Tax | -8.49 | 170.21 |
| | RI SDI Tax | -2.70 | 52.05 |
| | **Other** | | |
| | DENTAL | -10.50 | 84.00 |
| | Group Legal | -3.76 | 30.08 |
| | I/O DOMESTIC PR | -1.26 | 10.08 |
| | LIFE 125 | -1.22* | 9.76 |
| | LIFE-CHILD | -0.22 | 1.76 |
| | LIFE-SPOUSE | -0.55 | 4.40 |
| | LTD | -0.47 | 3.76 |
| | PERS ACCIDENT | -1.42 | 11.36 |
| | PRETAX DENTAL | -26.25* | 210.00 |
| | PRETAX VISION | -6.39* | 51.12 |
| | VISION | -2.16 | 17.28 |
| | 401K | -14.64* | 25.97 |

**Other Benefits and Information**

| | this period | total to date |
|---|---|---|
| Toll Hrs Worked | 23.90 | |

**Important Notes**
COMPANY PH #:855-547-8508

BASIS OF PAY: HOURLY

**Additional Tax Withholding Information**
Taxable Marital Status:
RI:              Single
Exemptions/Allowances:
RI:          1

© 1998, 2006, ADP, INC. All Rights Reserved.

©2009 ADP, LLC

▼ TEAR HERE

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

Rhode Island Public Transportation Authority
Plaintiff,
v.                                                    Case No.: 1:22−cv−00213−JJM−PAS

Mickeda Barnes
Defendant.

## CASE OPENING NOTICE − NOTICE OF REMOVAL FROM STATE COURT

The above−captioned case has been removed pursuant to 28 U.S.C. § 1441.  The above case number and caption should be used on all papers subsequently submitted to this Court.  Any motion pending with the state court at the time of the removal must be refiled with this Court for consideration.

Within 14 days after filing the notice of removal, the defendant(s) filing the notice of removal shall do whatever is necessary to enable the clerk of the state court to assemble and electronically transmit a certified copy of the docket sheet and all documents filed in the case being removed.

It is the responsibility of the defendant(s) to ensure that the state court record is filed with the Court.  The clerk of the state court will not electronically transmit the record until the defendant(s) provide written notice to all adverse parties and file a copy of such notice with the clerk of the state court in accordance with 28 U.S.C. § 1446(d).

Pursuant to LR Gen 201(b)(3), an attorney who is a member of the bar of the Rhode Island Supreme Court, and who represents a party in a case removed pursuant to 28 U.S.C. § 1441 et seq other than a party joining in the removal request, may appear and practice in this Court in that case, unless that attorney has been suspended or disbarred as a member of the bar of this Court.

Attorneys who are not members of the bar of this Court but who are permitted to appear and practice in this Court pursuant to the provisions of LR Gen 201(b)(3) must register as a Filing User and file documents electronically using the Court's Case Management/Electronic Case Files ("CM/ECF") system by completing the Electronic Filing Registration Form.

Dockets, opinions, rules forms, the court calendar and general notices can be obtained from the Courtr's website at www.rid.uscourts.gov.  Parties should specifically review the notice(s) listed below:

Notice of Electronic Availability of Case Information

Notice to Counsel and Pro Se Litigants

356

If you wish to inquire about your case by telephone, please contact the case manager at the direct extension listed below.

May 31, 2022                                    Hanorah Tyer–Witek, Clerk of Court

U.S. District Court
for the District of Rhode Island
One Exchange Terrace
Providence, RI 02903
Case Manager: Ryan Jackson 401–752–7213

357

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 6/1/2022 2:26 PM
Envelope: 3646158
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 613 of 689 PageID #: 968



# STATE OF RHODE ISLAND

## **REQUEST FOR AN APPEAL TRANSCRIPT**

☑ SUPERIOR COURT  ☐ FAMILY COURT  ☐ WORKERS' COMPENSATION COURT

☑ Providence/Bristol County  ☐ Kent County  ☐ Washington County  ☐ Newport County

| Plaintiff/Petitioner | Case Number |
|---|---|
| RHODE ISLAND PUBLIC TRANSIT AUTHORITY | PC-2020-06065 |
| v. | |
| **Defendant/Respondent** | |
| MICKEDA BARNES | |

| **Requesting Party (Check One)** |
|---|

☑ Attorney    ☐ State of Rhode Island Agency Request    ☐ Self-represented Litigant

| | Appeals Only | Date(s) Heard | Name of Judicial Officer | Court Reporter (If Known) |
|---|---|---|---|---|
| 1 | Entire Trial Proceedings, Excluding Jury Impaneling Where Applicable | | | |
| 2 | Motion for New Trial | | | |
| 3 | Sentencing | | | |
| 4 | Motion for Directed Verdict | | | |
| 5 | Other (Please Specify): <br> Motion to Compel <br><br> Motion for Summary Judgment | January 7, 2021 <br><br> May 24, 2022 | Assoc. Justice Joseph A. Montalbano <br><br> Assoc. Justice David Cruise | |

If the fee for the transcript is waived, please check the appropriate box:
  ☐ In Forma Pauperis (attach signed court order)
  ☐ Court appointed attorney (attach signed court order)

CC-12 (revised June 2020)                                           Page 1 of 2

 **STATE OF RHODE ISLAND**

Please indicate where we can send you a Transcript Estimate and Transcript Invoice:

☐  Mail to the address listed below:

|  |
|  |
|  |

☑  Email to the following address:

| mphaneuf@littler.com |

☐  Pick up at the clerk's office

Once the appeal transcript is completed and payment is made, the appeal transcript will be docketed on the lower court case and will be accessible on the Rhode Island Judiciary Public Portal.

/s/ Jillian Folger-Hartwell, LITTLER MENDELSON, P.C.

Name of Requesting Party

One Financial Plaza, Suite 2205, Providence, RI  02903

Address

_____

Bar Number if Applicable

Date: 6970

(401) 824-2107

Telephone Number

**For State of Rhode Island Agency Requests Only**

/s/ _____

Name of Chief Financial Officer

Date: _____

RIFAN Account Number to be Charged

CC-12 (revised June 2020)

Page 2 of 2

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/31/2022 2:52 PM
Envelope: 3644315
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS   Document 4   Filed 06/03/22   Page 615 of 689 PageID #: 970

STATE OF RHODE ISLAND                                    SUPERIOR COURT
PROVIDENCE, SC

---

RHODE ISLAND PUBLIC TRANSIT      )
AUTORITY                         )
                                 )
              Plaintiff,         )
                                 )        Civil Action No. PC-2020-06065
       v.                        )
                                 )
MICKEDA BARNES,                  )
                                 )
              Defendant.         )
                                 )

---

## ORDER

This matter came for hearing before the Honorable R. David Cruise on May 24, 2022, on Plaintiff Rhode Island Public Transit Authority's ("RIPTA" or "Plaintiff") Motion for Partial Summary Judgment ("Motion"). After hearing thereon, it is hereby:

### ORDERED, ADJUDGED, AND DECREED

1. Plaintiff's Motion is GRANTED as to Count I of RIPTA's Complaint for a Declaratory Judgment.

   a. The Settlement Agreement between RIPTA and Mickeda Barnes, signed by Barnes on April 25, 2018 and by RIPTA on May 21, 2018, and attached to this Order as Exhibit 1 ("Settlement Agreement") is a valid and enforceable agreement.

   b. Defendant has waived all claims against RIPTA that arose prior to April 25, 2018, other than those explicitly carved out in Paragraph 2(d) of the Settlement Agreement.

4883-1981-3922.1 / 088768-1017

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/31/2022 2:52 PM
Envelope: 3644315
Reviewer: Victoria H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 616 of 689 PageID
#: 971

    c.  Defendant has waived all claims against RIPTA relating to her employment with RIPTA or the termination thereof.

2.  Plaintiff's Motion is GRANTED as to Count II of RIPTA's Complaint for breach of contract. Defendant's conduct amounted to three separate breaches, as follows:

    a.  Defendant breached the Settlement Agreement when she filed the case in Superior Court, case number PC 2018-6082.

    b.  Defendant breached the Settlement Agreement when she filed a charge with the Rhode Island Commission for Human Rights, RICHR Case No. 20 EPD 102-03/06/EEOC Case No. 16J-2019-00223.

    c.  Defendant breached the Settlement Agreement when she filed a charge with the Rhode Island Commission for Human Rights, RICHR Case No. 22 EPD 069-03/06.

**ENTERED** as an Order of this Court this _____ day of _____ 2022.

**ENTER:**

_____

**PER ORDER:**

_____

Presented by,

RHODE ISLAND PUBLIC TRANSIT AUTHORITY,

By its attorneys,

/s/Jillian S. Folger-Hartwell___
Jillian S. Folger-Hartwell (#6970)
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI 02903
401.824.2500
401.633.6853 (fax)
jfolgerhartwell@littler.com

May 31, 2022

2

4883-1981-3922.1 / 088768-1017

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/31/2022 2:52 PM
Envelope: 3644315
Reviewer: Victoria H

2:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 617 of 689 PageID #: 972

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of May, 2022, the foregoing was e-filed and served through email and regular mail on the party below. The document electronically filed is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916
mickeda5@gmail.com

/s/ Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell

3

4883-1981-3922.1 / 088768-1017

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/31/2022 2:52 PM
Envelope: 3644315
Reviewer: Victoria H

# EXHIBIT 1

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/3/2022 4:26 PM
Envelope: 3624336
Reviewer: Carol H
2-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 619 of 689 PageID #: 974

## SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS

This Settlement Agreement and General Release of Claims ("Agreement") is entered into by and between the Rhode Island Public Transit Authority (the "Authority"), on behalf of itself, its present or former officers, directors, subsidiaries, parents, affiliates, partners, employees agents, insurers, attorneys, accountants, executors, administrators, successors and assigns and all affiliated entities and Mickeda Barnes on behalf of herself, her representatives, agents, estates, heirs, successors and assigns ("Employee") (collectively referred to as the "Parties") for good and valuable consideration.

Employee and the Authority desire to settle fully and finally all differences between them including, without implication or limitation, the claims and allegations set forth in the complaints filed in the Rhode Island Superior Court, and removed, or subject to removal, to the United States District Court for the District of Rhode Island, captioned <u>Mickeda Barnes v. Rhode Island Public Transit Authority</u>, 1:17-cv-00505-JJM-PAS and <u>Mickeda Barnes v. Rhode Island Public Transit Authority, et al</u>, PC-2018-2287 (the "Lawsuits").

In consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to the following terms and conditions:

1.    <u>Payment.</u>

(a)    In consideration of the release and all of the promises and representations made by Employee in this Agreement, the Authority will pay to Employee the total gross amount of ONE HUNDRED AND FIFTY THOUSAND DOLLARS AND ZERO CENTS ($150,000.00) which amount shall be paid as follows: (1) a check payable to "Mickeda Barnes" in the amount of Fifty-Five Thousand Dollars and Zero Cents ($55,000.00), less applicable withholdings in

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/3/2022 2:35 PM
Envelope: 3624336
Reviewer: Carol H

2-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 620 of 689 PageID #: 975

settlement of Employee's claims for economic loss issued on a W-2; (2) a check payable to "Mickeda Barnes" in the amount of Fifty-Five Thousand Dollars and Zero Cents ($55,000.00), without withholdings, in settlement of Employee's claims for non-economic damages, issued on a Form 1099; and (3) one check payable to "Sonja Deyoe as attorney for Mickeda Barnes" in the amount of Forty Thousand Dollars and Zero Cents ($40,000.00) without withholdings, in settlement of Employee's claims for attorneys' fees, issued on a Form 1099.

(b)    The Authority will deliver all payments to Employee's attorney, Sonja Deyoe, Esq., 395 Smith Street, Providence, RI 02908, by overnight express mail or other secure means, within fourteen (14) calendar days from the expiration of the seven (7) day revocation period set forth in Paragraph 3(b), and only if the Authority's counsel has received two (2) originals of this Agreement executed by Employee, fully executed Forms W-4 and W-9 from Employee, and a Form W-9 from Employee's attorney.

(c)    Employee acknowledges and agrees that the above-referenced payments represent valuable consideration that the Authority is not otherwise obligated to provide her.

(d)    Employee acknowledges and agrees that the Authority makes no representation of any kind as to the income or other tax consequences of the payment and further acknowledges and agrees that she is solely responsible for all of her tax obligations, if any, including but not limited to all reporting and payment obligations, which may arise as a consequence of this settlement. Employee hereby agrees to indemnify and hold the Authority harmless from and against any and all loss, cost, expense (including attorneys' fees), interest, payments or penalties incurred by the Authority on account of Employee's failure to pay tax properly payable by her. Employee understands and agrees that the Authority has no duty to defend any claim or assertion

in connection with Employee's tax treatment of the proceeds of this payment, and Employee agrees to assume full responsibility for defending against any such claim or assertion.

2.      **Release of Claims.**

(a)      In exchange for and in consideration of the payment received pursuant to this Agreement, Employee agrees to release the Authority, its present and former direct and indirect parent entities, direct and indirect subsidiaries, partners, insurers, successors and assigns, and their present and former employees, officers, directors, shareholders, agents, attorneys and representatives (the "Releasees") from each and every claim or demand of every kind arising up to the date Employee signs this Agreement, including but not limited to those claims made by Employee in the Lawsuits. This includes a release of any rights or claims for any and all types of relief, including but not limited to back pay, front pay, compensatory and punitive damages, attorneys' fees and costs, and equitable orders, which Employee may have in any tort or contract action, any equitable action, any declaratory judgment action, or any action under Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment based on race, religion, color, national origin or sex; the Rhode Island Fair Employment Practices Act which, in addition to the classes protected in the law referenced above, additionally prohibits discrimination based on disability, country of ancestral origin, sexual orientation and gender identity and expression; the Americans with Disabilities Act of 1990, which prohibits discrimination against disabled persons; the Age Discrimination in Employment Act of 1967, ("ADEA"); the Older Worker Benefit Protection Act of 1990 ("OWBPA"); the National Labor Relations Act ("NLRA"); the Family Medical Leave Act; the Rhode Island Parental and Family Medical Leave Act; the Rhode Island Civil Rights Act; the Civil Rights of Individuals with Disabilities Act; the Rhode Island Personnel Files Act, the Employee Retirement Income Security Act, the Labor Management

*MB*

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/3/2022 2:25 PM
Envelope: 3624336
Reviewer: Carol H

2-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 622 of 689 PageID
#: 977

Relations Act; any amendments to the foregoing, and/or any other federal, state or local laws or regulations, whether or not included in the above non-exhaustive list. Employee also releases the Releasees from any claim for defamation, libel, slander, constructive or wrongful discharge, any claim that the Releasees dealt with her unfairly, breached any agreement or contract, including any breach of any collective bargaining agreement or any suit brought under Section 301 of the Labor Management Relations Act and/or any other claims whether arising under statutory or common law. No claim has been made by Barnes that she suffered sexual harassment or sexual abuse nor payment made to Barnes to resolve claims of sexual harassment or sexual abuse in the instant litigation such as those are defined by Internal Revenue Code Section 162 (q).

(b)     Employee agrees to indemnify and hold the Releasees harmless from and against any and all damages for back pay, lost wages, front pay, the value of lost benefits, emotional distress, or pain and suffering incurred by the Releasees as a result of any claims against Releasees by way of action for contribution, joint and/or several liability, indemnification or that are in any way derivative of claims Employee has brought, or may bring, against any third parties, including but not limited to claims against labor unions, union representatives, or any claims set forth in the Lawsuits. Employee agrees to release and discharge the Releasees not only from any and all claims which Employee could make on her own behalf, but she also specifically waives any right to become, and promises not to become, a member of any class in any proceeding or case in which a claim or claims against the Releasees may arise, in whole or in part, from any event which occurred as of the date of this Agreement. The Parties agree that if Employee, by no action of her own, becomes a mandatory member of any class from which Employee cannot, by operation of law or order of court, opt out, she will not be required to pay for any legal fees or costs incurred by the Releasees as a result. Although Employee is releasing

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/3/2022 2:36 PM
Envelope: 3624336
Reviewer: Carol H

2-CV-00215-JJM-PAS    Document 4    Filed 06/03/22    Page 623 of 689 PageID
#: 978

all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of her waiver of age claims under the ADEA and OWBPA.

(c)    This release covers claims that Employee knows about, and those that she may not know about, up through the date of this Agreement.

(d)    Despite any language herein to the contrary, Employee does not release claims that may arise after Employees signs this Agreement or that by law cannot be released by private agreement.  For example, this Agreement does not release claims for unemployment insurance or workers' compensation benefits.

(e)    After the parties had reached agreement in principal, Employee filed the above-reference suit in Rhode Island Superior Court, Case No. PC-2018-2287.  As a result, the Parties hereby agree that, except to enforce the provisions of this Agreement, should Employee bring any claim, action, or suit on any matter covered by the releases set forth in this Paragraph 2, against the Releasees, this Agreement may be asserted as a complete defense, and if the Releasees, collectively or individually, prevail, Employee shall be responsible for liquidated damages in the amount of $10,000 per violation or paying the attorneys' fees and costs that the prevailing Releasee(s) incurs in opposing such claim, whichever is less, in addition to any other relief to which the Releasee(s) may be entitled.  Although Employee is releasing all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of her release of age claims under the ADEA and OWBPA.

3.    **Age Discrimination in Employment Act ("ADEA").**

(a)    **Twenty-One (21) Day Consideration Period.**  Employee shall have twenty-one (21) days to consider and accept the terms of this Agreement by fully executing it below, and returning it to counsel for the Authority, Jillian Folger-Hartwell, One Financial Plaza, Ste. 2205,

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/3/2022 2:36 PM
Envelope: 3624336
Reviewer: Carol H

1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 624 of 689 PageID
#: 979

Providence, RI 02903. Employee hereby acknowledges and agrees that she has been and is by this Agreement advised in writing, during this twenty-one (21) day period, to consult with an attorney of her choosing regarding the terms and provisions of this Agreement. Employee may sign the Agreement of her own volition prior to the conclusion of the twenty-one (21) day period. Any changes to this Agreement, whether material or immaterial, do not restart the running of this twenty-one (21) calendar day review period.

(b)    **Revocation Period.**  Employee understands that she has a period of seven (7) calendar days after the date that she signs this Agreement ("Revocation Period") to revoke her acceptance of the terms of this Agreement by delivering a written notification to counsel for the Authority, Jillian Folger-Hartwell, One Financial Plaza, Ste. 2205, Providence, RI 02903. If Employee revokes this Agreement, it shall not be effective or enforceable and the Authority will not tender the payments set forth in Paragraph 1 of this Agreement. If Employee does not revoke this Agreement prior to the expiration of this seven (7) day period, this Agreement shall take effect at that time as a legally binding agreement between the Parties on the basis set forth herein.

4.    **Dismissal of Lawsuits.**  Employee agrees to sign and return with the signed copy of this Agreement the stipulations attached as <u>Exhibit A and Exhibit B</u>. The Company will file the signed stipulations with the United States District Court for the District of Rhode Island and the Rhode Island Superior Court, respectively. Employee agrees to take any and all measures reasonably required to comply with or effectuate the dismissal, with prejudice, of the Lawsuits.

5.    **No Admission of Liability.**  This Agreement shall not in any way be construed as an admission by the Authority that it acted wrongfully or failed to act lawfully with respect to Employee, or any other person, or that Employee has any rights whatsoever against the

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/3/2022 2:36 PM
Envelope: 3624336
Reviewer: Carol H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 625 of 689 PageID
#: 980

Authority. The Authority specifically disclaims any liability for any wrongful acts or omissions against Employee or any other person, on the part of itself, its employees, officers, directors and agents, past and present. Neither this Agreement nor anything in it shall be admissible in any proceeding as evidence of any unlawful or wrongful conduct by the Authority.

6.    **No Assignment**.  The Parties represent and warrant that no person other than the Parties had or have any interest in the matters referred to in this Agreement, that the Parties have the sole right and exclusive authority to execute this Agreement, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this Agreement.

7.    **No Additional Payments.**

(a)    Employee agrees and avers that she has been paid and/or has received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled, that she has suffered no known workplace injuries prior to the date of her execution of this Agreement other than those that she has already revealed to the Authority, and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to her, except as provided in Paragraph 1 or as she may obtain in the litigation of her existing workers' compensation claims.

(b)    In entering into this Agreement, the Parties have fully considered Medicare's interests, pursuant to the Medicare Secondary Payer rules, and in doing so, Employee has declared that her claim does not involve any illness, injury, incident, or accident in which medical expenses were incurred or are expected to be incurred in which Medicare has or may have an interest. Further, Employee affirms no conditional payments have been made to her by Medicare. If Medicare (or an agency representing Medicare's interests) later determines that it

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/3/2022 2:26 PM
Envelope: 3624336
Reviewer: Carol H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 626 of 689 PageID #: 981

does have an interest in the payments made pursuant to the Agreement, Employee will indemnify the Releasees for any payments and/or penalties they submit to Medicare (or the agency collecting on behalf of Medicare) as a result of the payments under this Agreement.

8. **Confidentiality.**

(a) Employee agrees to maintain the confidentiality of this Agreement and will not disclose in any fashion this Agreement, the amount of this settlement, and/or the substance or content of discussions involved in reaching this Agreement, to any person other than the Employee's attorneys, accountants, spouse, and tax advisors as required by appropriate taxing authorities, or as required by law. If inquiries are made of Employee regarding this Agreement, or the substance of this Agreement, by any other person, Employee will state that the case is resolved and shall not further characterize this settlement.

(b) Employee understands that the confidentiality restrictions of this Paragraph 8 extend to social media, including, but not limited to, blogs, virtual worlds, social or professional networking websites, and/or video sharing websites ("Social Media").

9. **Non-disparagement.** Employee agrees to make no negative, derogatory or disparaging comments, oral or written, publicly or in private, via Social Media or otherwise, about the Releasees or their products, services, business practices and philosophies, including any comments that reasonably could be considered (a) damaging or injurious to the Releasees' goodwill; (b) harmful to the Releasees' business interests; or (c) to impact negatively on the Releasees' business reputation or reputation in the community.

10. **No Future Employment.** Employee agrees not to reapply for employment with the Authority, any subsidiary, related, affiliated or parent entity or any entity which is now or in the future owned, controlled, acquired by the Authority. Employee further agrees that if she reapplies or applies for employment with the Authority, or any entity described above, her

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/3/2022 2:26 PM
Envelope: 3624336
Reviewer: Carol H

2-CV-00215-JJM-PAS    Document 4    Filed 06/03/22    Page 627 of 689 PageID #: 982

application may be denied on the basis of this Agreement. Employee agrees to waive any right to reinstatement to which she may be entitled under R.I. Gen. Laws §28-33-47, and if reinstated thereunder, she agrees to immediately and voluntarily resign from employment. This provision shall not be construed so widely as to bar the Employee from applying for work or working for the State of Rhode Island or the Rhode Island Department of Transportation.

11.    **Amendment.** This Agreement may not be modified, altered or changed except upon express written consent of both Parties.

12.    **Governing Law.** This Agreement will be governed by and performed in accordance with the laws of the State of Rhode Island without regard to its conflict of laws provision.

13.    **Suits to Enforce.** In any lawsuit brought to enforce the terms of this Agreement, the prevailing party shall also be entitled to recover from the other party court costs and reasonable attorneys' fees. Although Employee is releasing all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of this Agreement under the ADEA and OWBPA.

14.    **Severability.** Should any provision of this Agreement be declared or determined by any court or other tribunal of appropriate jurisdiction to be invalid or unenforceable, any such invalid or unenforceable provision shall be deemed stricken and severed from this Agreement and any and all of the other terms of the Agreement shall remain in full force and effect to the fullest extent permitted by law.

15.    **Entire Agreement.** This Agreement is the sole agreement between Employee and the Authority. Any other prior agreements between the Parties are hereby terminated and shall have no further force or effect. This Agreement may be amended in writing, only by a

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/3/2022 2:25 PM
Envelope: 3624336
Reviewer: Carol H

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 628 of 689 PageID #: 983

document executed by both Parties. The Authority has made no promises to Employee other than those set forth in this Agreement.

16.  **Captions.** The paragraph captions in this Agreement are for convenience only and shall neither affect the meaning of the provisions of this Agreement, nor be used in construing this Agreement.

17.  **Acknowledgement of Voluntariness and Understanding.** Employee represents and agrees that she has been advised to and has had the opportunity to thoroughly discuss all aspects of this Agreement with an attorney, that she has carefully read and fully understands all of the provisions of this Agreement, that she is voluntarily entering into this Agreement, and that she does not and has not relied in any way on any representations or statements of the Authority or its attorneys not contained in this Agreement.

18.  **No Interference with Rights. Nothing in this Agreement including but not limited to the release of claims, class and collective action waiver, promise not to sue, confidentiality, cooperation, non-disparagement, withdrawal of charge, no future employment, and attorneys' fees shifting provisions, (a) limit or affects Employee's right to challenge the validity of this Agreement under the ADEA or the OWBPA, (b) prevents Employee from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the Equal Employment Opportunity Commission, National Labor Relations Board, the Securities and Exchange Commission, Rhode Island Commission for Human Rights, or any other any federal, state or local agency charged with the enforcement of any laws, including providing documents or any other information, or (c) limits Employee from exercising rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees, although by signing this**

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/3/2022 2:28 PM
Envelope: 3624336
Reviewer: Carol H

Case 1:22-CV-00215-JJM-PAS   Document 4   Filed 06/03/22   Page 629 of 689 PageID #: 984

Agreement Employee is waiving rights to individual relief (including backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint, lawsuit or other proceeding brought by Employee or on Employee's behalf by any third party, except for any right Employee may have to receive a payment from a government agency (and not the Authority) for information provided to the government agency or otherwise where prohibited.

**PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

Mickeda Barnes

Date: 4-25-18

Rhode Island Public Transit Authority

By:

Title: Chief Legal Counsel

Date: 5/21/18

# EXHIBIT A

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/3/2022 2:26 PM
Envelope: 3624336
Reviewer: Carol H

1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 631 of 689 PageID
#: 986

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MICKEDA BARNES, )<br><br>PLAINTIFF, )<br><br>v. )<br><br>RHODE ISLAND PUBLIC TRANSIT<br>AUTHORITY, )<br><br>DEFENDANT. ) | Civil Action No.  1:17-cv-00505-JJM-PAS |

## STIPULATION OF DISMISSAL

Pursuant to Fed. R. Civ. P. 41(a), Plaintiff Mickeda Barnes and Defendant Rhode Island

Public Transit Authority, by their respective undersigned counsel, stipulate that this action is

hereby dismissed, with prejudice.  Each party shall bear its own costs and attorneys' fees.

MICKEDA BARNES,                     RHODE ISLAND PUBLIC TRANSIT
                                    AUTHORITY,

By her attorneys,                   By its attorneys,


/s/ Sonja L. Deyoe                  /s/Jillian S. Folger-Hartwell
Sonja L. Deyoe (#6301)              Jillian S. Folger-Hartwell (#6970)
Law Offices of Sonja L. Deyoe       Littler Mendelson, P.C.
395 Smith Street                    One Financial Plaza, Suite 2205
Providence, RI 02908                Providence, RI  02903
(401) 864-5877                      (401) 824-2500
(401) 354-7464 (fax)                (401) 272-4520 (fax)
sld@the-straight-shooter.com        jfolgerhartwell@littler.com

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/3/2022 2:36 PM
Envelope: 3624336
Reviewer: Carol M H

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 632 of 689 PageID
#: 987

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the within Stipulation was filed and

served electronically by operation of the Court's CM/ECF System upon the following counsel of

record on this _____ day of _____, 2018:

Sonja L. Deyoe, Esq.
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
sld@the-straight-shooter.com

/s/Jillian S. Folger-Hartwell

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/3/2022 2:28 PM
Envelope: 3624336
Reviewer: Carol H

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 633 of 689 PageID #: 988

# EXHIBIT B

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/3/2022 2:26 PM
Envelope: 3624336
Reviewer: Carol M H

STATE OF RHODE ISLAND                          SUPERIOR COURT
PROVIDENCE, SC.

| | |
|---|---|
| MICKEDA BARNES, et al, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No.  PC-2018-2287 |
| RHODE ISLAND PUBLIC TRANSIT | ) |
| AUTHORITY, et al, | ) |
| | ) |
| DEFENDANTS. | ) |
| | ) |
| | ) |
| | ) |

## STIPULATION OF DISMISSAL WITH PREJUDICE

Pursuant to Super. Ct. R. Civ. P. 41(a), Plaintiff Mickeda Barnes and Defendant Rhode Island Public Transit Authority, ("Defendant"), by their respective undersigned counsel, stipulate that this action is hereby dismissed, with prejudice.  Each party shall bear its own costs and attorneys' fees.

MICKEDA BARNES,                    RHODE ISLAND PUBLIC TRANSIT
                                   AUTHORITY,


By her attorneys,                  By its attorneys,


/s/ Sonja L. Deyoe                 /s/Jillian S. Folger-Hartwell
Sonja L. Deyoe (#6301)             Jillian S. Folger-Hartwell (#6970)
Law Offices of Sonja L. Deyoe      Littler Mendelson, P.C.
395 Smith Street                   One Financial Plaza, Suite 2205
Providence, RI 02908               Providence, RI  02903
(401) 864-5877                     (401) 824-2500
(401) 354-7464 (fax)               (401) 272-4520 (fax)
sld@the-straight-shooter.com       jfolgerhartwell@littler.com


Firmwide:151655351.8 088768.1003

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the within Stipulation was filed and served by operation of the Court's electronic filing system, upon the following counsel on this ___ day of _____, 2018:

Sonja L. Deyoe, Esq.
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
sld@the-straight-shooter.com

/s/Jillian S. Folger-Hartwell

Firmwide:151655351.8 088768.1003

STATE OF RHODE ISLAND                                    SUPERIOR COURT

PROVIDENCE, S.C.


RHODE ISLAND PUBLIC TRANSPORTATION          CIVIL ACTION: PC-2020-06065

AUTHORITY,

PLAINTIFF,

Vs.


MICKEDA S. BARNES

DEFENDANT,


### NOTICE OF FILING OF NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §1332 (b)(3), 1369, 1441, 1446(3), Defendant Mickeda S. Barnes ("Defendant") gives notice to Superior Court of Providence County, Rhode Island, and to the Attorney for Plaintiff Rhode Island Public Transportation Authority, that on Tuesday May 31, 2022, Defendant Mickeda S. Barnes Pro-Se filed a Notice of Removal, thereby removing this action to the United States District Court for the District of Rhode Island. A certified copy of the Notice of Removal is attached to this Notice.


                                        Mickeda S. Barnes Pro-Se

                                        34 Dunbar Ave Rumford R.I. 02916

                                        401-419-2250 Mickeda5@gmail.com


Date: May 31, 2022

*# 22-CV-213-JJM PAS Federal Notice of Removal US District Court.*

*Mickeda A Barns*

*May 31, 2022*

SUPERIOR COURT
FILED
CLERK'S OFFICE
22 MAY 31 PM 2:03

#22-CV-213-JJM
—PAS

Federal Notice of
Removal Case #

Judge John McConnel
US District Court

STATE OF RHODE ISLAND                    SUPERIOR COURT

PROVIDENCE, S.C.


RHODE ISLAND PUBLIC TRANSPORTATION        CIVIL ACTION: PC-2020-06065

AUTHORITY,

PLAINTIFF,

Vs.


MICKEDA S. BARNES

DEFENDANT,


### NOTICE OF FILING OF NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §1332 (b)(3), 1369, 1441, 1446(3), Defendant Mickeda S. Barnes ("Defendant") gives notice to Superior Court of Providence County, Rhode Island, and to the Attorney for Plaintiff Rhode Island Public Transportation Authority, that on Tuesday May 31, 2022, Defendant Mickeda S. Barnes Pro-Se filed a Notice of Removal, thereby removing this action to the United States District Court for the District of Rhode Island. A certified copy of the Notice of Removal is attached to this Notice.


Mickeda S. Barnes Pro-Se

34 Dunbar Ave Rumford R.I. 02916

401-419-2250 Mickeda5@gmail.com


Date: May 31, 2022

# 22-CV-213-JJM-
PAS Federal
Notice of Removal
US Distric Court.

*Mickeda S. Barnes*

*May 31, 2022*

SUPERIOR COURT
FILED
CLERK'S OFFICE

22 MAY 31  PM 2: 03

# 22-CV-213-JJM - PAS

Federal Notice of Removal Case #

Jodge John McConnel US District Court

**HEARING DATE: May 24, 2022**

STATE OF RHODE ISLAND                                    SUPERIOR COURT
PROVIDENCE, SC

| | |
|---|---|
| RHODE ISLAND PUBLIC TRANSIT AUTORITY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICKEDA BARNES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No. PC-2020-06065

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY'S REPLY TO MICKEDA BARNES'
OBJECTION TO ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Rhode Island Public Transit Authority ("RIPTA"), hereby files this reply to

Defendant Mickeda Barnes' ("Barnes") Objection to its Motion for Partial Summary Judgment to

inform the Court of Barnes' continued breach of the Settlement Agreement.  Specifically, Barnes

has further breached the Settlement Agreement when:

1. On April 4, 2022, Barnes served yet another new complaint against RIPTA in
   Superior Court, PC-2022-01801 ("Fourth Superior Court Action"), alleging
   numerous allegations arising from conduct precluded by the Settlement Agreement.
   Attached as <u>Exhibit A</u> is a copy of the complaint.

2. On April 12, 2022, Barnes requested and received a Notice of Right to Sue from
   the Rhode Island Commission for Human Rights regarding her Third Charge.
   Attached as <u>Exhibit B</u> is a copy of the Notice of Right to Sue Letter.  This
   indicates Barnes' intent to advance to suit.

4895-8368-3871.1 / 088768-1017

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 641 of 689 PageID #: 996

Including these two breaches, Barnes has now breached the Settlement Agreement four times: the Third Superior Court Action and associated appeal, the Second Charge, the Third Charge, and the Fourth Superior Court Action. Barnes' request of a Right to Sue on the Third Charge evinces her intention to proceed to suit on that matter. Barnes must be stopped. For these reasons, and the reasons set forth in RIPTA's Memorandum, RIPTA requests this Court enter judgment on Counts I and II of the Complaint in RIPTA's favor and issue an order as requested.

Respectfully submitted,

RHODE ISLAND PUBLIC TRANSIT AUTHORITY,

By its attorneys,

/s/Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell (#6970)
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI  02903
401.824.2500
401.633.6853 (fax)
jfolgerhartwell@littler.com

May 16, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of May, 2022, the foregoing was e-filed and served through email and regular mail on the party below. The document electronically filed is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916
mickeda5@gmail.com

/s/ Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell

2

4895-8368-3871.1 / 088768-1017

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 642 of 689 PageID #: 997

# EXHIBIT A

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 9:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 643 of 689 PageID
#: 998



# STATE OF RHODE ISLAND

## SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>PC-2022-01801 |
| **Plaintiff**<br>Mickeda Barnes et al.<br><br>v.<br><br>Rhode Island Public Transportation Authority.<br>(BOARD MEMBERS) et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Mickeda Barnes |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>34 Dunbar AVE<br>Rumford RI  02916 |
| Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence RI  02903<br>(401) 222-3250 | **Address of the Defendant**<br>60 Cata More Blvd #2<br>East Providence RI  02914 |

**TO THE DEFENDANT, Claims Strategies Old Third-Party Administrator to RIPTA:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 3/28/2022. | /s/ Stephen Burke<br>Clerk |

Witness the seal/watermark of the Superior Court



A TRUE COPY ATTEST
DEPUTY SHERIFF

SC-CMS-1 (revised July 2020)

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 9:58 PM
Envelope: 3625433
Reviewer: Carol M.

2:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 644 of 689 PageID #: 999



# STATE OF RHODE ISLAND

## SUPERIOR COURT

| **Plaintiff**<br>Mickeda Barnes et al.<br> v.<br>Rhode Island Public Transportation Authority. (BOARD MEMBERS) et al.<br>**Defendant** | **Civil Action File Number**<br>PC-2022-01801 |
| --- | --- |

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Claims Strategies Old Third-Party Administrator to RIPTA, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person of suitable age and discretion _____

    Address of dwelling house or usual place of abode _____

    Age _____

    Relationship to the Defendant _____

☑ With an agent authorized by appointment or by law to receive service of process.
    Name of authorized agent _____
    If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ With a guardian or conservator of the Defendant.
    Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
    Name of person and designation _____

---

Page 1 of 2

SC-CMS-1 (revised July 2020)

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 9:58 PM
Envelope: 3625433
Reviewer: Carol M.

2255-1-22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 645 of 689 PageID
#: 1000



# STATE OF RHODE ISLAND

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.

Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.

Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.

Name of authorized agent _____

If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ I was unable to make service after the following reasonable attempts: _____

_____
_____

| SERVICE DATE: 4 / 4 / 22 | SERVICE FEE $ |
| Month   Day   Year | |

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____

Signature

State of _____

County of _____

On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____

My commission expires: _____

Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised July 2020)

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 646 of 689 PageID
#: 1001

STATE OF RHODE ISLAND PROVIDENCE, SC                    SUPERIOR COURT

Mickeda S. Barnes

Kenyon E. Robertson

Doreen Barnes Robertson                    CIVIL ACTION NO: PC-2022-01801

                                           Amended Complaint

          , et al

     Petitioners

Vs.


Rhode Island Public Transportation Authority. (BOARD MEMBERS)

Rhode Island State Department of Administration Department.

Beacon Mutual-Present Third-Party Administrator to RIPTA.

Claims Strategics Old Third- Party Administrator to RIPTA.

Providence Police Department (Internal Affairs).

State of Rhode Island Department Labor and Training Division of Workers Compensation Unit.

State of Rhode Island General Assembly Labor.

State of Rhode Island Department of Transportation (Peter Alteri).


Federal Transit Authority (Funding from Federal Government).

Office of Federal Contract Compliance Programs.


     Defendants

SUPERIOR COURT
FILED
CLERK'S OFFICE

22 MAR 28  AM 11: 40

1

SUPERIOR COURT
FILED
CLERK'S OFFICE

22 MAR 28  AM 9: 47

Page 646

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 647 of 689 PageID
#: 1002

## Motion to file a Civil Action

## Motion to Enforce a Civil Action

### Motion to Facilitate Resolution of the Open Claims

### Order to Show Cause an Affidavit in Support of the (OSC)

### Motion For Partial Summary Judgment

**Pursuant to R.I. Sup. Ct. R. Civ.P.56(a), Plaintiff's moves for partial summary judgment against Defendant Ripta for declaratory judgement and breach of contract, respectively. In support of this this Motion, Plaintiff relies upon the Memorandum of law, Union Contract between Atu-618 and Ripta 2013-2015 Ripta's Bylaws and Ripta's Chapters 39-18-2 created Ripta, Affidavits and other evidentiary materials filed herewith.**

The Robertson and Barnes family or (Plaintiff's), pro-se brings this action against Ripta and other named above (DEFENDANTS) for violations of State of R.I., and for the enforcement of the provisions of this subsection of RIGL 39-18-2 and the powers and duties of the Authority RIGL 39-18-4 (a) 1, 4, 6, 9, 10, 11, 12, 14, and (b) 1, 2., State of R.I. Color of Laws, grievance process, arbitration process, bad faith claims, sexual harassment. sexual assault claims. medical malpractice claims, violations of the false claims act, alleged RICO conspiracy between the agencies and the State of R.I. Departments mention above, Title 6 and Title7 Federal claims, Civil Rights, and ADA violations in regard to discrimination with people with disabilities who live and work in the State of Rhode Island, RIGL 28-5-1 et seq, and RIGL 42-112-1 et seq with complaints about agencies that receive and accept Federal Government money and had filed complaints with multiple State agencies to make complaints about RIPTA the agency that Ms. Barnes had worked for and violated HIPPA Laws and Public Records Acts  has previously reported to different agencies that RIPTA had previously violated my rights in regards to my medical information and I had made several attempts to make complaints about this violations in my medical files Ripta's management mishandle and misrepresented the terms of the Laws in regards to breaching Ms. Barnes Union Contract between the Association and the Authority by not properly hearing and filing her grievances in a timely manner in her labor disputes.

 My medical file for work related injuries were not just used in my workers compensation case it was also used in my other claims that I had against Ripta or other third-party claims that were related to Ripta contractual obligations and that Ripta felt they were obligated to share that

2

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00215-JJM-PAS    Document 4    Filed 06/03/22    Page 648 of 689 PageID
#: 1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 649 of 689 PageID #: 1004

information with that organization like my ATU-Union 618 because they were named in a discrimination suit along with Ripta for discrimination claims. In December 2021 I received a letter from RIPTA for my Daughter Briana Robertson and myself that our Medicare information was compromised in Ripta's Breached from August of 2021 in which the information that was breached for Briana was information that Ripta should not had any information to and had no permission to have as Briana Robertson at the time was under the age of 18 and I had never signed any paperwork for Ripta to ever have access to have permission to Briana Robertson's Medicare information and I believe that Ripta and their officials have obtain this information illegally and was blaming a breach of this information on their system.

I don't believe that for a second I have five people in my household and only two peoples information was breached not all five. I have made complaints and filed a legitimate complaint threw the medical department process and goes purposely undetected because of the cooperation of State and City Officials around the State of R.I. willing to help Ripta get around the charges of HIPPA violations, discrimination claims and sexual harassment that has a knowledge of these allege complaints by Ms. Barnes and her family and did nothing to investigate their claims but to cover them up by not properly having police do a report of the crime committed.

To cover up the crime by having Ms. Barnes and her husband come into Ripta to offer her husband a Ripta driving job instead of the proper investigation into the sexual assault and sexual harassment Ms. Barnes and her family was subject to the summer of 2006 by Scott Simmons a Ripta clerk employee at the time of the assault, in which Kenyon was instead offered a job as a city bus driver by James Dean as Kenyon turned down a job offer and told Mr. James Dean he wanted the investigation into this sexual assault and the harassment that lasted all summer until September 6, 2006 by Scott Simmons the clerk for Ripta when the police was called to Ripta on Kenyon Robertson Ms. Barnes Husband when he confronted Scott Simmons for his actions with his wife and his family all summer up to that day in question.

The investigation never happens, and Ms. Barnes was told she too would be able to have to same investigation that never happen. Ms. Barnes was told not to quit and that it would never happen again, and the sexual harassment continued throughout her employment at Ripta and with different drivers and supervisors Ms. Barnes reported these complaints to the Commission of Human Rights and nothing was ever done. Ms. Barnes to date still has the complaints to the Commission of Human Rights and other agencies she reported the violations too. Ms. Barnes to date never been before the Board members at Ripta to tell them what had transpired and happened to her at Ripta nor had Ms. Barnes ever had a proper investigation into what happen to her and her family by Scott Simmons the former Clerk who sexual assaulted and harassed her at work at Ripta when he was a night clerk.

Ripta and Ms. Barnes Union ATU-618 entered into an agreement to provide a working understanding between the authority and the association that the agreement sets forth the wages of the authority working in the transportation department Ms. Barnes title is a city bus

3

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 650 of 689 PageID
#: 1005

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 651 of 689 PageID #: 1006

driver. The parties agreed not to discriminate against any employee of the authority because of race, sex, disability, sexual orientation, age, color, religion, national origin or handicap in any manner including upgrading, demotion, transfer, layoff, termination, rate of pay, or other forms of compensation or benefits. The parties agree that they will not tolerate sexual harassment page 2 of July 1, 2013, to June 30, 2015, of Ms. Barnes Union Contract between her Atu-618 and RIPTA contract agreement before RIPTA illegally terminated Ms. Barnes from her city bus driving job on February 15, 2016.

Ms. Barnes complaint is that before Ripta terminated Ms. Barnes this claim and other open claims Ms. Barnes had against Ripta before her termination has went uninvestigated and not addressed, unanswered by the Ripta Board Members bylaws of the Authority and Article 1 Statues and Ms. Barnes and her family claims are that Ripta and the State of R.I. owe them for these claims that are in violations of the State labor relations Board and the powers and duties of the Authority chapters RIGL 39-18-2, 39-18-4, 39-18-17 and that the State Of Rhode Island Department of Administration shall be responsible for the enforcement of the provisions of this subsection RIGL 39-18-2 and Bylaws of the Rhode Island Public Transit Authority.

## **PARTIES**

1. Mickeda S. Barnes considers herself an employee of Rhode Island Public Transit Authority illegally terminated by Ripta and was not given her arbitration for her Multiple grievances two before she was terminated by her employer RIPTA as the ARTICLE I ACT CREATING THE AUTHORITY) and two after she was terminated from Ripta's Rooster. Ripta's Labor Laws arbitration has been established pursuant to the provisions of Title 39 Chapter 18, of the Rhode Island General Laws (as amended by the act). These by laws, the powers of the authority and of its members and officials, and all matters concerning the conduct and regulation of the business of the Authority, shall be subject to the provisions of the act and has been entered into a agreed contract between the ATU-618 and The Authority to be Arbitrated when there are labor disputes and third party injury disputes.

2. Ms. Barnes has claims for her Disability pension, pension, Health benefits, insurance policies, and third-party claims that required attention that Ripta has responsibility for the maintaining of the maintenance of the Fare box panels that fell and caused Ms. Barnes to have a permanent disability to her right Knee and will need a lifetime of medical care and medication there was a contract signed between Genfare and Ripta and must be Arbitrated by law and in Ms. Barnes Union Contract also contracted to be either Arbitrated or to be settled and approved by the Ripta Board for settlement or by Court order for approval.

4

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 652 of 689 PageID #: 1007

3. **Signing of Instruments**. All contracts, instruments, and other documents shall be executed by the Chair or Vice- Chair on behalf of the Authority unless other provision shall be made by special vote of the members, these bylaws, or shall be required by law.

4. **NONDISCRIMINATION.** The Authority shall comply with the provisions of Chapter 5 of Title 28 of the General Laws of Rhode Island (The "State Fair Employment Practices Act). The Authority shall not refuse to hire any applicant for employment, or discharged or discriminate against any employee, because of his or her race, color, religion, age, sex, handicap, or county of ancestral origin, or otherwise engaged in any unlawful employment practice under the State Fair Employment Practices Act.

5. **ARTICLE VII INDEMNIFICATION**. A member of the Authority shall not be personally liable to the Authority for monetary damages

I Motion the Superior Court to hear my Civil Action under Rule 23 of the Federal Rules of Civil Procedure 28 US code 1357.

Superior Court shall have original jurisdiction of any Civil Action Authorized by law to be commenced by any person to recover damages for injuries to her person or property, because of the deprivation of any right or privilege of a Citizen of the United States by any act done in furtherance of any conspiracy mentioned in section 1985 of title 42, Which he had knowledge about to occur and had the power to prevent it.

Beacon Mutual and Claims Strategies the Third party administrators to RIPTA, Providence Police Department, Rhode Island Department of Labor and Training Division of Workers Compensation Court, R.I. Department of Transportation, The Department of Administrators, RIPTA Board members, ATU-618 Union Officials, R.I. General Assembly labor Division ,R.I. Medical Board complaint Division all conspired together to deny me and to Discriminate against me and my Family the compensation and any Insurance policies that me and my dependents are entitle to under law in regards to the liability of any insurer who may insured the employer against liability for the compensation or to determined the liability of the employer for the compensation provided the payment in whole or part of the compensation by the employer or the insurer shall be a bar to recovery against the other of the amount to be paid. Instead spent the money that could have settle with Ms. Barnes in the last 7 years and paid over 10 different Attorneys on Ms. Barnes claims when that money could have been used to have a proper settlement with Ms. Barnes, she can have the proper Medicare set a side, money relief and medical treatment she needs to take care of her and her family members.

Plaintiff already brought claims to enforce R.I.G.L. 28-36-7 proceedings by injured employee against employer into Workers Compensation Court and was denied with no weekly benefits and no settlement from the Workers Compensation Court. The Court further tries to acknowledge a contract between Ripta and Ms. Barnes.

5

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 653 of 689 PageID
#: 1008

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 654 of 689 PageID #: 1009

Ms. Barnes was told to sign for that portion of the global settlement while they wait for the Medicare set a side portion of the agreed global settlement of 12-01-2017 as agreed was entered into by Ms. Barnes and Ripta to be received back to the Court from CMS. Ms. Barnes did not agree to accept that $150,000 discrimination agreement without the other portion of the workers compensation and the Medicare set aside amount for Ms. Barnes to walk away from all claims against Ripta and that has not happened. Ripta is trying to convince the Courts that Ms. Barnes agreed to $150,000 for all claims and that was not Ms. Barnes agreement at all, and it needs to be heard or there needs to be an arbitration on the matter in regard to the employment matters Ripta clearly violated the Laws that was in place to oversee this process and The Department of Administration clearly turned their head when it came to enforcing the Laws that was put in place for Ripta by the General Assembly and the Labor committee in the State House.

There needs to be a final ruling on this matter by law as it has been long and complicated and to stop any negotiations in regard to any third-party claims no being paid out because of Ripta's all claims release they claim Ms. Barnes agreed to $150,000 only in which that is not true and there are open injuries not being settled, and outstanding medical bills not paid, medications, not paid, and injury claims being closed out and no weekly wages being awarded.

Ripta has assigned and disposed all and any of Ms. Barnes claims to make sure Ms. Barnes family do not receive any money owed and due, even Ms. Barnes pension is at stake because of this discrimination, that is a direct violation of her rights and in violations of Rhode Island employment practice law and Ripta had a chance to acknowledge the sexual assault and harassment claims Ms. Barnes has and was actively claiming and did not place it in their all claims release that Ripta had Ms. Barnes sign during a failed attempt to settle her workers compensation claims outside of the Federal Court claims of discrimination that was in no way settled in the Federal Court House or under the agreement or approval of the Federal Court Judge McConnel.

The Contract Ripta had Ms. Barnes Sign on April 25, 2018, is not legal contract between Ms. Barnes and Ripta because it was not authorized and signed by the Ripta Board members back on April 25, 2018, as required by Rhode Island General Laws in regard to Contracts and Indemnifications. C.A.: No:PC-2018-2287 was filed on April 4, 2018 by Ms. Barnes against Ripta and other named Defendants' in that case that was not part of Ripta's all claims release and Ms. Barnes has the right to file and facilitate resolution of these claims as they have not been properly settled and was stipulated by her Attorney that in a limited fashion that she may take action to resolve the claim on April 26, 2018.

Sonja Deyoe tried to resolve the claim but Ripta Failed to include Steven Dennis and Nick Mancini on that Superior Court Case PC-2018-2287. Ms. Barnes filed PC-2018-2287 Pro-se who also was included on the original agreed global settlement on December 1, 2017.

6

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

2:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 655 of 689 PageID
#: 1010

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 656 of 689 PageID #: 1011

The December 1, 2017, global- settlement then was amended by a form DWC-24 on February 5, 2018 and under R.I.G.L. 28-35-6(b) that can amend a memorandum of agreement, order, or decree on a Worker's Compensation Claim it states this form cannot be used to start or end weekly benefits.

Ripta and the Workers Compensation Court used this form to stop and end Ms. Barnes weekly benefits, and would not allow Steven Dennis to enter in an Interlocutory order for her weekly benefits while pending the CMS set a side to come back as Ms. Barnes was told, but Ripta Attorneys did not realize that the advances of the $2000.00 and the $3000.00 to Ms. Barnes from the Lump Sum Settlement agreed upon in principle on December 1, 2017 and states that should the claim not settle as anticipated Ripta shall take a dollar for dollar credit of the $2000.00 against any indemnity benefit payable to Barnes.

The lump sum settlement agreed upon on record noted in this DWC 24 form that was amended is the same agreement Ms. Barnes signed on April 25, 2018, while waiting still for her Medicare set a side to return that Nicholas Mancini told the Judge Ferreira that he would only need two weeks to submit in December 2017 and did not submit that caused Ms. Barnes on April 4, 2018, to file Case PC-2018-2287 in Superior Court against Ripta.

Ms. Barnes other claims against RIPTA in other venues were still pending and Ripta prior to entering into an agreement with Ms. Barnes for a Global Settlement put in Notice of Removal in accordance with 28 U.S.C. 1331, 1441, and 1446 and moves the action from Superior Court to the United States District Court of Rhode Island and its reasons".

On April 25, 2018, RIPTA had no active CEO of RIPTA and per the Bylaws of the General Assembly (Labor)any contracts had to be signed before a minute meeting and agreed by the Ripta Board members. Ms. Barnes Contract that she signed on April 25, 2018, has no signatures of any board members and Ms. Barnes never went before the RIPTA Board members for approval of this $150, 000.00 settlement that RIPTA claims is an all-claims release that was signed in workers compensation court as a global settlement that fell through as a global settlement because the CMS Medicare set a side came back higher than Ripta proposal that did not include all my injuries on the MOA.

CMS report came back at $127,000 well over $25,000.00 that Ripta proposed $11,455 that amount left out injuries on the MOA that was amended by Judge Salam on February 2016 and RIPTA backed out of the agreement without it being a mutual agreement as agreed upon in agreement.

Ripta tried to hold me to an all-claims release after RIPTA backed out of the global settlement of December 1, 2017, on Record before Workers Compensation Court making the settlement of the $150,000.00 null and voided.

Ripta also had time to take Ms. Barnes into Federal Court where Ripta removed the action to for their reasons just to pull it back into a Workers Compensation Court and then 4 years later

7

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 657 of 689 PageID #: 1012

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 658 of 689 PageID #: 1013

into Superior Court as a breach of contract to enforce the contract of April 25, 2018, if Ripta felt as Ms. Barnes breached the contract why? Didn't Ripta file it in Federal Court where they removed it to.

Ms. Barnes will tell you why? Ripta lied to the Judge that the case was settled as a Global settlement Judge McConnel believes this case was settled with both workers compensation and discrimination claims together.

Ripta and anyone who is conspiring with Ripta to stop the delivery of services on the basis of disability discrimination and not enforce the section of the rehabilitation Act of 1973 and to enforce title 11 of the American with disabilities act 1990 (42 U.S.C. 12132) (42 U.S.C. 12101 et eq) and R.I.G.L. 28-5.1-7 chapter 28 of title II and chapter 87 of tittle 42 and promulgated in accordance with the provisions of chapter 35 of title 42.and the DOJ implementing regulations at 28 C.F.R. Pt35:

My Discriminations claims were in Superior Court and RIPTA removed my claims to Federal Court and then RIPTA removed them to Worker's Compensation Court and entered with Plaintiff into a Global Settlement on her February 12, 2015, claims against RIPTA on 12-01-2017, and RIPTA backed out of this agreement.  Plaintiff claims for sexual assault and harassment were prior to her work injury om 02-12-2015 those claims could have been arbitrated but Ripta tried to go around that settlement or just do the right thing that was to go before the board members.

Plaintiff's family claims to redress to relief is that RIPTA knows that if you pulled plaintiffs Discrimination Claims into Worker's Compensation Court RIPTA can avoid an Arbitration that Plaintiff is entitled to under State Law and the Chapters that RIPTA was created under by the General Assembly. RIPTA also knows that discrimination claims cannot be settled unless workers compensation claims are settled and Plaintiff have not agreed to settled any of them outside of the global settlement placed on record 12/01/2017 on record, and RIPTA is trying to have the Appeals Board made a final ruling to deny Ms. Barnes any future weekly benefits and insurance policies and no partial permanent disability or permanent disability benefits for Ms. Barnes and her Family no decent offer for settlement and no arbitration and no one from the State to enforce the Bylaws of the Authority and the Laws of RI in regards to employment Law.

Plaintiff is entitled to disability benefits and was told that these changes were made to her group benefit plan she was in at Ripta that was changed in 2017 and then back dated to January 16, 2016. Those kinds of changes cannot be made collectively by the Union contract was active until June 30, 2016.

Plaintiff was the first Ripta worker injured under the age 41 and plaintiff was told she was too young for Ripta to force Ms. Barnes to retire to receive her disability benefits from her employer so plaintiffs Union and Ripta's Board members came up to make changes to the group plan to terminate plaintiff put her in active status and have plaintiff collect a government disability plan called SSDI benefits in 2016 after Ms. Barnes was illegally terminated. Plaintiff

8

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 659 of 689 PageID
#: 1014

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 660 of 689 PageID #: 1015

was still in her Union contract with RIPTA and the ATU 618 in regard to her employment contract and asked to file grievances on her behalf and Both Ripta and Union ATU-618 aided and abetted with each other to deny Ms. Barnes her contractual right to an arbitration.

This is the plaintiff right to asked for a termination grievance hearing and arbitration per her Union contract between Ripta and her Union contract under law. Plaintiff was denied any of her written grievances denied by Ripta management and Union because of Ms. Barnes right to sue them both and Ms. Barnes told them both she does not opt out of that right.

Plaintiff would not sign her right not to sue Ripta which is nowhere noted as a requirement in her union contract Plaintiff did not agree to that option so the Union nor Ripta would allow Ms. Barnes an arbitration violating the R.I.G.L. 39-18-2 and R.I.G.L. 39-18-4 that the General Assembly bylaws for RIPTA were put in Law. Plaintiff needed her arbitration Plaintiff needed a neutral party in regard to her benefits that Ripta and her Union was denying her because she did want to sign the agreement that Ripta wanted her to sign in order to keep her job instead of settling her claims that were prior to her work-related injury on 02/12/2015.

Plaintiffs motion the Court to enforce these laws to prohibit RIPTA and any other agency and political sub-division of the State from retaliating against an individual and her family for acting for participating in an action to secure her rights protected by these laws. Section 35.101 are for entities and section 511. The ADA is not mentioned in the employer's liability insurance part of W/C policy, and it is not relevant to that part. It is not for two reasons one, employers' liability insurance is based on legal liability for bodily injury suffered on the job by an employee. The ADA bases any claim for recovery on discrimination and violation of Ms. Barnes civil rights.

Two, employers' liability coverage is specifically excluded for damages arising out demotion, reassignment, harassment, humiliation, discrimination against termination of any employee, personnel practices, policies, acts, or omissions.

The purpose of the Workers Compensation Court system is to help employees who suffer job related bodily injuries. Ms. Barnes was purposely denied and delayed treatment from RIPTAS' present and old third party administrators along with the help from the RI Workers Compensation Court IME appointed Doctors who did not perform examinations that the Doctors swore to and wrote a report to the Court and had Ms. Barnes and her Family benefits, health care, weekly benefits taken illegally and fraudulently to the Court and cause Ms. Barnes even more pain, delay in treatments, denial of medical treatments from the injury itself of nerve pain so she can return to work to earn a living wage she was earning before the injury at work. This was RIPTAS personnel perceived discrimination on Ms. Barnes and her Family which clearly denied Ms. Barnes her right to a Jury Trial in which Ripta checked the box to when Ripta removed Ms. Barnes claims from Superior Court 28 U.S.C. 1331, 1367, 1441, and 1446(d) to U.S. District Court Federal Court and them into Workers Compensation Court.

Plaintiffs claims for relief for medical malpractice claims against RIPTA, their third-party administrators Beacon Mutual and Claims Straigies for falsifying reports, full time wage

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

2:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 661 of 689 PageID #: 1016

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 662 of 689 PageID
#: 1017

statements. Indemnity reports to the Department Labor and Training. Authoring surgeries but not the correct or all or the surgery needed to cure, alleviate the pain of the injured worker.

The Third party have violated Ms. Barnes Civil rights to weekly benefits and to have her injuries attended to as quickly as possible to get Ms. Barnes back to work.

Beacon Mutual told Ms. Barnes that the third-Party Administrators handle claims, process claims and manage claims, but due to the delay time in Workers Compensation Court of almost 7 years Ms. Barnes is convinced that Beacon Mutual is only handling the claims processing work which is issuing out checks and sending out letters to lawyers and doctors. Ms. Barnes is convinced that Beacon Mutual is not handling the Nurse management team to decide what treatment is needed or what surgery is needed and that Peter Alteri from The Department of Transportation is responsible for the decision of who get a surgery and what surgery and that there is no team of nurses or doctors involved in this process and is in direct violation to the claims handing and claims management by not having this medical team to review the medical records that is involved in treatment of injured workers after a work related injury for their transportation workers that get injured on the job at Ripta which compromises the health of the injured worker and violates the rules and compliance FTA places on Recipients of political subdivisions who accept federal government money.

Ms. Barnes Claims that RIPTA and their Attorneys plotted to purposely take Ms. Barnes Discrimination Claims Title 7 and Ms. Barnes Employment and benefit claims out of Superior Court and into Federal Court to avoid Arbitration that Ms. Barnes is entitled to under the Procedural Act in Rhode Island and would have reinstated Ms. Barnes back to her job as a city bus driver with her back pay and benefits per her Union contract with Ripta then pulled Ms. Barnes into Superior Court when the complaint against Ripta was not going their way filed a breach of contract complaint against Ms. Barnes, but RIPTA never pulled Ms. Barnes in Federal Court where Ms. Barnes Title7 claims came out of when Ms. Barnes and RIPTA entered into mediation and agreed to global settlement on 12-01-2017 that RIPTA backed out of and had no intentions on settling and where the original claims of the right to sue letters from Commission of human Rights twice issued a right to sue to Ms. Barnes against Ripta.

The Department Labor and training review Board said RIPTA violated the Rhode Island Fair Employment Act and the American with Disabilities Act in regard to injured workers. The Jurisdiction was Superior Court and RIPTA avoided Superior Court. Ms. Barnes during Workers Compensation Court Testified in trial that when Ms. Barnes spoke to her Adjuster at Beacon Mutual Kerri Messier that why is RIPTA not approving my any of my medical visits for treatments and why? don't Ripta don't want to pay for my injuries? Kerri Messier Replied to Ms. Barnes that Ripta does not like you and that they don't want to pay for any of your injuries. Ms. Barnes told Kerri Messier thank you and hung up.

10

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 663 of 689 PageID #: 1018

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 664 of 689 PageID
#: 1019

Rhode Island Public Transit Authority is deemed instrumentality and political subdivision of the State R.I.G.L. 39-18-18.1 The Authority shall pay all benefits, required by law. Until the authority ceases to exist. Thereafter, the payment shall be the obligation of the State.

Ms. Barnes and her family has paid the price in regard to this tragedy and the Workers Compensation Procedures in regard to Disability Discrimination claims along with work related injuries not being handled accordingly and in compliance with R.I.G.L. 28-5-24 injunctive and other remedies which were that the respondent has engaged in unlawful employment practices. The Chief Judge should have subpoena Kerri Messier from Beacon Mutual Insurance Company to find out what Ms. Barnes had said under oath was true.

Ripta violated their very own law R.I.G.L. 39-18-4.1(a) The Authority shall have the power to established reasonable rules of conduct for the protection of the health and safety passengers and employees of the Authority. The rules shall incorporate the provisions of the American with Disabilities Act of 1990, 42 U.S.C. 12101 et seq. and 28-5.1-7, chapter 28 of title 11 chapter 87 of the title 42 and be promulgated in accordance with the provision of chapter 35of title 42.

Ripta is not excused from its obligation under this chapter of R.I.G.I. 28-5-42 Receipt of assistance- No estoppel effect. Ms. Barnes is entitled as an Individual with a disability to obtain the protections of this chapter and other chapters Ripta is deemed instrumentality and political subdivision to in the State of Rhode Island Laws.

Ms. Barnes had a right shoulder surgery on February 13, 2018, before the surgery Claims strategies and then Beacon mutual when they took over again after 7 months told Ripta's Attorney to tell the Judge that Ms. Barnes had Right hand carpal tunnel for three years which was a misdiagnosed of my injuries and until Ms. Barnes had surgery to her Right shoulder to date it has been 6 years since Ms. Barns fell and Ms. Barnes does not have right hand carpal tunnel. Ms. Barnes had told Kerri Messier her claims adjuster from Beacon Mutual that when she fell, she had injured her left wrist arm and hand, low back, right knee and right shoulder. Kerri Messier told Ms. Barnes that she would work on the worst injury first. A week later Ms. Barnes receives a call from Ms. Kerri Messier that she wanted to know who took over Ripta's third party claims and Ms. Barnes told Ms. Kerri Messier if she wanted to know something that she had to give up information, Ms. Barnes ask Ms. Kerri Messier why does Beacon deny all her treatments? so Ms. Kerri Messier told Ms. Barnes that Beacon Mutual and Ripta do not like you and did not want to pay for any of your injuries so when Kerri Messier gave me my information I gave Ms. Kerri Messier her Information so I told her Claims Straigies took over for Ripta third party claims I told her thank you and said good bye. Claims Straigies authorize me to have my surgery with Dr. Peter Pizzerello Jr. but only authorized the Carpal tunnel release and did not authorize the Ulnar neuropathy at the wrist in the canal of Guyon was noted at the wrist of the canal that was also noted in Dr. Golini report page 2 of April 2, 2015, EMG report.

11

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 665 of 689 PageID
#: 1020

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 666 of 689 PageID #: 1021

This is considered medical malpractice by a third-party administrator along with Ripta officials Plaintiff alleges Ripta and Third-Party Administrator approve a surgery for Plaintiffs left hand but does not approve the other issues that is wrong with the Plaintiffs work related injuries her, arm, hand, and left upper extremity when Plaintiff fell at work on 02/12/2015? The third-Party Administrators paid by Ripta misrepresented the Laws of Rhode Island in Regard to workers Injuries and Insurance polices and insurance coverages and payments causing harm, fraud, and violations in Plaintiff civil rights. Plaintiff had a so call trial in workers compensation court and Dr. Peter Pizzerollo Jr. was never called to do a deposition for Ripta, nor did Dr. Pizzerrello Jr. come into Steven Dennis office to do a deposition on Plaintiff's behalf for court.

Plaintiff made complaints about this information to the commission of human rights to investigate, and Plaintiff tried to continue to go through Workers' compensation court for due process. Plaintiff had her 3rd surgery in 6 years on her left upper extremity for cubital tunnel on December 3, 2020. Ms. Barnes has had two prior surgeries on her left hand and wrist the first on May 6, 2015, for traumatic carpal tunnel that surgery was performed by Dr. Peter Pizzarello Jr. the second on February 9, 2017, was performed by Dr. Schmidt for carpal tunnel revision and ulnar nerve. Dr. Schmidt made notes that there was an ongoing issue with the left upper extremity and needed an EMG approval to rule out Cubital tunnel and that the was no named diagnosis at the time until he could rule out the cubital tunnel and Beacon Mutual denied the EMG test knowing that they were responsible for the requirements that under law that Beacon Mutual is obligated by law to go by care to help workers get better, compassionate claims team, injured worker resources.

Beacon states in their web site under What to expect after a work injury helping you get better Beacon's exceptional team of claims representatives, nurses and case managers will work with you and your employer to make sure you get the care that you need after a work-related injury. I had known cubital tunnel noted on my reports as early as 03-06-2016 from Dr. Peter Pizzerello Jr. it was never address.

Beacon Mutual then goes on to their claims process Beacon Mutual helps you get better and back to work the General Assembly also made laws to address the same but somehow, Plaintiff did not fall though the cracks of the system, Ms. Barnes was discriminated against and was purposely left out of what the Law requires for injured workers to return to work after a work-related injury who has a collective bargaining agreement.

Plaintiff has now been out of work almost 7 years with no benefits and not back to work at her position as a city bus driver after a work-related injury, after Ms. Barnes actually choose a job in which places Ms. Barnes back on Ripta's active work roster,  and Plaintiff was in a Union contract paying Union dues nor was Plaintiff ever reinstated back to work during her trial in Workers Compensation Court with the Chief Judge knowing all what had transpired throughout the proposed Global Settlement  that Ripta lied and then backed out of breaching that contract and then the trial in which the Judge gave a bench decision on October 31, 2019. Plaintiff's Worker's Compensation case is still pending in appeals in Workers Compensation Court.

12

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 667 of 689 PageID
#: 1022

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 668 of 689 PageID
#: 1023

On Beacon Mutuals website says after a work-related injury workers compensation insurance provides benefits to help you get better which may include reimbursement for lost wages, medical care and prescriptions.

*Beacon Mutual has violated Plaintiff's and her family's civil rights in regard to payment of weekly benefits for compensation, benefits for treatments to medical treatment and reasonable care in regard to the American with disabilities act in regard to an interstate commerce transportation driver who was injured in the course of her driving duties. Ms. Barnes and her family's 14 Amendment of their Constitutional rights, federal and State laws that are to protect them and their mother from disability discrimination, discrimination and national origin age claims.*

*34 US. Code 12361 Civil rights and section 1332 28 US. Code:1608 with the jurisdiction requirements Plaintiff previous work injury to the RIGHT KNEE from 10/03/2013 on bus 1332 and then 11/05/2014 on bus 1332 again on the highway going to Westerly Railroad Train Station Park and Ride with a full bus of passengers Plaintiff just picked up downtown by the old Disciplinary Attorney Board's Office Downtown Providence Rhode Island.*

*Plaintiff was Injured by the Fare box control panel when my bus hit a pothole on the highway and the control panel shook loose and dropped down on her right knee while Plaintiff was on the highway in transit to the railroad station. Plaintiff was already on alternative suitable employment from that injury when she fell at work on snow and ice on 02/12/2015.*

*Pursuant to the affirmative power of Congress to enact this part under Section 5 of the 14 amendments to the constitution as well as under section 8 of article 1 of the Constitution. Plaintiffs establishes their claim and right to relief and redress it is the purpose of this part to protect the civil rights of victims of gender motivated violence and to promote public safety, health and activities affecting interstate commerce by establishing a Federal Civil Rights Cause of Action for victims of crimes of violence motivated by gender.*

*The Plaintiff's cause of action of a person who acts under color of any statue, ordinance, regulation, custom or usage of any state who commits a crime of violence motivated by gender and deprives another of the right declared in subsection(b) shall be liable to the party injured in the action of recovery of compensation and punitive damages, injunctive and declaratory relief and such other relief and such other relief the court deems appropriate. On October 5, 2008 I was assaulted by two female passengers and on the City bus it is posted that if a City bus driver is assaulted they will be punished by a felony charged and a fine of $1500.00 or both The Providence Police Department and Ripta did not charge the two women who gave me a traumatic brain injury not a felony nor a fine, but someone did charge the two girls with simple assault but never sent me notice to go to court against the two women who have caused me to have a lifetime time of permanent brain damage and medical bills not the women, Providence Police Officers, nor Beacon mutual or Ripta has yet been responsible for*

13

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 669 of 689 PageID
#: 1024

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 670 of 689 PageID #: 1025

*these damages. Plaintiff had a year and three months of lost wages due to the Injuries of the traumatic brain injury and Beacon Mutual has never returned any of my lost wages or loss of use or any out-of-pocket expenses that Plaintiff incurred that they highly express on their website for workers compensation benefits to injured workers that would be reimbursed.*

To present day Plaintiff is receiving treatments with a neurologist 5 to 6 times a year and Plaintiff receive 4 trigger point injections shots to the back of her head every 3 to 4 months for the pain in her neck and shoulders and the migraines headaches that are from that assault. Plaintiff is not receiving weekly disability benefits from that injury Beacon has denied Plaintiff any compensation for her permanent injuries from an assault from two passengers that attacked Ms. Barnes at work on the city Bus during her Commerce Transportation Route.

*An act that would constitute a felony against the person or persons that would constitute a felony against the property if the conduct presented a serious risk of physical injury to another. That comes within the meaning of State of R.I. or and Federal offenses described in section 16 of the title 18 No prior criminal action, a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under subsection section 16 of the title 18, 28 U.S. code: 1603 of this title includes a political subdivision of an agency or instrumentality of a foreign state which means any (ENTITY).*

This is third time that Plaintiff had a run in with the Providence Police Department On/or about September 14, 2006, Two Providence Police Officers came to Ripta for a call for assault and once the Officers were their plaintiff and her husband told them that the night clerk named Scott Simmons had sexually assaulted the plaintiff was the night before in the Bus garage where bus drivers park the buses at night. Plaintiff told the Officers that Scott Simmons touched her left breast and told plaintiff that she needed to choose one of the five supervisors to sleep with and that he (Scott) would be her best choice as he was the youngest supervisor out of the five to choose from.

Scott told Ms. Barnes that he would make sure she has a good driving city bus to drive everyday if Plaintiff gets rid of her Ice Cream husband and marry a bus driver and that Plaintiff could be a supervisor one day it's the Plaintiffs choice, but Plaintiff better choose soon because he is about to be the night foreman and things are going to change.

The day the Providence Police is there at Ripta for Scott Simmons incident Scott had called the Plaintiffs house all summer long Scott as usual would talk dirty to anyone who answers the

14

phone at the plaintiffs house and told plaintiff she better not tell no one at Ripta that if she does when he becomes the night Forman he will be the first one to fired plaintiff if she tells anyone that he is calling the house and harassing the whole family and that Scott had touched my left breast in the bus yard and putting pressure on plaintiff to choose which supervisor plaintiff was to sleep with. Once the Officers knew what was going on they did not want to do a report and told Plaintiff that their superior told them it had to be handled in house and that me and my husband had to meet with James Dean the next day so the Next day came Plaintiff brought in her uniforms to quit Ripta and James Dean told Plaintiff not to quit that he would protect her and make sure it wont happen again and convince plaintiff where would Plaintiff make this kind of money and that Plaintiff was already knee deep in benefits at and then he offered Plaintiffs husband a driving job and Plaintiffs husband told him to take his job and shove it.

The next week Plaintiff received a check for around $2400.00 and plaintiff was told that it was payment for the whole summer that Scott Simmons passed by her name for overtime when he was calling Plaintiff house and talking dirty instead of selling overtime work by seniority.

Plaintiff was told that someone was going to investigate what happen, but it never happens everything settled down for a while and then it started right back up again Plaintiff has reports and complaints going to Commission of Human rights and to the Commission of Human relations and nothing was ever investigated, and the sexual harassment continued for years.

The second time Plaintiff came across the Providence Police was when Plaintiff was assaulted by the two women in 2008 and the Police Officers never charged the two women with any felonies nor gave Plaintiff a subpoena to go to court against the women who assaulted her, Plaintiff was on Victims Compensation for a while after the assault, so Plaintiff has no idea why Plaintiff was never served a subpoena to go to court against the women who assaulted and injured her. When Plaintiff went to internal affairs about the two incidents the officer Plaintiff spoke with said to plaintiff that the officials who responded back are probably retired by now. Plaintiff then ask him if he was going to investigate why the officials did not do their jobs and write a report about the sexual assault the officer said it was outdated to many years had passed. The Plaintiff told Officer there needs to be an investigation anyway and for someone to call Plaintiff. Plaintiff states that an Officer had called her and argued with the Plaintiff over the allege sexual assault that happen between Scott Simmons and herself and that she was told that there is no time limit on a sexual assault and harassment that happen at work on the job by her superior that has been covered up and Plaintiff has proof that the incident actually happen and has been intentional to cover up the crimes of Ripta's supervisors.

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 673 of 689 PageID
#: 1028

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 674 of 689 PageID #: 1029

<u>28 US code: 1603 service time to answer default there is no special arrangement that exist, but I will deliver a copy of the summons and complaint in accordance with an applicable service of Judicial documents to Defendants as used in this subsection a "notice of suit" shall mean a notice address to a foreign State and in the form prescribe by Secretary of the State by regulation. Services of Judicial Documents.</u>

**I am giving actual notice by delivering of a copy of the summons and complaint together, in any action brought into court of the United States or of a foreign State, a political subdivision there of or any agency or instrumently of a foreign State "ENTITY". Shall serve an answer or other responsive pleading to the complaint within 14 days after service has been made under this section.**

No Judgement by default shall be entered by court of the United States or of a State against a foreign State a political subdivision there of or an agency or instrumentality of a foreign State: "ENTITY" unless the claimant establishes her claim or right to relief by evidence satisfactory to the Court. A copy of any such default judgement shall be sent to the foreign State" ENTITY" or political subdivision in the manner prescribe for service in this section.

1. The plaintiff's Mickeda Barnes, Kenyon Robertson, Briana Robertson, Sidney Robertson, and Doreen Barnes-Robertson is a resident of the City of East Providence, County of Providence, State of Rhode Island at all times relevant hereto.

2. The Defendant, Rhode Island Public Transportation Authority (RIPTA), with its place of business located in Providence, Rhode Island which employed the Plaintiff at all times relevant hereto.

3. The Plaintiff was hired by the Defendant as a bus driver, November 26, 2002, and worked in that capacity until Mickeda Barnes was terminated on or about February 15, 2016.

4. On or about August 7, 2015, Mickeda Barnes the Plaintiff was cleared to return to work, she was able by use of the route selection process dictated solely on seniority, to bid on a route, if allowed by the defendant, that have met her needs, and allowed her to work, to accommodate her disability.

5. Defendant denied the Plaintiff Ms. Barnes the ability to return to work after allowing Ms. Barnes to choose her route selection dictated solely on seniority because Ms.

16

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 9:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 675 of 689 PageID #: 1030

Barnes would not give up her right to sue Ripta for Sexual Harassment claims and discrimination claims in order to keep her job as a city bus driver.

6. Ms. Barnes claims for sexual harassment and sexual assault claims was never properly investigated by RIPTA officials or even a report done by the Providence Police on the scene of the Incident on/or around September 6, 2006, that was reported by Ms. Barnes as a complaint to the Police Officers.

7. Plaintiff Ms. Barnes has filed numerous complaints about sexual harassment claims against different male co-workers at Commission of Human Rights and the complaints went unanswered between 2006 and 2014.

8. Plaintiff Ms. Barnes was injured at work on February 12, 2015, and Ripta on or about February 15, 2016, terminated Plaintiff Ms. Barnes from her position as a city bus driver because Plaintiff would not give up her rights to sue Ripta on her previous claims for sexual harassment and discrimination claims before she was injured at Ripta on the job February 12, 2015.

9. Plaintiff had filed several complaints with Ripta's EEO Jim Vincent for the sexual harassment and discrimination claims that went uninvestigated by the EEO Officer Jim Vincent.

## COUNT 1-9

### Violation of The Americans with Disabilities Act

### Rhode Island Person's with Disability Act R.I.G.L. 28-5-1 et seq, (Discharge from position and Retaliation for filing complaints for Sexual Harassment and Sexual Assault)

 Retaliation for filing complaints with Commission for Human Rights and the EEOC and filing a charge with the Commission of Human Rights and EEOC from a complaint that was filed in June 2015 of Denial of reasonable accommodations.

10. The plaintiff re- alleges the allegations in paragraphs one through nine of the complaint as set forth in full herein.

17

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 676 of 689 PageID #: 1031

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 677 of 689 PageID #: 1032

11. Defendant determined the plaintiff was disabled in June 2015, and despite this determination, and Plaintiff's ability to agree with RIPTA to return to work with reasonable accommodations Ripta failed to engage into a proper settlement in regards to Plaintiff's prior claims for sexual harassment and sexual assault, discrimination claims pending before Ms. Barnes injury on February 12, 2015 at work decided to have plaintiff sign a waiver not to sue Ripta for prior claims unrelated to the fall of February 12, 2015 at work in exchange to returning to her job after a work related injury violating the **American's with Disability Act and The Rhode Island Person's with disability Act R.I.G.L. 28-5-1 et seq, and R.I.G.L. 42-112-1 et seq. denying the plaintiff reasonable accommodations of choosing her job on or about August 7, 2015 based on Plaintiff's seniority which would have allowed Ms. Barnes to return back to work, but denied Plaintiff to return to her position as a city bus driver.**

12. Defendant wrongfully and unlawfully terminated Plaintiff, and Ripta's employees they hired to supervised the plaintiff engaged in wrongful and intentional sexual assault, sexual harassment, and intentional discrimination against Plaintiff and her family on the basics of the plaintiffs husbands disability and now the plaintiffs disability to deny the plaintiff reasonable accommodations after a work related injury but using her injury as a position to illegally settle prior claims of discrimination, sexual assault and harassment claims pending before Ms. Barnes work injury on February 12, 2015.

13. As a direct and proximate result of the Defendants' discrimination actions, the plaintiff and her family has suffered financial harm, emotional harm, emotional distress, and loss of her position.

Wherefore, Plaintiff respectfully demand judgment against the defendants in an amount to be determined by the litigation, together with interest, Attorney fees, cost punitive damages, and other relief this court deems just and fit.

## Count 4-13
## Violation of Title VII
### *R.I.G.I. 28-5-1 et seq, and R.I.G.I. 42-112-1et seq,*

**(Discharge from position-Retaliation denial of assignment due to prior disability discrimination, sexual harassment claims).**

**Plaintiff has the right to safeguard her right to obtain and hold employment without such discrimination or age discrimination of Ancestral Origin Sex of Plaintiff at the time of discharge 41 years old and declared to be a Civil Right.**

18

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 679 of 689 PageID
#: 1034

14. Defendant determined that the plaintiff was disabled in June 2015, and despite this determination the defendant and Plaintiff ATU-618 Union allowed Ms. Barnes to choose a job with her seniority on /or about August 7, 2015, with reasonable accommodations but did not allow Ms. Barnes the Plaintiff to return back to her position as a city bus driver after her work related injury unless Plaintiff gave up her prior claims against Ripta in exchange for her job as a city bus driver to return back to Ripta after the work injury unrelated to those prior claims plaintiff has against Ripta.

15. Defendant wrongfully and unlawfully terminated Plaintiff and engaged in wrongful and intentional discrimination against plaintiff and her family by denying her a reassignment into a position that would have allowed her to work despite her hand/wrist surgery this denied Ms. Barnes her ability to transfer to a more suitable/less physically demanding position to continue working for defendant because Plaintiff would not give up prior discrimination, sexual harassment and assault claims before her fall on February 12, 2015 at work. Defendants listed in complaint also denied plaintiff the powers and duties of the Authority R.I.G.L. 39-18-4 and the Director of the Department of Administration who is responsible for the enforcement of the provisions of this subsection R.I.G.L. 39-18-2 should have never by pass the legal team of the Administration and the loop hole of the cover ups at RIPTA supervised levels in the main office overseeing the City Bus Drivers and A complete Investigation into EEO Officer Jim Vincent who overlooked the sexual assault and harassment complaints and helped RIPTA officials cover up the actions of the responsible supervisors at Ripta down to the Board members. As this was a discrimination claims, retaliation claims, it also included claims for medical malpractice, duty of care of Ms., Barnes medical treatments being overlooked purposely because of Ms. Barnes complaints to the Commission of Human Rights and EEOC and to other Federal Agencies as retaliation Ms., Barnes complaints against and denial to defendant's request to sign or waive her right not to sue Ripta in order to keep her job as a city bus driver.

16. As a direct and proximate result of the Defendants discriminatory actions, the Plaintiff and her family has suffered financial harm, intentional torts of assault and battery intentional infliction of bodily injury and pain related to untreated misdiagnosed work related injuries, Intentional infliction of emotional distress, emotional harm due to the sexual assault and harassment and distressed, defamation of Ms., Barnes character and RIPTA misusing her medical information, subject Ms., Barnes medical information to be stolen violating HIPPA Laws State and Federal levels. Violations of Ms., Barnes and her daughter Briana Robertson's medical information that was stolen and who at the time was under age and Ms. Barnes has never given permission for a release to the information that Ripta acquired and neglectfully had stolen from them, Ms., Barnes

19

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS     Document 4     Filed 06/03/22     Page 680 of 689 PageID
#: 1035

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 9:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 681 of 689 PageID
#: 1036

daughters Medicare information was compromised by Ripta who had no business with that information and not equipped to handle any security threats that subjected and compromised plaintiffs and her daughters health information and social security numbers and address along with other undisclosed information Ripta is hiding, plaintiff is asking for additional damages due to this data breached that will have long term effects on Briana's credit report as she is already having people open up credit cards and other accounts in her name as we speak and her life is just starting.  Ms., Barnes and Plaintiffs are asking for payment of damages due to the losses of her position and family benefits of 6 years out of work and all the intentional torts Ripta has put the Plaintiffs through.

17. _Plaintiff alleged federal civil rights violations under 42 U.S.C. 1983 conspiracy to violate plaintiffs' civil rights assault and battery, intentional infliction of emotional distress and violations of G.L. 1956 9-1-35 and G.L. 1956 31-21.2-3 and cause of action based on alleged racial harassment by racial profiling using ex State police as Ripta new management to threaten, harass and get Ms., Barnes to quit her job before she was injured on February 12, 2015. After Ripta terminated Ms. Barnes Ripta used the very same new management of ex State police now Ripta's management to threaten, harass, and tell Ms., Barnes she could not step foot onto Ripta's property or in the main office to drop off any paperwork to the workers compensation department even though plaintiff is still in Court against them and there is no restraining order against her and Ms. Barnes has made no threats against them was told she would be arrested if she comes onto the premise of Ripta's property. The complaint also seeks punitive damages for those violations._

## COUNT 4 to 19

18. _The issues submitted by Plaintiff are substantively arbitrable under the terms of the collective bargaining agreement between the parties or under the RI Constitution or General Laws._

19. _Request for declaratory relief based upon an agreed statement of facts Ms. Barnes Plaintiff on August 7, 2015 and January 16, 2016 chosen two separate jobs with her seniority ATU-618 and RIPTA permission within one year of her illegal termination by seniority to return to work but was denied to return to work because Plaintiff would not waive her rights not to sue RIPTA for prior complaints of discrimination and sexual assault and harassment, discriminations claims unrelated to the work related injury fall of February 12, 2015. The director of the department of administration shall be responsible for the enforcement of the provisions of this subsection R.I.G.I. 39-18-2. Section 39-18-4.1 health and safety of passengers and employees of the Authority. (a) and (b)_

20

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 682 of 689 PageID
#: 1037

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 683 of 689 PageID #: 1038

WHEREFORE, Plaintiff respectfully demands judgement against the Defendants in the amount to be determined by the litigation, together with interest, attorney fees, cost, punitive damage, and other relief this court deems just and fit.

Respectfully, Mickeda.S Barnes  Plaintiff Pro -se

*Mickeda S. Barnes*    March 25, 2022

Mickeda S. Barnes on behalf of her and Ms. Barnes Family members also listed as Plaintiff's.

21

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

2:SS-1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 684 of 689 PageID
#: 1039

MICKEDA S. BARNES

KENYON E. ROBERTSON

BRIANA ROBERTSON

SIDNEY ROBERTSON

DOREEN BARNES-ROBERTSON,

        PETITIONERS ET, AL

VS.

RHODE ISLAND PUBLIC TRANSIT AUTHORITY (BOARD MEMBERS)

RHODE ISLAND DEPARTMENT OF ADMINISTRATION

BEACON MUTUAL INSURANCE (TPA)

CLAIMS STRAIGIES (OLD TPA)

PROVIDENCE POLICE DEPARTMENT (INTERNAL AFFAIRS)

STATE OF RHODE ISLAND DEPARTMENT LABOR AND TRAINING WORKERS COMPENSATION UNIT.

STATE OF RHODE ISLAND GENERAL ASSEMBLY (LABOR)

STATE OF RHODE ISLAND DEPARTMENT OF TRANSPORTATION (PETER ALTERI)

FEDERAL TRANSIT AUTHORITY (FTA)

OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS,

        DEFENDANTS

## JURY DEMAND

Plaintiff hereby demands jury trial on all counts so triable.

Mickeda S. Barnes                                    Plaintiff,

34 Dunbar Ave Rumford R.I. 02916          Mickeda S. Barnes and her Family as Represented

401-419-2250

Email: Mickeda5@gmail.com                    March 25, 2022

22

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 9:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 685 of 689 PageID
#: 1040

22

R.I.G.L. 28-5-7 Unlawful employment practices to refuse to reasonably accommodate a member's disability unless the labor organization can demonstrate that the accommodation would pose a hardship on the labor organization's program, enterprise, or business

Nothing in this section shall prevent the readjustment of benefits or compensation for reasons unrelated to compliances with R.I.G.L. 28-5-6 and 28-5-38.

R.I.G.L. 28-5-13 (6) Powers and Duties of Commission to receive, investigate, and pass upon charges of unlawful employment practices.

R.I.G.L. 28-5-16 Power to prevent unlawful Practices- The Commission is empowered and directed to prevent any person from engaging in unlawful employment practices provided that before instituting the formal hearing authorized by 28-5-18- 28-5-27, it shall attempt, by informal methods of conference, persuasion, and conciliation, to induce compliance with this chapter.

                    Conclusion

There is no basis for the Court to enter a Partial Summary Judgement, or any kind of Counts of Declaratory Judgement for breaching any part of a general release agreement for discrimination claims or personal injury liability claims laws for State and Federal claims that Ripta is claiming Defendant Breach in a contract that lacked jurisdiction in Workers Compensation Court when it did not satisfy the "GENERAL CONTRACT LAW PRINCIPALS". And the Defendant's Title VII Claims were removed by the Plaintiff Ripta in Superior Court to Federal Court. If there has to be a decision, then I demand a trial of my peers.

                Respectfully submitted,

            Mickeda S. Barnes Pro-Se        March 25, 2022

            *Mickeda S Barnes  Pro-Se  March 25, 2022*

22

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 686 of 689 PageID
#: 1041

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

Case 1:22-cv-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 687 of 689 PageID #: 1042

# EXHIBIT B

STATE OF RHODE ISLAND
COMMISSION FOR HUMAN RIGHTS

RICHR NO.   22EPD 069-03/06              EEOC NO.  16J-2022-00055

In the matter of

Mickeda S. Barnes
    Complainant

v.                                          **NOTICE OF RIGHT TO SUE**

Rhode Island Public Transit Authority
    Respondent

This NOTICE OF RIGHT TO SUE is issued to the above-cited complainant pursuant to Section 28-5-24.1(a) of the General Laws of Rhode Island because more than one hundred and twenty (120) days and less than two (2) years have elapsed since the charge was filed, the Commission is unable to secure a settlement or conciliation agreement, the Commission has not commenced hearings on a complaint and the complainant has requested a Right To Sue.  With the issuance of this NOTICE OF RIGHT TO SUE, the Commission is terminating any further processing of this charge.

In the event that the above-cited matter includes allegations against individually-named employees of a respondent employer under the Rhode Island Fair Employment Practices Act, please note that recent Rhode Island Supreme Court decision in <u>Mancini v. City of Providence</u>, 155 A.3d 159 (RI 2017), held that employees of a respondent employer are not individually liable under the Act.  Please consult the decision and/or an attorney to determine how the decision affects this case.  The decision also may be found at: https://www.courts.ri.gov/Courts/SupremeCourt/SupremeOpinions/14-88.pdf

This NOTICE OF RIGHT TO SUE is issued at the complainant's request.  If the complainant intends to sue, S/HE MUST DO SO WITHIN NINETY (90) DAYS FROM THE DATE OF THIS NOTICE: OTHERWISE, THE RIGHT TO SUE IS LOST.

On Behalf of the Commission

4/12/22
_____          _____
Date                        Michael D. Évora
                            Executive Director

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 5/16/2022 5:58 PM
Envelope: 3625433
Reviewer: Carol M.

Case 1:22-CV-00213-JJM-PAS    Document 4    Filed 06/03/22    Page 689 of 689 PageID #: 1044

**CERTIFICATION**

I CERTIFY THAT on April 12, 2022, I sent out a **RIGHT TO SUE** regarding the case Mickeda S. Barnes vs Rhode Island Public Transit Authority RICHR NO. 22EPD 069-03/06 to the following persons:

| | |
|---|---|
| Mickeda S. Barnes<br>34 Dunbar Avenue<br>Rumford, RI  02916 | President<br>RI Public Transit Authority<br>705 Elmwood Avenue<br>Providence, RI  02907 |
| James O'Brien, Esq.<br>Agent for service<br>705 Elmwood Avenue<br>Providence, RI  02907 | Jillian S. Folger-Hartwell, Esq.<br>Littler & Mendelson, P.C.<br>One Financial Plaza, Ste. 2205<br>Providence, RI 02903 |
| | Ginny Deaza<br>Administrative Aide<br>April 12, 2022 |
| | |