STATE OF RHODE ISLAND

PROVIDENCE, SC

SUPERIOR COURT

*Amended*

RHODE ISLAND PUBLIC TRANSIT

AUTHORITY

           Plaintiff,

    v.

MICKEDA S. BARNES,

           Defendant

Civil Action No. PC-2020-06065

---

**MICKEDA BARNES MEMORANUM OF LAW IN SUPPORT OF IT OBJECTION TO RHODE ISLAND PUBLIC TRANSIT AUTHORITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT MICKEDA BARNES AS TO ALL COUNTS FOR DECLARTORTY JUDGEMENT, LIABILITY, AND BREACH OF CONTRACT RESPECTIVELY. DEFENDANT MOTIONS SUPERIOR COURT THAT IT HAS BEEN ESTABLISHED LAW THAT THE EXCLUSION OF JURISDICTION OF THE SUPERIOR CIVIL COURT IS NOT TO BE READILY INFERRED BUT PROHIBIT IS EITHER IMPLIEDLY BARRED OR EXPLICITLY EXPRESSED BY PLAINTIFF, RHODE ISLAND PUBLIC TRANSIT AUTHORITY WHEN PLAINTIFF GIVES NOTICE TO SUPERIOR COURT OF PROVIDENCE COUNTY, RHODE ISLAND AND TO THE ATTORNEY OF THE DEFENDANT ON NOVEMBER 2, 2017 THAT PLAINTIFF RIPTA FILED A NOTICE OF REMOVAL, THEREBY REMOVING THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND A CERTIFIED COPY OF THE NOTICE OF REMOVAL IS ATTACHED TO THE NOTICE. RHODE ISLAND PUBLIC TRANSIT AUTHORITY REMOVAL PURSUANT TO U.S.C. 1331, 1367, 1441 AND 1446(d). BY ITS' ATTORNEY JILLIAN FOLGER HARTWELL.**

In support of this Motion, Defendant relies upon the accompanying Memorandum of law, Affidavits, court orders, medical report, petitions, work schedules, Union Contracts agreement, Board Meeting Minutes. Third party Contracts. Police reports, injury report and all related evidentiary materials filed herewith.

I argue by law Ripta removed Civil Action PC2017-4847 Mickeda Barnes vs Ripta Superior Court action on November 2, 2017, when Ripta secured a Confidentiality requirement mediation in Workers Compensation Court signed by Steven Dennis and Nicholas Mancini and Plaintiffs signature is not there signed by the other two Attorneys on 09/27/2017. Plaintiff knew nothing

FILED
CLERK'S OFFICE

22 MAY 13  AM 10: 23

about this confidentiality mediation statement until Steven Dennis turned over her files when he withdrew from her workers compensation case. **(EXHIBIT 1).**

In Worker's Compensation Court there was an order and referred Judge Feeney to be assigned to mediate the matter. **(EXHIBIT 2).**

Sonja Deyoe office receives a message from a unknow source that there is a upcoming mediation on 10/13/2017 at 10am.

Steven Dennis sent a letter to Plaintiff's Attorney Sonja Deyoe for her Discrimination Case on October 3, 2017. It is about an upcoming mediation in relation to try and settle all open claims in the above-mentioned client Ms. Barnes and it is scheduled for 10/13/17 at 10 am. **(Exhibit 3).**

Ripta took the Right to sue that Commission of Human Rights gave to me and filed it in Superior Court then removed it from Superior Court once Ripta and it Attorneys secured a mediation in Worker's Compensation Court with a Judge who work with Nicholas Mancini and was from the same Law firm which was a conflict of interest Fraudulent Misrepresentation Inducement" that would the party(plaintiff would have entered into the contract on the terms of the contract if she knew the what she now knows because the defendants held out on information important to her case and misrepresented to save and discriminate against Ms. Barnes. Case Law BV Nederlandse Indelstrie Van Elprodukten Vs Rembrandt Enterprises, INC 2018. New test for Fraudulent Misrepresentation cases like mine.

Ripta removal to Pursuant to 28 U.S.C. 1331, 1367, 1441 and 1446(d) removing the action to the United States District Court for the District of Rhode Island. Jillian Hartwell sent a certificate of Service to Ms. Barnes Attorney Sonja Deyoe on November 2, 2017. On the Removal states the Plaintiffs claims were American with Disabilities Employment under civil rights. The basics of jurisdiction is Federal question U.S. Government not a party. Cause of action 42 U.S.C. 12101, title VII of the Civil rights Act of 1964, 42 U.S.C. 2000e. Defendant also claims Plaintiff claims disability, race, and sex discrimination in connection with her termination from employment. Plaintiff is also request Jury demand. This form was dated and signed by Attorney Jillian Hartwell representing Ripta. **(EXHIBIT 4)**

Defendant's Attorney in the notice of removal gives a background to the acceptance of service of plaintiff Mickeda Barnes commenced Civil Action against Defendant in Providence Superior Court PC-2017-4847 which defense counsel accepts on October 12, 2017.

On October 13, 2017, Ripta had already secured a mediation order wit worker's Compensation Court with Judge Feeney who already has a relationship with the Attorneys representing Ripta which violates Mickeda Barnes Civil rights and the State of R.I. code of ethics.

This also violates the laws that were put in place for Ripta and the Bylaws for Ripta's Board members. Ms. Barnes was entitled to an arbitration due to her Union Contract that she was denied and Ms. Barnes was denied her Jury Trial in Court as the Defendant put in their removal to Federal Court and agreeing that the Court has original jurisdiction over this action pursuant

2

to 28 U.S.C. 1331, because the complaint states two federal causes of action against the defendants" one under the American with Disabilities Act " 42 U.S.C. 12101 et seq for disability discrimination and the other" Title VII,"42 U.S.C. 2000e, et seq for race, and sex related discrimination( Federal Claims"). The Defendants acknowledge that this case is a civil action over which this court has original "Federal Question" jurisdiction under 28 U.S.C. 1331, in that the action arises under the Constitution, Laws, or treaties of the United States.

The Court has supplemental jurisdiction over Plaintiff's State Law Claims for Discrimination in violation of R.I. Gen, Laws 42-112-1 et seq and R.I. gen Laws 28-5-1 et seq. 28 U.S.C. 1367(a). Plaintiff's Federal claims and state arise from the same case or controversy because they emanate from plaintiff's allegations that her employer failed to accommodate her disability, discriminated against her, and terminated her employment because of her disability, race and sex. Therefore, this court has supplemental jurisdiction over plaintiff's state law claims. U.S.C. 1367(a).

Ripta removal to the district is proper where the action from Superior Court is pending, U.S.C. 1441(a) and 1446(a). Ripta request that the Action be removed to the United States District Court for The District of Rhode Island. This document is signed and dated by Jillian Hartwell Representing Ripta on November 2, 2017, by Certificate of Service sent to Mickeda Barnes Attorney Sonja Deyoe. **(EXHIBIT 5).**

**(EXHIBIT 6)** Ripta filed a complaint on August 27, 2020, in Superior Court and made claims that Plaintiff Ms. Barnes Breached an all-claims Settlement released she signed on April 25, 2018, and Stated on Page 2 line 13 on October 11, 2017, Plaintiff's workers compensation claims were not yielding the results she desired she commenced a civil action against Ripta Case number 1:17-CV-00505-JJM-Pas in the United States District Court for the Rhode Island.

In Plaintiff's **Exhibit 4** Plaintiff evidence shows that Ripta's Attorney Jillian Hartwell accepted Service of Mickeda Barnes Attorney Right to Sue complaint Civil action in Superior Court on October 12, 2017 and Ripta's Attorney Jillian Hartwell within 30 days after securing a mediation with the workers compensation court and Judge Feeney on October 13, 2017 summons Plaintiffs Attorney to Workers compensation court for mediation and then withdrew Plaintiffs Civil Claims to Federal Court removing them pursuant to 28 U.S.C. 1331, 1367, 1441 and 1446(d) to the US District Court.

In worker's compensation court pursuant to 28 U.S.C. 1331, 1367, 1441 and 1446(d) does not apply to worker's compensation claims and any agreements agreed to, or any decrees decided in worker compensation claims. To Date Ripta the defendants owe Ms. Barnes all her money for the open claims that have been left open after her illegal termination and Ms. Barnes not properly having her claims heard in U.S. District Court or Superior Court.

Ms. Barnes claims in worker's compensation court cannot be settled with a all claim released Ripta claims Ms. Barnes signed on April 25, 2018, in regard to her right to reinstatement as the laws for RI Employment Act and the Union Contract and workers compensation laws together

require injured workers return back to work after a work injury and a reasonable accommodation offer by the employer.

Board of review Dated February 10, 2017, Decision of Referee **(EXHIBIT 7)**. Finding of facts claimants medical released Plaintiff back to work without restrictions June 1, 2015, and her Attorney Requested Reinstatement and the employer IME exam on July 16, 2015, confirmed the claimants returned to work without restrictions.

**(EXHIBIT 8)** Plaintiff has a Affidavit of Physician per section 28-33-8 ( c ) of the Rhode Island Worker's Compensation Act Dated March 4, 2014 from the WCC medical Advisory Board from Plaintiff treating Physical DR. Michael Souza for the Right knee injury that happen on 10-03-2013 and 11-05-2014 that has caused Ms. Barnes RSD in her Right Knee which is a permanent knee injury. The Doctor States that Plaintiff is not at MMI and needs medication and PT and that she can return to her former position as a city bus driver.

Ripta Had already set up Confidential mediation for October 13, 2017, in Worker's Compensation Court while denying Plaintiff her Civil rights of due process in the US District Court. Having the mediation in workers compensation court does not satisfy Plaintiffs claims that were being heard in Superior Court and then removed to U.S. District Court

RIPTA and their Attorney Practices of discrimination has continued to violate Ms. Barnes Civil Rights up to date and that is cause for the Court to grant Ms. Barnes proper relief for the Fraudulent Misrepresentation Inducement by the defendant party and causing unnecessary time spent in and out of court money spent on the cases and preparing for the case and the defamation of Ms. Barnes name. Ms. Barnes deserves to claim further relief and if this is not the proper venue because Ripta removed the claims to Federal Court Plaintiff ask the Court to remove the Case back to Federal Court or give proper relief to Plaintiff for the damages she suffered since 2017.

**(EXHIBIT 9)** Plaintiff submitted to the Court April 25, 2018, agreement with just my signature on the paperwork agreement time stamped by the court on 08/20/2020 and Ben Salzillo signature is not signed on it. Plaintiff Ripta files yet another complaint on Defendant that she breached the contract and files a new April 25, 2018, contract agreement with Ben Salzillo signature and an affidavit now time stamped 3/7/2022 by Superior Court. Plaintiff had previously argued in court that the contract was invalid because there was no signature on it but the Defendant Ms. Barnes.

**(EXHIBIT 10)** Plaintiff Ripta on 3/7/2022 filed with the court a stipulation of dismissal with prejudice 41(a) it only has Sonja Deyoe and Jillian Hartwell names on it for PC-2018-2287 as her evidence. Defendant also found paperwork that Plaintiff's Ripta Attorney Filed with Superior Court on 8/27/2020 the same stipulation of dismissal 41(a) with only Sonja Deyoe and Jillian Hartwell names on it.

**(EXHIBIT 11)** <u>Plaintiff Ripta page 1. sends Tom Cute Mickeda Barnes Agent 618- Union President a letter Dated September 17, 2015,</u> in regard to her Grievance no G63513 and G63514 and sections about Ms. Barnes Union contract about the Parties will not discriminate and that the requested remedy is to make whole for all lost wages including overtime seniority and all benefits... section 1.2(b) The Authority is committed to assuring that the dignity of each employee is respected at all times. Management shall treat employees fairly and reasonably, shall assure that employees are not discipline without just cause.

Ripta and her Union 618 allowed Defendant Ms. Barnes to choose a Job in 2015 and in 2016 with her seniority with reasonable accommodations after her work-related injury but did not allow Defendant to return back to work disqualifying Ms. Barnes to use FMLA. In 2016 after Ripta and the Union had Ms. Barnes choose her Job they had Ms. Barnes take her vacation and then illegally terminated the Defendant Ms. Barnes after her vacation. On February 15, 2016, sends out a letter that they terminated the Defendant Ms. Barnes and denied her an arbitration and any of her benefits of weekly payments of reasonable accommodations payments from Ripta allowing her to choose a job but not allowing her to return despite the Union contract, workers compensation laws and the Fair employment act of RI.

In section 1.0 (C) page 1 states that Ms. Barnes the Defendant was not allowed to choose an assignment while she was out on leave. This is consistent with Transportation's Policy.

**(EXHIBIT 12)** Plaintiff's Attorney Jillian Hartwell filed a 41(a)stipulation of dismissal with the United States District of Rhode Island Court House Pursuant to Fed. Rules Civ. P. 41(a) stipulation that the action is hereby dismissed with prejudice and signed by her Attorneys Sonja Deyoe with civil action 1:17-cv-00505-jjm-pas Jillian Hartwell sends out a certificate of service on May 17, 2018 to Sonja Deyoe esq. Defendant goes to the Courthouse and pulls the docket sheet and finds out that Jillian Hartwell on May 17, 2018 files by the Rhode Island public transit Authority a Stipulation and Jillian Folgers Hartwell Entered 05/17/2018. And then on 05/18/2018 the Judge enters an order on 05/18/2018.

Defendant Ms. Barnes argues for this to be legal Her Attorney on her behalf to go to U.S. District Court with Ms. Barnes before Judge McConnel and ask for the 41(a) and that was not done on Defendants behalf and this was done without Defendants knowledge and that the US district Court never gave permission for this case to settle and the Workers Compensation Court had no jurisdiction over the case once the case did not settle as a global settlement as agreed upon on record on December 1, 2017. (EXHIBIT 13) This is the foundation that Plaintiffs Ripta's All claims release was developed and if you read the December 1, 2017, agreed global settlement it has similar terms that is in the April 25, 2018, all claims release and that is why Defendant Ms. Barnes was Fraudulently Misrepresented by Inducement and Defendant would not have entered into these terms if Plaintiff did not withhold back contract terms and contract terms Defendant Ms. Barnes was entitled to by law. (EXHIBIT 14) Is a Mutual Agreement that Ms. Barnes entered into with the Plaintiffs once again for the $150,000 or lump sum in the Workers Compensation Case because Defendant has an Appellate Division decision WCC 2017-

5

05115 on February 25, 2022, based on the foregoing discussions and decrees of the trial judge are affirm the employee was denied and dismissed and it has been affirmed.

In this Mutual Ageement on February 5, 2018, speaks about a lump sum in principle on December1, 2017 Ripta should only take a dollar-for-dollar credit of $2000.00 against any indemnity benefits payments payable to Barnes. This agreement does not state Ms. Barnes does not receive any of her insurance policies and any money due to her and owed to her from her contracts and her open claims.

This Mutual Agreement form R.I.G.L. 28-35-6(b) clearly states that it is a workers compensation claim not an all-claims release and this form cannot be used to start or end benefits.

Pursuant to R.I. R.Civ. P. 56(d), (e), (f), and (g), Defendant Mickeda Barnes moves for objection to Plaintiff's memorandum of its partial motion for summary judgement, Count I and II declaratory judgement and breach of contract respectively.

Rhode Island Public Transit Authority's Attorney Jillian Folger Hartwell removed Defendant's action to the United States District State Court for the District of Rhode Island. If Plaintiff's believed Defendant breached the contract Plaintiff had time to pull the agreement and both my Attorneys who was responsible for the agreement to the US District Courthouse where she removed the action to in the first place.

I believed Ripta breached the contract and filed in Superior Court on 04/06/2018 A Motion for Cause of Show and an Enforcement of the Contract and Ripta lied to me and supposedly Steven Dennis about the Global Settlement and that the case would be separated while CMS came back. Ripta was never going to settle this and Ripta and their Attorneys did everything to keep my case out of Federal Court denying me relief for my damages.

*In Rhode Island Settlement Agreements are governed by "general contract law principles" Freidrich Vs. City, Hosp. Health Care systems., CA.*

The formation of a contract requires an offer an acceptance. "Ardente Vs Horan".

A final written version with clear, complete and explicit terms that was voluntarily signed by all parties" Must be enforced. "Jefferson Vs Piccirillo.

However, "where there has been no meeting of the minds sufficient to form a complete and explicit terms that was voluntarily signed by all parties" [must be] restored to the docket for trial "United States Vs. 434 Main St Tewksbury, Mass civil Action.

When parties are represented by counsel who had actually authority to act on their behalf, they are bound to a settlement agreed to by counsel." Witt Vs. Am. Airlines, Inc. "must have actually

authority to bind the client to a settlement Agreement. "Malave 170 F. 3dat 221(A settlement agreement entered into by an Attorney is ineffective if the Attorney did not possess actual authority to bind the client") Perry Vs. Alexander, 2;15cv 00310-jcn,2018.

Ripta in house counsel Ben Salsillo intentional Breached the contract between Defendant Ms. Barnes and Plaintiff Ripta on December 1, 2017 and did not follow the R.I. State General laws in regard to Settling Contract approvals with Ripta Board Members when there is no CEO available. Ben also conspired with her Union to aid and abet with not allowing the Defendant to have her grievances she wrote out heard and then allow her to have them arbitrated.

Ripta and Ben Salsillo then having outside Counsel enter defendant into an illegal all general contract release releasing all claims against Ripta, Defendants Union and third party that cannot be in any contract. When Parties are represented by counsel who had actual authority to act on their behalf, they are bound to a settlement agreed to by counsel if Ripta is adding this into their contract then Ripta is responsible for all whom Ripta is illegally trying to have me Indemnify me to. That is not what I agreed to, and that contract is illegal and Ripta and my Union officials Tom Cute and Kevin Cole were part of the board and who held meeting with Ripta board members and was voted in by Ripta board members not the ATU-618 Driver membership when old Union President Paul Harrington Stepped down to go to Washington D.C. that is an ethics Violations.

## CERTIFICATE OF SERVICE

I Mickeda S Barnes Pro-Se, hereby certify that a true and accurate copy of the foregoing document was filed and served electronically by operation of the court's electronic filing system upon the following counsel of record on this 13-day May 2022.

Jillian Folgers Hartwell                *I am not Mailing out a Copy*

Mickeda S Barnes Pro-se              *Mickeda S Barnes— May 13, 2022*

34 Dunbar Ave

Rumford R.I. 02916

401-419-2250

# Exhibit 1

RHODE ISLAND WORKERS' COMPENSATION COURT

CONFIDENTIAL MEDIATION STATEMENT

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## PROVIDENCE, SC.        WORKERS' COMPENSATION COURT

Mickeda S. Barnes

}

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY

W.C.C. No.   201704145,
201704571,201705115,201704046

## CONFIDENTIALITY REQUIREMENT / NEGOTIATION AUTHORIZATION

I hereby agree that any and all documents submitted and statements made in furtherance of mediation, including, but not limited to, the content of the mediation statement and any attachments thereto, and any relevant memoranda or supporting documentation relied upon during the course of the mediation session by counsel, any party or the mediator shall remain confidential. My client(s) further agree(s) not to subpoena or otherwise subject the mediator, staff members, or records of the Workers' Compensation Court Mediation Program to any court proceedings, lawsuits or other legal actions related to the mediation process or its outcome.

My client(s) agree to participate in mediation, and I am authorized to participate and negotiate on behalf of my client(s) with full authority to make and/or accept offers. If I am not so authorized at the time of mediation, I will make arrangements to have my client(s) or authorized representative(s) available in person or by telephone at the time of the mediation session.

I understand, and my client(s) have been informed, that even if this case proceeds to mediation, it is subject to all applicable time limitations and requirements as set forth by the trial judge presiding over this case. If an agreement is reached, the appropriate documentation will be promptly filed with the Court. I understand and my client(s) have been informed that failure to abide by the above requirements may result in sanctions.

Stephen J. Dennis
COUNSEL FOR EMPLOYEE (PRINT NAME)

SIGNATURE

DATE  9/27/17

Nicholas Mancini
COUNSEL FOR EMPLOYER (PRINT NAME)

SIGNATURE

DATE  9/27/17

**RHODE ISLAND WORKERS' COMPENSATION COURT**

**CONFIDENTIAL MEDIATION STATEMENT**

## SUBMIT TO MEDIATION COORDINATOR ONLY – <u>DO NOT SEND COPIES TO COUNSEL</u>

| CASE NAME: Mackeda S. Barnes | W.C.C. CASE NUMBER: 17 – 4046 17 – 4145 |
|---|---|
| NAME OF COUNSEL FILING THIS STATEMENT Stephen J. Dennis | COUNSEL FOR (NAME OF PARTY) |

PLEASE DESCRIBE WHY PAST EFFORTS TO RESOLVE THIS DISPUTE HAVE BEEN UNSUCCESSFUL

PLEASE LIST IMPORTANT FACTORS AFFECTING YOUR CLIENT'S CHANCES FOR SUCCESS AT TRIAL

WHAT ARE YOUR CLIENT'S TOP PRIORITIES AND INTERESTS (OTHER THAN SUCCEEDING AT TRIAL)?

*OTHER THAN WINNING* AT TRIAL, WHAT WOULD BE SOME POSSIBLE CREATIVE SOLUTIONS TO THIS CASE?

PLEASE PROVIDE A LIST OF POTENTIAL OR ACCEPTABLE OUTCOMES TO THE MEDIATION SESSION

ARE THERE ANY OTHER RELATED ISSUES OR RELEVANT INFORMATION THAT WOULD ASSIST THE MEDIATOR IN HELPING TO RESOLVE THIS CASE?

Attach no more than a five page statement outlining your client's position in this case. Specifically set forth the medical opinions that your client is relying on as well as a summary of the lay witness testimony to be heard or that was heard at trial.

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

**PROVIDENCE, SC.**          **WORKERS' COMPENSATION COURT**

|  |  |  |
|---|---|---|
| | ) | |
| Mickeda S. Barnes | ) | |
| | ) | W.C.C. No.   201706824, 201704145, 201706646, 201705115, 201706073 |
| VS. | | |
| | ) | |
| RHODE ISLAND PUBLIC TRANSIT AUTHORITY | ) | |

### ORDER

Upon good cause, the above entitled matter is hereby referred for Mediation.

Judge _Feeney_ is assigned to mediate this matter. This matter is

continued to ___12/7 @ 930___, before this court, for further

proceedings. All mediation documents shall be provided to the Mediation

Coordinator by ___11/21/18___

Entered as an Order of this Court this _8th_ day of _Nov._

PER ORDER:

/s/ Nicholas DiFilippo
_____

ENTER:

/s/ Chief Judge Robert M. Ferrieri
_____

RHODE ISLAND WORKERS' COMPENSATION COURT

**CONFIDENTIAL MEDIATION STATEMENT**

ADMINISTRATOR                                JUDGE

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

### PROVIDENCE, SC.          WORKERS' COMPENSATION COURT

Mickeda S. Barnes

RHODE ISLAND PUBLIC TRANSIT AUTHORITY

} W.C.C. No.  201706824, 201704145, 201706646, 201705115, 201706073

## CONFIDENTIALITY REQUIREMENT / NEGOTIATION AUTHORIZATION

I hereby agree that any and all documents submitted and statements made in furtherance of mediation, including, but not limited to, the content of the mediation statement and any attachments thereto, and any relevant memoranda or supporting documentation relied upon during the course of the mediation session by counsel, any party or the mediator shall remain confidential. My client(s) further agree(s) not to subpoena or otherwise subject the mediator, staff members, or records of the Workers' Compensation Court Mediation Program to any court proceedings, lawsuits or other legal actions related to the mediation process or its outcome.

My client(s) agree to participate in mediation, and I am authorized to participate and negotiate on behalf of my client(s) with full authority to make and/or accept offers. If I am not so authorized at the time of mediation, I will make arrangements to have my client(s) or authorized representative(s) available in person or by telephone at the time of the mediation session.

I understand, and my client(s) have been informed, that even if this case proceeds to mediation, it is subject to all applicable time limitations and requirements as set forth by the trial judge presiding over this case. If an agreement is reached, the appropriate documentation will be promptly filed with the Court. I understand and my client(s) have been informed that failure to abide by the above requirements may result in sanctions.

COUNSEL FOR EMPLOYEE (PRINT NAME)

SIGNATURE                                           DATE  11/8/18

Nicholas Mancini  #7100
COUNSEL FOR EMPLOYER (PRINT NAME)

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

**PROVIDENCE, SC.**  **WORKERS' COMPENSATION COURT**

|  |  |  |  |
|---|---|---|---|
|  | ) |  |  |
| Mickeda S. Barnes | ) |  |  |
|  | ) | W.C.C. No. | 201704145, 201704046, 201704571, 201705115 |
| VS. |  |  |  |
|  | ) |  |  |
| RHODE ISLAND PUBLIC TRANSIT AUTHORITY | ) |  |  |

## ORDER

Upon good cause, the above entitled matter is hereby referred for Mediation.

Judge _Feeney_ is assigned to mediate this matter. This matter is

continued to ____10/23 @ 1000____ , before this court, for further

proceedings. All mediation documents shall be provided to the Mediation

Coordinator by ____10/13 @ 1000____

Entered as an Order of this Court this _27th_ day of _Sept_ _2017_

PER ORDER:                          ENTER:

/s/ Nicholas DiFilippo               /s/ Chief Judge Robert M. Ferrieri

_____              _____
ADMINISTRATOR                        JUDGE

**RHODE ISLAND WORKERS' COMPENSATION COURT**

**CONFIDENTIAL MEDIATION STATEMENT**

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## PROVIDENCE, SC.        WORKERS' COMPENSATION COURT

Mickeda S. Barnes

}

W.C.C. No.    201704145,
201704571,201705115,201704046

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY

## CONFIDENTIALITY REQUIREMENT / NEGOTIATION AUTHORIZATION

I hereby agree that any and all documents submitted and statements made in furtherance of mediation, including, but not limited to, the content of the mediation statement and any attachments thereto, and any relevant memoranda or supporting documentation relied upon during the course of the mediation session by counsel, any party or the mediator shall remain confidential.  My client(s) further agree(s) not to subpoena or otherwise subject the mediator, staff members, or records of the Workers' Compensation Court Mediation Program to any court proceedings, lawsuits or other legal actions related to the mediation process or its outcome.

My client(s) agree to participate in mediation, and I am authorized to participate and negotiate on behalf of my client(s) with full authority to make and/or accept offers.  If I am not so authorized at the time of mediation, I will make arrangements to have my client(s) or authorized representative(s) available in person or by telephone at the time of the mediation session.

I understand, and my client(s) have been informed, that even if this case proceeds to mediation, it is subject to all applicable time limitations and requirements as set forth by the trial judge presiding over this case. If an agreement is reached, the appropriate documentation will be promptly filed with the Court. I understand and my client(s) have been informed that failure to abide by the above requirements may result in sanctions.

COUNSEL FOR EMPLOYEE (PRINT NAME)

SIGNATURE

DATE    9/27/17

Nicholas Mancini

COUNSEL FOR EMPLOYER  (PRINT NAME)

SIGNATURE

DATE    9/27/17

Page 703

# Exhibit 2

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

**PROVIDENCE, SC.**          ## WORKERS' COMPENSATION COURT

|  |  |
|---|---|
| Mickeda S. Barnes | ) |
| | ) |
| | ) |
| VS. | ) |
| | ) |
| RHODE ISLAND PUBLIC | ) |
| TRANSIT AUTHORITY | ) |

W.C.C. No.    201704145,
201704046,
201704571,
201705115

## ORDER

Upon good cause, the above entitled matter is hereby referred for Mediation.

Judge _Feeney_ is assigned to mediate this matter. This matter is

continued to ___10/23 @ 1000___ , before this court, for further

proceedings. All mediation documents shall be provided to the Mediation

Coordinator by ___10/13 @ 1000___

Entered as an Order of this Court this 27th ___ day of _Sept_ _2017_

**PER ORDER:**                    **ENTER:**

/s/ Nicholas DiFilippo                /s/ Chief Judge Robert M. Ferrieri

**ADMINISTRATOR**                **JUDGE**

# Exhibit 3

# LAW OFFICE OF  STEPHEN J. DENNIS

Stephen J. Dennis *

Howard L. Feldman †

Catherine E. Bednarz †

Carolyn A. Mannis

Michael F. Campopiano †
of counsel

William J. Gately, Jr. †
of counsel

*  Also admitted in DC
†  Also admitted in MA

October 3, 2017

Ms. Sonja L. Deyoe
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908

**RE:**   **Mickeda S. Barnes**
**DOI:**   **2/12/2015**

Dear Ms. Deyoe:

In response to your letter dated October 2, 2017 with regard to the mediation of Ms. Mickeda Barnes, we would like your attendance on 10/13/17 at 10:00 am. Also, please notify your adversary.

This mediation will be an attempt to settle all open claims with regard to Ms. Mickeda Barnes.

If you need any additional information please don't hesitate to contact our office. Thank you for your anticipated cooperation.

Very Truly Yours,

**LAW OFFICE OF STEPHEN J. DENNIS**

Stephen J. Dennis, Esq.

SJD/alh

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 • 1-888-634-1543 • Fax: 401-453-6670



w Office of Stephen J Dennis    Page 2 of 2    2017-10-02 19:14:55 (GMT)    14013547464 From: Sonja Deyoe



October 2, 2017

~~VIA FAX 401-453-6670~~

Law Office of Stephen J. Dennis
125 Dorrance Street
Providence, RI 02903

Re: Mickeda Barnes, 1/31/75

Dear Attorney Dennis:

Our office just received notice of an upcoming mediation in relation to the above-mentioned client. Per Ms. Barnes, this mediation is scheduled for 10/13/17 at 10:00 a.m.

After speaking with our client, it is unclear whether or not this is a joint mediation session. Will you need Attorney Deyoe for an appearance?

Please advise, so that I can plan her schedule accordingly.

Thank you in advance,

Jennifer Lisi
Paralegal to Attorney Deyoe
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
401-369-6901
jl@the-straight-shooter.com

Law Offices of Sonja L. Deyoe
395 Smith Street, Providence, RI 02908
371 South Main Street, Fall River, MA 02721
www.the-straight-shooter.com

(401) 864-5877
Fax (401) 354-7464
sld@the-straight-shooter.com

# LEONE LAW, LLC

## RHODE ISLAND • MASSACHUSETTS

1345 Jefferson Boulevard • Warwick, Rhode Island 02886

January 23, 2018

*VIA FASCIMILE ONLY 401-453-6670*

Stephen J. Dennis
127 Dorrance Street
Providence, RI 02903

Re:    Mickeda Barnes

Dear Stephen:

We understand that you have secured a settlement of various Worker's Compensation Claims of Mickeda Barnes. Our understanding is that in exchange for $1.00 any Worker's Compensation Claim relating to Mickeda's right knee are settled in exchange for RIPTA waiving any right to assert a lien for reimbursement in her third party claim against Genfare f/k/a GFI Genfare, alias SPX Corporation.

Please make a clear representation to the Worker's Compensation Court that no settlement of this or any other claims against RIPTA limits, waives, or in any precludes any claims that Mickeda Barnes has against Genfare f/k/a GFI Genfare, alias SPX Corporation that is pending in Providence Superior Court, PC 2016-4491.

Thank you for your attention to this matter.

Very truly yours,

Anthony R. Leone

CC:  Mickeda Barnes



RHODE ISLAND • MASSACHUSETTS

1345 Jefferson Boulevard • Warwick, Rhode Island 02886

May 2, 2018

Mickeda Barnes
34 Dunbar Ave
Rumford, RI 02916

Dear Mickeda:

We have had the opportunity to review the draft settlement release that Sonja Deyoe forwarded to us stemming from your discrimination lawsuit against RIPTA (RIPTA settlement release). In section 2(b) entitled "Release of Claims," the RIPTA settlement release speaks of a potential right of action against you if a contribution, indemnification, or other claim is brought against RIPTA. This letter is to advise you of the potential risk that the release language has in your case against Genfare.

As you know, under worker's compensation law, you do not have the right to file a liability lawsuit against your employer, RIPTA. Nonetheless, the Genfare defendants do have the legal right to assert third party claims for contribution or indemnification against RIPTA in the Genfare case. In short, to the extent Genfare believes or has contractually agreed with RIPTA that RIPTA is legally responsible for Genfare's negligence, Genfare may be able to seek contribution or indemnification against RIPTA. If that happens, one reading of paragraph 2(b) is that RIPTA can sue you for breach of the RIPTA settlement release. Please note that, to date, Genfare has not asserted any claims against RIPTA.

While I cannot speak to the likelihood, probability, or potential of this happening, you need to be aware of this risk and make a choice on whether the release is signed in the current form.

I have suggested that RIPTA's settlement release contain language specifically exempting the Genfare case. Sonja advises that RIPTA has refused to agree to that language.

Please sign where indicated on the bottom and mail the original back to us, confirming that you have read and understand the risks posed in the RIPTA settlement release.

Feel free to call with any language.

Very truly yours,

Anthony R. Leone

I, Mickeda Barnes, have read and understand this letter and am aware of risks posed in the RIPTA settlement release.

_____

Mickeda Barnes

Date: _____

RECEIVED 05/02/2016 09:24 401536670
05/02/2016 08:59 407 16686                  LEONELAWLLC                    PAGE  02/02

# LEONE LAW, LLC

1345 Jefferson Boulevard • Warwick, Rhode Island 02886
401-921-6684 • 401-921-6686 Fax • info@leonelawllc.com

## CONSENT FOR THE RELEASE OF CONFIDENTIAL INFORMATION

*Law office of Stephen Dennis*
Name of Party Releasing Information

Name of Client:    *Micleeda Barnes*

Date of Birth:     *01-31-1975*

You are hereby authorized to disclose and release the following health care, wage and financial information for the above-named client to:

> Anthony R. Leone, II
> Leone Law, LLC
> 1345 Jefferson Boulevard
> Warwick, Rhode Island 02886
> (401) 921-6684 (phone)
> (401) 921-6686 (fax)

**Information Requested:**

The above-named client' complete medical file, wage and financial information in connection with any and all worker's compensation claims.

I understand my records are protected under the Federal Confidentiality regulations and the General Laws of Rhode Island and cannot be disclosed without my written consent except as otherwise specifically provided by law. I understand that information used or disclosed pursuant to this authorization could be subject to re-disclosure by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

Any information to be released or received that authorized by my consent evidenced by this document shall not be given, transferred or relayed in any manner to any other person, either in an individual capacity, without an additional written consent from me. I specifically do not authorize the disclosure of the requested records to any attorney or law firm representing the health care provider to review the requested records before they are produced in accordance with this release. I may withdraw this consent by giving written notification to the above party, at any time prior to the disclosure or release of information.

The records responsive to this request may be limited in the following fashion:

*Please release any & all file materials & information about*

*my worker's compensation claims to LeoneLaw LCC, including paralegals, assistants, lawyers*

*Micleeda Barnes*
Name of client

*April 15 2016*
Date of Signing Consent

RECEIVED 05/02/2016 09:24    4014536670    LAW
05/02/2016  08:59    401 16586    LEONELAWLLC                      PAGE  01/02

## LEONE LAW, LLC

1345 Jefferson Boulevard ▪ Warwick, Rhode Island 02886
401-921-6684 ▪ 401-921-6686 Fax ▪ aleone@leonelawllc.com

### FACSIMILE COVER

TO:      Stephen J. Dennis          Fax:   401-453-6670
         Attn: Ally

FROM:    Jerilyn Faciano for Anthony R. Leone, II

DATE:    May 2, 2016

RE:      Melissa Barnes DOB: 1/31/16        Number of Pages Including Cover: 2
         DOL: 10/3/13

Dear Ally:

Enclosed please find medical authorization, which has been duly executed by Ms. Barnes.
Please call me to schedule a time that I may come in as soon as possible in order to retrieve
copies of her medical records.

Very truly yours,

Jerilyn Faciano
Paralegal to Anthony R. Leone, II

Product Linbility
FAREBOX PANEL Fell on Her Knee

The enclosed transmission contains confidential information.
If you have received this correspondence in error, then please notify the sender immediately

STATE OF RHODE ISLAND                                    WORKERS' COMPENSATION
PROVIDENCE, SC.                                                            COURT

MICKEDA S. BARNES                                  :
                                                              :
        VS.                                              :WCC NO.  201705115
                                                              :
RHODE ISLAND PUBLIC                           :
     TRANSIT AUTHORITY

## PETITIONER'S/EMPLOYEE'S PRE-TRIAL CONFERENCE EXCHANGE OF DOCUMENTS

Now comes the Petitioner/Employee in the above entitled matter and exchanges with the

Respondent/Employer and/or his/her attorney, if known, the documents attached hereto and made

a part hereof which the Petitioner/Employee intends to present for consideration before **Judge**

**Ferrieri** at the Pre-Trial Conference, scheduled to be held in the above captioned on **October**

**25, 2018 at 10 AM.**

1.  **Pre-trial order granted 2/19/14**

                                        Mickeda S. Barnes
                                        By her Attorneys,

                                         /s/ Stephen J. Dennis, ESQ
                                        Stephen J. Dennis, Esq. #4336
                                        LAW OFFICE OF STEPHEN J. DENNIS
                                        127 Dorrance Street, 3rd Floor, Suite 7A
                                        Providence, RI 02903
                                        Tel #: (401) 453-1355


                                        /s/ Howard L. Feldman, ESQ
                                        Howard L. Feldman, Esq. #1650
                                        LAW OFFICE OF STEPHEN J. DENNIS
                                        127 Dorrance Street, 3rd Floor, Suite 7A
                                        Providence, RI 02903
                                        Tel #: (401) 453-1355


                        **CERTIFICATION**

        I, the undersigned do hereby certify that I caused to have hand delivered a true copy of the
within to **Nicholas Mancini, Esq., 222 Jefferson Boulevard, 2nd Floor, Warwick, RI 02888**
on this 16th day of October, 2018.

Date: 02/26/2014 - Claim Number: 00814815



## State of Rhode Island and Providence Plantations

**Providence, Sc.**                    **Workers' Compensation Court**

W.C.C. NO. 13 · 7683        Social Security No. XXX-XX-8332
                                                    (last 4 digits only)

Petitioner __McKenna Barnes__        Respondent __Rhode Island Public Transit Authority__

Judge __Salem__        Insurer __Self Insured__

This matter came to be heard on an **EMPLOYEE'S PETITION for WORKERS' COMPENSATION BENEFITS** and after considering all of the evidence presented, the Judge finds:

1. The employee did/did not receive an injury on __10/3/13__ arising out of and in the course of employment and referable thereto.

2. The employer had knowledge of the injury on __10/3/13__

3. The nature of injury and parts of body affected by injury: __® knee contusions__

4. The first date of incapacity is __10/4/13__

5. The employee's average weekly wage is $ __1289.35__   ☐ Subject to verification and mutual agreement

6. Liens pending:  Yes/No   TDI __✓__   Welfare ____   Family Court ____   Other ____

7. Dependents:  Yes/No
   Name _____  D.O.B. _____   Name _____  D.O.B. _____

8. Employer/Insurer/Employee, with proper notice failed to attend _____

9. The employee has sustained an injury on _____ which has not incapacitated the employee more than three (3) days.

### PRETRIAL ORDER

____ **X** Petition Granted        ____ Petition Denied        ____ Petition Dismissed with/without prejudice

A. ____ Total incapacity from _____

B. **X** Partial incapacity from __10/4/13 to 10/11/13__

C. **X** Employer to receive credit for payments made under a non-prejudicial agreement.

D. **X** Employee ordered to advise employer of any wages earned during employee's period of incapacity.

E. ____ Petition neither granted nor denied but dismissed without prejudice as employee has not been incapacitated more than three (3) days as required by R.I.G.L. § 28-33-4.

F. **X** Attorney's fee in the amount of $ __1050—__ is awarded to __Atty Sullivan__ in addition to reimbursement of the filing fee.

__2/19/14__
**DATE OF ENTRY**

RECEIVED
FEB 19 2014
BY

_____
**JUDGE**

Any party aggrieved by the entry of this order may claim a trial by filing with the Administrator of the Workers' Compensation Court, One Dorrance Plaza, Providence, RI, 02903-3973, within five (5) days of the date of entry of the order, exclusive of Saturdays, Sundays, and holidays, a Claim for Trial on forms prescribed by the Administrator of the Workers' Compensation Court.
W.C.C. 1 (03/09)



# RHODE ISLAND DEPARTMENT OF LABOR AND TRAINING
# TEMPORARY DISABILITY INSURANCE DIVISION

P.O. Box 20100   Cranston, RI 02920-0941

TELEPHONE (401) 462-8420   TTY Via RI Relay 711   FAX (401) 462-8466

**Please Complete and Mail This Form Within 7 Days of** 12/30/13

MICKEDA S BARNES
34 DUNBAR AVE
RUMFORD, RI  02916-3111

12/27/13

XXX-XX-8332-14-8

I, the undersigned, acknowledge that I am not entitled to receive both Rhode Island Temporary Disability Insurance benefit payment(s) and workers' compensation payment(s) for the same week(s) or any portion thereof. Workers' compensation in this context shall apply to any workers' compensation law of the State of Rhode Island, any other state, or the Federal Government of the United States.

If I do receive such concurrent payment(s), I agree to repay to the Department of Labor and Training, Temporary Disability Insurance Fund, an amount equal to that which I received from Temporary Disability Insurance for the same period for which I received workers' compensation.

SIGNATURE:  *Mickeda Barnes*

PRINTED NAME:   MICKEDA S BARNES

DATE:   Jan 2, 2014

# FAILURE TO RETURN THIS FORM MAY DELAY
# THE PROCESS OF YOUR CLAIM FOR BENEFITS.

THIS AGREEMENT IS NOT A DENIAL OF TEMPORARY DISABILITY INSURANCE BENEFITS.

An Equal Opportunity Employer/Program. Auxiliary aids and services are available upon request for individuals with disabilities.

Page 721

# RHODE ISLAND DEPARTMENT OF LABOR AND TRAINING
## TEMPORARY DISABILITY INSURANCE DIVISION
P.O. Box 20100   Cranston, RI 02920-0941

TELEPHONE (401) 462-8420   FAX (401) 462-8466   TTY VIA RI RELAY 711

## BENEFIT PAYMENT NOTICE

DECEMBER 24, 2013

Claim Number: XXX-XX-8332-14-7

MICKEDA BARNES
34 DUNBAR AVE
RUMFORD, RI 02916-3111

The Temporary Disability Insurance Program (TDI) has processed your claim. The required information was received and your TDI claim has met all the eligibility requirements, benefit payment(s) have been initiated.

The first benefit payment(s) on the claim number listed above has been transmitted as follows:
Your Electronic Payment Card

Weeks Ending: 11/23/13

Weekly Benefit Rate:    $736.00      Balance of Credits:  $10,871.00
Dependency Allowance:   $154.00      Benefit Year Ends: 01/25/14
Payment      Total:     $890.00

Weekly Benefit: $736.00 + Dependency Allowance $154.00 = $890.00 Weekly Rate.

Please allow **24 to 48 hours** for the payments to be posted to your selected payment method, the Direct Deposit account **or** the Electronic Payment Card. If you selected the Electronic Payment Card and have **not** received it in the mail, please call Chase Bank by dialing 1-866-847-8586. **(You will not be notified of any subsequent benefit payments, please check your account status.)**

Your weekly benefit payment may be less than your full weekly benefit rate. If your unable to work date was in the middle of the week, you may have been paid a lag payment equal to 1/5 of your weekly rate for each workday you normally work. Other possible reasons include withholding of an amount to satisfy a previous overpayment or to honor a child support obligation.

It is illegal to accept TDI payments for any period in which you work or have been paid Workers' Compensation or Unemployment Insurance Benefits.

If this payment(s) is incorrect because you recovered or returned to work during a week for which TDI provided you with a payment, please contact our department as soon as possible by calling 401-462-8420 **or** mail a letter to Temporary Disability Insurance, P.O. Box 20100, Cranston, RI 02920-0941.

*An Equal Opportunity Employer/Program. Auxilary aids and services are available upon req for individuals with disabilities.*

TDI 150(Rev. 11/18)

# RHODE ISLAND DEPARTMENT OF LABOR AND TRAINING
# TEMPORARY DISABILITY INSURANCE DIVISION

P.O. Box 20100    Cranston, RI 02920

TELEPHONE (401)462-8350    TTY VIA RI RELAY 711    FAX (401)462-8466

APR 22 2019

## NOTICE OF LIEN

HOWARD L FELDMAN ESQ
3RD FL   STE 7A
127 DORRANCE ST
PROVIDENCE, RI   02903

**Date:** 04/16/19

**Claimant:** MICKEDA S BARNES
34 DUNBAR AVE
RUMFORD, RI

**S.S. No.:** 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-15-1

**Employer:** RIPTA

PETITION NO.: 17-06646

The individual named above has a claim for Temporary Disability Insurance benefits. Information received indicates possible entitlement to Workers' Compensation benefits.

Section 28-41-6 of the Temporary Disability Insurance Act provides:

1.  No individual is entitled to Temporary Disability Insurance waiting period, or benefit credits, or dependents' allowances for any week for which benefits are paid or payable under any workers' compensation law of this state, another state or the federal government.

2.  Whenever an employer or his insurance carrier has been notified that an individual has filed a claim under the Temporary Disability Insurance Act for any week or weeks the individual is or may be eligible for benefits under the Workers' Compensation Act, such notice shall constitute a lien upon any pending award, order or settlement to the individual under the Workers' Compensation Act. The employer or his insurance carrier shall be required to reimburse the Director for the Temporary Disability Insurance Fund the amount of benefits and/or dependents' allowances received by the individual for any week or weeks for which such award, order or settlement is made.

3.  Notice to the Workers' Compensation Court of this State that an individual has received benefits and/or dependents' allowances under the Temporary Disability Insurance Act for any week or weeks of disability requires incorporation in any award, order, or approval of settlement of workers' compensation benefits for such week or weeks of an order to the employer or his insurance carrier to reimburse the Director for the Temporary Disability Insurance fund the amount of any benefits and/or dependents' allowances paid for any such week or weeks.

THIS DOCUMENT CONSTITUTES A LIEN UNDER SECTION 28-41-6, GENERAL LAWS OF RHODE ISLAND, AS AMENDED.

Notice: Any check prepared to satisfy this lien should be made payable to: TDI Benefit Payment Fund.

An Equal Opportunity Employer/Program. Auxiliary aids and services are available upon request for individuals with disabilities.

# Medicare Began Workei's Comp

## Open Claims

1st  Open  1-1-2009    Workei's Comp
                        Beacon Mutual
                        Still open

2nd  Open  1-1-2009    Liability Beacon
          Automobile    Still open Mutual

3rd  OPEN  10-3-2014    Beacon Mutual

          Automobile

4th  Open  2-12-2015    Workei's Comp
                        Beacon Mutual
                        open

Recovery Benefits Center
BCRC # 855-798-2627

Exhibit L

Blackstone Orthopedics & Sports Medicine

Steven L. Blazar, M.D.°
Michael D. Feldman, M.D.°
Steven N. Graff, M.D.°
David J. Cicerchia, M.D.
Howard S. Hirsch, M.D.°
Jonathan A. Gastel, M.D.
Kevin S. Bowman, M.D.
J. Jeffrey Poggi, M.D.
Eric F. Walsh, M.D.
Daniel L. Aaron, M.D.
Henry S. Urbaniak, M.D.
Maher El-Khatib, M.D.
Philip W. Rhoades, MBA, FACMPE, CEO

February 21, 2014

Attorney Paul Sullivan
Sullivan, Whitehead & DeLuca LLP
Counsellors at Law
86 Weybosset Street, Suite 400
Providence, RI 02903

RE: Mickeda Barnes

Dear Attorney Sullivan:

In response to your letter dated February 6, 2014, I have reviewed my medical records on the above-named patient and it is my opinion to a reasonable degree of medical certainty and probability that Ms. Barnes' current right knee injury is causally related to the work-related injury which occurred on 10/03/2013 when she struck her knee several times on a metal fare box while at work.

Should you have any further questions, please do not hesitate to contact me.

Sincerely,

Michael D. Feldman, M.D.
MDF:TOI/ejp

800-725-3037
www.blackstoneorthopedics.com
568 Pawtucket Avenue, Pawtucket, RI 02860 (401) 722-2400; Fax (401) 728-3920
16 Hillside Avenue, Attleboro, MA 02703 (508) 222-4450; Fax (508) 226-6465
6 Blackstone Valley Place, Suite 530, Lincoln, RI 02865 (401) 334-3700; Fax (401) 334-3414
1180 Hope Street, Bristol, RI 02809 (401) 722-2400; Fax (401) 728-3920
594 Great Road, N. Smithfield, RI 02896 (401) 722-2400; Fax (401) 728-3920
869 Post Road, Warwick, RI 02888 (401) 722-2400; Fax (401) 728-3920
905 Victory Highway, Slatersville, RI 02896 (401) 722-2400; Fax (401) 728-3920

Teaching appointee of BROWN Alpert Medical School

B-LH

**Dr. M. Souza**

Certificado em Medicina Familiar
Board Certified in Family Medicine

2761 Pawtucket Ave.   E. Providence, RI 02914
**401-434-3350**

06/07/2016

Stephen J. Dennis, Esq.
127 Dorrance Street
#rd Floor, Suite 7A
Providence, RI 02903

Re: Mickeda S. Barnes
DOB: 01/31/1975
DOI: 02/12/2015

Dear Attorney Dennis:

Mrs. Barnes has been prescribed RSD prescription cream to help with her neuropathic and inflammatory pain caused by her work related injury on 10/03/2013. This was exacerbated on her 02/12/2015 work injury. This cream has helped her in the past with her pain and would help to improve her pain level and quality of life.

Sincerely,

Dr. Michael C. Souza

☐ Philippe S. Cote, M.D.          ☐ Roald J. Liado, M.D.
☐ Anthony M. DeLuise, Jr., M.D.   ☒ Keith O. Monchik, M.D.
☐ Lawrence W. Lee, M.D.           ☐ Matthew J. Plante, M.D.
          ☐ Kenneth A. Furcolo, PA-C

285 Promenade Street, Providence, RI 02908
Tel: 401-459-4001     Fax: 401-459-4010

Date 6/17/14

Mickeda Burris _____ is under my care for

Knee _____ and is

☐ unable to work until _____

☐ able to return to work on _____

☒ Special instructions ht hr duty with restrictions of
no driving city bus would recommend to have
consult with pain management with Dr. Hanley
8:30       Signature: _____

Hidell

Snapper →
102 Smithfield Ave Pawt.
729-4985



**St. Joseph Health Services of Rhode Island**

Date: 10/03/13
Account Num: Z005061083
Med Rec Num: J0582395
Patient: BARNES,MICKEDA
Location: FER
Physician: KIRK,PETER A M.D.

## Patient Instructions Signature Page

**Patient Name:** BARNES,MICKEDA

**Guardian Name:**

**The above-named patient and/or guardian has received the following patient instructions:**

Crush Injury

**on this date:** 10/03/13 - 1007



BARNES,MICKEDA
DOB 01/31/1975  38 F J0582395
Z005061083    FER  10/03/13 FER

**I have read and understand the instructions given to me by my caregivers.**

BARNES,MICKEDA
Print Patient Name

_Mickeda Barnes_          _Oct 3, 2013_
Patient (or Guardian) Signature          Date

_(signature)_          _10/3/13_
Caregiver/RN/Doctor Signature          Date

04-04-2014   02:19pm   From-SULLIV/   WHITEHEAD DELUCA LLP   +401 861 9         T-083  P.018/018  F-384

Page 1 of 1



Date: 10/03/13
Account Num: Z005061083
Med Rec Num: J0582395
Patient: BARNES,MICKEDA
Location: FER
Physician: KIRK,PETER A M.D.

## Patient Visit Information

**You were seen today for:**

knee contusion

### Staff

Your caregivers today were:

| | |
|---|---|
| Physician | KIRK,PETER A M.D. |
| Practitioner | James Cerullo, PA-C |
| Nurse | JS |

## Patient Instructions Reviewed

Crush Injury

received 10/03/13 – 1007

## Activity Restrictions or Additional Instructions

ace wrap as applied.

Motrin and Tylenol for pain.

## Follow-up

BARNES,MICKEDA has been referred to the following clinics/specialists for follow up care:

SOUZA,MICHAEL C D.O.
2761 PAWTUCKET AVENUE
EAST PROVIDENCE, RI 02914-3347
Ph: (401)434-3350

BARNES,MICKEDA
DOB 01/31/1975  38 F  J0582395

Z005061083   FER 10/03/13   FER

**Concentra Medical Centers (RI)**
290 Branch Ave  PROVIDENCE, RI 02904
Phone: (401) 722-8880    Fax: (401) 723-9320

Service Date: 06/13/2014

ServiceID: 1261399026

## Return to Work Evaluation

Patient: Mickeda S. Barnes    Address: 34 Dunbar Ave

SN: XXX-XX-8332

DOB: 01/31/1975

RUMFORD, RI 02916

Gender: F    Phone: (401) 419-2250

Race: ASIAN    BLACK    HISPANIC    INDIAN    WHITE    OTHER

Employer: Rhode Island Public Transportati    Contact: Maureen Ruzzano
Address: 705 Elmwood Ave    Role: Primary Contact
Providence, RI 02907331    Phone: (401) 784-9500    Ext.:
Auth. by:    Fax: (401) 784-9525

Reason for evaluation: FFD Exam

☑ Occupational with other provider    ☐ Non-Occupational

Requested by: Ripta

Special attention to: Knee

Treating provider: Blackstone Ortho -

### Authorization for Examination

Permission is hereby granted to the authorities of Concentra Medical Centers (RI) for any examination deemed necessary by the physician. In addition, I authorize the release of any information acquired in the course of this examination.

_Mickeda Barns_
Patient Signature

_June 13, 2014_
Date

### Examination

Temp: 97.7    Blood Pressure: 143/114    Pulse: 72    Ht: 5 5    Wt: 228

Other: _____

Medical History: (R) knee surg Jan/2014. She has done some PT but she still has pain with certain movement. Her pain is intermittent and sharp in nature.

Present Complaint: Rt knee pain    (R) knee: No swelling or deformity Full ROM Sens + motor fx intact.

Findings/Recommendations: No Driving city bus recommend to have 2nd consult from orthopedic due to persistent pain

_[signature]_
Physician's Signature

6/13/2014
Date

Evaluation - Non-Work-Related Injury/Illness    Page 1 of 1    Revision Date: 10/21/2004

Service Date: 06/13/2014

**Concentra Medical Centers (R**
290 Branch Ave  PROVIDENCE, RI  02904
Phone: (401) 722-8880   Fax: (401) 723-9320

Claim Number:

## Non-Injury Work Status Report

Patient: Barnes, Mickeda S.
SSN: XXX-XX-8332
Address: 34 Dunbar Ave
RUMFORD, RI  02916
Home: (401) 419-2250
Work:              Ext.:

Employer Location: Rhode Island Public Transpo
Address:              705 Elmwood Ave
                     Providence, RI  029073314
Auth. by:

Contact: Maureen Ruzzano
Role:    Primary Contact
Phone: (401) 784-9500   Ext.:
Fax:    (401) 784-9525

---

**This Visit:**

Time In: 10:04 am     Time Out: 11:17 am     Visit Type: New

*Fit for Duty*
Fitness for Duty Physical-Level 4

*Pt has Edema of possible RSD/CRPS.*
*This is Not an orthopedic issue.*
*This Resolded. Cronoroline Patella*

---

**Result Status:**

Able to perform essential functions
No medical restrictions — *of orthopedic consisting to pt by*
*job. Pt. does complof ? of cerbrud*
*Pt ... the Knee which may interfere*
*c job function.*

Remarks: FIT FOR DUTY WITH RESTRICTINS OF NO DRIVING CITY BUS.  WOULD RECOMMEND TO HAVE 2ND
CONSULT WITH ~~ORTHOPEDIC~~ SPECIALIST TO EVALUATE KNEE PAIN.

*TBN Margaret*

*-? RSD*

*MD*

---

Status - Non-Injury

© 1996 -2014 Concentra Operating Corporation All Rights Reserved

AA/EEO Employer  Revision Date: 01/10/2013

Interventional Pain Management Center
102 Smithfield Avenue
Pawtucket, RI 02860
401-729-4985 / 401-729-6019 (fax)
Email: painri@yahoo.com
Web site: www.pain-ri.com

**N APA**
Southern New England
Anesthesia and Pain
Associates

*Dr Sniderman's Report to Dr Monchik and Office Reports*

July 14, 2014

Dr. Keith Monchik
Fax #: (401) 459 – 4010

Ref: **Mickeda Barnes**
DOB: 01/31/1975

Dear Dr. Monchik,

I had the pleasure of meeting **Mickeda Barnes** at the Interventional Pain Management Center today for an **initial evaluation.**

**Chief Complaint:** This is a very pleasant 39-year-old female with right knee pain and right inferior knee pain.

**History of Illness:** Onset was October 3, 2013, when she states she was hurt at work when the _____ box piano fell on to her right knee six times in that day according to her history. She was out of work for several days, then back to work and it got worse and then she had what she calls a nerve block by her primary care doctor, Dr. _____ that helped her for approximately three weeks and then the pain back, she had a second nerve block that only lasted for about three days, and then she ended up having arthroscopic surgery in January of 2014, and it helped with some of her pain, but then she developed what appears to me to be a new type of pain with very strong hypersensitivity right below her knee joint. She has tried physical therapy that did help and then she states she was involved in motor vehicle accident on April 2, 2014, and the pain has got worse again and it stayed at a very severe level. As noted, the pain is inferior to her knee joints and across her knee. She describes the pain as alternating between a dull ache and a sharp shooting pain. She has not experienced numbness, tingling, but feels as if she has a weakness in her knee. On occasion, it strongly affects her sleep and makes sleep very difficult. She notes that it is worse with physical activities, better with rest, and it is quite sensitive to touch and temperate changes and at times appears swollen to her. There have been no bowel or bladder changes.

**Medications:** Include Motrin, Adderall, and metoprolol.

**Review of Systems:** Positive for hypertension. The patient denied acute abdominal pain, abdominal swelling, black, tarry bowel movements; change in bowel habits, constipation, cirrhosis of the liver, cramps, diarrhea, gallstones, heart burn, hemorrhoids, hepatitis, indigestion, nausea, passing of blood from

3

- 1 -

Interventional Pain Management Center
102 Smithfield Avenue
Pawtucket, RI 02860
401-729-4985 / 401-729-6019 (fax)
Email: painri@yahoo.com
Web site: www.pain-ri.com

rectum, stomach or duodenal ulcer, vomiting of blood. **Ears:** The patient denied drainage from ears, ear pain.

**Neurological:** The patient denied blurred vision, buzzing, or ringing in ears, double vision, light flashes of memory loss, persistent hoarseness, and speech difficulty.

**Skin:** The patient denied changing or bleeding moles or rash. **Neck:** The patient denied new deafness, are new unexplained lumps. **Bones and joints:** Polio, rheumatic fever. **Chest, heart, lungs:** The patient denied abnormal chest x-ray, abnormal electrocardiogram, chest pain, and cardiomegaly, angina, coughing up blood, fluttering of the heart, heart attack, wheezing. **Hematologic:** The patient denied nosebleeds not due to injuries, blood clotting, unexplained fevers, chills.

**Past Medical History:** Includes hypertension, ADD, depression, and anxiety.

**Past Surgical History:** Includes right knee surgery, gastric bypass surgery, and tubal ligation.

**Employment Status:** She is a RIPTA bus driver, out of work since January 2014.

**Social History:** She lives with her husband and three children. She does not smoke. She drinks on occasion.

**Family History:** Noncontributory.

**Drug Allergies:** No known drug allergies.

**Physical examination:** She was alert and oriented in all domains. Her affect was broad otherwise. She is a bright, alert, cooperative female who appears her stated age and made good eye contact. Thought process was coherent and goal directed. Judgment was intact. Insight was fair. She denied any significant change recent change in her weight.

Cardiovascular and respiratory examinations were benign. Gait was antalgic. Finger-to-nose was normal. She was unable to walk on her heels, unable to walk on her tiptoes. Motor strength seemed somewhat diminished in the right leg. Sensory: She was hypersensitive in the area discussed. Reflexes were normal. Examination of the knee showed no areas of erythema, hypersensitivity is noted across and below her knee.

8

-2-



Interventional Pain Management Center
102 Smithfield Avenue
Pawtucket, RI 02860
401-729-4985 / 401-729-6019 (fax)
Email: painri@yahoo.com
Web site: www.pain-ri.com

My assessment of **Mickeda Barnes** is that she has **Knee Pain and Neuropathic Pain.** My **plan** for her is as follows:

1. We have prescribed two types of medicines for her; one a topical medicine that has ketamine, gabapentin, and cortisone, and then we are going to start her on oral gabapentin as well. Directions for both medications were carefully explained to the patient and then we will see her in follow up in approximately one month.

Thank you very much for referring **Mickeda Barnes** to the Pain Management Center. I will certainly keep you updated on her progress.

Sincerely,

Stuart Schneiderman, M.D.

File #: SSJU0912

Interventional Pain Management Center
102 Smithfield Avenue
Pawtucket, RI 02860
401-729-4985 / 401-729-6019 (fax)
Email: painri@yahoo.com
Web site: www.pain-ri.com

**N A P A**
Southern New England
Aesthesia and Pain
Associates

July 22, 2014

Dr. Keith Monchik
Fax #: (401) 459 – 4010

Ref: **Mickeda Barnes**
DOB: 01/31/1975

Dear Dr. Monchik,

Today, I had the pleasure of seeing your patient, **Mickeda Barnes** return to the Interventional Pain Management Center.

As you may remember, she is a very pleasant 39-year-old female with right knee pain and right inferior knee pain.

During her initial evaluation on July 14, 2014, we prescribed Gabapentin and compounding cream. She returns today and follows up telling me that she started the Gabapentin on July 14th, she took it for five days and by the end of week when she was feeling much better, she was taking three pills a day, and now, she is down to one pill a day and she started the compounding cream. On examination, she has relatively poor extension of her knee without pain and there is no swelling or erythema and she doesn't seem to have any hypersensitivity to touch. Her neurological examination was otherwise unchanged and non-focal.

My assessment of **Mickeda Barnes** is that she has **Knee Pain and Neuropathic Pain.** My **plan** for her is as follows:

1. The patient is very anxious to return to work, whenever, very carefully that she cannot drive a bus well on Gabapentin. We are going slowly have her wean off the Gabapentin and hopefully the pain will remain under the control with the compounding cream, and then she will return to work and as noted, she will continue with the compounding cream.

Thank you very much for referring **Mickeda Barnes** to the Pain Management Center. I will certainly keep you updated on her progress.

Sincerely,

Stuart Schneiderman, M.D.

File #: SSJL1125

- 1 -



**N APA**
Southern New England
Anesthesia and Pain
Associates

Interventional Pain Management Center
102 Smithfield Avenue
Pawtucket, RI 02860
401-729-4985 / 401-729-6019 (fax)
Email: painri@yahoo.com
Web site: www.pain-ri.com

August 12, 2014

Dr. Keith Monchik
Fax #: (401) 459 – 4010

Ref: **Mickeda Barnes**
DOB: 01/31/1975

Dear Dr. Monchik,

Today, I had the pleasure of seeing your patient, **Mickeda Barnes** return to the Interventional Pain Management Center.

As you may remember, she is a very pleasant 39-year-old female with right knee pain and right inferior knee pain.

During her last visit to the Pain Management Center on July 22, 2014, she told me she has had improved on the Gabapentin and compounding cream combination and felt ready to return to work. I carefully explained to her that time, if she did return to work as a bus driver that she could not be on the Gabapentin. At that time, we agreed that she was gone slowly wean off the Gabapentin and then return to work. She returns today in her bus drivers uniform and I ask her how was the weaning off the Gabapentin well and she told me that she continues to take Gabapentin. I reminded her that we had discussed that she should wean herself off the Gabapentin if she is going to start driving the bus once again, and she said that she reduced the Gabapentin dosage and that she feels as if she is not having side effects and she returns to driving the bus. I told her that I felt uncomfortable with her taking Gabapentin and driving the bus and told her that if she needed to drive and take Gabapentin that I would not continue to prescribe Gabapentin if she going to continue to do her bus driving. She seems angry at that point and asked for an alternative. I told her unfortunately I did not have an alternative and she essentially walk out in the office at that time. I have carefully explained to her many times that the medical literature reports that Gabapentin has side effects that could affect her driving the bus and she should stop taking it if she is going to continue to drive her bus.

My assessment of **Mickeda Barnes** is that she has **Knee Pain and Neuropathic Pain.**



**Interventional Pain Management Center**
102 Smithfield Avenue
Pawtucket, RI 02860
401-729-4985 / 401-729-6019 (fax)
Email: painri@yahoo.com
Web site: www.pain-ri.com

Thank you very much for referring **Mickeda Barnes** to the Pain Management Center. I will certainly keep you updated on her progress.

Sincerely,

Stuart Schneiderman, M.D.

File #: SSAU1067

-2-

**AFFIDAVIT OF PHYSICIAN PER SECTION 28-33-8(c) OF THE**
**RHODE ISLAND WORKERS' COMPENSATION ACT**

State of Rhode Island
Workers' Compensation Court
Medical Advisory Board
One Dorrance Plaza, Providence, RI 02903
Phone: 401-458-3460
TDD: 401-458-5275.

☐ SIX (6)    ☐ EIGHTEEN (18)    ☒ THIRTY (30)    RECEIVED

14 MAR -4  PM 2: 31

WCC / MEDICAL ADVISORY BOARD

**EMPLOYEE INFORMATION:**
Social Security No.: 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
Name: Mickeda Barnes
Address: 34 Dunbar ave
City: Rumford   State: RI  Zip: 02916
Phone: 401-419-2250   Date of Birth: 1/31/75

**EMPLOYER INFORMATION:**
Name: RI PTA
Address:
City:         State:      Zip:
Phone:

IF THE IDENTITY OF THE INSURER IS UNKNOWN, CONTACT THE DIVISION OF WORKERS' COMPENSATION AT (401) 462-8116 FOR THE INFORMATION.

**INSURANCE CARRIER:**
Name: Beacon Mutual
Address: One Beacon Ctr
City: Warwick   State: RI  Zip: 02886
Phone: 401-825-2667

**ADJUSTING COMPANY:**
Name:
Address:
City:         State:      Zip:
Phone:

**EMPLOYEE'S INJURY INFORMATION:**
Injury Date: 10/3/13          Incapacity Date:

SECTION 28-33-8(b) OF THE RHODE ISLAND WORKERS' COMPENSATION ACT PROVIDES FOR A $20.00 FEE TO BE CHARGED FOR THE TIMELY FILING OF THIS FORM WITHIN ONE WEEK OF THE DUE DATE.

1. Current and anticipated further treatment, including type, frequency, and duration of treatment(s) is as follows: (If none, so state.)
Medication P.T.

2. The employee's anticipated date of discharge is as follows: (If the employee has already been discharged, so state.) 2-3 mths

3. Can the employee return to his or her former position of employment? (Yes) or No

4. (a) If the employee cannot return to his or her former position of employment, is the employee capable of work other than his or her former position of employment: Yes or (No)
   (b) The employee's work restrictions/capabilities are as follows:

| | |
|---|---|
| ☐ no operating heavy machinery or vehicles | ☐ no push/pull _____ lbs. |
| ☐ no climbing ladders or stairs | ☐ alternate standing/sitting |
| ☐ may lift up to _____ lbs. only | ☐ no work involving use of right/left |
| ☐ no reaching above shoulders | ☐ sit down work only |
| ☐ no repetitive twisting, bending | ☐ keep wound clean and dry |
| ☐ no repetitive stooping, kneeling, squatting | ☐ other |

5. Has the employee reached maximum medical improvement? Yes or (No)

Physician's Signature: [signature]   Lic. #: RI 446   Date: 2/25/14
Physician's Name: Dr. Michael Souza   Title: DO

Phys. Asst. Sig.          Supervising Phys. Name

Name of Facility: MCS, Inc.   Facility Address: 2761 Pawtucket ave, EP, RI, 02914

Subscribed and sworn to before me by the above-named physician this 25 day of February 2014
[signature] AnnMarie Santos
Notary Public
My Commission Expires: 7/14/16

MAB01 – 03/09 ORIGINAL, SIGNED AND NOTARIZED – MEDICAL ADVISORY BOARD, COPY TO INSURER/SELF-INSURED EMPLOYER, COPY TO PHYSICIAN'S FILE, COPY TO EMPLOYEE AND HIS/HER ATTORNEY

6/2010

**Concentra Medical Centers (RI)**
290 Branch Ave  PROVIDENCE, RI  02904
Phone:  (401) 722-8880      Fax  (401) 723-9320

Service Date: 06/13/2014

ServiceID: 1261399026

## Return to Work Evaluation

Pnt:  Mickeda S. Barnes    Address: 34 Dunbar Ave

SN:  XXX-XX-8332

DOB:  01/31/1975    RUMFORD, RI  02916

Gender:  F    Phone:  (401) 419-2250

Race:  ASIAN    BLACK    HISPANIC    INDIAN    WHITE    OTHER

Employer:  Rhode Island Public Transportati

Address:  705 Elmwood Ave
Providence, RI  029073314

Auth. by:

Contact:  Maureen Ruzzano
Role:  Primary Contact
Phone:  (401) 784-9500    Ext.:
Fax:  (401) 784-9525

Reason for evaluation:  FFD Exam

☑ Occupational with other provider        ☐ Non-Occupational

Requested by:  Ripta

Special attention to:  Knee

Treating provider:  Blackstone Ortho —

## Authorization for Examination

Permission is hereby granted to the authorities of Concentra Medical Centers (RI) for any examination deemed necessary by the physician.  In addition, I authorize the release of any information acquired in the course of this examination.

_Mickeda Barns_                    _June 13, 2014_
Patient Signature                              Date

## Examination

Temp: 97.7    Blood Pressure: 143/114    Pulse: 72    Ht: 55    Wt: 228

Other: _____

Medical History:  (R) knee surg Jan/2014. She has done some PT but she still has pain with certain movement. Her pain is intermittent and sharp in nature.

Present Complaint:  Rt knee pain        (R) knee: No swelling or deformity
Full ROM
Sens + Motor fx intact.

Findings/Recommendations:  No Driving City bus recommend! to have 2nd consult from orthopedic due to persistent pain

_Ron__                    6/13/2014
Physician's Signature                          Date

Revision Date: 10/21/2004

Evaluation - Non-Work-Related Injury/Illness                Page 1 of 1

**Claim Number:**

**Concentra Medical Centers (R**

290 Branch Ave  PROVIDENCE, RI  02904
Phone: (401) 722-8880    Fax: (401) 723-9320

**Service Date:** 06/13/2014

## Non-Injury Work Status Report

atient:  Barnes, Mickeda S.
SSN:       XXX-XX-8332
Address: 34 Dunbar Ave
              RUMFORD, RI  02916
Home:    (401) 419-2250
Work:                    Ext.:

Employer Location: Rhode Island Public Transpor
Address:              705 Elmwood Ave
                           Providence, RI  029073314
Auth. by:

Contact: Maureen Ruzzano
Role:      Primary Contact
Phone:   (401) 784-9500    Ext.:
Fax:       (401) 784-9525

---

**This Visit:**

Time In: 10:04 am          Time Out: 11:17 am          Visit Type: New

*Fit for Duty*
Fitness for Duty Physical-Level 4

*[handwritten: Pt has Evidence of possible RSD/CRPS. This is not an orthopedic issue. Thus Resolved. Chondromalacia Patella]*

---

**Result Status:**

Able to perform essential functions
No medical restrictions — *[handwritten: of orthopedic ability to perform job- Pt. does complain of continued pain in the knee which may interfere c job function.]*

**Remarks:** FIT FOR DUTY WITH RESTRICTINS OF NO DRIVING CITY BUS.  WOULD RECOMMEND TO HAVE 2ND CONSULT WITH ORTHOPEDIC SPECIALIST TO EVALUATE KNEE PAIN.

*[handwritten signature]*

*[handwritten: - ? RSD]*

*[handwritten signature]  (MD)*

---

Status - Non-Injury

© 1996 -2014 Concentra Operating Corporation All Rights Reserved

AA/EEO Employer  Revision Date: 01/10/2013

**Interventional Pain Management Center**
102 Smithfield Avenue
Pawtucket, RI 02860
401-729-4985 / 401-729-6019 (fax)
Email: painri@yahoo.com
Web site: www.pain-ri.com

**N A P A**
Southern New England
Anesthesia and Pain
Associates

*Dr Sniderman's Report to Dr Monchik and office Reports*

July 14, 2014

Dr. Keith Monchik
Fax #: (401) 459 – 4010

Ref: **Mickeda Barnes**
DOB: 01/31/1975

Dear Dr. Monchik,

I had the pleasure of meeting **Mickeda Barnes** at the Interventional Pain Management Center today for an **initial evaluation.**

**Chief Complaint:** This is a very pleasant 39-year-old female with right knee pain and right inferior knee pain.

**History of Illness:** Onset was October 3, 2013, when she states she was hurt at work when the _____ box piano fell on to her right knee six times in that day according to her history. She was out of work for several days, then back to work and it got worse and then she had what she calls a nerve block by her primary care doctor, Dr. _____ that helped her for approximately three weeks and then the pain back, she had a second nerve block that only lasted for about three days, and then she ended up having arthroscopic surgery in January of 2014, and it helped with some of her pain, but then she developed what appears to me to be a new type of pain with very strong hypersensitivity right below her knee joint. She has tried physical therapy that did help and then she states she was involved in motor vehicle accident on April 2, 2014, and the pain has got worse again and it stayed at a very severe level. As noted, the pain is inferior to her knee joints and across her knee. She describes the pain as alternating between a dull ache and a sharp shooting pain. She has not experienced numbness, tingling, but feels as if she has a weakness in her knee. On occasion, it strongly affects her sleep and makes sleep very difficult. She notes that it is worse with physical activities, better with rest, and it is quite sensitive to touch and temperate changes and at times appears swollen to her. There have been no bowel or bladder changes.

**Medications:** Include Motrin, Adderall, and metoprolol.

**Review of Systems:** Positive for hypertension. The patient denied acute abdominal pain, abdominal swelling, black, tarry bowel movements; change in bowel habits, constipation, cirrhosis of the liver, cramps, diarrhea, gallstones, heart burn, hemorrhoids, hepatitis, indigestion, nausea, passing of blood from

3



Interventional Pain Management Center
102 Smithfield Avenue
Pawtucket, RI 02860
401-729-4985 / 401-729-6019 (fax)
Email: painri@yahoo.com
Web site: www.pain-ri.com

rectum, stomach or duodenal ulcer, vomiting of blood. **Ears:** The patient denied drainage from ears, ear pain.

**Neurological:** The patient denied blurred vision, buzzing, or ringing in ears, double vision, light flashes of memory loss, persistent hoarseness, and speech difficulty.

**Skin:** The patient denied changing or bleeding moles or rash. **Neck:** The patient denied new deafness, are new unexplained lumps. **Bones and joints:** Polio, rheumatic fever. **Chest, heart, lungs:** The patient denied abnormal chest x-ray, abnormal electrocardiogram, chest pain, and cardiomegaly, angina, coughing up blood, fluttering of the heart, heart attack, wheezing. **Hematologic:** The patient denied nosebleeds not due to injuries, blood clotting, unexplained fevers, chills.

**Past Medical History:** Includes hypertension, ADD, depression, and anxiety.

**Past Surgical History:** Includes right knee surgery, gastric bypass surgery, and tubal ligation.

**Employment Status:** She is a RIPTA bus driver, out of work since January 2014.

**Social History:** She lives with her husband and three children. She does not smoke. She drinks on occasion.

**Family History:** Noncontributory.

**Drug Allergies:** No known drug allergies.

**Physical examination:** She was alert and oriented in all domains. Her affect was broad otherwise. She is a bright, alert, cooperative female who appears her stated age and made good eye contact. Thought process was coherent and goal directed. Judgment was intact. Insight was fair. She denied any significant change recent change in her weight.

Cardiovascular and respiratory examinations were benign. Gait was antalgic. Finger-to-nose was normal. She was unable to walk on her heels, unable to walk on her tiptoes. Motor strength seemed somewhat diminished in the right leg. Sensory: She was hypersensitive in the area discussed. Reflexes were normal. Examination of the knee showed no areas of erythema, hypersensitivity is noted across and below her knee.

8

-2-



**Interventional Pain Management Center**
102 Smithfield Avenue
Pawtucket, RI 02860
401-729-4985 / 401-729-6019 (fax)
Email: painri@yahoo.com
Web site: www.pain-ri.com

My assessment of **Mickeda Barnes** is that she has **Knee Pain and Neuropathic Pain.** My **plan** for her is as follows:

1. We have prescribed two types of medicines for her; one a topical medicine that has ketamine, gabapentin, and cortisone, and then we are going to start her on oral gabapentin as well.  Directions for both medications were carefully explained to the patient and then we will see her in follow up in approximately one month.

Thank you very much for referring **Mickeda Barnes** to the Pain Management Center.  I will certainly keep you updated on her progress.

Sincerely,

Stuart Schneiderman, M.D.

File #: SSJU0912



**N A P A**
Southern New England
Anesthesia and Pain
Associates

Interventional Pain Management Center
102 Smithfield Avenue
Pawtucket, RI 02860
401-729-4985 / 401-729-6019 (fax)
Email: painri@yahoo.com
Web site: www.pain-ri.com

July 22, 2014

Dr. Keith Monchik
Fax #: (401) 459 – 4010

Ref: **Mickeda Barnes**
DOB: **01/31/1975**

Dear Dr. Monchik,

Today, I had the pleasure of seeing your patient, **Mickeda Barnes** return to the Interventional Pain Management Center.

As you may remember, she is a very pleasant 39-year-old female with right knee pain and right inferior knee pain.

During her initial evaluation on July 14, 2014, we prescribed Gabapentin and compounding cream. She returns today and follows up telling me that she started the Gabapentin on July 14th, she took it for five days and by the end of week when she was feeling much better, she was taking three pills a day, and now, she is down to one pill a day and she started the compounding cream. On examination, she has relatively poor extension of her knee without pain and there is no swelling or erythema and she doesn't seem to have any hypersensitivity to touch. Her neurological examination was otherwise unchanged and non-focal.

My assessment of **Mickeda Barnes** is that she has **Knee Pain and Neuropathic Pain**. My **plan** for her is as follows:

1. The patient is very anxious to return to work, we *turn* over, very carefully that she cannot drive a bus well on Gabapentin. We are going slowly have her *wean* off the Gabapentin and hopefully the pain will remain under the control with the compounding cream, and then she will return to work and as noted, she will continue with the compounding cream.

Thank you very much for referring **Mickeda Barnes** to the Pain Management Center. I will certainly keep you updated on her progress.

Sincerely,

Stuart Schneiderman, M.D.

File #: SSJL1125

- 1 -



**N A P A**
Southern New England
Anesthesia and Pain
Associates

Interventional Pain Management Center
102 Smithfield Avenue
Pawtucket, RI 02860
401-729-4985 / 401-729-6019 (fax)
Email: painri@yahoo.com
Web site: www.pain-ri.com

August 12, 2014

Dr. Keith Monchik
Fax #: (401) 459 – 4010

Ref: **Mickeda Barnes**
DOB: **01/31/1975**

Dear Dr. Monchik,

Today, I had the pleasure of seeing your patient, **Mickeda Barnes** return to the Interventional Pain Management Center.

As you may remember, she is a very pleasant 39-year-old female with right knee pain and right inferior knee pain.

During her last visit to the Pain Management Center on July 22, 2014, she told me she has had improved on the Gabapentin and compounding cream combination and felt ready to return to work. I carefully explained to her that time, if she did return to work as a bus driver that she could not be on the Gabapentin. At that time, we agreed that she was gone slowly wean off the Gabapentin and then return to work. She returns today in her bus drivers uniform and I ask her how was the weaning off the Gabapentin well and she told me that she continues to take Gabapentin. I reminded her that we had discussed that she should wean herself off the Gabapentin if she is going to start driving the bus once again, and she said that she reduced the Gabapentin dosage and that she feels as if she is not having side effects and she returns to driving the bus. I told her that I felt uncomfortable with her taking Gabapentin and driving the bus and told her that if she needed to drive and take Gabapentin that I would not continue to prescribe Gabapentin if she going to continue to do her bus driving. She seems angry at that point and asked for an alternative. I told her unfortunately I did not have an alternative and she essentially walk out in the office at that time. I have carefully explained to her many times that the medical literature reports that Gabapentin has side effects that could affect her driving the bus and she should stop taking it if she is going to continue to drive her bus.

My assessment of **Mickeda Barnes** is that she has **Knee Pain and Neuropathic Pain.**



**Interventional Pain Management Center**
102 Smithfield Avenue
Pawtucket, RI 02860
401-729-4985 / 401-729-6019 (fax)
Email: painri@yahoo.com
Web site: www.pain-ri.com

Thank you very much for referring **Mickeda Barnes** to the Pain Management Center. I will certainly keep you updated on her progress.

Sincerely,

Stuart Schneiderman, M.D.

File #: SSAU1067

-2-

04-04-2014  02:19pm  From-SULLIVAN  WHITEHEAD DELUCA LLP        T-083  P.017/018  F-384

Page 1 of 1



St. Joseph
Health Services
of Rhode Island

Date: 10/03/13
Account Num: Z005061083
Med Rec Num: J0582395
Patient: BARNES,MICKEDA
Location: FER
Physician: KIRK,PETER A M.O.

# Patient Instructions Signature Page

**Patient Name:** BARNES,MICKEDA

**Guardian Name:**

**The above-named patient and/or guardian has received the following patient instructions:**

Crush Injury

**on this date:** 10/03/13 - 1007

BARNES,MICKEDA
DOB 01/31/1975  36 F J0582395
Z005061083  ADM 10/03/13  ER

**I have read and understand the instructions given to me by my caregivers.**

BARNES,MICKEDA

Print Patient Name

_Michela Barney_        Oct 3, 2013

Patient (or Guardian) Signature        Date

_[signature]_        10/3/13

Caregiver/RN/Doctor Signature        Date

04-04-2014 02:19pm From-SULLIV- WHITEHEAD DELUCA 4016... T-083 P-019/019 F-384



## St. Joseph Health Services of Rhode Island

Date: 10/03/13
Account Num: Z005061083
Med Rec Num: J0582395
Patient: BARNES,MICKEDA
Location: FER
Physician: KIRK,PETER A M.D.

# Patient Visit Information

**You were seen today for:**

knee contusion

## Staff

Your caregivers today were:

| | |
|---|---|
| Physician | KIRK,PETER A M.D. |
| Practitioner | James Cerullo, PA-C |
| Nurse | JS |

## Patient Instructions Reviewed

Crush Injury

received 10/03/13 – 1007

## Activity Restrictions or Additional Instructions

ace wrap as applied.

Motrin and Tylenol for pain.

## Follow-up

BARNES,MICKEDA has been referred to the following clinics/specialists for follow up care:

SOUZA,MICHAEL C D.O.
2761 PAWTUCKET AVENUE
EAST PROVIDENCE, RI 02914-3347
Ph: (401)434-3350

BARNES,MICKEDA
DOB 01/31/1975  38 F  J0582395
Z005061083  ADM 10/03/13  ER

Case 1:22-cv-02151-JM-PAS    Document 5    Filed 06/03/22    Page 63 of 577 PageID: 2
1107
Summary Of Today's Visit    Page 1 of 2

 **COASTAL MEDICAL**

## Summary of Today's Visit
### BARNES , MICKEDA S  DOB:01/31/1975
Account No 1154272
Gender:Female
Race:Black or African American
Ethnicity:Non-Hispanic
Preferred Language:English
12/19/2019 visit with Tesfaye Meren, MD

## Allergies
- N.K.D.A.

## Medication List
- Refill Adderall XR : 10 mg 2 tab AM and 1 tab PM orally everyday,30 days ,90 ,Refills: 0
- Continue gabapentin : 100 mg 1 cap(s) orally twice a day
- Continue Metoprolol Tartrate : 100 mg 1 tab(s) orally once a day
- Continue Topamax : 25 mg 1 tab(s) orally 2 times a day
- Continue Fioricet : 325-50-40 1 tablet by mouth every 4 hours as needed

### Other medications you are on
- Taking compounded cream : gabapentin 6%, ketamine 10%, diclofenac 3%, lidocaine 4% apply 1-2 grams to affected area topically once daily for pain,300 Gram ,Refills: 0
- Taking Vitamin D : 1000 intl units 1 tab(s) orally once a day,30 day(s) ,30
Notes: EKG-Sinus at 54/min., Axis 30, PR 0.12 sec., QRS 0.08 sec., QT 0.4 sec., Non-specific ST-T changes.No old EKG available for comparison.

## Tests ordered for a future date
### Labs
- CARDIAC RISK(chol,trig,hdl,ldl) on 04/19/2020 (for: Others)
- B12 on 04/19/2020 (for: Others)

## Other Medical Conditions (Problem List)
- RAF19  Coding Review 2019 (Informational Only)
- Z68.31  Body mass index (BMI) 31.0-31.9, adult
- F43.9  Stress
- F90.9  Attention deficit hyperactivity disorder (ADHD), unspecified ADHD type
- G43.919Intractable migraine without status migrainosus, unspecified migraine type
- I10  Hypertension, unspecified type
- G89.29 Other chronic pain
- Z68.30  Body mass index (BMI) 30.0-30.9, adult
- E78.49 Other Hyperlipidemia

## Smoking Status
- never tobacco user

Summary of Today's Visit for - BARNES , MICKEDA S  DOB:01/31/1975  Account No: 1154272
**COASTAL MEDICAL INC (WA)    900 Warren Ave Ste 400    East Providence, RI 02914-1430    401-331-1221**
Summary generated by eClinicalWorks (www.eclinicalworks.com)
*This document contains confidential information about your health. To maintain your privacy, do not throw this document in the trash. If you do not wish to keep this document for your records, please shred or otherwise securely dispose of your copy. If you are not the intended recipient, please destroy this document and report it to the physician's office named above.*

RI Department of Labor and Training, "Subsequent Report"

## Subsequent Report

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942 www.dlt.ri.gov/wc
Phone (401) 462-8100 Fax (401) 462-8105

| Claim Administrator Claim Number |
|---|
| 357564 |

| Employee Information | | Parties to Claim | |
|---|---|---|---|
| SSN or ID | Date of Birth  01/31/1975 | Employer or Business Name | RIPTA - Paratransit Operations |
| Last Name  Barnes | First Name  Mickeda   Initial | Insurer Business Name | RIPTA |
| Date of Injury  11/05/2014 | Date of Death | Claims Administrator Business Name | The Beacon Mutual Insurance Company |

### Claim Information

| Claim Type | Claim Status | Maintenance Type |
|---|---|---|
| ☐ Medical Only | ☐ Open | FN-Final |
| ☐ Indemnity | ☑ Closed | |
| ☐ Notification Only | ☐ Reopened | |
| ☐ Became Medical Only | ☐ Re-Opened/Closed | |
| ☐ Became Lost Time payment | | |

### Payment Information

| Date Disability Began | Date Disability Ended | Date of First Payment |
|---|---|---|
| | | |

### Indemnity and Lump Sums Paid to Date for Entire Claim

| Total Incapacity (TT, PT) | Loss of Use (PP) | Death Benefits (DB) | Commutation |
|---|---|---|---|
| Partial Incapacity (TP) | Scarring (Disfigurement) | Employer Paid | Denied & Dismissed |

### Expenses Paid to Date for Entire Claim

| Funeral | Hospital | Unallocated Prior Indemnity | Durable Medical |
|---|---|---|---|
| Penalties | Other Medical | Unallocated Prior Medical | Medical Travel |
| Interest | Vocational Rehabilitation | Pharmeceutical | Total Medical-Legal |
| Employer's Legal | Expert Witness | Dental | Other |
| Claimant's Legal | Court Reporter | Physical Therapy | Death Benefit to WC Adm. Fund |
| Physicians | Private Investigator | Chriopractic | |

### Claims Adjuster Information & Date

| Claim Representative Name  Messier, Keri | Phone or E-Mail  (401) 825-2903 | DateReceived  4/8/2020 |
|---|---|---|

RI Department of Labor and Training, "Subsequent Report"    Page 1 of 1

Case 1:22-cv-00213-JJM-PAS Document 5 Filed 06/03/22 Page 65 of 577 PageID #: 1109

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**
**EMPLOYEE INJURY REPORT**

1310-001

DATE Oct 3 2013

NAME Mickeda Barnes

ADDRESS 34 Dunbar Ave

CITY Rumford

STATE RI ZIP 02916

PHONE NUMBER 401-419-2250

SOCIAL SECURITY # 038408332

PAYROLL NUMBER 5282

CIRCLE ONE MALE (FEMALE)

DATE OF HIRE NOV 26, 2002

OCCUPATION Bus Driver

CIRCLE DAYS OFF M T W T F (S)(S)

AGE 38 DATE OF BIRTH 1-31-75

LOCATION WHERE INJURY OCCURRED Smith St

DATE OF INJURY Oct 3, 2013 BUS # 1332

TIME OF INJURY 8:30 (AM) PM TIME WORKDAY BEGAN 544 (AM) PM

FIRST FULL DAY LOST FROM WORK Oct 4, 2013

HAS EMPLOYEE RETURNED TO WORK Y (N)

DATE RETURNED TO WORK

SUPERVISOR IN CHARGE John / Dispatch

WITNESS TO INJURY None

HOSPITAL OR TREATING FACILITY St. Joseph Hospital

ADDRESS

PHYSICIAN'S NAME Kirk, Peter A M.D.

DESCRIBE HOW THE INJURY OCCURRED Called John to let him know the control panal was loose and had hit me 4 times already he was gonna change me offer get a mecanic to fix the problem but continue down Smith St it had fell two more times in the knee.

DESCRIBE INJURY AND PARTS OF BODY AFFECTED Knee Side

Edward Fin 10-4-13
FOREMAN/SUPERVISOR SIGNATURE

Mickeda Barnes
EMPLOYEE SIGNATURE Oct 4, 2013 DATE

Revised 9/1/10

# INITIAL INJURY REPORT

## EMPLOYEE REPORT

Last Name __Barnes__    First Name __Mickeda__    MI ____ Date of Birth __1/31/05__ Age __38__

Full Address (no Street) __34 Dunbar Ave__   City __Rumford__   State __RI__ Zip Code __02916__

Social Security No. __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__   Sex □ M ☑ F   Phone Number ( __401__ ) __419-2250__

Department _____   Division _____   B/C ID No. _____

Location of incident __Smith St__

Date of incident __Oct 3, 2013__   Time of incident __8:30__   ☑ am □ pm

Did you receive this injury while working for RIPTA? ☑ Yes □ No

Specific area where incident occured __Smith St__

Describe and illustrate (at right) your injury _____

Describe the incident __Driving hit pot holes Control__
__Panel Loose hits Knee Multipal Times__

Name of witness to incident (print) _____

Employee Signature __Mickeda Barnes__ Date __Oct 4, 2013__

**Indicate on these figures the affected body parts:**

R   L       L   R

Dominant hand: □ Left ☑ Right

## SUPERVISOR INITIAL REPORT

Supervisor Name _____

Was there a specific incident/accident? □ Yes □ No □ Unknown    Did you witness the incident/accident? □ Yes □ No

Give a step by step description of what you understand to have happened _____

Substance/object directly causing injury _____

Was an employee sent to hospital or physician? □ Yes  Date __/__/__   □ No

Name/Address _____

Did employee return to work same day? □ Yes □ No   Was injury lost time? □ Yes □ No  If yes, date and time began __/__/__

Sent home remainder of shift? □ Yes □ No   Light Duty Available? □ Yes □ No

Signature _____   Supervisor's Signature _____

The **Beacon** Mutual Insurance Co.

**Employee's Certificate of Dependency Status**
State of Rhode Island

Department of Labor and Training
Division of Workers' Compensation
P. O. Box 20190
Cranston, RI 02920-0942
Phone (401) 462-8100  www.dlt.ri.gov/wc

☐ Check if this is a corrected report

| DWC claim number |
|---|

| Claim Administrator File Number |
|---|

| 1. Employee information: | | 2. Claim Information: | |
|---|---|---|---|
| SSN: 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  ☐ Male  ☑ Female | | Employer Name | |
| Name: Mickeda Barnes | | Claim Administrator | |
| Address: 34 Dunbar Ave | | Address | |
| City, ST Zip: Rumford RI | | City, ST Zip | |
| Phone: 401-419-2250   Date of Birth: 1-31-75 | | Injury Date | Incapacity Date |

| Employee: complete this form and return it to the Claim Administrator. This information is needed to calculate your compensation rate. |
|---|

**3. Marital Status**    At the time of the injury the employee was  ☐ Single  ☑ Married
☐ Spouse works   ☑ Spouse does not work   Spouse's name

| 4. Number of Federal Exemptions | 5 | Enter the maximum number of Federal Exemptions you are allowed to claim for Federal income tax. Include yourself, your spouse, your dependents, and any other exemptions. |
|---|---|---|

**5. Dependents**    A dependent for workers' compensation includes children you support who are:
- Under age 18, or age 18 to 23 and a full time student
- Mentally or physically incapacitated from earning at any age

| Dependent's Name | Date of Birth | Relationship | Full time student? |
|---|---|---|---|
| Sidney | 4-4-02 | D | ☑ Yes  ☐ No |
| Briana | 8-20-97 | D | ☑ Yes  ☐ No |
| Doreen | 6-6-11 | D | ☐ Yes  ☑ No |
| | | | ☐ Yes  ☐ No |
| | | | ☐ Yes  ☐ No |
| | | | ☐ Yes  ☐ No |
| | | | ☐ Yes  ☐ No |
| | | | ☐ Yes  ☐ No |
| | | | ☐ Yes  ☐ No |

| Employee's Signature | Mickeda Barnes | Date | Oct 4 2013 |
|---|---|---|---|

DWC-04(7/12)

# RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## EMPLOYEE INJURY REPORT

1411-0110

DATE Nov 5, 2014

NAME Nickoda Banes

PAYROLL NUMBER 5282

ADDRESS 34 Dunbar Ave

CIRCLE ONE    MALE    (FEMALE)

CITY Rumford

DATE OF HIRE Nov 26, 2002

STATE R I    ZIP 02916

OCCUPATION Bus Driver

PHONE NUMBER 401-419-2250

CIRCLE DAYS OFF    M T W T F (S S)

SOCIAL SECURITY # 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

AGE 39    DATE OF BIRTH 1-31-75

LOCATION WHERE INJURY OCCURRED 95 South Highway

DATE OF INJURY Nov 5, 2014    BUS # 1332

TIME OF INJURY 4:48 AM (PM)    TIME WORKDAY BEGAN 6:36 (AM) PM

FIRST FULL DAY LOST FROM WORK _____

HAS EMPLOYEE RETURNED TO WORK    Y    N

DATE RETURNED TO WORK _____

SUPERVISOR IN CHARGE Jim Murphy

WITNESS TO INJURY See Cameras on Bus

HOSPITAL OR TREATING FACILITY _____

ADDRESS _____

PHYSICIAN'S NAME _____

DESCRIBE HOW THE INJURY OCCURRED Deving to Westerly on 95 South When I Hit either a pothole or a bump on highway Fare Box fisel fell on my knee and shook 3 to 4 times from Impact of pothole or bump.

DESCRIBE INJURY AND PARTS OF BODY AFFECTED Knee top and side of Right Knee

_____

FOREMAN/SUPERVISOR SIGNATURE

Nickoda Banes Nov 5, 2014

EMPLOYEE SIGNATURE    /    DATE

Revised 9/1/10

## Employee's Certificate of Dependency Status
### State of Rhode Island

Department of Labor and Training
Division of Workers' Compensation
P. O. Box 20190
Cranston, RI 02920-0942
Phone (401) 462-8100  www.dlt.ri.gov/wc

☐ Check if this is a corrected report

| DWC claim number |
| --- |

| Claim Administrator File Number |
| --- |

| 1. Employee information: | 2. Claim Information: |
| --- | --- |
| SSN: 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   ☐ Male  ☐ Female | Employer Name |
| Name  Mickeda Barnes | Claim Administrator |
| Address  34 Dunbar Ave | Address |
| City, ST Zip  Rumford RI 02916 | City, ST Zip |
| Phone 401-419-2250   Date of Birth 1-31-75 | Injury Date          Incapacity Date |

Employee: complete this form and return it to the Claim Administrator. This information is needed to calculate your compensation rate.

**3. Marital Status** At the time of the injury the employee was ☐ Single  ☑ Married
☐ Spouse works   ☑ Spouse does not work   Spouse's name  Kenyon Robertson

| 4. Number of Federal Exemptions | 5 | Enter the maximum number of Federal Exemptions you are allowed to claim for Federal income tax. Include yourself, your spouse, your dependents, and any other exemptions. |
| --- | --- | --- |

**5. Dependents**

A dependent for workers' compensation includes children you support who are:
- Under age 18, or age 18 to 23 and a full time student
- Mentally or physically incapacitated from earning at any age

| Dependent's Name | Date of Birth | Relationship | Full time student? |
| --- | --- | --- | --- |
| Sidney Robertson | 4-14-97 | Daughter | ☑ Yes ☐ No |
| Dereek Robertson | 6-6-11 | Daughter | ☐ Yes ☑ No |
| Briana Robertson | 8-20-97 | Daughter | ☑ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |

| Employee's Signature  Mickeda Barnes | Date  Nov 5 2017 |
| --- | --- |

DWC-04(7/12)

# INITIAL INJURY REPORT

## EMPLOYEE REPORT

Lost Name: *Barnes*    First Name: *Mulieda*    MI: *S*    Date of Birth: *1/31/75*    Age: *3*

Full Address (No. & Street): *31 Dunbar Ave*    City: *Rumford*    State: *R.I.*    Zip Code: *02916*

Social Security No: *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*    Sex: [ ] M [✓] F    Phone Number: ( *401* ) *419-225*

Department: _____    Division: _____    B/C ID No.: _____

Location of incident: *95 South Highway*

Date of Incident: *Nov 5, 2014*    Time of incident: *4:58*    [ ] am [✓] pm

Did you receive this injury while working for RIPTA? [✓] Yes [ ] No

Specific area where incident occured: *95 South Highway*

Describe and illustrate (at right) your injury: *Right Knee top and Right Side.*

Describe the incident:
*95 South Highway Went over bumper Pot Hole and Fare Box came Fell and shook 3 to 4 times (check Camera)*

Name of witness to incident (print): _____

Employee Signature: *Mulieda Barnes*    Date: *Nov 5, 2014*

### Indicate on these figures the affected body parts:



Dominant hand: [ ] Left [ ] Right

## SUPERVISOR INITIAL REPORT

Supervisor Name: _____

Was there a specific incident/accident? [ ] Yes [ ] No [ ] Unknown    Did you witness the incident/accident? [ ] Yes [ ] No

Give a step by step description of what you understand to have happened

Substance/object directly causing injury

Was employee sent to hospital or physician? [ ] Yes    Date / /    [ ] No

Name/Address

Did employee return to work same day? [ ] Yes [ ] No    Was injury lost time? [ ] Yes [ ] No    if yes, date lost time began / /

Sent home remainder of shift? [ ] Yes [ ] No    Light Duty Available? [ ] Yes [ ] No

Signature _____    Supervisor's Signature _____

**The Beacon** Mutual Insurance Co.

# RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## EMPLOYEE INJURY REPORT

NAME _Michleda Barnes_     DATE _Feb 12, 2015_

ADDRESS _34 Dunbar Ave_

CITY _Rumford_

STATE _RI_     ZIP _02916_

PHONE NUMBER _401-019-2250_

SOCIAL SECURITY # _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_

PAYROLL NUMBER _5282_

CIRCLE ONE     MALE     (FEMALE)

DATE OF HIRE _Nov 20, 2002_

OCCUPATION _City Bus Driver_

CIRCLE DAYS OFF     M T W T F (S)(S)

AGE _40_     DATE OF BIRTH _1-31-75_

LOCATION WHERE INJURY OCCURRED _Kmart / Brewery Parkade_

DATE OF INJURY _Feb 12, 2015_

TIME OF INJURY _8:47 Esti_ (AM) PM     BUS # _0915_

TIME WORKDAY BEGAN _5:29_ (AM) PM

FIRST FULL DAY LOST FROM WORK _____

HAS EMPLOYEE RETURNED TO WORK _____ Y     N

DATE RETURNED TO WORK _____

SUPERVISOR IN CHARGE _____

WITNESS TO INJURY _____

HOSPITAL OR TREATING FACILITY _Kent County_

ADDRESS _____

PHYSICIAN'S NAME _____

DESCRIBE HOW THE INJURY OCCURRED _Parked Bus Cross Street_
_IN Median Slipped and fell on Ground Ice Snow_
_two people help me get up Went to bathroom_
_IN Stop&Shop also called John toohey._

DESCRIBE INJURY AND PARTS OF BODY AFFECTED _left Wrist Rt Knee_
_Lower back  Bruise on left Wrist_

FOREMAN/SUPERVISOR SIGNATURE _____

EMPLOYEE SIGNATURE _Michleda Barnes Feb 12, 2015_     /     DATE

Revised 9/1/10

INITIAL INJURY REPORT

**EMPLOYEE REPORT**

Last Name Baines First Name Mhelleda MI — Date of Birth 1/31/75 Age 40

Full Address (No. & street) 34 Dunbar City Rumford State RI Zip Code 02916

Social Security No. 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 Sex ☐ M ☑ F Phone Number (401) 419-2250

Department ___ Division ___ B/C ID No. ___

Location of incident Brewary Parkade

Date of Incident 2/12/15 Time of Incident 8:47 estimate ☑ am ☐ pm

Did you receive this injury while working for RIPTA? ☑ Yes ☐ No

Specific area where incident occured Median in Parkade Crossing street to use restroom

Describe and illustrate (at right) your injury ___

Describe the incident Went to use Restroom cross Median Slipped and fell on Ground Ice Snow 2 people help me get

Name of witness to incident (print) ___

Employee Signature Mhelleda Baines Date Feb 12, 2015

**Indicate on these figures the affected body parts:**

R L L R

Dominant hand: ☐ Left ☑ Right

**SUPERVISOR INITIAL REPORT**

Supervisor Name ___

Was there a specific incident/accident? ☐ Yes ☐ No ☐ Unknown   Did you witness the incident/accident? ☐ Yes ☐ No

Give a step by step description of what you understand to have happened ___

Substance/object directly causing injury ___

Was employee sent to hospital or physician? ☐ Yes Date / /   ☐ No

Name/Address ___

Did employee return to work same day? ☐ Yes ☐ No   Was injury lost time? ☐ Yes ☐ No   If yes, date lost time began / /

Sent home remainder of shift? ☐ Yes ☐ No   Light Duty Available? ☐ Yes ☐ No

Supervisor's Signature ___

The Beacon Mutual Insurance Co.

Name: MCKEDA BARNES

Payroll Number: 5282

| Date | Case # | C-c | Car | Truck | Bike | Ped | OnBd | Bdg. | Lvg. | Mls | Location/Place | Veh. # | BI | Code | Time | Safety Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/14/03 | 07-55 | 0 | | | | | | | | X | Branch Avenue Providence | 9914 | N | C090 | 9:45 | BO turned AC on & something flew out into her eye. |
| 02/18/04 | 02-97 | 0 | | | | | | | | X | Providence | NA | N | C091 | 16:05 | BO alleges she fell in hole in lot & injured ankle. |
| 10/24/04 | 10-101 | 0 | | | | | | | | X | RIPTA, Ride Lot Providence | 46 | N | C090 | 16:15 | Injured ankle. |
| 06/20/06 | 06-82 | 0 | | | | | | | | X | Shaw's Lot East Providence | 31 | N | C090 | 16:48 | Injured arm turning corner. |
| 11/09/06 | 11-46 | 0 | | | | | | | | X | L'Stop, Kennedy Plaza | 537 | N | C090 | | Injured knee when banged it o steering column. |
| 02/05/07 | 02-20 | 0 | | | | | | | | X | Benefit & Thurber Pawtucket | | N | C090 | 11:45 | Claims injury to arm when banged it on fare box. |
| 01/02/08 | 01-17 | 0 | | | | X | | | | X | Stop & Shop, Manton Ave. Providence | 9236 | N | C090 | 10:05 | Claims injury to shoulder, neck from faulty steering. |
| 04/18/08 | 04-74 | 0 | | | | X | | | | X | Eddy St. Providence | 462 | N | C090 | 15:30 | Pass. spit blood in BO face. Seen at RI |
| 07/26/08 | 07-99 | 0 | | | | | | | | X | Kennedy Plaza Providence | 125 | N | C090 | 17:20 | Claims injury to mouth/teeth from PA striking mouth. |
| 10/05/08 | 10-33 | 1 | | | | X | | | | X | Kennedy Plaza Providence | 472 | N | C090 | 18:20 | Claims injury to neck/shoulder from steering wheel. 11:01 Claims injury to head, neck, cheek and chin from above. |

8-2016 foot contusion Don't know Date,

8-3-12
9-5-12
6-24-13
11-5-14

11-21-14

Oct 3-2013,
Feb 12-2015

Page 6

## Workers Compensation Claims That I had at Ripta

1. 07-14-03    Foreign object flew out of AC System and hit me in the eye
(Got Paid Weekly Until Healed)  Bus # 9914  9:45am

2. 02-18-04    I fell in hole in Bus Parking Lot and injured Ankle.
(Got Paid Weekly until Healed)  16:05 pm

3. 10-24-04    Injured arm turning Corner Bus# 46
16:15 pm

4. 06-20-06    Injured Knee when banged it on Steering Column  16:48pm  bus 31

5. 11-09-06    Injury to arm when banged it on Fare box   11:45am  bus 537

6. 02-05-07    Injured to Shoulder Neck and arm from faulty Steering Column broke
10:05am   Bus 9236

7. 01/02/08    Passenger Spit blood in my Eye
15:30 pm  bus 462

8. 04/18/08    Injured three teeth and busted lip/mouth
Manager was    from a microphone that fell/broke it
on the bus when   Was held up with two Elastics
it happen.    17:20 BUS 125

Page 6

## Workers Compensations Claims at Ripta Page ②

⑨  07-26-08    Injured to Neck Shoulder Arm
                from Steering Wheel. 18:20 pm
                Bus 119

⑩  10-05-08    Injured head neck Cheek Chin
                from two passagers attacked
                Me.
                11:01 Am  Bus 472

⑪  07-29-10    Injured Toe Contusion
                500 lb woman's wheel chair
                Caught on my Right toe
   → Pregnant with Doreen     Happen in Woonsocket.
     worked all 9 months no
     Injuries

⑫  08-03-12    Slammed hand in Steering wheel
                When hit a big Pot hole on Eddy
                Street  7:46 Am  Bus 0914

⑬  09-05-12    Slipped and fell down stairs
                On Bus 0123 - 12:30 pm

⑭  06-24-2013  Wheel chair moved back on my
                Right toe  4:45pm
                Bus 915

⑮  10-03-2013  Control panal fell on my Knee
                and Injured Right Knee
                8:30 Am  Bus 1332

Page 7

## Worker's Compensation Claims at Ripta    Page ③

(16)  11-05-14    Bus hit pothole on Highway Going to Wesley and fare Box panel fell and hit my Right Knee And Shook 3 to 4 times from impact. Bus 1332  4:48 pm

(17)  11-21-14    Came into Contact with Vomit in back of bus and got Very sick had to use my Eppie Pen. I am allergic to Vomit & Fish Bus 925  5:10 am

(18)  02-12-15    Slipped and fell in median Injured ® Knee ① arm/wrist Low back ® Shoulder ① arm/wrist

# LAW OFFICE OF STEPHEN J. DENNIS
*A Professional Legal Corporation*

Stephen J. Dennis *

Howard L. Feldman †

August 14, 2015

127 Dorrance Street,
3rd Floor, Suite 7A
Providence, RI 02903
Tel: (401) 453-1355
1-888-634-1543
Fax: (401) 453-6670

\* Also admitted in DC
† Also admitted in MA

Medical Advisory Board
Attn: John McBurney IV
One Dorrance Plaza
Providence, RI 02903

| | |
|---|---|
| Employee: | **Mickeda S. Barnes** |
| Employer: | **Rhode Island Public Transit Authority** |
| DOI: | **10/3/2013** |
| DOB: | **1/31/1975** |
| SS#: | **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** |

Dear Mr. McBurney:

Please provide me with any and all Affidavits from any and all medical providers, which have been filed in accordance with R.I.G.L. 28-33-8 for the above referenced person.

Thank you for your anticipated cooperation in this matter.  If you should have any questions or comments, please do not hesitate to contact me.

Sincerely,

**LAW OFFICE OF STEPHEN J. DENNIS**

Stephen J. Dennis, Esq.

SJD/pmk
Enclosure
cc: Mickeda S. Barnes

RECEIVED
2015 AUG 14 P 1:51
WORKERS' COMPENSATION COURT

STATE OF RHODE ISLAND  AND PROVIDENCE PLANTATIONS

Workers' Compensation Court
Medical Advisory Board
Garrahy Judicial Complex

One Dorrance Plaza
Providence, Rhode Island 02903
(401) 458-3460

AUG 24 2015

## **Memorandum**

To:     Stephen J. Dennis, Esquire
From: Ofc. of John McBurney, IV, Administrator, Medical Advisory Board
Date:   8\20\15
Re:     Requested Affidavits


With regard to your attached request(s), an alphabetical review of our active files revealed Affidavit(s) of Health Care Professionals and/or Affidavit(s) of Physicians for the within-referenced employee(s), copy(ies) of which is/are enclosed herewith.

A copy of your request(s) and signed authorization(s) is/are also enclosed.


JMG
Enclosure(s)

## AFFIDAVIT OF PHYSICIAN PER SECTION 28-33-8(c) OF THE
## RHODE ISLAND WORKERS' COMPENSATION ACT

State of Rhode Island
Workers' Compensation Court
Medical Advisory Board
One Dorrance Plaza, Providence, RI 02903
Phone: 401-458-3460
TDD: 401-458-5275

☐ SIX (6)    ☐ EIGHTEEN (18)    ☒ THIRTY (30)    RECEIVED

14 MAR -4 PM 2:31

WCC/MEDICAL
ADVISORY BOARD

**EMPLOYEE INFORMATION:**
Social Security No.: 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
Name: Mickeda Barnes
Address: 34 Dunbar Ave
City: Rumford  State: RI  Zip: 02916
Phone: 401-419-2250  Date of Birth: 1/31/75

**EMPLOYER INFORMATION:**
Name: RI PTA
Address:
City:  State:  Zip:
Phone:

IF THE IDENTITY OF THE INSURER IS UNKNOWN, CONTACT THE DIVISION OF WORKERS' COMPENSATION AT (401) 462-8116 FOR THE INFORMATION.

**INSURANCE CARRIER:**
Name: Beacon Mutual
Address: One Beacon Ct
City: Warwick  State: RI  Zip: 02886
Phone: 401-825-2667

**ADJUSTING COMPANY:**
Name:
Address:
City:  State:  Zip:
Phone:

**EMPLOYEE'S INJURY INFORMATION:**
Injury Date: 10/3/13       Incapacity Date:

SECTION 28-33-8(b) OF THE RHODE ISLAND WORKERS' COMPENSATION ACT PROVIDES FOR A $20.00 FEE TO BE CHARGED FOR THE TIMELY FILING OF THIS FORM WITHIN ONE WEEK OF THE DUE DATE.

1. Current and anticipated further treatment, including type, frequency, and duration of treatment(s) is as follows: (If none, so state.)
Medicating P.T.

2. The employee's anticipated date of discharge is as follows: (If the employee has already been discharged, so state.) 2-3-14

3. Can the employee return to his or her former position of employment? (Yes) or No

4. (a) If the employee cannot return to his or her former position of employment, is the employee capable of work other than his or her former position of employment: Yes or (No)
(b) The employee's work restrictions/capabilities are as follows:
☐ no operating heavy machinery or vehicles
☐ no climbing ladders or stairs
☐ may lift up to ____ lbs. only
☐ no reaching above shoulders
☐ no repetitive twisting, bending
☐ no repetitive stooping, kneeling, squatting
☐ no push/pull ____ lbs.
☐ alternate standing/sitting
☐ no work involving use of right/left
☐ sit down work only
☐ keep wound clean and dry
☐ other:

5. Has the employee reached maximum medical improvement? Yes or (No)

Physician's Signature: _____ Lic. #: RI 446  Date: 2/25/14
Physician's Name: Dr. Michael Souza  Title: JD
Phys. Asst. Sig.: _____ Supervising Phys. Name: _____
Name of Facility: MCS, Inc.  Facility Address: 2761 Pawtucket Ave, E.P. RI, 02914

Subscribed and sworn to before me by the above-named physician this 25 day of February 2014

_____
Notary Public
My Commission Expires: 2/14/16

MAB01 – 03/09 ORIGINAL, SIGNED AND NOTARIZED – MEDICAL ADVISORY BOARD, COPY TO INSURER/SELF-INSURED EMPLOYER, COPY TO PHYSICIAN'S FILE, COPY TO EMPLOYEE AND HIS/HER ATTORNEY
6/2010

Page 768

Date: 03/27/2015 - Claim Number 838725

☐ PLEASE CHECK IF CORRECTION OF PRIOR REPORT

**State of Rhode Island**
**MEMORANDUM OF AGREEMENT**

Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942   Phone (401) 462-8100   TDD (401) 462-8006

DWC No. _____

Insurer File No. RP-1502-0004L

| 1. EMPLOYEE: | | | | 2. EMPLOYER: | | | |
|---|---|---|---|---|---|---|---|
| SSN | 038408332 | | | FEIN | 050311968 | | |
| Name | MICKEDA BARNES | | | Name | RI Public Transit Authority (RIPTA) | | |
| Address | 34 Dunbar Avenue | | | Address | 705 Elmwood Avenue | | |
| Address | | | | Address | | | |
| City,State,Zip | Rumford | RI | 02916 | City,State,Zip | Providence | RI | 02907 |
| Phone | (401) 419-2250 | Date of Birth | 01/31/1975 | Phone | (401) 784-9500 | Ext. | |

| 3. INSURANCE COMPANY NAMED ON WC POLICY: | | 4. CLAIM ADMINISTRATOR: | | ☐ SAME AS BLOCK 3 |
|---|---|---|---|---|
| FEIN | | FEIN | 050222530 | |
| Name | Self-Insured | Name | Claim Strategies | |
| Address | | Address | P.O. Box 549 | |
| Address | | Address | | |
| City,State,Zip | | City,State,Zip | Providence  RI  02901-0549 | |
| Phone | Ext. | Phone | (401) 435-2800  Ext. | |
| RI License Number | | RI License or Self-Insurance Number | | |

| Injury Date: | 02/12/2015 | List injured body parts and nature of injury: |
|---|---|---|
| First date of first disability: | 02/13/2015 | Left wrist bruise/contusion. |
| Place where injury occured: | Cranston, RI | |

**5. DISABILITY TYPE:** (check all that apply)

☐ Temporary Total as of _____

☒ Temporary Partial as of 02-13-2015

**6. RATE INFORMATION:**   ☐ Single   ☒ Married

AWW Including Overtime    1322.77

Spendable Base Wage    1094.60

Base Compensation Rate    820.95

☐ Death Benefits/Date of Death

Payable to: _____

☐ Permanent Total as of _____

Number of Exemptions    5

AWW (include bonus/no OT)    1090.65

Average Overtime Amount    232.12

Number of Dependents    3

Weekly Dependency Rate _____

Total Weekly Rate _____

**7. DATE OF INITIAL PAYMENT UNDER MOA:**    03/20/2015

| Does employee have other employers? | ☐ Yes ☒ No | If yes, attach a wage statement from each employer. |
|---|---|---|
| Is this a recurrence of a previous injury ? | ☐ Yes ☒ No | Previous disability end date: |
| Has the employee worked at least 26 weeks prior to this recurrence ? | ☐ Yes ☐ No | If yes, a new wage statement is required. |

Signature: _____    Date: 03/20/2015

Print Name: John Travers    RI Adjuster License Number: 1048506    Phone & Extension: 435-2800  1393

**NOTICE TO EMPLOYEES RECEIVING WORKERS' COMPENSATION BENEFITS:**

YOU MUST REPORT ANY EARNINGS you receive to the Claim Administrator that pays your benefits. Failure to report earnings may subject you to civil or criminal liability. Your endorsement on a benefit check is your statement that you are qualified to receive workers' compensation benefits. You are NOT entitled to receive workers' compensation benefits for any time that you are imprisoned as a result of a criminal conviction.

**ATTACH WAGE STATEMENT(S) AND DEPENDENCY FORM**

DWC-02 (01/03)    For instructions visit our web site:    www.dlt.ri.gov/wc

On October 3, 2013 Ms. Barnes was driving a bus when the fare box panel fell and struck her right knee. Ms. Barnes developed right knee pain. Ms. Barnes came under the care of Dr. Michael Feldman. On January 14, 2014 Dr. Feldman performed arthroscopic right knee surgery on Ms. Barnes.

Ms. Barnes continued to experience right knee pain. She underwent a fitness for duty evaluation. Ms. Barnes was referred to Dr. Keith Monchik for a second opinion regarding her right knee. Dr. Monchik diagnosed Ms. Barnes with a chronic regional pain syndrome. Dr. Monchik referred Ms. Barnes to pain management.

Dr. Stuart Schneiderman, a pain management specialist, evaluated Ms. Barnes. Dr. Schneiderman prescribed Gabapentin and a compound cream to address Ms. Barnes' right knee pain. Ms. Barnes returned to work as a bus driver in July of 2014.

On November 5, 2014 Ms. Barnes was operating a bus on 95 south when the bus hit a pothole. The impact caused the fare box panel to fall and strike her right knee. Ms. Barnes describes experiencing a dramatic increase in her right knee pain. Ms. Barnes reported the injury and she continued to work. Ms. Barnes indicates that she required higher doses of her pain medications after the work injury.

On February 12, 2015 Ms. Barnes was driving her assigned route. Ms. Barnes stopped to make a rest stop. Ms. Barnes slipped and fell on the ice and snow after she exited the bus. She describes falling backwards on to her left arm and back. Ms. Barnes was taken by ambulance to Kent Hospital. Ms. Barnes was complaining of left wrist, right knee and low back pain. Ms. Barnes was evaluated, treated and released. The following day she began to experience pain in the right shoulder, arm and wrist.

Dr. Michael Souza, a primary care physician, evaluated and treated Ms. Barnes's injuries. Dr. Souza treated the left wrist, low back, right knee, right shoulder and right wrist with pain medications. Ms. Barnes was experiencing significant pain and numbness of the left wrist and hand. Dr. Souza referred Ms. Barns to Dr. Peter Pizzarello, an orthopedic surgeon.

On April 2, 2015 Dr. William Golini, a neurologist, evaluated Ms. Barnes. Dr. Golini reviewed the work injury. He noted that Ms. Barnes had injured her right shoulder, low back and left upper extremity. Ms. Barnes was complaining of numbness and paresthesia's in the left hand. An EMG/NCS demonstrated moderate to severe left carpal tunnel syndrome.

On May 6, 2015 Dr. Pizzarello performed a left carpal tunnel release surgery. Ms. Barnes initially did well after the surgery. Ms. Barnes underwent hand therapy. She reports that she developed increased left hand pain when the therapy stopped.

Ms. Barnes tells that during this time she continued to experience low back pain, right shoulder and right wrist pain and right knee pain. Ms. Barnes did not receive any treatment for these

injuries. Dr. Souza did clear Ms. Barnes to return to work with significant restrictions. Ms. Barnes indicates that she was not offered any work by RIPTA.

On August 6, 2015 Dr. Souza evaluated Ms. Barnes. Dr. Souza noted that Ms. Barnes was experiencing pain and numbness in the right wrist and hand.

On August 17, 2015 Dr. Pizzarello evaluated Ms. Barnes. Dr. Pizzarello noted that Ms. Barnes' left hand and wrist pain and numbness had increased when hand therapy was discontinued. Dr. Pizzarello observed that Ms. Barnes was having difficulty with her right wrist and hand. On examination Dr. Pizzarello noted that there was decreased sensation in the median nerve distributions of both the right and left hands. Pizzarello noted that there were carpal tunnel symptoms in the right hand.  Dr. Pizzarello also noted that Ms. Barnes had a low back strain. Dr. Pizzarello ordered additional therapy.

**Past Medical History**

Ms. Barnes reports being in good general health.
Ms. Barnes does give a history of prior minor injuries to her low back. She indicates that these injuries resolved and she did not experience ongoing pain. Ms. Barnes reports no history of prior injury or difficulty with her left wrist, right wrist, shoulders or right knee.

**Medications**    Gabapentin
Celebrex

**Current Complaints**

Ms. Barnes today complains left wrist pain radiating to the elbow. She complains of pain at the surgical incision. She complains of numbness in the fingers and pain in the left thumb.
Ms. Barnes complains of right wrist and hand pain. She complains of numbness in the ring and long fingers. She complains of diffuse pain in both right and left shoulders. Ms. Barnes complains of right knee pain. The pain is located in the front of the knee. She describes hypersensitive pain to light touch. Ms. Barnes complains of low back pain. She describes pain radiating into the right leg.

Ms. Barnes describes significant limitations in her abilities to perform routine daily activities at home. She describes difficulties with using her hand for opening jars, driving and lifting. She reports difficulty with bending and lifting because of her low back pain. She is unable to kneel on her right knee. She describes pain even with the touch of cloths against the skin.
Ms. Barnes indicates that she has not worked since the February 12, 2015 work injury.

**Physical Examination**

Ms. Barnes is healthy appearing well developed well-nourished middle aged woman sitting comfortably in the examination room. Examination of the cervical spine: There is no deformity

or evidence of torticollis. Cervical range of motion is full in flexion, extension, rotation and lateral bending.  Cervical motion does not produce any radicular signs. The neurologic exam in the upper extremities reveals normal motor strength in all major muscle groups. There are paresthesia's in the median and ulnar distributions of both right and left hands.

Examination of the Right and Left Shoulders: Both shoulders sit at the same height. There is no deformity or atrophy. There is no tenderness to palpation. Range of motion is full in both shoulders. The rotator cuffs are intact and there is no evidence of instability.

Examination of the Left Wrist and Hand: There is a well healed surgical incision in the palm consistent with carpal tunnel surgery. The incision is approximately 3 to 4 cm in length. There is tenderness to palpation over the incision and carpal tunnel. There is tenderness to palpation over the thenar and hypothenar eminences. There is a positive tinel's sign just proximal to the carpal tunnel in the distal forearm. Range of motion of the wrist is full in flexion, extension, radial and ulnar deviation. There is full range of motion of digits of the hand. Grip strength is decreased. There are paresthesia's in all the digits.

Examination of the Right Wrist and Hand: There is tenderness over the carpal tunnel. There is a negative tinel's sign. There is full range of motion in flexion, extension, radial and ulnar deviation. Grip strength is decreased secondary to pain. There are paresthesia's in the long and ring finger.

Examination of the Right Knee: There is no deformity. The knee is in neutral alignment. There are well-healed surgical incisions consistent with arthroscopic surgery. There is some mild atrophy of the quadriceps muscle. There is generalized edema present about the knee.  There is no significant effusion present. There is tenderness to light touch about the patella. Range of motion: 0 to 125 degrees. The knee is stable to varus/valgus stress. Anterior drawer and Lachman are negative. There is no meniscal irritability present.

Examination of the Lumbar Spine: There is no deformity. She is able to stand fully upright. The shoulders and pelvis are level. There is some tenderness to palpation over the lower paraspinal muscles. Range of motion is full with pain at the endpoints. The neurologic examination is the lower extremities is normal.

**Diagnosis**

1. Right Knee Contusion
2. Right Knee Internal derangement, s/p Knee Arthroscopy
3. Chronic Regional Pain Syndrome Right Knee (RSD)
4. Left Carpal Tunnel Syndrome, s/p Carpal Tunnel Release
5. Right Carpal Tunnel Syndrome
6. Contusion / Sprain Right and Left Shoulders
7. Lumbar Sprain/Strain

## Discussion

Ms. Barnes has suffered repeated injuries to her right knee. The right knee was first injured on October 3, 2013. Ms. Barnes required arthroscopic surgery as a result of this injury. Ms. Barnes developed a chronic regional pain syndrome of the right knee as a result of the right knee surgery. The right knee was injured again from separate injury events occurring on November 5, 2014 and February 12, 2015. It is my opinion to a regional degree of medical certainty that the work injuries of November 5, 2014 and February 12, 2015 resulted in contusions of the right knee and a significant aggravation of the original work injury of October 3, 2013 which had never resolved.

On February 12, 2015 Ms. Barnes experienced a significant injury at work. This produced injuries to the right and left shoulders, both wrists and hands, and the low back. Ms. Barnes did obtain immediate medical attention. Ms. Barnes denies any significant preexisting conditions. Ms. Barnes' treating orthopedic surgeon and a hand specialist both observed that Ms. Barnes had likely developed carpal tunnel syndrome as a result of her work. The injury event of February 12, 2015 aggravated this condition resulting in the need for treatment. It is my opinion to a reasonable degree of medical certainty that the diagnoses of left carpal tunnel syndrome, right carpal tunnel syndrome, right and left shoulder contusion/sprain and lumbar sprain/strain are a direct result of the reported work injury of February 12, 2015.

The examination today demonstrates objective findings of carpal tunnel syndrome in both right and left wrists and hands. There is decreased sensation and paresthesia's in both hands. The left hand demonstrates a positive Tinel's sign in the distal forearm. This is suggestive of restriction of the median nerve proximal to the carpal tunnel. There is a chronic regional pain syndrome of the right knee. Ms. Barnes describes significant functional limitations involving both upper extremities and her right knee. Ms. Barnes has not been able to return to work.

It is my opinion to a reasonable degree of medical certainty that Ms. Barnes would benefit from further evaluation and treatment of the injuries to the left and right wrist and hands. A repeat EMG/NCS of the left upper extremity and an initial study of the right upper extremity is indicated. Ms. Barnes would benefit from additional physical therapy to the hands and for the shoulders. A course of physical therapy to address the lumbar sprain/strain is indicated. Ms. Barnes has a chronic pain condition of the right knee. She requires ongoing treatment, specifically pain management. This treatment is palliative in nature. It is my opinion to a reasonable degree of medical certainty that the need for additional treatment is a direct result of the November 5, 2014 and February 12, 2015 work injuries.

Ms. Barnes at the present time remains unable to work. It is my opinion to a reasonable degree of medical certainty that this ongoing disability is a direct result of the November 5, 2014 and February 12, 2015 work injuries

Thank you for the opportunity to examine Ms. Barnes. If I can be of any further assistance please do not hesitate to contact me.

I certify and affirm that the foregoing report is true to the best of my knowledge under the penalties of perjury.

Sincerely

Richard C. Anderson, M.D.

## AFFIDAVIT OF HEALTHCARE PROFESSIONAL PER SECTION 28-33-8(c) OF THE RHODE ISLAND WORKERS' COMPENSATION ACT

State of Rhode Island
Workers' Compensation Court
Medical Advisory Board
One Dorrance Plaza, Providence, RI 02903
Phone: 401-458-3460
TDD: 401-458-5275

☐ SIX (6)    ☐ EIGHTEEN (18)    ☑ THIRTY (30)    ☐ OTHER

**EMPLOYEE INFORMATION:**

Social Security No.: 

Name: Mickeda Barnes

Address: 34 Dunbar Avenue

City: Rumford  State: RI  Zip: 02916

Phone: 401-419-2250  Date of Birth: 1/31/75

**EMPLOYER INFORMATION:**

Name: RIPTA

Address: 705 Elmwood Ave

City: Providence  State: RI  Zip: 02907

Phone:

IF THE IDENTITY OF THE INSURER IS UNKNOWN, CONTACT THE DIVISION OF WORKERS' COMPENSATION AT (401) 462-8116 FOR THE INFORMATION.

**INSURANCE CARRIER:**

Name: Claims Strategies

Address: PO Box 549

City: Providence  State: RI  Zip: 02901

Phone: 401-435-2800

**ADJUSTING COMPANY:**

Name:

Address:

City:  State:  Zip:

Phone:

**EMPLOYEE'S INJURY INFORMATION:**

Injury Date: 2/12/15    Incapacity Date:

SECTION 28-33-8(b) OF THE RHODE ISLAND WORKERS' COMPENSATION ACT PROVIDES FOR A $20.00 FEE TO BE CHARGED FOR THE TIMELY FILING OF THIS FORM WITHIN ONE WEEK OF THE DUE DATE.

1. Current and anticipated further treatment including number of visits, frequency of visits, and type of treatment (including modalities) is as follows: (If none, so state.) PT can benefit from PT 2x/week tapering to 1x/wk for 4 wks (6 visits total) including modalities PRN Manual Therapy, Gait +sive mobility, & PRE for strengthening & endurance.

2. The employee's work restrictions/capabilities are as follows:

☐ no operating heavy machinery or vehicles
☐ no climbing ladders or stairs
☑ may lift up to 40 lbs. only
☐ no reaching above shoulders
☐ no repetitive twisting, bending
☐ no repetitive stooping, kneeling, squatting

☐ no push/pull _____ lbs.
☐ alternate standing/sitting
☐ no work involving use of right/left
☐ sit down work only
☐ keep wound clean and dry
☑ other consecutive work hours limited to 5 hours at a time

Healthcare Professional Signature: GDD m  Lic. #: PT02034  Date: 7/31/15

Healthcare Professional Name: Greg Doucette MPT, OCS  Title: Physical Therapist

Name of Facility: Performance Physical Therapy  Facility Address: 400 Massasoit Ave Suite 203

Subscribed and sworn to before me by the above-named healthcare professional this 31st day of July, 2015.

Notary Public: Dawn M Daniels

Dawn M Daniels

My Commission Expires: 12.30.2017

ID#5768

MAB01 – 03/09 ORIGINAL, SIGNED AND NOTARIZED – MEDICAL ADVISORY BOARD, COPY TO INSURER/SELF-INSURED EMPLOYER
COPY TO PHYSICIAN'S FILE, COPY TO EMPLOYEE AND HIS/HER ATTORNEY

6/2010



400 Massasoit Ave, Suite 203
East Providence, RI 02914
Ph: 401-270-8770

| | |
|---|---|
| Patient: | Mickeda Barnes |
| Date of Birth: | 01/31/1975 |
| Visit Date: | 07/01/2015 |
| Physical Therapist: | Lance Howard PTA, CPT |
| Physician: | Peter A. Pizzarello MD |

## Patient Encounter

**Subjective**
Pt reports that she feels she is making progress but has some intermittant discomfort.

**Assessment**
- Carpal tunnel syndrome

The progression in the therapeutic exercise and activity noted on the flow sheet demonstrates the ongoing progress, medical necessity and therefore justification for ongoing intervention.

**Therapy**
- Therapeutic exercise: 1 units;  See flow sheet for details.
- Heat applied for 10 min, therapeutic ultrasound intensity 1.0 watts/cm2, pulsed at 3 Mhz, for 8 min, therapeutic ultrasound L carpal tunnel incision, and Ice applied for 10 minutes at conclusion of treatment.
- Manual Therapy: 1 units STM and Manual Therapy: 1 units STM thenar and hypothenar eminance; Gentle scare massage aliong incision.

**Plan**
PLAN [Use for s.o.a.p. note free text].

**Lance Howard PTA, CPT**
**Electronically signed by: Lance Howard    Date: 07/02/2015 11:08**



400 Massasoit Ave, Suite 203
East Providence, RI 02914
Ph: 401-270-8770

**Patient:** Mickeda Barnes
**Date of Birth:** 01/31/1975
**Visit Date:** 06/29/2015
**Physical Therapist:** Lance Howard PTA, CPT
**Physician:** Peter A. Pizzarello MD

------------------------------------------------

### Patient Encounter

**Subjective**
Pt reports that she is having some discomfort along her hypothenar eminance with activity.

**Assessment**
Pt Rx was progressed today with added exercises and fine motor skill activity.

**Therapy**
- Therapeutic exercise: 1 units;  See flow sheet for details.
- Heat applied for 10 min, therapeutic ultrasound intensity 1.0 watts/cm2, pulsed at 3 Mhz, for 8 min, therapeutic ultrasound L carpal tunnel incision, and Ice applied for 10 minutes at conclusion of treatment.
- Manual Therapy: 1 units STM thenar and hypothenar eminance; Gentle scare massage aliong incision.

**Plan**
Progress Rx as per protocol.

**Lance Howard PTA, CPT**
**Electronically signed by: Lance Howard     Date: 07/02/2015 10:58**

*Care at its Best!*
**www.performanceptri.com**
Page 777

RECEIVED  08/06/2015 10:01  11034536670    LAW

Aug. 6. 2015  8:51AM    DR M SOUZA    No. 5121    P. 2

**Dr. Michael Souza**
2761 Pawtucket Avenue
East Providence, RI 02914
Tel: 401-434-3950 • Fax: 401-434-5230

TO:    **Attorney/Insurance Carrier**    RE:  Medical Lien
name  ~Claims Strategies~ Stephen          Payment Authorization
address  187 Urrance St      Dennis
       Prov RI                Patient: _Mekeda Barnes_
phone  401-453-1855           SS#: _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_
       453-0670

Authorization for payment of medical expenses, preparation of medical reports, and notice to attorney and/or insurance carrier of medical lien.

~ With respect to the injuries suffered by me as a result of an accident on _Feb 19, 15_ of any claim asserted in connection with those injuries, all charges rendered by Dr. Michael Souza for medical services rendered up to the time of settlement or other disposition of such claim.

~ I acknowledge that the foregoing authorization in no way releases me from personal responsibility to pay all such medical charges.

~ Insurance proceeds from any source, including but not limited to health insurance, disability insurance, motor vehicle/liability insurance, medical benefits, PIP, and/or uninsured insurance maybe used toward payment of the sums due to Dr. Souza.

~ I hereby authorize Dr. Souza to furnish the attorney/insurance carrier designated herein with all reports and information which may be requested in connection with the presentation of such claim and to perform such services, including court appearances, as my attorney shall request.

~ I understand that if I am not successful with my claim, Dr. Souza shall be notified immediately, and that payment in full shall be due immediately. If within 6 months my claim is not settled, Dr. Souza reserves the right to be paid in full for all services rendered. I instruct my attorney/insurance carrier to keep Dr. Souza informed of the full status of my case in controversy.

~ I instruct my attorney/insurance carrier, agent, similar employee, or third party coverage that said lien shall be fully satisfied before I receive any monies and that this instruction may not be revoked without first obtaining a release in writing from Dr. Souza.

~ A patient who fails to pay agrees to be financially liable to pay Dr. Souza's fees, which may include but not limited to returned check fees, collection fees, court fees, attorney's fees, fees to assist in locating you, and interest.

~ Payment is expected at time of service, otherwise a billing fee of $15.00 will be added. Payment over 60 days are subject to a 1.5% monthly (18% yearly) interest charge.

Date: _Aug 6th 2015_    Patient's Signature: _Mekeda Barnes_
Parent or Guardian (under 18): _____    _____

**Attorney's Acknowledgement**
Please complete and return immediately.

The undersigned being attorney of record for the above referenced patient does hereby agree to observe all terms of the above and agrees to withhold such from any settlement, judgment, or verdict as may be necessary to adequately protect Dr. Souza.

Date: _____    _____ Attorney's Signature: _____

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

mickeda S. Barnes
34 Dunbar Avenue
Rumford, RI 02916

9590 9402 3586 7305 5774 91

2. Article Number (Transfer from service label)

8 0360 0000 0435 0078

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from Item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)

- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

## NOTATIONS

### Barnes (Mickeda) v. Rhode Island Public Transit Authority

| DATE | ACTIVITY | HOURS/INITIALS |
|------|----------|----------------|
| 8/24/15 | Client paid in cash $1300.00 for the deposition of Dr. Michael Feldmen | MO' |
| | X *Mickeda S. Barnes* <br> (CLIENT) | |
| | X *[signature]* <br> (WITNESS) | |

.1= 6 minutes_____.2= 12 minutes_____.3= 18 minutes_____.4= 24 minutes_____.5= 30 minutes_____.6= 36 minutes
.7=42 minutes_____.8= 48 minutes_____.9= 54 minutes_____1.0= 1 hour_____1.5=1 ½ hour_____2.0= 2 hours.

## MISCELLANEOUS ACCIDENT REPORT
### WITH PERSONAL INJURY

Dear Mickeda Barnes,                                    File # ~~450-003~~

We were recently informed of an accident regarding a city ~~vehicle~~ *Sidewalk* at which time you were injured.  As part of our investigation, we would appreciate it if you would complete this form and return it to the address listed below.

> Cranston City Clerk
> Room 207
> 869 Park Avenue
> Cranston, RI 02910

1. Date of accident **Feb 12, 2015** Time **8:45 am** Weather conditions **Cold**

2. Location of accident **Garfield St by the bus Stop.**

3. If damage was to done to property advise the extent of damage.  Include any estimates or invoices

   _____

   Name and address of Property owner_____

4. **Personal injury** Name **Mickeda S Barnes** Age **40**

   Address **34 Dunbar Ave**

   Injury **left wrist, right knee, right wrist, low back, shoulder**

   Doctor/Hospital **Kent County Hospital**

5. Was a police report filed? _____ .when _____ where _____

6. Name and address of witness if any

   **Ripta Camera's / Stop & Shop Camera's Lowes or Kmart Camera's**

7. Describe in detail how the incident occurred

   **I dropped off Passagers at the End of the line at the Bus Stop I needed to Use rest Room So I got off the bus the Sidewalks and Street Was full of Snow I proceeded across the Street and Slipped and fell on the Ice and Snow IN medium Sidewalk.**

8. What relief/payment are you seeking? **Lost Wages / Pain and Suffering.**

**Mickeda S Barnes**
Signature

**Sept 29 2015**
Date

# RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## EMPLOYEE INJURY REPORT

NAME _Mickeda Barnes_          DATE _Feb 12, 2015_

ADDRESS _34 Dunbar Ave_        PAYROLL NUMBER _5282_

CITY _Rumford_                 CIRCLE ONE    MALE   (FEMALE)

STATE _RI_   ZIP _02916_       DATE OF HIRE _Nov 26, 2002_

PHONE NUMBER _401-419-2250_    OCCUPATION _City Bus Driver_

SOCIAL SECURITY # _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_   CIRCLE DAYS OFF   M T W T F (S)(S)

                              AGE _40_  DATE OF BIRTH _1-31-75_

LOCATION WHERE INJURY OCCURRED _Kmart / Brewery Parkade_

DATE OF INJURY _Feb 12, 2015_        BUS # _0915_

TIME OF INJURY _8:47 Esti_ (AM) PM    TIME WORKDAY BEGAN _5:29_ (AM) PM

FIRST FULL DAY LOST FROM WORK _____

HAS EMPLOYEE RETURNED TO WORK ____ Y   N

DATE RETURNED TO WORK _____

SUPERVISOR IN CHARGE _____

WITNESS TO INJURY _____

HOSPITAL OR TREATING FACILITY _Kent County_

ADDRESS _____

PHYSICIAN'S NAME _____

DESCRIBE HOW THE INJURY OCCURRED _Parked Bus Cross Street_
_IN Median Slipped and fell on Ground Ice Snow_
_two people help me get Up Went to bathroom_
_IN Stop&Shop also called John toohey._

DESCRIBE INJURY AND PARTS OF BODY AFFECTED _left Wrist Rt Knee_
_Lower back   Bruise on left wrist_

_____   FOREMAN/SUPERVISOR SIGNATURE

EMPLOYEE SIGNATURE _Mickeda Barnes_  /  DATE _Feb 12, 2015_

Revised 9/1/10

## EMPLOYEE REPORT *Report #150*                INITIAL INJURY REPORT

Last Name **Baines**          First Name **Mekeda**   MI ___   Date of Birth **1/31/75**  Age **40**

Full Address (No. & Street) **34 Dunbar**   City **Rumford**   State **RI**  Zip Code **02916**

Social Security No. **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**   Sex: ☐ M ☑ F   Phone Number (**401**) **419-2250**

Department _____   Division _____   B/C ID No. _____

Location of Incident **Brewary Parkade**

Date of Incident **2/12/15**   Time of Incident **8:47** *Estimate*  ☑ am ☐ pm

Did you receive this injury while working for RIPTA? ☑ Yes ☐ No

Specific area where incident occured **Median in Parkade**
**Crossing Street to use restroom**

Describe and illustrate (at right) your injury _____

Describe the incident **Went to use Restroom Cross Median**
**Slipped and fell on Ground Ice Snow 2 people Help me up**

indicate on these figures the affected body parts:

R L | L R

Dominant hand: ☐ Left ☑ Right

Name of witness to incident (print) _____

Employee Signature **Mekeda Baines**  Date **Feb 12, 2015**

## SUPERVISOR INITIAL REPORT

Supervisor Name _____

Was there a specific incident/accident? ☐ Yes ☐ No ☐ Unknown   Did you witness the incident/accident? ☐ Yes ☐ No

Give a step by step description of what you understand to have happened _____

Substance/object directly causing injury _____

Was employee sent to hospital or physician? ☐ Yes   Date / /   ☐ No

Name/Address _____

Did employee return to work same day? ☐ Yes ☐ No   Was injury lost time? ☐ Yes ☐ No   If yes, date lost time began / /

Sent home remainder of shift? ☐ Yes ☐ No   Light Duty Available? ☐ Yes ☐ No

Supervisor's Signature _____

**Beacon** Mutual Insurance Co.




# PROVIDENCE POLICE DEPARTMENT
# CIVILIAN COMPLAINT FORM

Complaint Form Number:

## What You Need to Know

If you wish to file a complaint against an officer with the Providence Police Department, please complete the form below. Please fill in as much information as possible; additional pages may be attached, if necessary.

By completing this form and submitting your complaint to our office, you will be entitled you as a complainant to various rights under the consent decree including:

- Being kept informed of the progress of the investigation
- Receiving a final investigation report
- Given the opportunity to make submissions on the complaint

If you simply want the Providence Police Department to know about your concerns, but do not wish to participate in the formal complaint process, you may file an anonymous complaint. All complaints are recorded and investigated by the Office of Professional Responsibility (OPR).

If you would like more information about the complaint process before making your decision, please visit the OPR website at www.providencepolice.com or call (401) 243-6412.

## Your Details

| Last Name | First Name | Title (Mr., Mrs., Ms., etc.) |
|---|---|---|
| Barnes | Mickeda | S |

| Mailing Address | City, State, Zip Code | Date of Birth |
|---|---|---|
| 34 Dunbar Ave | Rumford | 01-31-1975 |

| Home Telephone # | Work Telephone # | Cellular Telephone # | E-Mail Address |
|---|---|---|---|
| 401-419-2250 | | | |

## Details of the Complaint

| On what date did this incident occur? | What time did it occur? | Where did it occur? |
|---|---|---|
| On or Around 9-14-06 | at the End of my Shift and the Previous Night | at the Ripta Building on Longfellow Street |

If there were any witnesses, please list their names, addresses, and telephone numbers here:
Kenyon Robertson  Husband    2 Police officer From the Providence
Scott Simmons  ABUSER - CLERK   Police Department
2 Clerk   2 ? Supervisors on the Scene

Name and or badge number of officer(s) if known:

Describe any injuries sustained and if treated, when and where?

This form can be mailed or faxed to the
Providence Police Department
Office of Professional Responsibility
325 Washington Street, Providence, RI 02903
Fax # (401) 243-6429

# See Attached
Page with Complaint
details.

Please describe your complaint and the details of what occurred. Use an additional sheet of paper if necessary.

Civilian Complaint Form (This Needs To Have A Full investigation) September 01, 20
Nickedas Barnes
34 Dunbar Ave
Pemford RI 02916   2006 - 2015   Abuse, Sexually Harras: Sexual Assa

My Complaint is that on September on or around the 14, 20
the providence police showed up to Ripta on Longfellow
at for a disterbance Complaint that my Husband
Kenyon Robertson was going after Scott Simmons the
Clerk who has been Sexually abusing me, Sexually
Harrassing me and Sexually assaulting me all somm
long at Ripta. When the police officers spoke to
me and my Husband and found out that this is
What Scott Simmons was doing and then talking
Sexual to my son who at the time was 16 years
old thinking it was my husband when he Called
the house and was talking Sexually to my Daught
Briana who was 10 years old when she would answer
the phone when Scott Simmons Called. The police
officers told us they were told they Could Not
file a police Report that this issue Had to be
handled in House and that Scott had to Call in
the Supervisors two of them Came in Spoke to
I and my husband and then We went Home the
next Day me and Husband Came Down to Ripta when
I was going to Quit my Job and Jimmy Dean told
e Not to Quit and offered my Husband a City bus
iving Job, Jimmy Dean promise me it would not happe
gain but it Continued to happen up untel I was
at work Really Bad on 2-2-2015 and
pattern to my City Bus

ll of the Complaints, the sexualed harassment reports to Commission of Human Rights, EEOC, state police state officals, Washington DC DoJ and Safety complaints about the Job. EEOC Jim Vincent At Ripta I have waited patiently for Someone anyone to Investigate my Complaints that went unanswer for years. I feel that the police officers should have done there Job and filed a police report on this matter and Helped Ripta Cover up this sexual abuse, hassament and assault I suffered for years that I was told that I would be protected from but Subjected to post tranuic stress, trust issues, personal attacks being plott on me and bets that other Supervisers and bus Drivers on who could Fuck me First. Now that I was illegally terminated from my Job Ripta uses that I had multiple work injuries but alot of those injuries came From supervisors that told me if I de loose one of the 5 supervisors to sleep with or ma City bus Driver and get rid of that Ice Cream ma Husband I have I am going to Continue to get broken uses to Drive and by me Refusing to sleep with them - Recieved the worst of the worst Buses I even Recieve n Injury that is permanet to my Right Knee of RSD from e SAME Bus 1332 within 1 year and 1 month. I also Believe Could Have lat the girls who assaulted me IN 2008 I belive or the Supervisors at the Been Set up by the clerk Scott Simmons to go to Court against the Ripta as I was Never Subpoena and I Suffer a tranic en who assaulted me IN 10-5-2008 and I still Recieve nN Injury and Recieved victims Compensation From the State of I was out of work for about a year and Ripta dont pay for and Claim and medical treatments, that claim For either and Claim settled that claim related because I was let go. Mickeda

# Providence Incident Report

## Summary

| | | | |
|---|---|---|---|
| Print Date/Time: | 09/21/2021 14:37 | | Providence Police Department |
| Login ID: | mcomparone | ORI Number: | RI0040900 |
| Case Number: | 2008-00115658 | | |

## Case

| | | | |
|---|---|---|---|
| Case Number: | 2008-00115658 | Incident Type: | Assault, Simple |
| Location: | 99 KENNEDY PL Q STOP | Occurred From: | 10/05/2008 11:04 |
| | Providence, RI | Occurred Thru: | 10/05/2008 11:06 |
| Reporting Officer ID: | 3087 - SanAntonio | Disposition: | |
| | | Disposition Date: | |
| | | Reported Date: | 10/05/2008 11:04 Sunday |

## Offenses

| No. | Group/ORI | Crime Code | Statute | Description | Counts |
|---|---|---|---|---|---|
| 1 | State | 13B | 11-5-3 | SIMPLE ASSAULT OR BATTERY | 1 |

## Subjects

| Type | No. | Name | Address | Phone | Race | Sex | DOB/Age |
|---|---|---|---|---|---|---|---|
| Suspect | 1 | Gesimondo, Angela A | NPA Providence, RI | | White | Female | |
| Suspect | 2 | GESIMONDO, AMANDA | ▓▓▓▓▓ Providence, RI | | ▓▓ | ▓▓ | |
| Victim | 1 | BARNES, MICKEDA | ▓▓▓▓ Providence, RI | | ▓▓ | ▓▓ | |

## Arrests

| Arrest No. | Name | Address | Date/Time | Type | Age |
|---|---|---|---|---|---|
| 30652 A | Gesimondo, Angela A | 99 KENNEDY PL Q Providence, RI | 10/05/2008 11:30 | On-View Arrest | |
| 30653 A | GESIMONDO, AMANDA | 99 KENNEDY PL Q Providence, RI | 10/05/2008 11:30 | On-View Arrest | |

## Property

| Date | Code | Type | Make | Model | Description | Tag No. | Item No. |
|---|---|---|---|---|---|---|---|

## Vehicles

| No. | Role | Vehicle Type | Year | Make | Model | Color | License Plate | State |
|---|---|---|---|---|---|---|---|---|

Page: 1 of 1

On the above date/time cars 111 and 112 were summoned to Kennedy Plaza Q stop for a report of a RIPTA bus driver who was assaulted.   Police met the victim, bus driver Mickeda Barnes who pointed out to police two white females who had just assaulted her on the bus.   The victim stated that one of the subjects ANGELA GESIMONDO ███ █ ▌/84 of ████████ Providence had got onto her bus carrying a coffee. The other subject, the first subjects sister, AMANDA GESIMONDO ██ ▐ █/86 ███ ██████████, Westport Me had attempted to get onto the bus with a small child who was in a baby carriage.   The victim stated to police that she stated several times for the subject to remove the child from the carriage and the subject Gesimondo refused.   An argument then ensued on the bus and the victim then ordered both subjects off of the bus.   The subject Angela Gesimondo threw her coffee in the face of the victim and stated that she was not getting off of the bus. The victim then stated she called for her dispatch to call police.   The victim then stated that Amanda Gesimondo punched her in the left side of her forehead and a fight ensued.   RIPTA supervisors then responded to the scene and broke up the fight prior to police arrival on scene.   The victim refused medical attention on scene and furnished police with a witness statement of the incident.

The subjects Gesimondo were then taken into custody by police and transported to central station where they were charged with SIMPLE ASSAULT.   Both subjects were negative NCIC/LOCAL at the time of the report.

# Providence Incident Report

## Summary

| | |
|---|---|
| Print Date/Time: | 09/21/2021 14:32 |
| Login ID: | mcomparone |
| Case Number: | 2021-00072362 |

Providence Police Department

ORI Number: RI0040900

## Case

| | | | |
|---|---|---|---|
| Case Number: | 2021-00072362 | Incident Type: | Sexual Assault |
| Location: | 325 WASHINGTON ST | Occurred From: | 09/13/2006 15:00 |
| | Providence, RI 02903 | Occurred Thru: | 09/13/2006 23:00 |
| Reporting Officer ID: | 9603 - Deschamps | Disposition: | |
| | | Disposition Date: | |
| | | Reported Date: | 09/13/2021 12:11 Monday |

## Offenses

| No. | Group/ORI | Crime Code | Statute | Description | Counts |
|---|---|---|---|---|---|
| 1 | State | 11D | 11-37-4 | SEXUAL ASSAULT - 2ND DEGREE | 1 |

## Subjects

| Type | No. | Name | Address | Phone | Race | Sex | DOB/Age |
|---|---|---|---|---|---|---|---|
| Suspect | 1 | ▓▓▓▓ | ▓▓▓▓▓▓▓▓ | | ▓▓▓ | ▓▓ | |
| Victim | 1 | Barnes, Mickeda S | 34 DUNBAR AVE Rumford 02916 | | Black | Female | |

## Arrests

| Arrest No. | Name | Address | Date/Time | Type | Age |
|---|---|---|---|---|---|

## Property

| Date | Code | Type | Make | Model | Description | Tag No. | Item No. |
|---|---|---|---|---|---|---|---|

## Vehicles

| No. | Role | Vehicle Type | Year | Make | Model | Color | License Plate | State |
|---|---|---|---|---|---|---|---|---|

Page: 1 of 1

On 9/`3/2021 at approximately 1211 hours Mickeda Barnes ███████, walked into Central Station to report that on 9/13/2006, an employee of RIPTA touched her left breast in the garage of the RIPTA garage located on Elmwood Ave where the larger buses are stored at the end of the night.

At the time of the report ████ was not on scene and no arrest made. The case is being turned over to detectives. BWC was on during the interview.

# RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## EMPLOYEE ACCIDENT REPORT

DATE __10-5-08__

NAME __Mikeda Barnes__

ADDRESS __34 Dunbar Ave__

CITY __Rumford__

STATE __R.I.__  ZIP __02916__

PHONE NUMBER __(401) 419-2250__

SOCIAL SECURITY # __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__

PAYROLL NUMBER __5282__

CIRCLE ONE    MALE    (FEMALE)

DATE OF HIRE __Nov 26, 2002__

OCCUPATION __Driver__

CIRCLE DAYS OFF   M T (W T) F S S

AGE __33__ DATE OF BIRTH __01-31-75__

LOCATION WHERE INJURY OCCURRED __Q STOP Kennedy Plaza__

DATE OF INJURY __10-5-08__   BUS # __472__

TIME OF INJURY __11:01__ (AM) PM   TIME WORKDAY BEGAN __5:29__ (AM) PM

FIRST FULL DAY LOST FROM WORK _____

HAS EMPLOYEE RETURNED TO WORK __Y    N__

DATE RETURNED TO WORK _____

SUPERVISOR IN CHARGE __Tina - Richard - Billy__

WITNESS TO INJURY __Dinetra Logan (401) 419-0457__

HOSPITAL OR TREATING FACILITY _____

ADDRESS _____

PHYSICIAN'S NAME _____

DESCRIBE HOW THE INJURY OCCURRED __I told the Sisters to take the baby out of the Carriage and the other Sister to throw away the Coffee She threw the Coffee on me and the other Sister punched me in the Face and I Started fighting with both Sisters.__

DESCRIBE INJURY AND PARTS OF BODY AFFECTED __My forehead, Neck Cheek And Chin__

__Karen J Couture__
FOREMAN/SUPERVISOR SIGNATURE

__Mikeda Barnes__  __10-5-08__
EMPLOYEE SIGNATURE    /    DATE

Revised 2/24/03

Date: _10-5-03_   Safety Department Case #: _____

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## EMPLOYEES ACCIDENT/INCIDENT REPORT

(Passenger)   Traffic   Incident
(circle one)

### BASIC INFORMATION: Please Print

Operator Name: _Mickeda S Barnes_   Payroll #: _5282_
Bus #: _0472_   Run #: _6031_   # of Passengers: _50_   # of Courtesy Cards: _____
Date of Occurrence: _10-5-03_   Time of Occurrence: _11:01_   (AM) PM   Inbound  Out
Street on Which Accident Occurred: _Stop @ Exchange St Kennedy Plaza_
Nearest Cross Street: _Washington_   City/Town: _Prov RI 0290_

Weather Conditions (circle one): Clear   Fog   (Rain)   Snow   Cloudy
Street Conditions (circle one): Dry   (Wet)   Ice   Snow Covered
Light Conditions (circle one): (Daylight)   Dark   Dawn   Dusk   Street Lights
Surface Conditions (circle one): (Level)   Uphill   Downhill

Dispatcher Notified? (Yes) No   If yes, whom? _Tina →_
Supervisor on Scene? (Yes) No   Supervisors Name: _Billy / Richard_   Pictures taken? Yes
Police on Scene? (Yes) No   Officer's Name/Badge #: _____

### OTHER VEHICLE (if more than one, use separate sheet for each):

Name of Driver: _____
Address of Driver: _____   License #: _____

Name of Owner: _____
Address of Owner: _____   Plate #: _____
Insurance Company: _____
Description of Vehicle (year, make, model, color): _____   Policy #: _____
Damage to Vehicle: _____
Number of Passengers in Vehicle: _____

### PASSENGER ACCIDENT (if more than one, use separate sheet for each):

At the time of the accident, passenger was (circle one):   Boarding   Alighting   (On Board)
Name: _2 Females in their 20s_   Age: _____
Female   Address: _____
Nature of Injury: _____   Height: _____   Weight: _____

### WITNESSES:

Name: _Dinetra Logan_   Address (street, city, state) _____   Phone # _(401) 419-0457_   Aboard bus? _yes_

Comments - note changes                                                      Effective:   08/23/2

# 6031
## Sunday

| Block | Start Place | Start Time | End Time | End Place |
|---|---|---|---|---|
| 60 - 1 | elmw | 529a | 138p | kepl |

| 60 - 1 | |
|---|---|
| **- / B** | |
| elmwood garage | 529a |
| traffic tribunal | 544a |
| | |
| **23 / C** | |
| traffic tribunal | 544a |
| providence | 559a |
| | |
| **Deadhead / D** | |
| providence | 559a |
| gateway center (newport) | 645a |
| | |
| **60 / E** | |
| gateway center (newport) | 645aF |
| west main & east main | 655a |
| green lane (middletown) | 702a |
| brownell & rte. #114 ports sen ctr | 713a |
| rog. wms. univ. rte. 114 & ferry rd | 718a |
| hope & state (bristol) | 722a |
| main & joyce (warren) | 731a |
| white church (barrington) | 739a |
| providence | 753a |

| 60 / G | |
|---|---|
| providence | 800aH |
| white church (barrington) | 816a |
| main & joyce (warren) | 824a |
| hope & state (bristol) | 833a |
| rog. wms. univ. rte. 114 & ferry rd | 837a |
| brownell & rte. #114 ports sen ctr | 841a |
| green lane (middletown) | 852a |
| west main & east main | 859a |
| **gateway center (newport)** | 909a |
| | |
| **60 / E** | |
| gateway center (newport) | 930aF |
| west main & east main | 940a |
| green lane (middletown) | 947a |
| brownell & rte. #114 ports sen ctr | 958a |
| rog. wms. univ. rte. 114 & ferry rd | 1003a |
| hope & state (bristol) | 1007a |
| main & joyce (warren) | 1016a |
| white church (barrington) | 1024a |
| providence | 1038a |
| | |
| **60 / G** | |
| providence | 1100aH |
| white church (barrington) | 1116a |
| main & joyce (warren) | 1124a |
| hope & state (bristol) | 1133a |
| rog. wms. univ. rte. 114 & ferry rd | 1137a |
| brownell & rte. #114 ports sen ctr | 1141a |
| green lane (middletown) | 1152a |
| west main & east main | 1159a |
| **gateway center (newport)** | 1209p |

| 60 / E | |
|---|---|
| gateway center (newport) | |
| west main & east main | |
| green lane (middletown) | |
| brownell & rte. #114 ports sen ctr | |
| rog. wms. univ. rte. 114 & ferry rd | |
| hope & state (bristol) | |
| main & joyce (warren) | |
| white church (barrington) | |
| providence | |

Relief by run  6055
Next trip key

### Notes on Timing Points:
F - ADA ANNOUNCEMENTS:  ANNOUNCE ROUTE #60 NEWPORT TO PROVIDENCE, NEWPORT HOSPITAL, EAST MAIN & WEST MAIN ROADS, PORTSMOUTH SENIOR CENTER, RAYTHEON*, ROGER WILLIAMS COLLEGE,  WARREN PARK 'N' RIDE*, BARRINGTON SHOPPING CENTER, WHITE CHURCH, SOUTH MAIN ST., KENNEDY PLAZA

H - ADA ANNOUNCEMENTS:  ANNOUNCE ROUTE #60 PROVIDENCE TO NEWPORT, WHITE CHURCH, BARRINGTON SHOPPING CENTER, WARREN PARK 'N' RIDE* , ROGER WILLIAMS COLLEGE, RAYTHEON*, PORTSMOUTH SENIOR CENTER*,  EAST MAIN & WEST MAIN ROADS, NEWPORT HOSPITAL, GATEWAY CENTER   *MAKE ANNOUNCEMENT ONLY IF SERVED

### Notes on Trips:
B - Garage to Traffic Tribunal via (L) Elmwood (L) "On" Ramp to Rte. #10 (R) "On" Ramp to Rte. #95 South to "On" Ramp to  Rte #37 (R) Pontiac Ave. exit (L) Pontiac (R) Power (L) Park Hill (L) West (R) Howard (R) Slate Hill Rd. (L) second entrance to Traffic Tribunal (L) to layoff location a Bus Shelter (Sign #286)

C - Kennedy Plaza - Fulton St. - Stop "A" to Traffic Tribunal  via Pontiac  via Fulton (R) Dorrance (L) Washington (L) Empire (R) Broad (L) "On" Ram to Rte.#95 S - Rte.#95 S (R) "On" Ramp to Rte.#37 W - Rte.#37 W to (R) Pontiac Ave exit (L) Pontiac (R) Power (L) Park Hill (L) 2nd entrance to Traffic Tribunal to Bus Stop  (Sign #61)

D - Deadhead from Kennedy Plaza to Gateway Ctr. via  (R) Dorrance (L) Washington (L) Service Rd. - "On" Ramp to Rte.#95 South - Rte. #95 Sou (L) Rte. #4 - Rte. #1 - (R) Jughandle to Rte #138 - Rte. #138 (Jamestown Bridge) - Rte. #138 to Newport Bridge (Newport Bridge) (R) Newport C Exit (R) Farewell St. (R) America's Cup Avenue (R) Gladys Carr Bolhouse Blvd. (L) Gateway Center (Sign #286)

E - Newport (Gateway Center) to Kennedy Plaza - Exchange St. - Stop "Q" via (R) Gladys Carr Bolhouse Blvd. (R) America's Cup (L) W. Marlborou - Marlborough (L) Broadway - West Main Rd. (Rte. #114) (L) ENTER & EXIT BAY VIEW APARTMENTS, THEN (L) West Main Rd. (L) Bristol Fe Rd. - Mt. Hope Bridge - Ferry Dr. (L) Hope St. (Bristol) - Main St. (Warren) - County Rd. (Barrington) - Wampanoag Trail (Rte. #114) (L) Rte. #19 West (R) So. Main St. Exit - So. Main St. - No. Main (L) Steeple (L) Exchange - Stop "Q"   (Sign #151)

G - Kennedy Plaza - Exchange St. - Stop "Q" to Newport (Gateway Center) via (L) Washington (R) Memorial Blvd. (L) Crawford (R) So. Water - "On" Ramp to Rte. #195 - Rte. #195 East (R) Seekonk - Barrington Exit (R) Wampanoag Trail (Rte. #114) - County Rd. (Barrington) - Main St. (Warre - Hope St. (Bristol) - Ferry Rd. - Mt. Hope Bridge (R) Bristol Ferry Rd. (R) West Main Rd. (Rte. #114) (L) ENTER & EXIT BAY VIEW APARTMENTS UPON REQUEST, THEN (R) West Main Rd. - Broadway (R) Marlborough - W. Marlborough (R) America's Cup (L) Gladys Carr Bolhouse Blvd. (L) Gateway Center (Sign #148)

# Exhibit 4

ed in Providence/Bristol County Superior Court
bmitted: 11/2/2017 11:38:18 AM
velope: 1271723
wiewer: Alexa G.

Case 1:17-cv-00213-JJM-PAS   Document 5   Filed 06/03/22   Page 114 of 577 PageID #: 1158

Case 1:17-cv-00505   Document 1-2   Filed 11/02/17   Page 2 of 3 PageID #: 15

STATE OF RHODE ISLAND                    SUPERIOR COURT
PROVIDENCE, S.C.

_____

MICKEDA BARNES,                     :

     Plaintiff,              :

     v.                      :          Civil Action No. PC17-4847

RHODE ISLAND PUBLIC TRANSIT          :
AUTHORITY,                          :

     Defendant.              :
_____

### NOTICE OF FILING OF NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446(d), Defendant Rhode Island Public Transit Authority ("Defendant") gives notice to the Superior Court of Providence County, Rhode Island, and to the attorney for Plaintiff Mickeda Barnes, that on November 2, 2017, Defendant filed a Notice of Removal, thereby removing this action to the United States District Court for the District of Rhode Island. A certified copy of the Notice of Removal is attached to this Notice.

                RHODE ISLAND PUBLIC TRANSIT
                AUTHORITY,

                By its attorneys,

                /s/Jillian S. Folger-Hartwell
                Jillian S. Folger-Hartwell (#6970)
                LITTLER MENDELSON, P.C.
                One Financial Plaza, Suite 2205
                Providence, RI  02903
                (401) 824-2500
                (401) 454-2969 (fax)
Dated: November 2, 2017      jfolgerhartwell@littler.com

Firmwide:150996141 1 088768 1003

ed in Providence/Bristol County Superior Court
bmitted: 11/2/2017 11:58:19 AM-CV-00213-JJM-PAS     Document 5     Filed 06/03/22     Page 115 of 577 PageID
velope: 1271723
viewer: Alexa G.        Case 1:17-cv-00505   Document 1-2 #: 1159 11/02/17   Page 3 of 3 PageID #: 16

## CERTIFICATE OF SERVICE

I, Jillian S. Folger-Harwell, hereby certify that a true and accurate copy of the foregoing

document was filed and served electronically by operation of the Court's electronic filing system

upon the following counsel of record on this 2nd day of November, 2017:

Sonja L. Deyoe, Esq.
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI  02908
sld@the-straight-shooter.com

                                      /s/Jillian S. Folger-Hartwell_____
                                      Jillian S. Folger-Hartwell

bmitted: 11/2/2017 11:58:19 AM... cv-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 116 of 577 PageID
velope: 1271723
viewers Alexa=G06:17)    Case 1:17-cv-00505  Document 1-3 Filed 11/02/17  Page 1 of 2 PageID #: 17

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

MICKEDA BARNES

**DEFENDANTS**

RHODE ISLAND PUBLIC TRANSIT AUTHORITY

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sonja L. Deyoe #6301
Law Offices of Sonja L. Deyoe
395 Smith Street, Providence, RI 02908 (401) 864.5877

Attorneys *(If Known)*
Jillian S. Folger-Hartwell #6970
Littler Mendelson, P.C., One Financial Plaza, Suite 2205
Providence, RI 02903 (401) 824.2500

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☒ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS —Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

### V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Americans with Disabilities Act, 42 U.S.C. §§ 12101, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e

Brief description of cause:
Plaintiff claims disability, race, and sex discrimination in connection with her termination from employment.

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

### VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
11/02/2017

SIGNATURE OF ATTORNEY OF RECORD
/s/ Jillian S. Folger-Hartwell

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

d in Providence/Bristol County Superior Court
omitted: 11/2/2017 at 68:19 AM CV-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 118 of 577 PageID
velope: 1271723    Case 1:17-cv-00505    Document 1-3 #Filed 11/02/17    Page 2 of 2 PageID #: 18
viewer: Alex Perez (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# M L  Mancini Law, LLC

222 Jefferson Blvd.  Warwick, RI 02888
P: 401.732.0300  F: 401.734.9334

**Nicholas R. Mancini, Esq.**
nmancini@fconnorlaw.com

*Judge Hardman Achieved Weekly Wages TO $1356.75 Weeot*

June 27, 2017

Stephen J. Dennis, Esq.
127 Dorrance Street, Suite 7A
Providence, RI  02903

**Via fax:**  453-6670

*H Was $1352.0 Differ of $1*

RE:  MICKEDA BARNES vs. RIPTA
CLAIM NO: 360335
OUR FILE NO:  15-227

Dear Mr. Dennis:

Allow this to acknowledge copy of your letter dated June 22, 2017, addressed to Keri Messier, requesting a wage statement relative to Ms. Barnes' February 12, 2015 injury.

In April 2016, you sent the prior adjuster a 21-day letter purporting to delineate a specific breakdown of the pre-injury wages.  A copy of that letter is enclosed. Thereafter, you filed a petition seeking to amend the average weekly wage to $1,352.02.

In response to your letter dated June 22, 2017 to Ms. Messier, enclosed please find a full-time wage statement.  Following the production of the enclosed full-time wage statement in July 2016, Judge Hardman in fact entered a pre-trial order amending the average weekly wage appropriately to $1,356.75.  A copy of that pre-trial order is also enclosed for your records.

Very truly yours,

Nicholas R. Mancini, Esq.

NRM/las

Enclosures

cc:  Ms. Keri Messier – The Beacon Mutual Insurance Company
      Ms. Diane Salisbury – DSalisbury@RIPTA.com



## State of Rhode Island
## FULL-TIME WAGE STATEMENT (Hired for 20 hours or more per week)

☐ PLEASE CHECK IF CORRECTION OF PRIOR REPORT

Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942    Phone (401) 462-8100    TDD (401) 462-8006

DWC No. _____

Insurer File No. _____ 360335

| EMPLOYEE INFORMATION: | | CLAIM INFORMATION: | |
|---|---|---|---|
| SSN | 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 | Employer | Rhode Island Public Transit Authority |
| Name | Mickeda Barnes | Insurance Co. | The Beacon Mutual Insurance Company |
| Hired for ___ hours each week (☐ Approximate) | | Claim Administrator | |
| Are these supplemental wages? ☐ Yes ☐ No | | Injury date | 2/12/2015 |
| If yes, supplemental employer name: | | Incapacity date | 2/13/2015 |
| Maximum no. of exemptions ☐ Single ☐ Married | | Hire date | 11/26/2002 |

*(handwritten notes: "This is not Beacon" ... "This is Illegal")*

## EMPLOYED LESS THAN 2 WEEKS:

| If Yes: | | OR: | |
|---|---|---|---|
| 1. List agreed upon hourly wage | | | |
| 2. Number of hrs. per week for full-time employees | | Give average weekly for same or similar employment: | |
| 3. Multiply #1 by #2 for average weekly wage | $0.00 | | |

## · EMPLOYED MORE THAN 2 WEEKS:

On the left side of the form, list gross wages prior to employee's first full day out of work.  DO NOT include their week of hire or week of injury *unless a full week was worked*.  DO NOT SKIP WEEKS.  Please calculate any overtime and/or bonus paid SEPARATELY on the right side of the form below.

### LIST 13 CONSECUTIVE WEEKS:

| Week Number | Week Ending Date | No. of standard hrs. worked | Gross Wages (No Overtime) |
|---|---|---|---|
| 1 | 2/6/2015 | 40 | $1,255.93 |
| 2 | 1/30/2015 | 40 | $1,255.93 |
| 3 | 1/23/2015 | 40 | $1,078.40 |
| 4 | 1/16/2015 | 40 | $1,150.79 |
| 5 | 1/9/2015 | 40 | $1,078.40 |
| 6 | 1/2/2015 | 40 | $1,129.22 |
| 7 | 12/26/2015 | 40 | $1,164.68 |
| 8 | 12/19/2015 | 40 | $1,128.82 |
| 9 | 12/12/2015 | 40 | $1,128.82 |
| 10 | 12/5/2015 | 32 | $887.93 |
| 11 | 11/28/2015 | 40 | $1,128.82 |
| 12 | 11/21/2015 | 40 | $1,128.81 |
| 13 | 11/14/2015 | 40 | $1,103.61 |
| Total number usable weeks: 13 | Total earnings: | $14,620.16 | |

### BONUS AND OVERTIME CALCULATION:

| | |
|---|---|
| Number of weeks employed (up to 52) | Block 1  52 |
| Total BONUS amount paid in past 52 weeks | Block 2  $0.00 |
| Divide Block 2 by Block 1 for average bonus | Block 3  $0.00 |
| Total OVERTIME amount paid in past 52 weeks | Block 4  $12,070.46 |
| Divide Block 4 by Block 1 for average overtime | Block 5  $232.12 |

### CALCULATION OF AVERAGE WEEKLY WAGE (AWW):

| | |
|---|---|
| 1. Total earnings from 13 weeks | $14,620.16 |
| 2. Total number usable weeks | 13 |
| 3. Divide total earnings by number of usable weeks | $1,124.63 |
| 4. Average bonus (Block 3 in BONUS AND OT) | $0.00 |
| 5. Add 3 and 4 for AWW excluding Overtime | $1,124.63 |
| 6. Average overtime (Block 5 in BONUS AND OT) | $232.12 |
| 7. Add 5 and 6 for Total Average Weekly Wage | $1,356.75 |

| Print Preparer Name: | Date: | Print Adjuster Name: | Date: |
|---|---|---|---|
| Diane Salisbury | 7/26/2016 | Paul Ricciardi | 7/26/16 |

DWC-03F (01/03)    *For instructions visit our web site:*    www.dlt.ri.gov/wc



# State of Rhode Island and Providence Plantations

**Providence, Sc.**

## Workers' Compensation Court

W.C.C. NO.    201603249

Petitioner    Mickeda S. Barnes

Judge        Judge Robert E. Hardman

Respondent    RHODE ISLAND PUBLIC TRANSIT AUTHORITY

Insurer        Rhode Island Individual Self Insureds

This matter came to be heard on an **EMPLOYEE'S PETITION TO REVIEW/ADJUDGE IN CONTEMPT/COMPEL** and after considering all the evidence presented, the Judge finds that:

___ 1. The employee **did/did not** sustain a return to _____ incapacity from _____ to _____ as a result of a work related injury sustained on _____

___ 2. The employee needs _____ to cure, rehabilitate or relieve **him/her** from the effects of a work related injury.

___ 3. The employer has failed to timely comply with the terms of a _____ dated _____

___ 4. The compensation **agreement/decree** does not accurately set forth and describe all of the employee's injuries.

___ 5. The employee's incapacity **does/does not** pose a material hindrance to obtaining suitable employment.

✓ 6. The weekly compensation payments have been based on an erroneous average weekly wage.

___ 7. Other _____

Page 812

**W.C.C. NO.**    201603249

## PRETRIAL ORDER

A. __ The employer shall pay weekly compensation benefits for _____ incapacity for the period of _____ to _____ .

B. __ The employee is authorized to commence treatment as indicated above within _____ days.

C. __ The employee is referred to the Dr. John E. Donley Center for _____

D. __ The employer is ordered to comply with terms of _____ dated _____ plus _____ % penalty on compensation past due.

E. __ The employee is ordered to advise employer of any wages earned during the period of partial incapacity.

F. ✓ The employee's benefits are modified to reflect a correct average weekly wage of $ 1756.75 _____ and payments shall be modified accordingly.

G. __ The description of the injury in the agreement/decree is amended to read as follows:

_____

_____

_____

H. __ Other _____

I. ✓ Attorney's fee in the amount of $ 1300. _____ is awarded to S. Dennis Bey in addition to the reimbursement of the filing fee. 42.07

| 7/27/2016 | /s/ Judge Robert E. Hardman |
|---|---|
| **DATE OF ENTRY** | **JUDGE** |

Any party aggrieved by the entry of this order may claim a trial by filing with the Administrator of the Workers' Compensation Court, One Do Providence, RI, 02903-3973, within (5) days of the date of entry of the order, exclusive of Saturdays, Sundays, and holidays, a Claim for Trial prescribed by the Administrator of the Workers' Compensation Court.
W.C.C. 6 (01-15)

Local Division 618                    Oct 29, 201

172 Longfellow St 2nd Fl

Providence RI 02907

RECEIVED
OCT 3 0 2015
RI COMMISSION
FOR HUMAN RIGHTS

Dear Thomas Cute

The Real Conversation we had which I Sta
to you was Why? are you Rushing me abou
going to arbitration and you Replied Your
days are almost up And I Reminded You
it has only been a little of a month and
one week that equal to 43 days. We
had my unfair and unjust third stage
meeting on September 16, 2015 Right afte
Court which I told you that Ripta's Attor
Me Nick Mancini Put his fingers in my face
And told me to get my fackin ass Back to
work and a couple of other things that wer
threatening to me. I told you I did Not
want you to go to arbitration with me beca
you do not know how to hold a fair and just
meeting and that you (Tom Cute) do not follo
the union agreement and That you (Tom Cute)
work for the company Ripta and Not for
Your members that Days dues to the
Local union 618 for Kelp with the
Company's Disaplinary arguements.

Tom Cute I also told you I would Never Settle the Amount of Suspension Days to a lesser Amount because I've done Nothing wrong and I am not taking any Cop tactics time of 10 day Suspended and to Serve a 10 day Suspension that Ripta Can take that to Dorrance street where the Court house Is. I also told you that you were trying to take my right to Sue Ripta away by having me Sign for Arbitration and I told you I am Not Signing that Right away and I'll take my Suspension and I will Keep My right to Sue Ripta for Discrimination and the Violations of my Rights and Disability laws that they have broken. Tom Cute You then Said to me that Ripta didn't make up the 10 and 10 that you did Which Contradicts the letters by Certified Mail that I Recieved from you dated October 7, 2015 and October 9, 2015. Tom Cute you Can act like you give a damn about me on paper and act like you are tryin to help me but I caught up with Your lies and I think you Cant Remember the lies that you tell me

Tom Cute I also spoke to you about how you do not Stand up for the blacks and Hispanics when it comes to our jobs and I gave you an example Sheila King I Said to you (Tom Cute) Why? would you let the Company give Sheila King a 24 day Suspension for throwing out the ladies Coffee when its Ripta's Rules that their IS no eating Drinking or Smoking on the Bus? I told you Sheila King who is a black women Driver what point are you Guys tryin to Prove Sheila didn't make up that Rule they did. I also asked you Why? did you allow the Company to Suspend Sheila King a Second time when She return for another 14-16 days. I Expressed to you that we did not Vote you in legally that you got in because Paul Harrington Stepped down for a position IN Washington. I believe you are Selling out your black and Hispancis bus Drivers for your own Personal gain so we Cant get Someone IN your position to do whats Best for the members of 618. I also told you when the feds Come to take this Job Down that if you Straighten

Your act up and Repersent us the way you should that your be going down with lipta's Management Too!!! Then you Ended our Conversation and said bye to me and hung up.

Tom Cote I am going to let you know Again and again I am not Sugar Coating nothing it is my understanding that the Contract between Local 1618 and lipta Employees are to be disciplined only for "Just Cause" It is my understanding that I am protected by the Contract and federal law from working in unsafe conditions or being Retaliated against for Complaining about unsafe conditions or bad Management behavior because they are Ex-Cops.
Your actions bring a clear and present Danger to our local union 618 that it is weak and our union officials are doing a terrible job Representing us and I think its time for a change. If you can't do what We pay our dues for you and the Rest of our officials need to step down.

RECEIVED

OCT 30 2015

RI COMMISSION
FOR HUMAN RIGHTS

Mickeda S Barnes

Disciplinary Board                                    Sept 16, 2015
Chief Disciplinary Counsel
24 Weybosset St 2nd floor
Prov RI 02903

Dear Disciplinary Board My Name is Mickeda S.
Barnes and I work for Ripta and is Injured
with a Disability of Carpal tunnel in the Right
and left hand & wrist and Right Knee injury with
RSD. I am writing my formal Complaint against
Nicholas Mancini for his threatening actions
towards me in a Court Meeting Room September
16, 2015 in which Mr Mancini put his finger in
my face and told me he's tired of playing these
fucking games with me and to stop fucking faking
And get my ass back to work so I gently closed the
door behind me and told Mr. Mancini that I am not
fucking faking anything and I am not playing fucking
games then took off my Right Soft Cast and turned
my hands upwards and told Mancini to look Mutta-
Fucker does this look like I am faking I said the only
thing you need to do is to get me better pay for my
treatments if you want me back to work and
pay for my medicines. On the left of me is Mr
feldman he works with Stephen Dennis on my worker
Compensation Claim Mr feldman asked me if he
could leave to get Steven Dennis to Entertain this
agreement and Mr Mancini Slipped by after Mr—

feldman went out. I went home and spoke with my husband about Mr Mancini's behavior I also spoke to my local union about his comments he had made.

The Statement is true to What happen On September 16, 2015 And I will sign to this Complaint and Unruleley behavior of Mr Mancini

Michele Baines
34 Dunbar Ave
Rumford RI 02916
401-419-2250

# Exhibit 5

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| MICKEDA BARNES, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. _____ |
| RHODE ISLAND PUBLIC TRANSIT AUTHORITY, | : | |
| Defendant. | : | |

## NOTICE OF REMOVAL

Defendant Rhode Island Public Transit Authority ("Defendant") files this Notice of Removal in accordance with 28 U.S.C. §§ 1331, 1441 and 1446 and hereby removes this action from the Superior Court of the State of Rhode Island, Providence County (the "Superior Court Action") to the United States District Court for the District of Rhode Island. As its reasons for removal, Defendant states:

## BACKGROUND

1.     By Complaint, and defense counsel's acceptance of service, Plaintiff Mickeda Barnes ("Barnes") commenced a civil action against Defendant in Providence County Superior Court titled Mickeda Barnes v. Rhode Island Public Transit Authority, C.A. No. PC17-4847. A true and correct copy of the Complaint, and associated documents, of which defense counsel accepted service, is attached as Exhibit A and constitutes all processes, pleadings and orders served upon Defendant in this action to the present date. 28 U.S.C. § 1446(a).

Firmwide:150996056.1 088768.1003

Case Number: PC-2020-06085
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

Case 1:22-cv-00213-JJM-PAS   Document 5   Filed 06/03/22   Page 135 of 577 PageID

Case 1:17-cv-00505   Document 1   Filed 11/02/17   Page 2 of 4 PageID #: 2

2.      Defendant accepted service of the Complaint in the Superior Court Action on October 12, 2017. The instant Notice of Removal is being filed within 30 days of the date on which Defendant was served with the Summons and Complaint in the Superior Court Action. 28 U.S.C. § 1446(b).

3.      Attached as <u>Exhibit B</u> is a copy of the Notice of Filing of Notice of Removal, the original of which is being filed with the Providence County Superior Court. 28 U.S.C. § 1446(d).

## FEDERAL QUESTION JURISDICTION

4.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Complaint states two federal causes of action against Defendant; one under the "Americans with Disabilities Act" 42 U.S.C. §§ 12101 et seq., see Compl., at 1-2, for disability discrimination, and one under "Title VII," 42 U.S.C. §§ 2000e, et seq., see Compl., at 1, 3, for race- and sex-related discrimination ("Federal Claims"). Thus, this case is a civil action over which this Court has original "federal question" jurisdiction under 28 U.S.C. § 1331, in that the action arises under the Constitution, laws, or treaties of the United States.

5.      The Court has supplemental jurisdiction over Plaintiff's state law claims for discrimination in violation of R.I. Gen. Laws §§ 42-112-1 et seq., and R.I. Gen. Laws §§ 28-5-1 et seq. 28 U.S.C. § 1367(a). Plaintiff's Federal Claims and state law claims arise from the same case or controversy because they emanate from Plaintiff's allegations that her employer failed to accommodate her disability, discriminated against her, and terminated her employment because of her disability, race and sex. Therefore, this Court has supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(a).

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

Case 1:22-cv-00213-JJM-PAS   Document 5   Filed 06/03/22   Page 136 of 577 PageID
Case 1:17-cv-00505   Document 1   Filed 11/02/17   Page 3 of 4 PageID #: 3

## REMOVAL TO THIS DISTRICT IS PROPER

6.    This Notice of Removal is being filed in the District of Rhode Island, the District Court of the United States for the district and division within which the Superior Court Action is pending. 28 U.S.C. §§ 1441(a) and 1446(a).

WHEREFORE, Defendant respectfully requests that this Action be removed to the United States District Court for the District of Rhode Island.

RHODE ISLAND PUBLIC TRANSIT AUTHORITY,

By its attorneys,

/s/Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell (#6970)
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI  02903
(401) 824-2500
(401) 454-2969 (fax)
jfolgerhartwell@littler.com

Dated: November 2, 2017

Firmwide:150996056.1 088768.1003                3

Case Number: PC-2020-06085
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

Case 1:22-cv-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 137 of 577 PageID

Case 1:17-cv-00505   Document 1   Filed 11/02/17   Page 4 of 4 PageID #: 4

## CERTIFICATE OF SERVICE

I, Jillian S. Folger-Harwell, hereby certify that a true and accurate copy of the foregoing document was filed and served electronically by operation of the Court's CM/ECF System upon the following counsel of record on this 2nd day of November, 2017:

Sonja L. Deyoe, Esq.
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI  02908
sld@the-straight-shooter.com

/s/ Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell

# Exhibit 6

STATE OF RHODE ISLAND
PROVIDENCE, SC                                                    SUPERIOR COURT

| | |
|---|---|
| RHODE ISLAND PUBLIC TRANSIT AUTORITY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICKEDA BARNES, | ) |
| | ) |
| Defendant. | ) |

Civil Action No. PC2020-

## COMPLAINT

The Rhode Island Public Transit Authority ("RIPTA" or "Plaintiff"), by and through undersigned counsel, brings this action against Mickeda Barnes ("Barnes" or "Defendant") for breach of contract, declaratory judgment and equitable relief.

## PARTIES

1.      RIPTA is a quasi-government state agency with its principal place of business in Providence, Rhode Island.

2.      Barnes is a former RIPTA employee and, upon information and belief, she is a resident of Providence, Rhode Island.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over Defendant because she is (1) a resident of the State of Rhode Island, (2) was employed by RIPTA in the State of Rhode Island, and (3) entered into a settlement agreement in the State of Rhode Island.

4.      Pursuant to R.I. Gen. Laws § 9-1-30 the monetary amount in this action is sufficient to invoke the jurisdiction of this court.

:d in Providence/Bristol County Superior Court
omitted: 8/27/2020 9:27 AM cv-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 140 of 577 PageID
ielope: 2721171                                              #: 1184
iewer: Victoria H

5.     This Court has subject matter jurisdiction over this dispute pursuant to R.I. Gen. Laws § 9-30-1 of the Uniform Declaratory Judgments Act, which states the Superior Court "shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

6.     Venue is proper in this Court, pursuant to R.I. Gen. Laws § 9-4-3, because RIPTA has locations in Providence, Rhode Island, at which Barnes worked.

## FACTUAL BACKGROUND

7.     RIPTA employed Plaintiff as a Bus Operator from November 2002 through her last day of employment on February 15, 2016.

8.     Defendant drove various bus routes for passengers during her employment with RIPTA.

9.     Plaintiff's employment was littered with disciplinary infractions, workers' compensation claims, union grievances, and unfounded accusations of discrimination against co-workers, supervisors, attorneys, and even the Rhode Island judiciary.

10.     As early as 2003, Plaintiff began filing a multitude of workers' compensation claims against Defendant. Plaintiff averaged 2 workers' compensation claims per year, each year thereafter, before her termination.

11.     In total, Plaintiff initiated eighteen (18) such claims against RIPTA for alleged workplace injuries between 2004 and 2015.

12.     Plaintiff was out of work sick and on leaves for close to 3 years of her 13 years of employment with RIPTA.

13.     On October 11, 2017, when Plaintiff's workers' compensations claims were not yielding the results she desired, she commenced a civil action against RIPTA, C.A. No. 1:17-cv-

2

d in Providence/Bristol County Superior Court
omitted: 8/27/2025 60:27 AM 22-cv-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 141 of 577 PageID
velope: 2721171    #: 1185
Viewer: Victoria H

00505-JJM-PAS in the United States District Court for the District of Rhode Island (the "District

Court Action").

14.    Plaintiff was represented by counsel in the District Court Action.

15.    On April 4, 2018. after Plaintiff's counsel in the District Court Action and

RIPTA's counsel had reached agreement on settlement in principal, Plaintiff (unbeknownst to her

attorney) filed a lawsuit in the Rhode Island Superior Court (the "First Superior Court Action") in

which she attempted to adjudicate her dissatisfaction with her workers' compensation claims. A

copy of the First Superior Court Action is attached as Exhibit 1.

16.    On April 25, 2018, Plaintiff and RIPTA entered into the Settlement Agreement and

General Release of Claims (the "Settlement Agreement"), a copy of which is attached as Exhibit 2,

releasing all claims against RIPTA that arose prior to the execution of the agreement.

17.    The Settlement Agreement did not waive Plaintiff's workers' compensation

claims.

18.    The Settlement Agreement contained a no reapplication, no reinstatement

provision which provided,

> Employee agrees not to reapply for employment with the Authority, any
> subsidiary, related, affiliated or parent entity or any entity which is now or in the
> future owned, controlled, acquired by the Authority. Employee further agrees that
> if she reapplies or applies for employment with the Authority, or any entity
> described above, her application may be denied on the basis of this Agreement.
> Employee agrees to waive any right to reinstatement to which she may be entitled
> under R.I. Gen. Laws §28-33-47, and if reinstated thereunder, she agrees to
> immediately and voluntarily resign from employment. This provision shall not be
> construed so widely as to bar the Employee from applying for work or working
> for the State of Rhode Island or the Rhode Island Department of Transportation.

Settlement Agreement, ¶ 10, Ex. 2. Thus, Plaintiff waived any right to reinstatement and agreed

not to reapply for any employment with RIPTA.

3

19.    The Settlement Agreement provided, in part, for liquidated damages in the event

that Defendant violates the Settlement Agreement, as follows:

> After the parties had reached agreement in principal, Employee filed the above-reference suit in Rhode Island Superior Court, Case No. PC-2018-2287. As a result, the Parties hereby agree that, except to enforce the provisions of this Agreement, should Employee bring any claim, action, or suit on any matter covered by the releases set forth in this Paragraph 2, against the Releasees, this Agreement may be asserted as a complete defense, and if the Releasees, collectively or individually, prevail, Employee shall be responsible for liquidated damages in the amount of $10,000 per violation or paying the attorneys' fees and costs that the prevailing Releasee(s) incurs in opposing such claim, whichever is less, in addition to any other relief to which the Releasee(s) may be entitled.

Settlement Agreement, ¶ 2(e), Ex. 2.

20.    The Settlement Agreement provided that Plaintiff waived any right to individual

relief as a result of filing a charge of discrimination with the Rhode Island Commission for Human

Rights, as follows:

> [B]y signing this Agreement Employee is waiving rights to individual relief (including backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint, lawsuit or other proceeding brought by Employee . . . .

Settlement Agreement, ¶ 18, Ex. 2.

21.    Plaintiff was given twenty-one (21) days to consider whether or not to execute the

Settlement Agreement and seven (7) days to revoke the Settlement Agreement after she executed

it. Settlement Agreement, ¶¶ 3(a) & (b), Ex. 2.

22.    Plaintiff acknowledged – in a bolded provision entitled "Acknowledgement of

Voluntariness and Understanding" – that (i) she was given a full opportunity to review the terms of

the Settlement Agreement, (ii) she carefully read and fully understood all the provisions of the

Settlement Agreement, and (iii) she was knowingly and voluntarily entering into the Settlement

Agreement. Settlement Agreement, ¶ 17, Ex. 2.

4

23.    By signing the Settlement Agreement, Plaintiff acknowledged that she understood the Settlement Agreement constituted a final and complete release of all known and unknown claims against Defendant. See Settlement Agreement, ¶ 2, Ex. 2.

24.    In exchange for signing the Settlement Agreement, Plaintiff received one hundred and fifty thousand dollars ($150,000.00). See Settlement Agreement, ¶ 1, Ex. 2.

25.    On or about August 23, 2018, just four months after signing the Settlement Agreement, despite the Settlement Agreement and in violation thereof, Plaintiff filed a lawsuit in the Rhode Island Superior Court ("Second Superior Court Action"), a copy of which is attached as Exhibit 3, in which she again attempted to adjudicate her dissatisfaction with her workers' *filed* compensation claims and other pre-existing employment-related claims. *Tried to Indemnified me to my own medicare set aside*

26.    On January 9, 2019, this Court, Hon. Justice Melissa A. Long, dismissed Defendant's workers' compensation claims, but permitted Defendant 14 days to file an amended complaint with regard to her claims that presumably pre-dated the Settlement Agreement, for breach of contract, "Title VI" and reinstatement. See Jan. 18, 2019 Order, a copy of which is attached as Exhibit 4.

27.    Defendant failed to file an amended complaint, and instead appealed Justice Long's order of dismissal to the Rhode Island Supreme Court. A copy of the Notice of Appeal is attached as Exhibit 5.

28.    On November 20, 2019, despite the Settlement Agreement and in violation thereof, Plaintiff filed a charge of discrimination with the Rhode Island Commission for Human Rights ("Charge"), seeking individual relief, for claims that are subject to the Settlement Agreement. A copy of the Charge is attached as Exhibit 6.

5

Submitted in Providence/Bristol County Superior Court
Submitted: 8/28/2020 10:22 AM
Envelope: 2721171
Reviewer: Victoria H

-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 147 of 577 PageID
#: 1191

29.    On August 25, 2020, RIPTA requested that the Commission stay the Charge to permit it to pursue the instant complaint.

30.    In the Charge, Defendant alleges she was discriminated against on the basis of her race, color, gender, disability, perceived disability and retaliated against. See Charge at 3, Ex. 6.

31.    In the Charge, Defendant alleges that she was "subjected" to "years of unlawful employment discrimination." Id.

32.    In the Charge, Defendant alleges that RIPTA retaliated against her by failing to reinstate her after she signed the Settlement Agreement. Id. at 4.

33.    It is undisputed that RIPTA terminated Defendant's employment on February 15, 2016. Thus, any allegations of employment discrimination in the terms and conditions of employment that Defendant brings in the Charge, can only originate prior to the effective date of the Settlement Agreement, and are thereby waived.

34.    In the Charge, Defendant references a variety of incidents, but fails to identify the dates of these allegations. For example, Defendant states that she was "subjected" to "years of unlawful employment discrimination" and that "[o]n one of the occasions I was attempting to submit my medical note, I was told that my employment was being terminated." This incident, if true, could only have taken place before her termination in February 2016.

35.    In the Charge, Defendant alleges she signed the Settlement Agreement in December 2018, when, in fact, she signed on April 25, 2018. See Charge, at 4, Ex. 6.

36.    In the Charge, Defendant alleges she was discriminated against and cites events related to her workers' compensation injuries that began in 2015. Id.

## COUNT I
## DECLARATORY RELIEF – SETTLEMENT AGREEMENT

37.    Plaintiff incorporates Paragraphs 1 through 36, as if set forth full herein.

6

mitted in Providence/Bristol County Superior Court
omitted: 8/27/2020 10:22 AM
elope: 2721171
iewer: Victoria H

38.     A real, present, actual and justiciable controversy exists between RIPTA and Defendant concerning whether the Settlement Agreement precluded Defendant from filing, and/or recovering damages based on, the claims set forth in the Second Superior Court Complaint.

39.     A real, present, actual and justiciable controversy exists between RIPTA and Defendant concerning whether the Settlement Agreement precludes Defendant from recovering for the allegations in the Charge.

40.     Plaintiff seeks a declaration that RIPTA and Defendant entered into a valid and enforceable settlement agreement that, by its terms, released Plaintiff from all employment discrimination claims that predate the Settlement Agreement.

41.     Plaintiff seeks a declaration that RIPTA and Defendant entered into a valid and enforceable settlement agreement that, by its terms, released Plaintiff from all claims made by Defendant to reinstatement or rehire.

42.     Plaintiff seeks a declaration that RIPTA and Defendant entered into a valid and enforceable settlement agreement that, by its terms, prevents Plaintiff from seeking individual relief in connection with the Charge.

### COUNT II
### BREACH OF CONTRACT – SETTLEMENT AGREEMENT

43.     Plaintiff incorporates Paragraphs 1 through 42, as if set forth in full herein.

44.     Defendant entered into the Settlement Agreement with RIPTA.

45.     The Settlement Agreement was the result of offer and acceptance, is supported by adequate consideration, and is fully enforceable.

46.     Defendant has materially breached the Settlement Agreement by

    a.   Filing the Second Superior Court Action;

7

b.    Seeking damages in the Second Superior Court Action;

c.    Pursuing individual relief in the Charge;

d.    Seeking reinstatement or reapplying for employment.

47.    RIPTA has been damaged, and continues to be damaged, by Defendant's breach of the Settlement Agreement.

48.    RIPTA has suffered, and will continue to suffer, irreparable harm because of Barnes' breach of the Settlement Agreement.

49.    No adequate remedy is available at law to remedy Barnes' breach of the Settlement Agreement.

50.    Justice and equity require specific enforcement of the Settlement Agreement as to RIPTA.

51.    RIPTA is entitled to damages, in the form of liquidated damages as set forth in the Settlement Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to:

1.    Determine and declare the Settlement Agreement to be a complete and enforceable instrument;

2.    Determine and declare Defendant to be in breach of the Settlement Agreement;

3.    Enforce the Settlement Agreement according to its terms and order dismissal of all claims that arose prior to April 25, 2018, and all claims for reinstatement or rehire, brought in the Charge;

4.    Enforce the Settlement Agreement according to its terms and order Defendant to pay liquidated damages pursuant to Paragraph 2(e) of the Settlement Agreement;

5.    Stay any and all proceedings related to the claims set forth in subparagraph 3

8

above, pending in the Charge;

6.    Enter judgment in favor of Plaintiff and against Defendant;

7.    Award Plaintiff monetary/liquidated damages;

8.    Award Plaintiff costs and attorneys' fees recoverable by contract and applicable law; and

9.    Award Plaintiff such other and further relief as the Court deems just and proper.


Respectfully submitted,

THE RHODE ISLAND PUBLIC TRANSIT AUTHORITY,

By its attorneys,


/s/ Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell (#6970)
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI  02903
(401) 824-2500
(401) 454-2969 (facsimile)
jfolgerhartwell@littler.com

August 27, 2020

4832-6914-3479.1 088768.1016


9

# Exhibit 7

DET-BR-3ES (Rev. 05/99)                                                                 EO-02

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS



# Board of Review

### For
### The Department of Labor and Training

74 West Road, Hazard Bldg., 1st Floor
Cranston, RI  02920
Telephone: (401) 462-9400 Fax: (401) 462-9401
website: http://www.dlt.ri.gov/bor
Email: DLT.BORINFO@DLT.RI.GOV

Chris Fierro
Chairman
Nathaniel J. Rendine
Edward A. Lombardo, Sr.

| | |
|---|---|
| MICKEDA S BARNES | MAILING DATE:  February 10, 2017 |
| 34 DUNBAR AVENUE | SSN:  8332 |
| RUMFORD, RI 02916-3111 | APPEAL NUMBER:  20170081 UC |
| | DATE OF APPEAL:  December 30, 2016 |
| | HEARING DATE:  February 8, 2017 |
| | CAU NUMBER:  1640353 |

## DECISION OF REFEREE

1.   <u>TRAVEL OF THE CASE:</u>

The claimant's last day of work was February 12, 2015. December 6, 2016, the claimant filed for employment security benefits. December 16, 2016, in a Department of Labor and Training Director decision, the claimant was denied back dating of claim according to the provisions of Section 28-42-3 (3) of the Rhode Island Employment Security Act in coordination with the provisions of Section 28-33-47 of the Rhode Island Workers' Compensation Law. December 30, 2016, the claimant filed a timely appeal on the decision notice of hearing was mailed to all interested parties. February 8, 2017, an appeal hearing was held at which time the claimant appeared and testified. The claimant was represented by her attorney during the hearing. The claimant's attorney was accompanied by one intern. The employer, with proper notice, failed to appear for the hearing.

2.   <u>FINDINGS OF FACT:</u>

I find by preponderance of credible testimony and evidence the following findings of fact:

The claimant suffered a work related injury February 12, 2015. May 6, 2015 the claimant had surgery. The claimant received Workers' Compensation benefits until the Workers' Compensation Court discontinued benefits effective November 10, 2016.  Claimant's medical practitioner released her to return to work without restriction effective June 1, 2015. June 16, 2015 claimant's attorney, Joseph M Beagan, wrote the employer a letter requesting reinstatement. July 16, 2015 an independent medical practitioner confirmed the claimant's return to work without restriction.  January 27, 2016 claimant's attorney, Stephen J Dennis, wrote the employer a letter requesting reinstatement. The employer did not reinstate the claimant. The claimant filed for Employment Security benefits December 6, 2016 and requested back dating of the base period calculation to the date of injury.

Negotiations for an unrelated 2014 Workers' Compensation injury were continuing. Claimant had been released and returned to work after the 2014 Workers' Compensation claim July 2014 and worked until the February 12, 2015 injury. Workers' Compensation Court ordered Workers' Compensation benefits to continue during negotiations on the unrelated claim.

Page 1
MICKEDA S BARNES

3.     CONCLUSION:

Section 28-42-3(3) of the Rhode Island Employment Security Act states, in part, that whenever an individual who has received workers' compensation benefits is entitled to reinstatement under 28-33-47, but the position to which reinstatement is sought does not exist or is no longer available, shall have the base period of his/her claim be determined as if the individual filed for benefits on the date of injury. The based period of a claim shall not include any calendar quarter previously used to establish a valid claim for benefits.

The above section of the act is contingent on the Rhode Island Worker's Compensation Law, which states, in part;

(b) The right of reinstatement shall be subject to the provisions for seniority rights and other employment restrictions contained in a valid collective bargaining agreement between the employer and a representative of the employer's employees, and nothing shall exempt any employer from or excuse full compliance with any applicable provisions of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and chapter 87 of title 42.

(1) The right to reinstatement to the worker's former position under this section terminates upon any of the following:

(i) A medical determination by the treating physician, impartial medical examiner, or comprehensive independent health care review team that the worker cannot, at maximum medical improvement, return to the former position of employment or any other existing position with the same employer that is vacant and suitable;

(ii) The approval by the workers' compensation court of a vocational rehabilitation program for the worker to train the worker for alternative employment with another employer;

(iii) The worker's acceptance of suitable employment with another employer after reaching maximum medical improvement;

(iv) The worker's refusal of a bona fide offer from the employer of light duty employment or suitable alternative employment, prior to reaching maximum medical improvement;

(v) The expiration of ten (10) days from the date that the worker is notified by the insurer or self-insured employer by mail at the address to which the weekly compensation benefits are mailed that the worker's treating physician has released the worker for employment unless the worker requests reinstatement within that time period;

(vi) The expiration of thirty (30) days after the employee reaches maximum medical improvement or concludes or ceases to participate in an approved program of rehabilitation, or one year from the date of injury, whichever is sooner, provided, in the event a petition to establish liability for an injury is filed, but not decided within one year of the date of injury, within twenty-one (21) days from the first finding of liability. Notwithstanding the foregoing, where the employee is participating in an approved program of rehabilitation specifically designed to provide the employee with the ability to perform a job for which he or she would be eligible under subsection (a) of this section, the right of reinstatement shall terminate when the employee concludes or ceases to participate in the program or eighteen (18) months from the date of injury, whichever is sooner;

Page 2
MICKEDA S BARNES

(vii) Except where otherwise provided under a collective bargaining agreement, the approval by the court of a settlement pursuant to chapters 29 - 38 of this title.

In the instant case, the claimant was released to return to work without restriction 3 ½ months after the injury. The first written request for reinstatement was posted two weeks later. The credible testimony and evidence support back dating of the claimant's base period.

4.    DECISION:

The decision of the Director is reversed based upon the above conclusions.

*APPEAL RIGHTS*
*This decision will become final unless, within fifteen (15) calendar days of the mailing date hereof, you file an appeal in writing to the Board of Review for the Department of Labor & Training. The appeal can be delivered, mailed, faxed or e-mailed to the Board at 74 West Road, Hazard Bldg., 1st Flr, Cranston, RI, 02920. Fax number: (401) 462-9401.*
*E-mail: DLT.BORINFO@DLT.RI.GOV WEBSITE: WWW.DLT.RI.GOV/BOR.*

**You must continue to use Tele-Serve on a weekly basis while pending your appeal hearing including further court proceedings, if you are still totally or partially unemployed.**

- Equal Opportunity Employer/Program
- Auxiliary aids and services are available upon request to individuals with disabilities.
- TDD: (401) 462-8006

**DERECHOS DE APELAR**
Esta decisión sera finalisada a menos que, dentro de quince (15) días del calendario de la fecha que se le envió la decisión, usted apele en escrito al Board of Review para el Departamento de Labor y Entrenamiento. Puede entregar la apelación por correo, telefax o e-enviar a el Board a la dirección *74 West Road, Hazard Bldg., 1st Flr., Cranston, RI, 02920.* Numero de Fax: (401) 462-9401. E-enviar: DLT.BORINFO@dlt.RI.GOV. WEBSITE: www.dlt.ri.gov/bor

*Usted debe continuar utilizando Tele-Servicios semanal mientras espera su audiencia de su súplica incluyendo futuro procedimiento de corte, si usted todavía está totalmente o parcialmente sin trabajo.*

BOARD OF REVIEW

BY _____

GUNTER A. VUKIC, REFEREE

cc:    DIRECTOR
       SONJA L. DEYOE, ESQ.

       HUMAN RESOURCES
       RI PUBLIC TRANSIT AUTHORITY
       705 ELMWOOD AVENUE
       PROVIDENCE, RI 02907                    Dictation/Dragon NaturallySpeaking

Page 3
MICKEDA S BARNES

ARNOLD-PETER C. WEISS, M.D.

*Scot Sellers Scholar of Hand Surgery*
*...or of Orthopaedics*
*Brown University*
*Warren Alpert Medical School*

*Medical Office Center/Suite 200*
*2 Dudley Street*
*Providence, RI 02905*
*Administration Office* (401) 457-1522
*Patient Office* (401) 457-1520
*Fax* (401) 831-5874
*e-mail: apcweiss@brown.edu*

UNIVERSITY ORTHOPEDICS, INC.
*Michael G. Ehrlich, M.D.*
*Roy K. Aaron, M.D.*
*Edward Akelman, M.D.*
*Brad Blankenhorn, M.D.*
*Christopher T. Born, M.D.*
*Manuel F. DaSilva, M.D.*
*Craig P. Eberson, M.D.*
*Paul D. Fadale, M.D.*
*John A. Froehlich, M.D.*
*Christopher J. Got, M.D.*
*Andrew Green, M.D.*
*Roman A. Hayda, M.D.*
*Michael J. Hulstyn, M.D.*
*Julia A. Katarincic, M.D.*
*Richard S. Limbird, M.D.*
*...R. Lucas, M.D.*
*...D. Maher, III, M.D.*
*Mark A. Palumbo, M.D.*
*E. Scott Paxton, M.D.*
*Alexander P. Robertson, M.D.*
*Lee E. Rubin, M.D.*
*Jonathan R. Schiller, M.D.*
*Robert M. Shalvoy, M.D.*
*Patricia M. Solga, M.D.*
*Michael P. Staehler, M.D.*
*Richard M. Terek, M.D.*
*Arnold-Peter C. Weiss, M.D.*

*Thomas E. Bliss, M.D.*
*Razib Khaund, M.D.*
*Peter K. Kriz, M.D.*
*Peter G. Trafton, M.D.*
*Randall L. Updegrove, M.D.*

*Chief Operating Officer*
*Weber H. Shill, MBA*

ORTHOPEDIC RESEARCH
*Bahar Bilgen, Ph.D.*
*Qian Chen, Ph.D.*
*Deborah Ciombor, Ph.D.*
*J.J. Trey Crisco, Ph.D.*
*Braden Fleming, Ph.D.*
*Yingjie Guan,Ph.D.*
*Damian Medici, Ph.D.*
*...i C. Moore, M.S.*
*...aller, M.S.*
*...an Sun, M.D*
*Lei Wei, M.D., Ph.D.*
*Wentian Yang, M.D., Ph.D.*
*Xu Yang, M.D., Ph.D.*
*Jingming Zhou, Ph.D*




Affiliated entity of

BROWN
Alpert Medical School

## INDEPENDENT MEDICAL EVALUATION

### July 16, 2015

RE:    Mickeda Barnes
       DOB: 01-31-1975

**HISTORY AND REVIEW:** Extensive medical records were reviewed at this particular evaluation.

Ms. Barnes is a 40-year-old right hand dominant female who has worked for thirteen years as a bus driver for RIPTA. She is currently out of work. She had a fall on 02-12-2015 when she landed onto her left wrist. She was treated initially for a contusion but then developed fairly quickly some numbness and tingling in her left hand, mainly in the median nerve distribution with a very slight bit in the ulnar nerve distribution. She had electrodiagnostic studies which were consistent with left carpal tunnel syndrome of a fairly longstanding nature so she obviously had some underlying disease prior to the fall itself. She states she never had any symptoms, however, prior to the fall. She was seen by Dr. Peter Pizzarello, Jr. who diagnosed left carpal tunnel syndrome and recommended a left carpal tunnel release which was performed on 05-06-2015. She has done well since that time with good resolution of her numbness and tingling. She gets some very mild occasional numbness and tingling still in the small finger but it's very sporadic. She has not yet returned to work at this juncture.

**PHYSICAL EXAMINATION:**    Physical examination includes evaluation of MRI which shows only a mild contusion based on the injury itself. She has full range of motion of the left hand and elbow. She has a negative Tinel's sign at the left cubital tunnel, no medial or lateral epicondylar tenderness. Her wrist range of motion is full with a negative carpal instability exam. Tinel's sign at both the Guyon's canal and carpal tunnel are negative. She has excellent intrinsic strength at 5/5 in the left hand. Her scar is well healed and measures 3.0 cm in composite length. She has good two-point and light touch sensation in all digits. The remaining portion of her exam is within normal limits.

**DIAGNOSIS:**    Left carpal tunnel syndrome status post release.

CORPORATE CORRESPONDENCE: UNIVERSITY ORTHOPEDICS, INC. • P.O. BOX 1119 • PROVIDENCE, RI 02901 • (401) 457-1500 • WWW.UNIVERSITYORTHOPEDICS.COM

Page 844

ARNOLD-PETER C. WEISS, M.D.
*Scot Sellers Scholar of Hand Surgery*
*Professor of*
*Brown University*
*Warren Alpert Medical School*

*Medical Office Center/Suite 200*
*2 Dudley Street*
*Providence, RI 02905*
*Administration Office*   *(401) 457-1522*
*Patient Office*          *(401) 457-1520*
*Fax*                     *(401) 831-5874*
*e-mail: apcweiss@brown.edu*

UNIVERSITY ORTHOPEDICS, INC.
*Michael G. Ehrlich, M.D.*
*Roy K. Aaron, M.D.*
*Edward Akelman, M.D.*
*Brad Blankenhorn, M.D.*
*Christopher T. Born, M.D.*
*Manuel F. DaSilva, M.D.*
*Craig P. Eberson, M.D.*
*Paul D. Fadale, M.D.*
*John A. Froehlich, M.D.*
*Christopher J. Got, M.D.*
*Andrew Green, M.D.*
*Roman A. Hayda, M.D.*
*Michael J. Hulstyn, M.D.*
*Julia A. Katarincic, M.D.*
*J.S. Limbird, M.D.*
*R. Lucas, M.D.*
*James O. Mason, III, M.D.*
*Mark A. Palumbo, M.D.*
*E. Scott Paxton, M.D.*
*Alexander P. Robertson, M.D.*
*Lee E. Rubin, M.D.*
*Jonathan R. Schiller, M.D.*
*Robert M. Shalvoy, M.D.*
*Patricia M. Solga, M.D.*
*Michael P. Staebler, M.D.*
*Richard M. Terek, M.D.*
*Arnold-Peter C. Weiss, M.D.*

*Thomas E. Bliss, M.D.*
*Razib Khaund, M.D.*
*Peter K. Kriz, M.D.*
*Peter G. Trafton, M.D.*
*Randall L. Updegrove, M.D.*

*Chief Operating Officer*
*Weber H. Shill, MBA*

ORTHOPEDIC RESEARCH
*Bahar Bilgen, Ph.D.*
*Qian Chen, Ph.D.*
*Deborah Ciombor, Ph.D.*
*J.J. Trey Crisco, Ph.D.*
*Braden Fleming, Ph.D.*
*Yingjie Guan, Ph.D.*
*Damian Medici, Ph.D.*
*...s C. Moore, M.S.*
*...Paller, M.S.*
*Xiao-juan Sun, M.D.*
*Lei Wei, M.D., Ph.D.*
*Wentian Yang, M.D., Ph.D.*
*Xu Yang, M.D., Ph.D.*
*Jingming Zhou, Ph.D.*




# UNIVERSITY ORTHOPEDICS

Affiliated entity of
**BROWN** Alpert Medical School

INDEPENDENT MEDICAL EVALUATION
RE:   Mickeda Barnes
Page 2

**CAUSALITY:**   In my opinion this patient's left carpal tunnel syndrome is likely from her underlying work activities but with a symptomatic aggravation secondary to her fall in February 2015.

**RETURN TO WORK STATUS:**   In my opinion this patient can undertake full and unrestricted work activities at the present time.

**PROGNOSIS:** Good.

**DISCUSSION AND RECOMMENDATIONS:**   This patient does not require any further treatment. She has had an excellent outcome from her left carpal tunnel release. She still has some very sporadic occasional tip numbness. I do believe she's at a point of maximum medical improvement. Given her sporadic tip numbness I would provide an impairment rating of 1 percent of the left upper extremity. I don't anticipate this to change with time.

Sincerely,

Arnold-Peter C. Weiss, M.D.
APCW/jls

CORPORATE CORRESPONDENCE: UNIVERSITY ORTHOPEDICS, INC. • P.O. BOX 1119 • PROVIDENCE, RI 02901 • (401) 457-1500 • WWW.UNIVERSITYORTHOPEDICS.COM

Page 845

AUG 2 0 2015

August 4, 2015
Called Tommy Cute Union President about
Grievance he told me he wanted to Skip
Grievance Process 1 and 2 go Right to
Grievance process 3 I told him I disagree
and I have Spoken to the information line
for the NRLB he accused me of wanting
to Sue my Union I said No not yet
But what you tell me how things are
going are not the way they should
be going and Tom Cute told me thats
Not how we do things around Here.
I then asked him for a copy of my
Grievance he wrote out for me and
he said I dont Give out Copys of the
Grievances. I then asked him Why
do I have to Serve the 30 day Suspension
first before the Grievance He told me
thats Why he put in for Reimbersment
for the Weeks that I Serve for Suspension
when I Return to work for Injury. I
then again told him I disagree and told
Tommy What the NRLB told me.
8:22 Am   8:31 Am   From # 525-8238

August 5, 2015 10:29am Ripta Loft Message on
My Phone that I will be Choosen a Job
on august 7, 2015 at 10:30AM. With NO nde

**Michael Souza Inc**

Michael Souza, DO

2761 Pawtucket Ave

East Providence RI        02914

(401) 434-3350

To Whom it may Concern:

Note For :          BARNES, MICKEDA

Regarding:          Work

Dates from :        6/1/2015              to              6/24/2015

Reason:             Please be advised that Ms. Barnes is returning to work on June 24, 2015 full duty.

Thank you for your consideration in this matter.

6/1/2015                              Michael Souza, DO

Case Number: 201601236
Filed in Workers' Compensation Court
Submitted: 2/26/2016 4:36:47 PM
Envelope: 520769
Reviewer: Paula Roberti

Case 1:22-cv-00213-JJM-PAS     Document 5     Filed 06/03/22     Page 159 of 577 PageID #: 1203



RHODE ISLAND PUBLIC TRANSIT AUTHORITY

February 15, 2016

Ms. Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916

Dear Ms. Barnes:

Our records indicate that you have been out of work since February 13, 2015. According to the labor agreement between the Rhode Island Public Transit Authority and the Amalgamated Transit Union, Division 618, section 1.25, paragraph (h):

*"An employee who is absent as a result of illness, injury or work related injury, which occurs while he or she is employed by the Authority, shall be deemed to continue in active service under the terms of this Agreement provided the employee demonstrates that there is a reasonable degree of medical certainty that he or she will be able to return to his or her position within one year from the date his or her absence began."*

Since your absence has exceeded one (1) year, please be advised that effective immediately we are removing you from the RIPTA employment roster. Please return all RIPTA issued clothing and/or equipment to James Dean in the Transportation Department.

A letter outlining your benefit rights under COBRA will follow. If you have any questions, please feel free to contact me at (401) 784-9500, ext. 109.

Regards,

Maureen C. Ruzzano
Human Resources Compliance Officer

cc:     J. Dean
        K. Nadeau
        Local 618
        File

705 Elmwood Avenue, Providence, RI 02907 • 401-784-9500
For Schedule Information, 401-781-9400, 1-800-224-0444, or www.RIPTA.com

Page 848



**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**

February 16, 2016

Ms. Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916

Dear Ms. Barnes:

**Re: Notice of Right to Elect Continuation of Health Care Coverage**
**(United Healthcare)**

This is to inform you that under the terms of the Rhode Island Public Transit Authority's group health plan, your Health Care coverage will terminate as of **2-29-2016**. However, you are entitled to continue your coverage under the plan beyond this date if certain conditions are satisfied. Only one of you needs to elect continuation of coverage for all individual who would otherwise lose coverage. You or your spouse may specify that the election is for single coverage and does not include other individuals who would lose coverage because of your termination or reduction in hours or employment.

If you or your spouse elects coverage, it will be continued until the earliest of:

- Eighteen months after **3-01-2016**. However, if you, your spouse, or your covered dependent children are determined to have a disability as of **3-01-2016** for purposes of Title II or Title XVI of the Social Security Act, the continuation coverage period is extended for up to twenty-nine months (assuming that the disabling condition continues for that period) for the individual (s) with a disability if notice of the determination of disability is provided to Cyndi Mason, Human Resources Technician, within the eighteen month period after the termination or reduction in hours of your employment an sixty days from the date of the determination of disability. Note: Federal Law requires that you inform the plan administrator of any final determination that the individual no longer has a disability.

- The date that you, your spouse, or your dependent children become covered (as an employee or otherwise) under a group health plan that has no limitations or exclusions for any preexisting conditions that you, your spouse, or your dependent children may have;

- The date of your enrollment in the Medicare program. If you become enrolled in the Medicare program, the continuation coverage period for your spouse or your dependent children begins on the date on which you become enrolled in the Medicare program (or, if applicable, the date of an earlier qualifying event) and extends for three years;

- Thirty-six months after **3-01-2016** if a second qualifying event (other than the employer's bankruptcy) occurs during the initial eighteen-month continuation period;

- The date that you, your spouse, or your dependent children fail to pay the monthly charge for this coverage on time or;

- The date that our group health Plan is no longer in force.

705 Elmwood Avenue, Providence, RI 02907 • 401-784-9500
For Schedule Information, 401-781-9400, 1-800-224-0444, or www.RIPTA.com

Page 849

The current monthly premium rate, including a two percent (2%) administrative fee, is **$636.16** for an individual plan or $1,783.49 for a Family plan. Coverage is extended to twenty-nine months due to a disability; the monthly premium for the Individual with a disability will be at a different rate for the months after the first eighteen months of coverage. These premiums may change in the future. The first premium due will cover the month of **March, 2016.** Initially, you must pay a total premium of **$636.16** for the Individual coverage or **$1,783.49** for the Family coverage, if you wish to continue your benefits.

### During the election period, coverage will cease

You have sixty days from the date of this notice to notify us of your election. If you do not return this form within that time, you will lose your right to elect continuation coverage. If you do return this form within the appropriate time period, then within forty-five days after your election, you must pay a premium for the period of coverage from the date of the termination or reduction in hours of employment the date of this election, in addition to any future monthly premium that becomes due during the forty-five day period. Therefore, premiums will be due thirty days after the first day of each month of coverage. If, as mentioned above, a payment is not received on time, you will lose your right to elect continuation coverage.

This notice is a summary of your rights for your spouse. Keep one copy for your records, and return the other to:

Maureen C. Ruzzano
Human Resources Chief Compliance Officer
RHODE ISLAND PUBLIC TRANSIT AUTHORITY
705 Elmwood Avenue
Providence, Rhode Island 02907

If you or your spouse needs any additional information, please feel free to contact me at (401) 784-9500 ext. 109.

Sincerely,

Maureen C. Ruzzano
Human Resources Compliance Officer

cc: File





RHODE ISLAND PUBLIC TRANSIT AUTHORITY

## ELECTION FORM FOR CONTINUATION OF COVERAGE

I, **Mickeda Barnes,** have read this notice and I understand my rights to elect continuation coverage.

Please check ONE only:

_____ I would like to decline/waive my right to continuation coverage under RIPTA's group health plan.

_____ I wish to elect continuation coverage under RIPTA's group health plan.

Individual Coverage                     Yes _____    No _____

Spousal Coverage                        Yes_____     No _____

    Spouse's Name: _____

    Spouse's Social Security #: _____

    Spouse's Date of Birth: _____

Family Coverage                         Yes _____    No _____

My First Payment is Enclosed            Yes _____    No _____

I understand that if I fail to pay any premium in a timely fashion, this coverage will terminate. I agree to notify the plan administrator if (or any member of my family) become(s) covered under another group health plan or enrolled in the Medicare Program.

Signature _____ Date _____

## IMPORTANT

In order that your coverage may continue, we must receive:

1. A completed copy of this notice by (60 days after the date of this notice).
2. Your first payment is due on the date you sign this form.

### _YOU WILL BE COVERED FROM March 1, 2016 TO August 31, 2017._

705 Elmwood Avenue, Providence, RI 02907 • 401-784-9500
For Schedule Information, 401-781-9400, 1-800-224-0444, or www.RIPTA.com



**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**

## URGENT: IMMEDIATE ATTENTION REQUESTED

March 29, 2016

Dear Employee/Retiree:

Attached to your paycheck you will find a 1095C form, Affordable Care Act. This form will be officially used in next year's tax preparation. We are sending you the prepared form for 2015 in order for you to verify the information listed on the form regarding you and/or your dependents.    If there is any discrepancy it is imperative that you notify HR as soon as possible, but no later than April 15, 2016, as we are required to submit this information to the IRS this year.

Please review Part IV and verify:

    (a) Name of covered individual(s)
    (b) SSN
    (c) DOB

You are not required to attach the 1095 form to your 2015 tax return; however in 2017 you will be responsible to submit this form with your W2 when filing 2016 tax returns. Failure to submit accurate information may cause unintentional individual and/or corporate tax penalties. Please take the time to verify the information presented and notify HR as soon as possible, **only if any information is incorrect.** You may call Ramona Gonzalez at (401) 784-9500 ext 176 or Cyndi Mason at (401) 784-9500 ext 163.

Thank you in advance for your attention to this matter.

Best regards,

Kathy Nadeau

cc: File

705 Elmwood Avenue, Providence, RI 02907 • 401-784-9500
For Schedule Information, 401-781-9400, 1-800-224-0444, or www.RIPTA.com

Page 855

**Form 1095-C**
Department of the Treasury
Internal Revenue Service

## Employer-Provided Health Insurance Offer and Coverage
Information about Form 1095-C and its separate instructions is at *www.irs.gov/form1095c*

☐ VOID
☐ CORRECTED

OMB No. 1545-2251

**Part I  Employee**

| | |
|---|---|
| **1** Name of employee  MICKEDA BARNES | **2** Social security number (SSN)  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 |
| **3** Street address (including apartment no.)  34 DUNBAR AVENUE | |
| **4** City or town  RUMFORD  **5** State or province  RI  **6** Country and ZIP or foreign postal code  02916 | |

**Applicable Large Employer Member (Employer)**

| | |
|---|---|
| **7** Name of employer  RHODE ISLAND PUBLIC TRANSIT AUTHORITY | **8** Employer identification number (EIN)  050311968 |
| **9** Street address (including room or suite no.)  705 ELMWOOD AVENUE | **10** Contact telephone number  4017849542 |
| **11** City or town  PROVIDENCE  **12** State or province  RI  **13** Country and ZIP or foreign postal code  02907 | |

**Part II  Employee Offer and Coverage**        Plan Start Month (Enter 2-digit number):  01

| | All 12 Months | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **14** Offer of Coverage (enter required code) | 1A | | | | | | | | | | | | |
| **15** Employee Share of Lowest Cost Monthly Premium, for Self-Only Minimum Value Coverage | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ |
| **16** Applicable Section 4980H Safe Harbor (enter code, if applicable) | 2C | | | | | | | | | | | | |

**Part III  Covered Individuals**  If Employer provided self-insured coverage, check the box and enter the information for each covered individual. ☒

| (a) Name of covered individual(s) | (b) SSN | (c) DOB (If SSN is not available) | (d) Covered all 12 months | (e) Months of Coverage |||||||||||||
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec |
| **17** BARNES, KEVIN | 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 | 04/02/1990 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **18** BARNES, MICKEDA | 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 | 01/31/1975 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **19** ROBERTSON, BRIANA | 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 | 08/20/1997 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **20** ROBERTSON, KENYON | 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 | 06/08/1977 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **21** | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **22** ROBERTSON, SIDNEY | 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 | 04/04/2002 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **23** ROBERTSON BARNES, D | 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 | 08/06/2011 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **24** | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **25** | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **26** | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **27** | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **28** | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **29** | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **30** | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **31** | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **32** | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **33** | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **34** | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.     41-0852411     Form **1095-C** (2015)

# JOSEPH M. BEAGAN
### A T T O R N E Y S   A T   L A W

Joseph M. Beagan, Esq.
Admitted in RI

Michael J. Beagan, Esq.
Admitted in RI and MA

*Reinstated her Job*
*Back to her Job*

June 16, 2015

Diane Salisbury, Risk Management Coordinator
Rhode Island Public Transit Authority
705 Elmwood Avenue
Providence, RI 02907

RE:     Employee:           Mickeda S. Barnes
        Date of Injury:     2/12/15
        Claim No.:          RP-1502-0004L

Dear Ms. Salisbury:

Please be advised that this law office represents the above-named regarding personal injuries sustained while in the course of her employment.

This letter is being written to request that my client be reinstated to her former position and work schedule, within 21 days, pursuant to RIGL 28-33-47, and her union seniority rights. If not, a petition will be filed at the Workers' Compensation Court. At that time, a Judge could order the reinstatement and award an Attorney fee to my office.

Please contact me if you have any questions. Thank you for your kind attention to this matter.

Sincerely,

*Joseph M Beagan*

Joseph M. Beagan, Esquire

cc: John Travers

TEL: (401) 453-0090                                              FAX: (401) 453-0093
260 WEST EXCHANGE STREET         •        SUITE 103        •        PROVIDENCE, RHODE ISLAND 02903



06/24/2015  18:10  4015211040  HANSONCURRAN  #1785 P.001/001

# HANSON CURRAN LLP
## COUNSELORS AT LAW

David P. Whitman
Megan J. Goguen *+
Nicholas R. Mancini #
Andrew M. Lynch *

James T. Murphy *
Joshua E. Carlin *
Mary Welsh McBurney *

*Also admitted in Massachusetts
+Also admitted in New York
# Also admitted in Connecticut

June 23, 2015

*Sent via fax: 401-453-0093*
Joseph M. Beagan, Esquire
260 West Exchange Street
Suite 103
Providence, RI 02903

*Mancinis letter Back to Joe Boogan about her Returning to work Att:*

Re:   *Mikeda Barnes*
Vs:   *RIPTA*
      *Our File No. 15-227*

Dear Joe:

Please allow this letter to confirm our telephone conversation on June 22 regarding your letter directed to Diane Salisbury at RIPTA dated June 16, 2015.

Your letter to Ms. Salisbury purported to demand reinstatement on behalf of your client, Mikeda Barnes, pursuant to §28-33-47 of the Rhode Island Workers' Compensation Act. As we discussed, in a letter dated June 19, 2015, Ms. Barnes' treating physician, Dr. Michael C. Souza, indicated that Ms. Barnes had a number of restrictions that prevent her from performing her pre-injury employment.

Accordingly, we agreed that RIPTA is under no obligation to offer Ms. Barnes her pre-injury position at this time in accordance with the above-cited statute in light of her ongoing partial incapacity as per Dr. Souza.

Very truly yours,

Nicholas R. Mancini
Email:  nrm@hansoncurran.com
NRM/pac

cc:    Ms. Diane Salisbury c/o RIPTA

Telephone: 401.421.2154   Fax: 401.521.7040   www.hansoncurran.com
One Turks Head Place, Suite 550, Providence, Rhode Island 02903-2205

## PREAMBLE

Articles of Agreement made and entered into by and between the Rhode Island Public Transit Authority, its successors and assigns, hereinafter called the "Authority", and Providence Division No. 618 of the Amalgamated Transit Union (ATU), hereinafter called the "Association", and the employees of the Authority who are now or may hereafter become members of said Providence Division No. 618, hereinafter called the "employees" or the "members", WITNESSETH That in the operation of the Authority, both parties agree hereto as follows:

## ARTICLE I
## GENERAL TERMS

### Section 1.0  Purpose of Agreement

(a)  That the purpose of this Agreement is to provide a working understanding between the Authority and the Association each through its duly accredited representative to provide the best possible service to the public and to provide as good working conditions for the members of the Association as practicable with due regard for the operation and interests of the Authority.

(b)  This Agreement sets forth the wages of employees of the Authority working in the Transportation Department (Bus Operators, Transportation Clerks, Telephone Operators, Money Room Clerk), the Bus Maintenance Department (Mechanics, Body Shop, Building & Grounds, Utility, Stockroom Clerks), the Flexible Services Division and any other employees of the Authority included in the bargaining unit by certification of the State Labor Relations Board or by mutual agreement of the parties.

(c)  The parties will not discriminate against any employee of the Authority because of race, sex, sexual orientation, age, color, religion, national origin, or handicap in any manner including upgrading, demotion, transfer, layoff, termination, rate of pay or other forms of compensation or benefits. The parties agree that they will not tolerate sexual harassment.

*Parties Violated this* [handwritten]

### Section 1.1  Recognition of Union

(a)  The Authority agrees to recognize the Association as the sole bargaining representative for all employees in any of the classifications of employment as provided for herein. The Authority agrees that it shall require as a condition of employment that all employees now members of the Association shall be required to retain such membership in the Association and that all new employees hereafter employed by the Authority in any of the classifications for which rates of pay, hours of

-1-

-2-

19020454.1

15020454.1

work and other conditions of employment provided for herein, shall become members of the Association after the thirtieth (30th) day following the beginning of their employment and shall continue its members thereafter while this agreement is in effect.

The Authority will allow all eligible personnel to join the Association, and will not hinder or discourage such efforts or retaliate against interested parties regardless of class or department.

(b) The Authority shall weekly deduct from the pay of such of its employees as may be members of the Association, their regular Association dues and promptly remit same to the proper officials of the Association as designated by the latter in writing.

### Section 1.2 Management Rights

(a) The Association acknowledges that all matters pertaining to the management of operations, including the type, kind and extent of service to be rendered to the public, the equipment used, the maintenance of reasonable efficiency standards, the hiring and establishment of standards for selection and qualification of employees with due regard for seniority as a factor such that when qualifications are equal seniority will prevail in all selection and promotion decisions, standards for the promotion of employees and their discipline and discharge for proper cause, are reserved exclusively to the Authority, except to the extent that the same are expressly restricted by specific provisions of this agreement.

(b) The Authority is committed to assuring that the dignity of each employee is respected at all times. Management shall treat employees fairly and reasonably, shall assure that employees are not disciplined without just cause, and that they are notified as expeditiously as reasonable with respect to any alleged violations charged by management.

-3-

### Section 1.3 Performance of Bargaining Unit Work

Supervisors of administrative and clerical employees shall not perform work which normally is performed by bargaining unit employees, except in emergency or for purposes of instruction. Supervisors or Foremen shall not perform work which is normally performed by bargaining unit employees, except in emergency or for purposes of instruction.

### Section 1.4 No Strike or Lockout

During the period covered by this Agreement, the service upon and operation of the lines of this Authority shall not be interrupted or interfered with by either party; provided, however, that this restriction shall not be applicable to the Association in the event of a refusal by the Authority to arbitrate any dispute which is arbitrable under this Agreement, or in the event of the refusal by the Authority to comply with a duly issued arbitration award resulting from the submission to arbitration by the Authority and the Association pursuant to this Agreement; provided, however, that the Association shall not interrupt or interfere with service during the pendency of any appeal taken by the Authority from such an award.

### Section 1.5 Probationary Period

The Authority may, at its own discretion, discipline or discharge any new full-time employee during a ninety (90) calendar day probationary period following his/her satisfactory completion of training and any part-time employee during a one hundred eighty (180) calendar day probationary period following his/her satisfactory completion of training. New employees may be terminated by the Authority at its discretion during the training and probationary periods. Under extenuating circumstances, the Authority has the right to extend the probationary period for (30) calendar days only with the knowledge of the employee and after consultation with the Union.

-4-

*Reclassification* [handwritten]

The shift from one department to another will only be permitted if a vacancy or need exists.

(e) "Flexible Service Operators who are not retired Authority employees and have worked for over two years, shall be given preference for fixed route service Operator position vacancies. When more than one such operator seeks a vacant position, it will be awarded in order of seniority." Fixed route service operator positions that are not filled by Flexible Operators with two years of service will be offered to Flexible Operators with one year of service.

(f) In such cases the employee changing departments shall sacrifice seniority and go to the bottom of the rating list of the department to which assigned, although he will keep his system rating for the purposes of vacations, pensions, etc. Any employee so assigned may return to his original department after he has been examined by the Authority's physician to determine if the medically certified reason for his shifting has been eliminated or corrected, without loss of seniority.

(g) If the medically certified condition that necessitated the shift is permanent, the employee so transferred will establish rating in that department as of the date of his original transfer to that department.

(h) Employees who can no longer perform the essential functions of their position due to a work-related injury are eligible for a position reclassification. Such position reclassification will be based upon the employee's ability to perform the duties of such position, the employee's qualifications, and the availability of positions. In the event that a position is available which the employee can be reclassified into, employees who have completed at least ten (10) years of service retain the rate of pay associated with their original title; employees with less than ten (10) years of service will be eligible for the rate of pay associated with the reclassified position.

(i) In cases of disability covered under the provisions of the Workers Compensation Act, an injured employee may be offered a change of departments or jobs for the purpose of rehabilitation, and payment will be made in accordance with the provisions of the Worker's

- 8 -

pay, required dues, and assessments to the Union. If said employees should no longer qualify for such position or, if such position is abolished, the employee shall be transferred back to the employee's former classification with accumulated seniority, unless the employee is dismissed from the service of the Authority for a cause which would have justified the employee's dismissal from the employer's bona fide classification as a bargaining unit employee. Disputes arising out of the application of this section shall be resolved through the grievance process and shall be limited to the question of such employee's rights, as specified in this Agreement with respect to the employee's former classification, it being understood that such an employee's chain of rights to that supervisory position as such is not covered by this grievance process.

(b) All employees, who are now or may hereafter become members of the Association, shall observe all operating rules and regulations of the Authority, and all special orders of the Authority, and of its officials. The Authority will issue such rules and regulations.

(c) This Agreement shall apply only to the classes of employees for whom rates of pay, hours of work and working conditions of employment are provided for herein. All job openings will be posted in all areas and divisions for a period of one (1) week. All postings will list the number of openings to be filled. Each applicant must meet the minimum criteria as identified in the job description. Except under extraordinary circumstances, the job opening will be filled and the selected employee will take his work within a reasonable amount of time after the closing date of posting. In the event of such extraordinary circumstances causing the Authority not to fill the job opening, the Authority shall consult with the Association.

(d) Shifting Departments - Bargaining unit employees may shift from department of present employment to another department covered by this agreement only under provisions of this section. First consideration will be made for health reasons which have been medically certified and acceptable to the Authority and the Association.

*Job Filling* [handwritten]

*This is where Job Changes are Made.* [handwritten]

- 7 -

Compensation Act. Upon recovery from injury, the employee shall return to his department and job without loss of rating.

(j) The job opening will be filled in the following manner: First, full-time from within the department that the opening exists second, ATU bargaining group employees from the Flexible Services Division; and third, from qualified applicants from outside the Authority.

Applicants must be in a lower classification based on top hourly rate of the position presently held. Example: A Utility employee would be eligible to transfer to Bus Operator. However, he would not be eligible to transfer to Telephone Operator.

(k) The senior man/woman in line for a promotion when a vacancy exists in any department within the bargaining group shall be promoted to fill the vacancy if, he/she is qualified by his/her skill, ability and previous experience to do the work. The employee considered for promotion shall be given an opportunity to demonstrate his ability in an actual trial on the job. If at any time during a period of ninety (90) calendar days such employee demonstrates his inability to do the job satisfactorily, or requests return to his/her previous job, he/she shall be returned to his/her previous position. The Authority will meet and discuss with the Association the process to be used in determining the minimum qualifications for the job opening that is to be offered to Association bargaining unit employees.

(l) In final selection of equally qualified applicants, seniority will be the governing factor in deciding the successful transfer.

(m) An employee transferring to a new position will serve the standard ninety (90) day probationary period and if performance is deemed unsatisfactory said employee will return to his original department without loss of seniority.

(n) An employee whose current job requires special skills must train his replacement before moving to any other position. Lateral moves will be allowed in the Mechanical Department.

- 9 -

1902492.1

↗ *Union Did Not Follow Rules*

(b)  Should differences or disputes arise between the Authority and an employee, group of employees, or the Association as to the meaning or application of this agreement, rules, policies or practices, the parties shall make effort to settle such differences promptly by the Grievance and Arbitration Procedure set forth below.

(c)  However, the establishment of the steps in the grievance procedure for the formal handling of grievances shall not prohibit nor discourage the amicable solution of such matters without recourse to the grievance and arbitration procedure.

(d)  All steps of the grievance procedure set forth below shall be based on the weekday time frame. The definition of "Weekday" is as follows: Monday through Friday, excluding Holidays, Vacations, sick or injured days, or days of unusual circumstances.

**Section 1.11   Grievance Procedure (Step 1)**

(a)  The grievance shall be presented in writing, signed by the grievant with the desired remedy stated. The Association Representative (steward or vice president) shall present the grievance within ten (10) working weekdays of the action or of first knowledge of the action from which the dispute arises.

(b)  The dispute shall be presented to the immediate supervisor of the department where the question exists; said supervisor may delegate first step authority.

(c)  A meeting between the parties shall be held within five (5) days of notification. A written decision shall be rendered at this level within five (5) days of meeting.

**Section 1.12   Grievance Procedure (Step 2)**

(a)  If the dispute is not resolved at Step 1, the Association representative shall notify the office of the Authority Department Head (Maintenance, Transportation or Manager of Paratransit Services) within ten (10) days of the Step 1 decision and a meeting shall be scheduled

- 11 -

within five (5) days for the Step 2 hearing at the appropriate garage. A written decision shall be rendered within five (5) days of the hearing.

**Section 1.13   Grievance Procedure (Step 3)**

If the dispute is not resolved at Step 2, the Office of the General Manager will be notified within ten (10) days of the decision. A meeting will be held within five (5) days between the General Manager and the Business Agent (or the delegate that either may name) in the office of the General Manager or other meeting place as designated. A written decision will be rendered within five (5) days of the hearing.

**Section 1.14   Grievance Procedure (Step 4)**

If the dispute is not resolved at Step 3, the Association shall have the right to arbitration. The Association shall demand arbitration within ninety (90) calendar days of its receipt of the Step 3 decision by sending to the General Manager and the American Arbitration Association a demand for arbitration. The arbitration, including the selection of an arbitrator, shall proceed according to the Labor Arbitration Rules of the American Arbitration Association. The Expedited Arbitration Rules of the American Arbitration Association may be used by agreement of both parties. The decision of the arbitrator shall be final and binding upon the parties. The parties shall jointly bear the expense of the arbitrator. (Interest arbitration for new or successor collective bargaining agreements shall be in accordance with § 28-19-17 of the Rhode Island General Laws.)

**Section 1.15   Grievances – Additional Provisions**

(a)  Steps may be extended or excluded by mutual consent.

(b)  The aggrieved employee must be present at every stage. In the case of a group, designated representatives are acceptable with the mutual consent of the Authority and the Association.

(c)  Nothing in this procedure will prevent the examination of facts in the absence of an aggrieved in an effort to obtain amicable solution to the grievance.

- 12 -

(d) It will be the responsibility of both parties to assign designated representatives when it is apparent that the time periods identified in the grievance steps cannot be reached. Both parties will follow established grievance time frames as expressed herein.

(e) Employees are entitled to Association representation at any point in this grievance procedure. Provided, that any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective bargaining contract or agreement then in effect: Provided further, that the bargaining representative has been given opportunity to be present at such adjustment.

(f) The purpose of the grievance and arbitration procedure is the settlement of disputes in a timely fashion. The transition from informal to formal procedure may present some difficulties. Time limits at each step may be evaluated and adjusted by mutual consent.

(g) However, it is agreed and understood that failure to observe time limits will result in a favorable conclusion for the party that has last made a timely solution.

Section 1.16    Disciplinary Procedures and Standard Operating Procedures

(a) Nothing in this agreement shall affect the Authority's right to terminate the employment of an employee for just cause.

(b) When an employee is summoned to meet with an official of the Authority, they must do so as quickly as possible. Such summons shall be made as soon as possible after the alleged offense has been committed. Any employee has the right to have an Association representative present when called into the office for disciplinary reasons. If after hearing the charge or charges the employee wishes to have the Association representation before answering same, he will,

-13-

*[handwritten note: Note: I tried to grievance this when they ___ govern my discipline 7 months later]*

upon request, be furnished a copy, in writing, of the charge or charges to which he is to make answer and an adjournment of two (2) days shall be granted him before he is required to answer such charge or charges.

(c) In any case of discharge, final warning, or suspension, the Authority agrees to notify the Association in advance.

(d) In the case of relieving operators from duty for disciplinary reasons, the Authority agrees to notify the Association in advance.

(e) It is agreed that when manpower is available, suspensions will be served within two (2) weeks after final disposition of the case. Any extension of the two-week period will be after consultation with the Association.

(f) Employees will be notified of any caution being issued against them within their next scheduled work-day.

(g) Except as to major offenses, when determining whether or not an employee shall be suspended or discharged because of faulty conduct or violations of operating rules, the Authority shall only consider the employee's record for the period of three (3) years preceding such faulty conduct or violation.

(h) The Authority shall be entitled to take disciplinary action against an employee to the extent permitted by this agreement notwithstanding the status of any related, external administrative or judicial proceedings.

(i) The Authority and the Association shall create a Joint Labor/Management Standard Operating Procedures Committee to conduct and complete a comprehensive review, update and revision, to the extent necessary, of the standard operating work procedures applicable to positions covered by this agreement within ninety (90) calendar days of the ratification date of this agreement. To the extent that the Committee cannot agree upon the standard operating procedures within said ninety (90) day period, unless extended by mutual agreement, the areas of disagreement shall be resolved by interest

-14-

*[handwritten note: Note → Who I filed EEOC complaint — Who? is the Joint Standards Labor/Management operating procedures]*

## Section 1.24    Reduced Schedules

(a) Employees who have worked one-hundred and twenty (120) days of their alloted work days in the twelve (12) months prior to December 1 of the year preceding the vacation period and who have resumed normal employment will be entitled to the following:

| Number of Weeks | Qualifications |
| --- | --- |
| Two (2) | Four (4) years of continuous service |
| Three (3) | Ten (10) years of continuous service |
| Four (4) | Fifteen (15) years of continuous service |
| Five (5) | Twenty-five (25) years of continuous service and, only in the case of employees hired prior to January 1, 1977: |
| Six (6) | Thirty (30) years of continuous service |

(b) Employees who have been continuously employed for a period of four (4) years or more and have worked at least eighty (80) days in the twelve (12) months period prior to December 1 of the year preceding the vacation period and have resumed normal employment, will be entitled to one (1) week vacation.

## Section 1.25    Sick Leave

(a) Full-time employees (except Flexible Services employees) will receive pay for up to twelve (12) days of absence due to proven illness, injury or work-related injury for each year of this agreement, subject to the following conditions:

(b) Payment for sick leave will begin as specified herein, provided the employee has reported the illness to the Authority no later than one (1) hour before employee is scheduled to report for work. Any

- 31 -

claim for each and every sick leave must be certified on an Authority disability form signed by the attending physician. The attending physician must be a licensed M. D., or in dental cases, a D.D.S. The certificate must be free from changes or erasures. A certificate signed by anyone other than the attending physician will not be accepted. Employees who expect to be absent from work for an extended period (thirty calendar days or longer) of time due to illness or injury, whether paid or unpaid, must notify their Department Supervisor of this situation immediately. The employee will be expected to contact their Department Supervisor every seven (7) days consecutive calendar days after the initial report (by telephone or in person) to update their medical status, and provide a telephone number and address where the employee can be reached during the period of illness.

(c) Compensation for sickness or injury disability shall be eight (8) hours per day at the straight time rate. Whenever an employee is entitled to Temporary Disability Benefits ("TDI"), sick leave shall be paid in hourly increments (each day of accrued benefit equals eight hours) as a supplement for TDI benefits, so that the total payment for one day of absence shall not exceed eight hours of pay.

(d) Effective January 1st 2014, upon retirement, an employee may cash-out 100% of his or her accrued unused sick leave if (1) the employee has 1,170 hours remaining of unused sick leave at the time of his or her retirement, or (2) the employee, at the time of his or her retirement, has an attendance rate of at least 75% over the course of his or her employment. Alternatively, in lieu of cashing out such sick leave, the employee may elect to have such sick leave count toward pension credit in accordance with the Rhode Island Public Transit Authority Employee's Pension Plan, and or apply such sick leave towards the payment of Retiree Health Benefits monthly premium. Employees may combine pension credit and retiree health benefits monthly premium. Employees may not use sick leave toward pension vesting.

(e) For those employees who have unused sick leave accrued prior to January 1, 1997, all sick time taken subsequent to January 1, 1997 will first reduce the sick leave accrued prior to January 1, 1997.

- 32 -

After an employee who has sick leave accrued prior to January 1, 1997 exhausts such leave, he or she shall utilize thereafter sick leave accrued after January 1, 1997.

(f) Effective January 1st 2014 Sick Leave accrual:

An employee may accrue up to 1,560 hours of sick leave. When an employee reaches 1,560 hours of sick leave, he or she shall not accrue any additional sick leave unless he or she uses sick leave in which case he or she shall accrue at the time of the annual grant of sick leave up to twelve days for a maximum of 1,560 hours. An employee who has greater than 1,560 hours as of January 1st 2014 shall receive no additional sick leave unless his or her accrued bank is reduced to less than 1,560 hours prior to retirement. Such an employee will accrue at the time of the annual grant of sick leave up to twelve days for a maximum of 1,560 hours.

All employees' sick banks will be "Grandfathered" upon ratification.

(g) In the event of an employee's death during the period of this agreement, one hundred percent (100%) of the accumulated sick leave shall be paid to the employee's beneficiary.

(h) An employee who is absent as a result of illness, injury, or work-related injury, which occurs while he or she is employed by the Authority shall be deemed to continue in active service under the terms of this Agreement provided the employee demonstrates that there is a reasonable degree of medical certainty that he or she will be able to return to his or her position within one year from the date his or her absence began.

(i) Any dispute regarding the employee's fitness to return to duty shall be resolved in accordance with this Section regarding medical examinations.

(i) If a paid holiday occurs during the period an employee is on paid sick leave, he shall be entitled to sick pay only.

-33-

*[handwritten: TA Article 15 Separate]*

*[handwritten: Medical Exam]*

(i) Neutral Physician – At the request of the Authority, the employee shall submit to a medical examination by a physician selected by the Authority. If the physician selected by the Authority finds that the employee is fit for duty, the employee is expected to return to duty as specified by the physician on the Disability Certificate. If the employee does not report for duty as specified by the Disability Certificate completed by the physician selected by the Authority, the absence will be considered absent without leave.

Any difference of opinion between the employee's personal physician, and the physician chosen by the Authority, will be determined by an impartial third party physician. The physician selected by the Authority and the employee's treating physician shall select the impartial physician. The impartial physician shall be a specialist in the field of medicine applicable to the employee's condition. If they cannot agree, they shall select a hospital which shall select an appropriate board certified physician from its staff to conduct the examination. The impartial physician should be chosen, contacted and seen by the employee within three (3) days of the preceding employee's appointment with the physician chosen by the Authority. The cost of the impartial physician's appointments will be split by the Authority and the employee if not paid by insurance coverage. The decision of the impartial physician is binding and final.

(k) Newly-hired employees will be eligible for sick pay as follows:

| | |
|---|---|
| First 30 days | Ineligible |
| 31 days to 90 days | One (1) day |
| 91 days to 180 days | Four (4) days |
| 181 days to 270 days | Seven (7) days |
| 271 days to 365 days | Ten (10) days |

(l) After one (1) year of continuous employment under this agreement, a full time employee will be eligible for the full twelve (12) days of sick leave.

-34-

*[handwritten: Difference of opinion between personal and Employee physician]*

*W/C Job Transfers*

*This is workers comp*

(m) The Authority will have the right, in order to curb any abuse of this sick leave plan, to check from time to time on employees who are absent because of illness or other disability. An employee, upon proven abuse of sick leave and/or provision of fraudulent medical certification to the Authority, may be subject to discharge and all benefits under this plan shall be terminated.

(n) An employee who books off sick while on duty shall be provided with a ride by the Authority if at all possible if requested.

(o) An employee who suffers a job related injury, the compensability of which is not disputed, will become eligible to receive Workers Compensation weekly indemnity benefits compensation on the fourth day of disability; as mandated by the Rhode Island Workers' Compensation Act of May 1992. Any changes in Rhode Island workman's compensation law will be incorporated into this contract.

(p) Anyone who has a disputed Workers' Compensation claim and collects sick leave pay while incapacitated and later is awarded Workers' Compensation benefits must reimburse the Authority for the sick leave pay paid in the interim upon returning to work.

(q) A member may be allowed to donate one (1) sick day per year to another member who has exhausted their sick leave.

(r) Full-time Flexible Services Division shall accrue 1 sick day per month for a total of twelve (12) sick days per year. Effective January 1st 2014, full-time employees, who have achieved the top of the wage progression and who have accrued seventy-five (75%) of their accrued sick leave, as of November 30th of each year, will be eligible for the full twelve days of sick leave commencing January 1st of each year of the agreement. Employees shall receive pay for up to twelve days of absence due to proven illness, injury or work-related injury for each year of this agreement, subject to the following conditions

(1) Employees who are in the wage progression will not be eligible to receive their annual accrual of sick leave at the beginning of the year, such employees who are in the wage progression will accrue

- 35 -

one (1) sick day per month for a total of twelve (12). This will apply to employees who transfer from Flexible Services Division to Fixed Route.

(2) Compensation for sickness or injury disability for Flexible Services Division employees shall be a maximum of eight (8) hours per day at the straight time rate.

(3) Employees in the Flexible Services Division whose regular work-week is four (4), ten hour days will receive leave at his/her straight time rate for ten (10) hours under this provision.

(4) In the event of a Flexible Services Division employee's death during the period of this agreement, fifty percent (50%) of the accumulated sick leave shall be paid to the employee's estate.

(5) An employee in the Flexible Services Division who is absent as a result of illness or injury, shall be deemed to continue in active service under the terms of this agreement so long as any continuous period during which he does not perform work is less than six (6) months.

(6) If a paid holiday occurs during the period a Flexible Services Division employee is on paid sick leave, he shall be entitled to sick pay only.

(s) Long term disability insurance will be available for purchase by any employee.

(1) Employees in the Flexible Services Division will be offered the opportunity to purchase the same Long Term Disability plans as presently being offered to other Authority employees at their own expense.

(2) In the event the Union establishes a voluntary, employee-paid, life insurance and/or long term disability insurance program the Authority shall withhold (payroll deduction) and transmit any employee-authorized voluntary contributions. Such supplemental plan(s) shall be provided by an underwriter and administrator selected

- 36 -

Section 1.36    ADA

The Authority and the Association agree to comply with the legal requirements of the Americans with Disabilities Act, including but not limited to making all appropriate announcements to passengers.

-46-

13643025.1

## TERM OF AGREEMENT

This Agreement shall be effective as of July 1, 2013 and shall continue in full force and effect and be binding upon the respective parties hereto until and including June 30, 2016.

RHODE ISLAND PUBLIC TRANSIT AUTHORITY

by _____
   Chairman
   and

by _____
   General Manager

PROVIDENCE DIVISION NO. 618
OF THE AMALGAMATED
TRANSIT UNION (ATU)

by _____
   President and Business Agent
   and

by _____
   Secretary and Treasurer

Signed as of the 4th day of April, 2014.

Ratification date: August 19, 2015.

- 94 -

---

### RHODE ISLAND PUBLIC TRANSIT AUTHORITY
#### Appendix 3 – Wage – Effective July 4, 2015

| Department | Position Title | | Top Hourly Rate |
|---|---|---|---|
| Transportation | Bus Operator | | $27.77 |
| | Transportation Department Clerk | | $24.44 |
| | Money Room Clerk | | $22.44 |
| | Telephone Information Operator | | $21.72 |
| Facility Services | | | |
| | Facility Services Operator | | $18.07 |
| | Facility Services Operations Coordinator | | $20.97 |
| | Facility Services Lead Coordinator | | $23.51 |
| Bus Maintenance | | | |
| | Mechanic - First Class | | $29.40 |
| | Body Man - First Class | | $28.04 |
| | Body Man - Second Class | | $25.02 |
| | Body Man - Second Class | | $23.16 |
| | Building Maintenance - First Class | | $29.40 |
| | Building Maintenance - Second Class | | $23.63 |
| | Utility - Hired prior to 8/1/04 | | $25.18 |
| | Utility - Hired after 8/1/04 | | $23.95 |
| | | | $22.75 |

#### TRANSPORTATION DEPARTMENT
**Wage Progression**

**BUS OPERATORS**

| | | | |
|---|---|---|---|
| 0 – 12 Months | 60% of Top Rate | | $16.66 |
| 12 – 24 Months | 70% of Top Rate | | $19.44 |
| 24 – 36 Months | 80% of Top Rate | | $22.22 |
| 36 – 48 Months | 90% of Top Rate | | $24.99 |
| 48 – 60 Months | 95% of Top Rate | | $26.38 |
| Over 60 Months | 100% of Top Rate | | $27.77 |

#### FLEXIBLE SERVICES DIVISION

| | Van Operator | Operations/ Coordinator | Lead Coordinator |
|---|---|---|---|
| 0 – 12 Months | $13.95 per hour | $15.74 per hour | $17.55 per hour |
| 12 – 24 Months | $14.46 per hour | $16.31 per hour | $18.55 per hour |
| 24 – 36 Months | $15.86 per hour | $16.41 per hour | $21.04 per hour |
| 36 – 48 Months | $16.59 per hour | $19.59 per hour | $22.56 per hour |
| Over 48 Months | $18.07 per hour | $20.97 per hour | $23.51 per hour |

#### BUS MAINTENANCE DEPARTMENT
Progression for All Titles
(Mechanics, Body Shop & Building & Grounds)

| | | | |
|---|---|---|---|
| 0 – 6 Months – 75% of Top Rate | 75% | | $22.07 |
| 6 – 12 Months – 85% of Top Rate | 85% | | $25.02 |
| 13 – 18 Months – 95% of Top Rate | 95% | | $27.26 |
| Over 18 Months – 100% of Top Rate | 100% | | $29.40 |

#### STOCKROOM CLERKS

| | | | |
|---|---|---|---|
| 0 – 12 Months | 75% | | $21.33 |
| 12 – 24 Months | 85% | | $24.17 |
| 24 – 36 Months | 95% | | $27.02 |
| Over 36 Months | 100% | | $28.44 |

#### UTILITY WORKERS

| | | Utility Workers Hired prior to 8/1/04 | Utility Workers Hired after 8/1/04 |
|---|---|---|---|
| 0 – 12 Months – 75% of Top Rate | | $19.40 | $17.95 |
| 12 – 24 Months – 85% of Top Rate | | $21.99 | $19.92 |
| 24 – 36 Months – 95% of Top Rate | | $24.58 | $22.52 |
| Over 36 Months – 100% of Top Rate | | | |
| Bus Teller | | $25.86 | $22.73 |
| Park Washer | | $25.59 | $23.86 |

Utility Park Washer position pays $.23 per hour more than the Utility position rate. | | | $22.86 |

1542488.1

- 93 -

# Exhibit 8

## AFFIDAVIT OF PHYSICIAN PER SECTION 28-33-8(c) OF THE
## RHODE ISLAND WORKERS' COMPENSATION ACT

State of Rhode Island
Workers' Compensation Court
Medical Advisory Board
One Dorrance Plaza, Providence, RI 02903
Phone: 401-458-3460
TDD: 401-458-5275

☐ SIX (6)    ☐ EIGHTEEN (18)    ☑ THIRTY (30)

RECEIVED
14 MAR -0 PM 2:31

WCC / MEDICAL ADVISORY BOARD

**EMPLOYEE INFORMATION:**

Social Security No.: 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
Name: Micheda Barnes
Address: 34 Dunbar ave
City: Rumford   State: RI  Zip: 02916
Phone: 401-419-2250  Date of Birth: 1/31/75

**EMPLOYER INFORMATION:**
Name: RI PTA
Address:
City:          State:      Zip:
Phone:

IF THE IDENTITY OF THE INSURER IS UNKNOWN, CONTACT THE DIVISION OF WORKERS' COMPENSATION AT (401) 462-8116 FOR THE INFORMATION.

**INSURANCE CARRIER:**
Name: Beacon Mutual
Address: One Beacon Ctr
City: Warwick   State: RI  Zip: 02886
Phone: 401-825-2667

**ADJUSTING COMPANY:**
Name:
Address:
City:          State:      Zip:
Phone:

**EMPLOYEE'S INJURY INFORMATION:**

Injury Date: 10/3/13          Incapacity Date:

SECTION 28-33-8(b) OF THE RHODE ISLAND WORKERS' COMPENSATION ACT PROVIDES FOR A $20.00 FEE TO BE CHARGED FOR THE TIMELY FILING OF THIS FORM WITHIN ONE WEEK OF THE DUE DATE.

1. Current and anticipated further treatment, including type, frequency, and duration of treatment(s) is as follows: (If none, so state.)
Complete Strenghtening P.T. ✓

2. The employee's anticipated date of discharge is as follows: (If the employee has already been discharged, so state.) 2-3 mths

3. Can the employee return to his or her former position of employment? (Yes) or No

4. (a) If the employee cannot return to his or her former position of employment, is the employee capable of work other than his or her former position of employment: Yes or (No)
(b) The employee's work restrictions/capabilities are as follows:

| | |
|---|---|
| ☐ no operating heavy machinery or vehicles | ☐ no push/pull _____ lbs. |
| ☐ no climbing ladders or stairs | ☐ alternate standing/sitting |
| ☐ may lift up to _____ lbs. only | ☐ no work involving use of right/left _____ |
| ☐ no reaching above shoulders | ☐ sit down work only |
| ☐ no repetitive twisting, bending | ☐ keep wound clean and dry |
| ☐ no repetitive stooping, kneeling, squatting | ☐ other _____ |

5. Has the employee reached maximum medical improvement? Yes or (No)

Physician's Signature: _____ Lic. # RI 446   Date: 2/25/14
Physician's Name: Dr. michael Souza    Title: DO
Phys. Asst. Sig. _____ Supervising Phys. Name: _____

Name of Facility: MCS, Inc.  Facility Address: 2761 Pawtucket ave, E.P. RI, 02914

Subscribed and sworn to before me by the above-named physician this 25 day of February 2014

AnaMarie Saks
Notary Public
My Commission Expires: 2/14/16

MAB01 – 03/09 ORIGINAL, SIGNED AND NOTARIZED – MEDICAL ADVISORY BOARD, COPY TO INSURER/SELF-INSURED EMPLOYER
COPY TO PHYSICIAN'S FILE, COPY TO EMPLOYEE AND HIS/HER ATTORNEY
6/2010

# Exhibit 9

## SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS

This Settlement Agreement and General Release of Claims ("Agreement") is entered into by and between the Rhode Island Public Transit Authority (the "Authority"), on behalf of itself, its present or former officers, directors, subsidiaries, parents, affiliates, partners, employees agents, insurers, attorneys, accountants, executors, administrators, successors and assigns and all affiliated entities and Mickeda Barnes on behalf of herself, her representatives, agents, estates, heirs, successors and assigns ("Employee") (collectively referred to as the "Parties") for good and valuable consideration.

Employee and the Authority desire to settle fully and finally all differences between them including, without implication or limitation, the claims and allegations set forth in the complaints filed in the Rhode Island Superior Court, and removed, or subject to removal, to the United States District Court for the District of Rhode Island, captioned <u>Mickeda Barnes v. Rhode Island Public Transit Authority,</u> 1:17-cv-00505-JJM-PAS and <u>Mickeda Barnes v. Rhode Island Public Transit Authority, et al,</u> PC-2018-2287 (the "Lawsuits").

In consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to the following terms and conditions:

1. **Payment.**

(a) In consideration of the release and all of the promises and representations made by Employee in this Agreement, the Authority will pay to Employee the total gross amount of ONE HUNDRED AND FIFTY THOUSAND DOLLARS AND ZERO CENTS ($150,000.00) which amount shall be paid as follows: (1) a check payable to "Mickeda Barnes" in the amount of Fifty-Five Thousand Dollars and Zero Cents ($55,000.00), less applicable withholdings in

Firmwide:151655351.8 088768.1003

d in Providence/Bristol County Superior Court
omitted: 8/27/2020 10:27 AM
relope: 2721171
iewer: Victoria H.

CV-00213-3JM-PAS    Document 5    Filed 06/03/22    Page 189 of 577 PageID #: 1233

settlement of Employee's claims for economic loss issued on a W-2; (2) a check payable to "Mickeda Barnes" in the amount of Fifty-Five Thousand Dollars and Zero Cents ($55,000.00), without withholdings, in settlement of Employee's claims for non-economic damages, issued on a Form 1099; and (3) one check payable to "Sonja Deyoe as attorney for Mickeda Barnes" in the amount of Forty Thousand Dollars and Zero Cents ($40,000.00) without withholdings, in settlement of Employee's claims for attorneys' fees, issued on a Form 1099.

(b)    The Authority will deliver all payments to Employee's attorney, Sonja Deyoe, Esq., 395 Smith Street, Providence, RI 02908, by overnight express mail or other secure means, within fourteen (14) calendar days from the expiration of the seven (7) day revocation period set forth in Paragraph 3(b), and only if the Authority's counsel has received two (2) originals of this Agreement executed by Employee, fully executed Forms W-4 and W-9 from Employee, and a Form W-9 from Employee's attorney.

(c)    Employee acknowledges and agrees that the above-referenced payments represent valuable consideration that the Authority is not otherwise obligated to provide her.

(d)    Employee acknowledges and agrees that the Authority makes no representation of any kind as to the income or other tax consequences of the payment and further acknowledges and agrees that she is solely responsible for all of her tax obligations, if any, including but not limited to all reporting and payment obligations, which may arise as a consequence of this settlement. Employee hereby agrees to indemnify and hold the Authority harmless from and against any and all loss, cost, expense (including attorneys' fees), interest, payments or penalties incurred by the Authority on account of Employee's failure to pay tax properly payable by her. Employee understands and agrees that the Authority has no duty to defend any claim or assertion

...d in Providence/Bristol County Superior Court
omitted: 8/27/2020 10:27 AM
velope: 2721171
viewer: Victoria H

CV-00213-JM-PAS    Document 5    Filed 06/03/22    Page 190 of 577 PageID
#: 1234

in connection with Employee's tax treatment of the proceeds of this payment, and Employee agrees to assume full responsibility for defending against any such claim or assertion.

2.      Release of Claims.

(a)      In exchange for and in consideration of the payment received pursuant to this Agreement, Employee agrees to release the Authority, its present and former direct and indirect parent entities, direct and indirect subsidiaries, partners, insurers, successors and assigns, and their present and former employees, officers, directors, shareholders, agents, attorneys and representatives (the "Releasees") from each and every claim or demand of every kind arising up to the date Employee signs this Agreement, including but not limited to those claims made by Employee in the Lawsuits. This includes a release of any rights or claims for any and all types of relief, including but not limited to back pay, front pay, compensatory and punitive damages, attorneys' fees and costs, and equitable orders, which Employee may have in any tort or contract action, any equitable action, any declaratory judgment action, or any action under Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment based on race, religion, color, national origin or sex; the Rhode Island Fair Employment Practices Act which, in addition to the classes protected in the law referenced above, additionally prohibits discrimination based on disability, country of ancestral origin, sexual orientation and gender identity and expression; the Americans with Disabilities Act of 1990, which prohibits discrimination against disabled persons; the Age Discrimination in Employment Act of 1967, ("ADEA"); the Older Worker Benefit Protection Act of 1990 ("OWBPA"); the National Labor Relations Act ("NLRA"); the Family Medical Leave Act; the Rhode Island Parental and Family Medical Leave Act; the Rhode Island Civil Rights Act; the Civil Rights of Individuals with Disabilities Act; the Rhode Island Personnel Files Act, the Employee Retirement Income Security Act, the Labor Management

*[handwritten margin notes: "I claim Title 6 of Rehabilitation act of 1973 (Section 504)" (left margin); "This proves a Discrimination Settlement" and "A All claim Release would do at the beginning of agreement" (right margin); "MB" (bottom center)]*

nd in Providence County Superior Court
omitted: 8/27/2020 10:27 AM
velope: 2721171
iewer: Victoria H

Relations Act; any amendments to the foregoing, and/or any other federal, state or local laws or regulations, whether or not included in the above non-exhaustive list. Employee also releases the Releasees from any claim for defamation, libel, slander, constructive or wrongful discharge, any claim that the Releasees dealt with her unfairly, breached any agreement or contract, including any breach of any collective bargaining agreement or any suit brought under Section 301 of the Labor Management Relations Act and/or any other claims whether arising under statutory or common law. No claim has been made by Barnes that she suffered sexual harassment or sexual abuse nor payment made to Barnes to resolve claims of sexual harassment or sexual abuse in the instant litigation such as those are defined by Internal Revenue Code Section 162 (q).

(b)     Employee agrees to indemnify and hold the Releasees harmless from and against any and all damages for back pay, lost wages, front pay, the value of lost benefits, emotional distress, or pain and suffering incurred by the Releasees as a result of any claims against Releasees by way of action for contribution, joint and/or several liability, indemnification or that are in any way derivative of claims Employee has brought, or may bring, against any third parties, including but not limited to claims against labor unions, union representatives, or any claims set forth in the Lawsuits. Employee agrees to release and discharge the Releasees not only from any and all claims which Employee could make on her own behalf, but she also specifically waives any right to become, and promises not to become, a member of any class in any proceeding or case in which a claim or claims against the Releasees may arise, in whole or in part, from any event which occurred as of the date of this Agreement. The Parties agree that if Employee, by no action of her own, becomes a mandatory member of any class from which Employee cannot, by operation of law or order of court, opt out, she will not be required to pay for any legal fees or costs incurred by the Releasees as a result. Although Employee is releasing

Firmwide:151655351.8 088768.1003

...d in Providence/Bristol County Superior Court
...omitted: 8/27/2020 10:27 AM CV-00213-JM-PAS    Document 5    Filed 06/08/22    Page 192 of 577 PageID #: 1230
...relope: 2721171
...viewer: Victoria H

*[handwritten top margin: Release, Can't let go, Waiver the rights]*

all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of her waiver of age claims under the ADEA and OWBPA.

(c)    This release covers claims that Employee knows about, and those that she may not know about, up through the date of this Agreement. *[handwritten: The Action or Process of releasing being Released]*

(d)    Despite any language herein to the contrary, Employee does not release claims that may arise after Employees signs this Agreement or that by law cannot be released by private agreement. For example, this Agreement does not release claims for unemployment insurance or workers' compensation benefits. *[handwritten left margin: Does Not cover workers Compensation? or Unemployment Insurance]*

(e)    After the parties had reached agreement in principal, Employee filed the above-reference suit in Rhode Island Superior Court, Case No. PC-2018-2287. As a result, the Parties hereby agree that, except to enforce the provisions of this Agreement, should Employee bring any claim, action, or suit on any matter covered by the releases set forth in this Paragraph 2, against the Releasees, this Agreement may be asserted as a complete defense, and if the Releasees, collectively or individually, prevail, Employee shall be responsible for liquidated damages in the amount of $10,000 per violation or paying the attorneys' fees and costs that the prevailing Releasee(s) incurs in opposing such claim, whichever is less, in addition to any other relief to which the Releasee(s) may be entitled. Although Employee is releasing all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of her release of age claims under the ADEA and OWBPA. *[handwritten right margin: Which one is Paragraph 2?]* *[handwritten left margin: Has to be Covered by the Release or Right to use this as Defense]*

3.    **Age Discrimination in Employment Act ("ADEA").**

(a)    Twenty-One (21) Day Consideration Period. Employee shall have twenty-one (21) days to consider and accept the terms of this Agreement by fully executing it below, and returning it to counsel for the Authority, Jillian Folger-Hartwell, One Financial Plaza, Ste. 2205, *[handwritten right margin: I am NOT a Employee Terminated]*

Providence, RI 02903. Employee hereby acknowledges and agrees that she has been and is by this Agreement advised in writing, during this twenty-one (21) day period, to consult with an attorney of her choosing regarding the terms and provisions of this Agreement. Employee may sign the Agreement of her own volition prior to the conclusion of the twenty-one (21) day period. Any changes to this Agreement, whether material or immaterial, do not restart the running of this twenty-one (21) calendar day review period.

(b)     Revocation Period. Employee understands that she has a period of seven (7) calendar days after the date that she signs this Agreement ("Revocation Period") to revoke her acceptance of the terms of this Agreement by delivering a written notification to counsel for the Authority, Jillian Folger-Hartwell, One Financial Plaza, Ste. 2205, Providence, RI 02903. If Employee revokes this Agreement, it shall not be effective or enforceable and the Authority will not tender the payments set forth in Paragraph 1 of this Agreement. If Employee does not revoke this Agreement prior to the expiration of this seven (7) day period, this Agreement shall take effect at that time as a legally binding agreement between the Parties on the basis set forth herein.

4.     Dismissal of Lawsuits. Employee agrees to sign and return with the signed copy of this Agreement the stipulations attached as Exhibit A and Exhibit B. The Company will file the signed stipulations with the United States District Court for the District of Rhode Island and the Rhode Island Superior Court, respectively. Employee agrees to take any and all measures reasonably required to comply with or effectuate the dismissal, with prejudice, of the Lawsuits.

5.     No Admission of Liability. This Agreement shall not in any way be construed as an admission by the Authority that it acted wrongfully or failed to act lawfully with respect to Employee, or any other person, or that Employee has any rights whatsoever against the

Firmwide:151655351.8 088768.1003

in Providence/Bristol County Superior Court
omitted: 8/27/2020 10:27 AM
relope: 2721171
iewer: Victoria H

CV-00215-JJM-PAS    Document 5    Filed 06/03/22    Page 194 of 577 PageID
#: 1238

Authority. The Authority specifically disclaims any liability for any wrongful acts or omissions against Employee or any other person, on the part of itself, its employees, officers, directors and agents, past and present. Neither this Agreement nor anything in it shall be admissible in any proceeding as evidence of any unlawful or wrongful conduct by the Authority.

6.    **No Assignment.** The Parties represent and warrant that no person other than the Parties had or have any interest in the matters referred to in this Agreement, that the Parties have the sole right and exclusive authority to execute this Agreement, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this Agreement.

7.    **No Additional Payments.**

(a)    Employee agrees and avers that she has been paid and/or has received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled, that she has suffered no known workplace injuries prior to the date of her execution of this Agreement other than those that she has already revealed to the Authority, and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to her, except as provided in Paragraph 1 or as she may obtain in the litigation of her existing workers' compensation claims.

(b)    In entering into this Agreement, the Parties have fully considered Medicare's interests, pursuant to the Medicare Secondary Payer rules, and in doing so, Employee has declared that her claim does not involve any illness, injury, incident, or accident in which medical expenses were incurred or are expected to be incurred in which Medicare has or may have an interest. Further, Employee affirms no conditional payments have been made to her by Medicare. If Medicare (or an agency representing Medicare's interests) later determines that it

*[handwritten annotations: "My Right To Reinstate Next Was Still Existing IN W/C Court even NOW? and I was paid only some weeks in Oct 22, 2019"]*

*[handwritten annotation left: "How Can I Consider my own medicare set aside when we use medication or for my two years medicare set a side when this was signed?"]*

*[handwritten annotation: "I Still Have Injuries I Have Court on Sept 9, 2020"]*

does have an interest in the payments made pursuant to the Agreement, Employee will indemnify the Releasees for any payments and/or penalties they submit to Medicare (or the agency collecting on behalf of Medicare) as a result of the payments under this Agreement.

8.   **Confidentiality.**

(a)   Employee agrees to maintain the confidentiality of this Agreement and will not disclose in any fashion this Agreement, the amount of this settlement, and/or the substance or content of discussions involved in reaching this Agreement, to any person other than the Employee's attorneys, accountants, spouse, and tax advisors as required by appropriate taxing authorities, or as required by law. If inquiries are made of Employee regarding this Agreement, or the substance of this Agreement, by any other person, Employee will state that the case is resolved and shall not further characterize this settlement.

(b)   Employee understands that the confidentiality restrictions of this Paragraph 8 extend to social media, including, but not limited to, blogs, virtual worlds, social or professional networking websites, and/or video sharing websites ("Social Media").

9.   **Non-disparagement.** Employee agrees to make no negative, derogatory or disparaging comments, oral or written, publicly or in private, via Social Media or otherwise, about the Releasees or their products, services, business practices and philosophies, including any comments that reasonably could be considered (a) damaging or injurious to the Releasees' goodwill; (b) harmful to the Releasees' business interests; or (c) to impact negatively on the Releasees' business reputation or reputation in the community.

10.   **No Future Employment.** Employee agrees not to reapply for employment with the Authority, any subsidiary, related, affiliated or parent entity or any entity which is now or in the future owned, controlled, acquired by the Authority. Employee further agrees that if she reapplies or applies for employment with the Authority, or any entity described above, her

Submitted in Providence/Bristol County Superior Court
Submitted: 8/27/2020 10:27 AM
Envelope: 2721171
Reviewer: Victoria H.

CV-00215-JJM-PAS    Document 5    Filed 06/03/22    Page 196 of 577 PageID
#: 1240

application may be denied on the basis of this Agreement. Employee agrees to waive any right
to reinstatement to which she may be entitled under R.I. Gen. Laws §28-33-47, and if reinstated
thereunder, she agrees to immediately and voluntarily resign from employment. This provision
shall not be construed so widely as to bar the Employee from applying for work or working for
the State of Rhode Island or the Rhode Island Department of Transportation.

11.    **Amendment.**  This Agreement may not be modified, altered or changed except
upon express written consent of both Parties.

12.    **Governing Law.**  This Agreement will be governed by and performed in
accordance with the laws of the State of Rhode Island without regard to its conflict of laws
provision.

13.    **Suits to Enforce.**  In any lawsuit brought to enforce the terms of this Agreement,
the prevailing party shall also be entitled to recover from the other party court costs and
reasonable attorneys' fees. Although Employee is releasing all claims she has against Releasees,
this provision does not prohibit and does not apply to a challenge to the knowing and voluntary
nature of this Agreement under the ADEA and OWBPA.

14.    **Severability.**  Should any provision of this Agreement be declared or determined
by any court or other tribunal of appropriate jurisdiction to be invalid or unenforceable, any such
invalid or unenforceable provision shall be deemed stricken and severed from this Agreement
and any and all of the other terms of the Agreement shall remain in full force and effect to the
fullest extent permitted by law.

15.    **Entire Agreement.**  This Agreement is the sole agreement between Employee
and the Authority. Any other prior agreements between the Parties are hereby terminated and
shall have no further force or effect. This Agreement may be amended in writing, only by a

Firmwide:151655351.8 088768.1003                    Page 185

document executed by both Parties. The Authority has made no promises to Employee other than those set forth in this Agreement.

16. **Captions.** The paragraph captions in this Agreement are for convenience only and shall neither affect the meaning of the provisions of this Agreement, nor be used in construing this Agreement.

17. **Acknowledgement of Voluntariness and Understanding.** Employee represents and agrees that she has been advised to and has had the opportunity to thoroughly discuss all aspects of this Agreement with an attorney, that she has carefully read and fully understands all of the provisions of this Agreement, that she is voluntarily entering into this Agreement, and that she does not and has not relied in any way on any representations or statements of the Authority or its attorneys not contained in this Agreement.

18. **No Interference with Rights.** Nothing in this Agreement including but not limited to the release of claims, class and collective action waiver, promise not to sue, confidentiality, cooperation, non-disparagement, withdrawal of charge, no future employment, and attorneys' fees shifting provisions, (a) limit or affects Employee's right to challenge the validity of this Agreement under the ADEA or the OWBPA, (b) prevents Employee from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the Equal Employment Opportunity Commission, National Labor Relations Board, the Securities and Exchange Commission, Rhode Island Commission for Human Rights, or any other any federal, state or local agency charged with the enforcement of any laws, including providing documents or any other information, or (c) limits Employee from exercising rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees, although by signing this

Agreement Employee is waiving rights to individual relief (including backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint, lawsuit or other proceeding brought by Employee or on Employee's behalf by any third party, except for any right Employee may have to receive a payment from a government agency (and not the Authority) for information provided to the government agency or otherwise where prohibited.

**PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

_____
Mickeda Barnes

Date: _____4-25-18_____

Rhode Island Public Transit Authority

By: _____

Title: _____

Date: _____

*[handwritten annotation]* But No Body From Ripta Signed It. Jillian Submitted Yhis to the Court No signature.

Case Number: PC-2020-08065
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

1:20-cv-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 199 of 577 PageID #: 1243

## SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS

This Settlement Agreement and General Release of Claims ("Agreement") is entered into by and between the Rhode Island Public Transit Authority (the "Authority"), on behalf of itself, its present or former officers, directors, subsidiaries, parents, affiliates, partners, employees agents, insurers, attorneys, accountants, executors, administrators, successors and assigns and all affiliated entities and Mickeda Barnes on behalf of herself, her representatives, agents, estates, heirs, successors and assigns ("Employee") (collectively referred to as the "Parties") for good and valuable consideration.

Employee and the Authority desire to settle fully and finally all differences between them including, without implication or limitation, the claims and allegations set forth in the complaints filed in the Rhode Island Superior Court, and removed, or subject to removal, to the United States District Court for the District of Rhode Island, captioned <u>Mickeda Barnes v. Rhode Island Public Transit Authority</u>, 1:17-cv-00505-JJM-PAS and <u>Mickeda Barnes v. Rhode Island Public Transit Authority, et al</u>, PC-2018-2287 (the "Lawsuits").

In consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to the following terms and conditions:

1.    **Payment.**

(a)    In consideration of the release and all of the promises and representations made by Employee in this Agreement, the Authority will pay to Employee the total gross amount of ONE HUNDRED AND FIFTY THOUSAND DOLLARS AND ZERO CENTS ($150,000.00) which amount shall be paid as follows: (1) a check payable to "Mickeda Barnes" in the amount of Fifty-Five Thousand Dollars and Zero Cents ($55,000.00), less applicable withholdings in

Firmwide:151655351.8 088768.1003

settlement of Employee's claims for economic loss issued on a W-2; (2) a check payable to "Mickeda Barnes" in the amount of Fifty-Five Thousand Dollars and Zero Cents ($55,000.00), without withholdings, in settlement of Employee's claims for non-economic damages, issued on a Form 1099; and (3) one check payable to "Sonja Deyoe as attorney for Mickeda Barnes" in the amount of Forty Thousand Dollars and Zero Cents ($40,000.00) without withholdings, in settlement of Employee's claims for attorneys' fees, issued on a Form 1099.

(b)     The Authority will deliver all payments to Employee's attorney, Sonja Deyoe, Esq., 395 Smith Street, Providence, RI 02908, by overnight express mail or other secure means, within fourteen (14) calendar days from the expiration of the seven (7) day revocation period set forth in Paragraph 3(b), and only if the Authority's counsel has received two (2) originals of this Agreement executed by Employee, fully executed Forms W-4 and W-9 from Employee, and a Form W-9 from Employee's attorney.

(c)     Employee acknowledges and agrees that the above-referenced payments represent valuable consideration that the Authority is not otherwise obligated to provide her.

(d)     Employee acknowledges and agrees that the Authority makes no representation of any kind as to the income or other tax consequences of the payment and further acknowledges and agrees that she is solely responsible for all of her tax obligations, if any, including but not limited to all reporting and payment obligations, which may arise as a consequence of this settlement.  Employee hereby agrees to indemnify and hold the Authority harmless from and against any and all loss, cost, expense (including attorneys' fees), interest, payments or penalties incurred by the Authority on account of Employee's failure to pay tax properly payable by her. Employee understands and agrees that the Authority has no duty to defend any claim or assertion

in connection with Employee's tax treatment of the proceeds of this payment, and Employee agrees to assume full responsibility for defending against any such claim or assertion.

2.  **Release of Claims.**

(a)  In exchange for and in consideration of the payment received pursuant to this Agreement, Employee agrees to release the Authority, its present and former direct and indirect parent entities, direct and indirect subsidiaries, partners, insurers, successors and assigns, and their present and former employees, officers, directors, shareholders, agents, attorneys and representatives (the "Releasees") from each and every claim or demand of every kind arising up to the date Employee signs this Agreement, including but not limited to those claims made by Employee in the Lawsuits. This includes a release of any rights or claims for any and all types of relief, including but not limited to back pay, front pay, compensatory and punitive damages, attorneys' fees and costs, and equitable orders, which Employee may have in any tort or contract action, any equitable action, any declaratory judgment action, or any action under Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment based on race, religion, color, national origin or sex; the Rhode Island Fair Employment Practices Act which, in addition to the classes protected in the law referenced above, additionally prohibits discrimination based on disability, country of ancestral origin, sexual orientation and gender identity and expression; the Americans with Disabilities Act of 1990, which prohibits discrimination against disabled persons; the Age Discrimination in Employment Act of 1967, ("ADEA"); the Older Worker Benefit Protection Act of 1990 ("OWBPA"); the National Labor Relations Act ("NLRA"); the Family Medical Leave Act; the Rhode Island Parental and Family Medical Leave Act; the Rhode Island Civil Rights Act; the Civil Rights of Individuals with Disabilities Act; the Rhode Island Personnel Files Act, the Employee Retirement Income Security Act, the Labor Management

*MB*

Relations Act; any amendments to the foregoing, and/or any other federal, state or local laws or regulations, whether or not included in the above non-exhaustive list. Employee also releases the Releasees from any claim for defamation, libel, slander, constructive or wrongful discharge, any claim that the Releasees dealt with her unfairly, breached any agreement or contract, including any breach of any collective bargaining agreement or any suit brought under Section 301 of the Labor Management Relations Act and/or any other claims whether arising under statutory or common law. No claim has been made by Barnes that she suffered sexual harassment or sexual abuse nor payment made to Barnes to resolve claims of sexual harassment or sexual abuse in the instant litigation such as those are defined by Internal Revenue Code Section 162 (q).

(b) Employee agrees to indemnify and hold the Releasees harmless from and against any and all damages for back pay, lost wages, front pay, the value of lost benefits, emotional distress, or pain and suffering incurred by the Releasees as a result of any claims against Releasees by way of action for contribution, joint and/or several liability, indemnification or that are in any way derivative of claims Employee has brought, or may bring, against any third parties, including but not limited to claims against labor unions, union representatives, or any claims set forth in the Lawsuits. Employee agrees to release and discharge the Releasees not only from any and all claims which Employee could make on her own behalf, but she also specifically waives any right to become, and promises not to become, a member of any class in any proceeding or case in which a claim or claims against the Releasees may arise, in whole or in part, from any event which occurred as of the date of this Agreement. The Parties agree that if Employee, by no action of her own, becomes a mandatory member of any class from which Employee cannot, by operation of law or order of court, opt out, she will not be required to pay for any legal fees or costs incurred by the Releasees as a result. Although Employee is releasing

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06085
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

1:20-cv-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 203 of 577 PageID
#: 1247

all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of her waiver of age claims under the ADEA and OWBPA.

(c)    This release covers claims that Employee knows about, and those that she may not know about, up through the date of this Agreement.

(d)    Despite any language herein to the contrary, Employee does not release claims that may arise after Employees signs this Agreement or that by law cannot be released by private agreement. For example, this Agreement does not release claims for unemployment insurance or workers' compensation benefits.

(e)    After the parties had reached agreement in principal, Employee filed the above-reference suit in Rhode Island Superior Court, Case No. PC-2018-2287. As a result, the Parties hereby agree that, except to enforce the provisions of this Agreement, should Employee bring any claim, action, or suit on any matter covered by the releases set forth in this Paragraph 2, against the Releasees, this Agreement may be asserted as a complete defense, and if the Releasees, collectively or individually, prevail, Employee shall be responsible for liquidated damages in the amount of $10,000 per violation or paying the attorneys' fees and costs that the prevailing Releasee(s) incurs in opposing such claim, whichever is less, in addition to any other relief to which the Releasee(s) may be entitled. Although Employee is releasing all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of her release of age claims under the ADEA and OWBPA.

3.    **Age Discrimination in Employment Act ("ADEA").**

(a)    **Twenty-One (21) Day Consideration Period.** Employee shall have twenty-one (21) days to consider and accept the terms of this Agreement by fully executing it below, and returning it to counsel for the Authority, Jillian Folger-Hartwell, One Financial Plaza, Ste. 2205,

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

-cv-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 204 of 577 PageID #: 1248

Providence, RI 02903. Employee hereby acknowledges and agrees that she has been and is by this Agreement advised in writing, during this twenty-one (21) day period, to consult with an attorney of her choosing regarding the terms and provisions of this Agreement. Employee may sign the Agreement of her own volition prior to the conclusion of the twenty-one (21) day period. Any changes to this Agreement, whether material or immaterial, do not restart the running of this twenty-one (21) calendar day review period.

(b)    Revocation Period. Employee understands that she has a period of seven (7) calendar days after the date that she signs this Agreement ("Revocation Period") to revoke her acceptance of the terms of this Agreement by delivering a written notification to counsel for the Authority, Jillian Folger-Hartwell, One Financial Plaza, Ste. 2205, Providence, RI 02903. If Employee revokes this Agreement, it shall not be effective or enforceable and the Authority will not tender the payments set forth in Paragraph 1 of this Agreement. If Employee does not revoke this Agreement prior to the expiration of this seven (7) day period, this Agreement shall take effect at that time as a legally binding agreement between the Parties on the basis set forth herein.

4.    Dismissal of Lawsuits. Employee agrees to sign and return with the signed copy of this Agreement the stipulations attached as Exhibit A and Exhibit B. The Company will file the signed stipulations with the United States District Court for the District of Rhode Island and the Rhode Island Superior Court, respectively. Employee agrees to take any and all measures reasonably required to comply with or effectuate the dismissal, with prejudice, of the Lawsuits.

5.    No Admission of Liability. This Agreement shall not in any way be construed as an admission by the Authority that it acted wrongfully or failed to act lawfully with respect to Employee, or any other person, or that Employee has any rights whatsoever against the

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06085
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

1:20-cv-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 205 of 577 PageID #: 1249

Authority. The Authority specifically disclaims any liability for any wrongful acts or omissions against Employee or any other person, on the part of itself, its employees, officers, directors and agents, past and present. Neither this Agreement nor anything in it shall be admissible in any proceeding as evidence of any unlawful or wrongful conduct by the Authority.

6.  **No Assignment.** The Parties represent and warrant that no person other than the Parties had or have any interest in the matters referred to in this Agreement, that the Parties have the sole right and exclusive authority to execute this Agreement, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this Agreement.

7.  **No Additional Payments.**

(a)  Employee agrees and avers that she has been paid and/or has received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled, that she has suffered no known workplace injuries prior to the date of her execution of this Agreement other than those that she has already revealed to the Authority, and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to her, except as provided in Paragraph 1 or as she may obtain in the litigation of her existing workers' compensation claims.

(b)  In entering into this Agreement, the Parties have fully considered Medicare's interests, pursuant to the Medicare Secondary Payer rules, and in doing so, Employee has declared that her claim does not involve any illness, injury, incident, or accident in which medical expenses were incurred or are expected to be incurred in which Medicare has or may have an interest. Further, Employee affirms no conditional payments have been made to her by Medicare. If Medicare (or an agency representing Medicare's interests) later determines that it

Firmwide:151655351.8 088768.1003

Page 894

Case Number: PC-2020-06085
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

1:20-cv-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 206 of 577 PageID
#: 1250

does have an interest in the payments made pursuant to the Agreement, Employee will

indemnify the Releasees for any payments and/or penalties they submit to Medicare (or the

agency collecting on behalf of Medicare) as a result of the payments under this Agreement.

8.    **Confidentiality.**

(a)    Employee agrees to maintain the confidentiality of this Agreement and will not

disclose in any fashion this Agreement, the amount of this settlement, and/or the substance or

content of discussions involved in reaching this Agreement, to any person other than the

Employee's attorneys, accountants, spouse, and tax advisors as required by appropriate taxing

authorities, or as required by law.  If inquiries are made of Employee regarding this Agreement,

or the substance of this Agreement, by any other person, Employee will state that the case is

resolved and shall not further characterize this settlement.

(b)    Employee understands that the confidentiality restrictions of this Paragraph 8

extend to social media, including, but not limited to, blogs, virtual worlds, social or professional

networking websites, and/or video sharing websites ("Social Media").

9.    **Non-disparagement.**  Employee agrees to make no negative, derogatory or

disparaging comments, oral or written, publicly or in private, via Social Media or otherwise,

about the Releasees or their products, services, business practices and philosophies, including

any comments that reasonably could be considered (a) damaging or injurious to the Releasees'

goodwill; (b) harmful to the Releasees' business interests; or (c) to impact negatively on the

Releasees' business reputation or reputation in the community.

10.    **No Future Employment.**  Employee agrees not to reapply for employment with

the Authority, any subsidiary, related, affiliated or parent entity or any entity which is now or in

the future owned, controlled, acquired by the Authority.  Employee further agrees that if she

reapplies or applies for employment with the Authority, or any entity described above, her

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

Case 1:21-cv-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 207 of 577 PageID #: 1251

application may be denied on the basis of this Agreement. Employee agrees to waive any right to reinstatement to which she may be entitled under R.I. Gen. Laws §28-33-47, and if reinstated thereunder, she agrees to immediately and voluntarily resign from employment. This provision shall not be construed so widely as to bar the Employee from applying for work or working for the State of Rhode Island or the Rhode Island Department of Transportation.

11.  **Amendment.**  This Agreement may not be modified, altered or changed except upon express written consent of both Parties.

12.  **Governing Law.**  This Agreement will be governed by and performed in accordance with the laws of the State of Rhode Island without regard to its conflict of laws provision.

13.  **Suits to Enforce.**  In any lawsuit brought to enforce the terms of this Agreement, the prevailing party shall also be entitled to recover from the other party court costs and reasonable attorneys' fees. Although Employee is releasing all claims she has against Releasees, this provision does not prohibit and does not apply to a challenge to the knowing and voluntary nature of this Agreement under the ADEA and OWBPA.

14.  **Severability.**  Should any provision of this Agreement be declared or determined by any court or other tribunal of appropriate jurisdiction to be invalid or unenforceable, any such invalid or unenforceable provision shall be deemed stricken and severed from this Agreement and any and all of the other terms of the Agreement shall remain in full force and effect to the fullest extent permitted by law.

15.  **Entire Agreement.**  This Agreement is the sole agreement between Employee and the Authority. Any other prior agreements between the Parties are hereby terminated and shall have no further force or effect. This Agreement may be amended in writing, only by a

Case Number: PC-2020-06085
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

1:20-cv-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 208 of 577 PageID
#: 1252

document executed by both Parties. The Authority has made no promises to Employee other than those set forth in this Agreement.

16.  **Captions.**  The paragraph captions in this Agreement are for convenience only and shall neither affect the meaning of the provisions of this Agreement, nor be used in construing this Agreement.

17.  **Acknowledgement of Voluntariness and Understanding.**  Employee represents and agrees that she has been advised to and has had the opportunity to thoroughly discuss all aspects of this Agreement with an attorney, that she has carefully read and fully understands all of the provisions of this Agreement, that she is voluntarily entering into this Agreement, and that she does not and has not relied in any way on any representations or statements of the Authority or its attorneys not contained in this Agreement.

18.  **No Interference with Rights.**  Nothing in this Agreement including but not limited to the release of claims, class and collective action waiver, promise not to sue, confidentiality, cooperation, non-disparagement, withdrawal of charge, no future employment, and attorneys' fees shifting provisions, (a) limit or affects Employee's right to challenge the validity of this Agreement under the ADEA or the OWBPA, (b) prevents Employee from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the Equal Employment Opportunity Commission, National Labor Relations Board, the Securities and Exchange Commission, Rhode Island Commission for Human Rights, or any other any federal, state or local agency charged with the enforcement of any laws, including providing documents or any other information, or (c) limits Employee from exercising rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees, although by signing this

Firmwide:151655351.8 088768.1003

Case Number: PC-2020-08069
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

Agreement Employee is waiving rights to individual relief (including backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint, lawsuit or other proceeding brought by Employee or on Employee's behalf by any third party, except for any right Employee may have to receive a payment from a government agency (and not the Authority) for information provided to the government agency or otherwise where prohibited.

**PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

Mickeda Barnes

Date: 4-25-18

Rhode Island Public Transit Authority

By: _____

Title: Chief Legal Counsel

Date: 5/21/18

STATE OF RHODE ISLAND
PROVIDENCE, SC

SUPERIOR COURT

| | | |
|---|---|---|
| RHODE ISLAND PUBLIC TRANSIT AUTORITY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. PC-2020-06065 |
| v. | ) | |
| | ) | |
| MICKEDA BARNES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>AFFIDAVIT OF BENJAMIN SALZILLO</u>

I, Benjamin Salzillo, do hereby depose and state as follows:

1.    I make the statements contained in this Affidavit based on my personal knowledge and am competent to testify as to all facts stated herein.

2.    I previously served as Chief Legal Counsel at Rhode Island Public Transit Authority ("RIPTA"), 705 Elmwood Avenue, Providence, RI 02907. I left that position in September 2018.

3.    During negotiation of, through execution of, the Settlement Agreement, attached as Exhibit 1, Attorney Sonya Deyoe represented to RIPTA that she was engaged as counsel for Mickeda Barnes ("Barnes").

4.    In entering the settlement agreement, RIPTA hoped the substantial sum and the comprehensive release would finally end Barnes' multiple charges and lawsuits.

5.    During my tenure as Chief Legal Counsel, Attorney Stephen Dennis represented Barnes throughout her workers' compensation petitions and the discussions concerning settling her workers' compensation claims.

6.      To my knowledge, Barnes never exercised her right to revoke the Settlement Agreement, and she accepted the payment of one hundred fifty thousand dollars ($150,000) from RIPTA.

SIGNED UNDER PENALTIES OF PERJURY THIS 12ᵗʰ DAY OF FEBRUARY 2022.

_____
Benjamin Salzillo

STATE OF RHODE ISLAND
COUNTY OF _Providence_

Subscribed and sworn to before me this 12ᵗʰ day of February, 2022.

_Reuben Fortes_
Notary Public
My commission expires: _10/18/25_
My commission number: _767733_

REUBEN FORTES
Notary Public-State of Rhode Island
ID# 767733
My Commission Expires
October 18, 2025

2

4862-5542-9129.1 / 088768-1017

# Exhibit 10

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA<br>[X] EEOC | 16EPD 105-03/06<br>16J-2016-00051 |

| Rhode Island Commission For Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mickeda S. Barnes | (401) 419-2250 | 01-31-1975 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 34 Dunbar Avenue, Rumford, RI 02916 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| AMALGAMATED TRANSIT UNION DIVISION 618 AFL-CIO | 201 - 500 | (401) 785-4020 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 172 Longfellow Street, Providence, RI 02907 | RECEIVED DEC 08 2015 | |

RI COMMISSION FOR HUMAN RIGHTS

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Thomas Cute, alias, Kevin Cole, alias, Nick DeCristophono, alias | 201 - 500 | (401) 575-8238 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 172 Longfellow Street, Providence, RI 02907 | | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| [X] RACE  [X] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN<br>[ ] RETALIATION  [ ] AGE  [X] DISABILITY  [ ] GENETIC INFORMATION<br>[ ] OTHER (Specify) | Earliest: 06-01-2015    Latest: 09-16-2015<br>[X] CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

1.  I am being denied equal representation by my union, Amalgamated Transit Union Division 618 AFL-CIO, Thomas Cute, alias, Kevin Cole, alias and Nick DeCristophono, alias.

2.  Respondents state no reason for discriminatory treatment I am forced to endure.

3.  I believe I was discriminated against on the basis of my race and color (black), sex (female), disability, perceived disability and/or record of a disability in that I was subjected to disparate treatment due to my protected class. I am a member in good standing. On or about July 2, 2015, I received a complaint made by the Fire Department and RIPTA Supervisors from Thomas Cute, to which the Union failed to properly investigate the complaint and/or provide me with equal representation. Further, Thomas Cute refused to accept my grievance and Nick DeCristophono failed to respond on my behalf without reason. It is important to note that Thomas, Kevin, and Nick pursue all grievances entered by workers (white) not in my protected

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | Zaida Rivera  My Comm Exp Nov 9, 201  ID# 751103 |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| | X Mickeda Barnes |
| X 12-8-2015  X Mickeda S. Barnes | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | 12-8-15 |

STATE OF RHODE ISLAND
COMMISSION FOR HUMAN RIGHTS

RICHR NO.   16 EPD 019               EEOC NO. 16J-2015-00323

In the matter of

Mickeda Barnes
          Complainant
                                          **NOTICE OF RIGHT TO SUE**
v.

Rhode Island Public Transit Authority
          Respondent

This NOTICE OF RIGHT TO SUE is issued to the above cited complainant pursuant to Section 28-5-24.1(a) of the General Laws of Rhode Island because more than one hundred and twenty (120) days and less than two (2) years have elapsed since the charge was filed, the Commission is unable to secure a settlement or conciliation agreement, the Commission has not commenced hearings on a complaint and the complainant has requested a Right to Sue.  It is also issued pursuant to Section 28-5-24.1(c) of the General Laws of Rhode Island because the respondent has elected to have the case heard and decided in superior court.  With the issuance of the NOTICE OF RIGHT TO SUE, the Commission is terminating any further processing of this charge.  If the parties agree, the Commission can seek to conciliate or mediate the settlement of this case within the next ninety (90) days.  Such conciliation or mediation efforts will NOT extend the time period within which the complainant must bring suit.

In the event that the above-cited matter includes allegations against individually-named employees of a respondent employer under the Rhode Island Fair Employment Practices Act, please note that recent Rhode Island Supreme Court decision in Mancini v. City of Providence, 155 A.3d 159 (RI 2017), held that employees of a respondent employer are not individually liable under the Act.  Please consult the decision and/or an attorney to determine how the decision affects this case.  The decision also may be found at: https://www.courts.ri.gov/Courts/SupremeCourt/SupremeOpinions/14-88 pdf

If the complainant intends to sue, s/he MUST DO SO WITHIN NINETY (90) DAYS FROM THE DATE OF THIS NOTICE: OTHERWISE THE RIGHT TO SUE IS LOST.

                                          On Behalf of the Commission

_____7/14/17_____                         _____
Date                                      Michael D. Évora
                                          Executive Director



Commusion of Human Rights                                    June 10, 2015

This is my formal Complaint against my
Employer RhodeIsland Public transportation Clurthorety
also known as (Ripta) for Violating State and
Federal laws in place for the Workplace.

1st RIGL Section 28-5-1 (Fair Employment Practics Act)
2nd RIGL Setion 42-87-1 (Civil Rights of people with Disabilites)
3rd RIGL Section 28-33-47 (Reinstatement to Employment)

My Employer has Repeatedly Violated my Rights for years
While I work for this Company. I have been blamed for
things I haven't Done I have been passed up for a
Supervisor position I have been Skipped for Senority
posetions Ive also have been Denied to Return to work
from a work Related injury. Ive been to my local union
618 Ive met with James from Seeurety Ive met with
Jim Dean my boss Ive met with Ben from Workers Compensation
Ive talked with Maureen Razoraw from human Resourses
Ive left messages with Ray Studley our Ceo and His
Director of Human Resouces Kathy Natcaw Which they
have not Returned my Call. I truly believe because
I am black and have a disability I am being treated like
Shit and In Her Eyes I am lucky to have a Job So Shut
up and drive and do what I tell him not what your Entitle

Nickeda Barnes   Ripta Complaint            Page 2

My Complaint is I have a Doctors note to Return to
work June 24, 2015 asking for Reinstatement to my
position from a workers Compensation Claim by which
they had me wait 14 weeks before they approved my
surgery even though they had two notes from the Dr
Peter Pizzorello for Surgery that sat on their Desk
for 4 weeks. I went out February 12, 2015 and my
Surgery was May 6, 2015. My Lawyer had Ripta
Sign a memorandom for my injuries which they
took full Responsibity for, My Post opt to Surgery
went well and I was told I Can Return to work
June 24, 2015 7weeks from Surgery. I Was told
by my boss Eddie King if I had my note in by
Friday two to three weeks before Choose up letting
them Know A date I'll be Returning to work after
my Injury I will be Set to Choose I Sent it in
no one Called me from upper management to ask me
about the Letter. I went to Speak with my boss
Eddie again he gave me a date of June 1, 2015
to Choose a Job and pick up my Summer Uniforms
I ordered. I then Came again which made my
Second time to See Eddie on a Friday before
I Was to Choose a Job on that following monda

Nickeda Barnes   Lipta Complaint        Page 3,
to ask if I am all set for Monday he said yes
I showed up Monday around 7:30 Am to be
there to choose a Job. Nothing didn't seem out
of the ordinary because last year I was out
of work for Another workers Comp Injury and I
had choosed a Job and Returned on July 28, 2014
After being out of work Since Dec 21, 2013.
I spoke with Diana Salsbory about me Returning,
and she told me she was Not Accepting De Sousas
Return to work Note because I could not be
Ready to Return to work with that Seurgery I
had because she had that Same Seurgery and
she was not back to work in Eight weeks I told
Diana she is not a Doctor Nor a Seurgen so she
is to Accept the Des Note. I argue with her for
Another 5 muns which she told me I could not Choose
a Job that Whats in the Union book I am to go by
I told her I disagree and this is not my First
time on Compensation Diana Said with Sarcasms
I had three million Claims. I then Reminded her
I was out last year and when I was Ready to
Return to work I Choose a Job and Returned
July 28, 2014 Diana came up With another Excuse
I was not on Workers Comp but I told her I

Nickeda Baines              Riptee Complaint     Page 4
Was given a Closed Period of time for the
 Injury and fighting Repta IN Court for the
time I had the Surgery til I Returned to
work which is still not Settle So you still have
to treat it as workers Compensation. I then
gave her the Worker's Comp laws 28-33-47
about Reinstatement and She hung up on me.
I then went to the Union then to Jermey Dean
and left Several upper Management Messages
to Return my Call or to give me a meeting
which has not happen at all. I did Speak
with Diana's Salsbury Boss Ben which I gave
him those Same RI Worker's Compensation laws
28-33-47 which he Replied I have to look
 them up So I looked them up on my Smart
Phone and Read them to him he gave me
a Caed and Number and I Exchanged my
Number to which he Saed he would Call me
back which he had not. I Called my lawyer
for workers Comp and let him know what
happen So he told Me he was going to file
a petition to Court and a Reinstatement to
Return to work having my Smular pay
hours jobs which were Split with Weekends

Mekeda Barnes        Reptee Compleent        Pages ⑤

off. Now I Called Diana Salsbury back to Katbee Know what my lawyer was doing and she told me I can Return to work on the June 24, 2015 bot I Cant Choose a Job and I'll have to take a list Job with a possabilty of no weekends off. I told Diana thats Not the law and that was not what happen last year when I Retorred after a workers Comp infurry. Diana Said to me why? Cant you Just take the list you Still have a bus Driving Job and thats what matters and I was upset and Crying I told Diana you are violating my Civil Rights, my ADA, My Senorety and the laws RI gives to Enployers. for Workers Compensation I beleve I am being targeted for having way to many workers Comp Claims with Ripta that are not my fault Accidents happen. I beleve Diana is paying meback because IN Teburary after the fall She gave me my weekly workers Comp wage and I told her it was wrong. I had to hire an Attoney to get my right wage and if I havent fought for my correct wages I would have lost and Extra $45.00 @ week in pay. Diana apolisized for the mistake but it wasnt heartfelt from me it Seemed Very fake apoligy.

Nickeda Barnes      Repta Complaint      Page ⑥

About 9 months ago I appled for a Supervisers position and I was told by Kim Duggin I didnt Qualified for the position because one year was workers Comp and its pending IN court and the previous year I was out of work to have my Daughter but I Returned to work after the birth of my Daughter IN 6 weeks but Kim told me I didnt file for Fmla I told Kim child birth IS auto-matically Fmla and I dont Need to fill out paper work for that and this is My second daughter I had here at Repta and I didnt fill out paper Work for that Child. Repta Upper Managment do and say things When its Convenuate for them they promote Drivers they Like or who Will Snitch on other Drivers but I have Notice Since Ive been at Ripta 13 years there has been No blacks Promoted to Supervisers and We have at least 12 to 15 New Supervisers. I've had my Rights, senority and piece of Mind working for this Company Destroyed by their RACSIST Acts. Beliefs I feel like I Work for the KVK

Mickeda Barnes RECEIVED JUN 1 1 2015 RI COMMISSION FOR HUMAN RIGHTS Repta Complaent          Page 7,

I was So Excited about Returning to work on June 24, 2015 Even after all I been though but after all the insolts from Diana Salsborg and Smart Remarks from her boss Ben the ReptaLawyer I feel targeted, talked about, De little, Marked for termination because of Workers Comp Claims that are not my fault. I Sometimes feel like they will go out their way to Set me up So they can fired me. I heard Rumors and been blamed for thngs I didnt do the last years Comp Claim I also wrote a complaint about that, I also feel like the Company will kill me off and act like its a accident. I have really bad anxiety about my Job it makes me Very Nervous and they have Made it Known threw my Union its their Rules or No Rules Commission of Human Rights You guys are my last Chance this might just be my last letter to anyone thats how bad it is.
401-419-2250
      a mother
      a wife
      a hard worker

Mickeda Barnes
34 Dunbar Ave
Remford RI 02916

Date: _____    Safety Department Case #: _____

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## EMPLOYEES ACCIDENT/INCIDENT REPORT

### Passenger    Traffic    (Incident)
(circle one)

## BASIC INFORMATION: Please Print

Operator Name: Scott Simmons                          Payroll #: 5168

Bus #: _____ Run #: _____ # of Passengers: _____ # of Courtesy Cards: _____

Date of Occurrence: 9-14-06 ___ Time of Occurrence: 5:00 ___ AM (PM)  Inbound  Outbound

Street on Which Accident Occurred: Elmwood Garage Lobby

Nearest Cross Street: _____ City/Town: _____

| | | | | | |
|---|---|---|---|---|---|
| Weather Conditions (circle one): | Clear | Fog | Rain | Snow | Cloudy | Other |
| Street Conditions (circle one): | Dry | Wet | Ice | Snow Covered | | Other |
| Light Conditions (circle one): | Daylight | Dark | Dawn | Dusk | Street Lights | Other |
| Surface Conditions (circle one): | Level | Uphill | Downhill | | | Other |

Dispatcher Notified?   Yes No  If yes, whom? _____

Supervisor on Scene? Yes No  Supervisors Name: _____ Pictures taken? Yes  No

Police on Scene?    Yes No  Officer's Name/Badge #: _____

## OTHER VEHICLE (if more than one, use separate sheet for each):

Name of Driver: _____ License #: _____

Address of Driver: _____

Name of Owner: _____ Plate #: _____

Address of Owner: _____

Insurance Company: _____ Policy #: _____

Description of Vehicle (year, make, model, color): _____

Damage to Vehicle: _____

Number of Passengers in Vehicle: _____

## PASSENGER ACCIDENT (if more than one, use separate sheet for each):

At the time of the accident, passenger was (circle one):    Boarding    Alighting    On Board

Name: _____ Age: _____ Male

Female

Address: _____ Height: _____ Weight: _____

Nature of Injury: _____

## WITNESSES:

| Name | Address (street, city, state) | Phone # | Aboard bus? |
|---|---|---|---|
| Chris Hogan | | | |
| Andy Santacata | | | |
| Jean Berkan | | | |
| John Hull | | | |



**DESCRIPTION OF ACCIDENT:** Describe in your own words the incident/accident as it occurred.

**DIAGRAM:** Draw a diagram of where the incident/accident occurred. Label streets and vehicles.

**MARK DAMAGED AREAS OF VEHICLE:**



Damage Description: _____

Damage Description: _____

*Rhode Island State Law requires that a state accident report must be filed within twenty-one (21) days of any motor vehicle accident involving personal injury or damage in excess of $1,000.00. Accident reports are available in the Safety Department.*

EMPLOYEE'S SIGNATURE _____    DATE _____

CLERK _____    DATE _____

**OFFICE USE:** (circle one)

Type of Report:        Accident        Incident
             Traffic        Pedestrian        Passenger        Observation        Vandalism        Other _____

on the box looking for (???) Walter answered the phone he asked Walter why your feeling Lisa Merill not to call my house Walter asked Mickeda husband what are you talking about (Walter) said this isn't Scott call back later in the office and hung up. Around 730pm I went to the office. At 745pm Mickeda Barnes husband showed up at the lobby window. He asked me if I was Scott, I asked him who wanted to know. He said I'm Mickeda's husband why did you hang up on me early earlier I told him that was Walter he called me a liar. Then he told me I was disrespecting his wife and household and that I was going to pay. At this point I told him that he needs to leave before the cops were called. He told me he was not leaving. That he was going to shot me. At this point I was told that Joan Neilson called the cops she was feeling threaten by Mickeda husband. Then Mickeda came flying in the lobby calling me a Fuckin Asshole / piece of shit. Then I told them both I didn't have time for this drama tonight. At this point the Police showed up they told me they asked the two off them to leave. the officer said he could do nothing about the threats it was Ripta bussiness. He also said if Mickeda husband showed up again to call them. At this point Supervisor .T. Arsenault showed up while. I was on the phone with J. Dean. While on the phone with J. Deana (the J. Dean) told me to lock the door to the office which I did. At this point I started to sell overtime again while under a lot of stress. This isnt the first time I've had a problem with Mickeda husband When ever you call Mickeda for overtime her husband answers. He whats to know my name why I'm calling so late. I tell him this is Ripta Garage looking for Mickeda for overtime. He demands my name before I talk to Mickeda. I tell Mickeda I'm being harrassed by her husband she tells me this is his house on another occasion while (???)

...ckead... ...assignment. She has called me cracker like a few times. I find it very hard working with her. person ~~tangate~~ ~~together with~~. One more note there are other Clerks and manager who have had problems with Mickeda husband in the past

*I wrote and Filed a report* *(It was report over real time)*

# INTEROFFICE MEMORANDUM

**TO:**        File

**FROM:**   James F. Dean, Director of Transportation   _JFD_

**SUBJECT:**  Scott Simmons #5168

**DATE:**    September 19, 2006

---

This memo serves as documentation that Transportation Department Clerk, Scott Simmons (Payroll #5168) has been advised of RIPTA's policy in regards to *'Unacceptable Behavior in the Workplace.'*   Clerk Simmons is expected to conduct himself in a professional manner at all times while working for and representing the Authority, in accordance with the attached memo dated 05/10/06, titled *'Unacceptable Behavior in the Workplace.'*

Date: _9/15/06_          Safety Department Case #: _____

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## EMPLOYEES ACCIDENT/INCIDENT REPORT

### Passenger    Traffic    Incident
(circle one)

**BASIC INFORMATION: Please Print**

Operator Name: _J Berrigan_                     Payroll #: _5000_
Bus #: _____ Run #: ___ # of Passengers: _____ # of Courtesy Cards: _____
Date of Occurrence: _9/15/06_ Time of Occurrence: _____ AM PM   Inbound Outbou
Street on Which Accident Occurred: _Longfellow + Melrose_
Nearest Cross Street: _____ City/Town: _Providence_

Weather Conditions (circle one): Clear      Fog      (Rain)      Snow          Cloudy          Othe
Street Conditions (circle one): Dry       (Wet)     Ice       Snow Covered                   Othe
Light Conditions (circle one): (Daylight) (Dark)   Dawn      Dusk          Street Lights     Othe
Surface Conditions (circle one): (Level)  Uphill   Downhill                                 Othe

Dispatcher Notified?   Yes No   If yes, whom? _____
Supervisor on Scene? (Yes) No   Supervisors Name: _Tom Arsenault_ Pictures taken? Yes   Ne
Police on Scene?    (Yes) No   Officer's Name/Badge #: _____

**OTHER VEHICLE** (if more than one, use separate sheet for each):

Name of Driver: _____          License #: _____
Address of Driver: _____
Name of Owner: _____          Plate #: _____
Address of Owner: _____
Insurance Company: _____      Policy #: _____
Description of Vehicle (year, make, model, color): _____
Damage to Vehicle: _____
Number of Passengers in Vehicle: _____

**PASSENGER ACCIDENT** (if more than one, use separate sheet for each):
At the time of the accident, passenger was (circle one):    Boarding    Alighting    On Board
Name: _____                   Age: _____
Female
Address: _____                Height: _____ Weight: _____
Nature of Injury: _____

**WITNESSES:**

| Name | Address (street, city, state) | Phone # | Aboard bus? |
|------|-------------------------------|---------|-------------|
|      |                               |         |             |
|      |                               |         |             |
|      |                               |         |             |
|      |                               |         |             |

DESCRIPTION OF ACCIDENT: Describe in your own words the incident/accident as it occurred.

I was the 2 pm report and had just come in from driving. A man stalked through the lobby and I heard yelling. I went to the doorway of the second lobby to see what the commotion was. I stopped because I felt intimidated by the violent words and actions being displayed by Mikedas (we found out later) husband. He swore and threatened Scott physically saying he knew when he got out of work. He said Scott was "disrespecting" his wife and his household and he was going to pay. He accused Scott of "making moves" on his

DIAGRAM: Draw a diagram of where the incident/accident occurred. Label streets and vehicles.

wife. Mikeda came in to back up her husband. She was screaming and swearing, too. Most of it was directed at Scott but some bystanders got some, too. It was very chaotic. At some point I felt it necessary to call the PPD. I should add Mikeda was wearing totally inappropriate nightwear & slippers for the lobby. There was a man and his son here to retrieve a bicycle right in the middle of all this and I know they were horrified.

MARK DAMAGED AREAS OF VEHICLE:

Damage Description: _____          Damage Description: _____

**Rhode Island State Law requires that a state accident report must be filed within twenty-one (21) days of any motor vehicle accident involving personal injury or damage in excess of $1,000.00. Accident reports are available in the Safety Department.**

| | |
|---|---|
| Joan A Berigan | 9/15/06 |
| EMPLOYEES SIGNATURE | DATE |
| | 9/15/06 |
| CLERK | DATE |

OFFICE USE: (circle one)

Type of Report:      Accident      Incident

Traffic           Pedestrian      Passenger      Observation      Vandalism      Other

Commision of Human Rights  8-6-08

I Came to your office for help I Work for Ripta better Known as Rhode Island transporation Authority. My Name is Mickeda Barnes I Was hire November 26, 2002 At the time Mrs Beverly Scott Was in Charge Since mrs Scott left the people who run Ripta Say and do and talk about the workers And I Notice there is alot of double Standards and a who you Know and who you Sleeping with. My first encounter was with a Clerk Named Scott who for the whole Summer Called my house harrasing my husband and my self and it wasn't until I Caught him on the phone Scott told me if I told anyone I would be the first one he fires when he becomes Night foreman Scott Continue until my husband tried to fight him because he kept Starting triblem me and my husband We had a meetings with Jimmy dean and my Stewart and Union Rep Steve farrell. There is a Copy of what had happen in my folder at Ripta and my Copy forward to Steve farrell at the Union.

2)

I was told to forget Scott and Continue on with my work I was stress and mad but I was told as a black woman who is the only one working while my husband is out of work disable Continue to put up with the Job because it pays good money. a Couple of months later in the winter time of 07 I was told by Jimmy Dean I was out of uniform for wearing a black turtle neck I spoke with my union Rep fuzzy he to was warned about wearing his turtle Neck. but a week later one of our coworker Diana Came in with a white turtle Neck and No one said any thing to her so I told her how I got in trouble and She said its who you sleep with in here. It is just Not Who you sleep with here its also who you know and your Skin color and gender here the white women bus Drivers can argue and Complain about Job Conditions but if your a black bus Driver and we Complain we are told as black women we are Lucky to have a good paying Job and should Not Complain or argue because the Economy is bad. I was even told by one of my

Sopervisor over the bus phone they are hiring at burger King but I could Not tell whick Supervisor it was but it was a call placed to dispatched. There are Some days when I am very depressed and cry even when I am driving the City bus when my bus is broken I Sometime hesitate callin it in to dispatch because they are always accusing me of breaking there buses I have been to Jimmy Dean my boss and Deb Dawson the assistant General Manager about all issues I don't see it changing for the better but when asked buy other drivers of color whats wroge I tell them and they have similar stories, and tell me that I am not in there click I ask whats that? There are groups of Drivers Supervisiors or managers and they sit around talking about certain Individuals drivers. I feel that they go alittle bit forther with me because I own my house I am the only one working and I only have my Income so I come to work everyday with my back against the wall and I am tired of it

(4)

Management Need Change around here
Supervisors Need Change around here
Some Drivers too.. but I am Not the
Only black woman its happening to but
I dont even Know if I am the first
to Complain about my working Conditions
but I always have a broken bus there
are always making Jokes about my
husband Not working and it is very
Stressful and they use that against
Me to get what they want and me to
do what they want me to without
Complaining about their broken buses
and equipment. I had a Couple of
Workers Comp Claims they Complain
about that but I dont have any Control
that I get hurt on their broken buses.
1st pinch Nerve/Spine Neck  broken Steering
on bus
2nd Workers Comp  a heroin addict was bleeding
and accidently Spit blood in my right Eye
3rd workers Comp  PA Microphone System
Came down in front of a Supervisor and Knock
three teeth loose Where the teeth had to
be Replace
4th Workers Comp Another Sprain Neck and
Shoulder from Over buses with Complications



and Hard Steering. I feel like they
are Setting me up with all these
accidents and working Comp injuries
you would think they would make
Sure I have a safe vehicle to
drive / oh yeah Right after my teeth
were taken out for Replacement I had
a bus where the Pa System was held
up by elastics and I let my union
Reps know about that and bus Number
I don't like whats going on here in
Ripta and I don't feel that I should
have to be a certain Color race or
Gender or be force to Sleep with management
to get a Safe vehicle to do my job and
deal with the public, I am being
harrass and discrimated against in
this Job but I am the only one working
in my house and I do own my house
and I have three kids but I should
Not have to work in bad Conditions like
this I dont even want to wake up
to go to this Job I cry and I am
tired of getting hurt at this Job.

                    Mickeda Barnes.
                      aug 6, 2008

(ONE...) (6)

I am on the Stupid list along with other black drivers. Manny and a couple of other Supervisors told me that I was on it. When I ask a white driver about the Stupid list they ask me what am I talking about?

The Supervisors tell me I dont need a Microphone or pa that works because black people have big mouths.

Meekeda Barnes
Aug 6, 2008

August 11, 2010

# Rhode Island Public Transportation Authority
## Formal Complaint

Of harassment, Sexual harassment Racism, Discrimination that Violates Title VII of the Civil Rights Act of 1964

1. The Conduct is sufficiently Severe or Pervasive to Create a hostile Work Environment

2. A Supervisors harassing Conduct Results in a tangible Change

In the past 60 days I had three incidents And I have tried to Give Management a Chance to Respond to my issues and Noone had Resolved them 1st

1st End of June 2010 I was in the Drivers lounge waiting to go out on my Split Shift When Three White Drivers Playing Cards Said to me they wish I was Phyllis because Phyllis would take her titties out and Place them on the table. I then walked towards the window



Asked Chestine the Clerk if Jimmy Dean was available She Said yes I proceeded around towards the door of Jimmy Deans office and Saw (WK) in there one of our Supervisors I waited until (WK) was done Speakin to Jimmy he then Closed the door I watch Jimmy Pick up the phone and head him speaking to his Secteuy She then Came out to tell me Jimmy Was busy She took my Number and Said he would Call he did not. If he would have Spoken to me for a minture I Could have Shown Jimmy Dean the men they were in the Drivers lounge. I was very up set and left for my Job Early.

2nd Incident Was in July When I had a Supervisor tell me fuck her When I Called in that a Passager pooped on my bus I Wrote a Incident Report Gave it to Jimmy Dean he then Sent it to Human Resorses and I and my husband then met with a Victor Santos Human Resource Manager he told me When he Came back from

Vacation he would meet with me
again it is now August 11, 2010
I Still have not heard from Victor

3rd Happen August 6, 2010 App: 6:15pm
Driver(bus)Tom Shea Open the bus
Door and told my Husband to move
the fucking Car You pussy Nigga
another bus drawer Darray came
inside I then went outside heard
Tom Call my husband a pussy Call
him onto the bus to fight him I
then told him thats my husband
and why are You talking to him
like that? I dont talk to your
wife your family like that he
then called me a pussy I then
Spoke to a night Superior present
there listening to the Driver
Say all of these bad Cuss words
in front of my kids and my little
Cousins who was with me He then
jumped into the Drivers seat and
moved the bus I then went
inside to find out who the Driver
was because he had taken off

his uniform Shirt While Argueing with my husband.

I have to find Someone who will help with the issues that have been going on Since 2007 I am tired of it No one does anything and I feel like its being Swieped under the Carpet I am depressed Iam Confused and I dont even have the Energy to Come to work to deal with these Rasisim Drivers, Supervisiors I am not the only one going threw this but I am tired of it.

I have gave written notice to the Human Rights Commission and have a an attorney this is the last Straw I will also let the Office of workplace Diversity Know What is Going on the US EEOC filing a Charge with them also.

Muketa Baines
August 11, 2010

**RIPTA**
RHODE ISLAND PUBLIC TRANSIT AUTHORITY

September 29, 2010

Mickeda Barnes
34 Dunbar Ave.
Rumford, RI 02916

Re: Complaints pertaining to July 1 and August 6, 2010 incidents

Dear Mickeda:

Based on our meeting held on Friday, August 20, 2010 and more investigatory work in talking to additional witnesses, as well as meetings with Union representatives, your Manager and the General Manager, please be advised of the following actions taken relating to your formal complaints:

July 1, 2010 Incident:
Based on your statement as well as the statements of the following witnesses: Terry Farrell, dispatcher; all Supervisors that were at Kennedy Plaza during that time, we have made the following observations:

- Dispatcher and supervisors present at Kennedy Plaza during the alleged time of this incident, deny ever using foul language with you over the radio system;
- All present in the dispatching station agree that you would not allow them to communicate thoroughly with you, since you talked over them and did not give them a chance to speak;
- You were given specific instructions by your Supervisor to stop the bus at a certain point where another vehicle would meet you to transfer buses and did not follow your Supervisor's orders, instead pursuing to drive to Kennedy Plaza and not stopping where you were instructed to do so;
- You admitted to using your cell phone while driving the bus to converse with the dispatcher;
- You admitted to going back and forth in a loud and disruptive tone conversation with the dispatcher in the presence of the passengers;

Based on the evidence presented and investigated you did not use good judgment in addressing the situation. You are put on notice that you did not handle the matter in the most professional manner and that you did not follow specific instructions of your Supervisor. We could not get any witnesses to collaborate your claim of foul language being used by any Supervisor or dispatcher. Using cell phones while driving is a serious offense and this letter will go in your file as a documented warning to that effect. We strongly encourage all our employees to respect each other and employees must follow Supervisor's instructions. In order to be listened to and respected, it is important to reciprocate.

<u>August 6, 2010 Incident:</u>

Based on the additional names of witnesses that were provided, I spoke with them, took their statements as well in person meeting with the employee Tom Shea. Based on the evidence gathered, Mr. Shea was in clear violation of some of our policies and work rules as to his conduct and that issue was dealt with internally.  The professional and orderly conduct of all of our drivers towards our co-workers and the public is paramount. However, various witnesses also commented that the behavior displayed by your spouse was also antagonizing. Mr. Shea did also comment, at a third step grievance procedure pursuant to this case, that the next day, after the incident, your husband went to his car and threatened him with an ax which is a very serious offense and it was witnessed. Based on the incidents that have occurred with your spouse on RIPTA property, we kindly ask that he refrains from coming on RIPTA property unless in case of an emergency since he is not an employee of RIPTA and should have no business at RIPTA. If an emergency does arise, he may come to our Human Resources Department where we will assist him or any other family member.

Based on the actions taken we feel that your issues have been addressed to the best of our ability and we will be closing these cases. Our sincere apologies, on behalf of RIPTA, for any grief or stress that this situation might have caused. We will continue to strive to maintain a harassment free workplace with respect to all RIPTA employees and its clients in order to live up to our Authority's mission. We shall continue to make RIPTA an employer of choice in which we can all be proud of. Feel free to call on me at any time for any further assistance.

Sincerely,

Victor C. Santos
AGM of Human Resources

Cc: James Dean, AGM of Transportation
    Janette M. Thomas, Providence Human Relations Commission
    Steve Farrell, President, ATU Local 618
    Al Moscola, General Manager of RIPTA

Note 1> I've Never Saw this paper until I asked
To See my file
Note 2> My Husband Never Went after Tommy Shea
The Next Day with a ax because Tommy was
on Vacation on a cruise Ship.

# Exhibit 11



**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**

September 17, 2015

Tom Cute, Business Agent, Local 618
172 Longfellow Street
Providence, RI 02907

Dear Tom:

In regards to: Grievance No: G63513 and 63514 Mickeda Barnes

Grievance 63513, Incident 1 – Cranston Fire Department and;
Grievance 63514, Incident 2 – Throwing a bottle at fellow employee;

The union contends that Article I - sec 1.0 (c), sec 1.2 (b) and sec 1.16 (b) but not limited to have been violated.

The requested remedy is to "make whole for all lost wages including overtime seniority and all benefits".

Section 1.0 (c): *"The parties will not discriminate against any employee of the Authority because of race, sex, sexual orientation, age, color, religion, national origin or handicap in any manner including upgrading, demotion, transfer, layoff, termination, rate of pay or other forms of compensation or benefits. The parties agree that they will not tolerate sexual harassment."*

No Violation of 1.0 (c) June, 2015 - A report from Jim Vincent, RIPTA's Compliance Officer found no EEO violation when Ms. Barnes was not allowed to choose an assignment while she was out on leave. This is consistent with Transportation's policy.

December, 2014 - Ms. Barnes talked with Jim Vincent, RIPTA's Compliance Officer about her allegations against James Tierney, Executive Director of Operations and Safety – specifically claiming he was targeting her. There was no merit to this claim and Jim Vincent referred her complaint to Human Resources.

Section 1.2 (b): *"The Authority is committed to assuring that the dignity of each employee is respected at all times. Management shall treat employees fairly and reasonably, shall assure that employees are not disciplined without just cause, and that they are notified as expeditiously as reasonable with respect to any alleged violations charged by management."*

*[handwritten notes in right margin: The Union and Ripta allowed me to chose a job twice Aug 2015 and Jan 2016]*

*[handwritten note at bottom right: I had Suitable Alternative Employment]*

705 Elmwood Avenue, Providence, RI 02907 • 401-784-9500
For Schedule Information, 401-781-9400 1-800-224-0444, or www.RIPTA.com

Page 2
September 17, 2015

No Violation of 1.2 (b) Ms. Barnes' work history was reviewed and considered when determining discipline. Management and Union do not hold to strict timelines as mutually recognized.

Section 1.16 (b): "When an employee is summoned to meet with an official of the Authority, they must do so as quickly as possible. Such summons shall be made as soon as possible after the alleged offense has been committed. Any employee has the right to have an Association representative present when called into the office for disciplinary reasons. If after hearing the charge or charges the employee wishes to have the Association representation before answering same, he will, upon request, be furnished a copy, in writing, of the charge or charges to which he is to make answer and an adjournment of two (2) days shall be granted him before he is required to answer such charge or charges."

No Violation of 1.16 (b) Ms. Barnes has not returned to work since leaving by ambulance on 2/12/15. Management and the Union have a mutual understanding regarding timelines and each affords the other flexibility. In this case the volume of work was prioritized and the Report of Investigation was finalized in June based on the timely statements dated February, 2015 by Street Supervision. On July 1, RIPTA's Compliance Officer found there was no EEO violation and referred the issue to Human Resources. The prehearing was held on July 14 and answered on July 29, 2015.

In conclusion, Ms. Barnes is in violation of the Work Conduct Policy concerning Grievance 63513 and 63514, each imposing a 15 day penalty for a combined 30 day suspension. On both occasions Ms. Barnes was in RIPTA Uniform representing the Authority. On both occasions Ms. Barnes violated the Work Conduct Policy.

Regarding Incident 1, Ms. Barnes attempted to defend her offensive and inappropriate comments directed toward the Cranston Fire Department responders by stating that the Street Supervisors should have corrected her at the scene if it was so wrong. This is not a defense. Ms. Barnes had been recently counseled about her unprofessional behavior and she knew the expectation of the Authority as demonstrated by the December 2014 re-orientation to acceptable work conduct. She was counseled at the time in lieu of discipline in an attempt to give her an opportunity to correct her behavior as well as seek EAP Counseling. At that time, she stated she would make the necessary changes in her work conduct.

Regarding Incident 2, Ms. Barnes attempted to coach union steward Nick DeCristofaro into saying that she asked him if she could throw the bottle at him.

Page 3
September 17, 2015

Nick DeCristofaro firmly stated that he would not lie, she absolutely did not ask and he was shocked and embarrassed at the unexpected throw. She further said she asked Jim Dean if she could throw the bottle to demonstrate her strength. Jim Dean stated she asked if she could squeeze his hand to demonstrate her strength, she never asked if she could throw a bottle at her co-worker in an attempt to demonstrate her strength.

There are no contractual violations. Both grievances are denied.

Respectfully,

Kathy Nadeau, Executive Director of Human Resources

cc:    James Tierney
       James Dean
       Discipline File

Investigation
Report

This was my first
Disipline meeting
and I wanted
To thion to griev

Meeting Tomarrow

① This is a Unfair Unjust meeting

the rate
written
on Ba

② Failure to follow "Acas Code of Practice
on disciplinary and grievances.

and To
Cote a
Kevin C
Said

③ Did not Recieve possible Consequences
of the disapluary action

Tue
July

④ Did not provide me with all the Evidence
or witness statements. IN advance.
and should have been provided when I
was invited to the hearing so I could
Prepare a defence.

14,2
2:0
pm

⑤ Delay in dealing with disaplinary issues
this should have been Handled in Febuary
not in June after the Judge start asking
Questions about me Returning to work.
this should have been Carried out in a timely
Manner and Reasonable.

Also
Abou
Disabi

⑥ Its disturbing that My Company I work for
has no Idea about Employment law
Performance Management or How to treat
People with Simple Compassion and
Respect.

Page ②

My Employer Ripta has a Contractual disciplinary Policy but did not follow the Contract and is now in breach of our Contract between 618 and Ripta Labor Agreement.

My Medical Condition is a privacy matter and I should have the Choice of whether or not to Reveal any personal medical issues with out being Subject to Questioning by management union officials and Secretary's. I was made fun of Critizides and told to lift my Restrictions if I wanted to keep my good paying Job. I was belittle put down insulted that I wanted to just stay home with the Parties involved are to Communicate and Cooperate to Reach a Solution. By giving me the silent treatment Ripta's management have Created a hostile work Environment where Everyone has their opinion about what Job I Can do and should have.

Page ③

I want to Submit my
two grievances.

Greivance ①

Imekeda S Barnes is greiving the Report of Investigation that James R Tierney and Kathy Nadea presented to me threw Tom Cute, My Union President My Greivance is according to Ripta's Labor Agreement between ATU Division 618 Section 1.16 Disciplanry Procedures and Standard Operatng Procedures- Paragraph (B) after a Alleged offense has been Committed Such summons should be made as soon as possible. Ripta's Management gave me the Report of Investigation July 2, 2015 @ 10 am and a letter dated June 30, 2015 for a hearing of pre-disciplnary July 14, 2015 it is a Coinsidance the Report of Investigation is Dated 6-22-2015 But I had went to Workers Compensation Court June 23-2015 @ 23-15. I was told by my Union President they were waiting for me to Return to work after my Injury but for what? Reason they still gave it to me while out on Workers Conup I am asking this be thrown out because it violates the Labor agreement between Ripta and the ATU 618 Labor Agreement. And I did not Recieve any other Reports from the Sopervors before my Predisplainary hearing. I am asking this Predisplainary be Removed out my file Coming to me after Um ...

Greivance #2

I Mieveda S Barnes allege Rhode Island poblic Transportation is Violating Labor Agreement betwe Ripten and the Atu 618 Section 1.2 Managment Rights Section B I have not and is asking for Management to treat Ne fairly and Reasonably for example my Doctor Returned me to work for June 24, 2015 and Diana told me She was not Accepting my Return to work Note Because She had Carpal tonnel Surgery and was not able to Return to work in 8 week I told her She is Not a Doctor and if you Question my Doctor have me Seen by your doctor. I filed with Jim Vincent in Ripta's EEOC a Complaint June 11, 2015 They were Violating again Ripta's labor Agreement Section 1.8 Transfers and Part time Employee's Paragraph I) disability's Covered under Provision of Workers Conpensation act. And Section 1.25 Sick leave Paragraph (H) and any dispute Shall be Resolved with a Medical exam.



March 18, 2016

Mr. Thomas Cute Jr.
President/Business Agent
Amalgamated Transit Union, Division 618/618A
172 Longfellow Street
Providence, RI 02907

Re: Grievance # 63526- Mickeda Barnes

Dear Tom,

A grievance hearing was held on Monday, March 14, 2016, to consider the alleged violations of the Amalgamated Transit Union Division #618 contract brought forward by the UNION on behalf of Mickeda Barnes as stated below.

**In attendance at the hearing:** Mickeda Barnes, Grievant; Joseph Cole, 618 representative; Maureen Ruzzano, Human Resources Chief Compliance Officer; Benjamin Salzillo, Chief Legal Counsel; Brian Lonergan, Associate Administrator of Human Resources

**Grievance #63572:**

- <u>Date:</u>  March 2, 2016
- <u>Nature of Grievance:</u> Termination (see attached grievance for specific nature of grievance); Violation of Article 1; Section 1.25 (h) and (j) and Section 1.8 (k) and (d).
- <u>Adjustment Desired:</u>  Position reclassification (work related injury). Provisions of Workers Compensation Act- an injured employee change of departments or jobs for the purpose of rehabilitations

**Referenced Contract Articles:**

*Section 1.25    Sick Leave*

*(h) An employee who is absent as a result of illness, injury, or work-related injury, which occurs while he or she is employed by the Authority shall be deemed to continue in active service under the terms of this Agreement provided the employee demonstrates that there is a reasonable degree of medical certainty that he or she will be able to return to his or her position within one year from the date his or her absence began.*

*Any dispute regarding the employee's fitness to return to duty shall be resolved in accordance with this Section regarding medical examinations.*

*(j) Neutral Physician – At the request of the Authority, the employee shall submit to a medical examination by a physician selected by the Authority.  If the physician selected by the Authority finds that the employee is fit for duty, the employee is expected to return to duty as specified by the physician on the Disability Certificate. If the employee does not report for duty as specified by the Disability Certificate completed by the physician selected by the Authority, the absence will be considered absent without leave.*

705 Elmwood Avenue, Providence, RI 02907 • 401-784-9500
For Schedule Information, 401-781-9400, 1-800-224-0444, or www.RIPTA.com

RIPTA 008

**Section 1.8     Transfers and Part-Time Employees**
*(d) Shifting Departments - Bargaining unit employees may shift from department of present employment to another department covered by this agreement only under provisions of this section. First consideration will be made for health reasons which have been medically certified and acceptable to the Authority and the Association. The shift from one department to another will only be permitted if a vacancy or need exists.*

*(k) The senior man/woman in line for a promotion when a vacancy exists in any department within the bargaining group shall be promoted to fill the vacancy if, he/she is qualified by his/her skill, ability and previous experience to do the work. The employee considered for promotion shall be given an opportunity to demonstrate his ability in an actual trial on the job. If at any time during a period of ninety (90) calendar days such employee demonstrates his inability to do the job satisfactorily, or requests return to his/her previous job, he/she shall be returned to his/her previous position. The Authority will meet and discuss with the Association the process to be used in determining the minimum qualifications for the job opening that is to be offered to Association bargaining unit employees.*

**Decision:**

After review of the submitted grievance and additional comments offered at the hearing, it has not been proven that Management is in violation of the stated Articles referenced above. Specifically, Section 1.25 (h) and (j) regarding *Sick Leave* and Section 1.8 (d) and (k) regarding *Transfers and Part-Time Employees*. The decision to terminate Grievant was based solely on the fact that Grievant was not medically cleared to return to her position within one year from the date her absence began, per Section 1.25 (h) of the contract. This was confirmed at the meeting by both the Grievant and Management. Therefore, it is the decision of this officer that the Grievant was accordingly terminated.

Any part of the discussion raised at the grievance hearing regarding Worker's Compensation was not relevant to the grievance filed and would need to be addressed in another forum if issues existed with respect to those claims.

Accordingly, based on the above, this grievance is denied and Grievant will not be reinstated or reclassified.

Sincerely,

Brian Lonergan
Associate Administrator of Human Resources

cc: Ray Studley
    Kathy Nadeau
    Benjamin Salzillo
    Maureen Ruzzano
    Personnel File

Grievance # 63526 M. Barnes
Page 2 of 2

RIPTA 009



LOCAL DIVISION 618
AMALGAMATED TRANSIT UNION, AFL-CIO-CLC
HEADQUARTERS
172 LONGFELLOW STREET, (2ND FLOOR) • PROVIDENCE, RI 02907
TEL (401) 785-4020 • FAX (401) 461-2121

March 3, 2016

I Received my copy of my termination letter Feb, 18, 16 with a termination Quote From our Union Agreement Page 33 Paragraph H Section 1.8 but I am Entitle too Medical Work Related Injury are Eligible for a position Reclasst on page 8 Section H and Sections I, Page 9 to I also didn't get a Chance for Page 34 Section Paragraph J for a Neutral Physcien In the MeanWhile while in the Main Building 705 Elmwood ave Maureen Cozzano and Cherri Georgio was Speaking with Richards Wife on Jan 25, 201 and in Front of me told Richards Wife Her Husband can come back from his Stroke and answer phones and Maureen Confirmed with the Girl at the Desk that She had a Stroke and is on light duty answering phones I then got loud about what about me why isnt anyone offering me light duty or answering phones and Maureen then took Richard Wife into the back office and then I left I just want the Same treatment like everyone else here and Not be discriminated against;

RIPTA 006



**LOCAL DIVISION 618**

AMALGAMATED TRANSIT UNION, AFL-CIO-CLC

HEADQUARTERS

172 LONGFELLOW STREET, (2ND FLOOR) • PROVIDENCE, RI 02907

TEL (401) 785-4020 • FAX (401) 461-3121

Page 8 ③

Page 7 Paragraph (I) which Continue on Page ⑧ And that No where in the Suspended the Labor Agreement Dated July 1, 2013 to June 30, 2016 has the Regiments for the Attendance for a Supervisor job. Based on Page 9 Section 1.8 Transfers of Job Paragraph (K) Promotion when a Vacancy Exist By the Senior man/women qualified by his/her Skill ability and Previous Experience. And Shall be Given opportunity to demostrate his/her Ability in a actual trial on the job.

Michael Baines

3/2/16

RIPTA 007

# AMALGAMATED TRANSIT UNION
## GRIEVANCE FORM

DIVISION 618

№ 63526

Employee _Mishoda S Baines_          Date _3-2-16_

Department _Transportation_     Phone No. _401-419-2250_

Classification _Operator_ Division _618_

Date and Nature of Grievance _3/2/16 That in January 27 2016 My_
_Worker's Comp attorney sent in a demand letter for Reinstatement_
_letter RIGL 28-33-47 With Work Restrictions from Dr Sauza MD_
_and put in a 21 day Receipt of Correspondance- And No one Ever_
_contacted Steven Dennis Esq That I even put in for lead Supervisor_
_position on - 1-25-16 @ 11:15am     To be Continue on Union_
_letter Head Paper !!!_

Adjustment Desired _Position Reclassification (work Related injury). Provisions_
_of Workers Compensation Act and used employee Change of_
_Department or Jobs for the purpose of Rehabilitations._

The Undersigned, aggrieved employee having processed this grievance in accordance with Section 3. Grievance Procedure, does hereby appeal this grievance and assigns to Division No. 618, this grievance for final agreement and/or disposition.

_Mishoda S Baines_
(Signature of Grievant)

_Kevin M Cole_
(Signature of Board Member)

### DO NOT WRITE BELOW THIS LINE

Section of contract or agreement in violation _____

Date submitted _____ Submitted to _____

Disposition at Step 1 (Foreman's answer): _____
_Waive First step (1)_

Date_____ Foreman's Signature _____

Accepted_____ or Appeal_____ Step 2

_Kevin M Cole_
(Signature of Board Member)

RIPTA 005

Disposition at Step 2 (Division or Department Head's answer): _Cause Step(2)_

_____

_____

_____

_____

Date_____     Division or D.H. Signature_____

Accepted_____; or Appeal _____ Step 3     _Reau M Col_
(Signature of Board Member)

Disposition at Step 3 (R.I.P.T.A Representative's answer): _____

DENIED

(see attached letter)

_____

_____

Date_____     Representative's Signature_____

Accepted_____; or Appeal _____ Step 4
(Signature of President/B.A.)

Other Disposition: _____

_____

_____

_____

_____

_____

Date_____
(Signature of President/Business Agent)

Final Disposition (Union Final Position):     Satisfactory_____

Unsatisfactory_____

Appealed to Arbitration: _____
(Date)                     (Signature of President/Business Agent)



RIPTA 010



# LOCAL DIVISION 618
## AMALGAMATED TRANSIT UNION, AFL-CIO-CLC
### HEADQUARTERS
172 LONGFELLOW STREET, (2ND FLOOR) • PROVIDENCE, RI 02907
TEL (401) 785-4020 • FAX (401) 461-2121

March 21, 2016

Ms. Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916

Dear Mickeda:

Enclosed you will find the answer to Grievance # 63526 – along with a copy of the Grievance and the accompanying letter outlining the Authority's answer to each contract violation cited in the grievance.

The next step in the Grievance Procedure is Step (4); section 1.14 of the current collective bargaining agreement (Arbitration) please contact me concerning Arbitration and I will inform you of the process involved in requesting arbitration.

Fraternally

*Thomas Cute*

Thomas Cute
President B.A.

RIPTA 011

(2015) This Job They let me pick after The Summer With No Return to work note

# RIPTA
### RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## CHOOSE-UP RUN ACCEPTANCE LETTER

GARAGE: ELMWOOD GARAGE    EMPLOYEE:: 05282  BARNES, MICKEDA

LISTED BELOW ARE THE SCHEDULED RUN(S) YOU HAVE CHOSEN FOR THE CHOOSE-UP
STARTING  8/29/2015

| Day | Run# | Time (with allowance) | Reg Hrs | OT Hrs | Spread | Amount |
|-----|------|----------------------|---------|--------|--------|--------|
| MO | 6007 | 4:57A to 11:06A<br>1:43P to 4:18P | 8.000 | .730 | .870 | 264.64 |
| TU | 6007 | 4:57A to 11:06A<br>1:43P to 4:18P | 8.000 | .730 | .870 | 264.64 |
| WE | 6024 | 5:23A to 10:58A<br>1:35P to 5:10P | 8.000 | 1.170 | 1.300 | 288.94 |
| TH | 6024 | 5:23A to 10:58A<br>1:35P to 5:10P | 8.000 | 1.170 | 1.300 | 288.94 |
| FR | 6016 | 5:13A to 10:48A<br>1:50P to 5:23P | 8.000 | 1.130 | 1.670 | 292.41 |
| | | Total Pay: | 40.000 | 4.930 | 6.010 | 1399.57 |

WEEK IN DAYS:  NO

VACATION WEEK
ENDING DATES:      1/30/2015    2/06/2015    8/28/2015



The Rhode Island Public Transit Authority (RIPTA) is recruiting to the position of:

## NINE (9) FULL TIME BUS OPERATORS                                    IN-HOUSE POSTING

Posting Period: November 25, 2013 – December 3, 2013

Salary: $32,822.40 - $54,704.00

This is a 618 position.

## REPORTS TO: Assistant General Manager of Transportation

**DESCRIPTION OF WORK:** The position of Bus Operator is responsible for operating a RIPTA bus for the purpose of transporting passengers over a specified route in accordance with time schedule established for such route. At all times, the Operator is responsible for maintaining the bus in a safe manner and in full compliance with all CDL and traffic regulations as well as ADA rules and regulations. Other duties include, but are not limited to, picking up route assignment and other supplies; conducting "pre-trip" inspection of assigned bus; programming the fare box, radio and sign; operating the wheelchair lift, assuring that passengers are secured on bus; and assuring communication with Dispatch when necessary.

## ESSENTIAL DUTIES AND RESPONSIBILITIES:
- Must possess evidence of a clear BCI and Driving record check.
- Must possess the ability to demonstrate positive customer service skills as evidenced by all customer interactions.
- Must be able to perform job duties independently and without constant supervision.
- Prior related experience would be helpful.
- Must be able to act quickly and calmly in emergency situations.
- Knowledge of safety rules and procedures required in the transportation of passengers; Rhode Island area and roads.
- A good working knowledge of the RIPTA system and service area would be helpful.
- Internal candidates must demonstrate a good attendance, work performance, and safety record for consideration.
- Flexible Services Division Employees must have completed at a minimum, their 180 day probationary period before they are eligible to apply for a transfer.

This position is covered by the Local 618 ATU Labor Agreement.

Interested applicants should submit their written request in writing to the Human Resources Department at 705 Elmwood Avenue, Providence, RI 02907 by December 3, 2013. No phone calls will be accepted.

We are an Equal Opportunity Employer.

705 Elmwood Avenue, Providence, RI 02907 • 401-784-9500
For Schedule Information, 401-781-9400, 1-800-224-0444, or www.RIPTA.com

*Union let me pick with Vacation* (2016)

*This is the Job th— let me pick — the Winter w— No Return to Work wo—*

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY
### CHOOSE-UP RUN ACCEPTANCE LETTER

GARAGE: ELMWOOD GARAGE        EMPLOYEE:: 05282 BARNES,MICKEDA

LISTED BELOW ARE THE SCHEDULED RUN(S) YOU HAVE CHOSEN FOR THE CHOOSE-UP
STARTING 1/16/2016

| Day | Run | Time (with allowance) | Report | On-Hr | Spread | Amount |
|-----|-----|----------------------|--------|-------|--------|--------|
| MO | 6080 | 6:37A to 10:16A<br>1:37P to 7:09P | 8.000 | 1.180 | 2.170 | 301.44 |
| TU | 6080 | 6:37A to 10:16A<br>1:37P to 7:09P | 8.000 | 1.180 | 2.170 | 301.44 |
| WE | 6080 | 6:37A to 10:16A<br>1:37P to 7:09P | 8.000 | 1.180 | 2.170 | 301.44 |
| TH | 6080 | 6:37A to 10:16A<br>1:37P to 7:09P | 8.000 | 1.180 | 2.170 | 301.44 |
| FR | 6080 | 6:37A to 10:16A<br>1:37P to 7:09P | 8.000 | 1.180 | 2.170 | 301.44 |
|  |  | Total Pay: | 40.000 | 5.900 | 10.850 | 1507.20 |

WEEK IN DAYS:  NO

VACATION WEEK
ENDING DATES:        1/01/2016    1/08/2016    1/15/2016    1/22/2016

| | | Block | Start Place | Start Time | End Time | End Place |
|---|---|---|---|---|---|---|
| 080 kday | | 11 - 10<br>60 - 4 | elmw | 652a<br>142p | 1016a<br>704p | kepi<br>elmw |

| non | | | 11 / E |
|---|---|---|---|
| ck | 637a | 652a | main & roosevelt |
| | | 11 - 10 | main & conant (collyer park) |
| / B | | | north main & ninth (9th st. station) |
| nwood garage | | 652a | no. main & doyle (charlesgate) |
| oad city line | | 700a | providence station |
| | | | kennedy plaza – providence |
| / C | | | kennedy plaza – providence |
| oad city line | | 700aD | |
| oad & thurbers (CVS) | | 705a | Relief by rim 6034 |
| oad & elmwood | | 711a | Next trip key |
| nnedy plaza – providence | | 719a | |
| nnedy plaza – providence | | 721a | Signon |
| ovidence station | | 723a | |
| . main & doyle (charlesgate) | | 728a | Block |
| th main & ninth (9th st. station) | | 731a | |
| ain & conant (collyer park) | | 737a | - / I |
| ain & roosevelt | | 743a | elmwood garage |
| | | | kennedy plaza – providence |
| / E | | | |
| ain & roosevelt | | 752aF | 60 / G |
| ain & conant (collyer park) | | 757a | kennedy plaza – providence |
| uth main & ninth (9th st. station) | | 803a | white church (barrington) |
| . main & doyle (charlesgate) | | 807a | main & joyce (warren) |
| ovidence station | | 811a | hope & state (bristol) |
| nnedy plaza – providence | | 814a | rog. wms. univ. rte. 114 & ferry rd. |
| nnedy plaza – providence | | 816a | brownell & rte. #114 ports san ctr. |
| oad & elmwood | | 822a | green lane (middletown) |
| o thurbers (CVS) | | 829a | west main & east main |
| ty line | | 835a | gateway center (newport) |
| | | | |
| / C | | | 60 / I |
| road city line | | 900aD | gateway center (newport) |
| oad & thurbers (CVS) | | 905a | west main & east main |
| oad & elmwood | | 911a | east main & turnpike |
| nnedy plaza – providence | | 918a | rog. wms. univ. rte. 114 & ferry rd. |
| nnedy plaza – providence | | 921a | hope & state (bristol) |
| ovidence station | | 923a | main & joyce (warren) |
| . main & doyle (charlesgate) | | 928a | white church (barrington) |
| th main & ninth (9th st. station) | | 931a | kennedy plaza – providence |
| ain & conant (collyer park) | | 937a | |
| ain & roosevelt | | 943a | |

Right column values:

| 60 / G | |
|---|---|
| kennedy plaza – providence | |
| white church (barrington) | |
| main & joyce (warren) | |
| hope & state (bristol) | |
| rog. wms. univ. rte. #114 & ferry rd. | |
| brownell & rte. #114 ports san ctr. | |
| green lane (middletown) | |
| west main & east main | |
| gateway center (newport) | |

| - / K | |
|---|---|
| gateway center (newport) | |
| elmwood garage | |

| Signoff | 704p | 708p |

Center column times:

| 11 / E | |
|---|---|
| main & roosevelt | 952aF |
| north main & ninth (9th st. station) | 957a |
| no. main & doyle (charlesgate) | 1003a |
| providence station | 1007a |
| kennedy plaza – providence | 1011a |
| kennedy plaza – providence | 1014a |
| kennedy plaza – providence | 1016a |
| Relief by rim 6034 | |
| Next trip key | 1016a |
| | C |
| Signon | 137p | 142p |
| Block | 60 - 4 |
| - / I | |
| elmwood garage | 142p |
| kennedy plaza – providence | 200p |
| 60 / G | |
| kennedy plaza – providence | 200pH |
| white church (barrington) | 218p |
| main & joyce (warren) | 229p |
| hope & state (bristol) | 240p |
| rog. wms. univ. rte. 114 & ferry rd. | 245p |
| brownell & rte. #114 ports san ctr. | 249p |
| green lane (middletown) | 255p |
| west main & east main | 307p |
| gateway center (newport) | 318p |
| 60 / I | |
| gateway center (newport) | 330pJ |
| west main & east main | 341p |
| east main & turnpike | 356p |
| rog. wms. univ. rte. 114 & ferry rd. | 404p |
| hope & state (bristol) | 409p |
| main & joyce (warren) | 421p |
| white church (barrington) | 430p |
| kennedy plaza – providence | 447p |

tes on Timing Points:

**D-** ADA ANNOUNCEMENTS:  ANNOUNCE ROUTE R-LINE - BROAD ST & THURBERS AVE (CVS);ST JOSEPHS HOPSITAL, BROAD ST. & ELMWOOD AVE., KENNEDY PLAZA; PROVIDENCE STATION; NORTH MAIN & SMITH ST; CHARLESGATE; MAIN ST & PAWTUCKET AVE; MAIN ST & PAWTUCKET AVE; MAIN & CONANT ST (COLLYER PARK); MAIN & ROOSEVELT

**F-** ADA ANNOUNCEMENTS:  ANNOUNCE R-LINE - MAIN & CONANT ST (COLLYER PARK); MAIN & ROOSEVELT NORTH MAIN & SMITH ST; PROVIDENCE STATION; KENNEDY PLAZA; BROAD ST. & ELMWOOD AVE., ST. JOSEPH'S HOSPITAL, BROAD S & THURBERS AVE (CVS); BROAD CITY LINE

**H-** ADA ANNOUNCEMENTS:  ANNOUNCE ROUTE #60 PROVIDENCE TO NEWPORT, SOUTH WATER ST.; WHITE CHURCH, BARRINGTON SHOPPING CENTER, WARREN PARK 'N' RIDE, BOYD'S LANE & BRISTOL FERRY RD. ,ROGER WILLIAMS COLLEGE, RAYTHEON, BAY VIE APTS; W.MAIN & GREENE; EAST MAIN & WEST MAIN ROADS, NEWPORT HOSPITAL, GATEWAY CENTER

**J-** ADA ANNOUNCEMENTS:  ANNOUNCE ROUTE #60 NEWPORT TO PROVIDENCE, NEWPORT HOSPITAL, EAST MAIN & WEST MAIN ROADS RAYTHEON, .W.MAIN & GREENE;  BAY VIE APTS; ROGER WILLIAMS COLLEGE,  WARREN PARK 'N' RIDE, BARRINGTON SHOPPING CENTER, WHITE CHURCH, SOUTH MAIN ST., KENNEDY PLAZA

s on Trips:

**B-** Garage to City Line (Broad St.) via (L) Elmwood (L) Cadillac (R) Early (R) Broad (Sign #285)

**C-** Broad City Line Main & Roosevelt and also Kennedy Plaza  Stop "F" via Broad [BUSES MAY QUEUE-JUMP IN RIGHT TURN LANE TO BUS STOP AT THURBERS] Broad (L) Empire (R)  Washington to Stop "F"  (L) Exchange (R) Park Row West  (R) Park Row (L) No. Main [BUSES MAY QUEUE-JUMP IN RIGHT TURN LANE TO BUS STOP AT DOYLE] No. Main - Main (L) Pine (R) Goff - Exchange (R) Roosevelt  (Sign #240) (LAYOFF ON ROOSEVELT ONLY)

**E-** Main & Roosevelt to Broad City Line and also Kennedy Plaza Stop "A" via Main (R) Main (R) High bear left to Summer (L) Goff (L) Pine (R) Main - N

Page

Case 1:22-cv-00213-JJM-PAS Document 51 Filed 06/03/22 Page 295 of 577 PageID #: 3338

Employee . . . . . . . :  5282          BARNES, MICKEDA
Pay period . . . . . . :      1         Gross amount . . . . . . :   1,399.61
Check number . . . . . :                Net amount . . . . . . . :     785.24
Check date . . . . . . :  12/24/15      Check amount . . . . . . :

| Description | Qty (2) | Amount | Description | Qty (2) | Amount |
|---|---|---|---|---|---|
| **Hours** | | | RI STATE INCOME TX | | |
| VACATION WEEK BARG | 4000 | 1,399.61 | SS FICA-MEDICARE | | 14.19 |
| **Adjustments** | | | SS FICA-OASDI | | 60.69 |
| PENSION DRIVERS | | 33.32 | RI TDI TEMP DIS. | | 11.35 |
| LIFE INS $30,500 | | 14.90 | **Deductions** | | |
| DENTAL 004 FAMILY | | 30.00 | UNION COPE | | 2.00 |
| VISION FAMILY 618 | | 2.55 | UNION DUES618/618A | | 16.39 |
| HEALTH FAMILY 618 | | 373.23 | UN RELIANCE LIFE | | 5.75 |
| **Taxes** | | | R.I. CREDIT UNION | | 50.00 |
| FEDERAL  INCOME TX | | | **Benefits** | | |
| | | | | | More... |

Press Enter to continue.

F3=Exit    F12=Cancel    F13=Hours detail    F18=Distribution detail

4 weeks → Vacation when I choose a Job in Jan 2016 at Ripta

①

RHODE ISLAND PUBLIC TRANSIT AUTHORITY

1/25/16
12:55:2[0]

Check Detail

| Employee . . . . . . . : | 5282 | BARNES, MICKEDA |  |
|---|---|---|---|
| Pay period . . . . . . : | 1 | Gross amount . . . . . : | 1,399.6[1] |
| Check number . . . . . : |  | Net amount . . . . . . : | 785.2[4] |
| Check date . . . . . . : | 12/24/15 | Check amount . . . . . : |  |

| Description | Qty (2) | Amount | Description | Qty (2) | Amount |
|---|---|---|---|---|---|
| Benefits |  |  |  |  |  |
| HEALTH FAM 618 |  | 324.21 |  |  |  |
| DENTAL 0004 FAMILY |  | 18.01 |  |  |  |
| SOCIAL SECURITY- M |  | 14.19 |  |  |  |
| SOCIAL SECURITY- O |  | 60.69 |  |  |  |
| VISION FAMILY 618 |  | 2.51 |  |  |  |
| Direct Deposits |  |  |  |  |  |
| COASTWAY COMMUNITY |  | 50.00 |  |  |  |
| TD BANK, N.A |  | 735.24 |  |  |  |

Bottom

Press Enter to continue.

F3=Exit    F12=Cancel    F13=Hours detail    F18=Distribution detail

FR/...
Advance

RHODE ISLAND PUBLIC TRANSIT AUTHORITY
Check Detail

1/25/16
12:55:24

| Employee . . . . . . . : | 5282 | BARNES, MICKEDA |
|---|---|---|
| Pay period . . . . . . : | 2 | Gross amount . . . . . . : 1,399.61 |
| Check number . . . . . : | | Net amount . . . . . . : 747.96 |
| Check date . . . . . . : | 12/24/15 | Check amount . . . . . . : |

| Description | Qty (2) | Amount | Description | Qty (2) | Amount |
|---|---|---|---|---|---|
| Hours | | | RI STATE INCOME TX | | |
| VACATION WEEK BARG | 4000 | 1,399.61 | SS FICA-MEDICARE | | 13.60 |
| Adjustments | | | SS FICA-OASDI | | 58.16 |
| PENSION DRIVERS | | 33.32 | RI TDI TEMP DIS. | | 10.86 |
| LIFE INS $30,500 | | 17.88 | Deductions | | |
| DENTAL 004 FAMILY | | 36.00 | UNION COPE | | 2.00 |
| VISION FAMILY 618 | | 3.06 | UNION DUES618/618A | | 16.39 |
| HEALTH FAMILY 618 | | 404.63 | UN RELIANCE LIFE | | 5.75 |
| Taxes | | | R.I. CREDIT UNION | | 50.00 |
| FEDERAL   INCOME TX | | | Benefits | | |
| | | | | | More... |

Press Enter to continue.

F3=Exit   F12=Cancel   F13=Hours detail   F18=Distribution detail

4 Weeks Vacation
When I Choose a
Job In Jan 2016
at Ripta

Page 986

RHODE ISLAND PUBLIC TRANSIT AUTHORITY      1/25/16
Check Detail      12:55:24

| | | | | |
|---|---|---|---|---|
| ...oyee . . . . . . . . . : | 5282 | BARNES, MICKEDA | | |
| ...ay period . . . . . . : | 2 | Gross amount . . . . . . : | 1,399.61 | |
| Check number . . . . . : | | Net amount . . . . . . . : | 747.96 | |
| Check date . . . . . : | 12/24/15 | Check amount . . . . . . : | | |

| Description | Qty (2) | Amount | Description | Qty (2) | Amount |
|---|---|---|---|---|---|
| Benefits | | | | | |
| HEALTH FAM 618 | | 330.87 | | | |
| DENTAL 0004 FAMILY | | 18.01 | | | |
| SOCIAL SECURITY- M | | 13.60 | | | |
| SOCIAL SECURITY- O | | 58.16 | | | |
| VISION FAMILY 618 | | 2.51 | | | |
| Direct Deposits | | | | | |
| COASTWAY COMMUNITY | | 50.00 | | | |
| TD BANK, N.A | | 697.96 | | | |

Bottom

Press Enter to continue.

F3=Exit     F12=Cancel     F13=Hours detail     F18=Distribution detail





Advance                          Check Detail                        1/25/16
                                                                    12:55:27

Employee . . . . . . . :   5282      BARNES, MICKEDA
Pay period . . . . . . :      3      Gross amount . . . . . . :   1,399.61
Check number . . . . . :             Net amount . . . . . . . :     817.14
Check date . . . . . . :   12/24/15  Check amount . . . . . . :

Description      Qty (2)      Amount   Description      Qty (2)      Amount
Hours                                  RI STATE INCOME TX
VACATION WEEK BARG    4000   1,399.61  SS FICA-MEDICARE                14.70
Adjustments                            SS FICA-OASDI                   62.86
PENSION DRIVERS               33.32    RI TDI TEMP DIS.                11.77
LIFE INS $30,500              14.90    Deductions
DENTAL 004 FAMILY             30.00    UNION COPE                       2.00
VISION FAMILY 618              2.55    UNION DUES618/618A              16.39
HEALTH FAMILY 618            338.23    UN RELIANCE LIFE                 5.75
Taxes                                  R.I. CREDIT UNION               50.00
FEDERAL   INCOME TX                    Benefits

                                                                    More...

Press Enter to continue.

F3=Exit     F12=Cancel    F13=Hours detail    F18=Distribution detail

4 Weeks Vacation
When I Choose a
Job In Jan 2016
at Ripta

③

RHODE ISLAND PUBLIC TRANSIT AUTHORITY

## Check Detail

12:55:27

| | | |
|---|---|---|
| oyee . . . . . . . : | 5282 | BARNES, MICKEDA |
| period . . . . . . : | 3 | Gross amount . . . . . . : 1,399.61 |
| .eck number . . . . . : | | Net amount . . . . . . . : 817.14 |
| neck date . . . . . . : | 12/24/15 | Check amount . . . . . . : |

| Description | Qty (2) | Amount | Description | Qty (2) | Amount |
|---|---|---|---|---|---|
| Benefits | | | | | |
| HEALTH FAM 618 | | 330.87 | | | |
| DENTAL 0004 FAMILY | | 18.01 | | | |
| SOCIAL SECURITY- M | | 14.70 | | | |
| SOCIAL SECURITY- O | | 62.86 | | | |
| VISION FAMILY 618 | | 2.51 | | | |
| Direct Deposits | | | | | |
| COASTWAY COMMUNITY | | 50.00 | | | |
| TD BANK, N.A | | 767.14 | | | |

Bottom

Press Enter to continue.

**F3=Exit    F12=Cancel    F13=Hours detail    F18=Distribution detail**

3A

RHODE ISLAND PUBLIC TRANSIT AUTHORITY

Oﬃce

Check Detail                                                12:55:29

| Description | Qty (2) | Amount |
|---|---|---|
| ..oyee . . . . . . : | 5282 | |
| .. period . . . . . : | 4 | |
| ..eck number . . . . : | | |
| ..eck date . . . . . : | 12/24/15 | |

BARNES, MICKEDA

Gross amount . . . . . . :        1,507.22
Net amount . . . . . . . :          915.22
Check amount . . . . . . :

| Description | Qty (2) | Amount | Description | Qty (2) | Amount |
|---|---|---|---|---|---|
| ..enefits | | | | | |
| ..ALTH FAM 618 | | 330.87 | | | |
| ..NTAL 0004 FAMILY | | 18.01 | | | |
| ..CIAL SECURITY- M | | 16.26 | | | |
| ..CIAL SECURITY- O | | 69.54 | | | |
| ..SION FAMILY 618 | | 2.51 | | | |
| ..irect Deposits | | | | | |
| ..OASTWAY COMMUNITY | | 50.00 | | | |
| ..D BANK, N.A | | 865.22 | | | |

                                                              Bottom

..ress Enter to continue.

..=Exit    F12=Cancel    F13=Hours detail    F18=Distribution detail

4 weeks of Vacation ④
When I Choose a
Job on Jan 2016
at Ripta

```
PR720101          RHODE ISLAND PUBLIC TRANSIT AUTHORITY        1/25/16
Advance                     Check Detail                     12:55:29

Employee  . . . . . . :  5282      BARNES, MICKEDA
Pay period  . . . . . :     4      Gross amount . . . . . . :  1,507.22
Check number  . . . . :            Net amount . . . . . . . :    915.22
Check date  . . . . . :  12/24/15  Check amount . . . . . . :

Description      Qty (2)    Amount   Description      Qty (2)    Amount
Hours                               RI STATE INCOME TX
VACATION WEEK BARG  4000  1,507.22  SS FICA-MEDICARE             16.26
Adjustments                         SS FICA-OASDI                69.54
PENSION DRIVERS             33.32   RI TDI TEMP DIS.             13.06
LIFE INS $30,500            14.90   Deductions
DENTAL 004 FAMILY           30.00   UNION COPE                    2.00
VISION FAMILY 618            2.55   UNION DUES618/618A           16.39
HEALTH FAMILY 618          338.23   UN RELIANCE LIFE              5.75
Taxes                               R.I. CREDIT UNION            50.00
FEDERAL  INCOME TX                  Benefits
                                                              More...

Press Enter to continue.

F3=Exit    F12=Cancel    F13=Hours detail    F18=Distribution detail
```



**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**

February 15, 2016

Ms. Mickeda Barnes
34 Dunbar Avenue
Rumford, RI 02916

Dear Ms. Barnes:

Our records indicate that you have been out of work since February 13, 2015. According to the labor agreement between the Rhode Island Public Transit Authority and the Amalgamated Transit Union, Division 618, section 1.25, paragraph (h):

*"An employee who is absent as a result of illness, injury or work related injury, which occurs while he or she is employed by the Authority, shall be deemed to continue in active service under the terms of this Agreement provided the employee demonstrates that there is a reasonable degree of medical certainty that he or she will be able to return to his or her position within one year from the date his or her absence began."*

Since your absence has exceeded one (1) year, please be advised that effective immediately we are removing you from the RIPTA employment roster. Please return all RIPTA issued clothing and/or equipment to James Dean in the Transportation Department.

A letter outlining your benefit rights under COBRA will follow. If you have any questions, please feel free to contact me at (401) 784-9500, ext. 109.

Regards,

Maureen C. Ruzzano
Human Resources Compliance Officer

cc:    J. Dean
       K. Nadeau
       Local 618
       File

705 Elmwood Avenue, Providence, RI 02907 • 401-784-9500
For Schedule Information, 401-781-9400, 1-800-224-0444, or www.RIPTA.com

RIPTA 004



W.C.C. # of pending petitions:

_____

_____

## State of Rhode Island and Providence Plantations

**Providence, SC.**                              Workers' Compensation Court

**MICKEDA S. BARNES**
Name of Employee-Petitioner

**XXX-XX-8332**
Social Security Number (last 4 digits only)

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**
Name of Employer-Respondent

**705 ELMWOOD AVENUE**
**PROVIDENCE, RI 02907**
Address of Employer-Respondent

**MR. GIOVANNI P. STANZIALE**
Name of Agent for Service of Process

**705 ELMWOOD AVENUE**
**PROVIDENCE, RI 02907**
Address of Agent for Service of Process

**RHODE ISLAND INDIVIDUAL SELF INSUREDS**
Insurance Carrier

### Employee's Petition to Review and/or Amend Agreement or Decree Concerning Compensation

The undersigned EMPLOYEE hereby petitions for a determination of my right to benefits under a compensation agreement, or under a decree of the Workers' Compensation Court. **A copy of said agreement or decree establishing the liability of the employer to pay workers' compensation benefits is filed herewith.** The undersigned affirms that the following facts are true:

☐  1.  My incapacity for work has increased or returned by reason of the effects of the injury set forth in said agreement or decree attached hereto.

Total incapacity from _____ to _____.

Partial incapacity from _____ to _____.

☐  2.  My employer refuses to provide or pay for necessary medical services as provided by R.I.G.L. §§ 28-33-5 and 28-33-8, specifically

_____

☐  3.  My employer and/or its insurance carrier refuse to give written permission for major surgery, specifically:

_____

(Attach a copy of doctor's request for surgery)

☐  4.  Weekly payments of compensation have been based on an erroneous average weekly wage. My average weekly wage at the time of my injury was $ _____.

☐  5.  The compensation agreement or decree was procured by fraud, coercion or mutual mistake of fact.

$\mathcal{SM}$

Page 1 of 2

W.C.C. No. _____

☐  6. The compensation agreement or decree does not accurately and completely set forth and describe the nature and location of all injuries sustained by me. Said agreement or decree should be amended so that the nature and location of my injuries shall read as follows:

☐  7. Per R.I.G.L. § 28-33-18.3, I have received a notice of intention to terminate partial incapacity benefits pursuant to R.I.G.L. § 28-33-18(d), and I hereby petition the court for continuation of benefits.

☐  8. Per R.I.G.L. § 28-33-41 and the W.C.C. Rules of Practice, I hereby petition the court for a rehabilitation program approval.

☒  9. Per R.I.G.L. § 28-33-47 and the W.C.C. Rules of Practice, I hereby petition the court for my right of reinstatement.

☐  10. Per R.I.G.L. § 28-33-18.2, I hereby petition the court for a finding of suitable alternative employment.

☐  11. Per R.I.G.L. § 28-33-20, I hereby petition the court for an order compelling the employer to provide a wage transcript.

☒  12. Other: **I ALSO REQUEST ATTORNEY FEES. COSTS, AND INTEREST**_____.

| | | |
|---|---|---|
| **STEPHEN J. DENNIS, ESQ.** <br> Attorney Name | **/S/ STEPHEN J. DENNIS** <br> Attorney Signature | _Michaela S. Barne..._ <br> Signature of Employee |
| 127 Dorrance Street, Ste. 7A 3rd Fl. <br> Attorney Address | February 26, 2016 <br> Date | 34 Dunbar Avenue <br> Employee's Address |
| Providence, RI 02903 <br> City, State, Zip Code | # 4336    (DCL) <br> Attorney Bar Registration No. | Rumford, RI 02916 <br> City, State, Zip Code |

Page 2 of 2

Case Number: 201706073
Filed in Workers' Compensation Court
Submitted: 10/24/2017 10:59:22 AM
Envelope: 1257282
Reviewer: Jennifer Furtado



W.C.C. # of pending petitions:
17-5115, 17-4571, 17-4145, 17-4046

## State of Rhode Island and Providence Plantations

**Providence, SC.**                    **Workers' Compensation Court**

**MICKEDA S. BARNES**
Name of Employee-Petitioner                              201706073

**1/31/1975**
Date of Birth (mm/dd/yyyy)

**2/12/2015**
Date of Injury (mm/dd/yyyy)

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**
Name of Employer-Respondent

**705 ELMWOOD AVENUE**
**PROVIDENCE, RI 02907**
Address of Employer-Respondent

**MR. GIOVANNI P. STANZIALE**
Name of Agent for Service of Process

**RHODE ISLAND INDIVIDUAL SELF INSUREDS**
Insurance Carrier

**705 ELMWOOD AVENUE**
**PROVIDENCE, RI 02907**
Address of Agent for Service of Process

### Employee's Petition to Review and/or Amend Agreement or Decree Concerning Compensation

The undersigned EMPLOYEE hereby petitions for a determination of my right to benefits under a compensation agreement, or under a decree of the Workers' Compensation Court. **A copy of said agreement or decree establishing the liability of the employer to pay workers' compensation benefits is filed herewith.** The undersigned affirms that the following facts are true:

1. My incapacity for work has increased or returned by reason of the effects of the injury set forth in said agreement or decree attached hereto.

   Total incapacity from _____ to _____.

   Partial incapacity from _____ to _____.

2. My employer refuses to provide or pay for necessary medical services as provided by R.I.G.L. §§ 28-33-5 and 28-33-8, specifically

3. My employer and/or its insurance carrier refuse to give written permission for major surgery, specifically:

   (Attach a copy of doctor's request for surgery)

4. Weekly payments of compensation have been based on an erroneous average weekly wage. My average weekly wage at the time of my injury was $ _____

5. The compensation agreement or decree was procured by fraud, coercion or mutual mistake of fact.

Rev 09/2017                                                          Page 1 of 2

# JOSEPH M. BEAGAN
## ATTORNEYS AT LAW

Joseph M. Beagan, Esq.
Admitted in RI

Michael J. Beagan, Esq.
Admitted in RI and MA

*Reinstated Back to her Job*

June 16, 2015

Diane Salisbury, Risk Management Coordinator
Rhode Island Public Transit Authority
705 Elmwood Avenue
Providence, RI 02907

RE:    Employee:          Mickeda S. Barnes
       Date of Injury:    2/12/15
       Claim No.:         RP-1502-0004L

Dear Ms. Salisbury:

Please be advised that this law office represents the above-named regarding personal injuries sustained while in the course of her employment.

This letter is being written to request that my client be reinstated to her former position and work schedule, within 21 days, pursuant to RIGL 28-33-47, and her union seniority rights.  If not, a petition will be filed at the Workers' Compensation Court.  At that time, a Judge could order the reinstatement and award an Attorney fee to my office.

Please contact me if you have any questions.  Thank you for your kind attention to this matter.

Sincerely,

Joseph M Beagan

Joseph M. Beagan, Esquire

cc:  John Travers

TEL: (401) 453-0090                                                          FAX: (401) 453-0093
260 WEST EXCHANGE STREET        •        SUITE 103        •        PROVIDENCE, RHODE ISLAND 02903

**Pending Petitions:**

**201706824:** amend MOA to include left wrist bruise/ contusion; left wrist, low back strain and to ADD right shoulder. *per* DOI 2/12/15

**201706073:** right for reinstatement

**201706646:** 5% loss of use to the upper extremity totaling $2,808.00

**201705115:** total incapacity ad partial incapacity from 2/9/17 to continuing

based on DOI 2/12/15 left wrist, knee contusion

and right knee 10/3/13

This is my
Pending Petitions
In W/C/Court
for Permanant
Partial Disability
on left wrist
Knee Contusion and
Right Knee 10/3/13
to Rt Shoulder

Case Number: 201705115
Filed in Workers' Compensation Court
Submitted: 7/13/2018 9:47 AM
Envelope: 1626516
Reviewer: Patricia Creamer



JUL 1 6 2018

## State of Rhode Island and Providence Plantations

Providence, Sc.                                    Workers' Compensation Court

Mickeda S. Barnes

---

vs.                                                }     W.C.C. No.   2017-05115

Rhode Island Public Transit Authority

---

## CLAIM FOR TRIAL

The   Respondent                              being aggrieved by the entry of an order resulting from a

Pretrial Conference heard before Judge  Ferrieri                              on  July 9, 2018

hereby files a Claim for Trial to the Workers' Compensation Court pursuant to

R.I.G.L. § 28-35-20(d). This Claim for Trial is being taken within five (5) days of the entry

of the Pretrial Order, exclusive of Saturdays, Sundays, and holidays.


/s/ Nicholas R. Mancini, Esq. #7100

Appellant  Attorney Name and Registration No.

222 Jefferson Boulevard, 2nd Floor

Address

Warwick, RI  02888


(401) 732-0300

Telephone Number


Rev. 02/15



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# WORKERS' COMPENSATION COURT

J. Joseph Garrahy Judicial Complex
One Dorrance Plaza
Providence, R.I. 02903-3973
401-458-5000                                October 24, 2019

Stephen J. Dennis, Esq.
127 Dorrance St., 3rd floor
Suite 7A
Providence, Rhode Island 02903

     And

Nicholas R. Mancini, Esq.
222 Jefferson Blvd., Suite 4A
Warwick, Rhode Island 02888

       Re: Mickeda S. Barnes vs. Rhode Island Public Transit Authority
            W.C.C. No. 2017-05115

Counselors:

    In accordance with the provisions of Section 28-35-27 of the Rhode Island General Laws, as amended, you are hereby notified that Chief Judge Ferrieri rendered a decision in the above-entitled matter, which decision Grants the petition.

    Enclosed herein is a copy of a Proposed Decree in the above-entitled matter which will be entered in conformance with the Rules of Practice of the Court on October 31, 2019.

                    Very truly yours,

                    Ann M. Gateman
                    Secretary

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.                                    WORKERS' COMPENSATION COURT

MICKEDA S. BARNES                    )

                                     )

            VS                       )        W.C.C.  2017-5115

                                     )

RHODE ISLAND PUBLIC TRANSIT AUTHORITY    )

## P R O P O S E D   D E C R E E

This matter came on for trial, and after trial thereon and in consideration thereof, the following findings of fact are made:

1. The employee did sustain a return to partial incapacity from February 9, 2017 to June 22, 2018 as a result of her work-related injury sustained on February 12, 2015.

2. The employer is entitled to a credit for weekly compensation benefits previously paid to the employee.

   Wherefore, it is hereby ordered, adjudged and decreed as follows:

1. The employer shall pay the employee partial incapacity benefits from February 9, 2017 through June 22, 2018.

2. Since this matter was successfully prosecuted following a claim for trial by the employer, the employer shall pay Stephen J. Dennis., Esq., a counsel fee in the amount of Three Thousand Five Hundred ($3,500.00) Dollars.

3. The employer shall reimburse Stephen J. Dennis, Esq., for the cost of the deposition of Dr. Scott Schmidt.

4. The employer shall reimburse Stephen J. Dennis, Esq., for the expert testimony of Dr. Scott Schmidt.

5. The employer shall reimburse Stephen J. Dennis. Esq., for the cost of the deposition of Dr. David Moss.

6. The employee is not entitled to reimbursement of costs relative to other depositions taken in the above matter, as said depositions did not concern the issues involving an alleged recurrence of benefits.

Entered as the decree of this Court this        day of

ENTER:                                    PER ORDER:


_____          _____

Ferrieri, C. J.                           Nicholas DiFilippo, Administrator


I hereby certify that I mailed copies of the Decision and Proposed Decree to Stephen J. Dennis., Esq., and Nicholas Mancini, Esq., on *October 24, 208.*

- 2 -

11/8/2018 3:29 PM Workers' Compensation Court

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.          **WORKERS' COMPENSATION COURT**

                                    )
                                    )
Mickeda S. Barnes                   )
                                    )          W.C.C. No.    201706824,
                                    )                        201704145,
                                    )                        201706646,
                                    )                        201705115,
        VS.                         )                        201706073
                                    )
RHODE ISLAND PUBLIC                 )
TRANSIT AUTHORITY                   )

### ORDER

Upon good cause, the above entitled matter is hereby referred for Mediation.

Judge  *Feeney*  is assigned to mediate this matter. This matter is

continued to  _12/7 @ 930_ , before this court, for further

proceedings. All mediation documents shall be provided to the Mediation

Coordinator by  _11/21/18_

Entered as an Order of this Court this  _8th_  day of  _Nov._

*Judge Salam*
*amended*
*Petition*
*6647*
*To Included*
*left wrist*
*on March 2nd*

*Judge Hardiman*
*Discontinued*
*Benefits on*
*2016-3927*

*Forth Petition*
*for Reoccurence*
*on Petition*
*2017-5115*
*Return of Incapaciti*

PER ORDER:                          ENTER:

/s/ Nicholas DiFilippo              /s/ Chief Judge Robert M. Ferrieri

# Exhibit 12

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

MICKEDA BARNES,                          )
                                         )
        PLAINTIFF,              )
                                         )
  v.                                     )
                                         )
RHODE ISLAND PUBLIC TRANSIT              )    Civil Action No.  1:17-cv-00505-JJM-PAS
AUTHORITY,                               )
                                         )
        DEFENDANT.              )
                                         )
                                         )

## STIPULATION OF DISMISSAL

Pursuant to Fed. R. Civ. P. 41(a), Plaintiff Mickeda Barnes and Defendant Rhode Island Public Transit Authority, by their respective undersigned counsel, stipulate that this action is hereby dismissed, with prejudice. Each party shall bear its own costs and attorneys' fees.

MICKEDA BARNES,

By her attorneys,


/s/ Sonja L. Deyoe
Sonja L. Deyoe (#6301)
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
(401) 864-5877
(401) 354-7464 (fax)
sld@the-straight-shooter.com

RHODE ISLAND PUBLIC TRANSIT AUTHORITY,

By its attorneys,


/s/ Jillian S. Folger-Hartwell
Jillian S. Folger-Hartwell (#6970)
Littler Mendelson, P.C.
One Financial Plaza, Suite 2205
Providence, RI  02903
(401) 824-2500
(401) 272-4520 (fax)
jfolgerhartwell@littler.com

Case 2:17-cv-00505-JJM-PAS   Document 5   Filed 06/03/22   Page 318 of 577 PageID
Case 1:17-cv-00505-JJM-PAS   Document 7   Filed 05/17/18   Page 2 of 2 PageID #: 66
#: 1362

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the within Stipulation was filed and served electronically by operation of the Court's CM/ECF System upon the following counsel of record on this 17th day of May, 2018:

Sonja L. Deyoe, Esq.
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
sld@the-straight-shooter.com

/s/ Jillian S. Folger-Hartwell

Firmwide:154755892.1 088768.1003

2

CLOSED

# U.S. District Court
## District of Rhode Island (Providence)
### CIVIL DOCKET FOR CASE #: 1:17-cv-00505-JJM-PAS

Barnes v. Rhode Island Public Transit Authority
Assigned to: District Judge John J. McConnell, Jr.
Referred to: Magistrate Judge Patricia A. Sullivan
Case in other court: Providence County Superior Court, PC2017-4847
Cause: 28:1441 Notice of Removal - Civil Rights

Date Filed: 11/02/2017
Date Terminated: 05/18/2018
Jury Demand: Plaintiff
Nature of Suit: 445 Civil Rights: Americans with Disabilities - Employment
Jurisdiction: Federal Question

**Plaintiff**

**Mickeda Barnes**

represented by **Sonja L. Deyoe**
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
401 864-5877
Fax: 401 354-7464
Email: sld@the-straight-shooter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**V.**

**Defendant**

**Rhode Island Public Transit Authority**

represented by **Jillian S. Folger-Hartwell**
Littler Mendelson, PC
One Financial Plaza
Suite 2205
Providence, RI 02903
401-824-2107
Fax: 401-454-2969
Email: jfolgerhartwell@littler.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/02/2017 | 1 | NEW CASE/NOTICE OF REMOVAL from Providence County Superior Court, Case Number PC2017-4847. Filing fee $ 400, receipt number 0103-1141353, filed by Rhode Island Public Transit Authority. (Attachments: # 1 Exhibit Complaint, # 2 Exhibit Notice of Filing of Notice of Removal, # 3 Civil Cover Sheet)(Folger-Hartwell, Jillian) (Entered: 11/02/2017) |
| 11/02/2017 | | Case assigned to District Judge John J. McConnell, Jr. and Magistrate Judge Patricia A. Sullivan. (Potter, Carrie) (Entered: 11/02/2017) |
| 11/02/2017 | 2 | CASE OPENING NOTICE ISSUED (Potter, Carrie) (Entered: 11/02/2017) |
| 11/07/2017 | 3 | STATE COURT RECORD received electronically from the State of Rhode Island. (McGuire, Vickie) (Entered: 11/07/2017) |
| 11/09/2017 | 4 | *Rhode Island Public Transit Authority's* ANSWER to Complaint by Rhode Island Public Transit Authority.(Folger-Hartwell, Jillian) (Entered: 11/09/2017) |
| 11/27/2017 | 5 | NOTICE of Hearing: Telephonic Rule 16 Conference set for Wednesday, 12/6/2017 at 09:15 AM before District Judge John J. McConnell, Jr. The Court will initiate the call. Counsel shall provide the |

| | | |
|---|---|---|
| | | Clerk with contact information if it differs from the docket sheet. (Barletta, Barbara) (Entered: 11/27/2017) |
| 12/04/2017 | | HEARING CANCELLED: The telephonic Rule 16 conference scheduled for Wednesday, 9:15 a.m. before Judge John J. McConnell, Jr. is cancelled (Barletta, Barbara) (Entered: 12/04/2017) |
| 04/04/2018 | 6 | NOTICE of Hearing: Telephonic Rule 16 Conference set for Friday, 4/20/2018 at 09:00 AM before District Judge John J. McConnell, Jr. The Court will initiate ~~~~~~~~~~~~~~~~~~~~~~~~~ with contact information if it differs from the docket sheet. the call. Counsel shall provide the Clerk (Barletta, Barbara) (Entered: 04/04/2018) |
| 04/17/2018 | | HEARING CANCELLED: The telephonic rule 16 conference scheduled for Friday, 4/20/18 at 9:00 a.m. before Judge John J. McConnell, Jr. is cancelled and will be rescheduled (Barletta, Barbara) (Entered: 04/17/2018) |
| 05/17/2018 | 7 | STIPULATION of Dismissal with Prejudice filed by Rhode Island Public Transit Authority. (Folger-Hartwell, Jillian) (Entered: 05/17/2018) |
| 05/18/2018 | | TEXT ORDER entering 7 Stipulation of Dismissal with prejudice filed by all parties - So Ordered by District Judge John J. McConnell, Jr. on 5/18/2018. (Barletta, Barbara) (Entered: 05/18/2018) |

cy-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 321 of 577 PageID
#: 1365

STATE OF RHODE ISLAND                                    SUPERIOR COURT
PROVIDENCE, SC.

MICKEDA BARNES, et al,                    )
                                          )
               PLAINTIFF,                 )
                                          )
        v.                                )
                                          )        Civil Action No.  PC-2018-2287
RHODE ISLAND PUBLIC TRANSIT               )
AUTHORITY, et al,                         )
                                          )
               DEFENDANTS.                )
                                          )
                                          )
                                          )
                                          )

## STIPULATION OF DISMISSAL WITH PREJUDICE

Pursuant to Super. Ct. R. Civ. P. 41(a), Plaintiff Mickeda Barnes and Defendant Rhode

Island Public Transit Authority, ("Defendant"), by their respective undersigned counsel, stipulate

that this action is hereby dismissed, with prejudice.  Each party shall bear its own costs and

attorneys' fees.

MICKEDA BARNES,                           RHODE ISLAND PUBLIC TRANSIT
                                          AUTHORITY,


By her attorneys,                         By its attorneys,


/s/ Sonja L. Deyoe                        /s/Jillian S. Folger-Hartwell
Sonja L. Deyoe (#6301)                    Jillian S. Folger-Hartwell (#6970)
Law Offices of Sonja L. Deyoe             Littler Mendelson, P.C.
395 Smith Street                          One Financial Plaza, Suite 2205
Providence, RI 02908                      Providence, RI  02903
(401) 864-5877                            (401) 824-2500
(401) 354-7464 (fax)                      (401) 272-4520 (fax)
sld@the-straight-shooter.com              jfolgerhartwell@littler.com


Firmwide:151655351.8 088768.1003

Case Number: PC-2020-06065
Filed in Providence/Bristol County Superior Court
Submitted: 3/7/2022 4:54 PM
Envelope: 3521136
Reviewer: Carol M.

Case 1:22-cv-00213-JJM-PAS    Document 5    Filed 06/03/22    Page 322 of 577 PageID #: 1366

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the within Stipulation was filed and served by operation of the Court's electronic filing system, upon the following counsel on this ___ day of _____, 2018:

Sonja L. Deyoe, Esq.
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
sld@the-straight-shooter.com

/s/Jillian S. Folger-Hartwell

Firmwide:151655351.8 088768.1003

omitted: 8/27/2020 10:27 AM
relope: 2721171
/iewer: Victoria H

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MICKEDA BARNES,                          )
                                         )
         PLAINTIFF,                      )
                                         )
v.                                       )
                                         )          Civil Action No. 1:17-cv-00505-JJM-PAS
RHODE ISLAND PUBLIC TRANSIT              )
AUTHORITY,                               )
                                         )
         DEFENDANT.                      )
                                         )

## STIPULATION OF DISMISSAL

Pursuant to Fed. R. Civ. P. 41(a), Plaintiff Mickeda Barnes and Defendant Rhode Island

Public Transit Authority, by their respective undersigned counsel, stipulate that this action is

hereby dismissed, with prejudice. Each party shall bear its own costs and attorneys' fees.


MICKEDA BARNES,                          RHODE ISLAND PUBLIC TRANSIT
                                         AUTHORITY,


By her attorneys,                        By its attorneys,


/s/ Sonja L. Deyoe                       /s/Jillian S. Folger-Hartwell
Sonja L. Deyoe (#6301)                   Jillian S. Folger-Hartwell (#6970)
Law Offices of Sonja L. Deyoe            Littler Mendelson, P.C.
395 Smith Street                         One Financial Plaza, Suite 2205
Providence, RI 02908                     Providence, RI  02903
(401) 864-5877                           (401) 824-2500
(401) 354-7464 (fax)                     (401) 272-4520 (fax)
sld@the-straight-shooter.com             jfolgerhartwell@littler.com


Firmwide:151655351.8 098768.1003

# Exhibit 13

1      (DECEMBER 1, 2017)

2          THE COURT:   These are the matters of Mickeda

3   Barnes v. Rhode Island Public Transit Authority,

4   2017-4571, 2017-4046, 2017-4145, 2017-6073, 2017-5115,

5   2017-6646 and 2017-6824.   The matters were assigned for

6   mediation under our new mediation program, and Judge

7   Feeney has undergone a lengthy mediation process -- I

8   know because the mediation process takes place right

9   outside of my office -- that Ms. Barnes, her

10  representatives, and Rhode Island Public Transit

11  representatives were here this morning and have worked

12  diligently to reach a resolution.   So I have been asked

13  by the parties to take the bench and essentially go on

14  the record to set forth the terms of what I believe has

15  been a resolution of not only the Workers' Compensation

16  claim but the various other claims that are pending

17  against Rhode Island Public Transit Authority filed by

18  Ms. Barnes.

19          With that being said, I'm going to ask who is

20  going to be the spokesperson who's going to set forth the

21  terms of the settlement on the record.

22          MR. DENNIS:   I think Sonja.

23          THE COURT:   If you can just identify yourself

24  for the record.

25          MS. DEYOE:   Sure.   Attorney Sonja Deyoe.

1    Your Honor, as I understand it, we have a global

2    settlement for $200,000 with a $25,000 MSA or up to

3    $25,000 MSA.  I understand that has to be subjected to

4    board approval from RIPTA.  $50,000 of that settlement if

5    approved would be through Comp., the other $150,000 would

6    be through the discrimination claim.  There is a

7    discrimination claim that is pending over with the United

8    States District Court.  Any fee that is paid on this

9    matter will be through that discrimination claim.  The

10   fee that's been agreed on that will be split between

11   Attorney Dennis and myself is $40,000.  That gives the

12   remainder of $110,000 that will be paid out to Ms. Barnes

13   in addition to the $50,000 from the Comp. funds.  That

14   $110,000 will have to be paid out both in wage format and

15   1099 format.  That percentage has not been agreed to yet,

16   but we will be contacting counsel with respect to that.

17            THE COURT:  Okay.  The 25,000 MSA, is that

18   coming out of the 200 or is that an additional 25?

19            MS. DEYOE:  It's an additional.  It is up to

20   that amount, could be less.

21            THE COURT:  Based on the analysis of a third

22   party --

23            MR. MANCINI:  I can speak a little bit more

24   to that, Your Honor.  Essentially, the Workers'

25   Compensation lump sum that will be proposed will be a

1   $50,000 settlement on the February 12, 2015 injury.  In
2   addition to the $50,000, we will fund an MSA, but our
3   settlement is conditioned upon that MSA being less than
4   $25,000.  We will get the MSA through Carr Allison
5   immediately.  It's also conditioned from board approval
6   by RIPTA.  In the event that the MSA is returned and is
7   above $25,000, we may need to revisit the terms of the
8   global settlement.  So in a sense, we have a settlement
9   agreement in principle subject to those conditions.
10  There are a number of other prior unrelated Workers'
11  Compensation claims that Ms. Barnes has from her time at
12  RIPTA.  We'll also look to resolve those through one
13  dollar nominal lump sums or D and Ds as the case may be.
14          THE COURT:  Gotcha.
15          MS. DEYOE:  There's also an agreement that in
16  good faith there will be a $3,000 advancement to Ms.
17  Barnes.
18          THE COURT:  How much?
19          MS. DEYOE:  $3,000, which mechanically I
20  understand would be attributed to the loss of use
21  petition that's pending before this Court, and I don't
22  have any idea what that number is.
23          MR. MANCINI:  I'll just speak a little bit
24  further to that, Your Honor.  The amount was keyed to the
25  loss of use petition.  The mechanism will be a mutual

1    agreement.   $3,000 will be paid to Ms. Barnes as an
2    advance against the settlement and considered as such in
3    the event that the settlement ultimately comes to
4    fruition as approved by the Court.   In the event that it
5    falls apart per the mutual agreement, as a credit against
6    future indemnity benefits.
7              THE COURT:   Okay.
8              MS. DEYOE:   The only thing I was going to add
9    is that with the federal matter, we do have a hearing
10   that's upcoming with the court.   I have agreed to contact
11   the court to continue that with an attempt to avoid
12   further cost for RIPTA.
13             THE COURT:   Who's hearing the federal matter?
14             MS. DEYOE:   Judge McConnell, I believe.
15             THE COURT:   If Judge McConnell needs to
16   contact me regarding the settlement or certainly where
17   the case is at in the Workers' Comp. Court, please feel
18   free to have him do so.
19             MS. DEYOE:   I will.
20             THE COURT:   Is that it?
21             MS. FOLGER-HARTWELL:   May I address the Court
22   briefly?
23             THE COURT:   You may.
24             MS. FOLGER-HARTWELL:   Jillian Folger-Hartwell
25   for RIPTA.   The settlement agreement in relation to the

1   discrimination case that is pending in Federal Court will

2   have the usual provisions in it.  That will include full

3   release of all claims, no reapplication, no rehire, all

4   of the RIPTA confidentiality and nondisparagement

5   provisions.

6          THE COURT:  So in lieu of that, I take it

7   that as part of this settlement, the reinstatement

8   petition will be withdrawn with prejudice?

9          MR. MANCINI:  It could be withdrawn with

10  prejudice or alternatively a pretrial order can enter

11  denying it.  I think the same result is achieved.

12         THE COURT:  My only issue with the pretrial

13  order entered denying it is with the five-day claim for

14  trial.  So if we're going to try to do this in one day,

15  we will be better served withdrawing it with prejudice.

16         MR. DENNIS:  My client just mentioned one

17  thing to me, Judge.  May we approach the bench, go off

18  the record?

19         THE COURT:  Sure.

20     (OFF-THE-RECORD BENCH DISCUSSION)

21         THE COURT:  So the knee claim will be settled

22  for a dollar, and there will be a waiver of the lien as a

23  result thereof.

24         MR. DENNIS:  Yes, Your Honor.  So there would

25  be a waiver of the third-party lien with regard to the

1    injury of her left knee or --

2              MS. BARNES:  Right knee.

3              MR. DENNIS:  Right knee.

4              MS. DEYOE:  I just want to be clear on one

5    thing just to make sure it's on the transcript for, you

6    know, 20 years from now if this comes back up.  My

7    understanding is my client is entitled to a retirement

8    benefit and that I have been provided with documentation

9    that establishes the amount of that benefit which is in

10   the neighborhood of $600 a month that she be entitled to

11   when she turns 62 years of age.  I just want to confirm

12   that on the record.  Is that correct, Ms.

13   Folger-Hartwell?

14             MS. FOLGER-HARTWELL:  Your Honor, can I have

15   moment to speak with my client?

16             THE COURT:  Before you speak with your

17   client, I'm not sure what the retirement benefit is, and

18   if it's a sticking point, we're not sure of the amount,

19   then perhaps a stipulation can be made that any claim she

20   may have to retirement benefits is not affected by any of

21   these settlements.  That may -- in general, I'm not sure

22   if it satisfies both sides, but without getting into the

23   nitty-gritty of what the exact amount is for retirement

24   benefits.  I'm not sure if that satisfies your concerns.

25             MS. FOLGER-HARTWELL:  I think that's a good

1    suggestion.  If I can speak with my client.

2        THE COURT:  Would that work for you, Sonja?

3        MS. DEYOE:  I'm not certain it would.  We've

4    had a representation basically of what that calculation

5    is.

6        THE COURT:  Okay.

7        MS. DEYOE:  I just want to make certain of

8    two things.  One is that she is entitled to retirement at

9    the age of 62, and that she can rely on that calculation.

10        THE COURT:  So why don't we have both parties

11   speak?

12             (BRIEF RECESS)

13        THE COURT:  So let's go back on the record to

14   make sure we have an understanding.  I think it's

15   stipulated by all sides that any pension rights that Ms.

16   Barnes has are not affected by any of the settlements or

17   agreements that have been reached here today as a result

18   of the mediation and settlements of the parties.  Am I

19   correct?

20        MS. FOLGER-HARTWELL:  Yes, Your Honor.

21        MS. DEYOE:  Yes, Your Honor.

22        THE COURT:  Any other things that need to be

23   placed on the record?

24        MR. MANCINI:  I'd just like to thank Judge

25   Feeney for his efforts.

1          THE COURT:  I'm going to do that.  I was

2    going to try to recap everything on the record, but I

3    think if I do that, I may put my foot in my mouth, so I'm

4    dare not going to do that.  I'm assuming that the parties

5    will be requesting a copy of this record from you, but I

6    will leave that to the attorneys.

7          First of all, I want to thank the parties, both

8    Ms. Barnes and Rhode Island Public Transit Authority, for

9    agreeing to the mediation.  This is something that's been

10   in effect for a little over a year, and that has been

11   very successful, but success is predicated on a number of

12   things.  Number one, it's predicated on the parties

13   agreeing to actually mediate the claim.  Secondly, it's

14   predicated on the attorneys that are involved in the

15   mediation, and I can see that we have many skilled

16   attorneys here, and I thank them for their efforts

17   because this is a very complicated case, as you know.

18   You've been living through it yourself.

19         And lastly, I can't thank enough my associate

20   judge, Judge Feeney, for bringing this to a resolution.

21   I think through his efforts this case was able to be

22   settled, and only through his efforts, and I commend him.

23   He certainly grasped the issues, and I can tell you that

24   he spent a lot of time learning the case, learning the

25   issues and preparing, and that is I think one of the keys

1   for this actually being resolved.  So I can't thank him

2   enough for his efforts.  So we do have a matter -- the

3   matter is scheduled for December 4th.  There is no need

4   for us to meet since we went on the record today.  Let me

5   ask this, how much time do you think you need to at least

6   submit this to Carr Allison, and I take it any of the

7   accepted claims will be submitted?  You tell me.

8              MR. MANCINI:  Two weeks to get it submitted,

9   Judge, the maximum.

10             THE COURT:  So why don't we do this?  I'm

11  going to kick this for a date just before the Christmas

12  holiday for the attorneys.  Ms. Barnes, you know you're

13  always welcome in my courtroom, but there's no need for

14  you to pay for parking and come here.  I'm doing this for

15  twofold.  Number one, I want to make sure that the MSA

16  proposal has been submitted.  Number 2, I want to make

17  sure that the mutual agreement relative to the $3,000

18  that you're going to be paid before the Christmas holiday

19  has been executed.  Once I'm satisfied that that has been

20  done, I will then put it down for a date sometime in

21  January for further status on the MSA.  Okay.

22             MS. BARNES:  Could I get the $3,000 ASAP?  I

23  need to pay some bills.

24             THE COURT:  Your attorney will be speaking

25  with RIPTA and Mr. Mancini, and I'm sure that will be

1    done sometime next week.

2                    (OFF THE RECORD)

3            THE COURT:  Any other things that need to be

4    placed on the record?

5            MR. DENNIS:  No, thank you very much, Your

6    Honor.

7            THE COURT:  We'll see everyone on the date of

8    December -- my writing week is the 11th.  So let's do a

9    chamber conference the 12th, 12/12.  I'd love to see the

10   attorneys representing or involved in the federal suit,

11   but you need not be here if everything seems to be going

12   as scheduled.  All I need to do is see Mr. Dennis and Mr.

13   Mancini for them to report that said mutual agreement is

14   executed, the claims have been submitted to Carr Allison,

15   and things are going along smoothly.  If there's an

16   issue, I welcome everyone to please come and see me on

17   the 12th.

18                    (HEARING ADJOURNED)

19

20

21

22

23

24

25

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.                          WORKERS' COMPENSATION
                                                COURT

MICKEDA S. BARNES

                              )

                              )      W.C.C. 2017-6824
                                             2017-6646
        VS.                   )              2017-6073
                                             2017-5115
                              )

RHODE ISLAND PUBLIC TRANSIT AUTHORITY


HEARD BEFORE CHIEF JUDGE ROBERT M. FERRIERI ON:


    December 1, 2017
    March 19, 2018
    September 5, 2018
    October 11, 2018      → Employee testomony for trial
    March 22, 2019
    April 16, 2019
    August 7, 2019
    October 23, 2019

    _____


APPEARANCES:

STEPHEN J. DENNIS, ESQ........COUNSEL FOR THE PETITIONER
NICHOLAS MANCINI, ESQ.........COUNSEL FOR THE RESPONDENT


ALSO PRESENT:

SONJA DEYOE, Esq.  (Present on 12/1/17 date)
JILLIAN FOLGER-HARTWELL, Esq.(Present on 12/1/17 date)
JUDGE MICHAEL FEENEY (Present on 12/1/17 date)

1  ready to hear it, and I will hear it forthwith because I

2  understand Ms. Barnes's situation, and this is the only

3  thing I can do to try and accommodate her.  So we're

4  going to continue it to 4/16 at 10, but if CMS comes

5  back, both the attorneys are to see me, and I will put

6  it on my first available afternoon.

7          MR. DENNIS:  Thank you, Your Honor.

8          MR. MANCINI:  Thank you, Judge.

9          THE COURT:  Thank you.

10          (MATTER ADJOURNED)

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

### PROVIDENCE, SC.        WORKERS' COMPENSATION COURT

Mickeda S. Barnes

vs.                                     W.C.C. No. 201704046, 201704145, 201704571,201705115

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY

### Statement of the Mediator

In regard to the above matter, the undersigned was assigned as Mediator, by an Order

issued by Chief Judge Ferrieri on September 27, 2017.

The Mediation was:

    ☐ scheduled but not heard

    ☐ was held on the following date(s)        12/1/17

The Mediation ended:

    ☒ in full agreement as follows:        *Comp senself Rent*
    *to be filed*
    *to resolve compensation*
    ☐ in non-agreement        *matter* 12/4/17

Signature:                                     Date:

# LAW OFFICE OF ⟨JD⟩ STEPHEN J. DENNIS

Stephen J. Dennis *

Howard L. Feldman †
Catherine E. Bednarz †
Carolyn A. Mannis

Jeanne M. Scott
of counsel
William J. Gately, Jr. †
of counsel

\* Also admitted in DC
† Also admitted in MA

November 21, 2017

Ms. Sonja L. Deyoe
Law Offices of Sonja L. Deyoe
Attorney at Law
395 Smith Street
Providence, RI 02908

RE:  **Mickeda S. Barnes**
DOI:  **2/12/2015**

Dear Ms. Deyoe:

In speaking with the client she has advised her demands for a global settlement as follows, $250,000.00 for her Workers' Compensation, $45, 802.20 for an MSA and $300,000.00 for her Discrimination Claim.

Please advise our office if you're agreeable to allow us to submit these demands to the opposing counsel for a global settlement per the judge's request.

Please contact our office at your earliest convenience to discuss this correspondence. Thank you for your anticipated cooperation.

Very Truly Yours,

**LAW OFFICE OF STEPHEN J. DENNIS**

COPY

Stephen J. Dennis, Esq.

SJD/alh
Cc: Mickeda S. Barnes

# LAW OFFICE OF [logo] STEPHEN J. DENNI

Stephen J. Dennis *

Howard L. Feldman †
Catherine E. Bednarz †
Carolyn A. Mannis

Jeanne M. Sc
of couns
William J. Gately, Jr
of couns

\* Also admitted in D
† Also admitted in M

December 5, 2017

Ms. Mickeda S. Barnes
34 Dunbar Avenue
Rumford, RI 02916

**RE: Mickeda Barnes vs. Rhode Island Public Transit Authority**

Dear Ms. Barnes:

On Friday, 12/01/2017, you agreed to settle your Workers' Compensation and Discrimination claims. As we now enter the process to finalize the settlement of these claims, we wish to inquire as to whether or not you paid out of pocket for any services and/or prescription medications needed in order to treat your established injuries.

In the event that you did pay out of pocket for any services and/or prescription medications, my office will try to get you reimbursed for those charges. However, in order to proceed, we would need copies of all receipts as well as any corresponding notes in your possession. My office strongly urges you to gather the aforementioned items and deliver them as quickly as possible. We appreciate your prompt attention to this matter. Please do not hesitate to contact us with any questions or concerns. Thank you.

Very Truly Yours,

LAW OFFICE OF STEPHEN J. DENNIS

Stephen J. Dennis, Esq.

SJD/jdc

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 • 1-888-634-1543 • Fax: 401-453-6670



# LAW OFFICE OF STEPHEN J. DENNIS

Stephen J. Dennis *

Howard L. Feldman †
Catherine E. Bednarz †
Carolyn A. Mannis

Jeanne M. Scott
of counsel

William J. Gately, Jr. †
of counsel

* Also admitted in DC
† Also admitted in MA

December 20, 2017

Nicholas Mancini, Esq.
222 Jefferson Boulevard, 2nd Floor
Warwick, RI 02888

**RE:    Mickeda S. Barnes**
**DOI:  2/12/2015**

Dear Mr. Mancini:

As you are aware, this office represents the legal interests with regard to Ms. Mickeda S. Barnes.

Ms. Barnes was hoping to get the Workers' Compensation and the discrimination settlements separated. In which the discrimination settlement could go forward while awaiting the CMS amount for the Workers' Compensation portion.

Please contact my office at your earliest convenience. Thank you for your anticipated cooperation.

Very Truly Yours,

**LAW OFFICE OF STEPHEN J. DENNIS**



Stephen J. Dennis, Esq.

SJD/alh
Cc: M. Barnes
Cc: N. Mancini
Cc: S. Deyoe
Cc: J. Folger-Hartwell

*Jillian Knew her all Claim Release was Not that*

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 • 1-888-634-1543 • Fax: 401-453-6670

# LAW OFFICE OF  STEPHEN J. DENN

Stephen J. Dennis *

Howard L. Feldman †
Catherine E. Bednarz †
Carolyn A. Mannis

Jeanne M. S
of cou
William J. Gately,
of cou

January 9, 2018

* Also admitted in
† Also admitted in

Nicholas Mancini, Esq.
222 Jefferson Boulevard, 2nd Floor
Warwick, RI 02888

RE:    Mickeda S. Barnes
DOI:   2/12/2015

Dear Mr. Mancini:

This is to follow up with the previous letter sent on December 20, 2017 with regard to Ms. Barnes settlement.

Ms. Barnes was hoping to get the Workers' Compensation and the discrimination settlements separated. In which the discrimination settlement could go forward while awaiting the CMS amount for the Workers' Compensation portion.

Please contact my office with an update at your earliest convenience. Thank you for your anticipated cooperation.

Very Truly Yours,

**LAW OFFICE OF STEPHEN J. DENNIS**

COPY

Stephen J. Dennis, Esq.

(Note) We Ask the Court Said
100 But later on
when CMS Came Back
from Jodi Connor March 1, 2018
that Riptic Nor Carr Allison
Requested the CMS Then I Starte
working on
The ETA
Superior Court Case

SJD/alh
Enclosure
Cc: M. Barnes

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 • 1-888-634-1543 • Fax: 401-453-6670

13

(MARCH 19, 2018)

THE COURT:  These are the matters of <u>Mickeda</u>

<u>Barnes vs. Rhode Island Public Transit Authority</u>.  There

are several matters before the Court:  2017-5115,

2017-4571, 2017-4046, 2017-4145, 2017-6063, 2017-6646

and 2017-6824.  We've been conferencing this matter off

the record because we're waiting for CMS to approve a

submission by Carl Allison, which has been sent,

unfortunately there was a snag, they were waiting for

some paperwork from the insurance carrier which was

delayed.  There was a little bit of a delay getting that

to CMS, but the parties are before the Court, there's

been a request by Mr. Dennis on behalf of Ms. Barnes for

an interlocutory order.  The Court has indicated at the

last meeting and at this meeting that he will not enter

any interlocutory orders on this matter.  Several other

discussions were had with Ms. Barnes.  The Court is

aware of Ms. Barnes' situation.  She's been waiting as

patiently as she can for this settlement to be heard

before the Court.  I am continuing it to April 16th at

in hopeful that CMS will come back with a figure, but I

am instructing both Mr. Dennis and Mr. Mancini when and

if CMS comes back with a figure sooner than that, they

are to see me right away, and I will put it down on my

calendar in an afternoon as soon as the paperwork is

ready to hear it, and I will hear it forthwith because I understand Ms. Barnes' situation, and this is the only thing I can do to try and accommodate her.  So we're going to continue it to 4/16 at 10, but if CMS comes back, both the attorneys are to see me, and I will put it on my first available afternoon.

        MR. DENNIS:  Thank you, Your Honor.

        MR. MANCINI: Thank you, Judge.

        THE COURT:  Thank you.

        (MATTER ADJOURNED)

At this time I had been Without WEEKly Benefits for over 78 Week's



## Mutual Agreement

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI  02920-0942    www.dlt.ri.gov/wc
Phone (401) 462-8100  TDD (401) 462-8105

| | Claim Administrator Claim Number |
|---|---|
| | 560333 |

### Employee Information

| | | | Employer, Insurer, Claim Administrator |
|---|---|---|---|
| SSN or ID 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 | Date of Birth 01/31/1975 | | Rhode Island Public Transit Authority |
| Last Name Barnes | First Name Mickeda | Initial S | Insurer Business Name The Beacon Mutual Insurance Company |
| Date of Injury 02/12/2015 | Date of Death | | Claim Administrator Business Name |

This form may be used under RIGL § 28-35-6(b) to amend a Memorandum of Agreement, Order or Decree on a workers' compensation claim. This form cannot be used to start or end weekly benefits.

### Amendment to Memorandum of Agreement. Indicate the change.

☐ Change employees marital status to ☐ Single ☐ Married    effective date: _____

☐ Change the total average weekly wage to    $_____    effective date: _____

☐ Change the weekly spendable base wage to    $_____    effective date: _____

☐ Change the weekly compensation rate to    $_____    effective date: _____

☐ Change maximum number of eligible exemptions    to _____    effective date: _____

☐ Change number of dependents    to _____    effective date: _____

☐ Modify from total to partial incapacity    effective date: _____

☐ Modify from partial to total incapacity    effective date: _____

☐ Suitable Alternative Employment (offer attached)    effective date: _____

☐ Change nature of injury and/or affected body part to _____

☑ Other (Specify)
**Ripta hereby advances $2000.00 to Barnes from the lump sum settlement agreed upon in principle on December 1, 2017. Should the claim not settle as anticipated Ripta shall take a dollar for dollar credit of $2000.00 against any indemnity benefits payable to Barnes.**

### Specific Injury Agreement

The injured worker and the Claims Administrator representing the Insurer and Employer agree on the specific injury or injuries stated here.

| Disfigurement: Body Part | | Weeks | Weekly Rate | Amount Paid | Date Paid |
|---|---|---|---|---|---|
| | | | | | |

| Loss of Use: Body Part | Percent | Weeks | Weekly Rate | Amount Paid | Date Paid |
|---|---|---|---|---|---|
| | 0.00 | | | | |
| | 0.00 | | | | |

| Body Part | Type of Hearing Loss | | Percent | Weeks | Weekly Rate | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|
| ☐ Left | ☐ Occupational | ☐ Traumatic | 0.00 | | | | |
| ☐ Right | ☐ Occupational | ☐ Traumatic | 0.00 | | | | |
| ☐ Both | ☐ Occupational | ☐ Traumatic | 0.00 | | | | |

### Signatures of Parties to this Agreement

| Employee Signature | Date | Claim Adjuster Signature | Date |
|---|---|---|---|
| *Mickeda Barnes* | 2/5/18 | *Terri Mui* | 2/5/18 |

DWC-24 1/2014

DWC24_V3

Tear Along Dotted Line    Tear Along Dotted Line    Tear Along Dotted Line    Tear Along Dotted Line    Tear Along Dotted Line    Tear Along Dotted Line    Tear Along D

**A-Beacon** Mutual Insurance Co.

DETACH STATEMENT BEFORE DEPOSITING CHECK

One Beacon Centre
Warwick, RI 02886
Phone:    401.825.2667
Fax:       401.825.2607
www.beaconmutual.com

Check Number:    0001167081
Payee Name:      MICKEDA S BARNES

CLAIMS ACCOUNT

| Claim No. | Claimant Name | | Date Of Injury | Child Support Order Reference No. |
|---|---|---|---|---|
| 360335 | Mickeda S Barnes | | 02/12/2015 | |

| Benefit Type | | From Date | To Date | Amount | Total Amt Paid to All Payees |
|---|---|---|---|---|---|
| Lump Sum Settlement | | 12/06/2017 | 12/06/2017 | $3,000.00 | |

*This was Returned when Global Settlement Never Happened per 12-01-2017 per w/c/c Agreement*

Check Total:    $3,000.00

# STATE OF RHODE ISLAND

PROVIDENCE, SC.                    WORKERS' COMPENSATION COURT
                                        APPELLATE DIVISION


MICKEDA S. BARNES                    )

                                     )

       VS.                          )              W.C.C. No. 2017-06824

                                     )

RHODE ISLAND PUBLIC TRANSIT          )
AUTHORITY


MICKEDA S. BARNES                    )

                                     )

       VS.                          )              W.C.C. No. 2017-06646

                                     )

RHODE ISLAND PUBLIC TRANSIT          )
AUTHORITY


MICKEDA S. BARNES                    )

                                     )

       VS.                          )              W.C.C. No. 2017-06073

                                     )

RHODE ISLAND PUBLIC TRANSIT          )
AUTHORITY


- 1 -

MICKEDA S. BARNES    )

            )

   VS.        )    W.C.C. No. 2017-05115

            )

RHODE ISLAND PUBLIC TRANSIT  )
AUTHORITY

## DECISION OF THE APPELLATE DIVISION

   CARDOZA, J.  These four (4) matters were consolidated for trial and remain consolidated before the Appellate Division for the purpose of addressing the employee's claims of appeal from the trial judge's decision and decrees.  After a thorough review of the record and consideration of the arguments of counsel as well as the employee, who argued on behalf of herself as a self-represented litigant after her lawyer was discharged via a Motion to Withdraw as counsel which was granted on February 9, 2021, we affirm the decision and decrees of the trial judge and deny the employee's appeals.

   The employee was initially placed on weekly compensation benefits pursuant to a Memorandum of Agreement that recognized a February 12, 2015 injury to her left wrist, described as a bruise/contusion.  The description of the injury was subsequently amended by a pretrial order entered on March 2, 2016 in W.C.C. No. 2015-06647 to read left wrist bruise/contusion, left wrist, and low back strain.  On November 10, 2016, a pretrial order was entered in W.C.C. No. 2016-03927, finding that the employee was no longer incapacitated and ordering the discontinuance of her weekly benefits as of that date.

   The four (4) petitions currently pending before the Appellate Division are:

- 2 -

(1) W.C.C. No. 2017-06824, an employee's Petition to Review seeking to amend the nature and location of the injury to add the right shoulder. This request was denied at the pretrial conference and also denied by the trial judge following trial.

(2) W.C.C. No. 2017-06646, an employee's Petition for Compensation Benefits requesting an award of five percent (5%) loss of use to her left upper extremity. A pretrial order was entered granting the employee a one percent (1%) loss of use to that body part. Following trial, a decree was entered by the trial judge affirming the one percent (1%) loss of use award.

(3) W.C.C. No. 2017-06073, an employee's Petition to Review for reinstatement pursuant to Rhode Island General Laws § 28-33-47. This petition was denied by the trial judge at the pretrial conference and following trial.

(4) W.C.C. No. 2017-05115, an employee's Petition to Review alleging a recurrence of total or partial incapacity from February 9, 2017 and continuing. A pretrial order was entered that found a return of partial incapacity from February 9, 2017 to September 22, 2017. The employer and employee each filed a timely claim for trial. Following trial, the trial judge found that the employee was disabled from February 9, 2017 through June 22, 2018.

Mickeda Barnes, the employee, worked as a bus driver for the Rhode Island Public Transit Authority ("RIPTA") for more than thirteen (13) years. Her job duties required her to operate the steering wheel, pick up and drop off passengers, assist passengers with their bags, assist handicapped persons on and off the bus, repeatedly climb the bus stairs, push and pull the bus air brake, and operate the lever used to open and close the bus door. To perform these tasks, she needed to use various body parts, including both hands, shoulders, and arms, as well as her low back and legs. She stated that she would work an average of sixty (60) hours per week.

- 3 -

On February 12, 2015, while in the course of her employment, the employee slipped and fell on snow and ice. She notified her supervisor and was taken via ambulance to Kent Hospital, where she was examined, given an X-ray, prescribed medication, and advised to follow up with her primary care physician, Dr. Michael Souza. Thereafter, she commenced treatment with Dr. Peter Pizzarello, Jr., an orthopedic surgeon, who performed left wrist carpal tunnel release surgery on May 6, 2015. The employee testified that she subsequently consulted with Dr. Scott Schmidt, a hand surgeon, for a second opinion. On February 9, 2017, Dr. Schmidt performed a repeat carpal tunnel release, adipofascial flap hypothenar, and Guyon's canal release on the employee's left hand. The employee stated that she is no longer incapacitated from her left wrist injury.

The employee alleged that her right shoulder was also injured in the fall. She stated that the pain in her shoulder began on the day following the incident. She claimed to have requested medical attention for this body part during a conversation with an adjuster for her employer's workers' compensation insurance carrier a few days after the fall. The employee admitted that she did not actually treat with a doctor for her shoulder until December of 2016 when she saw Dr. Franklin Mirrer. Eventually, she received care at the Massachusetts General Hospital ("MGH"), where she had shoulder surgery on February 13, 2018. At the time of her court testimony, the employee explained that the shoulder was better but that she continued to have residual pain.

The employee stated that she would like to be reinstated to her job with the employer. She expressed her belief that she could return to work as a bus driver. At the same time, she expressed reservations about her ability to perform that job due to a loss of muscle mass in her

- 4 -

right shoulder and her left upper extremity from her surgeries and from her extended period of time away from employment.

During cross-examination, the employee was asked about a letter from Dr. Souza that was reportedly attached to a demand for reinstatement forwarded by her attorney to the employer on January 27, 2016. The employee denied that Dr. Souza's letter dated January 26, 2015 (the correct year for the letter should be 2016) contained restrictions on her ability to push and lift, as well as the need for her to have a bus route that allowed less frequent stops, and a work shift that was no longer than five (5) hours.[1] However, the employee agreed that it was possible that on January 28, 2016, the day following the reinstatement letter from her attorney, she told Dr. Pizzarello that she thought she could not return to work due to poor grip strength. The employee also acknowledged that "[i]t was very much possible" that she was unable to do her job at the time her former attorney sent the request for reinstatement on her behalf. Trial Tr. 66:17.

The employee admitted that she did not include her right shoulder among the several body parts she indicated were injured on an accident report she completed and signed on or about the date of her fall. In addition, she did not designate her right shoulder as having been injured when she filled out an initial injury report for the workers' compensation insurance carrier dated February 12, 2015. Although the employee agreed that she did not complain of a right shoulder injury while at the hospital emergency room on the date of the incident, she insisted that she did complain of pain in that area to Dr. Souza on February 18, 2015, and on subsequent visits shortly after her injury. She also testified that she told Dr. Pizzarello of the right shoulder problem at her first appointment with him.

---

[1] While the letter was not marked as a separate exhibit at the time of the employee's testimony, it is contained within the records of Dr. Souza that were admitted into evidence as an exhibit to the various doctors' depositions.

- 5 -

Additional non-medical evidence introduced during the employee's testimony includes a set of photographs that depict the scene of the employee's fall and some initial bruising. An accident report dated September 29, 2015, completed by the employee and filed with the City of Cranston, was also admitted as an exhibit. This document was apparently completed to process a complaint against the city. In the document, the employee claimed injuries to her left wrist, right knee, right wrist, low back, and shoulder as a result of the February 12, 2015 slip and fall.

Voluminous medical records, as well as the depositions of six (6) doctors, were submitted by the parties and marked as exhibits. Records from the Cranston Fire Department from the date of the incident reveal that, immediately after her fall, the employee complained of knee pain and wrist pain. She was taken by rescue to Kent Hospital. At the emergency room, the employee reported injuries to her right knee, low back, and left wrist. X-rays were taken of her left hand and wrist as well as her low back. She was given a note to remain out of work for two (2) days.

The medical reports of the employee's primary care physician, Dr. Michael Souza, reveal that following her work incident, she was first seen on February 18, 2015. The employee informed her doctor that when she fell, she "landed on her buttock and left wrist." Ee's Ex. 9, Dr. Richard C. Anderson Dep., report of Dr. Michael Souza dated February 18, 2015, page 1 (attached). Her only complaints were to her left wrist and low back. Due to her left wrist injury, Dr. Souza advised the employee to remain out of work for ten (10) days. An additional X-ray of the left wrist performed at Advanced Radiology on February 19, 2015, was read to show no acute fracture or arthrosis.

The employee continued to follow up with Dr. Souza on a regular basis for both her left wrist and low back complaints. Although there are occasional additional complaints of right knee pain and bilateral wrist pain during the next sixteen (16) visits, there is no mention of any

- 6 -

right shoulder complaints. Dr. Souza's records include a letter addressed to the employer dated January 26, 2015 (sic). The letter is addressed to the attention of Diane Salisbury, an apparent representative of the employer. It specifies that the employee is being treated for bilateral carpal tunnel syndrome as well as back, right shoulder, and right knee pain. This letter contains the first mention of the right shoulder within these records. The document denotes Dr. Souza's belief that the employee's ability to work is restricted by her inability to push more than thirty (30) pounds or lift more than ten (10) pounds. Dr. Souza wrote that the employee should have a route with infrequent stops so as not to overtax her left hand, and she should not work more than five (5) hours per shift.

Dr. Souza's records continue to document the employee's very regular treatment until October 25, 2017. Up through the visit of November 7, 2016, the employee complained of pain in her low back and her wrists. Of note, the medical report of November 14, 2016, contains a history that "[p]atient states that she has had right shoulder pain since last year. She claims that she fell on the ice and hurt her right shoulder . . . Patient states that she is always in pain and that the shoulder pain is not getting any better." Ee's Ex. 9, report of Dr. Souza dated November 14, 2016 (attached).

The employee was first seen by Dr. Peter Pizzarello, Jr., on March 23, 2015. His records show that she told him her injuries occurred when she slipped and fell onto her back and her outstretched left forearm and wrist. The employee reported complaints to the right side of her low back, her left upper extremity, and wrist. On this initial visit, Dr. Pizzarello examined multiple body parts, including the right upper extremity, which was found to be non-tender with a full range of motion in each joint. At the conclusion of this appointment, Dr. Pizzarello's diagnosis was a lumbar strain/contusion, left carpal tunnel syndrome, and a left wrist strain.

- 7 -

At the request of Dr. Pizzarello, the employee was seen on April 2, 2015 by Dr. William Golini, a neurologist, for a nerve conduction study ("NCS") and electromyogram ("EMG"). While the report documents detailed complaints of pain in the employee's left upper extremity, it also states that the employee related that she hurt her right shoulder in this incident. The testing confirmed left carpal tunnel syndrome and a mild ulnar sensitivity in the left wrist in the Canal of Guyon.

On May 6, 2015, the employee underwent a left carpal tunnel release by Dr. Pizzarello. Post-operatively, the employee was initially found to be doing well and Dr. Pizzarello prescribed physical therapy. On June 9, 2015, Dr. Pizzarello indicated that the employee would be able to return to full duty employment as of June 24, 2015.

At the request of the employer, the employee was examined by Dr. Arnold-Peter Weiss on July 16, 2015. At his deposition, Dr. Weiss stated that he found the employee to be capable of returning to her full duty job and that she required no further treatment as a result of the February 12, 2015 injury to her left wrist. He also reported that he calculated the employee's left upper extremity loss of use to be only one percent (1%) based on his physical examination.

The records of Dr. Pizzarello reflect that as of August of 2015 and continuing, the employee had persistent complaints of pain in her left wrist, and she also developed pain in her right wrist. Dr. Pizzarello recommended repeat NCS and EMG studies.

At the request of the court, the employee was seen by Dr. Gregory Austin, a board-certified orthopedic hand surgeon, on January 19, 2016. Following his review of the medical reports and his examination of the employee, Dr. Austin opined that her low back injury had resolved and required no further treatment. Due to a lack of complaints around the date of the fall, he did not believe that the employee injured her right wrist, right shoulder, or right knee on

- 8 -

February 12, 2015. At his deposition, Dr. Austin testified that if the employee did injure her right shoulder as alleged, he would expect to see complaints of pain in that area contained within the report of the Kent Hospital on the date of the accident or within the initial reports of either Dr. Souza or Dr. Pizzarello. In addition, Dr. Austin's physical examination revealed no objective findings of injury to either the right knee or right shoulder. He did recommend a repeat EMG and NCS on the employee's left wrist. Although he did not believe the right wrist complaints to be work-related, Dr. Austin also recommended these studies on the right arm as well.

On March 24, 2016, the employee was seen by Dr. Gary A. L'Europa for an EMG and a NCS of her left arm. His report states that he found no evidence of cervical radiculopathy or entrapment neuropathy. Also, the testing did not show evidence of carpal tunnel syndrome.

While continuing to treat with Dr. Pizzarello for her wrist complaints, the employee elected to see Dr. Scott Schmidt, a specialist in plastic and hand surgery, for an additional opinion. Following his examination on April 6, 2016, Dr. Schmidt diagnosed the employee with recurrent left carpal tunnel syndrome with the possibility of some ulnar nerve compression in her left hand. Both Dr. Schmidt and Dr. Pizzarello recommended repeat diagnostic testing.

On June 21, 2016, the employee returned to Dr. Golini to undergo another EMG and NCS. The testing performed on this date was interpreted to show that the employee was suffering from recurrent left carpal tunnel syndrome.

At the request of the employer, Dr. Weiss conducted a second examination of the employee on June 9, 2016. After speaking with the employee and studying her left wrist, Dr. Weiss repeated his previous opinion that she had healed from her prior surgery and that she could return to work without restriction. In an addendum report dated June 30, 2016, Dr. Weiss

- 9 -

expressed his belief that the diagnostic testing performed by Dr. Golini on June 21, 2016, did not alter the conclusions that he had formed following his most recent examination, adding that he did not think carpal tunnel revision surgery was necessary.

The employee returned to Dr. Schmidt on December 16, 2016. On that date, he administered a steroid injection into her left wrist. On January 25, 2017, Dr. Schmidt recommended a revision of the left carpal tunnel surgery as well as a left Guyon's canal release. These procedures were performed on February 9, 2017. At his deposition, Dr. Schmidt reported that during the surgery, he observed both the ulnar and median nerves to be injured. Following surgery and physical therapy, the employee's left wrist symptoms improved significantly.

Dr. Schmidt performed a loss of use evaluation of the employee's left upper extremity on July 21, 2017. Due to her weakness and continued hand sensitivity, he found a five percent (5%) loss of use based on the Sixth (6th) Edition of the AMA Guides to the Evaluation of Permanent Impairment ("AMA Guides, Sixth (6th) Edition"). Dr. Schmidt conceded that both of these factors were subjective and relied upon the employee's participation. When last seen on August 6, 2018, the employee complained of numbness in the small finger of her left hand. Dr. Schmidt expressed his opinion that she remained partially incapacitated and referred her to the Dr. John E. Donley Rehabilitation Center for a functional capacity evaluation.[2]

Dr. Schmidt also referred the employee to Dr. Thomas McGunigal for neurophysiologic testing of her right arm. Following testing, Dr. McGunigal reported a normal study of the right upper extremity and cervical paraspinal muscles with no evidence of nerve compression.

At the request of the court, Dr. A. Louis Mariorenzi, an orthopedic surgeon, conducted an evaluation of the employee on October 13, 2016. On that occasion, her primary complaints were

---

[2] The Dr. John E. Donley Rehabilitation Center was renamed and is now referred to as the Chief Judge Robert F. Arrigan Rehabilitation Center.

to her left wrist and lower back.  Following his review of the extensive medical records and his physical examination, Dr. Mariorenzi reported that the employee's left carpal tunnel had been treated successfully with surgery and that her low back strain had made a full recovery with conservative treatment.

On November 16, 2016, two (2) days after Dr. Souza documented her right shoulder complaints in his office note, the employee underwent an MRI.  This test was interpreted to show mild supraspinatus tendinosis as well as mild infraspinatus tendinosis.  In addition, the test revealed small volume biceps tenosynovitis and small volume joint effusion.

The employee's right shoulder was also evaluated by Dr. Franklin Mirrer, an orthopedic surgeon, on December 9, 2016.  Dr. Mirrer's letter to Dr. Souza indicates that the employee advised Dr. Mirrer that when she fell on February 12, 2015, she landed on both arms, her back, and her waist.  Regarding her right shoulder, she told Dr. Mirrer that she fell on her right side and had a sensation that her shoulder popped out and back in at impact.  The employee claimed that she "had intense pain at that time and thereafter."  Ee's Ex. 9, medical report of Dr. Franklin Mirrer dated December 9, 2016, page 1 (attached).  She reported that the pain had never improved.  Dr. Mirrer reviewed the recent MRI and conducted a physical examination.  His impression was that the employee had sustained a significant shoulder injury in her fall that had not improved.  Dr. Mirrer opined that, as a result of her "dislocation/relocation event," she sustained a labral tear which has led to chronic pain and inflammation at the rotator cuff as well as scapular dyskinesia.  *Id.* at page 3.  Dr. Mirrer recommended a course of physical therapy and raised the possibility of future surgery.

In January of 2017, the employee began a course of physical therapy for her right shoulder with the Lifespan Physicians Group.  On March 20, 2017, she also commenced

- 11 -

treatment at the orthopedic clinic of the Massachusetts General Hospital ("MGH").  On that date, the employee reported that on February 12, 2015, her arms were behind her in an attempt to break her fall.  She complained of right shoulder pain that was a seven (7) out of ten (10) on the pain scale.  Following a physical examination and a review of her MRI, the clinic doctor diagnosed pain in the acromioclavicular joint and performed an injection into that site with fluoroscopic guidance.

At MGH, they also recommended that she follow up with other specialists for complaints of continued numbness in her right elbow and hand.  From May to September of 2017, she saw several physicians at MGH for these issues as well as alleged problems with her neck and low back.  Neurological examinations of both areas on June 9, 2017, were described as "non-focal." Ee's Ex. 11, Dr. Eric Bonness Dep., MGH report dated June 9, 2017 (attached).  On July 14, 2017, a repeat NCS and EMG of her right upper extremity was read to be normal, showing no evidence of nerve compression or general neuropathy.  On September 1, 2017, the MGH physicians recommended no further neurological workup as they believed her symptoms were orthopedic in nature.

To help determine the cause of the employee's right shoulder problem, she underwent a diagnostic suprascapular notch injection on September 26, 2017.[3]  On December 8, 2017, the employee had her initial meeting with Dr. Eric Bonness, an orthopedic shoulder fellow at MGH. The history he received included the employee's statement that she experienced right shoulder pain at the time of the accident, which had continued to date.  In his deposition, Dr. Bonness testified that after conducting a physical examination and reviewing previous medical records, he

---

[3] The employee's right shoulder suprascapular notch steroid injection was ordered on September 21, 2017. The employee then underwent the suprascapular notch steroid injection into her right shoulder on September 26, 2017.

- 12 -

diagnosed the employee with suprascapular neuropathy, acromioclavicular joint arthritis, long head of the biceps tendinitis, and shoulder impingement. Based upon the information from the employee that she had no shoulder pain before her fall and that the pain developed immediately after her accident, Dr. Bonness stated it was reasonable to believe these right shoulder problems were due to the February 12, 2015 incident. He opined that she was also unable to perform her job as a bus driver as a result of said injury.

On February 13, 2018, the employee underwent right shoulder surgery by Dr. Bonness. He operated arthroscopically on the subacromial, distal clavicle, and biceps tendon, and he also explored and released her suprascapular nerve. On cross-examination, Dr. Bonness conceded that his findings at surgery were degenerative conditions that could also be caused by the normal aging process and that these findings could also be seen in an individual without any trauma. He agreed that he could not say whether any of his surgical observations were caused by what happened on February 12, 2015. When asked again about his causation opinion, Dr. Bonness responded that "based off the history I'd taken that the diagnoses could be related to that injury." Ee's Ex. 11, Dr. Bonness Dep. 29:11-13. In addition, Dr. Bonness stated that his opinion was based on his assumption that the employee's right shoulder symptoms had been present since the day of the accident. He also assumed that the medical records of her treating doctors and Kent Hospital on the day of the incident and during the weeks immediately following would contain complaints of right shoulder pain.

At the request of the court, the employee was examined by Dr. David Moss, an orthopedic surgeon, on June 22, 2018. Dr. Moss testified that he reviewed the letter sent to him by the trial judge and the large package of the employee's medical records and job description that was provided to him. At the examination, the employee told Dr. Moss that she fell

- 13 -

backwards, injuring her left wrist, right knee, and low back. She reported that she no longer had pain in her left hand or wrist. She informed Dr. Moss that her back was significantly improved and that she was progressing well from her 2018 right shoulder surgery. Dr. Moss testified that he examined her left wrist, right shoulder, and lumbar spine.[4] Dr. Moss reported that he found the left carpal tunnel syndrome and the low back strain were caused by the work injury on February 12, 2015. He concluded that the accident was not the cause of her right shoulder complaints as this body part was not mentioned in the records of Kent Hospital, the early evaluations of Dr. Souza, or the medical reports of Dr. Pizzarello. Dr. Moss explained that had the employee suffered an injury to her right shoulder of the severity to require surgery years later, he would expect there to be references to pain in that shoulder shortly after her slip and fall. Dr. Moss determined that the employee was not disabled from her work injuries, nor did he believe that she was disabled due to her right shoulder symptoms. Dr. Moss also explained that he assessed the loss of use to the employee's left upper extremity pursuant to the AMA Guides, Sixth (6th) Edition. He agreed with the opinion of Dr. Weiss that the appropriate loss of use rating for the employee's left upper extremity is one percent (1%).

The employee presented the two-volume deposition of Dr. Richard Anderson, II, a specialist in orthopedics. On October 5, 2015, he performed his initial examination of the employee and obtained a history that included the work incident of February 12, 2015. After examining the employee, he diagnosed injuries to the employee's right knee, left and right wrists, low back, and left and right shoulders. Dr. Anderson opined that the employee was disabled from work and that her difficulties were caused by her workplace accidents of November 5, 2014 and February 12, 2015.

---

[4] Kenyon Robertson, husband of the employee, testified that he was in the room with his wife and did not observe Dr. Moss physically touch the employee as a part of the examination.

- 14 -

Dr. Anderson conducted a second evaluation of the employee on April 4, 2019. The employee gave Dr. Anderson an update on her medical treatment, and he conducted a new physical examination. He diagnosed injuries to her right shoulder, right knee, left wrist, and right wrist, all caused by the accident on February 12, 2015. At the time of this second evaluation, Dr. Anderson found the employee to be partially incapacitated and unable to return to her position as a bus driver.

During cross-examination, Dr. Anderson revealed his understanding that, at the time of her accident, the employee had fallen backwards onto her left arm and back. He did not know the position of her body when she fell or what body parts contacted the ground. Additionally, he could not explain how the employee sustained an injury to her right shoulder from this event. Dr. Anderson testified that it was his impression that the employee had complained of all of these injuries continuously since February 12, 2015, and that he would expect the medical records from the acute stages of treatment following the accident to list those complaints. When shown the reports from Kent Hospital, the initial reports of Dr. Souza, and the reports of Dr. Pizzarello, Dr. Anderson agreed that there was no mention of complaints to the right knee, right shoulder, or right wrist. In addition, Dr. Anderson stated that while he found abnormalities during his second examination of the right shoulder on April 4, 2019, the examination of that shoulder during his initial examination in October of 2015 was normal. Dr. Anderson also conceded that the significant abnormal physical findings made by Dr. Mirrer when examining the employee's right shoulder on December 9, 2016, were not documented when he examined the employee more than a year earlier in October of 2015.

Additional medical exhibits include the Rhode Island Hospital records, which detail the physical therapy treatment received by the employee from March through May of 2018

- 15 -

following her right shoulder surgery. The trial judge was also provided with the reports of the Dr. John E. Donley Rehabilitation Center indicating that the employee was evaluated in December of 2016 and August of 2017.[5] On both occasions, she was found not an appropriate candidate for their Comprehensive Pain Management Program.

Following the close of the evidence, the trial judge requested and received a post-trial memorandum from each party. Shortly thereafter, he rendered a comprehensive fifty-four (54) page bench decision. Initially, the trial judge summarized the testimony of the employee, the medical records, and the other exhibits in evidence, as well as the voluminous transcripts of the six (6) physicians who were deposed. He then commenced an in-depth analysis of each individual petition.

With regard to W.C.C. No. 2017-06073, the court found "scant evidence to support" the employee's claim of a right to reinstatement.[6] Trial Tr. 152:12. Citing Rhode Island General Laws § 28-33-47(a), the trial judge noted that no written demand for reinstatement, as required by the statute, was placed into evidence.[7] In addition, the medical evidence did not show that the employee was able to perform her regular job with reasonable accommodation within one (1) year of the work-related injury. The trial judge referenced the employee's admission that, around the time of the alleged reinstatement demand, she may have told Dr. Pizzarello that she

---

[5] The Dr. John E. Donley Rehabilitation Center was renamed and is now referred to as the Chief Judge Robert F. Arrigan Rehabilitation Center.
[6] In the trial judge's bench decision on October 23, 2019, he referenced W.C.C. No. 2017-06646 as the employee's petition for reinstatement; however, W.C.C. No. 2017-06073 was the employee's petition for reinstatement.
[7] Rhode Island General Laws § 28-33-47(a) states that: "A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon written demand for reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of the position with reasonable accommodation made by the employer in the manner in which the work is to be performed."

- 16 -

could not return to work due to poor grip strength and her concession at trial that it was possible she could not perform the duties of her job at that time.

The trial judge also reviewed the medical records of the treating physicians during the key December of 2015 to January of 2016 period. He noted that Dr. Souza's letter dated January 26, 2015,[8] contained significant restrictions upon her ability to push or lift. Additionally, the letter requested a bus route that had infrequent stops so that the employee would not overwork her left hand. Dr. Souza also restricted the employee to working a shift of five (5) hours or less. The trial judge also referenced Dr. Pizzarello's statement of December 8, 2015, that the employee should remain out of work as she should not perform duties of constant gripping and grasping. On January 28, 2016, Dr. Pizzarello wrote that it was not safe for the employee to return to work. Thus, the trial judge found that the employee had failed to satisfy the conditions necessary to prove that the employer was required to accept the demand for reinstatement.

The trial judge next addressed W.C.C. No. 2017-05115, in which the employee alleged a recurrence of incapacity. He rejected the testimony of Dr. Weiss and accepted the opinions of Dr. Schmidt and Dr. Moss that the second carpal tunnel surgery performed by Dr. Schmidt on February 9, 2017, was causally related to the incident at work on February 12, 2015 and was necessary to relieve the employee from the effects of that injury. The trial judge then found Dr. Schmidt's testimony regarding continued incapacity to be equivocal. After referencing the opinion of Dr. Moss, who examined the employee on behalf of the court, the trial judge ruled that the employee was no longer disabled as of June 22, 2018, the date of the examination by Dr. Moss. Acknowledging the apparent conflict in the opinions of the three (3) doctors, the trial

---

[8] As indicated earlier, the correct date of this letter should be January 26, 2016.

judge cited *Parenteau v. Zimmerman Engineering, Inc.*, 111 R.I. 68, 299 A.2d 168 (1973), in exercising his discretion to rely on the opinion of Dr. Moss.

Regarding the employee's loss of use petition, W.C.C. No. 2017-06646, the trial judge again recognized the conflict in the opinions of the various physicians. While Dr. Schmidt found a five percent (5%) loss of function in the left upper extremity, both Dr. Weiss and Dr. Moss determined that the appropriate percentage loss was only one percent (1%). Again, citing *Parenteau*, 111 R.I. 68, 299 A.2d 168 (1973), the trial judge chose to rely on the opinions of Dr. Moss and Dr. Weiss to find that the applicable evaluation should be one percent (1%) impairment of the left upper extremity as a result of the February 12, 2015 injury. In rejecting the opinion of Dr. Schmidt, the trial judge noted Dr. Schmidt's admission that his loss of use determination was based upon complaints of the employee that were subjective in nature.

Lastly, the trial judge assessed the evidence applicable to W.C.C. No. 2017-06824, the employee's petition to include the right shoulder as a body part injured in her fall. He noted that, when determining this type of issue, the court usually looks to the emergency room report and to the records of initial treatment. The trial judge commented that the February 12, 2015 medical records of Kent Hospital, the initial records of Dr. Souza, and the reports of Dr. Pizzarello do not show that the employee made any complaints to indicate a right shoulder injury. The trial judge then referenced the opinions of the two (2) court-appointed impartial medical examiners, Dr. Austin and Dr. Moss, who each concluded that the employee did not injure her right shoulder in the work-related incident.

The trial judge acknowledged that the employee's petition relies upon her testimony as well as that of Dr. Bonness and Dr. Anderson, together with the medical reports of Dr. Golini and Dr. Mirrer. In reviewing this evidence, the trial judge observed that the employee admitted

- 18 -

that she did not state that her right shoulder was injured when she completed her incident report. Furthermore, the trial judge found her testimony that she told both Dr. Souza and Dr. Pizzarello of her right shoulder complaints to be not credible. The trial judge remarked that Dr. Golini did not examine the right shoulder and that the history referenced in Dr. Mirrer's report contradicts the employee's testimony as well as the incident report and all of the initial medical records. Thus, the trial judge elected not to rely upon these medical records.

In analyzing Dr. Anderson's testimony, the trial judge remarked that when Dr. Anderson first saw the employee (eight (8) months after the incident), he indicated that she injured both her right and left shoulders, yet he did not know exactly how her body hit the ground. Dr. Anderson also stated that if these injuries were due to the February 12, 2015 slip and fall, he would expect complaints of injury to these body parts to be documented in the medical reports regarding treatment during the acute stage following the incident. As these complaints do not appear in those records, the trial judge chose not to rely upon Dr. Anderson's opinion.

The trial judge also rejected the opinions expressed by Dr. Bonness as equivocal. He remarked that Dr. Bonness was unable to comment on whether his surgical findings were caused by a single incident or by a degenerative condition. The trial judge then quoted Dr. Bonness' statement that, to a reasonable degree of medical certainty, his diagnosis "could" be related to the work incident. Trial Tr. 165:22-166:3.

The trial judge relied upon the testimony of Dr. Moss in determining that the employee failed to prove she sustained a right shoulder injury on February 12, 2015. The trial judge concluded that Dr. Moss's finding of no causal relationship was decisive and clearly supported by the medical evidence regarding the initial time period after the incident.

- 19 -

In reviewing the trial judge's decision, the Appellate Division must bear in mind that, pursuant to Rhode Island General Laws § 28-35-28(b), "[t]he findings of the trial judge on factual matters shall be final unless an appellate panel finds them to be clearly erroneous." R.I. Gen. Laws § 28-35-28(b). The appellate panel is precluded from engaging in a de novo review of the evidence and substituting its judgment for that of the trial judge without first determining that the trial judge was clearly wrong. *Diocese of Providence v. Vaz*, 679 A.2d 879, 881 (R.I. 1996). Absent a finding that the trial judge misconceived or overlooked material evidence, we must accept the factual findings of the trial judge as final. *Grimes Box Co. v. Miguel*, 509 A.2d 1002, 1004 (R.I. 1986) (citing *Mulcahey v. New England Newspapers, Inc.*, 488 A.2d 681, 683 (R.I. 1985)).

The employee has filed four (4) reasons of appeal to support her arguments to the Appellate Division. Regarding W.C.C. No. 2017-06824, the employee asserts that the trial judge committed reversible error by rejecting the opinions of Dr. Bonness and Dr. Anderson that she injured her right shoulder in the February 12, 2015 work incident. She alleges that the trial judge overlooked the testimony of the employee's treating physicians, yet the trial judge's bench decision is replete with a detailed summary of their testimony and the reasons why the trial judge elected to instead rely upon the opinions of other doctors.

During his cross-examination, Dr. Bonness clearly backed away from the requisite degree of medical certainty necessary for a competent causation opinion. He could not state definitively whether the surgical findings were or were not caused by the employee's fall. Furthermore, he stated that his opinion that her shoulder problems "could" be causally related was based on his assumption that the employee did, in fact, have significant right shoulder complaints since the time of the incident. Ee's Ex. 11, Dr. Bonness Dep. 29:8-18. Dr. Bonness

- 20 -

indicated that he would expect the employee's right shoulder complaints to be documented in her medical records during the period shortly following the injury. The medical evidence does not support this expectation.

Dr. Anderson's opinion was not found persuasive, as his opinion was also based upon the inaccurate assumption that the medical reports would show the employee's complaints of a right shoulder injury during the acute stages of her treatment. In addition, Dr. Anderson was unable to explain why his October 5, 2015 examination of the right shoulder was essentially normal if it had been injured during the February 12, 2015 incident.

The appellate panel cannot undertake its own independent review of the evidence, as requested by the employee in her reasons of appeal. She has failed to demonstrate that any of the findings of fact made by the trial judge are clearly erroneous, as required by § 28-35-28(b), prior to the appellate panel embarking upon its own assessment of the evidence. In addition, contrary to the assertions of the employee, the statutory limitation imposed upon our review of the trial judge's decision cannot be disregarded simply because the medical testimony was presented to the court by deposition rather than in person. Recently in *Osmara Vasquez v. HV Industries, Inc.*, W.C.C. No. 2015-01253 (App. Div. January 17, 2020) and in *William W. Kittila v. Petro Holdings, Inc.*, W.C.C. No. 2016-00869 (App. Div. May 26, 2020), we rejected this same argument and stated that the mere fact that medical testimony is presented by deposition does not alter the right of the trial court to "accurately cite[] *Parenteau v. Zimmerman Eng'g, Inc.*, for the proposition that when a trial judge is confronted with conflicting medical opinions, they have the right to choose to rely upon one expert opinion over the other." *Osmara Vasquez*, W.C.C. No. 2015-01253 at 8 (citing *Parenteau*, 111 R.I. 68, 78, 299 A.2d 168, 174 (1973)).

- 21 -

Regarding W.C.C. No. 2017-06073, the employee contends that the trial judge erred by not finding that a January 27, 2016 letter attached to the employee's petition was sufficient to meet the requirement of Rhode Island General Laws § 28-33-47 that the reinstatement demand be in writing.[9] The mere fact that the letter dated January 27, 2016, was attached to the employee's petition does not make it an exhibit admitted into evidence. It is incumbent upon a party to ensure that all documents necessary to prove their case have been presented to the trial judge, have been marked as exhibits, and become a part of the trial record. When reviewing a decision of a trial judge, the Appellate Division may only consider the evidence presented at trial, and the record may not be enlarged or amended. *Perfetto v. Fanning & Doorley Constr. Co.*, 114 R.I. 624, 629, 337 A.2d 791, 794 (1975) (citing *Larose v. Warwick Brass Foundry, Inc.*, 97 R.I. 459, 198 A.2d 668 (1964); *United States Rubber Co. v. Dymek*, 87 R.I. 310, 140 A.2d 507 (1958)); *Guiliana Perez v. UTGR, Inc.*, W.C.C. No. 2014-02425 (App. Div. December 18, 2019).

Even if the letter was accepted as a written demand for reinstatement, the employee failed to prove she was entitled to be reinstated at that time. As discussed by the trial judge in his bench decision, the medical records and the testimony of the employee clearly mandate a finding that she was not capable of performing her regular duty job, even with reasonable accommodation, at the end of January or the beginning of February of 2016.

---

[9] Rhode Island General Laws § 28-33-47(a) states that: "A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon written demand for reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of the position with reasonable accommodation made by the employer in the manner in which the work is to be performed . . . A certificate by the treating physician that the physician approves the worker's return to the worker's regular employment or other suitable employment shall be prima facie evidence that the worker is able to perform the duties."

- 22 -

In W.C.C No. 2017-06646, the employee alleges the trial judge erred in finding that the employee's loss of use to her left upper extremity was one percent (1%) as opposed to the requested five percent (5%) found by Dr. Schmidt. In support of this argument, the employee again asserts that the appellate panel cannot afford deference to the trial judge's determination, in reliance upon *Parenteau*, 111 R.I. 68, 299 A.2d 168 (1973), that one expert's opinion is more persuasive than another, where the medical evidence is presented by way of deposition. We have already addressed and rejected this contention in our discussion of the employee's appeal of W.C.C. No. 2017-06824 and see no reason to elaborate further.

The employee's reasons of appeal regarding this petition also contain the assertion that the opinion of Dr. Schmidt on this issue "was more reliable and it was error for the trial judge to reject it." Ee's Reasons of Appeal at 4. No explanation of this blanket claim was provided, and we are left to guess as to the basis for this remark. The trial judge's bench decision provided a clear rationale for accepting the rating provided by Dr. Moss and Dr. Weiss as opposed to the rating suggested by Dr. Schmidt. There is no justification for a finding that the trial judge's determination was clearly erroneous.

In addition, the employee has alleged error by the trial court in its determination that the employer was not obligated to reimburse the employee's deposition costs which were not directly related to the partial success she achieved regarding her claim of a recurrence of incapacity. The employee asserts that, as the trial decrees in the other petitions were erroneous, a reversal by the Appellate Division of those decrees should require the employer to pay all costs incurred by the employee in the prosecution of all four (4) petitions. As we have ruled that there was no error by the trial judge in any decision or decree, we need not address this issue further.

- 23 -

Finally, the employee did attempt on multiple occasions to submit additional documentation for this Court to consider on appeal.  As this Court may only consider the evidence presented at trial as well as the record, we assigned no weight to these documents, which are neither evidence nor part of the record.  *Perfetto v. Fanning & Doorley Constr. Co.*, 114 R.I. 624, 629, 337 A.2d 791, 794 (1975) (citing *Larose v. Warwick Brass Foundry, Inc.*, 97 R.I. 459, 198 A.2d 668 (1964); *United States Rubber Co. v. Dymek*, 87 R.I. 310, 140 A.2d 507 (1958)); *Guiliana Perez v. UTGR, Inc.*, W.C.C. No. 2014-02425 (App. Div. December 18, 2019).

Based upon the foregoing discussion, all of the employee's appeals are denied and dismissed, and the decision and decrees of the trial judge are affirmed.  In accordance with Rule 2.20 of the Rules of Practice of the Workers' Compensation Court, final decrees, proposed versions of which are enclosed, shall be entered on *February 25, 2022.*

Olsson, J., and Pepin Fay, J., concur.

ENTER:

/s/ Olsson, J.

/s/ Pepin Fay, J.

/s/ Cardoza, J.

- 24 -

backwards, injuring her left wrist, right knee, and low back. She reported that she no longer had pain in her left hand or wrist. She informed Dr. Moss that her back was significantly improved and that she was progressing well from her 2018 right shoulder surgery. Dr. Moss testified that he examined her left wrist, right shoulder, and lumbar spine.[4] Dr. Moss reported that he found the left carpal tunnel syndrome and the low back strain were caused by the work injury on February 12, 2015. He concluded that the accident was not the cause of her right shoulder complaints as this body part was not mentioned in the records of Kent Hospital, the early evaluations of Dr. Souza, or the medical reports of Dr. Pizzarello. Dr. Moss explained that had the employee suffered an injury to her right shoulder of the severity to require surgery years later, he would expect there to be references to pain in that shoulder shortly after her slip and fall. Dr. Moss determined that the employee was not disabled from her work injuries, nor did he believe that she was disabled due to her right shoulder symptoms. Dr. Moss also explained that he assessed the loss of use to the employee's left upper extremity pursuant to the AMA Guides, Sixth (6th) Edition. He agreed with the opinion of Dr. Weiss that the appropriate loss of use rating for the employee's left upper extremity is one percent (1%).

The employee presented the two-volume deposition of Dr. Richard Anderson, II, a specialist in orthopedics. On October 5, 2015, he performed his initial examination of the employee and obtained a history that included the work incident of February 12, 2015. After examining the employee, he diagnosed injuries to the employee's right knee, left and right wrists, low back, and left and right shoulders. Dr. Anderson opined that the employee was disabled from work and that her difficulties were caused by her workplace accidents of November 5, 2014 and February 12, 2015.

---

[4] Kenyon Robertson, husband of the employee, testified that he was in the room with his wife and did not observe Dr. Moss physically touch the employee as a part of the examination.

- 14 -

Dr. Anderson conducted a second evaluation of the employee on April 4, 2019. The employee gave Dr. Anderson an update on her medical treatment, and he conducted a new physical examination. He diagnosed injuries to her right shoulder, right knee, left wrist, and right wrist, all caused by the accident on February 12, 2015. At the time of this second evaluation, Dr. Anderson found the employee to be partially incapacitated and unable to return to her position as a bus driver.

During cross-examination, Dr. Anderson revealed his understanding that, at the time of her accident, the employee had fallen backwards onto her left arm and back. He did not know the position of her body when she fell or what body parts contacted the ground. Additionally, he could not explain how the employee sustained an injury to her right shoulder from this event. Dr. Anderson testified that it was his impression that the employee had complained of all of these injuries continuously since February 12, 2015, and that he would expect the medical records from the acute stages of treatment following the accident to list those complaints. When shown the reports from Kent Hospital, the initial reports of Dr. Souza, and the reports of Dr. Pizzarello, Dr. Anderson agreed that there was no mention of complaints to the right knee, right shoulder, or right wrist. In addition, Dr. Anderson stated that while he found abnormalities during his second examination of the right shoulder on April 4, 2019, the examination of that shoulder during his initial examination in October of 2015 was normal. Dr. Anderson also conceded that the significant abnormal physical findings made by Dr. Mirrer when examining the employee's right shoulder on December 9, 2016, were not documented when he examined the employee more than a year earlier in October of 2015.

Additional medical exhibits include the Rhode Island Hospital records, which detail the physical therapy treatment received by the employee from March through May of 2018

- 15 -

following her right shoulder surgery. The trial judge was also provided with the reports of the Dr. John E. Donley Rehabilitation Center indicating that the employee was evaluated in December of 2016 and August of 2017.[5] On both occasions, she was found not an appropriate candidate for their Comprehensive Pain Management Program.

Following the close of the evidence, the trial judge requested and received a post-trial memorandum from each party. Shortly thereafter, he rendered a comprehensive fifty-four (54) page bench decision. Initially, the trial judge summarized the testimony of the employee, the medical records, and the other exhibits in evidence, as well as the voluminous transcripts of the six (6) physicians who were deposed. He then commenced an in-depth analysis of each individual petition.

With regard to W.C.C. No. 2017-06073, the court found "scant evidence to support" the employee's claim of a right to reinstatement.[6] Trial Tr. 152:12. Citing Rhode Island General Laws § 28-33-47(a), the trial judge noted that no written demand for reinstatement, as required by the statute, was placed into evidence.[7] In addition, the medical evidence did not show that the employee was able to perform her regular job with reasonable accommodation within one (1) year of the work-related injury. The trial judge referenced the employee's admission that, around the time of the alleged reinstatement demand, she may have told Dr. Pizzarello that she

---

[5] The Dr. John E. Donley Rehabilitation Center was renamed and is now referred to as the Chief Judge Robert F. Arrigan Rehabilitation Center.

[6] In the trial judge's bench decision on October 23, 2019, he referenced W.C.C. No. 2017-06646 as the employee's petition for reinstatement; however, W.C.C. No. 2017-06073 was the employee's petition for reinstatement.

[7] Rhode Island General Laws § 28-33-47(a) states that: "A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon written demand for reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of the position with reasonable accommodation made by the employer in the manner in which the work is to be performed."

- 16 -

could not return to work due to poor grip strength and her concession at trial that it was possible she could not perform the duties of her job at that time.

The trial judge also reviewed the medical records of the treating physicians during the key December of 2015 to January of 2016 period. He noted that Dr. Souza's letter dated January 26, 2015,[8] contained significant restrictions upon her ability to push or lift. Additionally, the letter requested a bus route that had infrequent stops so that the employee would not overwork her left hand. Dr. Souza also restricted the employee to working a shift of five (5) hours or less. The trial judge also referenced Dr. Pizzarello's statement of December 8, 2015, that the employee should remain out of work as she should not perform duties of constant gripping and grasping. On January 28, 2016, Dr. Pizzarello wrote that it was not safe for the employee to return to work. Thus, the trial judge found that the employee had failed to satisfy the conditions necessary to prove that the employer was required to accept the demand for reinstatement.

The trial judge next addressed W.C.C. No. 2017-05115, in which the employee alleged a recurrence of incapacity. He rejected the testimony of Dr. Weiss and accepted the opinions of Dr. Schmidt and Dr. Moss that the second carpal tunnel surgery performed by Dr. Schmidt on February 9, 2017, was causally related to the incident at work on February 12, 2015 and was necessary to relieve the employee from the effects of that injury. The trial judge then found Dr. Schmidt's testimony regarding continued incapacity to be equivocal. After referencing the opinion of Dr. Moss, who examined the employee on behalf of the court, the trial judge ruled that the employee was no longer disabled as of June 22, 2018, the date of the examination by Dr. Moss. Acknowledging the apparent conflict in the opinions of the three (3) doctors, the trial

---

[8] As indicated earlier, the correct date of this letter should be January 26, 2016.

judge cited *Parenteau v. Zimmerman Engineering, Inc.*, 111 R.I. 68, 299 A.2d 168 (1973), in exercising his discretion to rely on the opinion of Dr. Moss.

Regarding the employee's loss of use petition, W.C.C. No. 2017-06646, the trial judge again recognized the conflict in the opinions of the various physicians. While Dr. Schmidt found a five percent (5%) loss of function in the left upper extremity, both Dr. Weiss and Dr. Moss determined that the appropriate percentage loss was only one percent (1%). Again, citing *Parenteau*, 111 R.I. 68, 299 A.2d 168 (1973), the trial judge chose to rely on the opinions of Dr. Moss and Dr. Weiss to find that the applicable evaluation should be one percent (1%) impairment of the left upper extremity as a result of the February 12, 2015 injury. In rejecting the opinion of Dr. Schmidt, the trial judge noted Dr. Schmidt's admission that his loss of use determination was based upon complaints of the employee that were subjective in nature.

Lastly, the trial judge assessed the evidence applicable to W.C.C. No. 2017-06824, the employee's petition to include the right shoulder as a body part injured in her fall. He noted that, when determining this type of issue, the court usually looks to the emergency room report and to the records of initial treatment. The trial judge commented that the February 12, 2015 medical records of Kent Hospital, the initial records of Dr. Souza, and the reports of Dr. Pizzarello do not show that the employee made any complaints to indicate a right shoulder injury. The trial judge then referenced the opinions of the two (2) court-appointed impartial medical examiners, Dr. Austin and Dr. Moss, who each concluded that the employee did not injure her right shoulder in the work-related incident.

The trial judge acknowledged that the employee's petition relies upon her testimony as well as that of Dr. Bonness and Dr. Anderson, together with the medical reports of Dr. Golini and Dr. Mirrer. In reviewing this evidence, the trial judge observed that the employee admitted

- 18 -

that she did not state that her right shoulder was injured when she completed her incident report. Furthermore, the trial judge found her testimony that she told both Dr. Souza and Dr. Pizzarello of her right shoulder complaints to be not credible. The trial judge remarked that Dr. Golini did not examine the right shoulder and that the history referenced in Dr. Mirrer's report contradicts the employee's testimony as well as the incident report and all of the initial medical records. Thus, the trial judge elected not to rely upon these medical records.

In analyzing Dr. Anderson's testimony, the trial judge remarked that when Dr. Anderson first saw the employee (eight (8) months after the incident), he indicated that she injured both her right and left shoulders, yet he did not know exactly how her body hit the ground. Dr. Anderson also stated that if these injuries were due to the February 12, 2015 slip and fall, he would expect complaints of injury to these body parts to be documented in the medical reports regarding treatment during the acute stage following the incident. As these complaints do not appear in those records, the trial judge chose not to rely upon Dr. Anderson's opinion.

The trial judge also rejected the opinions expressed by Dr. Bonness as equivocal. He remarked that Dr. Bonness was unable to comment on whether his surgical findings were caused by a single incident or by a degenerative condition. The trial judge then quoted Dr. Bonness' statement that, to a reasonable degree of medical certainty, his diagnosis "could" be related to the work incident. Trial Tr. 165:22-166:3.

The trial judge relied upon the testimony of Dr. Moss in determining that the employee failed to prove she sustained a right shoulder injury on February 12, 2015. The trial judge concluded that Dr. Moss's finding of no causal relationship was decisive and clearly supported by the medical evidence regarding the initial time period after the incident.

- 19 -

In reviewing the trial judge's decision, the Appellate Division must bear in mind that, pursuant to Rhode Island General Laws § 28-35-28(b), "[t]he findings of the trial judge on factual matters shall be final unless an appellate panel finds them to be clearly erroneous." R.I. Gen. Laws § 28-35-28(b).  The appellate panel is precluded from engaging in a de novo review of the evidence and substituting its judgment for that of the trial judge without first determining that the trial judge was clearly wrong. *Diocese of Providence v. Vaz*, 679 A.2d 879, 881 (R.I. 1996).  Absent a finding that the trial judge misconceived or overlooked material evidence, we must accept the factual findings of the trial judge as final. *Grimes Box Co. v. Miguel*, 509 A.2d 1002, 1004 (R.I. 1986) (citing *Mulcahey v. New England Newspapers, Inc.*, 488 A.2d 681, 683 (R.I. 1985)).

The employee has filed four (4) reasons of appeal to support her arguments to the Appellate Division.  Regarding W.C.C. No. 2017-06824, the employee asserts that the trial judge committed reversible error by rejecting the opinions of Dr. Bonness and Dr. Anderson that she injured her right shoulder in the February 12, 2015 work incident.  She alleges that the trial judge overlooked the testimony of the employee's treating physicians, yet the trial judge's bench decision is replete with a detailed summary of their testimony and the reasons why the trial judge elected to instead rely upon the opinions of other doctors.

During his cross-examination, Dr. Bonness clearly backed away from the requisite degree of medical certainty necessary for a competent causation opinion.  He could not state definitively whether the surgical findings were or were not caused by the employee's fall.  Furthermore, he stated that his opinion that her shoulder problems "could" be causally related was based on his assumption that the employee did, in fact, have significant right shoulder complaints since the time of the incident.  Ee's Ex. 11, Dr. Bonness Dep. 29:8-18.  Dr. Bonness

indicated that he would expect the employee's right shoulder complaints to be documented in her medical records during the period shortly following the injury. The medical evidence does not support this expectation.

Dr. Anderson's opinion was not found persuasive, as his opinion was also based upon the inaccurate assumption that the medical reports would show the employee's complaints of a right shoulder injury during the acute stages of her treatment. In addition, Dr. Anderson was unable to explain why his October 5, 2015 examination of the right shoulder was essentially normal if it had been injured during the February 12, 2015 incident.

The appellate panel cannot undertake its own independent review of the evidence, as requested by the employee in her reasons of appeal. She has failed to demonstrate that any of the findings of fact made by the trial judge are clearly erroneous, as required by § 28-35-28(b), prior to the appellate panel embarking upon its own assessment of the evidence. In addition, contrary to the assertions of the employee, the statutory limitation imposed upon our review of the trial judge's decision cannot be disregarded simply because the medical testimony was presented to the court by deposition rather than in person. Recently in *Osmara Vasquez v. HV Industries, Inc.*, W.C.C. No. 2015-01253 (App. Div. January 17, 2020) and in *William W. Kittila v. Petro Holdings, Inc.*, W.C.C. No. 2016-00869 (App. Div. May 26, 2020), we rejected this same argument and stated that the mere fact that medical testimony is presented by deposition does not alter the right of the trial court to "accurately cite[] *Parenteau v. Zimmerman Eng'g, Inc.*, for the proposition that when a trial judge is confronted with conflicting medical opinions, they have the right to choose to rely upon one expert opinion over the other." *Osmara Vasquez*, W.C.C. No. 2015-01253 at 8 (citing *Parenteau*, 111 R.I. 68, 78, 299 A.2d 168, 174 (1973)).

- 21 -

Regarding W.C.C. No. 2017-06073, the employee contends that the trial judge erred by not finding that a January 27, 2016 letter attached to the employee's petition was sufficient to meet the requirement of Rhode Island General Laws § 28-33-47 that the reinstatement demand be in writing.[9]  The mere fact that the letter dated January 27, 2016, was attached to the employee's petition does not make it an exhibit admitted into evidence.  It is incumbent upon a party to ensure that all documents necessary to prove their case have been presented to the trial judge, have been marked as exhibits, and become a part of the trial record.  When reviewing a decision of a trial judge, the Appellate Division may only consider the evidence presented at trial, and the record may not be enlarged or amended.  *Perfetto v. Fanning & Doorley Constr. Co.*, 114 R.I. 624, 629, 337 A.2d 791, 794 (1975) (citing *Larose v. Warwick Brass Foundry, Inc.*, 97 R.I. 459, 198 A.2d 668 (1964); *United States Rubber Co. v. Dymek*, 87 R.I. 310, 140 A.2d 507 (1958)); *Guiliana Perez v. UTGR, Inc.*, W.C.C. No. 2014-02425 (App. Div. December 18, 2019).

Even if the letter was accepted as a written demand for reinstatement, the employee failed to prove she was entitled to be reinstated at that time.  As discussed by the trial judge in his bench decision, the medical records and the testimony of the employee clearly mandate a finding that she was not capable of performing her regular duty job, even with reasonable accommodation, at the end of January or the beginning of February of 2016.

---

[9] Rhode Island General Laws § 28-33-47(a) states that: "A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon written demand for reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of the position with reasonable accommodation made by the employer in the manner in which the work is to be performed . . . A certificate by the treating physician that the physician approves the worker's return to the worker's regular employment or other suitable employment shall be prima facie evidence that the worker is able to perform the duties."

In W.C.C No. 2017-06646, the employee alleges the trial judge erred in finding that the employee's loss of use to her left upper extremity was one percent (1%) as opposed to the requested five percent (5%) found by Dr. Schmidt. In support of this argument, the employee again asserts that the appellate panel cannot afford deference to the trial judge's determination, in reliance upon *Parenteau*, 111 R.I. 68, 299 A.2d 168 (1973), that one expert's opinion is more persuasive than another, where the medical evidence is presented by way of deposition. We have already addressed and rejected this contention in our discussion of the employee's appeal of W.C.C. No. 2017-06824 and see no reason to elaborate further.

The employee's reasons of appeal regarding this petition also contain the assertion that the opinion of Dr. Schmidt on this issue "was more reliable and it was error for the trial judge to reject it." Ee's Reasons of Appeal at 4. No explanation of this blanket claim was provided, and we are left to guess as to the basis for this remark. The trial judge's bench decision provided a clear rationale for accepting the rating provided by Dr. Moss and Dr. Weiss as opposed to the rating suggested by Dr. Schmidt. There is no justification for a finding that the trial judge's determination was clearly erroneous.

In addition, the employee has alleged error by the trial court in its determination that the employer was not obligated to reimburse the employee's deposition costs which were not directly related to the partial success she achieved regarding her claim of a recurrence of incapacity. The employee asserts that, as the trial decrees in the other petitions were erroneous, a reversal by the Appellate Division of those decrees should require the employer to pay all costs incurred by the employee in the prosecution of all four (4) petitions. As we have ruled that there was no error by the trial judge in any decision or decree, we need not address this issue further.

Finally, the employee did attempt on multiple occasions to submit additional documentation for this Court to consider on appeal. As this Court may only consider the evidence presented at trial as well as the record, we assigned no weight to these documents, which are neither evidence nor part of the record. *Perfetto v. Fanning & Doorley Constr. Co.*, 114 R.I. 624, 629, 337 A.2d 791, 794 (1975) (citing *Larose v. Warwick Brass Foundry, Inc.*, 97 R.I. 459, 198 A.2d 668 (1964); *United States Rubber Co. v. Dymek*, 87 R.I. 310, 140 A.2d 507 (1958)); *Guiliana Perez v. UTGR, Inc.*, W.C.C. No. 2014-02425 (App. Div. December 18, 2019).

Based upon the foregoing discussion, all of the employee's appeals are denied and dismissed, and the decision and decrees of the trial judge are affirmed. In accordance with Rule 2.20 of the Rules of Practice of the Workers' Compensation Court, final decrees, proposed versions of which are enclosed, shall be entered on *February 25, 2022.*

Olsson, J., and Pepin Fay, J., concur.

ENTER:

/s/ Olsson, J.

/s/ Pepin Fay, J.

/s/ Cardoza, J.

- 24 -

Case Number: 201704046
Filed in Workers' Compensation Court
Submitted: 8/20/2018 8:24 AM
Envelope: 167190
Reviewer: Kimberly Moretti

08/20/2018 MON 14:28 FAX 4017349334    CONNOR LAW OFFICES    ☑ 0002/0003

08/20/2018 MON 14:28   FAX 14014536670 Law Office of SJD    ☑ 002/003

*Withdrawn Petition Preapproval for psyclogist*

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## STIPULATION

☐ SUPREME COURT ☐ SUPERIOR COURT ☐ FAMILY COURT ☐ DISTRICT COURT

☑ WORKERS' COMPENSATION COURT ☐ RHODE ISLAND TRAFFIC TRIBUNAL

☐ Providence/Bristol County or Sixth Division ☐ Washington County or Fourth Division
☐ Kent County or Third Division ☐ Newport County or Second Division

| Plaintiff | Civil Action File Number or Summons Number |
|---|---|
| Mickeda S. Barnes | 201704046 |
| **Defendant** | |
| Rhode Island Public Transit Authority | |

In the above-entitled cause it is agreed that the following entry be made:

The Claim for Trial in the above-entitled matter is hereby withdrawn.

| Attorney for the Plaintiff or the Plaintiff /s/ | Attorney for the Defendant or the Defendant /s/ Nicholas Mancini |
|---|---|
| Rhode Island Bar Number: 4339 | Rhode Island Bar Number: 7100 |
| Address: 127 Dorrance St. | Address: |
| Office Telephone Number: 453-1355 | Office Telephone Number: 732-0300 |
| Date: 8/20/18 | Date: 8/20/18 |
| /s/ | |
| Judicial Officer | Date 8/20/18 |

CC-3 (revised April 2015)

# LAW OFFICE OF STEPHEN J. DENNIS

Stephen J. Dennis *
Howard L. Feldman †

William J. Gately, Jr. †
of counsel

\* Also admitted in DC
† Also admitted in MA

October 19, 2020

Certified mail 7017 2620 0000 9297 1999

Sonja L. Deyoe, Esq.
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908

RE:   Mickeda Barnes vs. Rhode Island Public Transit Authority- Workers'
Compensation Claim
DOI:  2/12/2015

Dear Attorney Deyoe:

As you are aware Ms. Barnes is now challenging co-counsel agreement that she signed over 2 years ago. Enclosed please find check #1948 in the amount of $10,000.00, with regards to Mickeda Barnes's discrimination matter.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Law Office of Stephen J. Dennis

Stephen J. Dennis, Esq.

SJD/sba
Enclosure

127 Dorrance Street, 3rd Floor, Suite 7A, Providence, RI 02903
Tel: 401-453-1355 • 1-888-634-1543 • Fax: 401-453-6670





Exhibit A

| EARNINGS | QUANTITY | CURRENT | DEDUCTIONS | CUR. | YEAR TO D |
|---|---|---|---|---|---|
| VACATION WEEK BARGAI | 40.00 | 1255.93 | HEALTH FAMILY 618 | 66.40 | 324. |
| | | | DENTAL 004 FAMILY | 5.94 | 29. |
| | | | DEF COMP MASS MUTU | 50.00 | 250. |
| | | | LIFE INS $30,500 | 2.67 | 13. |
| | | | PENSION DRIVERS | 32.35 | 161. |
| | | | VISION FAMILY 618 | .51 | 2. |
| | | | FEDERAL INCOME TX | 60.00 | 300. |
| | | | RI STATE INCOME TX | 40.00 | 235. |
| | | | SS FICA-MEDICARE | 17.12 | 131. |
| Gross | | 1255.93 | SS FICA-OASDI | 73.19 | 561. |
| ACCRUAL | EARNED | USED | BALANCE | RI TDI-TEMP DIS. | 13.18 | 95. |
| PAT | | | 16.000 | R.I. CREDIT UNION | 50.00 | 250. |
| SCK | | | 72.000 | UNION COPE | 2.00 | 10. |
| VAC | | 80.000 | 40.000 | UNION DUES618/618A | 15.98 | 79. |
| | | | | UN RELIANCE LIFE | 5.75 | 28. |

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 9426.99 | 8645.50 | 9057.25 | 9057.25 |

ACCOUNT BREAKDOWN

| 848 | *****50.00 |
|---|---|
| 3210 | ****770.84 |

*Vacation week Ending Feb 6*
*Pald for Feb16*
*2015*

**RIPTA**
RHODE ISLAND PUBLIC TRANSIT AUTHORITY
705 Elmwood Avenue, Providence, RI 02907

DATE  1/23/15

AMOUNT
820.84

PAY THE
SUM OF

| TO THE ORDER OF | 40 42 501 | 5282 |
|---|---|---|
| | MICKEDA BARNES | |
| | 34 DUNBAR AVENUE | |
| | RUMFORD, RI  02916 | |

**NON-NEGOTIABLE**

*Loan 7142090525*

DEPT: 40 42 501

| EARNINGS | QUANTITY | CURRENT | | DEDUCTIONS | CURR. | YEAR TO D. |
|---|---|---|---|---|---|---|
| OVERTIME 1.5X | 13.61 | 550.39 | | HEALTH FAMILY 618 | 66.40 | 257. |
| SPREAD TIME | 5.37 | 72.39 | | DENTAL 004 FAMILY | 5.94 | 23. |
| OVERTIME 2.0X | 8.78 | 473.42 | | DEF COMP MASS MUTU | 50.00 | 200. |
| STRAIGHT TIME 1.0X | 40.00 | 1078.40 | | LIFE INS $30,500 | 2.67 | 10. |
| | | | | PENSION DRIVERS | 32.35 | 129. |
| | | | | VISION FAMILY 618 | .51 | 1. |
| | | | | FEDERAL INCOME TX | 60.00 | 240. |
| | | | | RI STATE INCOME TX | 45.58 | 195. |
| | | | | SS FICA-MEDICARE | 30.44 | 114. |
| Gross | | 2174.60 | | SS FICA-OASDI | 130.14 | 488. |
| | | | | RI TDI TEMP DIS. | 24.20 | 82. |
| ACCRUAL | EARNED | USED | BALANCE | R.I. CREDIT UNION | 50.00 | 200. |
| PAT | | | 16.000 | UNION COPE | 2.00 | 8. |
| SCK | | | 72.000 | UNION DUES618/618A | 15.98 | 63. |
| VAC | | 80.000 | 40.000 | UN RELIANCE LIFE | 5.75 | 23. |

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 8171.06 | 7547.44 | 7876.84 | 7876.84 |

ACCOUNT BREAKDOWN

| | |
|---|---|
| 848 | *****50.00 |
| 3210 | **1,602.64 |

**RIPTA**
RHODE ISLAND PUBLIC TRANSIT AUTHORITY
705 Elmwood Avenue, Providence, RI 02907

DATE   1/23/15

PAY THE
SUM OF

AMOUNT
1652.64

TO
THE
ORDER
OF

40 42 501
MICKEDA BARNES
34 DUNBAR AVENUE
RUMFORD, RI  02916

5282

NON-NEGOTIABLE

| | CURRENT | YEAR TO DATE |
|---|---|---|
| SICK PAY 618 | 24.00 647.04 | |
| STRAIGHT TIME 1.0X | 16.00 431.36 | |
| OVERTIME 1.5X | 1.84 74.41 | |

| DEDUCTIONS | CURR | YEAR TO DATE |
|---|---|---|
| HEALTH FAMILY 618 | 66.40 | 191.4 |
| DENTAL 004 FAMILY | 5.94 | 17.8 |
| DEF COMP MASS MUTU | 50.00 | 150.0 |
| LIFE INS $30,500 | 2.67 | 8.0 |
| PENSION DRIVERS | 32.35 | 97.0 |
| VISION FAMILY 618 | .51 | 1.4 |
| FEDERAL INCOME TX | 60.00 | 180.0 |
| RI STATE INCOME TX | 40.00 | 150.0 |
| SS FICA-MEDICARE | 15.62 | 83.7 |
| SS FICA-OASDI | 66.79 | 358.0 |
| RI TDI TEMP DIS | 4.17 | 58.6 |
| R.I. CREDIT UNION | 50.00 | 150.0 |
| UNION COPE | 2.00 | 6.0 |
| UNION DUES618/618A | 15.98 | 47.9 |
| UN RELIANCE LIFE | 5.75 | 17.2 |

Gross 1152.81

| ACCRUAL | EARNED | USED | BALANCE |
|---|---|---|---|
| PAT | | | 16.000 |
| SCK | 24.000 | | 72.000 |
| VAC | | | 120.000 |

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 5996.46 | 5530.71 | 5777.76 | 5777.76 |

ACCOUNT BREAKDOWN

848 *****50.00
3210 ****684.63

1255.90


RIPTA
RHODE ISLAND PUBLIC TRANSIT AUTHORITY
705 Elmwood Avenue, Providence, RI 02907

DATE 1/15/1

PAY THE
SUM OF

TO
THE      40.42 50
ORDER    MICKEDA BARNES
OF       34 DUNBAR AVENUE
         RUMFORD, RI 02916

5282

AMOUNT
734.63

NON-NEGOTIABLE

Loan 714 209 05.75

| | QUANTITY | CURRENT | | DEDUCTIONS | CURR | YEAR TO DA |
|---|---|---|---|---|---|---|
| OVERTIME 1.5X | 11.82 | 480.83 | HEALTH FAMILY 618 | | 62.50 | 125.0 |
| STRAIGHT TIME 1.0X | 32.00 | 862.72 | DENTAL 004 FAMILY | | 5.94 | 11.8 |
| OVERTIME 2.0X | 6.67 | 359.65 | DEF COMP HARTFORD | | 50.00 | 100.0 |
| SPREAD TIME | 1.87 | 25.21 | LIFE INS $30,500 | | 2.67 | 5.3 |
| HOLIDAY-ONE DAY PAY | 8.95 | 241.29 | PENSION DRIVERS | | 32.35 | 64.7 |
| OT 1.5X WORKED HOLID | 8.95 | 361.94 | VISION FAMILY 618 | | .48 | |
| | | | FEDERAL INCOME TX | | 60.00 | 120.0 |
| | | | RI STATE INCOME TX | | 51.62 | 110.0 |
| Gross | | 2331.64 | SS FICA-MEDICARE | | 32.77 | 68.1 |
| | | | SS FICA-OASDI | | 140.12 | 291.4 |
| | | | RI TDI TEMP DIS. | | 26.13 | 54.4 |
| | | | R.I. CREDIT UNION | | 50.00 | 100.0 |
| | | | UNION COPE | | 2.00 | 4.0 |
| | | | UNION DUES618/618A | | 15.98 | 31.96 |
| | | | UN RELIANCE LIFE | | 5.75 | 11.50 |

| ACCRUAL | EARNED | USED | BALANCE |
|---|---|---|---|
| PAT | 16.000 | | 16.000 |
| SCK | 96.000 | | 96.000 |
| VAC | 120.000 | | 120.000 |

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 4843.65 | 4535.77 | 4700.47 | 4700.47 |

**ACCOUNT BREAKDOWN**

| | |
|---|---|
| 848 | *****50.00 |
| 3210 | **1,743.33 |



**RIPTA**
RHODE ISLAND PUBLIC TRANSIT AUTHORITY
705 Elmwood Avenue, Providence, RI 02907

DATE  1/08/15

PAY THE
SUM OF

| AMOUNT |
|---|
| 1793.33 |

TO
THE
ORDER
OF

40 42 501        5282
MICKEDA BARNES
34 DUNBAR AVENUE
RUMFORD, RI 02916

**NON-NEGOTIABLE**



| EARNINGS | QUANTITY | CURRENT | DEDUCTIONS | CURR | YEAR TO DATE |
|---|---|---|---|---|---|
| OVERTIME 1.5X | 12.36 | 499.84 | PENSION DRIVERS | 32.35 | 32.3 |
| OVERTIME 2.0X | 8.72 | 470.18 | DEF COMP HARTFORD | 50.00 | 50.0 |
| STRAIGHT TIME 1.0X | 32.00 | 862.72 | LIFE INS $30,500 | 2.67 | 2.6 |
| SPREAD TIME | 3.74 | 50.42 | DENTAL 004 FAMILY | 5.94 | 5.9 |
| HOLIDAY-ONE DAY PAY | 9.33 | 251.54 | VISION FAMILY 618 | .48 | .4 |
| OT 1.5X WORKED HOLID | 9.33 | 377.31 | HEALTH FAMILY 618 | 62.50 | 62.5 |
| | | | FEDERAL  INCOME TX | 60.00 | 60.0 |
| | | | RI STATE INCOME TX | 58.38 | 58.3 |
| | | | SS FICA-MEDICARE | 35.39 | 35.3 |
| Gross | | 2512.01 | SS FICA-OASDI | 151.31 | 151.3 |
| | | | RI TDI TEMP DIS. | 28.30 | 28.3 |

| ACCRUAL | EARNED | USED | BALANCE |
|---|---|---|---|
| PAT | | | |
| SCK | | | |
| VAC | | | |

| UNION COPE | 2.00 | 2.0 |
|---|---|---|
| UNION DUES618/618A | 15.98 | 15.9 |
| UN RELIANCE LIFE | 5.75 | 5.7 |
| R.I. CREDIT UNION | 50.00 | 50.0 |

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 2512.01 | 2358.07 | 2440.42 | 2440.42 |

ACCOUNT BREAKDOWN

```
848        *****50.00
3210       **1,900.96
```

**RIPTA**

RHODE ISLAND PUBLIC TRANSIT AUTHORITY
705 Elmwood Avenue, Providence, RI 02907

DATE   1/02/15

PAY THE
SUM OF

| AMOUNT |
|---|
| 1950.96 |

TO
THE
ORDER
OF

40 42 501          5282
MICKEDA BARNES
34 DUNBAR AVENUE
RUMFORD, RI  02916

**NON-NEGOTIABLE**

| EARNINGS | QUANTITY | CURRENT |
|---|---|---|
| STRAIGHT TIME 1.0X | 40.065 | 1078.40 |
| OVERTIME 1.5X | 4.51 | 182.39 |
| SPREAD TIME | 3.74 | 50.42 |

| DEDUCTIONS | CURRE | YEAR TO DATE |
|---|---|---|
| HEALTH FAMILY 618 | 62.50 | 3242.18 |
| DENTAL 004 FAMILY | 5.94 | 308.88 |
| DEF COMP HARTFORD | 50.00 | 800.00 |
| LIFE INS $30,500 | 2.67 | 138.84 |
| PENSION DRIVERS | 32.35 | 847.73 |
| VISION FAMILY 618 | .48 | 25.22 |
| FEDERAL  INCOME TX | 60.00 | 960.00 |
| RI STATE INCOME TX | 40.00 | 640.15 |
| SS FICA-MEDICARE | 17.97 | 495.93 |
| SS FICA-OASDI | 76.86 | 2120.57 |
| RI TDI TEMP DIS. | 13.89 | 364.41 |
| R.I. CREDIT UNION | 50.00 | 1400.00 |
| UNION COPE | 2.00 | 60.00 |
| UNION DUES618/618A | 15.98 | 476.43 |
| UN RELIANCE LIFE | 5.75 | 172.50 |

Gross 1311.21

| ACCRUAL | EARNED | USED | BALANCE |
|---|---|---|---|
| PAT | | | |
| SCK | | | |
| VAC | | | |

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 37917.77 | 32554.94 | 34202.66 | 34202.66 |

ACCOUNT BREAKDOWN

| 848 | *****50.00 |
|---|---|
| 3210 | ****824.82 |

RIPTA
RHODE ISLAND PUBLIC TRANSIT AUTHORITY
705 Elmwood Avenue, Providence, RI 02907

DATE 12/26/14

PAY THE
SUM OF

| AMOUNT |
|---|
| 874.82 |

TO
THE
ORDER
OF

40 42 501        5282
MICKEDA BARNES
34 DUNBAR AVENUE
RUMFORD,  RI  02916

## NON-NEGOTIABLE

| EARNINGS | QUANTITY | CURRENT | DEDUCTIONS | CURRE | YEAR TO DA |
|---|---|---|---|---|---|
| OVERTIME 1.5X | 13.19 | 530.98 | HEALTH FAMILY 618 | 62.50 | 3179.6 |
| STRAIGHT TIME 1.0X | 40.00 | 1078.40 | DENTAL 004 FAMILY | 5.94 | 302.9 |
| SPREAD TIME | 3.74 | 50.42 | DEF COMP HARTFORD | 50.00 | 750.0 |
| | | | LIFE INS $30,500 | 2.67 | 136.1 |
| | | | PENSION DRIVERS | 32.35 | 815.3 |
| | | | VISION FAMILY 618 | .48 | 24.7 |
| | | | FEDERAL   INCOME TX | 60.00 | 900.0 |
| | | | RI STATE INCOME TX | 40.00 | 600.1 |
| | | | SS FICA-MEDICARE | 23.03 | 477.9 |
| Gross | | 1659.80 | SS FICA-OASDI | 98.47 | 2043.7 |
| | | | RI TDI TEMP DIS. | 18.07 | 350.5 |

| ACCRUAL | EARNED | USED | BALANCE |
|---|---|---|---|
| PAT | | | |
| SCK | | | |
| VAC | | | |

| | | | R.I. CREDIT UNION | 50.00 | 1350.0 |
|---|---|---|---|---|---|
| | | | UNION COPE | 2.00 | 58.0 |
| | | | UNION DUES618/618A | 15.98 | 460.4 |
| | | | UN RELIANCE LIFE | 5.75 | 166.7 |

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 36606.56 | 31397.67 | 32963.04 | 32963.04 |

ACCOUNT BREAKDOWN

| 848 | *****50.00 |
|---|---|
| 3210 | **1,142.56 |

RIPTA
RHODE ISLAND PUBLIC TRANSIT AUTHORITY
701 Elmwood Avenue, Providence, RI 02907

DATE 12/18/14

PAY THE
SUM OF

AMOUNT
1192.56

TO
THE
ORDER
OF

40 42 501
MICKEDA BARNES
34 DUNBAR AVENUE
RUMFORD, RI  02916

5282

NON-NEGOTIABLE

| EARNINGS | QUANTITY | CURRENT |
|---|---|---|
| STRAIGHT TIME 1.0X | 29.90 | 787.23 |
| OVERTIME 1.5X | 3.28 | 132.65 |
| SPREAD TIME | 1.87 | 25.21 |
| ADMIN LEAVE | 2.80 | 75.49 |

| DEDUCTIONS | CURR. | YEAR TO D |
|---|---|---|
| HEALTH FAMILY 618 | 62.50 | 3117. |
| DENTAL 004 FAMILY | 5.94 | 297. |
| DEF COMP HARTFORD | 50.00 | 700. |
| LIFE INS $30,500 | 2.67 | 133. |
| PENSION DRIVERS | 25.88 | 783. |
| VISION FAMILY 618 | .48 | 24. |
| FEDERAL   INCOME TX | 60.00 | 840. |
| RI STATE INCOME TX | 40.00 | 560. |
| SS FICA-MEDICARE | 13.76 | 454. |
| SS FICA-OASDI | 58.84 | 1945. |
| RI TDI TEMP DIS. | 10.48 | 332. |
| R.I. CREDIT UNION | 50.00 | 1300. |
| UNION COPE | 2.00 | 56. |
| UNION DUES618/618A | 15.98 | 444. |
| UN RELIANCE LIFE | 5.75 | 161. |

**Gross**     1020.58

| ACCRUAL | EARNED | USED | BALANCE |
|---|---|---|---|
| PAT | | | |
| SCK | | | |
| VAC | | | |

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 34946.76 | 29891.81 | 31374.83 | 31374.83 |

**ACCOUNT BREAKDOWN**

| 848 | *****50.00 |
|---|---|
| 3210 | ****566.30 |

**RIPTA**
RHODE ISLAND PUBLIC TRANSIT AUTHORITY
705 Elmwood Avenue, Providence, RI 02907

DATE 12/11/14

PAY THE
SUM OF

AMOUNT
616.30

| TO THE ORDER OF | 40 42 501    5282 |
|---|---|
| | MICKEDA BARNES |
| | 34 DUNBAR AVENUE |
| | RUMFORD, RI  02916 |

**NON-NEGOTIABLE**

| EARNINGS | QUANTITY | CURRENT | DEDUCTIONS | CURR | YEAR TO DATE |
|---|---|---|---|---|---|
| OVERTIME 1.5X | 12.55 | 509.14 | HEALTH FAMILY 618 | 62.50 | 3054.6 |
| STRAIGHT TIME 1.0X | 32.00 | 862.72 | DENTAL 004 FAMILY | 5.94 | 291.0 |
| SPREAD TIME | 3.74 | 50.42 | DEF COMP HARTFORD | 50.00 | 650.0 |
| HOLIDAY-ONE DAY PAY | 8.00 | 215.68 | LIFE INS $30,500 | 2.67 | 130.8 |
| | | | PENSION DRIVERS | 32.35 | 757.1 |
| | | | VISION FAMILY 618 | .48 | 23.7 |
| | | | FEDERAL  INCOME TX | 60.00 | 780.0 |
| | | | RI STATE INCOME TX | 40.00 | 520.1 |
| | | | SS FICA-MEDICARE | 22.71 | 441.1 |
| Gross | | 1637.96 | SS FICA-OASDI | 97.11 | 1886.4 |
| | | | RI TDI TEMP DIS. | 17.81 | 322.0 |
| | | | R.I. CREDIT UNION | 50.00 | 1250.0 |
| | | | UNION COPE | 2.00 | 54.0 |
| | | | UNION DUES618/618A | 15.98 | 428.4 |
| | | | UN RELIANCE LIFE | 5.75 | 155.2 |

| ACCRUAL | EARNED | USED | BALANCE |
|---|---|---|---|
| PAT | | | |
| SCK | | | |
| VAC | | | |

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 33926.18 | 29018.70 | 30425.84 | 30425.84 |

ACCOUNT BREAKDOWN

| 848 | *****50.00 |
| 3210 | **1,122.66 |


RHODE ISLAND PUBLIC TRANSIT AUTHORITY
701 Elmwood Avenue, Providence, RI 02907

DATE  12/04/14

PAY THE
SUM OF

AMOUNT
1172.66

TO
THE
ORDER
OF
40 42 501          5282
MICKEDA BARNES
34 DUNBAR AVENUE
RUMFORD, RI  02916

**NON-NEGOTIABLE**

| EARNINGS | QUANTITY | CURRENT | DEDUCTIONS | CURR | YEAR TO D |
|---|---|---|---|---|---|
| STRAIGHT TIME 1.0X | | 1078.39 | HEALTH FAMILY 618 | 62.50 | 2992. |
| OVERTIME 1.5X | 4.34 | 175.51 | DENTAL 004 FAMILY | 5.94 | 285. |
| SPREAD TIME | 3.74 | 50.42 | DEF COMP HARTFORD | 50.00 | 600. |
| | | | LIFE INS $30,500 | 2.67 | 128. |
| | | | PENSION DRIVERS | 32.35 | 724. |
| | | | VISION FAMILY 618 | .48 | 23. |
| | | | FEDERAL INCOME TX | 60.00 | 720. |
| | | | RI STATE INCOME TX | 40.00 | 480. |
| | | | SS FICA-MEDICARE | 17.87 | 418. |
| Gross | | 1304.32 | SS FICA-OASDI | 76.43 | 1789. |

| ACCRUAL | EARNED | USED | BALANCE |
|---|---|---|---|
| PAT | | | |
| SCK | | | |
| VAC | | | |

| | | | |
|---|---|---|---|
| RI TDI TEMP DIS. | 13.80 | 304. | |
| R.I. CREDIT UNION | 50.00 | 1200. | |
| UNION COPE | 2.00 | 52. | |
| UNION DUES618/618A | 15.98 | 412. | |
| UN RELIANCE LIFE | 5.75 | 149. | |

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 32288.22 | 27534.68 | 28859.47 | 28859.47 |

**ACCOUNT BREAKDOWN**

848    *****50.00
3210   ****818.55



RHODE ISLAND PUBLIC TRANSIT AUTHORITY
705 Elmwood Avenue, Providence, RI 02907

DATE 11/26/14

PAY THE
SUM OF

AMOUNT
868.55

TO
THE
ORDER
OF
40 42 501          5282
MICKEDA BARNES
34 DUNBAR AVENUE
RUMFORD, RI 02916

**NON-NEGOTIABLE**

| EARNINGS | QUANTITY | CURRENT | DEDUCTIONS | CURRE | YEAR TO DA |
|---|---|---|---|---|---|
| OVERTIME 1.5X | 11.82 | 478.00 | HEALTH FAMILY 618 | 62.50 | 2929.6 |
| STRAIGHT TIME 1.0X | 32.00 | 862.72 | DENTAL 004 FAMILY | 5.94 | 279.1 |
| HOLIDAY-ONE DAY PAY | 8.00 | 215.68 | DEF COMP HARTFORD | 50.00 | 550.0 |
| SPREAD TIME | 1.87 | 25.21 | LIFE INS $30,500 | 2.67 | 125.4 |
| | | | PENSION DRIVERS | 32.35 | 692.4 |
| | | | VISION FAMILY 618 | .48 | 22.8 |
| | | | FEDERAL  INCOME TX | 60.00 | 660.0 |
| | | | RI STATE INCOME TX | 40.00 | 440.1 |
| | | | SS FICA-MEDICARE | 21.90 | 400.5 |
| Gross | | 1581.61 | SS FICA-OASDI | 93.62 | 1712.8 |

| ACCRUAL | EARNED | USED | BALANCE |
|---|---|---|---|
| PAT | | | |
| SCK | | | |
| VAC | | | |

RI TDI TEMP DIS.        17.13        290.4
R.I. CREDIT UNION       50.00       1150.0
UNION COPE               2.00         50.0
UNION DUES618/618A      15.98        396.5
UN RELIANCE LIFE         5.75        143.7

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 30983.90 | 26384.30 | 27626.74 | 27626.74 |

ACCOUNT BREAKDOWN

848        *****50.00
3210       **1,071.29

DATE  11/20/14

**RIPTA**
RHODE ISLAND PUBLIC TRANSIT AUTHORITY
705 Elmwood Avenue, Providence, RI 02907

PAY THE
SUM OF

| AMOUNT |
|---|
| 1121.29 |

TO
THE
ORDER
OF

40 42 501          5282
MICKEDA BARNES
34 DUNBAR AVENUE
RUMFORD,  RI  02916

**NON-NEGOTIABLE**

| EARNINGS | QUANTITY | CURRENT |
|---|---|---|
| STRAIGHT TIME 1.0X | 40.00 | 1078.40 |
| OVERTIME 1.5X | 4.51 | 182.39, |
| SPREAD TIME | 3.74 | 50.42 |

| DEDUCTIONS | CURRE | YEAR TO DA |
|---|---|---|
| HEALTH FAMILY 618 | 62.50 | 2867.1 |
| DENTAL 004 FAMILY | 5.94 | 273.2 |
| DEF COMP HARTFORD | 50.00 | 500.0 |
| LIFE INS $30,500 | 2.67 | 122.8 |
| PENSION DRIVERS | 32.35 | 660.0 |
| VISION FAMILY 618 | .48 | 22.3 |
| FEDERAL  INCOME TX | 60.00 | 600.0 |
| RI STATE INCOME TX | 40.00 | 400.1 |
| SS FICA-MEDICARE | 17.97 | 378.6 |
| SS FICA-OASDI | 76.86 | 1619.2 |
| RI TDI TEMP DIS. | 13.89 | 273.3 |
| R.I. CREDIT UNION | 50.00 | 1100.0 |
| UNION COPE | 2.00 | 48.0 |
| UNION DUES618/618A | 15.98 | 380.5 |
| UN RELIANCE LIFE | 5.75 | 138.0 |

Gross                                   1311.21

| ACCRUAL | EARNED | USED | BALANCE |
|---|---|---|---|
| PAT | | | |
| SCK | | | |
| VAC | | | |

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 29402.29 | 24956.63 | 26116.72 | 26116.72 |

ACCOUNT BREAKDOWN
848        *****50.00
3210       ****824.82



DATE 11/14/14

PAY THE
SUM OF

| AMOUNT |
|---|
| 874.82 |

TO
THE
ORDER
OF

40 42 501
MICKEDA BARNES          5282
34 DUNBAR AVENUE
RUMFORD, RI 02916

NON-NEGOTIABLE

## EARNINGS

| | QUANTITY | CURRENT |
|---|---|---|
| STRAIGHT TIME 1.0X | 48.00 | 1078.40 |
| OVERTIME 1.5X | 4.51 | 182.39 |
| SPREAD TIME | 3.74 | 50.42 |

| | Gross | 1311.21 |

## DEDUCTIONS

| | CURRENT | YEAR |
|---|---|---|
| HEALTH FAMILY 618 | 62.50 | 28 |
| DENTAL 004 FAMILY | 5.94 | 26 |
| DEF COMP HARTFORD | 50.00 | 450 |
| LIFE INS $30,500 | 2.67 | 120.1 |
| PENSION DRIVERS | 32.35 | 627.7 |
| VISION FAMILY 618 | .48 | 21.8 |
| FEDERAL  INCOME TX | 60.00 | 540.0 |
| RI STATE INCOME TX | 40.00 | 360.1 |
| SS FICA-MEDICARE | 17.97 | 360.7 |
| SS FICA-OASDI | 76.86 | 1542.3 |
| RI TDI TEMP DIS. | 13.89 | 259.4 |
| R.I. CREDIT UNION | 50.00 | 1050.0 |
| UNION COPE | 2.00 | 46.0 |
| UNION DUES618/618A | 15.98 | 364.5 |
| UN RELIANCE LIFE | 5.75 | 132.2 |

| ACCRUAL | EARNED | USED | BALANCE |
|---|---|---|---|
| PAT | | | |
| SCK | | | |
| VAC | | | |

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 28091.08 | 23799.36 | 24877.10 | 24877.10 |

## ACCOUNT BREAKDOWN

| 848 | *****50.00 |
|---|---|
| 3210 | ****824.82 |

**RIPTA**
RHODE ISLAND PUBLIC TRANSIT AUTHORITY
701 Elmwood Avenue, Providence, RI 02907

DATE  11/06/14

PAY THE
SUM OF

| AMOUNT |
|---|
| 874.82 |

TO
THE
ORDER
OF

40 42 501
MICKEDA BARNES
34 DUNBAR AVENUE
RUMFORD, RI  02916

5282

**NON-NEGOTIABLE**

EO-02

DET-BR-3ES (Rev. 05/99)



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# 𝕭𝖔𝖆𝖗𝖉 𝖔𝖋 𝕽𝖊𝖛𝖎𝖊𝖜

For
The Department of Labor and Training

74 West Road, Hazard Bldg., 1st Floor
Cranston, RI  02920
Telephone: (401) 462-9400 Fax: (401) 462-9401
website: http://www.dlt.ri.gov/bor
Email: DLT.BORINFO@DLT.RI.GOV

Chris Fierro
Chairman
Nathaniel J. Rendine
Edward A. Lombardo, Sr.

MICKEDA S BARNES
34 DUNBAR AVENUE
RUMFORD, RI 02916-3111

MAILING DATE:   February 10, 2017
SSN:            8332
APPEAL NUMBER:  20170081 UC
DATE OF APPEAL: December 30, 2016
HEARING DATE:   February 8, 2017
CAU NUMBER:     1640353

## DECISION OF REFEREE

1. **TRAVEL OF THE CASE:**

The claimant's last day of work was February 12, 2015. December 6, 2016, the claimant filed for employment security benefits. December 16, 2016, in a Department of Labor and Training Director decision, the claimant was denied back dating of claim according to the provisions of Section 28-42-3 (3) of the Rhode Island Employment Security Act in coordination with the provisions of Section 28-33-47 of the Rhode Island Workers' Compensation Law. December 30, 2016, the claimant filed a timely appeal on the decision notice of hearing was mailed to all interested parties. February 8, 2017, an appeal hearing was held at which time the claimant appeared and testified. The claimant was represented by her attorney during the hearing. The claimant's attorney was accompanied by one intern. The employer, with proper notice, failed to appear for the hearing.

2. **FINDINGS OF FACT:**

I find by preponderance of credible testimony and evidence the following findings of fact:

The claimant suffered a work related injury February 12, 2015. May 6, 2015 the claimant had surgery. The claimant received Workers' Compensation benefits until the Workers' Compensation Court discontinued benefits effective November 10, 2016. Claimant's medical practitioner released her to return to work without restriction effective June 1, 2015. June 16, 2015 claimant's attorney, Joseph M Beagan, wrote the employer a letter

(vii) Except where otherwise provided under a collective bargaining agreement, the approval by the court of a settlement pursuant to chapters 29 – 38 of this title.

In the instant case, the claimant was released to return to work without restriction 3 ¾ months after the injury. The first written request for reinstatement was posted two weeks later. The credible testimony and evidence support back dating of the claimant's base period.

4.  DECISION:

The decision of the Director is reversed based upon the above conclusions.

*APPEAL RIGHTS*
*This decision will become final unless, within fifteen (15) calendar days of the mailing date hereof, you file an appeal in writing to the Board of Review for the Department of Labor & Training. The appeal can be delivered, mailed, faxed or e-mailed to the Board at 74 West Road, Hazard Bldg., 1st Flr. Cranston, RI, 02920. Fax number: (401) 462-9401. E-mail: DLT.BORINFO@DLT.RI.GOV/BOR. WWW.DLT.RI.GOV/BOR*

*You must continue to use Tele-Serve on a weekly basis while your appeal hearing including further court proceedings, if you are still totally or partially unemployed.*

• Equal Opportunity Employer/Program
• Auxiliary aids and services are available upon request to individuals with disabilities.
• TDD: (401) 462-8006

DERECHOS DE APELAR
Esta decisión será finalizada a menos que, dentro de quince (15) días del calendario de la fecha que se le envía la decisión, usted apele en escrito al Board of Review para el Departamento de Labor y Entrenamiento. Puede entregar la apelación por correo, telefax o e-enviar a el Board a la dirección 74 West Road, Hazard Bldg., 1st Flr, Cranston, RI, 02920, Numero de Fax: (401) 462-9401. E-enviar: DLT.BORINFO@dlt.RI.GOV. WEBSITE: www.dlt.ri.gov/bor.

*Usted debe continuar utilizando Tele-Servicios semanal mientras espera su audiencia de su súplica incluyendo futuro procedimiento de corte, si usted todavía está totalmente o parcialmente sin trabajo.*



BOARD OF REVIEW
BY GÜNTER A. VUKSE, REFEREE

DLT-484 (5/11)

STATE OF RHODE ISLAND AND PROVIDENCE

**DEPARTMENT OF LABOR AND TRAINING**

TTY Via RI Relay 711

Central Adjudication Unit, PO Box 20067, Cranston, RI  02920-094120-0944
Tel: (401)462-8300  FAX: (401)462-8318  TTY via RI Relay: 711
Internet address: www.dlt.ri.gov/ui

CLAIMANT DECISION

Mailing Date: 02/21/17
Employer: RI PUBLIC TRANSIT AUTHORITY
SSN:      8332
No:       1640336-00

MICKEDA S BARNES
34 DUNBAR AVE
RUMFORD  RI 02916-3111

You sustained a work related injury on 2/12/15 and were in receipt of worker's compensation benefits.

You state that although you requested reinstatement to your position, your employer did not accommodate your request.

For unemployment purposes this would be considered a discharge.

The issue is whether you were discharged for disqualifying reasons under Section 28-44-18 of the Rhode Island Employment Security Act.

Your discharge is for non-disqualifying reasons as there is no evidence of misconduct in connection with your work. Benefits are allowed if you are otherwise eligible.

A Notice of Claim form was mailed to your employer on 12/06/16. Section 28-44-38 (c) of the Rhode Island Employment Security Act states, in part, that if an employer, without good cause, fails to return the notice of claim filing within ten (10) working days of its mailing date, the employer shall have no standing to contest any determination made by the director with respect to the claim and benefit charges.  Your employer has failed to return the notice as required by law.

Authorized Representative of the Director

RIGHT TO APPEAL

If you disagree with this decision, you must file a written appeal within 15 calendar days, including weekends and holidays, of the mailing date indicated



# DEPARTMENT OF LABOR AND TRAINING
TTY Via RI Relay 711

Central Adjudication Unit, PO Box 20067, Cranston, RI  02920-094120-0944
Tel: (401)462-8300  FAX: (401)462-8318  TTY via RI Relay: 711
Internet address: www.dlt.ri.gov/ui

CLAIMANT DECISION

Mailing Date: 02/21/17
Employer: RI PUBLIC TRANSIT AUTHORITY
SSN:        8332
No:         1640336-00

MICKEDA S BARNES
Page:   2

assistance in a language that is not listed, please contact the Call Center
at 401-243-9100.

Esto es un documento importante. Si usted no está de acuerdo con ésta
decision, usted debe de apelar por correo, fax, o via la Internet dentro de
los próximos 15 dias del calendario a la dirección/fax antedichos o ésta SERA
LA DECISION FINAL. Si necesita más información, favor de referirse a su
folleto de Derechos de Beneficios. IMPORTANTE: Usted tiene que continuar
usando el Tele-Servicio semanalmente mientras esté pendiente su audiencia de
apelación, si aún continúa total o parcialmente desempleado.

IMPORTANTE: Usted puede tener estos documentos traducidos o interpretados,
sin costo alguno para usted, comunicándose con el Centro de Servicio de
Seguro de Desempleo en el 401-243-9100 y seleccionando una de las siguientes
opciones de idioma: Español, Portugués, Laos, Camboya o Hmong. Si necesita
ayuda en un idioma que no está en la lista, por favor póngase en contacto
401-243-9100 y un representante le ayudará.

3.   <u>CONCLUSION:</u>

Section 28-42-3(3) of the Rhode Island Employment Security Act states, in part, that whenever an individual who has received workers' compensation benefits is entitled to reinstatement under 28-33-47, but the position to which reinstatement is sought does not exist or is no longer available, shall have the base period of his/her claim be determined as if the individual filed for benefits on the date of injury. The based period of a claim shall not include any calendar quarter previously used to establish a valid claim for benefits.

The above section of the act is contingent on the Rhode Island Worker's Compensation Law, which states, in part;

(b) The right of reinstatement shall be subject to the provisions for seniority rights and other employment restrictions contained in a valid collective bargaining agreement between the employer and a representative of the employer's employees, and nothing shall exempt any employer from or excuse full compliance with any applicable provisions of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and chapter 87 of title 42.

(1) The right to reinstatement to the worker's former position under this section terminates upon any of the following:

(i) A medical determination by the treating physician, impartial medical examiner, or comprehensive independent health care review team that the worker cannot, at maximum medical improvement, return to the former position of employment or any other existing position with the same employer that is vacant and suitable;

(ii) The approval by the workers' compensation court of a vocational rehabilitation program for the worker to train the worker for alternative employment with another employer;

(iii) The worker's acceptance of suitable employment with another employer after reaching maximum medical improvement;

(iv) The worker's refusal of a bona fide offer from the employer of light duty employment or suitable alternative employment, prior to reaching maximum medical improvement;

(v) The expiration of ten (10) days from the date that the worker is notified by the insurer or self-insured employer by mail at the address to which the weekly compensation benefits are mailed that the worker's treating physician has released the worker for employment unless the worker requests reinstatement within that time period;



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS          DLT484-C
## DEPARTMENT OF LABOR AND TRAINING
TTY Via RI Relay 711

Central Adjudication Unit, PO Box 20067, Cranston, RI  02920-094120-0944
Tel: (401)462-8300  FAX: (401)462-8318  TTY via RI Relay: 711
Internet address: www.dlt.ri.gov/ui

CLAIMANT DECISION

Mailing Date: 12/16/16
Employer: RI PUBLIC TRANSIT AUTHORITY
SSN:          8332
No:          1640353-00

MICKEDA S BARNES
34 DUNBAR AVE
RUMFORD  RI 02916-3111

You filed for benefits effective 12/4/16. You last worked on 2/12/15. You are requesting the backdating of your base period due to a work related injury.

Investigation shows that you had not reached maximum medical improvement within one year of your injury. Section 28-33-47 (c)(1)(vi) of the RI Workers' Compensation Law states, in part, that the right to reinstatement terminates one year from the date of injury, or 18 months if you participated in an approved physical therapy program.

Documentation provided to the Department states you met MMI on 10/19/16.

Section 28-42-3 (3) of the Rhode Island Employment Security Act states, in part, that whenever an individual who has received workers' compensation benefits is entitled to reinstatement under 28-33-47, but the position to which reinstatement is sought does not exist or is no longer available, shall have the base period of his/her claim be determined as if the individual filed for benefits on the date of injury.  The base period of a claim shall not include any calendar quarter previously used to establish a valid claim for benefits.

As you were not eligible for reinstatement under the provisions of Section 28-33-47 of the RI Workers' Compensation Law, which is a prerequisite for backdating the base period of an unemployment claim under 28-42-3 (3), you do not meet the requirements of the law and your request for modification of your base period is denied. Your claim will be established using the base period in effect at the time of the claim filing.



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS    DLT484-C
## DEPARTMENT OF LABOR AND TRAINING
TTY Via RI Relay 711

Central Adjudication Unit, PO Box 20067, Cranston, RI  02920-094120-0944
Tel: (401)462-8300  FAX: (401)462-8318  TTY via RI Relay: 711
Internet address: www.dlt.ri.gov/ui

CLAIMANT DECISION

Mailing Date: 12/16/16
Employer: RI PUBLIC TRANSIT AUTHORITY
SSN:      8332
No:       1640353-00

MICKEDA S BARNES
Page:   2

Authorized Representative of the Director

RIGHT TO APPEAL

If you disagree with this decision, you must file a written appeal within 15
calendar days, including weekends and holidays, of the mailing date indicated
on this decision or IT WILL BECOME FINAL.  You may file an appeal either by
mail, fax or Internet to the address/fax number/website above.  In your
letter, please provide your name, social security number, address, case
number you are appealing, and reason for appeal. Once your appeal is
received, you will receive further instructions by mail. IMPORTANT: You must
continue using Tele-Serve on a weekly basis while pending any appeal hearing
or further court proceedings, if you are still totally or partially
unemployed.

IMPORTANT: You may have this document interpreted at no cost to you by
contacting the department at 401-243-9100 and selecting one of the following
language options: Portuguese, Laotian, Cambodian, or Hmong. If you need
assistance in a language that is not listed, please contact the Call Center
at 401-243-9100.

Esto es un documento importante. Si usted no está de acuerdo con ésta
decision, usted debe de apelar por correo, fax, o via la Internet dentro de
los próximos 15 dias del calendario a la dirección/fax antedichos o ésta SERA
LA DECISION FINAL. Si necesita más información, favor de referirse a su
folleto de Derechos de Beneficios. IMPORTANT: Usted tiene que continuar
usando el Tele-Servicio semanalmente mientras esté pendiente su audiencia de
apelación, si aún continúa total o parcialmente desempleado.



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS



# DEPARTMENT OF LABOR AND TRAINING

PO BOX 20389    CRANSTON, RI 02920-0944
401-243-9100
TTY Via RI Relay 711

BENEFIT RATE DECISION

MICKEDA      S BARNES                          SSN: XXX-XX-8332
34     DUNBAR AVE
RUMFORD              RI 02916-3111

BYE Code: 17

Our records show you have earned enough to qualify for unemployment benefits.

If you meet all other requirements, you will receive a weekly benefit of
$ 555.00, plus a dependency allowance of $ 55.00, for a weekly total of
$ 610.00.  If you are working part-time, or have other deductible income
under the law, your benefit rate and dependency allowance will be reduced.

You may collect a maximum (excluding the dependency allowance) of $11882.00
on this claim.

| DATE OF CLAIM | EFFECTIVE DATE | BENEFIT YEAR ENDS | LAST DAY OF WORK |
|---|---|---|---|
| 02/17/17 | 12/04/16 | 12/02/17 | 02/12/15 |

| EMPLOYER NAME | QUARTER 4TH-13 | QUARTER 1ST-14 | QUARTER 2ND-14 | QUARTER 3RD-14 | TOTAL |
|---|---|---|---|---|---|
| RHODE ISLAN | 17053.29 | 6927.31 | 210.40 | 11815.22 | 36006.22 |
| TOTALS: | 17053.29 | 6927.31 | 210.40 | 11815.22 | 36006.22 |

Computed on: 02/17/17

If you believe that any of the information shown above is incorrect or that
employment and wage information is missing, please contact us at 401-243-9100.

The above are taxable wages as defined by 28-42-3 (28) (ii) of the Rhode
Island Employment Security Act.
If you receive benefits to which you are not entitled, R.I. General

mwood Avenue, Providence, RI 02907

5282 Date: 2/19/15 Net: 994.24

| CURRENT | DEDUCTIONS | CURRENT | YEAR TO DATE |
|---|---|---|---|
| 988.89 | HEALTH FAMILY 618 | 66.40 | 523.40 |
| 104.75 | DENTAL 004 FAMILY | 5.94 | 47.52 |
| 133.99 | DEF COMP MASS MUTU | 50.00 | 400.00 |
| 215.68 | LIFE INS $30,500 | 2.67 | 21.36 |
| | PENSION DRIVERS | 32.35 | 258.80 |
| | VISION FAMILY 618 | .51 | 4.02 |
| | FEDERAL INCOME TX | 60.00 | 480.00 |
| | RI STATE INCOME TX | 40.00 | 355.58 |
| | SS FICA-MEDICARE | 19.83 | 196.21 |
| 1443.31 | SS FICA-OASDI | 84.80 | 838.93 |
| BALANCE | RI TDI TEMP DIS. | 12.84 | 144.12 |
| 16.000 | R.I. CREDIT UNION | 50.00 | 400.00 |
| 64.000 | UNION COPE | 2.00 | 16.00 |
| 40.000 | UNION DUES618/618A | 15.98 | 127.84 |
| | UN RELIANCE LIFE | 5.75 | 46.00 |
| YTD MED | | | |
| 13531.17 | | | |

Loan 714209855

115.78 26.95

DEPT: 40 42 501 EMPN: 5282 Date: 1/29/15 Net: 1500.21

| EARNINGS | QUANTITY | CURRENT |
|---|---|---|
| OVERTIME 1.5X | 11.46 | 463.44 |
| OVERTIME 2.0X | 8.52 | 459.40 |
| HOLIDAY-ONE DAY PAY | 8.00 | 215.68 |
| STRAIGHT TIME 1.0X | 32.00 | 862.72 |
| Gross | | 2001.24 |

| ACCRUAL | EARNED | USED | BALANCE |
|---|---|---|---|
| PAT | | | 16.000 |
| SCK | | | 72.000 |
| VAC | | | 40.000 |

| DEDUCTIONS | CURRENT | YEAR TO |
|---|---|---|
| HEALTH FAMILY 618 | 66.40 | 45 |
| DENTAL 004 FAMILY | 5.94 | 4 |
| DEF COMP MASS MUTU | 50.00 | 35 |
| LIFE INS $30,500 | 2.67 | 1 |
| PENSION DRIVERS | 32.35 | 22 |
| VISION FAMILY 618 | .51 | |
| FEDERAL INCOME TX | 60.00 | 42 |
| RI STATE INCOME TX | 40.00 | 31 |
| SS FICA-MEDICARE | 27.92 | 17 |
| SS FICA-OASDI | 119.39 | 75 |
| RI TDI TEMP DIS. | 22.12 | 13 |
| R.I. CREDIT UNION | 50.00 | 35 |
| UNION COPE | 2.00 | 1 |
| UNION DUES618/618A | 15.98 | 11 |
| UN RELIANCE LIFE | 5.75 | 4 |

Loan 714209057S

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 12684.16 | 11586.93 | 12163.38 | 12163.38 |

ACCOUNT BREAKDOWN

848 *****50.00
3210 **1,450.21

RIPTA
RHODE ISLAND PUBLIC TRANSIT AUTHORITY
705 Elmwood Avenue, Providence, RI 02907

DATE 1/29/15

PAY THE SUM OF

AMOU
1500.

TO THE ORDER OF
40 42 501 5282
MICKEDA BARNES
34 DUNBAR AVENUE
RUMFORD, RI 02916

NON-NEGOTIABLE

EARNINGS QUANTITY RATE CURRENT DEDUCTIONS CURRENT YEAR TO DATE

| EARNINGS | QUANTITY | RATE | CURRENT |
|---|---|---|---|
| VACATION WEEK BARGAI #4040 | | | 1255.93 |

| DEDUCTIONS | CURRENT | YEAR TO DATE |
|---|---|---|
| HEALTH FAMILY 618 | 66.40 | 390.6 |
| DENTAL 004 FAMILY | 5.94 | 35.6 |
| DEF COMP MASS MUTU | 50.00 | 300.0 |
| LIFE INS $30,500 | 2.67 | 16.0 |
| PENSION DRIVERS | 32.35 | 194.1 |
| VISION FAMILY 618 | .51 | 3.0 |
| FEDERAL INCOME TX | 60.00 | 360.0 |
| RI STATE INCOME TX | 40.00 | 275.5 |
| SS FICA-MEDICARE | 17.12 | 148.4 |
| SS FICA-OASDI | 73.19 | 634.7 |
| RI TDI TEMP DIS. | 13.18 | 109.1 |
| R.I. CREDIT UNION | 50.00 | 300.0 |
| UNION COPE | 2.00 | 12.0 |
| UNION DUES618/618A | 15.98 | 95.8 |
| UN RELIANCE LIFE | 5.75 | 34.5 |

Gross 1255.93

| ACCRUAL | EARNED | USED | BALANCE |
|---|---|---|---|
| PAT | | | 16.000 |
| SCK | | | 72.000 |
| VAC | | 80.000 | 40.000 |

| YTD GROSS | TAXABLE GROSS | YTD SS WAGES | YTD MED |
|---|---|---|---|
| 10682.92 | 9743.56 | 10237.66 | 10237.66 |

ACCOUNT BREAKDOWN

| 848 | *****50.00 |
|---|---|
| 3210 | ****770.84 |

*Vacation Week Ending Jan 30, 2015 Paid for Feb 5th, 2015* (handwritten)

**RIPTA**
RHODE ISLAND PUBLIC TRANSIT AUTHORITY
705 Elmwood Avenue, Providence, RI 02907

DATE 1/23/15

PAY THE
SUM OF

AMOUNT
820.84

| TO THE ORDER OF | 40 42 501 MICKEDA BARNES 34 DUNBAR AVENUE RUMFORD, RI 02916 | 5282 |
|---|---|---|

**NON-NEGOTIABLE**

*Loan 7142090575* (handwritten)

RI Department of Labor and Training, "Subsequent Report"

## Subsequent Report

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942 www.dlt.ri.gov/wc
Phone (401) 462-8100 Fax (401) 462-8105

| Claim Administrator Claim Number |
| --- |
| 360335 |

| Employee Information | | | Parties to Claim | |
| --- | --- | --- | --- | --- |
| SSN or ID | Date of Birth | 01/31/1975 | Employer or Business Name | RIPTA |
| Last Name    Barnes | First Name    Mickeda | Initial | Insurer Business Name    RIPTA | |
| Date of Injury  02/12/2015 | Date of Death | | Claims Administrator Business Name | The Beacon Mutual Insurance Company |

### Claim Information

| Claim Type | Claim Status | Maintenance Type |
| --- | --- | --- |
| ☐ Medical Only<br>☑ Indemnity<br>☐ Notification Only<br>☐ Became Medical Only<br>☐ Became Lost Time payment | ☑ Open<br>☐ Closed<br>☐ Reopened<br>☐ Re-Opened/Closed | PY-Payment Report |

### Payment Information

| Date Disability Began<br>02/13/2015 | Date Disability Ended<br>11/10/2016 | Date of First Payment |
| --- | --- | --- |

### Indemnity and Lump Sums Paid to Date for Entire Claim

| Total Incapacity (TT, PT) | Loss of Use (PP) | Death Benefits (DB) | Commutation<br>$5,000.00 |
| --- | --- | --- | --- |
| Partial Incapacity (TP)<br>$11,744.31 | Scarring (Disfigurement)<br>$900.00 | Employer Paid | Denied & Dismissed |

### Expenses Paid to Date for Entire Claim

| Funeral | Hospital | Unallocated Prior Indemnity | Durable Medical |
| --- | --- | --- | --- |
| Penalties | Other Medical<br>$434.90 | Unallocated Prior Medical | Medical Travel<br>$8.36 |
| Interest | Vocational Rehabilitation | Pharmeceutical<br>$2,177.10 | Total Medical-Legal<br>$850.00 |
| Employer's Legal | Expert Witness | Dental | Other |
| Claimant's Legal<br>$1,342.07 | Court Reporter | Physical Therapy<br>$1,444.48 | Death Benefit to WC Adm. Fund |
| Physicians<br>$2,162.75 | Private Investigator<br>$362.50 | Chriopractic | |

### Claims Adjuster Information & Date

| Claim Representative Name    Messier, Keri | Phone or E-Mail    (401) 825-2874 | DateReceived  2/13/2018 |
| --- | --- | --- |

RI Department of Labor and Training, "Subsequent Report"

## Subsequent Report

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942 www.dlt.ri.gov/wc
Phone (401) 462-8100 Fax (401) 462-8105

| Claim Administrator Claim Number |
|---|
| 360335 |

### Employee Information

| | | | Parties to Claim | |
|---|---|---|---|---|
| SSN or ID | Date of Birth | 01/31/1975 | Employer or Business Name | RIPTA |
| Last Name **Barnes** | First Name **Mickeda** | Initial | Insurer Business Name | RIPTA |
| Date of Injury **02/12/2015** | Date of Death | | Claims Administrator Business Name | The Beacon Mutual Insurance Company |

### Claim Information

| Claim Type | Claim Status | Maintenance Type |
|---|---|---|
| ☐ Medical Only | ☑ Open | PY-Payment Report |
| ☑ Indemnity | ☐ Closed | |
| ☐ Notification Only | ☐ Reopened | |
| ☐ Became Medical Only | ☐ Re-Opened/Closed | |
| ☐ Became Lost Time payment | | |

### Payment Information

| Date Disability Began | Date Disability Ended | Date of First Payment |
|---|---|---|
| 02/13/2015 | 11/10/2016 | |

### Indemnity and Lump Sums Paid to Date for Entire Claim

| Total Incapacity (TT, PT) | Loss of Use (PP) | Death Benefits (DB) | Commutation $3,000.00 |
|---|---|---|---|
| Partial Incapacity (TP) $11,744.31 | Scarring (Disfigurement) $900.00 | Employer Paid | Denied & Dismissed |

### Expenses Paid to Date for Entire Claim

| Funeral | Hospital | Unallocated Prior Indemnity | Durable Medical |
|---|---|---|---|
| Penalties | Other Medical $425.74 | Unallocated Prior Medical | Medical Travel $8.36 |
| Interest | Vocational Rehabilitation | Pharmeceutical $2,177.10 | Total Medical-Legal $850.00 |
| Employer's Legal | Expert Witness | Dental | Other |
| Claimant's Legal $1,342.07 | Court Reporter | Physical Therapy $1,444.48 | Death Benefit to WC Adm. Fund |
| Physicians $2,074.50 | Private Investigator $362.50 | Chiropractic | |

### Claims Adjuster Information & Date

| Claim Representative Name | **Messier, Keri** | Phone or E-Mail | **(401) 825-2874** | DateReceived | **12/8/2017** |
|---|---|---|---|---|---|

**RI Department of Labor and Training, "Subsequent Report"**

## Subsequent Report

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942 www.dlt.ri.gov/wc
Phone (401) 462-8100 Fax (401) 462-8105

| Claim Administrator Claim Number |
|---|
| 360335 |

### Employee Information

| | |
|---|---|
| SSN or ID | Date of Birth   **01/31/1975** |
| Last Name   **Barnes** | First Name   **Mickeda**   Initial |
| Date of Injury   **02/12/2015** | Date of Death |

### Parties to Claim

| | |
|---|---|
| Employer or Business Name | **RIPTA** |
| Insurer Business Name | **RIPTA** |
| Claims Administrator Business Name | **The Beacon Mutual Insurance Company** |

### Claim Information

| Claim Type | Claim Status | Maintenance Type |
|---|---|---|
| ☐ Medical Only | ☑ Open | PY-Payment Report |
| ☑ Indemnity | ☐ Closed | |
| ☐ Notification Only | ☐ Reopened | |
| ☐ Became Medical Only | ☐ Re-Opened/Closed | |
| ☐ Became Lost Time payment | | |

### Payment Information

| Date Disability Began | Date Disability Ended | Date of First Payment |
|---|---|---|
| 02/13/2015 | 11/10/2016 | |

### Indemnity and Lump Sums Paid to Date for Entire Claim

| Total Incapacity (TT, PT) | Loss of Use (PP) | Death Benefits (DB) | Commutation |
|---|---|---|---|
| Partial Incapacity (TP)  **$11,744.31** | Scarring (Disfigurement)  **$900.00** | Employer Paid | Denied & Dismissed |

### Expenses Paid to Date for Entire Claim

| Funeral | Hospital | Unallocated Prior Indemnity | Durable Medical |
|---|---|---|---|
| Penalties | Other Medical  **$416.64** | Unallocated Prior Medical | Medical Travel  **$8.36** |
| Interest | Vocational Rehabilitation | Pharmeceutical  **$799.29** | Total Medical-Legal  **$850.00** |
| Employer's Legal | Expert Witness | Dental | Other |
| Claimant's Legal  **$1,342.07** | Court Reporter | Physical Therapy  **$1,444.48** | Death Benefit to WC Adm. Fund |
| Physicians  **$1,988.65** | Private Investigator | Chriopractic | |

### Claims Adjuster Information & Date

| Claim Representative Name  **Messier, Keri** | Phone or E-Mail  **(401) 825-2874** | DateReceived  **9/13/2017** |
|---|---|---|

RI Department of Labor and Training, "Subsequent Report"

## Subsequent Report

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942 www.dlt.ri.gov/wc
Phone (401) 462-8100 Fax (401) 462-8105

| Claim Administrator Claim Number |
|---|
| 360335 |

| Employee Information | | | Parties to Claim | |
|---|---|---|---|---|
| SSN or ID | Date of Birth **01/31/1975** | | Employer or Business Name | **RIPTA** |
| Last Name **Barnes** | First Name **Mickeda** | Initial | Insurer Business Name | **RIPTA** |
| Date of Injury **02/12/2015** | Date of Death | | Claims Administrator Business Name | **The Beacon Mutual Insurance Company** |

### Claim Information

| Claim Type | Claim Status | Maintenance Type |
|---|---|---|
| ☐ Medical Only<br>☑ Indemnity<br>☐ Notification Only<br>☐ Became Medical Only<br>☐ Became Lost Time payment | ☑ Open<br>☐ Closed<br>☐ Reopened<br>☐ Re-Opened/Closed | SD-Suspended Pending Appeal or Judicial Review |

### Payment Information

| Date Disability Began | Date Disability Ended | Date of First Payment |
|---|---|---|
| 02/13/2015 | 11/10/2016 | 11/10/2016 |

### Indemnity and Lump Sums Paid to Date for Entire Claim

| Total Incapacity (TT, PT) | Loss of Use (PP) | Death Benefits (DB) | Commutation |
|---|---|---|---|
| Partial Incapacity (TP)<br>$11,744.31 | Scarring (Disfigurement) | Employer Paid | Denied & Dismissed |

### Expenses Paid to Date for Entire Claim

| Funeral | Hospital | Unallocated Prior Indemnity | Durable Medical |
|---|---|---|---|
| Penalties | Other Medical $219.12 | Unallocated Prior Medical | Medical Travel $8.36 |
| Interest | Vocational Rehabilitation | Pharmeceutical $698.25 | Total Medical-Legal $850.00 |
| Employer's Legal | Expert Witness | Dental | Other |
| Claimant's Legal | Court Reporter | Physical Therapy $1,444.48 | Death Benefit to WC Adm. Fund |
| Physicians $355.38 | Private Investigator | Chriopractic | |

### Claims Adjuster Information & Date

| Claim Representative Name **Messier, Keri** | Phone or E-Mail **(401) 825-2874** | DateReceived **11/11/2016** |
|---|---|---|

**RI Department of Labor and Training, "Subsequent Report"**

## Subsequent Report

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942 www.dlt.ri.gov/wc
Phone (401) 462-8100 Fax (401) 462-8105

| Claim Administrator Claim Number |
|---|
| 360335 |

### Employee Information

| | | | |
|---|---|---|---|
| SSN or ID | Date of Birth **01/31/1975** | | |
| Last Name **Barnes** | First Name **Mickeda** | Initial | |
| Date of Injury **02/12/2015** | Date of Death | | |

### Parties to Claim

| | | |
|---|---|---|
| Employer or Business Name | **RIPTA** | |
| Insurer Business Name | **RIPTA** | |
| Claims Administrator Business Name | **The Beacon Mutual Insurance Company** | |

### Claim Information

| Claim Type | Claim Status | Maintenance Type |
|---|---|---|
| ☐ Medical Only | ☑ Open | 02-Change |
| ☑ Indemnity | ☐ Closed | |
| ☐ Notification Only | ☐ Reopened | |
| ☐ Became Medical Only | ☐ Re-Opened/Closed | |
| ☐ Became Lost Time payment | | |

### Payment Information

| Date Disability Began | Date Disability Ended | Date of First Payment |
|---|---|---|
| 02/13/2015 | 08/26/2016 | 08/25/2016 |

### Indemnity and Lump Sums Paid to Date for Entire Claim

| Total Incapacity (TT, PT) | Loss of Use (PP) | Death Benefits (DB) | Commutation |
|---|---|---|---|
| Partial Incapacity (TP) $2,607.28 | Scarring (Disfigurement) | Employer Paid | Denied & Dismissed |

### Expenses Paid to Date for Entire Claim

| Funeral | Hospital | Unallocated Prior Indemnity | Durable Medical |
|---|---|---|---|
| Penalties | Other Medical $27.00 | Unallocated Prior Medical | Medical Travel |
| Interest | Vocational Rehabilitation | Pharmeceutical | Total Medical-Legal |
| Employer's Legal | Expert Witness | Dental | Other |
| Claimant's Legal | Court Reporter | Physical Therapy | Death Benefit to WC Adm. Fund |
| Physicians | Private Investigator | Chriopractic | |

### Claims Adjuster Information & Date

| Claim Representative Name | **Messier, Keri** | Phone or E-Mail | **(401) 825-2874** | DateReceived **8/26/2016** |
|---|---|---|---|---|

RI Department of Labor and Training, "Subsequent Report"

## Subsequent Report

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942 www.dlt.ri.gov/wc
Phone (401) 462-8100 Fax (401) 462-8105

| Claim Administrator Claim Number |
|---|
| 160335 |

| Employee Information | | | Parties to Claim | |
|---|---|---|---|---|
| SSN or ID | Date of Birth | **01/31/1975** | Employer or Business Name | **RIPTA** |
| Last Name **Barnes** | First Name **Mickeda** | Initial | Insurer Business Name | **RIPTA** |
| Date of Injury **02/12/2015** | Date of Death | | Claims Administrator Business Name | **The Beacon Mutual Insurance Company** |

### Claim Information

| Claim Type | Claim Status | Maintenance Type |
|---|---|---|
| ☐ Medical Only | ☑ Open | UR-Upon Request |
| ☑ Indemnity | ☐ Closed | |
| ☐ Notification Only | ☐ Reopened | |
| ☐ Became Medical Only | ☐ Re-Opened/Closed | |
| ☐ Became Lost Time payment | | |

### Payment Information

| Date Disability Began **02/13/2015** | Date Disability Ended **03/03/2015** | Date of First Payment |
|---|---|---|

### Indemnity and Lump Sums Paid to Date for Entire Claim

| Total Incapacity (TT, PT) | Loss of Use (PP) | Death Benefits (DB) | Commutation |
|---|---|---|---|
| Partial Incapacity (TP) **$1,786.33** | Scarring (Disfigurement) | Employer Paid | Denied & Dismissed |

### Expenses Paid to Date for Entire Claim

| Funeral | Hospital | Unallocated Prior Indemnity | Durable Medical |
|---|---|---|---|
| Penalties | Other Medical **$27.00** | Unallocated Prior Medical | Medical Travel |
| Interest | Vocational Rehabilitation | Pharmeceutical | Total Medical-Legal |
| Employer's Legal | Expert Witness | Dental | Other |
| Claimant's Legal | Court Reporter | Physical Therapy | Death Benefit to WC Adm. Fund |
| Physicians | Private Investigator | Chriropractic | |

### Claims Adjuster Information & Date

| Claim Representative Name **Messier, Keri** | Phone or E-Mail **(401) 825-2874** | Date Received **8/8/2016** |
|---|---|---|

W.C.C. NO. __201706646__

## PRETRIAL ORDER

✓ _____ Petition Granted        _____ Petition Denied

.. Loss of use award:

_1_ % = __3.12__ weeks x $ __180__ = Total $ __561.60__ Body Part _left upper extremity_

____ % = _____ weeks x $ _____ = Total $ _____ Body Part _____

. Disfigurement award:

_____ weeks x $ _____ = Total $ _____ Body Part _____

_____ weeks x $ _____ = Total $ _____ Body Part _____

Attorney's fee in the amount of $ __1500__ is awarded to __Stephen Dennis__
in addition to the reimbursement of the filing fee.
__42.07__

__7/9/2018__                          __/s/Ferrieri, J__
DATE OF ENTRY                    JUDGE

..ty aggrieved by the entry of this order may claim a trial by filing with the Administrator of the Workers' Compensation Court, One Dorran 'rovidence, RI, 02903-3973, within five (5) days of the date of entry of the order, exclusive of Saturdays, Sundays, and holidays, a Claim f forms prescribed by the Administrator of the Workers' Compensation Court. W.C.C. 5 (07/17)

# State of Rhode Island and Providence Plantations

**Providence, Sc.**                    **Workers' Compensation Court**

| W.C.C. NO. | 201704571 | Respondent | RHODE ISLAND PUBLIC TRANSIT AUTHORITY |
|---|---|---|---|
| Petitioner | Mickeda S. Barnes | Insurer | Rhode Island Individual Self Insureds |
| Judge | Chief Judge Robert M. Ferrieri | Date of Injury | 2/12/15 |

This matter came to be heard on a **PETITION** for **BENEFITS FOR DISFIGUREMENT and/or LOSS** **OF FUNCTION** filed pursuant to R.I.G.L. § 28-33-19 and after considering all of the evidence presented the Judge finds that:

✓ 1. The employee suffered an injury arising out of and in the course of employment on 2/12/15 .

✓ 2. The employee's Average Weekly Wage at the time of injury was 1322.77 .

___ 3. Maximum Medical Improvement has been reached as to loss of use.

✓ 4. Disfigurement has reached an end result.

___ 5. Loss of Function, body part(s): _____

✓ 6. Disfigurement, description: *linear scar to palm of left wrist ≈ 2" long and red w/ white line on both sides.*

W.C.C. NO.    201704571

## PRETRIAL ORDER

✓_____ Petition Granted          _____ Petition Denied

A. Loss of use award:

___ % = _____ weeks x $ _____ = Total $ _____ Body Part _____

___ % = _____ weeks x $ _____ = Total $ _____ Body Part _____

B. Disfigurement award:

_10 additional_ weeks x $ _90_ = Total $ _900_ Body Part _left wrist_

_____ weeks x $ _____ = Total $ _____ Body Part _____

_Employee previously awarded Scaring in 2016 - 300_

C. Attorney's fee in the amount of $ _1300_ is awarded to _Stephen Dennis_
in addition to the reimbursement of the filing fee.
_t+2.07_

| _9/6/2017_ | /s/Ferrieri, J |
|---|---|
| DATE OF ENTRY | JUDGE |

...rty aggrieved by the entry of this order may claim a trial by filing with the Administrator of the Workers' Compensation Court, One Dorran Providence, RI, 02903-3973, within five (5) days of the date of entry of the order, exclusive of Saturdays, Sundays, and holidays, a Claim fc n forms prescribed by the Administrator of the Workers' Compensation Court. W.C.C. 5 (07/17)

Page 1137

in Workers' Compensation Court
itted: 11/12/2020 Session
late: 11/12/2017 2:24:25 PM
Der: 1299169
wer: Jennifer Furtado
ler: Joseph Lancellotti

State of Rhode Island

**MEMORANDUM OF AGREEMENT**

☐ PLEASE CHECK IF CORRECTION OF PRIOR REPORT

Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942   Phone (401) 462-8100   TDD (401) 462-8006

DWC No. _____

Insurer File No. __RP-1502-0004L__

| 1. EMPLOYEE: | | | | 2. EMPLOYER: | | |
|---|---|---|---|---|---|---|
| SSN | 008408332 | | | FEIN | 050311963 | |
| Name | MICKEDA BARNES | | | Name | RI Public Transit Authority (RIPTA) | |
| Address | 34 Dunbar Avenue | | | Address | 705 Elmwood Avenue | |
| Address | | | | Address | | |
| City,State,Zip | Rumford | RI | 02916 | City,State,Zip | Providence | RI | 02907 |
| Phone | (401) 419-2250 | Date of Birth | 01/31/1975 | Phone | (401) 784-9500 | Ext. |

| 3. INSURANCE COMPANY NAMED ON WC POLICY: | | 4. CLAIM ADMINISTRATOR: | | ☐ SAME AS BLOCK 3 |
|---|---|---|---|---|
| FEIN | | FEIN | 050222390 | |
| Name | Self-Insured | Name | Claim Strategies | |
| Address | | Address | P.O. Box 549 | |
| Address | | Address | | |
| City,State,Zip | | City,State,Zip | Providence | RI | 02901-0549 |
| Phone | Ext. | Phone | (401) 435-2800 | Ext. |
| RI License Number | | RI License or Self-Insurance Number | |

| | |
|---|---|
| Injury Date: | 02/12/2015 |
| First date of first disability: | 02/13/2015 |
| Place where injury occured: | Cranston, RI |

List injured body parts and nature of injury:

Left wrist bruise/contusion.

**5. DISABILITY TYPE:** (check all that apply)

☐ Temporary Total as of _____

☒ Temporary Partial as of __02-13-2015__

☐ Death Benefits/Date of Death _____

Payable to: _____

☐ Permanent Total as of _____

**6. RATE INFORMATION:** ☒ Single ☒ Married

Number of Exemptions    5

AWW (include bonus/no OT)    1090.65

Average Overtime Amount    232.12

AWW including Overtime    1322.77

Spendable Base Wage    1094.60

Base Compensation Rate    820.95

Number of Dependents    3

Weekly Dependency Rate _____

Total Weekly Rate _____

**7. DATE OF INITIAL PAYMENT UNDER MOA:**    03/20/2015

| | | | |
|---|---|---|---|
| Does employee have other employers? | ☐ Yes | ☒ No | If yes, attach a wage statement from each employer. |
| Is this a recurrence of a previous injury? | ☐ Yes | ☒ No | Previous disability end date: _____ |
| Has the employee worked at least 26 weeks prior to this recurrence? | ☐ Yes | ☐ No | If yes, a new wage statement is required. |

Signature: _____    Date: __03/20/2015__

Print Name:    RI Adjuster License Number:    Phone & Extension:

John Travers    1048506    435-2800    1393

**NOTICE TO EMPLOYEES RECEIVING WORKERS' COMPENSATION BENEFITS:**
**YOU MUST REPORT ANY EARNINGS** you receive to the Claim Administrator that pays your benefits. Failure to report earnings may subject you to civil or criminal liability. Your endorsement on a benefit check is your statement that you are qualified to receive workers' compensation benefits. You are NOT entitled to receive workers' compensation benefits for any time that you are imprisoned as a result of a criminal conviction.

**ATTACH WAGE STATEMENT(S) AND DEPENDENCY FORM**

OWC-02 (01/03)   3/20
EE + atty on 3/20

For instructions visit our web site:    www.dlt.ri.gov/wc

Date: 03/27/2015  -  Claim Number: 00838725

**Employee's Certificate of Dependency Status**
**State of Rhode Island**
Department of Labor and Training
Division of Workers' Compensation
P. O. Box 20190
Cranston, RI 02920-0942
Phone (401) 462-8100 www.dlt.ri.gov/wc

☐ Check if this is a corrected report

| DWC claim number | |
| Claim Administrator File Number | 360335 |

| 1. Employee Information: | | 2. Claim Information: | |
|---|---|---|---|
| SSN: 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  ☐ Male ☑ Female | | Employer Name | Riota |
| Name  Mickeda · Banes | | Claim Administrator | Dia Bea Comm tral |
| Address  34 Dunbar Ave | | Address  702 Elmwood Ave |
| City, ST Zip  Rumford RI 02916 | | City, ST Zip  Prov RI 02907 |
| Phone 419-2250 | Date of Birth 1-31-75 | Injury Date Jan 12, 2015 | Incapacity Date |

**Employee:  complete this form and return it to the Claim Administrator.  This information is needed to calculate your compensation rate.**

| 3. Marital Status    At the time of the injury the employee was  ☐ Single  ☑ Married |
| ☐ Spouse works    ☑ Spouse does not work    Spouse's name |

| 4. Number of Federal Exemptions | 5 | Enter the maximum number of Federal Exemptions you are allowed to claim for Federal income tax. Include yourself, your spouse, your dependents, and any other exemptions. |

| 8. Dependents | A dependent for workers' compensation includes children you support who are:<br>• Under age 18, or age 18 to 23 and a full time student<br>• Mentally or physically incapacitated from earning at any age |
|---|---|

| Dependent's Name | Date of Birth | Relationship | Full time student? |
|---|---|---|---|
| Sidney "Robertson" | 4-4-02 | D | ☑ Yes ☐ No |
| Doreen  " | 6-6-11 | D | ☐ Yes ☑ No |
| Briana  " | 8-20-97 | A | ☑ Yes ☐ No |
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |
| | | | ☐ Yes ☐ No |

| Employee's Signature  Mickeda Banes | Date  Feb 12, 2015 |

DWC-04(7/12)

Page 1139

RI Department of Labor and Training, "Subsequent Report"

## Subsequent Report

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942 www.dlt.ri.gov/wc
Phone (401) 462-8100 Fax (401) 462-8105

| Claim Administrator Claim Number |
|---|
| **357564** |

| Employee Information | | Parties to Claim | |
|---|---|---|---|
| SSN or ID | Date of Birth    **01/31/1975** | Employer or Business Name | **RIPTA - Paratransit Operations** |
| Last Name    **Barnes** | First Name    **Mickeda**    Initial | Insurer Business Name | **RIPTA** |
| Date of Injury    **11/05/2014** | Date of Death | Claims Administrator Business Name | **The Beacon Mutual Insurance Company** |

### Claim Information

| Claim Type | Claim Status | Maintenance Type |
|---|---|---|
| ☐ Medical Only | ☐ Open | FN-Final |
| ☐ Indemnity | ☑ Closed | |
| ☐ Notification Only | ☐ Reopened | |
| ☐ Became Medical Only | ☐ Re-Opened/Closed | |
| ☐ Became Lost Time payment | | |

### Payment Information

| Date Disability Began | Date Disability Ended | Date of First Payment |
|---|---|---|
| | | |

### Indemnity and Lump Sums Paid to Date for Entire Claim

| Total Incapacity (TT, PT) | Loss of Use (PP) | Death Benefits (DB) | Commutation |
|---|---|---|---|
| Partial Incapacity (TP) | Scarring (Disfigurement) | Employer Paid | Denied & Dismissed |

### Expenses Paid to Date for Entire Claim

| Funeral | Hospital | Unallocated Prior Indemnity | Durable Medical |
|---|---|---|---|
| Penalties | Other Medical | Unallocated Prior Medical | Medical Travel |
| Interest | Vocational Rehabilitation | Pharmeceutical | Total Medical-Legal |
| Employer's Legal | Expert Witness | Dental | Other |
| Claimant's Legal | Court Reporter | Physical Therapy | Death Benefit to WC Adm. Fund |
| Physicians | Private Investigator | Chriopractic | |

### Claims Adjuster Information & Date

| Claim Representative Name    **Messier, Keri** | Phone or E-Mail    **(401) 825-2903** | DateReceived    **4/8/2020** |
|---|---|---|

RI Department of Labor and Training, "Subsequent Report"

## Subsequent Report

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942 www.dlt.ri.gov/wc
Phone (401) 462-8100 Fax (401) 462-8105

| Claim Administrator Claim Number |
|---|
| 360335 |

### Employee Information

| | | Parties to Claim | |
|---|---|---|---|
| SSN or ID | Date of Birth    01/31/1975 | Employer or Business Name | RIPTA |
| Last Name    Barnes | First Name    Mickeda    Initial | Insurer Business Name | RIPTA |
| Date of Injury  02/12/2015 | Date of Death              . | Claims Administrator Business Name | The Beacon Mutual Insurance Company |

### Claim Information

| Claim Type | Claim Status | Maintenance Type |
|---|---|---|
| ☐ Medical Only | ☑ Open | RB-Reinstatement of Benefits |
| ☑ Indemnity | ☐ Closed | |
| ☐ Notification Only | ☐ Reopened | |
| ☐ Became Medical Only | ☐ Re-Opened/Closed | |
| ☐ Became Lost Time payment | | |

### Payment Information

| Date Disability Began 02/13/2015 | Date Disability Ended 06/22/2018 | Date of First Payment 11/22/2019 |
|---|---|---|

### Indemnity and Lump Sums Paid to Date for Entire Claim

| Total Incapacity (TT, PT) | Loss of Use (PP) $561.60 | Death Benefits (DB) | Commutation |
|---|---|---|---|
| Partial Incapacity (TP) $71,612.19 | Scarring (Disfigurement) $900.00 | Employer Paid | Denied & Dismissed |

### Expenses Paid to Date for Entire Claim

| Funeral | Hospital | Unallocated Prior Indemnity | Durable Medical |
|---|---|---|---|
| Penalties | Other Medical $5,659.39 | Unallocated Prior Medical | Medical Travel $18.04 |
| Interest | Vocational Rehabilitation | Pharmeceutical $2,246.60 | Total Medical-Legal $3,425.00 |
| Employer's Legal | Expert Witness $1,225.00 | Dental | Other |
| Claimant's Legal $10,842.61 | Court Reporter | Physical Therapy $1,444.48 | Death Benefit to WC Adm. Fund |
| Physicians $2,761.39 | Private Investigator $1,889.00 | Chriopractic | |

### Claims Adjuster Information & Date

| Claim Representative Name    Tortolano, Christina | Phone or E-Mail    (401) 825-2874 | DateReceived   4/9/2020 |
|---|---|---|

**RI Department of Labor and Training, "Subsequent Report"**

## Subsequent Report

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942 www.dlt.ri.gov/wc
Phone (401) 462-8100 Fax (401) 462-8105

| Claim Administrator Claim Number |
|---|
| **360335** |

| Employee Information | | | Parties to Claim | |
|---|---|---|---|---|
| SSN or ID | Date of Birth **01/31/1975** | | Employer or Business Name | **RIPTA** |
| Last Name **Barnes** | First Name **Mickeda** | Initial | Insurer Business Name | **RIPTA** |
| Date of Injury **02/12/2015** | Date of Death | | Claims Administrator Business Name | **The Beacon Mutual Insurance Company** |

### Claim Information

| Claim Type | Claim Status | Maintenance Type |
|---|---|---|
| ☐ Medical Only | ☑ Open | PY-Payment Report |
| ☑ Indemnity | ☐ Closed | |
| ☐ Notification Only | ☐ Reopened | |
| ☐ Became Medical Only | ☐ Re-Opened/Closed | |
| ☐ Became Lost Time payment | | |

### Payment Information

| Date Disability Began | Date Disability Ended | Date of First Payment |
|---|---|---|
| 07/17/2018 | 07/17/2018 | |

### Indemnity and Lump Sums Paid to Date for Entire Claim

| Total Incapacity (TT, PT) | Loss of Use (PP) | Death Benefits (DB) | Commutation |
|---|---|---|---|
| | $561.60 | | |
| Partial Incapacity (TP) | Scarring (Disfigurement) | Employer Paid | Denied & Dismissed |
| $71,612.19 | $900.00 | | |

### Expenses Paid to Date for Entire Claim

| Funeral | Hospital | Unallocated Prior Indemnity | Durable Medical |
|---|---|---|---|
| Penalties | Other Medical $5,659.39 | Unallocated Prior Medical | Medical Travel $18.04 |
| Interest | Vocational Rehabilitation | Pharmeceutical $2,246.60 | Total Medical-Legal $3,425.00 |
| Employer's Legal | Expert Witness $1,225.00 | Dental | Other |
| Claimant's Legal $10,842.61 | Court Reporter | Physical Therapy $1,444.48 | Death Benefit to WC Adm. Fund |
| Physicians $2,761.39 | Private Investigator $1,889.00 | Chrioractic | |

### Claims Adjuster Information & Date

| Claim Representative Name **Tortolano, Christina** | Phone or E-Mail **(401) 825-2874** | Date Received **4/8/2020** |
|---|---|---|

**Employee's Certificate of Dependency Status**
State of Rhode Island

☐ Check if this is a corrected report

Department of Labor and Training
Division of Workers' Compensation
P. O. Box 20190
Cranston, RI 02920-0942
Phone (401) 462-8100  www.dlt.ri.gov/wc

DWC claim number

Claim Administrator
File Number

| 1. Employee Information: | 2. Claim Information: | |
|---|---|---|
| SSN: 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   ☐ Male  ☑ Female | Employer Name | |
| Name *Mickeda Barnes* | Claim Administrator | |
| Address *34 Dunbar Ave* | Address | |
| City, ST Zip *Rumford RI 02916* | City, ST Zip | |
| Phone *401-419-2250*  Date of Birth *1-31-75* | Injury Date | Incapacity Date |

**Employee: complete this form and return it to the Claim Administrator. This information is needed to calculate your compensation rate.**

| 3. Marital Status  At the time of the injury the employee was  ☐ Single  ☑ Married |
|---|
| ☐ Spouse works  ☑ Spouse does not work  Spouse's name *Kenyon Robertson* |

| 4. Number of Federal Exemptions | 5 | Enter the maximum number of Federal Exemptions you are allowed to claim for Federal income tax. Include yourself, your spouse, your dependents, and any other exemptions. |
|---|---|---|

| 5. Dependents | A dependent for workers' compensation includes children you support who are:  • Under age 18, or age 18 to 23 and a full time student  • Mentally or physically incapacitated from earning at any age | | |
|---|---|---|---|
| Dependent's Name | Date of Birth | Relationship | Full time student? |
| *Sidney Robertson* | *4-14-02* | *Daughter* | ☑ Yes ☐ No |
| *Doreen Robertson* | *6-6-11* | *Daughter* | ☐ Yes ☑ No |
| *Berana Robertson* | *8-20-97* | *Daughter* | ☑ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |

| Employee's Signature | *Mickeda Barnes* | Date | *Nov 5, 2014* |
|---|---|---|---|

DWC-04(7/12)

JJJJ74J    αω1α·τ

1310 - 001

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## EMPLOYEE INJURY REPORT

DATE Oct 3 2013

NAME Mickeda Barnes

PAYROLL NUMBER 5282

ADDRESS 34 Dunbar Ave

CIRCLE ONE    MALE    (FEMALE)

CITY Rumford

DATE OF HIRE Nov 26, 2002

STATE RI    ZIP 00916

OCCUPATION Bus Driver

PHONE NUMBER 401-419-2250

CIRCLE DAYS OFF    M T W T F (S)(S)

SOCIAL SECURITY # 038408332

AGE 38 DATE OF BIRTH 1-31-75

LOCATION WHERE INJURY OCCURRED Smith St

DATE OF INJURY Oct 3, 2013    BUS # 1332

TIME OF INJURY 8:30 (AM) PM    TIME WORKDAY BEGAN 544 (AM) PM

FIRST FULL DAY LOST FROM WORK Oct 4, 2013

HAS EMPLOYEE RETURNED TO WORK    Y    (N)

DATE RETURNED TO WORK

SUPERVISOR IN CHARGE John / Dispatch

WITNESS TO INJURY None

HOSPITAL OR TREATING FACILITY St Joseph Hospital

ADDRESS

PHYSICIAN'S NAME Kirk, Peter A m.D.

DESCRIBE HOW THE INJURY OCCURRED Called John to let him know the control panal was loose and had hit me 4 times already he was gonna change me offer get a mecanic to fix the problem but continue down Smith St it had fell two more times in the knee.

DESCRIBE INJURY AND PARTS OF BODY AFFECTED Knee Side

Edward Jim 10-4-13
FOREMAN/SUPERVISOR SIGNATURE

Mickeda Barnes
EMPLOYEE SIGNATURE Oct 4/ 2013 DATE

Revised 9/1/10

**Employee's Certificate of Dependency Status**
State of Rhode Island

☐ Check if this is a corrected report

Department of Labor and Training

Division of Workers' Compensation
P. O. Box 20190
Cranston, RI 02920-0942
Phone (401) 462-8100  www.dlt.ri.gov/wc

| DWC claim number |
| --- |

| Claim Administrator File Number |
| --- |

| 1. Employee Information: | | 2. Claim Information: | |
| --- | --- | --- | --- |
| SSN: 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  ☐ Male  ☑ Female | | Employer Name | |
| Name  Mickeda Barnes | | Claim Administrator | |
| Address  34 Dunbar Ave | | Address | |
| City, ST Zip  Rumford  RI | | City, ST Zip | |
| Phone 401-419-2250 | Date of Birth 1-31-75 | Injury Date | Incapacity Date |

> **Employee:** complete this form and return it to the Claim Administrator. This information is needed to calculate your compensation rate.

| 3. Marital Status    At the time of the injury the employee was   ☐ Single   ☑ Married |
| --- |
| ☐ Spouse works    ☑ Spouse does not work    Spouse's name |

| 4. Number of Federal Exemptions | 5 | Enter the maximum number of Federal Exemptions you are allowed to claim for Federal income tax. Include yourself, your spouse, your dependents, and any other exemptions. |
| --- | --- | --- |

| 5. Dependents | A dependent for workers' compensation includes children you support who are: <br> • Under age 18, or age 18 to 23 and a full time student <br> • Mentally or physically incapacitated from earning at any age | | |
| --- | --- | --- | --- |
| Dependent's Name | Date of Birth | Relationship | Full time student? |
| Sidney | 4-4-02 | D | ☑ Yes  ☐ No |
| Briana | 8-20-97 | D | ☑ Yes  ☐ No |
| Doreen | 6-6-11 | D | ☐ Yes  ☑ No |
| | | | ☐ Yes  ☐ No |
| | | | ☐ Yes  ☐ No |
| | | | ☐ Yes  ☐ No |
| | | | ☐ Yes  ☐ No |
| | | | ☐ Yes  ☐ No |

| Employee's Signature | Mickeda Barnes | Date | Oct 4, 2013 |
| --- | --- | --- | --- |

DWC-04(7/12)

# INITIAL INJURY REPORT

## EMPLOYEE REPORT

Last Name **Barnes**    First Name **Mickeda**    MI ___    Date of Birth **1/31/75**    Age **38**

Full Address No. & Street **34 Dunbar Ave**    City **Rumford**    State **RI**    Zip Code **02916**

Social Security No. **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**    Sex ☐ M ☑ F    Phone Number ( **401** ) **419-2250**

Department ___    Division ___    B/C ID No. ___

Location of Incident **Smith St**

Date of Incident **Oct 3, 2013**    Time of Incident **8:30** ☑ am ☐ pm

Did you receive this injury while working for RIPTA? ☑ Yes ☐ No

Specific area where incident occured **Smith St**

Describe and illustrate (left/right) your injury ___

Describe the incident **Driving hit pot holes Control Panel Loose hits Knee multipal times**

Name of witness to incident (print) ___

Employee Signature **Mickeda Barnes**    Date **Oct 4, 2013**

> **Indicate on these figures the affected body parts:**
>
> R   L    L   R
>
> Dominant hand: ☐ left ☑ Right

## SUPERVISOR INITIAL REPORT

Supervisor Name ___

Was there a specific incident/accident? ☐ Yes ☐ No ☐ Unknown    Did you witness the incident/accident? ☐ Yes ☐ No

Give a step by step description of what you understand to have happened ___

Substance/agent directly causing injury ___

Was employee sent to hospital or physician? ☐ Yes    Date __/__/__    ☐ No

Name of doctor ___

Did employee return to work same day? ☐ Yes ☐ No    Was injury lost time? ☐ Yes ☐ No    If yes, date lost time began __/__/__

Sent home remainder of shift? ☐ Yes ☐ No    Light Duty Available? ☐ Yes ☐ No

Incident ___    Supervisor's Signature ___



The **Beacon** Mutual Insurance Co.

Pending Petitions:

**201706824**: amend MOA to include left wrist bruise/ contusion; left wrist, low back strain and to ADD right shoulder. _ps DOI 2/02/15_

**201706073**: right for reinstatement

**201706646**: 5% loss of use to the upper extremity totaling $2,808.00

**201705115**: total incapacity ad partial incapacity from 2/9/17 to continuing

based on DOI 2/12/15 left wrist, knee contusion

and right knee 10/3/13

_This is my Pending Petitions In W/C/Court for Permanant Partial Disability on left wrist Knee Contusion and Right Knee 10/3/13_

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.                    WORKERS' COMPENSATION COURT


MICKEDA S. BARNES                     )

                                      )

        VS                            )        W.C.C.  2017-6646

                                      )

RHODE ISLAND PUBLIC TRANSIT AUTHORITY


### D E C R E E

This matter came on for trial, and after trial thereon and in consideration thereof, the following findings of fact are made:

1.  The employee sustained a one percent loss of use to the left upper extremity as a result of her left wrist injury sustained on February 12, 2015.

Wherefore, it is hereby ordered, adjudged and decreed as follows:


1.  The respondent shall pay to the employee loss of use in the amount of one percent totaling $561.60.

2.  The respondent is entitled to a credit for payments made.

3.  As there is no increase in the loss of use award, no attorney's fees or costs are awarded.

Entered as the decree of this Court this *3/8* day of *October*, *2019*.

ENTER:                                    PER ORDER:

_____                 _____

Ferrieri, C. J.                           Nicholas DiFilippo, Administrator

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.                                     WORKERS' COMPENSATION COURT


MICKEDA S. BARNES                    )

                                     )

        VS                           )        W.C.C.  2017-6824

                                     )

RHODE ISLAND PUBLIC TRANSIT AUTHORITY


D E C R E E

This matter came on for trial, and after trial thereon and in consideration thereof, the following findings of fact are made:

1.  The compensation agreement and decree accurately set forth and describe the nature of the employee's injuries; namely, left wrist bruise/contusion; left wrist, and low back strain.

2.  The employee has failed to prove that she sustained an injury to her right shoulder on February 12, 2015.

Wherefore, it is hereby ordered, adjudged and decreed as follows:


1.  The employee's petition to review to add the right shoulder is denied.


Entered as the decree of this Court this 31st day of October, 2018.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.                                   WORKERS' COMPENSATION COURT

MICKEDA S. BARNES                    )

                                     )

        VS                           )        W.C.C.  2017-6073

                                     )

RHODE ISLAND PUBLIC TRANSIT AUTHORITY

D E C R E E

This matter came on for trial, and after trial thereon and in consideration thereof, the following findings of fact are made:

1.  The petitioner has failed to prove that she is entitled to reinstatement pursuant to R.I.G.L. Section 28-33-47.

    Wherefore, it is hereby ordered, adjudged and decreed as follows:

1.  The petition for reinstatement of employment is denied.

Entered as the decree of this Court this *31st* day of *October, 2019.*

ENTER:                                    PER ORDER:

Ferrieri, C. J.                           Nicholas DiFilippo, Administrator

Page 1151

ENTER:                              PER ORDER:

Ferrieri, C. J.                     Nicholas DiFilippo, Administrator

# Jo-Ann L. Donatelli, Ph.D.

CLINICAL PSYCHOLOGIST

1 Richmond Square, Suite 100C
Providence, Rhode Island 02906
Tele: (401) 533.9994
Fax: (401) 531.1532

February 18, 2020

## Receipt for Professional Services

**To:**
Christine Prescott
24 Sando Street
Pawtucket, RI 02860

**For:**
Christine Prescott
24 Sando Street
Pawtucket, RI 02860

| Services Provided: | Date: | Fee: | Date Paid: |
|---|---|---|---|
| Individual Psychotherapy | 02/18/20 | $97.48 | 02/18/20 |



## State of Rhode Island and Probidence Plantations

**Probidence, Sc.**                                    **Workers' Compensation Court**

| .C.C. NO. | 201705115 | Respondent | RHODE ISLAND PUBLIC TRANSIT AUTHORITY |
| titioner | Mickeda S. Barnes | Insurer | Rhode Island Individual Self Insureds |
| lge | Chief Judge Robert M. Ferrieri | Date of Injury | 2/12/15 |

:s matter came to be heard on an **EMPLOYEE'S PETITION TO REVIEW/ADJUDGE IN ONTEMPT/COMPEL** and after considering all the evidence presented, the Judge finds that:

1. The employee **did/~~did not~~** sustain a return to _partial_ incapacity from 2/9/17 to _9/22/17_ as a result of a work related injury sustained on _2/12/15_.

2. The employee needs _____ to cure, rehabilitate or relieve **him/her** from the effects of a work related injury.

3. The employer has failed to timely comply with the terms of a _____ dated _____.

4. The compensation **agreement/decree** does not accurately set forth and describe all of the employee's injuries.

5. The employee's incapacity **does/does not** pose a material hindrance to obtaining suitable employment.

6. The weekly compensation payments have been based on an erroneous average weekly wage.

7. Other _The employee sustained left carpal tunnel syndrome on 2/12/15 per the report of Dr. Moss (Court impartial, dated 6/22/18)_

W.C.C. NO.        201705115

## PRETRIAL ORDER

ı. ✓ The employer shall pay weekly compensation benefits for _Partial_ incapacity for the period of _2/9/17_ to _9/22/17_ .

. __ The employee is authorized to commence treatment as indicated above within _____ days.

. __ The employee is referred to the Chief Judge Robert F. Arrigan Rehabilitation Center for _____

_____

. __ The employer is ordered to comply with terms of _____ dated _____
plus _____% __ penalty on compensation past due.

__ The employee is ordered to advise employer of any wages earned during the period of partial incapacity.

__ The employee's benefits are modified to reflect a correct average weekly wage of $_____ and payments shall be modified accordingly.

__ The description of the injury in the **agreement/decree** is amended to read as follows:

_____

_____

✓ Other _The employer is entitled to a credit for payments made under mutual agreements dated 12/4/17 and (2/5/18) This is a mistake_

✓ Attorney's fee in the amount of $ _1500_ is awarded to _Stephen Dennis_ in addition to the reimbursement of the filing fee. _442.07_

_7/9/2018_                              /s/ Ferrieri, J
**DATE OF ENTRY**                       **JUDGE**

rty aggrieved by the entry of this order may claim a trial by filing with the Administrator of the Workers' Compensation Court, One ce Plaza, Providence, RI, 02903-3973, within (5) days of the date of entry of the order, exclusive of Saturdays, Sundays, and holidays, a Clai il on forms prescribed by the Administrator of the Workers' Compensation Court. W.C.C. 6 (07-17)



# State of Rhode Island and Providence Plantations

**Providence, Sc.**                              **Workers' Compensation Court**

| | | | |
|---|---|---|---|
| .C.C. NO. | 201706646 | Respondent | RHODE ISLAND PUBLIC TRANSIT AUTHORITY |
| titioner | Mickeda S. Barnes | Insurer | Rhode Island Individual Self Insureds |
| dge | Chief Judge Robert M. Ferrieri | Date of Injury | 2/12/15 |

is matter came to be heard on a **PETITION** for **BENEFITS FOR DISFIGUREMENT and/or LOS** **FUNCTION** filed pursuant to R.I.G.L. § 28-33-19 and after considering all of the evidence presente Judge finds that:

✓ 1. The employee suffered an injury arising out of and in the course of employment on
   2/12/15 .

✓ 2. The employee's Average Weekly Wage at the time of injury was  1322.77.

✓ 3. Maximum Medical Improvement has been reached as to loss of use.

___ 4. Disfigurement has reached an end result.

✓ 5. Loss of Function, body part(s):  left upper extremity

___ 6. Disfigurement, description:

Page 1156

Exhibit

H

Dr. Moss

4/16/2018 11:55 AM Workers' Compensation Court



## State of Rhode Island and Providence Plantations

**Providence, Sc.**                                    **Workers' Compensation Court**

Mickeda S. Barnes

       vs.       }    W.C.C. No.   201705115, 201706073, 201704571,
                                               201704046, 201704145, 201806646, 201706824

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY

### ORDER

This matter was heard before the Court on 4/16/2018 and it is hereby **ORDERED**:

1. _Dr. David Moss_ is appointed as an impartial examiner in connection with this matter.

2. The Employer shall issue a check in the amount of Eight Hundred and Fifty Dollars ($850.00) to compensate the examiner for services.

3. This matter is continued to _5/14 @ 1000_ for the submission of the examiner's fee and any medical records or other documents designated by the Court together with a Waiver of Non-Public Designation of Medical Records.  In the event that the parties do not agree to the waiver of non-public designation, the matter will be heard on this date in connection with a motion to access non-public medical records in accordance with Rhode Island Supreme Court Provisional Rules of Practice Governing Public Access to Electronic Information, Rule 5.

**ENTERED** as an Order of this Court on this the 16th day of April, 2018.


/s/ FerrieriJ
Judge

4/16/2018 11:55 AM Workers' Compensation Court

W.C.C. No. _201705115, 201706073, 201704571, 201704046, 201704145, 201806646, 201706824

Mickeda S. Barnes  VS.  RHODE ISLAND PUBLIC TRANSIT AUTHORITY

JUDGE:  Chief Judge Robert M. Ferrieri

EXAMINER: _____

DATE OF EXAM: _____

---

To be completed by Attorney(s):

Date of Injury: _2/12/15_____  Injury: *Left wrist, low back, Right shoulder (liability disputed)*

Employee Date of Birth: _1/31/75_____

Is there a need for an interpreter? _No___  If so, what language? _____

Email addresses:  Employee attorney: *sdennis@sjdlaw.net*
                  Employer attorney: *nmancini@tconnorlaw.com*

---

To be completed by Judge/Clerk:

Judge's Letter        ✓ Yes      _____ No

Medical Records      ✓ Yes      _____ No

Employee to Bring Diagnostic Films    ✓ Yes      _____ No

---

To be completed by Clerk:

Signed Waiver Received  _____

Medical Records Received  _____

Check Received  _____         Packet Delivered to MAB On: _____

Case Number: 201704145
Filed in Workers' Compensation Court
Submitted: 8/8/2017 12:32:47 PM
Envelope: 1151008
Reviewer: Anthony Del Toro



## State of Rhode Island and Providence Plantations

**Providence, Sc.**                    **Workers' Compensation Court**

Mickeda S. Barnes

vs.

Rhode Island Public Transit Authority          W.C.C. No.  2017-4145

## CLAIM FOR TRIAL

The ___Petitioner___ being aggrieved by the entry of an order resulting from a

Pretrial Conference heard before Judge ___Robert M. Ferreiri___ on ___8/8/17___

hereby files a Claim for Trial to the Workers' Compensation Court pursuant to

R.I.G.L. § 28-35-20(d). This Claim for Trial is being taken within five (5) days of the entry

of the Pretrial Order, exclusive of Saturdays, Sundays, and holidays.

/s/Stephen J. Dennis Esq. # 4336

Appellant  Attorney Name and Registration No.

127 Dorrance Street, 3rd Floor, Suite 7A

Address

Providence, RI 02903

(401) 453-1355

Telephone Number

Rev. 02/15

*mployee Injury Page ① — Notes Multiple Injuries*
*Report*

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## EMPLOYEE INJURY REPORT

DATE _Feb 12, 2015_

NAME _Mickeda Barnes_

PAYROLL NUMBER _5282_

ADDRESS _34 Dunbar Ave_

CIRCLE ONE    MALE    (FEMALE)

CITY _Rumford_

DATE OF HIRE _Nov 26, 2002_

STATE _RI_    ZIP _02916_

OCCUPATION _City Bus Driver_

PHONE NUMBER _401-419-2250_

CIRCLE DAYS OFF    M T W T F (S S)

SOCIAL SECURITY # _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_

AGE _40_    DATE OF BIRTH _1-31-75_

LOCATION WHERE INJURY OCCURRED _Kmart / Brewery Parkade_

DATE OF INJURY _Feb 12, 2015_    BUS # _0915_

TIME OF INJURY _8:47 ESt_ (AM) PM    TIME WORKDAY BEGAN _5:29_ (AM) PM

FIRST FULL DAY LOST FROM WORK _____

HAS EMPLOYEE RETURNED TO WORK    Y    N

DATE RETURNED TO WORK _____

SUPERVISOR IN CHARGE _____

*f*NESS TO INJURY _____

HOSPITAL OR TREATING FACILITY _Kent County_

ADDRESS _____

PHYSICIAN'S NAME _____

DESCRIBE HOW THE INJURY OCCURRED _Parked Bus Cross Street_
_IN Median Slipped and fell on Ground Ice Snow_
_two people held me get up went to bathroom_
_IN Stop&Shop also called John toohey._

DESCRIBE INJURY AND PARTS OF BODY AFFECTED _left WRIST Rt Knee_
_Lower back   Bruise on left wRIst_

_Mickeda Barnes_ _Feb 12, 2015_

FOREMAN/SUPERVISOR SIGNATURE

EMPLOYEE SIGNATURE    /    DATE

**Employee's Certificate of Dependency Status**
State of Rhode Island

☐ Check if this is a corrected report

Department of Labor and Training

Division of Workers' Compensation
P. O. Box 20190
Cranston, RI 02920-0942
Phone (401) 462-8100  www.dlt.ri.gov/wc

| DWC claim number |
|---|

| Claim Administrator File Number |
|---|

| 1. Employee information: | 2. Claim Information: |
|---|---|
| SSN: 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   ☐ Male  ☑ Female | Employer Name *Regta* |
| Name *Mickeda Baus* | Claim Administrator *Dia* |
| Address *34 Dunbar Ave* | Address *702 Elmwood Ave* |
| City, ST Zip *Rumford RI 02916* | City, ST Zip *Prov RI 02907* |
| Phone *419-2256*   Date of Birth *1-31-75* | Injury Date *Feb 12, 2015*   Incapacity Date |

**Employee:  complete this form and return it to the Claim Administrator.  This information is needed to calculate your compensation rate.**

**3. Marital Status**   At the time of the injury the employee was   ☐ Single   ☑ Married
☐ Spouse works   ☑ Spouse does not work   Spouse's name

| 4. Number of Federal Exemptions | 5 | Enter the maximum number of Federal Exemptions you are allowed to claim for Federal income tax.  Include yourself, your spouse, your dependents, and any other exemptions. |
|---|---|---|

**5. Dependents**   A dependent for workers' compensation includes children you support who are:
- Under age 18, or age 18 to 23 and a full time student
- Mentally or physically incapacitated from earning at any age

| Dependent's Name | Date of Birth | Relationship | Full time student? |
|---|---|---|---|
| Sidney "Robertson" | 4-4-02 | D | ☑ Yes  ☐ No |
| Doreen " " | 6-6-11 | D | ☐ Yes  ☑ No |
| Briana " " | 8-20-97 | A | ☑ Yes  ☐ No |
|  |  |  | ☐ Yes  ☐ No |
|  |  |  | ☐ Yes  ☐ No |
|  |  |  | ☐ Yes  ☐ No |
|  |  |  | ☐ Yes  ☐ No |
|  |  |  | ☐ Yes  ☐ No |
|  |  |  | ☐ Yes  ☐ No |

| Employee's Signature | *Mickeda Baus* | Date | *Feb 12, 2015* |
|---|---|---|---|

DWC-04(7/12)

# Employee Injury Report Page ②

## INITIAL INJURY REPORT

**EMPLOYEE REPORT**

Last Name: Baines    First Name: Makeda    MI ___    Date of Birth 1/31/75 Age 40

Full Address (No. & Street): 34 Dunbar    City: Rumford    State: RI    Zip Code: 02916

Social Security No.: 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    Sex: ☐ M ☑ F    Phone Number: 401 419-2250

Department ___    Division ___    B/C ID No. ___

Location of incident: Brewary Parkade

Date of Incident: 2/12/15    Time of Incident: 8:47 (Estimate) ☑ am ☐ pm

Did you receive this injury while working for RIPTA? ☑ Yes ☐ No

Specific area where incident occured: Median in Parkade Crossing Street to use restroom

Describe and illustrate (at right) your injury ___

Describe the incident: Went to use restroom Cross Median Slipped and fell on Ground Ice Snow 2 people Help me get up

Name of witness to incident (print) ___

Employee Signature: Makeda Baines    Date: Feb 12, 2015

**Indicate on these figures the affected body parts:**

R L    L R

Dominant hand: ☐ left ☑ Right

## SUPERVISOR INITIAL REPORT

Supervisor Name ___

Was there a specific incident/accident? ☐ Yes ☐ No ☐ Unknown    Did you witness the incident/accident? ☐ Yes ☐ No

Give a step by step description of what you understand to have happened ___

Substance/object directly causing injury ___

Was employee sent to hospital or physician? ☐ Yes   Date / /   ☐ No

Name/Address ___

Did employee return to work same day? ☐ Yes ☐ No   Was injury lost time? ☐ Yes ☐ No   If yes, date lost time began / /

Sent home remainder of shift? ☐ Yes ☐ No   Light Duty Available? ☑ Yes ☐ No

Supervisor's Signature ___

the Beacon

03/20/2015 1:59 PM FAX  4014380980                                      @0003/0003

**State of Rhode Island**
**FULL-TIME WAGE STATEMENT** (Hired for 20 hours or more per week)    ☐ PLEASE CHECK IF CORRECTION OF PRIOR REPORT

Department of Labor and Training, Division of Workers' Compensation       DWC No.
PO Box 20190, Cranston, RI  02920-0942   Phone (401) 462-8100  TDD (401) 462-8006

Insurer File No. **RP-1502-0004L**

**EMPLOYEE INFORMATION:**                        **CLAIM INFORMATION:**
SSN            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                        Employer        Rhode Island Public Transit Authority
Name          Mickeda Barnes                      Insurance Co.
Hired for [     ] hours each week  (☐ Approximate)  Claim Administrator   Claim Strategies Company
Are these supplemental wages?  ☐ Yes   ☐ No       Injury date      2/12/2015
If yes, supplemental employer name:                Incapacity date  2/13/2015
Maximum no. of exemptions [     ]  ☐ Single  ☐ Married   Hire date   11/26/2002

**SBW = $1094.60**
**CR. = $ 820.95**

**EMPLOYED LESS THAN 2 WEEKS:**

If Yes:                                            OR:
1. List agreed upon hourly wage
2. Number of hrs, per week for full-time employees   Give average weekly for same or similar employment:
3. Multiply #1 by #2 for average weekly wage    $0.00

**EMPLOYED MORE THAN 2 WEEKS**

On the left side of the form, list gross wages prior to employee's first full day out of work. DO NOT include their week of hire or week of injury unless a full week was worked. DO NOT SKIP WEEKS. Please calculate any overtime and/or bonus paid SEPARATELY on the right side of the form below.

| Week Number | Week Ending Date | No. of standard hrs. worked | Gross Wages (No Overtime) | BONUS AND OVERTIME CALCULATION: | |
|---|---|---|---|---|---|
| 1 | 2/6/2015 | 40 | $1,078.40 | Number of weeks employed (up to 52) | Block 1  52 |
| 2 | 1/30/2015 | 40 | $1,078.40 | Total BONUS amount paid in past 52 weeks | Block 2  $0.00 |
| 3 | 1/23/2015 | 40 | $1,078.40 | Divide Block 2 by Block 1 for average bonus | Block 3  $0.00 |
| 4 | 1/16/2015 | 40 | $1,150.79 | Total OVERTIME amount paid in past 52 weeks | Block 4  $12,070.46 |
| 5 | 1/9/2015 | 40 | $1,078.40 | Divide Block 4 by Block 1 for average overtime | Block 5  $232.12 |
| 6 | 1/2/2015 | 40 | $1,078.40 | | |
| 7 | 12/26/2015 | 40 | $1,128.82 | CALCULATION OF AVERAGE WEEKLY WAGE (AWW): | |
| 8 | 12/19/2015 | 40 | $1,128.82 | 1. Total earnings from 13 weeks | $14,178.43 |
| 9 | 12/12/2015 | 40 | $1,128.82 | 2. Total number usable weeks | 13 |
| 10 | 12/5/2015 | 32 | $887.93 | 3. Divide total earnings by number of usable weeks | $1,090.65 |
| 11 | 11/28/2015 | 40 | $1,128.82 | 4. Average bonus (Block 3 in BONUS AND OT) | $0.00 |
| 12 | 11/21/2015 | 40 | $1,128.82 | 5. Add 3 and 4 for AWW excluding Overtime | $1,090.65 |
| 13 | 11/14/2015 | 40 | $1,103.61 | 6. Average overtime (Block 5 in BONUS AND OT) | $232.12 |
| Total number usable weeks: 13 | Total earnings: $14,178.43 | | | 7. Add 5 and 6 for Total Average Weekly Wage | $1,322.77 |

Print Preparer Name:          Date:           Print Adjuster Name:          Date:
Diane Salisbury            2/13/2015          Keri Messler              2/13/2015

DWC-03F (01/03)  3/20              For instructions visit our web site:  www.dlt.ri.gov/wc
RE + atty 3/20

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY 1411-0110
## EMPLOYEE INJURY REPORT

DATE _Nov 5, 2014_

NAME _Nickeda Banes_

ADDRESS _34 Dunbar Ave_

CITY _Rumford_

STATE _R I_ ZIP _02916_

PHONE NUMBER _401-419-2250_

SOCIAL SECURITY # _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_

PAYROLL NUMBER _5282_

CIRCLE ONE    MALE    (FEMALE)

DATE OF HIRE _Nov 26, 2002_

OCCUPATION _Bus Driver_

CIRCLE DAYS OFF    M T W T F (S)(S)

AGE _39_ DATE OF BIRTH _1-31-75_

LOCATION WHERE INJURY OCCURRED _95 South Highway_

DATE OF INJURY _Nov 5, 2014_    BUS # _1332_

TIME OF INJURY _4:48_ AM (PM)    TIME WORKDAY BEGAN _12:36_ (AM) PM

FIRST FULL DAY LOST FROM WORK _____

HAS EMPLOYEE RETURNED TO WORK    Y    N

DATE RETURNED TO WORK _____

SUPERVISOR IN CHARGE _Jim Murphy_

WITNESS TO INJURY _See Cameras on Bus_

HOSPITAL OR TREATING FACILITY _____

ADDRESS _____

PHYSICIAN'S NAME _____

DESCRIBE HOW THE INJURY OCCURRED _Driving to Westerly on 95 South when I hit either a pothole or a bump on highway fare box panel fell on my knee and shook 3 to 4 times from impact of pothole or bump._

DESCRIBE INJURY AND PARTS OF BODY AFFECTED _Knee top and side of Right Knee_

_Nickeda Banes_ _Nov 5, 2014_

FOREMAN/SUPERVISOR SIGNATURE    EMPLOYEE SIGNATURE    /    DATE

Revised 9/1/10

# INITIAL INJURY REPORT

## EMPLOYEE REPORT

Last Name *Baines*  First Name *Mukeda*  MI *S*  Date of Birth *1/31/75*  Age *39*

Full Address (No. & Street) *34 Dunbar Ave*  City *Rumford*  State *RI*  Zip Code *02916*

Social Security No. *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*  Sex: ☐ M ☑ F  Phone Number (*401*) *419-2250*

Department _____ Division _____ B/C ID No. _____

Location of incident *95 South Highway*

Date of incident *Nov 5, 2014*  Time of incident *4:58*  ☐ am ☑ pm

Did you receive this injury while working for RIPTA? ☑ Yes ☐ No

Specific area where incident occured *95 South Highway*

Describe and illustrate (at right) your injury *Right Knee top and Right Side.*

Describe the incident *95 South Highway Went over bumper Pot Hole and Fare Box Panel fell and Shook 3 to 4 times*

Name of witness to incident (print) *(Check Camera)*

Employee Signature *Metroda Baines*  *Nov 5, 2014*

Indicate on these figures the affected body parts:

R L    L R

Dominant hand: ☐ Left ☐ Right

## SUPERVISOR INITIAL REPORT

Supervisor Name _____

Was there a specific incident/accident? ☐ Yes ☐ No ☐ Unknown    Did you witness the incident/accident? ☐ Yes ☐ No

Give a step by step description of what you understand to have happened _____

Substance/object directly causing injury _____

Was employee sent to hospital or physician? ☐ Yes  Date / /  ☐ No

Name/Address _____

Did employee return to work same day? ☐ Yes ☐ No  Was injury lost time? ☐ Yes ☐ No  if yes, date lost time began / /

Sent home remainder of shift? ☐ Yes ☐ No  Light Duty Available? ☐ Yes ☐ No

Initials _____ Supervisor's Signature _____


The **Beacon** Mutual Insurance Co.

01/03/2018 10:28AM FAX  4017349334          CONNOR LAW OFFICES                    ☑0011/0012

### Workers' Compensation Medicare Set-Aside Arrangement (WCMSA)
### Attestation of Expenditure for Lump Sum Account

This attestation should be completed annually and mailed to the BCRC at "NGHP, PO Box 138832, Oklahoma City, OK 73113-8832," starting one year from the date the account is established.

Note: Please make several copies of this document, because you must send it to the Benefits Coordination & Recovery Center (BCRC) each year until all of your WCMSA funds have been appropriately exhausted (properly spent).

MICKEDA BARNES
\*\*\*\*8332A

Date:_____

Total WCMSA amount in CMS' approval letter: $127,268.00

Individuals who have a CMS–approved WCMSA amount may only use the funds in the WCMSA account to pay for Medicare–covered and otherwise reimbursable items and services that are related to the workers' compensation claim.

(Please circle one.)

1. I, the undersigned, attest that I have a **lump sum** WCMSA account and have used the monies from the WCMSA account for the period of _____ to _____ to pay for the following:

        Medical services:      $_____
        Prescription drug expenses:  $_____

2. I, the undersigned, attest that I have a **lump sum** WCMSA account and have **COMPLETELY EXHAUSTED** the monies in the WCMSA account for the period of _____ to _____ to pay for the following:

        Medical services:      $_____
        Prescription drug expenses:  $_____

I acknowledge and understand that failure to appropriately exhaust my WCMSA amount on Medicare-covered and otherwise reimbursable items and services, including prescription drugs, related to my workers' compensation claim will result in Medicare denying payment for related medical items and services up to the approved WCMSA amount or the total workers' compensation settlement, judgment, award, or other payment amount, whichever is less.

_____          _____
Signature                                   Date


_____          _____
Witness                                     Date

CMS reserves the right to audit how you spent the funds in your WCMSA account. Therefore, CMS recommends that you retain your WCMSA records for a period of seven (7) years. However, please do not send your receipts or bank statements to CMS or the BCRC except on request.

04/03/2018 10:27AM FAX  4017349334          CONNOR LAW OFFICES                    ☑0006/0012

Page 1 of 3

WORKERS' COMPENSATION MEDICARE SET-ASIDE ARRANGEMENT (WCMSA) REVIEW

Case Control #: WC1806801376397    Medicare ID/SSN: *****8332A

Claimant's Name: MICKEDA BARNES

Date of Injury: 02/18/2004

Diagnosis Code:

| Dx Code | Dx Ind. | Dx Description |
|---------|---------|----------------|
| G5602 | ICD-10 | Carpal tunnel syndrome, left upper limb |
| M25539 | ICD-10 | Pain in unspecified wrist |
| M25561 | ICD-10 | Pain in right knee |
| M545 | ICD-10 | Low back pain |

*(handwritten)* (Needs Added) Rt Shoulder Injury

Proposed Settlement Date (PSD): 07/07/2018          Date of Birth: 01/31/1975
Age at PSD: 43          Rated Age at PSD: 43    Life Expectancy: 38 yrs.

Submitter:
(205) 822-2006
CARR ALLISON
100 Vestavia Parkway
Birmingham, AL 35216

Claimant:
MICKEDA BARNES
34 DUNBAR AVE
RUMFORD, RI 02916-3111

WCMSA Administrator:
MICKEDA BARNES
34 DUNBAR AVE
RUMFORD, RI 02916-3111

[] SSA's record shows Representative Payee

| Proposed Future Medical WCMSA Amount: $11,355.00 |
|---|
| Proposed Future Rx WCMSA Amount: $0.00 |
| Total Proposed WCMSA: $11,355.00 |
| Proposed Initial Deposit: $0.00 |
| Total Settlement Amount: $61,355.00 |

| Recommended WCMSA: $127,268.00    Pricing Method: Fee    WC State: RHODE_ISLAND |
|---|
| Recommended WCMSA Lump Sum [X] or |
| Recommended WCMSA Structured Payments: [] |
| Recommended Initial Deposit: $0.00 |
| Annual Amount: $0.00 x 37 yrs. |
| Anniversary Date: 07/07/2019 |
| Type of Recommendation: Counter-Higher |
| If not eligible for WCMSA, reason: |

*(handwritten)* Needs Added

| Current Treatment Status for WC Injury or Disease (including past medical treatment): |
|---|

*(handwritten)* TB Injury 2008 (Trigger point injectons and Floricets Medicines)

settlement agreement via the Portal if your original submission was via the Portal. If you originally submitted outside of the Portal, submit the settlement agreement to the following address:

> WCMSA Proposal/Final Settlement
> P.O. Box 138899
> Oklahoma City, OK 73113-8899

If your settlement agreement is 10 pages or less, you may also fax it to (405) 869-3306. Note: This number is not for initial submissions, only for additional documentation under 10 pages.

The proposed WCMSA amount was calculated based on the workers' compensation fee schedule for the State of RHODE_ISLAND.

Funds in a WCMSA may not be used to purchase a Medicare supplemental insurance policy or a Medigap policy for a beneficiary, or to pay for the premiums for such policies.

Once the funds in the WCMSA account have been properly spent on Medicare-covered items and services related to the claimant's workers' compensation claim and Medicare has been given proof that the account has been properly spent, Medicare will begin paying for the claimant's Medicare-covered items and services that are related to the workers' compensation claim. Medicare will pay for Medicare-covered items and services that are unrelated to the workers' compensation claim according to Medicare's payment rules.

We understand that the claimant will act as administrator of the WCMSA funds. We have enclosed instructions, titled "Administering Your Workers' Compensation Medicare Set-Aside Arrangement (WCMSA)." The WCMSA Self-Administration Toolkit is another resource, available on the CMS website at http://go.cms.gov/WCMSASelfAdm. The claimant must send a signed attestation letter to the Benefits Coordination & Recovery Center at the address below every year, no later than 30 days after the end of each reporting period (beginning one year from the date of establishment of the WCMSA account). Annual attestations should continue through final exhaustion of the account.

> NGHP
> PO BOX 138832
> OKLAHOMA CITY, OK 73113

Please note that this decision regarding future medical treatment is independent of any determination regarding Medicare Secondary Payer recovery rights for conditional payments Medicare made for related items and services furnished before the date of the settlement, judgment, award, or other payment. Medicare has the right to recover (or take back) Medicare payments related to any workers' compensation settlement, judgment, award, or other payment. Any payments Medicare may have made that should have been paid from the workers' compensation settlement, judgment, award, or other payment must be repaid to Medicare.

If you have any questions concerning this letter, please call JODI CONNOR at (617) 565-1318.

Sincerely,

*[signature]*

Sherri McQueen
Acting Director, Financial Services Group
Office of Financial Management

Enclosure

04/03/2018 10:27AM FAX  4017349334          CONNOR LAW OFFICES                    @0007/0012

Page 2 of 3

CLAIMANT SUSTAINED MULTIPLE WORK RELATED INJURIES FROM 2/18/2004 TO 2/12/2015 INVOLVING MULTIPLE BODY PARTS INCLUDING THE NECK, RIGHT ARM, RIGHT SHOULDER, RIGHT WRIST, RIGHT HAND, RIGHT KNEE, LOWER BACK, LEFT WRIST AND LEFT ARM. THE MOST RECENT WORKRELATED INJURY OCCURRED ON 2/12/2015. AT THAT TIME, CLAIMANT REPORTED LOW BACK AND LEFT WRIST PAIN FOLLOWING A SLIP AND FALL. CLAIMANT UNDERWENT LEFT CARPAL TUNNEL RELEASE (5/6/2015) AND LEFT CARPAL TUNNEL RELEASE REVISION AND GUYON'S CANAL RELEASE (2/9/2017). CLAIMANT CONTINUES TO COMPLAIN OF PAIN IN LEFT WRIST, LEFT ARM, RIGHT KNEE AND CHRONIC LOWER BACK PAIN. PREVIOUS TREATMENT INCLUDED DIAGNOSTIC IMAGING, MEDICATIONS, STEROID INJECTIONS, PHYSICAL THERAPY, DURABLE MEDICAL EQUIPMENT, AND FOLLOWUP EVALUATIONS. CLAIMANT ACTIVE WORK RELATED DIAGNOSES INCLUDE CHRONIC BILATERAL LOW BACK PAIN WITHOUT SCIATICA, CHRONIC PAIN OF THE RIGHT KNEE, CARPAL TUNNEL SYNDROME, LEFT UPPER LIMB, AND LEFT WRIST PAIN.

**Past Medical Treatment Unrelated to WC Injury or Its Co-Morbid Conditions:**

CLAIMANT'S PAST MEDICAL HISTORY INCLUDES ANXIETY, CARDIAC MURMUR, DEPRESSION, HYPERTENSION, REFLEX SYMPATHETIC DYSTROPHY OF THE LOWER EXTREMITY, GASTRIC BYPASS IN 2004, AND INJURIES FROM 7/26/2008 OF THE NECK, RIGHT ARM AND RIGHT SHOULDER.

*[Handwritten annotation in right margin: RSD is from the Oct 2013 injury to Rt knee. Rt shoulder is from 2-12-2015 Slip & Fall injury]*

**Future Treatment (for Medicare-covered items and reimbursable services for the WC injury only):**

FUTURE TREATMENT INCLUDES ROUTINE PHYSICIAN EVALUATION, INJECTIONS, DIAGNOSTIC STUDIES, LABS, PHYSICAL THERAPY, AND PERIODIC REPLACEMENT OF DURABLE MEDICAL EQUIPMENT.

The following chart summarizes the future medical treatment costs (exclusive of pharmacy items) that adequately protect Medicare's interests:

| Service | Freq | Every X Yrs | # of Years | Price Per Service | Total |
|---|---|---|---|---|---|
| ELECTROMYOGRAPHY OF | 1.00 | 38.00 | 38.0 | $235.66 | $235.66 |
| NERVE CONDUCTION STU | 1.00 | 38.00 | 38.0 | $300.50 | $300.50 |
| X-RAY OF LEFT WRIST | 12.00 | 38.00 | 38.0 | $83.50 | $1,002.00 |
| LEFT WRIST BRACE | 7.00 | 38.00 | 38.0 | $70.17 | $491.19 |
| PHYSICIAN EVALUATION | 6.00 | 1.00 | 38.0 | $143.76 | $32,777.28 |
| PHYSICAL THERAPY VIS | 24.00 | 38.00 | 38.0 | $97.44 | $2,338.56 |
| PHYSICAL THERAPY VIS | 24.00 | 38.00 | 38.0 | $97.44 | $2,338.56 |
| X-RAY OF LUMBAR SPIN | 12.00 | 38.00 | 38.0 | $79.21 | $950.52 |
| MRI OF LUMBAR WITH A | 6.00 | 38.00 | 38.0 | $1,194.22 | $7,165.32 |
| COMPREHENSIVE METABO | 1.00 | 1.00 | 38.0 | $15.24 | $579.12 |
| COMPLETE BLOOD COUNT | 1.00 | 1.00 | 38.0 | $11.21 | $425.98 |
| VENIPUNCTURE | 1.00 | 1.00 | 38.0 | $3.15 | $119.70 |
| URINE DRUG TEST | 1.00 | 1.00 | 38.0 | $117.65 | $4,470.70 |
| X-RAY OF RIGHT KNEE | 7.00 | 38.00 | 38.0 | $83.66 | $585.62 |
| MRI OF THE RIGHT KNE | 3.00 | 38.00 | 38.0 | $1,102.93 | $3,308.79 |
| Total: | | | | | $57,089.50 |

**Prescription Drugs (for Medicare-covered and reimbursable drugs for the WC injury only):**

ACCORDING TO THE AVAILABLE MEDICAL RECORDS, CLAIMANT IS CURRENTLY RECEIVING PRESCRIPTIONS FOR CELEBREX, GABAPENTIN, AND APAP/CODEINE.

04/03/2018 10:27AM FAX  4017349334          CONNOR LAW OFFICES                          ☑0008/0012

Page 3 of 3

According to available documentation, this claimant is currently receiving the following drugs: CELECOXIB, ACETAMINOPHEN-CODEINE PHOSPHATE, GABAPENTIN.

The following chart summarizes the future prescription drug costs that adequately protect Medicare's interests:

| Drug | National Drug Code | Amount Per Unit (Dosage) | Per Day | Per Week | Per Month | # of Years | Price Per Units | Total |
|------|------|------|------|------|------|------|------|------|
| ACETAMINOPH | 00093-0150-10 | 300 MG-30 MG | 0.00 | 0.00 | 30.00 | 38 | $0.28 | $3,830.40 |
| GABAPENTIN | 69097-0813-12 | 100 MG | 0.00 | 0.00 | 90.00 | 38 | $0.53 | $21,751.20 |
| CELECOXIB | 42291-0194-50 | 200 MG | 0.00 | 0.00 | 60.00 | 38 | $1.63 | $44,596.80 |
| | | | | | | | Total: | $70,178.40 |

*Handwritten notes: "Give Up →" pointing at ACETAMINOPH row, "Give Up →" pointing at CELECOXIB row*

**Rationale for Decision:**

INSTEAD OF THE SUBMITTER'S PROPOSED SET-ASIDE, CMS HAS DETERMINED THAT A DIFFERENT SET-ASIDE AMOUNT IS NECESSARY TO PROTECT MEDICARE'S INTEREST FOR THE FOLLOWING REASONS: PRESCRIPTION PRICING AND TREATMENT FOR LOW BACK PAIN AND RIGHT KNEE WERE NOT INCLUDED IN THE WCMSA PROPOSAL.

The following chart summarizes the services and costs that adequately protect Medicare's interests:

Subtotal Future Treatment: $57,090.00
Subtotal Prescription Drugs: $70,178.00
Grand Total: $127,268.00

https://www.cob.cms.hhs.gov/WCMSA/alertLookup!displayAttachment?attachmentType=...  3/27/2018

FUTURE TREATMENT INCLUDES ROUTINE PHYSICIAN EVALUATION, INJECTIONS, DIAGNOSTIC STUDIES, LABS, PHYSICAL THERAPY, AND PERIODIC REPLACEMENT OF DURABLE MEDICAL EQUIPMENT.

The following chart summarizes the future medical treatment costs (exclusive of pharmacy items) that adequately protect Medicare's interests:

| SERVICE | FREQ | EVERY X YRS | # OF YEARS | PRICE PER SERVICE | TOTAL |
|---|---|---|---|---|---|
| ELECTROMYOGRAPHY OF LEFT UPPER EXTREMITY | 1 | 38 | 38 | $235.66 | $235.66 |
| NERVE CONDUCTION STUDIES OF LEFT UPPER EXTREMITY | 1 | 38 | 38 | $300.50 | $300.50 |
| X-RAY OF LEFT WRIST | 12 | 38 | 38 | $83.50 | $1,002.00 |
| LEFT WRIST BRACE | 7 | 38 | 38 | $70.17 | $491.19 |
| PHYSICIAN EVALUATIONS | 6 | 1 | 38 | $143.76 | $32,777.28 |
| PHYSICAL THERAPY VISITS FOR LEFT UPPER EXTREMITY | 24 | 38 | 38 | $97.44 | $2,338.56 |
| PHYSICAL THERAPY VISITS FOR LUMBAR | 24 | 38 | 38 | $97.44 | $2,338.56 |
| X-RAY OF LUMBAR SPINE 2/3 VIEWS | 12 | 38 | 38 | $79.21 | $950.52 |
| MRI OF LUMBAR WITH AND WITHOUT CONTRAST | 6 | 38 | 38 | $1,194.22 | $7,165.32 |
| COMPREHENSIVE METABOLIC PANEL | 1 | 1 | 38 | $15.24 | $579.12 |
| COMPLETE BLOOD COUNT | 1 | 1 | 38 | $11.21 | $425.98 |
| VENIPUNCTURE | 1 | 1 | 38 | $3.15 | $119.70 |
| URINE DRUG TEST | 1 | 1 | 38 | $117.65 | $4,470.70 |
| X-RAY OF RIGHT KNEE | 7 | 38 | 38 | $83.66 | $585.62 |
| MRI OF THE RIGHT KNEE WITH AND WITHOUT CONTRAST | 3 | 38 | 38 | $1,102.93 | $3,308.79 |
| | | | | TOTAL | $57,089.50 |

**Prescription Drugs (for Medicare-covered and reimbursable drugs for the WC injury only):**

ACCORDING TO THE AVAILABLE MEDICAL RECORDS, CLAIMANT IS CURRENTLY RECEIVING PRESCRIPTIONS FOR CELEBREX, GABAPENTIN, AND APAP/CODEINE.

According to available documentation, this claimant is currently receiving the following drugs: ACETAMINOPHEN-CODEINE PHOSPHATE, GABAPENTIN, CELECOXIB



**Proposed Future Medical WCMSA Amount:** $11,355.00
**Proposed Future Rx WCMSA Amount:** $0.00
**Total Proposed WCMSA:** $11,355.00
Proposed Initial Deposit: $0.00
**Total Settlement Amount:** $61,355.00

**Recommended WCMSA:** $127,268.00  **Pricing Method:** Fee **WC State:** RI
**Recommended WCMSA Lump Sum** [ X ] or
**Recommended WCMSA Structured Payments:** [ ]
Recommended Initial Deposit: $0.00
Annual Amount: $0.00 x 37 yrs.
Anniversary Date: 7/7/2019
**Type of Recommendation:** Counter-Higher
**If not eligible for WCMSA, reason:**

**Current Treatment Status for WC Injury or Disease (including past medical treatment):**
CLAIMANT SUSTAINED MULTIPLE WORK RELATED INJURIES FROM 2/18/2004 TO 2/12/2015 INVOLVING MULTIPLE BODY PARTS INCLUDING THE NECK, RIGHT ARM, RIGHT SHOULDER, RIGHT WRIST, RIGHT HAND, RIGHT KNEE, LOWER BACK, LEFT WRIST AND LEFT ARM. THE MOST RECENT WORK RELATED INJURY OCCURRED ON 2/12/2015. AT THAT TIME, CLAIMANT REPORTED LOW BACK AND LEFT WRIST PAIN FOLLOWING A SLIP AND FALL. CLAIMANT UNDERWENT LEFT CARPAL TUNNEL RELEASE (5/6/2015) AND LEFT CARPAL TUNNEL RELEASE REVISION AND GUYON'S CANAL RELEASE (2/9/2017). CLAIMANT CONTINUES TO COMPLAIN OF PAIN IN LEFT WRIST, LEFT ARM, RIGHT KNEE AND CHRONIC LOWER BACK PAIN. PREVIOUS TREATMENT INCLUDED DIAGNOSTIC IMAGING, MEDICATIONS, STEROID INJECTIONS, PHYSICAL THERAPY, DURABLE MEDICAL EQUIPMENT, AND FOLLOWUP EVALUATIONS. CLAIMANT ACTIVE WORK RELATED DIAGNOSES INCLUDE CHRONIC BILATERAL LOW BACK PAIN WITHOUT SCIATICA, CHRONIC PAIN OF THE RIGHT KNEE, CARPAL TUNNEL SYNDROME, LEFT UPPER LIMB, AND LEFT WRIST PAIN.

**Past Medical Treatment Unrelated to WC Injury or Its Co-Morbid Conditions:**
CLAIMANT'S PAST MEDICAL HISTORY INCLUDES ANXIETY, CARDIAC MURMUR, DEPRESSION, HYPERTENSION, REFLEX SYMPATHETIC DYSTROPHY OF THE LOWER EXTREMITY, GASTRIC BYPASS IN 2004, AND INJURIES FROM 7/26/2008 OF THE NECK, RIGHT ARM AND RIGHT SHOULDER.

**Future Treatment (for Medicare-covered items and reimbursable services for the WC injury only):**

## ADMINISTERING YOUR LUMP-SUM WORKERS' COMPENSATION MEDICARE SET-ASIDE ARRANGEMENT (WCMSA)

You have chosen to personally administer the WCMSA account established as part of a workers' compensation settlement, judgment, award, or other payment. It is important that you understand the Centers for Medicare & Medicaid Services' (CMS) policies regarding WCMSA accounts.

In order to comply with Section 1862(b)(2) of the Social Security Act, Medicare is not permitted to pay for medical items or services, including prescription drug expenses, related to the workers' compensation claim until the approved WCMSA amount is appropriately exhausted ("properly spent") on related medical care that is covered and otherwise reimbursable by Medicare ("Medicare covered"). Where a workers' compensation settlement, judgment, award, or other payment is less than the approved WCMSA amount, Medicare is not permitted to pay for related medical care until the whole settlement, judgment, award, or other payment is properly spent on related medical care. The WCMSA funds must be placed in an interest-bearing account. Funds in the account must not be used for any purpose other than payment of future medical care that is Medicare covered and is related to the workers' compensation claim, or for certain allowable expenses. For details on setting up and using the account, see the WCMSA Reference Guide and the Self-Administration Toolkit at http://go.cms.gov/wcmsa on the CMS website.

Funds in a WCMSA account may not be used to purchase a Medicare supplemental insurance policy or a Medigap policy, or to pay for the premiums for such policies.

Once the funds in the WCMSA account have been properly spent on Medicare-covered items and services related to the claimant's workers' compensation claim and Medicare has been provided with proof the account has been properly spent, Medicare will begin paying for the claimant's Medicare-covered items and services that are related to the workers' compensation claim. Medicare will pay for items and services covered by Medicare that are unrelated to the workers' compensation claim according to Medicare's payment rules.

Basic instructions for establishing and administrating a WCMSA account are listed below; more thorough instructions can be found in the Self-Administration Toolkit mentioned above (http://go.cms.gov/wcmsa). If you have any further questions regarding these requirements, please contact the Medicare Regional Office (RO) assigned to you. You can find a list of ROs at http://cms.gov/regionaloffices/ on the CMS website; scroll to the Downloads section near the bottom of the page. For questions about annual attestations or annual accountings, contact the BCRC:

NGHP
PO BOX 138832
OKLAHOMA CITY, OK 73113



**Establishing and Using Your Medicare Set-Aside Account**

- WCMSA funds must be placed in an interest-bearing account, separate from your personal savings or checking account.

- WCMSA funds may only be used to pay for medical items and services and prescription drug expenses related to your workers' compensation claim that would **normally be paid by Medicare**, or for certain allowable expenses.

- If you have a question regarding Medicare's coverage of a specific item, service, or prescription drug, please call 1-800-MEDICARE (1-800-633-4227) or visit CMS' website at http://www.medicare.gov/ where you can search for the item, service, or drug to see if it's covered.

**Note:** If funds from the WCMSA account are used to pay for services other than Medicare-allowable medical and prescription drug expenses related to the workers' compensation claim, Medicare will not pay injury-related claims until these funds are restored to the WCMSA account and then properly spent.

**Record Keeping**

- You may use the WCMSA account to pay for the following costs that are directly related to the account:
  - Document copying charges
  - Mailing fees or postage
  - Any banking fees related to the account
  - Income tax on interest income from the set-aside account

- As administrator of the account, you will be responsible for keeping accurate records of payments made from the account. These records may be requested by the BCRC as proof of appropriate payments from the WCMSA account.

- Annually, you must sign and submit a copy of the attached attestation letter, which states that all payments from the WCMSA account were made for Medicare-covered medical and prescription drug expenses related to the workers' compensation claim, or for allowable expenses.

- The annual attestation must be submitted to the BCRC at the address listed on the first page of these instructions no later than 30 days after the end of each reporting year, which starts with the date the account is established and ends on that date in the following year.

- The annual attestation must continue through depletion of the WCMSA account.

**DO NOT SEND YOUR ANNUAL ATTESTATION DIRECTLY TO CMS. Please send your annual attestation to the BCRC.**



Page 2 of 3

settlement agreement via the Portal if your original submission was via the Portal. If you originally submitted outside of the Portal, submit the settlement agreement to the following address:

> WCMSA Proposal/Final Settlement
> P.O. Box 138899
> Oklahoma City, OK 73113-8899

If your settlement agreement is 10 pages or less, you may also fax it to (405) 869-3306. Note: This number is not for initial submissions, only for additional documentation under 10 pages.

The proposed WCMSA amount was calculated based on the workers' compensation fee schedule for the State of RHODE_ISLAND.

Funds in a WCMSA may not be used to purchase a Medicare supplemental insurance policy or a Medigap policy for a beneficiary, or to pay for the premiums for such policies.

Once the funds in the WCMSA account have been properly spent on Medicare-covered items and services related to the claimant's workers' compensation claim and Medicare has been given proof that the account has been properly spent, Medicare will begin paying for the claimant's Medicare-covered items and services that are related to the workers' compensation claim. Medicare will pay for Medicare-covered items and services that are unrelated to the workers' compensation claim according to Medicare's payment rules.

We understand that the claimant will act as administrator of the WCMSA funds. We have enclosed instructions, titled "Administering Your Workers' Compensation Medicare Set-Aside Arrangement (WCMSA)." The WCMSA Self-Administration Toolkit is another resource, available on the CMS website at http://go.cms.gov/WCMSASelfAdm. The claimant must send a signed attestation letter to the Benefits Coordination & Recovery Center at the address below every year, no later than 30 days after the end of each reporting period (beginning one year from the date of establishment of the WCMSA account). Annual attestations should continue through final exhaustion of the account.

> NGHP
> PO BOX 138832
> OKLAHOMA CITY, OK 73113

Please note that this decision regarding future medical treatment is independent of any determination regarding Medicare Secondary Payer recovery rights for conditional payments Medicare made for related items and services furnished before the date of the settlement, judgment, award, or other payment. Medicare has the right to recover (or take back) Medicare payments related to any workers' compensation settlement, judgment, award, or other payment. Any payments Medicare may have made that should have been paid from the workers' compensation settlement, judgment, award, or other payment must be repaid to Medicare.

If you have any questions concerning this letter, please call JODI CONNOR at (617) 565-1318.

Sincerely,

Sherri McQueen
Acting Director, Financial Services Group
Office of Financial Management

Enclosure

03/03/20 18 10:20 ID FAX NO.I 3 A9334    CONNOR LAW OFFICES    ☒0005/0012
Case 2:22-cv-00215-JJM-PAS   Document 5   Filed 06/03/22   Page 489 of 577 PageID
#: 1533

Page 3 of 3

CC: MICKEDA BARNES
    NGHP
    STEPHEN DENNIS



00574

2_13

05/17/2018

*CMS + 2nd*
*Report $89,785 00*

CARR ALLISON
100 VESTAVIA PARKWAY
BIRMINGHAM AL 35216

RE:   Workers' Compensation Medicare Set-Aside Arrangement for:
      Claimant: MICKEDA  BARNES
      Medicare ID/SSN: *****8332A
      Date of Injury: 02/18/2004
      CMS Case Control Number: WC1806801376397

Dear Sir or Madam,

This letter is in response to your submission of a proposed Workers' Compensation Medicare Set-Aside Arrangement (WCMSA) amount related to the above-named claimant's workers' compensation claim and received on 3/9/2018.

You proposed a WCMSA amount of $11,355.00 to pay for future medical items and services that are covered and otherwise reimbursable by Medicare ("Medicare covered") and are related to the claimant's workers' compensation claim. We note that you proposed $0.00 for Medicare-covered prescription drugs.

We have evaluated your proposed WCMSA amount and have determined that $89,785.00 adequately considers Medicare's interests with respect to Medicare-covered future medical items and services, including prescription drugs.

In order to comply with Section 1862(b)(2) of the Social Security Act, Medicare is not permitted to pay for medical items and services, including prescription drug expenses, related to the workers' compensation claim until the approved WCMSA amount is appropriately exhausted ("properly spent")

## WORKERS' COMPENSATION MEDICARE SET-ASIDE ARRANGEMENT (WCMSA) REVIEW

**Case Control #:** WC1806801376397         **Medicare ID/SSN:** *****8332A

**Claimant's Name:** MICKEDA  BARNES

**Date of Injury:** 02/18/2004

**Diagnosis Code:** G5602, M25539, M25561, M545

**Proposed Settlement Date (PSD):** 7/7/2018         **Date of Birth:** 1/31/1975
**Age at PSD:** 43       **Rated Age at PSD:** 43      **Life Expectancy:** 38 yrs.



**Submitter:**

CARR ALLISON
100 VESTAVIA PARKWAY
BIRMINGHAM, AL 35216

**Claimant:**

MICKEDA  BARNES
34 DUNBAR AVE
RUMFORD, RI 02916-3111

**WCMSA Administrator:**

MICKEDA  BARNES
34 DUNBAR AVE
RUMFORD, RI 02916-3111

[ ] SSA's record shows Representative Payee

8 13      00574

FUTURE TREATMENT INCLUDES ROUTINE PHYSICIAN EVALUATION, INJECTIONS, DIAGNOSTIC STUDIES, LABS, PHYSICAL THERAPY, AND PERIODIC REPLACEMENT OF DURABLE MEDICAL EQUIPMENT.

The following chart summarizes the future medical treatment costs (exclusive of pharmacy items) that adequately protect Medicare's interests:

| SERVICE | FREQ | EVERY X YRS | # OF YEARS | PRICE PER SERVICE | TOTAL |
|---|---|---|---|---|---|
| ELECTROMYOGRAPHY OF LEFT UPPER EXTREMITY | 1 | 38 | 38 | $235.66 | $235.66 |
| NERVE CONDUCTION STUDIES OF LEFT UPPER EXTREMITY | 1 | 38 | 38 | $300.50 | $300.50 |
| X-RAY OF LEFT WRIST | 12 | 38 | 38 | $83.50 | $1,002.00 |
| LEFT WRIST BRACE | 7 | 38 | 38 | $70.17 | $491.19 |
| PHYSICIAN EVALUATIONS | 6 | 1 | 38 | $143.76 | $32,777.28 |
| PHYSICAL THERAPY -LEFT WRIST | 24 | 38 | 38 | $97.44 | $2,338.56 |
| PHYSICAL THERAPY -BACK | 24 | 38 | 38 | $97.44 | $2,338.56 |
| X-RAY OF LUMBAR SPINE 2/3 VIEWS | 12 | 38 | 38 | $79.21 | $950.52 |
| MRI OF LUMBAR WITH AND WITHOUT CONTRAST | 6 | 38 | 38 | $1,194.22 | $7,165.32 |
| COMPREHENSIVE METABOLIC PANEL | 1 | 1 | 38 | $15.24 | $579.12 |
| COMPLETE BLOOD COUNT | 1 | 1 | 38 | $11.21 | $425.98 |
| VENIPUNCTURE | 1 | 1 | 38 | $3.15 | $119.70 |
| URINE DRUG TEST | 1 | 1 | 38 | $117.65 | $4,470.70 |
| X-RAY OF RIGHT KNEE | 7 | 38 | 38 | $83.66 | $585.62 |
| MRI OF THE RIGHT KNEE WITH AND WITHOUT CONTRAST | 3 | 38 | 38 | $1,102.93 | $3,308.79 |
| | | | | TOTAL | $57,089.50 |

**Prescription Drugs (for Medicare-covered and reimbursable drugs for the WC injury only):**

According to available documentation, this claimant is currently receiving the following drugs: GABAPENTIN, ACETAMINOPHEN/HYDROCODONE BITARTRATE

The following chart summarizes the future prescription drug costs that adequately protect Medicare's interests:

| | AMOUNT PER | PER | PER | PER | # OF |
|---|---|---|---|---|---|

| DRUG | NATIONAL DRUG CODE | UNIT DOSAGE | DAY | WEEK | MONTH | YEARS | PRICE PER UNIT | TOTAL |
|---|---|---|---|---|---|---|---|---|
| GABAPENTIN | 69097-0813-12 | 100 MG | 0 | 0 | 90 | 38 | $0.53 | $21,751.20 |
| ACETAMINOPHEN/HYDROCODONE BITARTRATE | 00904-6567-61 | 325 MG-5 M | 0 | 0 | 60 | 38 | $0.40 | $10,944.00 |
| | | | | | | | TOTAL | $32,695.20 |



**Rationale for Decision:**

THE SUBMITTER'S RE-REVIEW REQUESTS REMOVAL OF THE MEDICATION CELEBREX AND VICODIN FROM THE WCMSA AS WELL AS REMOVAL OF DUPLICATE PHYSICAL THERAPY FROM THE WCMSA. THE SUBMITTER ALSO REQUESTS A REDUCTION IN THE PHYSICIAN VISITS. NEW EVIDENCE SUBMITTED INCLUDES PCP OFFICE VISIT NOTE DATED 2/6/17 AND A PAIN MANAGEMENT PROGRAM EVALUATION DATED 8/30/17. THE OFFICE VISIT NOT DATED 2/5/17 DOES DOCUMENT THAT CELEBREX WAS DISCONTINUED AND VICODIN WAS CONTINUED. CLAIMANT WAS SEEN AGAIN ON 3/24/17 5/12/17 6/27/17 AND NO CHANGES WERE MADE TO HER MEDICATIONS. THE PM EVALUATION DATED 8/30/17 WAS DONE BY REFERRAL FROM HER PRIMARY CARE PHYSICIAN. THIS NOTES DOCUMENT THAT CLAIMANT RECENTLY STOPPED TAKING THE VICODIN DUE TO GI UPSET AND RUNNING OUT OF MEDICATION. SHE PLANS TO TAKE IT AGAIN AS NEEDED FOR PAIN. THEREFORE, ACETAMINOPHEN/CODEINE WILL BE REMOVED AND VICODIN WILL BE ADDED. CELEBREX WILL BE REMOVED. PHYSICAL THERAPY WAS ALLOCATED FOR LEFT WRIST PAIN AND LOW BACK PAIN AND WILL NOT BE REMOVED. CLAIMANT IS EVALUATED BY THE PRIMARY CARE PHYSICIAN EVERY 6 WEEKS AND ALSO SEES AN ORTHOPEDIST FOR WRIST PAIN. SIX PHYSICIAN VISITS/YEAR IS REASONABLE TO PROTECT MEDICARE'S INTERESTS AND WILL NOT BE REDUCED.

The following chart summarizes the combined medical and prescription drug treatment costs that adequately protect Medicare's interests:

Subtotal Future Treatment: $57,090
Subtotal Prescription Drugs:      $32,695
Grand Total:          $89,785

12. 13.          00574

Workers Compensation Set-Aside Re-Review Request

00574

13_13

Date of Request:             4/26/2018

Claimant:                    MICKEDA BARNES
Medicare ID:                 *****8332A
SSN:                         ***-**-8332
Date of Injury:              2/18/2004
CMS Case Control Number:     WC1806801376397

Contact Name:                LIZ ROBINSON
Contact Phone:               833-295-3773

Requested By:                Submitter
Reason for Request:          Medical - RX

Reason for Re-Review Request:
YOU BELIEVE CMS` DETERMINATION CONTAINS OBVIOUS MISTAKES (E.G., A MATHEMATICAL
ERROR OR FAILURE TO RECOGNIZE MEDICAL RECORDS ALREADY SUBMITTED SHOWING A
SURGERY, PRICED AT CMS, THAT HAS ALREADY OCCURRED).

CMS Response:
THE SUBMITTER'S RE-REVIEW REQUESTS REMOVAL OF THE MEDICATION CELEBREX AND VICODIN
FROM THE WCMSA AS WELL AS REMOVAL OF DUPLICATE PHYSICAL THERAPY FROM THE WCMSA.
THE SUBMITTER ALSO REQUESTS A REDUCTION IN THE PHYSICIAN VISITS. NEW EVIDENCE
SUBMITTED INCLUDES PCP OFFICE VISIT NOTE DATED 2/6/17 AND A PAIN MANAGEMENT PROGRAM
EVALUATION DATED 8/30/17. THE OFFICE VISIT NOT DATED 2/5/17 DOES DOCUMENT THAT
CELEBREX WAS DISCONTINUED AND VICODIN WAS CONTINUED. CLAIMANT WAS SEEN AGAIN ON
3/24/17 5/12/17 6/27/17 AND NO CHANGES WERE MADE TO HER MEDICATIONS. THE PM EVALUATION
DATED 8/30/17 WAS DONE BY REFERRAL FROM HER PRIMARY CARE PHYSICIAN. THIS NOTES
DOCUMENT THAT CLAIMANT RECENTLY STOPPED TAKING THE VICODIN DUE TO GI UPSET AND
RUNNING OUT OF MEDICATION. SHE PLANS TO TAKE IT AGAIN AS NEEDED FOR PAIN. THEREFORE,
ACETAMINOPHEN/CODEINE WILL BE REMOVED AND VICODIN WILL BE ADDED. CELEBREX WILL BE
REMOVED. PHYSICAL THERAPY WAS ALLOCATED FOR LEFT WRIST PAIN AND LOW BACK PAIN AND
WILL NOT BE REMOVED. CLAIMANT IS EVALUATED BY THE PRIMARY CARE PHYSICIAN EVERY 6
WEEKS AND ALSO SEES AN ORTHOPEDIST FOR WRIST PAIN. SIX PHYSICIAN VISITS/YEAR IS
REASONABLE TO PROTECT MEDICARE'S INTERESTS AND WILL NOT BE REDUCED.



Proposed Future Medical WCMSA Amount: $11,355.00
Proposed Future Rx WCMSA Amount: $0.00
Total Proposed WCMSA: $11,355.00
Proposed Initial Deposit: $0.00
Total Settlement Amount: $61,355.00

Recommended WCMSA: $89,785.00  Pricing Method: Fee WC State: RI
Recommended WCMSA Lump Sum [ X ] or
Recommended WCMSA Structured Payments: [ ]
Recommended Initial Deposit: $0.00
Annual Amount: $0.00 x 37 yrs.
Anniversary Date: 7/7/2019
Type of Recommendation: Counter-Higher
If not eligible for WCMSA, reason:

Current Treatment Status for WC Injury or Disease (including past medical treatment):
CLAIMANT SUSTAINED MULTIPLE WORK RELATED INJURIES FROM 2/18/2004 TO 2/12/2015 INVOLVING MULTIPLE BODY PARTS INCLUDING THE NECK, RIGHT ARM, RIGHT SHOULDER, RIGHT WRIST, RIGHT HAND, RIGHT KNEE, LOWER BACK, LEFT WRIST AND LEFT ARM. THE MOST RECENT WORK RELATED INJURY OCCURRED ON 2/12/2015. AT THAT TIME, CLAIMANT REPORTED LOW BACK AND LEFT WRIST PAIN FOLLOWING A SLIP AND FALL. CLAIMANT UNDERWENT LEFT CARPAL TUNNEL RELEASE (5/6/2015) AND LEFT CARPAL TUNNEL RELEASE REVISION AND GUYON'S CANAL RELEASE (2/9/2017). CLAIMANT CONTINUES TO COMPLAIN OF PAIN IN LEFT WRIST, LEFT ARM, RIGHT KNEE AND CHRONIC LOWER BACK PAIN. PREVIOUS TREATMENT INCLUDED DIAGNOSTIC IMAGING, MEDICATIONS, STEROID INJECTIONS, PHYSICAL THERAPY, DURABLE MEDICAL EQUIPMENT, AND FOLLOWUP EVALUATIONS. CLAIMANT ACTIVE WORK RELATED DIAGNOSES INCLUDE CHRONIC BILATERAL LOW BACK PAIN WITHOUT SCIATICA, CHRONIC PAIN OF THE RIGHT KNEE, CARPAL TUNNEL SYNDROME, LEFT UPPER LIMB, AND LEFT WRIST PAIN.

Past Medical Treatment Unrelated to WC Injury or Its Co-Morbid Conditions:
CLAIMANT'S PAST MEDICAL HISTORY INCLUDES ANXIETY, CARDIAC MURMUR, DEPRESSION, HYPERTENSION, REFLEX SYMPATHETIC DYSTROPHY OF THE LOWER EXTREMITY, GASTRIC BYPASS IN 2004, AND INJURIES FROM 7/26/2008 OF THE NECK, RIGHT ARM AND RIGHT SHOULDER.

Future Treatment (for Medicare-covered items and reimbursable services for the WC injury only):

1           THE COURT:  I'm going to do that.  I was

2    going to try to recap everything on the record, but I

3    think if I do that, I may put my foot in my mouth, so I'm

4    dare not going to do that.  I'm assuming that the parties

5    will be requesting a copy of this record from you, but I

6    will leave that to the attorneys.

7           First of all, I want to thank the parties, both

8    Ms. Barnes and Rhode Island Public Transit Authority, for

9    agreeing to the mediation.  This is something that's been

10   in effect for a little over a year, and that has been

11   very successful, but success is predicated on a number of

12   things.  Number one, it's predicated on the parties

13   agreeing to actually mediate the claim.  Secondly, it's

14   predicated on the attorneys that are involved in the

15   mediation, and I can see that we have many skilled

16   attorneys here, and I thank them for their efforts

17   because this is a very complicated case, as you know.

18   You've been living through it yourself.

19          And lastly, I can't thank enough my associate

20   judge, Judge Feeney, for bringing this to a resolution.

21   I think through his efforts this case was able to be

22   settled, and only through his efforts, and I commend him.

23   He certainly grasped the issues, and I can tell you that

24   he spent a lot of time learning the case, learning the

25   issues and preparing, and that is I think one of the keys

1    for this actually being resolved. So I can't thank him

2    enough for his efforts. So we do have a matter -- the

3    matter is scheduled for December 4th. There is no need

4    for us to meet since we went on the record today. Let me

5    ask this, how much time do you think you need to at least

6    submit this to Carr Allison, and I take it any of the

7    accepted claims will be submitted? You tell me.

8            MR. MANCINI: Two weeks to get it submitted,

9    Judge, the maximum.

10           THE COURT: So why don't we do this? I'm

11    going to kick this for a date just before the Christmas

12    holiday for the attorneys. Ms. Barnes, you know you're

13    always welcome in my courtroom, but there's no need for

14    you to pay for parking and come here. I'm doing this for

15    twofold. Number one, I want to make sure that the MSA

16    proposal has been submitted. Number 2, I want to make

17    sure that the mutual agreement relative to the $3,000

18    that you're going to be paid before the Christmas holiday

19    has been executed. Once I'm satisfied that that has been

20    done, I will then put it down for a date sometime in

21    January for further status on the MSA. Okay.

22           MS. BARNES: Could I get the $3,000 ASAP? I

23    need to pay some bills.

24           THE COURT: Your attorney will be speaking

25    with RIPTA and Mr. Mancini, and I'm sure that will be

1.

1    done sometime next week.

2                    (OFF THE RECORD)

3            THE COURT:  Any other things that need to be

4    placed on the record?

5            MR. DENNIS:  No, thank you very much, Your

6    Honor.

7            THE COURT:  We'll see everyone on the date of

8    December -- my writing week is the 11th.  So let's do a

9    chamber conference the 12th, 12/12.  I'd love to see the

10   attorneys representing or involved in the federal suit,

11   but you need not be here if everything seems to be going

12   as scheduled.  All I need to do is see Mr. Dennis and Mr.

13   Mancini for them to report that said mutual agreement is

14   executed, the claims have been submitted to Carr Allison,

15   and things are going along smoothly.  If there's an

16   issue, I welcome everyone to please come and see me on

17   the 12th.

18                    (HEARING ADJOURNED)

19

20

21

22

23

24

25

13

(MARCH 19, 2018)

THE COURT:    These are the matters of <u>Mickeda Barnes vs. Rhode Island Public Transit Authority</u>.    There are several matters before the Court:    2017-5115, 2017-4571, 2017-4046, 2017-4145, 2017-6063, 2017-6646 and 2017-6824.    We've been conferencing this matter off the record because we're waiting for CMS to approve a submission by Carl Allison, which has been sent, unfortunately there was a snag, they were waiting for some paperwork from the insurance carrier which was delayed.    There was a little bit of a delay getting that to CMS, but the parties are before the Court, there's been a request by Mr. Dennis on behalf of Ms. Barnes for an interlocutory order.    The Court has indicated at the last meeting and at this meeting that he will not enter any interlocutory orders on this matter.    Several other discussions were had with Ms. Barnes.    The Court is aware of Ms. Barnes' situation.    She's been waiting as patiently as she can for this settlement to be heard before the Court.    I am continuing it to April 16th at I am hopeful that CMS will come back with a figure, but I am instructing both Mr. Dennis and Mr. Mancini when and if that comes back with a figure sooner than that, they have to see me right away, and I will put it down on my

14

ready to hear it, and I will hear it forthwith because I understand Ms. Barnes' situation, and this is the only thing I can do to try and accommodate her.  So we're going to continue it to 4/16 at 10, but if CMS comes back, both the attorneys are to see me, and I will put it on my first available afternoon.

      MR. DENNIS:  Thank you, Your Honor.

      MR. MANCINI: Thank you, Judge.

      THE COURT:  Thank you.

      (MATTER ADJOURNED)

At this time I had been without WEEKly Benefits for over 78 Week's

Exhibit 6

CMS Report



# FAX

**To:** **Stephen Dennis Law Office**
Company:
Fax: 401-453-6670
Phone:

**From:** **Jodi Connor**
Fax: 443-380-5584
Phone: 617-565-1293
E-mail: jodi.connor@cms.hhs.gov

## NOTES:

Per the request of the claimant Mickeda Barnes, attached is a screen shot of CMS's system showing no information is available on her case as of today's date.

Sincerely,
Jodi Connor

Date and time of transmission: Tuesday, March 6, 2018 9:40:24 AM
Number of pages including this cover sheet: 02



04/03/2018 10:26AM FAX  4017349334          CONNOR LAW OFFICES                    ☑0001/0012



# Mancini Law, LLC

222 Jefferson Blvd.  Warwick, RI 02888
P: 401.732.0300  F: 401.734.9334

Nicholas R. Mancini, Esq.
nmancini@fconnorlaw.com

## FACSIMILE TRANSMITTAL SHEET

DATE: _4/3/18_

TO: _Steve Dennis_

FAX NO: _453·6670_

FROM: _Nick_

REMARKS: _✶ Get to Steve ASAP ✶_
_Burns CMS Report_

NUMBER OF PAGES INCLUDING COVER SHEET: _12_

IF YOU DO NOT RECEIVE ALL OF THE PAGES, OR IF ANY PART IS ILLEGIBLE, PLEASE CALL US AT (401) 732-0300.

*This transmittal is intended solely for the use of the individual or entity to whom it is addressed, and it may contain information which is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering the transmittal to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original to us at the above address by the U.S. Postal Service.*

*Thank you.*

04/03/2018 10:27AM FAX  4017349334          CONNOR LAW OFFICES                    ☑0002/0012

## Nicholas Mancini

| | |
|---|---|
| From: | mkrombach@carrallison.com |
| Sent: | Thursday, March 29, 2018 2:57 PM |
| To: | kmessier@beaconmutual.com |
| Cc: | abrown@carrallison.com; Nicholas Mancini |
| Subject: | Mickeda Barnes / Claim Number 360335 |
| Attachments: | CMS Determination (01072868xDD2DD).pdf |

Hi Keri,

We received the attached determination from CMS. As you can see, CMS requested an increase in the amount required for the set-aside in this case. Instead of the amount proposed, CMS is requiring an MSA of $127,268. CMS required funds for the right knee, low back, and hydrocodone, which we noted as a possibility. However, CMS also required funds for the prescription medications Celebrex and Gabapentin, which is completely unreasonable given that the records and pharmacy documentation that we received indicated that those medications were no longer prescribed. We are planning to file a reconsideration to request that CMS remove funds for these medications. In order to support our argument, it would be very beneficial to have more recent treatment records in order to further evidence that Ms. Barnes no longer receives these medications. CMS should consider any records dated prior to the date of the submission, which was March 9th. As such, if you have any records dated between June 27, 2017 and March 9, 2018, please forward them to me at your convenience.

Thank you,

Meggie

Meggie R. Krombach
*Attorney*

 CARR ALLISON
MEDICARE COMPLIANCE GROUP

100 Vestavia Parkway | Birmingham, AL 35216
Telephone  (205) 949-2902
Facsimile   (205) 822-2057

website | bio | vCard | blog | map | email

CONFIDENTIALITY NOTICE: This email (including any file attachments) is for the sole use of the intended recipients - not necessarily the addressees - and may contain confidential and privileged information that by its privileged and confidential nature is exempt from disclosure under applicable law. You are hereby notified that dissemination, disclosure, distribution, duplication, or other use of this transmission by someone other than an intended recipient or an intended recipient's designated agent is strictly prohibited. If you are not an intended recipient or believe you have received this transmission in error, please notify the sender.

1

## ADMINISTERING YOUR LUMP-SUM WORKERS' COMPENSATION MEDICARE SET-ASIDE ARRANGEMENT (WCMSA)

You have chosen to personally administer the WCMSA account established as part of a workers' compensation settlement, judgment, award, or other payment. It is important that you understand the Centers for Medicare & Medicaid Services' (CMS) policies regarding WCMSA accounts.

In order to comply with Section 1862(b)(2) of the Social Security Act, Medicare is not permitted to pay for medical items or services, including prescription drug expenses, related to the workers' compensation claim until the approved WCMSA amount is appropriately exhausted ("properly spent") on related medical care that is covered and otherwise reimbursable by Medicare ("Medicare covered"). Where a workers' compensation settlement, judgment, award, or other payment is less than the approved WCMSA amount, Medicare is not permitted to pay for related medical care until the whole settlement, judgment, award, or other payment is properly spent on related medical care. The WCMSA funds must be placed in an interest-bearing account. Funds in the account must not be used for any purpose other than payment of future medical care that is Medicare covered and is related to the workers' compensation claim, or for certain allowable expenses. For details on setting up and using the account, see the WCMSA Reference Guide and the Self-Administration Toolkit at http://go.cms.gov/wcmsa on the CMS website.

Funds in a WCMSA account may not be used to purchase a Medicare supplemental insurance policy or a Medigap policy, or to pay for the premiums for such policies.

Once the funds in the WCMSA account have been properly spent on Medicare-covered items and services related to the claimant's workers' compensation claim and Medicare has been provided with proof the account has been properly spent, Medicare will begin paying for the claimant's Medicare-covered items and services that are related to the workers' compensation claim. Medicare will pay for items and services covered by Medicare that are unrelated to the workers' compensation claim according to Medicare's payment rules.

Basic instructions for establishing and administrating a WCMSA account are listed below; more thorough instructions can be found in the Self-Administration Toolkit mentioned above (http://go.cms.gov/wcmsa). If you have any further questions regarding these requirements, please contact the Medicare Regional Office (RO) assigned to you. You can find a list of ROs at http://cms.gov/regionaloffices/ on the CMS website; scroll to the Downloads section near the bottom of the page. For questions about annual attestations or annual accountings, contact the BCRC:

>   NGHP
>   PO BOX 138832
>   OKLAHOMA CITY, OK 73113

### Establishing and Using Your Medicare Set-Aside Account

- WCMSA funds must be placed in an interest-bearing account, separate from your personal savings or checking account.

- WCMSA funds may only be used to pay for medical items and services and prescription drug expenses related to your workers' compensation claim that would normally be paid by Medicare, or for certain allowable expenses.

- If you have a question regarding Medicare's coverage of a specific item, service, or prescription drug, please call 1-800-MEDICARE (1-800-633-4227) or visit CMS' website at http://www.medicare.gov/ where you can search for the item, service, or drug to see if it's covered.

Note: If funds from the WCMSA account are used to pay for services other than Medicare-allowable medical and prescription drug expenses related to the workers' compensation claim, Medicare will not pay injury-related claims until these funds are restored to the WCMSA account and then properly spent.

**Record Keeping**

- You may use the WCMSA account to pay for the following costs that are directly related to the account:

  - Document copying charges
  - Mailing fees or postage
  - Any banking fees related to the account
  - Income tax on interest income from the set-aside account

- As administrator of the account, you will be responsible for keeping accurate records of payments made from the account. These records may be requested by the BCRC as proof of appropriate payments from the WCMSA account.

- Annually, you must sign and submit a copy of the attached attestation letter, which states that all payments from the WCMSA account were made for Medicare-covered medical and prescription drug expenses related to the workers' compensation claim, or for allowable expenses.

- The annual attestation must be submitted to the BCRC at the address listed on the first page of these instructions no later than 30 days after the end of each reporting year, which starts with the date the account is established and ends on that date in the following year.

- The annual attestation must continue through depletion of the WCMSA account.

**DO NOT SEND YOUR ANNUAL ATTESTATION DIRECTLY TO CMS.** Please send your annual attestation to the BCRC.

## ARTICLE X

## AMENDMENT

These Bylaws may be altered, amended, or repealed and new Bylaws may be adopted at any regular or special meeting of the Authority by an affirmative vote of four (4) members of the Authority; provided, however, that notice of any such proposed alteration, amendment, repeal or adoption of new Bylaws and the full text of the same shall accompany the notice of such meeting.

## ARTICLE XI

## CONFLICTS OF INTEREST

1.    **Code of Ethics.**  The Authority shall comply with the provisions of Rhode Island General Laws Sections 36-14-4 through 36-14-7 (the "Code of Ethics"), and the regulations promulgated thereunder, both as amended and in effect from time to time. No member, officer, or employee of the Authority shall engage in the prohibited activities set forth in Section 36-14-5 of the Code of Ethics or the Act, or take any action or refrain from taking any action in a conflict of interest as described in Section 36-14-6 of the Code of Ethics without first preparing and delivering a written statement to the Rhode Island Ethics Commission in accordance with Section 36-14-6 of the Code of Ethics.

2.    **Conflicts.**  No contract or transaction between the Authority and one or more of its members or between the Authority and any other authority, agency, corporation, partnership, association, or other organization in which one or more of the members are directors, officers, employees, or has a financial interest, shall be void or voidable, nor shall such member or employee be liable with respect to such contract or

transaction solely for this reason, or solely because the member or employee is present at or participates in the meeting of the members which authorizes the contract or transaction, if such contract or transaction is approved in accordance with these Bylaws and otherwise in accordance with applicable law.

## **ARTICLE XII**

## **PARLIAMENTARY AUTHORITY**

The rules contained in the current edition of Robert's Rules of Order shall govern all proceedings of the members of the Authority, except where such rules are inconsistent with the Act, these Bylaws, or other applicable law.

*455598_7*

Exhibit

F

December 1, 2017

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.        WORKERS' COMPENSATION COURT

Mickeda S. Barnes

_____

vs.                                    W.C.C. No. 201704046, 201704145, 201704571,201705115

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY

_____

**Statement of the Mediator**

In regard to the above matter, the undersigned was assigned as Mediator, by an Order issued by Chief Judge Ferrieri on September 27, 2017.

The Mediation was:

☐ scheduled but not heard

☐ was held on the following date(s)    12/1/17

The Mediation ended:

☑ in full agreement as follows:    *Comp Settlement to be filed to resolve Compensation matter* 12/4/17

☑ in non-agreement

Signature: _____        Date: _____

04:52p    kmessier beacon mutual                1-401-825-2980          p.2

## Mutual Agreement

RI Department of Labor and Training, Division of Workers' Compensation
PO Box 20190, Cranston, RI 02920-0942    www.dlt.ri.gov/wc
Phone (401) 462-8100    TDD (401) 462-8105

| | |
|---|---|
| Claim Administrator Claim Number | |
| | **360335** |

| Employee Information | | | Employer, Insurer, Claim Administrator |
|---|---|---|---|
| SSN or ID **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** | Date of Birth **01/31/1975** | | Insurer Business Name **Rhode Island Public Transit Authority** |
| Last Name **Barnes** | First Name **Mickeda** | Initial **S** | Insurer Business Name **The Beacon Mutual Insurance Company** |
| Date of Injury **02/12/2015** | Date of Death | | Claim Administrator Business Name |

This form may be used under RIGL § 28-35-6(b) to amend a Memorandum of Agreement, Order or Decree on a workers' compensation claim. This form cannot be used to start or end weekly benefits.

### Amendment to Memorandum of Agreement. Indicate the change.

| | | |
|---|---|---|
| ☐ Change employees marital status to | ☐ Single   ☐ Married | effective date: |
| ☐ Change the total average weekly wage to | $ | effective date: |
| ☐ Change the weekly spendable base wage to | $ | effective date: |
| ☐ Change the weekly compensation rate to | $ | effective date: |
| ☐ Change maximum number of eligible exemptions | to | effective date: |
| ☐ Change number of dependents | to | effective date: |
| ☐ Modify from total to partial incapacity | effective date: | |
| ☐ Modify from partial to total incapacity | effective date: | |
| ☐ Suitable Alternative Employment (offer attached) | effective date: | |
| ☐ Change nature of injury and/or affected body part to | | |

☑ Other (Specify)

Ripta hereby advances $2000.00 to Barnes from the lump sum settlement agreed upon in principle on December 1, 2017. Should the claim not settle as anticipated Ripta shall take a dollar for dollar credit of $2000.00 against any indemnity benefits payable to Barnes.

### Specific Injury Agreement

The injured worker and the Claims Administrator representing the Insurer and Employer agree on the specific injury or injuries stated here.

| Disfigurement: Body Part | | Weeks | Weekly Rate | Amount Paid | Date Paid |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

| Loss of Use: Body Part | Percent | Weeks | Weekly Rate | Amount Paid | Date Paid |
|---|---|---|---|---|---|
| | 0.00 | | | | |
| | 0.00 | | | | |

| Body Part | Type of Hearing Loss | Percent | Weeks | Weekly Rate | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|
| ☐ Left | ☐ Occupational  ☐ Traumatic | 0.00 | | | | |
| ☐ Right | ☐ Occupational  ☐ Traumatic | 0.00 | | | | |
| ☐ Both | ☐ Occupational  ☐ Traumatic | 0.00 | | | | |

### Signatures of Parties to this Agreement

| Employee Signature | Date | Claim Adjuster Signature | Date |
|---|---|---|---|
| *Mickeda Barnes* | 2/5/18 | *signature* | 2/5/18. |

DWC-24 1/2014

```
 1                    (DECEMBER 1, 2017)

 2              THE COURT:  These are the matters of Mickeda

 3     Barnes v. Rhode Island Public Transit Authority,

 4     2017-4571, 2017-4046, 2017-4145, 2017-6073, 2017-5115,

 5     2017-6646 and 2017-6824.  The matters were assigned for

 6     mediation under our new mediation program, and Judge

 7     Feeney has undergone a lengthy mediation process -- I

 8     know because the mediation process takes place right

 9     outside of my office -- that Ms. Barnes, her

10     representatives, and Rhode Island Public Transit

11     representatives were here this morning and have worked

12     diligently to reach a resolution.  So I have been asked

13     by the parties to take the bench and essentially go on

14     the record to set forth the terms of what I believe has

15     been a resolution of not only the Workers' Compensation

16     claim but the various other claims that are pending

17     against Rhode Island Public Transit Authority filed by

18     Ms. Barnes.

19              With that being said, I'm going to ask who is

20     going to be the spokesperson who's going to set forth the

21     terms of the settlement on the record.

22              MR. DENNIS:  I think Sonja.

23              THE COURT:  If you can just identify yourself

24     for the record.

25              MS. DEYOE:  Sure.  Attorney Sonja Deyoe.
```

4

1    Your Honor, as I understand it, we have a global

2    settlement for $200,000 with a $25,000 MSA or up to

3    $25,000 MSA.  I understand that has to be subjected to

4    board approval from RIPTA.  $50,000 of that settlement if

5    approved would be through Comp., the other $150,000 would

6    be through the discrimination claim.  There is a

7    discrimination claim that is pending over with the United

8    States District Court.  Any fee that is paid on this

9    matter will be through that discrimination claim.  The

10   fee that's been agreed on that will be split between

11   Attorney Dennis and myself is $40,000.  That gives the

12   remainder of $110,000 that will be paid out to Ms. Barnes

13   in addition to the $50,000 from the Comp. funds.  That

14   $110,000 will have to be paid out both in wage format and

15   1099 format.  That percentage has not been agreed to yet,

16   but we will be contacting counsel with respect to that.

17              THE COURT:  Okay.  The 25,000 MSA, is that

18   coming out of the 200 or is that an additional 25?

19              MS. DEYOE:  It's an additional.  It is up to

20   that amount, could be less.

21              THE COURT:  Based on the analysis of a third

22   party --

23              MR. MANCINI:  I can speak a little bit more

24   to that, Your Honor.  Essentially, the Workers'

25   Compensation lump sum that will be proposed will be a

1   $50,000 settlement on the February 12, 2015 injury.  In

2   addition to the $50,000, we will fund an MSA, but our

3   settlement is conditioned upon that MSA being less than

4   $25,000.  We will get the MSA through Carr Allison

5   immediately.  It's also conditioned from board approval

6   by RIPTA.  In the event that the MSA is returned and is

7   above $25,000, we may need to revisit the terms of the

8   global settlement.  So in a sense, we have a settlement

9   agreement in principle subject to those conditions.

10  There are a number of other prior unrelated Workers'

11  Compensation claims that Ms. Barnes has from her time at

12  RIPTA.  We'll also look to resolve those through one

13  dollar nominal lump sums or D and Ds as the case may be.

14                  THE COURT:  Gotcha.

15                  MS. DEYOE:  There's also an agreement that in

16  good faith there will be a $3,000 advancement to Ms.

17  Barnes.

18                  THE COURT:  How much?

19                  MS. DEYOE:  $3,000, which mechanically I

20  understand would be attributed to the loss of use

21  petition that's pending before this Court, and I don't

22  have any idea what that number is.

23                  MR. MANCINI:  I'll just speak a little bit

24  further to that, Your Honor.  The amount was keyed to the

25  loss of use petition.  The mechanism will be a mutual

1    agreement.  $3,000 will be paid to Ms. Barnes as an

2    advance against the settlement and considered as such in

3    the event that the settlement ultimately comes to

4    fruition as approved by the Court.  In the event that it

5    falls apart per the mutual agreement, as a credit against

6    future indemnity benefits.

7              THE COURT:  Okay.

8              MS. DEYOE:  The only thing I was going to add

9    is that with the federal matter, we do have a hearing

10   that's upcoming with the court.  I have agreed to contact

11   the court to continue that with an attempt to avoid

12   further cost for RIPTA.

13             THE COURT:  Who's hearing the federal matter?

14             MS. DEYOE:  Judge McConnell, I believe.

15             THE COURT:  If Judge McConnell needs to

16   contact me regarding the settlement or certainly where

17   the case is at in the Workers' Comp. Court, please feel

18   free to have him do so.

19             MS. DEYOE:  I will.

20             THE COURT:  Is that it?

21             MS. FOLGER-HARTWELL:  May I address the Court

22   briefly?

23             THE COURT:  You may.

24             MS. FOLGER-HARTWELL:  Jillian Folger-Hartwell

25   for RIPTA.  The settlement agreement in relation to the

7

1   discrimination case that is pending in Federal Court will

2   have the usual provisions in it.  That will include full

3   release of all claims, no reapplication, no rehire, all

4   of the RIPTA confidentiality and nondisparagement

5   provisions.

6          THE COURT:  So in lieu of that, I take it

7   that as part of this settlement, the reinstatement

8   petition will be withdrawn with prejudice?

9          MR. MANCINI:  It could be withdrawn with

10  prejudice or alternatively a pretrial order can enter

11  denying it.  I think the same result is achieved.

12         THE COURT:  My only issue with the pretrial

13  order entered denying it is with the five-day claim for

14  trial.  So if we're going to try to do this in one day,

15  we will be better served withdrawing it with prejudice.

16         MR. DENNIS:  My client just mentioned one

17  thing to me, Judge.  May we approach the bench, go off

18  the record?

19         THE COURT:  Sure.

20     (OFF-THE-RECORD BENCH DISCUSSION)

21         THE COURT:  So the knee claim will be settled

22  for a dollar, and there will be a waiver of the lien as a

23  result thereof.

24         MR. DENNIS:  Yes, Your Honor.  So there would

25  be a waiver of the third-party lien with regard to the

1    injury of her left knee or --

2             MS. BARNES:  Right knee.

3             MR. DENNIS:  Right knee.

4             MS. DEYOE:  I just want to be clear on one

5    thing just to make sure it's on the transcript for, you

6    know, 20 years from now if this comes back up.  My

7    understanding is my client is entitled to a retirement

8    benefit and that I have been provided with documentation

9    that establishes the amount of that benefit which is in

10   the neighborhood of $600 a month that she be entitled to

11   when she turns 62 years of age.  I just want to confirm

12   that on the record.  Is that correct, Ms.

13   Folger-Hartwell?

14            MS. FOLGER-HARTWELL:  Your Honor, can I have

15   moment to speak with my client?

16            THE COURT:  Before you speak with your

17   client, I'm not sure what the retirement benefit is, and

18   if it's a sticking point, we're not sure of the amount,

19   then perhaps a stipulation can be made that any claim she

20   may have to retirement benefits is not affected by any of

21   these settlements.  That may -- in general, I'm not sure

22   if it satisfies both sides, but without getting into the

23   nitty-gritty of what the exact amount is for retirement

24   benefits.  I'm not sure if that satisfies your concerns.

25            MS. FOLGER-HARTWELL:  I think that's a good

1    suggestion.  If I can speak with my client.

2                THE COURT:  Would that work for you, Sonja?

3                MS. DEYOE:  I'm not certain it would.  We've

4    had a representation basically of what that calculation

5    is.

6                THE COURT:  Okay.

7                MS. DEYOE:  I just want to make certain of

8    two things.  One is that she is entitled to retirement at

9    the age of 62, and that she can rely on that calculation.

10               THE COURT:  So why don't we have both parties

11   speak?

12                    (BRIEF RECESS)

13               THE COURT:  So let's go back on the record to

14   make sure we have an understanding.  I think it's

15   stipulated by all sides that any pension rights that Ms.

16   Barnes has are not affected by any of the settlements or

17   agreements that have been reached here today as a result

18   of the mediation and settlements of the parties.  Am I

19   correct?

20               MS. FOLGER-HARTWELL:  Yes, Your Honor.

21               MS. DEYOE:  Yes, Your Honor.

22               THE COURT:  Any other things that need to be

23   placed on the record?

24               MR. MANCINI:  I'd just like to thank Judge

25   Feeney for his efforts.

shall simultaneously serve in more than one office.  Officers shall be eligible to succeed

themselves in office without limitation on the number of terms.  A vacancy in any office

because of death, resignation, removal, disqualification, or otherwise may be filled by

vote of the members for the unexpired portion of the term.

     3.    **Authority and Duties.**

     **(a)**    **Chair.**  The Chair shall supervise and conduct the business and

affairs of the Authority. The Chair shall preside at meetings of the Authority and shall

exercise the powers and perform the duties set forth in these Bylaws and such other

duties as usually devolve upon the presiding officer of a deliberative body.

     **(b)**    **Vice Chair.**  In the absence of the Chair, the Vice Chair shall

perform the duties of the Chair. The Vice Chair shall perform such further duties as shall

be from time to time assigned to him or her by the Chair.

     **(c)**    **Secretary.**  The records of all business transacted at each meeting

shall be kept under the direction and supervision of the Secretary. The Secretary shall

have such further powers and shall perform such further duties as shall be assigned to

him or her by the Chair, the Vice Chair, or the members.

     **(d)**    **Treasurer.**  The Treasurer shall be responsible for and shall keep

all financial reports and records and other financial documents of the Authority, and

shall be the Chair of the Finance Committee. The Treasurer shall request and oversee

staff reports to the members regarding the finances of the Authority.

     4.    **Signing of Instruments.**  All contracts, instruments, and other documents

shall be executed by the Chair or the Vice Chair on behalf of the Authority unless other

provision shall be made by special vote of the members, these Bylaws, or shall be required by law.

5.      **Chief Executive Officer and Consultants**.  The members may from time to time hire a Chief Executive Officer, who shall have all of the powers and duties of the position of General Manager, as that term is used in applicable law, including but not limited to the RIPTA Enabling Act, Title 39, Chapter 18 of the Rhode Island General Laws.  The Chief Executive Officer shall be responsible for the day-to-day operation of the Authority pursuant to the governing policies and limitations established by the members. The members may also from time to time hire one or more consultants, including without limitation, legal counsel and accountants, as they shall deem appropriate to assist the members and officers to effectuate the purpose of the Authority.

6.      **Nondiscrimination.**  The Authority shall comply with the provisions of Chapter 5 of Title 28 of the General Laws of Rhode Island (the "State Fair Employment Practices Act"). The Authority shall not refuse to hire any applicant for employment, or discharge or discriminate against any employee, because of his or her race, color, religion, sex, handicap, age, or country of ancestral origin, or otherwise engage in any unlawful employment practice under the State Fair Employment Practices Act.

## ARTICLE V

## MEETINGS

1.      **Place of Meetings.**  All regular and special meetings of the Authority shall be held at the principal offices of the Authority and at such time as shall be stated in the notice of such meeting; provided, however, that any regular or special meeting of the

Authority may be held at such place within or without the state of Rhode Island as the
Chair, Vice Chair, or the members of the Authority may determine necessary or
appropriate for such meeting.

      **2.**      **Regular Meetings.**  The members shall hold regular meetings from time
to time and at least once in each calendar quarter at the call of the Chair or Vice Chair.
The members shall hold a regular meeting during the month of April in each year for the
purpose of electing officers and for the transaction of such other business as may come
before the meeting.

      **3.**      **Special Meetings.**  Special meetings of the members for any purpose or
purposes may be called by the Chair or the Vice Chair. The Chair or Vice Chair shall be
required to call a special meeting upon the written request of at least two (2) members
of the Authority at a time not later than fourteen (14) days after receipt by the Chair or
Vice Chair of such request. Any such request shall state the purpose or purposes of the
proposed special meeting.

      **4.**      **Public Meetings.**   The Authority shall comply with the provisions of
Rhode Island General Laws Sections 42-46-1 et seq., the "Open Meetings Act," or any
successor statute, as in effect from time to time.  The Authority may from time to time
promulgate such other reasonable rules and procedures not inconsistent with the
provisions of the Open Meetings Act as it determines may be desirable regarding the
conduct of the Authority's meetings and the attendance of representatives of the media
and the public.

5.    **Notice of Meetings.**

(a)    **To Members of the Authority.**   Written notice of each meeting, whether regular or special, stating the place, day and hour of the meeting, and a copy of the agenda for such meeting, or in the absence of such agenda a written statement of the purpose or purposes of the meeting, shall be given by or at the direction of the Chair, the Vice Chair or Secretary, to each member of the Authority by depositing the same in the United States mail, postage prepaid, not later than the third day prior to the date of such meeting. If the Chair or Vice Chair shall determine that the holding of a meeting is of an emergency nature, such notice may be given by facsimile transmission with confirmation of receipt sent to each member, not less than twenty-four (24) hours prior to such meeting, or by actual delivery of such notice to each member not less than twelve (12) hours prior to such meeting.

(b)    **To The Public.**   Written public notice of all regular scheduled meetings shall be given at the beginning of each calendar year by or at the direction of the Chair, the Vice Chair or the Secretary.  Supplemental written public notice of any meeting shall be given within a minimum of forty-eight (48) hours before the date. This notice shall include, in addition to date, time and place, a statement specifying the nature of the business to be discussed. Written public notice shall include, but need not be limited to, posting a copy of the notice at the principal office of the Authority, or if no principal office exists, at the building in which the meeting is to be held, and in at least one other prominent place within the state of Rhode Island. Nothing contained herein shall prevent the Authority from holding an emergency meeting, upon an affirmative vote of the majority of the members, when the meeting is deemed necessary where the

public welfare so requires. If an emergency meeting is called, a meeting notice and agenda shall be posted as soon as practicable.

      6.    **Quorum.**  Four (4) members of the Authority shall constitute a quorum, and the affirmative vote of a majority of the members present and voting shall be necessary for any action taken by the Authority. No vacancy in the membership of the Authority shall impair the right of a quorum to exercise all the rights and perform all the duties the Authority.  If a quorum is not present, the members then present shall have the power to adjourn the meeting from time to time, without notice other than an announcement at the meeting, until a quorum shall be present.  If and when any such adjourned meeting resumes with a quorum present, any business may be transacted which might have been transacted at the meeting as originally called. If the adjournment is for more than ten (10) days, a notice of the adjourned meeting shall be given to each member. Any action to be taken by the Authority may be authorized by resolution approved by a majority of the members present at any regular or special meeting at which a quorum is present.

      7.    **Voting.**  Each member shall be entitled to one vote upon each matter submitted to a vote at a meeting of members of the Authority.

      8.    **Waivers of Notice.**  Whenever any notice is required to be given to a member of the Authority under the provisions of the laws of Rhode Island or of these Bylaws, a waiver thereof in writing, signed by the member or members entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice. Attendance of a member of the Authority at a meeting shall constitute a waiver of notice of such meeting, except when the member attends the

meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.

      **9.**    **Agendas.**  Except as hereinafter specifically provided, the agenda for each meeting of the Authority shall be prepared by the Chair or Vice Chair. The Chair or Vice Chair shall include in any such agenda any matter which the Authority has previously voted to include thereon, and any item requested by a member of the Authority, in writing, delivered to the Chair or Vice Chair, not less than ten (10) days prior to the date of any such meeting. With the consent of a majority of the members of the Authority, a matter not on the agenda may be added to the agenda at any regular or special meeting of the Authority for informational purposes only and may not be voted on except where necessary to address an unexpected occurrence that requires immediate action to protect the public or to refer the matter to an appropriate committee or to another body or official.

      **10.**    **Telephone Meetings.**  Any one or more members of the Authority may participate in any meeting of the Authority by use of electronic communication or telephone communication while on active duty in the armed services of the United States. Any one or more members of the Authority who has a disability as defined in Chapter 87 of Title 42, and has obtained a waiver from the Governor's Commission on Disabilities pursuant to Section 42-46-5(b)(3) of the Open Meetings Act and the rules and regulations promulgated by the Governor's Commission on Disabilities may participate in any meeting of the Authority by use of electronic communication or telephone communication. Participation by such means shall constitute presence in person at such meeting.

## ARTICLE VI

## COMMITTEES

1.    **Finance Committee.** There shall be a finance committee of the Authority. The Treasurer shall be the chair of the committee. The Chair of the Authority shall appoint other persons, both members and nonmembers of the Authority, as he or she deems appropriate. The duty of the finance committee, which shall meet quarterly, shall be to monitor the finances of the Authority on behalf of the Authority and to report and to make recommendations as appropriate to the Authority about financial matters.

2.    **Establishment of Committees.**  The Authority may establish such other committees as it deems necessary for the proper carrying out of its functions. The Authority shall determine the size, purpose, and constituency of each such committee. Members of each such committee and the chair thereof shall be appointed by the Chair or Vice Chair to serve until the next succeeding election meeting and thereafter until their respective successors are appointed. Any vacancy on a committee resulting from death, resignation or otherwise shall be filled by the Chair or Vice Chair for the unexpired portion of the term. Minutes of the meetings of each committee shall be prepared and shall be filed promptly with the Secretary. Each committee shall report from time to time to the Authority with respect to its recommendations.

## ARTICLE VII

## INDEMNIFICATION

A member of the Authority shall not be personally liable to the Authority for monetary damages for breach of the member's duty as a member, except for liability for: (i) any breach of the member's duty of loyalty to the Authority; (ii) acts or omissions

not in good faith or which involve intentional misconduct or a knowing violation of the law; or (iii) any transaction from which the member derived an improper personal benefit.  The Authority shall indemnify any person who is or was a member, officer, employee, or agent of the Authority, or is or was serving at the request of the Authority as an officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, in the manner and to the fullest extent provided by applicable law, if: (i) he or she conducted himself or herself in good faith; (ii) he or she reasonably believed, in the case of conduct in his or her official capacity with the Authority, that his or her conduct was in its best interest, and in all other cases, that his or her conduct was at least not opposed to its best interests; and (iii) in the case of any criminal proceeding, he or she had no reasonable cause to believe his or her conduct was unlawful.

## ARTICLE VIII

## FISCAL YEAR

The fiscal year of the Authority shall commence on July 1 and end on June 30 of each year, unless otherwise from time to time determined by the Authority.

## ARTICLE IX

## SEAL

The seal of the Authority shall, subject to alteration by the Authority, consist of a flat-faced die with the name of the Authority and the words "CREATED 1964" cut or engraved thereon.

- o Collective bargaining or litigation
- o Investigative proceedings regarding allegation of civil or criminal misconduct
- o Grievances
- o Votes in Executive Session
  - o Must be disclosed upon reconvening in open session unless it jeopardizes strategy, negotiation or investigation
  - o Once that jeopardy does dissipate then there is an affirmative obligation to disclose out the vote
- o Annual Notice filed at the beginning of each year and the supplemental notice 48 hours prior to each meeting
- o Agenda
  - o Must be posted at principal office of public body
  - o Posted at one other prominent place within the governmental unit (Police Dept, library, etc.)
  - o Must be filed electronically with Secretary of State
  - o Annual notice must include dates/times and places of regularly scheduled meetings and available to the public upon request
  - o Supplemental Notice must include
    - Date
    - Time
    - Location
    - Date agenda was posted
    - Nature of business to be discussed
  - o Can amend agenda-for informational purposes only, except if it is an emergency
- o Minutes
  - o All public bodies must keep written minutes
  - o Only 4 things must be included
    - Date/time /place
    - Members present/absent
    - Record of votes
    - Relevant information that the member of the public body requests
  - o Unofficial minutes must be available within 35 days or at the next regularly scheduled meeting, whichever is earlier
  - o Sealed Executive session minutes are an exception to this
  - o Motion to extend time to file minutes can occur if necessary
  - o Must file all minutes on the SOS website within 35 days of the meeting
- o Nothing requires a public body from having public comment
  - o Suggests limiting peoples' time to speak
- o Convene upon majority vote to handle unexpected occurrences that need immediate attention to protect the public-but if it can wait 48 hours then it is not an emergency
- o Complaints can be filed if someone feels there has been a violation through the AG's office or through the courts

Questions:

4

Pension Board-This is a lot of personal information-does this have to be public?
- Benefits are public records
- There can be some items that could be confidential and the Board would then convene into Executive Session

Complaints that happen a lot
- Lack of specificity on agenda's is the biggest one

## Code of Ethics                                    Jason Grammit

Mr. Grammit states he is from the RI Ethics Commission. There is a small staff. Twelve people work there with a board of nine people. A big part of what he does is the education. As too much time goes by, a reminder of conflict of interest procedures is important.

The goal is not to go over every code of ethics, however to talk about conflict of interest generally and speak about a few specifics, like how to recuse properly and gifts with the upcoming season. Please ask questions along the way.

The Commission is a state agency; however, it is different than every other state agency in that it's not created by statute. It was up until the late 1980's and the state constitution was amended to require the establishment of an independent and nonpartisan ethics commission that would have jurisdiction over all state and municipal elected officials, appointed officials and state employees.

The constitution requires the ethics commission to adopt a code of ethics. They wrote the code and enforce it through the Administrative Procedures Act. They educate about the code of ethics through going out to talk to people or just by answering questions if people call in.

Over the phone is considered an informal guidance and is not binding on the Ethics Commission, however, if someone needs formal advice then a written advisory opinion can be given and it is legally binding.

A general mission statement was created: the citizens of Rhode Island believe that every public official or employee should hold themselves to the highest standards of ethics conduct and avoid even the appearance of impropriety.

Today, he will be talking about the lowest standards someone can get by with, without breaking the law; however, there are much higher standards that one could hold him/herself to.

Conflicts of Interest:
- Definition of conflict of interest: Having a conflict of interest does not violate the Code of Ethics. What violates the code is not doing anything about it. It is an intersection of public duty with private life
- If it is reasonably foreseeable that some decision that you are helping to make on the board would have a financial impact on you or on a member of your family or on your employer or on a business entity or organization you have a business relationship with
  - Business association where you hold a leadership position in that entity
  - Another state agency or municipal agency would not be a business association-you can only have a business association with a private entity

5

- o It still may make sense to recuse from decisions for the public perception, however the code does not prohibit one public entity from helping another public entity
- o Board Members are allowed to have an opinion
- o Class Exception: even though you or someone you know is being impacted by a decision, and that impact is on a very large class and everyone in the class is affected the same way-generally you could participate in these situations
- o Must be fair and objective when making decisions
- o Open Meetings Act Agenda-should look at each item of agenda-If I participate in this item...is it reasonably foreseeable that there would be a financial impact on me, a member of my family, my private employer or a business associate.
  - ▪ Generally, knowing if it impacts you is easy.
  - ▪ Family is everyone out to your first cousins, including your spouse's family.
  - ▪ Blood, Marriage or Adoption
  - ▪ Talk amongst yourselves if you think there may be a conflict of interest
  - ▪ Hearing from other people can help
  - ▪ Can call Ethics Commission for advice
- o If you decide that you need to recuse
  - ▪ Notify the chair of the board or someone who will make sure that a quorum would still be present
  - ▪ When that agenda item gets called-that is the time to recuse-not at vote time
  - ▪ If you are the Chair-you do not continue to run meeting-must pass the gavel and take it back once the agenda item is over
  - ▪ Do not talk or give your opinion on agenda item
  - ▪ There is no written rule on whether you need to leave the room during the agenda item-Jason's rule is to imagine you are a member of the public-not on the board at that moment-so you are to follow the same rules as the public

Gifts:

- Anyone who has a financial interest in what the Board does is considered an interested person under the code. It is to those people that they worry about.
  - o Never take any money, not even a penny
  - o Gifts-rule is if the value is more than $25.00 cannot accept it
  - o Ask yourself whether there is an appearance of impropriety
  - o Lunch-value of lunch under $25.00, whether you are a speaker or not

**Overview RIPTA's rules and regulations** *Very Important* Christian Capizzo

*The director of the Department*

- RI General Law Sec. 39-18-2: Enabling legislation *of administration shall be*
  - o The Board will administer their duties faithfully and impartially *responsible for the enforcement*

*RIGL 39-18-2 Authority Created*

*(J) The Authority Shall Conduct a training course for Newly appointed and qualified members. The provisions of Chapters 42-46, 36-14 and 35-2*

*the provisions of this subsection. The authority's rules and regulations*

Exhibit

E

*Amended and Restated: November 15, 2010*

**AMENDED AND RESTATED**

**BYLAWS**

**OF**

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**

## ARTICLE I

## ACT CREATING THE AUTHORITY

1.    **Name and Authority**.  The Rhode Island Public Transit Authority, a body corporate and politic (the "Authority"), has been established pursuant to the provisions of Title 39, Chapter 18, of the Rhode Island General Laws (as from time to time amended, the "Act").  These Bylaws, the powers of the Authority and of its members and officers, and all matters concerning the conduct and regulation of the business of the Authority, shall be subject to the provisions of the Act.

2.    **Purpose**.  The purpose of the Authority is to: (i) provide public transit services that meet the mobility needs of the people of the state of Rhode Island, including the elderly and disabled; (ii) increase access to employment opportunities; (iii) connect different modes of public transportation, including rail, air and water services; (iv) promote community design that features public transit services as defining elements of a community; (v) facilitate energy conservation and efficient energy use in the transportation sector by providing public transit services; (vi) mitigate traffic congestion and enhance air quality; (vii) own and operate a mass motor bus, water, or rail

passenger transportation system; and (viii) manage, coordinate, and perform vehicle maintenance for a state paratransit system.  In connection with the performance of the purposes set forth in this Article I, Section 2, the Authority shall endeavor at all times to cooperate with any and all state and local governmental authorities, including without limitation, the Rhode Island Department of Transportation, to provide the people of the state of Rhode Island an accessible, comprehensive, effective state-wide system of vehicle maintenance and mass transit.

## ARTICLE II

## OFFICES

1.    **Principal Office.**  The principal office of the Authority shall be at 265 Melrose Street, Providence, Rhode Island 02907.

2.    **Other Offices.**  The Authority may have offices at such other places within Rhode Island as the Authority may from time to time designate.

3.    **Location of Records, Books and Accounts.**  Except as otherwise required by resolution of the Authority, or as the business of the Authority may require, all of the books, records, and accounts of the Authority shall be kept at the Authority's principal office.

## ARTICLE III

## MEMBERS OF THE AUTHORITY

1.    **Number and Membership.**  The Authority shall consist of eight (8) members.  Seven (7) members shall be appointed by the Governor with the advice and consent of the Senate for a term of three (3) years.  One member shall be the Director of the Department of Transportation or his or her designee who shall serve as an ex

officio member. Any member of the Authority shall be eligible for reappointment. In the event of a vacancy occurring in the membership of the Authority the Governor, with the advice and consent of the Senate, shall appoint a member for the unexpired term.

2.    **Management.**    The affairs of the Authority shall be managed by the members. The members shall have such powers as are expressly conferred upon them by the Act, these Bylaws, and other applicable law.

3.    **Reimbursement for Expenses.** The members of the Authority shall receive no compensation, but may receive reimbursement for necessary expenses incurred in the performance of their official duties in accordance with the Act.

## ARTICLE IV

## OFFICERS

1.    **Number.**    The officers of the Authority shall be a Chair, Vice Chair, Secretary, and Treasurer. Officers shall be members of the Authority. The members of the Authority may from time to time create such additional offices and assistant offices as they deem appropriate. Additional and assistant officers need not be members of the Authority.

2.    **Election and Term.**    The members of the Authority shall elect the Chair, Vice Chair, Secretary, and Treasurer, and may elect or appoint any additional and/or assistant officers, at the regular meeting in April each year, and each officer shall hold office until his or her successor shall have been duly elected and shall have qualified, or until his or her earlier death, resignation, or removal. The members shall have the right, with or without cause, to remove from office any officer at any meeting, regular or special, duly called and held by action of a majority of members present. No officer

# INCIDENT REPORT

ON AUG. 6 TH 2010 I WAS WALKING DOWN LONGFELLOW ST TO MELROSE ST

AS I GOT TO THE CORNER I WITNESSED A DRIVER TRYING TO TURN ON TO LONGFELLOW ST

FROM MELROSE ST

THE NEXT THING I SAW WAS MICKEDA BARNES BOY FRIEND MAKING HAND GESTURES AND THE DRIVER VERY UPSET

AT THIS POINT WORDS WERE BEING EXCHANGED .TOM SHEA WAS ON THE

FRONT STAIRS OF THE BUS SAYING COME ON IN HERE I'LL BREAK YOU IN HALF.

I THEN APPROACHED THE BUS TOLD TOM TO HAVE A SEAT AND IT WASN'T WORTH IT I GOT IN

THE DRIVER SEAT AND SOMEHOW GOT AROUND THE PARKED CAR THAT WAS IN A NO PARKING

ZONE    I DROPED HIM OFF AT THE CORNER OF LONGFELLOW ST @ LONGFELLOW TERR.
ON MON . AUG 9TH MICKEDA BARNE HAD HER CAR PARKED ON THE CORNER OF LONGFELLOW ST
AGAIN .MAKING IT IMPOSSIBLE FOR A BUS TO GET BY.

UTILITY FORMEN

J. GRECO

8.20.10

Words that are used by drivers

should be role models

✓ ✗ Tom Shea ( 743 - 6726 )   8/23/10   316-2024

✗ Joe Greco  (Foreman)  Main home  (602)  ( 943-0376 )  number not in service
✓ Tom Gorton (driver)   cell 588-1247
                        397-8456
✓ ✗ Ray Lee's wife   ( Ihie )   Ichal Medonell   954-6970   L/m @ 11:00am 8/23
         # 5857                             714~0151 (home)

Charlene's son                                          got out of the
                                                        car - used the
                                                        "N" word
✓ ✗ Barbara Page   (Ee)   ~~333-6470~~   4/14   calling Mahceda Masure
                        11:00am - no answer -
                        4:09 p.m

Tom Gorton:
 - antagonizing Tom big time
 - husband no business on the property

~~Keith Dimetty~~ ~



Commision of Human Rights

8-6-08

I came to your office for help. I work for Ripta better known as Rhode Island Transporation Authority. My Name is Mikedic Barnes I was hire November 26, 2009 at the time Mrs Beverly Scott was in charge. Since Mrs Scott left the people who ran Ripta say and do and talk about the workers And I notice there is alot of double standards and a. Who you know and who you sleeping with. My first encounter was with a clerk named Scott who for the whole Summer Called my house harassing my husband and myself And it wasn't until I caught him on the phone Scott told me if I told anyone I would be the first one he fires when he becomes night foreman. Scott Continue Until my husband tried to fight him because he kept sliding threpten me and my husband we had a meeting with Jimmy Doran and my steward and Union Rep Steve Farrell. There is a copy of what kind happen in my folder of Right and my copy forward to Steve Farrell of the Union.

1.

I was told to forget Scott and Continue
On with my work I was stress and mad
but I was told as a black woman who
is the only one working while my husband
is out of work disable. Continue to put
up with the job because it pays good
money. A couple of months later in the
winter time of 07 I was told by
Jimmy Dean I was out of Uniform for
wearing a black turtle neck. I spoke with
my Union Rep Fezzy he to- was worried about
wearing his turtle neck. but a week later
one of our co-worker Diana Cena in with
a white turtle neck and No one said any
thing to her so I told her how I got
in trouble and She Said its who you sleep
with in here. It is just not who you sleep
with in here. Its also who you know and
your skin color and gender here the white
woman bus Drivers can argue and complain
about job conditions but if your a black
bus Driver and we Complain we are told
as black woman we are lucky to have
a good paying Job and should not complain
or Curcus because the economy is bad.
I was again told by one of my

Supervisor over the bus phone they are
bragging of being king but I could not
tell which supervisor it was but it was
a call directed to dispatch. There are
some days when I am very depressed
and cry even when I am driving the
city bus when my bus is broken I
sometime hesitate calling it in to dispatch
because they are always accusing me
of breaking there buses I have been
to Jimmy Dean my boss and Bob Jameson
the assistant General Manager about
all issues I dont see it changing for the
better but when asked by other drivers
of color whats wrong I tell them and
they have similar stories, and tell me
that I am not in there click I ask
Whats that? There are groups of Drivers
Supervisors or managers and they sit
around talking about Certain Individuals
always. I feel that they do a little bit
better with me because I own my
house I am the only one working and
I only have one Income so I come to
work everyday with my back against
the road and I am tired of it

④

Management Need Change around here
Supervisors Need Change around here
Some Drivers too .. but I am Not the
Only black woman its happening to but
I dont even Know if I am the first
to Complain about my workin Conditions
but I always have a broken bus there
are always making Jokes about my
husband Not working and it is very
Stressful and they use that against
Me to get what they want and me to
do what they want me to without
Complaining about there broken buses
and equipment. I had a Couple of
Workers Comp Claims they Complain
about that but I dont have any Control
that I get hurt on ther broken buses.
1st pinch Nerve/Spin Neck   broken Steering
on bus
2nd workers comp   a heroin addict was bleedn
and accidently spit blood in my Right Eye
3rd workers comp   pa Microphone System
Came down in front of a Supervisor and Knock
three teeth loose Where the teeth had to
be Replace
4th workers Comp   Another Spram Neck and
Shoulder from New buses with Duplicating

and Head Stearns. I feel like they are setting me up with all these accidents and workmans comp injuries you would think they would make Sure I have a safe vehicle to drive / 6+ years right after my teeth were taken out for replacement. I had days where the pa system was told up by electrics and I let my Union reps know about that and Bus Number Right and I don't feel that I should have to be a curtain color race or Gender or be force to sleep with management to get a safe vehicle to do my job and deal with the public. I am being harassed and discriminated against in this job but I am the only one working in my house and I do own my house and if I lose these Kids but I should not have to work in bad conditions like this I don't even want to wake up to go to this job I do and I am tired of getting hurt at this Job.

Nickida Bounao.
Aug 6, 2008

I am on the Stupid list along with other black drivers. Manny and a couple of other Supervisors told me that I was on it. When I ask a white driver about the Stupid list they ask me what am I talking about?

the Supervisiors tell me I dont need a Microphone or pa that works because black People have big mouths.

Meekeda Barnes
Aug 6, 2008



*Very Important* on page 6
Ripta's
Rules &
Regulation

# RHODE ISLAND PUBLIC TRANSIT AUTHORITY

## BOARD OF DIRECTORS ORIENTATION

## MINUTES OF Wednesday, October 28, 2015 ORIENTATION

**Board Members Present:** Mayor Scott Avedisian, Chairperson; Director Peter Alviti, Stephanie Ogidan Preston, Princess Sirleaf Bomba, Margaret Holland McDuff and Mark Susa

**Also Present:** Raymond Studley, CEO; Christian Capizzo, Outside Counsel; Benjamin Salzillo, In-House Legal; Victoria Catalano, Paralegal and Marie DiToro, Recording Secretary.

Open Meetings Act & Access to Public Records Act    Lisa Pinsonneault

**Public Records Act**
Ms. Pinsonneault states that the Department of Attorney General has jurisdiction on both the Open Meetings Act and Public Records Act such that if a citizen believes one of these has been violated they may file a complaint with the Attorney General's office and they will investigate it.  If they determine the facts are warranted they can file a civil lawsuit.
In 2013 there was a significant amendment to the Access to Publics Records Act (APRA) that requires every employee that has authority to grant or deny access to records must be trained annually. Training can occur either through live training or video training that they have on their website.

When a public request comes in the first thing someone should ask is does the record fall in one of the 27 exemptions.  There are 27 exemptions found in the act.  If it falls within one of the 27, it is exempt and it does not need to be released.
If the document doesn't fall in one of the 27 exemptions then a balancing act is performed, does the individual's right to privacy outweigh the public's interest in disclosure of this document.

Is it a public body, the definition is rather broad.  They still see public bodies deny request for records because they did not create the record and that is simply not a prerequisite.  If the agency has or maintains a document a citizen has the right to request it from the agency.

There is no duty to answer questions under APRA, however if there is a source document that is responsive to that inquiry then that needs to be provided.

1

<u>Exemptions:</u> Ms. Pinsonneault goes through a few exemptions.

- Individually identifiable records are exempt but only if the disclosure is clearly an unwarranted invasion of personal privacy under the Freedom of Information Act
- Preliminary drafts, notes, impressions, memorandum working papers and work product
  - o If any of these documents are presented at a public meeting they do become public
- Investigatory records of public bodies pertaining to possible violations of statute rule or regulation, other than records of final action taken
- Minutes of the meeting that are not required to be disclosed are properly sealed executive session minutes
- Correspondence of and to elected officials with or related to those they represent in correspondence of and to elected officials in their official capacity
- Reports or opinions and statements that are required to be kept confidential by federal law regulations, state law or rule of court

<u>Procedures:</u>

- Every public body must have written procedures regarding their access to public records
  - o Cannot require written request if it is available under APRA or prepared for or readily available for the public
- Must include designated public records officer or unit
- How citizen can make a request
- Where the citizen can make a request
  - o Can have a form, but cannot require them to put it on specific form
- Must be on website or otherwise readily available
- When a request comes in, one of three things must occur within ten business days
  - o Provide the records within 10 days
  - o Extend the time for good cause for an additional 20 business days
  - o Or deny access to records
    - ▪ Must provide in writing the specific reason for the denial
    - ▪ Must indicate the procedure the citizen has to appeal the denial
- Prior to providing records upon request if citizen asks can provide cost estimate of search and retrieval and copies-must reduce or waive cost upon court order
- Cannot ask the person to identify themselves or provide a reason for the request
- Public Body can charge for cost
  - o $0.15 per copy on common or legal size paper
  - o $15.00 per hour for search and retrieval, first hour free of charge
  - o No more than the actual reasonable cost for electronic files
- Electronic, Fax or by mail requests are acceptable
- No requirements to reorganize, compile or consolidate data that is not maintained
-

<u>Complaints:</u>

2

- If AG's determine there was a reckless, willful or knowing violation they will file a civil lawsuit

<u>Questions:</u>

Are the presentations to the Board at the meetings public documents and Ms. Pinsonneault responds yes, unless it is in Executive Session.

If the Board members receive a request from the public are they mandated to respond and Ms. Pinsonneault responds no because of the procedure RIPTA has in place and posted on the website.
Board Members can forward the request to Mr. Salzillo to respond.

If the media asks questions at a press conference and the staff do not have an answer at that time, does the clock start at that time under Public Records Act or must they submit request in writing.

Ms. Pinsonneault responds that the staff should clarify at that time if it is a press inquiry or an APRA request. The clock starts at the time the application is submitted due to the fact RIPTA has a procedure in place.

**Open Meetings Act:**
Ms. Pinsonneault states that the Open Meetings Act does not apply to all situations. It is triggered if three elements are met.
- A quorum of a public body must have a meeting.
Ms. Pinsonneault explains the definition of public body, quorum and meeting under the open meetings act.
- Must be careful with a rolling or walking quorum
- Can only email members of public bodies to schedule a meeting
- There is no teleconferencing allowed in the State of Rhode Island
  - Only if on active duty or a disability that cannot otherwise participate and is subject to the Governor's commission on disability
- Mr. Studley likes to keep the Board informed between meetings-he sends an email with a disclaimer that states- **do not respond-this is only an update**

<u>Executive Session:</u>
- 10 reasons that allow executive session
- Go into executive session with a roll call
- Shall be limited to matters allowed
- Vote of each member in closed meeting must be recorded in the minutes
- No other topic is allowed
- Appropriate reasons:
  - Job performance, character physical or mental health of persons, does not only mean employees-consultant-hiring a new position-potential candidate-must provide advance notice to him/her and give them the option to require it happens in open session or remain in executive session

3

artment Case #: _____

RHOI                    TRANSIT AUTHORITY
EMF                     INCIDENT REPORT

fic    Incident
one)

BASIC INFORMATION: Please Pri _____

Operator Name: Robert f Shurldon         Payroll #: 5035
Bus #: _____ Run #: _____ # of Passengers: _____ # Of Courtesy Cards: _____
Date of Occurrence 5/6  Time of Occurrence: 6:40   AM/PM    Inbound    Outbound
Street on Which Accident Occurred: _____
Nearest Cross Street: _____ City/Town: _____

Weather Conditions (circle one):   Clear    Fog       Rain    Snow          Cloudy
Street Conditions (circle one):    Dry      Wet       Ice     Snow Covered
Light Conditions (circle one):     Daylight Dark      Dawn    Dusk          Street Lights
Surface Conditions (circle one):   Level    Uphill    Downhill

Dispatch Notified?   Yes   No    If yes, whom? _____
Supervisor on Scene? Yes   No    Supervisors Name: _____ Were pictures taken?  Yes
Police on Scene?     Yes   No    Officer's Name/Badge #: _____

OTHER VEHICLE (if more than one, use separate sheet for each): _____

Name of Driver: _____ License #: _____
Address of Driver: _____

Name of Owner: _____ Plate #: _____
Address of Owner: _____
Insurance Company: _____ Policy #: _____
Description of Vehicle (year, make, model, color): _____
Damage to Vehicle: _____
Number of Passengers in Vehicle: _____

PASSENGER ACCIDENT (if more than one, use separate sheet for each):
At the time of the accident, passenger was (circle one):    Boarding    Alighting    On Board
Name: _____ Age: _____ Male   Female
Address: _____ Height: _____ Weight: _____
Nature of Injury: _____

WITNESSES:
_____

| Name | Address (street, city, state) | Phone # | Aboard bus? |
|------|-------------------------------|---------|-------------|
| | | | |
| | | | |
| | | | |

**DESCRIPTION OF ACCIDENT:** Describe in your own words the incident/accident as it occurred.

Parked bus on Longfellow St (After Shift)
As I was leaving bus, I heard people yelling
stopped + looked [illegible] and [illegible] and [illegible]
might happen as I continued toward parking
lot to my Van and went home.
[illegible]

**DIAGRAM:** Draw a diagram of where the incident/accident occurred. Label streets and vehicles.

**MARK DAMAGED AREAS OF VEHICLE:**

Damage Description: ____________________ Damage Description: ____________________

***Rhode Island State Law requires that a state accident report must be filled within twenty-one (21) days of any motor vehicle accident involving personal injury or damage in excess of $1,000.00. Accident reports are available in the Safety Department.***

[illegible signature]      [illegible] 2010
EMPLOYEE'S SIGNATURE      DATE

[illegible signature]      [illegible]
CLERK      DATE

OFFICE USE: (circle one)

**Type of Report:** **Accident** **Incident**
Traffic Pedestrian Passenger Observation Vandalism Other ________

**Classification Code:** ____________ **Chargeable:** **Yes** **No**

BACK of Robert Sheblum Report

Date: _____    Safety Department Case #: _____

# RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## EMPLOYEES ACCIDENT/INCIDENT REPORT

Passenger    Traffic    (Incident)
(circle one)

*Not Fault at Work!*

BASIC INFORMATION: Please Print

Operator Name: _Michele Barnes_    Payroll #: _5352_
Bus #: _____    Run #: _____    # of Passengers: _____    # Of Courtesy Cards: _____
Date of Occurrence _____ Time of Occurrence: _6:15_ AM PM    Inbound    Outbound
Street on Which Accident Occurred: _Longfellow Street_
Nearest Cross Street: _McKenzie_    City/Town: _Prov RI 02908_

| | | | | | |
|---|---|---|---|---|---|
| Weather Conditions (circle one): | Clear | Fog | Rain | Snow | Cloudy | Oth |
| Street Conditions (circle one): | Dry | Wet | Ice | Snow Covered | | Oth |
| Light Conditions (circle one): | Daylight | Dark | Dawn | Dusk | Street Lights | Oth |
| Surface Conditions (circle one): | Level | Uphill | Downhill | | | Oth |

Dispatch Notified?    Yes ( No    If yes, whom? _____
Supervisor on Scene? Yes / No    Supervisors Name: _Fernn Jobeiecko_    Were pictures taken?  Yes  No
Police on Scene?    Yes / No    Officer's Name/Badge #: _____

OTHER VEHICLE (if more than one, use separate sheet for each):

Name of Driver: _____    License #: _____
Address of Driver: _____

Name of Owner: _____    Plate #: _____
Address of Owner: _____
Insurance Company: _____    Policy #: _____
Description of Vehicle (year, make, model, color): _____
Damage to Vehicle: _____
Number of Passengers in Vehicle: _____

PASSENGER ACCIDENT (if more than one, use separate sheet for each):
At the time of the accident, passenger was (circle one):    Boarding    Alighting    On Board
Name: _____    Age: _____    Male    Female
Address: _____    Height: _____    Weight: _____
Nature of Injury: _____

WITNESSES:

| Name | Address (street, city, state) | Phone # | Aboard bus? |
|---|---|---|---|
| | | | |

**DESCRIPTION OF ACCIDENT:** Describe in your own words the incident/accident as it occurred. (Continued)

*[handwritten, partially legible]*
Accident place = 728-54 Red Plate pts

I came inside to get my letter to return to work late I was on my inside 2 minuts and Called Bob Sherblum Bus #227 told my husband to leave the Interggra, my husband told him to suck his Dick I Turned outside to explain to him thats my husband and I would never talk to him like that he then called my husband from the Bus to fight him my husband told him to come outside the Bus, they also tried to return to drive the Bus to Park it up the road and also

**DIAGRAM:** Draw a diagram of where the incident/accident occurred. Label streets and vehicles. (Continued on the same page)

I came inside to get Bob's name told would not give it to me and I tried to give him my return to work letter he refused to make a copy

Todd the Clerk!

I said this place is very Rasism and todd got Mad at me and refused to take my forms and my copys.

**MARK DAMAGED AREAS OF VEHICLE:**



Damage Description: _____

Damage Description: _____

**Rhode Island State Law requires that a state accident report must be filled within twenty-one (21) days of any motor vehicle accident involving personal injury or damage in excess of $1,000.00. Accident reports are available in the Safety Department.**

*[signature]*
EMPLOYEE'S SIGNATURE

*[signature]*
CLERK

*[handwritten date]* August 16 2010
DATE

*[handwritten date]* 3/16/2010
DATE

OFFICE USE: (circle one)

| Type of Report: | Accident | Incident | | | | |
|---|---|---|---|---|---|---|
| Traffic | Pedestrian | Passenger | Observation | Vandalism | Other _____ |

Classification Code: _____    Chargeable:  Yes  No

*[handwritten]* Back of Mickeda's Barnes Report

Case #: _____

*This Report is regarding the Mickeda Barnes issue for your Records and use.*

*Cathy*
*X179*

RHODE ISLAND TRANSIT AUTHORITY
EMPLOYEE ACCIDENT REPORT

Pas _____  Incident _____

## BASIC INFORMATION: Please Print

Operator Name: TODD JACKVONY        Payroll #: 5251
Bus #: N/A    Run #: N/A    # of Passengers: N/A    # Of Courtesy Cards: _____
Date of Occurrence 8-6-10 Time of Occurrence: ~6:30 PM AM **PM**    Inbound    Outbound
Street on Which Accident Occurred: RIPTA OFFICE
Nearest Cross Street: _____ City/Town: _____

| Condition | | | | | | |
|---|---|---|---|---|---|---|
| Weather Conditions (circle one): | Clear | Fog | Rain | Snow | Cloudy | Other |
| Street Conditions (circle one): | Dry | Wet | Ice | Snow Covered | | Other |
| Light Conditions (circle one): | Daylight | Dark | Dawn | Dusk | Street Lights | Other |
| Surface Conditions (circle one): | Level | Uphill | Downhill | | | Other |

Dispatch Notified?  Yes  No   If yes, whom? _____
Supervisor on Scene? Yes  No   Supervisors Name: _____ Were pictures taken? Yes  No
Police on Scene?  Yes  No   Officer's Name/Badge #: _____

## OTHER VEHICLE (if more than one, use separate sheet for each):

Name of Driver: _____ License #: _____
Address of Driver: _____

Name of Owner: _____ Plate #: _____
Address of Owner: _____
Insurance Company: _____ Policy #: _____
Description of Vehicle  (year, make, model, color): _____
Damage to Vehicle: _____
Number of Passengers in Vehicle: _____

## PASSENGER ACCIDENT (if more than one, use separate sheet for each):

At the time of the accident, passenger was (circle one):  Boarding   Alighting   On Board
Name: _____ Age: _____ Male  Female
Address: _____ Height: _____ Weight: _____
Nature of Injury: _____

## WITNESSES:

| Name | Address (street, city, state) | Phone # | Aboard bus? |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**DESCRIPTION OF ACCIDENT:** Describe in your own words the incident/accident as it occurred.

While covering O.T. in office I heard a driver M. Barn yelling in the lobby. She said a driver got in an argument with her husband outside and that this whole place is racist. I gave her the form + went back to the desk. A short time later she returned w/ B. Paige st yelling. She wanted to know who the driver was, I didn't know. She told me I knew but I wouldn't tell her because I was a racist. Then she threw a form in the window a told me to make her a copy. I told her I don't have

**DIAGRAM:** Draw a diagram of where the incident/accident occurred. Label streets and vehicles.

to make copies, she could go to kinkos if she want one. She said I was going in her report. I went back to covering the O.T.

**MARK DAMAGED AREAS OF VEHICLE:**

FRONT

REAR

FRONT

Damage Description:                    Damage Description:

***Rhode Island State Law requires that a state accident report must be filled within twenty-one (21) days of any motor vehicle accident involving personal injury or damage in excess of $1,000.00. Accident reports are available in the Safety Department.***

EMPLOYEE"S SIGNATURE                    DATE    8-18-10

CLERK                                   DATE

OFFICE USE: (circle one)

Type of Report:    Accident      Incident
     Traffic        Pedestrian    Passenger    Observation    Vandalism    Other_____

Classification Code: _____    Chargeable:   Yes   No

Back of Todd Jackuony Report

Continued to Report / Incident Report

I was there to give my Partner to work note / Check to see if I got a Holiday and Check to see when I was Cheesing a Job.

My Kids were outside with my husband Witnessing all these bad words the Bus Driver was saying to their Father and Cousin. his Kid pickup truck license plate reading Commercial 728-5[?]

he told my husband to come onto the Bus motherfucker so I can whoop your ass.

he called us you fuckers pussys.

My husband told him to come off the Bus. TATUM 5345 Bus Driver Darrial New Driver 53 Scranton The German Joe Greko was out there to witness and Raymond Reis (driver) wife was out there to witness what was said by the Driver on the Bus. I was picked up well after the Blue doors. after the Argument he was note 5452 / Matilda Bridges + Darrial the Husband Healyn Robertson Bus without me moving my Car.    (July 6, 2010

At 618pm pull

At 618 pm pull in, box pull told
me to park the bus on Longfellow St.
Turned on to Longfellow, silver truck
was parked where the bus was
suppose to be parked. Some one
went into building ~~coffe~~ Asked them
to move the truck. He got in the
truck to move, then decided to get
out ~~and~~ of the truck Screaming and
yelling you fucken white boy Im
going to kill you. I yelled back
telling him to move away from
the bus.

COMPLAINT DETAIL LISTING                                    PAGE

PU500U
                    RHODE ISLAND PUBLIC TRANSIT AUTHORITY
COMPLAINT. . . . . . . : 1008-22218
DATE RECEIVED. . . . . : 8/17/2010    TIME RECEIVED. . . . . : 01:15
DATE OCCURRED. . . . . : 8/05/2010    TIME OCCURRED. . . . . : 01:15
                                      DAY OF WEEK OCCURRED..:   THU

  BUS NUMBER. . . . . :        09227
  ROUTE NUMBER. . . . :
  PATRONS NAME. . . . : ROBERTSON        KENYON        PHONE:  000419225
  PATRONS ADDRESS . . . :
  PATRONS CITY. . . . :                  STATE:          ZIP:  00000
  OPERATOR ID . . . . :        00001     UNKNOWN
  COMPLAINT STATUS. . . :        OPN  OPEN
  COMPLAINT TYPE. . . . :        030  DRIVER'S ATTITUDE
  COMPLAINT PRIORITY. . :          1  HIGH PRIORITY
  COMPLAINT CONTACT . . :        MAM  MARY ANN MOAN
  PERSON TAKING  COMPLAINT . . : MAM

SEQ. NO.              COMPLAINT NARRATIVE                    DATE
 00100    MR. ROBERTSON, HUSBAND OF MAKITA BARNES, PARKED    8/18/2010
 00200    HIS TRUCK ON LONGFELLOW ST. IN FRONT OF RIPTA'S    8/18/2010
 00300    TRANSPORTATION BUILDING ON AUGUST 5TH.  MAKITA AND 8/18/2010
 00400    THE CHILDREN WENT INTO THE DRIVER'S LOBBY AND MR.  8/18/2010
 00500    ROBERTSON FOLLOWED.  A BUS OPERATOR ENTERED THE    8/18/2010
 00600    LOBBY BEHIND MR. ROBERTSON AND INFORMED MR. ROBERT 8/18/2010
 00700    SON THAT A BUS DRIVER OUTSIDE WANTED HIM TO MOVE   8/18/2010
 00800    HIS TRUCK.  MR. ROBERTSON STATED THAT THERE WERE   8/18/2010
 00900    THREE VEHICLES PARKED IN FRONT OF THE GARAGE SO HE 8/18/2010
 01000    ASKED THE OPERATOR "WHAT'S THE PROBLEM?  WHY DO I  8/18/2010
 01100    HAVE TO MOVE MY TRUCK?  MR. ROBERTSON STATES THAT  8/18/2010
 01200    THE BUS OPERATOR TOLD HIM "MOVE YOUR TRUCK YOU     8/18/2010
 01300    PUSSYASS NIGGER".  WORDS WERE EXCHANGED BETWEEN    8/18/2010
 01400    THE TWO.  MR. ROBERTSON ALSO STATES THAT THE OPER  8/18/2010
 01500    ATOR CALLED HIM ONTO THE BUS SAYING "I'LL WHOOP    8/18/2010
 01600    YOUR ASS.  GO AHEAD GET ON THE BUS."  THE BUS OPER 8/18/2010
 01700    ATOR THEN PULLED HIS SHIRT OFF SO HIS EMPLOYEE     8/18/2010
 01800    NUMBER  COULD NOT BE SEEN.  MR. ROBERTSON STATES   8/18/2010
 01900    THAT JOE GRECO WAS ALSO ON THE BUS AND TRIED TO    8/18/2010
 02000    HOLD THE BUS DRIVER BACK FROM FIGHTING THEN DROPP- 8/18/2010
 02100    ED THE DRIVER OFF AND HE GOT IN HIS CAR.  MR.      8/18/2010
 02200    ROBERTSON STATES THE 40' BUS WAS ON MELROSE ST. &  8/18/2010
 02300    WAS ATTEMPTING TO TURN RIGHT ONTO LONGFELLOW ST.   8/18/2010
 02400    WHICH MR. ROBERTSON STATES IS NOT ALLOWED.  (I DID 8/18/2010
 02500    INFORM MR. ROBERTSON THAT THERE ARE NO PARKING     8/18/2010
 02600    SIGNS IN FRONT OF THE BUILDING THAT HE DID NOT     8/18/2010
 02700    OBSERVE. MR. ROBERTSON IS REPORTING THIS DRIVER    8/18/2010
 02800    FOR HIS ATTITUDE.                                  8/18/2010




                    TOTAL RECORDS:  0001

                                                AUG 1 2010

Rhode Island Public Transit Authority                          8/19/10
Public Relations System                                        16:01:57
Complaint Narrative Screen

Complaint number . . . . . : 1008-22218

**Type information, press Enter.**

| Seq.# | Freeform narrative | Date |
|-------|--------------------|------|
| 1.00 | MR. ROBERTSON, HUSBAND OF MAKITA BARNES, PARKED | 81810 |
| 2.00 | HIS TRUCK ON LONGFELLOW ST. IN FRONT OF RIPTA'S | 81810 |
| 3.00 | TRANSPORTATION BUILDING ON AUGUST 5TH.  MAKITA AND | 81810 |
| 4.00 | THE CHILDREN WENT INTO THE DRIVER'S LOBBY AND MR. | 81810 |
| 5.00 | ROBERTSON FOLLOWED.  A BUS OPERATOR ENTERED THE | 81810 |
| 6.00 | LOBBY BEHIND MR. ROBERTSON AND INFORMED MR. ROBERT | 81810 |
| 7.00 | SON THAT A BUS DRIVER OUTSIDE WANTED HIM TO MOVE | 81810 |
| 8.00 | HIS TRUCK.  MR. ROBERTSON STATED THAT THERE WERE | 81810 |
| 9.00 | THREE VEHICLES PARKED IN FRONT OF THE GARAGE SO HE | 81810 |
| 10.00 | ASKED THE OPERATOR "WHAT'S THE PROBLEM?  WHY DO I | 81810 |
| 11.00 | HAVE TO MOVE MY TRUCK? MR. ROBERTSON STATES THAT | 81810 |
| 12.00 | THE BUS OPERATOR TOLD HIM "MOVE YOUR TRUCK YOU | 81810 |

+

**F3=Exit**

Rhode Island Public Transit Authority                 8/19/10
                    Public Relations System                       16:02:01
                   Complaint Narrative Screen

Complaint number . . . . . : 1008-22218

**Type information, press Enter.**

| Seq.# | Freeform narrative | Date |
|-------|--------------------|------|
| 13.00 | PUSSYASS NIGGER".  WORDS WERE EXCHANGED BETWEEN | 81810 |
| 14.00 | THE TWO.  MR. ROBERTSON ALSO STATES THAT THE OPER | 81810 |
| 15.00 | ATOR CALLED HIM ONTO THE BUS SAYING "I'LL WHOOP | 81810 |
| 16.00 | YOUR ASS.  GO AHEAD GET ON THE BUS."  THE BUS OPER | 81810 |
| 17.00 | ATOR THEN PULLED HIS SHIRT OFF SO HIS EMPLOYEE | 81810 |
| 18.00 | NUMBER  COULD NOT BE SEEN.  MR. ROBERTSON STATES | 81810 |
| 19.00 | THAT JOE GRECO WAS ALSO ON THE BUS AND TRIED TO | 81810 |
| 20.00 | HOLD THE BUS DRIVER BACK FROM FIGHTING THEN DROPP- | 81810 |
| 21.00 | ED THE DRIVER OFF AND HE GOT IN HIS CAR.  MR. | 81810 |
| 22.00 | ROBERTSON STATES THE 40' BUS WAS ON MELROSE ST. & | 81810 |
| 23.00 | WAS ATTEMPTING TO TURN RIGHT ONTO LONGFELLOW ST. | 81810 |
| 24.00 | WHICH MR. ROBERTSON STATES IS NOT ALLOWED.  (I DID | 81810 |

+

F3=Exit

Rhode Island Public Transit Authority                    8/19/10
Public Relations System                                  16:02:04
Complaint Narrative Screen

Complaint number . . . . . : 1008-22218

**Type information, press Enter.**

| Seq.# | Freeform narrative | Date |
|-------|-------------------|------|
| 25.00 | INFORM MR. ROBERTSON THAT THERE ARE NO PARKING | 81810 |
| 26.00 | SIGNS IN FRONT OF THE BUILDING THAT HE DID NOT | 81810 |
| 27.00 | OBSERVE. MR. ROBERTSON IS REPORTING THIS DRIVER | 81810 |
| 28.00 | FOR HIS ATTITUDE. | 81810 |
| 29.00 | THIS IS AN INTERNAL PROBLEM THAT IS UNDER | 81910 |
| 30.00 | INVESTIGATION. | 81910 |
| 31.00 | | |
| 32.00 | | |
| 33.00 | | |
| 34.00 | | |
| 35.00 | | |
| 36.00 | | |

**F3=Exit**

**Disciplinary Action Notice**

**Written Warning**



To:      **Thomas Shea #4816**

From:   **Victor Santos, AGM of Human Resources**

          **Rhode Island Public Transit Authority**

Cc:      **James Dean, AGM of Transportation**

Date:    **September 7, 2010**

Subject: **Discipline for using foul language and displaying anger with another employee and Customer**


On August 6, 2010 you were part of an incident that took place in front of the Transportation Department's main entrance at approximately 5:00pm. A pickup truck was parked on the street and you were unable to make a right turn with the bus. When the driver of the pickup truck came out to move the vehicle, words were exchanged. You were told by another co-worker, Joe Greco to stay in the bus and to stop the exchange so that you would not get into trouble, however the shouting persisted. Joe Greco got stated that he got on the driver's seat and drove the bus away. Various witnesses observed the incident in which you used threatening foul language with another employee, Mickeda Barnes and her husband. Witnesses did hear you use foul language towards them. You also entertained the idea of a fighting match in the RIPTA Bus.

When you were questioned about the incident you did admit to using foul language and that you had lost your temper. You also admitted that you have an anger management problem that you are seeking counseling for through our Employee Assistance Program.

Various witnesses were questioned and reports submitted about the incident that took place. Although some witnesses did not hear the name calling and threatening behavior, some did. The overall consensus was that the behavior was not conducive to a professional RIPTA driver.

I counseled you that this sort of behavior is inappropriate, unprofessional and not tolerable. No type of fighting on RIPTA property is admissible and tolerable. RIPTA has a

<u>August 6, 2010 Incident:</u>

Based on the additional names of witnesses that were provided, I spoke with them, took their statements as well in person meeting with the employee Tom Shea. Based on the evidence gathered, Mr. Shea was in clear violation of some of our policies and work rules as to his conduct and that issue was dealt with internally.  The professional and orderly conduct of all of our drivers towards our co-workers and the public is paramount. However, various witnesses also commented that the behavior displayed by your spouse was also antagonizing. Mr. Shea did also comment, at a third step grievance procedure pursuant to this case, that the next day, after the incident, your husband went to his car and threatened him with an ax which is a very serious offense and it was witnessed. Based on the incidents that have occurred with your spouse on RIPTA property, we kindly ask that he refrains from coming on RIPTA property unless in case of an emergency since he is not an employee of RIPTA and should have no business at RIPTA. If an emergency does arise, he may come to our Human Resources Department where we will assist him or any other family member.

Based on the actions taken we feel that your issues have been addressed to the best of our ability and we will be closing these cases. Our sincere apologies, on behalf of RIPTA, for any grief or stress that this situation might have caused. We will continue to strive to maintain a harassment free workplace with respect to all RIPTA employees and its clients in order to live up to our Authority's mission. We shall continue to make RIPTA an employer of choice in which we can all be proud of. Feel free to call on me at any time for any further assistance.


Sincerely,

Victor C. Santos
AGM of Human Resources


Cc: James Dean, AGM of Transportation
    Janette M. Thomas, Providence Human Relations Commission
    Steve Farrell, President, ATU Local 618
    Al Moscola, General Manager of RIPTA

Safety Department Case #: _____

# RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## EMPLOYEES ACCIDENT/INCIDENT REPORT

Passenger     Traffic     Incident
(circle one)

## BASIC INFORMATION:  Please Print

Operator Name: _Thomas Sincy_                    Payroll #: _4816_
Bus #: _1336_    Run #: _605e_    # of Passengers: _____    # Of Courtesy Cards: _____
Date of Occurrence _8/6_    Time of Occurrence: _3:00_    AM PM     Inbound    Outbound
Street on Which Accident Occurred: _Congress St_
Nearest Cross Street: _Melrose St_                    City/Town: _Prov_

Weather Conditions (circle one):   Clear    Fog    Rain    Snow    Cloudy    Othe
Street Conditions (circle one):    Dry    Wet    Ice    Snow Covered    Othe
Light Conditions (circle one):    Daylight    Dark    Dawn    Dusk    Street Lights    Othe
Surface Conditions (circle one):    Level    Uphill    Downhill    Other

Dispatch Notified?    Yes    No    If yes, whom? _____
Supervisor on Scene? Yes    No    Supervisors Name: _____ Were pictures taken?  Yes  No
Police on Scene?    Yes    No    Officer's Name/Badge #: _____

## OTHER VEHICLE (if more than one, use separate sheet for each):

Name of Driver: _____ License #: _____
Address of Driver: _____

Name of Owner: _____ _N/A_ _____ Plate #: _____
Address of Owner: _____
Insurance Company: _____ Policy #: _____
Description of Vehicle  (year, make, model, color): _____
Damage to Vehicle: _____
Number of Passengers in Vehicle: _____

## PASSENGER ACCIDENT (if more than one, use separate sheet for each):
At the time of the accident, passenger was (circle one):   Boarding    Alighting    On Board
Name: _____ _N/A_ _____ Age: _____    Male  Female
Address: _____ Height: _____  Weight: _____
Nature of Injury: _____

## WITNESSES:

| Name | Address (street, city, state) | Phone # | Aboard bus? |
|------|-------------------------------|---------|-------------|
|  | _N/A_ |  |  |
|  |  |  |  |
|  |  |  |  |

DESCRIPTION OF ACCIDENT: Describe in your own words the incident/accident as it occurred.

_____

_____

_____

_____

_____

_____

_____

_____

DIAGRAM: Draw a diagram of where the incident/accident occurred. Label streets and vehicles.

MARK DAMAGED AREAS OF VEHICLE:

Damage Description: _____        Damage Description: _____

*__Rhode Island State Law requires that a state accident report must be filled within twenty-one (21) days of any motor vehicle accident involving personal injury or damage in excess of $1,000.00. Accident reports are available in the Safety Department.__*

EMPLOYEE'S SIGNATURE                             DATE

CLERK                                            DATE

OFFICE USE: (circle one)

| Type of Report: | Accident | Incident | | | |
|---|---|---|---|---|---|
| Traffic | Pedestrian | Passenger | Observation | Vandalism | Other _____ |

Classification Code: _____                    Chargeable:  Yes   No

[illegible]

Sykn ment[?] she has called me cracker a few times

I find it very hard working with her. One more

ote there are other Clerks and manager who have had problems

with Mikeala & husband in the past

*I wrote and filed a report*

*(no report ever recd. from her)*

## INTEROFFICE MEMORANDUM

**TO:**        File

**FROM:**   James F. Dean, Director of Transportation

**SUBJECT:**   Scott Simmons #5168

**DATE:**   September 19, 2006

This memo serves as documentation that Transportation Department Clerk, Scott Simmons (Payroll #5168) has been advised of RIPTA's policy in regards to *'Unacceptable Behavior in the Workplace.'*   Clerk Simmons is expected to conduct himself in a professional manner at all times while working for and representing the Authority, in accordance with the attached memo dated 05/10/06, titled *'Unacceptable Behavior in the Workplace.'*

Date: 9/13/06                    Safety Department Case #: _____

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## EMPLOYEES ACCIDENT/INCIDENT REPORT

### Passenger    Traffic    Incident
(circle one)

## BASIC INFORMATION:  Please Print

Operator Name: J Berrigan                    Payroll #: 5000
Bus #: _____ Run #: ✓ # of Passengers: _____ # of Courtesy Cards:__
Date of Occurrence: 9/13/06 Time of Occurrence: _____ AM PM    Inbound Outbou
Street on Which Accident Occurred: Longfellow + Melrose
Nearest Cross Street: _____ City/Town: Providence

Weather Conditions (circle one):  Clear        Fog        Rain        Snow          Cloudy       Oth
Street Conditions (circle one):   Dry          Wet        Ice         Snow Covered              Oth
Light Conditions (circle one):    Daylight     Dark       Dawn        Dusk          Street Lights Oth
Surface Conditions (circle one):  Level        Uphill     Downhill                                Oth

Dispatcher Notified?    Yes No  If yes, whom? _____
Supervisor on Scene? Yes No  Supervisors Name: Tom Arseriault Pictures taken? Yes    N
Police on Scene?    Yes No  Officer's Name/Badge #: _____

## OTHER VEHICLE (if more than one, use separate sheet for each):

Name of Driver: _____    License #: _____
Address of Driver: _____
Name of Owner: _____    Plate #: _____
Address of Owner: _____
Insurance Company: _____    Policy #: _____
Description of Vehicle (year, make, model, color): _____
Damage to Vehicle: _____
Number of Passengers in Vehicle: _____

## PASSENGER ACCIDENT (if more than one, use separate sheet for each):

At the time of the accident, passenger was (circle one):    Boarding    Alighting    On Board
Name: _____    Age: _____    Mal
Female
Address: _____    Height: _____ Weight: ____
Nature of Injury: _____

## WITNESSES:

| Name | Address (street, city, state) | Phone # | Aboard bus |
|------|-------------------------------|---------|------------|
|      |                               |         |            |
|      |                               |         |            |
|      |                               |         |            |
|      |                               |         |            |

DESCRIPTION OF ACCIDENT:  Describe in your own words the incident/accident as it occurred.

I was the 2 pm report and had just come in from driving. A man stalked through the lobby and I heard yelling. I went to the doorway of the second lobby to see what the commotion was. I stopped because I felt intimidated by the violent words and actions being displayed by Mikeda's (we found out later) husband. He swore and threatened Scott physically saying he knew when he got out of work. He said Scott was "disrespecting" his wife and his household and he was going to pay. He accused Scott of "making moves" on his

DIAGRAM:  Draw a diagram of where the incident/accident occurred.  Label streets and vehicles.

wife. Mikeda came in to back up her husband. She was screaming and swearing, too. Most of it was directed at Scott but some bystanders got some, too. It was very chaotic. At some point I felt it necessary to call the PPD. I should add Mikeda was wearing totally inappropriate nightwear & slippers for the lobby. There was a man and his son here to retrieve a bicycle right in the middle of all this and I know they were horrified.

MARK DAMAGED AREAS OF VEHICLE:

Damage Description:                              Damage Description:

**_Rhode Island State Law requires that a state accident report must be filed within twenty-one (21) days of any motor vehicle accident involving personal injury or damage in excess of $1,000.00. Accident reports are available in the Safety Department._**

Joan A. Berrigan
EMPLOYEES SIGNATURE

9/15/06
DATE

CLERK                                            DATE

OFFICE USE:  (circle one)

**Disciplinary Action Notice**

**Written Warning**

*Exhibit M*
*Thomas Shea*
*Written Warning*

To:       **Thomas Shea #4816**

From:    **Victor Santos, AGM of Human Resources**

           **Rhode Island Public Transit Authority**

Cc:       **James Dean, AGM of Transportation**

Date:    **September 7, 2010**

Subject: **Discipline for using foul language and displaying anger with another employee and Customer**


On August 6, 2010 you were part of an incident that took place in front of the Transportation Department's main entrance at approximately 5:00pm. A pickup truck was parked on the street and you were unable to make a right turn with the bus. When the driver of the pickup truck came out to move the vehicle, words were exchanged. You were told by another co-worker, Joe Greco to stay in the bus and to stop the exchange so that you would not get into trouble, however the shouting persisted. Joe Greco got stated that he got on the driver's seat and drove the bus away. Various witnesses observed the incident in which you used threatening foul language with another employee, Mickeda Barnes and her husband. Witnesses did hear you use foul language towards them. You also entertained the idea of a fighting match in the RIPTA Bus.

When you were questioned about the incident you did admit to using foul language and that you had lost your temper. You also admitted that you have an anger management problem that you are seeking counseling for through our Employee Assistance Program.

Various witnesses were questioned and reports submitted about the incident that took place. Although some witnesses did not hear the name calling and threatening behavior, some did. The overall consensus was that the behavior was not conducive to a professional RIPTA driver.

I counseled you that this sort of behavior is inappropriate, unprofessional and not tolerable. No type of fighting on RIPTA property is admissible and tolerable. RIPTA has a

<u>August 6, 2010 Incident:</u>
Based on the additional names of witnesses that were provided, I spoke with them, took their statements as well in person meeting with the employee Tom Shea. Based on the evidence gathered, Mr. Shea was in clear violation of some of our policies and work rules as to his conduct and that issue was dealt with internally.  The professional and orderly conduct of all of our drivers towards our co-workers and the public is paramount. However, various witnesses also commented that the behavior displayed by your spouse was also antagonizing. Mr. Shea did also comment, at a third step grievance procedure pursuant to this case, that the next day, after the incident, your husband went to his car and threatened him with an ax which is a very serious offense and it was witnessed. Based on the incidents that have occurred with your spouse on RIPTA property, we kindly ask that he refrains from coming on RIPTA property unless in case of an emergency since he is not an employee of RIPTA and should have no business at RIPTA. If an emergency does arise, he may come to our Human Resources Department where we will assist him or any other family member.

Based on the actions taken we feel that your issues have been addressed to the best of our ability and we will be closing these cases. Our sincere apologies, on behalf of RIPTA, for any grief or stress that this situation might have caused. We will continue to strive to maintain a harassment free workplace with respect to all RIPTA employees and its clients in order to live up to our Authority's mission. We shall continue to make RIPTA an employer of choice in which we can all be proud of. Feel free to call on me at any time for any further assistance.

Sincerely,

Victor C. Santos
AGM of Human Resources

Cc: James Dean, AGM of Transportation
    Janette M. Thomas, Providence Human Relations Commission
    Steve Farrell, President, ATU Local 618
    Al Moscola, General Manager of RIPTA

**MEMO**

To: Al Moscola, General Manager

From: Victor Santos, AGM of Human Resources

Date: September 3, 2010

Subject: Incident involving Tom Shea and Husband of Mickeda Barnes

Attached please find written statements from employees regarding the incident that transpired on August 6, 2010 with Bus Driver, Tom Shea and the husband of Driver Mickeda Barnes.

Per my conversation with Joe Greco and his attached statement, Joe did not hear Tom Shea state any racial slurs/remarks but did state from the bus the following threatening statement: " come on in here and I'll break you in half". He states that he could see that words were being exchanged before he arrived at the scene but could not make out what they were.

It is also curious that on August 9, Joe Greco states that Mickeda Barnes had her same car parked on the corner of Longfellow Street again; a definitely antagonizing gesture.

There was only one witness, a Mrs. Ichael McDonald, a bystander from the general public, who claims that Tom Shea used a racial slur. No other witnesses make that claim. Tom Gorton, our driver did testify that he heard Tom swear and call the gentleman a bad name but that he did not say any racial slur.

In light of the testimony that we heard at our recent meeting with Tom Shea and the new facts that had never been told to us till that time, as well as the written statement received from Joe Greco, I would recommend that the discipline to Tom Shea be a written warning for the manner in which he handled himself with the public.

From: **Mickeda Barnes** mickeda5@gmail.com
Subject: **Please print out**
Date: **Aug 25, 2019 at 10:38:11 PM**
To: kenyon1977@icloud.com

AT&T  LTE                 9:47 AM                    91%

 🔒 ripta.com 

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY**
**JOB DESCRIPTION**

| | | | |
|---|---|---|---|
| **Job Title:** | Legal Compliance Counsel | **Date:** | September 2018 |
| **Department:** | Legal/Chief Executive Office | | |
| **Reports to:** | Chief Executive Officer | | |

**Summary of Position:**
The Legal Compliance Officer is responsible for assuring compliance with the requirements of all federal and state laws and regulations including but not limited to Affirmative Action, Americans with Disabilities Act, Equal Opportunity, Disadvantaged Business Enterprise and Title VI; to perform legal advice and services in a quasi-state department or agency on issues posing complex legal interpretations and extensive research of law, rules and regulations; and to do related work as required

**Essential Duties and Responsibilities:**
- To assist Chief Legal Counsel to prepare legal documents, as well as draft rules, regulations, laws, legislation and amendments thereto;
- To assist Chief Legal Counsel to analyze pertinent information and evidence in order to provide legal opinions to departmental or agency staff personnel for the proper execution of their responsibilities;
- To serve as a hearing officer for cases of a complex and difficult nature requiring the interpretation and enforcement of applicable laws, rules and regulations included but not limited to Affirmative Action, Americans with Disabilities Act, Labor Arbitrations, Human Rights Commission, Equal Opportunity, Disadvantaged Business Enterprise and Title VI;
- To prepare in-depth reports, briefs, papers and recommendations on legal matters on all federal and/or state programs including but not limited to Affirmative Action, Americans with Disabilities Act, Labor Arbitrations, Human Rights Commission; Equal Opportunity, Disadvantaged Business Enterprise (DBEs), Minority Business Enterprises (MBEs), and Women Business Enterprises (WBEs) and Title VI;
- To do related work as required.

**Examples of Work Required:**
- Manages and coordinates the Authority's programs including but not limited to Affirmative Action, Americans with Disabilities Act, Labor Arbitrations, Human Rights Commission; Equal Opportunity, Disadvantaged Business Enterprise and Title VI;
- Reviews all contract bid proposals to ensure prospective contractors and consultants are compliant with EEO regulations;
- Monitors the Authority's Complaint Hotline for any claims of discrimination relating to but not limited to Affirmative Action, Americans with Disabilities Act, Equal Opportunity, Disadvantaged Business

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## JOB DESCRIPTION

- To participate in show cause hearings and prepare reports and supply documentation for these hearings; to be responsible for using and maintaining photographic equipment in field service; to assist in the preparation of quarterly and annual compliance reports; to assist in the preparation of reports submitted to federal and related state entities;
- To assist in preparation of an annual external Affirmative Action Plan for their respective Department, detailing the steps to be taken to assure equal opportunity compliance;
- To provide counseling for trainees or applicants who believe they have been discriminated against because of race, color, religion, sex, age, national origin or physical or mental handicap and to investigate those complaints;
- To be responsible for following federal and state legislation and interpreting their provisions concerning equal opportunity programs and enforcement;
- To assist in the coordination of agency's efforts with those of other state departments, with the federal government, and with concerned citizens groups;
- To do related work as required.

**Qualification Requirements:**
To perform this job successfully, an individual must be able to perform each essential duty satisfactorily. The requirements listed below are representative of the knowledge, skill, and/or ability required. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

**Special Requirement:**
Applicant must be a member of the Rhode Island Bar and must maintain such membership as a condition of employment. Failure to maintain good standing licensure requirements determined by the RI Bar Association may be grounds for immediate termination. It is the responsibility of the individual employee to maintain good standing licensure during the term of employment.

**Basic Knowledge and Experience:**
Such as may have been gained through: graduation from an accredited Law School: and five to seven years employment experience in a responsible capacity within a legal services program involving the interpretation of law and the application of pertinent laws, rules regulations, polices and decisions: preferred experience in quasi-public corporate sector. **OR:** any combination of education and experience that shall be equivalent to the above education and experience.

**Independent Action:**
Works under the general supervision of a superior with latitude for the exercise of independent judgement; work is subject to review of conformance to established policies, rules, regulations and provisions of law.

**Supervisory Responsibility:** None

Enterprise and Title VI:
- Within state departments, to assist in a program designed to assure equal opportunity in all aspects of the Department's state and federal programs;
- To conduct investigations of purported disadvantaged Business Enterprises (DBEs), Minority Business Enterprises (MBEs), and Women Business Enterprises (WBEs), based on third party complaints and requests from the United States Department of Transportation; to conduct reviews of DBE, MBE and WBE applications for certification; to conduct basic financial reviews of payroll records, cash disbursement journals, etc., of contractors;
- To prepare written technical reports assimilating and analyzing data and to draw appropriate conclusions; to prepare monthly written reports for the compliance section supervisor stating accomplishments to date, identified problems and recommended solutions; to monitor field construction projects of Disadvantaged Business Enterprises, Minority Business Enterprises, and Women Business Enterprises to determine their participation on field projects; to conduct and participate in fact finding proceedings and prepare recommendations based in the review of facts findings;

### RHODE ISLAND PUBLIC TRANSIT AUTHORITY
### JOB DESCRIPTION

- To participate in show cause hearings and prepare reports and supply documentation for these hearings; to be responsible for using and maintaining photographic equipment in field service; to assist in the preparation of quarterly and annual compliance reports; to assist in the preparation of reports submitted to federal and related state entities;

**•ıll AT&T  LTE**          **9:47 AM**          **⚹ 91%** 

🔒 ripta.com

Affirmative Action, Americans with Disabilities Act, Equal Opportunity, Disadvantaged Business Enterprise and Title VI:
- Within state departments, to assist in a program designed to assure equal opportunity in all ...ects of the Department's state and federal programs;
  - ...onduct investigations of purported disadvantaged Business Enterprises (DBEs), Minority ...ness Enterprises (MBEs), and Women Business Enterprises (WBEs), based on third party ...plaints and requests from the United States Department of Transportation; to conduct reviews ...DBE, MBE and WBE applications for certification; to conduct basic financial reviews of payroll records, cash disbursement journals, etc., of contractors;
- To prepare written technical reports assimilating and analyzing data and to draw appropriate conclusions; to prepare monthly written reports for the compliance section supervisor stating accomplishments to date, identified problems and recommended solutions; to monitor field construction projects of Disadvantaged Business Enterprises, Minority Business Enterprises, and Women Business Enterprises to determine their participation on field projects; to conduct and participate in fact finding proceedings and prepare recommendations based in the review of facts findings;

Exhibit B

Date: _____        **Safety Department Case #:** _____

## RHODE ISLAND PUBLIC TRANSIT AUTHORITY
## EMPLOYEES ACCIDENT/INCIDENT REPORT

**Passenger    Traffic    (Incident)**
(circle one)

### BASIC INFORMATION: Please Print

Operator Name: Scott Simmons                    Payroll #: 5168
Bus #: _____ Run #:_____ # of Passengers: _____ # of Courtesy Cards:____
Date of Occurrence: 9-14-06    Time of Occurrence: 5:00    AM (PM)    Inbound   Outbour
Street on Which Accident Occurred: Elmwood Garage Lobby
Nearest Cross Street:_____ City/Town: _____

| Weather Conditions (circle one): | Clear | Fog | Rain | Snow | Cloudy | Other |
| Street Conditions (circle one): | Dry | Wet | Ice | Snow Covered | | Other |
| Light Conditions (circle one): | Daylight | Dark | Dawn | Dusk | Street Lights | Other |
| Surface Conditions (circle one): | Level | Uphill | Downhill | | | Other |

Dispatcher Notified?   Yes No  If yes, whom? _____
Supervisor on Scene? Yes No  Supervisors Name: _____ Pictures taken? Yes  No
Police on Scene?      Yes  No  Officer's Name/Badge #: _____

### OTHER VEHICLE (if more than one, use separate sheet for each):

Name of Driver: _____ License #: _____
Address of Driver: _____
Name of Owner: _____ Plate #: _____
Address of Owner: _____
Insurance Company: _____ Policy #: _____
Description of Vehicle (year, make, model, color): _____
Damage to Vehicle: _____
Number of Passengers in Vehicle: _____

### PASSENGER ACCIDENT (if more than one, use separate sheet for each):

At the time of the accident, passenger was (circle one):    Boarding   Alighting   On Board
Name: _____ Age: _____ Male
Female
Address: _____ Height: _____ Weight: ____
Nature of Injury: _____

### WITNESSES:

| Name | Address (street, city, state) | Phone # | Aboard bus? |
|------|-------------------------------|---------|-------------|
| Chris Hogan | | | |
| Andy Santucata | | | |
| Joan Bertean | | | |
| John Hull | | | |

**DESCRIPTION OF ACCIDENT:** Describe in your own words the incident/accident as it occurred.

**DIAGRAM:** Draw a diagram of where the incident/accident occurred. Label streets and vehicles.

**MARK DAMAGED AREAS OF VEHICLE:**



Damage Description:                                    Damage Description:

*Rhode Island State Law requires that a state accident report must be filed within twenty-one (21) days of any motor vehicle accident involving personal injury or damage in excess of $1,000.00. Accident reports are available in the Safety Department.*

EMPLOYEE'S SIGNATURE                                   DATE

CLERK                                                  DATE

OFFICE USE: (circle one)
Type of Report:        Accident        Incident        Page 1265

On Friday afternoon I was speaking Mickeda Barnes husband on the box looking for Scott. Walter answered the phone he asked walter why your feeling Lisa please not call my name walter asked Mickeda husband what are you talking about, walter said this isn't Scott, call back later in the office and hung up. Around 730pm I went to the office. At 745pm Mickeda Barnes husband showed up at the lobby window. He asked me if I was Scott, I asked him who wanted to know. He Said I'm Mickeda's husband why did you hang up on me early earlier I told him that was walter he called me a liar. Then he told me I was disrespecting his wife and household and that I was going to pay. At this point I told him that he needs to leave before the cops were called. He told me he was not leaving. That he was going to shot me. At this point I was told that Joan Neilson called the cops she was feeling threaten by Mickeda husband. Then Mickeda came flying in the lobby calling me a Fuckin Asshole / Piece of shit. Then I told them both I didn't have time for this drama tonight. At this point the Police showed up they told me they asked the two off them to leave. The officer said he could do nothing about the threats it was Rista business. He also said if Mickeda husband showed up again to call them. At this point supervisor T. Arsenault showed up while I was on the phone with J. Dean. While on the phone with J. Dean he J. Dean told me to lock the door to the office which I did. At this point I started to sell overtime again while under a lot of stress. This isn't the first time I've had a problem with Mickeda husband when ever you call Mickeda for overtime her husband answers. He hants to know my name why I'm calling so late I tell him this is Rista garage looking for Mickeda for overtime. He demands my name before I talk to Mickeda. I tell Mickeda I'm being harrassed by her husband she tells me this is n...